RECEIVED

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

2006 DEC 22 A 9: 58

DEBRA P. HACKETT, CLK
Middle DIVISION U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

MARCELLUS BREACH, AIS#160710,

    PLAINTIFF,

VS.                                         Civil Action: 2:06CV1133-MEF

PRISON HEALTH SERVICES, INC., ET AL,

    DEFENDANTS.


APPLICATION FOR TEMPORARY RESTRAINING

ORDER AND/OR PRELIMINARY INJUNCTION


Pursuant to Rule 65(A) Fed. R. Civ., plaintiff moves this Court to "open" it's doors and issue its temporary restraining order and A preliminary injunction to ensure that plaintiff receives proper medical cure; and, for the reasons set forth below and in the supporting memorandum of law:


STATEMENT OF THE FACTS

1.  As stated in the declaration submitted with this motion, and in connection with this civil rights action, there is a reasonable likelihood that plaintiff will prevail on the merits.

(1)

For almost 24 months defendants have willfully denied plaintiff necessary doctor ordered medical treatment for a imminent possibility of a life-long handicap or permanent loss or injury being a serious medical condition that causes pain and discomfort which significantly affects the plaintiff's daily activities such as, coughing, sneezing, long standing, bowel movement and limited exercise, wherein, it is apparent that the continued dely will detrimentally exacerbate the medical problem being an "inguinal hernia".

2). Deliberate indifference to plaintiff's serious medical needs violates the eighth amendment because denying, "Withholding" or delaying medical treatment is tantamount to "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. At 104, 97 S. Ct at 291; Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir 1988).

3). Since 2/20/05 and 5/05/05 defendants have been well aware of plaintiff's medical condition being medically documented by the Alabama Dept. of Corrections and Prison Health Services as a "Left Inguinal Hernia". See Exhibit "A" Medical Records.

4). On 5/05/05 Dr. Bessenver issued a "Truss" in an attempt to treat the hernia, and relieve plaintiff's pain and discomfort. See Exhibit "B"

5. On 3/21/06 Dr. John A. Tassin recommended that the plaintiff's hernia "Needs Repair". See Exhibit "C" Dr. John A. Tassin 1535 West Main Street, Suite 1 Ville Platte, LA (337) 363-5591. This occurred at South Louisiana Corr. Center, Basile, LA a private prison still housing Alabama inmates, acting as an "Agent" for D.O.C.

6. On or about 7-12-06, and upon information and belief, Ruth A. Naglich with the Alabama Dept of Corrections "denied" approval for plaintiff to have Surgery regardless of doctor recommendation that plaintiff's hernia "Needs Repair". See Exhibit "D"

7. On 10/11/06 plaintiff submitted a "Inmate Grievance" to Ms. L. Lawrence the Medical Director at Kilby prison complaining of pain due to the hernia, and requesting surgery. On 10/17/06 Ms. Lawrence responded: "I have searched your medical file here from front to back. There are no Records or sick calls that you were examined for a hernia. I see no evidence..." See Exhibit "E" (Exhibit "F" Reflects LCS request to release Medical Records, plaintiff has the medical Records for his case from Attorney Chris Edwards).

8. On 11/7/06 plaintiff again wrote Ms. Lawrence explaining he needs surgery, and sent to her evidence by his medical records showing the hernia, See Exhibit "G". AND "H". (There is No Grievance Appeal).

(3)

9. Plaintiff is in pain and discomfort due to the hernia. Plaintiff also states the hernia is getting "worse" and the herniated condition causes pain when coughing, sneezing, and bowel movements. The hernia affects plaintiff's daily activities precluding him from exercising. "When officials become aware of a _threat to an inmate's health and safety, the eighth amendment_ prescription against cruel and unusual punishment imposes a duty to provide reasonable protection." See, <u>Brown v. Hughes</u>, 894 F. 2d 1533 (11th Cir 1990); <u>Hopkins v. Britton</u>, 742 F. 2d 1308, 1310 (11th Cir 1984).

10) As of today 12/18/06 plaintiff is in pain. Defendants refuse to provide doctor recommended surgery. In so doing, defendants acted with deliberate indifference to a substantial risk of serious harm, in violation of plaintiff's rights under the Eighth Amendment. "Prisoners must not be forced to endure needless suffering from the painful and untreated effects of an accident or serious illness." <u>Estell</u> 429 U.S. at 105 97 S.Ct at 291.

"AN INGUINAL HERNIA
<u>MEDICAL FACTS</u>" Exhibit "I"

(4)

## Point "A"

10  There is a substantial threat of irreparable harm if the injunction is not granted. "An inguinal hernia occurs when there is a small opening in the lining of the abdominal wall, and part of the intestine pokes through this hole. A hernia is "easily reducible" if, when the peritoneum bulges through the outer abdominal wall, the patient can restore the hernia sac to its proper position without assistance of a doctor by either pressing on the sac or laying down. An inguinal hernia can become acutely incarcerated. An acutely incarcerated hernia that is not treated within 6 to 8 hours may become strangulated, (i.e., the intestinal loop protruding through the abdominal wall becomes constricted), a condition that may result in serious injury or even death. An acutely incarcerated hernia also causes severe pain. Even an unincarcerated hernia can cause pain and limits activities." See, Delker V. Maass, 843 F. Supp 1390 (D. Or 1994).

Plaintiff is in pain and discomfort, and his activities are restricted such as, coughing, sneezing bowel-movements and long standing causes him great pain.

(5)

11) The threatened injury to plaintiff outweighs any harm the proposed injunction may cause defendants. The Relief the plaintiff seeks is an order compelling the defendants to perform their preexisting duties under the U.S. Constitution. The law is clearly established, deliberate indifference to a prisoners serious medical needs violates the eighth amendment because denying or delaying medical treatment is tantamount to "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 US at 104, 97 S.Ct at 291; Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir. 1988).

A condition need not be life threatening to be deemed serious. Brown v. Hughes, 894 F.2d 1533 (11th Cir. 1990). Even state law is establish. In Fountain v. State, 648 So.2d 591 (Ala. Civ. App. 1994) the Court held, "an inmate in a state penal facility has a constitutional right to adequate medical care." Estelle supra.

12. The public interest will not be disserved by a grant of a preliminary injunction. To the contrary, the public interest is well served by protecting the constitutional rights of all of its members.

(6)

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR A TEMPORARY RESTRAINING ORDER/
PRELIMINARY INJUNCTION

Plaintiff submits this memorandum of law in support of his motion for a temporary restraining order/ preliminary injunction:

In determining whether a TRO should issue, a court must consider whether the party seeking the injunction has demonstrated that: (1) it has a reasonable likelihood of success on the merits of the underlying claim; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if the preliminary injunction is denied; (4) the irreparable harm the party will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary is granted; and, (5) the preliminary injunction will not harm the public interest. Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895 (7th Cir 2001).

A. The plaintiff is threatened with irreparable harm:

It is clearly established that knowledge of the need for medical care and intentional refusal to provide that care constituted deliberate indifference. E.g., Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989). (7)

The plaintiff complains that he has been denied care for a serious medical need contrary to a physicians instructions for surgery. Exhibit "__", clearly reflects Dr. John A. Tassin documenting that plaintiff's hernia "Needs Repair". Defendants have refused to provide necessary surgery. Such conduct by prison officials is a clear violation of the Eighth Amendment Estelle v. Gamble, 429 U.S. 97, 115 97 S.Ct 285 (1976) Noting that "intentionally interfering with the treatment once prescribed" is a form of unlawful deliberate indifference.

As a matter of law, the continuing deprivation of constitutional rights constitutes irreparable harm, see, Elrod v. Burns, 422 U.S. 347, 373 96 S.Ct 2623 (1976). The law is establish, and in Estelle, the Supreme Court suggested a range of medical needs that would be serious enough to require medical attention as a matter of constitutional right. "In the worse cases, [failure to treat an inmate's medical needs] may actually produce physical torture or a lingering death, the evils of most immediate concern to the drafters of the Amendments. In less serious cases, denial of medical care may result in pain and suffering which no one suggest would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency."..... 429 U.S.

At 103, 97 S.Ct at 290 (citations and quotations omitted). "Prisoners must not be forced to endure needless suffering from the painful and untreated effects of an accident or serious illness." Estelle, 429 U.S. at 105, 97 S.Ct at 291. "A condition need not be life threatning to be deemed serious". See, Brown v. Hughes, 894 F.2d 1533 (11th Cir. 1990).

In addition, the plaintiff is threatened with irreprable harm because of the nature of his injury: an inguinal hernia, a small opening in the lining of the abdominal wall, and part of his intestine pokes through this hole. Plaintiff's inguinal hernia can become acutely incarcerated if not treated within 6 to 8 hours may become strangulated, a condition that may result in serious injury or even death! Plaintiff's hernia causes him pain and discomfort, also, limits his daily activities. If he does not receive proper treatment, at the proper time, death can occur! Irreprable harm will result unless an injunction is granted in this case. As a result of being denied normal activities, plaintiff has suffered pain, discomfort, anxety, depression, problems coughing, sneezing, bowel-movements, dizzyness and has to push down on the hernia cause his left leg while coughing.

(9)

The Defendants by law, may not, act
with deliberate indifference to the
deprivation of a basic human need. See,
FARMER v. BRENNAN, 511 U.S. 825 (1994)

B. The balance of hardship favors the plaintiff

In deciding whether to grant TRO's and preliminary
injunctions, courts ask whether the suffering of the
moving party if the motion is denied will outweigh the
suffering of the non-moving party if the motion is
granted. The threat of harm to the plaintiff outweighs
any harm that might result to defendants by a TRO
or injunction. As this memorandum has explained,
plaintiff need surgery. Dr John A. Tassin recommended
surgery. Defendants refuse! Prison Health Services
are not new to deny prisoners medical care. In
ANCATA v. Prison Health Services, Inc., 969 F. 2d 700
(11th Cir. 1985) the Court held: "Defendants failed
to provide even the level of diagnostic care that
they themselves believed necessary. The knowledge
of the need for medical care and intentional
refusal to provide that care has consistently
been held to surpass negligence and constitute
deliberate indifference." Id.

(10)

Morethanless, Exhibit "__" clearly satisfy both the objective and a subjective components of the deliberate indifference Standard set out by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct 285, 290, 50 L.Ed 2d 251 (1976). First, plaintiff's medical need is serious because it is one that has been diagnosed by Dr. Tassin on 3-21-06 as "mandating treatment". In Ramos v. Lamm, 639 F.2d 559, 575 (10th Cir. 1980) cert denied, 450 U.S. 1041, 181 S.Ct 1259, 68 L.Ed 2d 239 (1981) the court said: "Deliberate indifference to serious medical needs is shown when prison officials have prevented an inmate from receiving recommended treatment or when an inmate is denied access to medical personnel capable of evaluating the need for treatment. Preliminary injunctive relief is appropriate to correct this ongoing constitutional violation.

C. The plaintiff is likely to succeed on the merits:

In the Seventh Circuit, the threshold for showing a reasonable likelihood of success is low. Plaintiff is prose', and asks of this court to adopt that the plaintiff need only demonstrate a "better than negligible chance of succeeding."

(11)

See, Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir 1999).

What defendants have done — "intentionally interfering with [medical] treatment once prescribed" — was specifically singled out by the Supreme Court as an example of unconstitutional "deliberate indifference" to prisoner's medical needs. Estelle v. Gamble, 429 U.S. 97; See also, Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir 1988). (failure to return patient to VA hospital for treatment for Agent Orange exposure); LaFaut v. Smith, 854 F.2d 389, 393-94 (4th Cir 1987) (failure to provide rehabilitation therapy recommended by orthopedic specialist).

D. The Relief sought will serve the public interest.

In this case, the grant of relief will serve the public interest because it is always in the public interest for prison officials to obey the law. Duran v. Anaya, 642 F.Supp. 510, 527 (D.N.M. 1986)(Respect for law, particularly by officials responsible for the administration of the State's correctional system, is in itself a matter of the highest public interest.") see also, Llewelyn v. Oakland County Prosecutor's Office, 402 F.Supp 1379, 1393 (E.D. Mich 1975) ("the Constitution is the ultimate expression of the public interest").

(12)

## POINT II

### THE PLAINTIFF SHOULD NOT BE REQUIRED TO POST SECURITY.

Usually a litigant who obtains interim injunctive Relief is asked to post security. Rule 65(c) Fed. R. Civ. P., however, the plaintiff is an indigent prisoner and is unable to post security. The court has discretion to excuse an impoverished litigant from posting security, Orantes-Hernandez, v. Smith, 541 F.Supp 351 N 30 (C.C.D.CAL. 1982); In view of the serious medical danger confronting the plaintiff, the court should grant the Relief Requested without requiring the posting of security.

### ATTACHED EXHIBITS

1) Exhibit "A" Ala. Dept. of Corr. "Problem List" Medical Record.
2) Exhibit "B" Prison Health Services "Progress Notes"
3) Exhibit "C" LCS Corr. Services, Doctor's Order Sheet. Reflecting Dr. John A. Tassin
4) Exhibit "D" LCS Corr Services "Nurse's Notes.
5) Exhibit "E" Prison Health Services Grievance 10/11/06. 1 & 2,
6. Exhibit "F" LCS Offender Request for Medical Records
7) Exhibit "G & H" Grievance to Ms. Lawrence.

(13)

DECLARATION IN SUPPORT OF PLAINTIFF'S
MOTION FOR A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION

Marcellus Breach AIS 160710 declares under the penalty of perjury 28 U.S.C. 1748 the following:

1) I'am the plaintiff in this case. I make this declaration in support of my motion for a temporary restraining order and a preliminary injunction to ensure that I receive necessary medical care.

2) As set forth in the Complaint in this case, on dates 2/20/05 and 5/05/05 Dr. Bosserman documented that I suffer from a "left inguinal hernia". See, Exhibits "A, B" On 5/05/05 Dr. Bosserman issued a "TRUSS" for my hernia. Exhibit "B".

3) On 3/21/06 Dr. John A. Tassin made his order and recommendation that my hernia "needs repair". Exhibit "C". Doctor Tassin told me "a TRUSS is no good, its outdated and theres nothing that can be done for my pain, You need Surgery".

4. I am in constant pain because the hernia has gotten worse. I have pain when I cough, sneeze, and I have to lean forward when having a bowel-movement. I have to lift my left

(14)

my left leg, push down on the hernia when I cough, or sneeze,

5. I have repeatedly requested to Ms Lawrence to give me surgery. I even provided a copy of my medical records to her After she Said she can't find any Record of a hernia or a doctor order? I question!

6. I cannot fully exercise, or do long standing because my hernia will come out, and I have to hold down on it, I get dizzy at times, I'am in pain!

7. Defendant Ms Lawrence is the Medical Administrator at Kilby prison, and is Responsible for scheduling medical appointments outside the prison when a prisoner needs specialized treatment or evaluation.

8. The defendants have the Responsibility for providing me the necessary medical treatment as well as the ability to arrange it,

9. I am in imminent danger or in danger of serious physical injury because my hernia is getting worse,

10. For the reasons set forth in the memorandum of law with this motion, the plaintiff is entitled to a temporary restraining order Requiring the defendants to arrange for an

(15)

for an examination and a plan of treatment by a qualified specialist, and to a preliminary injunction requiring the defendants to carry out that plan of treatment.

I swear that the foregoing is true and correct under the penalty of perjury 28 U.S.C. 1746 This 18th day December 2006.

Marcellus Breach

Marcellus Breach AIS 160710
Dorm West-16
P.O. Box 150
Kilby Corr. Facility
Mt. Meigs, AL 36057

Sworn to and subscribed before me the undersigned Notary Public on this 19 day December 2006

Perry O. Woods

Notary Public

Marcellus Breach 160710

My Commission expires May 28, 2007

(16)

# PRISON HEALTH SERVICES

## MEDICAL RECORDS

## FOR

## MARCELLUS BREACH
## AIS# 160710

DORM WEST - BED 16
KILBY CORRECTIONAL FACILITY
P.O. BOX 150
MT. MEIGHS, AL. 36057

# ALABAMA DEPARTMENT OF CORRECTIONS

# PROBLEM LIST

*Exhibit "A"*

INMATE NAME *Breach, Marcelus*          AIS# *160710*

Medication Allergies: *NKDA / NKDA*

Medical: Chronic (Long-Term) Problems
Roman Numerals for Medical/Surgical

Mental Health Code: SMI  HARM  HIST  NONE
Capital Letter for Psychiatric Behavior

| Date Identified | Chronic Medical Problem | Mental Health Code | Date Resolved | Provider Initials |
|---|---|---|---|---|
| 2/20/05 | PPD ∅ mm | | | ND |
| | Inguinal hernia, (L) | | | |
| | Previous §x, (L) foot | | | |
| | Trauma of LS spine | | | |
| | Hypoglycemia, confirmed by BS | ✓'s | | |
| 2/2/06 | PPD | | Bear | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**If Asthmatic label:  Mild – Moderate – or Severe.



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

Exhibit "B"

## PROGRESS NOTES

| Date/Time | Inmate's Name: Breach, Marcelus                                    D.O.B.: 7/28/69 |
|---|---|
| 5/05/05 | Ⓢ  C/O  LBP, hernia pain, Ⓛ foot pain. Hypoglycemia |
| 1600 | ⒫Ⓜⓗ  Trauma to LS spine from fall. Reports 2 compression fx's |
|  | calcaneal fx, Ⓡ foot. From the fall |
| 138/82 | Inguinal hernia x 1 year |
| 154 lbs | Hypoglycemia since adolescence |
| 97² | Ⓟⓔ  NAD w̄ pleasant affect.        2 cm, irregular red patch |
| P=104 | Speech, conversation nl        on abd. central bite mark |
| R=12 | Gait nl |
|  | Ⓛ foot with boney changes involving calcaneus |
|  | 3 x 5 cm inguinal hernia on Ⓛ, not into scrotum |
|  | Ⓐ • Hypoglycemia |
|  | Ⓟ     ↑ sack lunch qd. The sandwiches to be used to |
|  |      avoid hypoglycemia |
|  |   • Inguinal hernia – truss issued |
|  |   • foot/ankle pain – ankle wrap |
|  | X-rays of LS spine and foot. |
|  |   • LBP – tylenol prn |
|  |   • Keflex bid x 7δ for possible cellulitis |
|  |   • Profiles written |
|  |                    M W Bosserman, MD |

60111 (5/85)

**Complete Both Sides Before Using Another Sheet**

Exhibit "C"

# LCS CORRECTIONS SERVICES, INC.
## DOCTOR'S ORDERS SHEET

Offender Name: _Breach, Marcelus_     DOC#: _AL 160710_

| Date / Time | Allergies: NKA |
|---|---|
| 3-21-06 | Hernia (L) Inguinal Hernia Needs repair? |
| | NP R |
| | M. Maye |
| 4/12/06 | IBP 400mg BID til dental Dr. Tassin/ M. Maye |
| 7/18/06 | NCF Pt has (L) Inguinal Hernia Incarcerated, Elective Procedure |
| | M. Maye |

DWV

# LCS CORRECTIONS SERVICES, INC.
## Nurse's Notes

Exhibit "D"

Facility: SLCC
Offender: Breach, Marcelus          Offender #: A160710

| Date/Time | Notations | Signature/Title |
|---|---|---|
| 3/20/06 | Intake Screening complete c̄ 4 bunk profile given (ankle | M. Pardo |
| 3.21.06 | Saw MD on rds c̄ new orders | M Mafield |
| 4.12.06 | RSC done c̄ new orders | M. Mafield |
| 6/02/06 | Scheduled to go to Dr. Perkins for dental work this date | M Mafield |
| 6/2/06 | Returned no paperwork or new orders | M. Mafield |
| 6/8/06 | Trip papers made for Dr. Wood runs on 6/13/06 | M. Duggan |
| 6.13.06 | Returned c̄ NNO; return for f/u | M. Mafield |
| 6/28/06 | Trip papers made for Dr. Perkins on 6/30/06 | M. Duggan |
| 6.30.06 | Canceled Dr. Perkins due to limited appt × 20 inmates | M Mafield |
| 7.12.06 | Received a call from Branden from Alabama re: Inguinal Hernia. Stated Hernia Repairs are not done there - unless incarcerated or into scrotum. This subject has not c̄ hernia since seen by Dr Tassin 3.21.06 - Subject placed on sick call for 7.18.06 to see if he needs a referral to a Surgeon | D. Lott |
| 7.10.06 | We faxed report to Ruth Naglich in reference to inguinal hernia inmate requesting repair & is filing a lawsuit to have surgery done | M. Mafield |
| 17 | | |
| 7.12.06 | 9:40 AM phone call received from Lynn Brown and she will return call on previous day on 7.10.06; awaiting return call for follow up | M Mafield |
| 7.17.06 | 4:25 pm Brought to medical - left inguinal hernia easily reducable - No c̄ pain | D. Lott |
| 7.18.06 | Saw Dr. Tassin & NO change in hernia & NO new orders given | M Mafield |

*To: Ms. Lawrence Medical*
*Warden Rowell.*

*Exhibit
"E"*

*1 of 2*

**Prison Health Services**
**Inmate Informal Grievance**

_MARCELLUS BREACH_    _160710_      _West - 16_    _10/11/06_
NAME          AIS #                UNIT         DATE

**PART A---Inmate Complainant**

D
SP-

1) I have a Medical Hold that is preventing me from actively participating in any additional DOC program. I ask to be removed that I may be classed to go to another camp.

2) Medical Records Reflect Dr. Tassie Recommended surgery for a hernia. I have problems coughing, sneezing, bowel movements, I need surgery. Why am I on Medical Stop up, and no one has seen me in regards to surgery?

See attached. page 2.

_Marcellus Breach_
INMATE SIGNATURE

**PART B –RESPONSE**      DATE RECEIVED 10-17-06

I have searched your medical files here from front to back. there are no records or sick calls that you were examined for a hernia. I see no evidence of a medical hold or medical stop up. If you are having health problems please sign up for sick call and be examined by the doctor.

_L. Lawrence_   Rn HSA
**MEDICAL STAFF SIGNATURE**

_10-17-06_
**DATE**

If resolution has not occurred and you wish to file a formal grievance you may request a grievance form from the Health Services Administrator.  Return the completed grievance form to the Health Service Administrator.

| | | Y | N | | | Y | N |
|---|---|---|---|---|---|---|---|
| I | Dissatisfied with Quality of Medical Care | ☐ | ☐ | VI | Delay in Health Care Provided | ☐ | ☐ |
| II | Dissatisfied with Quality of Dental Care | ☐ | ☐ | VII | Problems with Medication | ☐ | ☐ |
| III | Dissatisfied with Quality of Mental Health Care | ☐ | ☐ | VIII | Request to be seen | ☐ | ☐ |
| IV | Dissatisfied with Response to Non-Medical Request | ☐ | ☐ | IX | Request for Off-site Specialty Care | ☐ | ☐ |
| V | Conduct of Healthcare Staff | ☐ | ☐ | X | Other | ☐ | ☐ |

*Certificate of Service.*

*I hereby place same into a sealed envelope address to Medical Complaint Box, copy to Warden Rowell, hand said on this 11th day October 2006.*

*Marcellus Breach*

*1 of 2.*

11/03 - Alabama

TO: Ms Lawrance, Medical.
   Deputy Warden Rowell.

Exhibit
"E"
2 of 2

Date  October 11, 2006

RE: Informal Grievance p.2

To Whomsoever it may concern.

Medical Records will Reflect Dr. tussie Recommending Surgery for my hernia. I'm asking that the "Medical" Hold placed on me be removed. Because of this hold, I can't be Reclassed for any other institutional camps. I've worked to hard, I have Work Reports, several certificates of completions, and my college degree, to come to a dead-end stop! I'm asking to have classification Review my prison Record. I haven't had a "Review" in 18 months. That's frustrating. If this medical hold is about Surgery, then I Request Surgery. Not a medical hold, then nothing is done about it. I humbly ask someone assist me about Resolving this matter. I depreciate strongly placing this hold on me, then doing absolutely nothing in Regards to following doctors orders concerning Surgery.

Please Advise,
Marcellus Breach 160710

2 of 2

Exhibit "F"

**Offender Request**

FACILITY: S.L.C.C.

TO: Director of Nursing      DATE: 7/14/06
(Person to whom request is to be sent)

NATURE OF REQUEST
     MEDICAL ☑     OTHER ☐    HIPAA - Form. Medical Records.
(state nature of request)

     REQUEST TO OFFICIAL ☐

OFFENDER NAME Marcellus Breach     OFFENDER # A-160710

HOUSING ASSIGNMENT Bearcat 2

DETAILS OF REQUEST (Briefly state nature or reason for request):

I have a HIPAA Medical Authorization Form
in which I must place into the hands of
Whoever to Release My Medical Records OR
I'll get a court ORDER. You may call
Attorney Chris Edwards. 337-237-6881.
By law you must release them Need Med Records by
7/26/06

---

**OFFICIAL USE ONLY**

DATE: 7/17/06      TIME: _____

REQUEST IS: ( ) Approved   (✓) Denied   ( ) Handled

Request is forwarded to _____

Comments: HIPA Consent reg for medical records
to be released to hosp, doctors and other
medical estab and staff that is
rendering or going to render medical
Care this is not consent for your own
medical records per say for records to

NOTE: All requests shall be forwarded to the proper official who shall fully answer/handle the request. A copy of the completed Form shall be sent to the offender, the original shall be placed in the Offender File

attorney we need an Order to do so
Ola has been notified (#2) of current med
cond + will. M Mann
render decision asap on surg or no surg

Exhibit
"G"

Marcellus Breach    160710          West-16      11/7/06

TO: Mrs. L Lawrence R.N.

ON 10-17-06 You stated that you Searched My Medical Records
from front to back AND found NO evidence of A hernia. I do
Not know yet how well PHS keeps Medical Records up-dated
Out: 2-20-05 Inguinal hernia A.D.O.C. 5/8/05 hernia pain
3×5 cm inguinal hernia on R Not into Scrotum. L Truss
issued. LEF. DR Bosserner. 3-21-06 hernia R Inguinal
Not Documented "Needs repair": DR Tassin.
Referred to Surgeon: Are you sure you have up Records?
I need this Surgery, I cant go ANy other And a medical
Note. Do you want me to show you proof DR Tassin Recommended
Surgery? Why Am I devied/delayed surgery?
                                              Marcell Bruh

Certificate of Service
Placed hand mail into Medical bin sealed envelope
on 10/7/06.
            Marcell Bruh

            1 of 3.

Exhibit "H"

To: Mrs L. Lawrence.

From: Marcellus Broach, 160710
West-16

Date: November 7, 2006

Re: Hernia / Medical Records:

Exhibit enclosed:
Basic Offender Physical Examination
LES 3/20/06. Reflecting Medical
Records "Hernia"

Mrs Lawrence:

I'm stuck here at Kilby because of Medical hold.
My Records on 3-21-06 Reflect indirect inguinal
hernia, "Needs Repair" Dr. Tassin. I do not desire
to wait till its either strangulated or not
Reducible. The most important elements in the
early development of a hernia are congenital or
acquired muscle weakness and the increased intra
abdominal pressure. Dr. Tassin made his medical
Recommendation that the hernia needs Repair. It is
painful at times, limits my activities. The classification
of surgery as elective does not abrogate PHS's
the duty, or power to promptly provide necessary medical
treatment. The mere words "Elective" surgery ARE NOT
a talisman insulating PHS from the Reach of the
Eighth Amendment "deliberate indifference." Now, I do not
continue to waste $300 sick call for 6 Tylenol. Please
Do you need to See the Records? You stated NO
     Please Advise      evidence of a hernia? Here is
Marcell Broach  2 a3   evidence for your Review!

GENERAL SERVICES ADMINISTRATION
INTERAGENCY COMMITTEE ON MEDICAL RECORDS
FIRMR (41 CFR) 201-45.505

*Marcelus Breach*

| HEALTH RECORD | DENTAL |
|---|---|

## SECTION I. PRESENTING DENTAL STATUS

PAGE: 1

| 1. PURPOSE OF EXAMINATION | | | 2. TYPE OF EXAM | 3. DENTAL CLASSIFICATION |
|---|---|---|---|---|
| INITIAL | SEPARATION | OTHER (Specify) | 1  2  3 | 1  2  3  4 |

**4. MISSING TEETH, EXISTING RESTORATIONS, AND PROSTHETIC APPLIANCES**

REMARKS

6-13-06
#15 Occ Amal
1 carp Lid
1 PA film
#9

= 25
= 10
35

Request PFM crown = (350)

USE ONLY IF DIFFERENT FROM BOX 7 BELOW

| PLACE OF EXAMINATION | DATE |
|---|---|

SIGNATURE OF DENTIST COMPLETING THIS SECTION

**5. DISEASES AND ABNORMALITIES**

REMARKS

Crown denied
4/13/06 per ada
Commie office
m malie

**7. EXAMINING DENTIST AND FACILITY**

| PLACE OF EXAMINATION | DATE |
|---|---|

SIGNATURE OF DENTIST

**6. INDICATE X-RAYS USED IN THIS EXAMINATION**

| PANORAMIC RADIOGRAPHS | FULL MOUTH PERIAPICAL | POSTERIOR BITE-WINGS | OTHER: | NONE TAKEN |
|---|---|---|---|---|

PATIENT'S IDENTIFICATION (Use this Space for Mechanical Imprint)

| PATIENT'S NAME (Last, First, Middle Initial) | | SEX |
|---|---|---|
| DATE OF BIRTH | RELATIONSHIP TO SPONSOR | COMPONENT/STATUS | DEPART/SERVICE |
| SPONSOR'S NAME | | RANK/GRADE |
| SSN OR IDENTIFICATION NO. | ORGANIZATION |

DR MIKE WOODRUFF
PO 507
MARKSVILLE LA 71351

EXCEPTION TO SF 603
APPROVED BY GSA/IRMS 1-91

DENTAL
Standard Form 603

Case 2:06-cv-01133-MEF-TFM  Document 3-2  Filed 12/22/2006  Page 12 of 16

### Medical Diagnosis

A diagnosis of peritonitis is suspected on the basis of the patient's history and physical examination. Diagnostic tests and procedures done to confirm the inflammation include a complete blood cell count, serum electrolyte measurements, abdominal radiography, computed tomography, and ultrasound. Paracentesis may be done to obtain a specimen of fluid for culture.

### Medical Treatment

A nasogastric tube is inserted for gastrointestinal decompression. Intravenous fluids, antibiotics, and analgesics are ordered. Surgery may be done to close a ruptured structure and to remove foreign material and fluid from the peritoneal cavity.

## NURSING CARE of the Patient with Peritonitis

### Assessment

Begin by assessing the patient's present illness. Pain is the prominent symptom. Record the onset, location, and severity of the pain and any related symptoms. When peritonitis is suspected, record a history of abdominal trauma, including surgery. Take and record vital signs. Inspect the abdomen for distention and auscultate for the presence of bowel sounds. Note measures of fluid status, including tissue turgor, moisture of mucous membranes, and intake and output.

Nursing Diagnoses, Goals, and Outcome Criteria: Peritonitis

| NURSING DIAGNOSES | GOALS AND OUTCOME CRITERIA |
|---|---|
| Acute Pain related to inflammation | Pain relief: patient states pain is reduced or relieved, has relaxed manner |
| Decreased Cardiac Output related to decreased blood volume | Normal cardiac output: pulse and blood pressure within patient norms, skin warm and dry, fluid output equal to intake |
| Imbalanced Nutrition: Less than Body Requirements related to nausea, vomiting, nothing by mouth status | Adequate nutrition: stable body weight |
| Anxiety related to threat of serious illness and invasive treatment | Decreased anxiety: patient states anxiety reduced or relieved, calm manner |

### Interventions

### Acute Pain

Administer opioid analgesics as ordered for pain. Position the patient with the head elevated and provide comfort measures such as massage and relaxation techniques. Notify the physician if pain relief is not obtained.

### Decreased Cardiac Output

The shift of fluid from the blood into the peritoneal cavity may be so great that the patient develops deficient intravascular fluid volume. Cardiac output falls, and perfusion of vital organs is reduced. Administer intravenous fluids as or-

dered and monitor fluid intake and output. Monitor vital signs and report increasing pulse, restlessness, pallor, and decreasing blood pressure. In addition to deficient fluid volume, the patient may go into shock because of septicemia (the presence of bacteria in the blood).

### Imbalanced Nutrition: Less than Body Requirements

Gastrointestinal decompression usually eliminates nausea and vomiting, but antiemetics may be ordered as needed. Check to be sure that the nasogastric tube is draining at all times.

### Anxiety

The patient is likely to be anxious because of pain and uncertainty about what is happening. Even when there is a sense of urgency in caring for the patient, give simple explanations for procedures and tell the patient what to expect. Encourage the patient to ask questions. If surgery is planned, essential preoperative teaching may have to be done quickly. Explain to the patient the importance of breathing and leg exercises after abdominal surgery. The physician may order sedatives to calm the patient.

## POSTOPERATIVE NURSING CARE

Postoperative care is like that for any major surgery and is described in Chapter 16.

## Abdominal Hernia

### Pathophysiology

Muscles play an important role in keeping the abdominal organs in place. Weakness in those muscles may allow a portion of the large intestine to push through the abdominal wall. The bulging portion of intestine is called a hernia. Hernias most often occur in areas where the abdominal wall is already weak. Weak locations include the umbilicus and the lower inguinal areas of the abdomen (Fig. 36-19). Hernias also may develop at the site of a surgical incision.



FIGURE 36-19 Abdominal hernias.

*need Pg 700  pg 2*

Hernias are classified as reducible or irreducible. A reducible hernia slips back into the abdominal cavity with gentle pressure or when the patient lies on his or her back. When the hernia cannot be manipulated back into place, it is said to be irreducible, or incarcerated. An irreducible hernia may impair blood flow to the trapped loop of intestine, causing it to become gangrenous. A hernia that is trapped and deprived of blood is said to be strangulated.

### Signs and Symptoms

Hernias are usually diagnosed when a patient reports a smooth lump on the abdomen. The lump may disappear when the patient is lying down or at rest but returns when standing or straining. Heavy lifting or coughing usually causes the hernia to appear.

Hernias usually are not painful unless they become incarcerated. With incarceration, the patient has severe abdominal pain and distention, vomiting, and cramps.

### Medical Diagnosis

Hernias are diagnosed on the basis of the health history and physical examination.

### Medical Treatment

Surgical repair of hernias is usually recommended even if they are reducible. Repair prevents the possibility of incarceration. Two surgical procedures are used to repair hernias. Herniorrhaphy is the repair of the muscle defect by suturing. If additional measures are needed to strengthen the abdominal wall, a hernioplasty is done. Strong materials are used to cover and reinforce the defect.

Some patients cannot tolerate the stress of surgical hernia repair. For them, a truss may be advised, although trusses are not used as widely as in the past. A truss consists of a pad that is placed over the hernia and a belt that holds it in place. It provides support for the weak muscles.

## NURSING CARE of the Patient with Abdominal Hernia

### Assessment

Begin the assessment with the patient's chief complaint, usually a smooth lump in the abdomen that appears and disappears with various activities and positions. Ask about pain and vomiting, which may be present if the hernia is strangulated. Explore the patient's work and home responsibilities to identify the type of physical exertion required. The most relevant aspect of the physical examination is the assessment of the abdomen. Inspect for abnormalities and listen for bowel sounds in all four quadrants. If the patient wears a truss, inspect the skin underneath it for signs of irritation.

#### Nursing Diagnoses, Goals, and Outcome Criteria: Abdominal Hernia

| NURSING DIAGNOSES | GOALS AND OUTCOME CRITERIA |
| --- | --- |
| Risk for Injury related to hernia strangulation or distention | Absence of injury (strangulation): normal pulse and temperature without abdominal pain |
| Impaired Skin Integrity related to pressure created by the truss | Absence of complications caused by truss: intact skin without redness under truss |

## Preoperative Interventions

### Risk for Injury

Monitor the patient for signs and symptoms of strangulation (nausea, vomiting, pain, abdominal distention, fever, and tachycardia). If these symptoms develop, immediately notify the physician. It is important for the nonsurgical patient to know that these symptoms should be reported.

Determine what restrictions the patient has in relation to physical exertion and provide verbal and written instructions to the patient.

### Impaired Skin Integrity

Teach patients who use a truss what measures to take to avoid injury to the skin.



## PATIENT TEACHING PLAN
### Truss

- Put the truss on before rising each morning.
- Check under the pad and the belt several times daily for skin irritation.
- The truss does not cure a hernia, so you still should avoid straining.

## Postoperative Interventions

The general postoperative care of patients who have undergone surgery is discussed in Chapter 16. In addition to the routine postoperative assessments, after hernia repair be especially concerned with assessing bowel and bladder elimination, wound healing, and the patient's knowledge about ways to avoid placing stress on the healing surgical wound.

#### Nursing Diagnoses, Goals, and Outcome Criteria: Abdominal Hernia Repair

| NURSING DIAGNOSES | GOALS AND OUTCOME CRITERIA |
| --- | --- |
| Impaired Urinary Elimination related to abdominal surgery, anesthesia | Normal urinary function: urine output equal to fluid intake, no bladder distention |
| Constipation related to immobility, effects of anesthesia, and abdominal surgery | Normal bowel elimination: formed stools at regular intervals without pain or straining |
| Acute Pain related to scrotal swelling | Pain relief: patient states less or no pain, relaxed manner |
| Risk for Injury related to wound dehiscence | Well-healed wound: margins intact, decreasing redness and swelling |

ity of the muscle wall and increased intra-abdominal pressure. Defects in the muscle wall result from weakened collagen or widened spaces at the inguinal ligament. These muscle weaknesses can be inherited or acquired as part of the aging process. Intra-abdominal pressure increases with pregnancy and obesity. Similar increases in intra-abdominal pressure can occur with heavy lifting and coughing.

The most common types of abdominal hernias (Fig. 56-3) are:

● Indirect
● Direct
● Femoral
● Umbilical
● Incisional

An indirect inguinal hernia is a sac formed from the peritoneum that contains a portion of the intestine or omentum. The hernia pushes downward at an angle into the inguinal canal. Indirect inguinal hernias frequently become large and often descend into the scrotum. Direct inguinal hernias, in contrast, pass through a weak point in the abdominal wall.

Femoral hernias protrude through the femoral ring. A plug of fat in the femoral canal enlarges and eventually pulls the peritoneum and often the urinary bladder into the sac.

Umbilical hernias are congenital or acquired. Congenital umbilical hernias appear in infancy. Acquired umbilical hernias directly result from increased intra-abdominal pressure. They are most frequently seen in obese individuals.

Incisional, or ventral, hernias occur at the site of a previous surgical incision. These hernias frequently result from inadequate healing of the incision, most often caused by postoperative wound infections, inadequate nutrition, and obesity.

Hernias may also be classified as:

● Reducible
● Irreducible (incarcerated)
● Strangulated

A hernia is reducible when the contents of the hernial sac can be replaced into the abdominal cavity by gentle pressure. An irreducible (incarcerated) hernia cannot be reduced or placed back into the abdominal cavity. A hernia is strangulated when the blood supply to the herniated segment of the bowel is cut off by pressure from the hernial ring (the band of muscle around the hernia). If a hernia is strangulated, there is ischemia and obstruction of the bowel loop. This can lead to necrosis of the bowel and possibly bowel perforation. Signs of strangulation are:

● Abdominal distention
● Nausea
● Vomiting
● Pain
● Fever
● Tachycardia

The elderly client with a strangulated hernia may not complain of pain but usually has nausea and vomiting. Any of these symptoms require immediate medical and eventually surgical intervention. Any hernia that is *not reducible* requires immediate and careful surgical evaluation.

The most important elements in the development of a hernia are congenital or acquired muscle weakness and increased intra-abdominal pressure. The most significant factors contributing to increased intra-abdominal pressure are:

● Obesity
● Pregnancy
● Lifting of heavy objects

Hernias can occur at any age, but specific incidence statistics are not available. Any condition that contributes to an increase in intra-abdominal pressure can lead to development of a hernia, especially if there is a pre-existing weakness in the abdominal wall.

Indirect inguinal hernias, the most common type, are most frequent in men because they follow the



UMBILICAL HERNIA
(through congenital
defect in muscle)

INCISIONAL HERNIA
(through inadequately
healed surgical repair)

FEMORAL HERNIA
(through femoral ring)



DIRECT INGUINAL HERNIA
(through area of
muscle weakness)

INDIRECT INGUINAL HERNIA
(through inguinal ring)

Inguinal ring

Spermatic cord

FIGURE 56-3 ◆ The types of abdominal hernia.

Many patients have temporary problems with urination after hernia repair surgery. Keep intake and output records, document voiding, and assess for bladder distention.

## Constipation

Bowel activity also may cease temporarily in response to the anesthesia and manipulation of the bowel during surgery. Therefore, monitor bowel sounds and note the passage of flatus. Like any other patients having major surgery, hernia repair patients need to keep their lungs clear to prevent complications. Encourage them to turn and deep breathe, but they should not cough or sneeze. Coughing and sneezing put tension on the surgical incision and repaired tissues.

## Acute Pain

Scrotal swelling is common after inguinal hernia repair. A scrotal support and an ice pack can greatly reduce the painful swelling.

## Risk for Injury

Activities are usually restricted for 2 to 6 weeks. Reinforce the physician's instructions about refraining from exertion and lifting. Advise the patient to report fever or wound drainage to the physician.

## Inflammatory Bowel Disease
### Pathophysiology

Inflammatory bowel disease (IBD) refers to both ulcerative colitis and Crohn's disease. Crohn's disease is also known as regional enteritis. In both conditions, there is inflammation and ulceration of the lining of the intestinal tract. With ulcerative colitis, the inflammation typically begins in the rectum and gradually extends up the bowel toward the cecum. The progression of Crohn's disease is different in that it can affect any area of the gastrointestinal tract. Although the terminal ileum is most often affected, there may be multiple sites interspersed with healthy segments of bowel.

The two conditions have similar symptoms and are treated much the same way medically. Surgical options, however, are different.

A patient with IBD may have a few isolated attacks or may have a chronic condition. With chronic IBD, attacks may last days or even months, followed by periods of remission lasting several weeks to several years.

### What Does Culture Have to do with IBD?

IBD is more common among Caucasians and people of middle Eastern origin than among African Americans and Asian Americans.

### Causes

The exact cause of IBD is unknown. Possible causes that are being studied include infectious agents, autoimmune reactions, allergies, and heredity. In the past, it was thought that IBD might be caused by stress. Current thinking, however, suggests that stress is the result of IBD rather than the cause.

The symptoms of IBD vary with the extent of the disease. When ulcerative colitis affects only the rectum, the patient may be constipated. More commonly, however, patients have diarrhea with frequent bloody stools, and abdominal cramping. In severe cases, the patient also may have fever and weight loss.

Symptoms of Crohn's disease are even more variable, depending on the areas affected. If the stomach and duodenum are involved, symptoms include nausea, vomiting, and epigastric pain. Involvement of the small intestine produces pain and abdominal tenderness and cramping. An inflamed colon typically causes abdominal pain, cramping, rectal bleeding, and diarrhea. Systemic signs and symptoms include fever, night sweats, malaise, and joint pain.

### Complications

The local complications of IBD include hemorrhage, obstruction, perforation (rupture), abscesses in the anus or rectum, fistulas, and megacolon. Patients who have had ulcerative colitis for 10 years have a greatly increased risk of cancer of the large intestine. Patients with Crohn's disease also are thought to have an increased risk of colon cancer, although the relationship is less clear.

Systemic complications also may be found with ulcerative colitis. These are conditions outside the intestine but related to the colitis. They include inflammation of the joints and eyes, skin lesions, urinary stones, and liver disease. Of course, severe or prolonged diarrhea can result in malnutrition, anemia, and fluid and electrolyte imbalances.

### Medical Diagnosis

Inflammatory bowel disease is suspected on the basis of the history and physical examination. Abdominal radiography may be done to rule out obstruction before additional tests are done. To confirm the diagnosis, the physician may then order a barium enema examination with air contrast and colonoscopy with biopsy, ultrasonography, computed tomography, and cell studies.

### Medical Treatment

Treatment of IBD addresses both the local and the systemic effects of the disorders. Intestinal inflammation is treated with drug therapy, diet, and rest. The drugs listed here may be used alone or in combination depending on the specific situation.

- *Corticosteroids* to decrease inflammation in mild to moderately severe episodes
- *Immunosuppressants* to inhibit the immune response
- *Antidiarrheals* to control diarrhea EXCEPT in severe colitis
- *Anticholinergics* to reduce pain and gastrointestinal motility and secretions
- *Antibiotics* to treat mild to moderately severe attacks of Crohn's disease: usually sulfasalazine, mesalamine, olsalazine; sometimes metronidazole, ciprofloxacin, cephalexin, or sulfa-trimethoprim. Antibiotics are not very useful for ulcerative colitis
- *Aminosalicylates*, specifically 5-ASA (mesalamine oral, suppository, or enema; or sulfasalazine), to reduce symptoms
- *Iron supplements* and *vitamin $B_{12}$* to treat anemia

rity of the muscle wall and increased intra-abdominal pressure. Defects in the muscle wall result from weakened collagen or widened spaces at the inguinal ligament. These muscle weaknesses can be inherited or acquired as part of the aging process. Intra-abdominal pressure increases with pregnancy and obesity. Similar increases in intra-abdominal pressure can occur with heavy lifting and coughing.

The most common types of abdominal hernias (Fig. 56–3) are:

- Indirect
- Direct
- Femoral
- Umbilical
- Incisional

An indirect inguinal hernia is a sac formed from the peritoneum that contains a portion of the intestine or omentum. The hernia pushes downward at an angle into the inguinal canal. Indirect inguinal hernias frequently become large and often descend into the scrotum. Direct inguinal hernias, in contrast, pass through a weak point in the abdominal wall.

Femoral hernias protrude through the femoral ring. A plug of fat in the femoral canal enlarges and eventually pulls the peritoneum and often the urinary bladder into the sac.

Umbilical hernias are congenital or acquired. Congenital umbilical hernias appear in infancy. Acquired umbilical hernias directly result from increased intra-abdominal pressure. They are most frequently seen in obese individuals.

Incisional, or ventral, hernias occur at the site of a previous surgical incision. These hernias frequently result from inadequate healing of the incision, most often caused by postoperative wound infections, inadequate nutrition, and obesity.

Hernias may also be classified as:

- Reducible
- Irreducible (incarcerated)
- Strangulated

A hernia is reducible when the contents of the hernial sac can be replaced into the abdominal cavity by gentle pressure. An irreducible (incarcerated) hernia cannot be reduced or placed back into the abdominal cavity. A hernia is strangulated when the blood supply to the herniated segment of the bowel is cut off by pressure from the hernial ring (the band of muscle around the hernia). If a hernia is strangulated, there is ischemia and obstruction of the bowel loop. This can lead to necrosis of the bowel and possibly bowel perforation. Signs of strangulation are:

- Abdominal distention
- Nausea
- Vomiting
- Pain
- Fever
- Tachycardia

The elderly client with a strangulated hernia may not complain of pain but usually has nausea and vomiting. Any of these symptoms require immediate medical and eventually surgical intervention. Any hernia that is *not reducible* requires immediate and careful surgical evaluation.

The most important elements in the development of a hernia are congenital or acquired muscle weakness and increased intra-abdominal pressure. The most significant factors contributing to increased intra-abdominal pressure are:

- Obesity
- Pregnancy
- Lifting of heavy objects

Hernias can occur at any age, but specific incidence statistics are not available. Any condition that contributes to an increase in intra-abdominal pressure can lead to development of a hernia, especially if there is a pre-existing weakness in the abdominal wall.

Indirect inguinal hernias, the most common type, are most frequent in men because they follow the



UMBILICAL HERNIA
(through congenital
defect in muscle)

INCISIONAL HERNIA
(through inadequately
healed surgical repair)

FEMORAL HERNIA
(through femoral ring)



DIRECT INGUINAL HERNIA
(through area of
muscle weakness)

INDIRECT INGUINAL HERNIA
(through inguinal ring)

Inguinal ring

Spermatic cord

**F I G U R E  5 6 – 3** ◆ The types of abdominal hernia.