IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARCELLUS BREACH, #160710, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06-CV-1133-MEF |
| | ) | [WO] |
| | ) | |
| PRISON HEALTH SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

On December 22, 2006, Marcellus Breach ["Breach"], a state inmate and frequent litigant in the federal courts of this state, filed a motion for leave to proceed *in forma pauperis* pursuant to the provisions of 28 U.S.C. § 1915(a). *Court Doc. No. 2*. However, under the directives of 28 U.S.C. § 1915(g), a prisoner is not allowed to bring a civil action or proceed on appeal *in forma pauperis* if he "has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."[1]

---

[1] The Eleventh Circuit has determined that the "three strikes" provision of 28 U.S.C. § 1915(g), which requires frequent filer prisoner indigents to prepay the entire filing fee before federal courts may consider their cases and appeals, "does not violate the First Amendment right to access the courts; the separation of judicial and legislative powers; the Fifth Amendment right to due process of law; or the Fourteenth Amendment right to equal protection, as incorporated through the Fifth Amendment." *Rivera v. Allin*, 144 F.3d 719, 731 (11th Cir. 1998), *abrogated on other grounds*, *Jones v. Bock*, ___ U.S. ___, 127 S.Ct. 910 (2007) (inmate's failure to exhaust administrative remedies is an affirmative defense, i.e., inmate is not required to specifically plead or demonstrate exhaustion in his complaint).

The records of this court establish that Breach, while incarcerated, has on four occasions had 42 U.S.C. § 1983 cases dismissed as frivolous pursuant to the provisions of 28 U.S.C. § 1915. Breach likewise concedes his "history of frivolous litigation" resulting in a violation of the directives of § 1915(g). *Plaintiff's Motion for Leave to Proceed In Forma Pauperis - Court Doc. No. 2* at 3. The cases on which the court relies in finding this violation are: (1) *Breach v. Jones, et al.*, Civil Action No. 5:96-CV-791-JHH-PWG (N.D. Ala. 1996); (2) *Breach v. Story, et al*., Civil Action No. 5:96-CV-47-CLS-PWG (N.D. Ala. 1996); (3) *Breach v. Backer*, Civil Action No. 5:95-CV-3297-JHH-PWG (N.D. Ala. 1996); and (4) *Breach v. State of Alabama, et al.*, Civil Action No. 5:95-CV-3246-JHH-PWG (N. D. Ala. 1996).

In the present civil action, Breach complains that he has been denied necessary surgery for a left inguinal hernia. Breach asserts that the hernia "at times ... is not 'easily reducible' and is painful.... My hernia can rupture, possible strangulation at 'any' time. I cannot exercise, lift weight ... participate in 'any' rehabilitative programs ... because of this hernia." *Plaintiff's February 13, 2007 Response - Court Doc. No. 23* at 5-6. Breach maintains that on March 21, 2006 Dr. John A. Tassin, a physician at the private prison in Louisiana to which he had been transferred by the Alabama Department of Corrections, prepared "a 'doctor report' and recommendation ... that plaintiff's inguinal hernia 'needs repair.' ... [O]n 7-12-2006 the Alabama Department of Correction's Commissioner's Office [through] defendant Ruth Naglich 'denied' approval of costs for plaintiff to receive surgery

as recommended ..."  *Plaintiff's Complaint - Court Doc. No. 1* at 7.

Due to the nature of the claim presented by Breach and based on his violation of the three strikes provision of 28 U.S.C. § 1915(g), the court directed counsel for the named defendants to provide information relevant to the disposition of Breach's application for leave to proceed *in forma pauperis*.  *Order of January 10, 2007 - Court Doc. No. 8*. Counsel filed responses in compliance with this order, including affidavits from medical personnel and copies of Breach's medical records, which specifically refute the allegation made by Breach that he has been denied necessary medical treatment.  Dr. Michael E. Robbins, a board certified internist and the medical director at Kilby Correctional Facility, provided an affidavit which addresses Breach's claim as follows:

> ....  I am familiar with Mr. Breach and have been involved with the medical services provided to him at Kilby.  In addition, I have reviewed Mr. Breach's Complaint in this action as well as his medical records....
>
> Mr. Breach was first diagnosed with an inguinal hernia in 2005.  An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole."  He has been incarcerated at Kilby Correctional Facility since September 6, 2006.  I have reviewed his medical records and have been actively involved in his medical treatment.  It is noted in a Progress Note from Dr. Bosserman on May 5, 2005 that Mr. Breach does have an inguinal hernia on the left, but it is not into the scrotum....  Dr. Bosserman placed the inmate on limited restrictions of no lifting greater than 25 lbs. and no standing or walking for greater than one hour due to (1) a deformity of his left foot, (2) an ankle brace, and (3) a hernia for which [Dr. Bosserman] prescribed a truss.  In a yearly Health Evaluation dated February 2, 2006, [Breach] made no oral complaints about any pain associated with the inguinal hernia.
>
> Mr. Breach was to be seen on December 21, 2006 for evaluation of his left inguinal hernia but left before his exam could be performed.  It should

also be noted that Mr. Breach signed up for Sick Call on October 9, 2006 and October 12, 2006, but signed a Release of Responsibility Waiver and left before his exam on both dates. Mr. Breach was examined on December 27, 2006 for evaluation of his left inguinal hernia. He voiced no other complaints at that time. It was noted on that date that he was not wearing his truss. The hernia was noted as being easily reducible, non-strangulated, and is not incarcerated. Inmate was prescribed a left inguinal truss for 180 days and Percogesic for pain. He was placed on restrictions of no straining, no lifting more than 20 lbs. and placed in bottom bunk for 180 days. It was noted at that time that there was no need for surgical referral at present. In my opinion, the inmate's hernia does not require surgical intervention and I believe surgery is not medically necessary. The type hernia which Mr. Breach has should not cause the patient any pain nor is it a condition that a reasonable person cannot live with under the conditions and restrictions governing Mr. Breach.

Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complains were evaluated and treated in a timely and appropriate fashion at Kilby Correctional Facility, and that his diagnosed conditions have been treated in a timely and appropriate fashion.

At no time did I or any of the medical or nursing staff at Kilby Correctional Facility deny Mr. Breach any needed medical treatment, nor did we ever act with deliberate indifference to any serious medical need of Mr. Breach.... [I]t is my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. Mr. Breach was seen and evaluated by the medical or nursing staff, and was referred to an appropriate care provider or given appropriate care, each time he registered any health complaints at Kilby Correctional Facility. At all times, Mr. Breach's known medical complaints and conditions were addressed as promptly as possible under the circumstances.

*Exhibit B to the February 14, 2007 Response of Medical Personnel - Affidavit of Dr.*

*Michael E. Robbins* at 1-3.

On February 6, 2007, correctional officials filed a response supported by the affidavit of Dr. George Lyrene, a physician board certified in internal medicine and the

medical director for the Alabama Department of Corrections.  In this affidavit, Dr. Lyrene

expresses his assessment of Breach's hernia.

> I have reviewed the record of Mr. Marcellus Breach.  The medical
> issue he presents is really quite a simple one.  He has a small, easily reducible
> inguinal hernia, for which conservative management with applied support
> and limitations on heavy lifting are very appropriate.  This is a hernia that
> was present by intake documentation and would be amenable to surgery
> which was clearly elective at the time of his admission and would clearly not
> be necessary now....  This is a minor problem ... for which surgery is not
> necessary at this time and which is being appropriately managed.

*Exhibit A to the February 6, 2007 Response of Correctional Personnel - Affidavit of Dr.*

*George Lyrene* at 1-2.

The medical records of Marcellus Breach submitted in response to the complaint

support the assertions contained in the affidavits of Dr. Robbins and Dr. Lyrene.

Specifically, these records demonstrate that Breach prepared a sick call request on October

6, 2006 seeking medication but thereafter signed a release of responsibility stating that he

did not need the medication.  *Exhibit A to the February 14, 2007 Response of Medical*

*Personnel* at 33-34. On October 11, 2006, Breach prepared another sick call request in

which he sought "to get the 'medical' hold [related to the left inguinal hernia] off of me..."

*Id*. at 81.  Since Breach sought a release from medical restrictions, the attending nurse

advised him that referral to a physician was necessary.  *Id*. at 82.  On October 12, 2006,

Breach signed a release of responsibility acknowledging his refusal of the referral.  *Exhibit*

*A to the February 14, 2007 Response of Medical Personnel* at 83.

5

On December 21, 2006, nurse Lorraine Graves evaluated Breach regarding his left inguinal hernia and referred him to the certified registered nurse practitioner for examination. The progress notes for this date establish that Breach "came down for screening and vital signs but left before exam despite counseling from [the nurse practitioner] that he needed to stay. Chart review shows that he signed up for sick call on 10/9/06 & 10/12/06 but signed a release of responsibility waiver and left before exam on both dates.... I cannot evaluate his hernia (or anything else) if he refuses to stay for his examination." *Id*. at 85. On December 27, 2006, the nurse practitioner saw Breach "for evaluation of [left] inguinal hernia." *Id* at 86. Breach reported no other complaints at this time. Medical personnel noted Breach "is not wearing a truss. [Left] inguinal area noted with small inguinal hernia; easily reducible; non-strangulated; not incarcerated; size is 3x5 cm (unchanged from exam description on 5/5/06).... [N]o record of [documentation that he needs surgery] in his chart." *Id*. The nurse practitioner "consulted with Dr. Robbins" who prescribed (i) no straining, (ii) no lifting more than 20 pounds, (iii) a bottom bunk profile, and (iv) Percogesic for pain. *Id*. at 86-88. Based on the current condition of Breach's left inguinal hernia, Dr. Robbins determined that there is "no need for surgical referral ..." *Id*. at 86.

Upon an exhaustive and thorough review of the record, the court concludes that Breach was not under imminent danger of serious physical injury at the time he filed the

instant complaint as is required for an inmate to meet the imminent danger exception to application of 28 U.S.C. § 1915(g).  *See Medberry v. Butler*, 185 F.3d 1189, 1192-1193 (11th Cir. 1999).  Although Breach may have been recommended for surgery in March of 2006, such does not establish imminent danger at the time he filed this case in December of 2006.  "Congress' use of the present tense in § 1915(g) confirms that a prisoner's allegation that he faced imminent danger sometime in the past is an insufficient basis to allow him to proceed *in forma pauperis* pursuant to the imminent danger exception to the statute.  *See Ashley [v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998)] (holding that "the statute's use of the present tense verbs 'bring' and 'is' demonstrates, an otherwise ineligible prisoner is only eligible to proceed IFP if he is in imminent danger at the time of filing. Allegations that the prisoner has faced imminent danger in the past are insufficient to trigger this exception to § 1915(g) and authorize the prisoner to pay the filing fee on the installment plan."); *see also Baños[v. O'Guin*, 144 F.3d 883, 885 (5th Cir. 1998) (holding that "the language of § 1915(g), by using the present tense, clearly refers to the time when the action or appeal is filed or the motion for IFP status is made.").  Breach's mere lay conjecture that surgery on his hernia is medically necessary at this time is refuted by the affidavits of two physicians board certified in internal medicine.

Based on the foregoing, Breach's motion for leave to proceed *in forma pauperis* before this court is due to be denied and this case dismissed without prejudice as Breach

failed to pay the requisite filing fee upon the initiation of this cause of action. *Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002)(emphasis in original) ("[T]he proper procedure is for the district court to dismiss the complaint without prejudice wen it denies the prisoner leave to proceed *in forma pauperis* pursuant to the provisions of § 1915(g)" because the prisoner "must pay the filing fee at the time he *initiates* the suit.").

## CONCLUSION

Accordingly, it is

ORDERED that the motion for leave to proceed *in forma pauperis* filed by Marcellus Breach on December 22, 2006 (Court Doc. No. 2) be and is hereby DENIED. Additionally, it is the RECOMMENDATION of the Magistrate Judge that this case be dismissed without prejudice for Breach's failure to pay the full filing fee upon initiation of this case. It is further

ORDERED that on or before March 6, 2007 the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the

Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 23rd day of February, 2007.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE