IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH,# 160710            *

            Plaintiff,                *

Vs.                                   *          Case No:  2:06-CV-1133-MEF

PRISON HEALTH SERVICES, INC.,         *
    et. al.,

            DEFENDANTS.               *


**BREACH'S <u>SECOND</u> SET OF INTERROGATORIES AND REQUESTS FOR
ADMISSIONS, FOR PRODUCTION OF DOCUMENT TO DEFENDANTS UNDER
FED.R.CIV.P.**

TO:    **DR. GEORGE LYRENE, M.D., & DR. MICHAEL E. ROBBINS, M.D.,
       & DR. HOBBS @** Limestone Correctional Facility.


***COMES NOW***, the Plaintiff Marcellus Breach (hereinafter "Breach"), in proper person

"Pro Se", moves this Court <u>if necessary</u> to issue an ORDER to Defendants pursuant to Federal

Rules of Civil Procedures, Rules 33, 34 and 36, hereby requesting that named parties and/or

their "Agents" being persons under their control: *Dr. George Lyrene, M.D., Dr. Michael E.*

*Robbins, M.D.,* and *Dr.Hobbs, M.D.,* who are employed with Prison Health Services, Inc., and

are acting as an "Agent" for the Defendants, and at all times when the alleged constitutional

violations occurred, Breach was under the "control" of the Defendants, and in the "custody" of

their "Agents" being both the department of corrections, and South Louisiana Correctional

1

Center. Breach respectfully request that each above-named person shall answer <u>separately</u>, fully and in writing, the following interrogatories under oath, affirmation in accordance within the definitions and instructions set forth below, within thirty (30) days after service of these Interrogatories, Request for Admissions, and Production of Documents; furthermore, for the defendants to provide full disclosure, along with their answers herein, copies thereof supporting evidentiary materials, as follows:

## I.    DEFINITION AND INSTRUCTIONS:

¶ 1.    Each interrogatory shall be answered separately and as completely as possible. The fact that investigation is continuing or that discovery is not complete is not an excuse for failure to answer each interrogatory as fully as possible. If you are unable t to answer an interrogatory after you have attempted to obtain the information, answer to the extent possible.

¶ 2.    A question that seeks information contained in or information about or identification of any documents may be answered by providing a copy of such document for inspection and copying or by furnishing a copy of such document without a request for production.

¶ 3.    Rule 33, Fed. R. Civ. P., permits that the interrogatories to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or government agency, by any officer or agent, who shall furnish such information as is available to the party. Rule 33(d) also provides interrogatories upon your Agents and the request for production of documents under said rule is requested from persons under your control.

¶ 4.   In responding to these requests for Admissions, Productions of Documents and Interrogatories, defendants shall furnish not only such information and documents as are available to them, but also such information and documents as are known to, available to, or in their constructive, actual possession, custody or control of any agent, employee, employer, representative, co-defendants, witnesses, the Alabama Department of Corrections, Prison Health Services, Inc., LCS, Louisiana Corrections Services, ("SLCS")  specifically, et. al., including but not limited to defendants attorney(s) and investigators, unless such documents, information, data, records, tapes, inter alia, is claimed to be privileged from production or discovery.

¶ 5.   If defendants consider any documents, information, data, records, tapes, inter alia, falling within Breach's requests for Production of Documents, attached heretofore separately, as being privileged from discovery, Breach request that, at this time or responding to the Request for Production, the defendants serve upon Breach, a written list of the documents so withheld from said discovery and identify each document by date, author or parties, names, addresses of each person, party or witness having copies of said same documents, information, data, records inclusive to medical records from March 2006 through current, and the basis on which the document is considered to be privileged from production, re-production, photo-copying et. seq, by discovery.

¶ 6.   These Interrogatories and Discovery requests are continuing and are to be supplemented in accordance with Federal Rules of Civil Procedure, Rule 26(e). However, in

the event that any, and all information or documents come to the attention of or into possession, custody or control of the defendants, the attorneys of record, or such other interested persons, parties, agency, employees, employers et. al., subsequent to the filing of defendants response / answers hereto, which documents, records, or information are responsive to any and all Interrogatories or Request for Admissions, but which were not included in defendants initial answers / responses thereto, said additional information, documents, data, records, inter alia, shall be furnished to Breach, or in the interim, thereinafter appointment of stand-in counsel, as soon as possible, unless otherwise specified by this Court, or upon subsequent motion.

¶ 7.    In responding to these DISCOVERY requests, defendants are to furnish such documents, records, data, information, memorandum inter alia, as are available to them, their agents, employees, employers, co-defendants, witnesses, or representatives, such as attorney of record, but not limited to therein, as to defendants access to which is currently constructive, actual possession or otherwise.

¶ 8.    With regard to Breach's Requests for Admissions and pursuant to Federal Rules of Civil Procedure, Rule 36 et. seq., the defendants shall specifically deny the matter or set forth in detail the reasons why the answering / responding party, person, defendant or representatives cannot truthfully admit or deny the matter. A denial shall fairly meet the substance or the requested admission, and when good faith requires defendants shall qualify an answer or deny only a part of the matter of which an admission is requested; the defendant shall specify

so much of it is true and qualify or deny the remainder. Defendants may not give lack of information or knowledge as a reason for failure to admit or deny unless defendants state that they have made a lawful, and reasonable inquiry and that the information known or readily obtainable by the defendants is insufficient to enable them to admit or deny. If defendants consider that a matter of which an admission has been requested presents a genuine issue of material fact, for trial, they may not, on that ground alone, object to the requests; defendants may, subject to the provisions of Federal Rules of Civil Procedure, Rule 37(c), deny the matter or set forth reasons why defendant cannot admit or deny it.

¶ 9.    As a courtesy, in answering / responding to any and all DISCOVERY requests herein, defendants are asked to, please preface said answers / responses with the "Interrogatory or Request for Admission, Production, being Answered."

## II.    DEFINITIONS:

¶ 1.    When used in these discovery requests and subsequent set of Interrogatories or discovery requests henceforth, the following definitions shall apply:

  a.    As used herein, the term *"document"* means any written, or graphic matter however produced or reproduced, including but not limited to correspondence, e-mails, other written communications, contracts, agreements, notes, memoranda, analyses, projections, studies, work papers, calendars, lists, catalogues, and minutes of meetings: every type of recorded information dated or prepared prior to or subsequent to this

action, including but not limited to any faxes, reports, letter, grievance, message, records, minutes, work sheets, drafts, instruction, work assignment, internal communication, order, and any other written, recorded, electronic, or graphic material however produced, reproduced and, in the absence of the original, copy thereof and any copy bearing markings not present on the original or other copy thereof.

b.   As used herein in reference to a natural person, the word *"identify"* shall mean to state the persons full name, address and present or last known home, business address(es) and their said association to defendants.

c.   As used in reference to a business or other entity, the word *"identify"* shall mean to state the business or other entities full name and present or last known address(es) and their said association to defendants.

d.   The word *"incident"* includes the circumstances and events leading up to, and surrounding the alleged violation of denial of surgery, unless inguinal hernia is incarcerated or into the scrotum, per Alabama Department of Corrections Commissioner's Office on 7/12/2006 from a Brandon Kindard via telephone directed to Diana Lott at South Louisiana Correctional Center, Basile, Louisiana, inclusive to any, and all persons, parties, witness(es), defendants involved before, during and after the allegations arose, as documented in "LCS CORRECTIONS SERVICES, INC., NURSE'S NOTES; and, any and all other

circumstances giving rise to this civil action.

e.     The word *"specifically identify"* as used with respect to any and all documents, inter alia, is understood to mean the following: 1) title; 2) date; 3) name and position of originator; 4) name and position of any and all defendants, co-defendants, witness(es) and supervisors; 5) name(s) and position(s) of any and all persons, parties, agents, employees, employers, representatives who received copies or any portions of the documents in question; 6) description of the document subject matter and contents; 7) location of the documents, records, data, faxes, any and all information, inter alia, in question; 8) name(s) and position(s) of the custodian(s) of the above requested documents in their entirety, but not limited to.

### III.     INTERROGATORIES:

¶ 1.     State your full name, occupation, education background, your marital status, and your length of service in your present employment position, your previous occupational experience.

¶ 2.     State your experience(s) in "Hernia Repairs" and please state how many surgical operations you have performed on Hernias in your career, lists the State and hospitals where you performed the majority of these surgeries.

¶ 3.     Have you ever performed a surgically operation for any type of hernia on any Inmate in the department of corrections, since your employment? If yes, please identify the number of surgeries, agency and/or individual(s) who you performed said surgery; and, specifically identify the names, department, agency, employer, employee or such other who approved this

surgery?

¶ 4.    List every inmates name and their identification number, and location (if available) at Limestone Correctional Facility, and Kilby Correctional Facility, also Alabama Inmates at South Louisiana Correctional Center in Basile, Louisiana who are currently diagnosed as having: Indirect Inguinal Hernia, and/or Direct Inguinal Hernias. Please identify and explain each person's hernia status, i.e., reducible, or non-reducible, strangulated, incarcerated, into the scrotum, whether surgery was performed, denied, or labeled as "elective procedure".

¶ 5.    Please identify employers you have had, other than your current position, in the last ten (10) years. With regard to each, state the inclusive date of employment; the type of work performed; your discretionary functions, duties and responsibilities.

¶ 6.    Have you ever been sued in any Court where a Judgment was entered against you? State year, name of court, and explain the allegations and judgment against you.

¶ 7.    Have you ever had your medical license suspended, revoked, or any adverse action taken against you by any Medical Board.

¶ 8.    Please explain in details, and produce the affidavit, and any and all documents to support your medical findings and denial of surgery for plaintiff's inguinal hernia supported by any written policy, statement, regulations guidelines, supporting your opinion stated in the Affidavit that you signed and submitted to the Magistrate Judge in this Case.

¶ 9.    Did you ever conduct an examination on Plaintiff's inguinal hernia? Produce your records, reports, diagnoses and recommendations.

¶ 10.  Produce the documents and explain in details the procedures followed by the Administration of health care delivery systems regarding that hernia repair are not done unless the hernia is incarcerated or into the scrotum.

¶ 11.   Who's decision is it, or was it regarding plaintiff's hernia, that plaintiff's hernia can not be repaired unless it is incarcerated or into the scrotum? Produce names, titles, duties, and documents of person(s).

¶ 12.  On March 21, 2006, *Dr. John A. Tassin, M.D.,* made his order and recommendation that plaintiff's inguinal hernia "Needs Repair". Please explain in detail your personal involvement in this matter: Produce every document to support your decisions, recommendations, and answers and/or instructions to other parties, naming each person given instructions to, there locations, title, duties, whereabouts.

¶ 13.  Since October 6, 2006 through April 30, 2006 did you review specifically the Medical Records from South Louisiana Correctional Center reflecting plaintiff's inguinal hernia in either PHS's or ADOC's medical records of the plaintiff? If No, explain why?

¶ 14.  *Identify by document* your duties, job descriptions, title, regulations, guidelines for the Administration of health care delivery systems to inmates under the custody or supervision of the department of corrections, especially surgery request, and approval or denials, more specifically regarding hernia repairs.

¶ 15.  Did you have any conversation with Branden Kindard pertaining to surgery and Dr. Tassin's recommendation?  If so, state dates, locations, names of witnesses present, and

explain in details the extent of the conversation.

¶ 16.  *Identify by document*, the names, duties, titles,  positions, of any and all persons having knowledge, and or actually were/are involved in the decision-making denying plaintiff's request for surgery due to this hernia or who would have had knowledge by their job description, and duties.

¶ 17.  *Identify by document*, Lynn Brown and are her responsibilities, position, duties, involvements and/or responsibility pertaining to this matter and/or pertaining to inmate request for surgery.

¶ 18.  *Identify by document*, the procedure, policy, regulations, statements or guidelines for the administration of health services for an inmate in custody or supervision of the department of corrections requesting to obtain surgery for an inguinal hernia.

¶ 19.  *Identify by document* any and all person(s), parties, defendant(s) involved in the review, of the medical records, Dr. Tassin's recommendation, investigation, request for approval for surgery, follow up treatments, treatment either by outside appointment or instructions given from March 21, 2006 until current incident in question.

¶ 20.  *Identify by document* the person(s), parties, agents, co-worker(s) whom all have knowledge as to documents, contracts, orders, instructions, pertaining to Breach's hernia and procedures following Dr. Tassin's recommendation that the hernia "Needs Repair?", the date, time of the incident, and specifically identify by documents the whereabouts of any written policy, contract, information as to covering costs for surgery as to Breach while in custody at

LCS, and in custody of the department of corrections as otherwise the name of person or persons fully responsible for either approval of costs, or denial of costs over medical treatment for a hernia.

¶ 21.  *Identify by document* the responsibilities of Brandon Kindard, Ruth Naglich, Linda Lawrence, Nurse Practitioner B. Adams, and any and all persons associated with you by employment, contract, agent, as to approval for any Inmate in custody of the department of corrections for medical care, i.e., surgery specifically for a hernia and/or approval to cover costs for any outside medical appointments and care.

¶22.  Have you communicated with, spoken with Dr. Tassin concerning his recommendation? If so, when and explain in details the extent of the conversation.  Identify by document any relevant materials pertaining to this matter.

¶ 23.  *Identify by document* the policy procedures pertaining to surgery and/or the procedures, policy pertaining for providing medical care to an inmate diagnosed with an Inguinal Hernia entered between all parties in this action, i.e., Alabama Dept. of Corrections, PHS.

¶ 24.  *Identify by document*, or identify person(s) ordered, directed or produced a policy, guidelines or regulations regarding that hernias are not to be repaired unless it is incarcerated or into the scrotum. State the name(s), produce and explain under oath what the person(s) have instructed, dates, times, and names of any witnesses who have knowledge to this fact.

IV.    REQUEST FOR ADMISSIONS:

¶ 1.    Admit or deny that on March 21, 2006 Dr. John A. Tassin made a "Doctor's Order" that

Breach's "Left Inguinal Hernia "Needs Repair?"

¶ 2.    Admit or deny that Breach requested repair?

¶ 3.    Admit or deny, Medical Records from Louisiana reflecting Dr. Tassin's order and recommendation were not in Breach's medical records October through April 30, 2007.

¶ 4.    Admit or deny that grievances were filed complaining about pain and discomfort due to inguinal hernia?

¶ 5.    Admit or deny Prison Health Services, Inc., has a written policy, regulations, custom, practice or a de facto policy of not repairing hernias unless they are incarcerated or into the scrotum?

¶ 6.    Admit or deny that there is a state wide pattern between Alabama Dept. of Corrections and PHS, involving inmates who have hernias that inguinal hernia repairs are not done unless incarcerated or into the scrotum.

¶ 7.    Admit of deny Brandon Kindard denied approval of costs to have Breach's hernia repaired?

¶ 8.    Admit or deny that Ruth Naglich denied approval of costs to have Breach's hernia repaired?

¶ 9.    Admit or deny that Lynn Brown with the Alabama Department of Corrections denied costs to have Breach's hernia repaired?

¶ 10.    Admit or deny you do not know the actual size of Breach's hernia?

¶ 11.    Admit or deny that the only way to stop a hernia from getting worse is to repair the

defect through surgery?

¶ 12.   Admit or deny that the Anatomy of Hernia, --- the most common location for hernia is the abdomen.  A hernia (rupture) is usually noticed as a lump, commonly in the groin or the umbilical region, it appears when a portion of the tissue which lines the abdominal cavity (peritoneum) breaks through a weakened area of the abdominal wall this can give rise to discomfort as the hernia enlarges and can sometimes be dangerous if a piece of Breach's intestine becomes trapped ('strangulated') inside?

¶ 13.   Admit or deny that there is almost no limit to how BIG Breach's hernia could get if continued left untreated?

¶ 14.   Admit or deny that medically there is no cure for a hernia?

¶ 15.   Admit or deny that medical you can cure a hernia without surgery?

¶ 16.   Admit or deny that a non-reducible hernia can become life threatening if part of the intestine gets trapped or strangulated in the opening?

¶ 17.   Admit or deny that a strangulated hernia can become an emergency situation that usually requires immediate surgery?

¶ 18.   Admit or deny that a truss is only for reducible hernias?

¶ 19.   Admit or deny Medical Records from Louisiana do not reflect that Breach was issued a truss while at LCS from March 2006 though October 2006?

¶ 20.   Admit or deny that a truss is the cure for a hernia?

¶ 21.   Admit or deny that issuing a truss is the cheapest way out of repairing hernias?

¶ 22.   Admit or deny that surgery for a hernia is needed to repair the defect in the abdominal wall?

¶ 23.   Admit or deny that if Breach's inguinal hernia is not treated, Breach's hernia can get larger and also lead to serious medical complications?

¶ 24.   Admit or deny that discomfort usually is experienced, especially when coughing, lifting heavy objects, or standing for a long time?

¶ 25.  Admit or deny coughing, sneezing, and having bowel movements can cause pain or discomfort and also can weaken the muscles and cause the hernia to become enlarged?

¶ 26.  Admit or deny that the long-term course is for a hernia to become steadily worse as time goes on, sometimes slowly and sometimes quickly when left untreated?

¶ 27.   Admit or deny that the opening of a hernia cannot heal itself?

¶ 28.   Admit or deny that medicine cannot cure a hernia condition?

¶ 29.   Admit or deny that Tylenol or Ibuprofen cannot ease the pain or discomfort caused by a hernia?

¶ 30.   Admit or deny that Tylenol or Ibuprofen does stop the pain or discomfort caused by a hernia?

¶ 31.   Admit or deny, that medically a doctor can't "treat" a hernia, they must be repaired?

¶ 32.   Admit or deny that medically a doctor can cure a hernia with a truss, and limit a person daily activity?

¶ 33.   Admit or deny that without surgery intervention, serious complications can lead to

injury to the nerves especially the major nerves in the inguinal region being: 1) Ilioinguinal, 2) Iliohypogastric; and, 3) Genitofemoral nerves if the hernia becomes strangulated or trapped inside?

¶ 34.  Admit or deny that if Breach's inguinal hernia is not repaired until it is incarcerated or into the scrotum, basically you are waiting until the natural openings in the wall which are small tunnels called 'canals' becomes strangulated, trapped and complications will arise because when a hernia becomes a non-reducible hernia, medically it then becomes trapped or strangulated in the opening, this can lead to dangerous complications such as obstruction of the flow of intestinal contents or bleed, leading to tissue death and gangrene?

¶ 35.  Admit or deny that under the standard of care, that a hernia ought not to be repaired unless incarcerated or into the scrotum?

¶ 36.  Admit or deny that if a weakness should open up in the abdominal wall, then the 'Corset Effect' is lost and what pushes against it from the inside (the intestines) simply pushes through the "window".  The ensuing bulge, which is often quite visible against the skin, is the hernia?

¶ 37.  Admit or deny that these 'windows of weakness' commonly occur where there are natural weaknesses in Breach's abdominal wall---such as where the 'plumbing' goes through it?

¶ 38.  Admit or deny that overexertion can cause weakness, such as simple coughing or sneezing?

¶ 39.   Admit or deny that the effects felt by Breach can range from perfectly painless, through discomfort, to be very painful indeed?

¶ 40.   Admit or deny that in any case, it is essential to diagnose correctly whether the problem is a 'Groin Strain', a Torn Muscle or a Hernia?

¶ 41.   Admit or deny that it is essential to consult a specialist who regularly sees all kinds of hernia cases?

¶ 42.   Admit or deny that it is the routine and established practice at PHS, and the Alabama Department of Corrections to deny hernia repairs unless they are incarcerated or into the scrotum?

¶43. Admit or deny that a large increase in pain may indicate that the hernia is worsening and a physician should be consulted immediately?

¶ 44.   Admit or deny that a hernia should be inspected daily to ensure it is not becoming infected or developing into a more serious non-reducible hernia?

¶ 45.   Admit or deny that the decision not to repair Breach's hernia was based on the decision from the Alabama Department of Corrections' Commissioner's Office?

## V:    REQUEST FOR PRODUCTION OF DOCUMENTS

a.    That defendants produce and permit defendant to inspect and to copy each of the following documents.

b.    All documentation of any type relating or referring to any programs, pamphlets, letters of other documentation in defendants possession or under his control received, sent,

made, or read by defendants, or by any member of defendants, produce the guidelines for administration of health care delivery system to inmates under the custody or supervision of the department of corrections, policy, regulations, procedures, handbooks, summaries, memorandums, any and all documents pertaining to surgery request, approvals or denials for hernia repairs.

### VI:    DEFINITIONS

a.    Incorporated as instructed herein not limited to but also included that *"document"* means, without limitation, the following items, whether printed, recorded, reproduced, or written by hand: all writings of any kind, including the originals and all non-identical copies, whether different from the originals by reason of any notations

b.    Medical examinations, as used herein, shall include any interview, observation, physical or mental examination, and any other scientific or medical technique or practice designed to obtain information respecting the medical history, condition, diagnosis, and/or prognosis of the person examined.

Done this 1st Day June 2007.

Marcellus Breach AIS # 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true copy of the foregoing upon the following:

Ala.Doc. Legal Division
P.O. Box 301501
Montgomery, Alabama 36130

Rushton, Stakely, Johnstone, Garrett, P.A.
Attorneys for PHS Defendants
P.O. Box 270
Montgomery, Alabama 36101

By placing the same into a sealed envelope properly addressed postage prepaid and mailing First Class U.S. Mail by the prison mailbox system on this/ ˢᵗ Day of June 2007.

Marcellus Breach

Marcelius Breach AIS 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749-7009

LEGAL MAIL
CORRESPONDENCE

CLERK OF COURT
UNITED STATES DISTRICT COURT
P.O. BOX 771
MONTGOMERY, ALABAMA 36101

