# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

MARCELLUS BREACH, # 160710          )

        Plaintiff,          )

Vs.          )          Case No: 2:06-cv-1133

PRISON HEALTH SERVICES, INC., et al.,          )

        Defendants.          )

## *SUPPLEMENTAL COMPLAINT*

### *Preliminary Statement:*

This is a civil rights action filed by *Marcellus Breach*, a state prisoner, for monetary damages, injunctive relief under 42 U.S.C. § 1983, alleging an inimical threat and conspicuous physical health condition that is real and proximate, and that there is a potential malignly consequence to a future deteriorated health--- the threat to plaintiff being subjected to the mediocrity medical care causing an imminent threat, not limited to a possible death if plaintiff is not timely treated: constituting "imminent danger of serious injury". Plaintiff states that defendants have contrived to refuse to provide to plaintiff necessary medical care that would likely alleviate plaintiff's symptoms of having pain and discomfort, and plaintiff's injury is a "serious physical injury" wherein, defendants have acted contumacious with a physician recommendation that plaintiff

1

need surgery; and, are intentionally delaying, denying and refusing to acknowledge the recommendation----intentionally interfering with medical treatment once prescribed by a physician as mandating treatment. Defendants actions are gratuitous and mischievous---unjustified malfeasance by their intentions to continue to withhold proper medical treatment---delayed and withheld necessary medical care, i.e., surgery or any other alternative that would medically alleviate the symptoms of pain and discomfort due to plaintiff's inguinal hernia, problems coughing, sneezing, and bowel movements ---- malignant and limiting the plaintiff's daily activities in violation of the Eighth Amendment to the United States Constitution.

Defendants have attempt to cover-up, forestall medical care, intentionally with intent to allow a future harm within an injury allowing the plaintiff to have to endure gratuitous pain and suffering without surgery or other medically known remedies that would alleviate plaintiff's symptoms constitutes cruel and unusual punishment.

Plaintiff also alleges a Tort action being a "*Danger Creation*," intentional infliction of pain and discomfort, wantonness, recklessness, and emotional distress due to plaintiff's aggravated hernia. Defendants' have intended to encumber necessary medical treatment resulting into the proximate cause of injury. Furthermore, defendants have acted with obduracy and wantonness imposing cruel and unusual punishment by danger creation and establishing and enforcing a de facto policy of refusing to pay for non-incarcerated hernias that cause pain and discomfort forcing the plaintiff to have to

2

Plaintiff is in imminent danger to serious medical needs. A physician as "Needs Repair" has diagnosed plaintiff's medical condition. Also, because non-prison doctors have held by public information and under the standard of care that "repair" is the "only" way to alleviate the painful symptoms of a hernia, and that a hernia will not heal on its own-- it must be repair by surgery intervention: defendants refuse to act and to attempt to alleviate plaintiff's physical danger but, have subjected the plaintiff to have to endure pain and discomfort---threat to his good health which there is an imminent danger to his hernia----possible strangulations of his bowels, and incarceration of his intestine which can lead to death.

## II.
## *JURISDICTION*

1)    This suit is brought under the Eighth Amendment to the United States Constitution, as enforced through *42 U.S.C. § 1983*. Jurisdiction over plaintiff's claim is conferred on this Court by *28 U.S.C. §§ 1331, 1332(a)(c) and 1343(a)(3).*

2)    The Court has supplemental jurisdiction over the plaintiff's state law Tort claims under *28 U.S.C. § 1367.*

3)    The Court has Diversity Jurisdiction of the controversy pursuant to *28 U.S.C. § 1332(c).* Plaintiff demands trial by jury.

4

endure pain and suffering in-violation of plaintiff's rights secured by the United States Constitution. Defendants have breached their duty of care in violation of State law, and have acted at all times under deliberate indifference.

Plaintiff also alleges that the Defendants have hindered withheld medical care, medical records, and withheld grievances and procedures intentionally to forestall the attempts by the plaintiff to fully exhaust his grievance procedures under the PLRA exhaustion requirement. Thus, defendants also continue to withhold, delay and interfere with medical treatment once prescribed by a physician. Defendants refuse while interfering with medical, meaning refusing to either refer plaintiff to an outside specialist or, one be examined by a qualified doctor in hernia repairs to make an independent determination whether surgery is in fact necessary. Defendants have at all times acted and have intentionally withheld medical care below the standard of care that by law is to be provided to prisoners/plaintiff to be the 'same' as to those persons/patients who are not incarcerated. In spite of this, defendants de facto policy of not repairing hernias, unless they are incarcerated or into the scrotum is a de facto policy totally against the standard of care, and violates the Eighth Amendment to the United States Constitution because it subject plaintiff to have to endure pain and suffering without surgery or an alternative to alleviate plaintiff's symptoms. Defendants have acted with recklessness and deliberate indifference to plaintiff's serious medical needs, wherein hernias are a constant danger and a proximate cause to a constant threat to good health.

3

## III.
## VENUE

4)      The Middle District of Alabama is an appropriate venue for this action under 28

U.S.C. § 1391(b)(1) because defendants in their official capacity reside in this district. See

also, 28 U.S.C. § 1392(a).

5)      The Middle District of Alabama is also an appropriate venue under 28 U.S.C. §

1391(b)(2) and 1332(a)(c) because a "substantial part of the events or omissions giving

rise to the claim(s) "occurred" in this district; and, "Prison Health Services Inc., ("PHS")

is a corporation deemed as a 'person' conducting business in this State.

6)      The Middle District of Alabama is also an appropriate venue under 28 U.S.C. §

1391(b)(2) and 1332(a)(c) because a "substantial part of the events or omissions giving rise

to the claim(s) 'occurred' in this district; and, the Defendants are currently in contract

with both Prison Health Services, Inc., ("PHS") and, South Louisiana Correctional

Services, Inc., ("LCS") both a corporation doing business in this State with the Alabama

Department of Corrections by agreement to house Alabama Inmates and provide medical

care at LCS's private prisons in Louisiana: the events or omissions occurred while

plaintiff was at all times under the 'control' of the Defendants and any and all decision

makings regarding the claims put forth in this Complaint.  Both "PHS" & "LCS" acted at

all times as an "Agent" for Defendants in both their individual and official capacity in

which the delegated authority and all claims resolve around the actions of, and the

instructions given, by the Defendants to their Agents, is in this case an action against the Defendants (State) especially, when Defendants have contracted out their medical care---- in their individual capacity and official capacity.

## IV.
## PARTIES

7)      *Plaintiff Marcellus Breach*, is currently housed at Limestone Correctional Facility, 28779 Nick Davis Rd., Harvest, Alabama with a painful injury being a "Left Inguinal Hernia" and has at all times been under the control of the department of corrections.

8)      *Defendant "Prison Health Services, Inc*.," is a Corporation that provides medical and administrative services, including physicians and other health care professionals at the department of corrections prisons by 'contract,' and acts as an "Agent" for purposes of § 1983, and is a 'person' and 'does business' by sufficient contact, is sued in both its "individual capacity" and "official capacity" for damages and injunctive relief for "deliberate indifference" under color of law--- resulting from either direct involvement & participation, failure to act, indirect participation, "Tacit authorization," acts of omission, and failure to act due to their policy, policy statement, regulation, custom or usage that is so "permanent and well settled" as to have "the force of law." Defendant's policy, policy statement, and/or their practice, custom constitutes such a routine pattern, custom or usage that it has been used and is being used "persistently and widespread," "long-standing," or deeply embedded." Defendants custom or usage constitutes a policy

6

amounted to deliberate indifference, written, verbal or de facto. Defendant's decision officially adapted and promulgated by the body's officers—their policy amounts to "deliberate indifference;" and, the policy maker is in full authority to make final policy under state law; is so deficient, as to constitute a policy of deliberate indifference.

9)    *Defendants Michael Cataland* is Chairman and President of Prison Health Services, Inc. He is sued for "deliberate indifference" under color of law in his "official capacity" and "individual capacity". Defendant is liable for the constitutional violation caused by either/or a policy, policy statement, regulations or decision officially adapted and promulgated by the body's officers. Defendant's policy is either facially unconstitutional, and/or the policy amounts to "deliberate indifference". Defendant's acts or omissions due to the policy, custom, usages are "so permanent and well settled" as to have "the force of law." Defendant's direct or indirect practice constitutes such a custom or usage because it is so "persistent and widespread," "long-standing," or "deeply embedded." Defendant's custom or usage may be contrary to written policy or to law. Defendant is President, and he is a "policymaker" and has the authority to make final policy under state law is sued.

10)    *Defendant Rick Dull*, is Vice President for Prison Health Service, Inc. He is sued for "deliberate indifference" under color of law in his "official capacity" and "individual capacity". Defendant is liable for the constitutional violation caused by either/or a policy statement, regulations or decision officially adapted and promulgated by the body's

7

officers. Defendant's policy is either facially unconstitutional, and/or the policy amounts to "deliberate indifference". Defendant's acts or omissions either directly or indirectly due to the policy, custom, usages are "so permanent and well settled" as to have "the force of law." Defendant's practice constitutes such a custom or usage because it is so "persistent and widespread," "long-standing," or "deeply embedded." Defendant's custom or usage may be contrary to written policy or to law. Defendant is Vice President, and he is a "policymaker" and has the authority to make final policy under state law is sued.

11)  *Defendant Jane Haydes, Regional Vice President*, is employed with Prison Health Services, Inc. She is sued in both her "<u>individual capacity</u>" and "<u>official capacity</u>" for deliberate indifference under color of law. Defendant is Regional Vice President, and is also held liable for the constitutional violation caused by either/or a policy, policy statement, regulations or decision officially adapted and promulgated by the body's officers. Defendant's policy is either facially unconstitutional, and/or the policy amounts to "deliberate indifference". Defendant's acts or omissions due to the policy, custom, usages are "so permanent and well settled" as to have "the force of law." Defendant's direct or indirect practice constitutes such a custom or usage because it is so "persistent and widespread," "long-standing," or "deeply embedded." Defendant's custom or usage may be contrary to written policy or to law. Defendant is in a position to make recommendations, act or react to change an unconstitutional policy, custom or usage, is

8

held for failure to act. Defendant can be a "policymaker" and has the authority to make final policy under state law is sued.

12) **Defendant Dr. Michael Robbins**, is employed by Prison Health Services, Inc., as a doctor and is board certified in internal medicine. Dr. Robbins has served as the Medical Director for Kilby Correctional Facility, Mt. Meighs, Alabama. Dr. Robbins is sued in his <u>individual capacity</u>, under color of law for "<u>deliberate indifference.</u>"

13) **Dr. George Lyrene** is contracted as Medical Director for the Alabama Department of Corrections. He is employed upon information and belief with Prison Health Services, Inc. He is sued for "<u>deliberate indifference</u>," under color of law in his <u>individual capacity.</u>

14) **Defendant B. Adams** is a <u>Nurse Practitioner</u> employed with Prison Health Services, Inc., at Kilby Correctional Facility in Mt. Meighs, Alabama. He is sued in his "<u>individual capacity</u>," under color of law for deliberate indifference.

15) **Defendant Linda Lawrence**, is the Medical Administrator at Kilby Correctional Facility, Mt. Meighs, Alabama and is generally responsible for ensuring the provision of medical care to prisoners. She is also over the Medical Grievances and is solely responsible to assuring that inmate grievances are responded timely, <u>placed</u> into the prisoner's medical file and a copy timely returned to the prisoner.

9

She is sued in her "individual capacity" for "deliberate indifference," under color of law.

16)    **Defendant Richard Allen**, respectfully, is Commissioner of the Alabama Department of Corrections.  The Alabama Department of Corrections has all duties, responsibilities, authority, power, assets, liabilities, property, funds, appropriations, contractual rights and obligations, property rights and personnel, whether occurring or vested, which prior to the enactment of Section 14-1-16 through 14-1-17 of the Code of Alabama, were vested in a Board of Corrections and which, by virtue of such statutes, vested in the Governor of the State of Alabama.  Defendant Richard Allen is sued in his "individual and official capacity" as Commissioner of the Alabama Department of Corrections, Ala. Code §§ 14-1-1.1 (1975) for deliberate indifference under color of law: Richard Allen is liable for the constitutional violation caused by either/or, a policy, policy statement, regulations or decision officially adapted and promulgated by the body's officers.  Defendant's policy is either facially unconstitutional, and/or the policy amounts to "deliberate indifference".

Defendant's acts or omissions due to the policy, custom, usages are "so permanent and well settled" as to have "the force of law."  Defendant's direct or indirect practice constitutes such a custom or usage because it is so "persistent and widespread," "long-standing," or "deeply embedded."

Defendant's custom or usage may be contrary to written policy or to law. Defendant is Commissioner, and he is a "policymaker" and has the authority to make final policy under state law is sued.

17)    **Defendant Ruth A. Naglich**, is the Associate Commissioner of Health Services for the Alabama Department of Corrections.  She is sued in her "<u>individual capacity</u>" for "deliberate indifference" under color of law.

18)    **Defendant Brandon Kindard, R.N., R.C.M.,** is Regional Clinical Nurse Manager for the Alabama Department of Corrections is sued in his "<u>individual capacity</u>' for "deliberate indifference" under color of law.  At all times relevant to the events described herein, all defendants have acted under color of law, and are sued for deliberate indifference in both and in part, their official and individual capacities, denying and/or withholding plaintiff with necessary medical treatment in violation of the Eighth Amendment subjecting plaintiff to have to endure gratuitous pain and suffering.

## V.
### SUPPLEMENTAL FACTUAL ALLEGATIONS
### DEFENDANT'S DELIBERATE INDIFFERENCE

19)    On <u>*February 20, 2006,*</u> Dr. Bossermer at Limestone Correctional Facility, Harvest, Alabama diagnosed Breach with an "Inguinal Hernia" amendable to surgery.  Medical records reflect that Dr. Bossermer noted that Breach has pain due to this hernia.  After several complaints filed by Breach to PHS, about having pain and discomfort, Dr.

11

Bossermer issued either Ibuprofen or Tylenol for pain, and a "Truss" for support of the hernia; also, a "work profile" limiting Breach's work duties to no long standing, no prolong walking greater than one (1) hour, and bottom bed profile.

Breach continued to have problems and pain with his hernia, and continued to be monitored by Dr. Bossermer. Breach was then transferred out-of-state to Louisiana being South Louisiana Correctional Services, ("LCS") a private prison in Louisiana in an attempt to alleviate the overcrowding in Alabama prisons.

20)    Upon arrival at South Louisiana Correctional Center, LCS, on or about _March 19, 2006,_ Breach submitted a "<u>sick-call</u>" slip complaining about experiencing pain when coughing, sneezing, and bowel movements. On _March 21, 2006,_ Breach was seen by Doctor John A. Tassin who then conducted an examination on Breach and determined that Breach has a "<u>Left Inguinal Hernia</u>" and made a "<u>doctor report</u>" that Breach's inguinal hernia "<u>Needs Repair</u>". On _March 21, 2006_ at this examination with Dr. Tassin, with Nurse Maxie present Dr. Tassin did so verbally state to Breach:

> **"We will put in a request for approval for your surgery with the Commissioner's Office, they have to approve it, you belong to them, if you belonged to us, we would fit it, but, we have to have Alabama's approval before we can do anything."**

At this time, Breach was wearing his "TRUSS" that was issued by Dr. Bossermer, and was advised by Dr. Tassin:

> **You don't have to use it, you need surgery, a Truss is outdated, and it is no good".**

Breach then threw away his Truss, on the advise of Dr. Tassin and the hope that he was going to receive surgery.  Breach then explained to Dr. Tassin that he has begun to experience problems when *coughing, sneezing* and bowel movements, and that Breach has to lift up his left leg  when coughing and hold down on the hernia to keep it from coming out.  Dr. Tassin told Breach on *March 21ˢᵗ 2007,*

> **"Hernias get worst, they do not get better, you need surgery.**
> **Hold on and let's see if we can get you to Charity Hospital".**

Breach then requested Dr. Tassin prescribed Breach with some type of pain medication because Dr. Bossermer prescribed Tylenol.  Dr. Tassin stated:

> **"You can't treat a hernia, they can only be repaired through**
> **surgery, there is nothing that I can give you for your pain, you**
> **need surgery."**

On *April 11ᵗʰ 2006,* Breach filed another "sick call" request to medical personal complaining as follows:

> "I' am in pain sneezing, coughing, bowel movements.  I have a
> hernia, it is causing me pain!  I need pain medication!   Need
> Medical"

On *April 14, 2006,* "Offender Grievance" filed pertaining to medical as follows:

> "I have a hernia, Dr. Tassin told me on 3-21-06 I need surgery. I'm
> waiting to see a outside doctor. I have a burning pain in my groin
> area. I put in a sick call on or about 4-11-06. I haven't seen
> medical."

13

On *April 16, 2006,* Breach filed another "sick call" request slip addressed to Medical and Warden Jake complaining as follows:

> "Put in sick call on 4-11-06 for hernia haven't seen anyone. Having pain."

On *May 6th 2006* Breach filed another "sick call" request slip to Warden Jake and Medical, complaining: "

> "I need Medical to give me pain medication I keep signing up for medical. Dr. Tassin said I need surgery. I'm in pain!"

On *May 10, 2006,* Breach filed another "Offender Grievance" against [LCS] Medical complaining as follows:

> "On April 11 and May 6, 2006 I've put in sick call slips for pain due to my hernia. My hernia is getting worse. Pain coughing."

On *May 13, 2006,* still without medical attention, Breach submitted another "sick call" request slip to Medical, Warden Copes complaining as follows:

> "I've put in several request slips for medical. I'm in pain! No medication, no Truss, no surgery! I am being denied medical. I'm in pain."

On *June 5th 2006,* Breach filed another "sick call" request slip requesting:

> "I need to see the doctor for pain (hernia) I can't sneeze, cough, w/out pain. It's painful. Need pain medication."

On *June 8th 2006,* again, Breach filed another "sick call" request slip to Warden Jake complaining as follows:

"I have filed several sick calls for pain due my hernia!  No relief!
Why?  Need pain medication. Aspirin.

[1]  On *June 12, 2006,* another "<u>Offender Grievance</u>" complaint was filed by Breach

against: Diana Lott, Nurse Maxie, and Medical Staff as follows:

"4-sick call slips signed up for pain are ignored.  No pain
medication, no doctor you are denying me medical."

On *June 18, 2006,* Breach filed an "<u>LCS Offender Grievance</u>" complaining:

"I've been recommended for surgery for a hernia: I've yet seen
anyone to have surgery."

On *August 3, 2006,* Breach again filed another "<u>Offender Grievance</u>" complaining:

"My hernia came out last night, can't walk without pain. It's Big!
Need Medical."

On *August 17th 2006,* Breach filed another "<u>sick call</u>" request slip complaining:

"I have not received any medical attention since March 2006
[pertaining to hernia] I need to see the Dr. Tassin for pain----
hernia."

On *August 20, 2006,* another Offender Grievance was filed stating:

"I am in pain due to this hernia:  I have got no answers from
medical pertaining to pain medication or surgery.  I am having
problems sneezing, coughing, and bowel movements.  I can't
cough without pain.  I need surgery or to see a outside doctor.  I
am having pain, my hernia comes out!"

---

[1] Breach obtained a Temporary Restraining Order in the District Court of Evangeline Parish, District Court
Case No: 00067786-B and Judgment against LCS on several issues: 1) inadequate grievance procedures,
none of Breach's grievances were addressed or returned to Breach. **Marcellus Breach v. Gary Copes, et al.**

On or about *August 2006*, Breach filed an "*Application For A Temporary Restraining Order/Preliminary Injunction*" requesting the District Court Honorable Judge Thomas F. Fuslier for Evangeline Parish 13th Judicial District Court for Louisiana to conduct an evidentiary hearing as to why LCS [defendants] refuse to provide Breach with surgery, or any other necessary medical attention.  A Hearing date was set for *October 2006*, and again Breach was seen on or about *October 3rd, 2006*, by Doctor Tassin, wherein told Doctor Tassin: "**LCS refuses to give me surgery, so I am asking a judge to review the matter.**"  Nurse Maxie said:  **You Won't Get Your Surgery Here, Maybe In Alabama, But I promise You, We Are Not Going To Do It**".

On or about *October 6th 2006*, Breach was transferred back to the Alabama Department of Corrections.

### MEDICAL RECORDS REFLECT

21)    On *July 10, 2006*, South Louisiana Correction Services, Inc., (LSC) faxed a report to Defendant Ruth Naglich **"[I]n reference to inguinal hernia inmate requesting repair and is filing a lawsuit to have surgery done**."

22)    [2]On *July 12, 2006,*  LCS's Medical personal, upon information and belief Diana Lott, **"Received a call from Brandon [Kindard] from Alabama re 'Inguinal Hernia---stated**

---

[2] Defendant Brandon Kindard IS NOT a doctor.  Records reflect that LCS relied on Brandon's instructions not to repair Breach's hernia unless it is incarcerated or into the scrotum.

hernia repairs are not done their—unless incarcerated or into scrotum…'subject placed on sick call for 7-18-06 to see if he needs a referral to a surgeon.'"

23)    On July 18, 2006, Breach was finally seen by Dr. Tassin and complained that he was having problems coughing, sneezing, and having bowel movements and requesting pain medication.  Breach complained that he has filed several sick call request slips, and grievances and questioned why hasn't he seen the doctor?  No answer was given.  Dr. Tassin on said date **did not** examine Breach's hernia, and simply stated:

> "Why don't they give you your surgery, this hernia will only get worse: you need surgery…"I do not understand why they just don't fit it take you to Charity Hospital and repair it?"

Breach again requested something for pain and Dr. Tassin stated: **"There's nothing I can give you for your pain, you need surgery."**  On *July 18, 2006*, at this examination, Nurse Maxie stated: **"Alabama will not approve your hernia because of costs".**  Nurse Maxie further stated: **"You won't get your surgery here, maybe in Alabama, but, I promise you, we aren't going to do it."**

On or about *September 2006*, Breach filed a Motion to the District Court Clerk in Louisiana requesting a hearing on his Judgments on the TRO's against LCS entitled: *"Application For Temporary Restraining Order/Preliminary Injunction"* which was active wherein, Breach was successful in obtaining a "Restraining Order" against "LCS" prison officials for various constitutional violations---by the trial court.  Breach was again requesting the trial court to hear the Medical issues that had been postponed to a no set

date, and requested the court hold a hearing as to why LCS defendant's refused to provide Breach with surgery, or any other necessary medical attention.

A Hearing date was set for *October 2006*, and again Breach was seen on or about *October 3, 2006*, by Dr. Tassin, wherein, Breach told Dr. Tassin: **LCS refuses to give me surgery, so I am asking the judge to review the matter." Again, Nurse Maxie stated: "You won't get your surgery here, maybe in Alabama, but, I promise you, we are not going to do it because Alabama won't approve it."**

On *October 6, 2006*, Breach was transferred back to the Alabama Department of Corrections per Brandon Kindard----Department of Corrections Health Services for evaluation of his hernia.

### "PLRA" EXHAUSTION REQUIREMENTS
### KILBY MEDICAL GRIEVANCES AND APPEALS FILED

24)    [3] On *October 11, 2006*, Breach filed a Grievance Complaint with Prison Health Services, Inc., the medical provider for the department of corrections complaining about pain, having problems sneezing, coughing and bowel movements.  Breach also stated that Dr. Tassin made a recommendation for surgery.

25)    On *October 17 2006*, Linda Lawrence the Medical Administrator at Kilby Correctional Facility, responded:

> "I have search your medical files here from front to back. There is no records or sick calls that you were examined for a hernia. I see

---

[3] Breach filed two (2) Inmate Grievances and Appeals at Kilby Correctional Facility, to Linda Lawrence and Lawrence DID NOT process the Appeal constitutes inadequate grievances procedures.

no evidence of a medical hold or medical stop up.  If you are having health problems pleases sign up for sick call and be examined by the doctor."

26)    On *November 7, 2006,* Breach again submitted another Grievance Complaint to Linda Lawrence, and questioned why they do not have Breach's Medical Records? No response was given.

27)    [4]On *November 7, 2007,* Breach filed with Prison Health Services, Inc., an **Inmate Appeal** for his Grievances filed.  Any person in regards to his grievances did NOT speak with Breach nor did Breach receive an answer in regards to the Grievances.  Breach never received any written decision from the filed grievances and appeals at Kilby prison.

28)    On or about *December 21, or 23, 2006,* Defendant Brandon Kindard met with Breach at Kilby in the Captain's Office along with another unknown black female approximately 5' 7" 135 lbs., to discussed Breach's grievance complaint verbally.

29)    On or about *December 21, or 23, 2006* Defendant Brandon Kindard personally told plaintiff that on 10/06/06 Brandon Kindard had plaintiff transferred back to Kilby Correctional Facility in Alabama per the Alabama Dept. of Corrections' Office of Health Services for "an evaluation of plaintiff's left inguinal hernia".

30)    "On or about *December 23, 2006,* Breach had to present the his copy of the Medical Records from LCS to Defendant Brandon because Brandon verbally told Breach that he

_____

[4] It is safe that Breach exhausted every available grievance procedures before initiation of this action because Brandon Kindard was the representative from Prison Health Services, and Ala. Dept of Corrections.

had reviewed Breach's Medical Records and that there were no records of any doctor recommending Breach for surgery.  Breach then, personally placed a true copy of the medical records reflecting Dr. John A. Tassin's recommendation for surgery into Defendant Kindard hands, and after Brandon reviewed the LCS "South Louisiana Correctional Services" Medical Records, Brandon did so then stated; "**I am going to give you your surgery**." [Defendant's did not have Breach's Medical Records reflecting LCS Dr. Tassin's recommendation,]

## *REFUTING ANY WAIVER ISSUES BY THE RECORD*

31)      Refuting the waiver issues, on *December 21, 2006,* Breach was called to go to sick call @ 4:30 a.m. At sick call plaintiff advised the medical staff [Nurse Lorraine Graves] that he didn't sign up for sick call, and questioned why was he there.  Breach stated that after waiting 7 to 8 hours at sick call, no one at medical knew or could explain the reason why plaintiff was there, Breach did not sign up, so Breach left and returned to his dorm. Breach did not sign any waiver.

32)      After speaking with Defendant Kinard on *December 21, or 23, 2006*, Breach was again called to sick call on an unknown date.  Again after 6 to 8 hours of waiting, Breach advised the medical staff [B. Adams, Nurse Practitioner] that Dr. John A. Tassin recommended surgery, and that Brandon Kindard from the Commissioner's Office stated that he was going to give Breach his surgery.  Breach asked the nurse practitioner at Kilby does he need to see the medical records. (They didn't have the records) Breach

stated that the Defendant B. Adams the Nurse Practitioner then stated in a malevolent manner to Breach: "*I don't know why you're here, you can sign a waiver.*"

33)     Breach then told B. Adams the Nurse Practitioner that he is going to the dorm to get the medical records so B. Adams could review them.   Breach left, and Officer Robinson Co. I., would not allow Breach to return to sick call when Breach immediately returned. Breach attempted to explain to Officer Robinson that he had to go get his copy of the medical records. Officer Robinson, then instructed Breach to return to his dorm. Breach advised Defendant Brandon of the events by written letter in *December 2006*, being mailed U.S. Mail Certified. Breach did not sign any waiver pertaining to the hernia matter.

34)     On *October 6, 2006,* Breach arrived at Kilby Correctional Facility from Louisiana and had to report to medical for intake.   The very same day 10/06/06 medical staff at Kilby signed Breach up for sick call pertaining to proscribed medication for "Naprosys 500 mg., for ankle pain from Dr. Tassin in Louisiana. Breach was then seen on October 9, 2006, at sick call.

35)     On *October 9, 2006*, Breach did sign a waiver of release stating that "*Because I don't need the medication*".

36)     On *October 11, 2006*, Breach signed up for sick call stating "I need to get this "Medical" hold off of me so that I can be re-classed.  It's concerning a hernia.  I need to be released from medical."

37)    On _October 12, 2006_, Breach waited 6 to 8 hours at medical sick call:  no one knew anything about a hernia at this sick call. Breach asked the nurse what is taking so long, and she responding we have nothing on you about a hernia.  Breach got tired, and signed a waiver because it was a waste of time.

38)    There are no waivers pertaining to the hernia.  Breach asked the nurse on _October 12, 2006_, that he needs to see a doctor and why his he going to be seen by a Nurse Practitioner?  Breach explained that a Nurse Practitioner couldn't override Dr. Tassin's Recommendations for surgery.  Breach demanded that a qualified doctor, and not a nurse practitioner see him.   Breach was never counseled, and B. Adams stated: **You can sign a waiver."**

39)    Breach did not file this Complaint in this Court until _December 2006_. Defendants were ordered to respond.  All waivers are either pertaining to proscribed medication for ankle pain, or, as stated in the Amended Complaint, leaving medical to achieve the Medical Records, because the defendants DID NOT have Breach's Medical Records from Louisiana reflecting Dr. Tassin's recommendation for surgery.

40)    Breach requested while at Kilby to see a doctor, but his request were not honored. Dr. John A. Tassin was the ONLY doctor who conducted an actual physical exam on Breach's hernia; and, recommended Breach's needs surgery.  Neither Dr Robbins, nor Dr. Lyrene conducted an exam on Breach's hernia.

41)     On or about *January 7th 2007*, Breach was called to Medical at Kilby, and requested by the nurse Lorraine for a copy of the Medical Records.  Breach was advised that they could not obtain a copy of the Medial Records from Louisiana, and they requested them, but, SCL, *will not* send them. Breach signed a release, and also, gave Nurse Loraine Graves a copy of his Medial Records and she made a copy. As of today, Breach still suffers pain, discomfort and problems sneezing, coughing and having bowel movements and has to lift his left leg when coughing and doing these daily normal activities.

42)     On or about *April 26, 2007,* Breach signed up for sick call at Limestone Correctional Facility.  On *April 30, 2007,* Breach was seen by Dr. Hobbs concerning complaints of having a <u>burning pain</u>, problems coughing, sneezing and having bowel movements. Breach advised on the Sick Call slip that Dr. Tassin has made a recommendation that Breach's hernia needs repair. On *April 30, 2007,* Dr. Hobbs asked Breach: "**Since Dr. Tassin recommended you for surgery, why didn't he send you out for surgery?**" Breach responded: Because "**Brandon Kindard with the Commissioner's Office will not approve my surgery unless my hernia is incarcerated or into the scrotum.**"  Dr. Hobbs then stated: **You are correct; I have problems with them all the time.  You have to understand there are thousands of Inmates with hernias, and it will cost too much money to fit them.**  Dr. Hobbs verbally stated after examination: **"You do need surgery, you need to have someone call the Commissioner's Officer or call the Governor."**  Dr. Hobbs requested that Breach sign a release for medical records from Louisiana, then after

23

Breach told Dr. Hobbs Brandon denied Breach surgery, Dr. Hobbs stated: **"There is no need to get your Medical Records, even if I put you in for surgery, they are going to deny it."**

## CAUSE OF ACTION

43)    Plaintiff supports the following claims by reference to the previous paragraphs ¶ 19 through 42 of this Supplemental Complaint.

## COUNT I

44)    The Defendant's deliberate indifference, Brandon Kindard, Ruth Naglich, Prison Health Services, Inc., B. Adams, Linda Lawrence, Dr. Robbins, Dr. Lyrene, refusal and withholding medical care once prescribed by a physician as mandating treatment is so cursory as to amount to no treatment at all, amounts to deliberate indifference violating the Eighth Amendment to the United States Constitution and § 6-5-484(a) Code of Alabama, 1975.

## COUNT II

45)    The Defendants Richard Allen, and Michael Cataland, Rick Dull, Jane Haydes, custom or usage of a policy that is so permanent and well settled as to have the force of law---the practice, custom or usage being persistent and widespread, long standing or deeply embedded even if it is contrary to written policy amounts to deliberate indifference. Defendant's policy statement, regulation or decision officially adapted and promulgated by that body's officers amounts to deliberate indifference. Defendants

24

custom, practice, or policy, in regards to allowing any person having amply authority to deny any doctor recommendation once prescribed and/or mandated as needing treatment is unconstitutional and violates the Eighth Amendment to the United States Constitution.

## COUNT III

46)    The Defendant's direct or indirect involvement participation, the failure to act, their acts or omission are actionable in regards to plaintiff's serious medical need for surgery deprived him of his rights under the Constitution, and the obduracy and wantonness withholding medical care caused plaintiff to suffer physical pain and discomfort, emotional distress and restricted plaintiff's daily activities amounts to deliberate indifference.

## COUNT IV

47)    Defendant's delay, withholding, refusal and denial of necessary medical care are so deviated from professional standards that it amounts to deliberate indifference. The mere words 'elective surgery' are not a talisman insulating defendants from the reach of the Eighth Amendment.

## COUNT V

48)    Defendants inadequate medical record keeping violates plaintiff's Eighth Amendment, and is below professional standards; and, proximate cause to imminent serious physical injury, and delay of medical care.

Defendants inadequate grievances procedures violates the PLRA requirements due to their refusal to answer appeals violates the rights to the plaintiff, and amounts to deliberate indifference.

## COUNT VI

49)    Defendants Dr. Robbins, and Dr. Lyrene and B. Adams acted below the professional standard of care and their medical judgment in this case resulted to deliberate indifference to plaintiff's serious medical needs, and fell below the standard of care given to patients who are not incarcerated.

## RELIEF REQUESTED

WHEREFORE, plaintiff request that the court grant the following relief:

A.    Issue a declaratory judgment stating that:

1.    The refusal to approve plaintiff for surgery once prescribed by a physician as mandating treatment, i.e., surgery violated plaintiff's rights under the Eighth Amendment to the United States Constitution, and constituted deliberate indifference. The mere words 'elective surgery' are not a talisman insulating defendants from the reach of the Eighth Amendment.

2.    Defendants refusal to approve cost for surgery violated plaintiff's Eighth Amendment right to the United States Constitution.

3.    Prison officials cannot simply ignore hernias. Defendants' denial of surgery ignores a medical condition, which causes significant pain, so that requiring plaintiff to endure it without remedy constitutes cruel and unusual punishment.

4.    That the defendant's written or adopted policy, either written, statement, custom, practice regarding nonincarcerated hernias refusal to repair them, violates the Eighth Amendment to the United States Constitution.

B.    Issue and Injunctive ordering defendants or their agents to:

1.    Immediately arrange for the plaintiff's need for surgery and/or medical treatment, to be evaluated by a surgeon or medical practitioner with expertise in the necessary treatment for plaintiff's hernia.

C.    Declare that the acts or omissions described herein violated plaintiff's rights under the Constitution and laws of the United States or State of Alabama.

D.    Enter a preliminary and permanent injunction ordering: Defendants Commissioner Richard Allen, Ruth Naglich, their successors, agents employees, and all persons acting in concert with them to provide necessary medical treatment, i.e., surgery to plaintiff's inguinal hernia.

E.    Enter judgment in favor of plaintiff for nominal, compensatory and punitive damages in the amount of $100,000 severally and jointly and $250,000 punitive damages against all defendants jointly and severally.

F.     Order and grant trial by jury, and such additional relief at this Court may

deem just and proper.

Done this ⟋ day March 2007

Marcellus Breach 160710
LCF 28779 Nick Davis Rd.
Harvest, Alabama 35749


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that I have served the following:

Ala.Doc. Legal Division
P.O. Box 301501
Montgomery, Alabama 36130

Rushton, Stakely, Johnstone Garrett
P.O. Box 270
Montgomery, Alabama 36101

By placing same into a sealed envelope properly addressed postage prepaid and placing

into the prison Mail Box for proper mailing First Class U.S. Mail on this ⟋ Day of March

2007, under the penalty of perjury 28 U.S.C. 1746.

Marcellus Breach