IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| MARCELLUS BREACH (AIS# 160710), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CASE NO. 2:06cv1133-MEF |
| | § | |
| PRISON HEALTH SERVICES, INC.; | § | |
| et al.; | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS', PRISON HEALTH SERVICES, MICHAEL
ROBBINS, M.D., NURSE PRACTITIONER BRADFORD . ADAMS, ET AL.,
SUPPLEMENTAL SPECIAL REPORT REGARDING
PRISONER MARCELLUS BREACH (AIS #160710)**

COME NOW the Defendants, Prison Health Services (hereinafter "PHS")

and its employees, and in response to Judge Mark Fuller's Order dated May 11,

2007, this Court's Order dated May 14, 2007, and this Court's Order dated

June 4, 2007, do hereby submit this Supplemental Special Report on behalf of

Prison Health Services and its employees with regard to the complaints asserted

by Marcellus Breach in his original Complaint and his Supplemental Complaint

filed on or about May 19, 2007.

## I. INTRODUCTION

The Plaintiff, Marcellus Breach, is an inmate currently confined at the

Limestone Correctional Facility in Athens, Alabama. Breach was transferred to

Limestone Correctional Facility on March 23, 2007. [Exhibit "A" -- Affidavit

William Hobbs, M.D.]. Prior to this, on December 22, 2006, Breach filed a

Complaint against Defendant PHS and certain employees arising out of medical

1

treatment for an inguinal hernia first identified in 2005. Previous medical records concerning treatment of this condition have been marked as an Exhibit to these Defendants' previous Special Report. Mr. Breach claims that PHS employees acted with deliberate indifference by employing conservative measures rather than ordering a surgical repair of the hernia. In addition, Mr. Breach's Amended Complaint against PHS asserts that PHS and its employees refused and withheld medical care required to be provided in violation of the Eighth Amendment and Alabama's Medical Liability Act.    Breach also claims that the Alabama Department of Corrections' customary usages of policies and procedures pertaining to hernias amount to deliberate indifference. Breach asserts wanton medical care provided by PHS and its employees causing "physical pain and discomfort, emotional distress" to the Plaintiff. Breach also claims inadequate medical recordkeeping and breaches of the professional standard of care and medical judgment pertaining to the treatment of Mr. Breach's hernia condition between the time of its diagnosis in 2005 and the present. [Plaintiff's Amended Complaint].

As directed by this Court, PHS has undertaken a second detailed review of Breach's medical condition.    Additional medical records, interviews, and affidavits have been obtained pertaining to the original claim and those claims asserted in the Supplemental Complaint filed June 4, 2007, by Mr. Breach. At this time, PHS submits this Amended Special Report, which is supported by multiple additional evidentiary submissions, including the following:

     1.     Exhibit "A" – Affidavit of Dr. William B. Hobbs;

2.  <u>Exhibit "B"</u> – Supplemental Affidavit of Dr. Michael Robbins;

3.  <u>Exhibit "C"</u> – Supplemental Medical Records - Limestone Correctional Facility;

4.  <u>Exhibit "D"</u> – South Louisiana Correctional Facility's medical records;

5.  <u>Exhibit "E"</u> – Supplemental Affidavit of Linda Lawrence, H.S.A., Kilby Correctional Facility; and

6.  <u>Exhibit "F"</u> – Affidavit of Linda Lawrence, H.S.A., Kilby Correctional Facility -- Grievance Procedure.

These evidentiary materials, along with those submitted in these Defendants' initial Special Report, demonstrate that Plaintiff Breach has a minor, controlled, non-incarcerated hernia. The failure to treat the condition in the manner desired by the Plaintiff does not rise to the level of a constitutional violation. Furthermore, the condition of Breach's hernia does not amount to a negligently treated medical condition constituting a breach of the standard of care under the Alabama Medical Liability Act, ALA. CODE § 6-5-481, <u>et seq.</u>, and § 6-5-542, <u>et seq.</u>, warranting the dismissal of all allegations asserted by Mr. Breach.

## II. <u>NARRATIVE SUMMARY OF FACTS</u>

During the pendency of this action, prisoner Breach has been incarcerated at Kilby Correctional Facility in Mt. Meigs, Alabama, and Limestone Correctional Facility near Huntsville. Between December 2006 and present, these are the only two Alabama Correctional facilities providing treatment to Mr. Breach. [<u>Exhibit "C"</u> – Supplemental Medical Records]. During that time, Breach has

been seen and evaluated by PHS medical or nursing staff, has been referred to appropriate care providers, and has been given appropriate care each time he has registered his health complaints at the facility.  [Exhibit "A" – Affidavit of Dr. William Hobbs; Exhibit "B" – Supplemental Affidavit of Dr. Michael Robbins; Exhibit "C" – Supplemental Medical Records].

Prior to his return to the Alabama Correctional System, Breach received medical treatment through L.C.S. Corrections Services, Inc. while incarcerated in Louisiana.  [See Plaintiff's Complaint and Amended Complaint].  On or about March 21, 2006, Breach received treatment at L.C.S. Corrections and a medical note contains the following information:

> Hernia L. inguinal hernia needs repair?

> [Exhibit "D" – L.C.S. Correction Services, Inc. Medical Records].

On July 18, 2006, the L.C.S. Corrections' chart contains the following entry:

> Patient has L. inguinal hernia not incarcerated, elective procedure.

> [Exhibit "D" – L.C.S. Correction Services, Inc. Medical Records].

Breach also received medical treatment at L.C.S. Corrections on October 3, 2006, for an old left ankle injury that limited his range of motion.  At that time, Breach failed to make any complaints concerning hernia pain, problems or discomfort.  [Exhibit "D" – L.C.S. Correctional Facility Medical Records].  On October 11, 2006, after being returned to Alabama, Breach completed a General

Sick Call Request seeking the lifting of a medical hold which had been placed on him as a result of his inguinal hernia. [Exhibit "C"]. Upon completing this form, PHS referred Breach to Nurse Practitioner Bradford Adams. [Id.]. However, Breach refused to appear at sick call claiming "I can't handle this mentally" and no treatment was provided for Breach at that time. [Id.]. This was the second time in a week Breach had requested, then refused, medical attention for his hernia. [Id.].

Breach next requested medical assistance regarding his left inguinal hernia on December 21, 2006. [Id.]. Again, PHS employees referred Breach to Nurse Practitioner Adams. On that same date, Adams prepared to treat Breach for this condition and made the following entry in PHS Progress Notes:

> 12/21/06 – I was asked by Mrs. Lawrence, H.S.A., to see this patient today for chronic left inguinal hernia. He came down for screening and vital signs, but left before exam despite counseling from me that he needed to stay. Chart review shows that he signed up for sick call on 10/9/06 and 10/12/06, but signed a release of responsibility, waiver, and left before exam on both dates. In summary, patient left outpatient clinic each of the last three times he was scheduled to be seen, before the physical examination could even be performed, despite counseling. I cannot evaluate his hernia (or anything else) if he refuses to stay for his examination. We will call him down again tomorrow and hopefully he will stay for the exam.

[Id.].

On December 27, 2006, PHS and Department of Correction officials brought Breach to the PHS clinic for evaluation of the left inguinal hernia. [Id.]. Breach presented without any other complaints and was not wearing his previously prescribed truss. [Id.]. Nurse Practitioner Adams' notes read as follows:

-- L. inguinal area noted with small inguinal hernia; easily reducible (sp); non-strangulated; not incarcerated; size is ≈ 3 x 5 cm (unchanged from exam description on 5/5/06).
-- Pt. states that he has documentation from another facility that supposedly says that he needs surgical repair to his left inguinal hernia, but have no record of this in his chart.
* consulted with Dr. Robbins
1) L. inguinal hernia
-- records/old charts
-- L. inguinal hernia truss/Percogesic PRN
. . .

[Id.].

As a result of this encounter, Adams ordered old records/old charts pertaining to previous hernia evaluation and treatment by the Louisiana Correctional System, ordered Breach a truss for 180 days and placed certain limitations on the prisoner, such as a bottom bunk profile, and zero straining or lifting greater than 20 lbs. for six (6) months. [Id.].

On March 26, 2007, Breach filed a Sick Call Request asking that his Kilby Correctional Facility profiles be renewed, as well as requesting profiles of his hernia, ankle, back, and other pain. [Id.]. On April 10, 2007, Dr. William Hobbs renewed Breach's restrictions, which include the following:

-- No lifting greater than 25 lbs.
-- No standing/walking greater than 1 hour
-- hernia truss, ankle brace, left ankle
-- Dx inguinal hernia, deformity of left foot.

[Id.].

On April 26, 2007, Breach filed a Sick Call Request complaining of "burning pain" due to his hernia. On this same Sick Call Request, post-

examination notes confirmed no right direct or indirect inguinal hernia, but a small hernia that was "easy to reduce." PHS employees renewed the instructions that a truss be used by Breach at all times. [Id.].

Dr. William Hobbs is one of the few physicians providing evidence in this case who has (1) personally evaluated Breach and his hernia condition; and (2) provided treatment, medication, and medical services for Breach. According to Hobbs, Breach reiterated his complaints concerning the inguinal hernia during his April 30, 2007, appointment. [Exhibit "A" – Affidavit of Dr. William Hobbs]. On that date, Hobbs personally examined Breach and noted that he did not have a right direct, indirect or femoral hernia but did have a directed inguinal hernia on the left. He ordered a small ventura truss for Breach and prescribed Motrin, as needed, for 90 days and a CTM SR (a sustained release antihistamine) for coughing and sneezing, as needed. [Id.]. In addition, Dr. Hobbs personally reviewed and consulted doctors' orders from the Louisiana Correction Services, including the March 21, 2006, note and July 18, 2006, notes referenced by Breach. Both notes indicate that Breach suffers from a left inguinal hernia of questionable need for surgical repair. [Id.]. Tassin's records also confirm that hernia repair is an elective procedure and that the hernia was not incarcerated and, therefore, not an immediate need for surgical repair at that time (the spring and summer of 2006). [Id.]. [See Exhibit "D" – South Louisiana Correctional Facility's Medical Records].

Medical evidence in the record indicates that hernia repair is an elective procedure and that all hernias do not need to be surgically repaired. If a prisoner

in the Department of Corrections has a hernia which must be repaired, it has to meet certain protocols required by the Department. [Exhibit "A" – Affidavit of Dr. William Hobbs]. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated in order to be surgically necessary. [Id.]. The medical evidence indicates that Breach does not meet the surgical protocol because his hernia is easily reduced. [Id.]. Furthermore, Dr. Hobbs states that any physician suggesting Breach's hernia be surgically repaired is mistaken, as that doctor is only trying to perform an elective surgery which is medically unnecessary and not needed under the circumstances. [Exhibit "A" – Affidavit of Dr. William Hobbs].

It is undisputed that Dr. Satyavardhana Rao Yerubandi has never treated Mr. Breach or never personally evaluated his hernia condition. Furthermore, Dr. Yerubandi is clearly not familiar with the Alabama Department of Corrections' policies and procedures concerning elective surgery, with specific emphasis on elective hernia repairs.

On October 11, 2006, Marcellus Breach initiated the first of two required steps to comply with internal grievance procedures in place at Kilby Correctional Facility. [Exhibit "F" -- Affidavit of Linda Lawrence]. In his inmate informal grievance form, Breach requested two things (1) that a medical hold preventing him from actively participating in additional Department of Correction programs being lifted, thereby allowing to resume normal, routine activities and (2) request surgical treatment for his hernia. [Id.]. In response, PHS personnel search his medical files and were unable to find records from Dr. Tassin indicating that a

medical hold had been placed on Breach or that affirmative medical recommendations regarding surgical intervention had been made.   [Id.]. Thereafter, on November 11, 2006, Breach filed a letter with PHS employee seeking a review of Dr. Tassin's notes, however, no such notes were at that time located.  Breach failed to complete the proper forms to prosecute a grievance appeal and no other written complaints from Breach, pursuant to the Grievance Procedures were ever filed.  [Id.].

## III. ARGUMENT

**A.    Differences In Medical Opinions Regarding The Course And Type Of Medical Treatment For A Hernia Do Not Constitute A Constitutional Deprivation Rising To The Level Of A "Deliberate Indifference To A Serious Medical Need."**

Medical treatment within the confines of a correctional system are governed by different standards than those applicable to plaintiffs in the outside world.  In this case, Plaintiff Breach seeks recovery under two separate theories outlined in his original Complaint and Amended Complaint, (1) deliberate indifference to a serious medical need arising under 42 U.S.C. § 1983 and the Eighth Amendments prohibitions against cruel and unusual punishment, and (2) violations of the Alabama Medical Liability Act concerning improper medical treatment.  Under either legal argument and under any set of facts presented in this record, the Plaintiff is not entitled to recover and all PHS Defendants are due to be dismissed.

For Breach to maintain a § 1983 action under the Eighth Amendment to the United States Constitution, he must establish a deliberate indifference to a serious medical need rising to the level of <u>wanton infliction of pain</u>. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-105, 97 S. Ct. 285, 291-292, 50 L. Ed. 2d 251 (1976); <u>Barfield v. Brierton</u>, 883 F.2d 923, 938 (11th Cir. 1989). Stated differently, Plaintiff Breach must demonstrate that the medical defendants herein intentionally denied or delayed access to medical care requested by him.[1] [<u>Id.</u>].

More important than deriving a definition for what constitutes deliberate indifference to medical care is <u>what does not rise to that level</u>. Inadvertent or negligent conduct in diagnosing or treating a medical condition and even Court-defined medical malpractice <u>does not state a constitutional violation when the victim is a prisoner</u>. <u>Bass v. Selvin</u>, 550 F.2d 229, 230 (5th Cir. 1977), <u>cert. denied</u>, 434 U.S. 864, 98 S. Ct. 195, 54 L. Ed. 2d 138 (1977). Even more importantly, <u>a difference in opinion regarding the method of treatment between a prisoner and prison medical authorities or a prison doctor's alleged failure to follow a particular type of treatment desired by the prisoner does not amount to deliberate indifference</u>. <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir. 1985), <u>cert. denied</u>, 474 U.S. 1096, 106 S. Ct. 1492, 89 L. Ed. 2d 894 (1986). In prisoner medical cases of this type, it is historic precedent that federal courts are reluctant to second guess medical judgments by constitutionalizing claims that

---

[1] The denial herein is not the surgery being requested by Breach, but rather "access to medical care" related to his inguinal hernia condition. Overwhelming evidence demonstrates that <u>when</u> complaints have been raised by Breach, medically appropriate treatment has been provided.

may, under the best of circumstances, rise to potential violations of state law. Hamm, supra, at 1575.

In this case, Breach takes the position that a left inguinal hernia, which is non-incarcerated, requires surgical intervention.    Critically, Breach cannot produce evidence that the conservative treatment provided by the medical defendants in this case increased the severity of his hernia. It is undisputed that the size, extent, and severity of Breach's hernia has not changed in a year. [Exhibit "C" – Supplemental Medical Records]. Even more telling is that Breach's hernia has not become more severe despite strong evidence of his unwillingness to follow medicinal and treatment guidelines designed to correct the problem. [Exhibit "A" – Affidavit of Dr. William Hobbs].

There are two components to prisoner medical care claims, the first being an objective element, and the second being subjective. Objectively speaking, a prisoner's claim must be supported by proof of a serious medical need. See Brown v. Hughes, 894 F.2d 1533, 1538 n. 4 (11th Cir. 1990), cert. denied, 496 U.S. 928, 110 S. Ct. 2624, 110 L. Ed. 2d 645 (1990). Here, the inguinal hernia constitutes a "serious" medical need because it required diagnosing by a physician. The evidence is undisputed that upon diagnosis by Prison Health Service officials, multiple restrictions were put in place for Breach, medication was prescribed, and steps taken to conservatively treat and heal the problem. [Exhibit "A" – Affidavit of Dr. William Hobbs; Exhibit "C" – Supplemental Medical Records]. Thus, the objective test is easily met.

However, the subjective element requires proof that Prison Health Service officials deliberately ignored or refused to treat the inguinal hernia. Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2326, 115 L. Ed. 2d 271 (1991). On this critical element, Breach's claim fails despite the presence of affidavit testimony from a licensed medical professional. The undisputed evidence verifies that, upon diagnosis, Prison Health Service officials placed multiple restrictions on Breach designed to treat the hernia including (1) a bottom bunk restriction for 180 days, (2) a truss for 180 days, and (3) no straining or lifting greater than 20 minutes per day for 180 days. [Exhibit "C" – Supplemental Medical Records]. Despite Breach's failure to follow his treatment guidelines, the hernia has remained the same medically.

Breach's claim is not the first hernia case to weave its way through the federal court system. In fact, hernias are a routine problem for correctional medical service providers and correction officials have adopted guidelines to deal with hernia problems. In case after case, federal courts have examined the specific hernia diagnosis to determine whether constitutional violations have occurred. In cases dealing with easily reduced inguinal hernias, like Mr. Breach's, the Courts have routinely found no constitutional violation when treating physician testimony dispels the need for surgical intervention.

In Miller v. Wilson, 1996 U.S. Dist. LEXIS 19584 (Oct. 18, 1996), a prisoner presented an identical fact pattern to Judge William Cassady of the United States District Court for the Southern District of Alabama. There, a prisoner suffered a "non-scrotal, easily reduced left inguinal hernia." There, as

here, the plaintiff sought surgical intervention due to excessive and extensive pain complaints and an inability to exercise. [Id. at 2]. Correctional medical physicians diagnosed the hernia, found it to be easily reducible, and noted, via affidavit testimony, that the repair of the hernia would be "strictly . . . elective." [Id. at 2]. Judge Cassady rejected the plaintiff's argument, noting the extensive and proper medical treatment provided to the plaintiff for this condition. Cassady's Order noted that in response to the plaintiff's complaints regarding his hernia, "the plaintiff received a bottom bunk assignment, light work duty, Tylenol, and a scrotal support." [Id. at 3]. More importantly, Cassady held as follows:

> That Miller has not received surgery or stronger pain medication amounts not to deliberate indifference but rather simply to a difference of opinion between plaintiff and Dr. Wilson regarding appropriate medical treatment for an easily reducible, non-strangulated inguinal hernia. Accordingly, plaintiff's Eighth Amendment rights have not been violated. (emphasis added).

[Id. at 3].

A case from the Middle District parallels Judge Cassady's opinion. In Reed v. Darbouze, 2006 U.S. District LEXIS 10919 (March 1, 2006), a prisoner incarcerated at Easterling Correctional Facility in Barbour County claimed constitutional violations when doctors failed to schedule him for a hernia surgery. There, the prisoner argued he needed surgery because of "severe pain for months . . . and nothing is being done to correct the problem." [Id. at 2.] Again, the Middle District rejected this argument and cited the exact same principle that applied to Mr. Breach's claim, i.e., (1) a prison official acts with deliberate indifference only when "a substantial risk of serious harm is imminent and the

medical professional disregards that risk," Farmer v. Brennen, 511 U.S. 825, 114

S. Ct. 1970, 128 L. Ed. 2d 811 (1994), and (2) a difference in opinion between

medical officials and a prisoner and/or his doctor does not rise to the level of a

constitutional violation. [Id., citing Hamm, supra, at 1567.]

In rejecting the prisoner's claim, Judge Charles Coody held as follows:

> The plaintiff's medical records demonstrate that he has received
> medical treatment for his hernia on numerous occasions and that he
> has received pain medication. The plaintiff is quite correct that he did
> not get surgery for his hernia, but that fact alone does not establish
> deliberate indifference. He was provided conservative medical
> treatment for the hernia. His mere desire for a different treatment
> modality does not establish deliberate indifference. Moreover, the
> plaintiff has failed to come forward with any evidence showing that the
> defendants knew that the manner in which they were treating him
> created a substantial risk to the plaintiff and they disregarded that risk.
> In the absence of such a showing by the plaintiff, the defendants are
> entitled to judgment in their favor, which will be entered.

[Id. at 2].

The coming together of prisoners and hernia problems is not confined to

the State of Alabama and its federal court system. In Brady v. Halawa

Correctional Facility, 2006 U.S. District LEXIS 62058 (Aug. 29, 2006), a

Hawaiian-based prisoner complained that correctional medical providers ignored

his repeated claims of pain and suffering caused by a hernia. In that case, the

plaintiff identified a number of medical complaints relating exclusively to his

hernia condition. Prison officials diagnosed the plaintiff as having a "left inguinal

hernia that did not require immediate surgery." [Id. at 3]. As with Breach, the

plaintiff disagreed with the medical diagnosis and demanded immediate surgical

intervention.

Again, the Court rejected the prisoner's argument noting the irrefutable standard that differences in medical opinions do not rise to the level of deliberate indifference. The Court held as follows:

> . . . Dr. Abbruzzese's conservative approach to surgery does not amount to deliberate indifference. . . . Plaintiff has not shown that Dr. Abrruzzese's decision to follow a conservative course of treatment "was medically unacceptable under the circumstances" and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health. _Deguchi v. Chung_, 391 F.3d 1051, 1058 (9th Cir. 2004) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)). Plaintiff's condition was not ignored. He was given Ibuprofen, he was instructed to use ACE bandages as a truss, and medical personnel monitored his condition both at HGF and at TCCF. Between mid-April to late June 2004, medical personnel saw plaintiff at least seven times. The fact that surgery was not immediately performed, as plaintiff demanded, does not show deliberate indifference.

> [Id. at 3].

Prisoners, hernias, and complaints regarding their medical treatment also occur in far less exotic locales than Hawaii. In Hollon v. Prison Health Services, 2006 U.S. District LEXIS 78674 (Oct. 26, 2006), an Indiana-based prisoner complained about the need for surgical intervention for his hernia. Again, the prisoner suffered from a reducible hernia rather than the more serious condition known as an incarcerated hernia. The Court addressed the identical question before this Court, i.e., whether Prison Health Service officials knew of the substantial risk of harm to the inmate and intentionally or wantonly acted or failed to act with specific disregard to that risk. In rejecting the plaintiff's claim, the Court noted that inmates are not entitled to the "best possible care or to receive particular treatment of their choice." [Id. at 3, citing Forbes v. Edgard, 112 F.3d 262, 267 (7th Cir. 1997)]. The Court went on to hold that the medical judgment

exercised by Prison Health Service officials in that case was "not deliberately indifferent to [the prisoner's] hernia condition and that their medical judgments in this regard were not 'such a substantial departure from accepted professional judgment, practice or standards' as to demonstrate that [he] did not base the decision on such a judgment." [Id. at 4, citing Estate of Cole v. Fromm, 94 F.3d 254, 262 (7th Cir. 1996)].[2]

These Defendants recognize the critical distinction that exists between Breach's case and most of those relating to the treatment of non-incarcerated hernias found within Federal precedent. Here, Breach has submitted an affidavit of Dr. Satyavardhana Rao Yerubandi, a board-certified surgeon qualified to give medical opinions. A review of his affidavit and the contents therein, however, do not change the fundamental, constitutional principle, that mere differences in medical opinion do not rise to the level of a constitutional violation and, under this fact pattern, do not even rise to the level of medical negligence.

Breach claims PHS's failure to surgically intervene to repair his hernia constitutes intentional deprivation of medical care and negligent/wanton conduct under Alabama state law. Regarding the "deliberate indifference standard," Dr. Yerubandi's affidavit creates nothing more than a differing opinion regarding the course of medical treatment. As stated earlier, differences in medical

---

[2] Here, Prison Health Services is named as a defendant and this opinion is also helpful on another argument. Prison Health Services argued in Hollon, as they do here, that 42 U.S.C. § 1983 cannot and will not support a claim based on a respondeat superior theory of liability. Iskander v. Village of Forest Park, 692 F.2d 126, 128 (7th Cir. 1982). The Iskander case and Hollon held that 'just as a "municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees deprivations of others civil rights.'"

treatment for Mr. Breach's hernia do not rise to the level of deliberate indifference to.  See Garvin v. Armstrong, 236 F.3d 896, 898 (7th Cir. 2001).  More importantly, Dr. Yerubandi's affidavit fails completely to address the state of mind of prison officials when the decision was made to treat the hernia conservatively and no evidence exists of a substantial risk of harm to the inmate other than conjecture or speculation -- facts outside the sphere of admissible evidence.  See FED. R. CIV. P. 56(e); Thomas v. Alabama Counsel on Human Relations, 248 F. Supp. 2d 1105 (M.D. Ala. 2003).[3]

As for the medical negligence aspect of Breach's claim, the affidavit not only fails to comply with the requirements of the Rules of Civil Procedure, but also does not establish medical negligence in the conservative treatment of Breach's hernia.  The affidavits of Drs. Hobbs and Robbins verify the proper treatment for this particular type hernia.  Dr. Yerubandi's affidavit concurs that this treatment is appropriate.  At the same time, Dr. Yerubandi expresses a differing opinion with regards to the ultimate treatment that may be needed or might be needed for this particular "injury".  Again, differing opinions do not create an issue of fact in this case.

Another critical failure exists in Dr. Yerubandi's affidavit.  Nowhere in its language does Yerubandi identify any breach of the standard of care in the treatment of Breach's hernia.  The standard of care has been defined by Drs.

---

[3] Normally, these Defendants would file a Motion to Strike those aspects of Dr. Yerubandi's affidavit that violates the mandatory requirements of FED. R. CIV. P. 56. This Court's Order dated June 4, 2007, however, does not appear to grant leeway to file such a Motion.  In lieu thereof, these Defendants will seek to depose Dr. Yerubandi, if necessary, and submit a supplemental report to guide the Court in its deliberation on this critical issue.

Hobbs and Robbins in their affidavits. In order for a plaintiff to prove a claim under the Alabama Medical Liability Act, they must submit, through expert testimony, evidence that the <u>applicable standard of care has been breached</u>. <u>Patton v. Thompson</u>, 2006 Ala. LEXIS 316 (Nov. 9, 2006) ("The plaintiff shall have the burden of proving by substantial evidence" that the healthcare provider failed to exercise the requisite care skill and diligence . . . and that 'the minimum standard of proof required to test the sufficiency of the evidence or supporting the issue or fact shall be proof by substantial evidence.'" ALA. CODE § 6-5-549). <u>See also</u> <u>DCH Healthcare Authority v. Duckworth</u>, 883 So. 2d 1214, 1217 (Ala. 2003); <u>Bradley v. Miller</u>, 878 So. 2d 262, 266 (Ala. 2003). In addition, there must be more than the mere possibility that negligence of PHS officials caused or contributed to cause this injury (the inguinal hernia) but that their negligence, if applicable, <u>probably</u> caused an injury. <u>McAfee v. Baptist Medical Center</u>, 641 So. 2d 265 (Ala. 1994).

The <u>Duckworth</u> opinion, <u>supra</u>, is particularly instructive. In this case, the plaintiff's Executrix sued Druid City Hospital in Tuscaloosa claiming dilatory treatment which ultimately led to her husband's death. The Alabama Supreme Court reiterated the requirement that a plaintiff, seeking recovery under the Medical Liability Act, must prove that healthcare providers, like PHS, failed to exercise the reasonable care, skill, and diligence as other similarly situated healthcare providers. <u>Id.</u> at 1217. A critical issue in <u>Duckworth</u> was whether a different form of treatment and a more prompt diagnosis would have placed the patient <u>in a better position than they would be as a result of inferior medical care</u>.

Id., citing Shanes v. Kiser, 729 So. 2d 319, 320-321 (Ala. 1999). This is virtually the same position Breach articulates in his claim.[4]

The Alabama Supreme Court rejected the "better treatment alternative" theory and the medical testimony supporting it. The Court noted the conspicuous absence of medical testimony that Moore's different, alternative treatment would have affected the outcome of the case. Id. at 1220, citing McAfee, supra. The Court held as follows:

> The general statements proffered by McAfee and Roberts -- that "time [was] of the essence" and that "the sooner the onset of treatment, the better the expected result" -- essentially mirror the statements made by Dr. Jones [ the plaintiff's expert] -- as soon as possible is "always the ideal" and "any delay in diagnosis can adversely affect a person's condition." Like the testimony in McAfee, Dr. Jones' opinion does not constitute substantial evidence that the two- or three-hour delay of which Mrs. Duckworth complains probably adversely affected Mr. Duckworth's response to treatment.

> [Id. at 1221].

Dr. Yerubandi's testimony mirrors that provided by the plaintiff in both Duckworth and McAfee. Here, Yerubandi can only speculate as to the prospects or possibility of increased health or safety risks due to a failure to perform surgery on Breach's hernia. The key paragraphs are as follows:

> If Mr. Breach's hernia is continued left untreated, his hernia **can** get larger and also lead to serious medical complications. Surgical repair is advised because of the danger of incarceration and strangulation.

---

[4] That theory appears to be that surgical intervention would place him in a better physical condition than the conservative treatment that has previously been applied by PHS employees.

Mr. Breach, in my professional opinion in surgical repair needs to have his hernia repaired because without surgery [sic] intervention, and <u>due to the length of time his hernia has been left untreated</u>, **MAY** lead to a danger to his health or safety and **CAN** lead to hospitalization related to incarceration or strangulation.

> [Affidavit of Satyavardhana
> Rao Yerubandi, M.D., p.3]
> (emphasis added).

The critical words are "can" and "may" because Yerubandi is dealing in "possibilities" rather than "probabilities." The Alabama Medical Liability Act makes a crucial and critical distinction requiring that evidence supporting a claim of medical negligence not merely infer the possibility that negligence caused an injury, but that such negligence <u>probably caused</u> the injury. Thus, Yerubandi's affidavit fails in this critical area and Alabama case law supports a dismissal of Breach's claims under the Alabama Medical Liability Act as a result.

**B.** **Because Breach Failed To Follow The Required Grievance Procedures For Assessing Medical Complaints Prior To Filing His Lawsuit, The Prison Litigation Reform Act Of 1995 Requires The Immediate Dismissal, With Prejudice, Of His Complaint..**

Prisoner litigation has become an expensive problem for states and the federal government. Because of the problems associated with frivolous litigation, Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in order to control frivolous prisoner lawsuits. The Act contains multiple, mandatory provisions that <u>require</u> the dismissal of complaints identical to those asserted by Mr. Breach.

The PLRA defines a prisoner as follows:

> As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program. 42 U.S.C. §1997e(h).

Breach admits to being incarcerated in his complaint, therefore, he meets the definition of "prisoner" as defined by the PLRA. See Boyd v. Corrections Corporation of America, 380 F.3d 989 (6th Cir. 2004).

The critical issue involved in the adoption of the PLRA is to "reduce the quantity and improve the quality of prisoner suits. Porter v. Nessle, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). Within the PLRA is an "invigorated" exhaustion provision. See § 1997e(a) - (c).[5]

---

[5]

**(a)     Applicability of Administrative Remedies.**
No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. (emphasis added).

**(b)     Failure of State to Adopt or Adhere to Administrative Grievance Procedure.**
The failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under 1997a or 1997c of this Title.

**(c)     Dismissal**
The Court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be

To prevent dismissal, prisoners like Breach must exhaust all "available" remedies, not simply those that meet federal standards. In addition, the exhaustion of available administrative remedies is required for any suit challenging medical treatment, as well as general prison conditions. Johnson v. Meadows, 418 F. 3d 1152, 1159 (11th Cir. 2005). A prisoner's lack of knowledge regarding existing procedures does not relieve his or her responsibility to exhaust those available, administrative remedies and allegations regarding prison official's failure to provide proper forums is not a legitimate defense. See Abney v. McGinnis, 380 F. 3d 663 (2nd Cir. 2004).

It is undisputed that Breach failed to follow all available, required administrative procedures that existed at both Kilby and Limestone Correctional Facilities. [Exhibit "F" -- Affidavit of Linda Lawrence, H.S.A.]. These procedures required Breach to seek and exhaust available administrative remedies within those facilities prior to initiating litigation. Because he failed to pursue all administrative appeals concerning his inguinal hernia and because he failed to allow PHS to review his administrative appeal, his claim must be dismissed with prejudice. Woodford v. NGO, 548 U.S. _____, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

A recent Eleventh Circuit case only reinforces the exhaustion requirement. In Bryant v. Rich, 2007 U.S. App. LEXIS 12781 (May 31, 2007), a prisoner

---

granted, or seeks monetary relief from a defendant who is immune from such relief.

Courts have determined that under the PLRA, exhaustion of administrative remedies is no longer left to the discretion of the district court, but is mandatory. See Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001).

sought relief under 42 U.S.C. § 1983 contesting the conditions of his confinement at a state prison. The Department of Corrections and individual defendants moved to dismiss the complaint, pursuant to the PLRA and its requirement that administrative remedies be exhausted. 42 U.S.C. § 1997e(a). The Court affirmed the granting of summary judgment for failing to exhaust all available administrative remedies, holding as follows:

> . . . . "when a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit." Johnson v. Meadows, 418 F. 3d 1152, 1156 (11th Cir. 2005) (quoting Brown v. Sikes, 212 F. 3d 1205, 1207 (11th Cir. 2000)). We have no discretion to waive this exhaustion requirement. Alexander v. Haught, 159 F. 3d 1321, 1325-26 (11th Cir. 1998).
>
> That [the prisoner] filed no grievance at [the correctional facility] about the beatings he allegedly suffered is undisputed. [The prisoner] contends that he attempted to file grievances at both these facilities, but his request for the pertinent forms were denied. . . . .
>
> Even assuming -- without deciding -- that no grievance procedures were available to [the prisoner] at [the correctional facility], the record indicates that [the prisoner] did have grievance procedures available to him when he transferred to [another correctional facility], yet he failed to exhaust them.

[Bryant, supra, at 3].

The existence or presence of medical testimony via affidavit makes no difference with regards to whether Breach complied with the PLRA requirement. It is critical that Breach's claims be dismissed in their entirety because of his failure to follow all the mandatory, administrative procedures in place at both Kilby Correctional and Limestone Correctional Facilities.

## IV. __CONCLUSION__

The Prison Litigation Reform Act places a stop sign in the way of Mr. Breach's claim. Regardless of the time, effort, and evidence submitted by Breach, his failure to comply with all of the mandatory administrative remedies requires his case be dismissed. The case law within the Eleventh Circuit leaves no other option.

The deliberate indifference standard has not been met by Mr. Breach, even when one considers the affidavit of Dr. Yerubandi. Constitutional deprivation of medical care requires evidence of intentional or reckless acts by prison healthcare officials to deny or deprive Breach of __necessary__ medical treatment. It does not guarantee a prisoner's requested treatment nor does Dr. Yerubandi's affidavit create an issue of fact with regards to the quality of medical care provided by PHS employees for Breach's inguinal hernia.

Finally, the state law claims under the Alabama Medical Liability Act have no merit. Not only are procedural deficiencies pervasive throughout Dr. Yerubandi's affidavit and Breach's pleadings, but the factual content does not rise to the level of substantial evidence necessary to maintain a claim under the Alabama Medical Liability Act. First, PHS employees did not engage in medical negligence or do anything to cause or contribute to the hernia. Secondly, no actions or inactions by PHS employees have caused or allowed the hernia to increase or become incarcerated. Thirdly, and most importantly, overwhelming medical evidence shows that the conservative treatment provided by PHS and its

employees constitutes viable, applicable treatment for an inguinal hernia of the type and location experienced by Mr. Breach. Merely because another doctor has another medical treatment option, does not state a claim under the Alabama Medical Liability Act.

For the reasons set out above and in these Defendants' previously filed Special Report, the Defendants request that the Plaintiff's claims be dismissed, with prejudice, and costs taxed against the Plaintiff.

/s/ PAUL M. JAMES, JR. (JAM017)
Attorney for Defendants, Prison Health Services, et al.

OF COUNSEL:

RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
P. O. Box 270
Montgomery, AL  36101-0270
(334) 206-3148
(334) 262-6277 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served by

U.S. Mail this the 13th day of July, 2007, to:

> Mr. Marcellus Breach (#160710)
> Limestone Correctional Facility
> 28779 Nick Davis Road
> Harvest, AL 35749

The Clerk of Court, using the CM/ECF system will send notification of this

filing to the following:

> Albert Sims Butler, Esq.
> ALABAMA DEPARTMENT OF CORRECTIONS
> P. O. Box 301501
> Montgomery, AL 36130-1501

> /s/ PAUL M. JAMES, JR. (JAM017)
> OF COUNSEL

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARCELLUS BREACH, (AIS # 160710) | * | |
| Plaintiff, | * | |
| V. | * | 2:06-CV-1133-MEF |
| PRISON HEALTH SERVICES, et al., | * | |
| Defendants. | * | |

## AFFIDAVIT OF WILLIAM D. HOBBS, M.D.

BEFORE ME, __James Bailey__, a notary public in and for said County and State, personally appeared **WILLIAM D. HOBBS, M.D.**, and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is William D. Hobbs. I am a medical doctor and I have been a licensed physician in the State of Alabama since 2006. I have served as the Site Medical Director for Limestone Correctional Facility in Athens, Alabama since October of 2006. I have been employed with Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates since my employment began at Limestone. I am personally familiar with all of the facts set forth in this Affidavit.

The Plaintiff, Marcellus Breach (AIS #160710), is currently incarcerated as an inmate at Limestone Correctional Facility. Mr. Breach was transferred to Limestone Correctional Facility on March 23, 2007. I am familiar with Mr. Breach and have been involved with the

medical services provided to him at Limestone. In addition, I have reviewed Mr. Breach's Complaint in this action as well as his medical records (certified copies of which are being produced to the Court along with this Affidavit).

Mr. Breach was first diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole." I have reviewed his medical records and have been actively involved in his medical treatment.

The following information is based upon my personal knowledge and my review of Mr. Breach's medical records. Mr. Breach prepared a Sick Call Request on April 26, 2007 complaining of burning pain due to his hernia. He stated it was causing him problems coughing, sneezing and with bowel movements. This request was received on April 27th. Mr. Breach claims that Dr. Tassin at South Louisiana Correctional Services stated to him on March 21, 2006 that he needed surgery to repair his hernia. I examined Mr. Breach on April 30th and I noted that he did not have a right Direct, Indirect or Femoral Hernia. Mr. Breach did not have a left Indirect or Femoral Hernia. He did have a large, easy to reduce direct inguinal hernia on the left. I ordered another small Ventura Truss as Mr. Breach stated he had lost his truss. My Physicians' Orders on April 30th indicate that I prescribed Motrin 600 mg as needed for 90 days for his discomfort and CTM SR (a sustained release antihistamine) for coughing and sneezing.

In addition, I have reviewed two pages of Doctor's Orders from Louisiana Corrections Services. Dr. Tassin indicates on March 21, 2006 that Mr. Breach does have a left Inguinal Hernia, but repair is questionable. On July 18, 2006, Dr. Tassin again indicates that Breach has a left Inguinal Hernia, but he states that it is not incarcerated and hernia repair is an elective procedure. (A copy of which is attached as an exhibit to the Supplemental Special Report.)

2

I have reviewed a Special Needs Communication Form which was prepared on December 27, 2006 and the following restrictions were placed on Mr. Breach at that time: 1) Bottom Bunk for 180 days; 2) Truss for 180 days; and 3) No straining or lifting greater than 20 pounds for 180 days. I prepared a Special Needs Communication Form on April 10, 2007 and placed the following restrictions on Mr. Breach: 1) No lifting greater than 25 pounds; 2) No standing/walking greater than one hour; 3) Hernia Truss, left ankle brace. The diagnosis on this date was Inguinal Hernia and deformity of left foot.

I have also reviewed the Affidavit of Dr. Satyavardhana Rao Yerubandi in this matter (see attached) and I do not agree with several of his opinions as stated. As a general rule, a hernia does not progress quickly and there are instances where a person has a hernia for many years and may never require surgery for repair. Hernia repair is an elective surgery. The danger of waiting for a hernia to become incarcerated or strangulated is not high and emergencies involving hernias do not develop often.

Mr. Breach's inguinal hernia is being treated in an attempt to keep it from becoming larger and surgery is not his only option. A hernia can be treated with restrictions related to lifting, walking, standing and wearing a truss all of which have been prescribed for Mr. Breach. His medical records indicate that he has arrived at his medical appointments on several occasions without wearing his truss and he informed PHS employees that he lost it. Mr. Breach is not following the appropriate treatment necessary to treat his hernia.    A truss is used to decrease discomfort and to decrease the possibility of the hernia becoming larger. If Mr. Breach would follow the instructions provided to him and the restrictions placed on him by PHS physicians and if he would wear the truss prescribed for him, these things would in fact keep his hernia from progressing.    Mr. Breach's hernia is not life threatening and does not require surgical

3

intervention and I believe surgery is not medically necessary. His hernia is easily reducible, non-strangulated, and is not incarcerated.

Hernia repair is an elective procedure and every hernia does not need to be repaired. In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum. Mr. Breach does not meet this protocol and his hernia is easily reduced. If another physician is suggesting that Mr. Breach's hernia should be repaired, this physician is mistaken and he is only trying to perform an elective surgery which is unnecessary and is not medically needed. Again, Mr. Breach is not in imminent danger and his hernia is not life threatening.

Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complaints were evaluated and treated in a timely and appropriate fashion and that his diagnosed conditions have been treated in a timely and appropriate fashion. It is also my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. Mr. Breach was seen and evaluated by the medical or nursing staff, and was referred to an appropriate care provider or given appropriate care, each time he registered any health complaints. At all times, Mr. Breach's known medical complaints and conditions were addressed as promptly as possible under the circumstances. Mr. Breach continues to receive medical treatment for his complaints related to his left inguinal hernia."

Further affiant sayeth not.

William D. Hobbs, MD

_____
WILLIAM D. HOBBS, M.D.

4

STATE OF ALABAMA                    )
                                   )
COUNTY OF ~~Wallace~~              )

Sworn  to  and  subscribed  before  me  on  this  the  _____13th_____  day  of
~~July~~_____, 2007.

_____
Notary Public
My Commission Expires:

_____9-8-2010_____

5

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, (AIS # 160710)          *

     Plaintiff,                                       *

V.                                                              *          2:06-CV-1133-MEF

PRISON HEALTH SERVICES, et al.,            *

     Defendants.                                   *

## SUPPLEMENTAL AFFIDAVIT OF MICHAEL E. ROBBINS, M.D.

BEFORE ME, _____, a notary public in and for said County and

State, personally appeared **MICHAEL E. ROBBINS, M.D.**,  and being duly sworn, deposed

and says on oath that the averments contained in the foregoing are true to the best of his ability,

information, knowledge and belief, as follows:

"My name is Michael E. Robbins.  I am a medical doctor and am over twenty-one years

of age.  I have been a licensed physician in Alabama since 1986 and have been board certified in

internal medicine since 1986.  Since June of 2002, I have served as the Medical Director for

Kilby Correctional Facility in Mt. Meigs, Alabama. Since November 3, 2003, my employment

has been with Prison Health Services, Inc., the company which currently contracts with the

Alabama Department of Corrections to provide medical services to inmates. I am personally

familiar with all of the facts set forth in this Affidavit.

As discussed in my previous affidavit (see attached), Mr. Breach has made a complaint

in this case regarding his medial care relative to his left inguinal hernia. Mr. Breach was first

diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs when there is a small

opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole. Mr. Breach was incarcerated at Kilby Correctional Facility at all times pertinent to his Complaint and was transferred to Limestone Correctional Facility on March 23, 2007.

I have reviewed the Affidavit of Dr. Satyavardhana Rao Yerubandi in this matter (see attached). Dr. Yerubandi addresses in his Affidavit what could happen and/or the possibilities that could arise in a person with a hernia and this information is correct. However, there are many instances where these possibilities never occur. There are known instances where a person has had a hernia for many years and has never required surgical repair. At the time Mr. Breach was examined by PHS employees at Kilby Correctional Facility, none of these possibilities existed. His hernia is easily reducible, non-strangulated, and is not incarcerated. Therefore, his hernia did not require surgical repair. An inguinal hernia can be treated and surgery is not the only option.

I do agree with Dr. Yerubandi that a hernia does not heal itself. However, a hernia can be treated with restrictions related to lifting, walking, standing and wearing a truss all of which was prescribed for Mr. Breach. Medical records indicate that Mr. Breach arrived at his medical appointments on numerous occasions without wearing his truss and stated he lost it. A truss is used to decrease discomfort and to decrease the possibility of the hernia becoming larger. If Mr. Breach had followed the instructions provided to him by PHS physicians and if he had followed the restrictions placed on him and if he had worn the prescribed truss, these things would in fact keep the hernia from progressing or getting worse. Mr. Breach's hernia is not life threatening and does not require surgical intervention and I believe surgery is not medically necessary.

Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complaints

2

were evaluated and treated in a timely and appropriate fashion at Kilby Correctional Facility. At all times, myself, and the other healthcare providers at Kilby have exercised the same degree of care, skill, and diligence as other similarly situated health care providers would have exercised under the same or similar circumstances. In other words, it is my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. At no time have I or any of the medical or nursing staff at Kilby Correctional Facility denied Mr. Breach any needed medical treatment, nor have we ever acted with deliberate indifference to any serious medical need of Mr. Breach. At all times, Mr. Breach's known medical complaints and conditions were addressed as promptly as possible under the circumstances."

Further affiant sayeth not.

*Michael E. Robbins MD*

**MICHAEL E. ROBBINS, M.D.**

STATE OF ALABAMA          )
                          )
COUNTY OF _____  )

Sworn to and subscribed before me on this the ____12th____ day of ____July____, 2007.

_____
Notary Public
My Commission Expires:

____6/15/08____

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, (AIS # 160710)          *

     Plaintiff,          *

V.          *          2:06-CV-1133-MEF

PRISON HEALTH SERVICES, et al.,          *

     Defendants.          *

### AFFIDAVIT OF MICHAEL E. ROBBINS, M.D.

BEFORE ME, *Willie G. Powell*, a notary public in and for said County and State, personally appeared **MICHAEL E. ROBBINS, M.D.,** and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is Michael E. Robbins. I am a medical doctor and am over twenty-one years of age. I have been a licensed physician in Alabama since 1986 and have been board certified in internal medicine since 1986. Since June of 2002, I have served as the Medical Director for Kilby Correctional Facility in Mt. Meigs, Alabama. Since November 3, 2003, my employment has been with Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates. I am personally familiar with all of the facts set forth in this Affidavit.

The Plaintiff, Marcellus Breach (AIS #160710), is currently incarcerated as an inmate at Kilby Correctional Facility. I am familiar with Mr. Breach and have been involved with the medical services provided to him at Kilby. In addition, I have reviewed Mr. Breach's Complaint

in this action as well as his medical records (certified copies of which are being produced to the Court along with this Affidavit).

Mr. Breach was first diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole." He has been incarcerated at Kilby Correctional Facility since September 6, 2006. I have reviewed his medical records and have been actively involved in his medical treatment. It is noted in a Progress Note from Dr. Bosserman on May 5, 2005 that Mr. Breach does have an inguinal hernia on the left, but it is not into the scrotum. The inmate has had the hernia for at least the past year. Dr. Bosserman placed the inmate on limited restrictions of no lifting greater than 25 lbs. and no standing or walking for greater than one hour due to (1) a deformity of his left foot, (2) an ankle brace, and (3) a hernia for which he prescribed a truss. In a yearly Health Evaluation dated February 2, 2006, he made no oral complaints about any pain associated with the inguinal hernia.

Mr. Breach was to be seen on December 21, 2006 for evaluation of his left inguinal hernia but left before his exam could be performed. It should also be noted that Mr. Breach signed up for Sick Call on October 9, 2006 and October 12, 2006, but signed a Release of Responsibility Waiver and left before his exam on both dates. Mr. Breach was examined on December 27, 2006 for evaluation of his left inguinal hernia. He voiced no other complaints at that time. It was noted on that date that he was not wearing his truss. The hernia was noted as being easily reducible, non-strangulated, and is not incarcerated. Inmate was prescribed a left inguinal truss for 180 days and Percogesic for pain. He was placed on restrictions of no straining, no lifting more than 20 lbs. and placed in bottom bunk for 180 days. It was noted at that time that there was no need for surgical referral at present. In my opinion, the inmate's

2

hernia does not require surgical intervention and I believe surgery is not medically necessary. The type hernia which Mr. Breach has should not cause the patient any pain nor is it a condition that a reasonable person cannot live with under the conditions and restrictions governing Mr. Breach.

Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complaints were evaluated and treated in a timely and appropriate fashion at Kilby Correctional Facility, and that his diagnosed conditions have been treated in a timely and appropriate fashion.

At no time did I or any of the medical or nursing staff at Kilby Correctional Facility deny Mr. Breach any needed medical treatment, nor did we ever act with deliberate indifference to any serious medical need of Mr. Breach. In other words, it is my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. Mr. Breach was seen and evaluated by the medical or nursing staff, and was referred to an appropriate care provider or given appropriate care, each time he registered any health complaints at Kilby Correctional Facility. At all times, Mr. Breach's known medical complaints and conditions were addressed as promptly as possible under the circumstances.

Further affiant sayeth not.

_Michael E. Robbins_ MD

MICHAEL E. ROBBINS, M.D.

3

STATE OF ALABAMA        )
                                    )
COUNTY OF _____ )

Sworn to and subscribed before me on this (the _____ 14th _____ day of February, 2007.

_____
Notary Public
My Commission Expires:

6/15/08

4

# EXHIBIT C

## AFFIDAVIT

**STATE OF ALABAMA**

_Limestone_  **COUNTY**


I, _Debbie Hunt, RN, HSA_ hereby certify and affirm that I am a

_RN/Health Service Adm_ , at _Limestone Correctional Facility_ that I am one of the

custodian of records at this institution; that the attached documents are true, exact, and correct

photocopies of certain documents maintained here in the institutional medial file of one

_Marcellus Breach_ , AIS# _160710_ ; and that I am over the age of

twenty-one years and am competent to testify to the aforesaid documents and matters stated

therein.

I further certify and affirm that said documents are maintained in the usual and ordinary

course of business at _Limestone Correctional Fac.;_ and that said documents (and the entries

therein) were made at, or reasonably near, the time that by, or from information transmitted by, a

person with knowledge of such acts, events and transactions referred to therein are said to have

occurred.

This, I do hereby certify and affirm to on this the _2_ day of _July_ , 200 _07_

_Debbie Hunt, RN/HSA_


SWORN TO AND SUSBCRIBED before me on this _2_ day of _July_ , 200 _7_ .

_Diana R Disk_
Notary Public
My Commission Expires: _8-1-2010_



**PRISON HEALTH SERVICES, INC.**
**SICK CALL REQUEST**

Print Name: _Marcellus Breach_ _____ Date of Request: _10/11/06_ _____
ID # _160210_ _____ Date of Birth: _9/28/69_ Location: _West 16_
Nature of problem or request: _I need to get the "Medical" hold_
_off of me so that I can be Reclassed. It's_
_concerning a transit. I need to be Released_
_from Medical_

_Marcellus Breach_
Signature

### DO NOT WRITE BELOW THIS LINE

Date: ___/___/___
Time: _____ AM  PM
Allergies: _____

| RECEIVED |
| --- |
| Date: |
| Time: |
| Receiving Nurse Intials _____ |

**(S)ubjective:**               See note

**(O)bjective     (V/S): T:** _____ **P:** _____ **R:** _____ **BP:** _____ **WT:** _____

**(A)ssessment:**          10/12/06
                           Signed
                           Waiver

**(P)lan:**

Refer to:   MD/PA   Mental Health   Dental   Daily Treatment        Return to Clinic PRN
                              CIRCLE ONE
Check One:   ROUTINE ( )      EMERGENCY ( )
        If Emergency was PHS supervisor notified:   Yes ( )    No ( )
                Was MD/PA on call notified:   Yes ( )    No ( )

_____

*SIGNATURE AND TITLE*

WHITE:     INMATES MEDICAL FILE
YELLOW:  INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

GLF-1002   (1/4)



**Nursing Evaluation Tool:**                                                    <u>General Sick Call</u>

Facility: Alabama Department of Corrections

Patient Name: ~~Beach~~, Marcellus
_____Last _____ First

Inmate Number: 160710                        Date of Birth: 7 / 28 / 69
_____ MM   DD   YYYY   MI

Date of Report: 10 / 12 / 06                  Time Seen: 6:00  AM/(PM)  Circle One
_____ MM   DD   YYYY

_Subjective:_  Chief Complaint(s): I have a medical Hold on me.

Onset: I have an inguinal Hernia Lt x 2 yrs.

Brief History: 37 yo Bm c̄ Hx LIH x 2 yrs
(Continue on back if necessary)

☐ Check Here if additional notes on back

_Objective:_  Vital Signs: (As Indicated) T: 97.8  P: 70  RR: 18  B/P: 100 / 70 / 60

Examination Findings: A + O x 3 Resp. reg c̄ use. VS WNL   NAD
(Continue on back if necessary)

☐ Check Here if additional notes on back

_Assessment: (Referral Status)_  Preliminary Determination(s): Pt in comfort
☐  Referral <u>NOT REQUIRED</u>                    R/T above statement

☒  Referral <u>REQUIRED</u> due to the following: (Check all that apply)
     ☐ Recurrent Complaint (More than 2 visits for the same complaint)
     ☒ Other: Need release written

**Comment:** You should contact a physician and/or a nursing supervisor if you have any concerns about the status of the patient or are unsure of the appropriate care to be given.

_Plan:_  Check All That Apply:
☐ Instructions to return if condition worsens.
☐ Education: The patient demonstrates an understanding of the nature of their medical condition and instructions regarding what they should do as well as appropriate follow-up. ☐ YES ☐ NO (If NO then schedule patient for appropriate follow-up visits)
☐ Other:_____
        (Describe)
OTC Medications given  ☒ NO  ☐ YES (If Yes) List:_____

Referral: ☐ NO ☒ YES (If Yes, Whom/Where): B Adams CRNP        Date for referral: 10 / 12 / 06
                                                                              MM   DD   YYYY
Referral Type: ☐ Routine ☐ Urgent ☐ Emergent (if emergent who was contacted?):_____ Time_____

x _Truuu LPN_                    Name: Lorraine Graves
   Nurses Signature                        Printed

**PHS**

## Nursing Evaluation Tool:                    General Sick Call

Facility: Alabama Department of Corrections

Patient Name: Breach, Marcelus
                              Last

Inmate Number: 160710                    First _____ Date of Birth: 7 / 28 / 69
                                                                          MM   DD   YYYY

Date of Report: 12 / 21 / 06          Time Seen: 600  (AM) PM  Circle One
                  MM   DD   YYYY

**Subjective:** Chief Complaint(s) (L) Inguinal hernia X 2005

Onset: _____

Brief History: 37 y.o. Bm c̄ Hx (L) Inguinal hernia
(Continue on back if necessary)
Trauma Lt spine, Hypoglycemic

**Objective:** Vital Signs: (As Indicated) T: 98.6  P: 94  RR: 18  B/P: 110 / 90  Wt: 160.    ☐ Check Here if additional notes on back

Examination Findings: A+O x3 Resp reg c̄ ease, VS WNL  NAD.
(Continue on back if necessary)

**Assessment:** (Referral Status)          Preliminary Determination(s): Alt in comfort R/T    ☐ Check Here if additional notes on back
☐ Referral NOT REQUIRED                                                    above statement
☑ Referral REQUIRED due to the following: (Check all that apply)
   ☐ Recurrent Complaint (More than 2 visits for the same complaint)
   ☐ Other: _____

Comment: You should contact a physician and/or a nursing supervisor if you have any concerns about the status of the patient or are unsure of the appropriate care to be given.

**Plan:** Check All That Apply:
☐ Instructions to return if condition worsens.
☐ Education: The patient demonstrates an understanding of the nature of their medical condition and instructions regarding what they should do as well as appropriate follow-up.  ☐ YES  ☐ NO (If NO then schedule patient for appropriate follow-up visits)
☐ Other: _____
                                                                              10/9/10/12
(Describe)
OTC Medications given ☑ NO  ☐ YES (If Yes List): _____

Referral: ☐ NO  ☑ YES (If Yes, Whom/Where): B Adams CRNP              Date for referral 12 / 21 / 06
                                                                                        MM  DD  YY
Referral Type: ☐ Routine  ☐ Urgent  ☐ Emergent  (If emergent who was contacted?): _____    Time _____

x _____                         Name: Lorraine Graves
     Nurses Signature                              Printed



**PRISON HEALTH SERVICES INCORPORATED**

## PROGRESS NOTES

| Date/Time | Inmate's Name: Breach , Marcellus     D.O.B.: / / |
|---|---|
| 12/21/06
1105 | I was asked by Mrs. Lawrence, HSA to see this patient today for chronic ⓛ inguinal hernia. He came down for screening and vital signs but left before exam despite counseling from me that he needed to stay. Chart review shows that he signed up for sick call on 10/9/06 & 10/12/06 but signed a release of responsibility waiver and left before exam on both dates. In summary, patient left outpatient clinic each of the last three times he was scheduled to be seen, before the physical examination could even be performed, despite counseling. I cannot evaluate his hernia (or anything else) if he refuses to stay for his examination. We will call him down again tomorrow and hopefully he will stay for the exam.

Blen CRNP |



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# SPECIAL NEEDS COMMUNICATION FORM

**Date:** 12/27/06

**To:** DOC

**From:** OPC

**Inmate Name:** Breach, Marcellous  **ID#:** 160710

**The following action is recommended for medical reasons:**

1. House in _____

2. Medical Isolation _____

3. Work restrictions _____

4. May have extra _____ until _____

5. Other _____

**Comments:**

Bottom Bunk x 180 days

Truss x 180 days

No straining or Lifting Greater than

20 minutes x 180 days

**Date:** 12/27/06  **MD Signature:** UU B. Adams CRNP/
Fraues, LPN  **Time:** _____

60418



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

## PROGRESS NOTES

| Date/Time | Inmate's Name: Breach, Marcelus | D.O.B.: / / |
|-----------|-------------------------------|-------------|

12/27/06
1125

Pt. seen today for evaluation of Ⓛ inguinal
hernia. Ⓢ other c/o.

                    VSS ; Afebrile ; he is not wearing a truss

Ⓛ inguinal area noted with small inguinal
hernia ; easily reducible ; non-strangulated ;
not incarcerated ; size is ~ 3×5 cm
(unchanged from exam description on 5/5/06)

- Pt. states that he has documentation from
another facility that supposedly says that
he needs surgical repair of his Ⓛ inguinal
hernia but I have no record of this in
his chart.

✻ Consulted with Dr. Robbins

1) Ⓛ inguinal hernia
  - Records / old charts
  - Ⓛ inguinal hernia truss / Percogesic PRN
  - Ⓢ straining / Ⓢ lift > 20 #'s
  - Bottom Bunk profile
  - no need for surgical referral @ present
  - F/u OPC 2 wks / PRN

Σ: Tx plan

                                        Ben CRNP

BSV today =
70 mcg/dL

Add: Pt. also states he is 'hypoglycemic' but I see
no documentation of this in his chart either.
I will order BSV's BID × 7d & evaluate them.

                                        Ben CRNP



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

## PHYSICIANS' ORDERS

| NAME: Breach, Marcellus | DIAGNOSIS (If Chg'd) |
|---|---|
| D.O.B. / / <br> ALLERGIES: | |
| Use Last    Date / / | ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |

| NAME: Breach, Marcelus <br> D.O.B. 7 28,69   160710 <br> ALLERGIES: a        X M Ref <br> Use Fourth    Date 4,30,07 | DIAGNOSIS (If Chg'd)   (KOP) <br> Motrin 600mg tid PRN X 90days <br> Ctm SR 12mg i every 12 hours X 30 days (KOP) <br> X 6mo. |
|---|---|
| | ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |

| NAME: Breach, Marcellus <br> 160710 <br> D.O.B. 7 28,69 (noted 21-04 16:44) <br> ALLERGIES: NKDA <br> Use Third    Date 2,1,07 | DIAGNOSIS (If Chg'd) <br> UA: Fasting Profile I <br> EKG <br> S.O. Dr Robbins / L Bell RN <br> per _____ Jakenus Juttartman |
|---|---|
| | ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |

| NAME: Breach, Marcelus <br> 160710   12/27/06 <br> D.O.B. 7 28 69   5:15 pm <br> ALLERGIES: NKDA   noted <br> Use Second    Date 12/27/06 | DIAGNOSIS (If Chg'd) <br> ④ Bottom Bunk / Ø Straining / Ø lift <br> > 20 #'s  X 180 days <br> ⑤ Flu   OPC   2 wks   (Records / BS V's) <br> ⑥ Percogesic ii   po   BID X 90d PRN |
|---|---|
| | ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |

| NAME: Breach, Marcelus <br> 160710 <br> D.O.B. 7 28 69 <br> ALLERGIES: NKDA <br> Use First    Date 12/27/06 | DIAGNOSIS <br> ① Please order old records / old charts <br> with any information related to ② <br> inguinal hernia evaluation & treatment <br> ② L inguinal hernia truss X 180d(KOP) <br> ③ BS V's   BID X 7d |
|---|---|
| | ☐ GENERIC SUBSTITUTION IS NOT PERMITTED |



**PRISON HEALTH SERVICES, INC.**
**SICK CALL REQUEST**

Print Name: _Marcellus Breach_     Date of Request: _3/26/07_

ID # _160710_     Date of Birth: _2/28/69_   Location: _J-17A_

Nature of problem or request: _Need Kilby profiles reviewed And Also regarding profile of Dr. Bessinger, hernia, ankle, back injuries & pain_

_____

_____ _Signature_

## DO NOT WRITE BELOW THIS LINE
_____

Date: ____/____/____

Time: _____ AM PM

Allergies: _____

┌─────────────────────────────────┐
│           RECEIVED              │
│ Date:                           │
│ Time:                           │
│ Receiving Nurse Intials _____  │
└─────────────────────────────────┘

**(S)ubjective:**

**(O)bjective**   (V/S): T: _____ P: _____ R: _____ BP: _____ WT: _____

**(A)ssessment:** _Need to Complete profile form_

**(P)lan:**

Refer to:   MD/PA   Mental Health   Dental   Daily Treatment     Return to Clinic PRN

CIRCLE ONE

Check One: ROUTINE ( )    EMERGENCY ( )

    If Emergency was PHS supervisor notified:   Yes ( )    No ( )

       Was MD/PA on call notified:   Yes ( )    No ( )

_____

*SIGNATURE AND TITLE*

WHITE:    INMATES MEDICAL FILE

YELLOW: INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

GLF-1002   (1/4)



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

## SPECIAL NEEDS COMMUNICATION FORM

**Date:** _10 April 2007_

**To:** _Doc_

**From:** _HCU_

**Inmate Name:** _Breach, Marcellus_    **ID#:** _160 710_

**The following action is recommended for medical reasons:**

1. House in _____

2. Medical Isolation _____

3. Work restrictions _____

4. May have extra _____ until _10 April 2008_

5. Other _____

**Comments:**

- No lifting greater than 25 pounds.
- No standing/walking greater than one hour.
- ~~Hernia truss~~  ankle brace left ankle

Dx: Inguinal Hernia
   Deformity of left foot

**Date:** _10 April 2007_ **MD Signature:** _H Haas_    **Time:** _____

60418

*Same Problem!*



PHS
PRISON
HEALTH
SERVICES
INCORPORATED

# PRISON HEALTH SERVICES, INC.
## SICK CALL REQUEST

Print Name: _Marcellus T. Breach_       Date of Request: _4/26/07_
ID # _160710_       Date of Birth: _7/28/69_ Location: _D-195_
Nature of problem or request: _I am having burning pain due to my hernia. It is causing my problems coughing, sneezing & bowel movements. On 3-21-06 Dr. Tassin said needs repair, I need surgery,_ aggraviated hernia.

_Marcellus Breach_
*Signature*

### DO NOT WRITE BELOW THIS LINE

---

Date: ___/___/___
Time: _____ AM  PM
Allergies: _____

| RECEIVED |
|---|
| Date: |
| Time: |
| Receiving Nurse Intials _____ |

**(S)ubjective:** *Lost Truss*

**(O)bjective**   (V/S): T: ___  P: ___  R: ___  B/P: ___  WT: ___

Exam No ® Direct, Indirect n referred Hernia
No left Indirect n found Hernia
verya easy to Reduce directer Inguinal Hernia on left.

**(A)ssessment:**

**(P)lan:**

Refer to:   MD/PA   Mental Health   Dental   Daily Treatment   Return to Clinic
CIRCLE ONE
Check One:  ROUTINE ( )      EMERGENCY ( )
If Emergency was PHS supervisor notified:     Yes ( )    No ( )
Was MD/PA on call notified:     Yes ( )    No ( )

_James Vunturner RN_ Truss
Sus Abdras

---

*SIGNATURE AND TITLE*

WHITE:    INMATES MEDICAL FILE
YELLOW:  INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

GLF-1002   (1/4)

# EXHIBIT D

07/10/2007 15:21 FAX 125823(    7        PHS@LCF-0841                          ☑ 004/005

## LCS CORRECTIONS SERVICES, INC.
### DOCTOR'S ORDERS SHEET

**Offender Name:** Breach, Marcelus    **DOC#:** AL 160710

| Date / Time | Allergies: NKH |
|---|---|
| 5-21-06 | Hernia (L) Inguinal Hernia Needs Repair? |
| | RPR |
| | M. Maye |
| 4/12/06 | IBP 400mg BID til dental Dr. Tassin / M. Maye |
| 1/18/06 | Pt has (L) Inguinal Hernia Not Incarcerated, Elective procedure |
| | M. Maye |

DWV

07/10/2007 15:21 FAX  125623(  7        PHS0LCF-0841                    ☑003/005

## LCS CORRECTIONS SERVICES, INC.
### DOCTOR'S ORDERS SHEET

Offender Name: _Breach, Marcelus_          DOC#: _AL 160710_

| Date / Time | Allergies: _NKA_ |
|---|---|
| 5-21-06 | Hernia (L) Inguinal Hernia Needs repair? |
| | _N.D.R_ |
| | _M. Mays_ |
| 4/2/06 | IBP 400mg BID tel dental Dr. Tassin / M. Mays |
| 7/18/06 | Pt. has (L) Inguinal Hernia Not Incarcerated, Elective Procedure |
| | _M. Mays_ |
| 10-3-06 | Old Injury (L) ankle today + RUH. Aeh'l Naprosyn tab 500 #30 X-3 ½ po |
| | _M. Mays_ |

# EXHIBIT E

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARCELLUS BREACH (AIS # 160710), | * | |
| Plaintiff, | * | |
| V. | * | 2:06-CV-1133-MEF |
| PRISON HEALTH SERVICES, et al., | * | |
| Defendants. | * | |

## SUPPLEMENTAL AFFIDAVIT OF LINDA LAWRENCE, R.N., H.S.A.

BEFORE ME, _Vick Napier_, a notary public in and for said County and State, personally appeared **LINDA LAWRENCE, R.N., H.S.A.,** and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of her ability, information, knowledge and belief, as follows:

"My name is Linda Lawrence. I am over the age of twenty-one and am personally familiar with all of the facts set forth in this Affidavit. I have been a licensed, registered nurse in Alabama since 1997. I hold an Associates Degree in nursing from Troy State University in Montgomery. I have worked as a nurse at Kilby Correctional Facility in Mt. Meigs, Alabama, since March of 2002, and have been the Health Services Administrator (H.S.A.) at Kilby since May of 2002. Since November 3, 2003, I have been employed by Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates.

I requested and received copies of Mr. Breach's file from South Louisiana Correctional Center which were generated while he was incarcerated at this facility. I have reviewed my file

in regards to any "Offender Grievance" forms filed by Mr. Breach while he was incarcerated in the State of Louisiana and my file does not contain any such forms. Mr. Breach was incarcerated in Louisiana from March 16, 2006 through October 6, 2006.

I did receive Mr. Breach's "Inmate Informal Grievance" which he filed on October 11, 2006 and I did respond to this grievance on October 17, 2006. Mr. Breach was received from Louisiana on October 6, 2006. At the time that I had responded to his grievance, I had reviewed Mr. Breach's records generated while he was incarcerated at Kilby Correctional Facility and I did not find a Sick Call Request or any medical record generated while Mr. Breach was incarcerated at Kilby which would reflect his complaints related to a hernia. At this time, I advised him that I did not see any evidence where he had been examined at Kilby for complaints related to a left inguinal hernia and I did not see a "Medical Hold" or Medical Stop Up" in his file. I further advised him that if he had a health problem, he needed to sign up for sick call.

According to PHS Policy, Mr. Breach had the right to file an "Inmate Grievance Appeal" form at this time. However, Breach did not file nor did he attempt to file such a form, thereby violating the facility's procedures governing this issue.

With respect to Mr. Breach's allegations that he filed a Grievance Complaint to me personally on November 7, 2006, I do not recall ever receiving such a complaint. However, in reviewing our records, I notice that we do in fact have two handwritten complaints directed to me from Mr. Breach and both are dated November 7, 2006. These complaints are not prepared on the appropriate Prison Heath Services forms and Mr. Breach did not follow the PHS procedure for identifying and addressing inmate grievances at Kilby Correctional Facility."

Further affiant sayeth not.

2

_Linda Lawrence Rn HSA_
LINDA LAWRENCE, R.N., H.S.A.

STATE OF ALABAMA    )
                              )
COUNTY OF _____  )

Sworn to and subscribed before me on this the _____13th_____ day of _____July_____, 2007.

_____
Notary Public

My Commission Expires:

_____6-23-08_____

3

# EXHIBIT F

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH (AIS # 160710),          *

    Plaintiff,          *

V.          *          2:06-CV-1133-MEF

PRISON HEALTH SERVICES, et al.,          *

    Defendants.          *

## AFFIDAVIT OF LINDA LAWRENCE, R.N., H.S.A.

**BEFORE ME,** Perry A. Woods _____, a notary public in and for said County and State, personally appeared **LINDA LAWRENCE, R.N., H.S.A.,** and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of her ability, information, knowledge and belief, as follows:

"My name is Linda Lawrence. I am over the age of twenty-one and am personally familiar with all of the facts set forth in this Affidavit. I have been a licensed, registered nurse in Alabama since 1997. I hold an Associates Degree in nursing from Troy State University in Montgomery. I have worked as a nurse at Kilby Correctional Facility in Mt. Meigs, Alabama, since March of 2002, and have been the Health Services Administrator (H.S.A.) at Kilby since May of 2002. Since November 3, 2003, I have been employed by Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates.

Prison Health Services, Inc. (PHS) has established a simple two-step procedure for identifying and addressing inmate grievances at Kilby Correctional Facility. If an inmate has a

grievance regarding a healthcare issue he must submit to the healthcare unit an "Inmate Informal Grievance" form. These are standard forms that may be acquired in the healthcare unit or from an inmate's supervising officer in his dormitory. The informal grievance allows an inmate to communicate any healthcare related concern by placing the form in the medical services complaint box or mailbox to be forwarded to the healthcare unit. I subsequently review the concern and respond via in house mail.

If the inmate is unsatisfied with my response, he may request an "Inmate Grievance Appeal" form from the healthcare unit. This form allows an inmate to again voice his concerns relating to the healthcare issue addressed with the informal grievance form. After the inmate has submitted the grievance appeal, I will meet with him face-to-face in a final attempt to address his concerns verbally.

It is my understanding that Marcellus Breach has filed suit in this matter alleging that Prison Health Services, Inc. has failed to provide him with appropriate medical care. However, Mr. Breach has failed to exhaust Kilby's informal grievance procedure relating to the receipt of medical care for this alleged condition. Specifically, as relevant to his Complaint, Mr. Breach has submitted neither an inmate informal grievance nor an inmate grievance appeal. As such, the healthcare unit at Kilby has not been afforded the opportunity to resolve Mr. Breach's medical complaints prior to filing suit."

Further affiant sayeth not.

*Linda Lawrence Rn, HSA*
LINDA LAWRENCE, R.N., H.S.A.

2

STATE OF ALABAMA )
)
COUNTY OF Montgomery )

    Sworn to and subscribed before me on this the _13th_ day of February , 2007.

Perry O. Woods
Notary Public

My Commission Expires:

May 28, 2007

3

Marcellus Breach    160710    West-16    11/7/06

TO: Mrs. L Lawrence R.N.

On 10-17-06 You stated that you searched my Medical Records from front to back and found no evidence of a hernia. I do not know yet how well PHS keeps Medical Records up-dated out: 2-20-05 Inguinal hernia A.D.O.C. 5/9/05 Hernia pain 3x5 cm inguinal hernia on ® not into scrotum. Truss issued. Ref. Dr Bossienne, 3-21-06 Hernia ® Inguinal not! "Hernia" Needs Repair: Dr Tassin. Incarcerated. elective procedure. You still don't have my records? Referred to Surgeon: Surgeon Dr Tassin I need this surgery, I can't go any other and go Medical Hold. Do you want me to show you proof Dr Tassin Recommended Surgery? Why am I denied/delayed Surgery?

Marcellus Breach

Certificate of Service
Placed hand mail into Medical by sealed envelope on 10/7/06.
Marcellus Breach

1 of 3.

To: Mrs L. Lawrence.

From: Marcellus Breach, 160710
            West-16

Date: November 7, 2006

Re: Hernia / Medical Records:

Exhibit enclosed!
Basic Offender Physical Evaluation
LCS 3/20/06. Reflecting Medical
Records "Hernia"

Mrs Lawrence:

I'm Stuck here at Kilby because of Medical hold.
My Records on 3-21-06 Reflect indirect inguinal
hernia, "Needs Repair" Dr. Tassin. I do not desire
to wait till its either strangulated or not
Reducible. The most important elements in the
early development of a hernia are congenital or
acquired muscle weakness and the increased intra
abdominal pressure. Dr. Tassin made his medical
Recommendation that the hernia needs Repair. It is
painful at times, limits my activities. The classification
of surgery as elective does not obligate PHS of
the duty, or power to promptly provide necessary medical
treatment. The mere words "Elective" surgery ARE NOT
a talisman insulating PHS from the reach of the
Eighth Amendment "Deliberate indifference." Now, I do not
continue to waste $300 Sick call for a Tylenol. Please
Do you need to See the Records? You stated NO
     Please Advise      evidence of a hernia? Here is
Marcell Breach  2 of 3  evidence for your Review!

Kilby Correctional Facility.

To: Ms. Lawrence Medical
Warden Rowell.

**Prison Health Services**
**Inmate Informal Grievance**

Marcellus Breach     160710          West - 16     10/11/06
NAME                 AIS #           UNIT          DATE

PART A---Inmate Complainant

1) I have a Medical Hold that is preventing me from actively participating in any additional DOC program. I ask to be removed that I may be classed to go to another Camp.

2) Medical records reflect Dr. Tassie recommended surgery for a hernia. I have problems coughing, sweating, bowel movements. I need Surgery. Why am I on Medical Stop-up, and no one has seen me in regards to Surgery?

See attached: page 2.

_Marcellus Breach_
INMATE SIGNATURE

PART B—RESPONSE          DATE RECEIVED 10-17-06

I have searched your medical file here from front to back. there are no records, on sick calls that you were examined for a hernia. I see no evidence of a medical hold or medical stop up. If you are having health problems please sign up for sick call and be examined by the doctor.

_L. Lawrence_ RN HSA
MEDICAL STAFF SIGNATURE

10-17-06
DATE

If resolution has not occurred and you wish to file a formal grievance you may request a grievance form from the Health Services Administrator. Return the completed grievance form to the Health Service Administrator.

|   |   | Y | N |   |   | Y | N |
|---|---|---|---|---|---|---|---|
| I | Dissatisfied with Quality of Medical Care | ☐ | ☐ | VI | Delay in Health Care Provided | ☐ | ☐ |
| II | Dissatisfied with Quality of Dental Care | ☐ | ☐ | VII | Problems with Medication | ☐ | ☐ |
| III | Dissatisfied with Quality of Mental Health Care | ☐ | ☐ | VIII | Request to be seen | ☐ | ☐ |
| IV | Dissatisfied with Response to Non-Medical Request | ☐ | ☐ | IX | Request for Off-site Specialty Care | ☐ | ☐ |
| V | Conduct of Healthcare Staff | ☐ | ☐ | X | Other | ☐ | ☐ |

Certificate of Service.

I hereby place same into a sealed envelope address to Medical Complaint Box, Copy to Warden Rowell, hand mail on this

11/03 - Alabama   11th day October 2006

_Marcellus Breach_

1 & 2.

Kilby Correctional Facility.

TO: Ms Lawrance, Medical.
    Deputy Warden Rowell.

Date October 11, 2006
RE: Informal Grievance p.2

To Whomsoever it may concern

Medical Records will Reflect Dr. tussie recommending surgery for my hernia. I'm asking that the "Medical" Hold placed on me be removed. Because of this hold, I can't be reclassed for any other institutional camps. I've worked to hard, I have work reports, several certificates of completions, and my college degree, to come to a dead-end stop! I'm asking to have Classification review my prison record. I haven't had a "Review" in 18 months. That's frustrating. If this medical hold is about surgery, then I request surgery; Not a medical hold, then nothing is done about it. I humbly ask someone assist me about resolving this matter. I depreciate strongly placing this hold on me, then doing absolutely nothing in regards to following doctors orders concerning surgery.

Please Advise.
Marcellus Breach 160710

2 of 2.