*IN THE DISTRICT COURT OF THE UNITED STATES*
*FOR THE MIDDLE DISTRICT OF ALABAMA*
*NORTHERN DIVISION*

RECEIVED

2007 JUL 30  A 9: 58

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

MARCELLUS BREACH, # 160710          *

    Plaintiff,          *

                *

Vs.          *          Case No: 2:06-cv-1133MEF

                *

PRISON HEALTH SERVICES, INC.,          *
Et al.,
        Defendants.          *

*WRITTEN OBJECTIONS and/or MOTION FOR REVIEW BY THE DISTRICT COURT*
*PURSUANT TO 28 U.S.C. § 636 (B) OF THE MAGISTRATE JUDGE'S DENIAL OF*
*PLAINTIFF'S DISCOVERY REQUEST*

**COMES NOW**, the Plaintiff Marcellus Breach (hereinafter "Breach") in proper

person "Pro Se" moves the Court pursuant to *Rule 72(a)* Fed.R.Civ.P., and 28 U.S.C. §

636(b)(1)(a)(2004) timely written objections and request for review of the Magistrate

Judge's ruling on a complete denial of Discovery request entered on *July 23, 2007* as

"clearly erroneous and/or contrary to law". Breach would show unto the Court as follows:

----

**1** Discovery motions or other nondispositive pretrial order, the decision of the magistrate
judge is a final decision. 28 U.S.C. 636(b)(1)(A)

1

## STANDARD OF REVIEW

The law is established that as in this case of a discovery motion or other nondispositive pretrial order the decision of the magistrate judge is a final decision. 28 U.S.C. § 636(b)(1)(a)(2004). Final decisions of a magistrate judge are subject to a "clearly erroneous or contrary to law" standard of review by the district court. Id. @ (b)(1)(b); *In re Commissioner's Subpoenas*, 325 F.3d 1287, 1297 (11th Cir. 2003). A Magistrate Judge's decision on discovery motions is not subject to a de novo determination as is a report and recommendation. See, *Merritt v. International Broth of Boilermakers*, 649 F.2d 1013, 1017 (11th Cir. 1981).

On *July 23, 2007* the Magistrate Judge denied Plaintiff's Motion For Discovery In Conjunction With Plaintiff's *Rule 56(f)* Motion/Renewed Set of Interrogatories and Request For Admissions, Production of Documents To Defendants under Fed. R.Civ.P., is 'clearly erroneous and contrary to law' in this case.

## PROCEDURAL HISTORY

The Magistrate Judge's rulings are becoming questionable as bias and prejudice in this case, 28 U.S.C. § 455. However, Breach request to demonstrate unto the Court the history of this case appears as that "Nothing" pertaining to this medical case, is "Relevant" to the Magistrate judge, but appears to be favorable to the Defendants because, neither an opinion for a treating doctor was relevant, nor a preliminary injunction relevant, also,

discovery request for (i) **Treatment Procotol Pertaining to Inguinal Hernias**, in the eyes of

the Magistrate is also "Irrelevant" is contrary to law.. [2]

a.     [3]On _February 25, 2007_ [Court Doc. unknown] Breach filed a motion entitled: **Motion For Court Order From Doctor John A. Tassin to Provide An Opinion**" in which Breach was seeking an opinion from the "**treating**" doctor in regards to his order and recommendation that Breach Inguinal Hernia on 3-21-06 "**Needs Repair**". Breach was attempting to refute the Affidavits relied on by the Magistriate who are now, <u>Defendants:  Dr. George Lyrene, M.D.,</u> and <u>Dr. Michael Robbins, M.D.,</u> The Magistrate Judge ruled that Breach's motion requesting an opinion from Dr. John A. Tassin **would be    "Irrelevant " See, Court Doc. unknown on Ruling.**

b.     On or about _December 22, 2006_ Breach filed an **Application For Temporary Restraining Order/Preliminary Injunction**", the Court referred that matter to the magistrate judge, denying the TRO being the 'portion' of the motion.

c.     The Magistrate Judge never addressed the Preliminary Injunction, and on or about June 19, 2007 Breach had to file a "Renewed" "_Application for Temporary Restraining Order/Preliminary Injunction_". Again, on _July 10, 2007_ the Court denied the '<u>portion</u>' of the motion and referred the matter to the Magistrate.  The Magistrate issued an order to show cause by August 6, 2007. <u>The motion was overlooked since December 2006.</u>

d.     On _July 23, 2007_ the Magistrate Judge denied Breach's request for Interrogatories, Admissions, Production of Documents and Depositions making _boilerplate_ ruling as (i) cumulative or duplicative in nature to documents and information previously provided by the defendants, and/or (ii) <u>irrelevant</u> to a

---

[2] This is  a Medical Treatment Case, Deliberate Indifferent, Standard of Care.  How is the Defendant's Treatment Protocols for Hernias not relevant in a medical case?  Breach's Production and interrogatories is requesting Defendant's produce their treatment protocols, and policy regarding Hernias is relevant.

[3] How can an opinion form a treating doctor be considered "Irrelevant" in a Court of law?

determination of the constitutional issues pending before this court. [Order July 23, 2007]

## STATEMENT OF THE FACTS/WHAT IS RELEVANT?

1)    This is a § 1983 case filed by Marcellus Breach pro se' a prisoner alleging a denial of necessary medical care, i.e., surgery for an Large Inguinal Hernia that causes pain and limits Breach's daily activity.  <u>Dr. Joh A. Tassin, M.D.</u>, on <u>3-21-2006</u> made an Order and Recommendation that Breach's inguinal hernias "<u>Needs Repair</u>".  This Court conducted a de novo review, and Vacated the Magistrate Judges Order and Recommendation in this case.  This case as stated in proceed with service of the Complaint upon all Defendants. Breach has filed a Supplement Complaint adding additional defendants (Court Doc. 68) and on *June 4, 2007* the magistrate judge granted the motion and issued an order directed to the Clerk to serve each defendant.  In addition, PHS defendants did so filed their Supplemental Answer and Special Report, but the correctional defendants did not answer timely. On <u>July 29, 2007</u> Breach filed: " Motion To Add Defendant"  which was granted on or about July 23, 2007.  Breach out inadvertence filed a <u>Rule 56(f)</u> Motion to Stay Summary Judgment, and also, "Request For Discovery In Conjunction With Plaintiff's <u>Rule 56(f)</u> Motion/Renewed Set Of Interrogatories and Request For Admissions, Production of Documents To Defendants Under Fed. R.Civ.P.  Breach requested specific interrogatories to defendants relevant in nature, pertaining to medical issues that are relevant to the case at bar.  However, Breach requested production the PHS and ADOC's **Treatment Procotol**

and Policy pertaining to Hernia surgery. Contrary to law, the Magistrate Judge ruled the
material was irrelevant. Breach also argues, that PHS **DID NOT and HAVE NOT**
produce any written policy, statements, regulations, documents pertaining to the
allegations and that Breach has challenged a policy, custom, that has the force of law in his
Complaint.

How is production of a **"Treatment Protocols"** by both PHS and ADOC irrelevant?

How is production documents pertaining to both ADOC and PHS's policy
pertaining to surgery for hernias, irrelevant? Breach objects to the magistrate erroneous
ruling because it is totally contrary to law, conflicts with Federal Rules of Civil Procedures,
and conflicts with the United States Supreme Courts decision regarding Discovery in
*Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed. 2d 253 (1978)

### ISSUE NO. 1

### "WHETHER THE MAGISTRATE JUDGE'S RULING DENYING BREACH DISCOVERY IS CLEARLY ERRONEOUS OR CONTRARY TO LAW?"

YES! It appears that any request that Breach ask for whether an opinion from his
treating doctor Dr. John A. Tassin, M.D., or production of documents being the
"Treatment Procoto" is Irrelevant to the magistrate is contrary to law. This is a medical
deliberate indifference case. The Standard of Care and several doctors' actions are
challenged. Breach has challenged a unconstitutional policy by the Department of
Corrections and Prison Health Services, Inc., being "Hernia Repairs are not done unless

the hernia is incarcerated, strangulated or, into the scrotum". Breach argues that discovery is relevant and necessary to his case. The Supreme Court has held that "municipalities and other bodies of local government are "persons" within the meaning of [§ 1983]. Such a body may therefore be sued directly if it is alleged to have caused a constitutional tort through 'a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121, 108 S.Ct. 915, 99 L.Ed. 2d 107 (1988)(quoting *Monell v. New York City of Dept of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978))" Breach must show a policy and only through Discovery can this policy be shown--- it is relevant.

## MEMORANDUM AT LAW/POINTS ON AUTHORITY

The scope of discovery is governed by *Rule 26* of the Federal Rules of Civil Procedures, which permits the discovery of any non-privileged material "relevant to the claim or defense of any party" and relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Rule 26(b)(1),* Fed.R.Civ.P., While relevance for the purposes of discovery is defined broadly, the right to discovery is not unlimited and does have "ultimate and necessary boundaries." *Hickman v. Taylor* 329 U.S. 495, 507 67 S.Ct. 385, 91 L.Ed 451 (1941).

The Federal Rules of Civil Procedure permit discovery "regarding <u>any</u> matter, not privileged, that is relevant to the claim or defenses of any party. "*Fed .R.Civ.P. 26(b)(1).*

6

Courts construe relevance "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed. 2d 253 (1978)(citing *Hickman v. Taylor*, 329 U.S. 495, 501 67 S.Ct. 385, 91 L.Ed. 451 (1947).

Treatment Protocols and Policy pertaining to Inguinal Hernias are Relevant in this case. The law states: "Relevant information is discoverable even if it is not admissible at trial, "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R.Civ.P. 26(b)(1). In addition, "discovery is not limited to issues raised by the pleadings." *Oppenheimer,* 437 U.S. @ 351.

Breach's request for Discovery conform most properly with the standard forms governing Discovery rules. Breach's Discovery motion is relevant, and proper it is not over burdensome, but relates to the question concerning his medical treatment, and the standard of care given by the defendants in this case. Breach's Discovery Motion is broken down into "Instructions, Definitions" to the Defendants. See, *"Exhibit A"* On *Page 7 Section III "INTERROGATORIES"* to Dr. George Lyrene M.D., and Dr. Williams Hobbs, M.D. and Dr. Michael Robbins, M.D. Breach ask simple relevant questions as:

> No. 4 "[Sic] *Identify by document* the treatment protocol for Hernias by both PSH, ad ADOC.[4]

---

[4] Several medical discovery attempts made by Breach, the Magistrate rules are irrelevant. This is a Medical Case. Treatment Protocols is relevant to a challenged policy case. The Magistrate is in conflict with Fed.R.Civ.P., Rule 26.

No. 11 [Sic] *Identify by document* the medical standard of care followed by both PHS, and ADOC that hernia repairs are not done unless the hernia is incarcerated, strangulated, or into the scrotum."

These are relevant questions, and PHS **HAS NOT** produced any of these documents relevant in their initial disclosure. The Magistrate Judge's ruling is "clearly erroneous and contrary to law."

On page # 12 of attached Discovery Motion, Admissions are requested:

¶ .3   [Sic]   "Admit or deny, Prison Health Services, Inc., has a written policy, regulation, custom, practice, of not repairing hernias unless they are incarcerated, strangulated, or into the scrotum?
¶ 13.  [Sic]   "Admit or deny", there is almost no limit to how big Breach's hernia could get if continued left without surgery?"

¶ 14.  [Sic]   "Admit or deny", that medically there is no cure for a hernia without surgery?"

The term "relevant" is not defined by the Rules, but was extremely broad prior to the 2000 Amendments. Court have defined "relevant" to encompass "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. Courts have also have defined "relevant" as "germane".

The Magistrate Judge ruled that Breach's request were: 1) cumulative or duplicative in nature to documents and information [5] previously provided by the defendants, and/or (ii) irrelevant to a determination of the constitutional issues pending before this court.

---

Breach would argue, and objects to the rulings of: "<u>cumulative or duplicative</u>," and also, "irrelevant." The Constitutional claim is the Eighth Amendment. Secondly, PHS <u>has not produced any treatment protocol in regards to Hernias</u>. **Treatment Protocol** is very relevant to the Official Capacity challenge dealing with defendant's policy, custom and practice that is statewide problematic and has the force of law. .

Reiterated, PHS, has not identified the defendants as to who is the "policymaker". Without any discovery, how is Breach to properly identify "policymaker"? How is Breach to prosecute PHS being a private corporation, who are held liable under § 1983 when their official policy, or custom of the corporation caused the alleged constitutional deprivation. See, *Monell*, 436 U.S. @ 691. PHS <u>has not</u> produced such relevant information, as part of their "Initial Disclosure" is highly prejudice to Breach's claims.

This is a Medical Indifference Claim. Doctors' actions are the issue under the standard of care. Without Discovery, how is Breach to identify who enforces this policy, that "<u>Hernias are not repaired unless incarcerated, strangulated, or into the scrotum</u>"? How can Breach identify each party in their respective positions at PHS? How can Breach identify who has the lawful duty, or should have known that this policy is unconstitutional and has/had to power to change it but did not when medically it is well known that defendants policy subjects a human being to gratuitous pain and suffering, maybe even death. Medical standard of care is at issue.

---

[5] Defendants have not produced any documents pertaining to **TREATMENT PROCOTOL**, only medical records. This case is about a policy being unconstitutional.

*Question No. 12*, page # 9 of Breach's Interrogatories states:

¶ 12. *Identify* by *document*, the medical standard of care followed by both PHS, and ADOC pertaining to treatment for hernias in Alabama prisons. [See, "Request For Discovery In Conj[u]nction With Plaintiff's Rule 56(f) Motion/Renewed Set of Interrogatories ...." Court Doc. 95] *Question No. 12* is very <u>relevant</u> because it is asking Defendants to both identify and

Produce the documents of the standard of care followed.  *Question 4, page 8:*

**"Identify by document the treatment protocol for Hernias by both PSH, and ADOC.**

Breach would argue that this is "relevant" and also has not been produced by any defendant.

Without Discovery, how is Breach to identity supervisors?    Supervisory    liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of the supervising officials and the alleged constitutional deprivation. See, *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) The necessary causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so." ***Braddy v. fla Dept. of Labor & Employment***, 133 F.3d 797, 802 (11th Cir. 1998).  Breach is challenging a unconstitutional policy, custom, practice used by the defendants in not repairing non-incarcerated hernias and "A municipality is liable under § 1983 for a deprivation of rights protected by the Constitution or federal laws that is inflicted to official policy.

Breach MUST <u>pinpoint</u> the responsible and any other *inter absentes* party or parties within the hierarchy of the Defendants who are solely responsible for the constitutional violations held liable under § 1983 through their actions being direct, or indirect by a regulation, custom, practice, policy, or procedures so long standing that it has the force of law being their "**Treatment Protocol**" specifically Inguinal Hernias are not being repaired until there is a life or death situation, i.e., strangulated, incarcerated or into the scrotum. Through Discovery Breach intends to debunk the defendants' defenses arguing that they are not entitled to any immunity in this action because someone among the defendants are "<u>enforcing this policy</u>" that is intended to show their practice and policy or their actions are unconstitutional seems both relevant and is not cumulative. <u>Defendants have not produced such documents.</u>

This case resolves around medical judgments. <u>Interrogatories and Admissions along with Depositions are necessary</u> because Hernia surgery requires certain degree of specialized training and knowledge that puts an understanding of the acceptable standard of care beyond the common knowledge of the jury. Lawyers do not have the background and knowledge, without expert testimony to understand whether or not surgery is/was in fact necessary. See, *Anderson*, 778 So.2d @ 811 (quotations marks omitted)(addressing tuberculosis testing).

Without Discovery, how is Breach to identify each defendant, their respective duties, under state law, their responsibilities, their direct or indirect involvement to deny

Breach surgery when expert testimony will establish surgery is the only cure --- there is no treatment for a hernia and the defendants only provide a course of management. Defendants have only provided some management issuing a truss and Tylenol. Medical experts will show, you cannot treat a hernia.

### POINT B.

### DISCOVERY IS RELEVANT TO THIS CASE TO DEFEAT A SUMMARY JUDGMENT MOTION AND AN ELEVENTH AMENDMENT DEFENSE?

The United States Supreme Court has construed _Rule 26(b)_ Fed.R.Civ.P., "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." **_Oppenheimer Fund, Inc., v. Sanders_**, 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)(footnote omitted);

The scope of federal court discovery is set forth in _Rule 26(b)_, Fed.R.Civ.P., "Parties may obtain discovery regarding any matter not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things, and the identity and location of persons having knowledge of **any** discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.    In this case, Discovery request should be allowed

unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." Fed.R.Civ.P., 26(b)

The Magistrate Judge's ruling denying Breach with Discovery is in conflict with Federal Rules of Civil Procedures --- specifically *Rule 26(b)(1)* which permits parties to a civil case to conduct discovery regarding any matter not privileged, that is relevant to the claim or defense of any party in the case.   In this case, A magistrate judge's decision on discovery motions is not subject to a de novo determination as is a report and recommendation. Fed. R.Civ.P., 26(b)(1) permits Breach with discovery regarding any matter not privileged, that is relevant to the claims or defenses of any party in the case. See, *Featherston v. Meto Life, Ins. Co.*,223 F.R.D. @ 651 (N.D. Fla. 2004).

The Eleventh Amendment sovereign immunity defense that the defendants attempt to hide must be debunked.  The law is established, the Eleventh Amendment Sovereign Immunity <u>may not</u> apply to bar relief under § 1983 when a state official is sued for prospective injunctive relief to end a continuing violation of federal law. *Seminole Tribe of Florida*, 517 U.S. 44, 73 116 S.Ct. 114, 134 L.Ed. 2d 252 (1996). The United States Supreme Court has implicitly recognized that prisoners have standing for injunctive relief where they allege a contemporary violation that is likely to continue. *Farmer*, 511 U.S. @ 845-46. Injunctive and Declaratory relief is requested in this action against the Defendants in their official capacity.

_Rule 36(a)_ Fed.R.Civ.P., allows a party to "serve upon any other party a written request for the admission ... of the truth of any matter ... that relates to statements or opinions of fact or of the application of law to fact'"    In this case, Discovery is requested because Section 1983 provides a civil action against any person who, while acting under color of state law, subjects any citizen to the deprivation of rights, privileges, or immunities secured by the Constitution or laws of the United States.  A person "subjects" another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made. _Johnson v. Duffy_, 588 F.2d 740 (9th Cir. 1978)

Discovery is requested in this case, because this action is against the hierarchy of government officials, 42 U.S.C. § 1983 is designed "_to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails._" _Wyatt v. Cole_, 504 U.S. 158, 161, 112 S.Ct. 1827, 1830, 118 L.Ed. 2d 504 (1992) See also, _Greffey v. Ala.Dept of Corrections_, 996 F. Supp 1368 (N.D.Ala. 1998).  There are only two (2) medical standards of care: 1) National Medical Standards, and 2) Community Standards of Care.  Defendants have asserted that prisoners are not entitled to the same standard of care given to those who are not incarcerated, but have not produced any documents supporting their position.  There position is untrue and will be debunked. [ See, p 8 Supplemental Speciail Report Defendants]

14

## POINT C.
### *RULING ON A SUMMARY JUDGMENT WITHOUT DISCOVERY IS ERRONEOUN AND CONTARY TO LAW*

Breach must demonstrate that his treatment violated clear and specific standard, so that similarly situated medical health care providers would have known his or her actions violated Breach's constitutional rights – whether a reasonable doctor in the same circumstance and possessing the same knowledge as the medical defendants could have concluded that his/her actions were lawful. Furthermore, under the discovery rules, Breach ought to be entitled to use its weapons.

Summary Judgment under Fed. R. Civ. P. 56 is appropriate "<u>after adequate time for discovery</u> and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." **Celotex Corp. v. Catrett**, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct.

This case resolves around medical judgments. <u>Interrogatories and Admissions along with Depositions are necessary</u> because Hernia surgery requires certain degree of specialized training and knowledge that puts an understanding of the acceptable standard of care beyond the common knowledge of the jury. Lawyers do not have the background and knowledge, without expert testimony to understand whether or not surgery is/was in fact necessary. See, **Anderson**, 778 So.2d @ 811 (quotations marks omitted)(addressing tuberculosis testing).

The United States Supreme Court cases vacating appellate reversals of district court orders granting summary judgment illuminate both the utility and the limitations of summary procedures. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co., v. Zenith Radio Corporation*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed. 2d 538 (1986). Their common denominator is the Court's caveat that summary judgment may only be decided upon an adequate record. In *Anderson*, the Court held that *Rule 56(e)* provides that "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" 106 S.Ct. @ 2511. The Court underscored that:

> "This requirement in turn is qualified by Rule 56(f)'s provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition. In out analysis here, we assume that both parties have had ample opportunity for discovery." Id. @ n.5

In the case sub judice plaintiff had been afforded no opportunity for discovery. Under the circumstances outlined above, consideration of defendant's motion for summary judgment in this less than six-months-old case will be erroneous. See, *Parrish v. Board of Commissioners* 533 F.2d 941, 95 (5th Cir. 1976)(trial court did not allow relevant discovery summary judgment reversed)

¶ 9. In *Murrell v. Bennett*, 615 F.2d 306, and Alabama prison inmate brought a § 1983 action against prison officials for an alleged failure to provide proper medical treatment.

*Murrell* challenged the district court's grant of summary judgment for prison officials. The Fifth Circuit noted that, indigent prisoners are hampered in their access to the proof necessary to ward off summary judgment. *Murrell* had no opportunity to provide this information because his unschooled attempts at requesting discovery were nipped and bud only thirty-two days after the complaint was filed. The Court noted in **Alabama Farm [Bureau Mut. Casualty Co. Inc., v. American Fidelity Life Ins Co.,** 606 F.2d 602, 609 (5ᵗʰ Cir. 1979), cert denied, 449 U.S. 820, 101 S.Ct. 77, 66 L.Ed.2d 22 (1980)] that summary judgment should not be granted before discovery is completed. (Citation omitted).

## CONCLUSION

Who is responsible to the constitutional deprivation in this case?  Without any opportunity to Discovery prejudices Breach's case.  Also, the question regarding PHS defendants as to who has final policymaking authority for a [PHS] is determined as a matter of state law. *Jeff v. Dalls Indep. Sch. Dist.* 491 U.S. 701, 737 109 S.Ct. 2702, 105 L.Ed. 2d 598 (1989) citing **St. Louis v. Praprotnik**, 485 U.S. 112, 123 108 S.Ct. 915 99 L.Ed. 2d 107 (1988)).

Discovery will show that defendants as doctors, in their capacity, a reasonable doctor would have known that defendants' actions amounted to deliberate indifference under the legal or medical standards at the time of the incident.    Defendants had knowledge of necessary treatment coupled with the refusal to treat properly or a delay in

such treatment and their professions as medical professionals the standard of care given by their conduct and actions also, is to be determined through discovery.

Under the Supreme Court's decision, regarding Breach's inquiry as to state law determines which defendant has final authority for policy at both ADOC and PHS. See, *City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 923, 99 L.Ed. 2d 107 (1988)(plurality opinion)(unconstitutional policy can be inferred from a single decision by the highest officials responsible for policy in that area). See, *Jeff v. Dallas Indep. School Dist.* 491 U.S. 701, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989). Breach is requesting specifically from defendants, since PHS provides services at ADOC pursuant to a contract with the Department of Corrections, a state agency. Both ADOC, and PHS either hired <u>Dr. Robbins</u>, as their Medical Director at Kilby prison, and <u>Dr. George Lyrene</u> as its Medical Director at ADOC or rely on their medical judgments pertaining to this case.

Brandon Kindard is Manger of Health Services at ADOC, Ruth Naglich as Deputy Commissioner of Health Services, ADOC; Defendant Nurse B. Adams <u>job description</u> is "Nurse Practitioner" at Kilby Correctional Facility there is a link of "causation" of injury as it continued as alleged that through Discovery Defendant <u>B. Adams</u> is an unsupervised physician's assistant (who claimed to be a doctor) and DISCOVERY sought will attempt to establish that in practice, full unsupervised authority for management of Breach's medical care had been delegated to the physician's (Dr. Robbins) assistant

18

contrary to a formal policy requiring supervision of the physician's assistant by a medical doctor. If in the contrary, then defendants did not follow their own policy leading to causation --- Defendants in this case, contract and job description are relevant and requested to be reviewed for they are believed that someone is responsible for: 1) unsupervised delegated authority to a nurse practitioner, 2) reviewing and updating policies and procedures at PHS and ADOC; and, 3) responsible for requesting improvements in services.

Furthermore, Defendants Jane Hayes, Michael Cataland, and Rick Dull, Ruth Naglich can or, are all policymakers, and discovery will ascertain who as regional directors of PHS and ADOC have to sole responsibility to the commissioner/president of PHS (Michael Cataland) and ADOC (Defendant Allen) concerning medical treatment for inguinal hernias that do in fact cause pain. Defendants serve as the health authority at the institution and is/was the overall administrative supervisor for clinical services. Breach alleges that causation by either Defendants as well as PHS was directly involved in the violation, or that a policy or custom of PHS and ADOC led to the violation. Direct involvement, however, is not the only basis on which liability can be found.

Breach contends that it was the policy or custom of PHS, through Dr. George Lyrene and Dr. Michael Robbins, M.D., also Nurse Practitioner B. Adams, Brandon Kindard and Ruth Naglich, and Dr. Hobbs, M.D., which led to the deliberate indifference treatment. Discovery will show intent, knowledge, and disregards of the objective

components of pain. When and if, Breach can demonstrate that either party's actions or inactions, through DISCOVERY amounted to deliberate indifference; and, defendants were the final authority on policy for PHS at ADOC, --- then a causal link would exist sufficient for potential liability under section 1983. See, *Wilson v Taylor*, 733 F.2d 1539, 1545 (11th Cir. 1984)(city liable under section 1983 if the official making the unconstitutional decision to fire an employee had final or ultimate authority to make the personnel decisions); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108, S.Ct. 915, 923, 99 L.Ed. 2d 207 (1988)(plurality opinion)(unconstitutional policy can be inferred from a single decision by the highest official responsible for policy in that area). Thus, Breach must discover whether defendants had final authority for policy at PHS, and ADOC or whether the decision maker in this case relied on a policy that is itself deliberate indifferent. When the party at issue is a municipality, whether an official has policymaking authority is determined by state law. *Praprotnik*, 108 S.Ct. @ 924; *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 2723, 105 L.Ed.2d 598 (1989). As the party at issue here is a corporation contracting with the state, [§ 14-1-1.1 Ala.Code 1975] the relevant "state law" for policymaking determinations are the contracts between PHS, the ADOC, and PHS employees. Discovery in the contract with the Department of Corrections, PHS is relevant amongst their "*specific responsibilities*" whether "consult, supervise administratively the clinical services provided by the PHS professional and para-professional staff, and "Annually review and approve the medical protocol and

20

clinical policies and procedures.  These statements of defendants' duties all point to the conclusion that defendants determined policy for PHS at the institution.  Because Defendants had control over policy statements and administrative supervision of the clinical services, it appears that he was the policymaking authority for PHS at ADOC.

**WHEREFORE, premises considered**, Plaintiff is not receiving fair play from this Magistrate because everything medically from the Plaintiff is "irrelevant".  Breach prays that he be allowed an equal opportunity to prove his case and that this Court will modify or set aside any portion of the magistrate judge's order denying Breach any Discovery be found to be clearly erroneous or contrary to law.

Done so this 25 Day of July 2007.

Respectfully Submitted,

Marcellus Breach  #160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Al 35749-7009

### CERTIFICATE OF SERVICE

*I HEREBY CERTIFY*, that I have served the following:

| | |
|---|---|
| Ala. Doc. Legal Division | Rushton, Stakely, Johnstone, Garrett, |
| P.O. Box 301501 | P.O. Box 270 |
| Montgomery, Alabama 36130 | Montgomery, Alabama 36101 |

By placing same into a sealed envelope properly addressed postage prepaid and placing into the prison Mail Box for proper mailing First Class U.S. Mail on this 26 Day of July 2007,
This 26 Day of July 2007.

Marcellus Breach

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MARCELLUS BREACH, # 160710          *

     Plaintiff,          *

Vs.          *          Case No: <u>2:06-cv-1133MEF</u>

PRISON HEALTH SERVICES, INC.,          *
     Et al.,
          Defendants.          *

## REQUEST FOR DISCOVERY IN CONJECTION WITH PLAINTIFF'S RULE 56(f) MOTION/ RENEWED SET OF INTERROGATORIES AND REQUESTS FOR ADMISSIONS, PRODUCTION OF DOCUMENTS TO DEFENDANTS UNDER FED. R. CIV. P.

**TO:**   1)   *Dr. George Lyrene, M.D.; and,* 2)   *Dr. Michael Robbins, M.D.,*
        3)   *Dr. William Hobbs, M.D.,*

**COMES NOW**, the Plaintiff *Marcellus Breach*, (hereinafter "Breach") in proper person "Pro Se", moves this Court to issue an Order upon the Defendants pursuant to Federal Rules of Civil Procedures, *Rules 33, 34* and *36*, hereby requesting that named parties and/or their "Agents" being persons under their control and acting as "Agents" for the Defendants, and at all times herein, deliberated acted when the alleged constitutional violations occurred Breach was under the 'control' of the Defendants and in the 'custody' of their "Agents" not limited to: "South Louisiana Correctional Center". Breach respectfully request that each above-named person shall answer <u>separately</u>, fully in writing, the following interrogatories under oath,

1

affirmation in accordance within the definitions and instructions set forth below, within thirty

(30) days after service of these Interrogatories, Request for Admissions, and Request for

Production of Documents, and furthermore for the defendants to provide continually full

disclosure, along with their answers herein, copies thereof supporting evidentiary materials as

follows:

1.     *DEFINITION AND INSTRUCTIONS:*

¶ 1.    *Rule 33*, Fed. R.Civ. P., permits that the Interrogatories to be answered by the party

served or, if the party served is a public or private corporation or a partnership or association

or government agency, by any officer or agent, who shall furnish such information as is

available to the party.  *Rule 33(d)* also provides interrogatories upon you Agents and the

request for production of documents under said rule is requested from persons under your

control.

In responding to these request for Admissions, Production of Documents, and

Interrogatories, defendants shall furnish not only such information and documents as are

available to them, but also such information and documents as are known to, available to, or in

their constructive, actual possession, custody or control of any agent, employee, employer,

representative, co-defendants, witnesses, the Alabama Department of Corrections, Prison

Health Services, South Louisiana Correctional Services, ("SLCS" ) specifically, *et cetera*, and

integral  in your disclosing  *inter alia,* including but not limited to defendants attorney(s) and

investigators, unless such documents, information, date, records, tapes, *inter alia,* is claimed to be privileged from production or discovery.

¶ 2.    If defendants consider any documents, information, data, records, tapes, *inter alia,* falling within Breach's request for Production of Documents, attached heretofore separately, as being privileged from discovery, Breach request that at this time or responding to the Request for Production, the defendants serve upon Breach, a written list of the documents so withheld from said discovery of each person, party or witness having copies of said same documents, information, data, records inclusive to medical records, expert reports, from March 2006 through current date of your answering; and, the basis on which the document is considered to be privileged from production, re-production, photo-copying *et cetera* by discovery.

¶ 3.    These Interrogatories and discovery requests are continuing and are to be supplemented in accordance with Federal Rules of Civil Procedure, _Rule 26(e)._  However, in the event that any, and all information r documents come to the attention of or into possession, custody or control of the defendants, the attorney of record, or such other interested persons, parties, agency, employees, employers et cetera, subsequent to the filing of defendants response/answers hereto, which documents, records, or information are responsive to any and all Interrogatories or Request for Admissions, but which were not included in defendants initial answer / responses thereto, said additional information, documents, data, records, inter alia, shall be furnished to Breach, or in the interim, thereinafter appointment of stand-in

counsel, as soon as possible, unless otherwise specified by this Court, or upon subsequent motion.

¶ 4.    In responding to these DISCOVERY, request, defendants are to furnish such documents, records, data, information, memorandum *inter alia,* as are available to them, their agents, employees, employers, co-defendants, witnesses, or representatives, such as attorney of record, but limited to therein, as to defendants access to which is currently constructive, actual possession or otherwise.

¶ 5.    With regards to Breach's Request for Admissions and pursuant to Federal Rules of Civil Procedures, *Rule 36* et. seq., the defendants <u>shall specifically deny the matter set forth in detail</u> the reasons why the answering / responding party, person, defendant or representative cannot truthfully admit or deny the matter.  A denial shall fairly meet the substance or the requested admission, and when good faith requires defendants shall qualify an answer or deny only a part of the matter of which an admission is requested; the defendant shall specify so much of it is true and qualify or deny the remainder.  Defendants may not give lack of information or knowledge as a reason for failure to admit or deny unless defendants state that they have made a lawful, and reasonable inquiry and that the information known or readily obtainable by the defendants is insufficient to enable them to admit or deny.  If defendants consider that a matter of which an admission has been requested presents a genuine issue of material fact, for trial, they, may not, on that ground alone, object to the requests; defendants may, subject to the

4

provisions of Federal Rules of Civil Procedure, _Rule 37(c)_, deny the matter or set forth reasons why defendant cannot admit or deny it.

¶ 6.    As a courtesy, in answering / responding to any and all DISCOVERY requests herein, defendants are asked to, please preface said answers / responses with the "Interrogatory or Request for Admission, Production, being Answered."

II.    **DEFINITIONS:**

¶ 7.    When used in these discovery requests and subsequent set of Interrogatories or discovery request henceforth, the following definitions shall apply:

    a.    As used herein, the term _"document"_ means every type of recorded information dated or prepared prior to or subsequent to this action, including but not limited to any faxes, memorandum, note, report, letter, grievance, correspondence, message, records, minutes, work sheets, drafts, instruction, work assignment, internal communication, order, and any other written, recorded, electronic, or graphic material however produced, reproduced and, in the absence or the original, copy thereof and any copy bearing markings not present on the original or other copy thereof.

b.[1]   As used herein in reference to a natural person, the word "identify" shall mean to state the persons full name, address and present or last known whereabouts, business address(es) and their said association to defendants.

c.   As used in reference to a business or other entity, the word "identify" shall mean to state the business or other entities full name and present or last known address(es) and their said association to defendants.

d.   The word "incident" includes the circumstances and events leading up to, and surrounding the alleged violation of denial of surgery, unless inguinal hernia is incarcerated or into the scrotum, per Alabama Department of Corrections Commissioner's Office on 7/12/2006 from a Brandon Kindard via-telephone directed to Diana Lott at South Louisiana Correctional Center, Basile, Louisiana, inclusive to any, and all persons, parties, witness(es), defendants involved before, during and after the allegations arose, as documented in "LCS CORRECTIONS SERVICES, INC., NURSE'S NOTES": and, any and all other circumstances giving rise to this civil action.

---

[1] In this case, the home address of each identified person can be excluded, but, business address must be provided or last known whereabouts of each reference person(s).

e.    The word "specifically identify" as used with respect to any and all documents, *inter alia*, is understood to mean the following: 1) title; 2) date; 3) name and position of originator; 4) name and position of any and all defendants, co-defendants, witness(es) and supervisors; 5) name(s) and position(s) of any and all persons, parties, agents, employees, employers, representative who received copies or any portions of the documents in question; 6) description of the document subject matter and contents; 7) location of the documents, records, data, faxes, any and all information, inter alia, in question; 8) name(s) and position(s) of the custodian(s) of the above requested documents in their entirety, but not limited to:

III.    **INTERROGATORIES:**

**DR. GEORGE LYRENE, M.D., and, Dr. WILLIAM HOBBS, M.D. DR. MICHAEL ROBBINS, M.D.**

¶ 1.    State your full name, occupation, education background, your marital status, and in your present employment position, your previous occupational experience.

¶ 2.    State you experience(s) in "Hernia Repairs" and please state or estimate how many surgical operations you have performed on Hernias in your career, list the State and hospitals where you performed the majority of these surgeries.

¶ 3.    Have you ever performed a surgical operation for any type of Hernia on any inmate at the department of corrections, since your employment?  If yes, please identify the number of

surgeries, agency and/or individual(s) named that you performed such surgery; and, specifically identify the name, departments, agency, employer, employees or such other personnel who approved this type of surgery.

¶ 4.     *Identify by document* the treatment protocol for Hernias by both PSH, and ADOC.

¶ 4.     Can you say that there are over 100 inmates at the department of corrections, under the Prison Health Services, Inc., medical care who is currently diagnosed with hernias that are not incarcerated, strangulated or into the scrotum?

¶ 5.     Take your specific medical reason(s) why Breach has not been approved for surgery for his inguinal hernia?

¶ 6.     State your specific involvement in this case.

¶ 7.     Have you ever been sued in any Court of Law where a Judgment was entered against you? State name, year of court, case number(s), and explain the allegations and judgment(s) against you?

¶ 8.     *Identify by incident,* have you ever had your medical license suspended, revoked or remanded --- any adverse action taken against you by any Medical Board.

¶ 9.     Please explain in details, and *identify by document* supporting your medical findings to that it is unnecessary to provide surgery to Breach for his inguinal hernia under the standard of care..

¶ 10.   _Identify by document_, and _specifically identify_ all policy, procedures followed by the Administration of health care delivery systems regarding that hernia repair are not done unless the hernia is incarcerated, strangulated or into the scrotum.

¶ 11.   _Identify_ and _identify by document_, the decision maker of policy of PHS and ADOC that hernia repairs are not done unless the hernia is incarcerated, strangulated, or into the scrotum.

¶ 12.   _Identify by document_, the medical standard of care followed by both PHS, and ADOC pertaining to treatment for hernias in Alabama prisons.

¶ 13.   _Specifically identify_ by _document_, the standard of care pertaining to prisoners experiencing extreme pain and elective surgery procedures in Alabama.

¶ 14.   _Identify by document_, the standard of care for Alabama inmates.

¶ 15.   _Identify by document_, the decision maker, regarding hernia repairs, the policy that is currently, and/or active in practice when Breach requested surgery.

¶ 16.   _Identify by document_, you job description, duties, and responsibilities through your contract agreement with ADOC.

¶ 17.   _Identify by document_, the names, duties, titles, positions, of any and all person having knowledge, and or actually were/are involved in the decision-making denying plaintiff's request for surgery due to this hernia or list the names, addresses of all persons who would have knowledge, information and their job description, duties pertaining to this case.

¶ 18.   _Identify by document_, the faxed report from Diana Lott to Ruth Naglich on or about 7-10-2007 requesting approval for surgery while Breach was at the private prison in Louisiana.

¶ 19.  *Specifically identify*, and *identify by document*, the telephone conversation taken place between Diana Lott and Brandon Kindard, with the Alabama Department of Corrections on July 12, 2006 *incident.*

¶ 20. Please *specifically identify*, by *documents*, the person(s), parties, defendant(s) witness(es) any and all present before, during and after this telephone conversation, and name specifically any and all documents sent, received pertaining to Breach's request for surgery for his inguinal hernia, and all information whether surgery was approved or denied from March 21, 2006 until current date of your answering.

¶ 21.  *Identify by document* the responsibilities of Dr. George Lyrene, M.D., Dr. Michael Robbins, M.D., Brandon Kindard, Ruth Naglich, Martha Jane Haynes, and *specifically identify* any and all persons responsible for policy decision making, and updating policy with both ADOC, and PHS and concerning the decision maker for any and written policy in regards to "**Treatment Protocol**" dealing with hernias in general and inguinal hernias specifically both and at all times while Breach was at *South Louisiana Correctional Center*, associated with you by employment, contract, agent, as to approval for any Inmate/Offender for surgery for a 'non-incarcerated' inguinal hernia, and the final decision maker by policy, whether written or verbal custom for any outside treatment or evaluation for medical care.

¶ 22.  Please *specifically identify*, and *identify by document*, the faxed report sent to Ruth Naglich on 7/10/2006 in reference to Breach's inguinal hernia.

¶ 23.   Please *identify,* and explain by *documents,* as to all and any information pertaining to surgery for Breach's inguinal hernia that you were either directed, ordered, sent, received, faxed, from any person(s) who are/were involved in this incident leading up to this case, and the decision(s) as to deny Breach's request for surgery and specifically *identify* each person's involvement.

¶ 24.   *Identify by document,* and specifically identify, any policy, procedure whether written or verbal, custom, statement(s), contracts, agreements, and/or names of any and all person(s) involved in this decision making process, also, any and all person who have knowledge and/or location of such documents as to any protocol treatment established by any and all person(s) offered to establish the procedures pertaining to hernia repair for any type of hernia either incarcerated or non-incarcerated or into the scrotum, specifically the standard policy pertaining to Breach's hernia. Also not limited to *Identify,* listing the names, position, title, date, and *specifically identify,* any and all persons making the decision that Breach's hernia is not to be repaired unless it is incarcerated or into the scrotum being more specific:

¶ 26.   *Identify by documents* authorization and medical clearance, approval to transport Breach across Alabama State line on or about March 2006, to the State of Louisiana and specifically *identify* all procedures, regulations, policy followed.

IV.    *REQUEST FOR ADMISSIONS:*

*DR. GEORGE LYRENE, M.D., and, Dr. WILLIAM HOBBS, M.D.*
*DR. MICHAEL ROBBINS, M.D.*

¶ 1.    *Admit or deny* that on March 21, 2006 Dr. John A. Tassin, M.D., made a "Doctor's Order" that Breach's left inguinal hernia, "Needs Repair?"

¶ 2.    *Admit or deny*, medical records from Louisiana reflecting Dr. Tassin's order and recommendation were not in Breach's medical records from October 6, 2006 through April 30, 2007.

¶ 3.    *Admit or deny*, Prison Health Services, Inc., has a written policy, regulation, custom, practice, of not repairing hernias unless they are incarcerated, strangulated, or into the scrotum?

¶ 4.    *Admit or deny*, Prison Health Services, Inc., has a written policy, regulation that the hernia must be incarcerated or in danger of becoming incarcerated in order to be surgically necessary?

¶ 5.    *Admit or deny*, there is a state wide practice, pattern between ADOC and PHS, involving inmates who have hernias, that cause pain are not approved for surgery until their hernias becomes a life or death situation.

¶ 6.    *Admit or deny*, that Brandon Kindard, denied approval of costs to Breach's hernia repaired?

¶ 7.    *Admit or deny*, Ruth Naglich denied approval to have Breach's hernia repaired?

¶ 8.    *Admit or deny*, Lynn Brown denied approval to have Breach's hernia repaired?

¶ 9.    *Admit or deny*, you do not know the actual size of Breach's hernia as of the date of your answering?

¶ 10.    *Admit or deny*, that the only way to stop a hernia from getting worse is to repair the defect through surgery?

¶ 11.    *Admit or deny*, that the Anatomy of Hernia, --- the most common location for hernia is the abdomen.  A hernia (rupture) is usually noticed as a lump, commonly in the groin or the umblicial region, it appears when a portion of the tissue which lines the abdominal cavity (peritoneum ) breaks through a weakened area of the abdominal wall this can give rise to discomfort as the hernia enlarges and can sometimes be dangerous if a piece of Breach's intestine become trapped ('strangulated').

¶ 12.    *Admit or deny*, you are an expert in Hernia Repair?

¶ 13.    *Admit or deny*, there is almost no limit to how big Breach's hernia could get if continued left without surgery?

¶ 14.    *Admit or deny*, that medically there is no cure for a hernia without surgery?

¶ 15.    *Admit or deny*, medically you can cure a hernia without surgery?

¶ 16.    *Admit or deny*, that a strangulated hernia can become an emergency situation that usually requires immediate surgery?

¶ 17.    *Admit or deny*, Medical Records from Louisiana do not reflect that Breach was issued any temporary relief either a Truss or Hernia Belt or any pain medication?

¶ 18.    *Admit or deny*, a truss is the cure for a hernia?

¶ 19. *Admit or deny*, under the standard of care, a physician will recommend surgery to his patient for his hernia, but it is up to the patient to actually accept surgery?

¶ 20. *Admit or deny*, there are two (2) standards of care: Nationally, and Community Standards of Care?

¶ 21. *Admit or deny*, PHS and ADOC, do not follow the Community Standards of Care for inmates pertaining to Hernias?

¶ 22. *Admit or deny*, PHS and ADOC do not follow the Nationally Standards of Care for inmate treatment pertaining to Hernias?

¶ 23. *Admit or deny*, that a non-reducible hernia can become life threatening if part of the intestine gets trapped or strangulated in the opening?

¶ 24. *Admit or deny*, that a strangulated hernia can become an emergency situation that usually requires surgery?

¶ 25. *Admit or deny*, that issuing a truss and proscribing pain medication is the cheapest way of treating hernias?

¶ 26. *Admit or deny*, surgery for a hernia is the standards followed by physicians to repair the defect in the abdominal wall?

¶ 27. *Admit or deny*, that if Breach's inguinal hernia is left untreated, Breach hernia can get larger and also lead to serious medical complications?

¶ 28. *Admit or deny*, that discomfort usually is experienced, especially when coughing, sneezing, lifting heavy objects, or standing for a long periods of time?

¶ 29.   *Admit or deny*, coughing, sneezing and having bowel movements can cause pain or discomfort and also can weaken the muscles and cause the hernia to become enlarged?

¶ 30.   *Admit or deny*, that the long-tem course is for a hernia to become steadily worse as time goes on, sometimes slowly and sometimes quickly when left without surgery?

¶ 31.   *Admit or deny*, that the opening of a hernia cannot heal itself?

¶ 32.   *Admit or deny*, that medicine cannot cure a hernia condition?

¶ 33.   *Admit or deny*, that Tylenol or Ibuprofen does not ease the pain caused by a hernia?

¶ 34.   *Admit or deny*, that medically a doctor cannot treat a hernia; they must be repaired through surgery?

¶ 35.   *Admit or deny*, you could have improperly diagnosed Breach with a hernia, because usually a surgeon needs to examine just what type of hernia Breach may or may not have?

¶ 36.   *Admit or deny*, that Breach's hernia goes into his scrotum, and has to be worked back into place?

¶ 37.   *Admit or deny*, truss is for temporary relief?

¶ 38.   *Admit or deny*, without surgery intervention, serious complication can lead to injury to the nerves especially the major nerves in teh inguinal region being: 1) Ilioinguinal, 2) Illiohypogastric; and 3) Genitofemoral nerves if the hernia becomes strangulated or trapped inside?

¶ 39.   *Admit or deny*, if Breach's inguinal hernia is not repaired until it is incarcerated or into the scrotum, basically you are waiting until the natural openings in the wall which are small

15

tunnels called 'canals' become strangulated, trapped and complications will arise because when a hernia becomes a non-reducible hernia, medically it then becomes trapped or strangulated in the opening, this can/will lead to dangerous complication such as obstruction of the flow of intestinal contents or blood, leading to tissue death and gangrene?

¶ 40.   *Admit or deny*, under the standard of care, a hernia ought to be repaired before incarceration or before it is into the scrotum?

¶ 41.   *Admit or deny*, when a hernia is incarcerated, Breach will be in severe, extreme pain.

¶ 42.   *Admit or deny*, that if a weakness should open up in the abdominal wall, then the 'Corset Effect' is lost and what pushes against it from the inside (the intestines) simply pushes through the 'window'. The ensuing bulge, which is often quite visible against the skin, is the hernia?

¶ 43.   *Admit or deny*, that these 'windows of weakness' commonly occur where there are natural weaknesses in Breach's abdominal wall – such as where the 'plumbing' goes through it?

¶ 44.   *Admit or deny*, that overexertion can cause weakness, such as simple coughing or sneezing?

¶ 45.   *Admit or deny*, that the effects felt by Breach can range from perfectly painless, through discomfort, to being very painful indeed?

¶ 46.   *Admit or deny*, that in any case, it is essential to diagnose correctly whether the problem is a "Groin Strain" or a "Torn Muscle, or a Hernia?

¶ 47.  *Admit or deny,* you do not have the knowledge, skill, experience to properly identify whether Breach has a "Groin Strain or a Torn Muscle or a Hernia?

¶ 48.  *Admit or deny,* that a burning pain, and a large increase of pain indicates that the hernia is worsening and a physician should be consulted immediately?

¶ 49.  *Admit or deny,* that a hernia should be inspected daily to ensure that it is not becoming infected or developing into a more serious non-reducible hernia?

¶ 50.  *Admit or deny* that Breach could have either femoral or inguinal hernia?

¶ 51.  *Admit or deny,* you do not perform any intensive treatment of physiotherapy, ultrasound, and injections to attempt to successfully heal the muscle strain?

¶ 52.  *Admit or deny,* Breach could have a torn muscle?

¶ 53.  *Admit or deny,* that Breach's hernia can cause pain and discomfort and affect Breach's inability to perform his prison job?

¶ 54.  *Admit or deny* that Brandon Kindard with the Alabama Department of Corrections stated via-phone to Diana Lott on July 12, 2006 that: "Hernia repairs are not done --- unless incarcerated or into scrotum?

¶ 55.  *Admito r deny* that grievances were filed complaining about pain and discomfort due to inguinal hernia?

Done so this _____ day of _____, 2007.

Respectfully Submitted,

_____

Marcellus Breach  #160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Al 35749-7009

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY*, that I have served the following:

Ala. Doc. Legal Division            Rushton, Stakely, Johnstone, Garrett,
P.O. Box 301501                     P.O. Box 270
Montgomery, Alabama 36130           Montgomery, Alabama 36101

By placing same into a sealed envelope properly addressed postage prepaid and placing into the prison Mail Box for proper mailing First Class U.S. Mail on this ___Day of _____2007, under the penalty of perjury 28 U.S.C. 1746 that is treating as an Affidavit by the Court. **Dickerson v. Wainwright**, 626 F.2d 1184, 1186 (5th Cir. 1980) **Murrell v. Bennett**, 615 F.2d 306, 310 n.5 (5th Cir. 1980).

This __Day of _____2007.

_____

Marcellus Breach