IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARCELLUS BREACH, AIS #160710 ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 2:06-cv-1133-MEF |
| ) | |
| PRISON HEALTH SERVICES, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' SPECIAL REPORT**

Come now the Alabama Department of Corrections (hereinafter referred to as ADOC) Defendants, Naglich, Kinard, and Lyrene, by and through the undersigned counsel, and submit this special report as follows:

**FACTS**

The Plaintiff in this action is an inmate of the Alabama Department of Corrections, presently assigned to the Limestone Correctional Facility in Harvest, Alabama. Inmate Breach has submitted an original complaint and two supplemental complaints. Basically Inmate Breach claims that he has received inadequate and/or improper medical treatment while in the custody of ADOC. Breach has named the following ADOC employees or contract employees, namely Richard Allen, Commissioner of ADOC; Ruth Naglich, the ADOC Associate Commissioner of Health Services; Brandon Kinard, the ADOC Regional Clinical Manager; and Dr. George Lyrene, the ADOC State Medical Director. In additiuon, Breach has

named several defendants who are the contract health care providers for ADOC and are not employed by ADOC. In the original complaint filed on December 22, 2006, the Plaintiff names Allen and Naglich as the ADOC Defendants. He claims that both Allen and Naglich are sued for their "direct involvement to deny approving surgery, and/or delay, withholding medical care under deliberate indifference..." Basically he claims that he has a hernia and is not receiving proper medical treatment. (Docket Report #1). Breach filed an amended complaint on January 9, 2007, alleging that Defendant Kinard stated that "I'm going to give you your surgery". (Docket Report # 6). At that time Kinard was not a named Defendant. Breach filed another amended complaint on January 30, 2007, adding Kinard as an ADOC Defendant. Breach then filed a supplemental complaint on June 6, 2007, naming the ADOC Defendants as Allen, Naglich and Kinard, and Defendant Lyrene as an employee of PHS. (Docket Report # 68). In that supplemental complaint, Breach alleges that Defendant Kinard called LCS's Medical personanel and said no surgery. Breach next filed another supplemental complaint on July 23, 2007, alleging deliberate indifference without specific incident thereof towards specific ADOC Defendants, except that he alleges in his 'factual allegations' that Defendant Kinard denied his surgery. (Docket Report # 99).

## **ARGUMENT**

### **Improper Medical Care**

Inmate Breach's claim of improper medical treatment, the ADOC Defendants argue that, inasmuch as they are not physicians and/or not the treating physician, they must rely upon the medical expertise of the trained medical personnel at the facility who are actually treating the Plaintiff. In <u>Waldrop v. Evans</u>, 681 F.Supp. 840 (M.D. Ga. 1988), aff. 871 F.2d 1030, the Court held that prison supervisory personnel were entitled to rely on the judgment of health care professionals employed by the prison. The Defendants know of no clearly established law which imposes upon a non-treating employee the duty to make medical decisions. The staff at the facility is obliged to facilitate access to the medical staff for the treatment that the medical staff deems appropriate. The Plaintiff has not named any staff at the facility who has denied him access to medical treatment.

The Plaintiff seeks to impose responsibility upon these ADOC Defendants for the alleged actions, inactions, and/or medical decisions of the treating medical staff so as to his treatment. Additionally the Plaintiff offers no evidence that the medical care received was, in fact, not proper, just that he has a difference opinion as to his treatment. It is the ADOC Defendants' position that Plaintiff cannot rely on a theory of respondeat superior to render a defendant liable under 42 U.S.C. 1983 or 1985. The common law doctrine of Respondeat Superior is not applicable to render a

superior liable under 42 U.S.C. 1983 for the alleged unconstitutional acts of others. Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 45 L.Ed.2d 611 (1978). The mere right to control without any control or direction having been exercised is simply not sufficient to establish liability under §1983, Rizzo v. Goode, 96 S.Ct. 598 (1976).

Although the Supreme Court based its ruling on the language of §1983, there are also many sound policy reasons for not applying Respondeat Superior to civil rights cases. The doctrine is a tort law term and the functional equivalent of strict liability. Because strict liability focuses on risk allocation, it has been deemed inappropriate in §1983 litigation, Jennings v. Davis, 476 F.2d 1271 (8th Cir. 1973).

In the case of business torts, the master usually bears some, if not all, of the responsibility of the servant. In the case of government superiors, this is usually not the case due to the merit system. In the business context, the employer frequently has a deeper pocket and this is not normally the case with government superiors. Thus, a superior in a §1983 action does not and should not have a constitutional duty, based solely upon position, to compensate a plaintiff whose constitutional rights have allegedly been violated by others.

Without question, the courts require a causal connection between the conduct of the person sought to be held liable and the plaintiff's constitutional violation. This causal connection may be

established either by the showing of a direct order from the superior or a custom or policy established by the superior. Howell v. Tanner, 650 F.2d 610, 615 (5th Cir. 1981); Vasquez v. Snow, 616 F.2d 217 (5th Cir., 1980).

In the case at bar, Plaintiff has failed to alleged or show that a direct order or a custom or policy instituted by Defendants resulted in a violation of 42 U.S.C. 1983. Neither has there been any showing whatsoever of the Defendants' involvement in Inmate Breach's medical treatment giving rise to the allegation of deliberate indifference.

For some time now, the law in this Circuit has been that vicarious liability is not a viable theory for recovery in a Section 1983 action. Baskin v. Parker, 602 F.2d 1205 (5th Cir. 1979); Wanger v. Bonner, 621 F.2d 675 (5th Cir. 1980).

The Court of Appeals in Wanger, supra, stated:

> "In Baskin, this court held that a sheriff could not be held liable under 42 U.S.C. 1983 for the unlawful actions of his deputies on the basis of vicarious liability. Id at 208. Subsequent to Baskin, a plaintiff seeking to impose liability upon a supervisory official for the acts of his subordinates must show that the official was personally involved in the activities resulting in the deprivation of the plaintiff's constitutional rights. Watson v. Interstate Fire & Casualty Co., 611 F.2d 120 (5th Cir. 1980)."

In order to prevail, the plaintiff must establish a causal connection between an act of the supervisory official and the alleged constitutional violation. Henzel v. Gerstein, 608 F.2d 654 (5th Cir. 1979).

The Fifth Circuit has held that a supervisory official cannot be liable merely for failing to adopt policies to prevent constitutional violations. Liability attaches only when the official affirmatively adopts such policies which are wrongful or legal. Vela v. Smith, 703 F.2d 147 (5th Cir. 1983); Reimer v. Smith, 663 F.2d 1316 (5th Cir. 1981); Rizzo v. Goode, supra; Lozano v. Smith, 718 F.2d 756 (5th Cir. 1983).

There have been no allegations or showing that the Defendants instigated, set in motion, or were responsible for any policy or procedure that resulted in unconstitutional or improper medical treatment of the Plaintiff.

In summary, Plaintiff cannot travel under a theory of Respondeat Superior to hold Defendants liable for the Constitutional claims of Plaintiff under 42 U.S.C. 1983.

Numerous courts have also ruled that a theory of Respondeat Superior is inapplicable to a case filed under 42 U.S.C. 1983. DiMaggio v. O'Brien, 497 F.Supp. 870 (D.C. Pa. 1980); Edmonds v. Dillin, 485 F.Supp. 722 (D.C. Ohio 1980); Peck v. U.S., 470 F.Supp. 1003 (D.C. NY 1979).

For the Plaintiff to prevail in this action he must show that the named Defendants were 'deliberately indifferent' as to his medical care. In order to establish deliberate indifference " a plaintiff must prove that the official possessed knowledge both of the infirm condition and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be

inferred from the defendant's failure to prevent it.'" <u>LaMarca</u>, 995 F.2d at 1535, quoting <u>Duckworth v. Franzen</u>, 780 F.2d 645, 653 (7th Cir. 1985), cert. denied, 479 U.S. 816 (1986). The Plaintiff has not and can not proffer evidence that the Defendants were 'deliberately indifferent', even if he had proffered an actual injury. Breach's conclusory allegations are not enough to support his allegations.

The Plaintiff in this action has proffered no evidence that the named ADOC Defendants were deliberately indifferent to the medical treatment of his hernia.

Wherefore the premises considered the Defendant request that summary judgment is entered in their favor and that cost is assessed against the Plaintiff.

Respectfully submitted,

Kim T. Thomas
General Counsel
Deputy Attorney General

/s/Albert S. Butler(BUT016)
Albert S. Butler (BUT016)
Assistant General Counsel
Assistant Attorney General

**ADDRESS OF COUNSEL:**

Alabama Department of Corrections
Legal Division
301 South Ripley Street
P. O. Box 301501
Montgomery, Alabama 36130
(334) 353-3885

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of August 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following (or by U.S. Mail to the non-CM-ECF participants):

    Paul M. James, Jr., Esq.
    Rushton, Stakely, Johnston & Garrett
    Attorney for the PHS Defendants
    P. O. Box 270
    Montgomery, AL  36101-0270

    Inmate Marcellus Breach
    AIS # 160710
    Limestone Correctional Facility
    28779 Nick Davis Road
    Harvest, AL  35749

    /s/Albert S. Butler
    Albert S. Butler
    Assistant General Counsel
    Assistant Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **MARCELLUS BREACH, AIS #160710** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| v. | ) | **2:06-cv-1133-MEF** |
| | ) | |
| **PRISON HEALTH SERVICES, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT

STATE OF ALABAMA

MONTGOMERY COUNTY

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared Richard Allen, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Richard Allen. I am presently employed as Commissioner of the Alabama Department of Corrections. I am over twenty-one (21) years of age.

I do not know the Plaintiff in this matter and to my knowledge have not had any contact with him. As Commissioner, I do not control the daily operation of the Limestone Correctional Facility and had no involvement in the incidents of which Plaintiff complains.

Also, as Commissioner, I do not make decisions regarding medical treatment for inmates, and do not attempt to intercede, overrule, or influence any decisions made by medical personnel regarding medical treatment for inmates.

                                                                  _____
                                                                  Richard Allen, Commissioner

Page Two

SWORN TO AND SUBSCRIBED before me this 6th day of August, 2007.

Kay P. Hope
NOTARY PUBLIC
MY COMMISSION EXPIRES 3/31/08

### In The United States District Court
### For The Middle District of Alabama
### Northern Division

### Affidavit

| | |
|---|---|
| Marcellas Breach | } |
| | } |
| Plaintiff(s) | } |
| v. | } |
| | } |
| Prison Health Services, Inc., et al. | } |
| | } |
| Defendant(s) | }   Case Number: CV-06-1133 |

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared Ruth Naglich., who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Ruth Naglich. I am presently employed by the Alabama, Department of Corrections as the Associate Commissioner of Health Services. I am over twenty-one (21) years of age. My current administrative responsibilities for the Alabama Department of Corrections (ADOC) include the monitoring of the components and the quality of the provision of healthcare to those individual who are in the care, custody and control of the State of Alabama Department of Corrections (ADOC). Included in these responsibilities is the monitoring of contracted health services, and the administration of the ADOC's Quality Assurance Program for all health service treatment.

The ADOC contracts with Prison Health Services, Inc., of Brentwood TN, a private correctional health care company, to provide comprehensive medical services to all inmates housed in the state of Alabama in an ADOC facility. This contract delegates the responsibility of providing medical services to PHS and their employees to include Alabama licensed physicians, who are in good standing with the state's Licensure Board and the Alabama Board of Medical Examiners. All medical treatment decisions relating

to the individual care of an inmate are made by these licensed individuals. The ADOC does not interfere with treatment decisions or recommendations related to an individuals care by a licensed provider.

Mr. Marcellus Breach's (AIS#160710) is currently housed at Limestone Correctional Facility in Capshaw, AL, Documentation in his medical chart reflects that decisions related to his past and current medical care has been ordered and carried out by Alabama licensed practitioners'.

Documentation within Mr. Breach medical record, demonstrates that he has been seen in a timely manner by the appropriate qualified health care provider, and that all orders prescribed by these providers were administered as ordered.

_____ 8/3/2007
Ruth A. Naglich, RN, BSN
Associate Commissioner
Alabama Department of Corrections


SWORN TO AND SUBSCRIBED before me this 3rd day of August, 2007.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES  3/31/08

2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARCELLUS BREACH, AIS #160710 ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 2:06-cv-1133-MEF |
| ) | |
| PRISON HEALTH SERVICES, et al., ) | |
| ) | |
| Defendants ) | |

## AFFIDAVIT

STATE OF ALABAMA

MONTGOMERY COUNTY

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared George Lyrene, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is George Lyrene. I am presently under contract as Medical Director of the Alabama Department of Corrections. I am over twenty-one (21) years of age.

I am not an employee of Prison Health Services which is the contracted provider of medical services for all inmates of the Alabama Dept. of Corrections. I am the Medical Director for the Department of Corrections and as such have an administrative oversight role relative to the contractor. In this position I do not engage in direct medical care to any of the patients. I do not make individual medical decisions. I am generally aware of Marcellus Breech and can only say that not everyone who has a hernia requires

surgery and would leave the decision about individual patients to the primary care providers contracted to carry out that role.

_____
George Lyrene, M.D.

SWORN TO AND SUBSCRIBED before me this 3th day of August, 2007.

_____
NOTARY PUBLIC
MY COMMISSION EXPIRES 6-21-10

## In The United States District Court
## For The Middle District of Alabama
## Northern Division

### Affidavit

| | |
|---|---|
| Marcellas Breach | } |
| | } |
| Plaintiff(s) | } |
| v. | } |
| | } |
| Prison Health Services, Inc., et al. | } |
| | } |
| Defendant(s) | }   Case Number: CV-06-1133 |

    Upon review of Marcellus Breach's (AIS#160710) medical record, Mr. Breach entered the Alabama prison system on 2/18/05 at Kilby Correctional Facility. Intake health assessment was completed at Kilby on the above mentioned date. Problem list on the patient's medical record dated 2/20/05 includes left inguinal hernia, previous fracture left foot, trauma of lumbar spine, and hypoglycemia. On 2/18/05, patient submitted a sick call request complaining of hypoglycemia. Mr. Breach signed a release of responsibility to be evaluated by the medical staff at Kilby for the hypoglycemia on 2/21/05. On 2/22/05, Mr. Breach submitted a sick call request complaining of hypoglycemia. Patient once again signed a release of responsibility to be evaluated by medical staff at Kilby for the hypoglycemia on 2/24/06. On 3/31/05, Mr. Breach was transferred to Limestone Correctional Facility in Harvest, AL. On 4/6/05, Mr. Breach submitted a sick call request for back and ankle pain due to prior injury, assistance with hypoglycemia, hernia, and dental for pain. Patient was seen by a nurse on 4/11/05 and the nurse documents referring Mr. Breach to the physician and dentist for evaluation. Mr. Breach was seen by dental staff on 4/21/05. On 4/25/05, Mr. Breach submitted a sick call slip requesting to see the physician for back and ankle pain, and for evaluation of the hernia. Mr. Breach also sumitted a dental request for a filling on 4/25/05. Referrals were made to the physician and dentist. Patient was seen by Dr. Bosserman at Limestone on 5/5/05. Dr. Bosserman ordered Mr. Breach to get one sack lunch every day for his hypoglycemia, a truss was issued for his hernia, an ankle wrap for his foot and ankle pain, x-rays of the lumbar spine and feet, Tylenol for his lower back pain, and Keflex for possible cellulitis on his abdomen. Profiles were written by Dr. Bosserman on 5/5/05 for no lifting greater than 25 lbs. and no standing or walking for greater than one hour. On 5/16/05, Mr. Breach submitted a sick call request to dental with complaints of a tooth that is breaking. It is documented on the sick call request that Mr. Breach did not show up to be evaluated for this request. On 6/6/05, patient submitted another dental request for same and it is documented that patient was placed on waiting list for extraction. On 6/10/05, Motrin was ordered for pain by dental staff at Limestone. On 7/3/05, Mr.

Breach submitted another sick call request for evaluation of broke tooth. Mr. Breach was seen by dental staff at Limestone on 7/11/05 and 8/8/05. On 8/24/05, patient submitted a sick call request complaining of headaches. Mr. Breach was ordered Tylenol for seven days. Mr. Breach submitted another sick call request on 9/20/05 for a filling and he was scheduled with dental. On 11/10/05, patient was seen by the dentist. On 12/15/05, patient submitted another dental request for a cavity that needed filling. Patient was scheduled with the dental department per the medical record. On 12/31/05, Mr. Breach submitted another dental request for a filling. The dental assistant documented on the request that an appointment had been scheduled. On 1/20/06, Dr. Bosserman ordered patient a sack meal every day with dinner for six months. On 2/13/06, Mr. Breach was seen by the dentist for the cavities. Mr. Breach was transferred to South Louisiana Correctional Facility in Basile, Louisiana on 3/20/06. Mr. Breach's hernia was evaluated by the physician there and the progress notes state, "left inguinal hernia, needs repair?" Mr. Breach was seen by the physician in Louisiana on 7/18/06 for his hernia and the physician documents, "the hernia is not incarcerated, elective procedure." I did not deny Mr. Breach surgery while in Louisiana and have no authority to make such a denial. On 10/6/06, Mr. Breach was transferred to Kilby Correctional Facility in Alabama per the Alabama Dept. of Corrections' Office of Health Services for an evaluation of his left inguinal hernia. Mr. Breach signed a release on 10/9/06 to be evaluated by the clinician at Kilby. Mr. Breach was seen in general sick call by the nurse at Kilby on 10/12/06 and referred to the nurse practioner on the same day. On 10/12/06, once again, Mr. Breach refused to be evaluated by the clinician and a release of responsibility was signed by the patient. I did interview Mr. Breach at Kilby Correctional facility on 12/20/06 and told Mr. Breach that I would have him seen by one of the clinicians at Kilby for evaluation of the hernia, and subsequent repair, if recommended by the clinician. I personally explained to Mr. Breach that if surgery was required, it had to be recommended by one of the providers, as this was out of my scope of practice. I never told Mr. Breach that I would give him the surgery at Kilby due to the fact that I do not possess the authority to authorize medical treatment. Mr. Breach refused to be seen on 12/21/06 by one of the providers at Kilby for evaluation. Mr. Breach was rescheduled for an evaluation of his hernia on 12/27/06. Mr. Breach was seen by the nurse practioner at Kilby on 12/27/06 for an evaluation of the hernia. The provider's progress notes state that patient has a small (3 cm X 5 cm) left inguinal hernia that is easily reducible and non-strangulated. Mr. Breach was given a truss for his hernia, a profile for no straining or lifting of greater than 20 pounds, bottom bunk profile, Percogesic for pain, and to follow up with the provider in two weeks. Mr. Breach's medical records from Louisiana were requested. The nurse practioner documents that there is no need for surgical referral at present and that he has consulted with Dr. Robbins, Medical Director at Kilby, on this issue. Mr. Breach is currently housed at Limestone Correctional Facility in Capshaw, AL and was transferred there on 3/23/07. Mr. Breach has never been on a medical hold per the medical record. Mr. Breach's medical profiles were updated by Dr. William Hobbs at Limestone Correctional facility on 4/10/07 and they include: no lifting greater than 20 lbs. and no standing or walking greater than one hour. Mr. Breach 's hernia was evaluated by Dr. Hobbs on 4/30/07 and the physician progress notes from that visit state that the left inguinal hernia is easily reducible. Mr. Breach was ordered Motrin 600mg three times daily as needed for 90 days keep on person and I see no order for surgical referral

from this visit in the medical record. Upon review of the medication administration records from January 2007 to April 2007, Mr. Breach has not reported to pill call a single time for pain medication. Based upon Mr. Breach's complaints, I have, on numerous occasions, reviewed his medical file to ensure that his medical complaints are being addressed and that he is receiving medical treatment. Due to the fact that I am not the treating medical personnel for Mr. Breach, I must rely upon the treating medical staff for treatment decisions related to Mr. Breach.

*Brandon K* RN, R.C.M., A.D.O.C.
Brandon Kinard RN, R.C.M., A.D.O.C.

*Angie Darrawon, Notary*
Exp: 6/25/08