IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, AIS# 160710          *

     Plaintiff,          *

               *

Vs.          *          Case No: 2:06-cv-1133-MEF

               *

PRISON HEALTH CARE, INC., et al.,          *

     Defendants.          *

## NOTICE UNTO THE COURT UPON TAKING JUDICIAL NOTICE OF DEFENDANT DR. GEORGE LYRENE AS MEDICAL DIRECTOR

*COMES now*, the Plaintiff Marcellus Breach (hereinafter "Breach") in proper

person moves the Court to take 'Judicial Notice' of Defendant Dr. George Lyrene, M.D.,

responsibilities, duties, and job descriptions, also, his submitted Affidavits in this case,

and that at the appropriate time and manner, Breach will be requesting Discovery upon

several Defendants:  Breach shows as follows:

1)          [1]On *February 2, 2007* **Exhibit "A"**, Lyrene, submitted an Affidavit unto this Court

under Oath as Medical Director, that Breach upon admission into the department of

corrections, his hernia was amendable to surgery, but, <u>after entering</u> the department of

---

[1] How can a Hernia, which does not, and cannot heal on its own, be amendable to surgery before Breach was incarcerated, but when Breach is incarcerated surgery is clearly not necessary?  Breach's hernia has only gotten worse!  May the Court also notice, both Dr. Lyrene and Dr. Robbins speak in their Affidavits **"Management"** and not "treatment" because you cannot treat a Hernia --- the treatment for a hernia is surgery.  Breach will proffer this evidence at Summary Judgment.

corrections [surgery] is clearly not necessary now demonstrates Lyrene's personal involvement in this case, he has reviewed the medical records, and also made a medical recommendation that surgery <u>was unnecessary regardless</u> of Breach's subjective complaints of pain.

2)    On *August 3, 2007* Lyrene has submitted his Affidavit (being represented by ADOC) and Lyrene has not disclosed his lawful job description, responsibilities, and duties as a contracted Medical Director. Breach conducted some research.

3)    Review of judicial notice to prior civil right 42 U.S.C. § 1983 cases filed in this Circuit will show that Lyrene has been in the position as Medical Director with several medical providers contracted with the department of corrections who provided medical services "for profit" to prisoners.  Research also shows that Lyrene has worked in various capacities as a physician for numerous medical providers as far back as 1997 dealing with prisoner medical care.  Lyrene has been involved in prison medical care for years.  He has worked in the position as physician, Regional Medical Director, Medical Director and now he has stated via-Affidavit that he is the Medical Director for the Alabama Department of Corrections.  <u>He did not list nor provide documents of his responsibilities</u>?  Counsel for the Department of Corrections has told this Court that Lyrene is contracted out as Medical Provider and that ADOC was not representing him at that time.

4.    *"Exhibit B"* page # 7, the case of ***Taylor v. Questcare, Inc., et al.***, 1995 U.S. Dist.

LEXIS 14975 (S.D. Ala. 1995) <u>Civil Action: 93-0700-CB-M,</u> Dr. George Lyrene, M.D.,

submitted an affidavit unto the Court advising the Court and also describing in details

his duties, responsibilities, as the "Clinical Director for Questcare from <u>*November 20, 1991,*</u>

until <u>*November 19, 1994*</u> . . . the Medical Director for Correctional Medical Systems, Inc., .

. .medical provider for the Alabama Department of Corrections.  Dr. Lyrene explains his

duties, as a Medical Director is very germane to this case:

> "As clinical director for Questcare and currently as medical
> Director for CMS, I travel to twelve correctional facilities to
> examine and treat state prison inmates who have been
> referred to me by the staff physician or nurse at that facility.
> **I approve all nonemergency free world medical referrals
> for state prison inmates,** and I normally see the patients
> prior to their referral to the free world physician. At all times
> relevant in this lawsuit. **I have been responsible** for all
> nonemergency free world medical referrals for |prisoners|."
> **Exhibit B"** page # 7. |ADOC & PHS has a policy against
> surgery that is challenged as unconstitutional, Lyrene is held
> responsible for the policy, and failure to change the policy ---
> Breach will proffer expert testimony against the policy|    *pAge # 7.*

5)    [2]Breach has yet to ascertain who is the medical Director for PHS and who is

policymaker for PHS.   Thus, Exhibit *"A"* is Lyrene's <u>*February 2, 2007*</u> Affidavit in which

he states that he is "contracted as Medical Director for the Alabama Department of

Corrections" and his <u>*August 31, 2007*</u> Affidavit |ADOC, Defendant's Special Report| he

---

[2] This case is a challenge to an unconstitutional policy, custom, practice dealing with Inguinal Hernias.
PSH has held that ADOC has a policy that Breach has not meet the policy for surgery being a incarcerated,
strangulated, or into the scrotum before surgeries authorized which is a life or death situation.

states that he is presently under contract as Medical Director for the Alabama Department of Corrections. Discovery must disclose who is the holder of his contract and what are his job description, duties, and responsibilities.

6)      [3]Only through discovery will both the Court and Breach decipher who is policymaker for PHS, ADOC, and who holds Lyrene's contract with ADOC -- because it is a determination for the Court: "[w]hen the party at issue is a municipality, whether an official has policymaking authority is determined by state law. " See, *Praprotnik*, 108 S.Ct. @ 924; *Jeff v. Dallas Indep. School Dist.*, 491 U.S. 701, 109 S.Ct. 2702, 2723, 105 L.Ed. 2d 598 (1989). As the party here at issue is a corporation contracting with the state the relevant "state law" for policymaking determinations are the contracts between PHS, the state, and PHS employees, also Lyrene contract with either PHS or ADOC. See also, *Howell v. Evans*, 922 F.2d 712 (11th Cir. 1991). "Deliberate indifference "requires that the actor recklessly ignore the medical situation in the face of information that a reasonable person would know requires actions." *Howell supra*.

    **WHEREFORE, premises considered,** Breach moves that the Court review the attached case, which is relevant to Lyrene's past duties as a medical Director and that Lyrene has not disclosed any information pertaining to his duties, and job description and responsibility.   [4]

---

[3] Dr. Lyrene is sued in his Individual capacity as well as Official. It appears that he is policymaker for ADOC and responsible for the constitutional violation. However, the policy, treatment protocol must be produced.

Done so this /0 Day August 2007

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT, I have served a true copy of the foregoing upon the following:

Rushton, Stakely, Johnston & Garrett
P.O. Box 270
Montgomery, Alabama 36101-0270

Alabama Dept. of Corrections
Legal Division
301 South Ripley Street
P.O. Box 301501
Montgomery, Alabama 36130

By placing same into a sealed envelope properly addressed postage prepaid and mailing First Class U.S. Mail on this /0 Day of August 2007.

Marcellus Breach

---

[1] Lyrene was quick to write an Affidavit against Breach's surgery without ever examining Breach. He is reluctant to voluntary "Initial Disclose" his lawful duties. Breach urges the Court to ascertain who is responsible to writing, approving this unconstitutional inhumane treatment protocols, policies pertaining to Hernias.
PHS has not disclosed Breach's medical records being already supplied by Breach of the 7-12-06 **"Received call from Brandon [kindard] stated Hernia repairs are not done there – unless incarcerated or into scrotum...." LSC Medical Records, Nurses Notes page two.**



LEGAL MAIL
CORRESPONDENCE

MARCH LL US BRI ACH 1140710
LIMESTONE C.F.
28779 NICK DAVIS ROAD
HARVEST, ALABAMA 35749-7009

CLERK OF COURT
UNITED STATES DISTRICT COURT
P.O. BOX 711
MONRTOMGERY, ALABAMA 36101—

USA FIRST-CLASS

This correspondence
an Alabama State
have not evaluated
Department of
responsible
of the enclose

Exhibit
A

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MARCELLUS BREACH, #160710,       )
                                 )
    Plaintiff,             )
                                 )
v.                               )   CIVIL  ACTION  NO.  2:06-CV-1133-
MEF                              )
PRISON HEALTH SERVICES,          )
                                 )
    Defendants.            )

### AFFIDAVIT OF GEORGE LYRENE

    Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared George Lyrene, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

    My name is George Lyrene. I am over the age of 19. I have an MD degree from the University of Alabama, Birmingham, and am board certified with the American Board of Internal Medicine, since 1978. I have 30 years of practice experience, including 15 years in private practice and 15 years in Correctional Medicine. I am currently contracted as Medical Director for the Alabama Department of Corrections.

    I have reviewed the record of Mr. Marcellus Breach. The medical issue he presents is really quite a simple one. He has a small, easily reducible inguinal hernia, for which conservative management with applied support and limitations on heavy lifting are very appropriate. This is a hernia that was present by intake documentation and would be amenable to surgery which was clearly elective at the time of his admission and would clearly not be necessary now. The patient has several times walked away from sick call

opportunities to address this hernia signing releases when he did. When he was seen he was given the appropriate exam and attention. This is a minor problem of for which surgery is not necessary at this time and which is being appropriately managed.

George Lyrene
ADOC Consulting Medical Director

SWORN TO AND SUBSCRIBED before me this _2ⁿᵈ_ day of February , 2007.

NOTARY PUBLIC _____

MY COMMISSION EXPIRES 6 Mar 08



---

**LUVERNE TAYLOR, Plaintiff, vs. QUESTCARE, INC., et al., Defendants.**
**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ALABAMA,**
**SOUTHERN DIVISION**
**1995 U.S. Dist. LEXIS 14975**
**CIVIL ACTION 93-0700-CB-M**
**June 8, 1995, Decided**
**June 8, 1995, FILED**

---

**Editorial Information: Subsequent History**

Adopting Order of October 3, 1995, Reported at: 1995 U.S. Dist. LEXIS 14980.

**Summary:**

**Posture:**
Defendants, doctors, nurses, and prison official, moved for summary judgment in plaintiff inmate's suit alleging that they violated his rights under 42 U.S.C.S. 1983 by denying him adequate medical care.

**Cite overview:**
Doctors, nurses, and a prison official earned summary judgment in an inmate's suit alleging that they denied him adequate medical care because he offered no expert testimony and made only a conclusory assertion that the treatment was inadequate.

**Overview:**
The inmate argued that the nurses were engaged in the unauthorized practice of medicine, that he was denied access to specialists, that the nurses and doctors only treated the symptoms and not the cause, and that that medical care was frequently inadequate and inappropriate. The court granted summary judgment for the nurses, doctors, and prison official. To establish a violation of the Eighth Amendment based on medical treatment, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. Here, the inmate offered no expert testimony and only offered his conclusory claim that the treatment was inadequate and inappropriate. He offered no evidence that the doctors or nurses were deliberately indifferent to any serious medical needs. The claims that the inmate preferred a different medicine than he was given for pain offered nothing more than a dispute over the mode of treatment. The inmate did not even have stomach cancer, as he claimed. The court declined to exercise supplemental jurisdiction over the inmate's pendant state law claims regarding unauthorized practice of medicine, which could only be brought by the state.

**Outcome:**
The court granted the motion for summary judgment filed by the nurses, doctors, and the prison official in the inmate's suit alleging that they denied him adequate medical care. The court declined to assert supplemental jurisdiction over the inmate's pendant state law claims.

**Concepts:**
Summary judgment is proper under Fed. R. Civ. P. 56(c) if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show, that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law. The plain language of Fed. R. Civ. P. 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

The movant bears the initial responsibility of asserting the basis for his summary judgment motion. However, the movant is not required to negate his opponent's claim. The movant may discharge his burden by merely showing - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case. After the movant has carried his burden, the nonmoving party is then required to go beyond the pleadings and present competent evidence designating specific facts showing that there is a genuine issue for trial. While the court is to view the evidence produced and all factual inferences rising from it in a light most favorable to the nonmoving parties, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. If the nonmoving party's response consists of nothing more than a repetition of his conclusory allegations, the district court must enter summary judgment in the moving party's favor.

A fact is material when it is identified by the controlling substantive law as an essential element of the nonmoving party's case. An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is merely colorable or is not significantly probative. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence so as to create a genuine issue for trial.

To establish a violation of the Eighth Amendment based on medical treatment, a prisoner must allege acts of omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. The deliberate indifference to serious medical needs standard has an objective and a subjective component. The objective component of an Eighth Amendment claim is contextual and responsive to contemporary standards of decency. Regarding the subjective component, the court has consistently held that knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference.

Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are serious. A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.

The second element of a 42 U.S.C.S. 1983 medical claim requires a plaintiff to establish that a defendant was deliberately indifferent. It is obduracy and wantonness, not inadvertence or error in good faith that violates the Eighth Amendment in supplying medical needs. A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established. Implicit in the deliberate indifference standard is knowledge of the particular medical condition in order to establish intent or a sufficiently culpable state of mind to deny or to delay purposely access to medical care or intentionally to interfere with the treatment once prescribed. Thus, knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.

Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment. Failure to respond to a known medical problem can also constitute deliberate indifference. Mere medical malpractice, however, does not constitute deliberate indifference. Nor does a simple difference in medical opinion.

A verified complaint's allegations are subject to the scrutiny that an affidavit receives from the court when the court is considering a summary judgment motion, i.e., conclusory statements of ultimate facts, conclusions of law, and statements unsupported by personal knowledge are not considered competent evidence to defeat a summary judgment motion.

42 U.S.C.S. 1983 requires that there be affirmative proof of a causal connection between an individual defendant's actions, orders, customs, policies, or breaches of statutory law and a deprivation of the plaintiff's constitutional rights in order to state a claim. Further, it is only the



deliberate indifference to a serious medical need that violates the Constitution.
The power to institute a proceeding for the unauthorized practice of medicine is vested in the
state or the State Board of Medical Examiners. Ala. Code 34-24-52 (1975).


**Counsel**    LUVERNE    TAYLOR,    plaintiff,    [PRO    SE],    Atmore,    AL.
For QUEST CARE, INC., KIMBERLY SCOTT, C. GANDY, defendants: Felice
Ann Stern Goldstein, QuestCare, Inc., Birmingham, AL. For S. DEAN, Lt., defendant:
Ellen R. Leonard, Alabama Department of Corrections, Montgomery, AL. Andrew W.
Redd, Alabama Dept. of Corrections, Montgomery, AL.


**Judges:** Mag. Judge Bert W. Milling, Jr. Chief Judge Charles R. Butler, Jr.


Opinion


**Opinion by:**    Bert W. Milling, Jr.


*REPORT AND RECOMMENDATION*


Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* (Doc. 16), filed a
complaint under 42 U.S.C. 1983. Plaintiff's action is before the Court on motions for summary
judgment filed by Defendants (Docs. 15, 23, 28, 34, and 38). This action has been referred to
the undersigned Magistrate Judge pursuant to 28 U.S.C. 636 (b)(1)(B), Local Rule 26, and
the standing order of general reference. It is recommended that Defendants' motions for
summary judgment be granted and that the Court decline supplemental jurisdiction over
Plaintiff's state-law claim.


*I. PROCEEDINGS.*


*A. Complaint (Doc. 1).*


*3*

Plaintiff named as Defendants to this action QuestCare, Inc.,1 (hereinafter "QuestCare"), Dr. William E. Thomas, Dr. Nelson,2 Nurse Kimberly Scott, Nurse Charlene Gandy, Nurse Nadine Booker, and Lt. Stephen Dean. Plaintiff claims that QuestCare failed in its duty to provide adequate treatment and care by failing to train and supervise their employees adequately, including, but not limited to, Defendants, nurses, and doctors. Plaintiff asserts that the nurses are engaged in the unauthorized practice of medicine in violation of Alabama law when they make decisions, without adequate supervision, whether to treat prisoners, including Plaintiff, or to refer prisoners to physicians. Plaintiff alleges that he has been denied access to specialists, that Defendants are only treating the symptoms and not the cause, that his serious medical problems are often ignored by physicians, and that medical care is frequently inadequate and inappropriate. Plaintiff contends that Defendant Dean acquiesced to medical personnel refusing to give Plaintiff his medication by assaulting and verbally assaulting Plaintiff in an irrational manner. Plaintiff seeks adequate medical care, a diagnosis of his medical problems by specialist, other injunctive relief, a declaratory judgment, and damages.

Attached to Plaintiff's complaint are grievances that he filed and the responses that he received to them. Plaintiff's grievances reflect the following:

1. On July 2, 1993, Defendant Nurse Scott allegedly failed to change or inspect Plaintiff's surgical dressing on a surgical incision. Plaintiff contended that this denied him adequate medical attention and caused him to suffer pain unnecessarily. Defendant Nurse C. Gandy's reply to the grievance stated that Defendant Scott denies refusing to change Plaintiff's dressing, that she informed Plaintiff that his sitz bath order had expired, and that Plaintiff then walked off.

2. On June 15, 1993, Plaintiff awoke and could not hear out of his right ear so he went to the pill window and was told to sign up for sick call; thirty minutes later Defendant Scott looked at his ear and told him that it was wax buildup, that his ear did not get that way overnight, and that he should sign up for sick call to see if the doctor wanted to clean them. Plaintiff asserted that Questcare staff members are failing in their duty to provide adequate medical attention. Defendant Gandy's response to the grievance was that wax buildup is not an emergency so Defendant Scott was correct to refer Plaintiff to sick call.

3. On December 4, 1992, at 5:33 a.m., Plaintiff went to pill call, which is held from 5:00 a.m. to 6:00 a.m., and Defendant Nurse Booker refused to administer Plaintiff's medicine for his cancerous condition. Defendant Lt. Dean verbally assaulted Plaintiff because Defendant Booker is his former wife. Even after Capt. Williams interceded for Plaintiff, Defendant Booker refused to give Plaintiff his medication. R. L. Mothershed's response to this grievance was that Defendant Dean has been advised as to the hours that the window is open and the incident has been referred to Laura Ferrell, hospital administrator, for action and evaluation.

*4*

4. Plaintiff complained that he had been on medication prescribed by Dr. Wilson that was controlling his medical condition, but Defendant Dr. Thomas or the nurses, without examining him, discontinued all his medication, and that the medical care given under Defendant Dr. Thomas is grossly inadequate and inappropriate. Plaintiff asserted that apparently nurses are engaged in the unauthorized practice of medicine in violation of Alabama law in that nurses without adequate supervision determine whether to treat an inmate or refer an inmate to a physician. Carla Wasdin's response to this grievance dated July 8, 1992, was that Defendant Dr. Thomas reviewed Plaintiff's medical records and noted that Plaintiff has "a chronic G.I. problem due to a hx G.S.W. to the abdomen. Dr. Thomas changed [Plaintiff's] medication to drugs that would be less irritating to the G.I. system."

5. On December 20, 1992, Plaintiff went to pill call because he was having severe burning in his chest and stomach and could hardly breathe and Defendant Booker refused to give Plaintiff anything because there was not an order from the doctor and told him to sign up for sick call. Defendant Gandy's response to this grievance was that according to Defendant Booker, Plaintiff asked for liquid Maalox and was told that liquid Maalox required a doctor's order, but he could have Maalox tablets, which Plaintiff refused.

In Plaintiff's "Motion for Disregard of Prison Civil Rights and to Impose Fine" (Doc. 20), Plaintiff raised for the first time that he has a tumor about the size of softball on his stomach, which is growing, and stated that Defendants know that it would expensive to remove it so they are planning to wait and let Plaintiff die from it. Plaintiff wanted to have Defendants respond to these allegations. The Court granted this motion and ordered medical Defendants to respond (Doc. 24).

B. *Special Reports (Docs. 15, 23, 28, 34).*

All the Defendants, both correctional and medical, raise the following defenses, *inter alia:* failure to state a claim upon which relief can be granted, qualified immunity, and *respondeat superior.* Correctional Defendant Lt. Stephen Dean filed a Special Report to which he attached his sworn affidavit (Doc. 15). In his affidavit, Defendant Dean states that Plaintiff approached him after Plaintiff had been to the pill call window and told him that Defendant Nurse Booker refused to give him his medication, and that Plaintiff was very angry. Defendant Dean provides that he investigated the situation and found out that Defendant Booker refused to give Plaintiff medication because Plaintiff arrived after she had finished pill call and that she was not going to give the medication to Plaintiff. Defendant Dean claims that he told Plaintiff that there was nothing that he could do since the medical personnel chose not to treat him and that with this statement, Plaintiff became louder and continued to argue. Defendant Dean avers that in the lieutenant's office he verbally reprimanded Plaintiff for his conduct, but did not "verbally assault" Plaintiff, and that then Plaintiff went to Captain Williams's office; a couple of minutes later Captain Williams told Defendant Dean to take Plaintiff to the unit hospital, which Defendant Dean did, even though he explained to Captain Williams that he

5

had already spoken unsuccessfully with medical personnel, Defendant Dean states that he does not recall if Plaintiff received his medication, and that the incident had nothing to do with Defendant Booker being his ex-wife.

Medical Defendants filed their Special Report (Docs. 23, 28, 34) with sworn affidavits of the individual medical Defendants and of other medical personnel attached and a certified copy of Plaintiff's medical records. Defendant Dr. William E. Thomas states in his affidavit that he was the interim staff physician at Fountain Correctional Facility (hereinafter "Fountain") and Holman Correctional Facility (hereinafter "Holman") for Defendant Questcare, Inc. from May, 1993, until October, 1993 (Doc. 23). Defendant Dr. Thomas asserts that he treated Plaintiff at Holman for multiple complaints and that Plaintiff often asked for pain medication, but refused to take his medication for blood pressure and swelling. Defendant Dr. Thomas provides that as a result of Plaintiff's non-compliance, he discontinued Plaintiff's medication.

Defendant Dr. Thomas claims that he performed an EGD because Plaintiff complained that he was vomiting blood, but the test was negative for bleeding, and Plaintiff complained of blood in his stool, but the tests were negative for bleeding. Defendant Dr. Thomas also relates that Plaintiff asked for complete bed rest in his dorm, and not the ward. Defendant Dr. Thomas further states that Plaintiff was given placebo shots for abdominal pain, which Plaintiff stated were helping him. Defendant Dr. Thomas concludes that Plaintiff is difficult to treat because he does not follow doctor's orders and his symptoms are not consistent with test results. Furthermore, Defendant Dr. Thomas asserts that a free world medical referral for Plaintiff was not indicated and that he was not the person to make the referral.

Defendant Nurse Nadine Booker states in her sworn affidavit that she was an L.P.N. at Holman until August, 1993 (Doc. 23). In response to Plaintiff's allegation that she refused to give Plaintiff his cancer medication, Defendant Booker claims that Plaintiff has not been diagnosed with cancer and that Plaintiff appeared after pill call was over for his Tylenol # 3 medication when he knows that he must come during pill call for his medication and when pill call is scheduled. In response to Plaintiff's other claim that she would not give him liquid Maalox for the burning in his chest, she agreed that she refused to give Plaintiff liquid Maalox and asserted that she offered Maalox tablets to him as she could not give him liquid Maalox without a doctor's order, but Plaintiff refused the tablets. Concerning Plaintiff's allegation that nurses make the decision who receives treatment from a doctor, Defendant Booker provides that when the nurses are conducting sick call, they document the complaints in an inmate's medical jacket, which is then reviewed by a doctor who makes the determination which inmate he will see.

Defendant Charlene Gandy, the Director of Nursing at Holman for Questcare since September 6, 1992, filed a sworn affidavit (Doc. 23). Defendant Gandy states that Plaintiff's allegation that nurses make medical decisions is not true as a nurse records each complaint of an inmate in his medical jacket together with her observations and the doctor reviews the chart of each inmate who attends sick call screening and decides which inmate he will see. Defendant Gandy provides that she investigated two grievances that Plaintiff filed against

Defendant Scott and one grievance that he filed against Defendant Booker and that she knows Plaintiff has not been diagnosed with cancer.

Defendant Nurse Kimberly Scott states in her affidavit (Doc. 34) that Plaintiff filed a grievance against her because on June 15, 1993, she told him sign up for sick call when he complained about being unable to hear, which was due to a wax buildup. Defendant Scott relates that this is a non-emergency condition and that Questcare's policy requires non-emergency matters to be handled at sick call. Defendant Scott acknowledges that Plaintiff filed another grievance against her for refusing on July 2, 1993, to change his dressing for his surgical incision. Defendant Scott asserts that she told Plaintiff that his sitz bath order had expired, but did not refuse to change his dressing, and Plaintiff departed the unit without further conversation.

**Dr. George Lyrene**, a non-defendant, filed an affidavit (Doc. 34). He advises the Court in this affidavit that he was the clinical director of Questcare from November 20, 1991, until November 19, 1994, and is now the Medical Director for Correctional Medical Systems, Inc., the current medical provider for the Alabama Department of Corrections. Dr. Lyrene explains:

As clinical director for Questcare and currently as medical Director for CMS, I travel to twelve correctional facilities to examine and treat state prison inmates who have been referred to me by the staff physician or nurse at that facility. I approve all nonemergency free world medical referrals for state prison inmates, and I normally see the patients prior to their referral to the free world physician. At all times relevant in this lawsuit, I have been responsible for all nonemergency free world medical referrals for plaintiff.

Dr. Lyrene relates that Plaintiff's hernias involve his entire abdomen but they do "not impact on his organs as the herniation goes out of his abdomen away from his organs." Dr. Lyrene claims that Plaintiff's hernias are not a threat to Plaintiff's health as the hernias are not strangulated or incarcerated and are examined on a regular basis for the purpose of detecting a change in Plaintiff's condition. It is Dr. Lyrene's position that a patient with Plaintiff's symptoms should not be experiencing pain, but pain is subjective, and Plaintiff should know whether he is in pain, and that Plaintiff's pain should be able to be controlled with pain medication. Dr. Lyrene notes that Plaintiff's condition has not changed within the last few years, and not since he was referred to Dr. William Garretson in 1992; the prison medical records do not go back far enough to determine how long Plaintiff's condition has been as it is. Dr. Lyrene avers that Dr. Garretson is an experienced board certified surgeon who is licensed to practice medicine in Alabama and on staff at North Baldwin County Hospital in Bay Minette, Alabama, and that he has been pleased with the quality of the many surgeries performed by Dr. Garretson on inmates.

Dr. Harold Wilson, a non-defendant, filed an affidavit (Doc. 28) stating that he was the staff physician for Questcare at Fountain and Holman from November 20, 1991, until June 15,

1992, and again from October 18, 1993, until the present. Dr. Wilson relates that he is Plaintiff's present physician and that Plaintiff does not have a tumor in his stomach, nor has Plaintiff been told such by him or the nurses. Dr. Wilson advises that Plaintiff has "a large completely relaxed hernia. Plaintiff's abdomen protrudes because of loss of muscle tone due to the hernia. Plaintiff is certainly aware that he has this hernia and it has been operated on many times without success." In summarizing Plaintiff's medical records, in particular Plaintiff's referral to Dr. Garretson, Dr. Wilson provides that Plaintiff told Dr. Garretson that his problems with hernias encompass many years as they were due to a gunshot wound that he received when he was young.

## II. *APPLICABLE LAW.*

### A. *Summary Judgment Standards.*

Summary judgment is proper under Fed.R.Civ.P. 56(c).

> "If the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show, that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." . . . The plain language of Rule 56(c) mandates the entry of summary judgment, . . ., against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323, 106 S. Ct. at 2553; *Apcoa, Inc. v. Fidelity Nat'l Bank,* 906 F.2d 610, 611 (11th Cir. 1990). However, the movant is not required to negate his opponent's claim. 477 U.S. at 323, 106 S. Ct. at 2553. The movant may discharge his burden by merely "'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S. Ct. at 2554. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S. Ct. at 2553. While the Court is to view the evidence produced and all factual inferences rising from it in a light most favorable to the nonmoving parties, *Barfield v. Brierton,* 883 F.2d 923,

934 (11th Cir. 1989), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material fact.*" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) (emphasis in original). If the nonmoving party's "response consists of nothing more than a repetition of his conclusory allegations, the district court must enter summary judgment in the moving party's favor." *Barfield,* 883 F.2d at 934.

A fact is material when it is identified by the controlling substantive law as an essential element of the nonmoving party's case. *Anderson,* 477 U.S. at 248, 106 S. Ct. at 2510. An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249-50, 106 S. Ct. at 2511. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence so as to create a genuine issue for trial. As the Eleventh Circuit explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." [Citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker,* 898 F.2d 1530, 1532 (11th Cir. 1990), *cert. denied,* 498 U.S. 1103, 111 S. Ct. 1003, 112 L. Ed. 2d 1085 (1991).

B. *Eighth Amendment Law in the Context of a Medical Claim.*

To establish a violation of the Eighth Amendment based on medical treatment, a prisoner must allege "acts of omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976).

The *Estelle* "deliberate indifference to serious medical needs" standard has an objective and a subjective component. *Wilson v. Seiter,* 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991); *Whitley v. Albers,* 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986) (subjective component); *Rhodes v. Chapman,* 452 U.S. 337, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981) (objective component). The objective component of an Eighth Amendment

claim is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian,* 503 U.S. 1, , 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992) (quoting *Estelle,* 429 U.S. at 103, 97 S. Ct. at 290). Regarding the subjective component, "this court has consistently held that knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference." *Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir. 1989).

*Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1186 (11th Cir. 1994). "'Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*

"'A 'serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* at 1187 (citations omitted).

Delay in access to medical attention can violate the Eighth Amendment, *Estelle,* 429 U.S. 97 at 104-05, 97 S. Ct. at 291, when it is "tantamount to 'unnecessary and wanton infliction of pain,'" *Brown v. Hughes,* 894 F.2d 1533, 1537 (11th Cir.) (per curiam) (quoting *Estelle,* 429 U.S. at 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1990). Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. (Footnote omitted.) In contrast, delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation. (Footnote omitted.)

The "seriousness" of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment. *Gaudreault,* 923 F.2d 203, 208; *Monmouth County,* 834 F.2d 426, 437. Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." (Footnote omitted.) *Id.* An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. (Footnote omitted.) Further, we have held that "the tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay." *Harris v. Coweta County,* 21 F.3d 388, 393-94 (11th Cir. 1994) (emphasis added). Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for the delay.

40 F.3d at 1187-88.

The second element of a 1983 medical claim requires a plaintiff to establish that a defendant was deliberately indifferent.

> In *Whitley v. Albers,* 475 U.S. 312, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986), a case concerning a state prisoner who was shot by a prison official quelling a riot, the Court held that "it is obduracy and wantonness, not inadvertence or error in good faith" that violates the Eighth Amendment in "supplying medical needs." (Footnote omitted). *Id.* at 319, 106 S. Ct. at 1084. "A defendant must *purposefully ignore or fail to respond* to a prisoner's pain or possible medical need in order for deliberate indifference to be established." *McGuckin v. Smith,* 974 F.2d 1050, 1060 (9th Cir. 1992) (emphasis added). Implicit in the *Estelle* deliberate indifference standard is *knowledge* of the *particular medical condition* in order to establish intent or "a sufficiently culpable state of mind," *Wilson,* 501 U.S. at 298, 111 S. Ct. at 2324, *to deny or to delay purposely* "access to medical care" or intentionally to interfere "with the treatment once prescribed," *Estelle,* 429 U.S. at 104-05, 97 S. Ct. at 291. Thus, *"knowledge* of the asserted serious needs or of circumstances clearly indicating the existence of such heeds, is *essential* to a finding of deliberate indifference." (Footnote omitted). *Horn ex rel. Parks v. Madison County Fiscal Court,* 22 F.3d 653, 660 (6th Cir.)(emphasis added), *cert. denied,* U.S. . 115 S. Ct. 199, 130 L. Ed. 2d 130 (1994); *see  Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir. 1989).

40 F.3d at 1190-91.

Grossly incompetent or inadequate care can constitute deliberate indifference, *Rogers,* 792 F.2d 1052, 1058 (medical treatment "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference), as can a doctor's decision to take an easier and less efficacious course of treatment. *Id.* Failure to respond to a known medical problem can also constitute deliberate indifference. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 704 (11th Cir. 1985) (per curiam) (pre-trial detainee); *accord  Carswell v. Bay County,* 854 F.2d 454, 457 (11th Cir. 1985) (per curiam). Mere medical malpractice, however, does not constitute deliberate indifference. *Estelle,* 429 U.S. at 106, 97 S. Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Nor does a simple difference in medical opinion. *See  Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977) ("We disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.") (citation omitted).

*Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989).

III. *DISCUSSION:*

Plaintiff's allegations are broad and vague without being anchored by many facts and only refer to two Defendants, Questcare and Lt. Dean. The grievances attached to Plaintiff's complaint provide the major source of facts for Plaintiff's claims. The Court therefore will discuss first the claims that can be found within Plaintiff's grievances and then proceed to the broad claims pleaded in the complaint.<u>3</u>

Plaintiff's response to Defendants' motions for summary judgment (Doc. 43) is contained in his affidavit filed under penalty of perjury. Plaintiff previously filed "Plaintiff Reply to Supplementary Report of Defendant [sic]" (Doc. 29), which is also signed under penalty of perjury and has a picture of Plaintiff's exposed stomach attached. Plaintiff has not submitted any evidence from a medical expert. Additionally, Plaintiff's allegations in his complaint are signed under penalty of perjury and therefore the Court is treating them like an affidavit. *See Dickinson v. Wainwright,* <u>626 F.2d 1184</u>, 1186 (5th Cir. 1980); <u>4</u> *Murrell v. Bennett,* <u>615 F.2d 306</u>, 310 n. 5 (5th Cir. 1980); *Vinson v. Fulton County Sheriff's Dept.,* <u>678 F. Supp. 275</u>, 278-79 (N.D. Ga. 1988). However, a verified complaint's allegations are subject to the scrutiny that an affidavit receives from the court when the court is considering a summary judgment motion, i.e., conclusory statements of ultimate facts, conclusions of law, and statements unsupported by personal knowledge are not considered competent evidence to defeat a summary judgment motion. *See Murrell,* <u>615 F.2d at 310</u> n.5.

A. *Grievance Against Defendant Dr. Thomas.*

In or about *July, 1992,* Plaintiff filed a grievance complaining about the medical treatment given by Defendant Dr. Thomas as being inadequate and inappropriate and about his medication being changed by Defendant Dr. Thomas or the nurses from the medication previously prescribed by Dr. Wilson without a medical evaluation being given (Doc. 1). The response to the grievance from Carla Wasdin dated July 8, 1992, was that Plaintiff's medication was changed after a review of his records by Defendant Dr. Thomas from which he noted that Plaintiff had a history of a gunshot wound to his abdomen and that Defendant Dr. Thomas prescribed drugs that would be less irritating to Plaintiff's stomach.

Defendant Dr. Thomas's affidavit reflects that he was an interim staff physician from *May, 1993, to October, 1993,* for Questcare (Doc. 23). Defendant Dr. Thomas recounts in his affidavit that Plaintiff complained of vomiting blood and having blood in his stool and that he ordered tests for Plaintiff, which were negative for bleeding. Defendant Dr. Thomas states that he gave Plaintiff placebo shots for pain, which Plaintiff claimed to have helped him, and that Plaintiff requested bed rest in the dorm, and not in the ward. Defendant Dr. Thomas further relates that at the time he was treating Plaintiff that Plaintiff was "very difficult to treat because [Plaintiff] will not follow his doctor's orders, and regularly complains of symptoms which are

not consistent with the test results[,]" and that "a free world medical referral for plaintiff was not indicated, but if it had been indicated [he] was not the person who was authorized to make such a referral."

The time element concerning Defendant Dr. Thomas's employment contained in his affidavit appears to be incorrect as the grievance indicates that Defendant Dr. Thomas was a physician treating inmates in 1992 and the medical records reflect that Defendant Dr. Thomas was treating Plaintiff in 1992. This discrepancy of dates is not important to the disposition of Plaintiff's claims since Plaintiff's medical records were furnished by medical Defendants. The medical records containing Patient Notes/Physician Orders commence on May 9, 1992. The entries in May, 1992, reflect that Plaintiff was being treated by Dr. Wilson and that he was receiving Tagamet and Midrin with Tylenol # 3 being discontinued. Later in the month, after Plaintiff complained that Midrin was not strong enough, Dr. Wilson discontinued Midrin and prescribed Tylenol # 3. Plaintiff complained at that time about stomach pain, edema, blurry eyes, weakness, and "sugar" problems.

On June 26, 1992, Plaintiff wanted his pain medicine renewed, Tylenol # 3. Defendant Dr. Thomas ordered that Plaintiff receive another medicine, Meclomen. This is the first entry in the records provided for Defendant Dr. Thomas. On June 29, 1992, the medical records reflect that Plaintiff returned complaining that the medicine made his stomach sick and that Tylenol does not. Defendant Dr. Thomas prescribed Tylenol and discontinued Meclomen. On June 30, 1992, Plaintiff complained that he needed something for stomach pain and that he wanted the Tylenol # 3 renewed. Defendant Dr. Thomas prescribed M & Dz. On July 16, 1992, Plaintiff again complained of stomach pain and stated his desire to have Tylenol # 3 renewed. Defendant Dr. Thomas prescribed Meclomen after examination that indicated a large ventral hernia with no indigestion present.

On July 17, 1992, Plaintiff stated that he needed something for stomach pain as the Meclomen makes him deathly sick. Defendant Dr. Thomas prescribed M & Dz. On July 22, 1992, Plaintiff kept an appointment with Defendant Dr. Thomas, and the test for blood in his stool was negative. On July 25, 1992, Plaintiff requested that his medicine be given to him at 12:00 noon, which Defendant Dr. Thomas ordered that Plaintiff's Maxzide be given at 12:00 noon, *inter alia.* On July 28, 1992, Plaintiff complained of itching and was given Benadryl, and "denies getting on sick call because states doctor wont do anything [sic]." On August 3, 1992, Plaintiff complained that he is allergic to Meclomen as he has a rash all over his hands and body. Defendant Dr. Thomas prescribed Benadryl and discontinued Meclomen. There is an entry by Defendant Dr. Thomas on August 7, 1992, which cannot be read, including the reason for Plaintiff's visit. On August 14, 1992, Plaintiff complained about abdominal pain, hurting from the chest down, and his hand being swollen. The physician's notes do not indicate who the physician was, but the handwriting appears to be that of Dr. Wilson. Tylenol # 3 was prescribed for Plaintiff and Plaintiff was referred to Dr. Lyrene for a surgical consult. Dr. Lyrene denied the surgical consultation on August 18, 1992.

The Court is unable to find another entry for Defendant Dr. Thomas until June 1, 1993. However, the medical records do reflect that Plaintiff was seen many times from August 7, 1992, until June 1, 1993, by different physicians.

The medical records reflect that on October 26, 1992, Plaintiff was referred again to Dr. Lyrene, who on October 29, 1992, ordered a consultation with Dr. Garretson. Dr. Lyrene, in a sworn affidavit (Doc. 34), states that Dr. Garretson is a board certified surgeon who is on staff with North Baldwin Hospital in Bay Minette, Alabama. Dr. Garretson examined Plaintiff, and Dr. Garretson's report dated November 13, 1992, reflects that Plaintiff was shot in the past with a .357 Magnum pistol at close range in the right midback region, cutting his bowels, which were resected and became infected. Plaintiff then developed hernias, which were repaired in 1966 with a large sheet of Marlex being inserted in the anterior abdominal wall and with the sheet being patched by different surgical procedures through the years. Plaintiff claims that he has many hernias with severe pain at multiple hernia sites and admits that he has a chronic smoker's cough. Dr. Garretson found Plaintiff's hernias to be reducible and recommended:

[Plaintiff] needs to discontinue his smoking and loose weight. Due to his significant past history of multiple ventral hernia repairs and the breakdowns that he has had he is at extremely high risk of a repeat breakdown should a repeat hernia repair be performed. This risk could be lowered if he were to loose weight and stop smoking, but there is still an extremely high risk of hernia breakdown. I would recommend that no hernia repair be attempted unless absolutely necessary by his symptoms and if this does seem to be absolutely necessary that a plastic or reconstructive surgeon should probably be the one to attempt this type of repair. Also the patient needs to understand that any repair of this type is undertaken with a very high risk of recurrence of herniation and possibly death from complications of the surgery.[5]

Dr. Lyrene explains in his affidavit (Doc. 34) that he is responsible for the nonemergency free-world medical referrals, and regarding Plaintiff's condition, provides:

4. Plaintiff's entire abdomen is herniated. This would not impact on his organs as the herniation goes out of the abdomen away from his organs. Plaintiff's hernias are not a threat to his health because there is no incarceration or strangulation of the hernias. An incarcerated hernia would be likely to cause plaintiff health problems, and a strangulated hernia would be an emergency. Plaintiff has neither of these conditions, but is being examined on a regular basis in case there is a change in his condition.

5. Although I would not normally expect a patient with plaintiff's symptoms to be experiencing pain, pain is subjective, and plaintiff is the only one who knows whether or not he is [sic] pain, if plaintiff is in pain, it should be controllable with pain medication.

6. Plaintiff's condition has not recently changed. Our medical records do not go back far enough for us to determine how long plaintiff's condition had been as it is, but we know that his condition has not changed in the last few years. His condition is unchanged from when I referred him to Dr. William Garretson in 1992.

. . . .

12. On September 1, 1994, plaintiff was one of the inmates whose medical complaints were the subject of the Medical Advisory Committee meeting at Holman Correctional Facility. The Medical Advisory Committee is an independent committee of physicians who review the quality of medical care which inmates who are in the custody of the Department of Corrections are receiving. The committee agreed with our treatment and with the recommendations of Dr. Garretson and stated that surgical intervention for plaintiff would be unwise at this time.

The following are additional entries̲c̲ reflecting Plaintiff's treatment by Defendant Dr. Thomas in 1993:

1. On June 1, 1993, Plaintiff complained at a chronic care clinic visit of edema to lower extremities and to left hand and of hernia pain. Plaintiff was prescribed potassium, Maxzide, and a high protein and low cholesterol diet for 90 days, among other things, by Defendant Dr. Thomas. (Plaintiff was previously prescribed Tylenol # 3 by Dr. Nelson on May 25, 1993, for sixty days.)

2. On June 2, 1993, the next day, Defendant Dr. Thomas saw Plaintiff for hernia pain and prescribed Motrin.

3. On June 3, 1993, Plaintiff complained that the Tylenol was not stopping the pain.

4. On June 4, 1993, Plaintiff complained that he is allergic to Motrin, which was previously noted in his medical jacket,7 and the Motrin was discontinued per Defendant Dr. Thomas's order.

5. On June 5, 1993, Plaintiff complained about hurting up and down the front of his body with his legs really hurting him. A nurse took his blood pressure, noting that Plaintiff grimaced upon examination, that edema was present in his legs, and that he needed to be on the ward, which he refused. Plaintiff was prescribed Tylenol per Defendant Dr. Thomas's order.

6. On June 8, 1993, Plaintiff was seen by Dr. Nelson at a scheduled clinic appointment with his blood pressure being taken and his blood pressure medicine being continued.

7. On June 14, 1993, Plaintiff wanted a complete bed rest profile. The doctor's entry cannot be read.

8. On June 16, 1993, Plaintiff wanted his ears checked. Defendant Dr. Thomas ordered the wax removed. The nurse noted a large amount of wax was removed.

9. On June 21, 1993, Plaintiff complained of needing something for a boil on the inner right buttock. Dr. Nelson ordered Ichthamnol be applied.

10. On June 22, 1993, Plaintiff's boil was lanced by Dr. Nelson and sitz baths were ordered.

11. On June 26, 1993, Plaintiff complained that the Tylenol was not helping his pain. Plaintiff was given a sitz bath and his wound was cleansed and redressed with no large amount of drainage noted. Pain, however, was radiating upward and red spots covered his body. Dr. Nelson was called, and he instructed that two Darvocets be given, but Plaintiff was allergic to it. Dr. Nelson stated that red spots were indicative of an allergic to codeine - no codeine in Tylenol # 3.

12. On June 28, 1993, Plaintiff wanted to see the doctor about the surgical site. A nurse noted a small amount of yellow-tinged drainage. Defendant Dr. Thomas examined and prescribed Keflex and ordered it to be cleaned with hydrogen peroxide and dressed.

13. On July 6, 1993, Plaintiff wanted to see a doctor about drainage from the incision. The nurse noted no drainage. Dr. Nelson ordered that sitz baths be continued for ten days.

14. On July 9, 1993, Plaintiff attended a clinic appointment for leg and feet swelling, which were noted as being worse. Dr. Nelson examined him finding edema and prescribed Lasix and KCL. (There were other notations made by Dr. Nelson, but they were not able to be read.)

15. On July 14, 1993, Plaintiff complained about his eye hurting, which was observed to be red with white mucous. Defendant Dr. Thomas ordered that the eye be irrigated with eye irrigation solution.

16. On July 15, 1993, Plaintiff complained that his left eye was still hurting and had pains shooting through it. Defendant Dr. Thomas ordered Plaintiff's eye checked with a fluorescent light and irrigated with irrigation solution and prescribed Benadryl.

17. On July 16, 1993, Plaintiff was seen at his appointment by Defendant Dr. Thomas, who noted pain in the eyes and ordered Cortisporin.

18. On July 22, 1993, Plaintiff wanted a shot for his bursitis because the pills were not helping. Defendant Dr. Thomas saw him and prescribed Indocin.

19. On July 22, 1993, at 3:50 p.m., Plaintiff complained that he had eaten chicken that is causing him much stomach pain and that he must "get it up." A small of amount of blood was noted in sputum. Defendant Dr. Thomas examined Plaintiff; performed an ELD, noting no ulcer and no bleeding; and ordered that Plaintiff be kept at the unit hospital overnight and all medications be continued. At 9:00 p.m., Plaintiff complained that he cannot stand the pain - it feels like something is twisted and stuck in his chest. It was noted that Plaintiff was in acute distress and was vomiting fresh blood in his sputum, and Defendant Dr. Thomas was called.

20. On July 23, 1993, Plaintiff returned from ACH and refused to stay on the ward.

21. On July 26, 1993, Plaintiff wanted pain medication as it ran out yesterday. The nurse noted distress. Defendant Dr. Thomas prescribed Tylenol.

22. On July 27, 1993, Plaintiff complained that his pain medication ran out, that he needs it, and that he has a rash on his body. Whelps were noted on his entire back. Defendant Dr. Thomas prescribed Benadryl.

23. On July 29, 1993, Plaintiff complained of a sty on his right eye, a rash on his body, and needing Tylenol # 3. Defendant Dr. Thomas and Dr. Nelson ordered that he keep the clinic appointment on August 3, 1993.

24. On August 2, 1993, Plaintiff complained about his stomach hurting and that he needs Tylenol # 3. Defendant Dr. Thomas ordered that he keep his appointment on August 3, 1993.

25. On August 3, 1993, Plaintiff wanted to have Tylenol # 3 renewed. Dr. Nelson saw Plaintiff and prescribed a placebo for abdominal pain and would not give Tylenol # 3. Dr. Nelson observed that Plaintiff had jock itch and a rash on his back and chest and noted that Plaintiff was complaining about abdominal pain and bloody vomit.

26. On August 12, 1993, Plaintiff complained about bursitis in his shoulder, abdominal pain, and jock itch. Defendant Dr. Thomas prescribed Tinactin and another medicine.

27. On August 16, 1993, Plaintiff complained about his shoulder and intestines hurting. Plaintiff wanted a shot in the shoulder and Maalox. Dr. Nelson ordered that present medications be continued.

28. On August 16, 1993, a nurse noted that Plaintiff's edema medicine was out and Dr. Nelson re-prescribed Lasix and KCL.

29. On August 30, 1993, Plaintiff complained that he needed a shot and something for his stomach, and that everything in his box made him deathly sick. No distress noted. Chart unclear as to Dr. Nelson's actions.

30. On September 2, 1993, it was noted that Plaintiff will be seen at chronic care clinic on September 3, 1993.

31. On September 3, 1993, the clinic was not held because there was no electricity, and the Maxzide was re-ordered.

32. On September 7, 1993, Plaintiff was seen at the chronic care clinic complaining to Defendant Dr. Thomas that Lasix, KCL, and Maxzide made him sick, that he has not been taking them, and that he was in constant pain. His blood pressure was noted as being good for the past three months.

33. On September 8, 1993, Plaintiff had an appointment to see Defendant Dr. Thomas for shoulder pain and abdominal pain. Tylenol was prescribed, among other medications, for Plaintiff. Lasix, KCL, and Maxzide were discontinued. There are no further entries in the record for Defendant Dr. Thomas.

The actual medication records reflect that Plaintiff was given Tylenol # 3 from May 25 to July 25, 1993 by Dr. Nelson and then Plaintiff was given Tylenol from July 26 until August 8, 1993, by Defendant Dr. Thomas, at which time a placebo was ordered by Dr. Nelson until September 5, 1993. On September 8, 1993, Defendant Dr. Thomas ordered plain Tylenol to be given to Plaintiff for a month.

Defendant Dr. Thomas treated Plaintiff, himself or through orders given to nurses, for a variety of ailments: hernia pain, edema, ear wax, eye irritation, bursitis, nausea, a rash, and jock itch.

Plaintiff's claim that Defendant Dr. Thomas's treatment was inadequate and inappropriate is not supported by Plaintiff with additional evidence. The only evidence that Plaintiff presents for this claim is found in his grievance, which is his conclusory claim that Defendant Dr. Thomas's treatment is inadequate and inappropriate and that he changed Plaintiff's prescription without an examination. Plaintiff has not produced evidence from an expert medical witness to disagree with the treatment that Plaintiff received from Defendant Dr.

Thomas or to demonstrate that Defendant Dr. Thomas's treatment constituted a deliberate indifference.

The medical records reflect that Plaintiff received treatment from Defendant Dr. Thomas and the other members of the medical staff for a variety of ailments on numerous occasions, which appear to be responsive to Plaintiff's needs. There is nothing that is apparent to the Court, or to a layman, in Defendant Dr. Thomas's treatment of Plaintiff that evinces egregious behavior by Defendant Dr. Thomas so as to amount to a deliberate indifference to Plaintiff's serious medical needs. Due to this absence, it is incumbent upon Plaintiff in order to be successful on his claim of inadequate and inappropriate medical treatment against Defendant Dr. Thomas that he provide evidence from an expert that would remove Plaintiff's claim from the realm of a mere dispute over the adequacy of or appropriateness of treatment and would establish that Defendant Dr. Thomas was deliberately indifferent to Plaintiff's serious medical needs. *Waldrop*, 871 F.2d at 1033 (the court will not second-guess the propriety or adequacy of medical treatment as this is a question of sound professional judgment); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) ("Whether medical misdiagnosis resulted from deliberate indifference or negligence is a factual question requiring exploration by expert witnesses."); *Hamm v. Dekalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (federal courts are reluctant to second-guess medical judgments where plaintiff has received medical attention and the dispute is over the adequacy of treatment), *cert. denied*, 475 U.S. 1096, 106 S. Ct. 1492, 89 L. Ed. 2d 894 (1986).

Plaintiff has not provided any evidence beyond that contained in his complaint and grievance. This evidence is not significantly probative. *See Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2511. Plaintiff needs at this time to furnish "sufficient evidence favoring [his position] for a reasonable jury to return a verdict in [his] favor." *Hayes v. City of Miami*, 52 F.3d 918 (11th Cir. 1995), *citing*, *Anderson*, 477 U.S. at 249-51, 106 S. Ct. at 2511. By Plaintiff's failure to furnish expert evidence that would furnish proof of his claim and would create a genuine issue of material fact, Plaintiff has failed to establish an essential element of his Eighth Amendment claim against Defendant Dr. Thomas, i.e., deliberate indifference. *See Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552 ("The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.")

Plaintiff's claim based on a change in his medicine in June or early July, 1992, challenges Defendant Dr. Thomas's judgment in not conducting an examination before prescribing the new medicine and in prescribing different medicine than that Plaintiff was taking. Plaintiff bears the burden to establish that these actions exhibit deliberate indifference on Dr. Thomas's part. Plaintiff has not presented any evidence beyond that contained in his complaint and grievance to support this claim. The medical records reflect that Defendant Dr. Thomas did prescribe another medication, Meclomen, when Plaintiff requested Tylenol # 3 for pain, and three days later when Plaintiff complained that the medicine hurt his stomach, Defendant Dr. Thomas discontinued the medicine and prescribed plain Tylenol, instead of the requested Tylenol # 3. The claims present nothing other than a dispute over the mode or adequacy of Plaintiff's treatment by Defendant Dr. Thomas. Plaintiff has offered no expert to show that Defendant Dr. Thomas's treatment was below professional standards or that Defendant Dr. Thomas's actions constituted a deliberate indifference. *See Rogers*, 792 F.2d

1052, 1058 (11th Cir. 1986); Hamm, 774 F.2d at 1575. 8 Plaintiff's evidence supporting this claim, which is only found in the grievance itself, is not colorable so as to create a genuine issue of material fact that must be resolved by the trier of fact. Anderson, 477 U.S. at 249-50, 106 S. Ct. at 2511. By Plaintiff's failure to demonstrate that there exists a genuine issue of material fact, Plaintiff has failed to establish a deliberate indifference, an essential element of his Eighth Amendment claim against Defendant Dr. Thomas. Accordingly, Defendant Dr. Thomas is due to be granted summary judgment on these claims by Plaintiff.

   B. *Grievance and Claim Against Defendants Lt. Dean and Nurse Booker.*

   In Plaintiff's complaint, he complains about Defendant Steven Dean acquiescing with nursing personnel's refusal to give Plaintiff his medication for his cancerous condition and assaulting and verbally assaulting Plaintiff. Attached to the complaint is the grievance filed by Plaintiff over an incident on December 4, 1992, when Defendant Dean is alleged to have verbally assaulted Plaintiff at approximately 5:45 a.m. after Plaintiff had been refused his medication for his cancerous condition by Defendant Nurse Booker, Defendant Dean's ex-wife, even after Captain Williams intervened. Plaintiff contended in his grievance that he was at pill call at 5:33 a.m. and that pill call is conducted from 5:00 a.m. to 6:00 a.m. In his sworn affidavit Defendant Dean states that Plaintiff was very angry after Defendant Booker refused to give him his medication and that upon investigation he discovered that Defendant Booker's refusal was based on Plaintiff's arriving after pill call was completed (Doc. 15). When Defendant Dean told Plaintiff this, he became louder. Defendant Dean asserts that he verbally reprimanded Plaintiff and that Captain Williams told him to take Plaintiff to the unit hospital so Plaintiff could receive his medication. The response to the grievance was that Capt. Williams looked into the situation and informed Defendant Dean of the hours that the pill call window is open and in regard to Defendant Booker, the incident was referred to Hospital Administrator Ferrell. In Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment (Doc. 43), which is signed under penalty of perjury, he addresses this situation and avers that Defendant Dean neglected to do his job as shift commander, which is to ensure the institution's proper operation.

   Plaintiff must demonstrate the elements of a medical claim under the Eighth Amendment in order to survive summary judgment on this claim against Defendant Dean and Defendant Booker. This rationale may not be apparent in regard to the claim against Defendant Dean but his actions or breach of duty are not of constitutional magnitude unless as result of them, Plaintiff has been deprived of his Eighth Amendment right to be free from deliberate indifference to his serious medical needs. Estelle, 429 U.S. at 104-05, 92 S. Ct. at 291. Plaintiff complains that he was not given his medication for his cancerous condition. Plaintiff has not identified the cancer that he has been diagnosed with, nor has offered evidence indicating that such a diagnosis was made. Plaintiff has not specified the medication that he was to receive at pill call at that time, why he needed the medicine, what his condition was at that time, what injury he suffered as a result of not being given the medicine, and when was the next time that he received the medicine.

Plaintiff has made references in his pleadings that he has a tumor in his stomach (Doc. 20). In a sworn affidavit (Doc. 28), Dr. Wilson, however, contends that Plaintiff does not have a tumor in his stomach, that neither he or the nurses have told Plaintiff that he has a tumor, and that Plaintiff knows that his condition is a hernia.

In light of Plaintiff's present treating physician stating that Plaintiff does not have tumor, Plaintiff must come forward with evidence from an expert or make it readily apparent to the Court that Plaintiff had tumor on December 4, 1992. Plaintiff's statement that he had a cancerous condition is only a scintilla of evidence when confronted with a physician's medical opinion. *Anderson,* 477 U.S. at 249-50, 106 S. Ct. at 2511; *see Rogers,* 792 F.2d at 1059. Plaintiff has not presented either forms of evidence to the Court. The failure to produce such evidence at this time prevents Plaintiff from creating a genuine issue of material fact concerning a serious medical need and from establishing an essential element to his Eighth Amendment claim, a serious medical need.

On the other hand if Plaintiff did not intend to state that he had cancerous condition, the Court cannot extrapolate what the Plaintiff intended to convey for his medical condition from his numerous medical records, and it is not the Court's position to deduce what Plaintiff's claim is even though on summary judgment, the Court construes the evidence and all factual inferences therefrom in the light most favorable to the non-moving party. *Washington v. Dugger,* 860 F.2d 1018, 1020 (11th Cir. 1988). It is the Plaintiff's burden to convey what his serious medical need is. *Estelle,* 429 U.S. at 106, 97 S. Ct. at 292. However, it is only learned through Defendant Booker's affidavit that Plaintiff was seeking Tylenol # 3 at that time. The medication administration records reflect that Plaintiff appeared at pill call two times later in the day on December 4, 1992, at 12:00 p.m. and at 6:00 p.m. for his Tylenol # 3, and not at the early morning pill call. Based on this knowledge about the medicine that Plaintiff was seeking that morning, the Court can possibly, although not absolutely, deduce that Plaintiff was seeking medicine for his hernias.

Even though Plaintiff's hernias are a serious underlying condition, Plaintiff has not produced evidence that this underlying condition presented itself as a serious medical need that day at that time or that Defendant Booker's and Defendant Dean's actions were taken to inflict pain wantonly. Evidence of this type takes on greater importance in light of the medical records and Defendant Dr. Thomas's affidavit (Doc. 23) reflecting that Plaintiff received placebo pain shots on occasion and indicated that he benefited from them. Despite consideration of matters not contained in Plaintiff's grievance form, i.e, his hernias and Tylenol # 3, the Court still determines that Plaintiff has not presented evidence of a serious medical need and that Defendants Dean and Booker, therefore, are due to be granted summary judgment on this claim based on the December 4, 1992, incident.

There is an additional aspect to this claim - Defendant Dean verbally assaulted Plaintiff. Plaintiff contends in these allegations that he was also assaulted. No other facts were provided in the complaint concerning this conclusory assertion of physical assault and no injury was described. There is an absence of a reference to this particular assault and

supporting facts in a grievance filed contemporaneously to the incident, which is attached to the complaint, and in Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment (Doc. 43), where the incident is addressed. Plaintiff's failure to come forward at this time with evidence to support this conclusory assertion found only in this one place in this action causes the Court find that Plaintiff has failed to state an assault claim against Defendant Dean upon which relief can be granted. *See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) (vague and conclusory allegations are subject to dismissal).

The remaining portion of this claim against' Defendant Dean is that he verbally assaulted Plaintiff. Verbal threats and abuse are not cognizable under 1983. *Edwards v. Gilbert*, 867 F.2d 1271, 1273 n. 1 (11th Cir. 1989); *Stacey v. Ford*, 554 F. Supp. 8 (N.D. Ga. 1982). Plaintiff therefore has failed to state a claim for upon which relief can be granted on this aspect of the claim. Accordingly, Defendant Dean is due to be granted summary judgment on Plaintiff's claim for assault and verbal assault based on the December 4, 1992, incident.

C. *Grievance Against Defendant Booker Dated December 20, 1992, and Investigated by Defendant Gandy.*

Plaintiff filed a grievance in which he alleged that Defendant Booker refused to give him medication on December 20, 1992, when he complained at pill call of having a burning in his chest and stomach and could hardly breathe. Defendant Gandy's response was that Plaintiff's requested liquid Maalox and Defendant Booker offered him Maalox in the tablet form, which is all that she can dispense without a doctor's order. When Plaintiff was informed of this, he refused the tablets. Defendant Booker in her affidavit offers no additional information beyond that which is contained in the grievance.

Plaintiff has presented no other evidence in support of his claim, nor has he fleshed out his claim further than as it is contained in his grievance form. The Court interprets the Plaintiff's claim as being one disputing the medical treatment. There is no disagreement that Defendant Booker refused Plaintiff the liquid Maalox that Plaintiff requested. The response to the grievance and Defendant Booker's affidavit reflect that she Booker offered Plaintiff Maalox in tablet form. The absence of evidence by Plaintiff that evinces a gross inadequacy in this alternative form of medication prevents him from altering his claim for a mere dispute over the type of medical treatment that he is receiving, and to one demonstrating a deliberate indifference. *See Rogers*, 792 F.2d at 1058; *Hamm*, 774 F.2d at 1575. Plaintiff's only evidence in support of his claim is found in the claim itself, i.e., the grievance form. Plaintiff's evidence supporting his claim is a scintilla at best and is insufficient to create a genuine issue of material fact concerning deliberate indifference. *Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511. The failure to come forward with evidence tending to establish a deliberate indifference results in Plaintiff's failure to demonstrate an essential element of this Eighth Amendment claim. *Celotex*, 477 U.S. 317 at 323, 106 S. Ct. at 2552. Summary judgment, therefore, is due to be granted Defendant Booker on this claim.

Defendant Gandy investigated the grievance filed against Defendant Booker for refusing to give Plaintiff liquid Maalox. In the claims articulated in Plaintiff's complaint, there is no reference to Defendant Gandy. The only time that Defendant Gandy's name appears in the complaint is in the response section on three grievances attached to the complaint. Thus, the Court is unable to determine what Plaintiff's claim is against Defendant Gandy.

Even though Plaintiff has a right to present his grievances to the government, *Wildberger v. Bracknell*, 869 F.2d 1467 (11th Cir. 1989), there is no independent right inherent in the Constitution to have a grievance responded to or investigated, *Hall v. Haughain*, No. 94-15533, 1994 U.S. App. LEXIS 35994 (10th Cir. Dec. 16, 1994); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988), nor has Plaintiff demonstrated to the Court otherwise. The only claim that the Court can envision arising against an investigating official is based on the official's knowledge and duty to act or to intervene in an on-going situation that is being investigated that constitutes a deprivation of a right arising under federal law. Inasmuch as the Court has determined that there was not involved a violation of the Eighth Amendment concerning the incident underlying this grievance, Defendant Gandy's actions or failures to act, which are not articulated, are not of constitutional magnitude. The Court, therefore, concludes that Plaintiff has failed to state a claim against Defendant Gandy upon which relief can be granted. Accordingly, summary judgment is due to be granted Defendant Gandy on a claim arising from the incident of December 20, 1992.

D. *Grievances Against Defendant Scott Dated June 15, 1993, and July 12, 1993, and Investigated by Defendant Gandy.*

Attached to Plaintiff's complaint is a grievance for the refusal by Defendant Scott on June 15, 1993, to see Plaintiff immediately when he woke up and was unable to hear out his right ear, but was told by Defendant Scott that he needed to sign up for sick call since it was not an emergency. Plaintiff also alleges that it is obvious that Questcare staff members are failing in their duty to provide adequate medical attention. The response contained in the grievance states that the earwax buildup was not an emergency and that Defendant Scott was correct to refer Plaintiff to sick call.

Defendant Scott in her affidavit states that wax builds up over time and is not an emergency, and that "QuestCare policy when [she] worked at Holman was that inmates had to sign up for and come to sick call to receive nonemergency medical treatment. As an employee [she] had no choice but to follow this policy." (Doc. 34). The medical records indicate that on June 16, 1993, Plaintiff's wax buildup was removed.

The Court cannot say that when Defendant Scott refused Plaintiff immediate, emergency medical treatment and ordered Plaintiff to sign up for sick call that Plaintiff had a serious

medical need that needed immediate treatment. *See Lee v. Brewer,* 1994 U.S. Dist. LEXIS 1437, at *13-14 (N.D. III. Feb. 14, 1994) (earwax buildup did not constitute a serious medical need even after a three-year delay in its removal). Plaintiff has offered no other evidence in addition to that contained in his grievance or any evidence that an injury was suffered by him or that his condition was exacerbated as a result of the delay. *Hill,* 40 F.3d at 1187-88. Rather, it appears to the Court at the time of the refusal, Plaintiff's medical condition was not life-threatening and a short delay would not exacerbate the condition. Moreover, Defendant Scott provided information to Plaintiff, i.e., sign up for sick call, that would enable him to receive treatment. The Court therefore determines that Plaintiff has failed to produce the caliber of evidence that would establish that he had a serious medical need that needed immediate attention. Based on Plaintiff's failure to establish an essential element of a 1983 medical claim, i.e., a serious medical need, the undersigned concludes that summary judgment is due to be granted for Defendant Scott on this claim. *Celotex,* 477 U.S. at 323, 106 S. Ct. at 2552.

The other grievance against Defendant Scott concerns her failure to inspect or change Plaintiff's surgical dressing on July 2, 1993. In Defendant Scott's affidavit she states that she did not refuse to change Plaintiff's dressing, but told Plaintiff that his sitz bath order had expired, and that he then walked away (Doc. 34).9 The certified medical records of Plaintiff indicate that on June 21, 1993, Plaintiff complained of a knot on his buttock, which the nurse noted as a boil on Plaintiff's inner right buttock. On June 22, 1993, Dr. Nelson lanced the boil and ordered a sitz bath for seven days. On June 26, 1993, Plaintiff returned complaining of pain and needing something else done. He was given a sitz bath and his incision was cleansed and redressed with the nurse noting in his record that there was not a large amount of drainage; Dr. Nelson was called, and he ordered Tylenol # 3 for Plaintiff. On June 28, 1993, Plaintiff wanted to see the doctor concerning his incision; the nurse noted a small amount of yellow-tinged drainage. Defendant Dr. Thomas saw Plaintiff and ordered Keflex and to keep on dressing, *inter alia.*10 On July 6, 1993, Plaintiff wanted to see the doctor about drainage; the nurse noted that there was not a large amount of drainage. The doctor recommended that the sitz baths be continued for ten days.

There is no indication in the medical records of Plaintiff contacting the unit hospital on July 2, 1993. Plaintiff has not furnished any other information about this claim other than that contained in his grievance.

Plaintiff's claim against Defendant Scott concerning the inspecting and changing of his dressing does not present a claim based on a serious medical need. Plaintiff received a surgical procedure for his boil on June 22, 1993, and went to the unit hospital twice after his boil was lanced and before July 2, 1993, for post-operative care, which included receiving an antibiotic, Keflex, on June 28, 1993. There is no indication that Plaintiff went every day for a dressing change, what Plaintiff's condition was worsening, what the surgical site's condition was on July 2, 1993, and that Plaintiff sustained an injury as a result of not having the dressing changed. The medical records indicate that four days later, on July 6, 1993, Plaintiff returned wanting to see a physician and was without "a large amount of drainage." The absence of evidence by Plaintiff demonstrating that he had a serious medical need on July 2, 1993, causes the Court to conclude that Plaintiff has failed to establish an essential element of his claim, a serious medical need, as the only evidence supporting this claim is found in the

grievance, which is a scintilla. Further, the Court cannot conclude that Plaintiff's need to have the dressing inspected and changed on July 2, 1993, a considerable period of time from when the boil was lanced, is a serious medical need. *See Long v. Chesney,* 1993 U.S. Dist. LEXIS 18152 at *23 (E.D. Pa. Dec. 23, 1993) (five-day delay in treating boil did not amount to deliberate indifference of a serious medical need). Inasmuch as Plaintiff failed to present evidence establishing a serious medical need, all other facts in dispute cease to be material. *Bennett,* 898 F.2d at 1532. Thus, Defendant Scott is due to be granted summary judgment on this claim.

Defendant Gandy responded to both of these grievances filed against Defendant Scott. Based on the reasoning contained in the Court's discussion above of Defendant Gandy's response to the grievance against Defendant Booker and on the Court's finding that there is no Eighth Amendment violation by Defendant Scott in regard to the above grievances, the Court concludes that Plaintiff has failed to state a claim against Defendant Gandy upon which relief can be granted based on the incidents on which these grievances against Defendant Scott were filed. Accordingly, Defendant Gandy is due to be granted summary judgment on these claims.

E. *Complaint's Claim Against Defendant Questcare.*

In the complaint, Plaintiff presents a general claim against Defendant Questcare; he complains that Defendant Questcare denies adequate medical treatment and care and has failed in its duty to adequately train and supervise its employees, including, but not limited to, Defendants, nurses, and doctors. This is an extremely broad claim that has not been narrowed by specific facts offered in support of the claim except possibly for certain grievances that are attached to the complaint. The Court's construction of this claim is that Plaintiff must establish that he suffered an Eighth Amendment deprivation as a result of Defendant Questcare's failure to provide adequate treatment and care by its failure to train and supervise. This is the only plausible construction of Plaintiff's allegations in this claim because an independent claim for failure to provide adequate medical care would be based on Defendant Questcare's employees' actions, thereby advancing a claim based on vicarious liability or *respondeat superior,* which are not cognizable theories of liability under 1983, *Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), and a claim for merely failing to train or supervise would lack an articulated and necessary injury component.

If Plaintiff contends that his allegations concerning training and supervision are the moving force behind Defendant Questcare's alleged failure to provide adequate medical care, Plaintiff has not shown a claim where the lack of training and of supervision was the direct cause of an Eighth Amendment violation that he suffered. *See Greason v. Kemp,* 891 F.2d 829, 837 (11th Cir. 1990). 11 Further, Plaintiff has not established an Eighth Amendment violation in this action. Even though Plaintiff has not come forward with competent evidence in support of this claim, an examination of the grievances attached to the complaint, which apparently were

furnished in support of Plaintiff's claims in his complaint, when ruled on as independent claims, fell short of establishing an Eight Amendment violation.

The burden is on Plaintiff to produce specific evidence supporting his vague claim that QuestCare has failed to provide adequate medical care due to its failure to train and supervise. No evidence other than that contained in the complaint and grievances has been furnished by Plaintiff. This absence of an Eighth Amendment violation, much less one being caused by a failure to train or to supervise, precludes Plaintiff from establishing an Eighth Amendment claim for failure to train and to supervise. Plaintiff, therefore, has failed to establish an essential element of his claim, and summary judgment thus is due to be granted for QuestCare. *Celotex,* 477 U.S. 317 at 323, 106 S. Ct. at 2552.

F. *Complaint's Claim for Nursing Personnel Engaged in the Unauthorized Practice of Medicine.*

Plaintiff claims that nurses are practicing medicine in violation of Alabama law in that nurses without adequate supervision decide whether to treat prisoners, including Plaintiff, and whether to refer a prisoner to a physician. It is not altogether clear whether Plaintiff intended this claim to be one arising under 42 U.S.C. 1983 or one based on the supplemental jurisdiction of this Court, 28 U.S.C. 1367. 12 If Plaintiff's claim is one under 1983, it fails. Plaintiff has not referred to a specific Defendant in this claim except for a group of Defendants, nurses. Section 1983, however, requires that there be affirmative proof of a causal connection between an individual Defendant's actions, orders, customs, policies, or breaches of statutory law and a deprivation of Plaintiff's constitutional rights in order to state a claim. *See LaMarca v. Turner,* 995 F.2d 1526, 1538-39 (11th Cir. 1993), *cert. denied,* U.S. , 114 S. Ct. 1189, 127 L. Ed. 2d 539 (1994); *Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986). Further, it is only the deliberate indifference to a serious medical need that violates the Constitution. *See Estelle,* 429 U.S. 97 at 106, 97 S. Ct. at 292. This claim does not exhibit a deliberate indifference to a serious medical need. *See Hill,* 40 F.3d at 1187 (lay person administering medicine and determining who needed to go hospital); *Mandel,* 888 F.2d at 790 (physician assistant provided initial medical care for jail inmates); *Hamm,* 774 F.2d at 1575 (physician occasionally examined plaintiff with the jail staff providing the other care). Defendants, therefore, are due to be granted summary judgment on this 1983 claim as Plaintiff did not demonstrate an essential element of a 1983 claim, a causal connection, and consequently failed to state a claim upon which relief can be granted. *Celotex,* 477 U.S. at 323, 106 S. Ct. at 2552.

Construing this claim as a claim arising under this Court's supplemental jurisdiction, 28 U.S.C. 1367, the Court declines to exercise its supplemental jurisdiction over this claim. The Court has been unable to find a civil cause of action arising under Alabama law for the unauthorized practice of medicine. Alabama law, however, does provide that the practice of medicine without a license is a misdemeanor punishable by a fine, not less than $ 100 and not greater that $ 1000, and by imprisonment in the county jail, not less than one month and not greater than six months. *Ala. Code* 34-24-51 (1975). The power to institute a proceeding for the

unauthorized practice of medicine is vested in the State or the State Board of Medical Examiners. *Ala. Code* 34-24-52 (1975). Therefore, Plaintiff does not have standing to bring this state-law claim. Accordingly, the Court declines to exercise its supplemental jurisdiction over this state-law claim based on Plaintiff's lack of standing and on the recommended dismissal of all of Plaintiff's federal claims in this action.

G. *Complaint's Claim for Denial of Access to Specialists, Etc.*

Plaintiff titled this claim in his complaint as "denial of access to specialists," which he described as being denied access to specialists, Defendants only treating the symptoms and not the cause, his serious medical problems being ignored by doctors, and the medical care that he is receiving being frequently inadequate and inappropriate. Considering these allegations, it appears to the Court that Plaintiff is challenging the adequacy of the medical treatment that he is receiving for his hernias. The Court, however, realizes that there are different bases to this claim.

Nonetheless, Plaintiff has not connected a Defendant to this claim. The only physician who is presently a Defendant in this action is Defendant Dr. Thomas. Plaintiff has failed to causally connect Defendant Dr. Thomas to this claim either in his allegations (Doc. 1) or, after a review of the Court's file, by competent evidence besides that considered in the Court's discussion of the grievance filed against Defendant Dr. Thomas for the adequate and appropriate medical treatment of Plaintiff.13 In order to state a claim under 42 U.S.C. 1983, there must be affirmative proof of this causal connection. *LaMarca,* 995 F.2d at 1538-39. Failing to causally connect a Defendant to this claim has caused Plaintiff not to establish an essential element of a 1983 action. Summary judgment therefore is due to be accorded to Defendants on this claim. *Celotex,* 477 U.S. at 323, 106 S. Ct. at 2552.

H. *Amendment to Complaint (Doc. 20).*

Plaintiff's major claim, as far as the Court is concerned, is over the treatment of Plaintiff's hernias. A claim concerning this condition is not described in Plaintiff's complaint (Doc. 1). It is only in Plaintiff's Motion for Disregard of Prison Civil Rights and to Impose Fine (Doc. 20) and in the portion of that document titled "Negligence" that Plaintiff refers to a "very large tumor about the size of a softball, on his stomack, and growing.' And in very serious pain, duress.'[sic]" Plaintiff states that it would cost much money to have it removed so Defendants are planning to wait a few months and let Plaintiff die from it in order not to spend any money on it.14

This claim is treated by the Court as an amendment to the complaint because medical Defendants, in particular a physician, were ordered to respond. In response to the Court's order (Doc. 24), Dr. Wilson, a non-defendant, who presently is Plaintiff's treating physician, submitted an affidavit, which was attached to the Supplementary Report of Defendants (Doc. 28). Dr. George Lyrene, a non-defendant, in response to another Court order (Doc. 30), also submitted an affidavit which is attached to the Second Supplementary Report of Defendants (Doc. 34). Dr. Wilson stated that neither he or the nurses have told Plaintiff that he has tumor growing in his stomach and he does not know why Plaintiff stated that he has a tumor, but Plaintiff has a completely relaxed abdominal hernia, and not a tumor (Doc. 24). These physicians' affidavits were described in more detail earlier in the Report and Recommendation.

The Court is construing this claim to be connected to Plaintiff's hernias after considering the responses from physicians and the absence of evidence by Plaintiff concerning a tumor. However, in the Plaintiff's motion (Doc. 20), there is no specific reference to a particular Defendant.

Regardless of the responses from these physicians, Plaintiff has not causally connected a Defendant to this claim. Plaintiff, therefore, has failed to establish the required causal connection for stating claim under 42 U.S.C. 1983, an essential element to a 1983 cause of action. *LaMarca,* 995 F.2d at 1538-39. Defendants consequently are due to be granted summary judgment on this claim. *Celotex,* 477 U.S. at 323, 106 S. Ct. at 2552.

IV. *CONCLUSION:*

Based upon the foregoing reasons, it is recommended that Defendants' Motions for Summary Judgment be granted and that the Court's supplemental jurisdiction be declined over Plaintiff's claim for the unauthorized practice of medicine.

The attached sheet contains important information regarding objections to the Report and Recommendation.

DONE this 8th of June, 1995.

BERT W. MILLING, JR.

UNITED STATES MAGISTRATE JUDGE

*MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT*

1. *Objection.* Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. See 28 U.S.C. 636 (b)(1)(C); *Lewis v. Smith,* 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B, 1982) (en banc). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in Local Rule 26(4)(b), which provides that:

Any party may object to a magistrate judge's proposed findings, recommendations or report made under 28 U.S.C. 636 (b)(1)(B) within ten (10) days after being served with a copy thereof. **The appellant shall file with the Clerk, and *serve on the magistrate judge* and all parties,** written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his discretion or where required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

A Magistrate Judge's recommendation cannot be appealed to a Court of Appeals; only the District Judge's order or judgment can be appealed.

2. *Transcript (applicable Where Proceedings Tape Recorded).* Pursuant to 28 U.S.C. 1915 and FED.R.CIV.P. 72(b) , the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

Bert W. Milling, Jr.


UNITED STATES MAGISTRATE JUDGE



Footnotes



Footnotes


1   Plaintiff refers to his Defendant as Quest Care, Inc.


2   Defendant Dr. Nelson has not been able to be served due to Plaintiff's inability to provide the Court with this Defendant's address. *See* Docs. 30, 37. The claims against Defendant Dr. Nelson are being dismissed without prejudice by separate Report and Recommendation.


3   The Court is not addressing qualified immunity because Plaintiff requested forms of injunctive relief to which qualified immunity does not extend. *Wood v. Strickland,* 420 U.S. 308, 314 n. 6, 95 S. Ct. 992, 997 n. 6, 43 L. Ed. 2d 214 (1974) (qualified immunity is a bar to damages, and not to injunctive relief).


4   The Eleventh Circuit in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) *(en banc),* adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.


5   Records dated January 31, 1986, from Plaintiff's application for Social Security disability, which are contained in the medical records, indicate that most of the doctors at that time did not recommend surgery due to the great risk associated with it and the great likelihood that it would not be successful.

6   The Court's description of these entries does not reflect all the matters contained in the entries in the medical records, but the more significant matters contained in an entry and, of course, the legible information.

7   In Plaintiff's medical records it appears that Plaintiff is allergic to Motrin, ASA, and Darvocet.

8   In *Hamm,* the plaintiff complained that "medication was prescribed for him without proper examination, authorization, and review by a physician." *Id.* The medical records reflected that he visited the infirmary frequently, was treated by the nurse there, examined by a doctor occasionally, and was prescribed medication by the staff for a wide variety of complaints. The Court noted that Plaintiff presented no expert or evidence that demonstrated that "the supervision and authorization under which he was prescribed medication failed to meet appropriate professional standards." *Id.* The Court observed that Plaintiff received significant medical care while he was incarcerated at the jail and that his preference for different modes of treatment did not amount to a deliberate indifference. *Id.*

9   This information is also contained in the response to Plaintiff's grievance and in Charlene Gandy's affidavit (Doc. 23).

10   Most of the doctor's entry for that visit is illegible.

11   The *Greason* court analogized a medical supervisor's liability to the liability of a municipality for its "deficient training of city officials if the city's policymakers were deliberately indifferent to infringements of constitutional rights that are caused by lack of training and supervision. *City of Canton [v. Harris,* U.S. ], 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). " *Id.* A three-part test was developed by the *Greason* court to analyze a supervisor's liability: "(1) whether, in failing adequately to train and supervise subordinates, he was deliberately indifferent to an inmate's . . . health care needs; (footnote omitted) (2) whether a reasonable person in the supervisor's position would know that his failure to train and supervise reflected deliberate indifference; and (3) whether his conduct was causally related to the constitutional infringement by his subordinate." 891 F.2d at 836-37. The Court has employed the rationale from *Greason* in its analysis of Plaintiff's claim and found that Plaintiff has not produced evidence of what were the failures in training and supervising, what inadequate care resulted from the failure to train and supervise, and what constitutional violation was caused by the failure to train and to supervise.

12    Section 1367(c) provides:

The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if --

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

13    The Court previously addressed a claim contained in a grievance against Defendant Dr. Thomas for the adequacy and appropriateness of his treatment of Plaintiff, finding that summary judgment was due to be granted for Defendant Dr. Thomas due to Plaintiff's failure to produce evidence from an expert demonstrating that Defendant Dr. Thomas's treatment amounted to a deliberate indifference. Furthermore, based on the evidence in the Court's file (affidavits from Defendant Dr. Thomas and Dr. Lyrene), Defendant Dr. Thomas was without power to make a referral to a specialist. The claim now being presented by Plaintiff was essentially handled in the Court's discussion of the grievance against Defendant Dr. Thomas.

14    This pleading was filed on July 13, 1994.