IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2007 AUG 28  A 9: 21

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

_____

MARCELLUS BREACH, # 160710,          )

    Plaintiff,                               )

Vs.                                  )     Case No: 2 06-CV-133-MEF

PRISON HEALTH SERVICES, INC., et al.,  )

    Defendants.                          )

## RENEWED – MOTION IN REQUEST FOR INDEPENDENT PHYSICAL EXAMINATION

**COMES NOW**, Plaintiff *Marcellus Breach* (hereinafter "Breach") in proper person "Pro Se" moves the Court for an order upon the Defendants to transport Breach to the designated qualified medical examiner for an independent physical examination for good cause pursuant to *Rule 35(a),* Fed.R.civ.P.: Breach would show bona fide as follows:

### STATEMENT OF THE FACTS

1)    On 5/22/07, *"Exhibit A",* Breach submitted a "PHS sick call" complaining about unusual pain due to his enlarged hernia stating as follows:

> **"This morning I experienced <u>unusual</u> pain with my hernia. It's hard to describe but I was having <u>problems walking</u>, I kept pressure on it, but eveytime I coughed, it hurt. Ibuprofen – no good for the pain."**

2)     [1]As of *August 22, 2007* and the filing of this lawsuit, Breach's hernia has become progressively worse. *"Exhibit B"*, on 12/27/06, Defendant Nurse Practitioner B. Adams noted in the Medical Records: "Left inguinal area noted with small inguinal hernia; easily reducible; non strangulated; not incarcerated; size 3x5 cm. (unchanged from exam description on 5/5/06) . . . 'no need for surgical referral @ present."

3)     On 4/26/07, *"Exhibit C",* Breach submitted another "PHS sick call" complaining as follows:

> **"I am having a burning pain due to my hernia.  It is causing me problems coughing, sneezing, bowel movement. On 3/21/06, Dr. Tassin said "Needs Repair".  I need surgery, aggravated hernia."**

4)     *"Exhibit C"*, reflects Dr. William Hobbs noting that Breach suffers from: "Large, easy to reduce 'Direct inguinal hernia on left.'"[2]

5)     *"Exhibit D",* on 5/05/05 Dr. Bossermer, M.D., noted: "LBP, hernia pain, 3x5 cm. Inguinal hernia on left not into scrotum."

6)     On 3/21/06, *Exhibit E"*, Dr. John A. Tassin, M.D., noted: "Left Inguinal hernia, "Needs Repair"? Then on 7/18/06 Dr. Tassin noted: "Left Inguinal Hernia not incarcerated, *"Elective Procedure"*. ["Elective" means surgery optional and will be necessary]

---

[1]  Breach submitted several sick calls complaining about burning pain continuing, hernia progressing. See, [DOC. 82, 118, 121]
[2]  From 12/27/06 until April 30, 2007, Dr. Hobbs' stating **"Large** Direct inguinal hernia" demonstrates Breach's hernia is progressing.

7)    On 7/12/06, medical records reflect Diana Lott, Nurse Administrator noted: "Received a call from Brandon [Kindard ADOC] from Alabama re-Inguinal Hernia – stated: 'Hernia repairs are not done there –unless incarcerated or into scrotum." "**Exhibit E 2 of 2** "

8)    Breach's Hernia is the size of a "Baseball" and/or "Soft Ball", which is fall larger than the 3 x 5 cm., description on 12/27/06 and somewhat corresponds with Dr. Hobbs' description as being "Large", but, does not correspond with Hobbs diagnoses as a "Direct inguinal hernia, because, a Direct inguinal hernia is a less common hernia. [See, *Affidavit Dr. Yerbuandi, M.D.*] Breach argues that he has an "Indirect inguinal hernia" which is the more common hernia. [See, *Affidavit, Marcellus Breach*]

9)    Hernia surgery requires a certain degree of a specialized training and knowledge that puts an understanding of acceptable standards of care beyond the common knowledge of the jury.  Lawyers do not have the background and knowledge, without expert testimony to understand whether or not surgery is/was in fact necessary, and the extent of Breach's injury, proximate cause of this injury.

10)    Addressing "Surgery", the Alabama Supreme Court defines "Inguinal Hernia" – a condition which, to be corrected, would require surgery. *Proctor Agency, Inc., v. Anderson,* 358 So.2d @ 165 (Ala. 1978)

**POINT "A"**

**"WHETHER SURGERY IS NECESSARY IS OBVIOUSLY "IN CONTROVERSY"**
**SEARCHING FOR THE TRUTH**

*Rule 35(a),* Fed.R.Civ.P., has been described as a "powerful instrument for ascertaining the truth." *8 C. Wright & A. Miller, Federal Practice and Procedure § 2231 @ 665-666 (1970).* In this case, medical experts have held: "A hernia will not heal on its own, Surgery is needed to repair the defect in the abdominal wall. If not treated, a hernia can get larger." See, **Hernia Surgery, Understanding Hernias and How They're Repaired.**" p.# 3, [Exhibits @ *Application For Preliminary Injunction,* [DOC. # 82, 118, 121]. **"The American Family Physician, Surgical Options in the Management of Groin Hernias,** [DOC. # 82] stated: "Surgical repair is usually advised because of the danger of incarceration and strangulation."

**"Hernia Terminology. States**: "The <u>ONLY</u> way to stop a hernia getting worse is to repair the defect . . .The <u>ONLY</u> remedy for the condition is to repair the hernia surgically." [DOC. # 82 exhibits]

It appears especially important in the search for truth that a surgeon consultation occurs before any surgery, which Breach might elect in the future. Dr. Tassin stated: *"Elective Procedure",* **"Exhibit E",** however, independent physically examination is necessary because several conflicting issues are at stake, and Breach's physical condition is placed in controversy because: 1) Breach's hernia gets "trapped" and is not easily reducible; and,

a.   Breach's Hernia is/has worsen, and is progressively worsening: [See, *Affidavit Marcellus Breach*] <u>Exhibit #1</u>

b.   Whether Breach suffers from either a Direct or Indirect inguinal hernia is in conflict. [See, *Affidavit, Dr. Yerubandi, M.D., and JoAnn Breach, RN. M.S.N.].* <u>Exhibit, 2, 3</u>

c.   Whether Breach's Hernia is <u>**"trapped"**</u> the second phrase of a Hernia when phrase # 3 is a "<u>Strangulated</u>" Hernia which is a life or death emergency situation.  [See *Affidavit, Marcellus Breach] [See also, Hernia Surgery, DOC. 121 page. # 7]* <u>Exhibit, 1</u>

d.   Whether "<u>Surgery</u>" is necessary is obviously "in controversy". See, ***Marritt v. Stolt Offshore, Inc.,*** 2004 U.S. Dist. LEXIS 1498 (E.D. Tex. 2004)

## POINT " B"
## RULE 35(a), Fed.R.Civ.P.

Breach maintains that a doctor who conducts a Rule 35 exam can be a consultant or an expert retained by a party.  *Rule 26*, Fed.R.Civ.P., contemplates that a party's non-testify consultant may conduct a *Rule 35(a)* exam.  *Rules 26(a)(2)(b)(4).*  In addition, a party's retained expert can conduct a *Rule 35* "independent medical examination."

As a practical matter *Rule 35* is the only means by which Breach's rebuttal expert can examine Breach. See, ***Hough v. United States,*** 2006 U.S. Dist. LEXIS 59790 (M.D. Ga. 2006).  Thus, understandably, Breach's defense and prosecution at trial and summary judgment may be severely prejudiced if he is not permitted to obtain the testimony of an expert who has personally examined plaintiff. Id.

Although Breach has obtained information about his injury, the "<u>extent</u>" of his injury is in controversy.  Medical Records and Affidavits from Lyrene, Robbins, Hobbs,

and Hobbs is a treating physician who is a Defendant held to "deliberate indifference" has diagnosed Breach with a "Large, Direct inguinal hernia" which is medically known to be an uncommon hernia.

Courts have held: "Typically, the fact that the defendant has access to the plaintiff's medical records and an opportunity to depose his or her treating physician does not preclude the court from allowing a [plaintiff] to conduct an independent Medical examination." *Whitley v. Comcast of Ga. Inc.,* 2006 U.S. Dist. LEXIS 89691 (M.D. Ga. 2006); *O'Sullivan* 229 F.R.D. @ 186; *Bennett,* 841 F. Supp @ 1137.   Courts have reasoned that IME's are often necessary, even when the plaintiff's medical records are available, because "there are few, if any, acceptable substitutes for a personal physical examination for form a meaning full opinion. *Ali v. Wang Lab,* 162 F.R.D. 165, 168 (M.D. Fla. 1995) And, it is difficult for the expert's opinion to carry substantial weight if it is based on second-hand information, as opposed to a personal examination. *Bennett,* 841 F. Supp @ 1157.

*Rule 35(a),* Fed.R.Civ.P., is the only means by which Breach's rebuttal expert can examine the plaintiff – case law has consistently held that a party's retained expert can conduct a *Rule 35* "independent medical examination."

Dr. Lyrene, Dr. Robbins, M.D's have never once, examined Breach. They have no ideal as to the extent of Breach's injury, nor do they actually know of his painful symptoms, his pain, the enlargement of his hernia, nor has any doctor seen how Breach's

hernia gets 'trapped' and is not easily reducible is in controversy:  neither doctor has actually conducted any medical tests for a determination whether Breach's hernia is in danger of incarceration, because, his hernia is unpredictable, and gets <u>trapped at times</u>, and is not easily reducible. Thus, they have signed several Affidavits based on their personal knowledge that surgery for Breach is unnecessary. *Exhibits,* <u>1, 4, 5, 6,</u>  . [See also, *Affidavit Marcellus Breach*]

However, Dr. William Hobbs, M.D., <u>is not a surgeon</u>; he has diagnosed Breach with a <u>less common hernia</u> being a Direct inguinal hernia, which is in controversy. Dr. Bossermer, Dr. Tassin, both verbally told Breach that he suffers from an <u>"Indirect inguinal hernia"</u>. Dr. Bossermer, Dr. Tassin, Dr. Lyrene, Dr. Robbins, have all held Breach has a Inguinal Hernia without written documentation, identification as to what kind of inguinal hernia and the extent that his hernia is in now, trapped at times.

Breach has a "Indirect Large ("Soft Ball", "Semi-Trapped") not easily reducible inguinal hernia, because it is closer to the scrotum.  A Direct inguinal hernia will sit high and an Indirect inguinal hernia as Breach's sits low.  Breach's injury, either Direct or Indirect inguinal hernia is in controversy. [See, *Affidavit Dr. Yerubandi, M.D., Nurse JoAnn Breach, RN. M.S.N.]* Also, see page. 6 *Hernia Surgery* [DOC. 121]

An "<u>Indirect inguinal hernia</u> occurs in the groin <u>at the opening</u> of the inguinal canal. (See page 10 *Hernia Surgery*).  A <u>Direct inguinal hernia</u>; occur <u>in the groin near</u> the opening for the inguinal canal. (See page. 11 of *Hernia Surgery*).

Therefore, Breach has an Indirect inguinal hernia due to the fact his hernia is closer to the scrotum and his intestines drops into his testicles. Breach's hernia "comes out" gets "trapped" and is not easily reducible; and, has descended onto the testicle, (come out fall down) and it requires constant pressure to prevent protrusion and pain. [See, *Marcellus Breach Affidavit*]  Breach's hernia, i.e., Indirect inguinal hernia, protrudes directly through a defect in the inguinal canal floor, rather than indirectly following the potential space of the processus vaginalis and the path of the spermatic cord.  A Direct inguinal hernia as Hobbs states is medically known to be less common and not generally congenital.

The most common hernia in both sexes is the indirect hernia. See, p. 2 of 17 *"American Family Physician and Hernia Surgery"* [DOC. 82, 118, 121] An Indirect hernia passes lateralto the inferior epigastric vessels and thus is outside of Hesselbach's triangle (Figure 2) while a direct hernia is medial to the episgastic vessels and therefore without the confines of this space. [(Figure 3) page 2 & 4 of 17, *American Family Physician".*]

## RULE 35
## LEGAL STANDARDS OF REVIEW

Rule 35, Fed.R.Civ.P., permits the physical examination of a party when the party places his physical condition "in controversy" and upon "good cause shown".  In the leading case on Rule 35, the Supreme Court emphasized that the "in controversy" and "good cause" requirements are not simple formalities. See, *Schlagenhauf v. Holder*, 379

8

U.S. 104, 118, 85 S.Ct. 234, 13 L.Ed. 2d 152 (1964).   Rather, they require an affirmative

showing by the movant that the "physical condition is 'really and genuinely' in

controversy and that good cause exists for each particular examination. *Ali v. Wang, Lab,*

162 F.R.D. 165, 167 (M.D. Fla. 1995) The Court can fulfill its function under Rule 35(a).

*Schlagenhauf v. Holder,* 379 U.S. @ 119.

## ISSUE NO. 1
### "WHETHER SURGERY IS NECESSARY IS OBVIOUSLY 'IN CONTROVERSY'"

Breach's physical condition is being placed in controversy.   Whether surgery is

necessary is obviously "in controversy". See, *Merritt v. Stolt Offshore, Inc.,* 2004 U.S.

Dist. 1498 (E.D. Tex. 2004).

Breach suffers from non-easily reducible <u>'semi-trapped'</u> hernia that presents a

physical controversy in this case. Breach as a "Large inguinal hernia".  The actual type of

hernia has yet to established due to several doctors stating "inguinal hernia" and Dr.

Hobbs stating "Direct inguinal hernia" which is uncommon.

On <u>3/21/06</u> Dr. John A. Tassin, M.D., verbally explained to Breach while

conducting a physical examination on Breach that he suffered from a "**<u>Indirect</u>** inguinal

<u>hernia</u>" and needed surgery. [*Affidavit, Marcellus Breach*] However, Dr. Hobbs has

stated on *<u>April 30, 2007</u>* Breach has a "<u>Large **Direct** inguinal hernia</u>". "Exhibit **<u>C, 3</u>** " Thus,

Breach has the warning signs and symptoms that warrant surgery and an independent

verification of the extent of Breach's injury bring the truth to the light.  Breach' signs and

symptoms conspicuously demonstrate that his hernia has and is progressively enlarging and has enlarged -- caused a more sever pain and suffering due to the defendants refusal to provide the only necessary medical treatment, that is surgery.

There are no written opinions from the defendants' doctors addressing Breach's signs and symptoms nor does Dr. Hobbs diagnoses attest as to size, pain and the entrapment of Breach's hernia; the actual physical condition is in conflict as follows:

a. **Feelings of weakness, pressure, burning pain in lower abdomen groin area and scrotum area; and,**

b. **A big, large bulge or lump in the groin area and is not easily reducible;**

c. **Pain when coughing, sneezing, bowel movements;**

d. **Having to lift leg, push down on hernia, and bend forward when coughing, sneezing and taking bowel movements,**

e. **Radiated pain to his hip region, back, and leg down toward the genitalia region,**

f. **Something has ruptured,**

g. **Breach's hernia has descended onto the testicles, and requires constant pressure to prevent protrusion and pain,**

h. **Breach's hernia is the size of a baseball and will get as large as softball, larger than 3 x 5 cm.**

Plaintiff also has asserted that his injuries caused permanent restrictions, to his lifting, range of motion and ability to work, difficulty standing, walking, bowel movements, urinating, coughing, sneezing, exercising.

Breach asserts that he anticipates his condition will continue to deteriorate and will require immediate surgery when his hernia becomes strangulated, or incarcerated which will cause tissue death, gangrene, and never entrapment -- surgery will be required at that stage in order to save Breach's life. These signs and symptoms, Breach did not experience before his re-incarceration, however, his health has decorated since the untreated hernia has become worse, and his condition has deteriorated more. Therefore, Breach places his physical condition in controversy because since 2/05 in custody of the Defendants, his physical condition has worsened.

## ARGUMENT

When addressing <u>Surgery</u> as necessary and "in controversy" it is essential to consult specialists who regularly see all these kinds of cases. A General Surgeon consultative in conjunction with examination by a surgeon is not only common but also medically prudent. It appears especially important in the search for the truth that should be occurring in this case that a general surgeon consultation occurs before any surgical treatment is elected.

Reiterated, Hernia surgery requires a certain degree of specialized training and knowledge that puts an understanding of acceptable standard of care beyond the common knowledge of the jury. Medically it is known that "Where a lump is present, however, early surgery is necessary because it is possible that the groin-area muscles have torn. This tear must be repaired. See, *Hernia Terminology,* exhibits, [**DOC. 82, 118**]

Exhibit **#2**, *Dr. Yerubandi, M.D. FACS, FRCSC*, has supplied an additional Affidavit concerning Breach's physical condition. Dr. Yerubandi, M.D. is a specialist in hernia repair and has been practicing medicine for <u>27 years</u>. Dr. Yerubandi states:

> " As discussed in my two (2) previous affidavits (see attached), it is my professional opinion as a surgeon in hernia repair that Mr. Breach Inguinal Hernia is the most common condition for which under the standard of care for someone suffering from <u>burning pain, pain</u> when <u>coughing, sneezing, and having bowel movements</u> and, as complained by Mr. Breach having to lift his left leg up and apply pressure on his hernia: primary care physicians refer patients for surgical management."

Dr. Yerubandi, further states:

> "On <u>April 30, 2007</u>, after complaints about <u>burning pain</u> from Mr. Breach which is a symptom that Mr. Breach's hernia <u>is progressing and probably enlarging leading to more sever pain and discomfort</u>. Dr. Hobbs stated Mr. Breach has a "Large **Direct** Hernia". That statement <u>alone is stating medically that there is the probability</u> Mr. Breach's hernia <u>has enlarged and leading into a dangerous situation of strangulation or incarceration.</u>

> It is a breach in accepted standards of care for Dr. Hobbs, to fail to refer Mr. breach to a specialist in hernia repair who regularly see all these kinds of cases because of the danger of incarceration and strangulation of Mr. Breach's hernia which will lead to serious medical complication such as tissue death, gangrene – if Mr. Breach is not timely treated knowing that medically you cannot treat a hernia, surgery is the only cure to alleviate Mr. Breach's symptoms of pain and discomfort. Dr. Hobbs' approach is contrary to accepted medical practices as to amount to deliberate indifference and is also grossly incompetent, inadequate, and excessive as to shock the conscience or to be intolerable to humane decency…

> 'I recommend as a surgeon that Mr. Breach receive an "Independent Physical Examination" for a proper examination to determine the extent and cause of this injury and to differentiate the

12

common indirect hernia from the less common direct defect.  Even skilled examiners may be incorrect in up to 30 percent of cases.   However, <u>indirect and direct hernias need to be differentiated during surgery</u>, because the approach to repair depends on the defect type. A hernia that is not repaired appropriately is more likely to recur.  Dr. Hobbs may be <u>wrong</u> stating, "**Mr. Breach did not have a left Indirect or Femoral Hernia.  He did have a 'large, easy to reduce direct inguinal hernia on the left.'"**

'Because a <u>direct inguinal hernia is less common</u> and Dr. Hobbs' approach medically, it <u>is often difficult to differentiate the common indirect hernia</u> as Dr. John A. Tossing and Dr. Robbins even Dr. Bossermer did not identify what type of hernia Mr. breach has on 5/05/05 (see attached).   Physical examination is necessary there appears to be a mistake on the diagnoses, which a proper identification of Mr. Breach's hernia is <u>absolutely necessary</u>.

Dr. Hobbs in which records reflect shows a clear breach in accepted standards of care through his failure to provide necessary treatment, which is surgery.  The physical examination will determine medically just what type of hernia Mr. Breach has, and because more early inguinal hernias can be diagnosed by careful physical examination.  Except for <u>pain or a dull dragging sensation in the groin</u>, the common reducible inguinal hernia will lead into a more sever non-reducible hernia.  The burning pain experienced by Mr. Breach is a warning, wherein a physical examination <u>will determine the cause and extent of his injury</u> – how progressive his hernia is as it is enlarging leading into incarceration, and strangulation, which is medically unacceptable, and a breach in accepted standards of care.  Mr. Breach's hernia <u>can and will rupture at any time.</u> Surgery is advised.'

'The use of Ultrasonography is useful to differentiate Mr. Breach's hernia from other causes of groin swelling.'"

Dr. Yerubandi stated that "Because a <u>Direct inguinal hernia is less common</u> and Dr. Hobbs' approach medically, it is often difficult to differentiate the common Indirect hernia from the Direct inguinal hernia is "in controversy".

13

Breach's physical condition is unquestionably in controversy in this case. Breach's injury is malignant because it comes out and then it is 'trapped' and is dangerous to his health. Dr. Robbins, who is not an expert in hernia repairs, and is certified in "internal medicine" employed with PHS, a for "profit" organization and a prison doctor has stated an opinion that is totally contrary to public information concerning hernias, and Dr. Yerubandi that there is no need to surgically referral as being 'noted' by a nurse practitioner who is unqualified to make such a medical judgment due to a lack of qualifications. Only a doctor can state such a medical judgment concerning surgery. Dr. Robbins stated: "… *In my opinion, the inmate's hernia does not require surgical intervention and I believe surgery is not medically necessary. The type [what type] hernia which Mr. breach has should not cause the patient any pain nor is it a condition that a reasonable person cannot live with under the conditions and restriction governing Mr. Breach. "See, Exhibit 4, 5.*

Exhibit 7 , " www. **Hernia Solutions. com**, clearly states to the public concerning Hernias:     **"Each hernia is different, and the symptoms of a hernia can appear gradually or suddenly. Different people feel varying degrees of pain…"**

Breach's hernia is not like another persons hernia. Breach's hernia is totally different, and the degree of pain suffered is totally different. Each case medically is different and must be evaluated on a case-by-case base. Dr. Robbins has never once examined Breach and has absolutely no idea to the extent, pain, symptoms, and size of Breach's hernia.

Breach's physical condition is unquestionably in controversy.  Breach's Complaint, Amended Complaint, Supplemental Complaint have alleged that he suffers injuries from a large hernia at the size of a 'softball', and has pain when coughing, sneezing, bowel movements and long standing.  *See, 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2234.1* (noting that in come situations, the pleadings alone will be sufficient to place a plaintiff's physical condition in controversy)(citing *Schlagenhaul v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed. 152 (1960).

Dr. George Lyrene submitted an Affidavit on <u>February 2, 2007</u> stating:

"This is a hernia that was present by intake documentation and <u>would </u>be amendable to surgery <u>which was</u> clearly elective at the time of his admission and <u>would clearly not be necessary now.</u>"

On *<u>August 3, 2007</u>* Dr. Lyrene states by Affidavit:

"I am generally aware of Marcellus Breach and <u>can only say</u> that not <u>everyone</u> who has a hernia requires surgery and would leave the decision about individual patients to the primary care providers contracted to carry out that role." [See, ADOC Special Report]

Dr. George Lyrene speaks in <u>past tense</u>.  His words: "<u>would</u>," "<u>which was,</u>" conflicts medically because it is known that a hernia <u>will not</u> heal itself and will only get worse.  Dr. Lyrene has <u>never once examined</u> Breach and <u>has no idea</u> as to the extent of his injuries nor has Dr. Lyrene explained the symptoms felt by Breach.

15

[3]The sole conflict is Surgery.  Defendants have decided that they will wait until a life or death situation arises, when Breach's hernia is strangulated, incarcerated or into the scrotum is under the standard of care.  Breach's hernia gets 'trapped', which is too close to an emergency life or death situation.

Breach's physical" condition is unquestionably in controversy in this case. Breach's hernia at times is <u>"trapped"</u> and will not go back in place.  Defendants have stated absolutely noting regarding the "<u>trapped</u>" hernia he suffers.

In addition, this case, Breach alleges that his injuries have permanently precluded him from performing physical labor and have impaired his ability to engage in certain activities, i.e., exercising, lifting, waling, bowel movements, coughing, sneezing, urinating, back pain, etc.  There is absolutely no opinion from any doctor as to the extent of Breach's injury; however, an expert is necessary to conduct a physical examination of Breach would provide an independent verification of the extent of Breach's injuries.

### ISSUE NO. 2
### GOOD CAUSE REQUIREMENT

Good cause for ordering a physical examination exists when the examination would allow the plaintiff's expert an opportunity to determine the <u>cause and extent of the</u>

---

[3] Breach has a "Trapped" Hernia is leading to a life or death situation.  Breach is not being seen by medical, and has to work the hernia in.  No doctor has seen this "Trapped" hernia, when it comes out and gets trapped because the two (2) minute examination conducted by Hobbs is not efficient enough to state an opinion as to the extent and enlargement of Breach's hernia.  Certain medical test will pinpoint to extent of Breach's injury.

plaintiff's alleged physical injuries. See, *O'Sullivan v. Rivera*, 229 F.R.D. 184, 186 (D.N.M. 2004); *Whitley v. Comcast of Ga.*, 2006 U.S. Dist. LEXIS 89691 (M.D. Ga. 2006)

"Whether surgery is necessary is obviously "in controversy". See, *Merritt v. Stolt Offshore*, Inc., 2004 U.S. Dist. LEXIS 1498 (E.D. Tex. 2004) In this case, Breach has alleged that his injuries have permanently precluded him form performing physical labor, his hernia gets 'trapped' and is not easily reducible at times; and, has imparted his ability to engage in certain activities. There are no opinions for any doctor as to the extent of Breach's injury; however, because Breach has a 'trapped' hernia at times, and is not easily reducible, comes out and will not go back in proper place is "in controversy". An expert is needed to conduct a physical examination of plaintiff and provide an independent verification of the extent of plaintiff's injuries. Thus, good cause exists for allowing Breach's medical examiner to conduct a physical examination on Breach.

Secondly, good cause exists for physical examination. The expert must conduct such an examination to form a meaningful opinion. See, *Spencer ex, rel., Spencer v. Heckler*, 765 F.2d 1094 (11th Cir. 1985) quoting on Eight Circuit case noting that evaluation in absentia was 'medical sophistry at its best': Additionally, a physician is able to provide a retrospective opinion of Breach's condition [trapped hernia] even though he did not examine plaintiff until after the relevant date. *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983). Most significant, however, is the fact Breach's defense and prosecution at trial and summary judgment stage will be several prejudiced if he cannot obtain for such

purposes, trial the testimony of an expert who has examined Breach for rebuttal purposes. When it comes to the credibility of a medical expert, there are few, if any, acceptable substitutes for a personal physical examination. Under the facts presented herein, Dr. Hobbs has diagnosed Breach was a Direct inguinal hernia which is less common, and is not consistent with Dr. Tassin who verbally told Breach you have a Indirect inguinal hernia.

Secondly, it is too easy for defendants to use "easily reducible" when the facts are Breach's hernia is not at times easily reducible, and gets "trapped".

Thirdly, Exhibit _3_, *Nurse JoAnn Breach RN. MSN.*, states:

"A physical conflict in this case is based on the symptoms complained by Mr. Breach. The complaint of "burning pain" is a serious symptom that a surgeon is necessary for an examination as to the extent of Mr. breach's hernia. Dr. Hobbs stated "Large Direct Hernia" which a direct hernia is less common. The burning pain means that the muscles are tearing resulting to an enlargement of the hernia."

**Nurse, JoAnn Breach**, RN. MSN, further states:

"It is my professional opinion, that B. Adams has breached the standard of care pertaining to Mr. Breach's hernia because not every hernia is the same; the symptoms are different and may start out as mild but will become progressively worse causing increasing discomfort. Each hernia is different and the symptoms of a hernia appear gradually or suddenly. Different people feel varying degrees of pain. Some people feel nothing except the presence of a lump, while others, as Mr. breach feel that something has ruptured or given way. Surgery is the only treatment.

Both Dr. Yerbundai, and Nurse JoAnn Breach listed several medical test that can be performed if necessary by a specialist: Ultrasound examination is used to differentiate

an incarcerated hernia from a pathologic lymph node or other cause of a firm, palpable mass; Computed Tomographic Scanning will be helpful to detect an obturator hernia; which also can be present in Breach's case.

Good cause is Hernias are unpredictable; they can rupture at any time. Because Breach's hernia gets "trapped" it is most important to have independent examination to preserve this status of his hernia before it becomes incarcerated or strangulated as evidence for a jury as testimony to the extent of proximate cause of Breach's injury and a more advanced injury when his hernia gets incarcerated or strangulated.

Understandably, Breach's defense and prosecution at trial and on summary judgment may be severely prejudiced if he is not permitted to obtain the testimony of an expert who has personally examined Breach. Defendants will offer the testimony of their doctors who's actions are challenged, and therefore, an expert is absolutely necessary in this case and to be allowed to physically examine the injury that is in question, and the controversy that a jury will determine is whether surgery was/is necessary--- "in controversy". Besides, there is absolutely no prejudice to the Defendants that Breach seeks the truth in this case, and only can an independent physical examination uncover the truth under the standard of care. The Medical Examiner is conveniently located just 30 minutes away from Breach's location and incarceration at Limestone C.F., and the examiner is in located in Huntsville, Alabama.

## SCOPE AND LOCATION OF THE PHYSICAL EXAMINATION

As best to adequately describe the manner and scope of the proposed physical examination:  The Court's order must specify these conditions. See, *Schlagenhauf,* 379 U.S. @ 121 n. 6.       Breach request a 'routine Hernia examination' to be sufficiently descriptive to delimit the scope of the intended examination. See also, *Bennet v. White Lab,* 841 F. Supp @ 1159 (M.D. Fla. 1993)

Breach's request unto the court is that the Court's Order set certain conditions, which include:

a.      Defendants shall within 20-Days of this Order, submit the Plaintiff to a physical examination to be conducted by **Dr. Satyavardhana Rao Yerubandi, M.D., FACS, FRCSC**, at his place of office @ 185 Whitesport Drive, Suite # 5, Huntsville, Alabama 35801.  256-880-3500

b.      The examination will be conducted at the respective business office of said medical professional at normal business hours.

c.      The examination be conducted will focus upon the injuries alleged by Plaintiff in his Complaint, Amended Complaint, Supplemental Complaint as to the existence and severity of the injury sustained and Plaintiff's physical capabilities.  Defendants shall provide to all medical personal in this examination with the appropriate portions of plaintiff's medical records of all prior physical examination at issue not limited to: Nurse Practitioners, Doctors and Medical Records from South Louisiana Corrections Center.   The examination will include the routine procedures for such an examination, and any further testing deemed necessary by Dr. Yerubandi, to the bases and conclusion of his examination and report(s).

d.   A copy of any resulting report will be produced to Plaintiff as Pro Se counsel, who will forward a true copy of such reports to the Defendants Counsel of record, and to the Court.

**WHEREFORE, *premises considered*,** plaintiff request that this Court issue an order granting said request, and that the Medical Defendants and Department of Corrections Defendants immediately arrange and transport Breach to the examination as ordered by the Court within 30-days from date of its order.

Done so this 25 Day of _August_    2007

_Marcellus A. Breach_

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

I HEREBY, certify that I have served a true copy of the foregoing upon the following:

Alabama Dept. Corrections          Rushton, Stakely, Johnston & Garrett
Legal Division                     P.O. Box 270
P.O. Box 301501                    Montgomery, Alabama  36101-0270
Montgomery, Al 36130

By placing the same into a sealed envelope properly addressed postage prepaid mailing U.S. Mail, First Class on this 25 Day of _August_ , 2007.

_Marcellus Breach_

Marcellus Breach

*Exhibit Y*

# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MARCELLUS BREACH, #160710     )

     Plaintiff,     )

Vs.     )     Case No: 2:06-CV-1133 MEF

PRISON HEALTH SERVICES, INC., ET AL.,  )

     Defendants.     )

### *AFFIDAVIT*

BEFORE ME, *Officer Mark Reeves CO.I*, a notary public in and for said County and State personally appeared Inmate Marcellus Breach, AIS# 160710, and being duly sworn, deposed and says on oath that the averments in the foregoing are true to the best of his ability, information, knowledge and belief as follows:

My name is Marcellus Breach. I am over the age of twenty-one. I am the Plaintiff in this case. I make this declaration in support of my Motion for an "Independent Physical Examination".

On <u>April 30, 2007</u>, Dr. Hobbs told me I need to have someone call the Commissioner's Office or the Governor to get my surgery. He also told me, if he put me in for surgery they would deny it anyway. Dr. Hobbs looked at my hernia for 15 seconds.

I state that on <u>March 21, 2006</u> Dr. John A. Tassin, M.D., personally told me that I have an "<u>Indirect inguinal hernia</u>" and that I needed to have it repaired. I also swear that Dr. Tassin told me that he had to have approval from the Alabama Department of Corrections, Commissioner's Office before surgery could be performed. Dr. Tassin told me that they would put in a request for surgery, approval to the Commissioner's Office.

On or about February 5, 2005 Dr. Bossermer, M.D., told me that I have a "Indirect inguinal hernia and that it is the most common hernia. That is the first instance that a doctor told me this and that is how I learned that I have an Indirect inguinal hernia that is most common among men.

I never got surgery while in Louisiana. I never got any pain medication, or another truss. Dr. Tassin told me there was nothing he could give me for my pain, I needed surgery.

My hernia is the size of baseball at normal, and when it comes out it gets as large as a "Softball", it is not easily reducible, and is very painful. My hernia gets trapped at times, causing sharp intensive pain. I have to work it up.    I do not have a "Direct inguinal hernia, I have a Indirect inguinal hernia because the hernia sits lower to the scrotum and a Direct hernia will sit higher from the scrotum.

My hernia has permanently caused me not to be able to perform certain normal activities such as manual labor, heavy lifting, long standing, long walking, exercising, I have pain when coughing, sneezing, and having a bowel movement. I even have problems urinating due to this hernia; it takes longer for me to urinate. I have to lift my left leg up, apply pressure on the hernia when coughing, sneezing. I have to bend forward hold down on the hernia when taking a bowel movement. Bowel movements are painful at times because I can feel my intestines moving out, forward, down. It is terrible. I have back pain at times because of this hernia. I can feel my hernia drop into my testicles.

In addition, my hernia gets 'trapped' I experience at times a hot burning pain. My hernia has descended onto my testicles and it requires constant pressure to prevent protrusion and pain.

The hernia truss is absolutely no good. I do wear it, and it does not stop the hernia. A hernia belt is for temporary purposes until I get surgery. However, today my hernia is not in the normal state where a Truss could help.

My hernia has enlarged, become worse and I have not received the proper treatment, which is surgery. I have pain; I am tired of complaining to the medical providers who will not do anything except issue a truss and Motrin. I physical condition has worsened; I did not have these limitations before incarceration. I believe if the defendants had of provided necessary medical care at the outset on 5/5/05 diagnosing this hernia and providing surgery because I have had this pain, I probably would not be suffering the pain, trapped hernia I experience today.

I further state that in the mornings, especially if my hernia has come out, I have to get up and do my prison job or I will get into trouble. Dr. Hobbs did not, could not have conducted a complete examination on my hernia, or he would have learned that the hernia is not easily reducible, and gets trapped. I am not disagreeing with prison doctors

course of treatment, I am disagreeing with the treatment proscribed under the standard of care, and under the standard of care, a nurse practitioner cannot simply say no need for surgical referral, he is not qualified for the determination. Under the standard of care, any primary physician would refer a patient in pain, suffering to a surgeon because the objective in medical is the cure.

Because of the acts and omissions of the defendants, my physical condition has become worse and more painful.

Further affiant sayeth not.

Marcellus Breach 160710

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS 23 Day of August 2007.

NOTARY PUBLIC          MY COMMISSIONER EXPIRES ON: 8-26-07

24

COUNTY OF MADISON                    :

STATE OF ALABAMA                     :              **AFFIDAVIT**

 

     **BEFORE ME,** _TASIA A. SUBLETT_, a Notary Public in and for said County and

State, personally appeared **Dr. Satyavardhana Rao Yerubandi, M.D., FACS, FRCSC**, and

being duly sworn, deposed and says on oath that the averments contained in the

foregoing are true to the best of his ability, information, knowledge and belief, as follows:

     "I am _Dr. Satyavardhana Rao Yerubandi_, _M.D., FACS, FRCSC_, a licensed physician

and general surgeon.  I am a specialist in hernia repair.  I am over twenty-one years of

age.  I have been a licensed physician in Alabama since 1984, and have been board

certified with the _Diplomat American Board of Surgery, Royal College of Surgeons of Canada_

_and Fellow American College of Surgeons_ since 1981. I have 27 years of practice experience,

including 23 years in private practice, with 27 years in surgical repair of hernias from the

_Surgery Division at Bronx Lebanon Hospital, State of New York_, where I received my surgical

training.  I am currently in medical practice and surgical repair in the State of Alabama,

with my main office located in Madison County, Alabama.  I am personally familiar with

all the facts set forth in this Affidavit. [1]

     As discussed in my two (2) previous affidavits (see attached), it is my professional

opinion as a surgeon in hernia repair that Mr. Breach Inguinal Hernia is the most common

condition for which under the standard of care for someone suffering from burning pain,

---

[1] This Affidavit is in support of an "independent Physical Examination."

pain when coughing, sneezing, and having bowel movement and, as complained by Mr. Breach having to lift his left left leg up and apply pressure on his hernia:  primary care physicians refer patients for surgical management.

Reviewing the medical records, in this case, it is clear that Mr. Breach's hernia is progressing which will lead into a dangerous medical situation when it becomes incarcerated, or strangulated, or even into the scrotum.

[2] On _December 27, 2006_ the nurse practitioner stated Mr. Breach's hernia was 3 x 5 cm.  On _April 30, 2007_ after complaints about burning pain from Mr. Breach which is a symptom that Mr. Breach's hernia is progressing and probably enlarging leading to more sever pain and discomfort.  Dr. Hobbs stated Mr. Breach has a "Large Direct Hernia". That statement alone is stating medically that there is the probabilities Mr. Breach's hernia has enlarged and leading into a dangerous situation of strangulation or incarceration.

It is a breach in accepted standards of care for Dr. Hobbs, to fail to refer Mr. Breach to a specialist in hernia repair who regularly see all these kinds of cases because of the danger of incarceration and strangulation of Mr. Breach hernia which will lead to serious medical complication such as tissue death, gangrene --- if Mr. Breach is not timely treated knowing that medically you cannot treat a hernia, surgery is the only cure to alleviate Mr. Breach's symptoms of pain and discomfort.     Dr. Hobbs' approach is contrary to accepted medical practices as to amount to deliberate indifference

---

[2] This referral is based on attached medical records submitted with my prior affidavits and opinions in this case.

2

and is also grossly incompetent, inadequate, and excessive as to shock the conscience or to be intolerable to humane decency.

Reviewing Dr. Hobbs Affidavit it is my opinion that since _December 27, 2007_ the last known date Mr. Breach was seen by medical personnel by a nurse practitioner at Kilby Correctional Facility, since then, Mr. Breach's hernia probably has worsen because it is being left untreated, also, because Dr. Hobbs failure to follow up, and make medical referrals is probably the cause of Mr. Breach still experiencing this burning pain and an enlargement of his hernia. It is always recommended that hernia be regularly checked to ensure that it is not becoming infected, or into a more nonreduciable hernia which leads to a dangerous medical situation. The records do not reflect Dr. Hobbs following up on Mr. Breach's hernia.

The truss issued by Dr. Hobbs is only for temporary use, it will not stop Mr. Breach's hernia from enlarging, or becoming incarcerated, or strangulated because even simple bowel movements will cause Mr. Breach's hernia to enlarge.

Medically there is no treatment for Mr. Breach's hernia, and the prescription given by Dr. Hobbs can be called hernia management because, the only treatment is surgery. No mechanism of preventive care is known, and surgical repair is almost always necessary.

I recommend as a surgeon that Mr. Breach receive an "Independent Physical Examination" for a proper examination to determine the extent and cause of this injury and to differentiate the common indirect hernia from the less common direct defect. Even

3

skilled examiners may be incorrect in up to 30 percent of cases. However, indirect and direct hernias need to be differentiated during surgery, because the approach to repair depends on the defect type. A hernia that is not repaired appropriately is more likely to recur. Dr. Hobbs may be wrong stating, **"Mr. Breach did not have a left Indirect or Femoral Hernia. He did have a 'large, easy to reduce direct inguinal hernia on the left."** **(see attached affidavit)**

Because a direct inguinal hernia is less common and Dr. Hobbs approach medically, it is often difficult to differentiate the common indirect hernia as Dr. John A. Tassin and Dr. Robbins even Dr. Bossermer did not identify what type of hernia Mr. Breach has on 5/05/05 (see attached). Physical examination is necessary there appears to be a mistake on the diagnoses which a proper identification of Mr. Breach's hernia is absolutely necessary.

Dr. Hobbs in which records reflect shows a clear breach in accepted standards of care through his failure to provide necessary treatment which is surgery. The physical examination will determine medically just what type of hernia Mr. Breach has, and because most early inguinal hernias can be diagnosed by careful physical examination. Except for pain or a dull dragging sensation in the groin, the common reducible inguinal hernia will lead into a more sever nonreducible hernia. The burning pain experienced by Mr. Breach is a warning, wherein a physical examination will determine the cause and extent of his injury ---- how progressive his hernia is as it is enlarging leading into

incarceration, and strangulation which is medically unacceptable and a breach in accepted

standards of care. Mr. Breach's hernia can and will rupture at any time. Surgery is advised.

The use of Ultrasonography is useful to differentiate Mr. Breach's hernia from other

causes of groin swelling.

Further affiant sayeth not.

_____

**Dr. Satyavardhana Rao Yerubandi, M.D., FACS, FRCSC**

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS 15 Day of August 2007.

NOTARY PUBLIC:          MY COMMISSION EXPIRES ON 5-6-2009

TASIA A. SUBLETT
NOTARY PUBLIC
STATE OF ALABAMA
COMM. EXP. 05-06-2009

5

COUNTY OF MADISON                                :

STATE OF ALABAMA                    :              **AFFIDAVIT**

**BEFORE ME,** the undersigned Notary Public, personally came and appeared:

### Ms. JoAnn Breach, R.N., M.S.N.

Affiant in the above instrument, who, after being duly sworn, deposed and says on oath that the averments in the foregoing are true to the best of her ability, information, knowledge and belief as follows:

"I am Ms. ***JoAnn Breach, RN. MSN.,*** a licensed registered nurse. I am over twenty-one years of age. I have been a licensed nurse in Alabama since 1976, and I am in good standing with the Board of Nursing, State of Alabama. I have <u>45 years</u> experience in nursing, including <u>20 years</u> in supervising and as a Nursing Instructor where I taught Nursing to college students. I received my Master Degree in Nursing from the University of Alabama; I have several years as a Nurse Consultant reviewing medical records under the community standard of care.

As discussed in my prior affidavit (see attached), I have reviewed the medical records of Mr. Marcellus Breach. The Records reviewed are from "<u>South Louisiana Correctional Center</u>, labeled as "**LCS Corrections Services, Inc.**," identified as Offender <u>Breach Marcellus, DOC # 160710.</u>

The first set of Medical Records are from: "**PHS, Prison Health Services, Inc.**," labeled as "<u>Progress Notes</u>": Date/Time: 5/05/05, Inmate's Name: Breach, Marcel[l]us, D.O.B.: 7/28/69, Time.: @ 1600 hrs.

The second set of Medical Records are records from "**PHS, Prison Health Services, Inc.,**" labeled as "**Progress Notes**" Date/Time: 12/27/2006, Inmate's Name: Breach, Marcel[l]us, D.O.B., N/A examiner **B. Adams, Nurse Practitioner**, Time: @ 1125 with "Left Inguinal Hernia area noted with small inguinal hernia; easily reducible; non-strangulated, not incarcerated, six is 3 x 5 cm" ----"Consulted with Dr. Robbins, <u>no need for surgical referral @ present</u>".

The third, identified portion of the medical records are from "**PHS, Prison Health Services, Inc.,**" labeled as "<u>Prison Health Services, Inc., Sick Call Request</u>" Date of Request: <u>4/26/07,</u> Nature of problem or request:

> **"I'am having burning pain due to my hernia. It is causing me problems coughing, sneezing, & bowel movements. On 3-21-06 Dr. Tassin said needs repair, I need surgery, aggravated hernia."**

This set of continued medical records reflect an examination with notes from a <u>Dr. William Hobbs, M.D.,</u> diagnosed Mr. Breach with a "**Large, easy to reduce Direct Inguinal Hernia on left.**"

Additionally, on page # 2 of the "**LCS, Corrections Services, Inc.,**" **Nurse's Notes**" of Marcellus Breach on July 12, 2006 it is noted: "Received a call from <u>Brandon</u> from Alabama re Inguinal Hernia stated,' "**Hernia repairs are not done there – unless incarcerated or into scrotum ...** subject placed on sick call for 7/18/2006 to see if he needs a referral to a surgeon.'"

I state as a Registered Nurse, retired Nursing Instructor, that for B. Adams, Nurse Practitioner to simply note in his diagnoses and recommendation no need to surgical referral is very clear that he has ignored the objective approach under the standard of care to relieve pain and suffering, and provide the cure. B. Adams has failed to recognize Mr. Breach's pain; however, records reflect he prescribed some pain medication. Nevertheless, B. Adams has ignored Mr. Breach's complaints, and warning symptoms of pain and discomfort from Mr. Breach and has lead to an unacceptable conclusion: "<u>No need for surgical referral @ present</u>", is a clear breach of the prevailing standard of care because, B. Adams has stepped beyond his qualifications as a nurse practitioner and it is medically known that there is no treatment for a hernia, nor any medicine known that will cure the defect, surgery is the only treatment, and only cure to alleviate the painful symptoms felt by Mr. Breach.

Only a qualified doctor can make a no need for surgical referral pertaining to any surgery determination. B. Adams, also, stated that he consulted with Dr. Robbins, M.D., Reviewing the medical records and affidavit from <u>Brandon Kindard, R.</u>N., who stated he relies on the medical providers, Brandon stated that <u>not to provide surgery was based on B. Adams' recommendation,</u> is a breach in the standard of care, because the decision to refuse surgery is founded upon a nurse practitioner who is not qualified to make that decision: only a doctor is qualified to proffer such medical determination.

The medical records do not reflect any recommendations, diagnoses, or treatment from <u>Dr. Robbins, M.D.,</u> which seems to appear that he is relying solely upon his nurse practitioner in regards to treatment for Mr. Breach. Dr. Robbins, relying on a nurse practitioner, without actually examining Mr. Breach's injury is contrary to accepted medical practices as to amount to deliberate indifference; also, is so grossly incompetent, inadequate, excessive as to shock the conscience and to be intolerable to humane decency because the records do not reflect any personal involvement from Dr. Robbins, M.D., as a treating doctor. However, Dr. Robbins has written an Affidavit opposing surgery, but has not actually physically examined Mr. Breach is unacceptable in the medical professional.

Under the standard of care, B. Adams' treatment in this case is unacceptable. The actions of B. Adams represents a breach of the prevailing standards of care in which B. Adams' actions are probably caused Mr. Breach's health to become deteriorated,

2 7

resulting to an enlargement of his hernia resulting to gratuitous pain and discomfort and a delay in necessary medical treatment which is surgery

It is my professional opinion that B. Adams is a cause to the injury sustained by Mr. Breach by his failure and deficiency in treating this patient. B. Adams's treatment in my opinion amounts to no treatment at all, and his conservative approach, and decision to refuse to make a referral to surgical repair or referral to a doctor, is hindering, preventing, and delaying necessary medical care: B. Adams chose to take an easier less efficient course of treatment as a cheaper way out and his statement: "No need for surgical referral" is shocking and unacceptable, falls below the acceptable standard of care insofar as he failed to recognize the significance of Mr. Breach's injury, complaints of pain, and failed to recognize that a Hernia is an unpredictable source of a constant danger because, a Hernia cannot be treated, surgery is the cure and a hernia will rupture at any time and lead into a life or death situation if not timely treated.

Under the standard of care ---it is the patient's decision whether to undergo surgery; however, the standard of care is surgical repair is which is usually always advised and referral of the patient to be examined by a doctor, or specialist in these kind of cases is always advised from any nurse when examining a hernia; the doctor for a final medical judgment must see the patient. In this case, this has not occurred, but just the opposite.

This written denunciation as to B. Adams' dogged refusal to provide the only medical care is clearly tantamount to deliberate indifference and can constitute no treatment at all – management would better described the prescriptions given by B. Adams. Reviewing the records in this case, there is a conflict as to the physical condition resolving around Mr. Breach's inguinal hernia.

The medical records reflect that on 5/05/05 Dr. Bossermer, M.D., noted that Marcellus has a "**Hernia, pain, ... Inguinal Hernia x 1 year.**

Records also reflect that on 3/21/06 Dr. John A. Tassin, M.D., noted Marcellus has a "**Hernia @ Left Inguinal Hernia, Needs Repair?**"    On 7/18/2006, Dr. Tassin noted: Left Inguinal Hernia, not incarcerated, "Elective Procedure". It is also noted that on 7/12/2006 a Diana Lott, Nurse Administrator for LCS, Corrections Services, Inc., noted on the medical records that a call was received from Brandon stating, "Hernia repairs are not done there – unless incarcerated or into the scrotum...." which explains looking at the six (6) day difference Dr. Tassin stated that Mr. Breach's hernia was not incarcerated, and labeled the hernia as 'elective procedure'.

On 12/27/2006 Nurse Practitioner, B. Adams, noted "**Left Inguinal Hernia; easily reducible; non-strangulated; not incarcerated, size 3x5 cm., no need for surgical referral @ present**, consulted with Dr. Robbins, M.D., the records do not reflect Dr. Robbins, M.D., agreeing with B. Adams' recommendation; nor, do the records reflect Dr. Robbins actually conducting a physical examination, it appears that he is

3 q 7

relying on his nurse practitioner who has stepped beyond his qualifications to make such a medical judgment, because surgery is the only cure, there is no treatment for a hernia.

What is so interesting about this case are two (2) areas of deficiency in the treatment given by B. Adams. First, B. Adams failed to prescribed the necessary medical treatment that is medical known and established in the community of care that you cannot treat a hernia, surgery is the only cure: amounts to deliberate indifference due to his failure to refer Mr. Breach to a doctor, or a specialist who is qualified to make the necessary medical judgment regarding surgery. Secondly, the symptoms of pain and discomfort complained by Mr. Breach are enough to medically alert any medical professional that there is a need for medical attention, i.e., **pain when coughing, sneezing and having bowel movement, long standing and raising his left up to apply pressure down on the hernia when performing such normal activities is a symptom under the standard of care that Mr. Breach needs to be referred to a specialist in hernia repair.**

Thirdly, since B. Adams last examined Mr. Breach on date December 27, 2006 and on April 30, 2007 a period of four months, Dr. Hobbs, diagnosed Mr. Breach with a **"Large, Direct Hernia"**, which is inconsistent with any other doctor's examination in this case. B. Adams' examination stated Marcellus has an inguinal hernia, also, in this case, no other doctor besides Dr. Tassin has actually correctly noted that Mr. Breach's hernia "Needs Repair" even with the question mark appears that surgery was in fact questioned.

Only a specialist in hernia repair can make that determination. It appears that the Alabama Department of Corrections, Brandon prevented Mr. Breach from receiving surgery or being seen by a specialist due to instruction given noted by the medical records that surgery is not done there unless the hernia is incarcerated or into the scrotum: this is unacceptable under the standard of care, it is always necessary that a patient chose undergo surgery for a hernia before his hernia becomes a life or death situation -- the hernia becomes incarcerated, strangulated, or into the scrotum is medically unacceptable and deliberate indifference and conduct so grossly contrary to accepted medical practices to amount to no treatment at all.

A physical conflict in this case is based on the symptoms complained by Mr. Breach. The complaint of "burning pain" is a serious symptom that a surgeon is necessary for an examination as to the extent of Mr. Breach's hernia. Dr. Hobbs stated "Large Direct Hernia" which a direct hernia is less common. The burning pain means that the muscles are tearing resulting to an enlargement of the hernia. When the muscles tear, the high risk of incarceration and strangulation are imminent. Only a surgeon is qualified to make a medical judgment concerning surgery in this case. Also, there is a conflict as to the correct diagnoses between Dr. Hobbs, Dr. Bossermer and B. Adamas, even Dr. Robbins: only Hobbs has stated **"Large Direct Hernia",** which is a less common hernia, and inconsistent with Marcellus' medical history. Records show that B. Adams' examination only reflects stating that Marcellus Breach has a small 3 x 5 cm.,

4 of 7

inguinal hernia and B. Adams stated Marcellus' hernia was "<u>Unchanged from exam description on 5/5/06</u>. Records <u>do not reflect any exam on 5/5/06</u> and Dr. Bossermer did not note a "<u>Direct Inguinal Hernia</u>" but noted Mr. Breach suffers from a <u>inguinal hernia with pain</u>.

In addition, on <u>2/21/06 Dr. Tassin</u> noted "Needs Repair" is a medical warning sign that any reasonable nurse would know that there is the probability that Marcellus' hernia is approaching a dangerous medical situation that Mr. Breach's hernia is enlarging, and becoming into a more a non-reducible hernia. Mr. Breach's hernia is not being inspected to ensure it is not becoming infected or developing into a more serious non-reducible hernia is an unacceptable approach.

Within a four (4) month period, medical records reflect that Marcellus' hernia has probably progressed due to B. Adams actions in not referring Mr. Breach to be seen by a doctor, or a surgeon, and shows that his hernia is progressing rapidly. It is an unacceptable practice under the standard of care for B. Adams to simply state, "<u>No need for surgical referral</u> is grossly contrary to accepted medical practices. His actions alone are plainly wrong, obdurate and reflect wantonness because the clear and objective medical standard is to relieve the pain suffered by Mr. Breach. B. Adams' approach is so wide of the mark as to be far below the minimum standard of medical care pertaining to Marcellus' hernia and amounts to deliberate indifference because B. Adams should have known that medically you cannot treat a hernia, surgery is the only cure to alleviate Mr. Breach's symptoms of pain and discomfort.

It is my professional opinion, that B. Adams has breached the standard of care pertaining to Mr. Breach's hernia because not every hernia is the same; the symptoms are different and may start out as mild but will become progressively worse causing increasing discomfort. Each hernia is different and the symptoms of a hernia appear gradually or suddenly. Different people feel varying degrees of pain. Some people feel noting except the presence of a lump, while others, as Mr. Breach feel that something has ruptured or given way. <u>Surgery is the only treatment.</u>

Surgery is the treatment and the issuing of a hernia belt, or a truss is only for temporary purposes and will not relieve the symptoms as described by Mr. Breach's complaints in the records of having pain when coughing, sneezing, and bowel movements. A truss will not stop Mr. Breach's hernia from enlarging because every movement will cause the muscles to weaken allowing much of Mr. Breach's intestine to come out. The burning pain complained of on 4/26/07 are symptoms, warning signs that his hernia is in danger to leading into a more sever serious medical complications: strangulation of the bowels, nerve entrapment, gangrene, and tissue death and a more non-reducible hernia.

The appropriate standard of care is any nurse to make a referral to a doctor or to a specialist in hernia repairs for a further determination whether surgery is necessary.

5 of 7

Hernias are unpredictable, Mr. Breach's hernia will rupture at any time, and movement Mr. Breach's makes will cause his hernia to enlarge and the muscles to weaken.

It is clear that the acts and omissions of B. Adams is a proximate cause of Mr. Breach's injury and pain suffered from an untreated inguinal hernia. On _December 21, 2006,_ B. Adams failed to use the care and skill, which is employed by the profession generally and, in the case of Mr. Breach B. Adams, has deviated from the established conduct amounting to grossly contrary accepted medical practice. B. Adams' conduct has probably caused Mr. Breach's hernia to enlarge leading into a dangerous medical situation, leaving Mr. Breach to endure gratuitous pain and discomfort which continued left untreated will probably lead into a permanent injury if Mr. Breach is not timely treated when his hernia becomes incarcerated, strangulated or into the scrotum.

A conflict in this case is only a surgeon in hernia repair can differentiate the less common _Direct Inguinal Hernia as Dr. Hobbs as diagnosed Mr. Breach._ A _Indirect Inguinal Hernia_ is a more common hernia, there appears to be a mistake on part of B. Adams examination because Dr. Hobbs stated and diagnosed Mr. Breach with a different inconsistent hernia, from earlier examination by Dr. Bossermer, M.D., Dr. John A. Tassin's diagnoses.

Mr. Breach complained of experiencing a "burning pain" is a warning sign, and medical records reflect that the medical providers are ignoring his symptoms of pain and the burning pain. A proper physical examination by a qualified surgeon is appropriate in this case because an inguinal hernia can be diagnosed by careful physical examination, except for pain or a dull dragging sensation in Mr. Breach's groin which is probably why B. Adams failed in this area leading to Mr. Breach's hernia enlarging. In my professional opinion and based on Mr. Breach's symptoms of burning pain, his hernia has progressed.

There are several different types of necessary testing that only a specialist in hernia repair will use while diagnosing inguinal hernias in patients who report symptoms but do not have the palpable defect.

a. Ultrasound examination are very helpful in differentiating an incarcerated hernia from a pathologic lymph node or other cause of a firm, palpable mass; and,

b. In Mr. Breach's case where he is suffering extreme pain but no physical or sonographic evidence of inguinal herniation, computed tomographic scanning will be used to evaluate the pelvis for the presence of an obturator hernia.

c. Preoperatively, it is often difficult to differentiate the common indirect hernia from the less common direct defect, as Dr. Hobbs has diagnosed Mr. Breach. Indirect and Direct Inguinal Hernias must be differentiated. A hernia not repaired appropriately is more likely to recur.

6 of 7

The question asked medically in this case is what type of Hernia does Mr. Breach actually suffer from?   <u>Direct or Indirect Inguinal Hernia</u>?  Only a qualified surgeon in hernia repairs can adequately differentiate the extent and cause of Mr. Breach injury.  It is my professional opinion that Mr. Breach ought to be examined by a qualified surgeon in hernia repairs due to length of time Mr. Breach's hernia <u>has gone left untreated</u>  where a specialist will determine just how progressive his hernia is and recognize the extent of his pain that is being ignored.  In this case, the issuing of pain medication, and a Truss is called "<u>management</u>" because no medication can be issued cure Mr. Breach's symptoms, surgery is the cure, and surgery is the only treatment.

Reviewing the medical records there is the strong probability that Mr. Breach's hernia has progressed, and become worse due to the inactions, failures, and taking a easier less efficacious course of management by B. Adams, and the medical providers for they have failed to use the care, and skills which is employed by the profession generally and, in this case of Mr. Breach,  B. Adams has deviated from the established conduct, which is grossly contrary to accepted medical practices, and amounts to deliberate indifference.  The proper course of standard of care is for Mr. Breach to have been examined by a surgeon upon the diagnoses of his inguinal hernia for a determination of surgical repair which usually always advised to prevent his hernia from enlarging and also to prevent M. Breach experiencing this burning pain which medical tells that probably his hernia has gotten worse.

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS 22 Day of AUGUST , 2007.

_____
Notary Public

_____
JoAnn Breach, R.N.
Ms. JoAnn Breach, RN, MSN.

My Commission expires on My Commission Expires 6/29/10

7 8 7

Exhibit A



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# PRISON HEALTH SERVICES, INC.
## SICK CALL REQUEST

Print Name: _MARCELLUS BREACH_          Date of Request: _5-22-07_
ID # _160718_                    Date of Birth: _9-28-69_   Location: _Dorm - D_
Nature of problem or request: _This Morning I experienced unusual pain_
_with my hernia. It's hard to describe, but, I was having_
_problems walking. I kept pressure on it, but everytime_
_I coughed: It hurt, Ibuprofen --no good for the pain._
                              _Marcellus Breach_
                                              *Signature*

### DO NOT WRITE BELOW THIS LINE

Date: ____/____/____
Time: _____ AM  PM
Allergies: _____

| RECEIVED |
| --- |
| Date: |
| Time: |
| Receiving Nurse Intials _____ |

**(S)ubjective:**

**(O)bjective   (V/S): T:**_____   **P:**_____   **R:**_____   **BP:**_____   **WT:**_____

**(A)ssessment:**

**(P)lan:**

Refer to:   MD/PA   Mental Health   Dental   Daily Treatment        Return to Clinic PRN
                              CIRCLE ONE
Check One:   ROUTINE ( )      EMERGENCY ( )
        If Emergency was PHS supervisor notified:   Yes ( )    No ( )
                Was MD/PA on call notified:   Yes ( )    No ( )

_____
                    *SIGNATURE AND TITLE*

WHITE:   INMATES MEDICAL FILE
YELLOW:   INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

GLF-1002   (1/4)





PRISON
HEALTH
SERVICES
INCORPORATED

## PROGRESS NOTES

| Date/Time | Inmate's Name: Breach, Marcelus | D.O.B.: / / |
|---|---|---|

| 12/27/06 | Pt. seen today for evaluation of (L) inguinal |
|---|---|
| 1125 | hernia. Ø other c/o. |

VSS ; Afebrile ; he is not wearing a truss

(L) inguinal area noted with small inguinal
hernia ; easily reducible ; non-strangulated ;
not incarcerated ; size is ~ 3x5 cm
(unchanged from exam description on 5/5/06)

- Pt. states that he has documentation from
another facility that supposedly says that
he needs surgical repair of his (L) inguinal
hernia but I have no record of this in
his chart.

× Consulted with Dr. Robbins

1) (L) inguinal hernia

   - Records / old charts

   - (L) inguinal hernia truss / Percogesic PRN

   - Ø straining / Ø lift > 20 #'s

   | BSV today = | - Bottom Bunk profile |
   |---|---|
   | 70 mcg/dl | |

   - No need for surgical referral @ present

   - F/u OPC 2 wks / PRN

   Σ: Tx plan

   Bler CRNP

Add: Pt. Also states he is 'hypoglycemic' but I see
no documentation of this in his chart either.
I will order BSV's BID x 7d ξ evaluate them.

Bler CRNP



**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## PROGRESS NOTES

| Date/Time | Inmate's Name: Breach, Marcellas | D.O.B.: / / |
|-----------|------------------------------------|-------------|

12/21/06
1105

I was asked by Mrs. Lawrence, HSA to see this patient today for chronic L inguinal hernia. He came down for screening and vital signs but left before exam despite counseling from me that he needed to stay. Chart review shows that he signed up for sick call on 10/9/06 & 10/12/06 but signed a release of responsibility waiver and left before exam on both dates. In summary, patient left outpatient clinic each of the last three times he was scheduled to be seen, before the physical examination could even be performed, despite counseling. I cannot evaluate his hernia (or anything else) if he refuses to stay for his examination. We will call him down again tomorrow and hopefully he will stay for the exam.

Blen CRNP

**Complete Both Sides Before Using Another Sheet**

*Same Problem! Exhibit C*



## PRISON HEALTH SERVICES, INC.
### SICK CALL REQUEST

Print Name: _Marcellus T. Breach_    Date of Request: _4/26/07_
ID # _160710_    Date of Birth: _7/28/65_  Location: _D-195_
Nature of problem or request: _I am having burning pain due to my hernia. It is causing me problems coughing, sneezing + bowel movements. On 3-21-06 Dr. Tassin said needs repair, I need surgery aggraviated hernia._

Signature

### DO NOT WRITE BELOW THIS LINE

Date: ___/___/___
Time: _____ AM  PM
Allergies: _____

| RECEIVED |
| --- |
| Date: |
| Time: |
| Receiving Nurse Intials _____ |

**(S)ubjective:** *Lost Truss*

**(O)bjective** (V/S): T: ___ P: ___ R: ___ WT: ___

*Exam No Direct, Indirect, recurred Hernia No left Indirect or femoral Hernia large easy to Reduce directed inguinal Hernia on left.*

**(A)ssessment:**

**(P)lan:**

Refer to:  MD/PA  Mental Health  Dental  Daily Treatment    Return to Clinic _____
CIRCLE ONE
Check One:  ROUTINE ( )    EMERGENCY ( )
    If Emergency was PHS supervisor notified:  Yes ( )  No ( )
    Was MD/PA on call notified:  Yes ( )  No ( )

*Susan Venture RN, Truss*
*Susan Orders*

_____
*SIGNATURE AND TITLE*

WHITE:    INMATES MEDICAL FILE
YELLOW:    INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT





**PHS**

PRISON
HEALTH
SERVICES
INCORPORATED

## PROGRESS NOTES

| Date/Time | Inmate's Name: Breach, Marcelus | D.O.B.: 7/28/69 |
|---|---|---|

5/05/05 — (S) C/O LBP, hernia pain, (L) foot pain. Hypoglycemia

1600 — (PMH) Trauma to LS spine from fall. Reports 2 compression fx's
calcaneal fx, (R) foot. From the fall

138/82 — Inguinal hernia x 1 year

154 lbs — Hypoglycemia since adolescence

97² — (PE) NAD w/ pleasant affect.        2 cm, irregular red patch

P=104 — Speech, conversation nl        on abd. central bite mark

R=12 — Gait nl

(L) foot with boney changes involving calcaneus

3x5 cm inguinal hernia on (L), not into scrotum

(A) • Hypoglycemia

(P) — ↑ sack lunch qd. The sandwiches to be used to
avoid hypoglycemia

• Inguinal hernia — truss issued

• foot/ankle pain — ankle wrap

X-rays of LS spine and foot.

• LBP - tylenol prn

• Keflex bid x 7d for possible cellulitis

• Profiles written

M.W. Bosserman, MD

Exhibit D 192

## LCS CORRECTIONS SERVICES, INC.
### DOCTOR'S ORDERS SHEET

Offender Name: _Breach, Marcelus_     DOC#: _AL 160710_

| Date / Time | Allergies: NKA |
|---|---|
| 5-21-06 | Hernia (L) Inguinal Hernia Needs repair? |
| | RPR M. Maye |
| 4/12/06 | IBP 400mg BID tel dental Dr. Tassin / M. Maye |
| 7/18/06 | Not Pt has (L) Inguinal Hern'a Incarcerated, Elective procedure M. Maye |
| 10-3-06 | Old injury (L) ankle tender + Rom. Activ X3 Naprosyn 500 sd #30 ETPRN M. Maye |

000001

# LCS CORRECTIONS SERVICES, INC.
## Nurse's Notes

Facility ___SLCC___

Offender: ___Breach, Marcelus___    Offender #: ___A160710___

| Date/Time | Notations | Signature/Title |
|---|---|---|
| 3.20.06 | Intake Screening complete, c̄ | M Agston |
| | 4 bunk profile given (ankle) | |
| 3.21.06 | Saw MD on rdo c̄ new Orders | M Mafield |
| 4.12.06 | RSC done c̄ new Orders — | M Mafield |
| 6/02/06 | Scheduled to go to Dr. Perkins | |
| | for dental work this date | M Mafield |
| 6/2/06 | Returned no paperwork or | |
| | new orders — | M Mafield |
| 6/8/06 | Trip papers made for Dr. Wood- | |
| | ruff on 6/13/06 — | M Duggan |
| 6.13.06 | Returned c̄ NNO; return for | |
| | fill | M Mafield |
| 6/28/06 | Trip papers made for Dr. Perkins | |
| | on 6/30/06 — | M Agston |
| 6.30.06 | Cancelled Dr. Perkins due to | |
| | limited appt x 20 inmates | M Mafield |
| ✱ 7.12.06 | Received a call from Brandon from Alabama | |
| | re: Inguinal Hernia - Stated Hernia repairs | |
| | are not done these - unless incarcerated or | |
| | into scrotum. This subject has not c̄ hernia | |
| | since seen by Dr. Tassin 3.21.06 — Subject | |
| | placed on sick call for 7.18.06 to see if | |
| | he needs a referral to a Surgeon | D Toth |
| 7.10.06 | We faxed report to Ruth Naglich | |
| | in reference to inguinal hernia | |
| | inmate requesting repair | |
| | & MD filing a lawsuit to have | |
| 17 | Surgery done — | M Mafield |
| 7.12.06 | 9.40 AM Phone Call received | |
| | from Lynn Brown and She | |
| | will return call on previous | |
| | day on 7/10/06; awaiting re- | |
| | turn call for follow up | M Mafield |
| 7.17.06 | 4.25 PM Brought to medical - Left inguinal | |
| | hernia easily reducible - No c/o pain | D Toth |
| 7.18.06 | Saw Dr. Tassin & NO change | |
| | in hernia & no new orders | |
| | given. | M Mafield |

# In The Circuit Court of Montgomery County
## State of Alabama

### Affidavit

Marcellas Breach                              }
                                             }
                  Plaintiff(s)                }
          v.                                  }
                                             }
Alabama Department of Corrections,
Richard Allen, Commissioner, A.D.O.C.
; Ruth Naglich, Associate Commissioner
Health Services, A.D.O.C.; and Prison Health
Services, Inc., Michael Catalano, Chairman
and President; Rick Dull, Regional Vice
President, P.H.S.; Jane Haynes, Regional
Director of Nursing, P.H.S.; Ms. Lawrence,
Director of Nursing, Kilby Correctional
Facility.

                                             }
                  Defendant(s)                }     Case Number: CV-06-3009


    Upon review of Marcellus Breach's (AIS#160710) medical record, Mr. Breach
entered the Alabama penile system on 2/18/05 at Kilby Correctional Facility. Intake
health assessment was completed at Kilby on the above mentioned date. Problem list on
the patient's medical record dated 2/20/05 includes left inguinal hernia, previous fracture
left foot, trauma of lumbar spine, and hypoglycemia. On 2/18/05, patient submitted a
sick call request complaining of hypoglycemia. Mr. Breach signed a release of
responsibility to be evaluated by the medical staff at Kilby for the hypoglycemia on
2/21/05. On 2/22/05, Mr. Breach submitted a sick call request complaining of
hypoglycemia. Patient once again signed a release of responsibility to be evaluated by
medical staff at Kilby for the hypoglycemia on 2/24/06. On 3/31/05, Mr. Breach was
transferred to Limestone Correctional Facility in Harvest, AL. On 4/6/05, Mr. Breach
submitted a sick call request for back and ankle pain due to prior injury, assistance with
hypoglycemia, hernia, and dental for pain. Patient was seen by nurse on 4/11/05 and
nurse documents referring Mr. Breach to the physician and dentist for evaluation. Mr.
Breach was seen by dental staff on 4/21/05. On 4/25/05, Mr. Breach submitted a sick call
slip requesting to see the physician for back and ankle pain, and for evaluation of the
hernia. Mr. Breach also sumitted a dental request for a filling on 4/25/05. Referrals were
made to the physician and dentist. Patient was seen by Dr. Bosserman at Limestone on
5/5/05. Dr. Bosserman ordered Mr. Breach to get one sack lunch every day for his
hypoglycemia, a truss was issued for his hernia, an ankle wrap for his foot and ankle

pain, x-rays of the lumbar spine and feet, Tylenol for his lower back pain, and Keflex for possible cellulitis on his abdomen. Profiles were written by Dr. Bosserman on 5/5/05 for no lifting greater than 25 lbs. and no standing or walking for greater than one hour. On 5/16/05, Mr. Breach submitted a sick call request to dental with complaints of tooth that is breaking. It is documented on the sick call request that Mr. Breach did not show up to be evaluated for this request. On 6/6/05, patient submitted another dental request for same and it is documented that patient was placed on waiting list for extraction. On 6/10/05, Motrin was ordered for pain by dental staff at Limestone. On 7/3/05, Mr. Breach submitted another sick call request for evaluation of broke tooth. Mr. Breach was seen by dental staff at Limestone on 7/11/05 and 8/8/05. On 8/24/05, patient submitted a sick call request complaining of headaches. Mr. Breach was ordered Tylenol for seven days. Mr. Breach submitted another sick call request on 9/20/05 for a filling and he was scheduled with dental. On 11/10/05, patient was seen by the dentist. On 12/15/05, patient submitted another dental request for a cavity that needed filling. Patient was scheduled with the dental department per the medical record. On 12/31/05, Mr. Breach submitted another dental request for a filling. The dental assistant documented on the request that an appointment had been scheduled. On 1/20/06, Dr. Bosserman ordered patient a sack meal every day with dinner for six months. On 2/13/06, Mr. Breach was seen by the dentist for the cavities. Mr. Breach was transferred to South Louisiana Correctional Facility in Basile, Louisiana on 3/20/06. On 10/6/06, Mr. Breach was transferred to Kilby Correctional Facility in Alabama per the Alabama Dept. of Corrections' Office of Health Services for an evaluation of his left inguinal hernia. Mr. Breach signed a release on 10/9/06 to be evaluated by the clinician at Kilby. Mr. Breech was seen in general sick call by the nurse at Kilby on 10/12/06 and referred to the nurse practioner on the same day. On 10/12/06, once again, Mr. Breach refused to be evaluated by the clinician and a release of responsibility was signed by the patient. There is not an order in the medical record that references Mr. Breach being on a medical hold at this time. I did interview Mr. Breach at Kilby Correctional facility on 12/20/06 and Mr. Breach refused to be seen on 12/21/06 by one of the providers at Kilby for evaluation. Mr. Breach was rescheduled for an evaluation of his hernia on 12/27/06. Mr. Breech was seen by the nurse practioner at Kilby on 12/27/06 for an evaluation of the hernia. The provider's progress notes state that patient has a small (3 cm X 5 cm) left inguinal hernia that is easily reducible and non-strangulated. Mr. Breach was given a truss for his hernia, a profile for no straining or lifting of greater than 20 pounds, bottom bunk profile, Percogesic for pain, and to follow up with the provider in two weeks. Mr. Breach's medical records from Louisiana were requested. The nurse practioner documents that there is no need for surgical referral at present and that he has consulted with Dr. Robbins, Medical Director at Kilby, on this issue.


*Brandon Kinard* RN, R.C.M., A.D.O.C.

Brandon Kinard RN, R.C.M., A.D.O.C.


*Angie Damacoto*, Notary, Date: 1/2/07
EXP 6/25/08

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, (AIS # 160710)          *

      Plaintiff,                           *

V.                                        *          2:06-CV-1133-MEF

PRISON HEALTH SERVICES, et al.,           *

      Defendants.                         *

## AFFIDAVIT OF WILLIAM D. HOBBS, M.D.

BEFORE ME, ___James Bailey___, a notary public in and for said County and State, personally appeared **WILLIAM D. HOBBS, M.D.,** and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is William D. Hobbs. I am a medical doctor and I have been a licensed physician in the State of Alabama since 2006. I have served as the Site Medical Director for Limestone Correctional Facility in Athens, Alabama since October of 2006. I have been employed with Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates since my employment began at Limestone. I am personally familiar with all of the facts set forth in this Affidavit.

The Plaintiff, Marcellus Breach (AIS #160710), is currently incarcerated as an inmate at Limestone Correctional Facility. Mr. Breach was transferred to Limestone Correctional Facility on March 23, 2007. I am familiar with Mr. Breach and have been involved with the

medical services provided to him at Limestone. In addition, I have reviewed Mr. Breach's Complaint in this action as well as his medical records (certified copies of which are being produced to the Court along with this Affidavit).

Mr. Breach was first diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole." I have reviewed his medical records and have been actively involved in his medical treatment.

The following information is based upon my personal knowledge and my review of Mr. Breach's medical records. Mr. Breach prepared a Sick Call Request on April 26, 2007 complaining of burning pain due to his hernia. He stated it was causing him problems coughing, sneezing and with bowel movements. This request was received on April 27th. Mr. Breach claims that Dr. Tassin at South Louisiana Correctional Services stated to him on March 21, 2006 that he needed surgery to repair his hernia. I examined Mr. Breach on April 30th and I noted that he did not have a right Direct, Indirect or Femoral Hernia. Mr. Breach did not have a left Indirect or Femoral Hernia. He did have a large, easy to reduce direct inguinal hernia on the left. I ordered another small Ventura Truss as Mr. Breach stated he had lost his truss. My Physicians' Orders on April 30th indicate that I prescribed Motrin 600 mg as needed for 90 days for his discomfort and CTM SR (a sustained release antihistamine) for coughing and sneezing.

In addition, I have reviewed two pages of Doctor's Orders from Louisiana Corrections Services. Dr. Tassin indicates on March 21, 2006 that Mr. Breach does have a left Inguinal Hernia, but repair is questionable. On July 18, 2006, Dr. Tassin again indicates that Breach has a left Inguinal Hernia, but he states that it is not incarcerated and hernia repair is an elective procedure. (A copy of which is attached as an exhibit to the Supplemental Special Report.)

2

I have reviewed a Special Needs Communication Form which was prepared on December 27, 2006 and the following restrictions were placed on Mr. Breach at that time: 1) Bottom Bunk for 180 days; 2) Truss for 180 days; and 3) No straining or lifting greater than 20 pounds for 180 days. I prepared a Special Needs Communication Form on April 10, 2007 and placed the following restrictions on Mr. Breach: 1) No lifting greater than 25 pounds; 2) No standing/walking greater than one hour; 3) Hernia Truss, left ankle brace. The diagnosis on this date was Inguinal Hernia and deformity of left foot.

I have also reviewed the Affidavit of Dr. Satyavardhana Rao Yerubandi in this matter (see attached) and I do not agree with several of his opinions as stated. As a general rule, a hernia does not progress quickly and there are instances where a person has a hernia for many years and may never require surgery for repair. Hernia repair is an elective surgery. The danger of waiting for a hernia to become incarcerated or strangulated is not high and emergencies involving hernias do not develop often.

Mr. Breach's inguinal hernia is being treated in an attempt to keep it from becoming larger and surgery is not his only option. A hernia can be treated with restrictions related to lifting, walking, standing and wearing a truss all of which have been prescribed for Mr. Breach. His medical records indicate that he has arrived at his medical appointments on several occasions without wearing his truss and he informed PHS employees that he lost it. Mr. Breach is not following the appropriate treatment necessary to treat his hernia. A truss is used to decrease discomfort and to decrease the possibility of the hernia becoming larger. If Mr. Breach would follow the instructions provided to him and the restrictions placed on him by PHS physicians and if he would wear the truss prescribed for him, these things would in fact keep his hernia from progressing. Mr. Breach's hernia is not life threatening and does not require surgical

3

intervention and I believe surgery is not medically necessary. His hernia is easily reducible, non-strangulated, and is not incarcerated.

Hernia repair is an elective procedure and every hernia does not need to be repaired. In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum. Mr. Breach does not meet this protocol and his hernia is easily reduced. If another physician is suggesting that Mr. Breach's hernia should be repaired, this physician is mistaken and he is only trying to perform an elective surgery which is unnecessary and is not medically needed. Again, Mr. Breach is not in imminent danger and his hernia is not life threatening.

Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complaints were evaluated and treated in a timely and appropriate fashion and that his diagnosed conditions have been treated in a timely appropriate fashion. It is also my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. Mr. Breach was seen and evaluated by the medical or nursing staff, and was referred to an appropriate care provider or given appropriate care, each time he registered any health complaints. At all times, Mr. Breach's known medical complaints and conditions were addressed as promptly as possible under the circumstances. Mr. Breach continues to receive medical treatment for his complaints related to his left inguinal hernia."

Further affiant sayeth not.

_William D. Hobbs, M.D._
**WILLIAM D. HOBBS, M.D.**

4

STATE OF ALABAMA            )
                           )
COUNTY OF _____         )

      Sworn to and subscribed before me on this the _____ day of
_____, 2007.

_____
Notary Public
My Commission Expires:

_____

5

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, (AIS # 160710) *

  Plaintiff, *

V. * 2:06-CV-1133-MEF

PRISON HEALTH SERVICES, et al., *

  Defendants. *

### SUPPLEMENTAL AFFIDAVIT OF MICHAEL E. ROBBINS, M.D.

BEFORE ME, _____, a notary public in and for said County and

State, personally appeared **MICHAEL E. ROBBINS, M.D.**, and being duly sworn, deposed

and says on oath that the averments contained in the foregoing are true to the best of his ability,

information, knowledge and belief, as follows:

"My name is Michael E. Robbins. I am a medical doctor and am over twenty-one years

of age. I have been a licensed physician in Alabama since 1986 and have been board certified in

internal medicine since 1986. Since June of 2002, I have served as the Medical Director for

Kilby Correctional Facility in Mt. Meigs, Alabama. Since November 3, 2003, my employment

has been with Prison Health Services, Inc., the company which currently contracts with the

Alabama Department of Corrections to provide medical services to inmates. I am personally

familiar with all of the facts set forth in this Affidavit.

As discussed in my previous affidavit (see attached), Mr. Breach has made a complaint

in this case regarding his medial care relative to his left inguinal hernia. Mr. Breach was first

diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs when there is a small

opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole. Mr. Breach was incarcerated at Kilby Correctional Facility at all times pertinent to his Complaint and was transferred to Limestone Correctional Facility on March 23, 2007.

I have reviewed the Affidavit of Dr. Satyavardhana Rao Yerubandi in this matter (see attached). Dr. Yerubandi addresses in his Affidavit what could happen and/or the possibilities that could arise in a person with a hernia and this information is correct. However, there are many instances where these possibilities never occur. There are known instances where a person has had a hernia for many years and has never required surgical repair. At the time Mr. Breach was examined by PHS employees at Kilby Correctional Facility, none of these possibilities existed. His hernia is easily reducible, non-strangulated, and is not incarcerated. Therefore, his hernia did not require surgical repair. An inguinal hernia can be treated and surgery is not the only option.

I do agree with Dr. Yerubandi that a hernia does not heal itself. However, a hernia can be treated with restrictions related to lifting, walking, standing and wearing a truss all of which was prescribed for Mr. Breach. Medical records indicate that Mr. Breach arrived at his medical appointments on numerous occasions without wearing his truss and stated he lost it. A truss is used to decrease discomfort and to decrease the possibility of the hernia becoming larger. If Mr. Breach had followed the instructions provided to him by PHS physicians and if he had followed the restrictions placed on him and if he had worn the prescribed truss, these things would in fact keep the hernia from progressing or getting worse. Mr. Breach's hernia is not life threatening and does not require surgical intervention and I believe surgery is not medically necessary.

Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complaints

2

were evaluated and treated in a timely and appropriate fashion at Kilby Correctional Facility. At all times, myself, and the other healthcare providers at Kilby have exercised the same degree of care, skill, and diligence as other similarly situated health care providers would have exercised under the same or similar circumstances. In other words, it is my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. At no time have I or any of the medical or nursing staff at Kilby Correctional Facility denied Mr. Breach any needed medical treatment, nor have we ever acted with deliberate indifference to any serious medical need of Mr. Breach. At all times, Mr. Breach's known medical complaints and conditions were addressed as promptly as possible under the circumstances."

Further affiant sayeth not.

_Michael E. Robbins MD_
MICHAEL E. ROBBINS, M.D.

STATE OF ALABAMA          )
                          )
COUNTY OF _____ )

Sworn to and subscribed before me on this the 12th day of _July_, 2007.

_____
Notary Public
My Commission Expires:
6/15/08

3



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, (AIS # 160710)          *

    Plaintiff,          *

V.          *          2:06-CV-1133-MEF

PRISON HEALTH SERVICES, et al.,          *

    Defendants.          *

## AFFIDAVIT OF MICHAEL E. ROBBINS, M.D.

BEFORE ME, _Willie G. Rowell_, a notary public in and for said County and State, personally appeared **MICHAEL E. ROBBINS, M.D.,** and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is Michael E. Robbins. I am a medical doctor and am over twenty-one years of age. I have been a licensed physician in Alabama since 1986 and have been board certified in internal medicine since 1986. Since June of 2002, I have served as the Medical Director for Kilby Correctional Facility in Mt. Meigs, Alabama. Since November 3, 2003, my employment has been with Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates. I am personally familiar with all of the facts set forth in this Affidavit.

The Plaintiff, Marcellus Breach (AIS #160710), is currently incarcerated as an inmate at Kilby Correctional Facility. I am familiar with Mr. Breach and have been involved with the medical services provided to him at Kilby. In addition, I have reviewed Mr. Breach's Complaint

in this action as well as his medical records (certified copies of which are being produced to the Court along with this Affidavit).

Mr. Breach was first diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole." He has been incarcerated at Kilby Correctional Facility since September 6, 2006. I have reviewed his medical records and have been actively involved in his medical treatment. It is noted in a Progress Note from Dr. Bosserman on May 5, 2005 that Mr. Breach does have an inguinal hernia on the left, but it is not into the scrotum. The inmate has had the hernia for at least the past year. Dr. Bosserman placed the inmate on limited restrictions of no lifting greater than 25 lbs. and no standing or walking for greater than one hour due to (1) a deformity of his left foot, (2) an ankle brace, and (3) a hernia for which he prescribed a truss. In a yearly Health Evaluation dated February 2, 2006, he made no oral complaints about any pain associated with the inguinal hernia.

Mr. Breach was to be seen on December 21, 2006 for evaluation of his left inguinal hernia but left before his exam could be performed. It should also be noted that Mr. Breach signed up for Sick Call on October 9, 2006 and October 12, 2006, but signed a Release of Responsibility Waiver and left before his exam on both dates. Mr. Breach was examined on December 27, 2006 for evaluation of his left inguinal hernia. He voiced no other complaints at that time. It was noted on that date that he was not wearing his truss. The hernia was noted as being easily reducible, non-strangulated, and is not incarcerated. Inmate was prescribed a left inguinal truss for 180 days and Percogesic for pain. He was placed on restrictions of no straining, no lifting more than 20 lbs. and placed in bottom bunk for 180 days. It was noted at that time that there was no need for surgical referral at present. In my opinion, the inmate's

2

hernia does not require surgical intervention and I believe surgery is not medically necessary. The type hernia which Mr. Breach has should not cause the patient any pain nor is it a condition that a reasonable person cannot live with under the conditions and restrictions governing Mr. Breach.

Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complaints were evaluated and treated in a timely and appropriate fashion at Kilby Correctional Facility, and that his diagnosed conditions have been treated in a timely and appropriate fashion.

At no time did I or any of the medical or nursing staff at Kilby Correctional Facility deny Mr. Breach any needed medical treatment, nor did we ever act with deliberate indifference to any serious medical need of Mr. Breach. In other words, it is my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. Mr. Breach was seen and evaluated by the medical or nursing staff, and was referred to an appropriate care provider or given appropriate care, each time he registered any health complaints at Kilby Correctional Facility. At all times, Mr. Breach's known medical complaints and conditions were addressed as promptly as possible under the circumstances.

Further affiant sayeth not.

_Michael E. Robbins MD_

**MICHAEL E. ROBBINS, M.D.**

3

STATE OF ALABAMA )

COUNTY OF _____ )

Sworn to and subscribed before me on this the _____ 14th _____ day of

~February~, 2007.

_____
Notary Public
My Commission Expires:

6/15/08

4

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MARCELLUS BREACH, #160710,    )
                              )
    Plaintiff,              )
                              )
v.                            )    CIVIL  ACTION  NO.  2:06-CV-1133-
MEF                           )
PRISON HEALTH SERVICES,       )
                              )
    Defendants.             )

### AFFIDAVIT OF GEORGE LYRENE

    Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared George Lyrene, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

    My name is George Lyrene. I am over the age of 19. I have an MD degree from the University of Alabama, Birmingham, and am board certified with the American Board of Internal Medicine, since 1978. I have 30 years of practice experience, including 15 years in private practice and 15 years in Correctional Medicine. I am currently contracted as Medical Director for the Alabama Department of Corrections.

    I have reviewed the record of Mr. Marcellus Breach. The medical issue he presents is really quite a simple one. He has a small, easily reducible inguinal hernia, for which conservative management with applied support and limitations on heavy lifting are very appropriate. This is a hernia that was present by intake documentation and would be amenable to surgery which was clearly elective at the time of his admission and would clearly not be necessary now. The patient has several times walked away from sick call

opportunities to address this hernia signing releases when he did. When he was seen he was given the appropriate exam and attention. This is a minor problem of for which surgery is not necessary at this time and which is being appropriately managed.

George Lyrene
ADOC Consulting Medical Director

SWORN TO AND SUBSCRIBED before me this _2nd_ day of _February_, 2007.

NOTARY PUBLIC _____

MY COMMISSION EXPIRES 6 Mar 08

Exhibit # 7



# HerniaSolutions.com



**ETHICON**
a Johnson-Johnson company



| United States | Text Size: A- A A+ | SEARCH |

> **HERNIA BASICS**
- Hernias and What to do About Them
- **How Hernias Develop**
- Your Abdomen
- Signs and Symptoms
- Types of Hernias
- Hernias in Women
- Hernias in Children

> **TAKING ACTION**

> **HERNIA REPAIR**

> **ABOUT SURGERY**

> **RESOURCES**

> **FIND A SURGEON**

> **FEEDBACK**

Home » How Hernias Develop

FIND A SURGEON    Enter zip code    Sear

## How Hernias Develop

The abdominal wall has natural areas of potential weakness that are present from birth. areas of weakness develop due to a variety of factors, such as surgery, injury, pregnanc aging or strain. Most inguinal hernias that occur in adults result from strain on abdomina muscles that have been weakened by age or congenital factors. Most ventral hernias (al called incisional hernias) occur near the site of previous trauma to the abdomen or an in from a prior surgery. Muscles that heal after an incision can sometimes break down, and hernia can form. Patients who develop ventral hernias may have multiple incisions in the place, and may also be overweight. Very rarely, a ventral hernia may develop without a previous abdominal incision.

You may have heard that hernias are caused by heavy lifting. That's really just a myth. heavy lifting and other strenuous activities can aggravate a hernia, they don't really cau them. The reality is that most hernias are the result of a weakness in a muscle that exis long before a hernia even appears.



These activities and events may aggravate a hernia, or may lead to the discovery of a h

- Lifting
- Twisting, pulling, or muscle strains
- Weight gain
- Chronic constipation
- Chronic cough

See p. 1 of 2 →



When the hernia forms, a "hole" in the abdominal muscle wall develops, allowing the inner lining of the abdomen to push through the weakened area. A loop of intestine or fatty tissue may push against this lining, forming a sac. At this point, you may have no idea you're developing a hernia, although you may feel burning or tingling.

As the loop of your intestine pushes into the sac formed by the weakened abdominal lining, you may develop a bulge visible on the outside. Early on, it may flatten out when you lie because it's still a reducible hernia.

Often, the loop of intestine becomes trapped and you lose the ability to make the bulge out. A painful nonreducible hernia has formed.

Sometimes, hernias can develop on both sides of the abdomen or groin. These are called bilateral hernias.

Print page    Share

By using this site, you agree to our  Disclaimer,  Legal Notice  and  Privacy Policy.
This site is best viewed with Internet Explorer 5.0 or higher.
* Trademark
© ETHICON,INC. 2000-2007 - Last updated on: 25 July 2007.
This site is published by ETHICON,INC. which is solely responsible for the content.
It is intended for a US audience.

**Site Map | Professional**



# Signs and Symptoms

Each hernia is different, and the symptoms of a hernia can appear gradually or suddenly. Different people feel varying degrees of pain. Some people feel nothing except the presence of a lump, while others feel that something has ruptured or given way.

Other symptoms may include:

- Feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum
- A bulge or lump in the abdomen, groin or scrotum that is easier to see when you stand up and disappears when you lie down
- Pain when straining, lifting, or coughing

These symptoms may start out as mild but become progressively worse, causing increased discomfort. The pain may be present in the directly affected area, but may also radiate into the hip region, back, leg or even down towards the genitalia region. This discomfort is called referred pain, and can become quite severe at times. The pain and discomfort usually worsen with duration of activity, and then may become either somewhat or completely relieved by rest.

**If you have these symptoms, see your doctor.** He or she can confirm the diagnosis and discuss your treatment options. Even mild groin pain or an unexplained bump or swelling that lasts more than a week is worth talking to your doctor about. Your doctor will evaluate your situation with a medical history and physical exam to determine how - and when - your hernia needs to be treated. Early diagnosis and appropriate treatment is the best way to avoid serious complications.

By using this site, you agree to our  Disclaimer,  Legal Notice  and  Privacy Policy.
This site is best viewed with Internet Explorer 5.0 or higher.
* Trademark
© ETHICON, INC. 2000-2007 - Last updated on: 25 July 2007
This site is published by ETHICON, INC. which is solely responsible for the content.
It is intended for a US audience.

Site Map | Professional



# ETHICON
*a Johnson-Johnson company*

## HerniaSolutions.com

United States | Text Size: A- A A+ | SEARCH

Home » What Is Hernia Repair?

> HERNIA BASICS
> TAKING ACTION
> HERNIA REPAIR
   ■ What Is Hernia Repair?
   ■ The Use of Mesh in Hernia Repair
   ■ Innovations In Mesh
   ■ Types of Hernia Repair
> ABOUT SURGERY
> RESOURCES
> FIND A SURGEON
> FEEDBACK

FIND A SURGEON  Enter zip code  Sear

### What Is Hernia Repair?

Hernia repair is the most frequently performed surgery by general surgeons throughout entire world. More than 1 million hernia repairs are performed annually in the United Sta Worldwide more than 20 million hernia repairs are performed each year.

Today's hernia surgeons have more options available to them than ever before for custo hernia repairs to your needs. One of the most important advances in hernia repair was t development of the tension-free repair. This type of repair uses surgical mesh to reinfor hernia site.

Regardless of which technique is used, a standard repair consists of:

- Making an incision over the area of the hernia and down into the underlying layer tissue
- Separating the normal tissue from the herniated tissue and defining the margins hole or weakness.
- Closing the weakness with stitches and/or plastic-like mesh.
- Close the overlying tissues and skin with absorbable sutures, or with **DERMABO! Topical Skin Adhesive.**

A repair done with stitches alone is called a tension repair. This repair stitches the edges the defect together, much like sewing a hole together in a piece of cloth. One of the pro with this approach is that it can put excessive strain on the surrounding tissues, which n eventually lead to another hernia. The recurrence rate of tension repairs, especially in th groin region, has led to the development of different methods of suturing the deep tissu layers to provide a more effective repair.

An alternative technique called tension-free repair was developed that bridges the hole weakness with a piece of plastic-like mesh or screen material. The mesh is a permanent material that is sewn into the margins of the defect and allows the body's normal healing process to incorporate it into the local structures. This has proven to be a much more ef means of repair.

Print page    Share

By using this site, you agree to our  Disclaimer, Legal Notice and Privacy Policy.
This site is best viewed with Internet Explorer 5.0 or higher.
* Trademark
© ETHICON,INC. 2000-2007 - Last updated on: 25 July 2007.
This site is published by ETHICON,INC. which is solely responsible for the content.
It is intended for a US audience.

Site Map | Professional