IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| MARCELLUS BREACH (AIS# 160710), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 2:06cv1133-MEF |
| | § | |
| PRISON HEALTH SERVICES, INC.; | § | |
| et al.; | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' RESPONSE TO PRISONER'S MOTION FOR INDEPENDENT EVALUATION [COURT DOCUMENT #124]

COME NOW the Defendants, Prison Health Services, Linda Lawrence, Michael Catalano, Rick Dull, Martha Jane Haynes, and Dr. William D. Hobbs (collectively "PHS"), by and through counsel, and in response to the Plaintiff's request for an independent medical exam and this Court's Order requiring a response, would show this Court as follows:

On or about September 21, 2007, in a lengthy Supplemental Special Report filed on behalf of Dr. William Hobbs, the Defendants addressed in its arguments and evidentiary submissions the specific reasons why no independent medical examination is needed because of the specific type of medical condition experienced by the Plaintiff. A copy of that Motion is attached to this pleading as Exhibit "A".

Without reiterating the previous arguments, it was noted in that filing that the Plaintiff has a large, easy to reduce, direct inguinal hernia on the left. He does not have a right, direct, indirect or femoral hernia, which are medically and physically different and, under certain circumstances, might warrant surgical intervention. The condition from which the Plaintiff suffers is not an emergency condition, is not a critical condition, nor is it a condition

that requires surgical intervention. Furthermore, the danger of waiting for this type hernia to become incarcerated or strangulated is not high at all, as evidenced by the fact that the Plaintiff has suffered from this condition for several years without an emergency condition being experienced. Moreover, emergencies involving hernias do not often develop and the fact that Dr. William Hobbs has evaluated this particular patient verifies that no independent medical exam is needed in this case.

Requests for independent medical exams are governed by Fed. R. Civ. P. 35. That rule states the following:

> (a) Order for Examination. When the mental or physical condition . . . of a party or of a person in the custody, or under the legal control of a party is in controversy, the Court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions and scope of the examination and the person or persons by whom it is to be made.

Fed. R. Civ. P. 35(a)

One critical problem for the prisoner here is whether the prison's condition is "in controversy." It is undisputed that all doctors who have either examined the prisoner or have reviewed his medical records (the Plaintiff's own expert) have confirmed that the Plaintiff's condition "is what it is," a hernia that is not incarcerated. The critical question is whether the medical condition requires surgery and the case law submitted by these Defendants in previous pleadings verifies that when a difference of opinion exists between physicians regarding the <u>treatment</u> to be provided to a prisoner, such a "difference in opinion" does not rise to the level of a constitutional violation. Bismark v. Fisher, 2007 U.S.

App. LEXIS 836 (11th Cir. Jan. 11, 2007). Here, it should not require the expense of an independent medical exam. See Hollon v. Prison Health Services, 2006 U.S. Dist. LEXIS 78674 (Oct. 26, 2006).

Moreover, the rule requires that "good cause" be shown. Here, a dispute between physicians does not constitute "good cause" sufficient to require the time and expense for a "independent medical exam." The burden is upon the Plaintiff to satisfy the good cause standard and the Plaintiff has failed to carry this proof. See Stefansson v. Equitable Life Assurance Society, 2005 U.S. Dist. LEXIS 21723 (Sept. 19, 2005).

The Plaintiff's request for an independent medical exam and the "good cause" requirement for that examination has simply not been satisfied. The "good cause" requirement is not a mere formality -- it is an expressed condition of the Rule. By example, Alabama case law holds that for a plaintiff to show good cause, this Court must consider whether (1) the prisoner has demonstrated that the exam results would be relevant, (2) the movant has shown an actual need for the information to be obtained from the examination, and (3) the examination, if the exam is to be performed by the prisoner's own expert, that said exam would preserve the relative equal footing of the parties with respect to evidence. Ex parte Wal-Mart Stores, Inc., 729 So. 2d 294 (Ala. 1999). On each of these critical issues, the Plaintiff's request is due to be rejected.

First, and foremost, it appears that Breach would request that Dr. Yerubandi perform the "independent medical exam." Clearly, Yerubandi would not qualify as "independent" and his opinion has already been "determined" prior to any exam he might perform. As for relevancy, any independent examiner who determines that Breach's condition requires surgery would simply place that issue in the same position it currently is, i.e., one doctor

3

saying one thing while another doctor is saying another. This "difference of opinion" does not create an issue of fact on whether one doctor's actions constitute deliberate indifference to a serious medical need, as required by law. Ciccone v. Sapp, 2007 U.S. App. LEXIS 15478 (11th Circuit, June 28, 2007), citing Waldrip v. Evans, 871 F.2d 1030, 1033 (11th Circuit 1989). As the Court in Ciccone held, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not appropriate for grounding liability under the Eighth Amendment." Id., supra, at 7, citing Adams v. Pogue, 61 F.3d 1537, 1545 (11th Cir. 1995).

If, for whatever reason, this Court believes additional evidentiary material is needed prior to addressing the Plaintiff's motion, Prison Health Services will be glad to comply with any further requests from the Court to submit additional evidence. However, Prison Health Services was under the impression that this issue had already been covered in its previous filings.

WHEREFORE, all premises considered, these Defendants respectfully request that the Court consider attached Exhibit "A" as its response to Plaintiff's Request for an Independent Medical Exam and in further support of its position that no independent medical exam is needed, the Plaintiff suffering from a non-emergency condition, and that the Plaintiff's case be dismissed.

/s/ PAUL M. JAMES, JR. (JAM017)
Attorney for Defendants, Prison Health
Services, Linda Lawrence, Michael
Catalano, Rick Dull, Martha Jane
Haynes, and Dr. William D. Hobbs

4

OF COUNSEL:

RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
P. O. Box 270
Montgomery, AL  36101-0270
(334) 206-3148
(334) 262-6277 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served by U.S. Mail this the 26th day of October, 2007, to:

> Mr. Marcellus Breach (#160710)
> Limestone Correctional Facility
> 28779 Nick Davis Road
> Harvest, AL  35749

The Clerk of Court, using the CM/ECF system will send notification of this filing to the following:

> Albert Sims Butler, Esq.
> ALABAMA DEPARTMENT OF CORRECTIONS
> P. O. Box 301501
> Montgomery, AL  36130-1501

/s/ PAUL M. JAMES, JR. (JAM017)
OF COUNSEL

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| MARCELLUS BREACH (AIS# 160710), | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 2:06cv1133-MEF |
| | § | |
| PRISON HEALTH SERVICES, INC.; | § | |
| et al.; | § | |
| | § | |
| Defendants. | § | |

### SPECIAL REPORT AND ANSWER OF DR. WILLIAM HOBBS AND DEFENDANT PRISON HEALTH SERVICES' RESPONSE TO COURT'S REQUEST TO ADDRESS PLAINTIFF'S CLAIMS OF FAILURE TO RESPOND TO REQUEST FOR MEDICAL TREATMENT

COMES NOW the Defendant, Dr. William D. Hobbs, by and through counsel, and

pursuant to this Court's Order dated July 23, 2007, does hereby file this Special Report and

Answer, pursuant to both the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), as well as

the Alabama Medical Liability Act, § 6-5-481, et seq. and § 6-5-542, et seq., no liability

should attach to Dr. Hobbs and this matter should be dismissed, with prejudice.

Attached to this Special Report, is a copy of the previously filed Special Report and

Answer in this case. Dr. Hobbs adopts the positions set out in that Special Report because

these positions equally apply to the frivolous claims being asserted by Marcellus Breach in

this litigation. In further support of this Special Report, Dr. Hobbs attaches a supplemental

affidavit, [Exhibit "B" - Supplemental Affidavit - Dr. William Hobbs; Exhibit "C" - Affidavit of

Deborah Hunt, R.N., H.S.A.], which further addresses the hernia issue repeatedly raised by

Mr. Breach through this particular litigation.

1

In his supplemental affidavit, Dr. Hobbs addresses, once again, the medical reasons why Breach's hernia does not require surgical intervention. Furthermore, Dr. Hobbs explains that Breach does not need to be seen by a medical examiner for an independent medical exam because he does not have a right, direct, indirect or femoral hernia. He has a large, easy to reduce, direct inguinal hernia on the left. [Exhibit "B" -- Supplemental Affidavit - Dr. William Hobbs]. The danger of waiting for this type hernia to become incarcerated or strangulated is not high and emergencies involving hernias do not often develop. [Id.].

A critical part of this entire matter is Breach's intentional failure to follow the conservative treatment prescribed for him. As Dr. Hobbs states indisputably, Breach fails to follow instructions provided to him, fails to adhere to restrictions placed upon him by PHS physicians, and fails to wear the truss prescribed for him, all of which, would keep his hernia from progressing and would eliminate his pain complaints. [Id.].

Since April 30, 2007, Breach has not requested any medical attention from Dr. Hobbs, has not been seen in the emergency room of the healthcare unit, nor has he filed a "Sick Call Request" requesting an appointment to be seen by a doctor. [Id.]. On April 30, 2007, Hobbs prescribed Breach a 90-day supply of pain medication, which has since expired and Breach has made no effort to renew his prescription. [Id.]. Finally, Breach has made unsubstantiated claims that are the subject of a separate motion. Such claims should be taken against Mr. Breach and warrant the dismissal of his Complaint.

Legally speaking, the law has been cited to this Court in multiple briefs previously filed in this case. Breach has failed to comply with the Prison Litigation Reform Act, 42 U.S.C. § 1997(e), and no excuses, misrepresentations or blatant lies can oppose the

2

undisputed evidence that exists in the record. Furthermore, the Alabama Department of Corrections ("ADOC") maintains a specific protocol regarding hernias of the type and condition experienced by Mr. Breach. If Mr. Breach met the protocol outlined by the ADOC, his hernia would be surgically repaired. Because it does not and because the hernia is easily reduced, Breach is not in eminent danger, his hernia is not life-threatening and the risk of the hernia becoming incarcerated or into the scrotum is extremely limited. [Exhibit "B" -- Supplemental Affidavit - Dr. William Hobbs].

In his latest meanderings, Breach alleges that PHS or its personnel have failed to provide him medical treatment since April 30, 2007. This fact, as phrased by Mr. Breach is not true. It is undisputed that since April 30, 2007, Breach has made no effort to receive medical treatment from a PHS employee or facility for any reason. [Exhibit "C" -- Affidavit of Debbie Hunt]. In earlier pleadings, Breach stated he had filed a "Sick Call Request" on May 22, 2007, June 15, 2007, June 30, 2007, July 3, 2007, July 14, 2007, August 1, 2007, and August 6, 2007. Breach has not completed the Sick Call Request and any evidence to the contrary is false and constitutes perjury. [Id.]. Furthermore, Breach did not file an Inmate Grievance/Appeal on July 14, 2007, nor did he file any grievance on August 6, 2007, further evidence that Mr. Breach's arguments, pleadings, facts, and positions merit no attention from this Court. [Id.].

For the reasons set out in previous Special Reports filed with this Court, along with the Supplemental exhibits attached hereto, this Defendant respectfully requests that this matter be dismissed with prejudice and costs taxed against the plaintiff.

/s/ PAUL M. JAMES, JR. (JAM017)
Attorney for Defendant,
Dr. William D. Hobbs

OF COUNSEL:

RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
P. O. Box 270
Montgomery, AL  36101-0270
(334) 206-3148
(334) 481-0817 (fax)


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served by U.S. Mail this the 21st day of September, 2007, to:

Mr. Marcellus Breach (#160710)
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, AL  35749

The Clerk of Court, using the CM/ECF system will send notification of this filing to the following:

Albert Sims Butler, Esq.
ALABAMA DEPARTMENT OF CORRECTIONS
P. O. Box 301501
Montgomery, AL  36130-1501

/s/ PAUL M. JAMES, JR. (JAM017)
OF COUNSEL

4

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARCELLUS BREACH (AIS# 160710), | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CASE NO. 2:06-CV-1133-MEF |
| | * | |
| PRISON HEALTH SERVICES, | * | |
| et al., | * | |
| | * | |
| Defendants. | * | |

**SPECIAL REPORT**

COME NOW the Defendants, Prison Health Services, Linda Lawrence, Michael

Catalano, Rick Dull, Martha Jane Haynes (collectively "PHS"), by and through counsel,

and in response to the Plaintiff's Complaint and this Court's Order, present the following

special report with regard to this matter.

## I. INTRODUCTION

The plaintiff, Marcellus Breach (AIS# 160710) states in his Complaint that he is

currently confined at the Kilby County Correctional Facility, Mt. Meigs, Alabama. At

the time of the allegations raised in his Complaint, Breach was incarcerated at the

Limestone Correctional Facility and, subsequently, was incarcerated out-of-state at South

Louisiana Correctional Services, Inc.

On or about December 22, 2006, Breach filed a Complaint against Defendants,

Prison Health Services, Linda Lawrence, Michael Catalano, Rick Dull, Martha Jane

Haynes, all of whom are assumed to be employees of PHS. PHS is the company that

contracts with the Department of Corrections to provide healthcare to inmates within the

State of Alabama. Breach alleges that PHS and its employees refused to provide him with appropriate treatment for an inguinal hernia. [Plaintiff's Complaint, ¶¶ 1].

As directed, these Defendants have undertaken a review of Plaintiff Breach's claim to determine the relevant facts and circumstances arising from his allegations and subsequent medical treatment. In support of this Special Report, PHS submits a certified copy of Breach's medical records [Exhibit "A"], the affidavit of Michael E. Robbins, M.D. [Exhibit "B"], the affidavit of Linda Lawrence [Exhibit "C"], and a copy of the facility's grievance procedure [Exhibit "D"]. These evidentiary materials demonstrate that Plaintiff Breach has been provided appropriate medical treatment for his complaints at all times and, perhaps more importantly, verify that Breach failed to follow internal grievance procedures prior to following litigation against PHS.

## II. NARRATIVE SUMMARY OF FACTS

While incarcerated at the Limestone Correctional Facility, Breach claims he was diagnosed by Dr. Bosserman as having an inguinal hernia. [Plaintiff's Complaint, ¶¶ 12]. Breach admits in his pleadings, he has "suffered" with this inguinal hernia since February 2005. The prisoner acknowledges that multiple physicians have treated this problem and prescribed him with medication and remedies to directly address this condition. [Plaintiff's TRO Application/Preliminary Injunction, ¶¶ 4-10. Despite the fact that multiple physicians have cleared Mr. Breach from any need for surgery, the prisoner cites Dr. John A. Tassin as purportedly alleging that Breach's hernia "needs repair" [Plaintiff's Complaint, ¶ 5] although no specific record from Dr. Tassin has been disclosed or identified by the Plaintiff. Thus, the facts do not support the prisoner's claims.

2

On a progress note dated May 5, 2005, Dr. Bosserman noted that Breach had an inguinal hernia for at least the past year (since May 2004). [Exhibit "A" -- Progress Note - 05/05/05].

Also, on May 5, 2005, Dr. Bosserman placed limited restrictions on Breach of no lifting greater than 25 lbs. and no standing or walking for greater than one hour due to (1) a deformity of his left foot, (2) an ankle brace, and (3) a hernia for which he prescribed a truss. [Exhibit "A" - Special Needs Form - 05/05/05].

This is not the first time Breach has made "complaints" regarding unconstitutional pain. In May 2005, Breach filed a similar complaint alleging inadequate medical treatment concerning ankle pain, back pain, and hypoglycemia. [Exhibit "A" -- Prison Health Services Medical Complaint Form - Marcellus Breach - 05/04/05].

On February 6, 2006, PHS records indicate that during his yearly health evaluation, Breach made no oral complaints about any pain associated with the inguinal hernia. [Exhibit "A"].

Finally, upon transfer back to the Alabama Department of Corrections, an LCS medical transfer summary found the following complaints for Mr. Breach:

1.     Ankle surgery;

2.     Left foot deformity;

3.     States L1 and L5 crushed.

[Exhibit "A" -- LCS medical transfer summary].

3

### III. DEFENSES

The Defendants assert the following defenses to the Plaintiff's claims:

1.    The Plaintiff/prisoner failed to comply with the mandatory requirements of the Prison Litigation Reform Act of 1995, 42 U.S.C. §1997(e), et seq. ("PLRA") and the PLRA directly applies to require that this matter be dismissed with prejudice for failing to comply with the terms and conditions of grievance procedures concerning medical issues.

2.    The Defendants deny each and every material allegation contained in the Plaintiff's Complaint and demand strict proof thereof.

3.    The Defendants plead not guilty to the charges in the Plaintiff's Complaint.

4.    The Plaintiff's Complaint fails to state a claim against the Defendants for which relief can be granted.

5.    The Defendants affirmatively deny any and all alleged claims by the Plaintiff.

6.    The Plaintiff is not entitled to any relief requested in the Complaint.

7.    The Defendants plead the defense of qualified immunity and avers that the actions taken by the Defendants was reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by the Plaintiff.

8.    The Defendants are entitled to qualified immunity and it is clear from the face of the Complaint that the Plaintiff has not alleged specific facts indicating that the Defendants have violated any clearly established constitutional right.

4

9.    The Defendants cannot be held liable on the basis of respondeat superior, agency, or vicarious liability theories.

10.    The Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

11.    The allegations contained in the Plaintiff's Complaint against the Defendants sued in their individual capacities, fails to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities. See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Arnold v. Board of Educ. Of Escambia County, 880 F.2d 305, 309 (11th Cir. 1989).

12.    The Defendants plead all applicable immunities, including, but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

13.    The individual Defendants aver that they were at all times acting under color of state law and, therefore, they are entitled to substantive immunity under the law of the State of Alabama.

14.    The Defendants plead the general issue.

15.    This Court lacks subject matter jurisdiction due to the fact that even if the Plaintiff's allegations should be proven, the allegations against the Defendants would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights. See Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986).

16.    The Plaintiff's claims against the individual Defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution.

17.    Alabama law provides tort and other remedies for the allegations made by the Plaintiff herein and such remedies are constitutionally adequate.

18.    The Defendants plead the defense that at all times in treating Plaintiff they exercised the same degree of care, skill, and diligence as other physicians and nursing staff would have exercised under similar circumstances and that at no time did they act toward the Plaintiff with deliberate indifference to a serious medical need.

19.    The Defendants plead the affirmative defense that the Plaintiff's Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render them liable to the Plaintiff as required by § 6-5-551 of the Ala. Code (1993).

20.    The Defendants plead the affirmative defenses of contributory negligence and assumption of the risk.

21.    The Defendants plead the affirmative defense that Plaintiff's damages, if any, were the result of an independent, efficient, and/or intervening cause.

22.    The individual Defendants plead the affirmative defense that they are not responsible for the policies and procedures of the Alabama Department of Corrections.

23.    The Defendants plead the affirmative defense that the Plaintiff has failed to mitigate his own damages.

24.    The individual Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against him and that any such award would violate the United States Constitution.

25.    The Defendants adopt and assert all defenses set forth in the Alabama Medical Liability Act § 6-5-481, et seq., and § 6-5-542, et seq.

6

26.    The Plaintiff has failed to comply with 28 U.S.C. § 1915 with respect to the requirements and limitations inmates must follow in filing in forma pauperis actions in federal court.

27.    Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from the individual Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e)(c).

28.    The Defendants assert that the Plaintiff's Complaint is frivolous and filed in bad faith solely for the purpose of harassment and intimidation and requests this Court pursuant to 42 U.S.C. § 1988 to award Defendants reasonable attorney's fees and costs incurred in the defense of this case.

29.    The Plaintiff's claims are moot because the events which underlie the controversy have been resolved. See Marie v. Nickels, 70 F., Supp. 2d 1252 (D. Kan. 1999).

## IV. ARGUMENT

A.    **Because Breach Failed to Follow the Required Grievance Procedures for Assessing Medical Complaints Prior to Filing His Lawsuit, the Prison Litigation Reform Act of 1995 Requires the Immediate Dismissal, with Prejudice, of His Complaint..**

Prisoner litigation has become an expensive problem for states and the federal government. Because of the problems associated with frivolous litigation, Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in order to control frivolous prisoner lawsuits. The Act contains multiple, mandatory provisions that require the dismissal of complaints identical to those asserted by Mr. Breach.

7

The PLRA defines a prisoner as follows:

> As used in this section, the term "prisoner" means any person
> incarcerated or detained in any facility who is accused of,
> convicted of, sentenced for, or adjudicated delinquent for,
> violations of criminal law or the terms and conditions of parole,
> probation, pretrial release, or diversionary program. 42 U.S.C.
> §1997e(h).

Breach admits to being incarcerated in his complaint, therefore, he meets the definition of

"prisoner" as defined by the PLRA. See Boyd v. Corrections Corporation of America, 380

F.3d 989 (6th Cir. 2004).

The crux of the PLRA requires a prisoner to exhaust all internal, administrative

remedies prior to filing suit. The PLRA requires that the Court on its motion or the motion

of a defendant dismiss any action with respect to prisoner conditions or medical treatment

upon failure to exhaust these remedies. 42 U.S.C. §1997e(a). This provision states the

following:

> **(a) Applicability of Administrative Remedies.**
> No action shall be brought with respect to prison conditions
> under section 1983 of this title, or any other Federal law, by a
> prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available are
> exhausted. (emphasis added).
>
> **(b) Failure of State to Adopt or Adhere to Administrative
> Grievance Procedure.**
> The failure of a State to adopt or adhere to an administrative
> grievance procedure shall not constitute the basis for an action
> under 1997a or 1997c of this Title.
>
> **(c) Dismissal**
> The Court shall on its own motion or on the motion of a party
> dismiss any action brought with respect to prison conditions
> under section 1983 of this title, or any other Federal law, by a
> prisoner confined in any jail, prison, or other correctional
> facility if the court is satisfied that the action is frivolous,
> malicious, fails to state a claim upon which relief can be

8

granted, or seeks monetary relief from a defendant who is
immune from such relief.

42 U.S.C. § 1997e(a)

"Administrative remedies" pursuant to this Act constitute prison or jail grievance procedures
such as those identified in this Special Report. Before filing suit, the prison/plaintiff must
submit his claim through this procedure and the grievance must address the specific issue
upon which the suit is based. Failure to strictly follow these procedures requires dismissal of
the action. Even if the prisoner/plaintiff has no knowledge regarding the existence of the
procedures, this does not relieve the requirement. See Zolicoffer v. Scott, 55 F. Supp. 2d
1372 (N.D. Ga. 1999), affirmed without opinion (252 F.3d 440 (11th Cir. 2001).

In this particular case, Breach failed to follow available, required administrative
procedures that existed within the Kilby Correctional Facility. [Exhibit "C" – Affidavit of
Linda Lawrence]. These procedures required Breach to seek administrative relief of his
claim before seeking court intervention regarding his claim. His failure to follow these
internal procedures concerning his medical grievances require his claim be dismissed with
prejudice. Woodford v. NGO, 126 S. Ct. 2378, 165 L.Ed.2d 368 (2006).

The Woodford case is extremely instructive because the United States Supreme
Court took the opportunity to clarify issues concerning the Prison Litigation Reform Act. In
Woodford, a California state prisoner challenged a disciplinary act but did so in an untimely
manner, violating California's Prison Grievance System. Subsequently, the prisoner sued the
system in federal court, but the district court granted the Department's Motion to Dismiss,
stating the prisoner had not fully exhausted his administrative remedies, pursuant to the
Prison Litigation Reform Act. On appeal, the Ninth Circuit reversed, claiming that because

9

no administrative remedies remained available to the prisoner, he had "not exhausted them" amongst other reasons.

On appeal, the United States Supreme Court reversed the Ninth Circuit and affirmed the dismissal of the prisoner's complaint. The Court's opinion focused extensively on the "exhaustion" of available remedies and concluded that whether procedural deficiencies existed or whether a prisoner is poorly educated and unfamiliar with such proceedings, it is a requirement that administrative remedies be followed prior to litigation ensuing in federal court. Id. At 2387, 2388, 2390, 2392-2393.

Breach's case is no different from that outlined in Woodford. Breach must exhaust internal, administrative remedies before seeking redress for his complaints within the legal system. Adhering to these procedures serves a two-fold interest, (1) it allows Breach the opportunity to advise correctional officers or healthcare employees regarding his concerns and (2) it permits internal procedures to address and alleviate concerns raised by prisoners through this process. More importantly, it eliminates frivolous litigation by giving both the prisoner and the correctional facility the opportunity to be aware of complaints and address them prior to the expense of litigation.

**B.   The Plaintiff has failed to prove that the Defendants acted with deliberate indifference to any serious medical need.**

A court may dismiss a complaint for failure to state a claim if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. Romero v. City of Clanton, 220 F. Supp. 2d 1313, 1315 (M.D. Ala., 2002), (citing, Hishon v. King & Spalding, 467 U.S. 69, 73, (1984). "Procedures exist, including Federal Rule of Civil Procedure 7(a), or Rule 12(e), whereby the trial court may "protect the substance of qualified immunity," Shows v. Morgan, 40 F. Supp. 2d 1345, 1358

(M.D. Ala., 1999). A careful review of Breach's medical records reveals that he has been

given appropriate medical treatment at all times. [See Exhibits "A" & "B"].

The Plaintiff's Complaint fails to state a claim against the Defendants with the

detail and specificity required by the Alabama Medical Liability Act, ALA. CODE § 6-5-551,

which provides as follows:

> In any action for injury, damages, or wrongful death, whether in contract
> or tort, against a health care provider for breach of the standard of care,
> whether resulting from acts or omissions in providing health care, or the
> hiring, training, supervision, retention or termination of care givers, the
> Alabama Medical Liability Act shall govern the parameters of discovery
> and all aspects of the action. The plaintiff shall include in the complaint
> filed in the action a detailed specification and factual description of each
> act and omission alleged by plaintiff to render the health care provider
> liable to plaintiff and shall include when feasible and ascertainable the
> date, time, and place of the act or acts. The plaintiff shall amend his
> complaint timely upon ascertainment of new or different acts or omissions
> upon which his claim is based; provided, however, that any such
> amendment must be made at least 90 days before trial. Any complaint
> which fails to include such detailed specification and factual description of
> each act and omission shall be subject to dismissal for failure to state a
> claim upon which relief may be granted. Any party shall be prohibited
> from conducting discovery with regard to any other act or omission or
> from introducing at trial evidence of any other act or omission. (emphasis
> added).

ALA. CODE § 6-5-551.


The Plaintiff's Complaint fails to state a claim against the Defendants because it

fails to include a "detailed specification and factual description" of each act and omission

alleged by Plaintiff to render the Defendants liable to Plaintiff; in particular, said Complaint

fails to include the required statement of "the date, time, and place of the act or acts" of

alleged malpractice, as required by the Act. See ALA. CODE § 6-5-551 (emphasis added).

11

In order to state a cognizable claim under the Eighth Amendment, Breach must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (U.S. 1976); McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999); Palermo v. Corr. Med. Servs., 148 F. Supp. 2d 1340, 1342 (S.D. Fla. 2001). In order to prevail, Breach must allege and prove that he suffered from a serious medical need, that the Defendant was deliberately indifferent to his needs, and that he suffered harm due to deliberate indifference. See Marsh v. Butler County, 268 F.3d 1014, 1058 (11th Cir. 2001) and Palermo, 148 F. Supp. 2d at 1342. "Neither inadvertent failure to provide adequate medical care nor a physician's negligence in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment." (citations omitted). [Id.].

Not every claim by a prisoner that medical treatment has been inadequate states an Eighth Amendment violation. Alleged negligent conduct with regard to inmates' serious medical conditions does not rise to the level of a constitutional violation. Alleged medical malpractice does not become a constitutional violation merely because the alleged victim is a prisoner. See Estelle, 429 U.S. at 106, McElligott, 182 F.3d at 1254, Hill, 40 F.3d 1176, 1186 (11th Cir. 1994), Palermo, 148 F. Supp. 2d at 1342. Further, a mere difference of opinion between an inmate and the physician as to treatment and diagnosis cannot give rise to a cause of action under the Eighth Amendment. Estelle, 429 U.S. at 106-108.

The Defendants may only be liable if they had knowledge of Breach's medical condition, Hill, 40 F. 3d at 1191, and acted intentionally or recklessly to deny or delay access to his care, or to interfere with treatment once prescribed. Estelle, 429 U.S. at 104-105. Obviously, Breach cannot carry his burden. The evidence submitted with this Special Report

12

clearly shows that the Defendants did not act intentionally or recklessly to deny or delay medical care, or to interfere with any treatment which was prescribed or directed. The evidence demonstrates, to the contrary, that PHS employees applied the appropriate standard of care to the treatment of Mr. Breach. Breach complained of pain resulting from his inguinal hernia. [See Plaintiff's Complaint].

The Defendants are, further, entitled to qualified immunity from all claims asserted by Breach in this action. There is no argument that the Defendants were not acting within the scope of their discretionary authority. See Eubanks v. Gerwen, 40 F. 3d 1157, 1160 (11th Cir. 1994); see also Jordan v. Doe, 38 F. 3d 1559, 1566 (11th Cir. 1994). Because the Defendants have demonstrated that they were acting within the scope of their discretionary authority, the burden shifts to Breach to show that the Defendants violated clearly established law based upon objective standards. Eubanks, 40 F. 3d at 1160. The Eleventh Circuit requires that before the Defendants' actions can be said to have violated clearly established constitutional rights, Breach must show that the right allegedly violated was clearly established in a fact-specific, particularized sense. Edwards v. Gilbert, 867 F.2d 1271, 1273 (11th Cir. 1989), aff'd in pertinent part, rev'd in part on other grounds, sub nom., Edwards v. Okaloosa County, 5 F. 3d 1431 (11th Cir. 1989).

The Eleventh Circuit further requires that the inquiry be fact specific, and that officials will be immune from suit if the law with respect to their actions was unclear at the time the cause of action arose, or if a reasonable person could have believed that their actions were lawful in light of clearly established law and information possessed by the individual. See Brescher v. Von Stein, 904 F.2d 572, 579 (11th Cir. 1990) (quoting, Anderson v. Creighton, 483 U.S. 635, 640, (U. S. 1987)). The question that must be asked is whether the

13

state of the law in 2006 gave the Defendants fair warning that their alleged treatment of Breach was unconstitutional. Hope v. Pelzer, 536 U.S. 730, 741 (U.S. 2002).

Therefore, to defeat summary judgment, Breach must be able to point to cases with "materially similar" facts, within the Eleventh Circuit, that would alert the Defendants to the fact that their practice or policy violates his constitutional rights. See Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994). In order for qualified immunity to be defeated, preexisting law must "dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F. 3d 1146, 1151 (11th Cir. 1994). The Defendant submits that there is no case law from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or District Courts sitting within the Eleventh Circuit showing that, under the facts of this case, it was clearly established that these alleged actions violated Breach's constitutional rights. All of Breach's medical needs have been addressed or treated. [See Exhibits "A" & "B"]. The Defendants have provided Breach with appropriate medical care at all times and he has received appropriate nursing care as indicated for treatment of his condition.

C.     **The Plaintiff's Petition Fails To State A Proper Civil Rights Violation Or Sufficient Facts To Warrant The Implementation Of A Temporary Restraining Order And/Or Preliminary Action.**

Breach has filed a "Civil Rights Complaint Section 1983 Application for Temporary Restraining Orders/Preliminary Injunction" as well as an "Application for Temporary Restraining Order and/or Preliminary Injunction." Both requests and the applications for the Temporary Restraining Order ("TRO") are due to be dismissed.

14

Under Alabama law, multiple elements must exist before a TRO may be issued. A plaintiff seeking a TRO must establish the following:

1.  That without the TRO, the plaintiff would suffer immediate and irreparable injury;

2.  That the plaintiff has no adequate remedy at law;

3.  That the plaintiff has at least a reasonable chance of success on the ultimate merits of this case; and

4.  That the hardship imposed on the defendant by the TRO would not unreasonably outweigh the benefit accruing to the plaintiff.

> Ormco Corp. v. Johns,
> 869 So. 2d 1109, 1113 (Ala. 2003)
> (quoting Perley v. Tapscan, Inc.,
> 646 So. 2d 585, 587 (Ala. 1994).

As with equitable remedies, a petition for a TRO addresses itself to the sound discretion of the trial court but particular reference must be made to the plaintiff's chances of success on the merits prior to any TRO being granted. Chase Manhattan Bank v. Dime Savings Bank of New York, 961 F. Supp. 275, 276 (M.D. Fla. 1997).

The prisoner seeks a TRO/declaratory judgment against Defendant PHS and "Defendant Lawrence" for allegedly demonstrating deliberate indifference to a serious medical need, specifically, a self-described "inguinal hernia" first diagnosed in February 2005. The prisoner contends that he is incapable of receiving relief via the judicial process and requires an immediate order from this Court requiring co-defendant Alabama Department of Corrections to allow the surgery outlined by the plaintiff. [Prisoner Complaint, ¶¶ 25, 26, 27, 28, 29; Section B(1)]. In his application for a TRO, the prisoner states in paragraph 4 that "there is a substantial threat of irreparable harm if the

injunction is not granted." An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole." [Plaintiff's TRO Application, ¶ 4]. For the reasons outlined below, the plaintiff's request for a TRO is due to be denied.

As stated previously, the plaintiff's first requirement is that the plaintiff would suffer "immediate and irreparable injury." As the prisoner readily admits in his pleadings, he has "suffered" with this inguinal hernia since February 2005. The prisoner acknowledges that multiple physicians have treated this problem and prescribed him with medication and remedies to directly address this condition. [Plaintiff's TRO Application/Preliminary Injunction, ¶¶ 10, 11]. Despite the fact that multiple physicians have cleared Mr. Breach from any need for surgery, the prisoner cites Dr. John A. Tassin as purportedly alleging that Breach's hernia "needs repair." [Prisoner Complaint, ¶ 12]. Again, the facts do not support the prisoner's claims.

A second element required to be proved by a plaintiff seeking a TRO is that the plaintiff has no adequate remedy at law. A review of the Complaint and Request for Injunctive Relief verifies that Breach is, in fact, seeking additional judicial relief for what he purports to be inadequate medical care. Breach repeatedly complains of "a deliberate indifference to a serious medical need," the standard wording and principles at issue in a prisoner's complaint under 42 U.S.C. § 1983 for inadequate medical care. Breach alleges constitutional violations for inadequate medical care and remedies for this allegation are available to him without the need for equitable relief. As such, Mr. Breach's own statement verifies that he does, in fact, have adequate remedies available to him at law.

16

The most difficult problem for a prisoner/plaintiff to establish is that they have a reasonable chance of success on the ultimate merits of their case. Ormco, supra, at 1113. Here, the prisoner's medical records verify the limited nature of prior complaints associated with the inguinal hernia condition. It also verifies that the prisoner has suffered from this condition since at least April 2004, with little written documentation to verify a consistent series of complaints related to this pain. Without appropriate medical documentation, the chances of this prisoner establishing the high burden of proof for deliberate indifference to a serious medical need is extremely low.

Finally, this Court must weigh the hardships imposed on the Defendants by the TRO against the benefits accruing to the prisoner. In this case, the Defendants would be forced to incur expenses associated with what appears to be an insignificant "injury" that clearly does not warrant surgical intervention.

## V. CONCLUSION

The Plaintiff's Complaint is due to be dismissed on its face, and is, further, disproven by the evidence now before the Court. All of the Plaintiff's requests for relief are without merit. The Defendants have demonstrated both through substantial evidence and appropriate precedent that there is not any genuine issue of material fact relating to a constitutional violation, and that they are, therefore, entitled to a judgment in their favor as a matter of law. The Plaintiff's submissions clearly fail to meet his required burden.

Accordingly, the Defendants request that this Special Report be treated and denominated as a Motion to Dismiss and/or a Motion for Summary Judgment and that this Honorable Court either dismiss the Plaintiff's Complaint, with prejudice, or enter a judgment in their favor.

17

Respectfully submitted,

/s/ PAUL M. JAMES, JR.
Alabama State Bar Number JAM017
Attorney for Defendants, Prison
Health Services, Linda Lawrence,
Michael Catalano, Rick Dull, and
Martha Jane Haynes

RUSHTON, STAKELY,
JOHNSTON & GARRETT, P.A.
P. O. Box 270
Montgomery, AL  36101-0270
Telephone: (334) 206-3148
Fax: (334) 262-6277
E-mail: pmj@rsjg.com


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served by U.S.
Mail this the 14th day of February, 2007, to:

Mr. Marcellus Breach (#160710)
Dorm West-16
Kilby Correctional Facility
P. O. Box 150
Mt. Meigs, AL  36057

Kim T. Thomas, Esq.
Albert S. Butler, Esq.
Alabama Department of Corrections
Legal Division
P. O. Box 301501
Montgomery, AL  36130-1501

/s/ PAUL M. JAMES, JR. (JAM017)
Attorney for Defendants, Prison
Health Services, Linda Lawrence,
Michael Catalano, Rick Dull, and
Martha Jane Haynes

18

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION

MARCELLUS BREACH (AIS# 160710),    §
                                   §
          Plaintiff,               §
                                   §
vs.                                §    CASE NO. 2:06cv1133-MEF
                                   §
PRISON HEALTH SERVICES, INC.;      §
et al.;                            §
                                   §
          Defendants.              §

**DEFENDANTS', PRISON HEALTH SERVICES, MICHAEL
ROBBINS, M.D., NURSE PRACTITIONER BRADFORD . ADAMS, ET AL.,
SUPPLEMENTAL SPECIAL  REPORT REGARDING
PRISONER MARCELLUS BREACH (AIS #160710)**

COME NOW the Defendants, Prison Health Services (hereinafter "PHS")

and its employees, and in response to Judge Mark Fuller's Order dated May 11,

2007, this Court's Order dated May 14, 2007, and this Court's Order dated

June 4, 2007, do hereby submit this Supplemental Special Report on behalf of

Prison Health Services and its employees with regard to the complaints asserted

by Marcellus Breach in his original Complaint and his Supplemental Complaint

filed on or about May 19, 2007.

## I. INTRODUCTION

The Plaintiff, Marcellus Breach, is an inmate currently confined at the

Limestone Correctional Facility in Athens, Alabama.  Breach was transferred to

Limestone Correctional Facility on March 23, 2007.  [Exhibit "A" -- Affidavit

William Hobbs, M.D.].  Prior to this, on December 22, 2006, Breach filed a

Complaint against Defendant PHS and certain employees arising out of medical

1

treatment for an inguinal hernia first identified in 2005. Previous medical records concerning treatment of this condition have been marked as an Exhibit to these Defendants' previous Special Report. Mr. Breach claims that PHS employees acted with deliberate indifference by employing conservative measures rather than ordering a surgical repair of the hernia. In addition, Mr. Breach's Amended Complaint against PHS asserts that PHS and its employees refused and withheld medical care required to be provided in violation of the Eighth Amendment and Alabama's Medical Liability Act. Breach also claims that the Alabama Department of Corrections' customary usages of policies and procedures pertaining to hernias amount to deliberate indifference. Breach asserts wanton medical care provided by PHS and its employees causing "physical pain and discomfort, emotional distress" to the Plaintiff. Breach also claims inadequate medical recordkeeping and breaches of the professional standard of care and medical judgment pertaining to the treatment of Mr. Breach's hernia condition between the time of its diagnosis in 2005 and the present. [Plaintiff's Amended Complaint].

As directed by this Court, PHS has undertaken a second detailed review of Breach's medical condition. Additional medical records, interviews, and affidavits have been obtained pertaining to the original claim and those claims asserted in the Supplemental Complaint filed June 4, 2007, by Mr. Breach. At this time, PHS submits this Amended Special Report, which is supported by multiple additional evidentiary submissions, including the following:

     1.    Exhibit "A" – Affidavit of Dr. William B. Hobbs;

2.      Exhibit "B" – Supplemental Affidavit of Dr. Michael Robbins;

3.      Exhibit "C" – Supplemental Medical Records - Limestone Correctional Facility;

4.      Exhibit "D" – South Louisiana Correctional Facility's medical records;

5.      Exhibit "E" – Supplemental Affidavit of Linda Lawrence, H.S.A., Kilby Correctional Facility; and

6.      Exhibit "F" – Affidavit of Linda Lawrence, H.S.A., Kilby Correctional Facility -- Grievance Procedure.

These evidentiary materials, along with those submitted in these Defendants' initial Special Report, demonstrate that Plaintiff Breach has a minor, controlled, non-incarcerated hernia. The failure to treat the condition in the manner desired by the Plaintiff does not rise to the level of a constitutional violation. Furthermore, the condition of Breach's hernia does not amount to a negligently treated medical condition constituting a breach of the standard of care under the Alabama Medical Liability Act, ALA. CODE § 6-5-481, et seq., and § 6-5-542, et seq., warranting the dismissal of all allegations asserted by Mr. Breach.

## II. NARRATIVE SUMMARY OF FACTS

During the pendency of this action, prisoner Breach has been incarcerated at Kilby Correctional Facility in Mt. Meigs, Alabama, and Limestone Correctional Facility near Huntsville. Between December 2006 and present, these are the only two Alabama Correctional facilities providing treatment to Mr. Breach. [Exhibit "C" – Supplemental Medical Records]. During that time, Breach has

been seen and evaluated by PHS medical or nursing staff, has been referred to appropriate care providers, and has been given appropriate care each time he has registered his health complaints at the facility. [Exhibit "A" – Affidavit of Dr. William Hobbs; Exhibit "B" – Supplemental Affidavit of Dr. Michael Robbins; Exhibit "C" – Supplemental Medical Records].

Prior to his return to the Alabama Correctional System, Breach received medical treatment through L.C.S. Corrections Services, Inc. while incarcerated in Louisiana. [See Plaintiff's Complaint and Amended Complaint]. On or about March 21, 2006, Breach received treatment at L.C.S. Corrections and a medical note contains the following information:

Hernia L. inguinal hernia needs repair?

[Exhibit "D" – L.C.S. Correction Services, Inc. Medical Records].

On July 18, 2006, the L.C.S. Corrections' chart contains the following entry:

Patient has L. inguinal hernia not incarcerated, elective procedure.

[Exhibit "D" – L.C.S. Correction Services, Inc. Medical Records].

Breach also received medical treatment at L.C.S. Corrections on October 3, 2006, for an old left ankle injury that limited his range of motion. At that time, Breach failed to make any complaints concerning hernia pain, problems or discomfort. [Exhibit "D" – L.C.S. Correctional Facility Medical Records]. On October 11, 2006, after being returned to Alabama, Breach completed a General

4

Sick Call Request seeking the lifting of a medical hold which had been placed on him as a result of his inguinal hernia. [Exhibit "C"]. Upon completing this form, PHS referred Breach to Nurse Practitioner Bradford Adams. [Id.]. However, Breach refused to appear at sick call claiming "I can't handle this mentally" and no treatment was provided for Breach at that time. [Id.]. This was the second time in a week Breach had requested, then refused, medical attention for his hernia. [Id.].

Breach next requested medical assistance regarding his left inguinal hernia on December 21, 2006. [Id.]. Again, PHS employees referred Breach to Nurse Practitioner Adams. On that same date, Adams prepared to treat Breach for this condition and made the following entry in PHS Progress Notes:

> 12/21/06 – I was asked by Mrs. Lawrence, H.S.A., to see this patient today for chronic left inguinal hernia. He came down for screening and vital signs, but left before exam despite counseling from me that he needed to stay. Chart review shows that he signed up for sick call on 10/9/06 and 10/12/06, but signed a release of responsibility, waiver, and left before exam on both dates. In summary, patient left outpatient clinic each of the last three times he was scheduled to be seen, before the physical examination could even be performed, despite counseling. I cannot evaluate his hernia (or anything else) if he refuses to stay for his examination. We will call him down again tomorrow and hopefully he will stay for the exam.

[Id.].

On December 27, 2006, PHS and Department of Correction officials brought Breach to the PHS clinic for evaluation of the left inguinal hernia. [Id.]. Breach presented without any other complaints and was not wearing his previously prescribed truss. [Id.]. Nurse Practitioner Adams' notes read as follows:

5

-- L. inguinal area noted with small inguinal hernia; easily reducible (sp); non-strangulated; not incarcerated; size is ≈ 3 x 5 cm (unchanged from exam description on 5/5/06).
-- Pt. states that he has documentation from another facility that supposedly says that he needs surgical repair to his left inguinal hernia, but have no record of this in his chart.
* consulted with Dr. Robbins
1) L. inguinal hernia
-- records/old charts
-- L. inguinal hernia truss/Percogesic PRN
. . .

[Id.].

As a result of this encounter, Adams ordered old records/old charts pertaining to previous hernia evaluation and treatment by the Louisiana Correctional System, ordered Breach a truss for 180 days and placed certain limitations on the prisoner, such as a bottom bunk profile, and zero straining or lifting greater than 20 lbs. for six (6) months. [Id.].

On March 26, 2007, Breach filed a Sick Call Request asking that his Kilby Correctional Facility profiles be renewed, as well as requesting profiles of his hernia, ankle, back, and other pain. [Id.]. On April 10, 2007, Dr. William Hobbs renewed Breach's restrictions, which include the following:

-- No lifting greater than 25 lbs.
-- No standing/walking greater than 1 hour
-- hernia truss, ankle brace, left ankle
-- Dx inguinal hernia, deformity of left foot.

[Id.].

On April 26, 2007, Breach filed a Sick Call Request complaining of "burning pain" due to his hernia. On this same Sick Call Request, post-

6

examination notes confirmed no right direct or indirect inguinal hernia, but a small hernia that was "easy to reduce." PHS employees renewed the instructions that a truss be used by Breach at all times. [Id.].

Dr. William Hobbs is one of the few physicians providing evidence in this case who has (1) personally evaluated Breach and his hernia condition; and (2) provided treatment, medication, and medical services for Breach. According to Hobbs, Breach reiterated his complaints concerning the inguinal hernia during his April 30, 2007, appointment. [Exhibit "A" -- Affidavit of Dr. William Hobbs]. On that date, Hobbs personally examined Breach and noted that he did not have a right direct, indirect or femoral hernia but did have a directed inguinal hernia on the left. He ordered a small ventura truss for Breach and prescribed Motrin, as needed, for 90 days and a CTM SR (a sustained release antihistamine) for coughing and sneezing, as needed. [Id.]. In addition, Dr. Hobbs personally reviewed and consulted doctors' orders from the Louisiana Correction Services, including the March 21, 2006, note and July 18, 2006, notes referenced by Breach. Both notes indicate that Breach suffers from a left inguinal hernia of questionable need for surgical repair. [Id.]. Tassin's records also confirm that hernia repair is an elective procedure and that the hernia was not incarcerated and, therefore, not an immediate need for surgical repair at that time (the spring and summer of 2006). [Id.]. [See Exhibit "D" – South Louisiana Correctional Facility's Medical Records].

Medical evidence in the record indicates that hernia repair is an elective procedure and that all hernias do not need to be surgically repaired. If a prisoner

7

in the Department of Corrections has a hernia which must be repaired, it has to meet certain protocols required by the Department. [Exhibit "A" – Affidavit of Dr. William Hobbs]. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated in order to be surgically necessary. [Id.]. The medical evidence indicates that Breach does not meet the surgical protocol because his hernia is easily reduced. [Id.]. Furthermore, Dr. Hobbs states that any physician suggesting Breach's hernia be surgically repaired is mistaken, as that doctor is only trying to perform an elective surgery which is medically unnecessary and not needed under the circumstances. [Exhibit "A" – Affidavit of Dr. William Hobbs].

It is undisputed that Dr. Satyavardhana Rao Yerubandi has never treated Mr. Breach or never personally evaluated his hernia condition. Furthermore, Dr. Yerubandi is clearly not familiar with the Alabama Department of Corrections' policies and procedures concerning elective surgery, with specific emphasis on elective hernia repairs.

On October 11, 2006, Marcellus Breach initiated the first of two required steps to comply with internal grievance procedures in place at Kilby Correctional Facility. [Exhibit "F" -- Affidavit of Linda Lawrence]. In his inmate informal grievance form, Breach requested two things (1) that a medical hold preventing him from actively participating in additional Department of Correction programs being lifted, thereby allowing to resume normal, routine activities and (2) request surgical treatment for his hernia. [Id.]. In response, PHS personnel search his medical files and were unable to find records from Dr. Tassin indicating that a

8

medical hold had been placed on Breach or that affirmative medical recommendations regarding surgical intervention had been made. [Id.]. Thereafter, on November 11, 2006, Breach filed a letter with PHS employee seeking a review of Dr. Tassin's notes, however, no such notes were at that time located. Breach failed to complete the proper forms to prosecute a grievance appeal and no other written complaints from Breach, pursuant to the Grievance Procedures were ever filed. [Id.].

### III. ARGUMENT

A. **Differences In Medical Opinions Regarding The Course And Type Of Medical Treatment For A Hernia Do Not Constitute A Constitutional Deprivation Rising To The Level Of A "Deliberate Indifference To A Serious Medical Need."**

Medical treatment within the confines of a correctional system are governed by different standards than those applicable to plaintiffs in the outside world. In this case, Plaintiff Breach seeks recovery under two separate theories outlined in his original Complaint and Amended Complaint, (1) deliberate indifference to a serious medical need arising under 42 U.S.C. § 1983 and the Eighth Amendments prohibitions against cruel and unusual punishment, and (2) violations of the Alabama Medical Liability Act concerning improper medical treatment. Under either legal argument and under any set of facts presented in this record, the Plaintiff is not entitled to recover and all PHS Defendants are due to be dismissed.

9

For Breach to maintain a § 1983 action under the Eighth Amendment to the United States Constitution, he must establish a deliberate indifference to a serious medical need rising to the level of <u>wanton infliction of pain</u>. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-105, 97 S. Ct. 285, 291-292, 50 L. Ed. 2d 251 (1976); <u>Barfield v. Brierton</u>, 883 F.2d 923, 938 (11th Cir. 1989). Stated differently, Plaintiff Breach must demonstrate that the medical defendants herein intentionally denied or delayed access to medical care requested by him.[1] [<u>Id.</u>].

More important than deriving a definition for what constitutes deliberate indifference to medical care is <u>what does not rise to that level</u>. Inadvertent or negligent conduct in diagnosing or treating a medical condition and even Court-defined medical malpractice <u>does not state a constitutional violation when the victim is a prisoner</u>. <u>Bass v. Selvin</u>, 550 F.2d 229, 230 (5th Cir. 1977), <u>cert. denied</u>, 434 U.S. 864, 98 S. Ct. 195, 54 L. Ed. 2d 138 (1977). Even more importantly, <u>a difference in opinion regarding the method of treatment between a prisoner and prison medical authorities or a prison doctor's alleged failure to follow a particular type of treatment desired by the prisoner does not amount to deliberate indifference</u>. <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1575 (11th Cir. 1985), <u>cert. denied</u>, 474 U.S. 1096, 106 S. Ct. 1492, 89 L. Ed. 2d 894 (1986). In prisoner medical cases of this type, it is historic precedent that federal courts are reluctant to second guess medical judgments by constitutionalizing claims that

---

[1] The denial herein is not the surgery being requested by Breach, but rather "access to medical care" related to his inguinal hernia condition. Overwhelming evidence demonstrates that <u>when</u> complaints have been raised by Breach, medically appropriate treatment has been provided.

10

may, under the best of circumstances, rise to potential violations of state law. Hamm, supra, at 1575.

In this case, Breach takes the position that a left inguinal hernia, which is non-incarcerated, requires surgical intervention. Critically, Breach cannot produce evidence that the conservative treatment provided by the medical defendants in this case increased the severity of his hernia. It is undisputed that the size, extent, and severity of Breach's hernia has not changed in a year. [Exhibit "C" – Supplemental Medical Records]. Even more telling is that Breach's hernia has not become more severe despite strong evidence of his unwillingness to follow medicinal and treatment guidelines designed to correct the problem. [Exhibit "A" – Affidavit of Dr. William Hobbs].

There are two components to prisoner medical care claims, the first being an objective element, and the second being subjective. Objectively speaking, a prisoner's claim must be supported by proof of a serious medical need. See Brown v. Hughes, 894 F.2d 1533, 1538 n. 4 (11th Cir. 1990), cert. denied, 496 U.S. 928, 110 S. Ct. 2624, 110 L. Ed. 2d 645 (1990). Here, the inguinal hernia constitutes a "serious" medical need because it required diagnosing by a physician. The evidence is undisputed that upon diagnosis by Prison Health Service officials, multiple restrictions were put in place for Breach, medication was prescribed, and steps taken to conservatively treat and heal the problem. [Exhibit "A" – Affidavit of Dr. William Hobbs; Exhibit "C" – Supplemental Medical Records]. Thus, the objective test is easily met.

However, the subjective element requires proof that Prison Health Service officials <u>deliberately</u> ignored or refused to treat the inguinal hernia. <u>Wilson v. Seiter</u>, 501 U.S. 294, 303, 111 S. Ct. 2321, 2326, 115 L. Ed. 2d 271 (1991). On this critical element, Breach's claim fails despite the presence of affidavit testimony from a licensed medical professional. The undisputed evidence verifies that, upon diagnosis, Prison Health Service officials placed multiple restrictions on Breach designed to treat the hernia including (1) a bottom bunk restriction for 180 days, (2) a truss for 180 days, and (3) no straining or lifting greater than 20 minutes per day for 180 days. [Exhibit "C" – Supplemental Medical Records]. Despite Breach's failure to follow his treatment guidelines, the hernia has remained the same medically.

Breach's claim is not the first hernia case to weave its way through the federal court system. In fact, hernias are a routine problem for correctional medical service providers and correction officials have adopted guidelines to deal with hernia problems. In case after case, federal courts have examined <u>the specific hernia diagnosis to determine whether constitutional violations have occurred</u>. In cases dealing with easily reduced inguinal hernias, like Mr. Breach's, the Courts have routinely found no constitutional violation when treating physician testimony dispels the need for surgical intervention.

In <u>Miller v. Wilson</u>, 1996 U.S. Dist. LEXIS 19584 (Oct. 18, 1996), a prisoner presented an identical fact pattern to Judge William Cassady of the United States District Court for the Southern District of Alabama. There, a prisoner suffered a "non-scrotal, easily reduced left inguinal hernia." There, as

here, the plaintiff sought surgical intervention due to excessive and extensive pain complaints and an inability to exercise. [Id. at 2]. Correctional medical physicians diagnosed the hernia, found it to be easily reducible, and noted, via affidavit testimony, that the repair of the hernia would be "strictly . . . elective." [Id. at 2]. Judge Cassady rejected the plaintiff's argument, noting the extensive and proper medical treatment provided to the plaintiff for this condition. Cassady's Order noted that in response to the plaintiff's complaints regarding his hernia, "the plaintiff received a bottom bunk assignment, light work duty, Tylenol, and a scrotal support." [Id. at 3]. More importantly, Cassady held as follows:

> That Miller has not received surgery or stronger pain medication amounts not to deliberate indifference but rather simply to a difference of opinion between plaintiff and Dr. Wilson regarding appropriate medical treatment for an easily reducible, non-strangulated inguinal hernia. Accordingly, plaintiff's Eighth Amendment rights have not been violated. (emphasis added).

[Id. at 3].

A case from the Middle District parallels Judge Cassady's opinion. In Reed v. Darbouze, 2006 U.S. District LEXIS 10919 (March 1, 2006), a prisoner incarcerated at Easterling Correctional Facility in Barbour County claimed constitutional violations when doctors failed to schedule him for a hernia surgery. There, the prisoner argued he needed surgery because of "severe pain for months . . . and nothing is being done to correct the problem." [Id. at 2.] Again, the Middle District rejected this argument and cited the exact same principle that applied to Mr. Breach's claim, i.e., (1) a prison official acts with deliberate indifference only when "a substantial risk of serious harm is imminent and the

13

medical professional disregards that risk," Farmer v. Brennen, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994), and (2) a difference in opinion between medical officials and a prisoner and/or his doctor does not rise to the level of a constitutional violation. [Id., citing Hamm, supra, at 1567.]

In rejecting the prisoner's claim, Judge Charles Coody held as follows:

> The plaintiff's medical records demonstrate that he has received medical treatment for his hernia on numerous occasions and that he has received pain medication. The plaintiff is quite correct that he did not get surgery for his hernia, but that fact alone does not establish deliberate indifference.   He was provided conservative medical treatment for the hernia.   His mere desire for a different treatment modality does not establish deliberate indifference.   Moreover, the plaintiff has failed to come forward with any evidence showing that the defendants knew that the manner in which they were treating him created a substantial risk to the plaintiff and they disregarded that risk. In the absence of such a showing by the plaintiff, the defendants are entitled to judgment in their favor, which will be entered.

[Id. at 2].

The coming together of prisoners and hernia problems is not confined to the State of Alabama and its federal court system.   In Brady v. Halawa Correctional Facility, 2006 U.S. District LEXIS 62058 (Aug. 29, 2006), a Hawaiian-based prisoner complained that correctional medical providers ignored his repeated claims of pain and suffering caused by a hernia.  In that case, the plaintiff identified a number of medical complaints relating exclusively to his hernia condition.  Prison officials diagnosed the plaintiff as having a "left inguinal hernia that did not require immediate surgery." [Id. at 3].  As with Breach, the plaintiff disagreed with the medical diagnosis and demanded immediate surgical intervention.

14

Again, the Court rejected the prisoner's argument noting the irrefutable standard that differences in medical opinions do not rise to the level of deliberate indifference. The Court held as follows:

> . . . Dr. Abbruzzese's conservative approach to surgery does not amount to deliberate indifference. . . . Plaintiff has not shown that Dr. Abbruzzese's decision to follow a conservative course of treatment "was medically unacceptable under the circumstances" and was chosen "in conscious disregard of an excessive risk to [the prisoner's] health. Deguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)). Plaintiff's condition was not ignored. He was given Ibuprofen, he was instructed to use ACE bandages as a truss, and medical personnel monitored his condition both at HGF and at TCCF. Between mid-April to late June 2004, medical personnel saw plaintiff at least seven times. The fact that surgery was not immediately performed, as plaintiff demanded, does not show deliberate indifference.

[Id. at 3].

Prisoners, hernias, and complaints regarding their medical treatment also occur in far less exotic locales than Hawaii. In Hollon v. Prison Health Services, 2006 U.S. District LEXIS 78674 (Oct. 26, 2006), an Indiana-based prisoner complained about the need for surgical intervention for his hernia. Again, the prisoner suffered from a reducible hernia rather than the more serious condition known as an incarcerated hernia. The Court addressed the identical question before this Court, i.e., whether Prison Health Service officials knew of the substantial risk of harm to the inmate and intentionally or wantonly acted or failed to act with specific disregard to that risk. In rejecting the plaintiff's claim, the Court noted that inmates are not entitled to the "best possible care or to receive particular treatment of their choice." [Id. at 3, citing Forbes v. Edgard, 112 F.3d 262, 267 (7th Cir. 1997)]. The Court went on to hold that the medical judgment

15

exercised by Prison Health Service officials in that case was "not deliberately indifferent to [the prisoner's] hernia condition and that their medical judgments in this regard were not 'such a substantial departure from accepted professional judgment, practice or standards' as to demonstrate that [he] did not base the decision on such a judgment." [Id. at 4, citing Estate of Cole v. Fromm, 94 F.3d 254, 262 (7th Cir. 1996)].[2]

These Defendants recognize the critical distinction that exists between Breach's case and most of those relating to the treatment of non-incarcerated hernias found within Federal precedent. Here, Breach has submitted an affidavit of Dr. Satyavardhana Rao Yerubandi, a board-certified surgeon qualified to give medical opinions. A review of his affidavit and the contents therein, however, do not change the fundamental, constitutional principle, that mere differences in medical opinion do not rise to the level of a constitutional violation and, under this fact pattern, do not even rise to the level of medical negligence.

Breach claims PHS's failure to surgically intervene to repair his hernia constitutes intentional deprivation of medical care and negligent/wanton conduct under Alabama state law. Regarding the "deliberate indifference standard," Dr. Yerubandi's affidavit creates nothing more than a differing opinion regarding the course of medical treatment. As stated earlier, differences in medical

---

[2] Here, Prison Health Services is named as a defendant and this opinion is also helpful on another argument. Prison Health Services argued in Hollon, as they do here, that 42 U.S.C. § 1983 cannot and will not support a claim based on a respondeat superior theory of liability. Iskander v. Village of Forest Park, 692 F.2d 126, 128 (7th Cir. 1982). The Iskander case and Hollon held that 'just as a "municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees deprivations of others civil rights.'"

16

treatment for Mr. Breach's hernia do not rise to the level of deliberate indifference to. See Garvin v. Armstrong, 236 F.3d 896, 898 (7th Cir. 2001). More importantly, Dr. Yerubandi's affidavit fails completely to address the state of mind of prison officials when the decision was made to treat the hernia conservatively and no evidence exists of a substantial risk of harm to the inmate other than conjecture or speculation -- facts outside the sphere of admissible evidence. See Fed. R. Civ. P. 56(e); Thomas v. Alabama Counsel on Human Relations, 248 F. Supp. 2d 1105 (M.D. Ala. 2003).[3]

As for the medical negligence aspect of Breach's claim, the affidavit not only fails to comply with the requirements of the Rules of Civil Procedure, but also does not establish medical negligence in the conservative treatment of Breach's hernia. The affidavits of Drs. Hobbs and Robbins verify the proper treatment for this particular type hernia. Dr. Yerubandi's affidavit concurs that this treatment is appropriate. At the same time, Dr. Yerubandi expresses a differing opinion with regards to the ultimate treatment that may be needed or might be needed for this particular "injury". Again, differing opinions do not create an issue of fact in this case.

Another critical failure exists in Dr. Yerubandi's affidavit. Nowhere in its language does Yerubandi identify any breach of the standard of care in the treatment of Breach's hernia. The standard of care has been defined by Drs.

---

[3] Normally, these Defendants would file a Motion to Strike those aspects of Dr. Yerubandi's affidavit that violates the mandatory requirements of Fed. R. Civ. P. 56. This Court's Order dated June 4, 2007, however, does not appear to grant leeway to file such a Motion. In lieu thereof, these Defendants will seek to depose Dr. Yerubandi, if necessary, and submit a supplemental report to guide the Court in its deliberation on this critical issue.

17

Hobbs and Robbins in their affidavits. In order for a plaintiff to prove a claim under the Alabama Medical Liability Act, they must submit, through expert testimony, evidence that the <u>applicable standard of care has been breached</u>. <u>Patton v. Thompson</u>, 2006 Ala. LEXIS 316 (Nov. 9, 2006) ("The plaintiff shall have the burden of proving by substantial evidence" that the healthcare provider failed to exercise the requisite care skill and diligence . . . and that 'the minimum standard of proof required to test the sufficiency of the evidence or supporting the issue or fact shall be proof by substantial evidence.'" ALA. CODE § 6-5-549). <u>See also</u> <u>DCH Healthcare Authority v. Duckworth</u>, 883 So. 2d 1214, 1217 (Ala. 2003); <u>Bradley v. Miller</u>, 878 So. 2d 262, 266 (Ala. 2003). In addition, there must be more than the mere possibility that negligence of PHS officials caused or contributed to cause this injury (the inguinal hernia) but that their negligence, if applicable, <u>probably</u> caused an injury. <u>McAfee v. Baptist Medical Center</u>, 641 So. 2d 265 (Ala. 1994).

The <u>Duckworth</u> opinion, <u>supra</u>, is particularly instructive. In this case, the plaintiff's Executrix sued Druid City Hospital in Tuscaloosa claiming dilatory treatment which ultimately led to her husband's death. The Alabama Supreme Court reiterated the requirement that a plaintiff, seeking recovery under the Medical Liability Act, must prove that healthcare providers, like PHS, failed to exercise the reasonable care, skill, and diligence as other similarly situated healthcare providers. <u>Id.</u> at 1217. A critical issue in <u>Duckworth</u> was whether a different form of treatment and a more prompt diagnosis would have placed the patient <u>in a better position than they would be as a result of inferior medical care</u>.

18

Id., citing <u>Shanes v. Kiser</u>, 729 So. 2d 319, 320-321 (Ala. 1999). This is virtually

the same position Breach articulates in his claim.[4]

The Alabama Supreme Court rejected the "better treatment alternative"

theory and the medical testimony supporting it. The Court noted the conspicuous

absence of medical testimony that Moore's different, alternative treatment <u>would

have affected</u> the outcome of the case. <u>Id.</u> at 1220, citing <u>McAfee</u>, <u>supra</u>. The

Court held as follows:

> The general statements proffered by McAfee and Roberts -- that "time
> [was] of the essence" and that "the sooner the onset of treatment, the
> better the expected result" -- essentially mirror the statements made by
> Dr. Jones [ the plaintiff's expert] -- as soon as possible is "always the
> ideal" and "any delay in diagnosis can adversely affect a person's
> condition." Like the testimony in <u>McAfee</u>, Dr. Jones' opinion does not
> constitute substantial evidence that the two- or three-hour delay of
> which Mrs. Duckworth complains probably adversely affected Mr.
> Duckworth's response to treatment.

[<u>Id.</u> at 1221].

Dr. Yerubandi's testimony mirrors that provided by the plaintiff in both

<u>Duckworth</u> and <u>McAfee</u>. Here, Yerubandi can only speculate as to the prospects

or possibility of increased health or safety risks due to a failure to perform

surgery on Breach's hernia. The key paragraphs are as follows:

> If Mr. Breach's hernia is continued left untreated, his hernia <u>can</u>
> get larger and also lead to serious medical complications. Surgical
> repair is advised because of the danger of incarceration and
> strangulation.

---

[4] That theory appears to be that surgical intervention would place him in a better
physical condition than the conservative treatment that has previously been applied by
PHS employees.

Mr. Breach, in my professional opinion in surgical repair needs to have his hernia repaired because without surgery [sic] intervention, and due to the length of time his hernia has been left untreated, **MAY** lead to a danger to his health or safety and **CAN** lead to hospitalization related to incarceration or strangulation.

[Affidavit of Satyavardhana Rao Yerubandi, M.D., p.3] (emphasis added).

The critical words are "can" and "may" because Yerubandi is dealing in "possibilities" rather than "probabilities." The Alabama Medical Liability Act makes a crucial and critical distinction requiring that evidence supporting a claim of medical negligence not merely infer the possibility that negligence caused an injury, but that such negligence probably caused the injury. Thus, Yerubandi's affidavit fails in this critical area and Alabama case law supports a dismissal of Breach's claims under the Alabama Medical Liability Act as a result.

B.    **Because Breach Failed To Follow The Required Grievance Procedures For Assessing Medical Complaints Prior To Filing His Lawsuit, The Prison Litigation Reform Act Of 1995 Requires The Immediate Dismissal, With Prejudice, Of His Complaint..**

Prisoner litigation has become an expensive problem for states and the federal government. Because of the problems associated with frivolous litigation, Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in order to control frivolous prisoner lawsuits. The Act contains multiple, mandatory provisions that require the dismissal of complaints identical to those asserted by Mr. Breach.

20

The PLRA defines a prisoner as follows:

> As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program. 42 U.S.C. §1997e(h).

Breach admits to being incarcerated in his complaint, therefore, he meets the definition of "prisoner" as defined by the PLRA. See Boyd v. Corrections Corporation of America, 380 F.3d 989 (6th Cir. 2004).

The critical issue involved in the adoption of the PLRA is to "reduce the quantity and improve the quality of prisoner suits. Porter v. Nessle, 534 U.S. 516, 524, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002). Within the PLRA is an "invigorated" exhaustion provision. See § 1997e(a) - (c).[5]

---

[5]

    (a)       Applicability of Administrative Remedies.
No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. (emphasis added).

    (b)       Failure of State to Adopt or Adhere to Administrative Grievance Procedure.
The failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under 1997a or 1997c of this Title.

    (c)       Dismissal
The Court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be

To prevent dismissal, prisoners like Breach must exhaust all "available" remedies, not simply those that meet federal standards. In addition, the exhaustion of available administrative remedies is required for any suit challenging medical treatment, as well as general prison conditions. Johnson v. Meadows, 418 F. 3d 1152, 1159 (11th Cir. 2005). A prisoner's lack of knowledge regarding existing procedures does not relieve his or her responsibility to exhaust those available, administrative remedies and allegations regarding prison official's failure to provide proper forums is not a legitimate defense. See Abney v. McGinnis, 380 F. 3d 663 (2nd Cir. 2004).

It is undisputed that Breach failed to follow all available, required administrative procedures that existed at both Kilby and Limestone Correctional Facilities. [Exhibit "F" -- Affidavit of Linda Lawrence, H.S.A.]. These procedures required Breach to seek and exhaust available administrative remedies within those facilities prior to initiating litigation. Because he failed to pursue all administrative appeals concerning his inguinal hernia and because he failed to allow PHS to review his administrative appeal, his claim must be dismissed with prejudice. Woodford v. NGO, 548 U.S. _____, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006).

A recent Eleventh Circuit case only reinforces the exhaustion requirement. In Bryant v. Rich, 2007 U.S. App. LEXIS 12781 (May 31, 2007), a prisoner

---

granted, or seeks monetary relief from a defendant who is immune from such relief.

Courts have determined that under the PLRA, exhaustion of administrative remedies is no longer left to the discretion of the district court, but mandatory. See Booth v. Churner, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001).

sought relief under 42 U.S.C. § 1983 contesting the conditions of his confinement at a state prison.  The Department of Corrections and individual defendants moved to dismiss the complaint, pursuant to the PLRA and its requirement that administrative remedies be exhausted.  42 U.S.C. § 1997e(a).  The Court affirmed the granting of summary judgment for failing to exhaust all available administrative remedies, holding as follows:

> . . . . "when a state provides a grievance procedure for its prisoners, . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  Johnson v. Meadows, 418 F. 3d 1152, 1156 (11th Cir. 2005) (quoting Brown v. Sikes, 212 F. 3d 1205, 1207 (11th Cir. 2000)).  We have no discretion to waive this exhaustion requirement.  Alexander v. Haught, 159 F. 3d 1321, 1325-26 (11th Cir. 1998).
>
>   That [the prisoner] filed no grievance at [the correctional facility] about the beatings he allegedly suffered is undisputed.  [The prisoner] contends that he attempted to file grievances at both these facilities, but his request for the pertinent forms were denied. . . . .
>
>   Even assuming -- without deciding -- that no grievance procedures were available to [the prisoner] at [the correctional facility], the record indicates that [the prisoner] did have grievance procedures available to him when he transferred to [another correctional facility], yet he failed to exhaust them.

[Bryant, supra, at 3].

The existence or presence of medical testimony via affidavit makes no difference with regards to whether Breach complied with the PLRA requirement. It is critical that Breach's claims be dismissed in their entirety because of his failure to follow all the mandatory, administrative procedures in place at both Kilby Correctional and Limestone Correctional Facilities.

23

## IV. CONCLUSION

The Prison Litigation Reform Act places a stop sign in the way of Mr. Breach's claim. Regardless of the time, effort, and evidence submitted by Breach, his failure to comply with all of the mandatory administrative remedies requires his case be dismissed. The case law within the Eleventh Circuit leaves no other option.

The deliberate indifference standard has not been met by Mr. Breach, even when one considers the affidavit of Dr. Yerubandi. Constitutional deprivation of medical care requires evidence of intentional or reckless acts by prison healthcare officials to deny or deprive Breach of necessary medical treatment. It does not guarantee a prisoner's requested treatment nor does Dr. Yerubandi's affidavit create an issue of fact with regards to the quality of medical care provided by PHS employees for Breach's inguinal hernia.

Finally, the state law claims under the Alabama Medical Liability Act have no merit. Not only are procedural deficiencies pervasive throughout Dr. Yerubandi's affidavit and Breach's pleadings, but the factual content does not rise to the level of substantial evidence necessary to maintain a claim under the Alabama Medical Liability Act. First, PHS employees did not engage in medical negligence or do anything to cause or contribute to the hernia. Secondly, no actions or inactions by PHS employees have caused or allowed the hernia to increase or become incarcerated. Thirdly, and most importantly, overwhelming medical evidence shows that the conservative treatment provided by PHS and its

24

employees constitutes viable, applicable treatment for an inguinal hernia of the type and location experienced by Mr. Breach. Merely because another doctor has another medical treatment option, does not state a claim under the Alabama Medical Liability Act.

For the reasons set out above and in these Defendants' previously filed Special Report, the Defendants request that the Plaintiff's claims be dismissed, with prejudice, and costs taxed against the Plaintiff.

/s/ PAUL M. JAMES, JR. (JAM017)
Attorney for Defendants, Prison Health
Services, et al.

OF COUNSEL:

RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
P. O. Box 270
Montgomery, AL  36101-0270
(334) 206-3148
(334) 262-6277 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served by

U.S. Mail this the 13th day of July, 2007, to:

> Mr. Marcellus Breach (#160710)
> Limestone Correctional Facility
> 28779 Nick Davis Road
> Harvest, AL  35749

The Clerk of Court, using the CM/ECF system will send notification of this

filing to the following:

> Albert Sims Butler, Esq.
> ALABAMA DEPARTMENT OF CORRECTIONS
> P. O. Box 301501
> Montgomery, AL  36130-1501

> /s/ PAUL M. JAMES, JR. (JAM017)
> OF COUNSEL

26

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, (AIS # 160710)          *

     Plaintiff,          *

V.          *

                      *          2:06-CV-1133-MEF

PRISON HEALTH SERVICES, et al.,          *

     Defendants.          *

## SUPPLEMENTAL AFFIDAVIT OF WILLIAM D. HOBBS, M.D.

BEFORE ME, _James Bailey Jr._, a notary public in and for said County and State, personally appeared **WILLIAM D. HOBBS, M.D.**, and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is William D. Hobbs. I am a medical doctor and I have been a licensed physician in the State of Alabama since 2006. I have served as the Site Medical Director for Limestone Correctional Facility in Athens, Alabama since October of 2006. I have been employed with Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates since my employment began at Limestone. I am personally familiar with all of the facts set forth in this Affidavit.

The Plaintiff, Marcellus Breach (AIS #160710), is currently incarcerated as an inmate at Limestone Correctional Facility. Mr. Breach was transferred to Limestone Correctional

Facility on March 23, 2007. I am familiar with Mr. Breach and have been actively involved with the medical services provided to him at Limestone.

It is my understanding that Mr. Breach has requested to be seen by a medical examiner for an independent physical exam for complaints related to his hernia. As I previously stated in my initial affidavit, Mr. Breach was first diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole."

It is my opinion that Mr. Breach does not need to be seen by a medial examiner for an independent physical examination to determine whether or not surgery is necessary. Mr. Breach does not have a right Direct, Indirect or Femoral Hernia. Mr. Breach does not have a left Indirect or Femoral Hernia. He does have a large, easy to reduce direct inguinal hernia on the left.

As previously stated in my initial Affidavit, as a general rule, a hernia does not progress quickly and there are instances where a person has a hernia for many years and may never require surgery for repair. Hernia repair is an elective surgery. The danger of waiting for a hernia to become incarcerated or strangulated is not high and emergencies involving hernias do not develop often.

We are treating Mr. Breach with restrictions related to lifting, walking, standing and wearing a truss in an attempt to keep his hernia from becoming larger. A truss is used to decrease discomfort and to decrease the possibility of the hernia becoming larger. If Mr. Breach would follow the instructions provided to him and the restrictions placed on him by PHS physicians and if he would wear the truss prescribed for him, these things would in fact keep his hernia from progressing.

2

I have not seen Mr. Breach since April 30, 2007. He has not been seen in the emergency room at our Healthcare Unit nor has he filed a sick call request requesting an appointment to be seen by me. On April 30th, Mr. Breach was given a prescription for a 90-day supply of pain medicine which has since expired. If Mr. Breach's condition is as he describes (unusual and burning pain/progressively worsening), it would seem he would have made an attempt to be seen in the emergency room or show-up for sick call requesting an appointment with me.

I would like to reiterate that Mr. Breach's hernia is not life threatening and does not require surgical intervention and I believe surgery is not medically necessary. His hernia is easily reducible, non-strangulated, and is not incarcerated. Surgery is not his only option and it is not medically necessary.

I would like to further reiterate that hernia repair is an elective procedure and every hernia does not need to be repaired. In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum. Mr. Breach does not meet this protocol and his hernia is easily reduced. Mr. Breach is not in imminent danger and his hernia is not life threatening. If Mr. Breach did in fact meet the protocol required by the Alabama Department of Corrections, his hernia would be repaired.

It is also my understanding that Mr. Breach has made an allegation that I am currently under investigation by the Medical Board of Examiners. This allegation is completely untrue, as I have never been made aware of any Complaint filed against me.

With respect to an incident involving inmate, Jackie Morrow, Mr. Morrow did have an infected incision due to a surgery performed by a surgeon prior to Mr. Morrow being transferred to Limestone Correctional Facility. Mr. Morrow's incision was infected and I did treat his

3

incision, but my treatment did not cause gangrene or a staff infection. Mr. Morrow was also sent back to this surgeon for follow-up care and treatment of this infected incision."

Further affiant sayeth not.

_William D. Hobbs, M.D._
**WILLIAM D. HOBBS, M.D.**

STATE OF ALABAMA      )
                        )
COUNTY OF _Str. houser_  )

Sworn to and subscribed before me on this the 17th day of Sept , 2007.

_____
Notary Public
My Commission Expires:

9-3-2010

# EXHIBIT C

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH (AIS # 160710),       *

     Plaintiff,       *

V.       *       2:06-CV-1133-MEF

PRISON HEALTH SERVICES, e al.,       *

     Defendants.       *

### AFFIDAVIT OF DEBORAH HUNT, R.N., H.S.A.

BEFORE ME, ___Jame S Bailey___ , a notary public in and for said County and State, personally appeared DEBORAH HUNT, R.N., H.S.A., and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of her ability, information, knowledge and belief, as follows:

"My name is Deborah Hunt. I am over the age of twenty-one and am personally familiar with all of the facts set forth in this Affidavit. I have been a licensed, registered nurse in Alabama since 1985. I hold an Associates Degree in nursing from John C. Calhoun College in Tanner, Alabama. I have worked as a nurse at Limestone Correctional Facility in Harvest, Alabama, since January of 2002, and have been the Health Services Administrator (H.S.A.) at Limestone since April of 2007. Since November 3, 2003, I have been employed by Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates.

It is my understanding that Marcellus Breach has made an allegation in this matter that he has not been seen for his medical complaints related to his hernia since April 30, 2007. This is true. Mr. Breach has stated that he filed a sick call request on May 22, 2007, June 15, 2007,

June 30, 2007, July 3, 2007, July 14, 2007, August 1, 2007 and August 6, 2007. This is not true. In fact, I have read Mr. Breach's brief (see Exhibit A attached hereto) and none of this is true. I have made a thorough search of our files and we have no record of receiving any of these sick call requests from Mr. Breach. Our records also show that Mr. Breach did not file an Inmate Grievance/Appeal on July 14, 2007 nor did he file a grievance on August 6, 2007. Mr. Breach's allegations in this regard are unfounded, as we have no record of him filing any of the above stated sick call requests or grievances.

Mr. Breach has failed to exhaust Limestone's informal grievance procedure relating to the receipt of medical care for this alleged condition. Specifically, as relevant to his Complaint, Mr. Breach has submitted neither a sick call request, an inmate informal grievance nor an inmate grievance appeal. As such, the healthcare unit at Limestone has not been afforded the opportunity to resolve Mr. Breach's medical complaints."

Further affiant sayeth not.

_Deborah Hunt RN/HSA_
DEBORAH HUNT, R.N., H.S.A.

STATE OF ALABAMA )
                                         )
COUNTY OF _ST. CLARGE_ )

Sworn to and subscribed before me on this the _18th_ day of _SEPT._, 2007.

_Notary Public_

My Commission Expires:
_FEB 2010_

2