IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARCELLUS BREACH, #160710 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06-CV-1133-MEF |
| | ) | [WO] |
| | ) | |
| PRISON HEALTH SERVICES, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Marcellus Breach ["Breach"], a state inmate, challenges the medical treatment provided to him for a left inguinal hernia initially diagnosed in February of 2005.[1]  Breach asserts that "the hernia is causing ... pain and discomfort and restricts his normal daily activities....  Plaintiff hernia can rupture at any time, and lead to death if not timely treated."  *Plaintiff's Complaint - Court Doc. No. 1* at 10.  Breach further maintains that the hernia "at times ... is not 'easily reducible' and is painful....  My hernia can rupture, possible strangulation at 'any' time.  I cannot exercise, lift weight ... participate in 'any' rehabilitative programs ... because of this hernia."

---

[1]According to the evidentiary materials filed by Breach, an inguinal hernia occurs when weakness in the abdominal muscles allows a portion of the intestine to push through the abdominal wall.  The bulging portion of intestine is called a hernia.  *Plaintiff's Exhibit I to the Motion for Temporary Restraining Order/Motion for Preliminary Injunction - Court Doc. No. 3-2* at 14.  "A hernia is reducible when the contents of the hernial sac can be replaced into the abdominal cavity by gentle pressure.  An irreducible (incarcerated) hernia cannot be reduced or placed back into the abdominal cavity.  A hernia is strangulated when the blood supply to the herniated segment of the bowel is cut off by pressure from the hernial ring (the band of muscle around the hernia).  If a hernia is strangulated, there is ischemia and obstruction of the bowel loop." *Id.*

*Plaintiff's February 13, 2007 Response - Court Doc. No. 23* at 5-6.  Breach maintains that

he is entitled to surgery on his hernia.

Breach filed a motion for preliminary injunction on December 22, 2006 (Court Doc.

No. 3) and a renewed motion for preliminary injunction on June 19, 2007 (Court Doc. No.

81).  In these motions, Breach requests issuance of a preliminary injunction which requires

that the defendants refer him to a free-world surgeon for all "necessary medical care

including surgery ...." *Plaintiff's Renewed Motion for Preliminary Injunction - Court Doc.*

*No. 81* at 43.   The defendants filed responses in opposition to Breach's motions for

preliminary injunction and additional responses addressing the allegations contained in the

complaint.

## I.  STANDARD OF REVIEW

The decision to grant or deny a preliminary injunction "is within the sound

discretion of the district court...." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002).

This court may grant a preliminary injunction only if Breach demonstrates each of the

following prerequisites:   (1) a substantial likelihood of success on the merits; (2) a

substantial threat of irreparable injury  will occur absent issuance of the injunction; (3) the

threatened injury to Breach outweighs the potential damage the requested injunction may

cause the non-moving parties; and (4) the injunction would not be adverse to the public

interest.  *Palmer*, 287 F.3d at 1329; *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306

*Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983); *Shatel Corp. v. Mao Ta Lumber and Yacht*

*Corp.*, 697 F.2d 1352 (11ᵗʰ Cir. 1983). "In this Circuit, '[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the "burden of persuasion"' as to the four requisites." *McDonald's*, 147 F.3d at 1306; *All Care Nursing Service, Inc. v. Bethesda Memorial Hospital, Inc.*, 887 F.2d 1535, 1537 (11ᵗʰ Cir. 1989) (a preliminary injunction is issued only when "drastic relief" is necessary); *Texas v. Seatrain Int'l, S.A.,* 518 F.2d 175, 179 (5ᵗʰ Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion). The moving party's failure to demonstrate a "substantial likelihood of success on the merits" may defeat the party's claim, regardless of the party's ability to establish any of the other elements. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11ᵗʰ Cir. 1994); *see also Siegel v. Lepore,* 234 F.3d 1163, 1176 (11ᵗʰ Cir. 2000) (noting that "the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper"). "'The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated.' *Northeastern Fl. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fl.*, 896 F.2d 1283, 1284 (11ᵗʰ Cir.1990)." *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11ᵗʰ Cir. 2001).

## II. DISCUSSION

### A. Arguments of the Parties

In his motion for preliminary injunction and renewed motion for preliminary

injunction, Breach challenges the medical treatment provided to him for his left inguinal hernia and requests this court order that he be referred to an outside specialist for treatment to include surgical repair of the hernia. It is therefore clear that Breach does not seek issuance of a preliminary injunction to preserve the status quo of the parties until the merits of his claims have been completely adjudicated which constitutes the limited purpose of a preliminary injunction. *Suntrust Bank*, 268 F.3d at 1265; *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834 (1981). Rather, Breach requests preliminary injunctive relief to alter the status quo and seeks to obtain relief properly sought upon adjudication of the merits of the issues presented in this cause of action but prior to such adjudication.

Breach submits affidavits from outside medical personnel as support for his motions for preliminary injunction. Dr. Satyavardhana Rao Yerubandi, a licensed physician and general surgeon specializing in hernia repair, asserts that based on his review of Breach's prison medical records, it is his "professional opinion that Mr. Breach's inguinal hernia, the opening of his hernia 'cannot' heal itself, neither can any medicine be used to cure the condition, **hernias cannot be medically 'treated' neither can any medicine be used to cure the condition: surgery for Mr. Breach is the only way to cure the defect**. *** In Mr. Breach's case, the long-term course, therefore, is for Mr. Breach's hernia to become steadily worse as time goes on, sometimes slowly and sometimes quickly. The only remedy for his condition to repair the hernia is surgically. *** The imminent danger that

4

Mr. Breach faces is, and if, when Mr. Breach's hernia becomes non-reducible, it will and can become <u>life threatening</u> if part of Mr. Breach's intestine get trapped or 'strangulated' in the opening: this can lead to dangerous complications such as obstruction of the flow of intestinal contents or blood, leading to <u>tissue death and gangrene</u>. I express this opinion because when and if, Mr. Breach's hernia becomes strangulated, it **will** become <u>an emergency situation</u> that will and does usually require immediate surgery because of [potential] complications.... It is advised that surgery is done before this dangerous incarceration and strangulation situation arises." *Plaintiff's Exhibit A to the Motion for Temporary Restraining Order/Motion for Preliminary Injunction - Court Doc. No. 81-2* at 3, 6-7 (all emphasis in original).

In a subsequent affidavit, Dr. Yerubandi states that based on his review of the prison medical records it is his opinion "that Mr. Breach's hernia is progressing which will lead into a dangerous medical situation when it becomes incarcerated, or strangulated, or even into the scrotum." *Plaintiff's Exhibit 2 to the Renewed Motion for Independent Evaluation - Court Doc. No. 124-3* at 2. Dr. Yerubandi asserts his belief that prison medical personnel have breached "accepted standards of care" so "as to amount to deliberate indifference" in their "fail[ure] to refer Mr. Breach to a specialist in hernia repair who regularly see all these kinds of cases because of the <u>danger of incarceration and strangulation of Mr. Breach hernia</u> which will lead to serious medical complication such as <u>tissue death, gangrene</u> -- if Mr. Breach is not timely treated knowing that medically you cannot treat a hernia, surgery

is the only cure to alleviate Mr. Breach's symptoms of pain and discomfort....  Medically, there is no treatment for Mr. Breach's hernia, and the prescription given by Dr. Hobbs [the prison physician] can be called <u>hernia management</u> because, the <u>only treatment is surgery</u>. <u>No mechanism of preventive care is known, and surgical repair is almost always necessary</u>."  *Id.* (emphasis in original).

In their responses to the pending motions for preliminary injunction and in addressing the allegations contained in the complaint, the defendants filed medical records and affidavits of prison health care personnel responsible for Breach's medical treatment. Dr. Michael E. Robbins, a board certified internist and the medical director at Kilby Correctional Facility, provided an affidavit which addresses Breach's claims as follows:

> ....  I am familiar with Mr. Breach and have been involved with the medical services provided to him at Kilby.  In addition, I have reviewed Mr. Breach's Complaint in this action as well as his medical records....
>
> Mr. Breach was first diagnosed with an inguinal hernia in 2005.  An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole."  He has been incarcerated at Kilby Correctional Facility since September 6, 2006.  I have reviewed his medical records and have been actively involved in his medical treatment.  It is noted in a Progress Note from Dr. Bosserman on May 5, 2005 that Mr. Breach does have an inguinal hernia on the left, but it is not into the scrotum....  Dr. Bosserman placed the inmate on limited restrictions of no lifting greater than 25 lbs. and no standing or walking for greater than one hour due to (1) a deformity of his left foot, (2) an ankle brace, and (3) a hernia for which [Dr. Bosserman] prescribed a truss.  In a yearly Health Evaluation dated February 2, 2006, [Breach] made no oral complaints about any pain associated with the inguinal hernia.
>
> Mr. Breach was to be seen on December 21, 2006 for evaluation of his left inguinal hernia but left before his exam could be performed.  It should also be noted that Mr. Breach signed up for Sick Call on October 9, 2006 and October 12, 2006, but signed a Release of Responsibility Waiver and left

before his exam on both dates.  Mr. Breach was examined on December 27, 2006 for evaluation of his left inguinal hernia.  He voiced no other complaints at that time.  It was noted on that date that he was not wearing his truss.  The hernia was noted as being easily reducible, non-strangulated, and is not incarcerated.  Inmate was prescribed a left inguinal truss for 180 days and Percogesic for pain.  He was placed on restrictions of no straining, no lifting more than 20 lbs. and placed in bottom bunk for 180 days.  It was noted at that time that there was no need for surgical referral at present.  In my opinion, the inmate's hernia does not require surgical intervention and I believe surgery is not medically necessary.  The type hernia which Mr. Breach has should not cause the patient any pain nor is it a condition that a reasonable person cannot live with under the conditions and restrictions governing Mr. Breach.

Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complains were evaluated and treated in a timely and appropriate fashion at Kilby Correctional Facility, and that his diagnosed conditions have been treated in a timely and appropriate fashion.

At no time did I or any of the medical or nursing staff at Kilby Correctional Facility deny Mr. Breach any needed medical treatment, nor did we ever act with deliberate indifference to any serious medical need of Mr. Breach....  [I]t is my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate.  Mr. Breach was seen and evaluated by the medical or nursing staff, and was referred to an appropriate care provider or given appropriate care, each time he registered any health complaints at Kilby Correctional Facility.  At all times, Mr. Breach's known medical complaints and conditions were addressed as promptly as possible under the circumstances.

*Court Doc. No. 25-3 -- Exhibit B to the February 14, 2007 Response of Prison Health Services, Inc. ["PHS"] PHS Personnel/Court Doc. No. 86-3 -- Exhibit B to the July 13, 2007 PHS Defendants' Supplemental Special Report (February 14, 2007 Affidavit of Dr. Michael E. Robbins)* at 1-3.  In a supplement to this affidavit, Dr. Robbins responds to the allegations of Dr. Yerubandi.

....    Dr. Yerubandi addresses ... what could happen and/or the

possibilities that could arise in a person with a hernia and this information is correct. However, there are many instances where these possibilities never occur. There are known instances where a person has had a hernia for many years and has never required surgical repair. At the time Mr. Breach was examined by PHS employees at Kilby Correctional Facility, none of these possibilities existed. His hernia is easily reducible, non-strangulated, and is not incarcerated. Therefore, his hernia did not require surgical repair. An inguinal hernia can be treated and surgery is not the only option.

I do agree with Dr. Yerubandi that a hernia does not heal itself. However, a hernia can be treated with restrictions related to lifting, walking, standing and wearing a truss all of which was prescribed for Mr. Breach. Medical records indicate that Mr. Breach arrived at his medical appointments on numerous occasions without wearing his truss and stated he lost it. A truss is used to decrease discomfort and to decrease the possibility of the hernia becoming larger. If Mr. Breach had followed the instructions provided to him by PHS physicians and if he had followed the restrictions placed on him and if he had worn the prescribed truss, these things would in fact keep the hernia from progressing or getting worse. Mr. Breach's hernia is not life threatening and does not require surgical intervention and I believe surgery is not medically necessary.

*Court Doc. No. 86-3 -- Exhibit B to the July 13, 2007 PHS Defendants' Supplemental Special Report (July 12, 2007 Supplemental Affidavit of Dr. Michael E. Robbins)* at 2-3.

On February 6, 2007, correctional officials filed a response supported by the affidavit of Dr. George Lyrene, a physician board certified in internal medicine and the medical director for the Alabama Department of Corrections. In this affidavit, Dr. Lyrene expresses his assessment of Breach's hernia as follows:

I have reviewed the record of Mr. Marcellus Breach. The medical issue he presents is really quite a simple one. He has a small, easily reducible inguinal hernia, for which conservative management with applied support and limitations on heavy lifting are very appropriate. This is a hernia that was present by intake documentation and would be amenable to surgery which was clearly elective at the time of his admission and would clearly not be necessary now.... This is a minor problem ... for which surgery is not

necessary at this time and which is being appropriately managed.

*Court Doc. No. 20-2 -- Exhibit A to the February 6, 2007 Response of Correctional*

*Personnel - Febraury 2, 2007 Affidavit of Dr. George Lyrene* at 1-2.

Dr. William Hobbs, a licensed physician and the medical director for Limestone

Correctional Facility, states that:

> Mr. Breach was first diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole." I have reviewed his medical records and have been actively involved in his medical treatment.
> The following information is based upon my personal knowledge and my review of Mr. Breach's medical records. Mr. Breach prepared a Sick Call Request on April 26, 2007 complaining of burning pain due to his hernia. He stated it was causing him problems coughing, sneezing and with bowel movements. This request was received on April 27th. Mr. Breach claims that Dr. Tassin at South Louisiana Correctional Services stated to him on March 21, 2006 that he needed surgery to repair his hernia. I examined Mr. Breach on April 30th and I noted that ... [h]e did have a large, easy to reduce direct inguinal hernia on the left. I ordered another small Ventura Truss as Mr. Breach stated he had lost his truss. My Physicians' Orders on April 30th indicate that I prescribed Motrin 600 mg as needed for 90 days for his discomfort and CTM SR (a sustained release antihistamine) for coughing and sneezing.
>      ***
> I have ... reviewed the Affidavit of Dr. Satyavardhana Rao Yerubandi in this matter ... and I do not agree with serveral of his opinions as stated. As a general rule, a hernia does not progress quickly and there are instances where a person has a hernia for many years and may never require surgery for repair. Hernia repair is an elective surgery [where the hernia is neither incarcerated nor strangulated]. The danger of waiting for a hernia to become incarcerated or strangulated is not high and emergencies involving hernias do not develop often.
> Mr. Breach's inguinal hernia is being treated in an attempt to keep it from becoming larger and surgery is not his only option. A hernia can be treated with restrictions related to lifting, walking, standing and wearing a

9

truss all of which have been prescribed for Mr. Breach....

*Court Doc. No. 86-2 -- Exhibit A to the July 13, 2007 PHS Defendants' Supplemental*

*Special Report (July 13, 2007 Affidavit of Dr. William D. Hobbs)* at 2-3. Dr. Hobbs, like

Dr. Robbins, noted Breach's failure to act in compliance with the instructions and

restrictions ordered by medical personnel. He also agreed with Dr. Robbins' diagnosis that

"Breach's hernia is not life threatening and does not require surgical intervention and ...

surgery is not medically necessary. His hernia is easily reducible, non-strangulated, and

is not incarcerated." *Id.* at 3-4.

Dr. Hobbs further opines that

> ... [E]very hernia does not need to be repaired. In order for a hernia
> to be repaired, the hernia must meet a certain Protocol ... [which requires]
> that the hernia must be incarcerated or in danger of becoming incarcerated
> or into the scrotum. Mr. Breach does not meet this protocol and his hernia
> is easily reduced. If another physician is suggesting that Mr. Breach's hernia
> should be repaired, this physician is mistaken and he is only trying to
> perform an elective surgery which is unnecessary and is not medically
> needed....
>
> Based on my review of Mr. Breach's medical records, and on my
> personal knowledge of the treatment provided to him, it is my opinion that
> all of his medical conditions and complaints were evaluated and treated in a
> timely and appropriate fashion and that his diagnosed conditions have been
> treated in a timely and appropriate fashion. It is also my opinion that the
> appropriate standard of care has been adhered to at all times in providing
> medical care, evaluation, and treatment to this inmate....

*Id.* at 4.

In their brief addressing Breach's motions for preliminary injunctive relief, the PHS

defendants argue that Breach cannot meet each of the necessary prerequisites for issuance

10

of a preliminary injunction.

The ... evidence already filed with this Court clearly establishes one major factor -- regardless of how physicians have discussed this hernia, the distinctions between the evidence amount to a mere disagreement regarding an opinion as to how to treat a medical condition. Such "disagreements" do not [under well established federal law] constitute "deliberate indifference", a significant legal impediment to this prisoner establishing a "<u>substantial likelihood</u>" of his prevailing on the merits.

... [Although the defendants acknowledge that] a hernia can, under normal circumstances, constitute a "serious medical need[,]" [they argue that] "deliberate indifference" is a significantly higher standard, requiring far more than a mere medical disagreement.... Furthermore, medical differences of opinion do not rise to "grossly inadequate" medical care or medical care amounting to "no treatment at all." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

Prison Health Services has submitted overwhelming evidence that this prisoner's condition (1) has remained stable and treatable for almost 2½ years, (2) that medically, this hernia is not serious or in a position to become more serious given the conservative treatment employed, and (3) that the prisoner's hernia has not been recommended for surgery other than by the plaintiff's own appointed expert.... [W]hat exists here is a difference in medical opinion concerning the treatment of a hernia condition. One group of physicians/medical providers have actually treated the prisoner. The other has not. Under these circumstances, this prisoner cannot establish a substantial likelihood of prevailing on the merits when faced with proving "deliberate indifference."

\*\*\*

The prisoner's second requirement is showing "irreparable injury." Despite the litany of medical evidence, documents, affidavits, and arguments that the prisoner claims supports this position, one fact cannot be ignored. Medical doctors <u>who have actually treated this prisoner</u>, verify in their notes that the prisoner's hernia is in substantially the same condition as it was when first diagnosed.... Here, we have a medical condition that remains stable and treatable for over 2½ years. We have medical providers following a course of treatment that, while conservative, prevent magnification of the problem. There is not [imminent] risk of immediate incarceration of this hernia. As such, this prisoner cannot meet the second burden required for a preliminary injunction to issue.

\*\*\*

The prisoner has a small hernia that has responded well to conservative treatment. Based on the filings in this case, however, it is clear this prisoner is unhappy with his treatment. What the prisoner seeks to do is to overturn a medical provider's ability to diagnose and treat a medical condition as well as alter policies and procedures that govern this very problem.... Issuance of [the requested] injunction would substantially increase the prisoner litigation.... It would encourage prisoners to "second guess" their physicians on all treatments provided not only for hernias, but for any medical condition that a prisoner believes could be handled differently....

                    ***

... An injunction in this case would impose a "de facto freeze" on the ability of medical providers in the correctional system to conservatively treat non-threatening hernia conditions that are clearly not serious in nature.

*PHS Defendants' August 27, 2007 Brief in Response to Plaintiff's Motions for Preliminary Injunction - Court Doc. No. 123* at 4-7.

### B. The Prerequisites

Turning to the first prerequisite for issuance of preliminary injunctive relief, the court considers whether Breach has proven a substantial likelihood of success on the merits. Having reviewed Breach's requests for preliminary injunctive relief and all relevant evidentiary materials filed by the parties, the court concludes that Breach has failed to meet his burden as to this prerequisite. At this stage of the proceedings, Breach simply has not established a ***substantial likelihood*** of success on the merits. The court advises the parties that this determination is merely a decision addressing the plaintiff's likelihood of success and is in no way a determination of the actual merits of the issues pending in this case.

Breach also fails to demonstrate a substantial threat that he will suffer the requisite irreparable injury absent issuance of a preliminary injunction. The third factor, balancing

potential harm to the parties, appears to weigh more heavily in favor of the defendants because issuance of the requested injunction would have an unduly adverse affect on the ability of prison medical care providers to exercise their professional judgment in determining the appropriate course of treatment for inmates.  Finally, the public interest element of the equation is a neutral factor at this juncture.  Thus, Breach has failed to meet his burden of demonstrating the existence of each prerequisite necessary to warrant issuance of a preliminary injunction.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motion for preliminary injunction filed by the plaintiff on December 22, 2006 (Court Doc. No. 3) and the renewed motion for preliminary injunction filed by the plaintiff on June 19, 2007 (Court Doc. No. 81) be DENIED.

2.  This case be referred back the undersigned for additional proceedings.

It is further

ORDERED that on or before November 13, 2007 the parties may file objections to the  Recommendation.  Any objection must specifically identify the findings in the Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in the Recommendation shall bar the party from a de novo determination by the District Court of issues covered in

the report and shall bar the party from attacking on appeal factual findings in the report

accepted or adopted by the District Court except upon grounds of plain error or manifest

injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds*

*Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d

1206 (11th Cir. 1981, en banc), adopting as binding precedent all decisions of the former

Fifth Circuit issued prior to September 30, 1981.

Done this 31st day of October, 2007.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE