IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, #160710

    Plaintiff,

Vs.                                      CASE NO: 2:06-cv-1133-MEF

PRISON HEALTH SERVICES, INC., et al.,

    Defendants.

*MOTION TO ALTER, AMEND, OR VACATE JUDGMENT*
*And/Or REQUEST TO CLARIFY ITS ORDER*

**COMES NOW**, Plaintiff <u>Marcellus Breach</u> (hereinafter "Breach") in proper person "Pro Se," moves this Court pursuant to *Rule 59(e), Federal Rules of Civil Procedures,* to reconsider matters properly encompassed in the decision to deny plaintiff's request under *Rule 35(a), Fed. R. Civ. P.,* "<u>Independent Physical Examination</u>," and or Breach would request unto this Court clarify its reason(s) of the denial that Breach may understand: Breach shows bona fide as follows:[1]

1)   This Court ruled on <u>October 29, 2007</u>, that in <u>light of the responses filed by the defendants</u> and the medical records submitted by the parties, the Court "Denied" Breach's request for independent physical examination.

---

[1] Breach states that although this Motion will reflect personal emotions, Breach's frustration, and physical pain brings to surface anxiety, and emotions especially when Breach has this pain, and is fighting for his health! Breach request that this Court understand his frustration, fighting simply to get proper medical attention and care is so gratuitous.

1

2)   Breach would point out to the Court that the defendants **"did not"** address the present physical condition, the trapped hernia, pain, problems walking, problems having bowel movement, problems standing, coughing, sneezing, no exercising, because of this Soft Ball hernia in Breach's Motion. In addition, Breach will show, that the defendants "did not" address the "present, October 30, 2007, physical condition as the requisite "In Controversy" of Breach's physical condition and simply painted a picture that "not necessary" is contrary to law, and clearly erroneous.

## ISSUE NO. 1
## THERE IS NO BURDEN UPON THE DEFENDANTS THAT BREACH IS SUBMITTED TO AN INDEPENDENT EXAMTION

Breach's motion is governed by Fed. R. Civ. P. 35(a). The general principles under *Rule 35(a)* have been articulated in ***Schlagenhauf v. Holder***, 379 U.S. 104, 13 L. Ed. 2d 152, 85 S. Ct. 234 (1964); ***Robinson v. Jacksonville Shipyards, Inc.***, 118 F.R.D. 525 (M.D. Fla. 1988); and ***Bennett v. White Laboratories, Inc.***, 841 F. Supp. 1155 (M.D. Fla. 1993). Breach must establish that plaintiff's mental condition or physical condition is "in controversy" and must show "good cause" for the mental or physical examination(s). This requires an affirmative showing that the mental or physical condition is "really and genuinely" in controversy and that good cause exists for each particular examination. ***Robinson***, 118 F.R.D. at 527 (citing *Schlagenhauf*). The Court must decide, by making a "discriminating application", whether the "in controversy" and "good cause" requirements have been adequately demonstrated by the production of sufficient information, which allows the

2

Court to perform its function under <u>Rule 35(a)</u>. **Schlagenhauf v. Holder**, 379 U.S. at 118-122. This requires a greater showing than for other types of discovery under <u>Rule 26</u>, Fed. R. Civ. P.

ISSSUE NO. 2.

*PLAINTIFF'S MOTION AND EVIDENCE BEFORE THE COURT REGARDING INDEPENDENT PHYSICAL EXAMINATION PLACED PLAINTIFF'S PHYSICAL CONDITION "<u>IN CONTROVERSY</u>" AS REQUIRED BY RULE 35(a), FED.R.CIV. P.*

<u>Rule 35(a)</u>, Fed. R.Civ.P., has been described as a "powerful instrument for ascertaining the truth." *8 C. Wright & A. Miler, Federal Practice and Procedure § 2231 @ 665-666 (1970).*

POINT A.

*THE "IN CONTROVERSY" PHYSICAL CONDITION IS PLAINTIFF HAS A "TRAPPED HERNIA" "NOT EASILY REDUCIBLE" and SURGERY IS "IN CONTROVERSY"*

Reiterated, and specifically questioning why independent physical examination was denied. There is <u>absolutely</u> no expense burden on the defendants.

Reiterated, under <u>Rule 35(a)</u>, Fed. R.Civ.P., "surgery" can be an "in controversy" requiring an independent examination.

Breach submitted evidence that Breach has unusual pain, <u>problems walking</u>, is in controversy. Breach also explained that his "Trapped" hernia is a controversy. Defendants <u>did not even address Breach's October 30, 2007,</u> date, of his physical condition.

3

²In controversy is **"Surgery"**. The Fifth Circuit addressed "in controversy" regarding surgery in *Meritt v. Stolt Offshore, Inc.*, 2004 U.S. Dist. 1498 (E.D.Tex. 2004) is no different from this case, because **"surgery"** is defiantly in controversy. [See, "Exhibit A"]. In <u>Merritt</u>, the Court held:

> "In this case, defendant has established good cause for the requested neurosurgical consultation. In his October 28, 2003 report, Dr. Bartholomew stated that "I think [plaintiff] is a candidate for a C3-4 ACF [anterior cervical fusion]." Whether surgery is necessary is obviously in controversy. Dr. Parnell is an orthopedist, not a neurosurgeon. His reports state that he does not perform this kind of surgery and defers such decisions to the appropriate specialist, a neurosurgeon. Thus, it appears that when addressing alleged neck injury surgery recommendations, neurosurgical consultation in conjunction with examination by an orthopedist is not only common but also medically prudent. It appears especially important in the search for truth that should be occurring in this case that a neurosurgical consultation occur before any surgery which plaintiff might elect. The fact that defendant selected and had plaintiff examined by an orthopedist for orthopedic complaints does *not* preclude his examination for good cause shown by a specialist in another field. " Id.

Both, Dr. <u>John A. Tassin, M.D., and Dr. Yerubandi, M.D.</u>, have stated that Breach's needs surgery. Defendants state that surgery is not necessary. Therefore, Surgery is unquestionably "in controversy", and Breach ought to be allowed to be examined by his expert in hernia repair.

Breach has problems **coughing, sneezing, bowel movements**, is a physical condition that defendants simply stated, and this Court adopted as "not necessary"?

---

Defendants did not address any of the in controversy physical symptoms complained in Breach's Motion. Defendants simply stated "not necessary" just like surgery is "not necessary' when Breach is the one having this pain.

4

Breach request that this Court look at the physical pain and permanent injuries in this case, the physical restrictions due to his injury. May this Court be mindful, <u>April 30, 2007</u>, was the last date Dr. Hobbs examined Breach. Breach supported his Motion that his hernia is progressing, and enlarged, trapped, non-easily reducible, and causes pain is "in controversy".

Breach has to depend on this Court to protect his right against the "unnecessary wanton infliction of pain" due to a **"Soft Ball"** hernia that **"Is Not"** easily reducible". Defendants <u>did not address</u> "Soft Ball" nor did they address non easily reducible hernia" as of October 30, 2007. <u>Hernias get worse, they do not get better</u>. Hernias are unpredictable; they can rupture at any time. Breach's hernia goes into his scrotum: this is in controversy.

Furthermore, defendants did not address the permanent injures Breach has suffered due to his hernia that is subjecting him to endure pain.

Evidence is before this Court governing public information concerning the danger of a trapped hernia, because Breach's intestines are getting caught, and can't be worked back into proper place. A trapped hernia is the second phrase when the last phrase is a "strangulated" hernia, which is a life or death situation.

The United States Supreme Court did not say, only when a prisoner's physical health is a life or death emergency situation, they relief can be granted. Defendants want to wait until Breach is near death, before they will even think about surgery, is cruel and

5

unusual punishment, when continuing subjecting Breach to pain. The Eight Amendment to the United States Constitution protects, against "unnecessary wanton infliction of pain".

The Rule of Federal Procedures governing independent physical examination, *Rule 35(a)* states that Breach's doctor can conduct an independent physical examination when Breach has places his physical condition in controversy. There is absolutely no prejudice to the defendants allowing this examination. Breach carries the burden of expenses to cover the examination, not the medical defendants.

Secondly, Courts have reasoned that IME's are often necessary, even when the plaintiff's medical records are available, because "there are few, if any, acceptable substitutes for a personal physical examination for forming a meaningful opinion." See, ***Ali v. Wang Lab, F.R.D.*** 165, 168 (M.D. Fla. 1995).

*Rule 35(a), Fed. R. Civ. P.*, permits Breach's expert to examine him for purposes of ascertaining the truth, and proximate cause and extent of Breach's injury. Furthermore, the expert needs to examine Breach's current physical condition when his hernia is "<u>**trapped**</u>" because it is basically cruel and unusual pain. Breach alleged in his Motion that he has permanent injuries / restrictions as a result of this untreated hernia, i.e., **lifting, range of motion and ability to work, difficulty standing, walking, bowel movements, urinating, coughing, sneezing, exercising, pain.**

This Court had before it Dr. Yerubandi's opinion expressing that Dr. Hobbs breached the accepted standards of care by failing to refer Breach to a specialist in hernia repair who regularly see all these kinds of cases because of the danger of incarceration and strangulation of Breach's hernia which will lead to a serious medical complications such as tissue death, gangrene – if Breach is not timely treated knowing that you cannot treat a hernia, surgery is the only cure to alleviate Breach's symptoms of pain and discomfort. Dr. Yerubandi also stated that "under the standard of care for someone suffering from burning pain, pain when coughing, sneezing, and having bowel movements and, as complained by Breach having to lift his left leg up and apply pressure on his hernia: primary care physicians refer patients for surgical management." [See, *Affidavit Dr. Yerubandi M.D., p.2*]

This Court also has before it Breach's Affidavit complaining of his physical condition being "**trapped**" and can't get out, descending onto his testicles describing his permanent restrictions. These issues were not addressed in the defendant's response.

[3]What is most important are the permanent injuries sustained by Breach that warrants independent physical examination. Here, by asserting permanent restrictions resulting from denial of surgery warrants independent physical examination. Breach has placed his physical condition in controversy and provided Defendant with good cause

---

[3] May the Court be mindful, that tissue death, gangrene, nerve entrapment are damages resulting from an untreated hernia.

7

for an examination to determine the existence and extent of his asserted injuries. *See* Schlagenhauf, 379 U.S. at 116-17.

**Permanent injuries** are in controversy, there is the possibility and probability that as a result of being denied surgery, Breach can have a showing of infections, gangrene, nerve entrapment, tissue death, resulting from this untreated hernia. [See, Dr. Yerubandi's Affidavit Preliminary Injunction]

The testimony of an expert is a well recognized and reasonable way of [challenging Defendants position, defenses, treatment and testimony], and an examination of plaintiff by that expert is necessary for the expert to form a meaningful opinion." *Ali v. Wang Laboratories, Inc.*, 162 F.R.D. 165, 168 (M.D. Fla. 1995).

**WHEREFORE, *premises considered***, Breach request unto this Court to consider, and grant what this Court deems fair and appropriate.

Done this 30th Day October 2007.

/s/ Marcellus T. Breach ®
_____
Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

8

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have served a true copy of the foregoing upon the following by U.S. Mail, First Class, postage prepaid and properly addressed to and mailing through the prison mail box system on this 30th Day of October 2007.

Alabama Dept. Of Corrections
Legal Division
P.O. Box 301501
Montgomery, Alabama 36130

Rushton, Stakely, Johnstone & Garrett, P.A.
P.O. Box 270
Montgomery, Alabama 36101

®_____
Marcellus Breach

Marcellus Breach 160710 AIS
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Al 35749

Office of the Clerk
United States District Court
P.O. Box 711
Montgomery, Al 36101

This correspondence is forwarded from
an Alabama State Prison. The contents
have not been evaluated and the Alabama
Department of Corrections is not
responsible for the substance or content
of the enclosed communication.





**EXHIBIT A**

**DAVID MERRITT VERSUS STOLT OFFSHORE, INC.**
**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF LOUISIANA**
**2004 U.S. Dist. LEXIS 1498**
**CIVIL ACTION NO. 03-2537 SECTION "A" (2)**
**February 3, 2004, Decided**
**February 3, 2004, Filed, Entered**

**Summary:**

**Posture:**
Plaintiff sought damages resulting from alleged injuries to his neck, knee, back and shoulder. Early in the case, defendant selected and had plaintiff examined by a qualified orthopedist. Defendant later requested plaintiff's consent to a neurosurgical consultation at defendant's expense by a certain neurosurgeon prior to any surgery. Plaintiff refused. Defendant moved to compel a medical examination under Fed. R. Civ. P. 35.

**Cite overview:**
Defendant established good cause for the requested neurosurgical consultation; fact that defendant had plaintiff examined by an orthopedist for orthopedic complaints did not preclude examination for good cause shown by specialist in another field.

**Overview:**
The court found that defendant established good cause for the requested neurosurgical consultation. A neurosurgeon who had examined plaintiff at plaintiff's choosing stated that plaintiff was a candidate for an anterior cervical fusion. Whether surgery was necessary was in controversy. The orthopedist who had examined plaintiff at defendant's request stated that he did not perform anterior cervical fusion surgery and deferred such decisions to the appropriate specialist, a neurosurgeon. Thus, it appeared to the court that when addressing alleged neck injury surgery recommendations, neurosurgical consultation in conjunction with examination by an orthopedist was not only common but also medically prudent. It appeared especially important in the search for truth that a neurosurgical consultation occur before any surgery which plaintiff might elect. The fact that defendant selected and had plaintiff examined by an orthopedist for orthopedic complaints did not preclude his examination for good cause shown by a specialist in another field.

**Outcome:**
Defendant's motion was granted.

**Concepts:**
By its terms, Fed. R. Civ. P. 35 vests wide discretion in the trial court to determine (1) whether to require examination; (2) the type and number of examinations, as indicated by the reference to "the person or persons by whom" examination is to be made contained in the Rule's final sentence; and (3) the terms, conditions and scope of the examination. Examinations under Rule 35 may be ordered "only on motion for good cause shown" and are not limited to examination by a single expert. While some state courts have refused to order examination by more than one physician, such a limitation is wholly inconsistent with the realities and complexities of modern medical practice. When specialists from various branches of medicine are required, there is nothing in Rule 35 to prevent the

10

court from ordering examination by all of them, as long as the condition to be examined is "in controversy" and "good cause" is shown.

**Disposition**     Defendant's motion to compel a Rule 35 medical examination of plaintiff GRANTED.

**Counsel**     For David Merritt, PLAINTIFF: George Warren Byrne, Jr, Randy Jay Ungar, Kristi Ann Post, Gregory T Discon, Ungar & Byrne, New Orleans, LA USA. For Stolt Offshore Inc, DEFENDANT: Ralph E Kraft, Jessica Ann Devitt, Preis, Kraft & Roy, Lafayette, LA USA.

**Judges:** JOSEPH C. WILKINSON, JR, UNITED STATES MAGISTRATE JUDGE.

**Opinion**

**Opinion by:**     JOSEPH C. WILKINSON, JR

Defendant's motion to compel a Rule 35 medical examination of plaintiff is currently pending before me in this case. Record Doc. No. 8. Having considered the record, the written submissions of the parties and the applicable law, IT IS ORDERED that defendant's motion is hereby GRANTED.

> In this case, plaintiff seeks damages resulting from alleged injuries to his neck, knee, back and shoulder. Early in the case, defendant selected and had plaintiff examined by a qualified *orthopedist,* Dr. Melvin Parnell, Jr.

> Thereafter, plaintiff received medical treatment on August 26, 2003 from a *neurosurgeon* of his counsel's choosing, Dr. Bradley Bartholomew. Dr. Bartholomew issued reports dated August 26 and October 28, 2003 (defendant's Exhibits C and D to its motion to compel medical exam). In his October 28 report, Dr. Bartholomew suggested that plaintiff undergo an anterior cervical fusion.

> Plaintiff subsequently saw Dr. Parnell again. Dr. Parnell did not address Dr. Bartholomew's recommendation for plaintiff to undergo an anterior cervical fusion and advised in writing that he does not perform cervical spine surgery and refers surgery patients to Drs. Schuhmacher, Corales, Miranne and Dowd (defendant's Exhibit F to its motion to compel). This advice was consistent with a statement contained in Dr. Parnell's letter of October 28, 2003 (part of in globo Exhibit A to plaintiff's opposition memorandum), in which Dr. Parnell stated that "I told [plaintiff] that if this problem persists, he may require surgery, *but I would leave it up to a neurosurgeon to make that decision."*

> When defendant requested plaintiff's consent to a neurosurgical consultation at defendant's expense by neurosurgeon, Dr. John Schuhmacher, prior to any surgery, plaintiff refused (defendant's Exhibits G and H to its motion to compel). Defendant's motion to compel followed. As ordered by the court, plaintiff has filed its written opposition with a copy of Dr. Bartholomew's surgery recommendation, Record Doc. No. 10, and defendant has provided the court with a date for the proposed examination (letter attached for filing in the record).

> Fed. R. Civ. P. 35(a) governs this issue. By its terms, Rule 35 vests wide discretion in the trial court to determine (1) whether to require examination; (2) the type and number of examinations, as indicated by the reference to "the person *or persons* by

11

whom" examination is to be made contained in the Rule's final sentence; and (3) the terms, conditions and scope of the examination. Examinations under Rule 35 may be ordered "only on motion for good cause shown" and are not limited to examination by a single expert. While some state courts have refused to order examination by more than one physician, "such a limitation is wholly inconsistent with the realities and complexities of modern medical practice. When specialists from various branches of medicine are required, there is nothing in Rule 35 to prevent the court from ordering examination by all of them," as long as the condition to be examined is "in controversy" and "good cause" is shown. 8A C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure* sec. 2234.2 at 488-89 and cases cited at n.9 (1994).

For example, in *Schlagenhauf v. Holder,* 379 U.S. 104, 13 L. Ed. 2d 152, 85 S. Ct. 234 (1964), the trial court ordered examinations of the plaintiff under Rule 35 by nine doctors in four separate fields of specialty. The United States Supreme Court ultimately vacated the district judge's order, but it did not question that exams had been ordered in four different areas of medical specialty. Instead, the Court found only that the necessity for each exam was not at that time supported by the record in the case. *Id.* at 120. Thus, the emphasis of the Supreme Court in *Schlagenhauf* was on the need for a proper showing before a Rule 35 motion should be granted. The decision in no way purports to limit the order or number of examinations where a proper showing is made.

In this case, defendant has established good cause for the requested neurosurgical consultation. In his October 28, 2003 report, Dr. Bartholomew stated that "I think [plaintiff] is a candidate for a C3-4 ACF [anterior cervical fusion]." Whether surgery is necessary is obviously in controversy. Dr. Parnell is an orthopedist, not a neurosurgeon. His reports state that he does not perform this kind of surgery and defers such decisions to the appropriate specialist, a neurosurgeon. Thus, it appears that when addressing alleged neck injury surgery recommendations, neurosurgical consultation in conjunction with examination by an orthopedist is not only common but also medically prudent. It appears especially important in the search for truth that should be occurring in this case that a neurosurgical consultation occur before any surgery which plaintiff might elect. The fact that defendant selected and had plaintiff examined by an orthopedist for orthopedic complaints does *not* preclude his examination for good cause shown by a specialist in another field.

Accordingly, defendant's motion is GRANTED, and **IT IS ORDERED** that plaintiff must appear on **February 16, 2004 at 11:30 a.m.** for a Rule 35 neurosurgical examination and evaluation by Dr. John Schuhmacher, including x-rays if ordered, at Dr. Schuhmacher's office, Neurological Consultants, L.L.C., 4228 Houma Boulevard, Suite 510, Metairie, Louisiana. The court is familiar with the qualifications of Dr. Schuhmacher and finds that he is a "suitably licensed or certified examiner" in the field of neurosurgery.

JOSEPH C. WILKINSON, JR

UNITED STATES MAGISTRATE JUDGE

12