# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### MIDDLE DIVISION

MARCELLUS BREACH, #160710,

    Plaintiff,

Vs.

PRISON HEALTH SERVICES, INC.,

    Defendants.

\*

\*

\*    CASE NO: 2:06-CV-1133-MEF

\*

\*

## MOTION IN REQUEST FOR RECONSIDERATION OF THE ORDER AND RECOMMENDATION DENYING PRELIMINARY INJUNCTIVE RELIEF/ NEWLY RESUBMITTED EVIDENCE

**COMES NOW**, Plaintiff _Marcellus Breach_ (hereinafter "Breach"), in proper person "Pro Se," request unto this court to "revisit" and "reconsider" the merits of Breach's "_Application for Preliminary Injunction_" [1]**[Court Doc. 3, 81 & 121, 128, 134]** and the Order and Recommendation entered:  Breach shows bona fide as follows:  Breach maintains that requesting to Appeal to the District Court regarding this non-dispositive issue would be time consuming,. 28 U.S.C., 1292(a) because Breach will still be enduring gratuitous pain.  Reconsideration is appropriate.

---

[1] The Court did not address Doc No's. 121, 128, 134 in its Order and Recommendation for preliminary Injunction on October 31, 2007.

¶ 1.    [2]    Throughout this entire litigation **Dr. John A. Tassin, M.D.**, order and recommendation on 3/21/06 that Breach's "Inguinal Hernia Needs Repair?" has been basically "washed down the judicial tube" and this case, being lead on the direction of the medical defendants based on their ingenuity; because, defendants have been ingenious contorting this court's review of the "facts" through means of "clouding the Record" with their PHS medical records and opinions from their doctors who are defendants, and have basically concealed several medical documents.

However, Breach request in the interest of justice that the court revisit its order and recommendation because evidence is now before it of **Dr. John A. Tassin, M.D., Affidavit** explaining to the court that he did in fact state/ write on the "South Louisiana Correctional Center, Medical Records" "Doctor's Order" which is an attestation of the medical records that have been submitted by Breach regarding the outset of the Complaints and allegations of surgery -- Breach's inguinal needed repair, also, that

---

[2] **Breach redirects this Court to adopt revisit the sequence of events that has been consistently ignored throughout this entire litigations:**

1.    3/21/06 Dr. Tassin notes Inguinal Hernia Needs Repair, Tassin questions whether repair will be necessary;

2.    7/10/06 Louisiana faxes a report to Ruth Naglich in reference to inguinal hernia inmate requesting repair;

3.    7/12/06 two days after, Brandon [Kindard] ADOC calls Louisiana instructions no repair unless hernia is incarcerated or into scrotum;

4.    Six (6) days later, examined by Dr. Tassin, conclusion hernia not incarcerated or into scrotum.

5 .    Surgery has been denied ever since.   Breach request that the Court adopt these allegations are facts into the record. See, Affidavit Dr. John A. Tassin, and his attached medical records.

surgery was not absolutely required at that time, but that he felt that he needed to look into the question of whether or not it did need repair.  Tassin states: [Exhibit "B"]

> **"My notes reflect that I wrote "needs repair?" which indicated that I was questioning whether or not his hernia was going to need a repair. This notation did not reflect that I felt that his hernia actually needed a repair or required repair, but only that I needed to look into the question of whether or not it did need repair."  [See, Exhibit B, ¶ 2, Affidavit of Dr. John A. Tassin, M.D.,]**

¶ 2.    Breach submitted Louisiana Medical Records, **Exhibit "D"**, **pg # 53** of the "*Renewed Application for Preliminary Injunction*" [Court Doc. 3, 81]

¶ 3.    Breach also submitted the second part of the Louisiana Medical records the "nurse's notes" **Exhibit "E", p. 54** [Court Doc. 81] of the "*Renewed Application for Preliminary Injunction,*" evidence that "ADOC, that on 7/12/06 [this Protocol, interfered with medical investigation because Breach's hernia was not incarcerated], defendant Brandon Kindard, called Diana Lott in Louisiana stating instructions concerning the repair of Breach's hernia stating: [See, Exhibit "B" Medical Records attached]

> **"Received a call from Brandon [Kindard] from Alabama re' Inguinal Hernia – stated hernia repairs are not done their – unless incarcerated or into scrotum ... 'subject placed on sick call for 7-18-06 to see if he needs a referral to a surgeon." {See, page 22 Court Doc. 81, Exhibit E, page 54]**

Dr. John A. Tassin, M.D., stated in his Affidavit, that basically, he could do nothing to further investigate whether Breach needed surgery because circumstantial evidence shows that some five (5) days after medical staff in Louisiana faxed a report to Ruth Naglich inquiring approval for costs for Breach's to receive surgery, on 7/12/06,

defendant Brandon Kindard called Louisiana with instructions that Breach cannot have surgery <u>unless his hernia is incarcerated or into the scrotum</u>:  Dr. Tassin on <u>7/18/07</u> reexamines Breach, and notes that Breach's hernia is not into the scrotum.  Dr. Tassin states:

> **"Additionally, on page 20 of Marcellus Breach's records on July 12, 2006 the Alabama Department of Corrections did not require that hernia repair be done unless the hernia was incarcerated or was into the scrotum.   Marcellus Breach's hernia, on July 18, 2006 was not incarcerated nor into his scrotum".**

¶ 4.    Breach argues unto this court, that this court <u>has not, ever addressed these facts</u> in either Order and Recommendation on <u>*February 23, 2007*</u>, nor on <u>*October 31, 2007*</u>, because this court is clouded with 90% of irrelevant PHS medical records; Breach urges that this court direct its attention to the grave issues of this case, starting with the medical records of Breach from South Louisiana Correctional Center:  Furthermore, PHS had absolutely nothing to do with the Protocol, <u>while</u> Breach was in Louisiana, but, PHS defendants are involved because they never once, followed up on Tassin's inquiry of whether Breach needed surgery because it would require an expert in hernia repair to properly diagnose Breach's hernia, "before" incarceration, strangulation, or into the scrotum as to whether surgery is necessary:  defendants have waiting until the life or death situation arises before taking action subjects Breach to "pain and suffering"  A Protocol overrides doctors decisions in this case, and the protocol is the very proximate cause of pain and suffering in this case.  However, Breach submits the Affidavit of Dr. Yerubandi, a 27

years non-prison surgeon in hernia repair, who has stated several opinions, and

depreciates strongly to the standard of care that is administered by the medical

providers, including Dr. John A. Tassin, M.D.

This Court ruled on *February 23, 2007:* [3]

"Breach maintains that on March 21, 2006, Dr. John A. Tassin, a physician at the private prison in Louisiana to which he had been transferred by the Alabama Department of Corrections, prepared "a 'doctor repair' and recommendation ... that plaintiff's inguinal hernia 'needs repair.' ... {O]n 7-12-06 the Alabama Department of Correction's Commissioner's Office [through] defendants Ruth Naglich 'denied' approval of costs for plaintiff to receive surgery as recommended ...  " Plaintiff's Complaint – Court Doc. No. 1 at 7."

"Counsel filed a responses in compliance with this order, including affidavits from medical personnel and copies of Breach's medical records, which specifically refute the allegations made by Breach that he has been denied necessary medical treatment." [See, p.3 ¶.1 ]

* * *

. . . "Although Breach may have been recommended for surgery in March of 2006, such does not establish imminent danger at the time he filed this case in December of 2006." [p. 7, ¶ 1]  . . .  "Breach's mere lay conjecture that surgery on his hernia is medically necessary at this time is refuted by the affidavits of two physicians board certified in internal medicine. . . ."

¶ 5.    This Court's *October 31, 2007* Order and Recommendation, does not appear at all

to address *Dr. John A. Tassin, M.D.*, as the very first doctor who diagnosed Breach with a

---

[3] **This Court withdrew it February 23, 2007 Order and Recommendation in this case.  Breach only shows that the evidence of Dr. Tassin has been ignored, covered up, and this case states with 3-21-06 Medical Records from Louisiana.  Breach request that this Court recognize that this Case must "travel" at the very grave of this issue with Dr. John A. Tassin, M.D., first, before, PHS was involved, then, this case can move forward under the direction of the inadequate standard of care that is applied statewide, and this Protocol that has caused this injury.**

inguinal hernia, and also, questioned whether Breach was going to need surgery is "serious," because, it was determined and questionable whether surgery was necessary by Dr. Tassin, the very first, treating physician.

It is already long established in this circuit, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted). In either of these situations, the medical need must be "one that, **if left unattended, 'pos[es] a substantial risk of serious harm**.'" *Taylor*, 221 F.3d at 1258 (alteration in original) (quoting *Farmer*, 511 U.S. at 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 ). See, *Mincey v. Dele Cerna, etc; et al.*, U.S. Dist. LEXIS 21274, March 12, 2007 (M.D. Fla. 2007)

### STATEMENT OF THE ISSUES PRESENTED THAT ARE REQUESTED FOR REVISIT AND RECONSIDERATION

### ISSUE NO. 1

### WHETHER BREACH'S REQUEST FOR A PRELIMINARY INJUNCTIVE RELIEF IS "REQUESTED" TO THIS COURT TO "ALTER THE STATUS QUO TO OBTAIN RELIEF PROPERLY SOUGHT UPON ADJUDICATION OF THE MERITS OF THE ISSUES PRESENTED IN THIS CAUSE OF ACTION BUT PRIOR TO SUCH ADJUDICATION" [P. 4, ¶ 1, Order and Recommendation]

**NO!**   *If It May Please The Court*, "apples and oranges do not mix.  The Eighth Amendment and the *Copyright Act of 1976* are two totally distinguishable First and Eighth

Amendment proscriptions against prisoners being protected from punishment can constitute "cruel and unusually punishment" and, "intentionally interfering with medical treatment once prescribed" by the Supreme Court is an example of unconstitutional "deliberate indifference" to prisoner's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S.Ct. 285 (1976).  In copyright law, the balance between the First Amendment and copyright is preserved, in part, by the idea/expression dichotomy and the doctrine of fair use. See, *Eldred v. Reno*, 239 F.3d 372, 375 (D.C. 2001)

This court cites *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 157, 1265 (11th Cir. 2001) in its decision not to grant Breach relief from pain.   In *Suntrust,* that case is distinguishable from this case at bar because *Suntrust* dealt with "Copyright Act of 1976". In *Suntrust,* that case regarding a preliminary injunction called for an analysis of whether the preliminary injunction was properly granted against an alleged infringer who, relying largely on the doctrine of fair use, made use of another's copyright from comment and criticism. Breach "screams" that Copyright Law, has nothing to do with: **(i) medical treatment; (ii) the Standard of Care regarding medical care under the Alabama Medical Libility Act, § 5-6-481, et seq., and § 6-5-542 et seq., Code of Alabama, (1975).**

## POINT A

## APPROPRIATENESS OF INJUNCTIVE RELIEF

"The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated. *Suntrust,* 268 F.3d @ 1265; quoting *Northeastern Fl. Chapter of Ass'n of Gen. Contractors of Am. V. City of Jacksonvill, Fl.*, 896 F.2d 1283, 1284 (11th Cir. 1990).

Breach <u>suffers from pain</u>. Breach has properly alleged that his Hernia is <u>progressing, getting worse, more painful, problems walking, bowel movements, and falls unto his left testicle.</u> The Court has evidence and a load of public information regarding Hernias, and that they must be repaired through surgery: Dr. Yerubandi, M.D., a surgeon speaks and further supports this public information, that the only way to "stop" a hernia from getting worse is to repair the defect through surgery. Evidence to this court is that waiting until Breach's hernia become strangulated, incarcerated to into the scotum is a "<u>Life or Death Situation</u>". The status quo, is to intervene and stop Life or Death situation from arising.

Breach further demonstrates that he will suffer irreparable harm if a preliminary injunction order does not issue. This Court has adopted Dr. Yerubandi's opinions, a licensed physician and general surgeon specializing in hernia repair, who asserted that based on the medical records, it is his professional opinion that Breach's inguinal hernia, the opening of his hernia **'cannot'** heal itself, neither **can any medicine be used to cure**

the condition, hernias **cannot be medically 'treated'** neither **can any medicine be used to cure the condition; surgery for Breach is the only way to cure the defect**. The long term course, therefore, is for Breach's hernia to **become steadily worse as time goes on, sometimes slowly and sometimes quickly.** The only remedy for his condition to repair the hernia surgically. *** The imminent danger that Breach faces is, and if, when Mr. Breach's hernia becomes non-reducible, **it will and can become life threatening** if part of Breach's intestine get trapped or 'strangulated' in the opening: this can lead to dangerous complications such as obstruction of the flow of intestinal contents or blood, <u>leading</u> to tissue death and gangrene. Yerubandi, expressed this opinion because when and if, Breach's hernia becomes strangulated, it **will** become an emergency situation that **will** and does usually require immediate surgery because of **potential** complications. Yerubandi advised this Court that surgery be done **before** this dangerous incarceration and strangulation situation arises. See, *Plaintiff's Exhibit A to the Motion for Preliminary Injunction – Court Doc. No. 81-2 @ 3, 6-7*

Furthermore, a subsequent affidavit, Dr. Yerubandi states that based on his review of the prison medial records it is his opinion "that Mr. Breach's hernia **is progressing** which **will lead into a dangerous medial situation when it becomes incarcerated**, or **strangulated, or even into the scrotum**." *Plaintiff's Exhibit 2 of the Renewed Motion for Independent Evaluation – Court Doc. No. 124-3 at 2.*

Yerubandi, expressed that an independent evaluation <u>was necessary</u> to determine the extent of Breach's hernia, <u>whether he is in danger of more serious medical complications.</u>[i]

Yerubandi expressed that it was his professional belief as a Surgeon, a specialist in hernia repair that prison medical personnel have breached the "acceptable standards of care" so as to amount to deliberate indifference "in their failure to refer Breach to a specialist in hernia repair who regularly see all these kinds of cases because of incarceration and strangulation of Breach's hernia which will lead to serious medical complications such as tissue death, gangrene – if Breach is not timely treated knowing that medically you cannot treat a hernia, surgery is the only cure to alleviate Breach's symptoms of pain and discomfort.... Medically, there is no treatment for Breach's hernia, and the prescription given by Dr. Hobbs [the prison physician] can be called hernia management because, the only treatment is surgery. **No mechanism of preventive care is known, and surgical repair is almost always necessary.**"

In ***Delker v. Maass***, 843 F. Supp. 1390 (D.Or. 1994) the Court held: " . . . [A] federal court is <u>not required to blindly defer to the judgment of prison doctors</u> or administrators

---

[i] The Delker v. Maass, 843 F. Supp. 1390 (D.Or. 1994)(The district court found the plaintiff had been injured by the delay in treatment. The district court also rejected "any suggestion that prison officials may avoid their duty to provide medical treatment by the simple expediency of labeling such a treatment as 'elective'". Id. @ 1399. The Court stated: "The classification of surger as "elective" does not abrogate the prison's duty, or power, to promptly provide necessary medical treatment for prisoners." Id.

in determining whether there has been deliberate indifference to an inmate's serious medical needs." Id. @ 1398 the Court further stated: . . . [A] federal court need not defer to a prison doctor's legal opinion as to the extent of the state's duties under the Eighth Amendment.

A judgment after a trial will not save Breach from present and further medical complications. Waiting until trial to obtain an injunction for surgery, **will not tone down the present pain**, nor stop Breach's hernia from progressing, nor with it stop the unbearable pain he is experiencing. Preliminary injunction ought to be seen differently than that of a Copyright case, *Suntrust.*

### ISSUE NO. 2

*WHETHER PRESERVING THE STATUS QUO, IN THIS PLAINTIFF'S PHYSICAL CONDITION PREVENT THE SUBSTANTIAL THREAT OF IRREPARABLE INJURY / THE CURRENT DETERIORATION OF PLAINTIFF'S HEALTH / THAT CAN LEAD TO AN EMERGENCY MEDICAL LIFE OR DEATH SITUATION*

Breach argues that the "Status Quo" in this Case is his physical condition, and threat to good health. Breach urges that this Court ought to look at the possibilities of further deterioration to his physical health, his current physical restrictions, **i.e, pain having bowel movement, intestine dropping unto his left testicle, hernia getting "trapped"** are dangerous symptoms, and the sever medical complications such as tissue death, gangrene, and death if not timely treated.

Preliminary injunctions require four requisites: (i) a substantial **likelihood** of success on the merits; (ii) a **substantial threat of irreparable injury** will occur absent issuance of the injunction; (iii) **the threatened injury** to Breach outweighs the potential damage the requested injunction may cause the non-moving parties; and (iv) the injunction would not be adverse to the public interest. *Palmer,* 287 F.3d @ 1329.

**Status Quo,** is defined "The settled condition or state. The state of affairs before change or alteration. *Ballentines's Law Dictionar,* 3rd  1969.

Preliminary injunction requires "**substantial likelihood** of success on the merits, and **substantial threat of irreparable injury**" Breach cites both Webster's New Collegiate Dictionary and Black's Law Dictionary for the proposition that "the plain meaning of 'likelihood' is 'probability.'" Next, Breach notes that Black's Law Dictionary further defines "**probability**" as "a condition or state created when there is more evidence in favor of the existence of a given proposition than *there is* against it." *See* ***Turnpike Nissan, Inc., v. Nissan Motor Corp.,*** 150 B.R. 345, 346 (M.D. Pa. 1992) .

Temporary restraining order are designed to protect against irreparable harm and preserves the status quo [Breach's health] until a meaningful decision on the merits can be made.   A substantial likelihood of success on the merits requires a showing of only **likely or probable**, rather than certain success. Where the balance of the equities weighs heavily in favor of granting an injunction the plaintiffs need only show a substantial case

on the merits.    Again the critical issue is whether Breach has established a substantial likelihood of success on the merits by requesting that this Court order defendant to provide him with surgery.   A substantial likelihood of success on the merits requires a showing of only *likely* or *probable*, rather than *certain* success. **Home Oil Co. v. Sam's East, Inc.,** 199 F. Supp. 2d 1236, 1249 (M.D. Ala. 2002) *(emphasis in original).* Where, as here, the "balance of the equities weighs heavily in favor of granting the [injunction]" the Plaintiffs need only show a "substantial case on the merits." **Garcia-Mir v. Meese**, 781 F.2d 1450, 1453 (11th Cir. 1986) ..   The equity, in this case is *"Breach's health"*, not how many lawsuits may be filed by other prisoners that is speculations.

### POINT A.

### WHETHER DENIAL OF SURGERY IGNORES A MEDICAL CONDITION WHICH CAUSES SIGNIFICANT PAIN, SO THAT REQUIRING PLAINTIFF TO ENDURE IT WITHOUT REMEDY CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT?

In *Faulker v. Griffith, Jr., et al*, 1995 U.S. Dist. LEXIS 1150 (E.D. Tex. 1995) the District Court addressing an inguinal hernia case held: "The issue is not whether plaintiff has been classified as needing surgery, because such classification may be arbitrary, but whether denial of surgery ignores a medical condition which causes significant pain, so that requiring plaintiff to endure it without remedy constitutes cruel and unusual punishment.   This question is better settled by a trier of fact than on a dispositive motion."

This Court ruled turning its attention to the first prerequisite for issuance of preliminary injunctive relief, the court considered whether Breach has proven a substantial likelihood of success n the merits. The court concluded that Breach did not meet his burden as to this prerequisite. The Court held that "[a]t this state of the proceeding, Breach simply, has not established a substantial likelihood of success on the merits." [Court Order Doc. 193].

However, the court identified that the medical defendants "theory" that Breach's case is traveling under "medical differences of opinion" that does not "rise to "grossly inadequate" medical care or medical care amounting to "no treatment at all." Medical defendants citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) in their brief before the court.

## ISSUE NO. 3

### *WHETHER THE "STATUS QUO" and CONSIDERING THE EVIDENCE, WILL BE STRONGLY COMPROMISED WITHOUT THE INJUNCTION DUE TO DEFENDANTS "GROSSLY INCOMPETENT and NO TREATMENT AT ALL" WARRANTS PRELIMINARY INJUNCTION. [See Exhibit "A". Affidavit Dr. Yerubandi M.D. ]*

It is well established that the "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment.'" *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed. 2d 251 (1976)(quoting, *Gregg v. Georgia*, 428 U.S. 153, 182-83, 96 S.Ct. 2909, 49 L.Ed. 2d 859 (1976)). The Eleventh Circuit has held that deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less

efficacious course of treatment. See, *Steele v. Shah*, 87 F.3d 1266, 1269-70 (11th Cir. 1996); *Waldrop v. Evans*, 871 F. 2d 1030, 1035 (11th Cir. 1989); moreover, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Mandel*, 888 F.2d @ 789; *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir. 1985).   In this case, there is <u>no treatment for a hernia.</u>  **A hernia causes constant pain**.  Deliberate indifference will be, and is clearly established through *Exhibit "A"*, Dr. Yerubanid's Affidavit stating that the defendants have acted deliberate indifferent to Breach's medical needs, their treatment <u>amount to not treatment at all</u>, and morethanless, <u>is declared a breach of the standard of care</u> as to <u>amount to grossly inadequate medical care</u>.   The Sixth Circuit recognized that "**a prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering**". *Boretti v. Wiscomb*, 930 F.2d 1150, 1154-55 (6th Cir. 1991); *McElligott v. Foley*, 182 F.3d @ 1257 (11th Cir. 1999).

In <u>McElligott</u>, the Court held that "[d]espite Elmore's condition, a jury could conclude that, rather than try to diagnose, the defendants <u>knowingly took an "easier but less efficacious course of treatment</u>." citing *Waldrop*, 871 F.2d @ 1035 (reflecting their deliberate indifference to the pain and suffering he was experiencing.); *McElligott*, 182 F.3d @ 1258.

The _McElligott_ Court, found a similar case as Breach's case. In this case, Breach has been repeatedly requesting surgery to alleviate his pain and suffering, Breach **has gone a prior of five months of repeated sick call request for pain medication":** and Breach's health is deteriorating. In _McElligott_, the Court found a similar situation as Breach's in **Carswell v. Bay County**, 854 F.2d 454 (11th Cir. 1988). The Eleventh Circuit held in _Carswell_, the plaintiff made a series of request for medical care and attention. Although the medical staff diagnosed and provided some medication to the plaintiff, the Court nonetheless affirmed a jury verdict for the plaintiff, explaining that, because plaintiff's condition worsened and the jail medical staff failed to respond, "with evidence of knowledge the jury could have concluded that the failure to provide _Carswell_ with medical care constituted deliberate indifference." Id. at 457. As in _Carswell_, a jury in this case can find that, although Dr. Hobbs, Lyrene, Robbins, actually gave Breach some pain medication, and a obsolete truss, they failed to respond to the seriousness of Breach's pain and that Breach's hernia had/has progressed, leaving Breach to endure more pain and suffering, and his condition deteriorated, Hobbs, Lyrene, Robbins, with knowledge that "there is no treatment, surgery is the cure" regarding Breach's hernia, their failure to make surgical referrals, their knowledge and failure to provide the only treatment available, that is surgery; they failed to respond to Breach's needs. [5]

---

**Breach submitted evidence of more than 25 different separate Sick Call Request slips complaining of pain, no pain medication. Several Sick Calls for five (5) months went ignored. This Court has not looked at this factor in denying preliminary injunction.**

In *McElligott,* the Court rejected Dr. Foley's argument that summary judgment was appropriate because Dr. Foley provided medical care to Clmore.  The Court held:

> "It is . . . true that, when a prison inmate has received medical care, courts hesitate to find a Eighth Amendment violation." <u>Waldrop,</u> 871 F.2d at 1035. However, Dr. Foley simply misstates the controlling law when he argues that his provision of medical care to Elmore precludes an Eighth Amendment claim. "Hesitation does not mean, however, that the course of a physician's treatment of a prison inmate's medical or psychiatric problems can never manifest the physician's deliberate indifference to the inmate's medical needs. We affirm . . . that <u>grossly incompetent medical care or choice of an easier but less efficacious treatment can constitute deliberate indifference.</u>" Id.  <u>McElligott</u> @ 1259.

The substantial likelihood of success in this case, is Dr. Yerurbandi has given testimony that defendants are providing <u>grossly incompetent medical care</u>, and defendants <u>are taken an easier but less efficacious course of treatment, amounting to "no treatment at all"</u> can, constitute deliberate indifference under the Eighth Amendment standard.

Addressing differences in medical opinions does not giving rise to an Eight Amendment claim:  This case is quite different than *Adams v. Poag,* 61 F.3d 1537 (11th Cir.1995), and *Howell v. Evans,* 922 F.2d 712, 723 (11th Cir. 1991) the cases on which differences of medical opinions. In *Adams,* the Court held that the plaintiff's part-time jail physician was not deliberately indifferent. The Court held that plaintiff's claim--that the physician "did not diligently pursue alternative means of treating [plaintiff's]

condition"--"did not 'rise beyond negligence to the refusal to treat as outlined by *Estelle.*' " *Adams*, 61 F.3d at 1546 (quoting *Howell*, 922 F.2d at 721). Likewise, in **Howell**, the Court found that plaintiff's allegations did not rise above the level of negligence. The plaintiff in <u>Howell</u> <u>did not</u> argue that the treatment provided by the defendant was inappropriate, but that the defendant should have known that plaintiff's condition *could* deteriorate and, consequently, should have monitored the plaintiff closely. The Court rejected that argument, explaining that none of the ... allegations meet the criteria for reasonable knowledge or deliberate indifference. The Court acknowledged that ... [the defendant] could have committed malpractice. He left the hospital when the patient was receiving treatment for a serious illness, and he was unavailable during the day when needed. He also may not have diligently pursued alternate treatment at another hospital and may not have prescribed further treatment soon enough. Yet none of these allegations rise beyond negligence to the level of a refusal to treat.... <u>Howell</u>, 922 F.2d at 721. Further, the plaintiff's medical testimony did not "state that [defendant's] actions were grossly inadequate, but <u>only that they deviated from established</u> <u>standards</u>," *id.* at 722, reinforcing the notion that the claim was only one of mere negligence.   The crucial difference between this case and <u>Howell</u> is that here Breach <u>does not</u> allege that the defendant should have known that deterioration of his condition <u>was possible</u>, but that the defendant <u>are</u> aware that Breach's condition is, in fact, deteriorating, and <u>still did nothing to treat this deteriorating state.</u> This makes this

present case more akin to *Carswell* and distinguishable from *Howell.* Further, unlike *Adams* and *Howell,* this case <u>does not involve a claim that different treatment</u> should have been provided, which is tantamount to a medical judgment call, but that the treatment provided was grossly inadequate, amounting to no treatment at all. Accordingly, because there is sufficient evidence to support an Eighth Amendment claim, there is a "substantial likelihood of success on the merits" In addition, Breach will show that a county policy or custom was the "moving force" that caused the alleged constitutional violations in this case as he must to establish the county's 1983 liability. *See* **Young v. City of Augusta, Ga.,** 59 F. 3d 1160, 1171 (11th Cir. 1995).

Moving forward, Breach argues that the recent Supreme Court case of **Richardson v. McKnight,** 521 U.S. 399, 117 S. Ct. 2100, 138 L. Ed. 2d 540 (1997), precludes several PHS defendants, and Dr. George Lyrene from raising qualified immunity as a defense. This Court need not resolve the question of *Richardson 's* applicability to the instant case, however, because this Court might find the Eighth Amendment doctrine governing the outcome of this case to have been clearly established at the time of the events in question.

Thus, even if the medical defendants were entitled to qualified immunity, it would be of no help to them here. In *Richardson,* the Supreme Court held that prison guards, who were employees of a private prison management firm, were not entitled to raise a defense of qualified immunity to a section 1983 action on the part of a prisoner. 117 S. Ct. at 2102. The Court cited its decision in **Wyatt v. Cole,** <u>504 U.S. 158,</u> <u>118 L. Ed. 2d 504,</u> 112

S. Ct. 1827 (1992), for the proposition that the decision as to whether a private defendant enjoyed qualified immunity was to be guided by history and by the "special policy concerns involved in suing government officials." *Richardson*, 117 S. Ct. at 2103 (citing *Wyatt*, <u>504 U.S. 158</u> at 163, 167). Looking first to the historical underpinnings of the qualified immunity doctrine, the Court noted that "history does not reveal a 'firmly rooted' tradition of immunity applicable to privately employed prison guards." *Richardson*, 117 S. Ct. at 2104. See, *McDuffie v. Hopper*, 982 F. Supp. 817 (M.D. Ala. 1997) (holding CMS could not raise qualified immunity); *Nelson v. Prison Health Services, Inc.*, 991 F. Supp. 1452 (M.D. Fla. 1997) (holding PHS could not raise qualified immunity).

## ISSUE NO. 4

### WHETHER THE EVIDENCE DEMONSTRATES AN INJUNCTION IS WARRANTED BASED ON EVIDENCE OF GROSSLY INADEQUATE MEDICAL TREATMENT

<u>Dr. Satyavardhana Rao Yerubandi, M.D.</u>, a licensed physician and general surgeon specializing in hernia repair, asserts through an extensive Affidavit identifying the grossly incompetent, inadequate medical treatment proscribed through Dr. Hobbs, Dr. Robbins, and Dr. Lyrene as also, a breach in the standard of care, make known that this case, "is not" traveling within <u>any mere differences of opinion among medical personnel</u> regarding the appropriate treatment in this case.

In *Greffey v. Alabama Department of Corrections*, 996 F. Supp. 1368 (N.D. Ala. 1998) the District Court stated regarding the use of expert testimony regarding the treatment of a prisoner. The District Court stated:

> **"In order for Dr. Sandefer to be stripped of qualified immunity, plaintiff must demonstrate his treatment violated a clear and specific standard, so that similarly situated mental health care providers would have known his or her actions violated Morrison's constitutional rights. In a medical treatment case, a plaintiff may demonstrate the existence of a clearly established medical standard either through reference to prior court decisions or to the contemporary standards and opinions of the medical profession. Plaintiffs frequently resort to the contemporary standards of the medical profession when the challenged actions required the exercise of medical judgment. In such an instance, a plaintiff may produce opinions of medical experts asserting that the inmate's treatment was so grossly contrary to accepted medical practices as to amount to deliberate indifference." Id. at 996 F. Supp. 1386-87; citing <u>Adams,</u> 61 F.3d @ 1543 (citations omitted)**

Dr. Yerubandi's Affidavit, in this case comports to the established medical standards regarding the proper treatment regarding hernias. Dr. Yerubandi states: [p. # 4,5, ¶ 2, 3 4 ].

"The standard of care pertaining to a Hernia is that any doctor diagnosing a patient with a hernia:"

(i)     Ask questions about the patient's symptom s and overall health;
(ii)    Recommend surgery and make the referral to a surgeon or a specialist;
(ii)    The patient chooses whether to undergo surgery;
(iv)    Explain to the patient that surgically repair is usually advised because of the danger of incarceration and strangulation.

"It is my opinion that it is uncommon and unpracticed for any doctor diagnosing a patient with a hernia <u>not</u> to recommend surgery or that a

specialist sees the patient. Dr. John A. Tassin, M.D., states **that he was not sure whether or not Mr. Breach's hernia needed repair.** Dr. Tassin should have referred Mr. Breach to a specialist, or a surgeon since he was not sure. '

"Hernia surgery requires a certain degree of a specialized training and knowledge because preoperatively, it is often difficult to differentiate the common indirect hernia from the less common direct defect. Indirect and direct hernias need to be differentiated during surgery, because the approach to repair depends on the defect type. A hernia that is not repaired appropriately is more likely to recur. " [id]

In addition, Dr. Yerubandi, depreciates to the treatment proscribed by Dr. Hobbs, Dr. Robbins, and Dr. Lyrene as being **(i)"grossly inadequate"(ii) plainly wrong and recognized as no treatment at all,"(iii) medically unacceptable; and, (iv) [their] acts and omissions reflect that of wantonness, intentional infliction of pain, and amount to deliberate indifference."** [id. @ 7, ¶ 4 Exhibit "A", Dr. Yerubandi, M.D., addressing "Dr. Williams D. Hobbs, M.D., treatment]

Identifying in party due to the extensive Affidavit of Dr. Yerubandi it is important that this Court note that a surgeon states:

"I write my opinion based on my training and my 27 years of experience in hernia repair: I tackle Dr. Hobbs' deficient treatment in this case: This case is interesting, and as a surgeon Hobbs deliberately neglected his medial duty regarding Mr. Breach's hernia personally agitates me because Mr. Breach is having to endure gratuitous pain and suffering and cannot enjoy every day normal activities because Dr. Hobbs' acts and omissions, being nothing more than "dogged treatment," i.e., his diagnosis and recommendation that Mr. Breach does not need surgery is unacceptable under the standard of care, and a clear breach of the standard of care also, deliberate indifference.'

'Dr. Hobbs treatment has <u>several areas of deficiency</u> regarding his proscribed treatment. Identifying some of these area – it is clear Dr. Hobbs has ignored the objective approach that is commonly used under the standard of care -- to relieve pain and suffering and, provide the cure.

Dr. Hobbs' treatment is <u>plainly wrong</u>, and Dr. Hobbs is plainly wrong in his opinions that reflect and demonstrate that his treatment is clearly a breach of the prevailing standard of care because first, under the standard of care it is medically known that there is no treatment for a hernia; and, the <u>only cure</u> that will alleviate the painful symptoms felt by Mr. Breach is surgery. Dr. Hobbs' approach is contrary to accepted medical practices and is clearly tantamount to deliberate indifference; also, is so grossly incompetent, inadequate, and excessive as to shock the conscience to be intolerable to humane decency. '

'As a surgeon in hernia repair, it is my professional opinion and I will identify several areas of the deficient treatment provided by Dr. Hobbs. His treatment can be considered as deliberate indifference and far below human decency in the following areas:'

" " "

i)    Dr. Hobbs has failed to recognize the severity of Mr. Breach's pain, and the issuing of Tylenol will not cure Mr. Breach's hernia; and,'

(ii)    Dr. Hobbs issuing a hernia belt or a truss is obsolete because a hernia belt is only used for temporary purposes until Mr. Breach undergoes surgery is a breach of the standard of care, and is deliberate indifference;

(iii)    Dr. Hobbs' no referral to a specialist or surgery and his relying on a protocol that Dr. Hobbs states: " "the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum to be surgically necessary; is a breach of the standard of care, and amounts to deliberate indifference;

iv)    Dr. Hobbs stating that surgery is not Mr. Breach's only options and it is not medically necessary is an understatement, clearly reflecting a breach of the standard of care, showing a total disregard to the medical objective in the medical profession to relieve pain and suffering and is deliberate indifference because there is no treatment for a hernia: the cure is surgery.

v)      Dr. Hobbs has failed to recognize the Red Flags dealing with the signs and symptoms felt by Mr. Breach being his feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum. A bulge or lump in the abdomen, groin or scrotum, pain when straining, lifting, or coughing is deliberate indifference to Mr. Breach's medical needs.

iv)      Medical Records do not reflect Dr. Hobbs inspecting Mr. Breach's hernia to ensure that it is not becoming infected or developing into a more serious non-reducible hernia: is a breach under the standard of care, and is grossly unacceptable.

The Medical Records reflect that Dr. Hobbs has deliberately ignored the symptoms which are warnings, red flags that surgery is necessary. These symptoms may start out mild but because of Dr. Hobbs displaying wantonness and his deficient treatment is the proximate cause to Breach being denied proper medical treatment and forced to endure pain. **[id. @ 10]**

Dr. Yerubandi states:

[ See, *Exhibit "A"*, pg. 7 through 23, Affidavit Dr. Yerubandi, M.D.]

"I have reviewed the most recent Affidavit from Dr. Hobbs on **Case No. 2:06-cv-1133-MEF, United States District Court** signed on *September 12, 2007,* and I depreciate strongly that Dr. Hobbs has breached the standard of care in regards to his treatment which appears medically <u>unknown</u> as conservative management applied Mr. Breach's hernia.  Dr. Hobbs unknown conservative management being Motrin 600 mg,  and it is noted that Dr. Hobbs proscribed  Antihistamine which is not at all related as treating a Hernia. [id. @ 7]

I state as a surgeon in hernia repairs in my 27 years of experience, it is uncommon and unpracticed that any doctor diagnosing a patient with a hernia not  to recommend surgery. [id. @ 7]

"<u>Dr. William E. Hobbs's M.D.,</u> actions, treatment is considered, and in my professional opinion as a surgeon Hobbs' treatment is <u>plainly wrong</u> and

recognized as <u>no treatment at all</u>: his treatment is <u>medically unacceptable</u> and his acts and omissions reflect that of wantonness, intentional infliction of pain, and amounts deliberate indifference -- breach of the standard of care. Dr. Hobbs' performance in this case is grossly contrary to the accepted medical practices and is probably the reason and proximate cause to the injury sustained by Mr. Breach having pain, and an enlarged inguinal hernia having problems walking, standing, urinating, bowel movements, coughing, sneezing and Mr. Breach should have had surgery upon the first diagnosis in 2005.[id @ 7 – 8]

Medical Records in this case reflect that on <u>2/21/06 Dr. John A. Tassin,</u> <u>M.D.</u>, made a doctor order and recommendation that Mr. Breach's inguinal hernia "<u>Needs Repair?</u>"  Dr. John Tassin, was correct noting "Needs Repair"? even Tassin questioning surgery is alright. However, it appears that **Dr. Hobbs, Dr. Lyrene, Dr. Robbins**, nurse practitioner **B. Adams** have gone against Dr. Tassin's order of "Needs Repair"?:  is a breach of the standard of care by their failure to further up on Dr. Tassin's order and recommendation and questioning surgery is serious pertaining to Mr. Breach's hernia: it is blocking, denying, delaying necessary medical treatment: surgery; the only treatment, and it is the cure. [id. @ 8]

. . .

    The Medical Records reflect that Dr. Hobbs has deliberately ignored the symptoms which are warnings, red flags that surgery is necessary.  These symptoms may start out mild but because of Dr. Hobbs displaying wantonness and his deficient performance is a breach in the standard of care, is <u>probably the proximate cause to Breach's hernia</u> <u>enlarging</u>, his hernia becoming progressively worse, causing increasing discomfort.  [id. @ 9, 10, 11]

<u>Dr. Hobbs fails in the area of pain</u>, and the pain being present in the direct affected area will radiate to the hip region, back, leg or even down towards the genitalia region.  This will rise to discomfort, and experience sever pain. Under the standard of care, early diagnosis and appropriate treatment, surgery, is the best way to avoid these complications and further serious complications. Dr. Hobbs has placed some <u>temporary</u> <u>physical restrictions</u> on Mr. Breach identified as issuing a truss that is deficient, and a truss <u>will not stop the hernia from progressing</u> and is inadequate as any treatment.  <u>It is impossible to stop a hernia from</u> <u>progressing</u>; activities such as lifting, twisting, pulling, or muscle strain,

even regular <u>common human functions such as bowel movements will</u> <u>cause the muscle to tear resulting to the hernia enlarging</u> and Mr. Breach experiencing this <u>"burning pain"</u>.  Dr. Hobbs is ignoring the red flag of "burning pain" also, weight gain, constipation, cough <u>will aggravate</u> the hernia and will become worse and will rupture Mr. Breach's hernia leading into an emergency situation.      I would like to go further into Dr. Hobbs deficient treatment.  I state as a surgeon that Dr. Hobbs' treatment <u>amounts to no treatment</u> at all; his relying on a protocol is noting more than aiding to a double standard being absolutely, no treatment at all.  [id. @ 10, 11]

Dr. Hobbs has clearly chosen some medically <u>unknown conservative</u> <u>approach</u> issuing Motrin and a Truss and physical restrictions, then accuse Marcellus Breach <u>"not following instructions"</u> is contrary because there are no instructions except, "surgery" because it is the ONLY treatment – the truss being issued in this case for approximately 21/2 years is totally unacceptable.  A truss is, obsolete; and, today medically unknown -- his decision reflect obduracy due to his refusal make a recommendation for surgical repair or referral to a surgeon is, hindering, preventing, delaying necessary care. It is clear and plainly wrong for Dr. Hobbs to chose to take an easier less efficient course of treatment as a <u>cheaper way out</u> and is shocking and unacceptable, falls below the acceptable standard of care insofar as he failed to recognize the significance of Mr. Breach injury, the enlargement of his hernia, complaints of a **trapped hernia, problems walking, limited exercise, physical restrictions, pain, problems having bowel movements, coughing, sneezing,** is plainly wrong, and Hobbs has clearly ignored and has failed to recognize that a Hernia is an **unpredictable source** of a constant danger because, a hernia cannot be treated, surgery is the cure; a hernia <u>will rupture at any time</u>, then, it will lead into a life of death situation also, lead into more sever medical complications such as **tissue death, gangrene, and nerve entrapment**. [ id. @ 12]

"<u>Dr. William E. Hobbs, M.D.</u>, under the standard of care has failed to prescribe the necessary medical treatment regarding Mr. Breach's inguinal hernia and Dr. Hobbs' treatment is probably the proximate cause of injury and probably the proximate cause of subjecting Mr. Breach to endure pain and suffering and; probably the proximate cause to Mr. Breach's hernia enlarging amounts, and is tantamount to deliberate indifference because Dr. Hobbs' practice and treatment proscribed in this case is deviated from

the medical profession and is so shocking and unacceptable to the medical profession. ...

Under the standard of care, Dr. Hobbs has failed to provide the objective regarding Mr. Breach's injury, and that objective is the cure, and the only cure in this case, is surgery. There is no excuse, for Dr. Hobbs treatment.

It is my professional opinion that Dr. Hobbs <u>has not used such reasonable care, skill, exercise, or diligence.  His skills fall below the profession as other physicians, surgeons in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in like cases. Dr. Hobbs has failed, ignored red flags and strangulation, which will lead into dangerous complications such as obstruction of the flow of intestinal contents or blood, leading to tissue death and gangrene. Under the standard of care the objective approach in the medical practice and reiterated, that approach under the standard of care is the "cure" especially regarding Hernias."</u> [id. @ 13] . . . ."

In this case, this court has apparently overlooked the physical pain, and physical limitation that are imposed on Breach.  This Court has overlooked the continued cries of pain when coughing, sneezing, having normal bowel movements, walking, standing, and morethanless, that Breach has complained to this Court that Dr. Hobbs has not seen Breach since *April 30, 2007*, will not see him, Breach went for five (5) months without pain medication [See, *Motion For Leave To File Addendum To Exhibits..."* [Court Doc. 82, & 121], [See, *Motion for Leave to file Addendum to Renewed Application for Preliminary Injunction,* -- Court Doc. 118, and *Plaintiff's Motion in request for leave to file Evidentiary Materials in Support of Construed Motion to Consider all Factors in Addressing Plaintiff's Claims for Relief,* [Court Doc. 134]] This Court did not consider any of these factors when deciding to deny the preliminary injunctions.

## CONCLUSION

Courts have recognized the need for immediate injunctive relief when employers are threatened by conduct of former employees that would "irreversibly alter the status quo." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048, 1054 (4th Cir.1985) . In *Bradley,* the court awarded an injunction to an employer after a former employee breached a non-solicitation agreement by soliciting customers belonging to the employer. The court recognized that the breach of such an agreement required immediate action in order to have any effect and that "[a]n injunction even a few days after solicitation has begun is unsatisfactory because the damage is done. The customers cannot be 'unsolicited.'" *Id.* However, Breach's <u>deteriorating health is the status quo</u>, and the denying the preliminary injunction will take a very **"devastating and impossible to repair," and that Defendants will suffer no damages, "since they will be paying for the medical care one way or another."**

In this case, the irreparable injury is Breach's physical health that is deteriorating, leaving him in pain and suffering. <u>Gangrene, tissue death, nerve entrapment</u> are the results from his hernia being left untreated. PHS is a "Giant Money Maker," who feeds off every prisoner that they do not have to medially treat. Some 501 Millions tax dollars of tax payers money is not going to medical treatment. Second guesing prisoner medical treatment is what it will take for prisoners to have sufficient medical treatment pertaining to hernia repair.

WHEREFORE, premises considered, Plaintiff request that this court reconsider it order and recommendation and grant what is appropriate Breach relief from his pain.

Done this ___ Day November 2007.

_____

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have served a true copy of the foregoing upon the following by U.S. Mail, First Class, postage prepaid and properly addressed to and mailing through the prison mail box system on this 5th Day of October 2007.

Alabama Dept. Of Corrections
Legal Division
P.O. Box 301501
Montgomery, Alabama 36130

Rushton, Stakely, Johnstone & Garrett, P.A.
P.O. Box 270
Montgomery, Alabama 36101

_____

Marcellus Breach

# EXHIBIT "A & B"

## Affidavit of Dr. Yerubandi, M.D.
## Affidavit of Dr. John A. Tassin, M.D.

COUNTY OF MADISON                    :

STATE OF ALABAMA                     :        SUPPLEMENTAL    AFFIDAVIT

**BEFORE ME**, <u>TASIA A. SUBLETT</u>, a Notary Public in and for said County and State, personally appeared *Dr. Satyavardhana Rao Yerubandi, M.D., FACS, FRCSC*, and being duly sworn, deposed and says on oath that the avernments contained in the following are true to the best of his ability, information, knowledge and belief, as follows:

"I am *Dr. Satyavardhana Rao Yerubandi, M.D., FACS, FRCSC*, a licensed physician and general surgeon. I am a specialist in hernia repair. I am over twenty-one years of age. I have been a licensed physician in Alabama since 1984, and have been board certified with the <u>*Diplomat American Board of Surgery, Royal College of Surgeons of Canada,*</u> and certified with the <u>*Fellow American College of Surgeons*</u> since 1981. I have 27 years of practice experience, including 23 years in private practice. I have 27 years in surgical repair of hernias from the Surgery Division at Bronx Lebanon Hospital, State of New York where I received my surgical training. I am currently in medical practice and surgical repair in the State of Alabama with my main office located in Madison County, Alabama. I am personally familiar with all the facts set forth in this Affidavit, and I have been actively involved in this case and I write this Affidavit in reference to making specific deficiencies in <u>Dr. Johns A. Tassin, M.D.</u>, <u>Dr. William E. Hobbs, M.D.</u>, <u>Dr. Michael E. Robbins, M.D.</u>, and <u>Dr. George Lyrene, M.D.</u>, treatment proscribed to Mr. Breach's inguinal hernia, and further state that it is my professional opinion that the

1

treatment proscribed to Mr. Breach <u>is so grossly contrary to accepted medical practices as to amount to deliberate indifference.</u>

This written admonition in my professional opinion regarding the treatment proscribed by the medical providers; I deeply depreciate several areas of deficient treatment given to Mr. Breach from health care providers being known as "Prison Health Services, Inc."

I have written approximately three (3) Affidavits thus far in this case; furthermore, I have reviewed the Medical Records in this case, Medical Records from "South Louisiana Correctional Center." I have read the Affidavit of <u>Dr. John A. Tassin, M.D.</u>, in this case, date March 29th 2007 in the District Court of Evangeline Parish, Louisiana. (see attached)

The first parts of the medical records reviewed in this case are Medical Records from a private prison known as **"LCS CORRECTIONS SERVICES, INC.,"** labeled as **"Doctors Order's Sheet"** and **"LCS CORRECTIONS SERVICES, INC., Nurse's Notes".** The nurse's notes reflect <u>3/21/06 Dr. John A. Tassin, M.D.</u>, diagnosed Mr. Breach with an **"Hernia Left, Inguinal Hernia Needs Repair?"** Nurse's notes reflect <u>7/10/06</u> nurse Maxie noting: **"we faxed a report to Ruth Naglich in reference to inguinal hernia inmate requesting repair & is filing a lawsuit to have surgery done."**

Medical Records reflect nurse's notes: 7/12/06, <u>nurse administrator Diana Lott,</u> noting: **"Received a call from Brandon from Alabama re' Inguinal Hernia – Stated**

Hernia repairs are not done there – unless incarcerated or into scrotum. This subject has not c/o hernia since seen by Dr. Tassin 3-21-06 – Subject placed on sick call for 7/18/06 to see if he needs a referral to a surgeon ------."

Records reflect 7/18/06 nurse Maxie noting: **saw Dr. Tassin & no change in hernia & no new orders."**

There are several areas of the almost three (3) years of supposedly "treatment" proscribed from February 2005 going to Dr. John A. Tassin, M.D., that in my opinion is probably the proximate cause to Mr. Breach's hernia having enlarged, and left untreated.

First, the acts and omissions of Dr. John A. Tassin, M.D., his inactions, failures, and actually refusing, and taking absolutely no steps to resolve, alleviate, Mr. Breach's pain and suffering demonstrates deliberate indifference, because Dr. Tassin did absolutely noting in this case.

Dr. Tassin failed to use the care, and skill, which is employed by the profession generally, and, in this case of Mr. Breach, Dr. Tassin has deviated from the established conduct, which is grossly contrary to accepted medical practices, and amounts to deliberate indifference.

Dr. John A. Tassin, M.D., treatment is plainly wrong and is recognized by the medical professional as to no treatment at all: his treatment is medically unacceptable and his acts and omissions reflect that of wantonness, intentional inflection of pain and suffering, the very breach of the standard of care.

Secondly, identifying several areas of the deficient treatment by <u>Dr. John A. Tassin, M.D.,</u> is that he failed to use the care, and skill which is employed by the profession generally: Dr. Tassin, demonstrates a breached of care when he failed to make a necessary medical judgment being a referral for surgery before Mr. Breach's hernia is incarcerated, strangulated, or into the scrotum due to the complaints of experiencing pain. Pain is the "Red Flag" and has been ignored in this case.

The standard of care pertaining to a Hernia is that any doctor diagnosing a patient with a hernia:

(i)    **Ask questions about the patient's symptom s and overall health;**
(ii)   **Recommend surgery and make the referral to a surgeon or a specialist;**
(ii)   **The patient chooses whether to undergo surgery;**
(iv)   **Explain to the patient that surgically repair is usually advised because of the danger of incarceration and strangulation.**

It is my opinion that it is uncommon and unpracticed for any doctor diagnosing a patient with a hernia <u>not</u> to recommend surgery or that a specialist sees the patient.<u> Dr. John A. Tassin, M.D.,</u> states **that he was not sure whether or not Mr. Breach's hernia needed repair.** Dr. Tassin <u>should have referred Mr. Breach to a specialist, or a surgeon since he was not sure.</u>

Hernia surgery requires a certain degree of a specialized training and knowledge because preoperatively, it is often difficult to differentiate the common indirect hernia from the less common direct defect. Indirect and direct hernias need to be differentiated

4

during surgery, because the approach to repair depends on the defect type. A hernia that is not repaired appropriately is more likely to recur.

It is my opinion, that <u>Dr. John A. Tassin, M.D.,</u> actions, treatment are considered, and in my professional opinion as a surgeon are plainly wrong, and recognized as no treatment at all: his treatment is medically unacceptable and his acts and omissions reflect that of wantonness, intentional infliction of pain, and amounts to deliberate indifference, and demonstrates a breach of the standard of care. Dr. Tassin's performance, treatment in this case is grossly contrary to the accepted medical practices and is probably the reason and proximate cause to the injury sustained by Mr. Breach having pain when coughing, sneezing, taking bowel movements, standing, urinating, back pain, limited exercise, if any exercise at all; and, having an enlarged hernia.

Dr. Tassin should have referred Mr. Breach for surgery and recommended surgery before Mr. Breach's hernia is incarcerated, strangulated, or into the scrotum due to sever medical complications that will occur. Dr. Tassin should have known that a doctor <u>cannot treat a hernia</u>, a hernia <u>will not heal on its own</u>, <u>it will get worse</u> while left untreated, and surgery is needed to repair the defect in the abdominal wall.

In this case, because Mr. Breach has not and did not, was denied any treatment, <u>his hernia probably has lead to more serious medical complications</u>. Dr. Tassin should have known that the only way to stop a hernia from getting worse is to repair the defect through surgery. Dr. Tassin should have known that the "treatment" is the cure, which

is surgery, because under the standard of care where a lump is present, however, early surgery is necessary.

It is a breach in accepted standards of care for Dr. Tassin, to fail to refer Mr. Breach on 3/21/06 to a specialist in hernia repair who regularly see all these kinds of cases because of the danger of incarceration and strangulation of Mr. Breach's hernia which will lead to serious medical complication such as tissue death, gangrene, knowing that medically you cannot treat a hernia, surgery is the only cure that will alleviate Mr. Breach's symptoms of pain.

Dr. Tassin's approach is contrary to accepted medical practices as to amount to deliberate indifference --- there is no mechanism of preventive care known, and surgical repair is almost always necessary. Dr. John A. Tassin, M.D., failed to use the care, and skills which is employed by the profession generally and, in this case of Mr. Breach, Dr. Tassin has deviated from the established conduct, which is grossly contrary wide of the mark of the as to be far below the minimum standard f medical care pertaining to his treatment regarding Mr. Breach hernia – contrary to accepted medical practices, and amounts to deliberate indifference. The proper and correct course of standard of care is for Mr. Breach to have had surgery upon the diagnosis of his inguinal hernia to prevent his hernia from becoming enlarged, prevent his pain, and complications that he experiences today, preventing him from enjoying normal humane activities.

## DR. WILLIAM D. HOBBS, M.D.

I have reviewed the records and Affidavit by <u>Dr. Williams D. Hobbs, M.D.</u>, the prison doctor – Hobbs' treatment is grossly unacceptable under the standard of care: morethanless, Dr. Hobbs acts and omissions outlined below are a breach in the standard of care.

I have reviewed the most recent Affidavit from Dr. Hobbs on **Case No. 2:06-cv-1133-MEF, United States District Court** signed on <u>*September 12, 2007*</u>, and I depreciate strongly that Dr. Hobbs has breached the standard of care in regards to his treatment which appears medically <u>unknown</u> as conservative management applied Mr. Breach's hernia. Dr. Hobbs unknown conservative management being Motrin 600 mg, and it is noted that Dr. Hobbs proscribed Antihistamine which is not at all related as treating a Hernia.

I state as a surgeon in hernia repairs in my 27 years of experience, it is uncommon and unpracticed that any doctor diagnosing a patient with a hernia not to recommend surgery.

<u>Dr. William E. Hobbs's M.D.,</u> actions, treatment is considered, and in my professional opinion as a surgeon Hobbs' treatment is <u>plainly wrong</u> and recognized as <u>no treatment at all</u>: his treatment is <u>medically unacceptable</u> and his acts and omissions reflect that of wantonness, intentional infliction of pain, and amounts deliberate indifference -- breach of the standard of care. Dr. Hobbs' performance in this case is

grossly contrary to the accepted medical practices and is probably the reason and proximate cause to the injury sustained by Mr. Breach having pain, and an enlarged inguinal hernia having problems walking, standing, urinating, bowel movements, coughing, sneezing and Mr. Breach should have had surgery upon the first diagnosis in 2005.

Medical Records in this case reflect that on 2/21/06 Dr. John A. Tassin, M.D., made a doctor order and recommendation that Mr. Breach's inguinal hernia "Needs Repair?" Dr. John Tassin, was correct noting "Needs Repair"? even Tassin questioning surgery is alright. However, it appears that **Dr. Hobbs, Dr. Lyrene, Dr. Robbins**, nurse practitioner **B. Adams** have gone against Dr. Tassin's order of "Needs Repair"?:  is a breach of the standard of care by their failure to further up on Dr. Tassin's order and recommendation and questioning surgery is serious pertaining to Mr. Breach's hernia: it is blocking, denying, delaying necessary medical treatment: surgery; the only treatment, and it is the cure.

I write my opinion based on my training and my 27 years of experience in hernia repair: I tackle Dr. Hobbs' deficient treatment in this case:  This case is interesting, and as a surgeon Hobbs deliberately neglected his medial duty regarding Mr. Breach's hernia personally agitates me because Mr. Breach is having to endure gratuitous pain and suffering and cannot enjoy every day normal activities because Dr. Hobbs' acts and omissions, being nothing more than "dogged treatment," i.e., his diagnosis and

recommendation that Mr. Breach does not need surgery is unacceptable under the standard of care, and a clear breach of the standard of care also, deliberate indifference.

Dr. Hobbs treatment has <u>several areas of deficiency</u> regarding his proscribed treatment. Identifying some of these area – it is clear Dr. Hobbs has ignored the objective approach that is commonly used under the standard of care -- to relieve pain and suffering and, provide the cure.

Dr. Hobbs' treatment is <u>plainly wrong</u>, and Dr. Hobbs is plainly wrong in his opinions that reflect and demonstrate that his treatment is clearly a breach of the prevailing standard of care because first, under the standard of care it is medically known that there is no treatment for a hernia; and, the <u>only cure</u> that will alleviate the painful symptoms felt by Mr. Breach is surgery.  Dr. Hobbs' approach is contrary to accepted medical practices and is clearly tantamount to deliberate indifference; also, is so grossly incompetent, inadequate, and excessive as to shock the conscience to be intolerable to humane decency.

As a surgeon in hernia repair, it is my professional opinion and I will identify several areas of the deficient treatment provided by Dr. Hobbs. His treatment can be considered as deliberate indifference and far below human decency in the following areas:

i)    **Dr. Hobbs has failed to recognize the severity of Mr. Breach's pain, and the issuing of Tylenol will not cure Mr. Breach's hernia; and,**

9

(ii)  Dr. Hobbs issuing a hernia belt or a truss is obsolete because a hernia belt is only used for temporary purposes until Mr. Breach undergoes surgery is a breach of the standard of care, and is deliberate indifference;

(iii)  Dr. Hobbs' no referral to a specialist or surgery and his relying on a protocol that Dr. Hobbs states: " "the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum to be surgically necessary; is a breach of the standard of care, and amounts to deliberate indifference;

iv)  Dr. Hobbs stating that surgery is not Mr. Breach's only options and it is not medically necessary is an understatement, clearly reflecting a breach of the standard of care, showing a total disregard to the medical objective in the medical profession to relieve pain and suffering and is deliberate indifference because there is no treatment for a hernia: the cure is surgery.

v)  Dr. Hobbs has failed to recognize the Red Flags dealing with the signs and symptoms felt by Mr. Breach being his feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum. A bulge or lump in the abdomen, groin or scrotum, pain when straining, lifting, or coughing is deliberate indifference to Mr. Breach's medical needs.

iv)  Medical Records do not reflect Dr. Hobbs inspecting Mr. Breach's hernia to ensure that it is not becoming infected or developing into a more serious non-reducible hernia: is a breach under the standard of care, and is grossly unacceptable.

The Medical Records reflect that Dr. Hobbs has deliberately ignored the symptoms which are warnings, red flags that surgery is necessary. These symptoms may start out mild but because of Dr. Hobbs displaying wantonness and his deficient

---

I have attached the Hernia Support Belt Model 67-350 from Silver Professional Medical Professionals, by FLA Orthopedics, the "Soft Form" "Fitting Instructions" that was issued to Mr. Breach from Dr. Hobbs and Nurse Practitioner B. Adams and this hernia belt, truss is obsolete it is only to be used temporary, it will not stop the pain, will not stop a hernia enlarging, nor cure Mr. Breach's hernia. The cure is surgery.

performance is a breach in the standard of care, is <u>probably the proximate cause to</u> <u>Breach's hernia enlarging</u>, his hernia becoming progressively worse, causing increasing discomfort.

<u>Dr. Hobbs fails in the area of pain</u>, and the pain being present in the direct affected area will radiate to the hip region, back, leg or even down towards the genitalia region. This will rise to discomfort, and experience sever pain. Under the standard of care, early diagnosis and appropriate treatment, surgery, is the best way to avoid these complications and further serious complications.

Dr. Hobbs has placed some <u>temporary physical restrictions</u> on Mr. Breach identified as issuing a truss that is deficient, and a truss <u>will not stop the hernia from</u> <u>progressing</u> and is inadequate as any treatment.

<u>It is impossible to stop a hernia from progressing</u>; activities such as lifting, twisting, pulling, or muscle strain, even regular <u>common human functions such as bowel</u> <u>movements will cause the muscle to tear resulting to the hernia enlarging</u> and Mr. Breach experiencing this <u>"burning pain"</u>. Dr. Hobbs is ignoring the red flag of "burning pain" also, weight gain, constipation, cough <u>will aggravate</u> the hernia and will become worse and will rupture Mr. Breach's hernia leading into an emergency situation.

I would like to go further into Dr. Hobbs deficient treatment. I state as a surgeon that Dr. Hobbs' treatment <u>amounts to no treatment</u> at all; his relying on a protocol is noting more than aiding to a double standard being absolutely, no treatment at all.

Dr. Hobbs has clearly chosen some medically <u>unknown conservative approach</u> issuing Motrin and a Truss and physical restrictions, then accuse Marcellus Breach <u>"not following instructions"</u> is contrary because there are no instructions except, "surgery" because it is the ONLY treatment – the truss being issued in this case for approximately 2 1/2 years is totally unacceptable.  A truss is, obsolete; and, today medically unknown -- his decision reflect obduracy due to his refusal make a recommendation for surgical repair or referral to a surgeon is, hindering, preventing, delaying necessary care. It is clear and plainly wrong for Dr. Hobbs to chose to take an easier less efficient course of treatment as a <u>cheaper way out</u> and is shocking and unacceptable, falls below the acceptable standard of care insofar as he failed to recognize the significance of Mr. Breach injury, the enlargement of his hernia, complaints of a **trapped hernia, problems walking, limited exercise, physical restrictions, pain, problems having bowel movements, coughing, sneezing,** is plainly wrong, and Hobbs has clearly ignored and has failed to recognize that a Hernia is an **unpredictable source** of a constant danger because, a hernia cannot be treated, surgery is the cure; a hernia <u>will rupture at any time</u>, then, it will lead into a life of death situation also, lead into more sever medical complications such as **tissue death, gangrene, and nerve entrapment**.

<u>Dr. William E. Hobbs, M.D.</u>, under the standard of care has failed to prescribe the necessary medical treatment regarding Mr. Breach's inguinal hernia and Dr. Hobbs' treatment is probably the proximate cause of injury and probably the proximate cause of

subjecting Mr. Breach to endure pain and suffering and; probably the proximate cause to Mr. Breach's hernia enlarging amounts, and is tantamount to deliberate indifference because Dr. Hobbs' practice and treatment proscribed in this case is deviated from the medical profession and is so shocking and unacceptable to the medical profession.

Under the standard of care, Dr. Hobbs has failed to provide the objective regarding Mr. Breach's injury, and that objective is the cure, and the only cure in this case, is surgery. There is no excuse, for Dr. Hobbs treatment.

It is my professional opinion that Dr. Hobbs <u>has not used such reasonable care, skill, exercise, or diligence. His skills fall below the profession as other physicians, surgeons in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in like cases. Dr. Hobbs has failed, ignored red flags and strangulation, which will lead into dangerous complications such as obstruction of the flow of intestinal contents or blood, leading to tissue death and gangrene. Under the standard of care the objective approach in the medical practice and reiterated, that approach under the standard of care is the "cure" especially regarding Hernias.</u>

I address several deficient areas regarding <u>Dr. William E. Hobbs,' M.D.</u>, treatment in this case regarding this patient Marcellus Breach.    Dr. Hobbs states in his Affidavit:

> " **It is my opinion that Mr. Breach does not need to be seen by a medical examiner for an independent physical examination to determine whether or not surgery is necessary. Mr. Breach does not have a right Direct Indirect or Femoral Hernia. Mr. Breach does not have a left Indirect or Femoral Hernia. He does have a large, easy to reduce direct inguinal hernia on the left." [p.2 ¶ 2]**

"As previously stated in my initial Affidavit, as a general rule, a hernia does not progress quickly and there are instances where a person has a hernia for many years and may never require surgery for repair. Hernia repair is an elective surgery. The danger of waiting for a hernia to become incarcerated or strangulated is not high and emergencies involving hernias do not develop often." [p. 2¶ 3.]

"We are treating Mr. Breach with restrictions related to lifting, walking, standing and wearing a truss in an attempt to keep his hernia from becoming larger. A truss is used to decrease discomfort and to decrease the possibility of the hernia becoming larger. If Mr. Breach would follow the instructions provided to him and the restrictions placed on him by PHS physicians and if he would wear the truss prescribed for him, these things would in fact keep his hernia from progressing." [p. 2, ¶ 4.]
***

. . .

"I would like to reiterate that Mr. Breach's hernia is not life threatening and does not require surgical intervention and I believe surgery is not medically necessary. His hernia is easily reducible, non-strangulated, and is not incarcerated. Surgery is not his only option and it is not medically necessary."

"I would like to further reiterate that hernia repair is an elective procedure and every hernia does not need to be repaired. In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections. This protocol states that the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum. Mr. Breach does not meet this protocol and his hernia is easily reduced. Mr. Breach is not in imminent danger and his health is not life threatening. If Mr. Breach did in fact meet the protocol required by the Alabama Department of Corrections, his hernia would be repaired." [See Attached, p.3 ¶ ¶ 2, 3]

First and foremost, Dr. Hobbs has not conducted any Sonography, Ultrasound, and Ultrasonography examinations. Mr. Breach's hernia, based on the complaints and records in this case, his hernia will usually present a swelling accompanied by pain or a

44

dragging sensation in the groin.  <u>Surgical repair is usually always advised under the</u> <u>standard of care.</u>

Dr. Hobbs breached the standard of care refusing to refer Mr. Breach to a specialist especially since he is not a surgeon also, because of the painful symptoms felt by Mr. Breach it would have been very difficult for Dr. Hobbs to diagnose Mr. Breach's hernia when there is pain or a dull dragging sensation in the groin area as complained by Mr. Breach and reflected by the Medical Records.

Secondly, Dr. Hobbs has not performed the proper examination in this case when Mr. Breach is experiencing pain, dragging sensation, such as tomographic scanning.

It is medically known that it is often difficult to differentiate the common indirect hernia from the less common direct hernia as Dr. Hobbs has diagnosed Mr. Breach. A Direct inguinal hernia is of much less frequent occurrence than the oblique, their comparative frequency being, according to Cloquet, as one to five.  It occurs far more frequent in men than in women, on account of the larger size of the external ring in the former sex.  It differs from the oblique in its smaller size and globular form, dependent most probably on the resistance offered to its progress by the transversalis fascia and confoined tendon.  It differs also in its position, being placed over the os pubis and not in the course of the inguinal canal.  Dr. Hobbs has not performed any examinations, or any tests because when the hernia distends and pushes out the peritoneum forming the bottom of either the middle or the internal fossa, it is a direct or internal hernia.  Medical

Records do not reflect Dr. Hobbs diagnosis as to how he comes to the diagnosis of a Direct Inguinal Hernia. Furthermore, the anatomical difference between these two forms of direct or internal inguinal hernia is that, when the hernia protrudes through he middle fossa – that is, the fossa between the deep epigastric and the obliterated hypogastric arteries – it will enter the upper part of the inguinal canal; consequently its covering will be the same as those of an oblique hernia, with the insignificant difference that the infundibuliform fascias is replaced by a portion derived from the generallayer of the transversalis fascia, whereas when the hernia protrudes through the internal fossa it is either forced through the fibres of the conjoined tendon or the tendon is gradually distended in front of it so as to form a complete investment for it.

A <u>Direct hernia is less common</u>; also, in short, a Direct hernia differs also in its position, being placed over the pubis and not in the course of the inguinal canal. An Indirect Inguinal Hernia, the protrusion makes its way through some part of the abdominal wall internal to the epigastric artery. Also, the difference between the position of the neck of the sac in these two forma of direct inguinal hernia has been referred, with some probability, to a difference in the relative positions of the obliterated hypogastric artery and the deep epigastric artery.

Dr. Hobbs <u>states surgery is not necessary is **plainly wrong**</u>, and he is medically incorrect; it appears Hobbs probably is going to wait until the very last stage of the hernia which will be the strangulated hernia that is medically a dangerous situation and

Hobbs will be basically playing with life and death with Mr. Breach because it will be an emergency situation when Mr. Breach's hernia is incarcerated, strangulated, or into his scrotum, is unacceptable, relying on a protocol in this case is dangerous to the health of Mr. Breach, and imminent danger that it will be life threatening when Mr. Breach's intestine get trapped or strangulated in the opening: this will lead to dangerous complications such as obstruction of the flow of intestinal contents or blood, leading to tissue death and gangrene. It is unacceptable under the standard of care for Dr. Hobbs to wait for this "Death Angle" to appear, and goes against the standard of care that would be for any doctor to avoid this dangerous medical death trap.

Dr. Hobbs has breached the standard of care regarding his treatment and physical examination for Mr. Breach's hernia. Dr. Hobbs has failed in the area in the objective approach to provide the cure. The standard of care is that Mr. Breach should have been seen either by a specialist and Mr. Breach should have been recommended for surgery.

Dr. Hobbs has failed under the standard of care in this area for not providing the cure governing Mr. Breach's hernia and under the standard of care it is known that the ONLY cure is surgery. It is well established that no doctor can stop a hernia; surgery is the only available recognized cure.

In the medical professions under the standard of care, primary physicians make recommendations of their patients who suffer from a hernia to immediately undergo surgery do to the danger of incarceration and strangulation which will lead to more

17

sever complications such as tissue death, gangrene, and nerve entrapment: doctors cannot treat a hernia, they have to be repaired.

Dr. Hobbs states: "**An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hold". [id]**

Apparently, Dr. Hobbs undermines the Anatomy of an Inguinal Hernia. Dr. Hobbs is <u>only</u> correct to a <u>certain point</u>. Medically, when a hernia forms, a **"hole" in the abdominal muscle wall develops, allowing the inner lining of the abdomen to push through the weakened area. A hernia <u>"is not</u>," always a "small" opening in the lining of the abdominal wall". It is medically called a "hole".** Without first conducting some type of Ultrasonographyu testing it is not fair to say "small".

Although the words "small opening" have been used, it is medically known that <u>small is the beginning</u> developing stage of a hernia. The <u>opening will get larger</u> as time goes on and internal pressure is applied -- Dr. Hobbs stated Mr. Breach has a "Large Direct Inguinal Hernia". Therefore, his statement of <u>*small opening*</u> is probably medically incorrect when Dr. Hobbs states Large Hernia. This means that the opening has enlarged.

It is the *Anatomy* of a hernia, at a "<u>beginning stage</u>," a hernia will occur through a "small" opening in the abdominal wall, this opening is also known as "hole" in the abdominal wall; the abdominal wall is prone to weakness. However, it is important to

note, that the hernia will not stay at this stage, it **will become larger**, and will require the only cure, which is surgery.

The beginning stage of the development of a hernia is the presence or the appearing in a bulge; hernias will grow larger as pressure inside the body presses the intestines or other tissues out through a weak area. This is one reasons why a medically, doctors cannot treat a hernia due to the body pressures that pushes the intestine out further. With time, these tissues will bulge out beneath the skill of the abdomen, or, they will bulge into the groin, thigh, scrotum, or labia. Mr. Breach has voiced a "trapped hernia at times" medically he is correct because without surgery to repair the defect, a loop of intestine will become tightly trapped by muscle tissue; this will cause severe pain and requires immediate treatment, which is surgery. **There is no mechanism of preventive care known, and surgical repair is almost always necessary.**

It is fair to best describe the stages of Mr. Breach's hernia from the development of a hernia, to the life of death emergency situation; and, that is, when the hernia is incarcerated, or in danger of being incarcerated or into the scrotum.

Under the standard of care, it is both a breach of the accepted standards for any doctor, or medical professional to rely on any Protocol that will refuse, deny, surgery unless 'the hernia is incarcerated or in danger of being incarcerated before surgically necessary:' and for any doctor especially Dr. Hobbs as the treating physician to wait before recommending surgery, is waiting for the worse sever medical complications to

occur, leading to more sever medical complications such as tissue death, gangrene, nerve entrapment and if Mr. Breach is not treated at this emergency stage it will probably lead to a life or death situation.

As a surgeon in hernia repair, Dr. Hobbs has deviated from established conduct, which his treatment is grossly contrary to accepted medical practices, it is clear that his acts and omissions are and probably are the proximate cause to injury. His treatment amounts to no treatment at all. His treatment is a course of a cheaper way out, and Dr. Hobbs has ignored the only treatment available for Mr. Breach and that is surgery. Dr. Hobbs is clearly and is plainly wrong in his course of treatment by not referring Mr. Breach to a specialist because Dr. Hobbs is not a surgeon and his treatment amounts to deliberate indifference, and a breach of the standard of care.

The proper and only course of standard of care is for Mr. Breach to have been examined by a surgeon upon the very diagnoses of his inguinal hernia for a proper and correct determination of surgical repair, which is usually advised under the standard of care. Dr. Hobbs has provided no treatment at all and has ignored the objective approach in medicine, which is the cure to patients suffering form the pain, and danger of a hernia. Dr. Hobbs actions are unacceptable and fall wide of the mark: he has deviated from the established conduct amounting to grossly contrary to accepted medical practice.

It is my opinion that Dr. Hobbs' treatment, conduct has probably caused Mr. Breach's hernia to enlarge, become worse, more painful, dangerous, leaving him to bear a medical injury without any treatment is unacceptable under the standard of care.

There are several areas best to describe a Hernia. First, a doctor should recognize that term hernia, is the abdominal lining bulges out through a weak area and beings to form a hernia sac. Second, The intestine pushes into the sac, and as the intestine pushes further into the sac, it forms a visible bulge. The bulge may or may not flatten when Mr. Breach lay downs or push against it. This is called a reducible hernia, but the importance is the patient must undergoing surgery because the danger is hernias are unpredictable.

Surgery is always advised because the second stage is the intestine will becomes trapped, that is, the sac containing the intestine becomes trapped by muscle (incarcerated). As this happens, and when it happens, you won't be able to flatten the bulge. This is medically dangerous. Records reflect that Mr. Breach has complained about his hernia becoming trapped. Dr. Hobbs ignoring this warning, red flag, is unacceptable. Medical records reflect Mr. Breach complaining on 4/26/07 about having burning pain, problems coughing, sneezing, & bowel movements, no doctor under the standard of care would not refer Mr. Breach to a surgeon for repair. Furthermore, Medical Records reflect Mr. Breach having problems walking, and his hernia coming out and falling unto his testicles, it is a clear breach of the standard of care for Dr. Hobbs to fail to use the care, skill which is employed by the profession generally and, in this case

of Mr. Breach, Dr. Hobbs has deviated from the established conduct, which is grossly contrary to accepted medical practices, and amounts to deliberate indifference because Dr. Hobbs should have known of the danger of hernias and pain caused by them and his actions are probably why Mr. Breach's hernia has enlarged, and he suffers pain.

The third and last stage is the <u>strangulated hernia</u>, that will become a <u>life or death</u> situation, it will subject Mr. Breach into more unbearable pain, it will be cruel and wantonness, pain and suffering and also will lead to sever medical complications.

Dr. Hobbs has stated that Mr. Breach does not meet a protocol in order to have surgery. The protocol stated by Dr. Hobbs is unacceptable under the standard of care and this protocol is cruel and unusually punishment because it forces, allows, ignores the pain from a hernia and will make Mr. Breach suffering long untreated pain.

Dr. Hobbs states: **"In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum."**

The Protocol itself is unacceptable under the standard of care and this protocol interferes with the medical practices regarding hernias. This protocol deviates from the established standard of care being the objectiveness of medicine to provide the cure, that cure regarding hernias is surgery; and this protocol is grossly contrary to accepted medical practices. This protocol is dangerous, it will leave Mr. Breach without treatment,

ignores his hernia and deviates from the establish conduct and is grossly contrary to accepted medical practices.

This protocol as stated by Hobbs fails to use the care, skill which is employed by the profession generally and is deliberate indifference on its very face and is the proximate cause to Mr. Breach's hernia progressing, enlarging, and subjecting him to endure pain and suffer seem to be cruel and unusual punishment.

Dr. Hobbs is plainly wrong in his course of treatment, and his treatment amount to no treatment and is a clear breach of the standard of care. Dr. Hobbs' approach and treatment is so wide of the mark as to be far below the minimum standard of medical care pertaining to Mr. Breach's hernia because Dr. Hobbs should have known that you cannot treat a hernia, the cure is surgery. Each hernia is different, and Dr. Hobbs approach appears not addressing Mr. Breach's symptoms and pain directly and ignoring, and subjecting Mr. Breach into an area where his medical condition, the enlarged hernia, the pain, the danger, is a breach in the standard of care.

### DR. MICHAEL E. ROBBINS, M.D.

I read the Affidavit of <u>Dr. Michael E. Robbins, M.D.,</u> the Medical Records <u>do not</u> reflect that Dr. Robbins <u>has ever once physically examined Mr. Breach's hernia,</u> but writes an Affidavit opposing surgery, when Robbins ought to know that the only treatment under the standard of care is surgery.

The standard of care pertaining to a Hernia is that any doctor diagnosing a patient with a hernia:

(i)   Ask questions about the patient's symptom s and overall health;
(ii)  Recommend surgery and make the referral to a surgeon or a specialist;
(ii)  The patient chooses whether to undergo surgery;
(iv)  Explain to the patient that surgically repair is usually advised because of the danger of incarceration and strangulation.

It is a breach of the standard of care for Dr. Robbins, to give an opinion opposing surgery based on the symptoms of pain, problems walking, problems having bowel movements due to a hernia, and then never actually conducting his physical examination. Dr. Robbins' actions, due to the fact, Dr. Robbins has never once actually attempted to "treat" Mr. Breach, and his opinion is considered, and in my professional opinion as a surgeon with 27 years of hernia repair experience, Dr. Robbins' action, parts of his opinion, his treatment, is plainly wrong and recognized as no treatment at all: his treatment is medically unacceptable and his acts and omissions by actually never once examining Mr. Breach, but write an opinion opposing the only cure, and that is surgery, which will alleviate Mr. Breach's pain and symptoms is wantonness, intentional infliction of pain, and amounts to deliberate indifference – breach of the standard of care. Dr. Robbins' performance in this case is grossly contrary to the accepted medical practices and is probably the reason and proximate cause to the enlarged hernia, and the injury sustained by Mr. Breach having pain. The truss issued to Mr. Breach that Dr. Robbins speaks of, is obsolete, and will not stop the hernia from enlarging once it is past

24

a certain state. **Even simple bowel movements will cause the hernia to rupture, there is no treatment.**

It is my opinion that Dr. Robbins is plainly wrong when he states in his Affidavit:

> "**Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complains were evaluated and treated in a timely and appropriate fashion at Kilby Correctional Facility, and that his diagnosed conditions have been treated in a timely and appropriate fashion.**" [id.]

Dr. Robbins is plainly wrong stating: "**However, a hernia can be treated with restrictions related to lifting, walking, standing and wearing a truss all of which prescribed for Mr. Breach. . .** "**If Mr. Breach had followed the instructions placed on him and if he had worn the prescribed truss, these things would in fact keep the hernia from progressing or getting worse.**" [id]

It is my professional opinion as a surgeon, that Dr. Robins is plainly wrong. Dr. Robbins' treatment, opinion amounts to deliberate indifference because Mr. Breach has an injury that cannot be treated without surgery, it will only get worse and more painful. Dr. Robbins is the cause of proximate injury sustained by Mr. Breach by his failure and deficiency in treating this patient. Dr. Robbins' treatment <u>amounts to no treatment at all,</u> and his conservative approach, and decision to refuse to make a referral to surgical repair or referral to a surgeon, is hindering, preventing, and delaying necessary medical care: Dr. Robbins chose to take an easier less efficient course of treatment as a cheaper

way out and his treatment is shocking and unacceptable, falls below the acceptable standard of care insofar to recognize that a hernia is an unpredictable source of a constant danger because, a Hernia cannot be treated, surgery is the cure and a hernia will rupture at any time and lead into a emergency life or death situation. Under the standard of care, Dr. Robbins should have referred Mr. Breach to a surgeon, or to have his hernia repaired. Dr. Robbins' treatment, his refusal to provide the only medical care available is clearly tantamount to deliberate indifference and constitutes no treatment at all. Management would better describe the prescription given by Dr. Robbins. Morethanless, Dr. Robbins never once examined this patient.

Dr. Robbins breached the standard of care by applying an unknown conservative approach because medically there is no treatment, and the prescription given by Dr. Robbins is hernia management, the only treatment medically known is surgery. No mechanism of preventive care known, and surgical repair is almost always necessary. Dr. Robbins' conduct and performance is intentionally depriving Mr. Breach of the only cure available and that is surgery, which will alleviate his pain, better his health and safety. Dr. Robbins' actions are unacceptable under the standard of care: His actions alone are plainly wrong, obdurate and reflect wantonness because the clear and objective medical standard is to relieve the pain and suffering that is suffered by Mr. Breach due to this untreated hernia. Dr. Robbins' approach is so wide of the mark as to be far below the minimum standard of medical care pertaining to Mr. Breach's hernia and amounts to

deliberate indifference because Dr. Robbins should have known that medically you cannot treat a hernia, surgery is the only cure and, hernia will, and do only get worse. Dr. Robbins has ignored the "red flags" and the symptoms that are different and Mr. Breach's symptoms may start out mild but will become progressively worse causing increasing discomfort. Each hernia is different and the symptoms of a hernia appear gradually or suddenly. Different people feel varying degrees of pain. Some people feel nothing except the presence of a lump, even when a lump is present; surgery is usually advised, while others as Mr. Breach feel that something has ruptured or given way. A hernia belt, truss is obsolete, and only for temporary purposes. Since Mr. Breach has been given a truss, the truss itself is a red flag because you cannot stop a hernia, surgery is the only cure.

Dr. Robbins and Dr. George Lyrene have breached the standard of care and their acts and omissions by failing to actually conduct an examination on Mr. Breach, leaving Mr. Breach in the condition that he is in today, having a large hernia amounts to deliberate indifference, they have not used the care, skill, which is employed by the profession generally and have deviated from the established conduct, which is grossly contrary to accepted medical practices, and amounts to no treatment at all and their acts and omissions are probably the proximate cause to injury and the pain suffered by Mr. Breach, the prolonged statues of his hernia is gratuitous, and they are plainly wrong, obdurate and reflect wantonness by ignoring the danger of a hernia, the painful

symptoms and the enlargement of Mr. Breach's hernia; also, the restriction of his normal daily activity being bowel movements, coughing, sneezing having pain is deliberate indifference.

Nurse Practitioner Bradford Adam, has stepped beyond his qualification making a "no need for surgical referral". Only a doctor is qualified to make such recommendation. The Medical Records do not reflect any personal involvement of Dr. Robbins, and it appears that he relies on his nurse practitioner is an unaccepted practice. B. Adams actions alone are plainly wrong, obdurate and reflect wantonness because he has stepped outside his qualifications. B. Adams has breached the standard of care, and he has failed to use the care, skill that is employed by the profession generally and, in this case B. Adams, has deviated from the established conduct, which is grossly contrary to accepted medical practices as to amount to no treatment at all; and, B. Adams' approach is so wide of the mark as to be far below the minimum standard of the medical care pertaining to Hernias amounts to deliberate indifference.

### DR. GEORGE LYRENE, M.D.

I read the Affidavit of Dr. George Lyrene, M.D., like Dr. Robbins, the records do not reflect that Dr. Lyrene has ever once physically examined Mr. Breach's hernia, but writes an Affidavit opposing surgery, when Dr. Lyrene, ought to know that the only treatment known under the standard of care is surgery.

The standard of care pertaining to a Hernia is that any doctor diagnosing a patient with a hernia:

(i)    Ask questions about the patient's symptom s and overall health;
(ii)   Recommend surgery and make the referral to a surgeon or a specialist;
(ii)   The patient chooses whether to undergo surgery;
(iv)   Explain to the patient that surgically repair is usually advised because of the danger of incarceration and strangulation.

It is a breach of the standard of care for Dr. George Lyrene to give an opinion opposing surgery without recognizing the symptoms of pain, problems walking, problems having bowel movements due to a hernia, and then neither doctor has ever conducted a physical examination.

Dr. Lyrene's actions, because Lyrene <u>never once actually attempted </u>to "treat" Mr. Breach, and his opinion is considered, and in my professional opinion as a surgeon with 27 years of hernia repair experience, Dr. Lyrene's action, his no treatment is plainly wrong and recognized as no treatment at all: his treatment is medically unacceptable and his acts and omissions by actually never once examining Mr. Breach, but write an opinion opposing the only cure, and that is surgery, which will alleviate Mr. Breach's pain and symptoms is wantonness, intentional infliction of pain, and amounts to deliberate indifference – breach of the standard of care. Dr. Lyrene's performance in this case is grossly contrary to the accepted medical practices and is probably the reason and proximate cause to the enlarged hernia, and the injury sustained by Mr. Breach having pain. The truss issued to Mr. Breach that Dr. Robbins speaks of, is obsolete, and will not

stop the hernia from enlarging once it is past a certain state.    Even simple bowel movements will cause the hernia to rupture, there is no treatment.

> "It is my opinion that Dr. Lyrene is plainly wrong when he states in his Affidavit: " I have reviewed the record of Mr. Marcellus Breach.  The medical issue he presents is really quite a simple one. He has a small, easily reducible inguinal hernia, for which conservative management with applied support and limitations on heavy lifting are very appropriate.  This is a hernia that was present by intake documentation and would be amendable to surgery which was clearly elective at the time of his admission and would clearly not be necessary now. . . This is a minor problem . . . for which surgery is not necessary at this time and which is being appropriately managed." (see attached)

Dr. Lyrene is plainly wrong stating: "This is a hernia that was present by intake documentation and would be amendable to surgery which was clearly elective at the time of his admission and would clearly not be necessary now."   Lyrene never once physically examined Mr. Breach.  A Henria cannot heal on its own.  Lyrene in plainly wrong, and   Dr. Lyrene's conservative approach and his opinion amounts to deliberate indifference because Mr. Breach has an injury that cannot be treated without surgery, it will only get worse and more painful. Dr. Lyrene is a cause of proximate injury sustained to Mr. Breach through his acts and omissions, his failure and deficiency in treating this patient.  Dr. Lyrene's <u>treatment amounts to no treatment at all</u>, and his conservative approach, and decision to refuse to make a referral to surgical repair or referral to a surgeon, is hindering, preventing, and delaying necessary medical care:  Dr. Lyrene chose to take an easier less efficient course of treatment as a cheaper way out and his

treatment is shocking and unacceptable, falls below the acceptable standard of care insofar to recognize that a hernia is an unpredictable source of a constant danger because, a Hernia cannot be treated, surgery is the cure and a hernia will rupture at any time and lead into a emergency life or death situation. Under the standard of care, Dr. Lyrene failed in the area to make a surgical referral for Mr. Breach to been seen by a qualified surgeon, or to have his hernia repaired.

Dr. Lyrene's treatment, his refusal to provide the only medical care available is clearly tantamount to deliberate indifference and constitutes no treatment at all. Management would better describe the prescription given by Dr. Lyrene and Dr. Robbins when neither doctor has never once examined this patient.

<u>Dr. Robbins and Lyrene have both breached the standard of care</u> applying an unknown conservative approach because, medically there is no treatment, and the prescription given by Dr. Robbins and Lyrene is hernia management, the only treatment medically known is surgery. No mechanism of preventive care known, and surgical repair is almost always necessary. Dr. Lyrene's conduct and performance is intentionally depriving Mr. Breach of the only cure available and that is surgery, which will alleviate his pain, better his health and safety. Dr. Lyrene's actions are unacceptable under the standard of care: His actions alone are plainly wrong, obdurate and reflect wantonness because the clear and objective medical standard is to relieve the pain and suffering that is suffered by Mr. Breach due to this untreated hernia. Dr. Lyrene's approach is so wide

of the mark as to be far below the minimum standard of medical care pertaining to Mr. Breach's hernia and amounts to deliberate indifference because Dr. Lyrene should have known that medically you cannot treat a hernia, surgery is the only cure and, hernia will, and do only get worse. Dr. Lyrene has ignored the "red flags" and the symptoms that are different and Mr. Breach's symptoms may start out mild but will become progressively worse causing increasing discomfort. Each hernia is different and the symptoms of a hernia appear gradually or suddenly. Different people feel varying degrees of pain. Some people feel nothing except the presence of a lump, even when a lump is present, surgery is usually advised, while others as Mr. Breach feel that something has ruptured or given way. A hernia belt, truss is obsolete, and only for temporary purposes. Since Mr. Breach has been given a truss, the truss itself is a red flag because you cannot stop a hernia, surgery is the only cure.

Dr. Robbins and Dr. George Lyrene have breached the standard of care and their acts and omissions by failing to actually conduct an examination on Mr. Breach, leaving Mr. Breach in the condition that he is in today, having a large hernia amount to deliberate indifference and they have not used the care, skill, which is employed by the profession generally and have deviated from the established conduct, which is grossly contrary to accepted medical practices, and amounts to no treatment at all and their acts and omissions are probably the proximate cause to injury and the pain suffered by Mr. Breach, the prolonged statues of his hernia is gratuitous, and they are plainly wrong,

obdurate and reflect wantonness by ignoring the danger of a hernia, the painful symptoms and the enlargement of Mr. Breach's hernia; also, the restriction of his normal daily activity being bowel movements, coughing, sneezing having pain is deliberate indifference.

## CONCLUSION

It is my medical professional opinion, that Drs. Tassin, Hobbs, Dr. Lyrene, Dr. Robbins, M. D., and the medical providers Prison Health Services, Inc., this stated protocol, practice, policy procedures governing the treatment of hernias is so wide of the mark as to be far below the minimum standard of medical care pertaining to Mr. Breach's hernia and amounts to deliberate indifference. Furthermore, the acts and omissions of Hobbs, Lyrene, Robins, and Prison Health services, Inc., are plainly wrong, obdurate and reflect wantonness because the clear and objective is ignored and subjects Mr. Breach to suffer pain, and also leaves his injury to only become worse as left untreated and is and will subject pain, enlarge, worsen, and will lead into a more sever dangerous medical condition when it becomes incarcerated, strangulated, or into the scrotum is unacceptable to the medical practice under the standard of care, being their protocol.

It is my opinion and I highly recommend as a surgeon that surgery intervention is necessary 'before' Mr. Breach's hernia is incarcerated, also, before it is "trapped", into the scrotum due to the serious dangerous complications that will occur such as nerve

entrapment which is perhaps the most significant complication of inguinal hernia (herniorrhaphy) because injury to the nerves in this area will cause significant problems. Mr. Breach's hernia occurs when a part of his body bulges into an area where it shouldn't. Defendants being doctors especially Dr. Hobbs are the proximate cause to Mr. Breach's injury, the enlarged painful hernia because they have failed to properly treat him, intentionally as a cheaper way out.

The medical treatment, actions and practices of the defendants' amounts to an unacceptable practice under the standard of care. Their actions alone are plainly wrong, obdurate and reflect wantonness; and they have ignored the medical objective: provide the cure is deliberate indifferent to the prolonged suffering of Mr. Breach, based on some words "elective".

It is my opinion that waiting until the life or death situation is when Mr. Breach's hernia gets strangulated, incarcerated or into the scrotum. To allow Mr. Breach's hernia to become strangulated, or incarcerated will affect the structures and the flow of nerves; blood vessels to pass, which will result into serious medical complications and death if not timely treated.

The burning pain experienced by Mr. Breach is a **warning**, **"red flag"** and under the standard of care, no doctor would ignore it as the defendants have and a surgeon should have examined Mr. Breach making sure no infections is occurring, and just how progressive his hernia is as it is enlarging, more painful, more dangerous, leading into

incarceration, and strangulation which is medically unacceptable and a breach in accepted standards of care. Mr. Breach's hernia can and will rupture at any time. Surgery is advised.

The use of Ultrasonography is useful to differentiate Mr. Breach's hernia from other causes of groin swelling.

Further affiant sayeth not.

_____
**Dr. Satyavardhana Rao Yerubandi, M.D., FACS, FRCSC**

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS 15 Day of August 2007.

NOTARY PUBLIC:          MY COMMISSION EXPIRES ON 5-6-2009



TASIA A. SUBLETT
NOTARY PUBLIC
STATE OF ALABAMA
COMM. EXP. 05-06-2009

35

GARY COPES, ET AL                              : STATE OF LOUISIANA   WALTER LEE, CLERK
                                                                      EVANGELINE PARISH

PARISH OF EVANGELINE           :

                               :           AFFIDAVIT

STATE OF LOUISIANA             :

BEFORE ME, the undersigned Notary Public, personally came and appeared:

**DR. JOHN TASSIN, M.D.**
1535 West Main Street, No. 1
Ville Platte, LA 7058
337/363-5591,

Affiant in the above instrument, who, after being duly sworn did depose and state:

"I am Dr. John Tassin, M.D. a physician licensed to do and doing business in the State of Louisiana with my main office located in Ville Platte, Evangeline Parish, Louisiana. I have reviewed the medical records of Marcellus Breach contained in "Defendants' Exhibit 2" from pages 1 thru 33 and recognize theses as being the records of Marcellus Breach, Inmate #AL160710, while he was an inmate at the South Louisiana Correctional Center located in Evangeline Parish, Louisiana at which I am the Staff Physician. I make this Affidavit to supplement and explain my office notes located on page 4 of said Affidavit and referring to the treatment rendered to and prognosis, diagnosis, and care given to Marcellus Breach regarding his hernia.

My first visit with Marcellus Breach was March 21, 2006 at which time he presented with a hernia on his left side which was an inguinal hernia. My notes reflect that I wrote "needs repair?" which indicated that I was questioning whether or not his hernia was going to need a repair. This notation did _not_ reflect that I felt that his hernia actually needed a repair or required repair, but only that I needed to look into the question of whether or not it did need repair.

Marcellus Breach was seen a second time on April 12, 2006 regarding dental problems which did not relate to his hernia.

Marcellus Breach was seen again on July 18, 2006 and was still complaining of a left inguinal hernia. Examination of his hernia indicated it was not incarcerated nor into his scrotum, and that repair of the hernia would be an elective procedure. This note means that surgery was not required for the health or safety of Marcellus Breach, but that surgery was simply elective, but not necessary. My additional review of the nurse's notes located on page 20 for July 18, 2006 indicated that there was no change in the hernia and no new orders were given by me regarding it meaning that the hernia had not gotten better or worse. Additionally, on page 20 of Marcellus Breach's records on July 12, 2006 the Alabama Department of Corrections did not require that hernia repair be done unless the hernia was incarcerated or was into the scrotum. Marcellus Breach's hernia, on July 18, 2006 was not incarcerated nor into his scrotum.

I next saw Marcellus Breach on October 3, 2006 for an old left ankle injury not related to his hernia.

Marcellus Breach's left inguinal hernia did not change between March 21, 2006 through July 18, 2006, and he was not complaining of it on October 3, 2006. Surgery for the hernia is only an elective procedure which is not required for Mr. Breach to do normal light everyday activities. Mr. Breach's hernia was neither getting better or worse during his time at the South Louisiana Correctional Center.

EDWARDS LAW FIRM
112 WEST UNIVERSITY
P.O. BOX 2970
LAFAYETTE, LA 70802

*It is my professional medical opinion that Marcellus Breach's hernia, during the time he was at the South Louisiana Correctional Center, was stable, got neither better nor worse, and that any surgery he may have in the future to correct it would be an elective procedure which is not required for his health or safety, but only for the relief of minor discomfort that the hernia may cause upon heavy exertion.*

*I know all the information contained in this Affidavit of my own personal knowledge."*

DR. JOHN TASSIN, M.D.
1535 West Main Street, No. 1
Ville Platte, LA 70586
337/363-5591

SWORN TO AND SUBSCRIBED before me, this 29th day of March,

2007, Ville Platte, Evangeline, Parish, Louisiana.

Marla Yeager
NOTARY PUBLIC (#52817 )

## CERTIFICATION OF DOCUMENTATION

To Whom It May Concern:

This is to certify that the attached photographic reproduction of records are true and exact photocopies of the inmate records for _Marcellus Breach At 760710_ an inmate at _South La Con Ch._

The copy of the records was prepared by an employee of LCS Corrections Services, Inc. in the ordinary course of business.

_Claudia Jordan_

Employee of LCS Corrections Services, Inc.

DATE: _3/16/07_

WITNESS: _Barbara L. Fuselier_



OFFICIAL SEAL
BARBARA L. FUSELIER
NOTARY PUBLIC No 52894
STATE OF LOUISIANA
PARISH OF EVANGELINE
My Commission Expires with life

## LCS CORRECTIONS SERVICES, INC.
### DOCTOR'S ORDERS SHEET

Offender Name: _Breach, Marcelus_          DOC#: _AL 160710_

| Date / Time | Allergies: NKA |
|---|---|
| 3-21-06 | Hernia (L) Inguinal Hernia Needs repair? |
| | RNR |
| | M. Mapej |
| 4/12/06 | IBP 400mg BID til dental |
| | Dr. Tassin / M. Mapej |
| 7/18/06 | Not Pt has (L) Inguinal Hernia Incarcerated, Elective Procedure |
| | M. Mapej |

DWV

## LCS CORRECTIONS SERVICES, INC.
### DOCTOR'S ORDERS SHEET

Offender Name: _Breach, Marcelus_     DOC#: _AL 160710_

| Date / Time | Allergies: _NKA_ |
|---|---|
| 5-21-06 | Hernia (L) Inguinal Hernia Needs repair? |
| | |
| | M. Mayer |
| 4/12/06 | IBP 400mg BID tel dental Dr. Tassin / M. Mayer |
| 7/18/06 | Not P+ has (L) Inguinal Hernia Incarcerated, Elective Procedure |
| | M. Mayer |
| 10-3-06 | Old inj'ry (L) ankle tender + ROM. |
| | Neb H X 3 { Naprosyn 500 ad #30 Tylenol |
| | M. Mayer |

000001

# LCS CORRECTIONS SERVICES, INC.
## Nurse's Notes

Facility ___SLCC___
Offender: ___Breach, Marcelus___          Offender #: ___A160710___

| Date/Time | Notations | Signature/Title |
|---|---|---|
| 3.20.06 | Intake Screening complete, c̄ | M. Maxwell |
|  | ↓ bunk profile, green (ankle) |  |
| 3.21.06 | Saw MD on rds c̄ new orders | M. Maxwell |
| 4.19.06 | BSC done c̄ new orders — M. Maxwell |  |
| 6/02/06 | Scheduled to go to Dr. Perkins |  |
|  | for dental work this date | M. Maxwell |
| 6/2/06 | Returned ṉo paperwork or |  |
|  | new orders | M. Maxwell |
| 6/8/06 | Trip papers made for Dr. Wood- |  |
|  | ruff on 6/13/06 | M. Duggan |
| 6.13.06 | Returned c̄ NNO; return for |  |
|  | fill | M. Maxwell |
| 6/28/06 | Trip papers made for Dr. Perkins |  |
|  | on 6/30/06 | M. Duggan |
| 6.30.06 | Cancelled Dr. Perkins due to |  |
|  | limited appt × 20 inmates | M. Maxwell |
| 7.12.06 | Received a call from Branden from Alabama |  |
|  | re: Inguinal Hernia - Stated Hernia repair |  |
|  | are not done here - unless incarcerated or |  |
|  | into Scrotum. This subject has not c̄ hernia |  |
|  | since seen by Dr. Tassin 2.31.06 - Subject |  |
|  | placed on sick call for 7.18.06 to see if |  |
|  | he needs a referral to a Surgeon | D. Lott |
| 7.10.06 | We faxed report to Ruth Naglich |  |
|  | in reference to inguinal hernia |  |
|  | inmate requesting repair |  |
|  | & ID filing a lawsuit to have |  |
| 17 | surgery done | M. Maxwell |
| 7.12.06 | 9:40AM - Phone call received |  |
|  | from Lynn Brown and She |  |
|  | will return call on previous |  |
|  | fax on 7.10.06; awaiting re- |  |
|  | turn call for follow up | M. Maxwell |
| 7.17.06 | 4:25pm Brought to medical - Left inguinal |  |
|  | hernia easily reducable - No c/o pain | D. Lott |
| 7.18.06 | Saw Dr. Tassin & no change |  |
|  | in hernia & no new orders |  |
|  | given | M. Maxwell |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, (AIS # 160710)          *

     Plaintiff,          *

V.          *          2:06-CV-1133-MEF

PRISON HEALTH SERVICES, et al.,          *

     Defendants.          *

## AFFIDAVIT OF WILLIAM D. HOBBS, M.D.

BEFORE ME, ___James Bailey___, a notary public in and for said County and State, personally appeared **WILLIAM D. HOBBS, M.D.**, and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is William D. Hobbs. I am a medical doctor and I have been a licensed physician in the State of Alabama since 2006. I have served as the Site Medical Director for Limestone Correctional Facility in Athens, Alabama since October of 2006. I have been employed with Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates since my employment began at Limestone. I am personally familiar with all of the facts set forth in this Affidavit.

The Plaintiff, Marcellus Breach (AIS #160710), is currently incarcerated as an inmate at Limestone Correctional Facility. Mr. Breach was transferred to Limestone Correctional Facility on March 23, 2007. I am familiar with Mr. Breach and have been involved with the

medical services provided to him at Limestone.  In addition, I have reviewed Mr. Breach's Complaint in this action as well as his medical records (certified copies of which are being produced to the Court along with this Affidavit).

Mr. Breach was first diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole." I have reviewed his medical records and have been actively involved in his medical treatment.

The following information is based upon my personal knowledge and my review of Mr. Breach's medical records. Mr. Breach prepared a Sick Call Request on April 26, 2007 complaining of burning pain due to his hernia. He stated it was causing him problems coughing, sneezing and with bowel movements. This request was received on April 27th.  Mr. Breach claims that Dr. Tassin at South Louisiana Correctional Services stated to him on March 21, 2006 that he needed surgery to repair his hernia.  I examined Mr. Breach on April 30th and I noted that he did not have a right Direct, Indirect or Femoral Hernia.  Mr. Breach did not have a left Indirect or Femoral Hernia. He did have a large, easy to reduce direct inguinal hernia on the left. I ordered another small Ventura Truss as Mr. Breach stated he had lost his truss. My Physicians' Orders on April 30th indicate that I prescribed Motrin 600 mg as needed for 90 days for his discomfort and CTM SR (a sustained release antihistamine) for coughing and sneezing.

In addition, I have reviewed two pages of Doctor's Orders from Louisiana Corrections Services. Dr. Tassin indicates on March 21, 2006 that Mr. Breach does have a left Inguinal Hernia, but repair is questionable. On July 18, 2006, Dr. Tassin again indicates that Breach has a left Inguinal Hernia, but he states that it is not incarcerated and hernia repair is an elective procedure. (A copy of which is attached as an exhibit to the Supplemental Special Report.)

I have reviewed a Special Needs Communication Form which was prepared on December 27, 2006 and the following restrictions were placed on Mr. Breach at that time: 1) Bottom Bunk for 180 days; 2) Truss for 180 days; and 3) No straining or lifting greater than 20 pounds for 180 days. I prepared a Special Needs Communication Form on April 10, 2007 and placed the following restrictions on Mr. Breach: 1) No lifting greater than 25 pounds; 2) No standing/walking greater than one hour; 3) Hernia Truss, left ankle brace. The diagnosis on this date was Inguinal Hernia and deformity of left foot.

I have also reviewed the Affidavit of Dr. Satyavardhana Rao Yerubandi in this matter (see attached) and I do not agree with several of his opinions as stated. As a general rule, a hernia does not progress quickly and there are instances where a person has a hernia for many years and may never require surgery for repair. Hernia repair is an elective surgery. The danger of waiting for a hernia to become incarcerated or strangulated is not high and emergencies involving hernias do not develop often.

Mr. Breach's inguinal hernia is being treated in an attempt to keep it from becoming larger and surgery is not his only option. A hernia can be treated with restrictions related to lifting, walking, standing and wearing a truss all of which have been prescribed for Mr. Breach. His medical records indicate that he has arrived at his medical appointments on several occasions without wearing his truss and he informed PHS employees that he lost it. Mr. Breach is not following the appropriate treatment necessary to treat his hernia. A truss is used to decrease discomfort and to decrease the possibility of the hernia becoming larger. If Mr. Breach would follow the instructions provided to him and the restrictions placed on him by PHS physicians and if he would wear the truss prescribed for him, these things would in fact keep his hernia from progressing. Mr. Breach's hernia is not life threatening and does not require surgical

3

intervention and I believe surgery is not medically necessary. His hernia is easily reducible, non-strangulated, and is not incarcerated.

Hernia repair is an elective procedure and every hernia does not need to be repaired. In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum. Mr. Breach does not meet this protocol and his hernia is easily reduced. If another physician is suggesting that Mr. Breach's hernia should be repaired, this physician is mistaken and he is only trying to perform an elective surgery which is unnecessary and is not medically needed. Again, Mr. Breach is not in imminent danger and his hernia is not life threatening.

Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complaints were evaluated and treated in a timely and appropriate fashion and that his diagnosed conditions have been treated in a timely and appropriate fashion. It is also my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. Mr. Breach was seen and evaluated by the medical or nursing staff, and was referred to an appropriate care provider or given appropriate care, each time he registered any health complaints. At all times, Mr. Breach's known medical complaints and conditions were addressed as promptly as possible under the circumstances. Mr. Breach continues to receive medical treatment for his complaints related to his left inguinal hernia."

Further affiant sayeth not.

_William D. Hobbs, MD_

**WILLIAM D. HOBBS, M.D.**

4

STATE OF ALABAMA                    )
                                   )
COUNTY OF Wallace                  )

Sworn to and subscribed before me on this the _13th_ day of
_July_, 2007.

_____
Notary Public
My Commission Expires:

_9-8-2010_

5

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, (AIS # 160710)              *

    Plaintiff,                                                    *

V.                                                                       *          2:06-CV-1133-MEF

PRISON HEALTH SERVICES, et al.,                  *

    Defendants.                                                *

## AFFIDAVIT OF MICHAEL E. ROBBINS, M.D.

BEFORE ME, _Willie G. Rowell_, a notary public in and for said County and State, personally appeared **MICHAEL E. ROBBINS, M.D.**,  and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is Michael E. Robbins.  I am a medical doctor and am over twenty-one years of age.  I have been a licensed physician in Alabama since 1986 and have been board certified in internal medicine since 1986.  Since June of 2002, I have served as the Medical Director for Kilby Correctional Facility in Mt. Meigs, Alabama. Since November 3, 2003, my employment has been with Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates. I am personally familiar with all of the facts set forth in this Affidavit.

The Plaintiff, Marcellus Breach (AIS #160710), is currently incarcerated as an inmate at Kilby Correctional Facility.  I am familiar with Mr. Breach and have been involved with the medical services provided to him at Kilby.  In addition, I have reviewed Mr. Breach's Complaint

in this action as well as his medical records (certified copies of which are being produced to the Court along with this Affidavit).

Mr. Breach was first diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole." He has been incarcerated at Kilby Correctional Facility since September 6, 2006. I have reviewed his medical records and have been actively involved in his medical treatment. It is noted in a Progress Note from Dr. Bosserman on May 5, 2005 that Mr. Breach does have an inguinal hernia on the left, but it is not into the scrotum. The inmate has had the hernia for at least the past year. Dr. Bosserman placed the inmate on limited restrictions of no lifting greater than 25 lbs. and no standing or walking for greater than one hour due to (1) a deformity of his left foot, (2) an ankle brace, and (3) a hernia for which he prescribed a truss. In a yearly Health Evaluation dated February 2, 2006, he made no oral complaints about any pain associated with the inguinal hernia.

Mr. Breach was to be seen on December 21, 2006 for evaluation of his left inguinal hernia but left before his exam could be performed. It should also be noted that Mr. Breach signed up for Sick Call on October 9, 2006 and October 12, 2006, but signed a Release of Responsibility Waiver and left before his exam on both dates. Mr. Breach was examined on December 27, 2006 for evaluation of his left inguinal hernia. He voiced no other complaints at that time. It was noted on that date that he was not wearing his truss. The hernia was noted as being easily reducible, non-strangulated, and is not incarcerated. Inmate was prescribed a left inguinal truss for 180 days and Percogesic for pain. He was placed on restrictions of no straining, no lifting more than 20 lbs. and placed in bottom bunk for 180 days. It was noted at that time that there was no need for surgical referral at present. In my opinion, the inmate's

2

hernia does not require surgical intervention and I believe surgery is not medically necessary. The type hernia which Mr. Breach has should not cause the patient any pain nor is it a condition that a reasonable person cannot live with under the conditions and restrictions governing Mr. Breach.

Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complaints were evaluated and treated in a timely and appropriate fashion at Kilby Correctional Facility, and that his diagnosed conditions have been treated in a timely and appropriate fashion.

At no time did I or any of the medical or nursing staff at Kilby Correctional Facility deny Mr. Breach any needed medical treatment, nor did we ever act with deliberate indifference to any serious medical need of Mr. Breach. In other words, it is my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. Mr. Breach was seen and evaluated by the medical or nursing staff, and was referred to an appropriate care provider or given appropriate care, each time he registered any health complaints at Kilby Correctional Facility. At all times, Mr. Breach's known medical complaints and conditions were addressed as promptly as possible under the circumstances.

Further affiant sayeth not.

_Michael E. Robbins MD_
MICHAEL E. ROBBINS, M.D.

3

STATE OF ALABAMA                )
                                )
COUNTY OF _____      )

Sworn to and subscribed before me on this the _____14th_____ day of
_February_, 2007.

_____
Notary Public
My Commission Expires:

_____6/15/08_____

4

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, #160710,          )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )   CIVIL ACTION NO. 2:06-CV-1133-
MEF                                 )
PRISON HEALTH SERVICES,             )
                                    )
        Defendants.                 )

## AFFIDAVIT OF GEORGE LYRENE

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at Large, personally appeared George Lyrene, who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is George Lyrene. I am over the age of 19. I have an MD degree from the University of Alabama, Birmingham, and am board certified with the American Board of Internal Medicine, since 1978. I have 30 years of practice experience, including 15 years in private practice and 15 years in Correctional Medicine. I am currently contracted as Medical Director for the Alabama Department of Corrections.

I have reviewed the record of Mr. Marcellus Breach. The medical issue he presents is really quite a simple one. He has a small, easily reducible inguinal hernia, for which conservative management with applied support and limitations on heavy lifting are very appropriate. This is a hernia that was present by intake documentation and would be amenable to surgery which was clearly elective at the time of his admission and would clearly not be necessary now. The patient has several times walked away from sick call

opportunities to address this hernia signing releases when he did. When he was seen he was given the appropriate exam and attention. This is a minor problem of for which surgery is not necessary at this time and which is being appropriately managed.

George Lyrene
ADOC Consulting Medical Director

SWORN TO AND SUBSCRIBED before me this 2nd day of February, 2007.

NOTARY PUBLIC

MY COMMISSION EXPIRES 6 Mar 08

US Patent 6,422,242B1

**'eatures:**
- gentle compression
- weakened muscles and holds hernia in place
- shaped dual compression-formed pads focus
- Is for either single or double hernia
- ast band is adjustable to desired compression
- l leg straps

**sías de Producto**
- ona compresión suave
- los músculos débiles y mantiene la hernia en

**structes du Produit:**
- ɾne Contention douce
- ɪes muscles faibles et tient l'hernie en place
- millie avec deux compresses de maintien
- réée
- encourage (coussinets), soit pour une simple
- u pour une double hernie
- pie élastique est ajustable pour pouvoir obtenir
- piés pour les jambes sont ajustables

ilina de compresión moldeadas especialmente
ocar el soporte
rillas dobles para hernias unilaterales o
s
elástico se ajusta a la presión y talla deseada
ustables para las piernas

**Material Content/Contenido / Composition:**
60% Polyester/Poliéster, 18% Nylon/Nilón,
15% Latex/Látex, 5% Cotton/Algodón/Coton, 2% Spandex

**Latex Warning:** The waistband and leg straps of the
Hernia Belt contain small amounts of natural rubber,
which may cause skin irritation in those patients who are
sensitive to latex.

**Precaución de Látex:** El cinturón y los tirantes
contienen cantidades pequeñas de goma natural, que
podrían ocasionar irritación a personas que tengan piel
sensible al látex.

**Attention au Latex:** La ceinture et les attaches
(sangles) pour les jambes contiennent une petite
quantité de caoutchouc naturel qui pourrait causer des
irritations de la peau aux personnes sensibles ou
allergiques au latex.

**Care Instructions:**
Fasten all closures. Hand wash in cool water with mild
soap. Pat dry to remove excess water. Air dry away from
heat. Wash as needed.

**Instrucciones de Cuidado:**
Abroche los cierres. Lave a mano con agua fría con
jabón suave. Páselo la mano para remover el exceso de
agua. Seque al aire libre lejos del calor. Lave como se
necesita.

**Conseils pour le Nettoyage:**
Boucler les sangles de fermeture. Laver à la main, à
l'eau froide avec un savon doux. Tapoter la ceinture pour
enlever l'excès d'eau. Faire sécher à l'abri de la chaleur.

**✦ PROFESSIONAL MEDICAL SUPPORTS ✦**



*Style Form*
*Orthopédie by Design*

**Hernia Support Belt**
**Cinturón de Soporte para Hernia**
**Ceinture Herniaire**

Silver Label™ Tri-Lingual Line for Medical Professionals.
Made in U.S.A. by FLA Orthopedics®, Miramar, FL 33025
©2002 FLA Orthopedics, Inc., Miramar, FL 33025
B6-GS/673

**Silver ✚ Label**
Professional Medical Supports

# Spif Form® Hernia Support Belt
## Model 67-350

**Indications:**
- Reducible inguinal hernias
- Single or double hernias
- Support weakened abdominal muscles

**Important Information:**

Use this product only under the supervision of your physician and **only for REDUCIBLE hernias** (can be pushed back). A hernia should be inspected daily to ensure it is not becoming infected or developing into a more serious non-reducible hernia. Your hernia belt should be removed and the area checked frequently.

A non-reducible hernia can become life threatening if part of the intestine gets trapped or "strangulated" in the opening. This can lead to dangerous complications such as obstruction of the flow of intestinal contents or blood, leading to tissue death and gangrene. The symptoms of intestinal obstruction are nausea, vomiting, loss of appetite, or increased abdominal pain.

<u>A strangulated hernia is an emergency situation that usually requires immediate surgery.</u>

**Sizing:**
Measure around hips to determine size.

| Size | Inches |
|------|--------|
| Small | 30 - 35 |
| Medium | 35 - 41 |
| Large | 41 - 46 |

**See back for more care instructions.**

Para instrucciones en español, vea adentro de la inserción.
Pour instructions en français, voir endedan l'brochure.

## Fitting Instructions



Pad Insert

Against Body

The Hernia Belt includes removable left and right flexible foam pads. When inserted correctly, the rounded (curved) s the pad goes against the body. If treating a **single hernia, remove the unneeded pad** from the support.

1. Unhook the leg straps from the waist strap and undo one side of the waistband. Position the support and pad on t affected area and fasten the waist strap. Adjust both sides of the waist strap evenly. Pull the elastic waistband to c desired position.

2. Pass the leg straps through the legs and attach the white loop tabs onto the hook closure on the waist strap. Mak leg straps are comfortable and not twisted.

3. Once the support has been fitted and the leg straps adjusted, undo one side of the waist strap and step out of the like you would trousers with the leg straps sized and securely fastened.



## What is a Hernia?

The term hernia refers to a protrusion of an organ or tissue through an abnormal opening in the body. Most hernias are of part of the intestine slipping through a weakness in the abdominal wall. Hernias develop most commonly around w such as the navel or groin (inguinal hernias) or around previous incisions. Inguinal hernias are most common in men

A hernia can be both seen and felt as a lump in the abdomen or groin. A reducible hernia usually disappears when yo and can be pushed back into the abdominal cavity. Discomfort is usually experienced, especially when coughing, lif objects, or standing for a long time. A large increase in pain may indicate that the hernia is worsening and a physic be consulted immediately.

Limiting activity, eliminating excess weight, and wearing a hernia belt or truss may provide temporary relief. However, **CURE IS SURGERY.** For more information consult your physician or there are several internet reference site **www.herniainfo.com.**

Always consult a physician when experiencing persistent pain, discomfort, inflammation or swelling. This consumer information is not intended for self-diagnosis or treatment.

**Silver** 
Professional Med



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# PRISON HEALTH SERVICES, INC.
## SICK CALL REQUEST

Print Name: _MARCELLUS BREACH_          Date of Request: _5-22-07_
ID # _160716_          Date of Birth: _8-28-69_   Location: _DORM - D_
Nature of problem or request: _This morning I experienced unusual pain with my hernia. It's hard to descrise; but, I was having problems walking. I kept pressure on it, but everytime I coughed. It hurt. Ibuprofen -- no good for the pain._

_Marcellus Breach_
Signature

## DO NOT WRITE BELOW THIS LINE

Date: ____/____/____
Time: _____ AM  PM
Allergies: _____

| RECEIVED |
|---|
| Date: |
| Time: |
| Receiving Nurse Intials _____ |

**(S)ubjective:**

**(O)bjective**   (V/S): **T:**_____   **P:**_____   **R:**_____   **BP:**_____   **WT:**_____

**(A)ssessment:**

**(P)lan:**

Refer to:   MD/PA   Mental Health   Dental   Daily Treatment     Return to Clinic PRN
CIRCLE ONE
Check One:  ROUTINE ( )    EMERGENCY ( )
        If Emergency was PHS supervisor notified:   Yes ( )    No ( )
                Was MD/PA on call notified:   Yes ( )    No ( )

_____
SIGNATURE AND TITLE

WHITE:    INMATES MEDICAL FILE
YELLOW:  INMATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

GLF-1002  (1/4)