## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MARCELLUS BREACH, #160710

     Plaintiff,

Vs.                       CASE NO: 2:06-cv-1133-MEF

PRISON HEALTH SERVICES, INC., et al.,

     Defendants.

### MOTION FOR SANCTION PURSUANT TO RULE 11(C), FED.R.CIV.P.,

**COMES NOW**, Plaintiff _Marcellus Breach_ (hereinafter "Breach"), in proper person "Pro Se," request unto this court pursuant to _Rule 11(c)(1)(A)_, _Federal Rules of Civil Procedures_, to issue sanctions upon Attorney Paul M. James, Jr. (JAM 0017), for several reasons: Plaintiff shows unto the court as follows:

### GOVERNING LAW OF SANCTIONS

An opinion, **In re Yagman**, 796 F.2d 1165 (9th Cir. 1986), focused on the proper timing that a court should follow when considering imposition of Rule 11 sanctions. In that case, the court reversed and remanded a ruling that imposed an excessive award of sanctions because the lower court waited until the conclusion of trial to discipline the attorney's conduct. The abuse that the court ultimately sanctioned continued throughout trial unabated. The ninth circuit **urged that when sanctions are warranted by those**

1

**circumstances, the court should not waiver in imposing them** . . . . . [] ] . . . . [To do so]

flies in the face of the primary purpose of sanctions, which is to deter subsequent abuses.

This policy is not well served by tolerating abuses the course of an action and then

punishing the offender after trial is at an end. A proper sanction assessed at the time of

the transgression will ordinarily have some measure of deterrent effect on subsequent

abuses and resultant sanctions. Such 'prompt action helps enhance the credibility of the

rule and , by deterring further abuse, achieve its therapeutic purpose.' In re Yagman, 796

F.2s 1165, 1184-85 (9th Cir. 1986)(quoting *Schwarzer, Sanctions Under the New Federal Rule*

*11 – A Closer Look*, 104 F.R.D. 181, 182 (1985)).


## ISSUE NO. 1[1]

### IF COUNSEL CAN PROVE HIS ACCUSATION, BACK HIS PLEADINGS, BREACH WILL THEN, UPON "PROOF", CONSIDER STRONGLY TO VOLUNTARY DISMISS THIS CASE/ REQUEST FULL EVIDENTIARY

¶ 1.    Breach request that he be given an opportunity through a full evidentiary hearing

to SHOW that counsel <u>will eat his very words.</u>

### HISTORY OF COUNSEL'S ABUSE

On September <u>21, 2007</u> counsel for the medical defendants filed a document

entitled: "<u>Defendant's Motion For Sanction Or, In The Alternative, Motion To Strike</u>

<u>Pleading".</u>    The court on *September 24, 2007* ordered plaintiff to file a response to

_____

[1] **Breach cannot believe that this court will allow, tolerate the abuse of counsel. How many court orders did this court place on counsel to answer, respond? Repeated order after order.**

counsel's request for sanctions, and his motion to strike pleadings. [*Court Doc. 149-1 –*

*Order*]  Counsel alleged that plaintiff stated false statements contained in documents

have been filed with the court.

¶ 2.    Plaintiff on *October 1, 2007,* filed a document entitled motion to strike motion for

sanctions, [*Court Doc. 151*] due to counsel's failure to follow the Rules of Civil

Procedures governing sanctions.  The court on *October 3, 2007*, granted plaintiff's motions

to strike motion for sanctions [*Court Doc. 151*] and ordered that the motion for sanctions

filed by the medical defendants on *September 21, 2007,* [*Court Doc. 146*] be stricken from

the docket. [*Court Doc. 154-1, Order*].  In addition, the court ordered plaintiff to show

cause why the medical defendant's motion to strike should not be granted on or before

*October 18, 2007*. [*Court Doc. 154-1 – Order*]

¶ 3.    On or about *October 5, 2007*, plaintiff filed his response to the medical defendants

motion to strike pleadings, [*Court Doc. 158*] and on *October 9, 2007*, the court denied the

medical defendants motion to strike. [*Court Doc. 146, 159-1—Order*]

¶ 4.    Pursuant to *Rule 11(c)(1)(A)*, *Federal Rules of Civil Procedures*, plaintiff request that

the court award costs in the form of sanctions on counsel associated with plaintiff

presenting and opposing counsel's frivolous motion, bad faith pleadings, that were

designed as tactic, attempting to attack plaintiff through written aspersions, that are

nothing more an unethical, unprofessional and nothing more than empty conjectures --

legally drafted without merit, contorted, and attempted to abort the judicial machinery

from fully adjudicating the merits of this case.   Nevertheless, the vicious acts, and unethical behavior of counsel shows nothing more than his words appear to be words of a "drunken sailor," lacking the ability, cessation from drifting into the very waters of violations of <u>Rules of Professional Conduct</u>.

¶ 5.    Breach is requesting that this Court place a "Truss" over counsel's rhetoric behavior in defending this litigation.

¶ 6.    An evidentiary hearing is requested and sanctions are appropriate due to counsel's ostensive pleadings that are drifting into the very high waters of a heavy current  -- Breach does not believe counsel is able to swim without the support and protection of the court being his life preserver.    Counsel continued unsupported arguments are designed nothing more that to attack, harass plaintiff, shifting this case into belligerent litigation is unprofessional and gratuitous.    Breach will not participate nor indulge into counsel's undeadly spider web.

It is unethical for attorneys to participate into a battleground through written aspersions, designed to do nothing more that harass.


### ARGUMENT NO. 1

### COUNSEL'S LATEST MEANDERINGS HAVE NO PLACE/
### USE ANY NAME OF "MOTHER".

In this case, it appears as though the Defendants have decided to 'foul ball' and want to play ball, by continued patterns, still disrupting the process. At this time, it does

appear that counsel is in need of a sanction as a reminder of his continuing obligation to play within the rules of the discovery game and end his needless harassment which he seems to have a problem being a professional: he appears not to have abandoned his drunken litigation struggle but, is more of a continuous and outrageous abuse of counsel's privilege to practice law. However, if counsel thinks for one time that complaints cannot be filed against him to the Bar Association, he is mistaken.

Fed. R. Civ. P. 11 requires that the lawyer who elects to sign a paper take responsibility for it, even if that responsibility is shared among many lawyers. "Taking responsibility" must include verifying that the drafter of a complaint is not acting contrary to the facts, as he knows them. It also includes reading a pleading to which one's name is signed. Rule 11 admits of no exceptions to its requirement that all reasonable attorneys will read documents prior to filing them with the court.

Rule 11 contemplates shifting burdens as additional information is acquired by an attorney. As new facts are obtained, the attorney must continue to review his position to be sure that it is supported by facts and the law. *Woodfork v. Gavin*, 105 F.R.D. 100, 104 (N.D.Miss. 1985).

In counsel's latest pleadings, "Response To Plaintiff's Notice Of Intent To File Motion For Sanctions Or, In The Alternative, Motion To Strike Pleadings And Affidavit and Affirmative Defenses". Specifically counsel has again presents his arguments,

accusations as if one of a "drunken sailor". Breach calls counsel to the table, to prove his contorted, exenterated, and erroneous pleadings, Breach **DEMANDS** that he prove his mendacious arguments, and his mendacious pleadings before the court.

### POINT A.

Because counsel has apparently overlooked _Rule 11_ requirements. Breach has fully complied with _Rule 11(c)(1)(A),_ _Federal Rules of Civil Procedures_, which requires "safe harbor" notice. After notice, and if the moving party determines that counsel has not withdrawn, or corrected any of the challenged conduct, then, Breach submits his motion for sanctions. Counsel is incorrect, thinking that this motion has been denied. Only the "portion" of the notice, the notice to strike has been denied by the court. [_**Court Doc. 155 –Order**_].

This court must have a zero tolerance policy against frivolous and misleading filings. Counsel has, and Breach will demonstrate, counsel has intentionally misrepresented, facts unto the court with arguments containing perjury, lacked evidentiary support, and represents a fraud upon the court. Counsel has in his two of his pleadings, acted unprofessional, and without standing by attacking Breach and basically, really presented no argument at all, but rather an attack on Breach's integrity offered in an apparent attempt to divert the court's attention from the perjury, and fraud issues at hand.

Breach cannot ascertain whether this can continue to tolerate counsel's ethical actions. However, counsel appears to be naïve about his duty to refrain from vexatious and frivolous conduct through acts of "**sand bagging**" standards. What is even more troublesome is the dishonest conduct on display that counsel continues to use as an approach to interfere egregiously with the court's administration of justice. Counsel and defendants elaborated scheme involving perjury clearly qualifies as a willful deceit of the court. Acts of perjury seriously undermine the very core of the judicial system. The presence creates a **"foul odor"** and perjury in this litigation emasculates justice and deprives Breach of a fair trial.

### POINT B.

### BREACH DEMANDS THAT COUNSEL SUPPORT HIS ACCUSATIONS AND HIS SLANDEROUS STATEMENTS TO THE COURT

In counsel's latest meanderings, identified specially, on his response to Breach's notice of intent to file for sanctions: Counsel has not conducted any investigation before he speaks. On <u>page # 3, ¶ 4.</u> Counsel states a false statement, and relies on an Affidavit from Dr. Williams Hobbs, who is the very doctor who poured sugar into Jackie Morrow's stomach. [See, prior Affidavit field from Jackie Morrow] Counsel relies on Hobbs statement that is not, cannot possibly travel under regarding "personal knowledge" is clear. <u>Rule 56(e)</u>, <u>Federal Rules of Civil Procedures:</u>

**"(e)     Form of Affidavits; Further Testimony; Defense Required.**

**Supporting and opposing affidavits shall be made on <u>personal knowledge</u>, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.   Sworn or certified copies of all papers or parts there referred to in an affidavit shall be attached thereto or served therewith.   The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogators, or further affidavits . . . . . (Emphasis added)**

**FED.R.CIV. P., 56(e)**

Counsel takes the position and statements that are false, and not based on personal knowledge, simply cannot possibly bear on any matter other than "lack of personal knowledge" because, Hobbs states:

**"Breach fails to follow instructions provided to him, fails to adhere to restrictions placed upon him by PHS physicians, and fails to wear the truss prescribed for him, all of which <u>would</u> keep his hernia form progressing and would eliminate his pain complaints. [2]**

**[Affidavit Dr. William Hobbs,<br>p.2 "Special Report and Answer<br>of Dr. William Hobbs, et al."]**

What is interesting, Hobbs <u>basically admits hernias will progress.</u>   However, counsel fails to investigate facts before he speaks them creates a misrepresentation of facts. *Exhibit "A"*, is the *"Prison Health Services, Inc., Nursing Evaluation Tool"*, that counsel <u>obviously has not</u> submitted to this court as a continuing duty to his initial disclosure as facts develop.   However, on <u>*October 5, 2007*</u>, PHS employee, **LPN, Celvin D. Atkins**, states that Breach is: (i) **"WEARING TRUSS, (ii) REQUEST SURGERY"**.

---

[2]   Hobbs uses the word "would" which is the possibility Breach's hernia can, have, and will, enlarge.

Therefore, where is counsel's factual basis reasonably can lead to anything different from what **LPN, Nurse Celvin D. Atkins**, notes on the medical records of PHS: counsel bases his arguments, on nothing, but lies, deceit, "no personal knowledge" relying on Dr. Hobbs who has admitted to this Court that he has not seen Breach since <u>April 30, 2007.</u>

Breach clearly opposes this Affidavit by PHS medical records. **[Exhibit A]**

Counsel argues to this court indirectly, through acts of misrepresentation. On <u>page # 3, ¶ 5</u>, counsel speaks as a 'drunken sailor' because he states: <u>"Response To Plaintiff's Notice Of Intent To File Motion For Sanctions, . . . ."</u>

> **"It is critical that Mr. Breach does not appear to have opposed this affidavit. However, when he does, it will be yet another example of perjury and intentional fraud being practiced upon this Court. Prior medical records further support that Breach failed to follow instructions provided to him and the restrictions placed upon him by PHS physicians. Thus, PHS is properly placing that point in issue before this Court."**

<u>Rule 11 contemplates shifting burdens as additional information is acquired by an attorney. As new facts are obtained, the attorney must continue to review his position to be sure that it is supported by facts and the law.</u> *Woodfork v. Gavin*, <u>105 F.R.D. 100</u>, 104 (N.D.Miss. 1985). Dr. Hobbs and counsel had no evidence, then or now, to support his contentions that Breach <u>does not follow instructions</u> because their **very own** medical records **speak differently**. **Counsel calls his very own medical records "Perjury".**

Counsel ought to think first, then write. Dr. Yerubanid's Affidavit before this Court, his 35 pages extensively debunks the defendants treatment unto "deliberate indifference," as to "no treatment at all," and grossly incompetent". Counsel cannot back up what he states: **"When he [Breach] does, it will be yet another example of perjury and intentional fraud being practiced upon this Court. [See, p. 3, ¶ 5 Counsel' Response]**

A surgeon in hernia repair clearly states to this Court that the treatment proscribed to Breach is considered deliberate indifference, no treatment at all, and grossly incompetent. No other evidence is needed at this time, at this stage, and deliberate indifferent was not required as a showing on a preliminary injunctions application. Nevertheless, just to give the Court evidence in part, defendants will not have any defense regarding their treatment. Dr. Yerubandi, has stated that the treatment proscribed by Hobbs is no treatment at all, grossly incompetent as to amount to deliberate indifference. Yerubandi states:

"... []...
"**Dr. Hobbs has clearly chosen some medically <u>unknown conservative approach</u> issuing Motrin and a Truss and physical restrictions, then accuse Marcellus Breach <u>"not following instructions"</u> is contrary because there are no instructions except, "surgery" because it is the ONLY** treatment – the truss being issued in this case for approximately 2 1/2 years is totally unacceptable. A truss is, obsolete; and, today medically unknown -- his decision reflect obduracy due to his refusal make a recommendation for surgical repair or referral to a surgeon is, hindering, preventing, delaying necessary care. It is clear and plainly wrong for Dr. Hobbs <u>to chose to take an easier less efficient course of treatment as a cheaper way out and is shocking and unacceptable, falls</u>

<u>below the acceptable standard of care</u> insofar as he failed to recognize the significance of Mr. Breach injury, the enlargement of his hernia, complaints of a **trapped hernia, problems walking, limited exercise, physical restrictions, pain, problems having bowel movements, coughing, sneezing,** is plainly wrong, and Hobbs has clearly ignored and has failed to recognize that a Hernia is an **unpredictable source** of a constant danger because, a hernia cannot be treated, surgery is the cure; a hernia <u>will rupture at any time</u>, then, it will lead into a life of death situation also, lead into more sever medical complications such as **tissue death, gangrene, and nerve entrapment**.

      <u>Dr. William E. Hobbs, M.D.</u>, under the standard of care **has failed to prescribe the necessary medical treatment regarding Mr. Breach's inguinal hernia and Dr. Hobbs' treatment is probably the proximate cause of injury and probably the proximate cause of subjecting Mr. Breach to endure pain and suffering and; probably the proximate cause to Mr. Breach's hernia enlarging amounts, and is tantamount to deliberate indifference because Dr. Hobbs' practice and treatment proscribed in this case is deviated from the medical profession and is so shocking and unacceptable to the medical profession.**

Under the standard of care, Dr. Hobbs has failed to provide the objective regarding Mr. Breach's injury, and that objective is the cure, and the only cure in this case, is surgery. There is no excuse, for Dr. Hobbs treatment.

                                      [See, p. # 12, 13. Affidavit Dr. Yerubandi, M.D., Plaintiff's Motion For Reconsideration of Denial of Preliminary Injunction"].

     Next, counsel has most definitely stepped into an area that this Court must protect. Counsel shoots his missiles directly towards another area that is outside this litigation, and Breach demands that this Court stop this abuse. Counsel states on page # 3, ¶ 6: "Mr. Breach and <u>his mother's</u> attorneys have pummeled this Court with pleading

after pleading, discovery request after discovery request over an issue that is easy for this Court to decide." However, Dr. Yerubanid has answered counsel's frivolous questions regarding: "Does the medical care provided to Marcellus Breach, as a result of the hernia condition suffered by him constitute "deliberate indifference to a serous medical need" raising to the level of a constitutional violation under the Eighth Amendment?" **YES! the 35 page Affidavit by Dr. Yerubandi clearly supports Breach's position and speaks for itself.**

## CONCLUSION

*Exhibit "B",* further supports his position that any doctor employed with PHS will not see him. On 10/3/07, Breach requested to see Dr. Hobbs concerning Hernia pain. Breach was never seen!

*Exhibit "C",* is the "**Prison Health Services, Inc., Inmate Grievance Appeal**" that Ms. Hunt, swears to this Court Breach never filed, that counsel supported his position. However, on October 26, 2007, Breach reviewed his medical records, and there are several medical documents missing, and this particular grievance APPEAL, **was also, missing form his medical records here at Limestone prison. WHY?**

*Exhibit "D",* is the very "**Fitting Instructions Hernia Support Belt" Model 67-350** that Dr. Hobbs issued Breach with a warning that: "**Limiting activity, eliminating excess**

weight, and wearing a hernia belt or truss may provide temporary relief. However, CURE IS SURGERY." (Emphasis on the word "MAY")

### *DEFENDANTS HAVE INTENTIONALLY CONCEALED EVIDENCE*

What other proof does this Court need from Breach that everything he has alleged about **Dr. John A. Tassin, M. D.**, stating "Needs Repair?" is true? Morethanless, counsel speaks <u>without thinking</u>, especially <u>without investigating facts</u>: *Exhibit "E",* is the **Affidavit** from **Dr. John Tassin, M.D.,** the very doctor who wrote "needs repair" and also attests that there <u>is a second part of the Louisiana medical records </u>**concealed.** Tassin speaks that:

> "My notes reflect that I wrote "needs repair? which indicated that I was questioning whether or not his hernia actually needed repair or required repair, but only that I needed to look into the question of whether of not it did need repair. [] . . . "Additionally, on page 20 for July 20, 2006 of Marcellus Breach's records on July 12, 2006 the Alabama Department of Corrections did not require that hernia repair be done unless the hernia was incarcerated or was into the scrotum. . . ."

This overwhelming evidence basically confirms who has spoken truthfully throughout this litigation. Counsel is debunked, Tassin's Affidavit is before the Court, now, and what lies will counsel come up with? Defendants have concealed **page 20, the July 12, 2006** indication of Brandon Kindard calling Louisiana with instructions that Breach cannot have surgery unless his hernia is incarcerated or into the scrotum. [See, *Medical Records attached to Affidavit John A. Tassin, M.D.]*

Dr. Tassin has stated that he wrote needs repair, he confirms ADOC calling Louisiana and that part is on the second part of the medial records counsel has concealed the Louisiana medical records: the " . . . Additionally, on page 20 of Marcellus Breach . . . . " of Dr. Tassin's Affidavit, *Exhibit "F"*.

Sanctions are warranted.  Counsel stated misrepresented facts, slandered Breach's name, submitted perjury, states basically, lies!  Counsel states on page. 2 ¶ 1: **"As previously been addressed in the multiple pleadings previously filed with this Court, Mr. Breach has engaged in intentional misrepresentations to this Court, misconstruing, if not intentionally lied, about medical evidence from Dr. John Tassin, and failed to comply with eh requirements of the Prison Litigation Reform Act, despite his perjurous statements to the contrary."**

Breach argues, Dr. John A. Tassin, M.D., Dr. Yerubandi, M.D., and this evidence presented, speaks for itself.  Breach respectfully, under 42 U.S.C., § 1983, **DEMANDS** that this Court take action.  Counsel has <u>repeatedly abused the judicial system</u>; he **refuses** to comply with several court orders.  This court **has bent over backwards** for counsel.  Breach request monetary damages imposed in the amount of $325.00 for the time incurred in defendants counsel's frivolous motions for sanctions, and $ 325.00 for the time incurred in research to file this pleading before this court.

That this court grant what is in the interest of justice the $65.00 per hour @ 10 hours to both answer and file the foregoing before this court under the penalty of perjury 28 U.S.C. 1746.

Done this 6th Day November 2007.

Marcellus Breach 160710®
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY*, that I have served a true copy of the foregoing upon the following by U.S. Mail, First Class, postage prepaid and properly addressed to and mailing through the prison mail box system on this 7th Day of October 2007.

Alabama Dept. Of Corrections
Legal Division
P.O. Box 301501
Montgomery, Alabama 36130

Rushton, Stakely, Johnstone & Garrett, P.A.
P.O. Box 270
Montgomery, Alabama 36101

Marcellus Breach

EXHIBIT "A'

PHS

## Nursing Evaluation Tool:     <u>General Sick Call</u>

Exhibit "A"

Facility: BBB

Patient Name: _Breach          Marcellus_
            Last                First            MI

Inmate Number: _160710_        Date of Birth: _7 | 28 | 69_
                                            MM   DD   YYYY

Date of Report: _10 | 5 | 07_   Time Seen: _6²⁰_   AM/PM Circle One
              MM   DD   YYYY

**Subjective:** Chief Complaint(s): _Hernia Pain_

Onset: _8 months_

Brief History: _Wearing Truss, Request for surgery, Notivi order 4-30-07 to 90 days_
(continue on back if necessary)

**Objective:** Vital Signs: (As Indicated) T: _97³_  P: _83_  RR: _20_  B/P: _122 | 82_

Examination Findings: _Wearing Truss at Time, Mild Edema noted, Unable to reduce it in, Cap refill 4 3 sec, Pain scale, 7, No meds taken at this time_
(continue on back if necessary)

□ Check Here if additional notes on back

**Assessment (Referral Status)** Preliminary Determination(s): _____

☑ Referral **NOT REQUIRED**

□ Referral **REQUIRED** due to the following: (Check all that apply)
    □ Recurrent Complaint (More than 2 visits for the same complaint)
    □ Other: _____

**Comment:** You should contact a physician and/or a nursing supervisor if you have any concerns about the status of the patient or are unsure of the appropriate care to be given.

**Plan:** Check All That Apply:
☑ Instructions to return if condition worsens.
☑ Education: The patient demonstrates an understanding of the nature of their medical condition and instructions regarding what they should do as well as appropriate follow-up. □ YES □ NO (If NO then schedule patient for appropriate follow-up visits)
☑ Other: _Wear Truss_
        (Describe)

OTC Medications given □ NO ☑ YES (If Yes List): _Motrin 600mg 1 P.O. Tid PRN X ____ 180 days_

Referral: ☑ NO □ YES (If Yes, Whom/Where): _____     Date for referral: ___/___/___
                                                                        MM  DD  YYYY

Referral Type: □ Routine □ Urgent □ Emergent (if emergent who was contacted?): _____     Time _____

Nurses Signature _____     Name: _Celvin D Atkins LPN_
                                            Printed

# EXHIBIT "B"

*TO: MRS. HUNT* **RECEIVED** *10th Request*

*Exhibit "B"*

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

# PRISON HEALTH SERVICES, INC.
## SICK CALL REQUEST

OCT 04 2007

Print Name: __Marcellus Breach__     Date of Request: __10/3/07__
ID # __160710__     Date of Birth: _____     Location: __D-19__
Nature of problem or request: __I Need to See Dr. Hobbs.__
__I Need PAiN Medication. Still having__
__Hernia PAiN.__

_____
Signature

## DO NOT WRITE BELOW THIS LINE

Date: __10/5/07__
Time: __6 20__ AM (PM)
Allergies: __NKDA__

| RECEIVED |
|---|
| Date: |
| Time: |
| Receiving Nurse Intials _____ |

**(S)ubjective:**

**(O)bjective**     (V/S): T: _____     P: _____     R: _____     BP: _____     WT: _____

**(A)ssessment:**

**(P)lan:** V.O. Dr. Hobbs MD  Motrin 600 mg ± P.O. Tid PRN X 180 days
10-5-07

Refer to:     MD/PA     Mental Health     Dental     Daily Treatment     Return to Clinic PRN
CIRCLE ONE
Check One:     ROUTINE ( )     EMERGENCY ( )
If Emergency was PHS supervisor notified:     Yes ( )     No ( )
Was MD/PA on call notified:     Yes ( )     No ( )

_____     10-5-07
SIGNATURE AND TITLE

WHIT...     ...MATES MEDICAL FILE
YELL...     ...MATE RETAINS COPY AFTER NURSE INITIALS RECEIPT

*Haw delivery Sick call box.*
*MD*

EXHIBIT "C"

*To Mrs Hunt*

**Prison Health Services, Inc.**

RECEIVED
OCT 0 2 2007
*keep pink copy!*

Inmate Grievance **Appeal**

*Exhibit "C"*

NAME _Marcellus Breach (160710)_    AIS # _____    UNIT _D-18_    DATE _10-2-07_

---

**PART A – INMATE Grievance Appeal for the following reason:**

I've filed several sick calls, several grievances about this same problem. Aug 6, 2007 I requested PAIN Medication, no attention I have PAIN still for this HERNIA, Tired of Complaining!

_____
INMATE SIGNATURE

**Return this form to Health Services Administrator by dropping in the sick call box or giving to the segregation sick call nurse on rounds.**

---

**PART B – RESPONSE**    DATE RECEIVED _10/5/07_

Review of your medical jacket reveals that you have not signed up for sick since 4/26/07 until your visit on 10/5/07. Dr. Hobbs gave the s/c nurse a order for Motrin 600mg TID PRN X 180 days. You must follow protocol which starts with eval. in sick call where medication can be renewed i MD order. I can not find a request in your med file record for the Aug 6, 07 date.

Inmate Signature _____    Health Services Department Head _[signature]_

Date _____    Date _10/5/07_

---

**H.S.A. Selection:**

| | | Y | N | | | Y | N |
|---|---|---|---|---|---|---|---|
| I | Dissatisfied with Quality of Medical Care | ☐ | ☐ | VI Delay in Health Care Provided | | ☐ | ☐ |
| II | Dissatisfied with Quality of Dental Care | ☐ | ☐ | VII Problems with Medication | | ☐ | ☐ |
| III | Dissatisfied with Quality of Mental Health Care | ☐ | ☐ | VIII Request to be seen | | ☐ | ☐ |
| IV | Dissatisfied with Response to Non-Medical Request | ☐ | ☐ | IX Request for Off-site Specialty Care | | ☐ | ☐ |
| V | Conduct of Healthcare Staff | ☐ | ☐ | X Other | | ☐ | ☐ |

Committee Review of Data Collection

11/03 – Alabama
Revised 5/16/05

60535-AL

*Witness, Felix Snell #183207 @ D-18 Pod*

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH (AIS # 160710),          *

      Plaintiff,          *

V.          *          2:06-CV-1133-MEF

PRISON HEALTH SERVICES, e  al.,          *

      Defendants.          *

## AFFIDAVIT OF DEBORAH HUNT, R.N., H.S.A.

    **BEFORE ME,** James S Bailey , a notary public in and for said County

and State, personally appeared **DEBORAH HUNT, R.N., H.S.A.**, and being duly sworn,

deposed and says on oath that the averments contained in the foregoing are true to the best of her

ability, information, knowledge and belief, as follows:

    "My name is Deborah Hunt.  I am over the age of twenty-one and am personally familiar

with all of the facts set forth in this Affidavit.  I have been a licensed, registered nurse in

Alabama since 1985.  I hold an Associates Degree in nursing from John C. Calhoun College in

Tanner, Alabama.  I have worked as a nurse at Limestone Correctional Facility in Harvest,

Alabama, since January of 2002, and have been the Health Services Administrator (H.S.A.) at

Limestone since April of 2007.  Since November 3, 2003, I have been employed by Prison

Health Services, Inc., the company which currently contracts with the Alabama Department of

Corrections to provide medical services to inmates.

    It is my understanding that Marcellus Breach has made an allegation in this matter that he

has not been seen for his medical complaints related to his hernia since April 30, 2007.  This is

true.  Mr. Breach has stated that he filed a sick call request on May 22, 2007, June 15, 2007,

June 30, 2007, July 3, 2007, July 14, 2007, August 1, 2007 and August 6, 2007.  This is not true.
In fact, I have read Mr. Breach's brief (see Exhibit A attached hereto) and none of this is true. I
have made a thorough search of our files and we have no record of receiving any of these sick
call requests from Mr. Breach. Our records also show that Mr. Breach did not file an Inmate
Grievance/Appeal on July 14, 2007 nor did he file a grievance on August 6, 2007.  Mr. Breach's
allegations in this regard are unfounded, as we have no record of him filing any of the above
stated sick call requests or grievances.

     Mr. Breach has failed to exhaust Limestone's informal grievance procedure relating to
the receipt of medical care for this alleged condition. Specifically, as relevant to his Complaint,
Mr. Breach has submitted neither a sick call request, an inmate informal grievance nor an inmate
grievance appeal. As such, the healthcare unit at Limestone has not been afforded the
opportunity to resolve Mr. Breach s medical complaints."

     Further affiant sayeth not.

                                        _Deborah Hunt RN/HSA_
                                        DEBORAH HUNT, R.N., H.S.A.


STATE OF ALABAMA          )
                          )
COUNTY OF AT LARGE _ )


     Sworn to and subscribed before me on this the   18th       day of
_Sept._____, 2007.


                                        _____
                                        Notary Public

                                        My Commission Expires:

                                        _FEB. 2010_

                         2

EXHIBIT "D"

Exhibit "D"

✚ PROFESSIONAL MEDICAL SUPPORTS ✚



*Soft Form*
Orthopedic by Design

Hernia Support Belt

Cinturón de Soporte para Hernia

Ceinture Herniaire

**Silver ✚ Label®**
Professional Medical Supports

**Material Content/Contenido / Composition:**
60% Polyester/Poliéster, 18% Nylon/Nilón,
15% Latex/Látex, 5% Cotton/Algodón/Coton, 2% Spandex

**Latex Warning:** The waistband and leg straps of the
Hernia Belt contain small amounts of natural rubber,
which may cause skin irritation in those patients who are
sensitive to latex.

**Precaución de Látex:** El cinturón y los tirantes
contienen cantidades pequeñas de goma natural, que
podrían ocasionar irritación a personas que tengan piel
sensible al látex.

**Attention au Latex:** La ceinture et les attaches
(sangles) pour les jambes contiennent une petite
quantité de caoutchouc naturel qui pourrait causer des
irritations de la peau aux personnes sensibles ou
allergiques au latex.

**Care Instructions:**
Fasten all closures. Hand wash in cool water with mild
soap. Pat dry to remove excess water. Air dry away from
heat. Wash as needed.

**Instrucciones de Cuidado:**
Abroche los cierres. Lave a mano con agua fría con
jabón suave. Pásela la mano para remover el exceso de
agua. Seque al aire libre lejos del calor. Lave como se
necesita.

**Conseils pour le Nettoyage:**
Boucler les sangles de fermeture. Laver à la main, à
l'eau froide avec un savon doux. Tapoter la ceinture pour
enlever l'excès d'eau. Faire sécher à l'abri de la chaleur.

✚ ✚ ✚ ✚ ✚ ✚ ✚ ✚ ✚

**Silver ✚ Label®**
Professional Medical Supports

Silver Label® Tri-Lingual Line for Medical Professionals.
Made in U.S.A. by FLA Orthopedics®, Miramar, FL 33025
©2002 FLA Orthopedics, Inc., Miramar, FL 33025     B5-05L673

**Features:**
• gentle compression
• weakened muscles and holds hernia in place
• shaped dual compression-formed pads focus

• s for either single or double hernia
• aist band is adjustable to desired compression

• le leg straps

**sticas de Producto**
• ona compresión suave
• los músculos débiles y mantiene la hernia en

• illas de compresión moldeadas especialmente
• ocar el soporte
• illas dobles para hernias unilaterales o
• es

• elástico se ajusta a la presión y talla deseada
• ajustables para las piernas

**stiques du Produit:**
• ne contention douce
• les muscles faibles et tient l'hernie en place
• nique avec deux compresses de maintien
• rdées

• embourrage (coussinets), soit pour une simple
• u pour une double hernie
• ure élastique est ajustable pour pouvoir obtenir
• ntion désirée

• gles pour les jambes sont ajustables

US Patent 6,422,24281

# Soft Form® Hernia Support Belt
### Model 67-350

**Indications:**
- Reducible inguinal hernias
- Single or double hernias
- Support weakened abdominal muscles

**Important Information:**
Use this product only under the supervision of your physician and **only for REDUCIBLE hernias** (can be pushed back). A hernia should be inspected daily to ensure it is not becoming infected or developing into a more serious non-reducible hernia. Your hernia belt should be removed and the area checked frequently.

A non-reducible hernia can become life threatening if part of the intestine gets trapped or "strangulated" in the opening. This can lead to dangerous complications such as obstruction of the flow of intestinal contents or blood, leading to tissue death and gangrene. The symptoms of intestinal obstruction are nausea, vomiting, loss of appetite, or increased abdominal pain.

**A strangulated hernia is an emergency situation that usually requires immediate surgery.**

**Sizing:**
Measure around hips to determine size.

| Size | Inches |
| --- | --- |
| Small | 30 - 35 |
| Medium | 35 - 41 |
| Large | 41 - 46 |

**See back for more care instructions.**

Para instrucciones en español, vea adentro de la inserción.
Pour instructions en français, voir endedan l'brochure.

## Fitting Instructions

Pad Insert

Against Body

Back of Belt (open side)

The Hernia Belt includes removable left and right flexible foam pads. When inserted correctly, the rounded (curved) side of the pad goes against the body. If treating a **single hernia**, remove the unneeded pad from the support.

1. Unhook the leg straps from the waist strap and undo one side of the waistband. Position the support and pad on the affected area and fasten the waist strap. Adjust both sides of the waist strap evenly. Pull the elastic waistband to desired position.

2. Pass the leg straps through the legs and attach the white loop tabs onto the hook closure on the waist strap. Make leg straps are comfortable and not twisted.

3. Once the support has been fitted and the leg straps adjusted, undo one side of the waist strap and step out of the support like you would trousers with the leg straps sized and securely fastened.

## What is a Hernia?

The term hernia refers to a protrusion of an organ or tissue through an abnormal opening in the body. Most hernias are of part of the intestine slipping through a weakness in the abdominal wall. Hernias develop most commonly around weaknesses such as the navel or groin (inguinal hernias) or around previous incisions. Inguinal hernias are most common in men.

A hernia can be both seen and felt as a lump in the abdomen or groin. A reducible hernia usually disappears when you lie down and can be pushed back into the abdominal cavity. Discomfort is usually experienced, especially when coughing, lifting objects, or standing for a long time. A large increase in pain may indicate that the hernia is worsening and a physician should be consulted immediately.

Limiting activity, eliminating excess weight, and wearing a hernia belt or truss may provide temporary relief. However, **CURE IS SURGERY.** For more information consult your physician or there are several internet reference sites www.herniainfo.com.

*Always consult a physician when experiencing persistent pain, discomfort, inflammation or swelling. This consumer information is not intended for self-diagnosis or treatment.*



**Silver** Professional Med

# EXHIBIT "E"

**MARCELLUS BREACH**      : **13TH JUDICIAL DISTRICT COURT**

**VERSUS NO: 00067886 - B**      : **PARISH OF EVANGELINE** 2007 APR -3 A 9 06

**GARY COPES, ET AL**      : **STATE OF LOUISIANA** WALTER LEE CLERK
                                                EVANGELINE PARISH

PARISH OF EVANGELINE      :
                                  :    <u>AFFIDAVIT</u>

STATE OF LOUISIANA      :

BEFORE ME, the undersigned Notary Public, personally came and appeared:

**DR. JOHN TASSIN, M.D.**
1535 West Main Street, No. 1
Ville Platte, LA 7058
337/363-5591,

*Exhibit 2*

Affiant in the above instrument, who, after being duly sworn did depose and state:

"*I am Dr. John Tassin, M.D. a physician licensed to do and doing business in the State of Louisiana with my main office located in Ville Platte, Evangeline Parish, Louisiana. I have reviewed the medical records of Marcellus Breach contained in "Defendants' Exhibit 2" from pages 1 thru 33 and recognize theses as being the records of Marcellus Breach, Inmate #AL160710, while he was an inmate at the South Louisiana Correctional Center located in Evangeline Parish, Louisiana at which I am the Staff Physician. I make this Affidavit to supplement and explain my office notes located on page 4 of said Affidavit and referring to the treatment rendered to and prognosis, diagnosis, and care given to Marcellus Breach regarding his hernia.*

*My first visit with Marcellus Breach was March 21, 2006 at which time he presented with a hernia on his left side which was an inguinal hernia. My notes reflect that I wrote "needs repair?" which indicated that I was questioning whether or not his hernia was going to need a repair. This notation did <u>not</u> reflect that I felt that his hernia actually needed a repair or required repair, but only that I needed to look into the question of whether or not it did need repair.*

*Marcellus Breach was seen a second time on April 12, 2006 regarding dental problems which did not relate to his hernia.*

*Marcellus Breach was seen again on July 18, 2006 and was still complaining of a left inguinal hernia. Examination of his hernia indicated it was not incarcerated nor into his scrotum, and that repair of the hernia would be an elective procedure. This note means that surgery was not required for the health or safety of Marcellus Breach, but that surgery was simply elective, but not necessary. My additional review of the nurse's notes located on page 20 for July 18, 2006 indicated that there was no change in the hernia and no new orders were given by me regarding it meaning that the hernia had not gotten better or worse. Additionally, on page 20 of Marcellus Breach's records on July 12, 2006 the Alabama Department of Corrections did not require that hernia repair be done unless the hernia was incarcerated or was into the scrotum. Marcellus Breach's hernia, on July 18, 2006 was not incarcerated nor into his scrotum.*

*I next saw Marcellus Breach on October 3, 2006 for an old left ankle injury not related to his hernia.*

*Marcellus Breach's left inguinal hernia did not change between March 21, 2006 through July 18, 2006, and he was not complaining of it on October 3, 2006. Surgery for the hernia is only an elective procedure which is not required for Mr. Breach to do normal light everyday activities. Mr. Breach's hernia was neither getting better or worse during his time at the South Louisiana Correctional Center.*

EDWARDS LAW FIRM
112 WEST UNIVERSITY
P.O. BOX 2970
LAFAYETTE, LA 70502
(337) 237-6881



It is my professional medical opinion that Marcellus Breach's hernia, during the time he was at the South Louisiana Correctional Center, was stable, got neither better nor worse, and that any surgery he may have in the future to correct it would be an elective procedure which is not required for his health or safety, but only for the relief of minor discomfort that the hernia may cause upon heavy exertion.

I know all the information contained in this Affidavit of my own personal knowledge. "

DR. JOHN TASSIN, M.D.
1535 West Main Street, No. 1
Ville Platte, LA 70586
337/363-5591

SWORN TO AND SUBSCRIBED before me, this 29th day of March ,

2007, Ville Platte , Evangeline , Parish, Louisiana.

Marla Yeager
NOTARY PUBLIC (#52817 )

EXHIBIT "F"

Exhibit "F"

## CERTIFICATION OF DOCUMENTATION

To Whom It May Concern:

   This is to certify that the attached photographic reproduction of records are true and exact photocopies of the inmate records for _Marcellus Breach A# 760710_

an inmate at _South La Corr Ch._

   The copy of the records was prepared by an employee of LCS Corrections Services, Inc.

in the ordinary course of business.

_Claudia Jordan_

Employee of LCS Corrections Services, Inc.

DATE: _3/16/07_

WITNESS: _Barbara L. Fuselier_

OFFICIAL SEAL
BARBARA L. FUSELIER
NOTARY PUBLIC No. 52894
STATE OF LOUISIANA
PARISH OF EVANGELINE
My Commission Expires with life

## LCS CORRECTIONS SERVICES, INC.
### DOCTOR'S ORDERS SHEET

Offender Name: _Breach, Marcellus_     DOC#: _AL 160710_

| Date / Time | Allergies: NKA |
|---|---|
| 3-21-06 | Hernia (L) Inguinal Hernia Needs repair? |
| | AW M. Maye |
| 4/12/06 | IBP 400mg BID tel dental Dr. Tassin / M. Maye |
| 7/18/06 | Not Pt has (L) Inguinal Hernia, Incarcerated, Elective Procedure |
| | M. Maye |

DW V
000005

## LCS CORRECTIONS SERVICES, INC.
### Nurse's Notes

Facility: SLCC
Offender: Breach, Marcelus           Offender #: A160710

| Date/Time | Notations | Signature/Title |
|-----------|-----------|-----------------|
| 3/20/06 | Intake screening complete c̄ | M Pador |
| | 4 bunk profile given (ankle) | |
| 3.21.06 | Saw MD on rds c̄ new orders | M Mayes |
| 4.12.06 | PSC done c̄ new orders | M Mayes |
| 6/02/06 | Scheduled to go to Dr. Perkins | |
| | for dental work this date | M Mayes |
| 6/2/06 | Returned no paperwork or | |
| | new orders | M Mayes |
| 6/8/06 | Trip papers made for Dr Wood | |
| | run on 6/13/06 | M Duggan |
| 6.13.06 | Returned c̄ NNO; return for | |
| | full | M Mayes |
| 6/28/06 | Trip papers made for Dr Perkins | |
| | on 6/30/06 | M Duggan |
| 6.30.06 | Cancelled Dr. Perkins due to | |
| | limited appt x 20 inmates | M Mayes |
| 7.12.06 | Received a call from Brandon from Alabama | |
| | re: Inguinal Hernia - Stated Hernia repairs | |
| | are not done there - unless incarcerated or | |
| | into scrotum. This subject has not had hernia | |
| | since seen by Dr Tassin 3.31.06 - Subject | |
| | placed on sick call for 7.18.06 to see if | |
| | he needs a referral to a Surgeon | D Tott |
| 7/10.06 | We faxed report to Ruth Naglich | |
| | in reference to inguinal hernia | |
| | inmate requesting repair | |
| | + ID filing a lawsuit to have | |
| 17 | surgery done. | M Mayes |
| 7.12.06 | 9:40 AM - Phone call received | |
| | from Lynn Brown and she | |
| | will return call on previous | |
| | day on 7.10.06; awaiting re- | |
| | turn call for follow up. | M Mayes |
| 7.17.06 | 4:25 pm Brought to medical - Left inguinal | |
| | hernia easily reducible - no c/o pain | D Tott |
| 7.18.06 | Saw Dr. Tassin & no change | |
| | in hernia & no new orders | M Mayes |
| | given. | |

# LCS CORRECTIONS SERVICES, INC.

## OFFENDER GRIEVANCE

## SOUTH LOUISIANA CORRECTIONAL CENTER

Is this an emergency grievance?    Yes _____    No _____

OFFENDER'S NAME *Marcellus Breach*    LOCATION *Beatcat 2.*

Time & Date of Incident: _____    Location of Incident: _____

Name & Location of Witnesses: *Medical*

Name of Personnel Involved: *Medical*

Summary of Complaint: *I've been recommended for surgery for a hernia. I've yet seen anyone to have surgery.*

*Serious Medical Need.*

Specific Relief Desired: *Surgery*

Today's Date: *6/18/06*    Offender's Signature: *Marcellus Breach*

Grievance #: *06-215*    Date Rec'd: **JUN 26 2006**

Type: *100*    Screened by: *Warden Viator*

Policy/Procedure Challenged? Yes _____    No _____

_____ Hold pending decision in grievance # _____

✓ Accepted and Referred to *Nurse Maxie*

_____ Rejected/Returned for the following reason: _____

Date: _____    Warden or Designee Signature: _____

000035

10

# LCS CORRECTIONS SERVICES, INC.
## Current Duty/Recreational Status

START DATE: 3/20/06    STOP DATE: [indefinite]

OFFENDER NAME: Breon Marcellus    DOC #: 160710    HOUSING: R-2 #1

DUTY STATUS:

☐ REGULAR    ☐ INDOORS    ☐ REGULAR WITH RESTRICTIONS
☐ COMPOUND    ☐ LIMITED    ☐ BED REST
☐ NO DUTY    ☐ LAY-IN    ☐ OTHER

### SPECIFIC DUTY RESTRICTIONS / LIMITATIONS

☐ LEFT ARM    ☐ RIGHT ARM    ☐ TOOLS    ☐ SIT TO WORK    ☐ BENDING    ☐ STOOPING
☐ PUSHING    ☐ PULLING    ☐ SQUATTING    ☐ KITCHEN    ☒ BOTTOM BUNK ONLY / NO HEIGHTS
☐ NO LIFTING GREATER THAN _____ POUNDS    ☐ WHEELCHAIR    ☐ CANE    ☐ WALKER FOR AMBULATION
☐ SEIZURE / MEDICAL PRECAUTIONS (NO CLIMBING, MOVING MACHINERY OR SHARPS)    ☐ CRUTCH 1X _____ 2X _____

COMMENTS: Due to medical condition

SPORT RECREATIONAL RESTRICTIONS: ☐ NO SPORTS ☐ CONTACT SPORTS ☐ WEIGHTLIFTING ☐ OUTDOOR SPORTS

NAME: DOCTOR / NURSE

# LCS CORRECTIONS SERVICES, INC.

## OFFENDER GRIEVANCE

## SOUTH LOUISIANA CORRECTIONAL CENTER

Is this an emergency grievance?    Yes _____    No _____

OFFENDER'S NAME _Marcellus Breach_    LOCATION _BEARCAT 2_

Time & Date of Incident: _5/30/06_    Location of Incident: _BEARCAT 2_

Name & Location of Witnesses: _S.L.C.C. Officials_

Name of Personnel Involved: _STAFF_

Summary of Complaint: _My legal work WAS destroyed! Cost also._
_Soap, Razors, clothes, Bread coffee, Stamps books destroyed_
_and taken without a property sheet. I purchased_
_items @ S.L.C.C. canteen got Receipts._
_Store batteries. — I brought this from you! SUGAR!_

Specific Relief Desired: _Return Property_

Today's Date: _5-29-06_ (30)    Offender's Signature: _Marcellus Breach_

---

Grievance #: _06-203_    Date Rec'd: _JUN 15 2006_

Type: _200_    Screened by: _WARDEN VIATOR_

Policy/Procedure Challenged? Yes _____    No _____

_____ Hold pending decision in grievance # _____.

_____ Accepted and Referred to _____.

---

X (Rejected)/Returned for the following reason: _See A.R.P. # 06-201_
_REDUNDANT — See A.R.P. # 06-201_

---

Date: _JUN 15 2006_ Warden or Designee Signature: _____

000102