IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

|  |  |  |
|---|---|---|
| MARCELLUS BREACH, #160710 | * | |
| Plaintiff, | * | |
| Vs. | * | CASE NO: 2:06-cv-1133-MEF |
| PRISON HEALTH SERVICES, INC., et al., | * | |
| Defendants. | * | |

## PLAINTIFF'S *SECOND SEPARATE MOTION FOR SANCTION IN CONJUNCTION SANCTIONS MOTION(S) PURSUANT TO RULE 11(C), FED.R.CIV.P.,*

**COMES NOW**, Plaintiff <u>Marcellus Breach</u> (hereinafter "Breach"), in proper person "Pro Se," pursuant to <u>Rule 11(c)</u>, *Federal Rules of Civil Procedures*, after timely notice given to <u>Attorney Paul M. James Jr., (0017</u>) request that sanctions be imposed for various ethical and *Rule 11* violations:  Breach shows this sanction request is based on his notice of intent to file sanctions and is a bona fide as follows:[1]

1)      The record will reflect that Counsel was given written notice pursuant to <u>Rule 11(c)(1)(A), Federal Rules of Civil Procedures</u> requesting that counsel make appropriate corrections to the challenged violations. [Court Doc. 152] The Court gave counsel several

---

[1] **This Motion is alleging separate rule violations based on Breach's Notice of Intent, whereas, the attached Motion For Sanctions is in regarding to continued rule violations by counsel in his response on November 1, 2007.**

opportunities and extensions of time to respond to the allegations contained in the document:  Counsel's due date to file his response was on or before *November 1, 2007.* However, counsel filed his answer, Breach moves for sanctions.

2)      The accusations and rule violations alleged in Breach's document entitled: "*12-Day Notice of Intent To File Motion For Sanctions Or, In The Alternative, Motion To Strike Pleadings, & Affidavits and Affirmative Defenses*"[Court Doc. #152] are reinstated and stated below as follows:

### VIOLATION NO. 1

### COUNSEL PRESENTED MISREPRESENTATION UNTO THE COURT AND RELIED ON FRIVOLOUS ARGUMENTS SUBMITTED THROUGH ACTS OF PERJURY, CONCEALING MATERIAL EVIDENCE

1)      When an attorney signs a pleading or motion, he or she in essence certifies that he has drafted the document in good faith and that the allegations are true and not intended to delay the litigation or harass the opposition.  The test in judging whether the conduct gives rise to *Rule 11* sanctions is an objective one. See, *Committee Note, Fed.R.Civ.P., 11* advisory committee note.

2)      A Court ruling on a motion for *Rule 11* sanctions must make a "two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous. See, **Baker v. Alderman,** 158 F.3d 516, 524 (11th Cir. 1998).

3)    Sanctions are warranted when the defendants exhibit a "deliberate indifference" to obvious facts," . . . . See, *Davis v. Carl*, 906 F.2d 533, 537 (11th Cir. 1990); *Threaf properties Ltd., v. Title Insurance Company of Minnesota, 875* F. 2d 831, 835-36 (11th Cir. 1989)

4)    The test in judging whether the conduct gives rise to Rule 11 sanctions is an objective one. Congress amended the rule in 1983, and in doing so, eliminated the subjective good faith standard that had existed earlier, and which required a finding that the attorney's conduct was either willful or intentional. The advisory committee notes make it clear that "the [new] standard is less stringent than the original good faith formula and thus it is expected that a greater range of circumstances will trigger its violation." Fed. R. Civ. P. 11 advisory committee note.2

A decision in the Court of Appeals for the Ninth Circuit has clarified a confusing issue in the application of Rule 11. The opinion, *In re Yagman*, 796 F.2d 1165 (9th Cir. 1986), focused on the proper timing that a court should follow when considering the imposition of Rule 11 sanctions. In that case, the court reversed and remanded a ruling that imposed an excessive award of sanctions because the <u>lower court waited until the conclusion of trial to discipline the attorney's conduct.</u> The abuse that the court ultimately sanctioned continued throughout trial unabated. The ninth circuit urged that when sanctions are warranted by those circumstances, the <u>court should not waiver</u> in imposing them . . . ..[ ]. . . . [To not do so] flies in the face of the primary purpose of

sanctions, which is to deter subsequent abuses. This policy is not well served by tolerating abuses during the course of an action and then punishing the offender after trial is at an end. A proper sanction assessed at the time of the transgression will ordinarily have some measure of deterrent effect on subsequent abuses and resultant sanctions. Such 'prompt action helps enhance the credibility of the rule and, by deterring further abuse, achieve its therapeutic purpose.' *In re Yagman*, 796 F.2d 1165, 1184-85 (9th Cir. 1986) (quoting *Schwarzer, Sanctions Under the New Federal Rule 11-- A Closer Look,* 104 F.R.D. 181, 182 (1985)).

The case before this Court illustrates perfectly the reasoned analysis of the *In re Yagman* decision. In light of this Court's finding that at the appropriate time the court will determine what is relevant to the submitted evidence, clearly, counsel relied on a clearly established federal statutory law 42 U.S.C. 1997e(a)(h) intentionally attempted to mislead the court with argument and exhibits containing perjury, attempting to dismiss Breach's claims with prejudice while withholding material evidence that should have been contained in the "Initial Disclosure" of Breach's medical records. In addition, counsel's continues to 'ambush' this court throughout this entire litigations relying on dishonesty, perjury, misrepresentation, and concealing evidence in support federal law under the "*Prison Litigation Reform Act of 1995*" ("PLRA") asserting 42 U.S.C. § 1997e(a) 'backfires' as frivolous arguments, dilatory tactic intended to harass the Plaintiff and the Court, and not asserted with good faith, it is highly appropriate for this Court to sanction

the party now and thereby "increase the likelihood that [future] meritless claims and motions will be abandoned and additional monetary and judicial resources will be saved." *In re Yagman*, 796 F.2d

    a.    See, Defendants initial Special Report, Count IV @ p. 7 – 10 relying on Linda Lawrence Affidavit in their support page. 9 ¶ 2, [In this particular case, Breach failed to follow administrative procedures that existed within the Kilby Correctional Facility. [Exhibit "C" --- Affidavit of Linda Lawrence]. These procedures required Breach to seek administrative relief of his claim before seeking court intervention regarding his claim.  His failure to follow these internal procedures concerning his medical grievances require his claim be dismissed with prejudice. Woodford v. NGO, 126 S.Ct. 2378, 165 L.Ed. 2d 368 (2006)." Filed on February 14, 2007.

    b.    See, Defendants', Prison Health Services, Michael Robbins, M.D., Nurse Practitioner Bradford Adams, et al., Supplemental Special Report Regarding Prison Marcellus Breach (AIS 160710) @ p. 20 – 25, filed on July 13, 2007.

Counsel has consistently and persistently used the infusion of perjury and concealing material evidence throughout these pretrial proceedings in an effort to gain an advantage over his opponent is recognized by the courts as a fraud on the court.

Counsel submitted several affidavits, but most identified containing perjury is an Affidavit by Defendant Linda Lawrence that contains nothing more than perjury, *Exhibit "A"*. Acts of perjury seriously undermine the very core of the judicial system.  The presence of perjury in litigation emasculates justice and deprives the opposing party of a fair trial. *Exhibit "A"*, will demonstrate defendants elaborate scheme involving perjury

clearly qualifies as a willful deceit of the court designed to interfere egregiously with the court's administration of justice.

In the second Affidavit presented by Counsel, Lawrence attempted to recant her perjury, through counsels pleadings on *July 13, 2007*, counsel submitted the supplemental Affidavit from Linda Lawrence Exhibit "A", as counsel's **Exhibit "E"** of defendants "*Supplemental Special Report,* @ p. 20 – 25" perhaps the only candid one she makes, reveals that her perjury and recanting were both orchestrated to reap a tactical advantage because Lawrence was debunked and now the evidence evinces that counsel misrepresented facts unto this Court.

"A fraud upon the Court occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)(citations omitted)

The perjury submitted throughout this litigation follows:

*Exhibit "A"*, the Affidavit of *Linda Lawrence* submitted by counsel is perjury. Linda Lawrence clearly swore under oath as follows:

"However, Mr. Breach **has failed** to exhaust Kilby's informal grievance procedure relating to the receipt of medical care for this alleged condition. Specifically, as relevant to his Complaint, Mr. Breach **has submitted**

**neither an inmate grievance nor an inmate grievance appeal**.  See, February 13, 2006, Affidavit Linda Lawrence, p.2 ¶ 3.

*Exhibit "B","C"*, on **10-17-06**, Linda Lawrence clearly addressed the Kilby "Prison Health Services, Inmate Informal Grievance" that plaintiff filed on <u>10-11-07</u> responding as follows:

> "I **have served your medical files here from front to back.  There are no records or sick calls that you were examined for a hernia.  I see no evidence of a medical hold or stop up.  If you are having health problems sign up for sick call and be examined by the doctor.**"

Counsel presented suborning, false, misleading testimony by not submitting required material evidence that ought to have been within Breach's medical records, per se, the Grievances filed directly to Lawrence, which are now missing from plaintiff's medical records.  "The either swearing to facts as true which affiant knew was not true, or by swearing to his knowledge of fact when he knew he had no knowledge thereof, constituted perjury." *United States v. Smith*, 1856 D.C. Mass, 27 F. Cas. 116336

In an attempted to cloud the court with frivolous defenses, counsel resubmits and attempts to cover up the misrepresented facts, fraud, perjury by against relying on Lawrence in his <u>*July 13, 2007,*</u> submitted <u>*Supplemental Special Report, p. 20 – 25*</u> raising a frivolous defense in pertinent part as follows:

> "It is undisputed that Breach failed to follow all available, required administrative procedures that existed at both Kilby and Limestone Correctional Facilities. [*Exhibit "F"* – Affidavit of Linda Lawrence, H.S.A.,]. These procedures required Breach to seek and exhaust available administrative remedies within those facilities prior to initial litigation. Because he failed to pursue all administrative appeals concerning his

inguinal hernia and because he failed to allow PHS to review his administrative appeal, his claim must be dismissed with prejudice. Woodford v. NGO, 548 U.S. _____, 126 S.Ct. 2378, 165 L.Ed. 2d 368 (2006). P. 22]]

*Exhibit "C",* [*Plaintiff's First Motion For Sanctions Pursuant To Rule 11(c), Fed. R. Civ. P., attached*] is the **"Prison Health Services, Inc., Inmate Grievance Appeal"** submitted by Breach directly to Ms. Hunt at Limestone C.F., containing Ms. Hunt's response:

"Review of your medical jacket reveals that you are not signed up on sick call since 4/26/07 until your visit on 10/05/07. Dr. Hobbs gave the sk nurse a order for Motrin 600 mg, TFD PRN X 180 days. You must follow protocol which starts with [sic], in sick call which medication can be renewed I m order I cannot find a request in your medical record for Aug 6, 2007 date."

On *October 26, 2007,* defendants ADOC were ordered to allow Breach to conduct inspection and copying of his institutional file and medical records.

Breach maintains that both several including this grievance is missing from his medical records, and several Louisiana medial records [*See, **Exhibit "D"**, Dr. Tassin's Affidavit, also, the attached medical records @ Motion For Sanctions in conjunction with this Motion*] **are still missing [nurse's notes]** from his medical file, but have been argued by counsel that Breach never once submitted any grievances.

### ARGUMENT MEMORANDUM AT LAW/POINTS ON AUTHORITY

May the Court take de novo review of the Record submitted *February 14, 2006,* "Special Report". Counsel argues throughout his "Special Report" @ pages 7 through 10, "IV, Argument" and relies totally on perjured Affidavit of Linda Lawrence. Perjury

and fabricated evidence are evils that can and should be exposed at trial, and the legal

system <u>encourages and expects litigants to root them out as early as possible</u>. . . . *Great*

*Coastal Express,* 675 F.2d at 1357.

Counsel continues throughout this entire litigation relying on perjured Affidavits

in his submitted Answers filed with this Court. *"Defendants' Prison Health Services,*

*Michael Robbins, M.D., Nurse Practitioner Bradfor, ET AL., Supplemental Special Report*

*Regarding Prisoner Marcellus Breach (AIS 160710)* filed on <u>July 13, 2007,</u> [See, page 22,

relying of Affidavit Linda Lawrence] Also, <u>September 21, 2007,</u> a *"Special Report and*

*Answer of Dr. William Hobbs and Defendant Prison Health Services' Response Court's Request*

*to Address Plaintiff's Claims of Failure to Respond to Request for Medical Treatment"*

throughout this Answer counsel relies on Lawrence attempting to achieve a dismissal

based on misrepresented facts, perjury.

Sanctions are warranted when the [defendants] exhibit a "deliberate indifference"

to obvious facts, . . . ." See, *Davis v. Carl,* 906 F.2d 533, 537 (11th Cir.  1990); *Threaf*

*Properties Ltd v. Title Insurance Company of Minnesota,* 875 F.2d 831, 835-36 (11th Cir.

1989).

### RULE 11 VIOLATIONS & RULES OF PROFESSIONAL CONDUCT
### MEMORANDUM AT LAW/POINTS ON AUTHORITY

In this circuit, a court confronted with a motion for Rule 11 sanctions first

determines whether the party's claims are objectively frivolous – in view of the facts or

law – and then, if they are, whether the person who signed the pleadings should have

been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry. See, *McGuive Oil Co., v. Mapco. Inc.*, 958 F.2d 1152, 1163 (11th Cir. 1992). If the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound." Id. see also, *Brown v. Minor Heights Fire Dist., (In re Brown)* 221 B.R. 849 LEXIS 769, May 8, 1998 (N.D. Ala. 1998). The reasonableness of the profiling inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information as to the underlying facts; and whether the paper was based on a plausible view of the law. *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987)(en banc). The Supreme Court decision in *Pavelr & Leflore v. Marvel Entertainment Group,* 58 U.S. L.W. 4038, (Dec 5, 1989), the Court may award Rule 11 sanctions only against the party who signs the document or documents which are found to violate the rule. When an attorney signs a pleading or motion, he or she in essence certifies that he has drafted the document in good faith and that the allegations are true and not intended to delay the litigation or harass the opposition. The test in judging whether the conduct gives rise to Rule 11 sanctions is an objective one. See, *Committee Notes, Fed. R. Civ. P., 11 Advisory committed note.*

   *Rule 8.4(a)(c)(g),* of the Alabama Rules of Professional Conduct, plaintiff alleged that counsel has committed malfeasance and intentionally "concealed evidence" from this Court, submitted "Bad Faith Affidavits" containing perjury in an effort to gain an

advantage over his opponent has been consistently been held as fraud upon the court. In addition, counsel and defendants have withheld relevant evidence, resulting to a dismissal of this case at the outset, and then, some five months later, only portions of these medical records have been disclosed to the Court.

Pursuant to *Rule 3.4(a)(b),* Rules of Professional Conduct states:

Rule 3.4(a)(b):

A lawyer shall not:

"(a)    'unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act."

("(b)    'falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law."

Linda Lawrence's Affidavit falls within *Rule 3.3(a)(1)(2)(3),* Rules of Professional Conduct.    A false statement submitted to a tribunal is an unethical approach and *Rule 3.3(a)(1)(2)* of the *Rules of Professional Conduct* prohibits such conduct.  *Rule 8.4* prohibits unethical conduct involving counsel engaging in the conduct involving dishonesty, fraud, deceit or misrepresentation.

## VIOLATION NO. 2

### *COUNSEL STATED FALSE STATEMENTS INTO THE RECORD AND HAS STATED SLANDEROUS STATEMENTS INTO THE RECORD*

On *September 21, 2007,* counsel has made false statements unto the Court also, submitted Affidavits that contained misrepresented facts, and false statements. Counsels states in his Supplement Special Report, as follows:

> "**Since April 30, 2007, Breach has not requested any medical attention from Dr. Hobbs, has not been seen in the emergency room of the healthcare unit, nor has he filed a "Sick Call Request" requesting an appointment to be seen by a doctor. [id].**
> . . .

> "**In his latest meanderings, Breach alleges that PHS or its personnel have failed to provide him medical treatment since April 30, 2007. This fact, as phrased by Mr. Breach is not true. It is undisputed that since April 30, 2007, Breach has made no effort to receive medical treatment from a PHS employee or facility for any reasons. [Exhibit "C" –Affidavit of Debbie Hunt]. In earlier pleadings, Breach stated he had filed a "Sick Call Request" on May 22, 2007, June 15, 2007, June 30, 2007, July 3, 2007, July 14, 2007, August 1, 2007, and August 6, 2007. Breach has not completed the Sick Calls Request and any evidence to the contrary is** false and constitutes perjury. [id] Furthermore, Breach did not file an Inmate Grievance/Appeal on July 14, 2007, nor did he file any grivances on August 6, 2007, further evidence that Mr. Breach's argument, pleadings, facts, and position merit no attention from this Court. [Id.]. [Page # 3 Supplemental Special Report]

*Exhibit "E", and Exhibit "F"*, rebuts these misrepresentations. Exhibit "E", is the very sick call request, on 10/3/07 to Dr. Hobbs requesting to be seen, requesting pain

medication.  Breach was seen by PLN, Atkins on 10/5/07.  Any doctor concerning this hernia still will not see breach. [2]

Several false unsupported statements alleged by counsel must be addressed. Counsel submits an Affidavit from Dr. Hobbs, M.D., and Hobbs alleged without "personal knowledge" the following:

> ". . . If Mr. Breach would follow the instructions provided to him and the restrictions placed on him by PHS physicians and if he would wear his truss prescribed for him, these things would in fact keep his hernia from progressing.  I have not seen Mr. Breach since April 30, 2007.  He has not been seen in the emergency room at our Healthcare Unit nor has he filed a sick call request requesting an appointment to be seen by me. . . . " [Exhibits "G" and "E"][, Affidavit Hobbs, p.2, 3.]]

## RULES OF PROFESSIONAL CONDUCT AND, RULE 26, FED.R.CIV.P. "INITIAL DISCLOSURE" VIOLATIONS

*Rule 26(a)(1),* *Federal Rules of Civil Procedures*, requires initial disclosure.  However, in this case, defendants have withheld several medical records that are only favorable to their position, is fraud, dishonest, misrepresentation of facts. The provisions of *Fed. R. Crim .P. 16(c)* are applicable. It shall be the duty of counsel for all parties to immediately reveal to opposing counsel all newly discovered information, evidence, or other material within the scope of this Rule, and there is a continuing duty upon each attorney to disclose expeditiously.  *Rule 3.3(a)(1)(2)(3),* Rules of Professional Conduct states:

---

[2] **Exhibit "F", shows that Hobbs does not have personal knowledge because LPN, Atkins noted on 10/5/07 Breach is wearing Truss and requested surgery.**

"a"    A lawyer shall not knowingly:

(1)    make a false statement of material fact or law to a tribunal;

(2)    fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client; or

(3)    offer evidence that the lawyer knows to be false. . . ."

Counsel's recent pleadings unto this Court contain "false statements" placed into the record without any factual basis, and are not based upon any personal knowledge. It is impossible for Hobbs, Hunts to explain to this Court that Breach has never once filed the sick call request and grievances in question: Hobbs cannot tell the Court under oath that Breach does not wear his truss, nor following instructions especially since Hobbs admits that he has not seen Breach since *April 30, 2007*. Furthermore, Exhibit with the attached Motion for Sanctions, clearly shows the sick call request slip requesting to be seen by Dr. Hobbs, but any doctor requesting medical attentions did not see Breach.

The Affidavit offered by counsel contains perjury. **[*Exhibit "A, B"[see Exhibit "D""E""F""G" ]]** Upon review of the medical records submitted by counsel, this court will note, this very grievance with Lawrence's signature on it, **is not in the record** with the medical records as a part of the initial disclosure violates clearly rules of professional conduct.

In regards to counsel submitting "false statements" that cannot reasonably be supported by any evidentiary materials is counsel submitted an Affidavit from Dr. Hobbs stating that Breach: ". . . intentional failure to follow the conservative treatment

prescribed for him. . .Breach fails to follow instructions provided to him, fails to adhere to restrictions placed upon him by PHS physicians, and fails to wear the truss prescribed for him, all of which, would keep his hernia from progressing and would eliminate his pain complaints." [*See, page # 2, Defendant's Special Report filed on September 21, 2007*]

Dr. Hobbs has clearly admitted that he has not seen Breach since <u>April 30, 2007.</u> Hobbs assertions **are not based on personal knowledge**. [*See, Exhibit "G"*]  There is absolutely no reasonable evidence to state that Breach **does not** follow instructions, fails to wear his truss, morethanless, The nurse notes [*Exhibit "F"*], *LPN Atkins*, noting that **Breach is wearing his truss** is a false statement made by counsel, because no reasonable investigation could believe what counsel alleged is true. Hobbs <u>cannot state</u> what plaintiff's daily activities are, what plaintiff does and does not do, is beyond his personal knowledge; Hobbs was not present, and is not present daily with plaintiff to form a personal knowledge opinion, statement of fact.

Counsel again, submitted another Affidavit from Deborah Hunt, R.N., alleging facts that are not based upon her personal knowledge. Ms Hunt states:

> "It is my understanding that Marcellus Breach has made an allegation in this matter that he has not been seen for his medical complaints related to his hernia since April 30, 2007. This is true. Mr. Breach has stated that he filed a sick call request on May 22, 2007, June 15, 2007, June 30, 2007, July 3, 2007, July 14, 2007, August 1, 2007 and August 6, 2007. This is not true. In fact, I have read Mr. Breach's brief [] and none of this is true. I have made a through search of our files and we have no records of receiving any of these sick call requests from Mr. Breach. Our records also show that Mr. Breach did not file an Inmate Grievance/Appeal; on July 14, 2007 nor did he file a grievance on August

6, 2007. Mr. Breach's allegations in this regard are unfounded, as we have no record of him filing any of the above stated sick call request or grievances." [See, Affidavit Hunt, Defendants' Motion For Sanctions Or, In The Alternative, Motion TO Strike Pleading, filed on September 21, 2007]

On or about *October 26, 2007,* Breach by order of the court was allowed to review his medical record through Ms. Harris and Ms. Appleton. Several grievances and sick calls request slips are missing, and Louisianan specifically the *"Nurse's Notes"*, [*See, Affidavit Dr. John Tassin, M.D., Exhibit "D"]*

Morethanless, the false statement is, Hobbs, Hunt has no personal knowledge and is suborning false misleading testimony by not submitting medical records. The mere fact that neither has personal knowledge as to what Breach has and has not done, then, to state what Breach has or has not done to swear under oath that plaintiff did not file said sick call slips, and grievances. She is testifying to matters outside of his personal knowledge is a misrepresentation of facts, submitted by counsel. Counsel uses his witnesses to state matters that are not true considering the perjury submitted by Lawrence speaking that plaintiff never filed a grievance, but the very grievance with her signature on it is before this Court. But, Hunt, also searched plaintiff and cannot find her very own grievance with her signature on it. This appears counsel and defendants have concealed relevant material evidentiary materials from the Court. Fraud upon the court should embrace only that species of fraud, which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery

cannot perform in the usual manner its impartial task of adjudging cases that are

presented for adjudication.  7 Moore, *Federal Practice* para. 60.33 at 515 (1971). *See, e.g.,*

Kerwit *Medical Products, Inc. v. N. & H. Instruments, Inc.,* 616 F.2d 833 (5th Cir.1980).

### VIOLATION NO. 3

**DEFENDANTS AND/OR COUNSEL HAVE INTENTIONALLY
CONCEALED MATERIAL EVIDENCE FROM THE COURT REGARDING
LOUISIANA MEDICAL RECORDS**

The "Order and Recommendation Of The Magistrate Judge" Order of <u>February 23,</u>

<u>2007,</u> relies on the defendants mendacious statements; the court was unable to fully

adjudicate the full merits of Breach's claim resolving medical treatment regarding Dr.

John A. Tassin, M.D., because counsel never once, presented to the court the medical

records from Louisiana.  The Court ruled: "

> "Breach maintains that on March 21, 2006, Dr. John A. Tassin, M.D., a
> physician at the private prison in Louisiana to which he had been
> transferred by the Alabama Department of Corrections, prepared a "a
> 'doctor report' and recommendation . . . that plaintiff's inguinal hernia
> 'needs repair' [O]n 7-12-06 the Alabama Department of Correction's
> Commissioner's Officer [through] defendant Ruth Naglich 'denied'
> approval of costs for plaintiff to receive surgery as recommended ..."
> Plaintiff's Complaint – Court Doc. 1 at 7.
> . . .

> "Counsel filed responses in compliance with this order, including
> affidavits from medical personnel and copies of Breach's medical records,
> which specifically refute the allegations made by Breach that he has been
> denied necessary medical treatment." P. 3 Order.
> ...

"Although Breach may have been recommended for surgery in March of 2006, such does not establish Imminent danger at the time he filed this case in December of 2006."

"Breach's mere lay conjecture that surgery on his hernia is medically necessary at this time is refuted of two physicians board certified in internal medicine."

Breach request that this Court take de novo review of the defendants special reports that are submitted, the court will ascertain that counsel has "clouded' the record with irrelevant medical records from PHS.   However, the grave argument and allegations contained in Breach's initial Complaint filed on *December 22, 2006,* governing Dr. John A. Tassin, M.D., order and recommendation that Breach's inguinal hernia "Needs Repair".   Underhandedly, counsel manages to paint a picture tactically drawing the courts attention to focus primary on PHS physicians who all filed Affidavits opposing surgery while all along, withholding, concealing the actual medical records from Louisiana, is fraud upon the court.

[3]On *February 14, 2007,* counsel submitted his "Special Report."   De novo review reflects that the medical records are missing.   This case was dismissed at the outset for failing to pay filing fees.   However, the important fact is, had counsel submitted the Louisiana medical records as ordered by the court to submit relevant materials, would this case have been dismissed.   Some five (5) months later, counsel submits only

---

[3] Order of January 10, 2007 –Court Doc. No. 8, directed counsel to submit relevant medical records regarding Dr. John A. Tassin, records from Louisiana.  These records were not produced but withheld, and as of today, several medical records are missing -- it is the second page of the relevant hernia recommendation from Tassin.

"portions" of the Louisiana medical records and has not explained to any party where are the missing medical records. [*See July 13, 2007, Supplemental Special Report.*]

Furthermore, what is also note worthy, counsel stated in his *February 14, 2007,* Special Report, p. 2, "Narrative Summary of Facts": "Despite the fact the multiple physicians have cleared Mr. Breach from any need for surgery, the prisoner cites Dr. John A. Tassin as purportedly alleging that Breach's hernia "needs repair" [Plaintiff's Complaint, ¶ 5] although no specific records from Dr. Tassin has been disclosed or identified by the Plaintiff."

On *May 14, 2007,* counsel continues to ambush this court with the concealed evidence in his argument contained within the document entitled: "*Defendants' Motion To Reconsider Order Allowing Motion To Alter, Amend or Vacate Judge and Setting Aside Judgment,*" [Court Doc. 55?] counsel presses extensively on the concealed medical records stating and supporting:

> @ 4, ¶ 8. "Yerubandi's affidavit references medical records of Marcellus Breach, specifically records from "South Louisiana Correctional Center." Throughout this entire litigation, **no such records have ever been produced, identified, seen, or marked as exhibits by Mr. Breach. . . . .**"

### *FACTUAL ARGUMENT SUPPORTING EVIDENCE*

Exhibits before this Court as attached documents to Breach's motions [**Court Doc. 160, 161, 162 & 163**], will demonstrate "**Prison Health Services, Inc., Authorization of Release of Information**", [*Exhibit "H"*] de novo review of the medical records submitted by counsel, "will not" appear in the Record. However, on *October 26, 2007,* reviewing

Breach's medical records, this Exhibit is not and in Breach's medical file, nor submitted to the Court is conjunctively deceit, and attempting to cover up evidence because, history dealing with the facts in this case is, the authorization of release was Breach actually authorizing PHS employee, nurse Lorraine Graves, on *December 27, 2006,* some five days after Breach filed this suit, addressed to Dr. John A. Tassin, M.D., @ South Louisiana Correctional Center, 3842 Stagg Rd. Basile, Louisiana.  Furthermore, was is so interesting is Ms. Lawrence in her supplemental Affidavit, admits that she (i) **"I requested and received copies of Mr. Breach's file form South Louisiana Correctional Center where were generated while he was incarcerated at this facility;"** Id. @ p. 1,2 (ii) **" I reviewed my file in regards to any "Offender Grievance" form filed by Mr. Breach while he was incarcerated in the State of Louisiana and my file does not contain any such forms.  Mr. Breach was incarcerated in Louisiana from March 16, 2006 through October 6, 2006."** Id. @ p. 2, Ms. Lawrence, and counsel suborning false misleading testimony by not submitting the Louisiana medical records in their initial disclosure, then waiting some five (5) months later, Lawrence and counsel attempt to regroup the perjury, concealing evidence by coming forward, recanting in part that Breach did so file a grievance, but Breach did not file a grievance appeal. [*See, July 13, 2007, Supplemental Special Report, Exhibit E, @ 2, ¶ 2].:*

> "I did receive Mr. Breach's "Inmate Informal Grievance" which he filed on October 11, 2006, and I did respond to this grievance on October 17, 2007].
> ...

"With respect to Mr. Breach's allegations that he filed a Grievance Complaint to me personally on November 7, 2006, I do not recall ever receiving such a complaint.  However, in reviewing our records, I notice that we do in fact have two-handwritten complaints are not prepared on the appropriate Prison Health Services forms and Mr. Breach did not follow the PHS procedures for identifying and addressing inmate grievance at Kilby Correctional Facility".

What is difficult to ascertain, is how can Lawrence some five (5) months later being *July, 2007*, explain to this Court that (i) she received Breach's medical records, from South Louisiana Correctional Center, then, these specific records do not, never once, were submitted to the Court as part of the initial disclosure on February 14, 2007. Defendants intentionally concealed evidence.

Finally, there are approximately 25 to 30 medical documents still missing before the court that are supportive to Breach's position that have not been produced with defendant's initial special report.  Morethanless, Lawrence, and Hunt both have stated that Breach has not filed sick calls, grievances, when Breach presents the very sick calls, and the very grievances with Lawrence and Hunt's signatures in place, suborning false misleading testimony by not submitting medical records brings to a conclusion of blatant perjury.  This Court has a zero tolerance policy against frivolous and misleading filings. Counsel has submitted documents, pleadings that are designed to intentionally mislead the Court to a theory that is unfounded, but, founded upon a mountain of statements containing perjury, withholding evidentiary support

## PARTICULARITY OF SANCTIONS REQUEST
## MEMORANDUM AT LAW/POINT ON AUTHORITY

The issue in this case--the imposition of sanctions because of the filing of a frivolous motion, now abandoned--is also separate from the merits of the case as a whole. On *September 21, 2007*, counsel filed a frivolous motion requesting sanctions on Breach and/or strike pleadings without any foundation or evidentiary support to substantiate sanctions. Nevertheless, Breach was forced to respond to counsel accusations.

*Rule 11* provides in relevant part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law . . . . If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include . . . a reasonable attorney's fees."

This rule incorporates an objective standard by "'stress[ing] the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule.'" **Donaldson v. Clark**, 819 F.2d 1551, 1555-56 (11th Cir.1987) (*en banc*) (quoting Advisory Committee Note to Rule 11, as amended in 1983).

*Rule 11* sanctions may also be required if an attorney fails to meet his "continuing obligation to review and reevaluate [his] position as the case develops." *Id.* at 1127 (citing

*Southern Leasing Partners*, 801 F.2d at 788). As the Court stated in Robinson: "Thus a document that initially satisfies the requirements of Rule 11 may later turn out to be the basis for rule 11 sanctions as new facts are discovered which show that there is no longer a [n] [objective] good faith basis for the document. Upon discovering that a good faith basis no longer exists, it is incumbent upon the appropriate counsel and party to take necessary actions to ensure that the proceedings do not continue without a reasonable basis in law and fact.  808 F.2d at 1127 (footnote omitted) The minimum requirements an attorney or party must take to fulfill the continuing obligation duty have not been set; they depend upon the facts of the particular case.

Upon signing a pleading, motion, or other document, an attorney certifies that he has complied with the affirmative duties required by rule 11. These affirmative duties include (1) that the attorney has conducted a reasonable inquiry into the facts which support the document: (2) that the attorney has conducted a reasonable inquiry into the law such that the document embodies existing legal principles or a good faith argument "for the extension, modification, or reversal of existing law"; and (3) that the motion is not interposed for purposes of delay, harassment, or increasing costs of litigation. Rule 11 is violated if any of the above obligations are breached because each is an independent duty of a signing attorney. *Robinson*, 808 F.2d at 1129-31.

In deciding whether a reasonable inquiry into the facts has been made the circumstances of the particular case will of course control, but the district court may

consider such factors as how much time for investigation was available to the signer; how much did the attorney have to rely upon his client for the factual support for the document; was pre-filing investigation feasible; did the signing attorney accept the case from another member of the bar or forwarding attorney; the complexity of the factual and legal issues in question; and the need for discovery to develop the factual circumstances underlying the claim. *See* **Lyle v. Charlie Brown Flying Club, Inc.,** 112 F.R.D. 392, 400 (N.D. Ga. 1986); **State of N.Y. v. Shore Realty Corp.,** 648 F. Supp. 255, 267-68 (S.D.N.Y. 1986); Advisory Committee Notes to Rule 11, 97 F.R.D. at 199. In deciding whether a reasonable inquiry into the law has been made a district court may consider how much time the attorney had to prepare the document; whether the document contains a plausible view of the law; whether the document is filed by an attorney or a *pro se* litigant; and the complexity of the legal and factual issues in question. *See Advisory Committee Notes to Rule 11,* 97 F.R.D. at 199; *see also* **Robinson,** 808 F.2d at 1129 n. 18; **Lyle,** 112 F.R.D. at 400. Therefore, in light of *Robinson,* district courts within our circuit must evaluate a document, challenged as violating *Rule 11,* for compliance with each of the three affirmative duties undertaken by the signing attorney(s). *Rule 11* sanctions may also be required if an attorney fails to meet his "continuing obligation to review and reevaluate [his] position as the case develops." *Id.* at 1127 (citing **Southern Leasing Partners,** 801 F.2d at 788). Thus the practices there are no "free passes." A district court

must therefore in each instance where _Rule 11_ sanctions are requested make findings of fact and conclusions of law on each requirement of R_ule 11_, namely:

(1) whether reasonable inquiry into the facts was made;

(2) whether reasonable inquiry into the law was made;

(3) whether the action was taken to harass, delay or increase unnecessarily costs of litigation; and

(4) whether an attorney has met his continuing obligation to reevaluate his litigation position.

In resolving a motion requesting _Rule 11_ sanctions the district court should rely on the record as much as possible. _See Fed.R.Civ.P. 11 Advisory Committee Note_ ("the court must _to the extent possible_ limit the scope of sanction proceedings to the record). We recognize, however, as did the drafters of the rule, that the complexity of rule 11 and its frequent utilization may require independent proceedings when necessary to develop the record and resolve the motion. See, **_Thompson v. Capital Sec Services_**, 812 F.2d 984 (5th Cir. 1987)

### CONCLUSION

In **_Southern Leasing Partners_** we Court noted that "when a lawyer learns that an asserted position, even if originally supported by adequate inquiry, is no longer justifiable he must not persist in its prosecution." 801 F.2d at 789.   Taking responsibility" must include verifying that the drafter of a complaint is not acting contrary to the facts, as he knows them. It also includes reading a pleading to which one's name is signed.

Rule 11 admits of no exceptions to its requirement that all reasonable attorneys will read documents prior to filing them with the court.

In *Southern Leasing Partners* the Court noted that "when a lawyer learns that an asserted position, even if originally supported by adequate inquiry, is no longer justifiable he must not persist in its prosecution." 801 F.2d at 789.

Counsel continues to ambush this Court on the frivolous issue that Breach has failed to file grievances which in return, places Breach in the position to continue to have to stress unto the Court that Breach filed all grievances, and furthermore submitted the very grievances, and the appeals that have been taken out of Breach's medical records as of *October 26, 2007*, when Breach reviewed and copied his medical records.

Fraud upon the Court according to *Black's Law Dictionary* 686 (8th ed. 2004) defines "fraud on the court" as follows: "In a judicial proceeding, a lawyer's or party's misconduct so serious that it undermines or is intended to undermine the integrity of the proceeding." *See Ex parte Free*, 910 So. 2d 753, 2005 Ala. LEXIS 2 (Ala. 2005) . [B] ad faith cannot be prompted by an honest mistake as to one's rights or duties but must result from some interested or sinister motive. Bad faith is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will. **Rapid Group, Inc. v. Yellow Cab of Columbus, Inc.**, 253 Ga. App. 43, 49, 557 S.E.2d 420 (2001) (citations and punctuation omitted.) An attorney's loyalty to the

court, as an officer thereof, demands integrity and honest dealing with the court. And when he departs from that standard in the conduct of a case he perpetrates a fraud upon the court. Fraud on the court is a species of fraud, which does or attempts to, subvert the integrity of the court itself. An attorney may commit fraud on the court not only through misrepresentation, but also through omission. The very temple of justice is defiled. Conduct which fails to comport with the standards of integrity required by the judicial system must be discouraged in the strongest possible way. Attorney may commit fraud on the court not only through misrepresentation, but also through omission. See *Hazel-Atlas Glass Co. v. Hartford Empire Co.,* 322 U.S. 238, 246, 64 S. Ct. 997, 1001, 88 L. Ed. 1250, 1944 Dec. Comm'r Pat. 675 (1944) ("It is a wrong ... which ... cannot complacently be tolerated consistently with the good order of society....involv[ing] two victims: the individual litigant ... and the court itself, whose integrity is compromised by the fraudulent behavior of its officers.) "The very temple of justice [is] defiled." *Universal Oil Products v. Root Refining Co.,* 328 U.S. 575, 580, 66 S. Ct. 1176, 1179, 90 L. Ed. 1447 (1946).

Here, the conduct on display before this Court "fails to comport with the standards of integrity required by the judicial system [and] [s] uch misconduct must be discouraged in the strongest possible way." *Andrews v. Palmas De Majorca Condominium,* 898 So.2d 1066, 1070 (Fla. 5th DCA 2005). And the Court remains mindful of counsel's other machinations which led the Court to previously complain of a foul

odor wafting from this case, and to warn of its lack of tolerance for frivolity or bad faith

conduct:

**WEREFORE, premises considered**, plaintiff request that this Court not tolerate

the conduct represented by counsel, concealing evidence, perjury, misrepresented facts,

fraud upon the Court and order that sanctions be imposed, strike their defenses

regarding the exhaustion requirements, and grant what this Court deems appropriate.

Done this ____ Day November 2007.

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

### CERTIFICATE OF SERVICE

*I HEREBY CERTIFY*, that I have served a true copy of the foregoing upon the following by U.S. Mail, First Class, postage prepaid and properly addressed to and mailing through the prison mail box system on this 7th Day of October 2007.

Alabama Dept. Of Corrections
Legal Division
P.O. Box 301501
Montgomery, Alabama 36130

Rushton, Stakely, Johnstone & Garrett, P.A.
P.O. Box 270
Montgomery, Alabama 36101

Marcellus Breach

EXHIBIT "A'

Exhibit "A"

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH (AIS # 160710),　　　*

　　　　Plaintiff,　　　　　　　　　　　　*

V.　　　　　　　　　　　　　　　　　　*　　2:06-CV-1133-MEF

PRISON HEALTH SERVICES, et al.,　　　　*

　　　　Defendants.　　　　　　　　　　*

## AFFIDAVIT OF LINDA LAWRENCE, R.N., H.S.A.

**BEFORE ME,** Perry A. Woods _____, a notary public in and for said County

and State, personally appeared **LINDA LAWRENCE, R.N., H.S.A.,** and being duly sworn,

deposed and says on oath that the averments contained in the foregoing are true to the best of her

ability, information, knowledge and belief, as follows:

"My name is Linda Lawrence. I am over the age of twenty-one and am personally

familiar with all of the facts set forth in this Affidavit. I have been a licensed, registered nurse in

Alabama since 1997. I hold an Associates Degree in nursing from Troy State University in

Montgomery. I have worked as a nurse at Kilby Correctional Facility in Mt. Meigs, Alabama,

since March of 2002, and have been the Health Services Administrator (H.S.A.) at Kilby since

May of 2002. Since November 3, 2003, I have been employed by Prison Health Services, Inc.,

the company which currently contracts with the Alabama Department of Corrections to provide

medical services to inmates.

Prison Health Services, Inc. (PHS) has established a simple two-step procedure for

identifying and addressing inmate grievances at Kilby Correctional Facility. If an inmate has a

grievance regarding a healthcare issue he must submit to the healthcare unit an "Inmate Informal Grievance" form. These are standard forms that may be acquired in the healthcare unit or from an inmate's supervising officer in his dormitory. The informal grievance allows an inmate to communicate any healthcare related concern by placing the form in the medical services complaint box or mailbox to be forwarded to the healthcare unit. I subsequently review the concern and respond via in house mail.

If the inmate is unsatisfied with my response, he may request an "Inmate Grievance Appeal" form from the healthcare unit. This form allows an inmate to again voice his concerns relating to the healthcare issue addressed with the informal grievance form. After the inmate has submitted the grievance appeal, I will meet with him face-to-face in a final attempt to address his concerns verbally.

It is my understanding that Marcellus Breach has filed suit in this matter alleging that Prison Health Services, Inc. has failed to provide him with appropriate medical care. However, Mr. Breach has failed to exhaust Kilby's informal grievance procedure relating to the receipt of medical care for this alleged condition. Specifically, as relevant to his Complaint, Mr. Breach has submitted neither an inmate informal grievance nor an inmate grievance appeal. As such, the healthcare unit at Kilby has not been afforded the opportunity to resolve Mr. Breach's medical complaints prior to filing suit."

Further affiant sayeth not.

LINDA LAWRENCE, R.N., H.S.A.

2

STATE OF ALABAMA          )
                          )
COUNTY OF Montgomery      )

    Sworn to and subscribed before me on this the _____13th_____ day of February_____, 2007.

                                _Penny A. Woods_____
                                Notary Public

                                My Commission Expires:

                                May 28 2007

EXHIBIT "B"

To: Ms. Lawrence Medical
Warden Rowell.

**Prison Health Services**
**Inmate Informal Grievance**

Exhibit "B"

Marcellus Breach _____ 160710 _____ West - 16 _____ 10/11/06
NAME _____ AIS # _____ UNIT _____ DATE

---

**PART A---Inmate Complainant**

D
SP-

I have a medical hold that is preventing me from actively participating in any additional DOC program I ask to be removed that I may be classed to go to another camp.

2) Medical records reflect Dr. Tassie Brown ordered surgery for a hernia. I have problems coughing, sneezing, bowel movements. I need surgery. Why am I on medical stop up, and no one has seen me in regards to surgery?

See attached. page 2.

_____
INMATE SIGNATURE

---

**PART B –RESPONSE** DATE RECEIVED 10-17-06

I have searched your medical files from front to back. There are no records or sick calls that you were examined for a hernia. I see no evidence of a medical hold or medical stop up. If you are having health problems please sign up for sick call and be examined by the doctor.

_____ Rn HSA
**MEDICAL STAFF SIGNATURE**
L. Lawrence

10-17-06
**DATE**

---

If resolution has not occurred and you wish to file a formal grievance you may request a grievance form from the Health Services Administrator. Return the completed grievance form to the Health Service Administrator.

| | Y | N | | Y | N |
|---|---|---|---|---|---|
| I   Dissatisfied with Quality of Medical Care | ☐ | ☐ | VI   Delay in Health Care Provided | ☐ | ☐ |
| II   Dissatisfied with Quality of Dental Care | ☐ | ☐ | VII Problems with Medication | ☐ | ☐ |
| III Dissatisfied with Quality of Mental Health Care | ☐ | ☐ | VIII Request to be seen | ☐ | ☐ |
| IV Dissatisfied with Response to Non-Medical Request | ☐ | ☐ | IX   Request for Off-site Specialty Care | ☐ | ☐ |
| V Conduct of Healthcare Staff | ☐ | ☐ | X   Other | ☐ | ☐ |

Certificate of Service.

I hereby place same into a sealed envelope address to Medical Complaint Box, Copy to Warden Rowell, hand way on this 11th day October 2006

_____
Marcellus Breach

182.

# EXHIBIT "C"

To: *Linda Lawrence*
Dr. Robbins,
Warden Arnold Holt.

Exhibit "24"

## Prison Health Services, Inc.

## Inmate Grievance **Appeal**

*Marcellus Breach* *160710*          *West 16*     *11/7/2006*
NAME                        AIS #              UNIT          DATE

PART A—INMATE Grievance Appeal for the following reason:
*Grievance on 10-17-06. I have a painful hernia.*
*Dr. Tassin recommended surgery. I have pain coughing*
*Sneezing & bowel movements, I need to see*
*a Doctor, not Nurse Practitioner. Medical*
*Records from LCS missing. Why?*

_____
INMATE SIGNATURE

Return this form to Health Services Administrator by dropping in the sick call box or
giving to the segregation sick call nurse on rounds.

PART B –RESPONSE                    DATE RECEIVED_____

Inmate Signature                    Health Services Department Head

Date                                Date

| H.S.A. Selection: | Y | N | | Y | N |
|---|---|---|---|---|---|
| I   Dissatisfied with Quality of Medical Care | ☑ | ☐ | VI   Delay in Health Care Provided | ☑ | ☐ |
| II   Dissatisfied with Quality of Dental Care | ☐ | ☐ | VII Problems with Medication | ☐ | ☐ |
| III Dissatisfied with Quality of Mental Health Care | ☐ | ☐ | VIII Request to be seen | ☑ | ☐ |
| IV Dissatisfied with Response to Non-Medical Request | ☐ | ☐ | IX   Request for Off-site Specialty Care | ☐ | ☐ |
| V  Conduct of Healthcare Staff | ☐ | ☐ | X   Other | ☐ | ☐ |
| Committee Review of Data Collection | | | | | |

CC
MB

*I hereby placed* *Certificate g Service.*
*said into the kilby Medical Complaint Box*
*And Warden's box have delivery unto penalty g perjury 28 U.S.C. 1746*
11/03 – Alabama
Revised 5/16/05
*on 11-7-06*

**Prison Health Services**
**Inmate Informal Grievance**

_Marcellus Breach_    _160710_         _West-16_    _11-7-06_
NAME                AIS #          UNIT         DATE
                    _To: Mrs. Lawrence R.N._

PART A---Inmate Complaint    _On-10-17-06 you stated you have_
_no evidence of a hernia in my Medical_
_Records._
_On 3-21-06 Dr. Tassin ordered Surgery._
_My hernia is causing me pain._

_I want to Appeal your decision_

                    _(signature)_
                    INMATE SIGNATURE

PART B –RESPONSE                DATE RECEIVED_____

MEDICAL STAFF SIGNATURE

DATE

If resolution has not occurred and you wish to file a formal grievance you may request a
grievance form from the Health Services Administrator.  Return the completed grievance
form to the Health Service Administrator.

| | | Y | N | | | Y | N |
|---|---|---|---|---|---|---|---|
| I | Dissatisfied with Quality of Medical Care | ☐ | ☐ | VI | Delay in Health Care Provided | ☑ | ☐ |
| II | Dissatisfied with Quality of Dental Care | ☐ | ☐ | VII | Problems with Medication | ☐ | ☐ |
| III | Dissatisfied with Quality of Mental Health Care | ☐ | ☐ | VIII | Request to be seen | ☑ | ☐ |
| IV | Dissatisfied with Response to Non-Medical Request | ☐ | ☐ | IX | Request for Off-site Specialty Care | | |
| V | Conduct of Healthcare Staff | ☐ | ☐ | X | Other | ☑ | ☐ |

_(CC)_
_copy._

_Certificate of Service._
_Placed hand mail into Medical box sealed envelope_
11/03 - Alabama  _On 10/7/06._
                 _(signature)_

# EXHIBIT "D"

**MARCELLUS BREACH** : 13ᵀᴴ JUDICIAL DISTRICT COURT

**VERSUS NO: 00067886 - B** : PARISH OF EVANGELINE

**GARY COPES, ET AL** : STATE OF LOUISIANA

PARISH OF EVANGELINE :
:       AFFIDAVIT
STATE OF LOUISIANA :

BEFORE ME, the undersigned Notary Public, personally came and appeared:

**DR. JOHN TASSIN, M.D.**
1535 West Main Street, No. 1
Ville Platte, LA 7058
337/363-5591,

Affiant in the above instrument, who, after being duly sworn did depose and state:

"I am Dr. John Tassin, M.D. a physician licensed to do and doing business in the State of Louisiana with my main office located in Ville Platte, Evangeline Parish, Louisiana. I have reviewed the medical records of Marcellus Breach contained in "Defendants' Exhibit 2" from pages 1 thru 33 and recognize theses as being the records of Marcellus Breach, Inmate #AL160710, while he was an inmate at the South Louisiana Correctional Center located in Evangeline Parish, Louisiana at which I am the Staff Physician. I make this Affidavit to supplement and explain my office notes located on page 4 of said Affidavit and referring to the treatment rendered to and prognosis, diagnosis, and care given to Marcellus Breach regarding his hernia.

My first visit with Marcellus Breach was March 21, 2006 at which time he presented with a hernia on his left side which was an inguinal hernia. My notes reflect that I wrote "needs repair?" which indicated that I was questioning whether or not his hernia was going to need a repair. This notation did *not* reflect that I felt that his hernia actually needed a repair or required repair, but only that I needed to look into the question of whether or not it did need repair.

Marcellus Breach was seen a second time on April 12, 2006 regarding dental problems which did not relate to his hernia.

Marcellus Breach was seen again on July 18, 2006 and was still complaining of a left inguinal hernia. Examination of his hernia indicated it was not incarcerated nor into his scrotum, and that repair of the hernia would be an elective procedure. This note means that surgery was not required for the health or safety of Marcellus Breach, but that surgery was simply elective, but not necessary. My additional review of the nurse's notes located on page 20 for July 18, 2006 indicated that there was no change in the hernia and no new orders were given by me regarding it meaning that the hernia had not gotten better or worse. Additionally, on page 20 of Marcellus Breach's records on July 12, 2006 the Alabama Department of Corrections did not require that hernia repair be done unless the hernia was incarcerated or was into the scrotum. Marcellus Breach's hernia, on July 18, 2006 was not incarcerated nor into his scrotum.

I next saw Marcellus Breach on October 3, 2006 for an old left ankle injury not related to his hernia.

Marcellus Breach's left inguinal hernia did not change between March 21, 2006 through July 18, 2006, and he was not complaining of it on October 3, 2006. Surgery for the hernia is only an elective procedure which is not required for Mr. Breach to do normal light everyday activities. Mr. Breach's hernia was neither getting better or worse during his time at the South Louisiana Correctional Center.

EDWARDS LAW FIRM
112 WEST UNIVERSITY
P.O. BOX 3970
LAFAYETTE, LA 70502
(337) 237-6881



It is my professional medical opinion that Marcellus Breach's hernia, during the time he was at the South Louisiana Correctional Center, was stable, got neither better nor worse, and that any surgery he may have in the future to correct it would be an elective procedure which is not required for his health or safety, but only for the relief of minor discomfort that the hernia may cause upon heavy exertion.

I know all the information contained in this Affidavit of my own personal knowledge."

DR. JOHN TASSIN, M.D.
1535 West Main Street, No. 1
Ville Platte, LA 70586
337/363-5591

SWORN TO AND SUBSCRIBED before me, this 29ᵗʰ day of March,

2007, Ville Platte, Evangeline, Parish, Louisiana.

Marla Yeager
NOTARY PUBLIC (#52317 )

EXHIBIT "E"

*TO: MRS. HUNT* 10/4

**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

RECEIVED Request

Exhibit "E"

OCT 0 4 2007

# PRISON HEALTH SERVICES, INC.
## SICK CALL REQUEST

Print Name: **Marcellus Breach**          Date of Request: **10/3/07**

ID # **160710**          Date of Birth: _____   Location: **D-19**

Nature of problem or request: **I Need to see Dr. Hobbs.**
**I Need Pain Medication. Still having**
**Hernia Pain.**

_Signature_

## DO NOT WRITE BELOW THIS LINE

Date: **10/5/07**
Time: **6:20** AM **PM**
Allergies: **NKDA**

| RECEIVED |
|---|
| Date: |
| Time: |
| Receiving Nurse Intials _____ |

**(S)ubjective:**

**(O)bjective  (V/S):  T:** _____  **P:** _____  **R:** _____  **BP:** _____  **WT:** _____

**(A)ssessment:**

**(P)lan:** V.O. Dr. Hobbs MD  Motrin 600 mg ÷ P.O. Tid PRN X 180 days
10-5-07

Refer to:    MD/PA    Mental Health    Dental    Daily Treatment       Return to Clinic PRN
CIRCLE ONE
Check One:   ROUTINE ( )      EMERGENCY ( )
If Emergency was PHS supervisor notified:    Yes ( )    No ( )
Was MD/PA on call notified:    Yes ( )    No ( )

_____  10-5-07
SIGNATURE AND TITLE

WHIT        MATES MEDICAL FILE
YELL        MATE RETAINS COPY AFTER NURSE INITIALS RECEIPT
GLE 1

*Hand delivery Sick call Box.* MB

*Keeping Yellow Copy!*

EXHIBIT "F"

## Nursing Evaluation Tool:    <u>General Sick Call</u>

Facility: BBB

Patient Name: _Breach       Marcellus_
            Last                    First                MI

Inmate Number: _160710_        Date of Birth: _7_ _128_ _169_
                                                MM    DD    YYYY

Date of Report: _10_ _5_ _07_        Time Seen: _6²⁰_   AM/PM Circle One
               MM  DD  YYYY

**Subjective:** Chief Complaint(s): _Hernia Pain_

Onset: _8 months_

Brief History: _Wearing Truss, request for surgery, Motrin order 4-30-07 to 90 days_
(continue on back if necessary)

☐ Check Here if additional notes on back

**Objective:** Vital Signs: (As Indicated) T: _97³_ P: _83_ RR: _20_ B/P: _122_ / _82_

Examination Findings: _Wearing Truss at time, Mild Edema noted, Unable to_
_reducing it in, Cap refill < 3 sec, Pain scale, 7, No meds taken at this_
_time_

☐ Check Here if additional notes on back

**Assessment (Referral Status)** Preliminary Determination(s): _____
☑ Referral **NOT REQUIRED**

☐ Referral **REQUIRED** due to the following: (Check all that apply)
   ☐ Recurrent Complaint (More than 2 visits for the same complaint)
      ☐ Other: _____

**Comment:** You should contact a physician and/or a nursing supervisor if you have any concerns about the status of the patient or are unsure of the appropriate care to be given.

**Plan:** Check All That Apply:
☑ Instructions to return if condition worsens.
☑ Education: The patient demonstrates an understanding of the nature of their medical condition and instructions regarding what they should do as well as appropriate follow-up. ☐ YES   ☐ NO (If NO then schedule patient for appropriate follow-up visits)
☑ Other: _Wear Truss_
       (Describe)

OTC Medications given ☐ NO  ☑ YES (If Yes List): _Motrin 600mg + P.O. Tid PNX 30 days 180 days_

Referral: ☑ NO  ☐ YES (If Yes, Whom/Where): _____   Date for referral:__/__/__
                                                                            MM  DD  YYYY

Referral Type: ☐ Routine  ☐ Urgent  ☐ Emergent  (if emergent who was contacted?): _____   Time____

_[signature]_ Nurses Signature        Name: _Celvin D Atkins LPN_
                                            Printed

EXHIBIT "G"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, (AIS # 160710)                    *

    Plaintiff,                                  *

V.                                                  *

                                                *    2:06-CV-1133-MEF

PRISON HEALTH SERVICES, et al.,                     *

    Defendants.                                 *

## SUPPLEMENTAL AFFIDAVIT OF WILLIAM D. HOBBS, M.D.

BEFORE ME, ~~James Bailey Jr.~~ , a notary public in and for said County and State, personally appeared **WILLIAM D. HOBBS, M.D.**, and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is William D. Hobbs. I am a medical doctor and I have been a licensed physician in the State of Alabama since 2006. I have served as the Site Medical Director for Limestone Correctional Facility in Athens, Alabama since October of 2006. I have been employed with Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates since my employment began at Limestone. I am personally familiar with all of the facts set forth in this Affidavit.

The Plaintiff, Marcellus Breach (AIS #160710), is currently incarcerated as an inmate at Limestone Correctional Facility. Mr. Breach was transferred to Limestone Correctional

Facility on March 23, 2007. I am familiar with Mr. Breach and have been actively involved with the medical services provided to him at Limestone.

It is my understanding that Mr. Breach has requested to be seen by a medical examiner for an independent physical exam for complaints related to his hernia. As I previously stated in my initial affidavit, Mr. Breach was first diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole."

It is my opinion that Mr. Breach does not need to be seen by a medial examiner for an independent physical examination to determine whether or not surgery is necessary. Mr. Breach does not have a right Direct, Indirect or Femoral Hernia. Mr. Breach does not have a left Indirect or Femoral Hernia. He does have a large, easy to reduce direct inguinal hernia on the left.

As previously stated in my initial Affidavit, as a general rule, a hernia does not progress quickly and there are instances where a person has a hernia for many years and may never require surgery for repair. Hernia repair is an elective surgery. The danger of waiting for a hernia to become incarcerated or strangulated is not high and emergencies involving hernias do not develop often.

We are treating Mr. Breach with restrictions related to lifting, walking, standing and wearing a truss in an attempt to keep his hernia from becoming larger. A truss is used to decrease discomfort and to decrease the possibility of the hernia becoming larger. If Mr. Breach would follow the instructions provided to him and the restrictions placed on him by PHS physicians and if he would wear the truss prescribed for him, these things would in fact keep his hernia from progressing.

2

I have not seen Mr. Breach since April 30, 2007. He has not been seen in the emergency room at our Healthcare Unit nor has he filed a sick call request requesting an appointment to be seen by me. On April 30th, Mr. Breach was given a prescription for a 90-day supply of pain medicine which has since expired. If Mr. Breach's condition is as he describes (unusual and burning pain/progressively worsening), it would seem he would have made an attempt to be seen in the emergency room or show-up for sick call requesting an appointment with me.

I would like to reiterate that Mr. Breach's hernia is not life threatening and does not require surgical intervention and I believe surgery is not medically necessary. His hernia is easily reducible, non-strangulated, and is not incarcerated. Surgery is not his only option and it is not medically necessary.

I would like to further reiterate that hernia repair is an elective procedure and every hernia does not need to be repaired. In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum. Mr. Breach does not meet this protocol and his hernia is easily reduced. Mr. Breach is not in imminent danger and his hernia is not life threatening. If Mr. Breach did in fact meet the protocol required by the Alabama Department of Corrections, his hernia would be repaired.

It is also my understanding that Mr. Breach has made an allegation that I am currently under investigation by the Medical Board of Examiners. This allegation is completely untrue, as I have never been made aware of any Complaint filed against me.

With respect to an incident involving inmate, Jackie Morrow, Mr. Morrow did have an infected incision due to a surgery performed by a surgeon prior to Mr. Morrow being transferred to Limestone Correctional Facility. Mr. Morrow's incision was infected and I did treat his

3

incision, but my treatment did not cause gangrene or a staff infection. Mr. Morrow was also sent back to this surgeon for follow-up care and treatment of this infected incision."

Further affiant sayeth not.

_William D. Hobbs, M.D._
WILLIAM D. HOBBS, M.D.

STATE OF ALABAMA        )
                        )
COUNTY OF _____   )

Sworn to and subscribed before me on this the _____ day of
_Sept_ , 2007.

_____
Notary Public
My Commission Expires:
    9-3-2010

4

EXHIBIT "H"



**PHS**
PRISON
HEALTH
SERVICES
INCORPORATED

INCORPORATED

*337433-5491*

Fax (334) 215-9126
Phone (334) 215-6678



## Authorization for Release of Information

To: Dr. John A. Tassin
South Louisiana
Correctional CTR
3843 Stagg Rd
Basile, Louisiana

From: PHS - KILBY
PO Box 11
MT Meigs, Ala.
36057

Patient: Breach, Marcellus

Inmate ID No.: 160710

Alias: _____

Social Security No: 411 - 19 - 5989

Date of Birth: 7-28-69

Date(s) of Service: 3/2006 - 10/06

I hereby authorize the above named provider to release to Prison Health Services, Inc. or any of its representatives the following confidential information:

[✓] Physician/Provider's summary of my diagnosis, medications, treatments, prognosis and recent care

[ ] Admission      [ ] Discharge      [ ] Operative Summary Reports

[ ] X-Ray      [ ] Special Studies Reports      [ ] HIV Test      [ ] T B Test

[ ] Laboratory Reports      [ ] Immunization History      [ ] Dental Treatment Records

[ ] Psychiatric Summary Report   [ ] Substance Abuse Treatment History & Counseling Reports

[✓] Other Records  re: ① Inguinal hernia evaluation +
(Specify information requested)
Treatment. Old records/ old charts

This authorization shall remain in full force and effect until withdrawn in writing by me. I hereby release and agree to hold provider harmless from any and all liability that may result from such release of information.

+ _Marcellus Breach_ A×# 160710     12/27/06
(Patient's Signature)                    (Date)

_Surres, LPN_                            12/27/06
(Witness' Signature)                     (Date)

The information requested is recognized as confidential and will be used only to ensure prompt and appropriate treatment of the named patient.

_Charlotte Foster_     12/28/06
(Signature and Title for PHS)     (Date)

60102  (11/02)

000062