## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## MIDDLE DIVISION

RECEIVED

MARCELLUS BREACH, #160710,

    Plaintiff,

Vs.

                 CASE NO: 2:06-CV-1133-MEF

PRISON HEALTH SERVICES, INC.,

    Defendants.

### PLAINTIFF'S WRITTEN OBJECTIONS TO THE ORDER OF THE MAGISTRATE JUDGE

**COMES NOW**, Plaintiff _Marcellus Breach_ (hereinafter "Breach") in proper person "Pro Se," moves the Court with timely written objections of the Magistrate Judge's Order entered on dates: _October 29, 2007;_ and, _November 6, 2007,_ regarding a _Rule 35(a), Fed.R.Civ.P.,_ request for an "_Independent Physical Examination_": Plaintiff submits his timely objections under _28 U.S.C. § 636(b)(1)(a)(2004)_ and shows bona fide as follows:

### STANDARD OF REVIEW

The law is established that as in this case of a discovery motion or other nondispositive pretrial order the decision of the magistrate judge is a final decision. _28 U.S.C. § 636(b)(1)(a)(2004)._ Plaintiff does not argue that the magistrate judge's decision is "clearly erroneous or contrary to law", but under that standard, whether the decision of the magistrate judge is inappropriate and that good cause can be shown based on the two

1

*Affidavits* attached being *Dr. John A. Tassin, M.D.,* and a surgeon *Dr. Rao Yerubandi, M.D., FACS, FRCSC,* that would warrant an independent physical examination, because it appears that the magistrate is looking at whether plaintiff can establish "deliberate indifference" at this stage of "independent physical examination," and not just a differences of medical opinions?  Plaintiff files his objections because the magistrate judge failed to make findings as to whether or not plaintiff established "<u>In Controversy</u>" and "<u>Good Cause</u>" as required under *Rule 35(a),* Fed.R.Civ.P., The general principles under Rule 35(a) have been articulated in *Schlagenhauf v. Holder,* 379 U.S. 104, 13 L. Ed. 2d 152, 85 S. Ct. 234 (1964); *Robinson v. Jacksonville Shipyards, Inc.,* 118 F.R.D. 525 (M.D. Fla. 1988); and *Bennett v. White Laboratories, Inc.,* 841 F. Supp. 1155 (M.D. Fla. 1993).

## RULE 35(a), FED. R. CIV. P., STANDARD

Plaintiff must establish that plaintiff's mental condition or physical condition is "in controversy" and must show "good cause" for the mental or physical examination(s). This requires an affirmative showing that the mental or physical condition is "really and genuinely" in controversy and that good cause exists for each particular examination. *Robinson,* 118 F.R.D. at 527 (citing *Schlagenhauf).* The Court must decide, by making a "discriminating application", whether the "in controversy" and "good cause" requirements have been adequately demonstrated by the production of sufficient information, which allows the Court to perform its function under *Rule 35(a).* *Schlagenhauf v. Holder,* 379 U.S. at 118-122. This requires a greater showing than for

2

other types of discovery under *Rule 26*, *Fed. R. Civ. P.*   In this case, *Rule 26*, <u>cannot</u> aid this Court in a determination as to whether as of *November 8, 2007*, plaintiff's physical condition has worse, deteriorated, and has caused him to suffer <u>permanent</u> injuries due to defendants treatment.

## ISSUE PRESENTED

### WHETHER THE DENIAL OF PHYSICAL EXAMINATION CAN BE PREJUDICE, DENIAL OF A FAIR TRIAL also, ECCENTRIC TO RULE 35(a), FED. R. CIV. P.

On *October 29, 2007* the Magistrate Judge ruled denied plaintiff's request for independent physical examination based upon review of the responses and medical records submitted by the parties. [**Court Doc. 185-1**]

On *November 2, 2007* plaintiff filed a document entitled *motion to alter, amend, or vacate judgment* pursuant to *Rule 59(e)*, *Federal Rules of Civil Procedures*, and on *November 6, 2007,* the magistrate judgment denied same.

## GOVERNING STATEMENTS OF LAW

Rendition of established law in this circuit is that a *Rule 35* exam can be a consultant or an expert retained by a party. *Rule 26*, *Fed. R. Civ. P.*, contemplates that a party's non-testifying consultant <u>may</u> conduct a *Rule 35(a)* exam. *Rule 26(a)(2)(b)(4)*.  In addition, a party's retained expert <u>can</u> conduct a *Rule 35* "independent physical examination".

Plaintiff argues that <u>prejudice</u> is, first, there is <u>no burden</u> whatsoever on the defendants.  The expense to pay for the examination bears on the plaintiff.  As a practical

matter *Rule 35* is the only means by which plaintiff's rebuttal expert can examine plaintiff. See, **Hough v. United States**, 2006 U.S. Dist. LEXIS 59790 (M.D. Ga. 2006). Thus, understandably, plaintiff's defense and prosecution at trial and summary judgment may be severely prejudiced if he is not permitted to obtain the testimony of an expert who has personally examined plaintiff." **Id.**

What is overlooked in this case is on 3/21/06 **Dr. John A. Tassin, M.D.**, questioned, whether plaintiff needed surgery, until *July 12, 2006* defendant Brandon Kindard from ADOC called **Diana Lott** the nurse administrator, with instructions that plaintiff could not have surgery unless his hernia was incarcerated or into the scrotum. See, **Exhibit "B", Affidavit Dr. John A. Tassin, M.D.**, stating: "**Additionally, on page 20 of Marcellus Breach's records on July 12, 2006 the Alabama Department of Corrections did not require that hernia repair be done unless the hernia was incarcerated or was into the scrotum. . . .**" Moreover, circumstantial evidence in this case elucidates a showing that Dr. Tassin was going to send plaintiff to a surgeon for a determination because the records reflect a note: "**3/21/06 – subject placed on sick call for 7/18/06 to see if he needs a referral to a surgeon.**" [*See, Medical Records attached to Dr. Tassin's Affidavit.*]

### *STATEMENT OF THE FACTS*

1.    On August 28, 2007, plaintiff submitted a document entitled: "*Renewed—Motion For Independent Physical Examinations*" [**Court Doc. 124**] arguing that on 5/22/07, plaintiff

submitted a Sick Call Request to the medical providers complaining of unusual pain due

to his enlarged inguinal hernia:

> "This morning I experienced **unusual pain** with my hernia. It's hard to
> describe but I was having **problems walking**, I kept pressure on it, but
> every time I coughed, it hurt. Ibuprofen – no good for the pain."     [**See,
> p. 1 & Exhibit "A"," Court Doc. 124, "Renewed – Motion In Request For
> Independent Physical Examination."]**

Plaintiff also submitted an exhibit being another Sick Call Request

reflecting <u>4/26/07</u> date complaining to the medical defendants as follows:

> **"I am having a <u>burning pain</u> due to my hernia. It is causing me
> problems coughing, sneezing, bowel movement. On 3/21/06, Dr. Tassin
> said "Needs Repair". I need surgery, aggravated hernia." [See, p. 2,
> Court Doc. 124]**

Medical defendants offered evidence from Dr. William Hobbs, M.D., reflecting

that on April 26, 2007, Hobbs diagnosed plaintiff with a "Large Direct Left Inguinal

Hernia" as "easy to reduce".

## ISSUE NO. 1

### *WHETHER THE ATTACHED AFFIDAVITS FROM DR. JOHN A. TASSIN, M.D., AND DR. RAO YERUBANDI, M.D., A SURGEON IN HERNIA REPAIR MEETS THE "GOOD CAUSE" REQUIREMENT FOR ORDERING INDEPENDENT PHYSICAL EXAMINATION?*

Plaintiff argues and maintains that based on the two (2) Affidavits that have

recently been submitted to the magistrate judge ought to warrant independent physical

examination because Dr. Yerubandi has persistently held that waiting until incarceration,

strangulated hernia before, repairing it is an emergency situation that will cause sever medical complications for plaintiff: the only cure is surgery.

Plaintiff argues that Dr. Yerubandi's attached Affidavit was allocated for another stage of this suit, more of a summary judgment. Nevertheless, Dr. Yerubandi, asserts that defendants have rendered "no treatment at all" grossly incompetent" and "taking a less efficious course of treatment" satisfies Estelle requirements. Dr. Yerubandi, states:

> "Dr. Hobbs <u>states surgery is not necessary is **plainly wrong**</u>, and he is medically incorrect; it appears Hobbs probably is going to wait until the very last stage of the hernia which will be the strangulated hernia that is medically a dangerous situation and Hobbs will be basically playing with life and death with Mr. Breach because it will be an emergency situation when Mr. Breach's hernia is incarcerated, strangulated, or into his scrotum, is unacceptable, relying on a protocol in this case is dangerous to the health of Mr. Breach, and imminent danger that it will be life threatening when Mr. Breach's intestine get trapped or strangulated in the opening: this will lead to dangerous complications such as obstruction of the flow of intestinal contents or blood, leading to tissue death and gangrene. It is unacceptable under the standard of care for Dr. Hobbs to wait for this "Death Angle" to appear, and goes against the standard of care that would be for any doctor to avoid this dangerous medical death trap." [**See, attached, Affidavit, p. 16, 17. ¶ 2**]
> . . .
>
> "As a surgeon in hernia repair, Dr. Hobbs has deviated from established conduct, which **his treatment is grossly contrary to accepted medical practices,** it is clear that his acts and omissions are and probably are the proximate cause to injury. **His treatment amounts to no treatment at all. His treatment is a course of a cheaper way out**, and Dr. Hobbs has ignored the only treatment available for Mr. Breach and that is surgery. Dr. Hobbs is clearly and **is plainly wrong** in his course of treatment by not referring Mr. Breach to a specialist because Dr. Hobbs is not a surgeon and **his treatment amounts to deliberate indifference, and a breach of the standard of care.**" Id. @ 20.

In this case, plaintiff has been consistently arguing that Dr. John A. Tassin, M.D., has been overlooked because the medical defendants continue to "ambush" the Record with 90% of irrelevant materials to the very grave issue: that on **3/21/06 Dr. John A. Tassin, M.D.,** noted that plaintiff's inguinal hernia "needs repair". The medical defendants have been ingenious in shifting this case away from the main issue. However, *Exhibit "A""B",* are Affidavits from very first treating doctor, *Dr. John A. Tassin, M.D.,* and a surgeon Dr. Yerubandi, who has discussed in great length and details the grossly inadequate medical treatment proscribed to the plaintiff. [1]

What are momentous in this case are Dr. Tassin states <u>he was not sure surgery was necessary,</u> questions the calling of a specialist in hernia repair for the medical determination. Dr. Tassin states:

> "My notes reflect that **I wrote "needs repair?"** which indicated **that I was questioning whether or not his hernia was going to need a repair**. This notation did not reflect that I felt that his hernia actually needed a repair or required repair, **but only that I needed to look into the question of whether or not it did need repair"** . . . "Additionally, on page 20 of Marcellus Breach's records on July 12, 2006 the Alabama Department of Corrections **did not require that hernia repair be done unless the hernia was incarcerated or was into the scrotum.** Marcellus Breach's hernia, on July 18, 2006, was not incarcerated nor into his scrotum. . . ." [ Id. @ ¶ 4.]

---

[1] Breach maintains that he did not submit these Affidavits to the magistrate judge for consideration because Breach did not believe that "deliberate indifference" needed to be shown at a physical examination, or on a preliminary injunction motion. See, Order and Recommendation of Magistrate Judge Court Doc. 193, relying on medical defendants opinions, making ruling of a differences of opinions. However, newly submitted Dr. Yerubandi's Affidavit states grossly inadequate medical treatment, no treatment at all, and medical defendants have taken an easier less efficient course of treatment as a way out.

## POINT A.

## 'SURGERY" IS "IN CONTROVERSY" ALSO, ENLARGED NON-EASILY REDUCIBLE HERNIA IS "IN CONTROVERSY".

The medical defendants <u>never once</u> addressed plaintiff's complaints of "**burning pain" problems walking, standing and problems having bowel movements, urinating because his hernia is progressing**. Defendants <u>are not qualified</u> to make a medical judgment whether surgery is necessary <u>before incarceration</u>; only a surgeon can make that judgment.

Hernia surgery requires a certain degree of a specialized training and knowledge that puts an understanding of acceptable standards of care beyond the common knowledge of the jury. Lawyers do not have the background and knowledge, without expert testimony to understand whether or not surgery is necessary, and the extent of plaintiff's injuries, the proximate cause to his injuries.

Plaintiff argues that the medical defendants are general physicians in internal medicine and <u>are not</u>, qualified to make the medical judgment of whether surgery is necessary for plaintiff "<u>before incarceration or strangulation of plaintiff's hernia</u>." This sole grounded evil is based on the Protocols, because so far evidence has come out from Dr. Hobbs, has stated:

> ". . . "**I would like to further reiterate that hernia repair is an elective procedure and every hernia does not need to be repaired. In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated or**

> **into the scrotum.  Mr. Breach does not meet this protocol and his hernia
> is easily reduced. . . ."  [Exhibit "C", p.3 ¶ 3]**

Plaintiff argues, that the only doctor qualified to make medical determination as

to whether plaintiff needs surgery "before" his hernia is incarcerated or in to the scrotum

is a specialist in hernia repair.  Dr. Michael E. Robbins, M.D., Dr. George Lyrene, are

board certified internist, it is unclear to Dr. Hobbs, M.D., qualifications.

Plaintiff submitted affidavits from two outside medical personnel as support for

his motion for physical examination.  *Dr. Satyavardhana Rao Yerubandi, M.D., FACS,*

*FRCSC,* a licensed physician and general surgeon specializing in hernia repair, asserts

that based on his review of plaintiff's prison medical records, "On *April 30, 2007,* after

complaints about burning pain from Mr. Breach which is a symptom that Mr. Breach's

**hernia is progressing and probably enlarging** to more sever pain and discomfort."[ ] ...

"It is a breach in accepted standard of care for Dr. Hobbs, to fail to refer Mr. Breach to a

specialist in hernia repair who regularly see all these kinds of cases because of the danger

of incarceration and strangulation of Mr. Breach's hernia which will lead to serious

medical complications such as tissue death, gangrene. . . . "

Affidavit from *Nurse JoAnn Breach, R.N., MSN*, asserts that ". . .[t] he "burning

pain" is a serious symptom that a surgeon is necessary for an examination as to the

extent of Mr. Breach's hernia. . . . "The burning pain **means that the muscles are tearing**

resulting to an enlargement of the hernia. . . ."  [See, *Affidavit JoAnn Breach, R.N., MSN, - Court Doc. 124]*

Dr. Yerubandi further asserts that it is his "professional opinion that Mr. Breach's inguinal hernia, the opening of his hernia '**cannot'** heal itself, neither can **any** medicine be used to cure the condition, hernias **cannot** be medically 'treated' neither can any medicine be used to cure the condition: surgery for Mr. Breach is the **only** way to cure the defect. *** In Mr. Breach's case, the long-term course, therefore, is for Mr. Breach's hernia to become steadily worse as time goes on, sometimes slowly and sometimes quickly. The only remedy for his condition to repair the hernia is surgically. *** The imminent danger that Mr. Breach faces is, and if, when Mr. Breach's hernia becomes non-reducible, it will and can become life threatening if part of Mr. Breach's intestine get trapped or 'strangulated' in the opening: this can lead to dangerous complications such as obstruction of the flow of intestinal contents or blood, leading to tissue death and gangrene. I express this opinion because when and if, Mr. Breach's hernia becomes strangulated, it will become an emergency situation that will and does usually require immediate surgery because of [potential] complications.... It is advised that surgery is done before this dangerous incarceration and strangulation situation arises." *Plaintiff's Exhibit A to the Motion for Temporary Restraining Order/Motion for Preliminary Injunction – Court Doc. 81-2 @ 3, 6-7 (all emphasis in original).*

In a subsequent affidavit, Dr. Yerubandi states that based on his review of the prison medical records it is his opinion "that Mr. Breach's hernia **is progressing** which will lead into a dangerous medial situation when it becomes incarcerated, or strangulated, or even into the scrotum." ***Plaintiff's Exhibit 2 to the Renewed Motion for Independent Evaluation – Court Doc. No. 124-3 @ 2.*** Dr. Yerubandi asserts his belief that prison medical personnel have breached "accepted standards of care" so "as to amount to deliberate indifference" in their "fail[ure] to refer Mr. Breach to a specialist in hernia repair who regularly see all these kinds of cases because of the danger of incarceration and strangulation of Mr. Breach hernia which will lead to serious medical complication such as tissue death, gangrene – if Mr. Breach is not timely treated knowing that medially you cannot treat a hernia, surgery is the only cure to alleviate Mr. Breach's symptoms of pain and discomfort.... Medically, there is no treatment for Mr. Breach's hernia, and the prescription given by Dr. Hobbs [the prison physician] can be called hernia management because, the only treatment is surgery. No mechanism of preventive care is known, and surgical repair is almost always necessary." Id. (emphasis in original).

In further support expert testimony was presented that Hernias are **unpredictable,** they **can rupture** at **any time** and Dr. Yerubandi stated that "A physical examination will determine medically just what type of hernia Mr. Breach has, and because most early inguinal hernias can be diagnosed by careful physical examination [,]

**except** for pain or a dull dragging sensation in the groin, the common reducible inguinal hernia will lead into a more sever nonreduicible hernia." Id.

### POINT B.

### DR. YERUBANID, M.D., HAS STATED THAT MEDICAL DEFENDANTS HAVE RENDERED "GROSSLY INADEQUATE MEDICAL TREATMENT"" NO TREATMENT AT ALL,"" TAKING AN EASIER LESSER COURSE OF TREATMENT AS A WAY OUT" AMOUNTING TO "DELIBERATE INDIFFERENCE".

Plaintiff has alleged that he suffers <u>permanent</u> injuries as a result from defendants refusing to provide him with surgery. Plaintiff further stated that his physical condition in "in controversy" that was not refuted by the medical defendants:

a.   Feelings of weakness, pressure, burning pain in lower abdomen groin and scrotum area; and,

b.   A big, large bulge or lump in the groin area and is not easily reducible;

c.   Having to lift leg, push down on hernia, and bend forward when coughing, sneezing and taking bowel movements;

d.   Radiated pain to his hip region, back, and leg down toward the genitalia region;

e.   something has ruptured;

f.   Breach hernia has descended onto his testicles, and requires constant pressure to prevent protrusion and pain;

g.   Breach's hernia is the size of a baseball and will get as large as softball, larger than 3 x 5 cm.

Dr. Hobbs has clearly admitted "**I have not seen Mr. Breach since April 30, 2007.** It ought to be shown that Plaintiff's injury has changed creating "in controversy" in this case. Defendants could not refute this physical condition. Only a surgeon can determine upon proper testing the actual injury to plaintiff and the reasons why plaintiff is suffering from these symptoms. Plaintiff's physical condition has deteriorated, and

become worse.  Physical examination ought to be proper; besides, in accessing damages in this case, if this case makes it to trial -- the expert will be able to fully explain to the jury the permanent injuries that plaintiff suffered to the extent of defendants deliberate indifference.  Plaintiff's physical condition and permanent injuries are not rebutted: (i) **lifting, (ii) range of motion and ability to work, (iii) difficulty standing, walking and bowel movement, (iv) urinating, (v) coughing, sneezing, exercising.**

### ARGUMENT

When addressing surgery, as necessary and "in controversy" it is essential to consult specialists who regularly see all these kinds of cases.    A    General    Surgeon consultative in conjunction with examination by a surgeon is not only common but also medically prudent.  It appears especially important in the search for the truth that should be occurring in this case that a general surgeon consultation occur especially since plaintiff has demonstrated that Dr. Hobbs, M.D., has not, and will not see plaintiff since the filing of this lawsuit. [*See, Court Doc. 121, 128, 134*] and the denial of necessary medical treatment is the grave issue of this case, the progressing and deteriorating of plaintiff's physical health is *prima facie* evidence that ought to warrant physical examination because damages will be an issue to the jury.  In this case, there is no evidence submitted by the medial defendants that plaintiff's experts, who have stated <u>certain medical examinations are available</u> to determine whether surgery is in fact necessary before his hernia is incarcerated, or into the scrotum.

In   addition, plaintiff has stated that his hernia is no easily reducible and gets "Trapped", is a medical danger to his health a safety.  Several test: **Ultrasonography, computed tomographic scanning**, will better aid this case.     Furthermore, under *Rule 35(a), Federal Rules of Civil Procedures*, plaintiff ought to have a right to a physical examination; it is essential for plaintiff to have the reasonable opportunity to challenge the plaintiffs' defenses and testimony. *See* **Ali *v. Wang Laboratories, Inc.***, 162 F.R.D. 165 (M.D.Fla 1995). The testimony of an expert is a well-recognized and reasonable way of doing so, and an examination of the plaintiff by that expert is necessary for the expert to form a meaningful opinion.

Plaintiff argues that the defendants' position is contrary to the plain language of *Rule 35*. Specifically, plaintiff argues that a doctor who conducts a *Rule 35* exam can be a consultant or an expert retained by a party. *Second,* plaintiff argues that *Rule 26* contemplates that a party's non-testifying consultant may conduct a *Rule 35(a)* exam. *Third,* plaintiff states that the requirement that a *Rule 35* examining physician be completely unconnected to either party has been considered and rejected. *Fourth,* the plaintiff argues that the case law has consistently held that a party's retained expert can conduct a *Rule 35* "independent medical examination." *Finally,* the plaintiff argues that as a practical matter *Rule 35* is the only means by which a defendant's rebuttal expert can examine the plaintiff; and, without, prejudices his case, denies a fair trial, and morethanless, is absolutely no expense on the medical defendants.

Courts in our circuit have held that the testimony of an expert is a well-recognized and reasonable way of doing so, and an examination of the plaintiffs by that expert is necessary for the expert to form a meaningful opinion. See, ***Hough v. United States***, 2006 LEXIS 5970 (N.D. Ga. August 6, 2006); ***Rogers v. Wal-Mart Stores***, 200 U.S. Dist. LEXIS 21093 (N.D. Ga. August 17, 2000); ***Ali v. Wang Lab.***, 162 F.R.D., 165, 1995 U.S. Dist. LEXIS 13638 (M.D. Fla. 1995)

Since the physical <u>permanent injuries of plaintiff are in controversy</u> and substantial damages are asserted; the medical defendants have not shown other, plaintiff request that independent physical examination occur as good cause.

## *CONCLUSION*

Defendants have labeled plaintiff's medical condition as "elective" plaintiff also asserted that a physician Dr. John A. Tassin, M.D., stated that "<u>he was not sure</u>" and needed to look into whether plaintiff was going to need surgery; plaintiff has stated that his condition is currently, and <u>presently deteriorating</u> and an expert can determine whether surgery is required before his hernia is incarcerated, before sever medical complications can arise.    Only a qualified specialist in hernia repair can make this medical judgment.  Medical defendants are not qualified, and this is an issue that the jury will need to hear.

WHEREFORE, premises considered, it is unfair to deny plaintiff an opportunity to be examined by an expert witness qualified in hernia repair for a proper determination of

whether surgery is and was in fact necessary. Plaintiff's request that this Court considers

the factors before it and grants plaintiff an physical examination in this case.

Done this 8th Day November 2007.

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

*I HEREBY CERTIFY*, that I have served a true copy of the foregoing upon the following by U.S. Mail, First Class, postage prepaid and properly addressed to and mailing through the prison mail box system on this 9th Day of November 2007.

Alabama Dept. Of Corrections
Legal Division
P.O. Box 301501
Montgomery, Alabama 36130

Rushton, Stakely, Johnstone & Garrett, P.A.
P.O. Box 270
Montgomery, Alabama 36101

Marcellus Breach

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## MIDDLE DIVISION

MARCELLUS BREACH, #160710,

     Plaintiff,

Vs.

              CASE NO: 2:06-CV-1133-MEF

PRISON HEALTH SERVICES, INC.,

     Defendants.

### *DECLARATION OF PLAINTIFF MARCELLUS BREACH # 160710*

**MARCELLUS BREACH, # 160710,** being duly sworn, deposed and says on oath that the avernments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

I am Marcellus Breach, the Plaintiff in this action. I am over the age of twenty-one. I make this Declaration in support of my Motion for Independent Physical Examination.

I state that my health has deteriorated due to this hernia. I state that my Hernia is not easily reducible. My Hernia is as large as a "Soft Ball", and I am restricted from normal activities such as, bowel movements, walking, standing, coughing, sneezing, urinating because my hernia will get "Trapped" and I cannot at times work it back in. Dr. Hobbs, M.D., has not seen me since April 30, 2007. I have put in several sick calls, and the last time I was seen was on or about October 3, 2007 by a nurse. I was only given Motrin. I was wearing my truss. My hernia is beyond any treatment.

I swear that the foregoing is true and correct under the penalty of perjury 28 U.S.C. 1746, this 8th Day of November 2007.

                       Marcellus Breach 160710 ®

# EXHIBIT "A" & "B"

COUNTY OF MADISON　　　　　　　　　　：

STATE OF ALABAMA　　　　　　　　　　：　　　　SUPPLEMENTAL　AFFIDAVIT

---

**BEFORE ME**, <u>TASIA A. SUBLETT</u>, a Notary Public in and for said County and State, personally appeared *Dr. Satyavardhana Rao Yerubandi, M.D., FACS, FRCSC*, and being duly sworn, deposed and says on oath that the avernments contained in the following are true to the best of his ability, information, knowledge and belief, as follows:

"I am *Dr. Satyavardhana Rao Yerubandi, M.D., FACS, FRCSC*, a licensed physician and general surgeon. I am a specialist in hernia repair. I am over twenty-one years of age. I have been a licensed physician in Alabama since 1984, and have been board certified with the <u>*Diplomat American Board of Surgery, Royal College of Surgeons of Canada,*</u> and certified with the <u>*Fellow American College of Surgeons*</u> since 1981. I have 27 years of practice experience, including 23 years in private practice. I have 27 years in surgical repair of hernias from the Surgery Division at Bronx Lebanon Hospital, State of New York where I received my surgical training. I am currently in medical practice and surgical repair in the State of Alabama with my main office located in Madison County, Alabama. I am personally familiar with all the facts set forth in this Affidavit, and I have been actively involved in this case and I write this Affidavit in reference to making specific deficiencies in <u>Dr. Johns A. Tassin, M.D.</u>, <u>Dr. William E. Hobbs, M.D.</u>, <u>Dr. Michael E. Robbins, M.D.</u>, and <u>Dr. George Lyrene, M.D.</u>, treatment proscribed to Mr. Breach's inguinal hernia, and further state that it is my professional opinion that the

treatment proscribed to Mr. Breach <u>is so grossly contrary to accepted medical practices as to amount to deliberate indifference.</u>

This written admonition in my professional opinion regarding the treatment proscribed by the medical providers; I deeply depreciate several areas of deficient treatment given to Mr. Breach from health care providers being known as "Prison Health Services, Inc."

I have written approximately three (3) Affidavits thus far in this case; furthermore, I have reviewed the Medical Records in this case, Medical Records from "South Louisiana Correctional Center." I have read the Affidavit of <u>Dr. John A. Tassin, M.D.</u>, in this case, date March 29th 2007 in the District Court of Evangeline Parish, Louisiana. (see attached)

The first parts of the medical records reviewed in this case are Medical Records from a private prison known as "**LCS CORRECTIONS SERVICES, INC.,**" labeled as "**Doctors Order's Sheet**" and "**LCS CORRECTIONS SERVICES, INC., Nurse's Notes**". The nurse's notes reflect <u>3/21/06 Dr. John A. Tassin, M.D.</u>, diagnosed Mr. Breach with an "**Hernia Left, Inguinal Hernia Needs Repair?**" Nurse's notes reflect <u>7/10/06</u> nurse Maxie noting: "**we faxed a report to Ruth Naglich in reference to inguinal hernia inmate requesting repair & is filing a lawsuit to have surgery done.**"

Medical Records reflect nurse's notes: 7/12/06, <u>nurse administrator Diana Lott,</u> noting: **"Received a call from Brandon from Alabama re' Inguinal Hernia – Stated**

Hernia repairs are not done there – unless incarcerated or into scrotum. This subject has not c/o hernia since seen by Dr. Tassin 3-21-06 – Subject placed on sick call for 7/18/06 to see if he needs a referral to a surgeon ------."

Records reflect 7/18/06 nurse Maxie noting: **saw Dr. Tassin & no change in hernia & no new orders."**

There are several areas of the almost three (3) years of supposedly "treatment" proscribed from February 2005 going to Dr. John A. Tassin, M.D., that in my opinion is probably the proximate cause to Mr. Breach's hernia having enlarged, and left untreated.

First, the acts and omissions of Dr. John A. Tassin, M.D., his inactions, failures, and actually refusing, and taking absolutely no steps to resolve, alleviate, Mr. Breach's pain and suffering demonstrates deliberate indifference, because Dr. Tassin did absolutely noting in this case.

Dr. Tassin failed to use the care, and skill, which is employed by the profession generally, and, in this case of Mr. Breach, Dr. Tassin has deviated from the established conduct, which is grossly contrary to accepted medical practices, and amounts to deliberate indifference.

Dr. John A. Tassin, M.D., treatment is plainly wrong and is recognized by the medical professional as to no treatment at all: his treatment is medically unacceptable and his acts and omissions reflect that of wantonness, intentional inflection of pain and suffering, the very breach of the standard of care.

Secondly, identifying several areas of the deficient treatment by <u>Dr. John A. Tassin, M.D.,</u> is that he failed to use the care, and skill which is employed by the profession generally: Dr. Tassin, demonstrates a breached of care when he failed to make a necessary medical judgment being a referral for surgery before Mr. Breach's hernia is incarcerated, strangulated, or into the scrotum due to the complaints of experiencing pain. Pain is the "Red Flag" and has been ignored in this case.

The standard of care pertaining to a Hernia is that any doctor diagnosing a patient with a hernia:

    **(i)**     **Ask questions about the patient's symptom s and overall health;**
    **(ii)**    **Recommend surgery and make the referral to a surgeon or a specialist;**
    **(ii)**    **The patient chooses whether to undergo surgery;**
    **(iv)**    **Explain to the patient that surgically repair is usually advised because of the danger of incarceration and strangulation.**

It is my opinion that it is uncommon and unpracticed for any doctor diagnosing a patient with a hernia <u>not</u> to recommend surgery or that a specialist sees the patient.<u> Dr. John A. Tassin, M.D.,</u> states **that he was not sure whether or not Mr. Breach's hernia needed repair.** Dr. Tassin <u>should have referred Mr. Breach to a specialist, or a surgeon since he was not sure.</u>

Hernia surgery requires a certain degree of a specialized training and knowledge because preoperatively, it is often difficult to differentiate the common indirect hernia from the less common direct defect. Indirect and direct hernias need to be differentiated

4

during surgery, because the approach to repair depends on the defect type. A hernia that is not repaired appropriately is more likely to recur.

It is my opinion, that <u>Dr. John A. Tassin, M.D.,</u> actions, treatment are considered, and in my professional opinion as a surgeon are plainly wrong, and recognized as no treatment at all: his treatment is medically unacceptable and his acts and omissions reflect that of wantonness, intentional infliction of pain, and amounts to deliberate indifference, and demonstrates a breach of the standard of care. Dr. Tassin's performance, treatment in this case is grossly contrary to the accepted medical practices and is probably the reason and proximate cause to the injury sustained by Mr. Breach having pain when coughing, sneezing, taking bowel movements, standing, urinating, back pain, limited exercise, if any exercise at all; and, having an enlarged hernia.

Dr. Tassin should have referred Mr. Breach for surgery and recommended surgery before Mr. Breach's hernia is incarcerated, strangulated, or into the scrotum due to sever medical complications that will occur. Dr. Tassin should have known that a doctor <u>cannot treat a hernia,</u> a hernia <u>will not heal on its own,</u> <u>it will get worse</u> while left untreated, and surgery is needed to repair the defect in the abdominal wall.

In this case, because Mr. Breach has not and did not, was denied any treatment, <u>his hernia probably has lead to more serious medical complications</u>. Dr. Tassin should have known that the only way to stop a hernia from getting worse is to repair the defect through surgery. Dr. Tassin should have known that the "treatment" is the cure, which

is surgery, because under the standard of care where a lump is present, however, early surgery is necessary.

It is a breach in accepted standards of care for Dr. Tassin, to fail to refer Mr. Breach on 3/21/06 to a specialist in hernia repair who regularly see all these kinds of cases because of the danger of incarceration and strangulation of Mr. Breach's hernia which will lead to serious medical complication such as tissue death, gangrene, knowing that medically you cannot treat a hernia, surgery is the only cure that will alleviate Mr. Breach's symptoms of pain.

Dr. Tassin's approach is contrary to accepted medical practices as to amount to deliberate indifference --- there is no mechanism of preventive care known, and surgical repair is almost always necessary. Dr. John A. Tassin, M.D., failed to use the care, and skills which is employed by the profession generally and, in this case of Mr. Breach, Dr. Tassin has deviated from the established conduct, which is grossly contrary wide of the mark of the as to be far below the minimum standard f medical care pertaining to his treatment regarding Mr. Breach hernia – contrary to accepted medical practices, and amounts to deliberate indifference. The proper and correct course of standard of care is for Mr. Breach to have had surgery upon the diagnosis of his inguinal hernia to prevent his hernia from becoming enlarged, prevent his pain, and complications that he experiences today, preventing him from enjoying normal humane activities.

### DR. WILLIAM D. HOBBS, M.D.

I have reviewed the records and Affidavit by <u>Dr. Williams D. Hobbs, M.D.</u>, the prison doctor – Hobbs' treatment is grossly unacceptable under the standard of care: morethanless, Dr. Hobbs acts and omissions outlined below are a breach in the standard of care.

I have reviewed the most recent Affidavit from Dr. Hobbs on **Case No. 2:06-cv-1133-MEF, United States District Court** signed on <u>*September 12, 2007*</u>, and I depreciate strongly that Dr. Hobbs has breached the standard of care in regards to his treatment which appears medically <u>unknown</u> as conservative management applied Mr. Breach's hernia. Dr. Hobbs unknown conservative management being Motrin 600 mg, and it is noted that Dr. Hobbs proscribed Antihistamine which is not at all related as treating a Hernia.

I state as a surgeon in hernia repairs in my 27 years of experience, it is uncommon and unpracticed that any doctor diagnosing a patient with a hernia not to recommend surgery.

<u>Dr. William E. Hobbs's M.D.,</u> actions, treatment is considered, and in my professional opinion as a surgeon Hobbs' treatment is <u>plainly wrong</u> and recognized as <u>no treatment at all</u>: his treatment is <u>medically unacceptable</u> and his acts and omissions reflect that of wantonness, intentional infliction of pain, and amounts deliberate indifference -- breach of the standard of care. Dr. Hobbs' performance in this case is

7

grossly contrary to the accepted medical practices and is probably the reason and proximate cause to the injury sustained by Mr. Breach having pain, and an enlarged inguinal hernia having problems walking, standing, urinating, bowel movements, coughing, sneezing and Mr. Breach should have had surgery upon the first diagnosis in 2005.

Medical Records in this case reflect that on 2/21/06 Dr. John A. Tassin, M.D., made a doctor order and recommendation that Mr. Breach's inguinal hernia "Needs Repair?" Dr. John Tassin, was correct noting "Needs Repair"? even Tassin questioning surgery is alright. However, it appears that **Dr. Hobbs, Dr. Lyrene, Dr. Robbins**, nurse practitioner **B. Adams** have gone against Dr. Tassin's order of "Needs Repair"?: is a breach of the standard of care by their failure to further up on Dr. Tassin's order and recommendation and questioning surgery is serious pertaining to Mr. Breach's hernia: it is blocking, denying, delaying necessary medical treatment: surgery; the only treatment, and it is the cure.

I write my opinion based on my training and my 27 years of experience in hernia repair: I tackle Dr. Hobbs' deficient treatment in this case: This case is interesting, and as a surgeon Hobbs deliberately neglected his medial duty regarding Mr. Breach's hernia personally agitates me because Mr. Breach is having to endure gratuitous pain and suffering and cannot enjoy every day normal activities because Dr. Hobbs' acts and omissions, being nothing more than "dogged treatment," i.e., his diagnosis and

recommendation that Mr. Breach does not need surgery is unacceptable under the standard of care, and a clear breach of the standard of care also, deliberate indifference.

Dr. Hobbs treatment has <u>several areas of deficiency</u> regarding his proscribed treatment. Identifying some of these area – it is clear Dr. Hobbs has ignored the objective approach that is commonly used under the standard of care -- to relieve pain and suffering and, provide the cure.

Dr. Hobbs' treatment is <u>plainly wrong</u>, and Dr. Hobbs is plainly wrong in his opinions that reflect and demonstrate that his treatment is clearly a breach of the prevailing standard of care because first, under the standard of care it is medically known that there is no treatment for a hernia; and, the <u>only cure</u> that will alleviate the painful symptoms felt by Mr. Breach is surgery. Dr. Hobbs' approach is contrary to accepted medical practices and is clearly tantamount to deliberate indifference; also, is so grossly incompetent, inadequate, and excessive as to shock the conscience to be intolerable to humane decency.

As a surgeon in hernia repair, it is my professional opinion and I will identify several areas of the deficient treatment provided by Dr. Hobbs. His treatment can be considered as deliberate indifference and far below human decency in the following areas:

i)     **Dr. Hobbs has failed to recognize the severity of Mr. Breach's pain, and the issuing of Tylenol will not cure Mr. Breach's hernia; and,**

[1] **(ii)**   Dr. Hobbs issuing a hernia belt or a truss is obsolete because a hernia belt is only used for temporary purposes until Mr. Breach undergoes surgery is a breach of the standard of care, and is deliberate indifference;

**(iii)**   Dr. Hobbs' no referral to a specialist or surgery and his relying on a protocol that Dr. Hobbs states: " "the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum to be surgically necessary; is a breach of the standard of care, and amounts to deliberate indifference;

**iv)**   Dr. Hobbs stating that surgery is not Mr. Breach's only options and it is not medically necessary is an understatement, clearly reflecting a breach of the standard of care, showing a total disregard to the medical objective in the medical profession to relieve pain and suffering and is deliberate indifference because there is no treatment for a hernia: the cure is surgery.

**v)**   Dr. Hobbs has failed to recognize the Red Flags dealing with the signs and symptoms felt by Mr. Breach being his feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum. A bulge or lump in the abdomen, groin or scrotum, pain when straining, lifting, or coughing is deliberate indifference to Mr. Breach's medical needs.

**iv)**   Medical Records do not reflect Dr. Hobbs inspecting Mr. Breach's hernia to ensure that it is not becoming infected or developing into a more serious non-reducible hernia: is a breach under the standard of care, and is grossly unacceptable.

The Medical Records reflect that Dr. Hobbs has deliberately ignored the symptoms which are warnings, red flags that surgery is necessary. These symptoms may start out mild but because of Dr. Hobbs displaying wantonness and his deficient

---

[1] **I have attached the Hernia Support Belt Model 67-350 from Silver Professional Medical Professionals, by FLA Orthopedics, the "Soft Form" "Fitting Instructions" that was issued to Mr. Breach from Dr. Hobbs and Nurse Practitioner B. Adams and this hernia belt, truss is obsolete it is only to be used temporary, it will not stop the pain, will not stop a hernia enlarging, nor cure Mr. Breach's hernia. The cure is surgery.**

performance is a breach in the standard of care, is <u>probably the proximate cause to</u> <u>Breach's hernia enlarging</u>, his hernia becoming progressively worse, causing increasing discomfort.

<u>Dr. Hobbs fails in the area of pain</u>, and the pain being present in the direct affected area will radiate to the hip region, back, leg or even down towards the genitalia region. This will rise to discomfort, and experience sever pain. Under the standard of care, early diagnosis and appropriate treatment, surgery, is the best way to avoid these complications and further serious complications.

Dr. Hobbs has placed some <u>temporary physical restrictions</u> on Mr. Breach identified as issuing a truss that is deficient, and a truss <u>will not stop the hernia from</u> <u>progressing</u> and is inadequate as any treatment.

<u>It is impossible to stop a hernia from progressing</u>; activities such as lifting, twisting, pulling, or muscle strain, even regular <u>common human functions such as bowel</u> <u>movements will cause the muscle to tear resulting to the hernia enlarging</u> and Mr. Breach experiencing this <u>"burning pain"</u>. Dr. Hobbs is ignoring the red flag of "burning pain" also, weight gain, constipation, cough <u>will aggravate</u> the hernia and will become worse and will rupture Mr. Breach's hernia leading into an emergency situation.

I would like to go further into Dr. Hobbs deficient treatment. I state as a surgeon that Dr. Hobbs' treatment <u>amounts to no treatment</u> at all; his relying on a protocol is noting more than aiding to a double standard being absolutely, no treatment at all.

Dr. Hobbs has clearly chosen some medically <u>unknown conservative approach</u> issuing Motrin and a Truss and physical restrictions, then accuse Marcellus Breach <u>"not following instructions"</u> is contrary because there are no instructions except, "surgery" because it is the ONLY treatment – the truss being issued in this case for approximately 21/2 years is totally unacceptable. A truss is, obsolete; and, today medically unknown -- his decision reflect obduracy due to his refusal make a recommendation for surgical repair or referral to a surgeon is, hindering, preventing, delaying necessary care. It is clear and plainly wrong for Dr. Hobbs to chose to take an easier less efficient course of treatment as a <u>cheaper way out</u> and is shocking and unacceptable, falls below the acceptable standard of care insofar as he failed to recognize the significance of Mr. Breach injury, the enlargement of his hernia, complaints of a **trapped hernia, problems walking, limited exercise, physical restrictions, pain, problems having bowel movements, coughing, sneezing,** is plainly wrong, and Hobbs has clearly ignored and has failed to recognize that a Hernia is an **unpredictable source** of a constant danger because, a hernia cannot be treated, surgery is the cure; a hernia <u>will rupture at any time</u>, then, it will lead into a life of death situation also, lead into more sever medical complications such as **tissue death, gangrene, and nerve entrapment**.

<u>Dr. William E. Hobbs, M.D.</u>, under the standard of care has failed to prescribe the necessary medical treatment regarding Mr. Breach's inguinal hernia and Dr. Hobbs' treatment is probably the proximate cause of injury and probably the proximate cause of

subjecting Mr. Breach to endure pain and suffering and; probably the proximate cause to Mr. Breach's hernia enlarging amounts, and is tantamount to deliberate indifference because Dr. Hobbs' practice and treatment proscribed in this case is deviated from the medical profession and is so shocking and unacceptable to the medical profession.

Under the standard of care, Dr. Hobbs has failed to provide the objective regarding Mr. Breach's injury, and that objective is the cure, and the only cure in this case, is surgery. There is no excuse, for Dr. Hobbs treatment.

It is my professional opinion that Dr. Hobbs has not used such reasonable care, skill, exercise, or diligence. His skills fall below the profession as other physicians, surgeons in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in like cases. Dr. Hobbs has failed, ignored red flags and strangulation, which will lead into dangerous complications such as obstruction of the flow of intestinal contents or blood, leading to tissue death and gangrene. Under the standard of care the objective approach in the medical practice and reiterated, that approach under the standard of care is the "cure" especially regarding Hernias.

I address several deficient areas regarding Dr. William E. Hobbs,' M.D., treatment in this case regarding this patient Marcellus Breach. Dr. Hobbs states in his Affidavit:

> " It is my opinion that Mr. Breach does not need to be seen by a medical examiner for an independent physical examination to determine whether or not surgery is necessary. Mr. Breach does not have a right Direct Indirect or Femoral Hernia. Mr. Breach does not have a left Indirect or Femoral Hernia. He does have a large, easy to reduce direct inguinal hernia on the left." [p.2 ¶ 2]

"**As previously stated in my initial Affidavit, as a general rule, a hernia does not progress quickly and there are instances where a person has a hernia for many years and may never require surgery for repair. Hernia repair is an elective surgery. The danger of waiting for a hernia to become incarcerated or strangulated is not high and emergencies involving hernias do not develop often." [p. 2¶ 3.]**

"We are treating Mr. Breach with restrictions related to lifting, walking, standing and wearing a truss in an attempt to keep his hernia from becoming larger. A truss is used to decrease discomfort and to decrease the possibility of the hernia becoming larger. If Mr. Breach would follow the instructions provided to him and the restrictions placed on him by PHS physicians and if he would wear the truss prescribed for him, these things would in fact keep his hernia from progressing." [p. 2, ¶ 4.]
***

. . .

"**I would like to reiterate that Mr. Breach's hernia is not life threatening and does not require surgical intervention and I believe surgery is not medically necessary. His hernia is easily reducible, non-strangulated, and is not incarcerated. Surgery is not his only option and it is not medically necessary."**

"I **would like to further reiterate that hernia repair is an elective procedure and every hernia does not need to be repaired. In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections. This protocol states that the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum. Mr. Breach does not meet this protocol and his hernia is easily reduced. Mr. Breach is not in imminent danger and his health is not life threatening. If Mr. Breach did in fact meet the protocol required by the Alabama Department of Corrections, his hernia would be repaired." [See Attached, p.3 ¶ ¶ 2, 3]**

First and foremost, Dr. Hobbs has not conducted any Sonography, Ultrasound,

and Ultrasonography examinations. Mr. Breach's hernia, based on the complaints and

records in this case, his hernia will usually present a swelling accompanied by pain or a

dragging sensation in the groin.  <u>Surgical repair is usually always advised under the</u> <u>standard of care.</u>

Dr. Hobbs breached the standard of care refusing to refer Mr. Breach to a specialist especially since he is not a surgeon also, because of the painful symptoms felt by Mr. Breach it would have been very difficult for Dr. Hobbs to diagnose Mr. Breach's hernia when there is pain or a dull dragging sensation in the groin area as complained by Mr. Breach and reflected by the Medical Records.

Secondly, Dr. Hobbs has not performed the proper examination in this case when Mr. Breach is experiencing pain, dragging sensation, such as tomographic scanning.

It is medically known that it is often difficult to differentiate the common indirect hernia from the less common direct hernia as Dr. Hobbs has diagnosed Mr. Breach. A Direct inguinal hernia is of much less frequent occurrence than the oblique, their comparative frequency being, according to Cloquet, as one to five.  It occurs far more frequent in men than in women, on account of the larger size of the external ring in the former sex.  It differs from the oblique in its smaller size and globular form, dependent most probably on the resistance offered to its progress by the transversalis fascia and confoined tendon.  It differs also in its position, being placed over the os pubis and not in the course of the inguinal canal.  Dr. Hobbs has not performed any examinations, or any tests because when the hernia distends and pushes out the peritoneum forming the bottom of either the middle or the internal fossa, it is a direct or internal hernia.  Medical

Records do not reflect Dr. Hobbs diagnosis as to how he comes to the diagnosis of a Direct Inguinal Hernia. Furthermore, the anatomical difference between these two forms of direct or internal inguinal hernia is that, when the hernia protrudes through he middle fossa – that is, the fossa between the deep epigastric and the obliterated hypogastric arteries – it will enter the upper part of the inguinal canal; consequently its covering will be the same as those of an oblique hernia, with the insignificant difference that the infundibuliform fascias is replaced by a portion derived from the generallayer of the transversalis fascia, whereas when the hernia protrudes through the internal fossa it is either forced through the fibres of the conjoined tendon or the tendon is gradually distended in front of it so as to form a complete investment for it.

A <u>Direct hernia is less common</u>; also, in short, a Direct hernia differs also in its position, being placed over the pubis and not in the course of the inguinal canal. An Indirect Inguinal Hernia, the protrusion makes its way through some part of the abdominal wall internal to the epigastric artery. Also, the difference between the position of the neck of the sac in these two forma of direct inguinal hernia has been referred, with some probability, to a difference in the relative positions of the obliterated hypogastric artery and the deep epigastric artery.

Dr. Hobbs <u>states surgery is not necessary is **plainly wrong**</u>, and he is medically incorrect; it appears Hobbs probably is going to wait until the very last stage of the hernia which will be the strangulated hernia that is medically a dangerous situation and

Hobbs will be basically playing with life and death with Mr. Breach because it will be an emergency situation when Mr. Breach's hernia is incarcerated, strangulated, or into his scrotum, is unacceptable, relying on a protocol in this case is dangerous to the health of Mr. Breach, and imminent danger that it will be life threatening when Mr. Breach's intestine get trapped or strangulated in the opening: this will lead to dangerous complications such as obstruction of the flow of intestinal contents or blood, leading to tissue death and gangrene. It is unacceptable under the standard of care for Dr. Hobbs to wait for this "Death Angle" to appear, and goes against the standard of care that would be for any doctor to avoid this dangerous medical death trap.

Dr. Hobbs has breached the standard of care regarding his treatment and physical examination for Mr. Breach's hernia. Dr. Hobbs has failed in the area in the objective approach to provide the cure. The standard of care is that Mr. Breach should have been seen either by a specialist and Mr. Breach should have been recommended for surgery.

Dr. Hobbs has failed under the standard of care in this area for not providing the cure governing Mr. Breach's hernia and under the standard of care it is known that the ONLY cure is surgery. It is well established that no doctor can stop a hernia; surgery is the only available recognized cure.

In the medical professions under the standard of care, primary physicians make recommendations of their patients who suffer from a hernia to immediately undergo surgery do to the danger of incarceration and strangulation which will lead to more

sever complications such as tissue death, gangrene, and nerve entrapment: doctors cannot treat a hernia, they have to be repaired.

Dr. Hobbs states: "**An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hold". [id]**

Apparently, Dr. Hobbs undermines the Anatomy of an Inguinal Hernia. Dr. Hobbs is <u>only</u> correct to a <u>certain point</u>. Medically, when a hernia forms, a **"hole" in the abdominal muscle wall develops, allowing the inner lining of the abdomen to push through the weakened area. A hernia <u>"is not,"</u> always a "small" opening in the lining of the abdominal wall". It is medically called a "hole".** Without first conducting some type of Ultrasonographyu testing it is not fair to say "small".

Although the words "small opening" have been used, it is medically known that <u>small is the beginning</u> developing stage of a hernia. The <u>opening will get larger</u> as time goes on and internal pressure is applied -- Dr. Hobbs stated Mr. Breach has a "Large Direct Inguinal Hernia". Therefore, his statement of <u>*small opening*</u> is probably medically incorrect when Dr. Hobbs states Large Hernia. This means that the opening has enlarged.

It is the *Anatomy* of a hernia, at a "<u>beginning stage</u>," a hernia will occur through a "small" opening in the abdominal wall, this opening is also known as "hole" in the abdominal wall; the abdominal wall is prone to weakness. However, it is important to

note, that the hernia will not stay at this stage, it **will become larger**, and will require the only cure, which is surgery.

The beginning stage of the development of a hernia is the presence or the appearing in a bulge; hernias will grow larger as pressure inside the body presses the intestines or other tissues out through a weak area. This is one reasons why a medically, doctors cannot treat a hernia due to the body pressures that pushes the intestine out further. With time, these tissues will bulge out beneath the skill of the abdomen, or, they will bulge into the groin, thigh, scrotum, or labia. Mr. Breach has voiced a "trapped hernia at times" medically he is correct because without surgery to repair the defect, a loop of intestine will become tightly trapped by muscle tissue; this will cause severe pain and requires immediate treatment, which is surgery. **There is no mechanism of preventive care known, and surgical repair is almost always necessary.**

It is fair to best describe the stages of Mr. Breach's hernia from the development of a hernia, to the life of death emergency situation; and, that is, when the hernia is incarcerated, or in danger of being incarcerated or into the scrotum.

Under the standard of care, it is both a breach of the accepted standards for any doctor, or medical professional to rely on any Protocol that will refuse, deny, surgery unless 'the hernia is incarcerated or in danger of being incarcerated before surgically necessary:' and for any doctor especially Dr. Hobbs as the treating physician to wait before recommending surgery, is waiting for the worse sever medical complications to

occur, leading to more sever medical complications such as tissue death, gangrene, nerve entrapment and if Mr. Breach is not treated at this emergency stage it will probably lead to a life or death situation.

As a surgeon in hernia repair, Dr. Hobbs has deviated from established conduct, which his treatment is grossly contrary to accepted medical practices, it is clear that his acts and omissions are and probably are the proximate cause to injury. His treatment amounts to no treatment at all. His treatment is a course of a cheaper way out, and Dr. Hobbs has ignored the only treatment available for Mr. Breach and that is surgery. Dr. Hobbs is clearly and is plainly wrong in his course of treatment by not referring Mr. Breach to a specialist because Dr. Hobbs is not a surgeon and his treatment amounts to deliberate indifference, and a breach of the standard of care.

The proper and only course of standard of care is for Mr. Breach to have been examined by a surgeon upon the very diagnoses of his inguinal hernia for a proper and correct determination of surgical repair, which is usually advised under the standard of care. Dr. Hobbs has provided no treatment at all and has ignored the objective approach in medicine, which is the cure to patients suffering form the pain, and danger of a hernia. Dr. Hobbs actions are unacceptable and fall wide of the mark: he has deviated from the established conduct amounting to grossly contrary to accepted medical practice.

It is my opinion that Dr. Hobbs' treatment, conduct has probably caused Mr. Breach's hernia to enlarge, become worse, more painful, dangerous, leaving him to bear a medical injury without any treatment is unacceptable under the standard of care.

There are several areas best to describe a Hernia. First, a doctor should recognize that term hernia, is the abdominal lining bulges out through a weak area and beings to form a hernia sac. Second, The intestine pushes into the sac, and as the intestine pushes further into the sac, it forms a visible bulge. The bulge may or may not flatten when Mr. Breach lay downs or push against it. This is called a reducible hernia, but the importance is the patient must undergoing surgery because the danger is hernias are unpredictable.

Surgery is always advised because the second stage is the intestine will becomes trapped, that is, the sac containing the intestine becomes trapped by muscle (incarcerated). As this happens, and when it happens, you won't be able to flatten the bulge. This is medically dangerous. Records reflect that Mr. Breach has complained about his hernia becoming trapped. Dr. Hobbs ignoring this warning, red flag, is unacceptable. Medical records reflect Mr. Breach complaining on 4/26/07 about having burning pain, problems coughing, sneezing, & bowel movements, no doctor under the standard of care would not refer Mr. Breach to a surgeon for repair. Furthermore, Medical Records reflect Mr. Breach having problems walking, and his hernia coming out and falling unto his testicles, it is a clear breach of the standard of care for Dr. Hobbs to fail to use the care, skill which is employed by the profession generally and, in this case

of Mr. Breach, Dr. Hobbs has deviated from the established conduct, which is grossly contrary to accepted medical practices, and amounts to deliberate indifference because Dr. Hobbs should have known of the danger of hernias and pain caused by them and his actions are probably why Mr. Breach's hernia has enlarged, and he suffers pain.

The third and last stage is the <u>strangulated hernia</u>, that will become a <u>life or death</u> situation, it will subject Mr. Breach into more unbearable pain, it will be cruel and wantonness, pain and suffering and also will lead to sever medical complications.

Dr. Hobbs has stated that Mr. Breach does not meet a protocol in order to have surgery. The protocol stated by Dr. Hobbs is unacceptable under the standard of care and this protocol is cruel and unusually punishment because it forces, allows, ignores the pain from a hernia and will make Mr. Breach suffering long untreated pain.

Dr. Hobbs states: **"In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum."**

The Protocol itself is unacceptable under the standard of care and this protocol interferes with the medical practices regarding hernias. This protocol deviates from the established standard of care being the objectiveness of medicine to provide the cure, that cure regarding hernias is surgery; and this protocol is grossly contrary to accepted medical practices. This protocol is dangerous, it will leave Mr. Breach without treatment,

ignores his hernia and deviates from the establish conduct and is grossly contrary to accepted medical practices.

This protocol as stated by Hobbs fails to use the care, skill which is employed by the profession generally and is deliberate indifference on its very face and is the proximate cause to Mr. Breach's hernia progressing, enlarging, and subjecting him to endure pain and suffer seem to be cruel and unusual punishment.

Dr. Hobbs is plainly wrong in his course of treatment, and his treatment amount to no treatment and is a clear breach of the standard of care. Dr. Hobbs' approach and treatment is so wide of the mark as to be far below the minimum standard of medical care pertaining to Mr. Breach's hernia because Dr. Hobbs should have known that you cannot treat a hernia, the cure is surgery. Each hernia is different, and Dr. Hobbs approach appears not addressing Mr. Breach's symptoms and pain directly and ignoring, and subjecting Mr. Breach into an area where his medical condition, the enlarged hernia, the pain, the danger, is a breach in the standard of care.

### DR. MICHAEL E. ROBBINS, M.D.

I read the Affidavit of <u>Dr. Michael E. Robbins, M.D.,</u> the Medical Records <u>do not</u> reflect that Dr. Robbins <u>has ever once physically examined Mr. Breach's hernia,</u> but writes an Affidavit opposing surgery, when Robbins ought to know that the only treatment under the standard of care is surgery.

The standard of care pertaining to a Hernia is that any doctor diagnosing a patient

with a hernia:

> **(i)      Ask questions about the patient's symptom s and overall health;**
> **(ii)     Recommend surgery and make the referral to a surgeon or a
>            specialist;**
> **(ii)     The patient chooses whether to undergo surgery;**
> **(iv)     Explain to the patient that surgically repair is usually advised because of
>            the danger of incarceration and strangulation.**

It is a breach of the standard of care for Dr. Robbins, to give an opinion opposing

surgery based on the <u>symptoms of pain, problems walking, problems having bowel

movements due to a hernia</u>, and then never actually conducting his physical

examination.  Dr. Robbins' actions, due to the fact, Dr. Robbins has never once actually

attempted to "treat" Mr. Breach, and his opinion is considered, and in my professional

opinion as a surgeon with 27 years of hernia repair experience, Dr. Robbins' action, parts

of his opinion, his treatment, is <u>plainly wrong</u> and recognized <u>as no treatment at all</u>: his

treatment is medically <u>unacceptable</u> and his acts and omissions by actually <u>never once

examining</u> Mr. Breach, but write an opinion opposing the only cure, and that is surgery,

which will alleviate Mr. Breach's pain and symptoms is wantonness, intentional

infliction of pain, and amounts to deliberate indifference – breach of the standard of care.

Dr. Robbins' performance in this case is grossly contrary to the accepted medical

practices and is probably the reason and proximate cause to the enlarged hernia, and the

injury sustained by Mr. Breach having pain.  The truss issued to Mr. Breach that Dr.

Robbins speaks of, is obsolete, and will not stop the hernia from enlarging once it is past

a certain state.  **Even simple bowel movements will cause the hernia to rupture, there is**

**no treatment.**

It is my opinion that Dr. Robbins is plainly wrong when he states in his

Affidavit:

> **"Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complains were evaluated and treated in a timely and appropriate fashion at Kilby Correctional Facility, and that his diagnosed conditions have been treated in a timely and appropriate fashion." [id.]**

Dr. Robbins is plainly wrong stating: **"However, a hernia can be treated with**

**restrictions related to lifting, walking, standing and wearing a truss all of which**

**prescribed for Mr. Breach. . . "If Mr. Breach had followed the instructions placed on**

**him and if he had worn the prescribed truss, these things would in fact keep the**

**hernia from progressing or getting worse." [id]**

It is my professional opinion as a surgeon, that Dr. Robins is plainly wrong.  Dr.

Robbins' treatment, opinion amounts to deliberate indifference because Mr. Breach has

an injury that cannot be treated without surgery, it will only get worse and more painful.

Dr. Robbins is the cause of proximate injury sustained by Mr. Breach by his failure and

deficiency in treating this patient.  Dr. Robbins' treatment <u>amounts to no treatment at all,</u>

and his conservative approach, and decision to refuse to make a referral to surgical

repair or referral to a surgeon, is hindering, preventing, and delaying necessary medical

care:  Dr. Robbins chose to take an easier less efficient course of treatment as a cheaper

way out and his treatment is shocking and unacceptable, falls below the acceptable standard of care insofar to recognize that a hernia is an unpredictable source of a constant danger because, a Hernia cannot be treated, surgery is the cure and a hernia will rupture at any time and lead into a emergency life or death situation.   Under the standard of care, Dr. Robbins should have referred Mr. Breach to a surgeon, or to have his hernia repaired.  Dr. Robbins' treatment, his refusal to provide the only medical care available is clearly tantamount to deliberate indifference and constitutes no treatment at all.   Management would better describe the prescription given by Dr. Robbins. Morethanless, Dr. Robbins never once examined this patient.

Dr. Robbins breached the standard of care by applying an unknown conservative approach because medically there is no treatment, and the prescription given by Dr. Robbins is hernia management, the only treatment medically known is surgery.  No mechanism of preventive care known, and surgical repair is almost always necessary. Dr. Robbins' conduct and performance is intentionally depriving Mr. Breach of the only cure available and that is surgery, which will alleviate his pain, better his health and safety.  Dr. Robbins' actions are unacceptable under the standard of care:  His actions alone are plainly wrong, obdurate and reflect wantonness because the clear and objective medical standard is to relieve the pain and suffering that is suffered by Mr. Breach due to this untreated hernia. Dr. Robbins' approach is so wide of the mark as to be far below the minimum standard of medical care pertaining to Mr. Breach's hernia and amounts to

deliberate indifference because Dr. Robbins should have known that medically you cannot treat a hernia, surgery is the only cure and, hernia will, and do only get worse. Dr. Robbins has ignored the "red flags" and the symptoms that are different and Mr. Breach's symptoms may start out mild but will become progressively worse causing increasing discomfort. Each hernia is different and the symptoms of a hernia appear gradually or suddenly. Different people feel varying degrees of pain. Some people feel nothing except the presence of a lump, even when a lump is present; surgery is usually advised, while others as Mr. Breach feel that something has ruptured or given way. A hernia belt, truss is obsolete, and only for temporary purposes. Since Mr. Breach has been given a truss, the truss itself is a red flag because you cannot stop a hernia, surgery is the only cure.

Dr. Robbins and Dr. George Lyrene have breached the standard of care and their acts and omissions by failing to actually conduct an examination on Mr. Breach, leaving Mr. Breach in the condition that he is in today, having a large hernia amounts to deliberate indifference, they have not used the care, skill, which is employed by the profession generally and have deviated from the established conduct, which is grossly contrary to accepted medical practices, and amounts to no treatment at all and their acts and omissions are probably the proximate cause to injury and the pain suffered by Mr. Breach, the prolonged statues of his hernia is gratuitous, and they are plainly wrong, obdurate and reflect wantonness by ignoring the danger of a hernia, the painful

symptoms and the enlargement of Mr. Breach's hernia; also, the restriction of his normal daily activity being bowel movements, coughing, sneezing having pain is deliberate indifference.

Nurse Practitioner Bradford Adam, has stepped beyond his qualification making a "no need for surgical referral". Only a doctor is qualified to make such recommendation. The Medical Records do not reflect any personal involvement of Dr. Robbins, and it appears that he relies on his nurse practitioner is an unaccepted practice. B. Adams actions alone are plainly wrong, obdurate and reflect wantonness because he has stepped outside his qualifications. B. Adams has breached the standard of care, and he has failed to use the care, skill that is employed by the profession generally and, in this case B. Adams, has deviated from the established conduct, which is grossly contrary to accepted medical practices as to amount to no treatment at all; and, B. Adams' approach is so wide of the mark as to be far below the minimum standard of the medical care pertaining to Hernias amounts to deliberate indifference.

### DR. GEORGE LYRENE, M.D.

I read the Affidavit of Dr. George Lyrene, M.D., like Dr. Robbins, the records do not reflect that Dr. Lyrene has ever once physically examined Mr. Breach's hernia, but writes an Affidavit opposing surgery, when Dr. Lyrene, ought to know that the only treatment known under the standard of care is surgery.

The standard of care pertaining to a Hernia is that any doctor diagnosing a patient with a hernia:

    **(i)**     **Ask questions about the patient's symptom s and overall health;**
    **(ii)**    **Recommend surgery and make the referral to a surgeon or a specialist;**
    **(ii)**    **The patient chooses whether to undergo surgery;**
    **(iv)**    **Explain to the patient that surgically repair is usually advised because of the danger of incarceration and strangulation.**

It is a breach of the standard of care for Dr. George Lyrene to give an opinion opposing surgery without recognizing the symptoms of pain, problems walking, problems having bowel movements due to a hernia, and then neither doctor has ever conducted a physical examination.

Dr. Lyrene's actions, because Lyrene <u>never once actually attempted</u> to "treat" Mr. Breach, and his opinion is considered, and in my professional opinion as a surgeon with 27 years of hernia repair experience, Dr. Lyrene's action, his no treatment is plainly wrong and recognized as no treatment at all: his treatment is medically unacceptable and his acts and omissions by actually never once examining Mr. Breach, but write an opinion opposing the only cure, and that is surgery, which will alleviate Mr. Breach's pain and symptoms is wantonness, intentional infliction of pain, and amounts to deliberate indifference – breach of the standard of care. Dr. Lyrene's performance in this case is grossly contrary to the accepted medical practices and is probably the reason and proximate cause to the enlarged hernia, and the injury sustained by Mr. Breach having pain. The truss issued to Mr. Breach that Dr. Robbins speaks of, is obsolete, and will not

stop the hernia from enlarging once it is past a certain state. Even simple bowel

movements will cause the hernia to rupture, there is no treatment.

> "It is my opinion that Dr. Lyrene is plainly wrong when he states in his
> Affidavit: " I have reviewed the record of Mr. Marcellus Breach. The
> medical issue he presents is really quite a simple one. He has a small,
> easily reducible inguinal hernia, for which conservative management
> with applied support and limitations on heavy lifting are very
> appropriate. This is a hernia that was present by intake documentation
> and would be amendable to surgery which was clearly elective at the
> time of his admission and would clearly not be necessary now. . . This is
> a minor problem . . . for which surgery is not necessary at this time and
> which is being appropriately managed." (see attached)

Dr. Lyrene is plainly wrong stating: "This is a hernia that was present by intake

documentation and would be amendable to surgery which was clearly elective at the

time of his admission and would clearly not be necessary now." Lyrene never once

physically examined Mr. Breach. A Henria cannot heal on its own. Lyrene in plainly

wrong, and  Dr. Lyrene's conservative approach and his opinion amounts to deliberate

indifference because Mr. Breach has an injury that cannot be treated without surgery, it

will only get worse and more painful. Dr. Lyrene is a cause of proximate injury sustained

to Mr. Breach through his acts and omissions, his failure and deficiency in treating this

patient. Dr. Lyrene's treatment amounts to no treatment at all, and his conservative

approach, and decision to refuse to make a referral to surgical repair or referral to a

surgeon, is hindering, preventing, and delaying necessary medical care: Dr. Lyrene

chose to take an easier less efficient course of treatment as a cheaper way out and his

treatment is shocking and unacceptable, falls below the acceptable standard of care insofar to recognize that a hernia is an unpredictable source of a constant danger because, a Hernia cannot be treated, surgery is the cure and a hernia will rupture at any time and lead into a emergency life or death situation. Under the standard of care, Dr. Lyrene failed in the area to make a surgical referral for Mr. Breach to been seen by a qualified surgeon, or to have his hernia repaired.

Dr. Lyrene's treatment, his refusal to provide the only medical care available is clearly tantamount to deliberate indifference and constitutes no treatment at all. Management would better describe the prescription given by Dr. Lyrene and Dr. Robbins when neither doctor has never once examined this patient.

Dr. Robbins and Lyrene have both breached the standard of care applying an unknown conservative approach because, medically there is no treatment, and the prescription given by Dr. Robbins and Lyrene is hernia management, the only treatment medically known is surgery. No mechanism of preventive care known, and surgical repair is almost always necessary. Dr. Lyrene's conduct and performance is intentionally depriving Mr. Breach of the only cure available and that is surgery, which will alleviate his pain, better his health and safety. Dr. Lyrene's actions are unacceptable under the standard of care: His actions alone are plainly wrong, obdurate and reflect wantonness because the clear and objective medical standard is to relieve the pain and suffering that is suffered by Mr. Breach due to this untreated hernia. Dr. Lyrene's approach is so wide

of the mark as to be far below the minimum standard of medical care pertaining to Mr. Breach's hernia and amounts to deliberate indifference because Dr. Lyrene should have known that medically you cannot treat a hernia, surgery is the only cure and, hernia will, and do only get worse. Dr. Lyrene has ignored the "red flags" and the symptoms that are different and Mr. Breach's symptoms may start out mild but will become progressively worse causing increasing discomfort. Each hernia is different and the symptoms of a hernia appear gradually or suddenly. Different people feel varying degrees of pain. Some people feel nothing except the presence of a lump, even when a lump is present, surgery is usually advised, while others as Mr. Breach feel that something has ruptured or given way. A hernia belt, truss is obsolete, and only for temporary purposes. Since Mr. Breach has been given a truss, the truss itself is a red flag because you cannot stop a hernia, surgery is the only cure.

Dr. Robbins and Dr. George Lyrene have breached the standard of care and their acts and omissions by failing to actually conduct an examination on Mr. Breach, leaving Mr. Breach in the condition that he is in today, having a large hernia amount to deliberate indifference and they have not used the care, skill, which is employed by the profession generally and have deviated from the established conduct, which is grossly contrary to accepted medical practices, and amounts to no treatment at all and their acts and omissions are probably the proximate cause to injury and the pain suffered by Mr. Breach, the prolonged statues of his hernia is gratuitous, and they are plainly wrong,

obdurate and reflect wantonness by ignoring the danger of a hernia, the painful symptoms and the enlargement of Mr. Breach's hernia; also, the restriction of his normal daily activity being bowel movements, coughing, sneezing having pain is deliberate indifference.

### CONCLUSION

It is my medical professional opinion, that Drs. Tassin, Hobbs, Dr. Lyrene, Dr. Robbins, M. D., and the medical providers Prison Health Services, Inc., this stated protocol, practice, policy procedures governing the treatment of hernias is so wide of the mark as to be far below the minimum standard of medical care pertaining to Mr. Breach's hernia and amounts to deliberate indifference.  Furthermore, the acts and omissions of Hobbs, Lyrene, Robins, and Prison Health services, Inc., are plainly wrong, obdurate and reflect wantonness because the clear and objective is ignored and subjects Mr. Breach to suffer pain, and also <u>leaves his injury to only become worse</u> as <u>left untreated and is and will subject pain, enlarge, worsen, and will lead into a more sever dangerous medical condition when it becomes incarcerated, strangulated, or into the scrotum is unacceptable to the medical practice under the standard of care, being their protocol.</u>

It is my opinion and I highly recommend as a surgeon that surgery intervention is necessary 'before' Mr. Breach's hernia is incarcerated, also, before it is "trapped", into the scrotum due to the serious dangerous complications that will occur such as nerve

entrapment which is perhaps the most significant complication of inguinal hernia (herniorrhaphy) because injury to the nerves in this area will cause significant problems. Mr. Breach's hernia occurs when a part of his body bulges into an area where it shouldn't. Defendants being doctors especially Dr. Hobbs are the proximate cause to Mr. Breach's injury, the enlarged painful hernia because they have failed to properly treat him, intentionally as a cheaper way out.

The medical treatment, actions and practices of the defendants' amounts to an unacceptable practice under the standard of care. Their actions alone are plainly wrong, obdurate and reflect wantonness; and they have ignored the medical objective: provide the cure is deliberate indifferent to the prolonged suffering of Mr. Breach, based on some words "elective".

It is my opinion that waiting until the life or death situation is when Mr. Breach's hernia gets strangulated, incarcerated or into the scrotum. To allow Mr. Breach's hernia to become strangulated, or incarcerated will affect the structures and the flow of nerves; blood vessels to pass, which will result into serious medical complications and death if not timely treated.

The burning pain experienced by Mr. Breach is a **warning**, **"red flag"** and under the standard of care, no doctor would ignore it as the defendants have and a surgeon should have examined Mr. Breach making sure no infections is occurring, and just how progressive his hernia is as it is enlarging, more painful, more dangerous, leading into

incarceration, and strangulation which is medically unacceptable and a breach in accepted standards of care. Mr. Breach's hernia can and will rupture at any time. Surgery is advised.

The use of Ultrasonography is useful to differentiate Mr. Breach's hernia from other causes of groin swelling.

Further affiant sayeth not.

_____

Dr. Satyavardhana Rao Yerubandi, M.D., FACS, FRCSC

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS 15 Day of August 2007.

NOTARY PUBLIC:        MY COMMISSION EXPIRES ON 5-6-2009

TASIA A. SUBLETT
NOTARY PUBLIC
STATE OF ALABAMA
COMM. EXP. 05-06-2009

**MARCELLUS BREACH**        : 13TH JUDICIAL DISTRICT COURT

**VERSUS NO: 00067886 - B**    : PARISH OF EVANGELINE APR -3 A 9 06

**GARY COPES, ET AL**        : STATE OF LOUISIANA WALTER LEE CLERK
                             EVANGELINE PARISH

PARISH OF EVANGELINE        :
                            :    AFFIDAVIT
STATE OF LOUISIANA          :

BEFORE ME, the undersigned Notary Public, personally came and appeared:

**DR. JOHN TASSIN, M.D.**
1535 West Main Street, No. 1
Ville Platte, LA 7058
337/363-5591,

Affiant in the above instrument, who, after being duly sworn did depose and state:

*"I am Dr. John Tassin, M.D. a physician licensed to do and doing business in the State of Louisiana with my main office located in Ville Platte, Evangeline Parish, Louisiana. I have reviewed the medical records of Marcellus Breach contained in "Defendants' Exhibit 2" from pages 1 thru 33 and recognize theses as being the records of Marcellus Breach, Inmate #AL160710, while he was an inmate at the South Louisiana Correctional Center located in Evangeline Parish, Louisiana at which I am the Staff Physician. I make this Affidavit to supplement and explain my office notes located on page 4 of said Affidavit and referring to the treatment rendered to and prognosis, diagnosis, and care given to Marcellus Breach regarding his hernia.*

*My first visit with Marcellus Breach was March 21, 2006 at which time he presented with a hernia on his left side which was an inguinal hernia. My notes reflect that I wrote "needs repair?" which indicated that I was questioning whether or not his hernia was going to need a repair. This notation did not reflect that I felt that his hernia actually needed a repair or required repair, but only that I needed to look into the question of whether or not it did need repair.*

*Marcellus Breach was seen a second time on April 12, 2006 regarding dental problems which did not relate to his hernia.*

*Marcellus Breach was seen again on July 18, 2006 and was still complaining of a left inguinal hernia. Examination of his hernia indicated it was not incarcerated nor into his scrotum, and that repair of the hernia would be an elective procedure. This note means that surgery was not required for the health or safety of Marcellus Breach, but that surgery was simply elective, but not necessary. My additional review of the nurse's notes located on page 20 for July 18, 2006 indicated that there was no change in the hernia and no new orders were given by me regarding it meaning that the hernia had not gotten better or worse. Additionally, on page 20 of Marcellus Breach's records on July 12, 2006 the Alabama Department of Corrections did not require that hernia repair be done unless the hernia was incarcerated or was into the scrotum. Marcellus Breach's hernia, on July 18, 2006 was not incarcerated nor into his scrotum.*

*I next saw Marcellus Breach on October 3, 2006 for an old left ankle injury not related to his hernia.*

*Marcellus Breach's left inguinal hernia did not change between March 21, 2006 through July 18, 2006, and he was not complaining of it on October 3, 2006. Surgery for the hernia is only an elective procedure which is not required for Mr. Breach to do normal light everyday activities. Mr. Breach's hernia was neither getting better or worse during his time at the South Louisiana Correctional Center.*

EDWARDS LAW FIRM
12 WEST UNIVERSITY
P.O. BOX 2970
LAFAYETTE, LA 70502
(337) 237-6881



*It is my professional medical opinion that Marcellus Breach's hernia, during the time he was at the South Louisiana Correctional Center, was stable, got neither better nor worse, and that any surgery he may have in the future to correct it would be an elective procedure which is not required for his health or safety, but only for the relief of minor discomfort that the hernia may cause upon heavy exertion.*

*I know all the information contained in this Affidavit of my own personal knowledge."*

DR. JOHN TASSIN, M.D.
1535 West Main Street, No. 1
Ville Platte, LA 70586
337/363-5591

SWORN TO AND SUBSCRIBED before me, this 29th day of March,

2007, Ville Platte_____, Evangeline____, Parish, Louisiana.

Marla Yeager
NOTARY PUBLIC (#52817  )

EDWARDS LAW FIRM
312 WEST UNIVERSITY
P.O. BOX 2970
LAFAYETTE, LA 70502
(337) 237-6881

## LCS CORRECTIONS SERVICES, INC.
### DOCTOR'S ORDERS SHEET

Offender Name: _Breach, Marcelus_    DOC#: _AL 160710_

| Date / Time | Allergies: _NKA_ |
|---|---|
| 3-21-06 | Hernia ⊔ Inguinal Hernia Needs repair? |
| | |
| | _BPR_ |
| | _M. Mann_ |
| 4/12/06 | IBP 400mg BID til dental |
| | _Dr. Tassin / M. Mann_ |
| 7/18/06 | Not Pt. has ⊔ Inguinal Hernia Not Incarcerated, Elective Procedure |
| | _M. Mann_ |

DWYV

# LCS CORRECTIONS SERVICES, INC.
## Nurse's Notes

Facility _____ SLCC _____

Offender: _____ Breach, Marcelus _____          Offender #: _____ A160710 _____

| Date/Time | Notations | Signature/Title |
|---|---|---|
| 3/20/06 | Intake screening complete, c̄ y bunk profile given @ dntb | M. Magee |
| 3.21.06 | Saw MD on rds c̄ new orders | M. Magee |
| 4.12.06 | PSC done c̄ new orders | M. Magee |
| 6/02/06 | Scheduled to go to Dr. Perkins for dental work this date | M. Magee |
| 6/2/06 | Returned no paperwork or new orders | M. Magee |
| 6/8/06 | Trip papers made for Dr. Wood trip on 6/13/06 | M. Duggan |
| 6.13.06 | Returned c̄ NNO; return for fill | M. Magee |
| 6/28/06 | Trip papers made for Dr. Perkins on 6/30/06 | M. Duggan |
| 6.30.06 | Cancelled Dr. Perkins due to limited appt x 20 inmates | M. Magee |
| 7.12.06 | Received a call from Brandon from Alabama re: Inguinal Hernia - Stated Hernia repairs are not done there - unless incarcerated or into scrotum. This subject has not c̄ hernia since seen by Dr. Tassin 3.31.06 - Subject placed on sick call for 7.18.06 to see if he needs a referral to a surgeon | D. Jott |
| 7.10.06 | W.E. faxed report to Ruth Naglich for reference to inguinal hernia inmate requesting repair + ID filing a lawsuit to have surgery done. | M. Magee |
| 17 | | |
| 7.12.06 | 9:30 AM Phone Call received from Lynn Brown and she will return call on previous day on 7.10.06; awaiting return call for follow up. | M. Magee |
| 7.17.06 | 4:25 pm Brought to medical - Left Inguinal hernia easily reducible - no c̄ pain | D. Jott |
| 7.18.06 | Saw Dr. Tassin + no change in hernia + no new orders given | M. Magee |

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, (AIS # 160710)     *

     Plaintiff,                     *

V.                                  *     2:06-CV-1133-MEF

PRISON HEALTH SERVICES, et al.,     *

     Defendants.                 *

## SUPPLEMENTAL AFFIDAVIT OF WILLIAM D. HOBBS, M.D.

BEFORE ME, ___James Dailey JR.___, a notary public in and for said County and State, personally appeared **WILLIAM D. HOBBS, M.D.**, and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is William D. Hobbs. I am a medical doctor and I have been a licensed physician in the State of Alabama since 2006. I have served as the Site Medical Director for Limestone Correctional Facility in Athens, Alabama since October of 2006. I have been employed with Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates since my employment began at Limestone. I am personally familiar with all of the facts set forth in this Affidavit.

The Plaintiff, Marcellus Breach (AIS #160710), is currently incarcerated as an inmate at Limestone Correctional Facility. Mr. Breach was transferred to Limestone Correctional

Facility on March 23, 2007. I am familiar with Mr. Breac 1 and have been actively involved with the medical services provided to him at Limestone.

It is my understanding that Mr. Breach has requested to be seen by a medical examiner for an independent physical exam for complaints related to his hernia. As I previously stated in my initial affidavit, Mr. Breach was first diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole."

It is my opinion that Mr. Breach does not need to be seen by a medial examiner for an independent physical examination to determine whether or not surgery is necessary. Mr. Breach does not have a right Direct, Indirect or Femoral Hernia  Mr. Breach does not have a left Indirect or Femoral Hernia. He does have a large, easy to reduce direct inguinal hernia on the left.

As previously stated in my initial Affidavit, as a general rule, a hernia does not progress quickly and there are instances where a person has a hernia for many years and may never require surgery for repair. Hernia repair is an elective surgery. The danger of waiting for a hernia to become incarcerated or strangulated is not high and emergencies involving hernias do not develop often.

We are treating Mr. Breach with restrictions related to lifting, walking, standing and wearing a truss in an attempt to keep his hernia from becoming larger. A truss is used to decrease discomfort and to decrease the possibility of the hernia becoming larger. If Mr. Breach would follow the instructions provided to him and the restrictions placed on him by PHS physicians and if he would wear the truss prescribed for him, these things would in fact keep his hernia from progressing.

2

I have not seen Mr. Breach since April 30, 2007. He has not been seen in the emergency room at our Healthcare Unit nor has he filed a sick call request requesting an appointment to be seen by me. On April 30th, Mr. Breach was given a prescription for a 90-day supply of pain medicine which has since expired. If Mr. Breach's condition is as he describes (unusual and burning pain/progressively worsening), it would seem he would have made an attempt to be seen in the emergency room or show-up for sick call requesting an appointment with me.

I would like to reiterate that Mr. Breach's hernia is not life threatening and does not require surgical intervention and I believe surgery is not medically necessary. His hernia is easily reducible, non-strangulated, and is not incarcerated. Surgery is not his only option and it is not medically necessary.

I would like to further reiterate that hernia repair is an elective procedure and every hernia does not need to be repaired. In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum. Mr. Breach does not meet this protocol and his hernia is easily reduced. Mr. Breach is not in imminent danger and his hernia is not life threatening. If Mr. Breach did in fact meet the protocol required by the Alabama Department of Corrections, his hernia would be repaired.

It is also my understanding that Mr. Breach has made an allegation that I am currently under investigation by the Medical Board of Examiners. This allegation is completely untrue, as I have never been made aware of any Complaint filed against me.

With respect to an incident involving inmate, Jackie Morrow, Mr. Morrow did have an infected incision due to a surgery performed by a surgeon prior to Mr. Morrow being transferred to Limestone Correctional Facility. Mr. Morrow's incision was infected and I did treat his

3

incision, but my treatment did not cause gangrene or a staff infection. Mr. Morrow was also sent back to this surgeon for follow-up care and treatment of this infected incision."

Further affiant sayeth not.

_William D. Hobbs, MD_
**WILLIAM D. HOBBS, M.D.**

STATE OF ALABAMA    )
                    )
COUNTY OF _Oss. lexce_    )

Sworn to and subscribed before me on this the _17th_ day of _Sept_, 2007.

_____
Notary Public
My Commission Expires:
_9-3-2010_

4