IN THE DISTRICT COURT OF THE UNITED STATES * 7TH
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, #160710              *

    Plaintiff,                    *

Vs.                                     *       CASE NO: 2:06-cv-1133-MEF

                                  *

PRISON HEALTH SERVICES, INC., et. al.,  *

    Defendants.

### PLAINTIFF'S NUMBER SEVEN, -- SECOND SET OF INTERROGATORIES AND REQUEST FOR ADMISSIONS, FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS UNDER FED. R. CIV. P.,

TO:     <u>DEFENDANT RUTH NAGLICH</u>, ASSOCIATE COMMISSIONER OF HEALTH SERVICES, ADOC

**COMES NOW**, the Plaintiff <u>Marcellus Breach</u> (hereinafter "Breach"), in proper person "Pro Se," submits this Second set of discovery request to Defendant pursuant to *Federal Rules of Civil Procedures, Rule 33, 34 & 36*, hereby requesting that named party is requested to answer separately, fully and in writing, the following interrogatories under oath, affirmation in accordance within the definitions and instructions set forth below, within thirty (30) days after service of these *Interrogatories, Request for Admissions*, and *Production of Documents;* furthermore, for the defendant to provide full disclosure along with their answers herein, copies thereof supporting evidentiary materials, as follows:

1

## I. INTRODUCTION:

Defendant Ruth Naglich as submitted an Affidavit in this proceeding on *August 3, 2007*, attached to the ADOC Defendant's "Special Report" filed on *August 6, 2006.* Defendant Naglich has stated under oath in part as follows:

> " . . . My current administrative responsibilities for the Alabama Department of Corrections (ADOC) include the monitoring of the components and the quality of the provision of healthcare to those individuals who are in the care, custody and control of the State of Alabama Department of Corrections (ADOC). Included in these responsibilities is the monitoring of contracted health services, and the administration of the **ADOC's Quality Assurance Program** for all health service treatment. [ ] ... "All medical treatment decisions relating to the individual care of an inmate are made by these licensed individuals. The ADOC does not interfere with treatment decisions or recommendations related to an individuals care by a licensed provider . . . . [ ] . . . "and that all orders prescribed by these providers were administered as ordered."
>
> [See, *Affidavit Ruth a. Naglich, RN, BSN, Defendants Special Report*, ¶ 2, 3, 5]

## II. DEFINITIONS AND INSTRUCTIONS:

Definitions and Instructions are continuing throughout this Discovery request. As applied to the first set of request for discovery submitted on or about *October 29, 2007* pursuant to *Rule 33, 34, & 35*, Federal Rules of Civil Procedures. However, due to Ruth Naglich's Affidavit she speaks concerning **ADOC's Quality Assurance Program** for all health service treatment. No other information, documents have been provided by any defendant as a part of their "Initial Disclosure" *Rule 26, Federal Rules of Civil Procedures*,

2

their duty: Plaintiff questions the ADOC's Q.A. program as asserted (hereinafter "**ADOC's Quality Assurance Program**") as follows: ***INTERROGATORES:***[1]

¶ 1. Please explain the ADOC's Quality Assurance Program, *"identify by document."*

¶ 2. *"Specifically identify by document"* any and all standards, practices and procedures, rules, regulations, policies, protocols, established, promulgated by the Q.A. program regarding medical treatment, coverage, for hernias for State prisoners at ADOC established in accordance with regulations of the State Health Officer regarding treatment for hernias.

¶ 3. *"Specifically identify by document"* the name(s) of any State Health Officer over the Q.A. program who acts as supervisor, or other State duty, specifically regarding the treatment of hernias for Alabama inmates.

¶ 4. *"Specifically identify by document"* any and all Q.A. scores by the State Health Officer from <u>February 2005</u> through date of your response.

¶ 5. *"Specifically identify by document,"* any and all inspections, reports, reprimands, recommendations, of the Q.A. program regarding the treatment protocols for hernias.

¶ 6. *"Specifically identify by document,"* the name of any and all persons, contractors, committee members, or employees of ADOC who maintain the Q.A. program.

---

[1] "Q.A. program" stands for, means as "Quality Assurance Program."

¶ 7. *"Specifically identify by document,"* any and all names of any person, or personnel who has sufficient authority and freedom to identify quality problems and initiate, re-solvement or provide solutions to the Q.A. program since <u>February 2005</u> through date of your response. If any changes, explain, and identify by document.

¶ 8. *"Specifically identify by document,"* any and all Q.A. program committee members.

¶ 9. *"Identify by document"* and please explain in detail how the Q.A. program applies to plaintiff since his incarceration, and being transferred by ADOC to SLCS regarding his medical care.

¶ 10. *"Specifically identify by document"* the names of any and all persons within the ADOC's administration who duties and authority is assigned to the ADOC's Q.A. program.

¶ 11. *"Identify by document"* any and all arrangements, established in accordance with the regulations promulgated by the State Health Officer for ADOC's on going quality assurance program concerning health care processes and outcomes. Specifically identify the area regarding treatment for hernias since <u>February 2005</u> through date of your response.

¶ 12. *"Specifically identify by document"*, the ADOC's health maintenance organization that is obligated to effectively provide, or arrange for, the provision of health care services, as established in accordance with rules promulgated by the State Health Officer

4

for an on-going quality assurance/utilization review program concerning health care processes and outcomes.

¶ 13. *"Identify by document"* the ADOC's health maintenance organization effectively provided, or arrange for, the provision of health care services in accordance with rules promulgated by the State Health Officer for an on-going quality assurance/utilization review program concerning health care processes and outcomes to Alabama inmates and the plaintiff while incarcerated at South Louisiana Correctional Services, from March 16, 2006 through October 6, 2006.

¶ 14. *"Specifically identify by document"* the names of any commissioner over the Q.A. program.

¶ 15. *"Specifically identify by document"* the names, qualifications, duties, authorities and responsibilities and directors, or any member of any committee or any employee of each person of the fiduciary and administration of the Q.A. program.

¶ 16. *"Specifically identify by document"* the mission of the Q.A. program and the duty and responsibility of the quality assurance supervisor regarding treatment for hernias suffered by Alabama inmates.

¶ 17. "Specifically *identify by document*" the delegated responsibility of providing medical services: any surgeries, outside patient care, to Alabama inmates at South

5

Louisiana Correctional Services, Inc., to Prison Health Services, Inc., from February 2005 through October 31, 2007.

¶ 18. *"Specifically identify by document"* names of any and all person(s) and/or "Agent" of or for the Q.A. program who's responsibility includes updating protocols, policies, procedures regarding hernia repair.

¶ 19 *"Identify by document"* how hernia repair for Alabama inmates was covered and to be paid while plaintiff was incarcerated at South Louisiana Correctional Services, Inc.

¶ 20. "Specifically *identify by document*" how either the Q.A. programs operate regarding any approval or denial of any request for surgical repair for a hernia that is not incarcerated, strangulated or into the scrotum?

¶ 21. *"Identify by document"* names of persons within the ADOC who have any responsibility for monitoring the components and the quality of the provision of healthcare to those individual who are in the care, custody and control of the State of Alabama Department of Corrections (ADOC) included but not limited to these responsibilities in monitoring contracted health services at SLCS, and the administration of ADOC's Q. A. program for all health service treatment including but not limited while plaintiff was incarcerated at South Louisiana Correctional Services, Inc., regarding surgery request during *March 16, 2006* through *October 6, 2006*.

¶ 22.  "Specifically *identify by document*" the Medical Director for Prison Health Services, Inc., from *February 2005* through *October 31, 2007*, and list his/her responsibilities.

¶ 23.  "*Specifically identify by document*" any and all orders regarding plaintiff that were administered as ordered, as stated in your Affidavit: "[A]nd that all orders prescribed by these providers were administered as ordered."

¶ 24.  Disclose the substance of any oral, written communication "*identify by document,*" between you and any person regarding: "that all orders prescribed by these providers were administered as ordered".

¶ 25.  "Specifically identify by document," both Prison Health Services, Inc., ("PHS"), agreement that PHS agreed to comply with ADOC's Q.A. program, its standards, practices and procedures policy, or protocols regarding the treatment to Alabama inmates suffering from hernias from February 2005 through October 31, 2007.

## IV.    REQUEST FOR ADMISSIONS:

¶. 1    *Admit or deny*, the *ADOC's Q.A. program* applied to plaintiff's medical treatment while incarcerated at SLCS?

¶ 2.    *Admit or deny*, the *ADOC's Q.A. program* applies to plaintiff while he is incarcerated at the ADOC.

¶ 3.    *Admit or deny*, the *ADOC's Q. A. programs* has a Protocol that state that a hernia must be incarcerated or in danger of being incarcerated before surgically necessary?

¶ 4.    *Admit or deny,* ADOC Q. A. *program* is responsible for coverage of any fees, costs for medical treatment by a licensed provider?

¶ 5.    *Admit or deny,* the ADOC's Q A. *program* will not cover plaintiff's hernia repair unless plaintiff's hernia is incarcerated or in danger of being incarcerated or into the scrotum?

¶ 6.    *Admit or deny,* Prison Health Services, Inc., agreed to comply with ADOC's Q.A. program regarding hernia treatment?

¶ 7.    *Admit or deny,* Correctional Medical Services, has agreed to comply with ADOC's Q.A. program regarding hernia treatment?

¶ 8.    *Admit or deny,* Correctional Medial Services, is following, complying with a protocol that Prison Health Services, Inc., followed regarding the medical treatment of hernias suffered by Alabama inmates from February 2005 through date of your response?

V.    **REQUEST FOR PRODUCTION OF DOCUMENTS**

That defendant produces and permit plaintiff to inspect and to copy each of the following documents:

* **RULE 33, Fed. R. Civ. P., "Business Records"**

8

a. To permit plaintiff to inspect, analyze, and copy or photograph, "*specific document,*" implemented ADOC's **Quality Assurance Program** for all health service treatment from **February 2005** through current date, **specifically the provision protocols and policies/procedures of the Q.A. program regarding hernia.**

b. The names and "*identify by document,*" those individual(s) responsible for the implementation and maintenance of the **ADOC'S Quality Assurance Program pertaining to hernias** within the relevant time of this cause of action.

c. To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion specifically **any and all orders prescribed by any provider that were administered as ordered** and *ADOC's Quality Assurance Program.*

g. To disclose any and all relevant tangible "*documents*" regarding the *ADOC's Quality Assurance Program* surrounding the medical treatment given to plaintiff since his time incarcerated being **February 2005** till current date.

h. Any and all orders prescribed by any medical providers regarding any medical treatment of the plaintiff, that were administered as ordered, please "*identify by document* from **February 2005** through current date of your answer.

f. To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

g. To inspect and copy any and all "documents" regarding the ADOC's Quality Assurance Program regarding hernia treatment.

9

Done this 20th Day November 2007.

_____
Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this **21st** Day of November 2007, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections          Rushton, Stakely, Johnston, Garrett, P.A.
P.O. Box 301501                       P.O. Box 270
Montgomery, Al 36130                  Montgomery, Alabama 36101

_____
Marcellus Breach

10