IN THE DISTRICT COURT OF THE UNITED STATES * 9TH
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, #160710

    Plaintiff,

Vs.                         CASE NO: 2:06-cv-1133-MEF

PRISON HEALTH SERVICES, INC., et. al.,

    Defendants.

**PLAINTIFF'S NINTH SET OF INTERROGATORIES AND REQUEST FOR ADMISSIONS, FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS UNDER FED. R. CIV. P.,**

TO:    DEFENDANT PRISON HEALTH SERVICES, INC.

**COMES NOW**, the Plaintiff <u>Marcellus Breach</u> (hereinafter "Breach"), in proper person "Pro Se," pursuant to *Federal Rules of Civil Procedures, Rule 33, 34 & 36*, hereby requesting that named party and/or their "Agents" as being person(s) under their control: "Alabama Department of Corrections, ("ADOC") are requested to answer separately, fully and in writing, the following interrogatories under oath, affirmation in accordance within the definitions and instructions set. forth below, within thirty (30) days after service of these *Interrogatories, Request for Admissions*, and *Production of Documents*, furthermore, for the defendant to provide full disclosure along with their answers herein, copies thereof supporting evidentiary materials, as follows:

## I. DEFINITIONS AND INSTRUCTIONS;[1]

¶ 1.    Each Interrogatory shall be answered separately and as completely as possible. The fact that investigation is continuing or that discovery is not complete is not an excuse for failure to answer each interrogatory as fully as possible. If you are unable to answer an interrogatory after you have attempted to obtain the information, answer to the extent possible.

¶ 2.    A question that seeks information contained in or information about or identification of any documents may be answered by providing a copy of such document for inspection and copying or by furnishing a copy of such document without a request for production.

¶ 3.    *Rule 33, Fed R. Civ. P.*, permits that the interrogatories to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or government agency, by any officer or agent, who shall furnish such information as is available to the party. *Rule 33(d),* also permits production of documents upon your Agents and the request for production of documents under said rule is requested from person(s) under your control.

¶ 4.    In responding to these request for Admissions, Production of Documents and Interrogators, defendants shall furnish not only such information and documents as are

---

[1] Definitions and Instructions are continuing throughout this Discovery request. Rule 33, 34, & 35, Fed. R. Civ. P.

2

available to them, but also such information and documents as are known to, available to, or in their constructive, actual possession, custody or control of any agent, employee, employer, representative, co-defendant, witnesses, the *Alabama Department of Corrections,* and specifically, including but not limited to defendants attorney(s) and investigators, unless such documents, information, data, records, inter alia, is claimed to be privileged from production or discovery.

¶ 5. If defendants consider any document, information, data, records, inter alia, falling within plaintiff's request for Production of Documents, attached heretofore separately and/or conjunctively, as being privileged from discovery, plaintiff request that, at this time or responding to the Request for Production, the defendants serve upon plaintiff, a written list of the documents so withheld from said discovery and identify each document by date, author or parties, names, business address of each person, party or witness having copies of said documents, information, data, records inclusive to medical records from *February 2005,* through current date of your answers, and the basis on which the document is considered to be privileged from production, and re-production, photo-copying, et. seq., by discovery.

¶ 6. These Interrogatories and Discovery request are continuing and are to be supplemented in accordance with Federal Rules of Civil Procedures, *Rule 26(e).* However, in the event that any, and all information or documents come to the attention of or into the possession, custody or control of the defendants, the attorneys of records,

3

or such other interested persons, parties, agency, employees, and employers, et. al., subsequent to the filing of defendants response / answers hereto, which documents, records, or information are responsive to any and all Interrogatories or Request for Admissions, but which were not included in defendants initial answers / responses thereto, said additional information, documents, data, records, inter alia, shall be furnished to plaintiff, or in the interim, thereinafter appointment of stand-in-counsel, as soon as possible, unless otherwise specified by the Court, or upon subsequent motion.

¶ 7.   In responding to these DISCOVERY request, defendants are to furnish such documents, records, data, information, memorandum, inter alia, as are available to them, their agents, employees, employers, co-defendants, witnesses or representatives, such as attorney of record, but not limited to therein, as to defendants access to which is currently constructive, actual possession or otherwise.

¶ 8.   With regards to plaintiff's Request for Admissions and pursuant to *Federal Rules of Civil Procedures, Rule 36*, et. seq., the defendants shall specifically deny the matter or set forth in details the reasons why the answering / responding party, person, defendant or representatives cannot truthfully admit or deny the matter. A denial shall fairly meet the substance or the requested admission, and when good faith requires defendants shall qualify an answer or deny only a part of the matter of which an admission is requested; the defendants shall specify so much of it is true and qualify or deny the remainder. Defendants may not give lack of information or knowledge as a reason for failure to

admit or deny unless defendants state that they have made a lawful, and reasonable inquiry and that the information known or readily obtainable by the defendants is insufficient to enable them to admit or deny. If the defendants consider that a matter of which an admission has been requested presents a genuine issue of material fact, for trial, they may not, on that ground alone, object or the request; defendants may, subject to the provisions of *Federal Rules of Civil Procedures*, <u>Rule 37(c)</u>, deny the matter or set forth reasons why defendants cannot admit or deny it.

¶ 9. As a courtesy, in answering / responding to any and all DISCOVERY request herein, defendants are asked to, please preface said answers / responses with the "Interrogatory or Request for Admission, Production, being Answered."

## II.   DEFINITIONS:

¶ 10. When used in these discovery request and subsequent set of Interrogatories, Production request, and/or discovery request henceforth, the following definitions shall apply:

> a.   As used herein, the term "**document**" means, without limitation, the following items, whether printed, recorded, reproduced, or written by hand: all writings of any kind, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, including, without limitation, correspondence, memoranda, notes, diaries, statistics, letters, telegrams, minutes, reports, studies, statements, receipts, returns, summaries, pamphlets, books, interoffice and intra-office communications, notations of any sort of conversation, telephone calls, meetings, or other communications,

bulletins, printed matter, computer printouts, teletypes, telefax, worksheets, invoices, all drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or oral records, or representations of any kind (including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotapes, recordings, motion pictures), and any electronic, mechanical, or electric records or representations of any kind (including, without limitation, tapes, cassettes, discs, recordings, and computer memories). Any written, or graphic matter however produced or reproduced, including but not limited to correspondence, e-mails, other written communications, agreements, notes, memoranda, any and all recorded information but not limited to any faxes, reports, letter, grievance, message, records, work sheets, instructions, work assignments, internal communication, order and any other written recorded, electronic, or graphic material however produced, reproduced and, in the absence of the original, copy thereof and any copy bearing markings not present on the original or other copy thereof.

b.  As used herein in reference to a natural person, the word **"identify"** shall mean to state the person's full name, present or last known business address(es) and their association to defendant(s).

c.  As used in reference to a business or other entity, the word **"identify"** shall mean to state the business or other entities full name and present or last known address(es) and their said association to defendant(s).

d.  As used **"identify"** or **"identity"** when used in reference to a document means to state the date and author, type of document [e.g., letter, memorandum, record, policy, title, reference numbers, etc.,] or some other means of identifying it, and its present location or custodian.

e.  The word **"incident"** includes the circumstances and events leading up to, and surrounding the alleged violation of denial of surgery for plaintiff's inguinal hernia from **February 2005**, to current date of your answering / responses.

f.  The word **"specifically identify"** as used with respect to any and all documents, inter alia, is understood to mean the following: 1) title; 2) date; 3) names and position of originator; 4) name and

6

  position of any and all defendants, co-defendants, witness(es) and supervisors; 5) name(s) and position(s) of any and all persons, parties, agents, employees, employers, representatives, who received copies or any portions of the documents in questions; 6) description of the document, records, data, faxes, any and all information, *inter alia*, in question; 8) name(s) and position(s) of the custodian(s) of the above requested documents in their entirety, but not limited to.

g.  The word *"**Medical Examination**"* as used herein, shall include any interview, observation, physical or mental examination, and any other scientific or medical technique or practice designed to obtain information respecting the medical history, condition, diagnosis, and/or progress of the plaintiff examined.

h.  "**Reports**" shall include every written communication from a physician, medical practitioner, or any other person engaged in diagnosing and treating illness or injury, or from the agent of any such person, containing information respecting the medical history, condition, diagnosis and/or prognosis of the person examined.

### III. INTERROGATORIES:

¶ 1. Please state the following for the plaintiff.

  a. your name.
  b. your duties, and responsibilities to Alabama inmates suffering with Hernias.
  c. your length of service with the Alabama Department of Corrections.
  d. your reasons why you are no longer employed with the ADOC
  e. whether you agreed with an established protocol with ADOC regarding hernia treatment before rendering services at ADOC to inmates.
  f. whether PHS established its own protocol regarding how hernia treatment would be proscribed to Alabama inmates,
  g. whether ADOC agreed to PHS rendering medical services, PHS's hernia protocols would be followed by PHS employees and contracted medical staff.

¶ 2. *"Identify by document"* whether there was an existing protocol regarding hernia treatment to prisoners at ADOC **before** PHS entered contract with ADOC to provide medical care to Alabama inmates.

¶ 3. Disclose any *"documents and reports"* relating to any PHS recommendation(s) to ADOC regarding any treatment, protocols, policies, procedures offered that would have been, or were considered by any person for implementation regarding the hernia treatment proffered by PHS & ADOC, ADCO inmates. If any,

    a.   *"Identify"* the person who rejected such reports, recommendation regarding PHS's hernia protocol.
    b.   *"Identify by document"* the proposed protocol recommendation(s).
    c.   *"Identify by document"* the names of all persons involved.

¶ 4. *"Identify by document"* the names, titles, and responsibility, of staff members at PHS and ADOC who have the responsibility for approval of medical treatment regarding hernias, specifically plaintiff's request for surgery during February 2005 until October 31, 2007.

¶ 5. *"Identify by document"* any and all complaints, to any person concerning the medical treatment to Alabama inmates pertaining to hernias to any and all person at PHS and ADOC from February 2005 through October 31, 2007.

¶ 6. *"Specifically identify by document"* the person(s) employed by PHS and any person(s) at ADOC, who was/is responsible for reviewing and updating hernia protocols, *"reports"* policies and procedures regarding medical treatment for hernias, and

8

for requesting improvements in services since your contractual employment with ADOC and from February 2005 through October 31, 2007. If any changes, please *"identify by document."*

¶ 7. *"Specifically identify by document"*, the name(s), responsibility, of any person responsible for reporting to any Director, Supervisor of PHS and/or any other personnel *"identify by document"* at ADOC, whether superintendent or commissioner who serves as a health authority for the institutions and was the overall supervisor for clinical services regarding improvements in services and treatment of hernias.

¶ 8. Specifically disclose any substance of any oral or written statements, agreements, communications between PHS and ADOC regarding hernia treatment and repair during February 2005 through October 31, 2007.

¶ 9. "Identify by document" any and all measures taken by PHS and ADOC to ensure that all Alabama prisoners receive medical care for a hernia that is: (i) easily reducible; *"identify by document"* any and all policies, procedures, protocols regarding a hernia that is (i) non-reducible, (ii) trapped or in danger of becoming trapped, (iii) strangulated, (iv) incarcerated, (v) into the scrotum.

¶ 10. *"Identify"* any and all person(s) at ADOC who agreed with PHS to implement the protocol regarding hernia treatment for Alabama inmates from date of your service through October 31, 2007.

¶ 11. *"Specifically identify by document"* the procedures implemented as to how hernia repairs are approved through PHS and ADOC.

¶ 12. *"Identify by document"* and disclose any and all *"documents"* that provide instructions regarding hernias that is provided by a treating physician, nurse practitioner to prisoners regarding their hernias from PHS and ADOC's or any agent, any protocol, policy, procedures relating to any instruction(s) used by any physician to their patient(s) including instructions for the patient wearing a Hernia Belts and Truss.

¶ 13. From *February 2005* through date of your response, disclose any and all knowledge, information, *"documents"* from any person requesting improvement, changes updating the Protocols for hernias. If yes, state:

    a.   *Identify* the incident,
    b,   *identify* person(s) requesting changes
    c.   *Identify* by document of request
    d.   *Specifically identify* the requested change, if submitted and disposition.

¶. 14 *"Identify by document,"* any and all persons who has authority as a final decision maker regarding plaintiff's request for surgery.

¶ 15. *"Identify by document"* any and all written reports submitted to the State Board of Examiners of any final judgment rendered against PHS and ADOC, regarding hernias in the State of Alabama since your contractual agreement with ADOC; and *"identify by document"* any settlement in or out of court, resulting from a claim or action for damages for personal injuries cased by an error, omission or negligence, Malpractice, deliberate

10

indifferent, in the performance of medical professional services, or in the performance of medical professional services without consent from you date of services with ADOC through October 31, 2007, in any Court in the State of Alabama, or another.

¶ 16. *"Identify by document"* any and all orders, recommendations by any medical providers regarding plaintiff's medical treatment to any person at ADOC & PHS from February 2005, through October 31, 2007, including all orders from South Louisiana Correctional Services, Inc., March 16, 2006 through October 31, 2006.

¶ 18. Explain Dr. George Lyrene, M.D., job responsibility to PHS *"identify by document"* regarding any hernia treatment to an Alabama inmate.

¶ 19. *"Identify by document"* and explain Ruth Naglich's job responsibilities to PHS regarding hernia treatment to Alabama inmates from February 2005 through October 31, 2007.

¶ 20. *"Identify by document"* and disclose Brandon Kindard's job responsibilities to PHS regarding hernia treatment to Alabama inmates from February 2005 though October 31, 2007.

¶ 21. From February 2005 through October 31, 2007, disclose ADOC's common practice, policy, procedures followed, and *"identify by document"* for hernia repairs.

¶ 22. Was there a established practice at ADOC regarding treatment for hernias being a document regarding hernia repairs and treatment that PHS agreed to comply as entering into a contractual agreement: If so, "identify by document"

¶ 23. Did PHS agree to follow ADOC's treatment protocols regarding hernia treatment as a part of PHS standard of operation, procedures regarding hernia treatment? *"Identify by document"* If no, explain in detail:

    a.    If PHS attempted, recommended that a different treatment protocol, be used, implemented with ADOC, *"identify by document."*

¶ 24. "Identify by document" the name of any person at ADOC who had the authority to approve plaintiff's request for surgery.

¶ 25. Is it Dr. Hobbs, M.D., common practice as an Agent with PHS to follow PHS's policy, procedures, and protocol regarding hernias?

## *IV. REQUEST FOR PRODUCTION OF DOCUMENTS OF YOUR AGENTS*

That defendant produces and permit plaintiff to inspect and to copy each of the following documents:

\* *RULE 33, Fed. R. Civ. P., "Business Records"*

    a.    To permit plaintiff to inspect, analyze, and copy or photograph, ***"specific document,"*** implemented policies/procedures of PHS's treatment objective plain regarding hernia from February 2005 through October 31, 2007.

b.  To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

d.  All letters, complaints, or other **documents** in defendants possession or under his control received, sent, made, or read by defendants, or by any agent thereof, relating to the treatment being prescribed by ADOC and PHS regarding hernias since February 2005 through October 31, 2007.

e.  Any and all "**reports, documents**" in the defendants possession or under his control concerning hernia instructions by physicians, Hernia belts, Truss.

f.  Any and all "**reports**" made, in the defendants possession or under his control concerning inmates complaining about having pain from their hernias before incarceration, strangulation or into the scrotum.

g.  *"**Specifically identify by document** "* PHS's quality assurance regarding medical treatment to Alabama inmates suffering with hernias.

V.  **REQUEST FOR ADMISSIONS:**

¶ 1.  *Admit or deny*, PHS agrees with a Protocol that a hernia must be incarcerated or in danger of becoming incarcerated in order to be surgically necessary?

¶ 2.  *Admit or deny*, that the only way to stop a hernia from getting worse is to repair the defect through surgery?

¶ 3.  *Admit or deny*, that the Anatomy of Hernia, -- the most common location for hernia is the abdomen. A hernia (rupture) is usually noticed as a lump, commonly located in the groin or the umbilical region, it appears when a portion of the tissue which lines the abdominal cavity (peritoneum) breaks through a weakened area of the abdominal wall,

this can give rise to discomfort as the hernia enlarges and can sometimes be dangerous is a piece of plaintiff's intestine become trapped ('strangulated')?

¶ 4.  *Admit or deny*, it is your common practice not to repair a hernia unless the hernia is incarcerated or in danger of being incarcerated or into the scrotum before surgically necessary?

¶ 5.  *Admit or deny*, it is ADOC's protocol, practice not to repair a hernia unless the hernia is incarcerate or in danger of being incarcerated or into the scrotum before surgically necessary?

¶ 6.  *Admit or deny*, there is almost no limit to how big a hernia could without surgery?

¶ 7.  *Admit or deny* that medically there is no cure for a hernia without surgery?

¶ 8.  *Admit or deny*, a strangulated hernia can become an emergency that usually requires immediate surgery?

¶ 9.  *Admit or deny*, PHS has a custom, practice, not to repair hernias before the hernia is incarcerated, or in danger of being incarcerated, or into the scrotum?

¶ 10. *Admit or deny*, a truss is the cure for a hernia?

¶ 11. *Admit or deny*, plaintiff has complained about having pain when coughing, sneezing, and having bowel movements due to this hernia?

¶ 12. *Admit or deny*, the issuing of pain medication will not cure a hernia?

¶ 13. *Admit or deny*, the issuing a truss and proscribing pain medication is a cheaper method of managing a hernia?

14

¶ 14.  *Admit or deny*, plaintiff's inguinal hernia can get larger and lead to serious medical complications?

¶ 15.  *Admit or deny*, discomfort usually is experienced especially when coughing, sneezing, lifting heavy objects, or standing for long period of time?

¶ 16.  *Admit or deny*, bowel movements can cause the muscles to weaken resulting into an enlargement of plaintiff's hernia?

¶ 17.  *Admit or deny*, the long-term course is for a hernia to become steadily worse as times goes on, sometimes slowly and sometimes quickly when left without surgery.

¶ 18.  *Admit or deny*, that the opening of a hernia cannot heal itself?

¶ 19.  *Admit or deny*, medically a doctor nor a nurse practitioner cannot treat a hernia; they must be repaired through surgery?

¶ 20.  *Admit or deny* that plaintiff's hernia goes into his scrotum is trapped at times and plaintiff has to work it back up into place?

¶ 21.  *Admit or deny*, a truss is for temporary use?

¶ 22.  *Admit or deny*, the waiting until the hernia is incarcerated or in danger of becoming incarcerated, in order to be surgically necessary can become a life or death situation?

¶ 23.  *Admit or deny*, waiting until the hernia is incarcerated, in danger of becoming incarcerated in order to be surgically necessary can, or will subject a patient into sever pain?

¶ 24. *Admit or deny,* under the standard of care, a hernia ought to be repaired before it is incarcerated or in danger of becoming incarcerated and before entering the scrotum?

¶ 25. *Admit or deny,* that overexertion can cause weakness, such as simple coughing or sneezing to the hernia?

¶ 26. *Admit or deny,* the effects felt by plaintiff can range from perfectly painless, through discomfort, to being very painful indeed?

¶ 27. *Admit or deny,* a hernia ought to be inspected to ensure that it is not becoming infected or developing into a more serious non-reducible hernia?

¶ 28. *Admit or deny,* PHS does not require its employees to conduct routine inspections on inmates' hernias?

¶ 29. *Admit or deny,* a hernia will limit a person daily activity depending on the stage of the hernia?

¶ 30. *Admit or deny,* when the hernia distends and pushes out the peritoneum forming the bottom of either the middle of the internal fossa, it is a direct or internal hernia.

¶ 31. *Admit or deny,* the very instruction Manuel given to plaintiff by Prison Health Services, Inc., the **"Fitting Instructions" for Model 67-350** states pertaining to a hernia: ". . . Limiting activity, eliminating excess weight a hernia belt or truss may provide temporary relief. However, **CURE IS SURGERY**?"

¶ 32. *Admit or deny*, feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum is usually a warning sign that the hernia is progressing and becoming worse?

¶ 33. *Admit or deny*, you were the supervisor of the medical treatment proscribed to plaintiff while at ADOC?

¶ 34. *Admit or deny*, ADOC has final authority regarding approval or disapproval of surgery for plaintiff's inguinal hernia?

¶ 35. *Admit or deny*, there are over 300 Alabama inmates diagnosed with hernias from <u>February 2005</u> through date of your response?

¶ 36. *Admit or deny*, hernias is a case-by-case basis and are painful?

¶ 37. *Admit or deny*, you refuse to provide plaintiff with surgery until his hernia is incarcerated or in danger of being incarcerated?

¶ 38. *Admit or deny*, PHS has authorizes a Bradford Kindard, nurse administrator to make surgically recommendations?

¶ 39. *Admit or deny*, under the standard of care, the Protocols pertaining to hernia treatment for Alabama inmates' subjects a patient to endure pain and suffering.

¶ 40. *Admit or deny*, Alabama Board of Medical Examiners are not aware of the practice involved with ADOC and their medical providers, being a Protocol that a hernia must be incarcerated or in danger of being incarcerated in order to be surgically necessary.

¶ 41. *Admit or deny*, this Protocol ought to be changed pertaining to hernias.

¶ 42. *Admit or deny*, even if Dr. Hobbs recommended plaintiff surgery for his hernia, and because the hernia does not meet the protocol, ADOC Health Services, would have denied the recommendation regardless?

¶ 43. *Admit or deny*, PHS has a common practice, that the hernia must be incarcerated, or in danger of being incarcerated, or into the scrotum before surgically necessary?

¶ 44. *Admit or deny*, ADOC has a common practice, that the hernia must be incarcerated, or in danger of being incarcerated, or into the scrotum before surgically necessary?

¶ 45. *Admit or deny*, each person may feel different degrees of pain regarding their hernia?

¶ 46. *Admit or deny*, PHS has one standard policy, the hernia must be incarcerated or in danger of being incarcerated before surgically necessary?

¶ 47. *Admit or deny*, PHS failed to change the protocols regarding hernias or change the treatment protocols since February 2005 through October 31, 2007?

¶ 48. *Admit or deny*, it is the custom, practice, policy of PHS not to approve surgery for plaintiff's hernia unless his hernia is incarcerated, in danger of being incarcerated, or into the scrotum?

¶ 49. *Admit or deny*, PHS's quality assurance provides that the hernia must be incarcerated or in danger of becoming incarcerated before surgically necessary?

¶ 50. *Admit or deny*, it is routine established at ADOC that prisoners with hernias usually cannot receive surgery until their hernia is incarcerated or in danger of becoming incarcerated?

¶ 51. *Admit or deny*, Ruth Naglich as a nurse and his supervisory position, has the authority, influence to regarding hernia treatment?

Done this 26th Day November 2007.

®  _____
Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that I have this 26th Day of November 2007, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections
Legal Division
P.O. Box 301501
Montgomery, Alabama 36101

Rushton, Stakely, Johnston, Garrett, P.A.
P.O. Box 270
Montgomery, Al 36130

® _____
Marcellus Breach