IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARCELLUS BREACH, #160710 | * | |
| Plaintiff, | * | |
| | * | CASE NO: 2:06-cv-1133-MEF |
| Vs. | * | |
| PRISON HEALTH SERVICES, INC., et al., | * | |
| Defendants. | * | |

### PLAINTIFF'S RENEWED MOTION FOR INDEPENDENT PHYSICAL EXAMINTION

**COMES NOW**, Plaintiff <u>Marcellus Breach</u> (hereinafter "Breach") in proper person "Pro Se," moves this Court pursuant to 35(a), Fed. R. Civ. P., "<u>Independent Physical Examination</u>," and or Breach would request unto this Court that independent physical examination ought to be necessary before summary judgment, to determine the exact nature and extent of the injuries alleged to have been sustained by him since February 2005, as the result of the acts or acts alleged in plaintiff's complaint.

¶ 1.   Plaintiff's hernia has enlarged, progressing, trying to get trapped.

¶ 2.   Plaintiff's physical condition has deteriorated, pain, problems walking, problems having bowel movement, pain when standing, lifting, coughing, sneezing, pain in lower leg, inability to exercise.

¶ 3.   *Exhibit "A"*, is a recent pleading to this court entitled: ***Plaintiff's Request to Submit Exhibits in Further Support of Written Objections to the Order of the Magistrate***

1

*Judge"* filed on or about <u>November 11, 2007</u> *[Court Doc. N/A]* plaintiff attempted to direct this court's attention to a recent order and judgment rendered against the medical defendants and ADOC regarding their treatment for hernias to inmates. Carroll filed a writ of certiorari in the Circuit Court of Montgomery County, Alabama **Case NO. CV-05-2528** *Johnny Carroll v. ADOC et al.* In that case, Honorable Judge Johnny Hardwick ordered after an evidentiary hearing that ADOC and PHS to provide Mr. Carroll with an **independent physical examination** regarding his "<u>easily reducible hernia</u>" very similarly to plaintiffs. [1] Plaintiff is not surprised that Johnny Carroll acted pro se', <u>did not have any experts</u>, and the Court found PHS unreliable. Plaintiff asks this court the question? What is different from Carroll's hernia that is not incarcerated and Pl;aintiff's cases, they both have hernias, and both are prisoners in Alabama prisons. But a State Court found it necessary for an examinatnion, because the Court found the medical providers ill founded.

    Plaintiff cannot believe that this court would not be interested in furthering the truth about hernia treatment through the testimony of a free world doctor conducting an independent physical examination. Plaintiff is confident that this court has presided over several hernia pro se cases. However, this case is designed to force out the truth and an examinations ought to be warranted in the interest of fairness, and justice and that this court can fulfill its role. Plaintiff urges that the court not to awarding too much

---

   Plaintiff sent a document recently to this Court in further support of independent physical examination requesting to submit an Exhibit. Court Doc. N/A. Plaintiff also submitted an Affidavit from Johnny Carroll explaining the events and court judgment against PHS and ADOC.

2

creditability to the very doctor who poured sugar into Jackie Morrows stomach, resulting into six additional correctional surgery from free world doctors?

¶ 4.  *Exhibit "B"*, is an Affidavit from a 20 year veteran in nursing, Mr. Willie King, RN, MSN, who depreciates to the treatment rendered by the medical providers, stated that hernias will not heal, they only get worse and that a truss is obsolete, no good and that a surgeon ought to examine plaintiff.

## *ARGUMENT*

Plaintiff finds it unfair, especially after the demonstrated conduct of the medical defendants who have disobeyed several of this courts orders:  they basically have ignored what this court says, but to not find an examination warranted is unascertainable.   Moreover, the Court does not read FED. R. CIV. P. 26 as prohibiting plaintiff from naming a rebuttal expert to refute medical testimony, even if that expert testimony comes from a witness who can also <u>offer testimony as a treating physician</u>. Indeed, the plaintiff's research has shown that, in previous cases, Courts have implicitly acknowledged that a defendant is entitled to refute the expert testimony of a treating physician with its own expert. *See* **Chakales v. Hertz Corp.**, 152 F.R.D. 240, 242 (N.D. Ga. 1993) (Carnes, J.)   The Objectiveness of the medical defendants is something that an expert will have to demonstrate to this court.  Their intent to basically leave plaintiff to endure pain, and have physical complications is an injury and demonstrates deliberate

3

indifference. The extent of plaintiff's injuries is not going to be developed by prison doctors. They are for profit and make money for each prisoner they do not have to treat.

Secondly, Courts have reasoned that IME's are often necessary, even when the plaintiff's medical records are available, because "there are few, if any, acceptable substitutes for a personal physical examination for forming a meaningful opinion." See, ***Ali v. Wang Lab, F.R.D.*** 165, 168 (M.D. Fla. 1995).

*Rule 35(a), Fed. R. Civ. P.*, permits plaintiff's expert to examine him for purposes of ascertaining the truth, and proximate cause and extent of plaintiff's injury. Furthermore, the expert needs to examine Breach's current physical condition when his hernia is "**trapped**" because it is basically cruel and unusual pain. Breach alleged in his Motion that he has permanent injuries / restrictions as a result of this untreated hernia, i.e., **lifting, range of motion and ability to work, difficulty standing, walking, bowel movements, urinating, coughing, sneezing, exercising, pain.**

This Court had before it Dr. Yerubandi's opinion expressing that Dr. Hobbs breached the accepted standards of care by failing to refer Breach to a specialist in hernia repair who regularly see all these kinds of cases because of the danger of incarceration and strangulation of Breach's hernia which will lead to a serious medical complications such as tissue death, gangrene – if Breach is not timely treated knowing that you cannot treat a hernia, surgery is the only cure to alleviate Breach's symptoms of pain and discomfort. Dr. Yerubandi also stated that "under the standard of care for someone

suffering from burning pain, pain when coughing, sneezing, and having bowel movements and, as complained by Breach having to lift his left leg up and apply pressure on his hernia: primary care physicians refer patients for surgical management." [See, *Affidavit Dr. Yerubandi M.D., p.2*]

This Court also has before it Plaintiff's Affidavit complaining of his physical condition being **"trapped"** enlarged, and can't get out, descending onto his testicles describing his permanent restrictions. These issues were not addressed in the defendant's response.

[2]What is most important are the permanent injuries sustained by the plaintiff that warrants independent physical examination? Here, by asserting permanent restrictions resulting from denial of surgery warrants independent physical examination. Plaintiff has placed his physical condition in controversy and provided the Court with good cause for an examination to determine the existence and extent of his asserted injuries. *See Schlagenhauf,* 379 U.S. at 116-17.

**Permanent injuries** are in controversy, there is the possibility and probability that as a result of being denied surgery Breach can have a showing of infections, gangrene, nerve entrapment, tissue death, resulting from this untreated hernia. [See, Dr. Yerubandi's Affidavit Preliminary Injunction]

---

[2] May the Court be mindful, that tissue death, gangrene, nerve entrapment are damages resulting from an untreated hernia.

5

The testimony of an expert is a well recognized and reasonable way of [challenging Defendants position, defenses, treatment and testimony], and an examination of plaintiff by that expert is necessary for the expert to form a meaningful opinion." *Ali v. Wang Laboratories, Inc.*, 162 F.R.D. 165, 168 (M.D. Fla. 1995).

## *CONCLUSION*

Plaintiff complains that his opposition to summary judgment, and at trial will be severally prejudiced without an opportunity to be examined by a qualified expert in hernia repairs. Dr. Hobbs, M.D., Dr. George Lyrene, M.D., and Dr. Robbins, M.D., <u>are not qualified doctors regarding hernias</u>. Their methodology is, wait until a life or death situation, strangulated hernia, before surgically necessary is medically incorrect and leaves plaintiff to endure sever pain. Unnecessary wanton infliction of pain and suffering is what the Eighth Amendment protects against from the defendants actions. Only a surgeon can testify as to how long or how early it is necessary for a patient to undergo surgery. A jury needs to hear directly from the expert, also that he examined plaintiff's injury -- there are few, if any, acceptable substitutes for a personal physical examination." **Bennett**, 841 F. Supp. at 1157. An expert "must conduct a physical examination to form a meaningful opinion." *Ali v. Wang Lab.*, 162 F.R.D. 165, 168 (M.D. Fla. 1995). And, it is difficult for the expert's opinion to carry substantial weight if is based only on second-hand information, as opposed to a personal examination. **Bennett**, 841 F. Supp. at 1157. Thus, understandably, a [plaintiff's] case at trial may be severely

6

prejudiced if he is not permitted to obtain the testimony of an expert who has personally examined the plaintiff. *Id.* Furthermore, in the present case, allowing Plaintiff's expert to conduct an examination may foster meaningful settlement negotiations, since the outcome of the examination will give the parties a better idea of the extent of Plaintiff's injuries.

**WHEREFORE**, *premises considered*, plaintiff urges this court to grant independent physical examination.

Done this 27th Day November 2007

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

### CERTIFICATE OF SERVICE

*I HEREBY CERTIFY*, that I have served a true copy of the foregoing upon the following by U.S. Mail, First Class, postage prepaid and properly addressed to and mailing through the prison mail box system on this 27th Day of November 2007.

Alabama Dept. Of Corrections
Legal Division
Montgomery, Alabama 36130

Rushton, Stakely, Johnstone & Garrett, P.A
P.O. Box 270
Montgomery, Alabama 36101

Marcellus Breach

7

MARCELLUS BREACH AIS 160710
LIMESTONE C.F
28779 NICK DAVIS RD.
HARVEST, ALABAMA 35749

This correspondence is forwarded from an Alabama State Prison. The contents have not been evaluated, and the Alabama Department of Corrections is not responsible for the substance or content of the enclosed communication.

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
P.O. BOX 711
MONTGOMERY, ALABAMA 36101

Exhibit A

IN THE CIRCUIT COURT OF MONTGOMERY COUNTY, ALABAMA

JOHNNY CARROLL

    Plaintiff,

v.                                              Case No. CV05-2528

DONAL CAMPBELL, STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS [ADOC], et al.

    **Defendants**

## ORDER

This cause coming before this Honorable Court for review and after testimony and evidence submitted, this Court orders that the Plaintiff be immediately transferred back to Limestone Correctional Facility. Further, this Court orders that within 30 days of this order, the ADOC shall make arrangements for the Plaintiff to see an independent physician for evaluation.

DONE THIS THE 14th DAY OF November, 2007.

_____
Circuit Court Judge

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARCELLUS BREACH, #160710 | * |
| Plaintiff, | * |
| Vs. | *   CASE NO: 2:06-cv-1133-MEF |
| PRISON HEALTH SERVICES, INC., et al., | * |
| Defendants. | * |

### DECLARATION BY INMATE JOHNNY CARROLL, AIS# 139022 REGARDING STATE COURT ACTION

**JOHNNY CARROLL, AIS# 139022** and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, and declares under the penalty of perjury 28 U.S.C., 1746 that the foregoing is true and correct.

My name **Johnny Carroll, 139022.** I am over the age of twenty-one. I am familiar with Mr. Breach's Complaint concerning the medical treatment provided to him from **Dr. Williams Hobbs, M.D.** the Medical Director here at Limestone C.F.

I have been suffering from surgical hernias since on or about 2002 or 2003, and I have been incarcerated at ADOC since said times. I have been requesting surgery from the medical defendants and I have been requesting relief from my pain due to these hernias. I have not received anything other than Motrin. My hernias are the result from an reoccurrence hernia, and because I have not received any surgical treatment, I now multiple incensional hernias. My health has deteriorated, I am in constant pain.

I recently had a court hearing on a writ of certiorari at the Circuit Court of Montgomery County, Alabama Case No. **CV-05-2528** concerning my hernias and relief was that I am requesting hernia repair. I first had a hearing on or about July or August 9, 2007. The Court issued an order giving the defendants 30-days to provide me surgery. They didn't do it, but lied to the court that I have a Chron's disease, and then filed a motion to dismiss.

I appeared for another hearing, and my response is attached. The Honorable Judge Hardwick stated that the medical defendant's motion to dismissed is Denied. Mr. Carroll is going to receive his surgery.

I state that a Dr. McQueen tried to tell the judge that **I didn't have a hernia. I do have several hernias and they are very painful. My hernias are not incarcerated, strangulated, or into the scrotum.**

The medical defendants attempted to lie to the trial court that I had a Crohn's Disease and they have been treating me but the end results are that they misdiagnosed me, and I do not, never did have Crohn's Disease.

On **November 14, 2007**, the **Honorable Judge Johnny Hardwick, ORDERED,** the ordered Prison Health Services, Inc., and the Alabama Department of Corrections to that within 30 days of the order, the ADOC shall make arrangements for the Plaintiff to see an **independent physician for evaluation.** " I have attached the order entered.    I Swear that the foregoing is true and correct under the penalty of perjury. 28 U.S.C. 1746 this 17th Day of November 2007.

*Johnny Carroll*
JOHNNY CARROLL 139022

COUNTY OF MADISON                    :

STATE OF ALABAMA                     :                    AFFIDAVIT
_____

BEFORE ME, the undersigned Notary Public, personally came and appeared:

**Mr. Willie King, R.N., M.S.N.**

Affiant in the above instrument, who after being duly sworn, deposed and says on oath that the averments in the foregoing are true to the best of his ability, information, knowledge and belief as follows:

" I am *Willie King, R.N., M.S.N.,* a licensed registered nurse. I am over twenty-one years of age. I have been a licensed nurse for over 20 years, I am licensed in the State of Alabama, I have a Master Degree in Nursing, and I am in god standing with the Board of Nursing, for the State of Alabama. I have 25 years experience in nursing, including as a supervisor. I am currently employed as a Nursing Instructor teaching Nursing to college students. I am also employed as a nurse, practicing nursing in Alabama.

I have reviewed the medical records of **Mr. Marcellus Breach**. The Records reviewed are from "South Louisiana Correctional Center," labeled as "**LCS Corrections Services, Inc.,**" identified as Offender Breach Marcellus, DOC # 160710.

The first set of medical records are from "**PHS, Prison Health Services, Inc.,**" labeled as "Progress Notes:: Date/Time 5/05/05, Inmate's Name, Breach, Marcel[l]us, D.O.B.: 7/28/29, Time.: @ 1600 hrs.

The second set of Medical Records are records from "**PHS, Prison Health Services, Inc.,**" labeled as "Progress Notes" Date/Time: 12/27/2006, Inmate's Name: Breach, Marcel[l]us, D.O.B., N/A/ Examiner, B. Adams, Nurse Practitioner, Time: @ 1125

with "Left Inguinal Hernia area noted with small inguinal hernia; easily reducible; non-strangulated, not incarcerated, size is 3 x 5 cm, -- consulted with Dr. Robbins, no need for surgical referral @ present."

The third, identified portion of the medical records are from "PHS, Prison Health Services, Inc.," labeled as "Prison Health Services, Inc., Sick Call Request, date of request: 4/26/07, nature of problem or request:

> **"I' am having burning pain due to my hernia. It is causing me problems coughing, sneezing, & bowel movements. On 3-21-06 Dr. Tassin said needs repair, I need surgery aggravated hernia."**

The next portion of continued medical records from Prison Health Services, Inc., records reflect an examination with notes from Dr. William Hobbs, M.D., diagnosed Mr. Breach with a **"Large, easy to reduce Direct Inguinal Hernia on left."** I note that pain medication was issued maybe Motrin 600 mg., and a truss.

Additionally, on page # 2, of the **"LCS, Corrections Services, Inc.," Nurse's Notes"** of Marcellus Breach on **July 12, 2006**, it is noted: "Received a call from Brandon from Alabama re Inguinal Hernia stated, 'Hernia repairs are not done there – unless incarcerated or into scrotum . . . **subject placed on sick call for 7/18/2006 to see if he needs a referral to a surgeon."**

I state as a registered nurse, nursing instructor that in my 20 years of experience in nursing, the mere words of labeling Mr. Breach's hernia as "elective" as used in this case is nothing more than an escape route to avoid providing the only necessary medical care regarding hernias, that is surgery.

It is my opinion, that Mr. Breach ought to be seen by a qualified expert in hernia repairs because a hernia will not get better, it will not just go away, and it will cause Mr. Breach to endure pain and affect his daily activities. An examination is necessary because as the hernia progresses, infections will and can develop. Mr. Breach has not been seen by a doctor since April 30, 2007. Medical providers basically have refused to properly continue to monitor this condition, and only can a surgeon correctly determine the severity of his injury. This hernia presents and continuing danger that will cause more sever medical complications to Mr. Breach's health. In this case, the medical providers treatment is grossly unacceptable, and amounts to no treatment at all. The issuing of a truss is obsolete, a truss is no good, it is not treatment, it will not stop Mr. Breach's hernia from enlarging, nor will it stop the pain he is undergoing. This case establishes that the medical providers are actually aware of the significant risk of serious harm simply by not providing Mr. Breach with the necessary medical care, which is surgery, and they have intentionally and deliberately proceeded with grossly inadequate treatment anyway.

Mr. Breach has complained several times about pain from his untreated hernia. It is clear that the medical providers are ignoring these complaints. Once a hernia enlarges, as Mr. Breach's being a "Large" inguinal hernia, there is no conservative approach, there is no longer instructing Mr. Breach to watch his activities, and Mr. Breach must undergo surgery and must be seen by a qualified surgeon. This case reflects one of, where the medical providers have simply "refused to treat him, ignored his complaints, intentionally treated him incorrectly, and have engaged in similar conduct that would clearly evince a wanton disregard for this serious medical need.

A stress that I am aware that there is some protocol that is preventing Mr. Breach from receiving surgery. I state that medical personnel waiting until the hernia is incarcerated or, in danger of being incarcerated is cruel and unusual treatment, it is no treatment at all, it is a breach of the standard of care, it is also, inadequate, incompetent treatment because what they are doing is enforcing deliberately, intentionally Mr. Breach to undergo sever pain and will continue to restrict his activities. The waiting until his hernia is incarcerated, strangulated or into the scrotum is inflicting great danger, more medical complications such as gangrene, tissue death, nerve entrapment. The medical treatment plan provided by the medical provider is nothing more than example of the letter "A" and "Z" type treatment. Letter "A" stands for the medical providers diagnosing Mr. Breach with a hernia, labeling the hernia as "elective" then, issuing a truss and pain medication and basically forgetting about Mr. Breach meaning ignore any further complaints of his about continuing pain until "Z" come in, and that is when it is a life or death situation, being the hernia is incarcerated or, in danger of being incarcerated before surgically necessary is totally unacceptable, and a breach of the prevailing standards of care, amounts to deliberate indifference because they are ignoring his pain and intentionally mistreated him, intentionally proscribed some pain medication and a truss that will not cure the condition, nor will it stop the condition from worsening and becoming more painful. Furthermore, medical providers have failed to inspect Mr. Breach's hernia because they are ignoring it: amounts to no treatment at all, they have ignored his complaints of pain, and have ignored the only medically known treatment that will cure, alleviate his pain and suffering, that is surgery.

It is my opinion, that specialists in hernia repair immediately examine Mr. Breach's hernia because the medical providers are ignoring this patient's symptom of pain. There are no current records that would reflect that they are monitoring his condition, foreclosing the cure, which is surgery and ignoring as his hernia progresses, which will lead into a dangerous situation to his health. Moreover, the decision not to referral surgery is a breach of the standard of care, and is basically ignoring Mr. Breach's dangerous unpredictable hernia. Surgery is usually always necessary and advised to patients. Additionally, the treatment prescribed in this case absolutely no treatment at all; the medical providers have failed to alleviate the painful effects without any treatment that is sufficient to past muster, and have basically left Mr. Breach without any treatment.

It is my opinion as a nurse, nursing instructor and over 20 years in nursing, that the acts and omissions of the nurse practitioner B. Adams is a proximate cause to Mr. Breach injury worsening, causing more pain as a result from his untreated hernia. Hernias get worse. They do not get better and will not heal on its own, they are painful especially the burning pain experienced by Mr. Breach.

The treatment proscribed to Mr. Breach in this case represents a breach of the standard of care, amounts to no treatment, inadequate, incompetent, and is shocking, falling wide of the mark. The mere label as elective is not acceptable in this case due to the pain and symptoms felt by Mr. Breach and should not have been ignored without continuing inspections of his hernia to make sure that it is not becoming infected, incarcerated, or endanger of incarceration. Only a surgeon in hernia repair is qualified to make a medical judgment regarding surgery, when that surgery is necessary before

incarceration of the hernia. However, because a hernia will rupture at any time causing sever medical complications, surgery is always advised before such medical state.

Elective surgery is a case-by-case issue, and in this case of Mr. Breach, based on the symptoms of pain, elective is an understatement because there are several Red Flags that a surgeon needs to be consulted. The medical defendants have ignored these Red Flags and left Mr. Breach without remedy is unacceptable, shocking, inadequate, and amounts to no treatment at all tantamount to deliberate indifference.

The truss is obsolete; pain medication cannot be considered treatment but management. The only treatment available is surgery. A surgeon ought to examine Mr. Breach's hernia because under the standard of care, a specialist is required to examine the patient with a hernia. I believe in my opinion that several doctors and nurses in this case have done nothing more than agree to some method underhandedly to deny this patient surgery using elective as a way out; issuing a truss as a cheaper way out is unacceptable under the standard of care, and amounts to deliberate indifferent because they are medically ignoring the pain and surgery will alleviate the pain felt. B. Adams have ignored the complaints, ignored the warnings signs, and ignored the dangers of hernias. In sum, they have deviated from the professional standards used in the community to basically ignore and continue to subject this patient to pain is unacceptable. Furthermore, it is apparent that Mr. Breach's hernia is and has progressed an is being ignored. Medical providers failed to provide the proper medical care in this case and their treatment is uncommon in the nursing practice and the medical profession meaning nothing more than the medical providers deliberately & intentionally deciding to allow, continue to ignore this patients pain, and subject him to pain and then, taking an

easier less efficacious course of treatment that can be called "management". B. Adams has deviated from the established conduct, which is grossly contrary to accepted medical practices, and amounts to deliberate indifference, and constitute no treatment at all.

Under the standard of care, B. Adams stepped beyond his qualifications stating: no need for surgical referral at present" is wantonness, intentional evil actions, designed to subject Mr. Breach to endure pain and suffering. Each hernia is different, and each patient will feel different degrees of pain. Different people feel varying degrees of pain. Some people feel noting except the presence of a lump, while others, as Mr. Breach feel that something has ruptured or given way. Surgery is the ONLY known treatment for a hernia."

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS 20th DAY OF November, 2007.

_____
Willie King, R.N., M.S.N.

_____
Notary Public

My Commission expires on 1-14-09.