IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

|  |  |
|---|---|
| MARCELLUS BREACH, #160710 | * |
| Plaintiff, | * |
|  | *    CASE NO: 2:06-cv-1133-MEF |
| Vs. | * |
| PRISON HEALTH SERVICES, INC., et. al., | * |
| Defendants. | * |

*PLAINTIFF'S NOTICE OF TAKING OF DEPOSITION UPON WRITTEN QUESTIONS
ON DIANA LOTT, NURSE ADMINISTRATOR*

TO:    EDWARDS LAW FIRM      ALABAMA DEPT. OF CORRECTIONS
       C/O CHRIS EDWARDS      LEGAL DIVISION
       P.O. BOX 2970                 P.O. BOX 301501
       LAFAYETTE, LA 70502       MONTGOMERY, AL 36130

       RUSHTON, STAKELY, JOHNSTONE & GARRETT, P.A.
       P.O. BOX 270
       MONTGOMERY, ALABAMA 36101

**PLEASE TAKE NOTICE,** that the attached questions will be propouned on plaintiff's behalf to Diana Lott, an employee of South Louisiana Correctional Services, Inc., whose address is at Pine Prairie Correctional Center, Post Office Box 650, Pine Prairie, LA 70576 at the taking of her deposition before Attorney Chris Edwards, a Notary Public, whose address is stated above pursuant to the Federal Rules of Civil

1

Procedures, at the place designated by him at the set time designated by him, on **December 21, 2007**, or at another set time by him upon person set forth below:

**Ms. Diana Lott, Nurse Administrator**            December 21, 2007.

Attorney Chris Edwards will take the deposition for the plaintiff upon written questions before a notary public or acting as a Notary; and being an officer authorized by law to administer oaths. The deposition to be taken is for discovery purposes, for use as evidence in the trial of the above-entitled cause, or both.

Done this 4th Day December 2007.

_____
MARCELLUS BREACH ® 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that I have served a true copy of the foregoing upon the following by U.S. Mail, First Class, postage prepaid and properly addressed to and mailing through the prison mail box system on this 4th Day of December 2007.

Alabama Dept. Of Corrections
Legal Division
P.O. Box 301501
Montgomery, Alabama 36130

Rushton, Stakely, Johnstone & Garrett, P.A.
P.O. Box 270
Montgomery, Alabama 36101

Edwards Law Firm
C/O Chris Edwards Esq.,
P.O. Box 2970
Lafayette, LA 70502

_____
Marcellus Breach

2

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, #160710

    Plaintiff,

Vs.                              CASE NO: 2:06-cv-1133-MEF

PRISON HEALTH SERVICES, INC., et. al.,

    Defendants.

## *DEPOSITIONS UPON WRITTEN QUESTIONS ON DIANA LOTT, NURSE ADMINISTRATOR*

Pursuant to **Court Doc. 234 – 1, Order**, and pursuant to *Rules 26, 28, 30 and 31* of the *Federal Rules of Civil Procedures*, plaintiff <u>Marcellus Breach</u> propounds the following deposition upon written questions to be answered under oath by witness Diana Lott, nurse administrator:

*INTRODUCTORY STATEMENT BY PLAINTIFF:*

This matter cause is before the United States District Court for the Middle District of Alabama. Cause of action titled: Marcellus Breach vs. Prison Health Services, Inc., et al., The Honorable Magistrate Judge Terry F. Moorer presiding. This cause comes from Order entered on **November 14, 2007, Court Doc. 234 – 1,** Order granting plaintiff Marcellus Breach leave to pursue depositions upon written questions propounded upon

1

Dr. John A. Tassin, M.D., and Diana Lott, Nurse Administrator for South Louisiana Correctional Services, Inc.

For the Record there are two Exhibits labeled as Plaintiff's **Exhibit "A", "B",** as attached which are LCS Corrections Services, Inc., medical records of the plaintiff while he was in custody from March 16 2006 till October 6, 2006 in Louisiana. The Medical Records are authentic under <u>Rule 801(b)(2)</u> and <u>Rule 803(8) et seq.</u>, of *Federal Rules of Evidence* as "<u>Business Records</u>" and plaintiff has entered same into the Court as evidence **Exhibits "D", "E",** with a *"Certification of Documents"* on **pages 52, 53, 54** under Medical Records to plaintiff's **"Renewed --- Application for Temporary Restraining Order/Request an Immediate Hearing at the Earliest Possible Time and Supplemental Application of Plaintiff's motion, [Court Doc. 84 – 1, Order]** of the Record in this case. Furthermore, in reference to Case No: 00067886-B Evangeline Parish, State of Louisiana in which that case has been resolved: these medical records were supplied and delivered by counsel being the Honorable Chris Edwards, the Officer over this proceeding who is requested to verify that the two attached documents are the medical records of the plaintiff.

Mr. Edwards would you please for the Record state that these two medical documents are true and accurately depict the medical records are authentic copy of the plaintiff's prison medical records for the period from March 2006 to October 6, 2006.

2

Thank you. Now I request to proceed forward with this deposition upon Ms. Diana Lott, nurse administrator for LCS Corrections Services, Inc.

1. What is your name and address of employment?

   a. Please state the name and address of your employer and the nature of your employment and the length of time you were employed by such employer.

2. What are your job duties, title and responsibility?

3. How long have you been a Registered Nurse or as the case may be?

4. What school or college did you attend in receiving your degree or training to become a Registered Nurse? In connection with each such school or college, please state whether or not you graduated and, if so, the date of your graduation and the type of degree you received.

4. How long have you been employed at South Louisiana Correctional Services?

5. Were you employed from March 16, 2006 through October 6, 2006 with South Louisiana Correctional Services and were you the nurse administrator?

6. Are you presently employed as nurse administrator or a nurse in any capacity? If so, is it South Louisiana Correctional Services?

7. Please give the nature of your duties you perform in the course of your employment.

8. Ms. Lott, I am going to ask you some questions and your answer is very important to developing the truth in this case. This case is involves medical treatment to an

3

inguinal hernia that I suffer, which is I am the Plaintiff in this case. My name is Marcellus Breach. I was one of the 500 Alabama Department of Corrections inmates who were transferred to South Louisiana Correctional Services in March of 2006. I am one of the limited numbers of inmates who were housed at South Louisiana Correctional Services in Basile, Louisiana. Ms. Lott, I have attached for your review two documents that I will be label for identification purposes as **PLAINTIFF'S Exhibit "A"** which will reflect that the document reflects medical records from "**LCS CORRECTIONS SERVICES, INC., DOCTOR'S ORDER SHEET.**" Offender Name: Breach, Marcelus DOC# AL 160710 as to the first page, Next, is **Plaintiff's Exhibit "B"**, that will reflect medical records from "**LCS CORRECTIONS SERVICES, INC. NURSE'S NOTES**": **Facility SLCC, Offender: Breach, Marcelus, Offender #: A160710.**

9. Do these medical records look familiar to you?

    a. If no, please state in detail why?

    b. It is you personal information, belief and knowledge that you can you say that you did everything possible to assure that plaintiff received necessary medical treatment while at South Louisiana Correctional Services regarding his hernia and pain, but that your hands were tide because of some kind involvement of ADOC, a policy, procedures prevented plaintiff from receiving his surgery while he was at LCS?

10. I am asking that you have your copy of my medical records from South Louisiana Correctional Services, in your possession at this time, during this deposition. I am asking that you identify the medical records being the two **LCS CORRECTIONS SERVICES**

4

**INC., DOCTOR'S ORDER SHEET AND NURSES NOTES** on the Record that I am labeling as **Exhibits "A""B"** and are attached with this deposition.

    a.    Does Exhibits "A, B" accurately depict the medical services and treatment proscribed to plaintiff while he was in custody at LCS medical providers and that these two documents are true and correct as being authentic being that of the medical records from South Louisiana Correctional Services labeled as LCS CORRECTIONS SERVICES, INC., NURSE'S NOTES AND DOCTORS ORDERS SHEET, OFFENDER NAME, BREACH MARCELUS, DOC# 160710, FACILITY SLCC?

11. I am asking that you quote unto the record and identify the written substance of the hand written note on dates: 3/21/06, 4/12/06 and 7/18/06 of Plaintiff's *Exhibit "A"* of the **LSC, CORRECTIONS SERVICES, INC., DOCTOR'S ORDERS SHEET.**

12. Would you please identify the substance of the hand written notes on Plaintiff's **Exhibit "B"** of the **LCS, CORRECTIONS SERVICES, INC., NURSE'S NOTES**, specifically dates 7/12/06, 7/10/06, 7/12/06, which has a slash through 7/12/07 with the date 7/17/06 and 7/17/06, 7/18/06.

13. Ms. Lott, Plaintiff's **Exhibit "B"**, reflects that on 7/17/06 @ 4:25 p.m., plaintiff was examined by you regarding his complaints of pain and request for surgery for his hernia is that correct?

14. Also, what is also reflected on the medical records plaintiff's **Exhibit "B"**, is that on 7/12/06 you noted that: **"Received a call from Brandon from Alabama re' Inguinal Hernia – Stated Hernia repair are not done there – unless incarcerated or into**

5

**scrotum**." You noted this incident on the medical records, would you please first tell the Court who is Brandon?

    a.    Can you tell me why Brandon calls you on that date regarding plaintiff's hernia and surgery?

    b.    Can you identify the caller as Brandon Kindard, manager of Health Services, for Alabama Dept. of Corrections?

    c.    And your reasons why you noted on the medical records of this call from Brandon?

    d.    Was you or anyone at LCS trying to provide plaintiff with surgery for his hernia at that time

    e.    Please tell the Court the substance of this conversation between you and Brandon?

    f.    Please tell the Court you knowledge, information and belief why ADOC had to be notified as to plaintiff's request for surgery?

    g.    From March 16, 2006 through October 6, 2006, were you acting as a medical provider to the Alabama Department of Corrections for Alabama inmates housed at Basile, LA?

    h.    As a medical provider, how were any orders or recommendations carried out through you and ADOC?

    i.    How many doctor recommendations do you have knowledge of regarding hernia treatment were denied approval for surgery by ADOC since LCS received Alabama inmates including women?

15. Ms. Lott, please tell the Court everything you know regarding every attempt made by you in assisting the plaintiff receive his surgery while he was in Louisiana.

16. Ms. Lott what roles did Brandon play in this incident?

    a. What role did Ruth Naglich have regarding surgery requests for plaintiff or any other inmate that you have knowledge of?

    b. Do you know of any other persons at ADOC who had any involvement in plaintiff medical treatment regarding his hernia? If yes, please explain and give details.

17. What procedures did you have to follow with the Alabama Department of Corrections and I will refer to the department as ADOC throughout this deposition for any Alabama inmate to receive surgery or outside medical attention while he was at Louisiana.

18. Was the ADOC overall authority for any approval for surgery for plaintiff's hernia?

19. In order for Marcellus Breach to receive surgery while he was in custody of SLCS, did his hernia have to be incarcerated or into the scrotum to be surgically repair being that he was an ADOC inmate?

    a. If yes, please explain why?

20. Was the ADOC responsible for paying for hernia repair for their inmates?

    a. Do you the name of the person responsible for approval of costs while plaintiff was in Louisiana.

21.     Please tell the Court what procedures you followed regarding approval of surgery for plaintiff involving the Alabama Department of Corrections; please give names of any person involved in any decisions regarding this treatment.

22.     Were there any ADOC protocols involved that stated to your knowledge that Plaintiff's hernia must be incarcerated or, in danger of being incarcerated before surgically necessary? If yes, who if you know was in charge of that protocol?

23.     Have you seen this protocol or any protocols by the Alabama Dept of Corrections regarding the treatment to hernias for Alabama inmates? If yes, please tell the Court the substance and your information regarding such. If no, please tell the Court any information that you know about any procedures, policies, and protocols, regulations that you followed regarding ADOC inmates who needed surgery.

24.     Ms. Lott, the nurse's notes, plaintiff's **Exhibit "B"**, reflect that on "7/10/06 a fax report was sent to Ruth Naglich in reference to inguinal hernia, inmate requesting repair & is filing a lawsuit to have surgery done". Please tell the Court your information about this fax report.

    a.     Please submit this fax report into the record an Exhibit.

25.[1]    I am going to ask you as you look at your copy of the medical records and please attach [if available] and we will mark it as Plaintiff's **Exhibit "_____"**, the actual fax report sent to Ruth Naglich on 7/10/06. Will you please tell the Court what this

---

[1] Plaintiff is requesting that Ms. Lott attach her copy of the Fax report that she is being deposed of as an Exhibit. If not available, please state on the record the reasons why, and name any person who has custody, control and possession of this fax report.

8

documents states as you attach it into the record. I am asking Attorney Chris Edwards to please state on the record for identification purposes this document. This document being the fax report is noted on the Nurse's Notes Plaintiff's **Exhibit "B"** for 7/10/06.

26.   Ms. Lott, upon this fax report being sent to Ruth Naglich please tell the court what happen next.

27.   Ms. Lott, your notes on 7/12/06 state that "Subject placed on sick call for 7/18/06 to see if he needs a referral to a surgeon." Please explain why plaintiff was placed on sick call to see if a referral to a surgeon was necessary?

    a.   is a surgeon the proper expert to make surgical recommendations regarding hernia repair before the hernia is incarcerated or into the scrotum?

28.   On 7/12/06 records reflect that Brandon called you with instructions that hernia repair is not done there unless the hernia is incarcerated or into the scrotum. On 7/18/06, you noted that plaintiff was placed on sick call to see if a referral was necessary to a surgeon. On 7/18/06 **Exhibit "A"**, Dr. Tassin noted that "inguinal hernia, not incarcerated, elective procedures." Is it fair to say, that you did all possible to have plaintiff receive surgery, but you were instructed that surgery was not done there unless the hernia was incarcerated or into the scrotum by Brandon from ADOC?

29.   Is it fair to say, that Dr. Tassin examined the plaintiff again after Brandon called on 7/12/06 to see if plaintiff's hernia was incarcerated or into the scrotum on 7/18/06?

30.   On 7/18/06 Dr. Tassin notes that plaintiff's hernia is not incarcerated?

31. So, can you say that based on the medical records, ADOC and Brandon were actually involved in the medical decisions of the plaintiff regarding hernia repair?

32. And on 7/18/06 Dr. Tassin made no new orders regarding plaintiff's hernia.

33. Ms. Lott, **Exhibit "A"** reflects that on 3/21/06 Dr. Tassin stated that plaintiff's hernia needs repair with a question mark behind it. Do you have any knowledge as to how the questioning medical investigation and his needs repair recommendation was followed before ADOC and Brandon got involved? If yes, please tell us, from A to Z, how anyone person at ADOC, Brandon, Ruth Naglich, were involved in this case.

34. Ms. Lott, Dr. Tassin told me on 3/21/06 "**there is nothing that I can give you for your pain, you need surgery**". Would that explain why plaintiff did not receive any pain medication or a truss while at LCS because there is not treatment for a hernia, surgery is the cure?

36. Ms. Lott, since Brandon called you with instructions that hernia repair not done there unless the hernia is incarcerated or into the scrotum: please tell the court why plaintiff did not receive surgery while he was in Louisiana

37. Is it your testimony, that plaintiff would have had surgery, but the ADOC would not allow it unless the hernia was incarcerated or into the scrotum.

38. Ms. Lott, in your capacity in the medical field and as ADOC's medical provider at LCS, for Alabama inmates and you are a nurse: is proscribing Motrin 600 mg., and a truss for a Hernia the size of a "Soft Ball" that is causing the patient pain, pain coughing,

sneezing, and having bowel movements and the hernia getting trapped; considered treatment?

39. Ms. Lott, as a nurse, can you tell the Court based on your knowledge, experience as a nurse, that the treatment for a hernia is surgery.

40. Ms. Lott, if ADOC had of approved costs to cover surgery for the plaintiff would he had of had his surgery while in Louisiana?

41. Ms. Lott can a hernia heal on its own?

42. Ms. Lott, does a hernia get better?

43. Ms. Lott, as a witness in this case, and as a nurse, can you say that the waiting until a hernia is incarcerated or into the scrotum is dangerous to the patient?

44. Ms. Lott can you say that it was a routine practice for ADOC to deny Alabama inmates surgery for there hernias that were not incarcerated at LCS since the time Alabama inmates were transferred there to the time they left?

45. Ms. Lott in the matter of an Alabama Inmate named James Reagan who had problems with his fingers in both hands. Several Alabama doctors, including Dr. Tassin recommended that Mr. Reagan undergo corrective surgery that was elective while he was an Alabama inmate at LCS. At a hearing on an application for preliminary hearing at Evangeline Parish, Louisiana the District Court Honorable Thomas Fuselier heard testimony from Dr. Tassin and then ordered surgery. Do you recall any LCS grievance or any other information that Mr. James Reagan filed, which can attest, or corroborate that

11

the answer on the grievance was from Ruth Naglich for ADOC denied surgery request to LCS and stating that his condition would only recur? Nurse Maxie answered this grievance with ADOC's response. Do you have any information regarding this request for approval of surgery to ADOC and any answers being denied by ADOC?

45. Ms. Lott, if there is anything other information that has been overlooked, or any other information that you can share with us today regarding this case? If so, please do so at this time.

46. Please tell the Court of any names of any person who you know have relevant information regarding this case.

46. Please attach into the Record the LCS Corrections Services, Inc., Doctor's Order Sheet and Nurse's Notes and I request Chris Edwards to please properly mark and identify them as an exhibit.

I thank you for your time and attention today Ms. Lott; I have no other questions for you at this time.

Submitted By:

*/s/ Marcellus Breach*

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

12



## LCS CORRECTIONS SERVICES, INC.
### DOCTOR'S ORDERS SHEET

Offender Name: Breach, Marcelus    DOC#: AL160710

| Date / Time | Allergies: NKA |
|---|---|
| 3-21-06 | Hernia (L) Inguinal Hernia Needs repair? |
| | [signatures] M. Maye |
| 4/12/06 | IBP 400mg BID til dental Dr. Tassin / M. Maye |
| 7/18/06 | Not Pt has (L) Inguinal Hernia Incarcerated, Elective Procedure |
| | M. Maye |



EXHIBIT "B"

# LCS CORRECTIONS SERVICES, INC.
## Nurse's Notes

Facility: SLCC
Offender: Breach, Marcelus
Offender #: A160710

| Date/Time | Notations | Signature/Title |
|---|---|---|
| 3/20/06 | Intake screening complete c̄ L bunk profile, given @ ankle | M Mayo |
| 3.21.06 | Saw MD on r/o c̄ new orders | M Mayo |
| 4.12.06 | PSC done c̄ new orders | M Mayo |
| 6/02/06 | Scheduled to go to Dr. Perkins for dental work this date | M Mayo |
| 6/2/06 | Returned c̄ no paperwork or new orders | M Mayo |
| 6/8/06 | Trip papers made for Dr. Wood on 6/13/06 | M Duggan |
| 6/13/06 | Returned c̄ NNO; return for f/u | M Mayo |
| 6/28/06 | Trip papers made for Dr. Perkins on 6/30/06 | M Duggan |
| 6.30.06 | Cancelled Dr. Perkins due to limited appt x 20 inmates | M Mayo |
| 7.12.06 | Received a call from Brander from Alabama re: Inguinal Hernia - Stated Hernia Repairs are not done there - unless incarcerated or into scrotum. This subject has not c̄ hernia since seen by Dr. Tassin 3.31.06 - Subject placed on sick call for 7.18.06 to see if he needs a referral to a surgeon | D Lott |
| 7/10.06 | We faxed report to Ruth Naglich in reference to inguinal hernia inmate requesting repair & is filing a lawsuit to have surgery done | M Mayo |
| 7.12.06 | 9:40 AM - Phone call received from Lynn Brown and she will return call on previous day on 7/10/06; awaiting return call for follow up | M Mayo |
| 7.17.06 | 4:25 PM Brought to medical - Left inguinal hernia easily reducible - no c/o pain | D Lott |
| 7.18.06 | Saw Dr. Tassin & no change in hernia & no new orders given | M Mayo |