## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MARCELLUS BREACH, #160710

     Plaintiff,

Vs.

PRISON HEALTH SERVICES, INC., et. al.,

     Defendants.

CASE NO: 2:06-cv-1133-MEF

### APPLICATION FOR TEMPORARY RESTRAINING ORDER and/or PRELIMINARY INJUNCTION

[1]Pursuant to _Rule 65(a)& (b),_ Fed.R.Civ.P., plaintiff _Marcellus Breach_ (hereinafter "Breach") in proper person "Pro Se," moves this Court to issue a "temporary restraining order" immediately, and/or order to "show cause" to an application for a Preliminary Injunction upon the Alabama Department of Corrections, Warden Billy Mitchem, Officer Wade Davis Maintenance; and Correctional Medical Services, Prison Health Services, Inc., on the grave issue demonstrating global retaliation/ corporal punishment practices that unjustifiably obstruct the availability of humane conditions, threat to good health, interfering with medical treatment proscribed, refusing carrying out medical recommendations and other aspects of the right to be free from inhumane conditions and practices as invalid: In further support plaintiff shows as follows:

---

[1] Attached Affidavit Marcellus Breach, Exhibit "A", Exhibit "B" Affidavit Denver Holloway, Exhibit "C" Patrick Charest, and Exhibit "D", Affidavit Willie Lee White

## INTRODUCTION

Defendants have imposed conditions resulting to retaliation, unfavorable treatment serious discomfort and poses a serious threat to the heath and safety of plaintiff and other inmates. This condition is so bad plaintiff has "frostbites, hypothermia or a similar affection" is certain and imminent to occur.

The United States Supreme Court established in *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed. 2d 811 (1994)("prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates".) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S.Ct. 3194, 82 L.Ed. 2d 393 (1984)).

Since **Robinson v. California**, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962), the prohibition against cruel and unusual punishment has been applicable to the states through the due process clause of the fourteenth amendment. Although plaintiff realizes that federal courts have traditionally been reluctant to intervene in matters of prison discipline, they must, nonetheless, recognize their duty to adjudicate claims of cruel and unusual punishment when properly raised. Indeed, in the words of Mr. Justice Blackmun, writing as a circuit judge for the Eighth Circuit in *Jackson v. Bishop*, 404 F.2d 571, at 577, a class action brought under 1983: ". . . the courts, including this one, have not hesitated to entertain petitions asserting violations of fundamental rights and, where indicated to grant relief. In *Glenn v. Ciccone*, . . this court clearly indicated that 'a factual

showing of cruel and unusual punishment in violation of the Eighth Amendment' would support interference by a federal court. 370 F.2d [361] at 363. We have made a like statement in many other cases. *Carey v. Settle*, 351 F.2d 483, 485 (8th Cir. 1965); *Haynes v. Harris,* 344 F.2d 463, 466 (8th Cir. 1965); *Harris v. Settle*, 322 F.2d 908, 910 (8 Cir. 1963), cert. denied, <u>377 U.S. 910</u>, 84 S. Ct. 1171, <u>12 L. Ed. 2d 179</u>. Although the Eighth Circuit cases just cited concern a federal institution, *the principle, of course, has equal application to a state penitentiary.* **Wright v. McMann**; 387 F.2d [519] at 522 (2nd Cir. 1967); Howard v. Smyth, 365 F.2d 428 (4th Cir. 1966), cert. denied, <u>385 U.S. 988</u>, 87 S. Ct. 599, <u>17 L. Ed. 2d 449</u>. (emphasis added)

Plaintiff *Marcellus Breach* is a prisoner has filed this Civil Rights § 1983 action against the defendants on Eighth Amendment grounds of denial of adequate medical care regarding his inguinal hernia. Plaintiff's grave issue in this case is that defendants have intentional inflicted plaintiff to endure pain and suffering from an untreated hernia due to a de facto policy that is proximate cause to injury, pain and suffering and his health to deteriorate, resulting into pain, problems coughing, sneezing, bowel movements, standing, urinating, back pain, anxiety, depression, fear and the hernia at times tries to get 'trapped'. Plaintiff has presented evidence and public information establishing that medically it is known that a hernia <u>cannot</u> be treated; the only treatment is 'surgery'. Plaintiff has requested Declaratory and Injunctive Relief that the Court order defendants to provide surgery. Since the filing of this lawsuit, plaintiff has complained

about a pattern in which the medical providers refused during a period of five (5) months screening plaintiff's sick call requests, left plaintiff without pain medication for his hernia. Plaintiff is going on eight months without being seen by a doctor. On *December 5, 2007* plaintiff was screened by LPN Celvin Atkins at sick call and was told that a doctor would see him and a urinalysis would be performed. Plaintiff alleges that medical defendants are interfering with medical orders or recommendations that are necessary and proscribed. Plaintiff is still having urinating straining problems from the result of his untreated hernia. Plaintiff has been denied or gratuitously delayed access to recommended urinalysis and examination by a doctor. Furthermore, defendants refuse to provide prisoners and plaintiff with <u>basic heat</u> at the law library is a form of retaliation, unfavorable treatment and continues to forbid the Constitution subjecting plaintiff and other inmates to deplorable conditions that jeopardize the health of plaintiff and other inmates is cruel and unusual as a result of this litigation.

### GROUNDS IN SUPPORT / GLOBAL RETALIATION

(1)   *Defendants are subjecting plaintiff to freezing conditions that are cruel and unusual and is proximate to further sickness, catching colds, flu, deliberately and intentionally that of "no heat" at the law library, freezing temperatures; subjects plaintiff to an <u>icebox</u> access to the courts working, researching area and subjects plaintiff to increased sickness, continued coughing, sneezing that worsens and aggravates his hernia, causing enlargement, progression due to freezing conditions without "heat" leading to his health to deteriorate; hernia enlargement.* [1]

---

[1] **Plaintiff is not sure what exactly "a risk of needless pain" is, or even if such a notion applies to Eighth Amendment deliberate indifference claims. Arguably, all pain beyond what is necessary to keep the mind cognizant of an untreated ailment is "needless". Plaintiff hasn't seen a doctor in eighth months, went five months of repeated request slips for sick call that went ignored. This is not dissatisfaction**

(2)    *Defendants are interfering with medical treatment once proscribed by a physician mandating treatment and will not allow plaintiff to be seen by a doctor, carrying out medical orders/ recommendations for a doctors attention, urinalyses due to straining with his hernia.*

**Preliminary Statement:**

*Federal Court involvement is warranted in this case as the case of **Smith v. Sullivan**,* 553 F.2d 373, 380 (5th Cir. 1977) (federal court's involvement occurs only when there are **extreme temperatures that are injurious to an inmate's health**).    Courts have condemned prison conditions that fail to supply inmates with sufficient heat. See, e.g., *Mitchell v. Maynard*, 80 F. 3d 1433, 34 Fed. R. Serv. 3d 1018 (10th Cir. 1986); *Del Raine v. Williford*, 32 F.3d 1024, 29 Fed.R.Serv. 3d 1370 (7th Cir. 1994)(collecting cases); *Henderson v. DeRobertis*, 940 F.2d 1055 (7th Cir. 1991)(holding that the right to adequate heat is premised on the notion that "constitutional rights don't come and go with the weather"); *Ramos v. Lamm*, 639 F.2d 559, 572 (10th Cir. 1980)(holding lack of heating to be constitutional violation) The reason for this is that extreme temperatures or insufficient ventilation "undermines the health of [plaintiff and] inmates" and likelihood of disease as well as frustration brought on by uncomfortable temperatures and odors". *Tillery v. Owens,* 719 F. Supp. 1256 (W.D.Pa. 1989), order aff'd 907 F.2d 418 (3d. Cir. 1990); See, e.g, *Wright v. McMann*, 460 F.2d 126, 129 (2d. Cir. 1972)(finding an inmate was placed in a

---

with a course of proscribed treatment, but is, so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggrieve plaintiff's condition. See, *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974), vacated and remanded on other grounds sub nom. *Cannon v. Thomas*, 419 U.S. 813, 95 S.Ct. 288, 42 L.Ed. 2d 39 (1974).

cell naked without bedding in temperatures that were "sufficiently cold to cause extreme discomfort.")

The First Amendment forbids state officials from retaliating against inmates for exercising the right of free speech. *See Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989). The plaintiffs claim that the no heat and no ventilation at [this facility], in tandem with the no heat, "**icebox surrounding**" **freezing**, rises to the level of a constitutional violation. In determining the adequacy of ventilation, the court may consider temperature. *Chandler v. Baird*, 926 F.2d 1057, 1064-66 (11th Cir. 1991) (cold temperatures causing "**extreme discomfort**" could constitute an Eighth Amendment violation). Specifically, the court may consider the cold inmates must endure and the defendants' responses to the cold temperatures.

As noted earlier, defendants have orchestrated a global retaliation system -- ongoing and is affecting plaintiff's health and aggravating his hernia. After the Filing of this lawsuit there is a retaliatory unfavorable treatment regarding medical and heating problems at the law library that is almost non-existent. **This judge ought to witness the cold air being blown out of the unit and window at the law library at Limestone prison.** There is no heat, but there is a heating unit that Warden Mitchem has yet, or refuses to have repaired or allocate funds necessary to properly repair the heating unite. Based on the evidence, the defendants have no plans to repair or replace the unit,

despite projected **freezing temperatures within the next few days**. See also, *Cooper v Pickens County*, 955 F.Supp. 1390, 1392 (N.D. Ala.1997).

Plaintiff like other prisoners file petitions for either Habeas Corpus, Rule 32 petitions (post convictions remedy) or lawsuits concerning constitutional issues. However, since this lawsuit has been filed against Defendants regarding Hernia treatment. Both medical and ADOC defendants have globally retaliated in an informal method through means of: refusing to screen sick calls regarding hernias and plaintiff's requests for medical treatment regarding his pain and currently refuse to carry out medical recommendation proscribed by LPN nurse Celvin Atkins, i.e., examination by a doctor and testing. ADOC, refusal to provide adequate heat at the law library is causing plaintiff and others to develop health problems, i.e., sickness, colds, flu, other related sicknesses.

To state a retaliation claim, a prisoner must establish that (1) his speech or act was constitutionally protected; (2) the defendant's retaliatory conduct would likely deter a person of ordinary firmness from engaging in protected speech; and (3) there is a causal connection between the retaliatory actions and the adverse effect on speech. *Akins v. Perdue*, No. 06-12689, 204 Fed. Appx. 839, 2006 U.S. App. LEXIS 27537, 2006 WL 3199418, at *4 (11th Cir. Nov. 6, 2006). An inmate may establish retaliation by demonstrating that the official's actions were the result of his having filed a lawsuit or administrative grievance concerning his imprisonment. See *Wildberger v. Bracknell*, 869 F.2d 1467, 1468

(11th Cir. 1989). The First Amendment also protects an inmate who engages in protected activity on behalf of others. *See Adams v. James*, 784 F.2d 1077, 1081 (11th Cir. 1986). A prisoner can establish retaliation by demonstrating that the prison officials' actions were "the result of his having filed a grievance [or lawsuits] concerning the conditions of his imprisonment." *Id.* Plaintiff does contend that Defendants are underhandedly retaliating against him and other prisoners at the law library by not providing them "basic heat" as a result of his having filed grievances and this lawsuit on previous occasions, or as a result of any other exercise of his constitutionally protected rights.

## POINT "A"
### INJURY IN FACT STANDARD

Until a full adjudication on the merits of this action, plaintiff has a serious medical need and an injury that cannot and will not heal on its own. As a result of the defendants actions, his injury has only become worse: hernias only get worse, and the facts in this case is the plaintiff is still suffering with severe pain, pain when coughing, sneezing, bowel movements, straining when urinating, lower back pain at times, having to push his hernia in when coughing, sneezing and has to lift his left leg when doing these normal human functions.

It is medically known that plaintiff's hernia will become strangulated and incarcerated at <u>any time</u>. The immediately relief plaintiff is requesting is that this Court immediately intervene and stop the hierarchy of the ADOC from their malevolent wishes, and malignly intentions that are inimical; and, the immediate threat to plaintiff's

8

health; wherein, the defendants malfeasance is designed to interfere, harass, impede, obstruct, encumber both plaintiff's health, and access to the courts through intentionally subjecting plaintiff to cruel and unusual punishment, i.e., no heat. Furthermore, the First Amendment "prohibits state officials from retaliating against prisoners for exercising the right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1241 (11th Cir. 1989). To state a retaliation claim, "a prisoner need not allege violation of a separate and distinct constitutional right." *Id.* at 1242. [2]Rather, he need only allege "his discipline was the result of his having filed a grievance concerning the conditions of his imprisonment." *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989). "[T]he gist of a retaliation claim is that a prisoner [was] penalized for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1249 (11th Cir. 2003).

Plaintiff has a "serious medical need" and he is currently being denied further treatment based on recommendations of medical staff to be examined by a doctor, and additional testing. However, because of this lawsuit, retaliation is taken form in a manner of refusal to continue medical care, and subject conditions that is harassment to access to the courts. The United States Supreme Court held that in order to satisfy the "injury in fact" requirement of standing, a plaintiff need not wait for an injury to occur. An allegation of future injury satisfies this prong of standing so long as the alleged injury is "imminent" or "real and immediate" and not merely "conjectural" or "hypothetical".

---

[2] Defendants' refusal to provide basic heat at the law library is punishment, and is attempted to discourage plaintiff and other from exercising their Constitutional rights.

See, *Lwan*, 504 U.S. @ 560, 112 S.Ct. @ 2136; *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S.Ct. 1160, 1165, 75 L.Ed. 2d 675 (1983). "An injury is imminent if it is likely to occur, and likely to do so immediately." *Luyan*, 504 U.S. @ 560, 112 S.Ct. @ 2136; *31 Foster Children v. Bush*, 329 F.3d @ 1265 (11th Cir. 2003). Evidence is already before this Court regarding plaintiff has pain due to his hernia and that for almost three years, defendants has basically allowed him to suffer this pain without adequate remedy, which is surgery.

Moreover, the Fifth Circuit Court of Appeals held in *Campbell v. Beto*, 460 F.2d 765, 768 (5th Cir. 1972) reaffirmed this discussion in *Novak* as follows: ". . . it is apparent that the <u>courts cannot close their judicial eyes</u> to prison conditions which present a grave and immediate threat to health or physical well being. *Haines v. Kerner*, *supra*, [1972, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652]; *Woolsey v. Beto*, 5 Cir. 1971, 450 F.2d 321; *Rocha v. Sowers*, 5 Cir. 1972, 454 F.2d 1155; *Jackson v. Bishop*, 8 Cir., 1968, 404 F.2d 571; *Novak v. Beto*, 5 Cir., 1971, 453 F.2d 661, 665, rehearing en banc denied, 1972, 456 F.2d 1303. If the 'deprivation of basic elements of hygiene' has consistently been held violative of constitutional guarantees (see *Novak, supra*, 453 F.2d at 665), then *certainly* practices which result in the deprivation of basic elements of adequate medical treatment, particularly such deprivation as immediately threatens life and limb, would be equally vulnerable." (Emphasis supplied).

Thus the adequacy of conditions of confinement of prisons -- such as medical treatment, hygienic materials, and physical facilities -- is clearly subject to Eighth Amendment scrutiny.

In contrast to the factual situation in *Novak,* this case involves conditions and practices that clearly threaten the health and well-being of the prison community and substantially deprive inmates of basic elements of hygiene and adequate medical treatment.    There is substantial evidence that the prison authorities had clearly abused their discretion in failing to provide heat at a prison facility.

## *ISSUE NO. 1*

A.    ***The plaintiff is threatened with irreparable harm:***

Plaintiff hasn't seen a doctor in eight (8) months. Plaintiff went five (5) months without being seen by medical.  This is a pattern established since defendant Dr. William Hobbs, M.D., was added as a defendant to this complaint, plaintiff suffered for approximately five (5) months without being seen by medical based on complaints of having pain, hernia progressing, burning pain and running out of pain medication. [*See, Court Doc. 128, & 129-1 Order, and 134*].

On or about *August 14, 2007* plaintiff filed a document entitled: ***Motion in Request Leave to File an Addendum to the Attached Exhibits to the Renewed Application for Preliminary Injunction'*** [**Doc No. 121**].  Plaintiff demonstrates a pattern developing regarding the medical defendants due to plaintiff's filing of this lawsuit, Dr. William Hobbs, M.D., added as a defendant. [**Doc No. 93**].

[3]*Court Doc No. 118*, "**Addendum to the Renewed Application for Preliminary Injunction**" *April 30, 2007* was the last date that plaintiff was seen by a doctor concerning his complaints regarding his hernia. Plaintiff ran out of pain medication on or about *July 27, 2007.* On *June 15, 2007* plaintiff submitted a sick call request complaining about pain due to his hernia: no response was given. On *June 30, 2007* plaintiff submitted another sick call request complaining about having problems coughing, sneezing due to his hernia. No response was given. On *July 3, 2007* plaintiff submitted another sick call request complaining about pain. No response was given. Only *July 14, 2007* plaintiff submitted an "Inmate Grievance/Appeal" and a sick call questioning why no medical attention. The medical defendants provided no answer. On *August 1, 2007* plaintiff filed another grievance and sick call about the same problems. No response. On *August 6, 2007* plaintiff submitted another sick call request [*See, Attached Exhibit No. 1, Court Doc. 134]* stating: "I've run out of pain medication. I've put several sick calls request in. My hernia is burning, getting worse." May the Court take notice to the Record to *Court Doc. 154-1, 159* Order, the medical defendants requested sanctions, accused plaintiff of lying. [*See, Court Doc. 146, 158, 159-1*]

Finally, after bring this matter to the attention of this Court. [*Court Doc. Order 129-1, September 4, 2007*] the Court order the medical defendants to file a response

---

[3] **Plaintiff reflects his Exhibits in support of this request to the Record in prior application for preliminary injunctions that shows a pattern of repeated sick call request, no doctor, now still plaintiff can't be seen by a doctor, nor received recommended treatment and testing being that of a urinalysis due to hernia and this lawsuit.**

regarding plaintiff's claim that they have ignored his request for medical treatment in retaliation for his filing this lawsuit.  Then, defendants attempted to cover up this retaliation, and on or about _October 5, 2007_ plaintiff was seen based on another sick call complaint about his hernia, and running out of pain medication.  LPN, Celvin Atkins, who noted plaintiff _was wearing his truss and proscribed more Motrin,_ saw plaintiff.  Atkins noted plaintiff requested surgery.  On or about _December 5, 2007_ LPN Celvin Atkins pertaining to a sick call complaining about pain, problems and that his hernia is progressing, again saw plaintiff.  LPN Atkins noted and recommended that plaintiff be seen by a physician and also ordered urinalysis.  Plaintiff complained of having to strain urinating.  Plaintiff complained of having a cold, flu and cold medication was proscribed for 14-days.  _Plaintiff has been going to pill call, taking his medication for his cold._ Plaintiff _has not seen a doctor, nor had any urinalysis_ performed regarding urinating straining because of this hernia.  Plaintiff states that he requested in _October 2007_ to be seen by Dr. Hobbs, and also _December 5, 2007_ to be seen by a doctor.  Defendants will not allow plaintiff to see a doctor.  An LPN is not qualified in the area of plaintiff's symptoms regarding his hernia to make any recommendations regarding surgery, only a doctor.  See, [**_Court Doc. 279 Motion Independent Physical Examination attached Affidavits of Willie King, RN, MSN_**]

## POINT "A'

## DEFENDANTS ACTIONS FORM THAT OF RETALIATION REGARDING MEDICAL TREATMENT THROUGH ACTS OF IMPEDING PLAINTIFF FROM SEEING A DOCTOR, FURTHER TESTING AND CARRYING OUT MEDICAL ORDERS,

As to irreparable harm, plaintiff argues not only are constitutional interests are being impaired or threatened, and that in this case there is a great presumption of irreparable harm to plaintiff. *Elrod v. Burn*, 427 U.S. 347, 96 S.Ct. 2673, 2647 49 L.Ed. 2d 547 (1976).

This issue is concerning plaintiff's health deteriorating. Plaintiff has not seen a doctor in eight (8) months. Morethanless, for five (5) months plaintiff's sick call request and grievances went ignored. Defendants are intentionally interfering with medical orders by not allowing plaintiff to be seen by a doctor regarding his medical complaints of pain due to his hernia, and refusing to carry out medical orders (urinalysis testing) is leaving plaintiff without medical attention. LPN, Atkins on *December 5, 2007* told plaintiff that he was noting and recommending that plaintiff see a doctor and have a urinalysis conducted regarding, straining urinating. Nothing has happened, is the same pattern of the five (5) months complained that plaintiff was denied any medical attention based on several sick call request to be seen and complaints that plaintiff ran out of pain medication, demonstrates retaliation.

## POINT "B"

### DEFENDANTS ARE RETALIATING BY WAY OF THEIR REFUSAL TO FIX and/or PROVIDE "HEAT " AT THE LAW LIBRARY IN ICEBOX TEMPERATURES IS CRUEL AND UNUSUAL PUNISHMENT SUBJECTING PLAINTIFF TO SICKNESS

*Interference, Punishment and Retaliation "No Heat, No Doctor, No Urinalysis":*

Because the Constitution protects an inmate's access to the courts, prison officials may not retaliate against those who seek or obtain such access—whether the retaliation takes the form of withholding property or privileges does not matter. Such actions as this: **refusal to provide heat after litigation has been filed to force plaintiff and other prisoners to suffer in icebox temperatures is harassment, and retaliation being cruel and unusual punishment.** There is a heating unit, but prison officials will not fit it.

In addition, plaintiff and several prisoners have asked prison officials and Warden Billy Mitchem to fit or provide plaintiff and other prisoners **"heat"** at the law library. Warden Mitchem is fully aware of the cold temperatures, and aware of the fact that the heating unit needs to be repaired at the law library; but it is clear that he <u>refuses</u> to have the heat fixed.

Access to the Courts is a fundamental protected right. It is cold and freezing. Plaintiff as well as others spend long hours working on their cases, filing their petitions; but, for the freezing whether, plaintiff's fingers as cold and freezing, feet are cold and toes freezing, catching colds and the flu.

Because of this litigation, defendants have formed a global retaliation effort to harass, subject plaintiff to endure pain in freezing cold while working on his case and

15

leaving plaintiff as well as every other prisoners to work, research, study at the law library, perfect their filings in 'icebox' temperatures affects his health more vulnerable and unprotected to catching the flu, colds, coughing, sneezing, sickness in general. Upon information and belief, plaintiff has learned that Warden Mitchem has stated that he is not going to fix the heat in the law library. What is interesting, every other area in this prison at Limestone has heat. The Hobby Craft, Muslim's room, Chapel, Drug Treatment, the Gym. The law library is <u>freezing cold</u> and there is a heat system and it is demonstrated that the defendants' are forming retaliation by not provide necessary basic life necessities. The temperature at the law library is as a <u>"icebox"</u> and it is freezing and without heat the cold causes sickness and coughing <u>affects his hernia because each time he coughs he is putting pressure on the hernia causing it to come out, get larger</u> when the only treatment that will stop the hernia from getting worse is surgery. Plaintiff spends quite amount of time at the law library working on this case and defendants know plaintiff spends a great deal of time at the law library and knows there is no heat and have intentionally refused to provide heat.

To prove a violation of the Eighth Amendment, a prisoner must show that the alleged deprivation was objectively serious sufficient to be of constitutional concern, and that the prison official acted with a sufficiently culpable state of mind by knowing of and disregarding an excessive risk to the prisoner's health or safety. ***Farmer v. Brennan***, 511 U.S. 825, 834, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

*In James v Haley*, 200 U.S. District Lexis 11163 (S.D. Ala.2000) the District Court observe a situation identical to plaintiff's regarding no heat.  In *James,* the Plaintiff alleged that the air conditioning and heating unit broke in the summer of 1999 when the outside temperatures were above 100 degrees. Plaintiff complains that the temperatures in the masjid exceeded the outside temperatures and that Islamic services inside the masjid were canceled due to the unbearable temperatures in the masjid. Plaintiff contends that even though he has written the warden about the situation, he has received no response and the unit has not been fixed. Plaintiff maintains that during the following winter, the temperatures inside the masjid were so cold that Islamic inmates caught colds and the flu and, as a result, participation in the class declined. Plaintiff asserted that maintenance personnel have identified the piece or parts needed to repair the unit, but the **Alabama Department of Corrections ("ADOC")** has **refused to purchase the needed parts**. Plaintiff contended that ADOC violated the Islamic community's Eighth Amendment rights by subjecting them to cruel and unusual punishment, and he seeks to have the unit repaired and to have ADOC stop its discriminatory practices. Id.

In *Rhodes v. Chapman*, 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed. 2d 59 (1981), the Supreme Court provided standards to guide lower courts adjudicating whether prison conditions violate the eighth amendment's prohibition of cruel and unusual punishment. Prison conditions are unconstitutional if they constitute an "unnecessary and wanton" infliction of pain and are "totally without penological justification." Id. @ 346, 101 S.Ct. @

2399. The existence of merely "harsh" or "restrictive" prison conditions does not implicate the eighth amendment; as such conditions could be thought part of the penalty that criminals must pay, so courts must consider whether the deprivations alleged are of constitutional magnitude. Id. @ 347, 101 S.Ct. @ 2399. Applying _Rhodes_, Courts have held that "before pain of a constitutional magnitude can be said to exist, there must be evidence of a serious medical and emotional deterioration attributable to" the challenged condition. *Shrader v. White*, 761 F.2d 975, 979 (4th Cir. 1985); see *Sweet v. South Carolina Dep't of Corrections,* 529 F.2d 854, (4th Cir. 1975). Moreover, prison officials' "deliberate indifference" to conditions must cause the constitutional cognizable harm; negligence or good faith error causing such harm will not establish a constitutional claim. *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 184, 89 L.Ed. 2d 251 (1986)("It is obduracy and wantonness, not inadvertence or error in good faith, that characterizes the conduct prohibited by the Cruel and Unusual Punishment Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."). Broader considerations also inform the Supreme Court's eighth amendment jurisprudence. The Court has repeatedly affirmed the bedrock principle that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed. 2d 447 (1979); see *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed. 2d 64 (1987).

## ISSUE NO. 2

B.    *The balance of hardship favors the plaintiff:*

In deciding whether to grant TRO's and preliminary injunctions, courts ask whether the suffering of the moving party if the motion is denied will outweigh the suffering of the non-moving party if the motion is granted.

However, the granting of this preliminary injunction and/or temporary restraining order favors the plaintiff because; (i) the Court will stop the defendants from retaliation in regards to interfering with medical treatment, i.e., access to a doctor, carrying out medical orders and recommendations including urinalysis testing as ordered on December 5, 2007; (ii) protect the plaintiff and all prisoners' health by ordering defendants to fix or provide immediately "heat" at the law library as a basic human need.  In other words, ordering the defendants to do, what they are suppose to do without a Court order.

In this case, the exposure to excessive cold affects plaintiff's health.  It is causing plaintiff to catch colds after cold, flu after flu, resulting to excessive coughing, sneezing that affects his Hernia and causes it to come out and is getting more severe and progressive.  Secondly, defendants have impeded plaintiff from seeing a doctor over eighth (8) months as a result of this litigation, now they refuse to provide heat at the very area at the prison where plaintiff must research and prosecute this action. In **Wright v. McMann,** 387 F.2d 519 (2d Cir. 1967), the Court held that deliberate exposure of inmates

19

by prison authorities to bitter cold while in solitary confinement would be evidence of cruel and unusual punishment. The Court stated that "standards of humane decency simply do not <u>permit a man for a substantial period of time to be denuded and exposed to the bitter cold of winter in northern New York State</u> . . . ." 387 F.2d @ 526. Although plaintiff is not subjected to the same conditions as the prisoner in <u>*Wright*</u> --- for example, plaintiff is not in solitary confinement – this claim is still governing a man being exposed to substantial period of time to bitter cold winter temperatures at the law library when it takes hours of research to perfect his filings, while being subjected to the bitter cold without any heat which is a basic necessity.

"In analyzing a challenge to prison conditions based on the Eighth Amendment, a court should examine each challenged condition of confinement ... to determine whether that condition is compatible with the "<u>evolving standards of decency</u> that mark the progress of a maturing society.'" **Wright v. Rushen**, 642 F.2d 1129, 1133 (9th Cir. 1981)(quoting **Trop v. Dulles**, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed. 2d 630 (1958)(plurality opinion)).

Finally, defendants are impeding plaintiff's medical treatment forming retaliation; refuse to offer any heat at the law library is a global retaliation because they are breaking the Constitution. In <u>*Rhodes*</u>, the Court noted that prison conditions could be cruel and unusual when they "deprive inmates of the <u>minimal civilized measure of life's necessities,"</u> 452 U.S. @ 347, 101 S.Ct. @ 2399, or when they result in punishment that

"'involve the unnecessary and wanton infliction of pain' or are grossly disproportionate to the severity of the crime." Id. @ 346, 101 S.Ct. @ 2399 (citations omitted). The actions of the defendants are causing stress, depression, anxiety, sickness, and psychological problems to the plaintiff because they are retaliating.

C.    *The Plaintiff is likely to succeed on the merits:*

Prison officials who withhold or delay medical care in a manner, which is "tantamount to unnecessary and wanton infliction of pain", may be deliberately indifferent to a prisoner's needs. ***Brown v. Hughes,*** 894 F.2d 1533, 1537 (11th Cir. 1990) (quoting **Estelle,** 429 U.S. at 104); *see also* ***Farmer,*** U.S. at, 114 S. Ct. at 1977 (only unnecessary and wanton infliction of pain violates the Eighth Amendment).

The obvious intentions of the defendants is that they now refuse to continue to provide plaintiff with medical treatment that on *December 5, 2007* LPN Atkins told plaintiff he would see a doctor, and have a urinalysis conducted: but, defendants have decided to retaliate against him by not carrying out, or providing access to a doctor, and a urinalysis also, making his surrounding and conditions unbearable which poses a threat to good health. Plaintiff's hernia is "very painful " he is denied access to a doctor and further medical testing is humiliating and real frustrating, dehumanizing and cruel to allow plaintiff to be subjected to "icebox" temperatures at the law library when defendants refuse to fix the heat is a form to harass, frustrate by bitter winter temperatures. A prison official may be found deliberately indifferent where that official

knows of the need for medical care and intentionally refuses to provide such care. Prison officials who withhold or delay medical care in a manner which is tantamount to unnecessary and wanton infliction of pain may be deliberately indifferent to a prisoner's needs.

The form of retaliation is defendants are allowing plaintiff as well as prisoners who go to the law library to bitter cold winter conditions [without heat] can under certain circumstances state a claim under the Eighth or Fourteenth Amendment. *Chandler v. Crosby,* 379 F.3d 1278, 1294 (11th Cir. 2004). For there to be a violation of the Eighth Amendment constituting cruel and unusual punishment, "[f]irst, there must be, objectively speaking, conduct by public officials sufficiently serious to constitute a cruel or unusual deprivation-one denying the <u>minimal civilized measure of life's necessities</u>. Second, there must be a subjective intent by the public officials involved to use the <u>sufficiently serious deprivation in order to punish</u>." *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000) (citations and internal quotations omitted). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society," however, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (internal quotations omitted). *See also Wilson v. Seiter*, 501 U.S. 294, 298, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991) (noting that "[t]he Constitution...does not mandate comfortable prisons") (internal quotations omitted). Nevertheless, in order to prevail on an Eighth

Amendment challenge to his conditions of confinement, *a prisoner "need not await a tragic event before seeking relief, [but] he must at the very least show that a condition of his confinement poses an unreasonable risk of serious damage to his future health or safety."* **Chandler v. Crosby**, 379 F.3d 1278, 1289 (11th Cir. 2004) (citation and internal quotations omitted).

*Ventilation*: Various courts have found that inadequate ventilation can amount to an Eighth Amendment violation. *See, e.g.,* **Ramos v. Lamm**, 639 F.2d 559, 569 (10th Cir. 1980) ("inadequate ventilation ... results in excessive odors, heat, and humidity with the effect of creating stagnant air as well as excessive mold and fungus growth, thereby facilitating personal discomfort along with health and sanitation problems"), *cert. denied*, 450 U.S. 1041, 101 S. Ct. 1759, 68 L. Ed. 2d 239 (1981); **Hoptowit v. Spellman**, 753 F.2d 779, 784 (9th Cir. 1985) ("lack of adequate ventilation and air flow undermines the health of inmates and the sanitation of the penitentiary ... violating the minimum requirements of the Eighth Amendment") (citations omitted); **McKinney v. Anderson**, 924 F.2d 1500, 1507 (9th Cir. 1991) (constant exposure to high levels of cigarette smoke violated an inmate's Eighth Amendment rights), *vacated by*, 502 U.S. 903, 112 S. Ct. 291 (1991) (vacated and remanded for further consideration in light of **Wilson v. Seiter**, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991)), *aff'd*, 509 U.S. 25, 125 L. Ed. 2d 22, 113 S. Ct. 2475; 509 U.S. 25, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993) (affirming original holding). The plaintiffs claim that the poor ventilation in all three facilities, in tandem with the heat, rises to the

level of a constitutional violation. In determining the adequacy of ventilation, the court may consider temperature. *Chandler v. Baird*, 926 F.2d 1057, 1064-66 (11th Cir. 1991) (**cold temperatures causing "extreme discomfort"** could constitute an Eighth Amendment violation). Specifically, the court may consider the heat inmates must endure and the defendants' responses to the heat.

D.    *The relief sought will serve the public interest:*

*Reiterated, the Fifth Circuit held in* **Smith v. Sullivan**, 553 F.2d 373, 380 (5th Cir. 1977) (federal court's involvement occurs only when there are **extreme temperatures** that are injurious to an inmate's health).

Veraciously speaking, the grant of relief will serve the public interest because is it always in the public interest for prison officials to obey the law. *Duncan v. Anaya*, 642 F. Supp. 510, 527 (D.N.M. 1986)(respect for law, particularly by officials responsible for the administration of the State's correctional system, is in itself a matter of the highest public interest.") There is absolutely no reasonable justifications that the defendants could state to this court why: (i) **plaintiff has not seen a doctor, or had any testing that was recommended by LPN, Atkins on** <u>*December 5, 2007*</u>**;** and, (ii) **why defendants subject, and underhandedly refuse to provide a basic life necessity, i.e., Heat at law library leaving prisoners and plaintiff to "icebox freezing" temperatures is cruel and unusual punishment.** The public interest is best served that this Court order defendants to stop their actions, allow plaintiff to see a doctor, have his testing conducted, and provide basic

heat at the law library where prisoners have the right to be free from cruel and unusual punishment.

## POSTING BOND

Usually, a litigant who obtains interim injunctive relief is asked to post security. *Rule 65(c),* Fed.R.Civ.P. However, the plaintiff is an indigent prisoner and is unable to post security.  The court has the discretion to excuse an impoverished litigant from posting security. ***Orantes – Hernandez****, 541 F. Supp. 351 n. 30 (C.D. 1982). In view of the without requiring the posting of security.

## RELIEF REQUESTED

a.   ISSUE AN IMMEDIATE ORDER, that ADOC and all persons acting in concert with ADOC be hereby enjoined and restrained from interfering with any medical treating proscribed by any nurse, nurse practitioner or doctor; and

b.   That ADOC and all person acting in concert with ADOC be hereby enjoined and restrained from acting in concert with ADOC from limiting, preventing, hindering or stopping access to medical treatment;

c.   Order the ADOC and all person joined with them to immediately fix, repair, or provide adequate heat and adequate ventilation at the law library at Limestone Correctional Facility.

d.   Grant what this Court deems appropriate, but Order the heat be fixed immediately.

Done this 16th December 2007

Marcellus Breach 160710 ®
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this 17TH Day of November 2007, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections
P.O. Box 301501
Montgomery, Alabama 36101

Rushton, Stakely, Johnston, Garrett, P.A
P.O. Box 270
Montgomery, Alabama 36101

Marcellus Breach







MARCELLUS BREACH 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

LEGAL CORRESPONDENCE

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
P.O. BOX 711
MONTGOMERY, ALABAMA    36101

# EXHIBIT "A"

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

_____

MARCELLUS BREACH, #160710

    Plaintiff,

Vs.

PRISON HEALTH SERVICES, INC., et al.,

    Defendants.

       \*
       \*
       \*     CASE NO: 2:06-cv-1133-MEF
       \*
       \*

### DECLARATION BY MARCELLUS BREACH AIS# 160710

MARCELLUS BREACH, **AIS# 160710** and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, and declares under the penalty of perjury 28 U.S.C., 1746 that the foregoing is true and correct.

My name MARCELLUS BREACH**.** I am over the age of twenty-one. I am the Plaintiff to this action. I make this declaration in further support of my motion for a temporary restraining order and/or preliminary injunction.

I state that in October 2007, I did file a request to be seen by a doctor, more specifically, I requested to see Dr. Hobbs regarding my hernia. I was and still experiencing burning pain, sharp pinching pain. I was not seen by a doctor and was subsequently seen by a nurse being LPN Celvin Atkins. I was wearing my truss, and I complained of running out of pain mediation, submitting several sick calls requesting attention. I was given additional six-month supply of Motrin. A doctor did not see me.

On December 5, 2007, LPN Nurse Atkins based on complaints about my hernia again saw me. I was wearing my truss and explained to Mr. Atkins that I was still having problems with my hernia and that it is progressing. I explained experiencing lower pain in the back and experiencing straining while urinating. Mr. Atkins stated to me that he couldn't give me any stronger medication because when my hernia comes out and I won't feel it and I could die if not properly treated. (Surgery)

I explained to Mr. Atkins that I haven't seen a doctor in overt eight months. He then stated that he was referring me to a doctor, and that he wanted a urinalysis done. I haven't seen a doctor nor a urinalysis and I sill have these symptoms of straining when urinating, and pain. My hernia comes out, although it is reducible: it is getting worse.

I state that the heater at the law library is broken and it is extremely cold. There is no heat and the law clerks have requested several times that prison officials fix the heat. It is my understanding that the prison officials have stated that they are not going to fix the heater. I have caught cold after cold, even the flu because I spend long hours at the law library in freezing temperatures. It is so cold at times you can see your breath when blowing out. Medical personnel are interfering with my medical care. I haven't seen a doctor in eight months, nor have any test regarding urinating straining be conducted as Mr. Atkins stated. It is too cold to study and research in the law library and other areas have heat the gym, chapel, hobby craft, drug treatment has heat. My hands and feet get frostbites,

I declare that the foregoing is true and correct under the penalty of perjury 28 U.S.C., 1746.    This 16th Day December 2007.

Marcellus Breach

28

# EXHIBIT "B"

**SWORN AFFIDAVIT OF DENVER JEFF HOLLOWAY PURSUANT TO 28 U.S.C. §1746**

STATE OF ALABAMA          )
COUNTY OF LIMESTONE   )

I, Denver Jeff Holloway am over the age or 21 years and competent to make this affidavit. The information herein is based on personal knowledge.

I am an inmate incarcerated at the Limestone Correctional Facility (LCF). My institutional assignment is law library clerk. The law library is located in a room adjacent to the gymnasium. This room has one door and no outside air source. There are small return air vents in the wall separating the gym from the library. In late summer 2004 the air/heat unit for the law library malfunctioned. The gym/library officer at that time told us it could not be prepared. There was no heat in the law library during the 2004-2005 winters other then placing large fans in the door of the library to blow some warm air in from the gym. In the fall of 2006, Officer Reeves (the new gym/library officer) got the heating part of the unit working. A breaker was turned off. The heat worked well through the winter of 2006, but the blower motor/squirrel cage seized up late in the winter. The blower motor/squirrel cage was removed in early November 2007 and sent to maintenance for repair. It has not been repaired as of yet. I cannot verify but was told that the heater part of the unit would not be repaired.

We no longer have large fans to blow air in the library; the temperature in the law library is only slightly warmer than the outside air temperature. When the temperature outside is below 50 degrees it is very uncomfortable in the law library. One's hands and feet become very cold. Persons working in the library have to keep their coats and hats on.

Exacerbating the cold is the fact that the main door entering the gym is broken and will not close all the way. Cold air steadily flows into the library through the small wall vents. The heat in the gym is ineffective to sufficiently heat the law library. I believe that the lack of heat in the law library is constitutionally infirm and that we have a right to some form of heat while accessing the courts.

I declare, certify, verify, and state under penalty of perjury that the foregoing is true and correct.

**EXECUTED ON THIS** _17th_ **DAY OF DECEMBER, 2007.**

**DENVER JEFF HOLLOWAY, AFFIANT**

# EXHIBIT "C"

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PATRICK JOSEPH CHAREST          *

               Affiant,          *

Vs.          *          In re: 2:06-CV-01133-MEF

ALABAMA DEPARTMENT OF          *
CORRECTIONS, et. al.,
                             *

               Respondents.

                             *

## A F F I D A V I T

**STATE OF ALABAMA**   :

**LIMESTONE COUNTY**   :

    **BEFORE ME**, the undersigned authority did appear inmate Patrick Joseph Charest, AIS# 182262 whom did state, depose or otherwise attest that the foregoing averments are true and correct to the best of his ability, knowledge under the penalty of perjury, as follows:

§ 1.    I Patrick Joseph Charest remain competent to testify to the below referenced matters stated herein, for immediate relief.

§ 2.    I have personal knowledge upon my arrival at Limestone Correctional Facility (hereinafter "LCF"), on or about March 15th, 2005, thereinafter did NOTICE during the winter months "we had absolutely no-heat whatsoever in Limestone's Law Library, which is attached to their Facilities Gymnasium. The room assigned {G-115} for "accessing the Courts" is approximately 34' x 18' in length, width (612 square feet) with a mandatory seating capacity of Ten (10) inmates excluding the assigned law clerks.

I personally COMPLAINED constantly to, then COI Baldwin, then, LCF's law library supervisor, and recreation officer over the facilities prisons activities, after gaining no approval, nor assistance, other than being told its broke, deal with it -I reported the violations to his immediate supervisor Lt. Richard Frazier –whom likewise merely stated "he would look into the situation, and get back to me" that was sometime between March through May 2005, but nothing happened "we were told, separately, collectively" that Warden Mitchem said he wasn't going to fix the "unit." We went without a[ny] HEAT that entire winter, which caused me to suffer, severe cold spells, caught the flu twice, and couldn't sit inside LCF's law library without my winter coat, hat, gloves, and at times brought my blanket to wrap my lower extremities, because my feet stayed constantly cold, wet, from dampness in the frigid air.

§ 2.   During the SUMMER months of 2006, LCF's law library remained just the opposite –an inhumane oven like environment, at times above 100° resulting from "(i) Fix glass windows, with "NO VENTILATION" at all, for air movement, and only (ii) One commercial styled door which opens into the gymnasium –with no "Fire Exit Sign [?]." Although there exists three (3) windows –two (2) face the Northwest side only allowing the transfer of light, but also facing the west side of compound (known as A-side) 'the afternoon sun directly hits the windows –further elevating the inside temperatures, as is common when its resulting from single pane glass "not insulated," the other window facing the inner gym, it too is fixed glass, single pane, non insulated, as well.

Again, I expressed the inhumane environment to LCF's Law Library Supervisor's, both stated above, and others in the direct chain-of-command, but this time, I went a step further and expressed the totalities of the conditions, to the maintenance department personnel, whom I believe was Mr. Davis (sic), again it was stated: "I can't fix the unit, per the Warden's instructions," to date I've not heard Warden Mitchem tell me that personally, so I can't say, verify for sure whom is to directly blame, for the extreme

2

conditions placed upon me, but the only response "we received another oscillating residential styled 'wall mount' variable speed fan.'"

§ 3.    Then WINTER came again (2006), but in the interim of COI Baldwin either being fired, or quitting, someone decided to check the breaker room and found out that the whole time we went without "HEAT" from March of 2005 until November 2006 was because the breaker that specifically supplied LCF's law library heating unit was switched "off"; however –then, we had another interim officer (temporary assigned) whom turned the switch "*on*" allowing heat from, about November / December until March of 2007 –then the heating unit simply quit, "we're told the motor burned up."

I have again, COMPLAINED, to those at LCF, that its freezing in the law library, we're told multiple things (i) Awaiting the parts, (ii) We're ordering another motor, (iii) the bearing went bad in the fan motor, and the latest I find abstruse to say the least (iv) Some have said: "Warden Mitchem said he won't fix it," again to date I've not heard the Warden say anything like that, but I only have access to his subordinates, whom stated to me, subparagraphs lettered (i) through (iii), but the reality is, and remains NO HEAT.

§ 4.    I know its wrong, its without a doubt a shame, or mockery of a[ny] penal system of this day, age, that allows me to suffer continuously from the severe COLD, inside a modern building in a era of time, when society would say its cruel and unusual to subject, treat an inmate otherwise, living in, under such abnormalities even given the nature, degree of an inmates' crime for which one is punished.

§ 5.    I openly, honestly state for the record that a basic life's necessity is unlawfully being proscribed to, towards me during my imprisonment at LCF, whether vel non: "it's be done deliberately or not, maliciously or not, intentionally or not –but one things for sure –LCF's law library has no heat," and I've suffered the invasion of, and an injury-in-fact, of a known constitutional right, under the Eighth Amendment pursuant to the United States Constitution, and pray that for redressing said colorable grievance –that the Alabama Department of Corrections (hereinafter "ADOC"), or its agents, employees,

3

or support team don't retaliate against me, or others as has been verbally expressed why other inmates refuse to help, request, or complain that LCF's heating unit needs to be immediately fixed, repaired at LCF, its WINTER again.

I aver that nothing further is at present, being asserted under the penalty of perjury as to the above attestations.

### NOTARY PUBLIC SSERVICE

[ S E A L ]

Notary Public at Large, Ala.

_____ 182262
PATRICK JOSEPH CHAREST #182262
Affiant appearing in pro per

9-8- 2010
My Commission Expires:

Sworn to and Subscribed heretofore this _____ day of

_____, 2006.

4

# EXHIBIT "D"

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILLIE LEE WHITE, # 140147                *

    Affiant,                                        *

Vs.                                              *        CASE NO: 2:06-CV-1133-MEF

                                                 *

ALABAMA DEPARTMENT OF CORRECTIONS,
Et al.,
    Respondents.                          *

### DECLARATION BY WILLIE LEE WHITE, AIS 140147

**WILLIE LEE WHITE, AIS# 140147** and being duly sworn, deposed and says on oath that the avernments contained in the foregoing instrument are true to the best of his ability, information, knowledge and belief declared under the penalty of perjury 28 U.S.C. 1746.

My name is Willie Lee White. I am over the age of twenty-one. I am a witness to the facts stated by Marcellus Breach. I make this declaration in support of prison officials refuse to provide prisoners who work on their cases at the law library with adequate heat.

I state that the heater at the law library is broken and it is extremely cold. There is no heat and several prisoners have asked prison officials to fix the heat and it is my understanding that prison officials have stated that they are not going to fit the heat.

It is so cold in the law library that it is impossible to research without your fingers freezing. I have caught cold after cold, even the flu because I spend long hours at the law library in freezing temperatures. It is so cold in the mornings that you can see your breath. Our feet are frozen.

I witness that prison officials have provided heat to other areas here being the chapel, hobby craft, drug treatment room, Muslim rooms, even the bathroom has heat, but not the law library. It is too cold.

I declare that the foregoing is true and correct under the penalty of perjury 28 U.S.C. 1746 this 16th Day of December 2007.

Willie L White
Willie Lee White