IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, #160710

    Plaintiff,

Vs.                                                              *   CASE NO: 2:06-cv-1133-MEF

PRISON HEALTH SERVICES, INC., et al.,

    Defendants.

## NOTICE OF FILING

**COMES NOW**, the Plaintiff *Marcellus Breach* (hereinafter "Breach") in proper person "Pro Se," hereby gives written notice pursuant *to Rules 37(a)(2)(A), 37(a)(2)(B), Fed. R. Civ. P.,* and compliance with this Court's order entered on <u>December 4, 2007</u> [**Court Doc No. 292 – 1, Order**] hereby files the attached for the Record: Plaintiff states as follows:

1.[1]   **Discovery is not a game.** This Court issued its Discovery Order on <u>October 18, 2007.</u> [**Court Doc. No. 178 – 1**] ADOC Counsel is late in responding to discovery request. Parties who fail to understand that simple function of the rules invite judicial ire and risk the imposition of sanctions.

---

[1]  Attached letter to Counsel for ADOC defendants regarding Discovery disputes on defendants Ruth Naglich and Dr. George Lyrene, M.D., have not been answered.

2.  Plaintiff has attached his letter to Counsel for ADOC regarding discovery requests which have not been answered.

**WHEREFORE,** plaintiff requests to place into the Record his attempts to resolve the discovery problems informally with counsel, without court intervention.

Done this 26th Day December 2007.

Marcellus Breach 160710 ®
Limestone C.F.
28779 Nick Davis. Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this 27TH Day of November 2007, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections
P.O. Box 301501
Montgomery, Alabama 36101

Rushton, Stakely, Johnston, Garrett, P.A
P.O. Box 270
Montgomery, Alabama 36101

® _____
Marcellus Breach

MARCELLUS B[...]
Limestone C.F.
28779 Nick Davi[s]
Harvest, Alabama [...]

  

USA 41   USA 41   USA 41

LEGAL CORRESPONDENCE

*[Stamp, rotated: "This correspondence is forwarded from an Alabama State Prison. The content have not been evaluated, and the Alabama Department of Corrections is not responsible for the substance or content of the enclosed communication."]*

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
P.O. BOX 711
MONTGOMERY, ALABAMA 36101

# *MARCELLUS BREACH, 160710*

LIMESTONE C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

*December 26, 2007*

Alabama Department of Corrections
Kim T. Thomas & Albert S. Butler
Legal Division
P.O. Box 301501
Montgomery, Alabama 36130

RE: **2:06-cv-1133-MEF  Letter of Intent/Discovery Disputes
Discovery Request upon Defendant Dr. George Lyrene & "Second
Set of Interrogatories upon Defendant Ruth Naglich**

Dear Counsel:

I have attached the excerpts that are now in dispute regarding Discovery request and I am asking that within fifteen (15) days you correspond with me, or answer the discovery request.

The Discovery rules require that the defendants respond to Discovery request. Morethanless, the Court has issued its Discovery Scheduling Order. The Court ordered that all parties file their responses to Discovery request within thirty days.

My Records reflect that there are several unanswered discovery request. However, identifying Discovery request No. 6 on Defendant Dr. George Lyrene on November 16, 2007 was served and the thirty (30) day time limit for answering has expired and I have not received his answer and production.

Also, Defendant Ruth Naglich was served with a "Second Set" of discovery request on November 21, 2007. Her due date of thirty (3) days would have been December 22, 2007 subtracting the Thanksgiving Holiday. I have not received her answer pertaining to this second request.

I am hoping that perhaps you will correspond regarding the requested discovery request and also I am free to listen to any objections that you may have to them. I strongly depreciate, I believe that it is inappropriate to have to continue to request the Court to intervene; however, I will not hesitate to request such.

**There are too many missing documents in this case**. Also, the discovery requests are material, relevant and discoverable. The records are voluminous because I have filed them to each person separately.

1

The areas of deficiency on your part is:

(i) ADOC defendants have not answered, responded to these discovery requests;

(ii) ADOC defendants have not requested an extension of time.

The attached excerpts are from the Discovery request upon Defendants Ruth Naglich and Dr. George Lyrene.

On the day 15 from receipt of this letter I will immediately file my motion to compel; the rules require that I make a good faith attempt to resolve the dispute without court action. Rules 37(a)(2)(A), 37(a)(2)(B), 37(d) Fed. R.Civ. P.

You have not provided any relevant Information from defendant George Lyrene except an affidavit. He has written an affidavit opposing surgery and discovery request upon him and his personal involvement, and information is relevant, material, and not burdensome. The information requested is a part of the prison record keeping, and is considered "business records".

I request that you have them answer the Interrogatories and production of documents accordingly. Any global objections are improper and I will ask the Court to ignore them.

For your convenience, I have attached two (2) excerpts to the discovery request pertaining to each defendant separately, individually, and jointly that has been submitted to you.

I thank you for your time and attention with this matter.

Sincerely,

/Marcellus Breach

2

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this 27th Day of DECEMBER 2007, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections
P.O. Box 301501
Montgomery, Alabama 36101

Rushton, Stakely, Johnston, Garrett, P.A
P.O. Box 270
Montgomery, Alabama 36101

® *[signature]*
Marcellus Breach

3

**EXCERPT DISCOVERY REQUEST: RUTH NAGLICH FILED NOVEMBER 21, 2007 "NO. 7"**                                                              **COPY**

### I.    INTRODUCTION:

Defendant Ruth Naglich as submitted an Affidavit in this proceeding on *August 3, 2007*, attached to the ADOC Defendant's "Special Report" filed on *August 6, 2006.* Defendant Naglich has stated under oath in part as follows:

" . . . My current administrative responsibilities for the Alabama Department of Corrections (ADOC) include the monitoring of the components and the quality of the provision of healthcare to those individuals who are in the care, custody and control of the State of Alabama Department of Corrections (ADOC). Included in these responsibilities is the monitoring of contracted health services, and the administration of the **ADOC's Quality Assurance Program** for all health service treatment. [ ] ... "All medical treatment decisions relating to the individual care of an inmate are made by these licensed individuals. The ADOC does not interfere with treatment decisions or recommendations related to an individuals care by a licensed provider . . . . [ ] . . . "and that all orders prescribed by these providers were administered as ordered."

[See. *Affidavit Ruth a. Naglich, RN, BSN, Defendants Special Report,* ¶ *2, 3, 5]*

### II.    DEFINITIONS AND INSTRUCTIONS:

Definitions and Instructions are continuing throughout this Discovery request. As applied to the first set of request for discovery submitted on or about *October 29, 2007* pursuant to *Rule 33, 34, & 35,* Federal Rules of Civil Procedures. However, due to Ruth Naglich's Affidavit she speaks concerning **ADOC's Quality Assurance Program** for all health service treatment. No other information, documents have been provided by any defendant as a part of their "Initial Disclosure" *Rule 26, Federal Rules of Civil Procedures,* their duty: Plaintiff questions the ADOC's Q.A. program as asserted (hereinafter "**ADOC's Quality Assurance Program**") as follows: *INTERROGATORES:*[1]

¶ 1.    Please explain the ADOC's Quality Assurance Program. *"identify by document."*

¶ 2.    *"Specifically identify by document"* any and all standards, practices and procedures, rules, regulations, policies, protocols, established, promulgated by the Q.A. program regarding medical treatment, coverage, for hernias for State prisoners at ADOC established in accordance with regulations of the State Health Officer regarding treatment for hernias.

¶ 3.    *"Specifically identify by document"* the name(s) of any State Health Officer over the Q.A. program who acts as supervisor, or other State duty, specifically regarding the treatment of hernias for Alabama inmates.

¶ 4.    *"Specifically identify by document"* any and all Q.A. scores by the State Health Officer from *February 2005* through date of your response.

---

"Q.A. program" stands for, means as "Quality Assurance Program."

**EXCERPT DISCOVERY REQUEST: RUTH NAGLICH FILED NOVEMBER 21, 2007 "NO. 7"**                                                                COPY

¶ 5.    "*Specifically identify by document,*" any and all inspections, reports, reprimands, recommendations, of the Q.A. program regarding the treatment protocols for hernias.

¶ 6.    "*Specifically identify by document,*" the name of any and all persons, contractors, committee members, or employees of ADOC who maintain the Q.A. program.

¶ 7.    "*Specifically identify by document,*" any and all names of any person, or personnel who has sufficient authority and freedom to identify quality problems and initiate, re-solvement or provide solutions to the Q.A. program since *February 2005* through date of your response. If any changes, explain, and identify by document.

¶ 8.    "*Specifically identify by document,*" any and all Q.A. program committee members.

¶ 9.    "*Identify by document*" and please explain in detail how the Q.A. program applies to plaintiff since his incarceration, and being transferred by ADOC to SLCS regarding his medical care.

¶ 10.    "*Specifically identify by document*" the names of any and all persons within the ADOC's administration who duties and authority is assigned to the ADOC's Q.A. program.

¶ 11.    "*Identify by document*" any and all arrangements, established in accordance with the regulations promulgated by the State Health Officer for ADOC's on going quality assurance program concerning health care processes and outcomes. Specifically identify the area regarding treatment for hernias since *February 2005* through date of your response.

¶ 12.    "*Specifically identify by document*", the ADOC's health maintenance organization that is obligated to effectively provide, or arrange for, the provision of health care services, as established in accordance with rules promulgated by the State Health Officer for an on-going quality assurance/utilization review program concerning health care processes and outcomes.

¶ 13. "*Identify by document*" the ADOC's health maintenance organization effectively provided, or arrange for, the provision of health care services in accordance with rules promulgated by the State Health Officer for an on-going quality assurance/utilization review program concerning health care processes and outcomes to Alabama inmates and the plaintiff while incarcerated at South Louisiana Correctional Services, from March 16, 2006 through October 6, 2006.

¶ 14.    "*Specifically identify by document*" the names of any commissioner over the Q.A. program.

¶ 15.    "*Specifically identify by document*" the names, qualifications, duties, authorities and responsibilities and directors, or any member of any committee or

any employee of each person of the fiduciary and administration of the Q.A. program.

¶ 16. *"Specifically identify by document"* the mission of the Q.A. program and the duty and responsibility of the quality assurance supervisor regarding treatment for hernias suffered by Alabama inmates.

¶ 17. "Specifically *identify by document*" the delegated responsibility of providing medical services: any surgeries, outside patient care, to Alabama inmates at South Louisiana Correctional Services, Inc., to Prison Health Services, Inc., from February 2005 through October 31, 2007.

¶ 18. *"Specifically identify by document"* names of any and all person(s) and/or "Agent" of or for the Q.A. program who's responsibility includes updating protocols, policies, procedures regarding hernia repair.

¶ 19 *"Identify by document"* how hernia repair for Alabama inmates was covered and to be paid while plaintiff was incarcerated at South Louisiana Correctional Services, Inc.

¶ 20. "Specifically *identify by document*" how either the Q.A. programs operate regarding any approval or denial of any request for surgical repair for a hernia that is not incarcerated, strangulated or into the scrotum?

¶ 21. *"Identify by document"* names of persons within the ADOC who have any responsibility for monitoring the components and the quality of the provision of healthcare to those individual who are in the care, custody and control of the State of Alabama Department of Corrections (ADOC) included but not limited to these responsibilities in monitoring contracted health services at SLCS, and the administration of ADOC's Q. A. program for all health service treatment including but not limited while plaintiff was incarcerated at South Louisiana Correctional Services, Inc., regarding surgery request during *March 16, 2006* through *October 6, 2006.*

¶ 22. "Specifically *identify by document*" the Medical Director for Prison Health Services, Inc., from *February 2005* through *October 31, 2007*, and list his/her responsibilities.

¶ 23. *"Specifically identify by document"* any and all orders regarding plaintiff that were administered as ordered, as stated in your Affidavit: "[A]nd that all orders prescribed by these providers were administered as ordered."

¶ 24. Disclose the substance of any oral, written communication *"identify by document,"* between you and any person regarding: "that all orders prescribed by these providers were administered as ordered".

¶ 25. "Specifically identify by document," both Prison Health Services, Inc., ("PHS"), agreement that PHS agreed to comply with ADOC's Q.A. program, its standards, practices and procedures policy, or protocols regarding the treatment to Alabama inmates suffering from hernias from February 2005 through October 31, 2007.

**EXCERPT DISCOVERY REQUEST: RUTH NAGLICH FILED NOVEMBER 21, 2007 "NO. 7"**
                                                                     **COPY**

### IV. REQUEST FOR ADMISSIONS:

¶. 1    *Admit or deny*, the *ADOC's Q.A. program* applied to plaintiff's medical treatment while incarcerated at SLCS?

¶ 2.    *Admit or deny*, the *ADOC's Q.A. program* applies to plaintiff while he is incarcerated at the ADOC.

¶ 3.    *Admit or deny*, the *ADOC's Q. A. programs* has a Protocol that state that a hernia must be incarcerated or in danger of being incarcerated before surgically necessary?

¶ 4.    *Admit or deny*, ADOC Q. A. *program* is responsible for coverage of any fees, costs for medical treatment by a licensed provider?

¶ 5.    *Admit or deny*, the *ADOC's Q A. program* will not cover plaintiff's hernia repair unless plaintiff's hernia is incarcerated or in danger of being incarcerated or into the scrotum?

¶ 6.    *Admit or deny*, Prison Health Services, Inc., agreed to comply with ADOC's Q.A. program regarding hernia treatment?

¶ 7.    *Admit or deny*, Correctional Medical Services, has agreed to comply with ADOC's Q.A. program regarding hernia treatment?

¶ 8.    *Admit or deny*, Correctional Medial Services, is following, complying with a protocol that Prison Health Services, Inc., followed regarding the medical treatment of hernias suffered by Alabama inmates from February 2005 through date of your response?

### V. REQUEST FOR PRODUCTION OF DOCUMENTS

That defendant produces and permit plaintiff to inspect and to copy each of the following documents:

### * RULE 33, Fed. R. Civ. P., "Business Records"

a.    To permit plaintiff to inspect, analyze, and copy or photograph, *"specific document,"* implemented ADOC's **Quality Assurance Program** for all health service treatment from **February 2005** through current date, **specifically the provision protocols and policies/procedures of the Q.A. program regarding hernia.**

b.    The names and *"identify by document,"* those individual(s) responsible for the implementation and maintenance of the **ADOC'S Quality Assurance Program pertaining to hernias** within the relevant time of this cause of action.

c.    To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or

**EXCERPT DISCOVERY REQUEST: RUTH NAGLICH FILED NOVEMBER 21, 2007 "NO. 7"**
                                                                                                 **COPY**

fashion specifically **any and all orders prescribed by any provider that were administered as ordered** and *ADOC's Quality Assurance Program.*

g.      To disclose any and all relevant tangible *"documents"* regarding the *ADOC's Quality Assurance Program* surrounding the medical treatment given to plaintiff since his time incarcerated being **February 2005** till current date.

h.      Any and all orders prescribed by any medical providers regarding any medical treatment of the plaintiff, that were administered as ordered, please *"identify by document* from **February 2005** through current date of your answer.

f.      To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

g.      To inspect and copy any and all "documents" regarding the ADOC's Quality Assurance Program regarding hernia treatment.

**EXCERPT DISCOVERY REQUEST DR. GEORGE LYRENE FILED ON NOVEMBER 16, 2007. REQUEST NO. 6.**   COPY

### III. INTERROGATORIES:

¶ 1. Please state the following for the plaintiff.

    a. your age
    b. your education
    c. your length of service in your present employment position
    d. your previous occupational experience(s)
    e. your training and experience in hernias

¶ 2. Have you ever been charged with, arrested or convicted of, either a felony, or misdemeanor in the State of Alabama, or another? If so, for each charge, arrest or conviction or nolle prosse, indicate the city, state where the charges were, the nature of the offense, charge, arrest, the date of the above arrest or conviction, the court case number, and the disposition of the charge(s), arrest or conviction.

¶ 3. Have you ever been accused of any felony, misdemeanor in this State, or another? If yes, please identify the agency and/or individual who accused or investigated you for such allegation(s); specifically identify the department, agency, employer, employee or such other whom accused you of said charges, the arrest(s), employer, employer or such other whom accused you of said charges, the arrest(s), the conviction(s); the nature of the allegation(s); your answer, response, in detail, to the allegation(s); the disposition of the accusation(s) or investigation(s) against you, either involving your official capacity, or involving your individual capacity.

¶ 4. Please "*identify*" employers you have had, other than your current position, in the last ten (10) years. With regards to each, state the inclusive date of employment; the type of work performed; your discretionary functions, duties, and responsibilities.

¶ 5. What is the name, last name address and present whereabouts, if known, of each person whom you or anyone acting in your behalf or believes to have any relevant information of the "incident" in regards to plaintiff's treatment and request for surgery, more specifically in regards to Dr. John A. Tassin, M.D., order and recommendation that Plaintiff's inguinal hernia "Needs Repair?"

¶ 6. Please "*specifically identify*" your supervisor from date of "*incident*" through date of answering/responding. If any changes, please "*specifically identify*."

¶ 7. Disclose any and all verbal, written communications to any person(s) regarding this incident if any, "*identify by document,*" any and all response(es) with any and all persons not limited to your supervisor regarding the incident in question.

¶ 8. Have you ever had your medical licensed revoked, suspended, or any action, investigation conducted by any Medical Board. If so, for each complaint, indicate the city, state where the complaint(s) were, the nature of the complaint(s),

**EXCERPT DISCOVERY REQUEST DR. GEORGE LYRENE FILED ON NOVEMBER 16, 2007. REQUEST NO. 6.**     **COPY**

the date of the above complain(s), the name of the investigator, and the disposition of the complaint. Also, if yes, please identify the agency and/or individual who accused or investigated you for such allegation(s); specifically identify the department, agency, employer, employee or such other whom accused you of said charges, the nature of the allegation(s) or investigation(s) against you, either involving your official capacity, or involving your individual capacity."

¶ 9. *"Specifically identify by document"* any and all pending lawsuits against you in the State of Alabama, or another.

¶ 10. *"Specifically identify by document"* whether you ever been sued for either: (i) Deliberate Indifference; (ii) Medical Malpractice or; (i) Negligence, in the State of Alabama, or another? If so, for each charge, judgment, indicate the city, state where the charges were, or are actively pending, the nature of the charge(s), the date of the summons, Answers, the court case number, and the disposition of the charge, answer, summary judgment, trial or appeal.

¶ 11. *"Specifically identify by document"* whether you or has anyone acting in your behalf obtained from any person or persons any *"documents"*, report(s), statement(s), memorandum, or testimony concerning the "incident" in question, in this cause of action?

¶ 12. *"Specifically identify by document"* your specific job responsibilities as Medical Director for the Alabama Department of Corrections.

¶ 13. *"Specifically identify by document"* the implementations procedures, and/or the events, chain of command of preparing, submitting and approval of the Protocol(s) regarding treatment of hernias suffered by state inmates between Alabama Department of Corrections and Prison Health Services, Inc.

¶ 14. It is your common practice as a doctor not to make a surgical referral regarding a patient diagnosed with a hernia until the patient's hernia is incarcerated, or in danger of incarceration or, into the scrotum?

¶ 15. It is your common practice not to make surgical referral for a patient who is diagnosed with a Hernia with signs and symptoms of feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum, increasing abdominal or groin swelling?

¶ 16. It is your common practice as a doctor not to make surgical referral for a patient who is diagnosed with a Hernia with signs and symptoms of a bulge or lump in the abdomen, groin or scrotum that is easier to see when the patient stands and disappears when the patient lies down, but the patient has a dull dragging sensation in the groin area with an inability to urinate?

¶ 17. It is your common practice as a doctor not to make a surgical referral for a patient who is diagnosed with a Hernia with signs and symptoms of pain when straining, lifting, or coughing, persistent cough and/or shortness of breath?

**EXCERPT DISCOVERY REQUEST DR. GEORGE LYRENE FILED ON NOVEMBER 16, 2007. REQUEST NO. 6.                     COPY**

¶ 18.  Between the Alabama Department of Corrections and Prison Health Services, Inc., who's common practice is it not to surgically repair a hernia once a physician has ordered or recommended that the hernia "needs repair" unless the hernia is incarcerated or, in danger of becoming incarcerated in order to be surgically necessary?

¶ 19   Please estimate how many Alabama inmates diagnosed with a hernia you deny a referral to a specialist or surgeon since your date of employment rendering medical services at the prison(s) of the Alabama Department of Corrections.

¶ 20.  Have you ever requested to any supervisor, or other person(s) improvements, changes, update, regarding the hernia Protocol.  If yes, "*specifically identify*" any written request, "*documents*," e-mails, faxes and "*identify the incident by document*": "*identify*" any and all witnesses, persons who have knowledge of your recommendations for improvements to this or any other Hernia Protocol?

¶ 21.  "*Identify by document*," your personal examination conducted on the plaintiff.  If unavailable, please disclose the reason(s).

¶ 22.  Please disclose and "*identify by document*" ADOC's and your common practice being the objective treatment plan regarding hernias when the patient is suffering extreme pain, due to his hernia.

¶ 23.   It is your common practice to deny the cure for a hernia until the hernia is incarcerated or, in danger of incarceration, into the scrotum?

¶ 24.   It is your common practice to allow a patient to endure pain by issuing some pain medication and a Truss, when there are continued symptoms of the patient suffering pain; without the cure before the hernia is incarcerated, or in danger of being incarcerated or before into the scrotum?

¶ 25.  Please disclose your medical findings "*identify by document*" how you recommended that plaintiff not receive surgery, when you never once examined the patient's hernia and have no idea how much pain he suffers?

### IV. REQUEST FOR PRODUCTION OF DOCUMENTS OF YOUR AGENTS

That defendant produce and permit plaintiff to inspect and to copy each of the following documents:

### * RULE 33, Fed. R. Civ. P., "Business Records"

a.      To permit plaintiff to inspect, analyze, and copy or photograph, "*specific document*," implemented protocols and policies/procedures of the Alabama Department of Corrections as of February 2005 through current date of responding and names of "*identify by document*" all individuals responsible for the treatment protocols, i.e., hernia:  specifically, the Protocols governing the treatment of hernias suffered by state inmates.

**EXCERPT DISCOVERY REQUEST DR. GEORGE LYRENE FILED ON NOVEMBER 16, 2007. REQUEST NO. 6.                    COPY**

b.   The names and *"specifically identify by document,"* those individual(s) responsible for the implementation and maintenance of the treatment Protocols pertaining to hernias at the Alabama Department of Corrections from February 2005 through present.

c.   To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

d.   To disclose the material evidence by *"document,"* and substance of any oral statements made by defendants to person(s) at South Louisiana Correctional Center, on 7-10-06 and <u>7-12-06</u>, to any supervisor, agency or agents thereof regarding treatment of plaintiff's inguinal hernia.

e.   *"Specifically identify by document,"* and, disclose the ADOC policy, procedures, practice, directives, memoranda, statement, documents, governing, regarding, approval or disapproval of hernia surgery, requested by <u>South Louisiana Correctional Center</u> medical personnel, from *<u>March 2006</u>* through *<u>October 6, 2006</u>* to the Alabama Department of Health Services.

f.   Produce any and all relevant information on the policy, protocol, procedures regarding issuing patient a Truss or Hernia belt.

g.   Produce any and all relevant information regarding Hernia Truss or Hernia Belts as treatment for a hernia.

\*\*\*   **[If any requests for production of documents have already been disclosed through another party, then please state and identify the party, date of disclosure.]**

*V.*   ***REQUEST FOR ADMISSIONS:***

¶ 1.   *Admit or deny,* you agree with the Protocol that a hernia must be incarcerated or in danger of becoming incarcerated in order to be surgically necessary.

¶ 2.   *Admit or deny,* the only way to stop a hernia from getting worse is to repair the defect through surgery.

¶ 3.   *Admit or deny,* that the Anatomy of Hernia, -- the most common location for hernia is the abdomen. A hernia (rupture) is usually noticed as a lump, commonly located in the groin or the umbilical region, it appears when a portion of the tissue which lines the abdominal cavity (peritoneum) breaks through a weakened area of the abdominal wall, this can give rise to discomfort as the hernia enlarges and can sometimes be dangerous is a piece of plaintiff's intestine become trapped ('strangulated').

¶ 4.   *Admit or deny,* you are an expert in Hernia repair?

¶ 5.   *Admit or deny,* you have performed surgery on hernias?

**EXCERPT DISCOVERY REQUEST DR. GEORGE LYRENE FILED ON NOVEMBER 16, 2007. REQUEST NO. 6.**                                       **COPY**

¶ 6.    *Admit or deny*, there is almost no limit to how big a hernia could get without surgery?

¶ 7.    *Admit or deny* that medically there is no cure for a hernia without surgery?

¶ 8.    *Admit or deny*, that a strangulated hernia can become an emergency that usually requires immediate surgery?

¶ 9.    *Admit or deny*, Medical Records from Louisiana do not reflect that plaintiff was issued either a truss, or hernia belt or pain medication for this hernia during his incarceration at that private prison?

¶ 10.   *Admit or deny*, a truss is the cure for a hernia?

¶ 11.   *Admit or deny*, plaintiff has complained about having pain when coughing, sneezing, and having bowel movements due to this hernia?

¶ 12.   *Admit or deny*, that that issuing of pain medication will not cure a hernia?

¶ 13.   *Admit or deny*, that the issuing a truss and proscribing pain medication is a cheaper method of treating a hernia?

¶ 14.   *Admit or deny*, that plaintiff's inguinal hernia can get larger and lead to serious medical complications?

¶ 15.   *Admit or deny*, that discomfort usually is experienced especially when coughing, sneezing, lifting heavy objects, or standing for long period of time?

¶ 16.   *Admit or deny*, bowel movements can cause the muscles to weaken resulting into an enlargement of plaintiff's hernia?

¶ 17.   *Admit or deny* the long-term course is for a hernia to become steadily worse as times goes on, sometimes slowly and sometimes quickly when left without surgery?

¶ 18.   *Admit or deny*, that the opening of a hernia cannot heal itself?

¶ 19.   *Admit or deny*, medically a doctor cannot treat a hernia; they must be repaired through surgery?

¶ 20.   *Admit or deny* plaintiff's hernia goes into his scrotum, is trapped at times and plaintiff has to work it back up into place?

¶ 21.   *Admit or deny*, a truss is for temporary use?

¶ 22.   *Admit or deny*, the waiting until the hernia is incarcerated or in danger of becoming incarcerated, in order to be surgically necessary can become a life or death situation?

¶ 23.   *Admit or deny*, waiting until the hernia is incarcerated, in danger of becoming incarcerated in order to be surgically necessary can, or will subject a patient into sever pain?

¶ 24.   *Admit or deny*, under the standard of care, a hernia ought to be repaired before it is incarcerated or in danger of becoming incarcerated and before entering the scrotum?

¶ 25.   *Admit or deny*, overexertion can cause weakness, such as simple coughing or sneezing to the hernia?

¶ 26.   *Admit or deny*, the effects felt by plaintiff can range from perfectly painless, through discomfort, to being very painful indeed?

¶ 27.   *Admit or deny*, a hernia ought to be inspected to ensure that it is not becoming infected or developing into a more serious non-reducible hernia?

¶ 28.   *Admit or deny*, you did not conduct any routine inspections, follow up or test on plaintiff's hernia.

¶ 29.   *Admit or deny*, a hernia can limit a person's daily activity?

**EXCERPT DISCOVERY REQUEST DR. GEORGE LYRENE FILED ON NOVEMBER 16, 2007. REQUEST NO. 6.**   COPY

¶ 30. *Admit or deny*, when the hernia distends and pushes out the peritoneum forming the bottom of either the middle of the internal fossa, it is a direct or internal hernia?

¶ 31. *Admit or deny*, the instruction Hernia Manuel given by you on April 30, 2007, through Prison Health Services, Inc., the **"Fitting Instructions" for Model 67-350** states pertaining to a hernia: ". . . Limiting activity, eliminating excess weight a hernia belt or truss may provide temporary relief. However, **CURE IS SURGERY?**"

¶ 32. *Admit or deny*, feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum is usually a warning sign that the hernia is progressing and becoming worse?

¶ 33. *Admit or deny*, you are involved in the treatment proscribed to plaintiff while he has been in the department of corrections.

¶ 34. *Admit or deny*, Prison Health Services, Inc., has final authority regarding approval or disapproval of surgery for plaintiff's inguinal hernia?

¶ 35. *Admit or deny*, there are over 100 Alabama inmates diagnosed with hernias from *February 2005* through date of your response?

¶ 36. *Admit or deny*, hernias are painful?

¶ 37. *Admit or deny*, you are responsible for the monitoring of the health care given to plaintiff while in the department of corrections?

¶ 38. *Admit or deny*, you agree that plaintiff cannot have surgery until his hernia is incarcerated, or in danger of incarceration or into the scrotum?

¶ 39. *Admit or deny*, the Protocol(s) pertaining to hernia treatment for Alabama inmates can subject a patient to endure pain and suffering?

¶ 40. *Admit or deny*, Alabama Board of Medical Examiners are not aware of the practice involved with Prison Health Services, Inc., being a Protocol that a hernia must be incarcerated or in danger of being incarcerated in order to be surgically necessary?

¶ 41. *Admit or deny*, this Protocol ought to be changed pertaining to hernias?

¶ 42. *Admit or deny*, you never once examined the plaintiff.

¶ 43. *Admit or deny*, you are responsible for updating, changing medical policies, procedures, at ADOC?

¶ 44. *Admit or deny each hernia case is different?*

¶ 45. *Admit or deny*, Ruth Naglich denied plaintiff's request for surgery from Louisiana.

¶ 46. *Admit or deny*, it is your common practice to go against another doctors recommendation when you are not the treating physician.

¶ 47. *Admit or deny*, Ruth Naglich is the person responsible for approval or disapproval of surgery request?

¶ 48. *Admit or deny*, you implemented the Protocol that states that a hernia must be incarcerated, or in danger of being incarcerated before it can be surgically repaired?

¶ 49. *Admit or deny*, the sac containing plaintiff's intestine may become trapped by muscle (incarceration). This happens, plaintiff will not be able to flatten the bulge and plaintiff will have pain?

¶ 50. *Admit or deny*, when the intestines become trapped, issuing Motrin 600 mg., will treat the condition?

**EXCERPT DISCOVERY REQUEST DR. GEORGE LYRENE FILED ON NOVEMBER 16, 2007. REQUEST NO. 6.                    COPY**

¶ 51. *Admit or deny,* when the intestine is tightly trapped, it becomes strangulated?

¶ 52. *Admit or deny,* the strangulated area loses blood supply and may die when the intestine is tightly trapped?

¶ 53. *Admit or deny,* when the intestines are trapped, this can cause severe pain and block the intestine. Emergency surgery is needed to relieve the blockage?

¶ 54. Hernias grow larger as pressure inside the body presses the intestines or other tissues out through a weak area. With time, these tissues can bulge out beneath the skin of the abdomen, or they can bulge into the groin, thigh, scrotum, or labia?

¶ 55. *Admit or deny,* indirect inguinal hernias are the most common hernias in men?

¶ 56. Direct hernias are similar to indirect hernias, but less common?

¶ 57. Direct hernias often get worse with age or physical stress.

¶ 58. Admit or deny, allowing a patient to suffer pain due to an hernia for almost three years may seem inappropriate to the medical profession?

¶ 59. *Admit or deny,* the Alabama Department of Corrections intentionally denied plaintiff's request for surgery?

¶ 60. *Admit or deny,* you denied plaintiff's request for surgery because plaintiff's hernia is not incarcerated or into the scrotum?