IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION

MARCELLUS BREACH (AIS # 160710),  )
                                   )
          Plaintiff ,              )
                                   )
vs.                                )          CIVIL ACTION NO.
                                   )          2:06-cv-1133-MEF
PRISON HEALTH SERVICES, INC., et al., )
                                   )
          Defendants .             )
                                   )

## SPECIAL REPORT

COMES NOW the defendant, CORRECTIONAL MEDICAL SERVICES, INC. (hereinafter "CMS"), by and through counsel, and in response to the Plaintiff's Amended Complaint, filed November 28, 2007, and this Court's Order of November 29, 2007, presents the following Special Report with regards to this matter.

## I.    INTRODUCTION

The plaintiff, Marcellus Breach (AIS # 160710) set forth in his original Complaint, filed on or about December 22, 2006, that he was confined at the Kilby County Correctional Facility, Mt. Meigs, Alabama.  At the time of the allegations raised in his Complaint, Breach has also been incarcerated at the Limestone Correctional Facility and at an out-of-state correctional facility located in the State of Louisiana.

The original Complaint, filed on December 22, 2006, was filed against Defendant, Prison Health Services, Inc. ("PHS") and various healthcare providers.  PHS was the previous company that held the contract with the Alabama Department of Corrections to

provide healthcare to inmates incarcerated within the state of Alabama.  The Defendant, Correctional Medical Services, Inc. ("CMS") was awarded and began its contract with the State of Alabama to provide medical services for inmates incarcerated in the state of Alabama beginning on November 1, 2007.  (Affidavit of William D. Hobbs, M.D. attached hereto as Exhibit 1.)

Defendant PHS held the contract with the state of Alabama to provide medical services to inmates on and prior to October 31, 2007.  A Special Report was filed on behalf of PHS and various healthcare providers on February 14, 2007.  (DOC. # 25). Attached to the Special Report filed by PHS was a certified copy of Breach's medical records (Exhibit "A"), and also an affidavit of Michael E. Robbins, M.D. (Exhibit "B"). Pursuant to this Court's Orders dated May 11, 2007, May 14, 2007 and June 4, 2007, PHS filed a Supplemental Special Report.  (Doc. # 86).  Attached to the Supplemental Special Report filed by PHS was an affidavit of Dr. William Hobbs, (Exhibit "A"), and a supplemental affidavit of Dr. Michael E. Robbins (Exhibit "B") as well as further certified medical records pertaining to the care and treatment of the Plaintiff, Marcellus Breach.  Pursuant to this Court's Order dated July 23, 2007, a Special Report was filed on September 21, 2007 on behalf of Dr. William Hobbs and a response was filed on behalf of PHS to this Court's request to address plaintiff's claims of failure to respond to request for medical treatment.  (DOC. # 144).  Attached to the Special Report filed on behalf of Dr. Williams Hobbs was a supplemental affidavit of William Hobbs (Exhibit "B").  CMS adopts and incorporates the affidavits and medical records attached to the Special Reports filed on behalf of PHS and the physicians.  (DOC. #'s 25, 86, 144).

2

## II.    NARRATIVE SUMMARY OF FACTS

While incarcerated at the Limestone Correctional Facility, Breach claims he was diagnosed by Dr. Bosserman as having an inguinal hernia. (Plaintiff's original Compl. at ¶ 12). Breach admits in his pleadings, that he has "suffered" with this inguinal hernia since February 2005. Breach acknowledges that multiple physicians have treated this problem and prescribed him with medication and remedies to directly address this condition. (Plaintiff's original TRO Application/Preliminary Injunction at ¶¶ 4-10). Breach claims in his Amended Complaint that CMS, through the medical treatment supplied to Breach, is responsible for cruel and unusual punishment. (Amended Compl., dated Nov. 28, 2007 at ¶ 9).

Breach was transferred to the Limestone Correctional Facility on March 23, 2007, where he continues to be incarcerated. (Affidavit of Hobbs). PHS held the contract with the state of Alabama up through October 31, 2007, and thereafter beginning on November 1, 2007, CMS began the contract with the State of Alabama. Breach continues under the care and treatment of Dr. William D. Hobbs who has seen and treated and continues to treat Breach for his inguinal hernia. (*Id.*). Breach was first diagnosed with an inguinal hernia in 2005. (*Id.*) An inguinal hernia occurs when there is a small opening in the lining of the abdominal wall and part of the intestine protrudes through this hole. (*Id.*) Breach does not have a right direct, indirect or femoral hernia. (*Id.*) Breach does not have a left indirect or femoral hernia. Breach does have a large, easy to reduce, direct inguinal hernia on the left. (*Id.*)

{B0795155}

As a general rule, a hernia does not progress quickly and there are instances where a person has a hernia for many years which may never require surgery for repair. The danger of waiting for a hernia to become incarcerated or strangulated is not high, and emergencies involving hernias do not develop often. (*Id.*) Breach is currently being treated with restrictions related to lifting, walking, standing and wearing a truss in an attempt to keep his hernia from becoming larger. A truss is used to decrease the discomfort and to decrease the possibility of the hernia becoming larger. If Breach would follow the instructions provided to him and the restrictions placed on him by the physicians currently treating him, and if he would wear the truss prescribed for him, these things would, in fact, keep his hernia from progressing. (*Id.*) Dr. Hobbs continues to follow Breach and has formulated the medical opinion that the situation with regards to his hernia is not becoming progressively worse. (*Id.*)

Breach's hernia is not life threatening and does not require surgical intervention and surgery is not medically necessary. Breach's hernia is easily reducible, non-strangulated, and is not incarcerated. Surgery is not Breach's only option, and it is not medically necessary.

CMS does not have a specific policy or protocol with regard to the care and/or treatment of hernias. Nor, to the knowledge of CMS, does the Alabama Department of Corrections. Each inmate's complaint of a hernia is treated on a case-by-case basis and an inmate's hernia is treated with surgery if it becomes medically necessary. CMS does not have a specific policy and or protocol with regards to when to perform surgery or not perform surgery. Each is treated on a case by case basis depending on the type of hernia,

{B0795155}

the location of the hernia, whether surgery is medically necessary  and the medical condition of the inmate.

### III.  DISCUSSION

Given that the Plaintiff's Motion for Relief, contained in his Amended Complaint, requests that this Court afford Plaintiff a certain type of medical attention, i.e., surgery to correct a hernia, the Plaintiff must necessarily demonstrate his entitlement to such relief. At a minimum, Plaintiff must establish the necessary elements for the issuance of injunctive relief, including the following:

(1)    A substantial likelihood that he will ultimately prevail on the merits;

(2)    That he will suffer irreparable injury unless the injunction issues;

(3)    That the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing party; and

(4)    That the injunction, if issued, would not be adverse to the public interest.

See e.g. Shatel Corp. v. Mao Ta Lumber & Yacht Corp., 697 F.2d 1352, 1354-1355 (11th Cir. 1983).

Plaintiff's Motion for Relief does not even begin to address these elements, much less has purported entitlement to injunctive relief against CMS.  Even taking an extremely liberal reading of Plaintiff's Motion for Relief, he, at most, only addresses the first necessary element of proof.  As demonstrated below, the undisputed evidence presented by this named defendant establishes that there is no likelihood plaintiff will prevail on the merits of any claims asserted in this action against CMS.

{B0795155}

**A.    Plaintiff's purported § 1983 claim against CMS is fundamentally flawed.**

It appears that the plaintiff, Breach, is attempting to claim that CMS is allegedly violating his constitutional rights under the Eighth Amendment.  In Estelle v. Gamble, 429 U.S. 97 (1976), the United States Supreme Court first inferred a prisoner's "rights" to necessary medical care from the text of the Eighth Amendment.  In reaching this conclusion, the Estelle court held that the prohibition against cruel and unusual punishment in the Eighth Amendment prohibits prison officials from acting with "deliberate indifference" with regard to prisoner's serious medical needs.  429 U.S. at 104.  Since Estelle, the courts have routinely recognized that the Eighth Amendment[1] to the United States Constitution governs the conditions of confinement for prisoners and the treatment of these prisoners during the term of their incarceration.   Farmer v. Brennan, 511 U. S. 825, 832 (1974) (quoting Helling v. McKinney, 509 U. S. 25, 31 (1993)); see also Whitley v. Albers, 475 U. S. 312, 327 (1986); Rhodes v. Chapman, 452 U. S. 337, 345-46 (1981).

An alleged claim of "deliberate indifference" under the Eighth Amendment may be actionable under 42 U.S.C. § 1983.[2]  See Graham v. Connor, 490 U. S. 386, 393-94

---

[1] Though liability arising out of the treatment of pretrial detainees triggers Fourteenth Amendment considerations, "the minimum standard for providing medical care to a pretrial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner . . . ." See Hahn v. DeKalb Co., 774 F.2d 1567, 1573-74 (11th Cir. 1985).  The extent CMS relies upon any cases addressing the application of the Fourteenth Amendment in a prison context, such cases are equally applicable in this case.

[2] 42 U.S.C. § 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights,

{B0795155}

(1989)(recognizing that § 1983 is not a source of "any substantive right," but rather provides a means for "vindicating federal rights elsewhere conferred."). Every claim by a prisoner that he has not received adequate medical treatment does not state a violation of the Eighth Amendment. McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999). The courts have devoted an extraordinary amount of time in clearly defining the requirements for asserting and succeeding upon an Eighth Amendment claim under § 1983. Both the Supreme Court and the Eleventh Circuit have described the Eighth Amendment standard of deliberate indifference as requiring allegations and evidence of both "objective" and "subjective" components. See e.g. Farmer, 511 U. S. 825 at 834-837; Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004).

The "objective" component of the Eighth Amendment analysis requires a prisoner to demonstrate the existence of a condition, act or omission which is sufficiently egregious to violate the Eighth Amendment. See Hudson v. McMillan, 503 U.S. 1, 8 (1992). The underlying conduct or condition must be "extreme" and pose "unreasonable risk of serious damage to his future health," if left unchecked. Chandler, 379 F.3d at 1289-90 (quoting Hudson, 503 U. S. at 9) (other citations omitted). At a minimum, a prisoner must allege and establish the existence of "a serious medical need." Chandler, 379 F.3d at 1289-90; Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). The Eleventh Circuit's longstanding definition of "serious medical need" is a condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that

---

privileges, or immunity secured by the Constitution and laws, shall be liable to the party injured in an action at law, sued in equity, or other proper proceedings for redress . . . .

{B0795155}

even a lay person would easily recognize the necessity for a doctor's attention." <u>See</u> <u>e.g.</u> <u>Farrow</u>, 320 F.3d at 1243 (citing <u>Hill v. DeKalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir. 1994) (internal quotations omitted)).  Additionally, the serious medical need must be such that, if left untreated, "Pos[es] a substantial risk of serious harm." <u>Farmer</u>, 511 U. S. at 834.  The burden falls squarely upon plaintiff to allege and ultimately establish the existence of a serious medical need.  <u>See</u> <u>e.g.</u> <u>Hamm v. DeKalb Co.</u>, 774 F.2d 1567 (11th Cir. 1985).

Even assuming plaintiff successfully identified and established the existence of a "serious medical need," he must also establish the "subjective" component of an Eighth Amendment violation.  Plaintiff must prove CMS acted and continues to act with "deliberate indifference." <u>See</u>, <u>e.g.</u>, <u>Farmer</u>, 511 U. S. at 837.  This subjective component requires evidence that CMS possesses actual knowledge of "an excessive risk to inmate health or safety" and disregarded and continues to disregard that risk.  <u>Id.</u> at 837. Evidence demonstrating CMS failed "to alleviate a significant risk that [they] should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment" or serve as a basis for a claim of deliberate indifference.  <u>Burks v. Sikes</u>, 169 F.3d 1353, 1363-1364 (11th Cir. 1999) (other citations omitted); <u>see</u> <u>also</u>, <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1491 (11th Cir. 1996) (holding, "[t]here is no liability for 'an official's failure to alleviate a significant risk they should have perceived but did not . . . .'" (quoting <u>Farmer</u>, 511 U. S. at 838)).  The court summarized this component as requiring evidence of a "subjectively sufficiently culpable state of mind." <u>Id.</u> at 1491 (other citations and internal quotations omitted).

8

{B0795155}

It is incumbent upon a prisoner asserting a § 1983 claim to establish "conscious or callous indifference" on the part of the prison official.  See, e.g. Daniels v. Williams, 474 U.S. 327 (1986); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11th Cir. 1990).  For example, a prisoner's § 1983 claim for inadequate medical treatment cannot survive summary judgment unless and until the inmate produces evidence (of the prison official's subjective awareness) of the alleged medical condition and an "intentional refusal [by the official] to provide . . . care."  Id.; Campbell v. Sikes, 169 F.3d 1353, 1364 (11th Cir. 1999) (quoting Steele v. Shaw, 87 F.3d 1266, 1269 (11th Cir. 1996); Hill, 40 F.3d at 1186).  Without evidence of this "specific intent," a prison's § 1983 claim cannot succeed.  Steele, 87 F.3d at 1269.

The courts have devoted a significant amount of time identifying the specific types of allegations which **do not** give rise to the claim of "deliberate indifference."  In declaring the "deliberate indifference" standard for the first time, the Estelle court wrote, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." 429 U.S. at 106.  The Eleventh Circuit in Chandler held a prison's discomfort does not give rise to an Eighth Amendment violation.  379 F.3d at 1295 (citations omitted).  Applying Estelle, the Eleventh Circuit also noted that a complaint that prison medical staff should have done more to diagnose and/or treat a prisoner is "at most . . . medical malpractice."  Campbell, 169 F.3d at 1363.  Indeed, the Eighth Amendment does not prohibit or provide any remedy for any "accidental inadequacy . . . or even medical malpractice actionable under state law."  Taylor v. Adams, 221 F.3d

{B0795155}

2154, 2158 (11th Cir. 2000) (quotations and omissions and citations omitted).  For this reason, medical decisions not to or when to provide certain types of medical treatment, such as an x-ray are not actionable as a matter of law under the Eighth Amendment.  Id.

In instances where inmates acknowledge treatment but contest the manner in which treatment is provided, courts have applied an altered analysis of claims involving requests for different or alternative types of medical treatment.  When an inmate claims "different treatment should have been provided," such a claim "is tantamount to a medical judgment call," not an Eighth Amendment violation.  McElligott, 182 F.3d at 1295.  In greater detail, the Eleventh Circuit explained in Hamm:

> Although Hamm may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.  See Bass v. Sullivan, 550 F.2d 229, 231-32 (5th Cir., cert. denied, 434, U.S. 864, 98 S. Ct. 195, 54 L. ed. 2d 138 (1977); accord, Westlake v. Lucas, 537 F.2d 857, 860 n. 5 (First Cir. 1981) ("where a prisoner has received . . . medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment and to constitutionalize claims that are sound in tort law.")

774 F.2d at 1575.  Accordingly, in instances where prisoners request different medical treatment, prisoners must overcome a much greater threshold in order to state and/or succeed upon such a § 1983 claim.

In this present action, Plaintiff's complaints against CMS arise solely out of the treatment prescribed for him by the medical staff at the Limestone Correctional Facility located in Athens, Alabama, since November 1, 2007.  The Plaintiff claims his medical condition, the hernia, necessitates surgery, whereas the medical staff, including the treating physician are of the opinion that surgery is not medically necessary.  In other

words, Plaintiff's complaints fall squarely within the ambit of those claims prohibited by Hamm, i.e., claims that attempt to "second guess medical judgment." There is simply no evidence that plaintiff was ever denied any treatment, refused any treatment, or told he would not receive any treatment of any kind, which was necessary at that time. Plaintiff's dissatisfaction with his treatment is of no consequence under § 1983. The evidence demonstrates that, on each occasion, plaintiff requested evaluation by the medical staff, such a evaluation has been provided. With regard to CMS in particular, plaintiff's complaint and motion for relief lacks any reference to any misconduct, misdeed, deliberately indifferent act or other tortuous act of any kind of CMS, as a corporate entity. Accordingly, there is no allegation or evidence to substantiate any claim that CMS acted with deliberate indifference towards the plaintiff during the time of incarceration.

Breach "has no constitutional right to specific medical treatment on demand simply because he thinks he needs a certain procedure nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical personnel." McLaughlin v. Darbouze, 2007 WL 484550 (M.D. Ala.) citing Hudson v. McMillan, 503 U.S. 1, 9 (1972) ("society does not expect that prisoners will have unqualified access to health care"). "Further, to the extent plaintiff's claims is based upon his own disagreement with the prison medical staff about his medical treatment, such claim does not amount to deliberate indifference." Id., citing Estelle, 429 U.S. at 107; Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985).

{B0795155}

In Breach's present motion for relief, he fails to come forward with any evidence showing that CMS knew the manner in which Breach was being treated created a substantial risk to him and that CMS disregarded that risk. In the absence of such a showing, Breach's motion for relief is due to be denied. See McLaughlin, 2007 WL 484550 (M.D. Ala.).

Hernias are a routine problem for correctional medical service providers. Federal courts have examined specific hernia diagnosis to determine whether constitutional violations have occurred. In cases dealing with easily reducible inguinal hernias, like Mr. Breach's, courts have routinely found no constitutional violation when a treating physician rejects an inmates request for surgical intervention.

In Miller v. Wilson, 1996 U. S. Dist. Lexis 19584 (Oct. 18, 1996), a prisoner presented an identical fact patten to Judge William Cassidy of the United States District Court for the Southern District of Alabama. In that matter, a prisoner suffered a "non-scrotal, easily reduced left inguinal hernia." There, as in the present matter, the plaintiff sought surgical intervention due to excessive and extensive pain complaints and inability to exercise. Id. at 2. Correctional medical physicians diagnosed the hernia, found it to be easily reducible, and noted, by affidavit testimony, that the repair of the hernia would be "strictly . . . elective." Id. Judge Cassidy rejected the plaintiff's argument, noting the extensive and proper medical treatment provided to the plaintiff of his condition. Cassidy's order noted that in response to the plaintiff's complaints regarding his hernia, "the plaintiff received a bottom bunk assignment, light work duty, Tylenol, and a scrotal support." Id. at 3. More importantly, Judge Cassidy stated as follows:

12

That Miller has not received surgery or stronger pain medication amounts not to deliberate indifference but rather simply to a difference of opinion between plaintiff and Dr. Wilson regarding appropriate medical treatment for an easily reducible, non-strangulated inguinal hernia. Accordingly, plaintiff's Eighth Amendments rights have not been violated. Id. at 3.

Another case in the Middle District parallels Judge Cassidy's opinion. In Reed v. Darbouze, 2006 U. S. Dist. Lexis 10919 (March 1, 2006), a prisoner incarcerated at Easterling Correctional Facility in Barbour County claimed constitutional violations when doctors failed to schedule him for a hernia surgery. There, the prisoner argued he needed surgery because of "severe pain for months . . . and nothing is being done to correct the problem." Id. at 2. Again, the Middle District rejected this argument and cited the exact same principles that apply to Mr. Breach's claim, i.e. (1) a prison official acts with deliberate indifference only when "a substantial risk of serious harm is imminent and a medical professional disregards that risk," Farmer v. Brennen, 511 U. S. 825 (1994); and (2) a difference of opinion between medical officials and a prisoner and/or his doctor does not rise to the level of a constitutional violation. (Id. citing Hamm, 774 F.2d at 1567).

In rejecting the prisoner's claim, Judge Charles Coody stated as follows:

The plaintiff's medical records demonstrate that he has received medical treatment for his hernia on numerous occasions and that he has received pain medication. The plaintiff is quite correct that he did not get surgery for his hernia, but that fact alone does not establish deliberate indifference. He was provided conservative medical treatment for the hernia. His mere desire for a different treatment modality does not establish deliberate indifference. Moreover, the plaintiff has failed to come forward with any evidence showing that the defendants knew that the manner in which they were treating him included a substantial risk to the plaintiff and they disregarded the risk. In the absence of such a showing by the plaintiff, the

13

defendants are entitled to judgment in their favor, which will be entered. Id. at 2.

The above stated cases are identical to the claims made by the plaintiff, Marcellus Breach, in the present matter.  As previously set forth, Breach "has no constitutional right to specific medical treatment on demand simply because he thinks he needs a certain procedure nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical provider."  McLaughlin v. Darbauze, 2007 WL 484550 (N.D.Ala.). "Further, to the extent the plaintiff's claims are based on his own disagreement with the prison medical staff about his medical treatment, such claims do not amount to deliberate indifference."  Id.

**B.  Plaintiff fails to state any claim against CMS for medical malpractice.**

In addition to any claims for "deliberate indifference" the plaintiff does not have any claim for "medical malpractice" against CMS.  An action for a medical malpractice is construed and governed by the Alabama Medical Liability Act ("AMLA"), Ala. Code § 6-5-541 et seq. (1975).  The AMLA applies to "any action for injury or damages or wrongful death, whether in contract or in tort, against a healthcare provider for breach of the standard of care."  See Ala. Code § 6-5-548(a), and defines the "standard of care" owed by physicians.  See Ala. Code § 6-5-541(2).

In addition to the pleading requirements set forth in Rule 8(a) of the Alabama Rules of Civil Procedure, the AMLA[3] imposes a heightened pleading requirement upon

---

[3]  The AMLA applies to "healthcare provider[s]," which includes any "medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or other healthcare provider as those terms are defined in § 6-5-481."  Ala. Code § 6-5-542(1) (1975).  Ala. Code § 6-5-481 defines "other healthcare providers" as including any "professional corporation or any person employed by physicians, dentists, or hospitals who are

persons attempting to seek redress under the act such as plaintiff.  Ala. Code § 6-5-551 states:

> In any action for injury, damages, or wrongful death, whether in contract or in tort, against a healthcare provider for breach of the standard of care, whether resulting from acts or omissions in providing healthcare, or the hiring, training, supervision, retention, or termination of care givers, the Alabama Medical Liability Act shall govern the perimeters of discovery in all aspects of the action.  The plaintiff shall include in the complaint filed in the action a detailed specification and factual description of each act and omission alleged by plaintiff to render the healthcare provider liable to plaintiff and shall include when feasible and ascertainable the date, time, and place of the act or acts.  The plaintiff shall amend his complaint timely upon ascertainment of new or different acts or omissions upon which his claim is based; provided, however, that any such amendment must be at least ninety (90) days before trial.  **A complaint which fails to include such detailed specification and factual description of each act or omission shall be subject to dismissal for failing to state a claim upon which relief may be granted.**  Any party shall be prohibited from conducting discovery with regard to any other act or omission or from introducing at trial evidence of any other act or omission.

(Emphasis applied).

The requirements of § 6-5-551 are clear and specific regarding the matters which must appear in a complaint asserting a claim under AMLA.  Indeed, § 6-5-551 mandates that any complaint failing to comply with this heightened pleading requirement "shall be subject to dismissal for failing to state a claim upon which relief may be granted." Moreover, courts interpret this requirement as mandating that a complaint asserting an AMLA claim "focused . . . on the individual practitioner who specific action is alleged to have fallen below the standard of care."  Husby v. South Alabama Nursing Home, Inc.,

---

directly involved in the delivery of healthcare services."  Ala. Code § 6-5-481(8) (1975).  Plaintiff's complaint is devoid of any mention as to whether CMS or any of its independent contractors or employees fall within the category of persons governed by the AMLA.

{B0795155}

712 So.2d 750, 753 (Ala. 1998).   Considering all of these requirements, plaintiff's Complaint and Motion for Relief fails to provide the level of factual detail necessary to institute and/or maintain any action under the AMLA.   Therefore, plaintiff's Complaint and Motion for Relief fail.

> ### C.     Breach has failed to follow the required grievance procedures for assessing medical complaints prior to filing his lawsuit, therefore, the Prison Litigation Reform Act of 1995 requires the immediate dismissal, with prejudice, of his complaint.

Prisoner litigation has become an expensive problem for states and the federal government.   Because of the problems associated with frivolous litigation, Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") in order to control frivolous prisoner lawsuits.   The Act contains multiple and mandatory provisions that <u>require</u> the dismissal of complaints identical to those asserted by Mr. Breach.

The PLRA defines prisoners as follows:

> As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program. 42 U.S.C. § 1997(e)(h).

Breach admits to being incarcerated in his complaint, therefore, meets the definition of "prisoner" as defined by the PLRA.   <u>See</u> <u>Boyd v. Corrections Corp. of America</u>, 380 F.3d 989 (6th Cir. 2004).

The PLRA requires a prisoner to exhaust all internal, administrative remedies prior to filing suit.   The PLRA requires that the court on its motion or the motion of a defendant dismiss any action with respect to prisoner conditions or medical treatment

{B0795155}

upon failing to exhaust these remedies.  42 U.S.C. § 1997(e)(a).  Those provisions state

as follows:

> (a)      Applicability of administrative remedies.
>
> No action shall be brought with respect to prison conditions under § 1983 of this title, only under federal law, by a prisoner confined in a jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
>
> (b)      The failure of state to adopt or adhere to administrative grievance procedure.
>
> The failure of a state to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under 1997(a) or 1997(c) of this title.
>
> (c)      Dismissal
>
> The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

42 U.S.C. § 1997(e)(a).

"Administrative remedies" pursuant to this Act constitute prison or jail grievance

procedures such as those identified in this Special Report.  Before filing suit, the

prisoner/plaintiff must submit his claim through this procedure and the grievance must

address the specific issue upon which the suit is based.  Failure to strictly follow these

procedures requires dismissal of the action.  Even if the prisoner/plaintiff has no

knowledge regarding the existence of the procedures, this does not relieve the

requirement.  See Zolicoffer v. Scott, 55 F. Supp. 2d 1372 (N.D.Ga. 1999), Aff'd without

opinion 252 F.3d 440 (11th Cir. 2001)).

{B0795155}

In this particular case, the plaintiff, Breach, has failed to follow the available, required administrative procedures that exist at the Limestone Correctional Facility located in Athens, Alabama. These procedures require Breach to seek administrative relief of his claim before seeking court intervention regarding his claim. His failure to follow these internal procedures concerning his medical grievance require his claim to be dismissed with prejudice. <u>Woodford v. NGO</u>, 126 S.Ct. 238 (2006).

Breach must exhaust all internal administrative remedies before seeking redress for his complaints within the legal system. Adhering to these procedures serves a two-fold interest: (1) allows Breach the opportunity to advise correctional officers or healthcare employees regarding his concerns; and (2) it permits internal procedures to address and alleviate concerns raised by prisoners through this process. More importantly, it eliminate frivolous litigation by giving both prisoner and the correctional facility the opportunity to be aware of complaints and address them prior to expensive litigation.

## <u>CONCLUSION</u>

Plaintiff's Complaint and Motion for Relief is due to be denied and dismissed on its face, due to the fact that it is disproven by the evidence now before the Court. The plaintiff's request for relief are without merit. The defendant, CMS, has demonstrated with substantial evidence and appropriate precedent that there is no genuine issue of material fact related to a constitutional violation, and that it is, therefore, entitled to a judgment in its favor as a matter of law. The plaintiff's submissions clearly fail to meet the plaintiff's required burden.

{B0795155}

Accordingly, the defendant, CMS, requests that this Special Report be treated and denominated as a motion to dismiss and/or motion for summary judgment and that this Honorable Court dismiss the plaintiff's complaint with prejudice and enter a judgment in favor of CMS.

s/Philip G. Piggott
PHILIP G. PIGGOTT
Starnes & Atchison LLP
100 Brookwood Place, 7th Floor
P.O. Box 598512
Birmingham, Alabama 35259-8512
Telephone: (205) 868-6000
Fax: (205) 868-6099
ASB#: 4379-P67P
E-mail: PGP@starneslaw.com

WILLIAM ANTHONY DAVIS, III
ASB#: 5657-D65W
E-Mail: tdavis@starneslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing system which will send notification of such filing to the following: Paul M. James, Jr. Esq., Rushton, Stakely, Johnston & Garrett, P.A., P. O. Box 270, Montgomery, AL 36101-0270, and I hereby certified that I have mailed by U. S. Postal Service the document to the following non-CM/ECF participants:

Mr. Marcellus Breach
AIS #160710
Limestone Correctional Facility
28779 Nick Davis Road
Harvest, Alabama 35749

Albert Sims Butler, Esq.
Alabama Department of Corrections
P.O. Box 301501
Montgomery, Alabama 36130-1501

19

Respectfully Submitted,


s/Philip G. Piggott
PHILIP G. PIGGOTT
Starnes & Atchison LLP
100 Brookwood Place, 7th Floor
P.O. Box 598512
Birmingham, Alabama 35259-8512
Telephone: (205) 868-6000
Fax: (205) 868-6099
ASB#:  4379-P67P
E-mail: ppiggott@starneslaw.com

20

# EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH (AIS#160710),    )
                                  )
        Plaintiff ,               )
                                  )
vs.                               )        CIVIL ACTION NO.
                                  )        2:06-cv-1133-MEF
CORRECTIONAL MEDICAL              )
SERVICES, INC., ET AL,            )
                                  )
        Defendants .              )
                                  )

### AFFIDAVIT OF WILLIAM D. HOBBS, M.D.

STATE OF ALABAMA    )
LIMESTONE COUNTY    )

Before me, the undersigned authority, in and for said county and state, personally appeared William D. Hobbs, M.D., who, after being duly sworn by me under oath, deposes and states as follows:

1.    My name is William D. Hobbs.  I am over the age of nineteen (19) years and have personal knowledge of all matters stated herein.

{B0794110}

2.     I am a medical doctor and have been a licensed physician in the State of Alabama since 2006.   I have served as the site Medical Director for the Limestone Correctional Facility in Athens, Alabama, since October, 2006.   Correctional Medical Services, Inc. ("CMS"), is the company that currently contracts with the Alabama Department of Corrections to provide medical services to inmates. It has held the contract since November 1, 2007.   Up until October 31, 2007, Prison Health Services, Inc. ("PHS"),   was the company which held the contract with the State of Alabama Department of Corrections to provide medical services and treatment to inmates incarcerated in correctional facilities within the State of Alabama.

3.     The Plaintiff, Marcellus Breach (AIS#160710) is currently incarcerated as an inmate at the Limestone Correctional Facility.   Mr. Breach was transferred to Limestone Correctional Facility on March 23, 2007.   I am familiar with Mr. Breach and have been actively involved with the medical treatment provided to him at Limestone Correctional Facility.

4.     It is my understanding that Mr. Breach has requested to be seen by a medical examiner for an independent physical examination for complaints related to his hernia.   Mr. Breach was first diagnosed with an inguinal hernia in 2005.   An inguinal hernia occurs when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole.

5.     It is my opinion that Mr. Breach does not need to be seen by a medical

{B0794110}

examiner for an independent physical examination to determine whether or not surgery is necessary. Mr. Breach does not have a right direct, indirect or femoral hernia. Mr. Breach does not have a left indirect or femoral hernia. He does have a large, easy to reduce, direct inguinal hernia on the left.

6.    As a general rule, a hernia does not progress quickly and there are instances where a person has a hernia for many years which may never require surgery for repair. The danger of waiting for a hernia to become incarcerated or strangulated is not high, and emergencies involving hernias do not develop often.

7.    We are currently treating Mr. Breach with restrictions related to lifting, walking, standing and wearing a truss in an attempt to keep his hernia from becoming larger. A truss is used to decrease discomfort and to decrease the possibility of the hernia becoming larger. If Mr. Breach would follow the instructions provided to him and the restrictions placed on him by CMS physicians, and if he would wear the truss prescribed for him, these things would, in fact, keep his hernia from progressing.

8.    I continue to follow Mr. Breach and have formulated the medical opinion that the situation with regard to his hernia is not becoming progressively worse.

9.    Mr. Breach's hernia is not life-threatening and does not require surgical intervention, and surgery is not medically necessary. His hernia is easily reducible, non-strangulated, and is not incarcerated. Surgery is not his only option, and it is not medically necessary.

{B0794110}

10.    It is my understanding that Mr. Breach has made an allegation that I am currently under investigation by the Medical Board of Examiners. This allegation is completely untrue, as I have never been made aware of any complaint filed against me.

11.    CMS has established a procedure for identifying and addressing inmate grievances at the Limestone Correctional Facility. The grievance procedure allows an inmate to communicate any healthcare related concern to the healthcare unit. Mr. Breach filed the present lawsuit against CMS alleging that CMS is failing to provide him with appropriate medical care. However, Mr. Breach has failed to exhaust the grievance procedures regarding medical care for this alleged condition. Specifically, as relates to this Complaint, Mr. Breach has neither submitted an inmate informal grievance nor an inmate grievance appeal. As such, the healthcare unit at Limestone Correctional Facility has not been afforded the opportunity to resolve Mr. Breach's medical complaints prior to filing suit.

13.    I am familiar with the standard of care of practitioners for examining and treating patients such as Mr. Breach in 2007.

14.    I have thoroughly reviewed and I am familiar with the complete medical records pertaining to the treatment of Mr. Breach during his incarceration with the Alabama Department of Corrections.

15.    It is my professional opinion, based upon my review of the medical records pertaining to Mr. Breach's care and treatment and my medical education, training and experience, that Mr. Breach is receiving medical care and treatment within the standard

{B0794110}

of care prescribed by physicians practicing institutional medicine within the State of Alabama.

FURTHER AFFIANT SAITH NOT.

Dated this the _31st_ day of _Dec_____, 200 _7_.

_William D. Hobbs, M.D._
William D. Hobbs, M.D.

STATE OF ALABAMA         )
_Limestone_ COUNTY       )

I _James Bailey Jr_ in and for said county and state, hereby certify that William D. Hobbs, M.D., whose name is signed to the foregoing and who is known to me, acknowledged before me this day, that being informed of the contents thereof, voluntarily executed the same on the day of its date.

Given under my hand the seal of this _31st_ day of December, 2007.

NOTARY PUBLIC

My Commission Expires: _8-9-2010_