IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, #160710

    Plaintiff,

Vs.                              CASE NO: 2:06-cv-1133-MEF

PRISON HEALTH SERVICES, INC., et al.,

    Defendants.

### NOTICE OF FILING/ DISCOVERY DISPUTE ON DEFENDANT PRISON HEALTH SERVICES, INC.

**COMES NOW**, the Plaintiff *Marcellus Breach* (hereinafter "Breach") in proper person "Pro Se," hereby gives written notice pursuant *to Rules 37(a)(2)(A), 37(a)(2)(B), Fed. R. Civ. P.,* and compliance with this Court's order. Plaintiff states as follows:

1.[1]    This Court issued its Discovery Order on <u>October 18, 2007.</u> [**Court Doc. No. 178 – 1**] Counsel is late in responding to discovery request. Parties who fail to understand that simple function of the rules invite judicial ire and risk the imposition of sanctions.

2.    Plaintiff has attached his letter to Counsel for PHS regarding discovery disputes.

---

[1] Attached letter to Counsel for PHS defendants regarding Discovery disputes on defendants Prison Health Services, Inc., has not been answered. Plaintiff has requested counsel to produce plaintiff "complete" Louisiana Medical Records including all faxes, grievances, nurse's notes.

WHEREFORE, plaintiff requests to place into the Record his attempts to resolve the discovery problems informally with counsel, without court intervention.

Done this 1st Day January 2008.

Marcellus Breach 160710 ®
Limestone C.F.
28779 Nick Davis. Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that I have this 1st Day of January 2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections
LEGAL DIVISION
P.O. Box 301501
Montgomery, Alabama 36101


Rushton, Stakely, Johnston, Garrett, P.A
P.O. Box 270
Montgomery, Alabama 36101

® _____
Marcellus Breach

# MARCELLUS BREACH, 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

*January 1, 2007*

RUSHTON, STAKELY, JOHNSTONE & GARRETT, P.A.
Attention:   Paul M. James, Jr.
P.O. Box 270
Montgomery, Alabama 36101

    RE:   **2:06-cv-1133-MEF/ Letter of Intent**

*Greetings & Salutations:*

The Discovery rules require that the Defendants respond to Discovery request. I have not received defendant Prison Health Services, Inc., answer to discovery request. My records reflect that you have requested additional time; I hope that ten (10) days from receipt of this letter is enough time to either answer, or correspond with me. If I do not hear from you before **January 14, 2007** I will request the Court take appropriate action. Discovery request No. # 9, served upon you Office on November 26, 2007 is overdue.

I am requesting that you please either supplement your initial discovery or, produce all of my **Louisiana Medical Records** including not limited to the "any and all" **fax report(s),** "any and all" grievances especially **No. 06-215 the "front and back"** of this particular grievance also, the "**nurses notes**". Each grievance contained in the medical records I am requesting that you insure that they are **photocopied front and back**. Please be aware that I know my medical records.

I have done what is required I hope that you will cooperate with discovery request and the rules. Out of courtesy, I have attached an excerpt to Discovery request No. 9 for your convenience.

I thank you for your time and attention; I look forward to hearing from you.

Sincerely,
Marcellus Breach

# Excerpt Discovery No. 9, Prison Health Services, Inc., filed November 26, 2007.                                                          **COPY/FILE**

III.     INTERROGATORIES:

¶ 1.    Please state the following for the plaintiff.
    a.    your name.
    b.    your duties, and responsibilities to Alabama inmates suffering with Hernias.
    c.    your length of service with the Alabama Department of Corrections.
    d.    your reasons why you are no longer employed with the ADOC
    e.    whether you agreed with an established protocol with ADOC regarding hernia treatment before rendering services at ADOC to inmates.
    f.    whether PHS established its own protocol regarding how hernia treatment would be proscribed to Alabama inmates,
    g.    whether ADOC agreed to PHS rendering medical services, PHS's hernia protocols would be followed by PHS employees and contracted medical staff.

¶ 2.    *"Identify by document"* whether there was an existing protocol regarding hernia treatment at ADOC before PHS entered contract with ADOC to provide medical care to Alabama inmates?

¶ 3.    Disclose any *"documents and reports"* relating to any PHS recommendation(s) to ADOC regarding any treatment, protocols, policies, procedures offered that would be implemented regarding the hernia treatment proffered by PHS to ADCO inmates. If any,
    a.    identify the person who rejected such reports, recommendation regarding PHS's hernia protocol.
    b.    Identify by document the proposed protocol recommendation.
    c.    Identify by document the names of all persons involved.

¶ 4.    *"Identify by document"* the names, titles, and responsibility, of staff members of PHS and ADOC who have the responsibility for approval of plaintiff's request for surgery.

¶ 5.    *"Identify by document"* the names, titles, and duties of staff members at ADOC who have the responsibility for approval of hernia repair(s) from February 2005 through October 31, 2007.

¶ 6.    *"Specifically identify by document"* the person(s) employed by PHS and any person(s) at ADOC, who was/is responsible for reviewing and updating hernia protocols, *"reports"* policies and procedures regarding medical treatment for hernias, and for requesting improvements in services since February 2005 through October 31, 2007. If any changes, please *"identify by document."*

¶ 7.    *"Specifically identify by document"*, the name(s), responsibility, of any person responsible for reporting to any regional director of PHS and/or any other personnel *"identify by document"* at ADOC, whether an superintendent or commissioner who serves as a health authority for the institutions and was the overall supervisor for clinical services regarding improvements in services and treatment of hernias.

¶ 8.    Specifically disclose any substance of any oral or written statements, agreements, communications between PHS and ADOC regarding hernia treatment and repair during February 2005 through October 31, 2007.

¶ 9.    *"Identify by document"* any and all, recommendations, request for improvements, changes, implementations of the treatment protocols, policy, procedures regarding hernia treatment from February 2005 through October 31, 2007. If any changes, *"specifically identify by document"*.

1

**Excerpt Discovery No. 9, Prison Health Services, Inc., filed November 26, 2007.**                                                    **COPY/FILE**

¶ 11.  "*Identify*" any and all person(s) at ADOC who agreed with PHS to implement the protocol regarding hernia treatment for Alabama inmates from date of your service through October 31, 2007.

¶ 12.  "*Specifically identify by document*" the procedures implemented as to how an hernia repairs are approved through PHS and ADOC.

¶ 13.  "*Identify by document*" PHS and ADOC's protocol regarding Hernia Belts and Truss.

¶ 14.  From *February 2005* through date of your response, disclose any knowledge, information, "*documents*" from anyone requesting improvement, changes updating the Protocols for hernias. If yes, state:

    a.    *identify* the incident,
    b,    *identify* person(s) requesting changes
    c.    *identify* by document of request
    d.    *specifically identify* the requested change, if submitted and disposition.

¶. 15  "*Identify by document*," any and all persons who had any involvement in final decision making regarding plaintiff's request for surgery.

¶ 16.  "*Identify by document*" any and all written reports submitted to the State Board of Examiners of any final judgment rendered against PHS, Dr. William Hobbs, M.D., Dr. Michael Robbins, M.D., and "*identify by document*" any settlement in or out of court, resulting from a claim or action for damages for personal injuries cased by an error, omission or negligence, Malpractice, deliberate indifferent, in the performance of medical professional services, or in the performance of medical professional services without consent from you date of services with ADOC through October 31, 2007, in any Court in the State of Alabama, or another.

¶ 17.  "*Identify by document*" any and all orders, recommendations by any medical providers regarding plaintiff's medical treatment to any person at ADOC & PHS from February 2005, through October 31, 2007, including all orders from South Louisiana Correctional Services, Inc., March 16, 2006 through October 31, 2006.

¶ 18.  Explain Dr. George Lyrene, M.D., job responsibility to PHS "*identify by document*" regarding any hernia treatment to an Alabama inmate.

¶ 19.  "*Identify by document*" and explain Ruth Naglich's job responsibilities to PHS regarding hernia treatment to Alabama inmates from February 2005 through October 31, 2007.

¶ 20.  "*Identify by document*" and disclose Brandon Kindard's job responsibilities to PHS regarding hernia treatment to Alabama inmates from February 2005 though October 31, 2007.

¶ 21.  From February 2005 through October 31, 2007, disclose PHS's common practice, policy, procedure followed, and "*identify by document*" for hernia repairs.

¶ 22.  From February 2005 through October 31, 2007, disclose ADOC's common practice, policy, procedures followed, and "*identify by document*" for hernia repairs.

¶ 23.  Was it ADOC's treatment protocols regarding hernia repairs and treatment that PHS entered into a contractual agreement:  PHS agreed to follow ADOC's treatment protocols regarding hernia treatment as a part of PHS standard of operation regarding hernia treatment? "*Identify by document*" with your answer.

¶ 24.  Please estimate how many Alabama inmates are diagnosed with hernia, ADOC's treatment protocol would prohibit surgery intervention until the hernia was incarcerated or in

**Excerpt Discovery No. 9, Prison Health Services, Inc., filed November 26, 2007.**                    **COPY/FILE**

danger of being incarcerated or into the scrotum since February 2005 through October 31, 2007. Identify by document and reports your figures.

## IV. REQUEST FOR PRODUCTION OF DOCUMENTS OF YOUR AGENTS

That defendant produces and permit plaintiff to inspect and to copy each of the following documents:

* RULE 33, Fed. R. Civ. P., "Business Records"

a. To permit plaintiff to inspect, analyze, and copy or photograph, *"specific document,"* implemented policies/procedures of PHS's treatment objective plain regarding hernia from February 2005 through October 31, 2007.

b. To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

d. All letters, complaints, or other **documents** in defendants possession or under his control received, sent, made, or read by defendants, or by any agent thereof, relating to the treatment being prescribed by ADOC and PHS regarding hernias since February 2005 through October 31, 2007.

e. Any and all **"reports"** made, in the defendants possession or under his control concerning Hernia belts, or a Truss.

f. Any and all **"reports"** made, in the defendants possession or under his control concerning inmates complaining about having pain from their hernias before incarceration, strangulation or into the scrotum.

## V. REQUEST FOR ADMISSIONS:

¶ 1. *Admit or deny*, you agree with the Protocol that a hernia must be incarcerated or in danger of becoming incarcerated in order to be surgically necessary?

¶ 2. *Admit or deny*, that the only way to stop a hernia from getting worse is to repair the defect through surgery?

¶ 3. *Admit or deny*, that the Anatomy of Hernia, -- the most common location for hernia is the abdomen. A hernia (rupture) is usually noticed as a lump, commonly located in the groin or the umbilical region, it appears when a portion of the tissue which lines the abdominal cavity (peritoneum) breaks through a weakened area of the abdominal wall, this can give rise to discomfort as the hernia enlarges and can sometimes be dangerous is a piece of plaintiff's intestine become trapped ('strangulated')?

¶ 4. *Admit or deny*, it is your common practice not to repair a hernia unless the hernia is incarcerated or in danger of being incarcerated or into the scrotum before surgically necessary?

¶ 5. *Admit or deny*, it is ADOC's protocol, practice not to repair a hernia unless the hernia is incarcerate or in danger of being incarcerated or into the scrotum before surgically necessary?

¶ 6. *Admit or deny*, there is almost no limit to how big a hernia could without surgery?

¶ 7. *Admit or deny* that medically there is no cure for a hernia without surgery?

¶ 8. *Admit or deny*, a strangulated hernia can become an emergency that usually requires immediate surgery?

3

**Excerpt Discovery No. 9, Prison Health Services, Inc., filed November 26, 2007.**                    **COPY/FILE**

¶ 9. *Admit or deny*, PHS has a custom, practice, not to repair hernias before the hernia is incarcerated, or in danger of being incarcerated, or into the scrotum?

¶ 10. *Admit or deny*, a truss is the cure for a hernia?

¶ 11. *Admit or deny*, plaintiff has complained about having pain when coughing, sneezing, and having bowel movements due to this hernia?

¶ 12. *Admit or deny*, the issuing of pain medication will not cure a hernia?

¶ 13. *Admit or deny*, the issuing a truss and proscribing pain medication is a cheaper method of managing a hernia?

¶ 14. *Admit or deny*, plaintiff's inguinal hernia can get larger and lead to serious medical complications?

¶ 15. *Admit or deny*, discomfort usually is experienced especially when coughing, sneezing, lifting heavy objects, or standing for long period of time?

¶ 16. *Admit or deny*, bowel movements can cause the muscles to weaken resulting into an enlargement of plaintiff's hernia?

¶ 17. *Admit or deny*, the long-term course is for a hernia to become steadily worse as times goes on, sometimes slowly and sometimes quickly when left without surgery.

¶ 18. *Admit or deny*, that the opening of a hernia cannot heal itself?

¶ 19. *Admit or deny*, medically a doctor nor a nurse practitioner cannot treat a hernia; they must be repaired through surgery?

¶ 20. *Admit or deny* that plaintiff's hernia goes into his scrotum is trapped at times and plaintiff has to work it back up into place?

¶ 21. *Admit or deny*, a truss is for temporary use?

¶ 22. *Admit or deny*, the waiting until the hernia is incarcerated or in danger of becoming incarcerated, in order to be surgically necessary can become a life or death situation?

¶ 23. *Admit or deny*, waiting until the hernia is incarcerated, in danger of becoming incarcerated in order to be surgically necessary can, or will subject a patient into sever pain?

¶ 24. *Admit or deny*, under the standard of care, a hernia ought to be repaired before it is incarcerated or in danger of becoming incarcerated and before entering the scrotum?

¶ 25. *Admit or deny*, that overexertion can cause weakness, such as simple coughing or sneezing to the hernia?

¶ 26. *Admit or deny*, the effects felt by plaintiff can range from perfectly painless, through discomfort, to being very painful indeed?

¶ 27. *Admit or deny*, a hernia ought to be inspected to ensure that it, is not becoming infected or developing into a more serious non-reducible hernia?

¶ 28. *Admit or deny*, PHS does not require its employees to conduct routine inspections on inmates' hernias?

¶ 29. *Admit or deny*, a hernia will limit a person daily activity depending on the stage of the hernia?

¶ 30. *Admit or deny*, when the hernia distends and pushes out the peritoneum forming the bottom of either the middle of the internal fossa, it is a direct or internal hernia.

¶ 31. *Admit or deny*, the very instruction Manuel given to plaintiff by Prison Health Services, Inc., the **"Fitting Instructions" for Model 67-350** states pertaining to a hernia: ". . . Limiting activity, eliminating excess weight a hernia belt or truss may provide temporary relief. However, **CURE IS SURGERY?"**

4

**Excerpt Discovery No. 9, Prison Health Services, Inc., filed November 26, 2007.**                                                                                                    **COPY/FILE**

¶ 32.   *Admit or deny*, feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum is usually a warning sign that the hernia is progressing and becoming worse?

¶ 33.   *Admit or deny*, you were the supervisor of the medical treatment proscribed to plaintiff while at ADOC?

¶ 34.   *Admit or deny*, ADOC has final authority regarding approval or disapproval of surgery for plaintiff's inguinal hernia?

¶ 35.   *Admit or deny*, there are over 300 Alabama inmates diagnosed with hernias from *February 2005* through date of your response?

¶ 36.   *Admit or deny*, a hernia is a case by case basis and are painful?

¶ 37.   *Admit or deny*, you refuse to provide plaintiff with surgery until his hernia is incarcerated or in danger of being incarcerated?

¶ 38.   *Admit or deny*, PHS has authorizes a Bradford Kindard, nurse administrator to make surgically recommendations?

¶ 39.   *Admit or deny*, under the standard of care, the Protocols pertaining to hernia treatment for Alabama inmates' subjects a patient to endure pain and suffering.

¶ 40.   *Admit or deny*, Alabama Board of Medical Examiners are not aware of the practice involved with ADOC and their medical providers, being a Protocol that a hernia must be incarcerated or in danger of being incarcerated in order to be surgically necessary.

¶ 41.   *Admit or deny*, this Protocol ought to be changed pertaining to hernias.

¶ 42.   *Admit or deny*, even if Dr. Hobbs recommended plaintiff surgery for his hernia, and because the hernia does not meet the protocol, ADOC Health Services, would have denied the recommendation regardless?

¶ 43.   *Admit or deny*, PHS has a common practice, that the hernia must be incarcerated, or in danger of being incarcerated, or into the scrotum before surgically necessary?

¶ 44.   *Admit or deny*, ADOC has a common practice, that the hernia must be incarcerated, or in danger of being incarcerated, or into the scrotum before surgically necessary?

¶ 45.   *Admit or deny*, each person may feel different degrees of pain regarding their hernia?

¶ 46.   *Admit or deny*, PHS has one standard policy, the hernia must be incarcerated or in danger of being incarcerated before surgically necessary?

¶ 47.   *Admit or deny*, PHS failed to change the protocols regarding hernias or change the treatment protocols since February 2005 through October 31, 2007?

¶ 48.   *Admit or deny*, it is the custom, practice, policy of PHS not to approve surgery for plaintiff's hernia unless his hernia is incarcerated, in danger of being incarcerated, or into the scrotum?

5