IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, #160710

    Plaintiff,

Vs.

PRISON HEALTH SERVICES, INC., et al.,

    Defendants.

CASE NO: 2:06-cv-1133-MEF

### NOTICE OF FILING/ DISCOVERY NO. 8, DISPUTE PERTAINING TO DEFENDANT RICHARD ALLEN

**COMES NOW**, the Plaintiff _Marcellus Breach_ (hereinafter "Breach") in proper person "Pro Se," hereby gives written notice pursuant _to Rules 37(a)(2)(A), 37(a)(2)(B), Fed. R. Civ. P.,_ and compliance with this Court's order. Plaintiff states as follows:

1.  Plaintiff has attached his letter to Counsel for ADOC regarding discovery dispute regarding defendant Richard Allen pursuant to the Court Discovery Order entered on October 18, 2007 [Court Doc. No. 178-1] Defendant has not answered nor requested an extension of time.

1

WHEREFORE, plaintiff requests to place into the Record his attempts to resolve the discovery problems informally with counsel, without court intervention.

Done this 31ST Day December 2007.

Marcellus Breach 160710 ®
Limestone C.F.
28779 Nick Davis. Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this 31ST Day of December 2007, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections
P.O. Box 301501
Montgomery, Alabama 36101


Rushton, Stakely, Johnston, Garrett, P.A
P.O. Box 270
Montgomery, Alabama 36101

® 
Marcellus Breach

2

# MARCELLUS BREACH, 160710

Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

*January 1, 2008*

Alabama Department of Corrections
Kim T. Thomas & Albert S. Butler
Legal Division
P.O. Box 301501
Montgomery, Alabama 36130

    RE: **2:06-cv-1133-MEF**     *Letter of Intent/ Discovery Request No. 8*

Dear Counsel:

My records reflect that I have not received defendant Richard Allen's response to discovery request served on November 26, 2007. Also, my records reflect that you have requested additional time. Due to your schedule and the volumous discovery request, I hope that twenty-one days from receipt of this letter is enough time to either answer, or correspond with me. If I do not hear from you before within the twenty – one days I will request the Court take appropriate action. Discovery request No. # 8, served upon your Office on November 26, 2007 is overdue.

ADOC has full control to retrieve my Louisiana Medical Records and they have not been produced. I am requesting that you please either supplement your initial discovery or, produce all of my **Louisiana Medical Records** including not limited to the "any and all" **fax report(s)**, "any and all" grievances especially **No. 06-215 the "front and back"** of this particular grievance also, the **"nurses notes"**. Each grievance contained in the medical records I am requesting that you insure that they are **photocopied front and back**.

I have done what is required I hope that we can work this dispute out. Out of courtesy, I have attached an excerpt to Discovery request No. 8 for your convenience.

I thank you for your time and attention; I look forward to hearing from you.

Sincerely,

*Marcellus Breach*

**Excerpt Discovery Request Richard Allen, No. 8 filed November 26, 2007.**                                                                              copy/file

*III. INTERROGATORIES*:

¶ 1. Please state the following:

   a. ADOC's duty regarding plaintiff's medical care,
   b. PHS's duty regarding plaintiff's medical care,
   c. ADOC's duty regarding plaintiff's medical care while he was at the private prison in Louisiana from March 16, 2006 through October 6, 2006.
   d. CMS's duty regarding plaintiff's current medical injury.
   e. Disclose your duty, responsibility regarding the treatment procotol regarding prisoners suffering with hernias.

¶ 2. Since February 2005 to current date of your answer, "*identify by document*" any and all Court order(s) from any Court in this State in which a judgment was rendered against ADOC and PHS separately or together to: (i) **provide independent physical examination regarding a prisoner with a hernia**, (ii) **provide medical treatment to a prisoner with a hernia?** Indicate the city; state where the charges were, the nature of the charge, the date of judgment and order, the court case number, and the disposition of the case?

¶ 3. "*Identify by document*" ADOC's responsibility to assure quality assurance of medical care to Alabama inmates and plaintiff while he was incarcerated at the private prison in Louisiana from March 16, 2006 through October 6, 2006.

¶ 4. Disclose any and all "*documents and reports*" relating to any recommendation(s) regarding the quality assurance of medical care to prisoners suffering from hernias. If any," *Identify*" the person(s) involved with such recommendation(s), the decision(s) regarding the existing hernia protocol.

   a. "*Identify by document*" the proposed protocol recommendation(s).
   b. "*Identify by document*" the names of all persons involved.

¶ 5. "*Identify by document*" the names, titles, and responsibility of staff members at SLCS, PHS and ADOC who had/have the responsibility for approval of medical treatment regarding hernias, specifically plaintiff's request for surgery during February 2005 until October 31, 2007.

¶ 6. "*Identify by document*" any and all person responsible for providing medical care to prisoner Johnny Carroll who have the responsibility for scheduling his medical appointments outside the prison regarding his hernia, evaluating requests for specialized treatment. If said person is other than who is responsible for the same duties regarding plaintiff's claim, "*identify by document*".

¶ 7. "*Specifically identify by document*" the person(s) employed, contracted by ADOC, PHS who was/is responsible for reviewing and updating hernia protocols, "*reports*" policies and procedures regarding

1

**Excerpt Discovery Request Richard Allen, No. 8 filed November 26, 2007.**

copy/file

medical treatment for hernias, and for requesting improvements in services since your contractual employment with ADOC and from February 2005 through October 31, 2007. If any changes, please *"identify by document."*

¶ 8. *"Specifically identify by document"*, the name(s), responsibility, of any person responsible for reporting to any Director, Supervisor of PHS, ADOC, and/or any other personnel *"identify by document"* at ADOC, whether superintendent or commissioner who serves as a health authority for the institutions and was the overall supervisor for clinical services regarding improvements in services and treatment of hernias.

¶ 9. Specifically disclose any substance of any oral or written statements, agreements, communications between SLCS, and ADOC regarding hernia treatment and repair during February 2005 through October 31, 2007, and March 16, 2006 through October 6, 2006.

¶ 10. *"Identify by document"* how ADOC legally and lawfully transferred plaintiff to the private prisons out of State.

¶ 11. *"Identify"* any and all person(s) at ADOC who agreed with PHS to implement a protocol regarding hernia treatment for Alabama inmates from date of their service through October 31, 2007.

¶ 12. *"Specifically identify by document"* the procedures implemented as to how hernia repairs are approved through PHS and ADOC.

¶ 13. *"Specifically identify by document"* the procedures implemented as to how hernia repairs were approved while plaintiff was incarcerated at SLCS through ADOC.

¶ 14. From *February 2005* through date of your response, disclose any and all knowledge, information, *"documents"* from any person requesting improvement, changes updating the Protocols for hernias. If yes, state:

    a.   *Identify* the incident,
    b,   *identify* person(s) requesting changes
    c.   *Identify* by document of request
    d.   *Specifically identify* the requested change, if submitted and disposition.

¶. 15 *"Identify by document,"* any and all persons who has authority as a final decision maker regarding plaintiff's request for surgery.

¶ 16. Is it common practice for ADOC's quality assurance program to allow a "no need for surgical referral at present" be based solely upon a nurse practitioner?

¶ 17. It is common practice for ADOC's quality assurance program to allow a prisoner to suffer pain due to a hernia without the cure?

¶ 18. *"Identify by document"* whether it is ADOC's quality assurance program authorization to allow a prisoners with a hernia to wait until

2

his hernia is incarcerated or in danger of being incarcerated before surgically necessary.

¶ 20. "*Identify by document*" whether it is ADOC's quality assurance program to wait until a life or death situation regarding hernias -- that the hernia is incarcerated, strangulated, trapped, or into the scrotum before PHS will authorize surgically intervention?

¶ 21. From February 2005 through October 31, 2007, disclose ADOC's common practice, policy, procedures followed, and "*identify by document*" for hernia repairs.

¶ 22. "*Identify by document*" whether ADOC's quality assurance authorization nurse practitioner Bradford Adams, and staff at Kilby Correctional Facility to simply state to a prisoner at sick call "you can sign a waiver" without inquiring into the prisoners medical complaint.

¶ 23. "*Identify by document*" each and every person involved with hernia treatment protocols with ADOC, PHS, SLCS, during February 2005 through October 31, 2007.

¶ 24. "*Identify by document*" the name of any person at ADOC who had/has authority to approve plaintiff's request for surgery.

¶ 25. "*Identify by document*" whether it is common practice of PHS to follow ADOC's quality assurance program, policy, procedures, and protocol regarding hernias?

### *IV. REQUEST FOR PRODUCTION OF DOCUMENTS OF YOUR AGENTS*

That defendant produces and permit plaintiff to inspect and to copy each of the following documents:

* *RULE 33, Fed. R. Civ. P., "Business Records"*

   a.  To permit plaintiff to inspect, analyze, and copy or photograph, "**specific document**," implemented policies/procedures of ADOC's objective plain regarding hernia from February 2005 through October 31, 2007.

   b.  To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

   c.  All letters, complaints, or other **documents** in defendants possession or under his control received, sent, made, or read by defendants, or by any agent thereof, relating to the treatment being prescribed by

3

        ADOC and PHS regarding hernias since February 2005 through October 31, 2007.

D    Any and all "**reports**" made, in the defendants possession or under his control concerning inmates complaining about having pain from their hernias before incarceration, strangulation or into the scrotum.

d.    "The policy, procedures followed regarding medical treatment to Alabama inmates suffering with hernias while at the "SLCS" the private prison in Louisiana.

### V.    *REQUEST FOR ADMISSIONS:*

¶ 1. *Admit or deny*, PHS agrees with a Protocol that a hernia must be incarcerated or in danger of becoming incarcerated in order to be surgically necessary?

¶ 2. *Admit or deny*, that the only way to stop a hernia from getting worse is to repair the defect through surgery?

¶ 3. *Admit or deny,* that the Anatomy of Hernia, -- the most common location for hernia is the abdomen. A hernia (rupture) is usually noticed as a lump, commonly located in the groin or the umbilical region, it appears when a portion of the tissue which lines the abdominal cavity (peritoneum) breaks through a weakened area of the abdominal wall, this can give rise to discomfort as the hernia enlarges and can sometimes be dangerous is a piece of plaintiff's intestine become trapped ('strangulated')?

¶ 4. *Admit or deny*, it is your common practice not to repair a hernia unless the hernia is incarcerated or in danger of being incarcerated or into the scrotum before surgically necessary?

¶ 5. *Admit or deny*, it is ADOC's protocol, practice not to repair a hernia unless the hernia is incarcerate or in danger of being incarcerated or into the scrotum before surgically necessary?

¶ 6. *Admit or deny*, there is almost no limit to how big a hernia could without surgery?

¶ 7. *Admit or deny* that medically there is no cure for a hernia without surgery?

¶ 8. *Admit or deny*, a strangulated hernia can become an emergency that usually requires immediate surgery?

¶ 9. *Admit or deny*, PHS has a custom, practice, not to repair hernias before the hernia is incarcerated, or in danger of being incarcerated, or into the scrotum?

¶ 10. *Admit or deny*, a truss is the cure for a hernia?

¶ 11. *Admit or deny*, plaintiff has complained about having pain when coughing, sneezing, and having bowel movements due to this hernia?

¶ 12. *Admit or deny*, the issuing of pain medication will not cure a hernia?

¶ 13. *Admit or deny*, the issuing a truss and proscribing pain medication is a cheaper method of managing a hernia?

**Excerpt Discovery Request Richard Allen, No. 8 filed November 26, 2007.**                                                                copy/file

¶ 14. *Admit or deny*, plaintiff's inguinal hernia can get larger and lead to serious medical complications?

¶ 15. *Admit or deny*, discomfort usually is experienced especially when coughing, sneezing, lifting heavy objects, or standing for long period of time?

¶ 16. *Admit or deny*, bowel movements can cause the muscles to weaken resulting into an enlargement of plaintiff's hernia?

¶ 17. *Admit or deny*, the long-term course is for a hernia to become steadily worse as times goes on, sometimes slowly and sometimes quickly when left without surgery.

¶ 18. *Admit or deny*, that the opening of a hernia cannot heal itself?

¶ 19. *Admit or deny*, medically a doctor nor a nurse practitioner cannot treat a hernia; they must be repaired through surgery?

¶ 20. *Admit or deny* that plaintiff's hernia goes into his scrotum is trapped at times and plaintiff has to work it back up into place?

¶ 21. *Admit or deny*, a truss is for temporary use?

¶ 22. *Admit or deny*, the waiting until the hernia is incarcerated or in danger of becoming incarcerated, in order to be surgically necessary can become a life or death situation?

¶ 23. *Admit or deny*, waiting until the hernia is incarcerated, in danger of becoming incarcerated in order to be surgically necessary can, or will subject a patient into sever pain?

¶ 24. *Admit or deny*, under the standard of care, a hernia ought to be repaired before it is incarcerated or in danger of becoming incarcerated and before entering the scrotum?

¶ 25. *Admit or deny*, that overexertion can cause weakness, such as simple coughing or sneezing to the hernia?

¶ 26. *Admit or deny*, the effects felt by plaintiff can range from perfectly painless, through discomfort, to being very painful indeed?

¶ 27. *Admit or deny*, a hernia ought to be inspected to ensure that it is not becoming infected or developing into a more serious non-reducible hernia?

¶ 28. *Admit or deny*, PHS does not require its employees to conduct routine inspections on inmates' hernias?

¶ 29. *Admit or deny*, a hernia will limit a person daily activity depending on the stage of the hernia?

¶ 30. *Admit or deny*, when the hernia distends and pushes out the peritoneum forming the bottom of either the middle of the internal fossa, it is a direct or internal hernia.

¶ 31.    *Admit or deny*, the very instruction Manuel given to plaintiff by Prison Health Services, Inc., the **"Fitting Instructions" for Model 67-350** states pertaining to a hernia: ". . . Limiting activity, eliminating excess weight a hernia belt or truss may provide temporary relief. However, **CURE IS SURGERY**?"

¶ 32. *Admit or deny*, feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum is usually a warning sign that the hernia is progressing and becoming worse?

¶ 33. *Admit or deny*, you were the supervisor of the medical treatment proscribed to plaintiff while at ADOC?

¶ 34. *Admit or deny*, ADOC has final authority regarding approval or disapproval of surgery for plaintiff's inguinal hernia?

5

**Excerpt Discovery Request Richard Allen, No. 8 filed November 26, 2007.**                                                              copy/file

¶ 35. *Admit or deny*, there are over 300 Alabama inmates diagnosed with hernias from *February 2005* through date of your response?
¶ 36. *Admit or deny*, hernias is a case-by-case basis and are painful?
¶ 37. *Admit or deny*, you refuse to provide plaintiff with surgery until his hernia is incarcerated or in danger of being incarcerated?
¶ 38. *Admit or deny*, PHS has authorizes a Bradford Kindard, nurse administrator to make surgically recommendations?
¶ 39. *Admit or deny*, under the standard of care, the Protocols pertaining to hernia treatment for Alabama inmates' subjects a patient to endure pain and suffering.
¶ 40. *Admit or deny*, Alabama Board of Medical Examiners are not aware of the practice involved with ADOC and their medical providers, being a Protocol that a hernia must be incarcerated or in danger of being incarcerated in order to be surgically necessary.
¶ 41. *Admit or deny*, this Protocol ought to be changed pertaining to hernias.
¶ 42. *Admit or deny*, even if Dr. Hobbs recommended plaintiff surgery for his hernia, and because the hernia does not meet the protocol, ADOC Health Services, would have denied the recommendation regardless?
¶ 43. *Admit or deny*, PHS has a common practice, that the hernia must be incarcerated, or in danger of being incarcerated, or into the scrotum before surgically necessary?
¶ 44. *Admit or deny*, ADOC has a common practice, that the hernia must be incarcerated, or in danger of being incarcerated, or into the scrotum before surgically necessary?
¶ 45. *Admit or deny*, each person may feel different degrees of pain regarding their hernia?
¶ 46. *Admit or deny*, PHS has one standard policy, the hernia must be incarcerated or in danger of being incarcerated before surgically necessary?
¶ 47. *Admit or deny*, PHS failed to change the protocols regarding hernias or change the treatment protocols since February 2005 through October 31, 2007?
¶ 48. *Admit or deny*, it is the custom, practice, policy of PHS and ADOC not to approve surgery for plaintiff's hernia unless his hernia is incarcerated, in danger of being incarcerated, or into the scrotum?
¶ 49. *Admit or deny*, PHS's quality assurance provides that the hernia must be incarcerated or in danger of becoming incarcerated before surgically necessary?
¶ 50. *Admit or deny*, it is routine and established at ADOC that prisoners with hernias usually cannot receive surgery until their hernia is incarcerated or in danger of becoming incarcerated?

6