IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION

MARCELLUS BREACH, #160710,

    Plaintiff,

Vs.

PRISON HEALTH SERVICES, INC.,

    Defendants.

*  *  *  *  *

CASE NO: 2:06-CV-1133-MEF

### PLAINTIFF'S REQUEST TO PURSUE VERY LIMITED DISCOVERY UPON DEFENDANTS CORRECTIONAL MEDICAL SERVICES, ("CMS")

**COMES NOW,** the Plaintiff <u>Marcellus Breach</u> (hereinafter "Breach") in proper person "Pro Se," moves this Honorable Court to grant unto him limited Discovery upon the new defendants in this action "CMS" pursuant to Fed. R. Civ. P., <u>Rules 26, 33, 34</u> and 36 and states as follows:

¶ 1. Plaintiff has received the defendant's <u>*"Answer and Special Report"*</u> and the defendants have attempted to move prematurely for summary judgment. Summary Judgment under Fed.R.Civ.P., <u>56</u> is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which the party will bear the burden of proof at trial." **Celotex Corp. v. Catrett,** 477 U.S. 317, 322, 91 L.Ed. 2d 265, 106 S.Ct. 2548 (1986). To defeat the motion for summary judgment, the nonmoving party must

merely present evidence on the basis of which a jury might return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 91 L.Ed. 2d 202, 106 S.Ct. 2506 (1986). The nonmoving party in a summary judgment motion is to be given the opportunity to "discovery that is essential to his opposition." *Anderson,* 477 U.S. @ 250.

## ISSUE NO. 1

### HISTORY REFLECTS THAT THE ALABAMA DEPARTMENT OF CORRECTIONS ACTING IN CONCERT WITH ITS MEDICAL CONTRACTORS DEVELOPED A STATEWIDE PRACTICE OF NOT REPAIRING HERNIAS UNTIL IT IS A LIFE OR DEATH SITUATION -- THE HERNIA IS INCARCERATED, STRANGULATED OR INTO THE SCROTUM

Plaintiff has researched and has learned that Federal Courts have been bombarded with prisoner suits against defendants for years regarding hernias. Most prisoners are not successful because they do not have evidence to demonstrate deliberate indifference that usually requires expert testimony. Discovery has been filed and it is proceeding through against ADOC and PHS in this case. However, CMS are now, defendants and have recently entered into a contractual agreement with ADOC to render medical care to plaintiff who has a "<u>trapped</u>" hernia and still cannot receive the necessary treatment, which is surgery to relieve his pain and suffering.

Discovery is requested for good cause because CMS has answered and they are alleging that they do not have any protocols regarding hernia treatment. Specifically, defendants have stated:

> "CMS does not have a specific policy or protocol with regards to the care and/or treatment of hernias. Nor, to the knowledge of CMS, does

the Alabama Department of Corrections. Each inmate's complaint of a hernia is treated on a case-by-case and an inmate's hernia is treated with surgery if it becomes medically necessary. CMS does not have a specific policy and or protocol with regards to when to perform surgery or not perform surgery." [See, page 4, CMS, Answer and Special Report]

### POINT "A"

### DISCOVERY INTO HOW DEFENDANTS AGREED TO MANAGE, TREAT HERNIAS THAT ARE ERRONEOUSLY LABELED AS "ELECTIVE" TREATMENT

Discovery is requested because defendant have a history of erroneously labeling hernias as "elective" as a way out to avoid their constitutional duty to provide necessary medical care. The words "elective" does not mean that plaintiff's health is not deteriorating, it does not mean that plaintiff suffers long hours in pain; also, it does not relieve the defendants to provide the only treatment for a hernia and that treatment is surgery.

Before this Court already is a load of public information Provided by the Plaintiff warning the Court that a hernia must and only can be treatment surgically. Also, surgeons have warned the Court that the <u>waiting until the hernia is incarcerated, strangulated or into the scrotum will cause severe medical complications</u> and can lead to death. This is the de facto policy of ADOC, CMS and PHS, <u>Dr. William Hobbs</u> has explained to the Court that: (i) plaintiff did not meet the Alabama Department of Correction's Protocol; and, (ii) the **Protocol states** that the hernia **must be incarcerated**

before surgically necessary, (iii) "if" plaintiff met the protocol he would have surgery. Id. Defendants de facto Protocol is challenged as unconstitutional.

History with CMS and the Alabama Department of Corrections reflects because plaintiff's hernia has been labeled as "elective" the defendant's Protocol is within their "contractual" agreement entered between the Alabama Department of Corrections and Correctional Medical Services. Judicial notice regarding "elective" treatment was/is prohibited between the medical providers "CMS" and the ADOC. In *Edwards v. Bradford*, 1997 U.S. Dist. LEXIS 15089 (S.D.Ala. 1997) Dr. George Lyrene submitted an Affidavit and Correctional Medical Services are now the current medical providers: However, according to the **contract entered** between CMS and ADOC, elective procedures are/were prohibited, just as plaintiff's elective hernia. The Court stated:

> [1]Dr. George Lyrene, who is not a party in this action, has worked in various capacities as a physician for Questcare and CMS, both of which provided health care to the inmates incarcerated with the Alabama Department of Corrections; **he is currently Medical Director for CMS** (Doc. 14, Lyrene Certificate). Lyrene stated that the **policies for Questcare and CMS were "that cataract surgery would be elective IF the cataract was on one eye only AND IF the vision was unimpaired in the other eye"** though this policy was not in writing (emphasis in original). [ . . . ] **Under the terms of the contract that existed between Questcare and the Department of Corrections, the health care provider did not have to provide elective health care, defined as "medical care which, if not provided, will not cause the Inmate's health to deteriorate or cause definite harm to the Inmate's well being"** (*see* Doc. 14, Health Services Agreement (attached to Lyrene Certificate), PP 1.3, 2.4). Id.

---

[1] This Hernia Protocol will not be in writing just as the CMS and Questcare contractual agreement regarding "elective" was stated in the contract.

It may be appropriate for the Court to hold an " in camera" inspection into the PHS and CMS contracts with ADOC pertaining to "elective" treatment because the contract is where the Protocol is established under the term: "elective".

Next, because Dr. Hobbs has stated that plaintiff must "meet" the Protocol before he can receive surgery, plaintiff's hernia "**must be incarcerated, strangulated or into the scrotum**". [Hobbs @ Id.]

Defendant Dr. George Lyrene, M.D., as Medical Director, In *Taylor v. Questcare,* **Civil Action: 93-0700-CB-M,** 1995 U.S. Dist. 14975 ( S. D. Ala. 1995) Dr. George Lyrene explains his opinion regarding the strangulated hernia which is what Dr. Hobbs states is the Alabama Department of Correction's Protocol: Dr. Lyrene the Medical Director's opinion speaks about <u>how the strangulated hernia will cause severe medical problems,</u> and also he acknowledged prisoners suffer pain from their untreated hernias:

> "Dr. Lyrene explains in his affidavit (Doc. 34) that he is responsible for the nonemergency free-world medical referrals, and regarding Plaintiff's condition, provides:
> 4. Plaintiff's entire abdomen is herniated. This would not impact on his organs as the herniation goes out of the abdomen away from his organs. Plaintiff's hernias are not a threat to his health because there is no incarceration or strangulation of the hernias. **An incarcerated hernia would be likely to cause plaintiff health problems, and a strangulated hernia would be an emergency.** Plaintiff has neither of these conditions, but is being examined on a regular basis in case there is a change in his condition. " Id.

The Court cites Dr. George Lyrene who is the Medical Director for Correctional Medical Services, regarding hernias:

> "Dr. George Lyrene, a non-defendant, filed an affidavit (Doc. 34). He advises the Court in this affidavit that he was the clinical director of Questcare from November 20, 1991, until November 19, 1994, and is now the **Medical Director for Correctional Medical Systems, Inc., the current medical provider for the Alabama Department of Corrections.** Dr. Lyrene explains:
>
> As clinical director for Questcare and currently as medical Director for CMS, I travel to twelve correctional facilities to examine and treat state prison inmates who have been referred to me by the staff physician or nurse at that facility. I approve all nonemergency free world medical referrals for state prison inmates, and I normally see the patients prior to their referral to the free world physician. At all times relevant in this lawsuit, I have been responsible for all nonemergency free world medical referrals for plaintiff.

*Talyor* further elaborated on Dr. Lyrene's Affidavit stating: "Dr. Lyrene relates that Plaintiff's hernias involve his entire abdomen but they do "not impact on his organs as the herniation goes out of his abdomen away from his organs." Dr. Lyrene claims that Plaintiff's hernias are not a threat to **Plaintiff's health as the hernias are not strangulated or incarcerated and are examined on a regular basis for the purpose of detecting a change in Plaintiff's condition. It is Dr. Lyrene's position that a patient with Plaintiff's symptoms should not be experiencing pain, but pain is subjective, and Plaintiff should know whether he is in pain, and that Plaintiff's pain should be able to be controlled with pain medication. . . . "** Id.

## POINT "B"

### *THE CRITERIA/PROTOCOL REGARDING HERNIAS POLICY MAKER*

[2]The Court is going to have to decide who is policymaker because there is a de facto policy, protocol stated by Dr. William Hobbs. That policy, protocol is challenged. **See,** *Mandel v. Doe,* 888 F.2d 783, 791-92 (11th Cir. 1989). In fact, the Alabama Department of Corrections' Commissioner Richard Allen's liability under 1983 may be established in one of four ways: (1) the constitutional deprivation was caused by a policy or custom of the local governmental entity, *or* (2), the final policymakers of the local governmental entity acted with deliberate indifference to a constitutional deprivation, *or* (3) the final policymakers of the local governmental entity delegated their authority to a subordinate who, in turn, caused a constitutional deprivation, *or* (4) the final policymakers of the local governmental entity ratified a constitutionally impermissible decision or recommendation of a subordinate employee. *Sherrod v. Palm Beach County School District,* 424 F. Supp. 2d 1341, 1344 (S.D.Fla. 2006) (emphasis added).

Plaintiff can establish the requisite "official policy" in one of two ways: (1) identifying an officially promulgated policy, or (2) identifying an unofficial custom or practice shown through the repeated acts of the final policymaker of the entity. *Grech v. Clayton County,* 335 F.3d 1326, 1329-30 (11th Cir. 2003). Plaintiff must identify the policy or

---

[2] Discovery is sought to CMS because information and belief is that the protocol is unwritten regarding hernia treatment. Plaintiff must establish this policy as a part of his claims against defendants.

7

custom, which caused his injury so that liability will not be based upon an isolated incident, *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (citations omitted), and the policy or custom must be the moving force of the constitutional violation. *Grech*, 335 F.3d at 1330. *See also* **Board of County Comm'rs v. Brown**, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ; **Gold v. City of Miami**, 151 F. 3d 1346, 1350 (11th Cir. 1998) "[M]unicipal liability under 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." **Pembaur v. City of Cincinnati**, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) ; *see also* **Church v. City of Huntsville**, 30 F.3d 1332, 1342 (11th Cir. 1994) ("Only those municipal officers who have final policymaking authority may by their actions subject the government to 1983 liability.") "State and local positive law determine whether a particular official has final policymaker authority for 1983 purposes." **Cooper**, 403 F.3d at 1221 . The discussion of these principles in <u>Church v. City of Huntsville</u> is helpful. In *Church*, the Eleventh Circuit explained: "[M]unicipal liability may be based upon (1) an action taken or policy made by an official responsible for making final policy in that area of the city's business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." **Church**, 30 F.3d at 1343.

³ As far back as 1997 there has been a <u>certain criteria regarding Hernia</u> treatment must be met involving medical providers and ADOC. In *Henry v. Wallace,* 1997 U.S. Dist. LEXIS 6448 (S.D. Ala. 1997); the prisoner prior to his incarceration in the Alabama Department of Corrections developed a hernia. After arriving at the Fountain Correctional Facility, the prisoner complained of the hernia and associated pain to a staff nurse and Dr. Wilson. The prisoner asserted that he was not administered any medication for pain and never given prompt access to medical treatment for this condition  However, in that case, being a hernia Defendant N<u>urse Carla Wasdin responded, stating:</u> **"Dr. Wilson examined you on 10/29/93. His assessment is that your hernia at this time does not meet the criteria for surgical repair."** Id.  Nuse Wasdin's statement into the Court's record in *Wallace* is similar to the evidence stated by Dr. William Hobbs in his Affidavit to the Court, that plaintiff did not meet the Protocol and if, he met the Protocol he would have surgery. The sole challenge is the custom, practice, policy that has the force of law that has left plaintiff and others suffering in pain when the treatment is available but is refused until the life or death situation being the strangulated hernia where the defendants hide behind the mere words "elective procedure".

---

³  Plaintiff, Willie J. Henry, an Alabama state inmate, initiated this action *pro se* pursuant to 42 U.S.C. 1983. Plaintiff names as Defendants the following individuals: Dr. Harold Wilson, M.D.; Nurse Carla Wasdin, R.N.; Tommy Herring, Commissioner of the Alabama Department of Corrections; Arnold Holt, Warden at Fountain Correctional Facility; Deputy Warden J. W. Ross; Lt. David Thomas; Correctional Officer James Shipp; Sgt. Wayne Gray; and Melissa Wallace, Grievance Officer for the Department of Corrections.

Regardless as to how much defendants attempt to deny that they do not have a Protocol, it is not believable because prior cases reflect that Dr. George Lyrene has been actively involved with hernias, nurses have stated that the prisoner did not meet the criteria for surgery; also, Dr. William Hobbs has stated to the Court thaw plaintiff **does not meet the Alabama Department of Corrections Protocol**. Discovery is requested.

## *ARGUMENT AS TO "CMS" SUPERVISORY LIABILITY AND INVOLVEMENT*

If plaintiff can demonstrate at summary judgment that the medical treatment proscribed to him demonstrates deliberate indifference for a jury to decide; because CMS are supervisors, they too can be liable for not having a policy to prevent the suffering, the waiting until the life of death situation, strangulated hernia that is being practiced by their physicians when surgery is available. The law is that "liability may be imposed . . . from the absence of a policy," *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991), when a constitutional injury occurs and when the failure to adopt a policy rises to the level of deliberate indifference to the need for such policy. *See City of Canton v. Harris*, 489 U.S. 378, 388-89, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (municipal liability) n10; *Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998) (observing that, "if the supervisor personally devised a deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act").

In this case, CMS are not entitled to raise qualified immunity from suit. Therefore, discovery is necessary to establish just how does CMS supervises it physicians? Why doesn't CMS have any policies, protocols regarding hernias before it is strangulated or incarcerated? Additionally, the court ought to agree that CMS should be treated as a municipality for the purposes of the plaintiffs' 1983 claims. Eleventh Circuit precedent clearly states that when a private corporation contracts with a state to perform a function traditionally within the province of the state government, including the provision of medical services to state inmates, then that corporation should be treated as a government entity and as a person acting under color of state law within the meaning of 1983. See *Buckner v. Toro,* 116 F.3d 450, 452 (11th Cir. 1997); *Howell,* 922 F.2d at 724. As such, the private entity is not entitled to qualified immunity, but certain special requirements for liability do apply. See **Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,** 507 U.S. 163, 166, 113 S. Ct. 1160, 1162, 122 L. Ed. 2d 517 (1993) (holding that municipalities do not enjoy qualified immunity, but that they "cannot be held liable unless a municipal policy or custom caused the constitutional injury"); *McDuffie v. Hopper,* 982 F. Supp. 817, 825 (M.D. Ala. 1997) (Albritton, J.) ("Those who contract to engage in government services without supervision, and for profit in a competitive marketplace, subject themselves to liability under 1983 without the protections of immunity.") In order to prove that CMS should be liable, the plaintiffs would have to demonstrate that CMS itself directly caused the violation of their

constitutional rights through their adoption of some official policy or practice. *See* **Monell v. Department of Social Services,** 436 U.S. 658, 695, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978); *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1502-03 (11th Cir. 1985). A theory of *respondeat superior* is not sufficient to support their 1983 claim; assertions that the city was generally responsible for the actions of its doctors do not provide a direct enough link between the CMS's behavior and the inmate's injury to prove liability. *See Monell,* 436 U.S. at 691-92, 98 S. Ct. at 2036-37.

The evidence of Judicial Notice and the case law demonstrates that prior to this incident, CMS had a contractual agreement with ADOC that "elective" treatment was prohibited.

In this case, the long-standing agreement is still enacted. Plaintiff request for discovery into relevant information as to what CMS has agreed with the ADOC regarding "elective" treatment for hernias.

## CONCLUSION

Through Discovery plaintiff should be able to <u>establish "a causal connection" in one of three ways: first, "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so,"</u> *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990) ; second, when the supervisor's improper "custom or policy . . . resulted in deliberate indifference to constitutional rights," *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir. 1991) ; or, third, when the facts

"support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003). CMS as <u>supervisors, are liable in their individual capacities under 1983 "either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. "</u> *Cottone*, 326 F.3d at 1360. The standard for supervisory liability in situations such as this, when the defendant supervisor was not present during the constitutional violation, is "extremely rigorous." *Braddy v. Florida Dep't. of Labor & Empl. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998).

## RELIEF

Discovery into CMS's involvement in decision making regarding approved hernia treatment via agreement with ADOC pertaining to the term "elective" for plaintiff's hernia is discoverable because hernias are unpredictable and plaintiff's hernia has been labeled as "elective" when he is in need of surgery to alleviate his pain and suffering.

Done this 15th Day January 2008.

Marcellus Breach 160710®
Limestone C.F
28779 Nick Davis Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY,** that I have this 16th Day of January 2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

**Alabama Dept. of Corrections**
**LEGAL DIVISION**
**P.O. Box 301501**
**Montgomery, Alabama 36101**


**Rushton, Stakely, Johnston, Garrett, P.A**
**P.O. Box 270**
**Montgomery, Alabama 36101**


**Starnes & Atchison, LLP**
**100 Brookwood Place, 7th Floor**
**P.O. Box 598512**
**Birmingham, Alabama 35259-8512**

® _____

Marcellus Breach

MARCELLUS BREACH 160710
LIMESTONE C.F.
28779 NICK DAVIS RE.
HARVEST, ALABAMA 35749



Legal Mail

Office of the Clerk
United States District Court
P.O. Box 711
Montgomery, Alabama 36101

