**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

MARCELLUS BREACH, #160710

      Plaintiff,

Vs.

PRISON HEALTH SERVICES, INC., et. al.,

      Defendants.

             CASE NO: 2:06-cv-1133-MEF

*MOTION TO COMPEL & SANCTIONS / RESPONSIVE ANSWERS TO DISCOVERY
REQUEST FOR PRODUCTION OF DOCUMENTS, INTERROGATORIES,
ADMISSIONS PURSUANT TO RULE 37(a)(2)), 37(b)(2))*

      ***COMES NOW***, the plaintiff Marcellus Breach (hereinafter "Breach") in proper

person "Pro Se," moves this Court to compel defendant Ruth Naglich Associate

Commissioner of Health Services at the Alabama Department of Corrections to answer

and produce requested discovery request filed on or about November 21, 2007 entitled:

*"Plaintiff's Number Seven, -- Second Set of Interrogatories and Request for Admissions,*

*For Production of Documents to Defendant Under Fed.R.Civ.P.,"* [**Court Doc. No. N/A,**

**attached Exhibit "*B*".**]. Plaintiff states in further support of his motion to compel and

request for sanctions the following grounds and facts in support of his motion:

1.      Under Rule 37(a)(2):

      (a)      To compel defendants to answer plaintiff's interrogatories in their entirety
              within a proscribed time ordered by the Court;

(b)     To require defendant to pay to plaintiff the reasonable expenses, including fees, incurred in obtaining the relief requested herein.

2.    Under Rule 37(b)(2):

(a)     To preclude defendant from asserting any objections to plaintiff's interrogatories;

(b)     To treat as contempt of court of defendant Ruth Naglich failure to answer plaintiff's interrogatories by set date by the Court.

(c)     To decide all contested issues of fact embraced by plaintiff's interrogatories in favor of plaintiff;

(d)     To strike all of defendant's defenses and to preclude defendant from introducing any evidence in support thereof;

(e)     To enter a judgment by default on the issues of liability in favor of plaintiff and against defendant under Court I, II, III, IV, V, and VI of plaintiff's complaint; and

(f)     To require defendant to pay to plaintiff the reasonable expenses, including fees, incurred in obtaining the relief requested herein.

3.    Under Rule 37(d):

(a)     In regards to withheld Louisiana medical records of the plaintiff: order that the matters contained in the withheld documents be taken to be established; refuse to allow the nonresponsive party to support or oppose claims or defenses related to the withheld documents;

4.    Under Rule 36(a):

(a)     That plaintiff request for Admissions propounded on defendant and properly served conjunctively with Discovery request [Exhibit "_B_"] be deemed admitted.

## INTERROGATORIES AND PRODUCTION OF DOCUMENTS
### FED. R. CIV. P.

Plaintiff's requests are governed under *Federal Rules of Civil Procedures*. The Request contains a preface, instructions, and definitions. The second part is prefaced with detailed instructions and definitions that has been accepted and adopted by the practice-governing attorneys. Defendants have a good number of documents in their hands that would provide plaintiff with evidence in support of his legal claim. Plaintiff's Interrogatories are designed for the defendant to go through their own records and get specific facts. It is also designed to discover further into their position and defenses. Plaintiff's request is asking for information regarding facts, documents, statements by any known witnesses and other evidence the defendants have and are using as the basis of their opposition to plaintiff's claim. Plaintiff is entitled to find out what kind of records and other documents they have that are related to his claim(s). Plaintiff seeks to identify parties, agents or employees, identify witnesses, identify documents and tangible things, and identify experts, facts and opinions: he seeks to obtain details and sequences of events and transactions. <u>Relevance is given a very broad meaning</u>. The information requested appears to be reasonably calculated to lead to discovery of admissible evidence. See, *U.S. v. Wright Motor Co., Inc.,* 536 F. 2d 1090, 1095 (5th Cir. 1976); *Southwest Hide Co., v. Goldston,* 127 F.R.D. 481, 483 (N. D. Tex. 1989).

## HISTORY OF THE CASE

Defendant Ruth Naglich has submitted an Affidavit regarding the treatment rendered to the plaintiff regarding his hernia. Discovery is pursued as to learn what information, documents and knowledge Ruth Naglich possesses. Furthermore, plaintiff is seeking relevant information as to her involvement in this case. Plaintiff has evidence that Ruth Naglich was involved in the decision to deny plaintiff surgery for his hernia while at the private prison in Louisiana; a fax report was faxed to her office regarding surgery request. Two days later, defendant Brandon Kindard called nurse Maxie with instructions that plaintiff cannot receive surgery unless his hernia is incarceration or into the scrotum.

Ruth Naglich as Associate Commissioner for ADOC has certain administrative responsibilities and duties by law regarding medical treatment to Alabama inmates suffering with hernias and, she is in the position to make changes because there is a criteria regarding "elective" treatment, and any treatment labeled as <u>elective</u> is or has been prohibited by the ADOC. Morethanless, defendant has submitted an Affidavit explaining in part that she is responsible for monitoring the components and the quality of the provision of healthcare through the ADOC's Quality Assurance Program. However, she did not explain what the Q.A. program actually is, nor how it applies to elective treatment or how the Q.A. performs regarding medical care> There is not one document regarding her role, administrative responsibilities is relevant.

Upon information and belief, Ruth Naglich as supervisor was in the position to action when she learned that plaintiff needs medical care and she didn't do it. It is believed that she is the very person who denied plaintiff surgery while in Louisiana; also, defendant is supervisor over "elective" medical care and upon information and belief, discovery into the Q.A. Program will disclose additional relevant information regarding hernias, and plaintiff's hernia being labeled as "elective treatment".

### RELEVANCY OF ADOC'S QUALITY ASSURANCE PROGRAM AND ELECTIVE TREAMTENT

Ruth Naglich according to her Affidavit is responsible for making changes or, recommending changes to hernia treatment. In *Laube v. Campbell*, 333 F. Supp. 2d 1234, (M.D. Ala. 2004) **Civil Action No.: 2:02-cv-957-T,** in a Class Action settlement, the Alabama Department of Corrections agreed to implement a Q.A. program. However, Ruth Naglich is supervisor over the Q.A. program, and plaintiff believes that there are documents regarding hernia treatment being labeled as Q.A. program ---ADOC was ordered to implement a Q.A. Program:

[1]*"QUALITY ASSURANCE*

*A. Ongoing quality management.* A quality management program consistent with nationally accepted standards shall be implemented. A monthly administrative committee shall meet to review audits designed to improve quality of health care. A quality improvement committee that includes a

---

[1] **Plaintiff inquire as to whether the Q.A. program applies to Alabama male inmates. The Q.A. program is to improve the quality of health care and Ruth Naglich is over this program. Plaintiff's hernia is labeled as "elective" information and belief is that the medical care providers do not and have agreed with ADOC not to treat "elective" medical problems and the mere label of elective is not a talisman insulating prison officials from the reach of the Eighth Amendment.**

representative of the correctional staff will perform at least quarterly reviews of major components of healthcare at each women's facility, including at least the following: access to healthcare, medication management, nursing services, physician services, access to specialty care, mental health services, pharmacy services, dental services, subcontractor services, infection control procedures, healthcare records, sick call services, intake screening and evaluations, chronic disease services, infirmary care, diagnostic services, discharge planning, and adverse patient occurrences including all deaths. The quality management program must review each of these areas, identify any deficiencies in services to prisoners as well as any staff training needs, and produce corrective plans to address the deficiencies and recommend improvements.

Performance in these areas shall be quantified on a quarterly basis, trended, and analyzed for opportunities for improvement. Remedies shall be implemented expeditiously, followed by re-measurement to assess the results of the interventions. The quality management program shall include ongoing assessment of the effectiveness of corrective plans and actions. The staffing of the women's facilities shall be reviewed by Defendants at least every six months and adjustments made to ensure adequate staffing at all times. **Id.**

### STATEMENT OF THE FACTS

[2]Ruth Naglich, the defendant has not responded to plaintiff's Interrogatories; therefore, she has waived her opportunity to object. See, *Rule 33(b)(1) & Rule 33(b)(4), Federal Rules of Civil Procedures*.

The discovery process is designed to fully inform the parties of the relevant facts involved in their case. ***Hickman v. Taylor****,* 329 U.S. 495, 501, 91 L. Ed. 451, 67 S. Ct. 385 (1947).    Under *Rule 37(a)(2),* Fed. R. Civ. P., the court may compel production of requested documents, if the documents are discoverable under *Rule 34(a),* Fed. R. Civ. P.

---

[2] **Discovery request no #7 defendant Naglich has not answered or requested additional time.**

The Q.A. program is responsible for implementation of policies, procedures, regarding hernia treatment labeled as "elective".    In *Edwards v. Bradford*, 1997 U.S. Dist. LEXIS 15089 Civil Action No. 94-0523, July 16, 1997 (S.D.Ala. 1997) Dr. George Lyrene submitted an Affidavit and Correctional Medical Services are now the current medical providers:    However, according to the **contract entered** between CMS and ADOC, elective procedures are/were prohibited, just as plaintiff's elective hernia. The Court stated:

> [3]Dr. George Lyrene, who is not a party in this action, has worked in various capacities as a physician for Questcare and CMS, both of which provided health care to the inmates incarcerated with the Alabama Department of Corrections; **he is currently Medical Director for CMS** (Doc. 14, Lyrene Certificate). Lyrene stated that the **policies for Questcare and CMS were "that cataract surgery would be elective IF the cataract was on one eye only AND IF the vision was unimpaired in the other eye" though this policy was not in writing** (emphasis in original). [ . . . ] **Under the terms of the contract that existed between Questcare and the Department of Corrections, the health care provider <u>did not have to provide elective</u> health care, defined as "medical care which, if not provided, will not cause the Inmate's health to deteriorate or cause definite harm to the Inmate's well being"** (*see* Doc. 14, Health Services Agreement (attached to Lyrene Certificate), PP 1.3, 2.4). <u>Id.</u>

The party seeking production must demonstrate that the request is relevant, i.e., calculated to lead to admissible evidence, although the requested material <u>need not itself be admissible at trial.</u>    Under *Rule 37(a)(2),* Fed. R. Civ. P., the court may compel a responsive answer to an interrogatory propounded pursuant to *Rule 33*. Further, *Rule*

---

[3]  **This Hernia Protocol will not be in writing just as the CMS and Questcare contractual agreement regarding "elective" was stated in the contract.**

*37(a)(3),* Fed. R. Civ. P., states that any "evasive or incomplete answer is to be treated as a failure to answer." Therefore, the main question as to the interrogatories and request for production of documents is why hasn't the defendant responded? Compel is necessary because defendants are, nonetheless, required to disclose what information they do possess at the time they respond. *Chubb Integrated Systems, Ltd. v. National Bank of Washington,* 103 F.R.D. 52, 60, 224 U.S.P.Q. (BNA) 1002 (D.D.C. 1984). *Shearson Lehman Hutton, Inc., v. Lambros,* 135 F.R.D. @ 199 Lexis 19034 (M.D. Fla. 1990)

The defendant has not provided plaintiff and the court any relevant information concerning Ruth Naglich's administrative responsibility regarding medical treatment applied to hernias that are labeled as "elective treatment," and her actual legal duties are discoverable and is "public information": Plaintiff is interested in identifying why was a fax report request for surgery necessary and why was it sent to Ruth Naglich? Her responsibilities regarding medical care as a supervisor is both relevant and discoverable. Plaintiff request that his Interrogatories and request for Production of Documents propounded on Ruth Naglich on or about *November 21, 2007* specifically, Interrogatories #'s **1 through 25, pg's 3 through 7 be answered.**

The Record is silent regarding information leading to the Q.A. program that is actually the overseer of how medical care will be proscribed to Alabama inmates with hernias. Ruth Naglich's responsibility regarding improvements in elective medical care is discoverable because hernias are unpredictable, and are serious while painful. Plaintiff's

health has deteriorated due to this Q.A. program standard treatment that elective treatment is prohibited until a life or death situation is unconstitutional. The Q.A. program and Ruth Naglich are the source to change this de facto protocol, policies, procedures, custom and practices of established by the ADOC and is a statewide practice of not repairing hernias until the hernia is incarcerated or strangulated or into the scrotum creating a life or death situation.   Ruth Naglich is a supervisor and she is in the position to make changes.  Plaintiff has the right to serve questions upon her that can lead to other matters and question her concerning her knowledge regarding this case.

The Records lack documents relevant to defenses regarding Ruth Naglich.  Ruth Naglich has not submitted any information regarding what her administrative responsibilities are as supervisor over ADOC's health care.    Discovery into relevant information leading up to her decision not to intervene but in the face of plaintiff being in severe pain and suffering is discoverable. Any and all documents, information, knowledge and facts that Ruth Naglich may have or, in **possession or control over, is discoverable and relevant to the subject matter.  Plaintiff inquires into Ruth Naglich's information and knowledge regarding to any de facto policy, procedures, protocols, and the Q.A. program's criteria that is followed and has the force of law leading to plaintiff's injury is discoverable**. Morethanless, discovery into as what the defendant alleges that ADOC relies on their medical providers and basically does not supervise them is discoverable when it leads to an injury in the face of information that plaintiff

needs medical treatment for an elective medical injury as labeled by their medical physicians. The defendant's theory that hernias are on a case-by-case basis, depending on the size or the hernia, is incongruous because evidence by Dr. Hobbs clearly has stated that "if" plaintiff met the Alabama Department of Corrections Protocol, he would have surgery. Id. Ruth Naglich has information regarding the ADOC, PHS and CMS's agreement and/or Protocol and discoverable.

On *November 21, 2007* the plaintiff filed a document entitled: **"Plaintiff's Number Seven, -- Second Set of Interrogatories and Request for Admissions, for Production of Documents to Defendants".** [*Attached,* & **Court Doc. N/A**] The Discovery request is directed to defendant Ruth Naglich, for Alabama Department of Corrections.

[4]On *December 26, 2007* plaintiff wrote counsel for the defendant pointing out that Ruth Naglich response was late and that plaintiff was requesting that he respond immediately. [Exhibit "*A*"]

On *December 27, 2007,* plaintiff attached the letter with a pleading entitled: **"Notice of Filing"** to the court. [*Court Doc. N/A*] explaining to counsel that Ruth Naglich has not answered the interrogatories, production of documents or the admissions request. Plaintiff explained to counsel that there are too many missing documents and that Ruth Naglich has not provided any information or documents regarding her involvement and what information, facts she has knowledge thereof. Defendant's

---

[4] Plaintiff's letter to counsel for Ruth Naglich that 15-days he requested that counsel correspond with him or, have Ruth Naglich answer the discovery request. Counsel did not request for additional of time, or corresponded with plaintiff.

counsel has not responded to the plaintiff's efforts to resolve the dispute. [**See, plaintiff's**

**affidavit at ¶¶ 2-6., & Exhibit "A "**]

*RUTH NAGLICH HAS RELEVANT INFORMATION REGARDING*
*ADOC AGREEMENT WITH MEDICAL CONTRACTORS REGARDING ELECTIVE*
*PROCEDURES/MEDICAL TREATMENT*

Defendant Ruth Naglich is a part of the ADOC hierarchy and is subject to answer

under 42 U.S.C. § 1983 that is designed "to deter state actors from using the badge of

their authority to deprive individuals of their federally guaranteed rights and to provide

relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161, 112 S.Ct. 1827,

1830, 118 L.Ed. 2d 504 (1992); *Greffey v. Alabama Department of Corrections*, 996 F.

Supp. 1368 (N.D. Ala. 1998). Supervisory liability under § 1983 occurs either when the

supervisor personally participates in the alleged unconstitutional conduct or when there

is a causal connection between the actions of the supervising officials and the alleged

constitutional deprivation. *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). The

Q.A. Program is believed to be the causal connection because Ruth Naglich has

knowledge and actually knew about the history of widespread abuse of not repairing

hernias labeled as "elective" until the life or death situation being the strangulated hernia

— the Protocol as Dr. Hobbs stated that the hernia must be incarcerated; she has been

put on notice by Dr. Lyrene demonstrated in a prior cases who explained to the Court in

Mobile Alabama being the Southern District of the United States District Court speaks of

the danger of an incarcerated hernia, <u>which will cause health problems</u>: Naglich, as the

responsible supervisor did not correct the alleged deprivation, and she failed to do so.

See, *Braddy v. Fla. Dept. of Labor & Employment*, 133 F. 3d 797, 802 (11th Cir. 1998).

[5]In *Taylor v. Questcare*, **Civil Action: 93-0700-CB-M,** 1995 U.S. Dist. 14975 ( S. D.

Ala. 1995) Dr. George Lyrene explains his opinion regarding the strangulated hernia

which is what Dr. Hobbs states is the Alabama Department of Correction's Protocol: Dr.

Lyrene the Medical Director's opinion speaks about <u>how the strangulated hernia will</u>

<u>cause severe medical problems</u>, and also he acknowledged prisoners suffer pain from

their untreated hernias:

> <u>"Dr. Lyrene explains in his affidavit (Doc. 34) that he is responsible for the</u>
> <u>nonemergency free-world medical referrals, and regarding Plaintiff's</u>
> <u>condition, provides:</u>
>
> 4. Plaintiff's entire abdomen is herniated. This would not impact on his
> organs as the herniation goes out of the abdomen away from his organs.
> Plaintiff's hernias are not a threat to his health because there is no
> incarceration or strangulation of the hernias. **An incarcerated**
> **hernia would be likely to cause plaintiff health problems, and a**
> **strangulated hernia would be an emergency.** Plaintiff has neither of these
> conditions, but is being examined on a regular basis in case there is a
> change in his condition. . . . " Id.

Ruth Naglich has information based on her position because she works with Dr.

Lyrene and oversees medical contractors as supervisor. She has knowledge as to how

treatment will be proscribed regarding hernias. She also has knowledge to the hidden

---

[5] Lyrene speaks against the strangulated Hernia will cause health problems. Dr. Hobbs has stated that the
Alabama Department of Corrections has a Protocol that states that the Hernia "must" be incarcerated
before surgically necessary. Defendant Lyrene knows, and Ruth Naglich should have known about the
danger of an incarcerated hernia and the danger of waiting until the hernia is incarcerated is challenged as
unconstitutional because it is a life or death situation and will cause gangrene, nerve entrapment even
death if not timely treated. [ Dr. Yerubandi, Affidavit Id. Court Record, submitted by the Plaintiff]

protocol of the Alabama Department of Corrections regarding ADOC's policies, procedures, protocols regarding several areas of medical treatment that are labeled as elective. In *Edwards v. Bradford*, 1997 U.S. Dist. LEXIS 15089 (S.D.Ala. 1997) Dr. Lyrene submitted an Affidavit and Correctional Medical Services are now the current medical providers. However, according to the contract entered between CMS and ADOC, elective procedures are prohibited, just as elective hernia treatment.

> "Dr. George Lyrene, who is not a party in this action, has worked in various capacities as a physician for Questcare and CMS, both of which provided health care to the inmates incarcerated with the Alabama Department of Corrections; he is currently Medical Director for CMS (Doc. 14, Lyrene Certificate). Lyrene stated that the **policies for Questcare and CMS** were "that cataract surgery **would be elective** IF the cataract was on one eye only AND IF the vision was unimpaired in the other eye" though this policy was not in writing (emphasis in original). Dr. Lyrene stated that the removal of a "single-eye" cataract is **elective surgery** because "cataracts do not cause a patient's health to deteriorate as a cataract will cloud the patient's vision until it is surgically removed, but it will not cause permanent damage to the eye." **Under the terms of the contract that existed between Questcare and the Department of Corrections, the health care provider did not have to provide elective health care, defined as "medical care which, if not provided, will not cause the Inmate's health to deteriorate or cause definite harm to the Inmate's well being" (**see** Doc. 14, Health Services Agreement (attached to Lyrene Certificate), PP 1.3, 2.4). Id.** [6]

In this case, Dr. Hobbs has stated via-Affidavit that the Alabama Department has a protocols stating that the hernia must be incarcerated or, in danger of being incarcerated before surgically necessary. This life or death situation being the protocol, Ruth Naglich

---

[6] CMS had a contractual agreement not to provide medical treatment to "elective health care". The Q.A. program that Ruth Naglich oversees, can or should have improved areas regarding "elective treatment". However, elective governing several areas of medical treatment and hernias are considered elective. Ruth Naglich knows how CMS and PHS agreed to treat "elective hernias"

has knowledge and possess information is relevant and discoverable.    In *Taylor v.*

*Questcare*, 1995 U.S. Dist. 14975 ( S.D. Ala. 1995) Ruth Naglich  explains his opinion

regarding a hernia and he has submitted an opinion to that Court but, he explains the

danger of a strangulated hernia and that it is dangerous which is the defendants de facto

protocol.

> "Dr. Lyrene explains in his affidavit (Doc. 34) that he is responsible for the
> nonemergency free-world medical referrals, and regarding Plaintiff's
> condition, provides:
> 4. Plaintiff's entire abdomen is herniated. This would not impact on his
> organs as the herniation goes out of the abdomen away from his organs.
> Plaintiff's hernias are not a threat to his health because there is no
> incarceration or strangulation of the hernias. **An incarcerated
> hernia would be likely to cause plaintiff health problems, and a
> strangulated hernia would be an emergency.** Plaintiff has neither of these
> conditions, but is being examined on a regular basis in case there is a
> change in his condition. " Id.

Ruth Naglich has a substantial amount of information regarding how ADOC

operates regarding treatment to Alabama prisoners and discovery is sought.

Furthermore in *Taylor,* Dr. Lyrene has listed his duties:

> "Dr. George Lyrene, a non-defendant, filed an affidavit (Doc. 34). He
> advises the Court in this affidavit that he was the clinical director of
> Questcare from November 20, 1991, until November 19, 1994, and is now
> the Medical Director for Correctional Medical Systems, Inc., the current
> medical provider for the Alabama Department of Corrections. Dr. Lyrene
> explains:
>
> As clinical director for Questcare and currently as medical Director for
> CMS, I travel to twelve correctional facilities to examine and treat state
> prison inmates who have been referred to me by the staff physician or
> nurse at that facility. **I approve all nonemergency free world** medical
> referrals for state prison inmates, and I normally see the patients prior to
> their referral to the free world physician. At all times relevant in this

lawsuit, I have been responsible for all nonemergency free world medical referrals for plaintiff.

[7]Dr. Lyrene relates that Plaintiff's hernias involve his entire abdomen but they do "not impact on his organs as the herniation goes out of his abdomen away from his organs." Dr. Lyrene claims that Plaintiff's hernias are not a threat to Plaintiff's health as the hernias <u>are not strangulated or incarcerated</u> and are examined on a regular basis for the purpose of detecting a change in Plaintiff's condition. It is Dr. Lyrene's position that a patient with **Plaintiff's symptoms should not be experiencing pain, but pain is subjective, and Plaintiff should know whether he is in pain, and that Plaintiff's pain should be able to be controlled with pain medication.** Dr. Lyrene notes that Plaintiff's condition has not changed within the last few years, and not since he was referred to Dr. William Garretson in 1992; the prison medical records do not go back far enough to determine how long Plaintiff's condition has been as it is. Dr. Lyrene avers that Dr. Garretson is an experienced board certified surgeon who is licensed to practice medicine in Alabama and on staff at North Baldwin County Hospital in Bay Minette, Alabama, and that he has been pleased with the quality of the many surgeries performed by Dr. Garretson on inmates." Id.

In ***Howard v. Davis***, 1995 U.S. Dist. LEXIS 9119 (S.D. Ala. 1995), Dr. George Lyrene signed off on a protocol and issued a memorandum to all health care units regarding T.B. testing for Alabama inmates:

"<u>On June 21, 1993, Dr. George Lyrene,</u> Clinical Medical Director for QuestCare, Inc., the medical care provider for the Alabama Department of Corrections, **signed off on certain TB protocol** to be followed by all prison health care workers. The outlined protocol requires, for instance, the skin testing of all inmates upon entry to the Alabama prison system and every year thereafter; of course, Fountain had been following such procedure since 1986. Some eight months later, on February 14, 1994, **Dr. Lyrene sent a memorandum to all health care units** advising the staffs that "all patients returning to a major institution from SIR, PDL, or Work Release should be retested for HIV, STD's, and T.B. Skin Test." Id.

---

[7] The Strangulated, and incarcerated hernia is the de facto criteria, protocol, policy of ADOC and PHS and CMS.

Ruth Naglich is a supervisor over medical care at ADOC, she has information

relevant to the claims before the court because she works with Dr. George Lyrene.

### STANDARD OF REVIEW

*Under Fed. R. Civ. P. 37(a)(2)*, the court may compel production of requested

documents, if the documents are discoverable under Fed. R. Civ. P. 34(a). The party

seeking production must demonstrate that the request is relevant, calculated to lead to

admissible evidence, although the requested material need not itself be admissible at

trial.

### POINT 1.
### DEFENDANT RUTH NAGLICH , M.,, HAS WAIVED HIS OBJECTIONS BY HIS
### FAILURE TO RESPOND TIMELY TO THE REQUEST

Plaintiff argues that there is no favoritism regarding the rules of Discovery.

Plaintiff also contends that the rules provide that responses and objections to requests for

production of documents, interrogatories and admissions are to be served within 30 days

of the request unless the court grants a shorter or longer time. *Rules 33, 34, 36, Federal*

*Rules of Civil Procedures*. Morethanless, the Court issued its **Discovery Scheduling Order**

[*October 18, 2007 Court Doc. 178-1, Order*].   In its Order the court directed that each

party to file its response to request for discovery within thirty (30) days of receipt of the

discovery request. Defendant Naglich has waived her right to object by failing to provide

a written response, including objections to the Request for Production of Documents,

Interrogatories, and Request for Admissions.

Under the provisions of Rule 34(b) of the Federal Rules of Civil Procedure governing requests for production of documents,

> The party on whom the request is served is shall serve a *written* response within 30 days after the service of the request.... The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event, the reasons for the objection shall be stated.

Generally, in the absence of an extension of time or good cause, the failure to file a written response in the time fixed by the rule constitutes a waiver of any objection. *Davis v. Fendler,* 650 F. 2d 1154, 1160 (9th Cir. 1981); *Krewson v. City of Quincy,* 120 F. R. D. 6 (D. Mass. 1988). *See also In Re United States,* 864 F. 2d 1153, 1156 (5th Cir. 1989) (as a general rule, when a party fails to object timely to interrogatories, production requests or other discovery efforts, objections are waived). *See, e.g., Marx v. Kelly, Hart & Hallman, P.C.,* 929 F. 2d 8, 12 (1st Cir. 1991); see also, **Coker v. Duke & Co.,** 177 F. R .D. 682; 1998 U.S. Dist. LEXIS 3780, 41 Fed. R. Serv. 3d. (Callaghan) 353, (M. D. Ala. 1998); *Godsey v. United States,* 133 F. R .D. 111, 113 (S. D. Miss. 1990); accord, *Demary v. Yamaha Motor Corp.,* 125 F. R. D. 20, 22 (D. Mass. 1989) and cases cited; *Krewson v. City of Quincy,* 120 F. R. D. 6, 7 (D. Mass. 1988); *Cephas v. Busch,* 47 F. R. D. 425 (W. D. 1963). This waiver is enforced even if the objections are based on a claim of privileged. *Marx v. Kelly, Hart & Halman, P.C.,* 929 F.2d. 8, 12 (1st Cir. 1991); *Fretz v. Keltner,* 109 F. R. D. 303, 309 (D. Kan. 1986) and cases cited; *Cardox Corp. v. Olin Matthiesen Chemical Corp.,* 23 F. R. D. 27, 31 (S.D. ILL. 1958).

As shown in the next several points, the discovery sought is not only proper but is highly appropriate and relevant: (i) it is not cumulative or duplicative in nature to the discovery materials previously provided to the plaintiff, (ii) irrelevant to a determination of the issue before this court, (iii) not reasonably calculated to lead to admissible evidence, and/or (iv) overly burdensome

The plaintiff must submit evidence that the defendant actually was aware of the significant risk of serious harm or either she directly participated in denying plaintiff surgery while he was in Louisiana or knew of the danger of an incarcerated hernia being the practice between ADOC and their medical providers for years, and deliberately failed to take any measures to correct the actions of the ones she supervises.

## POINT II
### THE RELEVANCY STANDARD

An inmate must rely on prison authorities to treat his medical needs. The government therefore has an obligation to provide medical care for those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).     Under     Rule 401, Federal Rules of Evidence, the definition of "*Relevant Evidence*" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

This Rule defines the term. The definition provides that evidence is relevant if it has *any* tendency to make the existence of a material fact more probable or less probable

than it would be without the evidence. Although it is true that some Federal Courts have purported to use a slightly different test, an analysis of most of the opinions leads to the conclusion that in practice the test advocated in *Rule 401* is consistent with that developed in most Federal Courts prior to the enactment of the Rules.

The important thing for the Judge and for counsel to remember is that the evidence does not by itself have to prove the ultimate proposition for which it is offered; nor does it have to make that ultimate proposition more probable than not. To be relevant it is sufficient that the evidence has a *tendency* to make a consequential fact even the least bit more probable or less probable than it would be without the evidence.

Fed. R. Civ. P. *26(b)(2)(iii)* the discovery of defendant's responsibility, knowledge and information regarding any agreement not to repair a hernia until the life or death situation regardless of pain and suffering is relevant when she is in the position to alleviate the danger of further health deterioration. This case is above that of mere negligence or malpractice. Also, discovery into what substance of communications made between the defendant and the Louisiana medial providers and/or any person is relevant, or any other person regarding this case is also relevant. Dr. Robbins, Dr. Hobbs and Bradford Adams when Robbins, and Dr. Lyrene have <u>never once</u> examined the plaintiff's injury and claim to have been "<u>personally involved</u>" and have personal information in this case is relevant. Thus, any information known to the defendant about plaintiff's claim regarding surgery is relevant.

Under the *Federal Rules of Civil Procedure*, parties may discover information, which is relevant and non-privileged. <u>*Rule 26(b)(1)*</u>, *Federal Rules of Civil Procedure*. Under the federal rules, relevancy is "<u>construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.</u>" *Oppenheimer Fund, Inc., v. Sanders,* 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978). Courts are required to accord discovery a broad and liberal scope in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement. *Id.; Hickman* v. *Taylor,* 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947). Where there is a doubt over relevancy, the court <u>should still permit discovery</u>. *Deitchman v. E. R. Squibb & Sons, Inc.,* 740 F.2d 556 (7th Cir. 1984). Discovery request should be allowed, "unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." *La Chemise Lacoste v. Alligator CO., Inc.,* 60 F. R. D. 164, 171 (D. Del. 1973); see *Nash v. Thielke,* 743 F. Supp. 130 (E. D. Wis. 1990)(the plaintiff was entitled to an officer's urine test results, since the officer's sobriety during the incident was an issue in the case).

The law is established and that the Eighth Amendment duty applies to medical conditions that may result in pain and suffering which serve no legitimate penological purpose. *Estelle,* 429 U.S. @ 103, 97 S.Ct. @ 290. See also, *McGuckin,* 974 F. 2d @ 1059. ([D]elay in performing surgery resulted in needless infliction of pain); *Wood v. Housewright,* 900 F. 2d 1332 (9th Cir. 1990)(with two judges holding prisoner had stated

an Eighth Amendment claim for pain inflicted by delay in treating injury, but dismissing the claim on other grounds); *Hunt*, 865 F. 2d 198 (delay in providing prisoner with replacement dentures; *Jones*, 781 F. 2d @ 771-72 (hernia which results in pain, suffering, and the inability to perform a prison job is a serious medical need which prison doctors may not ignore); *Fields v. Gander*, 734 F. 2d 1313 (8th Cir. 1984)(inmate suffering severe pain from infected tooth).

The material sought regarding Ruth Naglich  is both: (1) material sought is clearly relevant; and, (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable; (iii) has not been disclosed by the medical defendants. Because the defendant <u>has not</u> responded, the **burden is on [her] to demonstrate why discovery is not practicable**. *Grubbs v. Bradley*, 552 F. Supp. 1052, 1129 (M. D. Tenn. 1982)(court finds that provision of medical care by persons beyond the level of their training and experience constitutes deliberate indifference); *Mandel v. Doe*, 888 F. 2d 783, 789-90 (11th Cir. 1989); *Hoptowit v Ray*, 682 F. 2d 1237, 1252-53 (9th Cir. 1982)(certain staff performing functions that they are neither trained or licensed to perform).  Hernias are painful; plaintiff has been left without treatment, <u>because the only treatment is surgery</u> . The party resisting production bears the responsibility of establishing undue burden. **The Record is silent concerning defendant Ruth Naglich  in his individual capacity.**

### POINT III
### *CUMULATIVE OR DUPLICATIVE IN NATURE TO THE DISCOVERY MATERIALS PREVIOUSLY PROVIDED TO THE PLAINTIFF*

Several medical documents are concealed from plaintiff and this court. With that, there are absolutely very limited reasons as to how plaintiff's discovery request could possibly lead to being cumulative or duplicative.

The particular request for production of documents is relevant and takes the case "beyond the pleadings" and the documents are not cumulative, duplicative in nature because they are not in the record nor have been produced. Plaintiff submits an example from an *excerpt* of his **Interrogatories and request for Production of Documents** upon Ruth Naglich  and proffers that the Interrogatories are relevant:    [**See, Attached Discovery Request Page # 3 through 7: Interrogatories on Ruth Naglich , Court Doc. N/A]**

¶ 1.    Please explain the ADOC's Quality Assurance Program, *"identify by document."*

¶ 2.    *"Specifically identify by document"* any and all standards, practices and procedures, rules, regulations, policies, protocols, established, promulgated by the Q.A. program regarding medical treatment, coverage, for hernias for State prisoners at ADOC established in accordance with regulations of the State Health Officer regarding treatment for hernias.

¶ 3.    *"Specifically identify by document"* the name(s) of any State Health Officer over the Q.A. program who acts as supervisor, or other State duty, specifically regarding the treatment of hernias for Alabama inmates.

¶ 4.    *"Specifically identify by document"* any and all Q.A. scores by the State Health Officer from *February 2005* through date of your response.

¶ 5.    *"Specifically identify by document,"* any and all inspections, reports, reprimands, recommendations, of the Q.A. program regarding the treatment protocols for hernias.

¶ 6.    *"Specifically identify by document, "* the name of any and all persons, contractors, committee members, or employees of ADOC who maintain the Q.A. program.

¶ 7.    *"Specifically identify by document, "* any and all names of any person, or personnel who has sufficient authority and freedom to identify quality problems and initiate, re-solvement or provide solutions to the Q.A. program since *February 2005* through date of your response.    If any changes, explain, and identify by document.

¶ 8.    *"Specifically identify by document, "* any and all Q.A. program committee members.

¶ 9.    *"Identify by document"* and please explain in detail how the Q.A. program applies to plaintiff since his incarceration, and being transferred by ADOC to SLCS regarding his medical care.

¶ 10.    *"Specifically identify by document"* the names of any and all persons within the ADOC's administration who duties and authority is assigned to the ADOC's Q.A. program.

¶ 11.    *"Identify by document"* any and all arrangements, established in accordance with the regulations promulgated by the State Health Officer for ADOC's on going quality assurance program concerning health care processes and outcomes.    Specifically identify the area regarding treatment for hernias since *February 2005* through date of your response.

¶ 12.    *"Specifically identify by document",* the ADOC's health maintenance organization that is obligated to effectively provide, or arrange for, the provision of health care services, as established in accordance with rules promulgated by the State Health Officer for an on-going quality assurance/utilization review program concerning health care processes and outcomes.

¶ 13.*"Identify by document"* the ADOC's health maintenance organization effectively provided, or arrange for, the provision of health care services in accordance with rules promulgated by the State Health Officer for an on-going quality assurance/utilization review program concerning health care processes and outcomes to Alabama inmates and the plaintiff while

incarcerated at South Louisiana Correctional Services, from March 16, 2006 through October 6, 2006.

¶ 14. *"Specifically identify by document"* the names of any commissioner over the Q.A. program.

¶ 15. *"Specifically identify by document"* the names, qualifications, duties, authorities and responsibilities and directors, or any member of any committee or any employee of each person of the fiduciary and administration of the Q.A. program.

¶ 16. *"Specifically identify by document"* the mission of the Q.A. program and the duty and responsibility of the quality assurance supervisor regarding treatment for hernias suffered by Alabama inmates.

¶ 17. "Specifically *identify by document"* the delegated responsibility of providing medical services: any surgeries, outside patient care, to Alabama inmates at South Louisiana Correctional Services, Inc., to Prison Health Services, Inc., from February 2005 through October 31, 2007.

¶ 18. *"Specifically identify by document"* names of any and all person(s) and/or "Agent" of or for the Q.A. program who's responsibility includes updating protocols, policies, procedures regarding hernia repair.

¶ 19 *"Identify by document"* how hernia repair for Alabama inmates was covered and to be paid while plaintiff was incarcerated at South Louisiana Correctional Services, Inc.

¶ 20. "Specifically *identify by document"* how either the Q.A. programs operate regarding any approval or denial of any request for surgical repair for a hernia that is not incarcerated, strangulated or into the scrotum?
 ¶ 21. *"Identify by document"* names of persons within the ADOC who have any responsibility for monitoring the components and the quality of the provision of healthcare to those individual who are in the care, custody and control of the State of Alabama Department of Corrections (ADOC) included but not limited to these responsibilities in monitoring contracted health services at SLCS, and the administration of ADOC's Q. A. program for all health service treatment including but not limited while plaintiff was incarcerated at South Louisiana Correctional Services, Inc., regarding surgery request during *March 16, 2006* through *October 6, 2006*.

¶ 22. "Specifically *identify by document"* the Medical Director for Prison Health Services, Inc., from *February 2005* through *October 31, 2007*, and list his/her responsibilities.

¶ 23.  *"Specifically identify by document"* any and all orders regarding plaintiff that were administered as ordered, as stated in your Affidavit: "[A]nd that all orders prescribed by these providers were administered as ordered."

¶ 24.  Disclose the substance of any oral, written communication *"identify by document,"* between you and any person regarding: "that all orders prescribed by these providers were administered as ordered".

¶ 25.  "Specifically identify by document," both Prison Health Services, Inc., ("PHS"), agreement that PHS agreed to comply with ADOC's Q.A. program, its standards, practices and procedures policy, or protocols regarding the treatment to Alabama inmates suffering from hernias from February 2005 through October 31, 2007.

### POINT IV.
### *NOT REASONABLE CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE*

Information requested ought to aid this Court and a jury for a determination that prison officials <u>may not</u> avoid their duty to provide medical treatment by the simple expediency of labeling such treatment as "<u>elective</u>". The classification of surgery as elective does not abrogate the prison's duty, or power, to promptly provide necessary medical treatment for prisoners. See, *Jones,* 781 F. 2d @ 770-71 (classification of hernia as "elective surgery" did not insulate county from Eighth Amendment duty to provide proper medical care); *Johnson v. Bowers,* 884 F. 2d 1053, 1056(prisoner waiting six years for elective arm surgery was entitled to relief)(citing ***Monmouth County Corr. Inst. Inmates v. Lanzaro,*** 834 F. 2d 326, 348 n. 32 (3d Cir. 1987) cert. Denied, 486 U.S. 1006, 1-8 S.Ct. 1731, 100 L.Ed. 2d 195 (1988)); *West v. Keve,* 541 F. Supp. 534 (D. Del. 1982)(prison officials violated Eighth Amendment by not furnishing elective surgery for dysfunctional veins that were causing varying degrees of pain); ***Laaman v. Helgemoe,*** 437 F. Supp. 269,

311 (D. N. H. 1977)(elective treatment recommended by a physician but not "necessary" in a life or health saving sense, may still be constitutionally mandated if the prisoner elects to proceed with the treatment).

In this case, it is noted that plaintiff's surgery is elective. But it is still leaving him in pain and discomfort. Where surgery is elective, prison officials may properly consider the costs and benefits of treatment in determining whether to authorize the surgery, but the words "elective surgery" is not a talisman insulating prison officials from the reach of the Eighth Amendment. Each case must be evaluated on its own merits. See, *Delker v. Maass*, 843 F. Supp. @ 1400 (D. Or. 1994)(although state inmate may not have suffered long-term physical harm from nearly two-year delay in providing operation for non-incarcerated inguinal hernia, inmate was "injured" by delay for purposes of his § 1983 civil rights action, since he suffered some pain, anxiety, and restricted activity during delay.)

Plaintiff's request seeks information concerning ADOC's Q.A. program's common practice regarding monitoring hernia treatment. First, plaintiff does not seek "personnel records" in any general way. He seeks documents pertaining to the treatment, method, practice, procedures rendered by the medical providers being supervised by Ruth Naglich. Plaintiff does not seek other matters that may be in his personnel records, such as medical data or information about his records of lateness, leaves and vacations, etc.

*Secondly,* the kind of information sought is highly relevant.   The plaintiff has information that repeated complaints about mistreatment regarding hernias have been made about the medical defendants and that nothing has been done about them and their practice.   Evidence to that effect would be highly relevant to the claim of supervisory liability against defendant Dr. Robbins, Ruth Naglich, Brandon Kindard, set out in **Counts II, III, IV, VI,** of plaintiff's *Supplemental Complaint pages 25-26.* *[Court Doc No. 93]*   Whether quasi-policymakers have been deliberate indifferent in their supervision of subordinates the court must explore the supervisors' conduct in this case: -- as in *Karr,* 875 F.2d @ 1556 (jury could find that failure to take corrective action after plainly unconstitutional use of police dogs constituted deliberate indifference).   In this case, several supervisors claim that they consulted with each other, and other physicians who are defendants in this case. Discovery in this area is relevant because it is regarding the treatment proscribed by the defendants See also, *Ancata v. Prison Health Services, Inc.,* 769 F. 2d 700, 795 (11th Cir. 1985).   The same standard of deliberate indifference applies to both inadequate training and inadequate supervisions. *CF. Davis v. City of Ellensburg,* 869 F. 2d 1230, 1235 (9th Cir. 1989)(applying City of Canton to question municipal liability).   Liability applies if it is established that Dr. Robbins either has a continued practice that of allowing this nurse practitioner to make surgically recommendations while knowing that he is not qualified, Dr. Robbins can be held liable as well if established that the conduct rises to deliberate indifference; no treatment at all.   Ruth

Naglich knew about this unlawful practice, but did not take any steps necessary to stop the abuse.

### EXCERPT DISCOVERY REQUEST Ruth Naglich :

**V.    REQUEST FOR PRODUCTION OF DOCUMENTS**

That defendant produces and permit plaintiff to inspect and to copy each of the following documents:

*\* RULE 33, Fed. R. Civ. P., "Business Records"*

a.    To permit plaintiff to inspect, analyze, and copy or photograph, *"specific document,"* implemented ADOC's **Quality Assurance Program** for all health service treatment from **February 2005** through current date, **specifically the provision protocols and policies/procedures of the Q.A. program regarding hernia.**

b.    The names and *"identify by document,"* those individual(s) responsible for the implementation and maintenance of the **ADOC'S Quality Assurance Program pertaining to hernias** within the relevant time of this cause of action.

c.    To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion specifically **any and all orders prescribed by any provider that were administered as ordered** and *ADOC's Quality Assurance Program.*

g.    To disclose any and all relevant tangible *"documents"* regarding the *ADOC's Quality Assurance Program* surrounding the medical treatment given to plaintiff since his time incarcerated being **February 2005** till current date.

h.    Any and all orders prescribed by any medical providers regarding any medical treatment of the plaintiff, that were administered as ordered, please *"identify by document* from **February 2005** through current date of your answer.

f.    **To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.**

g.    **To inspect and copy any and all "documents" regarding the ADOC's Quality Assurance Program regarding hernia treatment.**

Ruth Naglich need not have had personal participation or involvement in the acts of the employees to be held liable. As a supervisor, his failure (a) to train subordinates and to establish procedures for protection of constitutional rights and (b) to take action against violations of which he had notice can be a basis for liability. *See, McCann v. Coughlin,* 698 F.2d 112 (2nd Cir. 1983); *Orpiano v. Johnson,* 632 F.2d 1096 (4th Cir. 1980); *McClelland v. Facteau,* 610 F.2d 693 (10th Cir. 1980); *Davis v. Zahradnick,* 600 F.2d 458 (4th Cir. 1979); *Dewell v. Lawson,* 489 F.2d 877 (10th Cir. 1974); *Beverly v. Morris,* 470 F.2d 1356 (5th Cir. 1972); *Roberts v. Williams,* 456 F.2d 819 (5th Cir. 1971); *Wright v. McMann,* 387 F.2d 519 (2nd Cir. 1967).

Supervisors are liable in their individual capacities under 1983 "either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. " *Cottone,* 326 F.3d at 1360 . The standard for supervisory liability in situations such as this, when the defendant supervisor was not present during

the constitutional violation, is "extremely rigorous." *Braddy v. Florida Dep't. of Labor & Empl. Sec.,* 133 F.3d 797, 802 (11th Cir. 1998) . Plaintiff can establish "a causal connection" in one of three ways: first, "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," *Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir. 1990) ; second, when the supervisor's improper "custom or policy . . . resulted in deliberate indifference to constitutional rights," *Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir. 1991) ; or, third, when the facts "support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez v. Reno,* 325 F.3d 1228, 1235 (11th Cir. 2003) .

Case law has given substance to *Estelle*'s distinction between "deliberate indifference" and not mere negligence, explicating categories of action or inaction that may constitute deliberate indifference. Court's have repeatedly found that "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County, Ala.,* 116 F. 3d 1419, 1425 (11th Cir. 1997); *Mandel v. Doe,* 888 F. 2d 783, 788 (11th Cir. 1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference"). Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a

period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. *See Harris* **v.** ***Coweta County,*** 21 F. 3d 388, 393-94 (11th Cir. 1994); ***Brown v. Hughes****,* 894 F. 2d 1533, 1537-39 (11th Cir. 1990). The Eleventh Circuit has held also held that deliberate indifference may be established by a showing of <u>grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment</u>. *See Steele* **v.** *Shah,* 87 F. 3d 1266, 1269-70 (11th Cir. 1996); ***Waldrop v. Evans****,* 871 F. 2d 1030, 1035 (11th Cir. 1989). "[W]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." ***Mandel,*** 888 F. 2d at 789; ***Ancata v. Prison Health Servs., Inc.****,* 769 F. 2d 700, 704 (11th Cir. 1985).

Plaintiff hasn't been examined by a doctor since <u>*April 30, 2007 and his health has*</u> <u>*deteriorated.*</u>    Evidence shows that since Bradford Adams, nurse practitioner first examined plaintiff and made an illegal medical decision beyond his scope of practice, plaintiff's hernia has enlarged.    Dr. Hobbs noted "Large Direct Inguinal Hernia". Bradford Adams noted "small easily reducible inguinal hernia".    It is clear that discovery into Dr. Lyrene opinion, knowledge of the facts of this case and his intentions even circumstantial place him with personally involvement as a supervisor and his failure to act lead to a more severe injury, more pain, taking a easier less efficious course of treatment as a way out is relevant.

In *Estelle,* the Supreme Court recognized that the Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration" precisely because the failure to do so "may actually produce physical 'torture or a lingering death' " or, "in less serious cases, ... **may result in pain and suffering which no one suggests would serve any penological purpose."** *Estelle,* 429 U.S. at 103, 97 S. Ct. 285 (quoting *In re Kemmler,* 136 U.S. 436, 447, 10 S. Ct. 930, 34 L. Ed. 519 (1890)). The Eleventh Circuit's cases, too, have recognized that prison officials may violate the Eighth Amendment's commands by **failing to treat an inmate's pain.** *Brown v. Hughes,* 894 F. 2d 1533 (11th Cir. 1990), In this case, the only treatment available for plaintiff's pain is "surgery".    For these reasons the material sought is relevant and should be produced.

## POINT V.
### BURDENSOME

Under well-settled law, the party resisting production bears the responsibility of establishing undue burden. *G-69 v. Degnan,* 130 F. . . 326, 331 (D.N.J. 1990). Generally, a party seeking to avoid discovery on a burdensomeness argument must substantiate that position with detailed affidavits or other evidence establishing an undue burden.

## POINT VI
### SANCTIONS ARE NECESSARY TO STOP FURTHER ABUSE THE LAW

*Federal Rules of Civil Procedure* 16 (f) and 37 (b) provide the Court with the power to sanction an offending party and award reasonable expenses under certain circumstances. Fed. R. Civ. P. 16 (f) provides, in pertinent part, that:

If a party or party's attorney fails to obey a scheduling *or pretrial order* . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in *Rule 37 (b)(2)(B), (C), (D).* In lieu of or in addition to any other sanction, the judge shall require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust. Fed. R. Civ. P. 16 (emphasis added).

Fed. R. Civ. P. 37 (b)(2) provides, in relevant part, that the Court may issue: (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

*Federal Rule of Civil Procedure 37*(b) states that "[i] f a party . . . fails to obey an order

to provide or permit discovery, . . . the court in which the action is pending may make

such orders in regard to the failure as are just," including: (1) an order designating certain

facts as established; (2) an order refusing to allow the disobedient party from supporting

or opposing claims or defenses; (3) an order striking pleadings or portions of pleadings,

staying proceedings until the order is obeyed, or rendering a default against the

disobedient party; (4) an order finding the disobedient party in contempt of court; and/or

(5) an order awarding expenses unless the failure to obey was substantially justified.

FED. R. CIV. P. 37(b)(2). To comply with the Due Process Clause of the Fifth Amendment," a court must impose sanctions that are both 'just' and 'specifically related to the particular 'claim' which was at issue in the order to provide discovery.'" **Serra Chevrolet, Inc. v. Gen. Motors Corp.,** 446 F.3d 1137, 1151 (11th Cir. 2006) (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 707, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)).

### REASONABLE MONETARY SANCTIONS

As for the monetary sanctions requested, the Eleventh Circuit has stated that "[t]he magnitude of sanctions awarded is bounded under *Rule 37* only by that which is 'reasonable' in light of the circumstances." **Carlucci v. Piper Aircraft Corp., Inc.,** 775 F.2d 1440, 1453 (11th Cir. 1985). A court can impose sanctions for the purpose of "1) compensating the court and other parties for the added expense caused by the abusive conduct; 2) compelling discovery; 3) deterring others from engaging in similar conduct; and 4) penalizing the guilty party or attorney." *Id.*

May the Court understand that Plaintiff is frustrated that Defendant failed to provide his requested discovery on time. [*See, Court Discovery Scheduling Order,* October *18, 2007 Court Doc. 178-1, Order*]. Counsel has yet to obey this Court's orders frustrates this case, leads to voluminous litigation and this Court has yet to put an end to his continued conduct.   Reasonable fees under the circumstances can be appropriate.  In addition, *Rule 37(b)* requires the payment of reasonable expenses caused by a failure to

obey the court order unless Defendant shows that the failure was justified or circumstances make the award of expenses unjust. *See* FED. R. CIV. P. 37(b)(2) ("[T] he court *shall* require the party failing to obey the order . . . to pay the reasonable expenses . . . unless . . . the failure was substantially justified . . . .") (emphasis added); *See* FED. R. CIV. P. 37 advisory committee notes (1970) (indicating that *Rule 37(b)(2)* places the burden on the disobedient party to avoid expenses). A *pro se* party may be awarded expenses under *Rule 37*. *See **Lightsey v. Potter,*** 2006 U.S. Dist. LEXIS 92904 (N.D. Ga. December 22, 2006); citing, ***Walker v. Tri-Tech Planning Consultants, Inc.,*** 149 F.R.D. 22, 22 (E.D.N.Y. 1993) ("This Court is not aware of any authority or principle of law which prevents *pro se* litigants from recovering their expenses in a *Rule 37* motion.").

*CONCLUSION*

Plaintiff has spent a lot of time, effort, and talent, in this discovery process. Plaintiff is basically tired of meeting with defendants in person, does not want to speak with them, and is very tired of their degrading remarks towards plaintiff in his effort to exercise his rights, and seek relief from his pain. Plaintiff has suffered head-aces, hernia pain, frustration behind defendants actions that is gratuitous, unacceptable, ill founded and can be determined as <u>conduct; found unjustified failures to comply, equivocation, and an explanation that are "disingenuous, contrived, and in bad faith;" determined that much of the </u>delay in this case is attributable to counsel for ADOC and can be determined that many of the hours expended by plaintiff, are "unnecessary, redundant, and

duplicative;" also, can be determined that the time records are "replete with unnecessary work and duplication" too numerous to detail, and that the hours claimed for the fee application are totally appropriate whereas, had defendants complied with this court's orders, plaintiff could have achieved much more efficiently and far less expensive discovery request furthering this case to summary judgment.

### RELIEF REQUESTED

a.    That the Court grant this motion to compel Ruth Naglich  to answer plaintiff's interrogatories, request for production of documents, and admission; and, issue sanctions upon counsel for his failure to comply with this Court's Discovery Scheduling Order, and Discovery rules; and,

b.    That this Court grant reasonable fees in the amount to $650.00, at $65.00 per hour x 10 hours for work and research in preparing, researching and fling this action; and, that the 20% as ordered be deducted from plaintiff's prison account and forwarded to the Clerk of this Court towards the court costs and clerk fees;

c.    that the costs of Inspection and Copying bear of the defendants upon the granting of this Compel of their policies/procedures, and Protocols.

d.    that this Court grants plaintiff relief and the Court order additional fees be paid to the Court for the inconvenience, and troublesome conduct demonstrated by counsel.

e.    That this Court administers and enforces justice as to what this Court deems fair and appropriate.

Done this 17 Day January 2008.

Marcellus Breach 160710®
Limestone C.F
28779 Nick Davis Rd.
Harvest, Alabama 35749

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this ⌐12 Day of January 2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

**Alabama Dept. of Corrections**
**LEGAL DIVISION**
**P.O. Box 301501**
**Montgomery, Alabama 36101**


**Rushton, Stakely, Johnston, Garrett, P.A**
**P.O. Box 270**
**Montgomery, Alabama 36101**


**Starnes & Atchison, LLP**
**100 Brokwood Place, 7thg Floor**
**P.O. Box 598512**
**Birmingham, Alabaam 35259-8512**

® _____

Marcellus Breach


COUNTY OF LIMESTONE  )


STATE OF ALABAM          )


### *DECLARATION OF THE PLAINTIFF IN SUPPORT OF COMPEL AND SANCTIONS*

Affiant in the above instrument, who after being duly sworn, deposed and says on oath that the averments in the foregoing are true to the best of his ability, information, knowledge and belief:

I am **Marcellus Breach, AIS #160710**, I am over the age of twenty-one. I am the plaintiff in this action. I make this declaration in support of my Motion to Compel and Request for Sanctions against the correctional defendants for their failure to obey this Court's order entered on **October 18, 2007 Court Doc. 178-1, Order Court's Discovery Scheduling Order.**

On *November 16, 2007,* I served on the defendant's counsel a document: **"Plaintiff's Sixth Set of Interrogatories and Request for Admissions, for Production of Documents to Defendants"** which **is attached to this affidavit as Exhibit 1.**

Defendant Ruth Naglich did not respond to this discovery request after 30 days by order of the court and rules of discovery, nor did they request an adjournment from the court or seek my agreement to an adjournment.

On *December 26, 2007* I wrote to the defendant's counsel pointing out that their responses were late and requesting that they respond immediately. A copy of my letters are attached as Exhibit "A","B".

On *December 27, 2007*, plaintiff attached his letter with a pleading entitled: "Notice of Filing" to the court. [*Court Doc. N/A*] explaining to counsel that Ruth Naglich has not answered the interrogatories, production of documents or the admissions request, Plaintiff explained to counsel that there are too many missing documents and that Ruth Naglich has not provided any

information or documents regarding his involvement and what information, facts he has knowledge thereof. Defendant's counsel has not responded to the plaintiff's efforts to resolve the dispute.

Defendants' counsel did not respond to my letters. I have written counsel numerous of times, and I have filed my notice of intent with the Court. Copies of my letters are attached. Defendant's objections are waived as a result of their failure to make them in a timely manner, as set forth in the brief accompanying this motion.

**WHEREFORE,** the plaintiff request that the court grant this motion in all respects Under the penalty of perjury the foregoing is true and correct. 28 U.S.C. 1746    This January 19th, 2008.

Marcellus Breach

# EXHIBIT "A"

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

_____

MARCELLUS BREACH, #160710

    Plaintiff,

Vs.

PRISON HEALTH SERVICES, INC., et al.,

    Defendants.

\*

\*

\*    CASE NO: 2:06-cv-1133-MEF

\*

\*

### NOTICE OF FILING

**COMES NOW**, the Plaintiff _Marcellus Breach_ (hereinafter "Breach") in proper person "Pro Se," hereby gives written notice pursuant _to Rules 37(a)(2)(A), 37(a)(2)(B), Fed. R. Civ. P.,_ and compliance with this Court's order entered on _December 4, 2007_ [**Court Doc No. 292—1, Order**] hereby files the attached for the Record:   Plaintiff states as follows:

1.[1]    **Discovery is not a game**. This Court issued its Discovery Order on _October 18, 2007._ [**Court Doc. No. 178 – 1**]  ADOC Counsel is late in responding to discovery request. Parties who fail to understand that simple function of the rules invite judicial ire and risk the imposition of sanctions.

---

[1]    **Attached letter to Counsel for ADOC defendants regarding Discovery disputes on defendants Ruth Naglich and Dr. George Lyrene, M.D., have not been answered.**

2.    Plaintiff has attached his letter to Counsel for ADOC regarding discovery requests

which have not been answered.

WHEREFORE, plaintiff requests to place into the Record his attempts to resolve

the discovery problems informally with counsel, without court intervention.

Done this 26th Day December 2007.

Marcellus Breach 160710 ®
Limestone C.F.
28779 Nick Davis. Rd.
Harvest, Alabama 35749

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that I have this 27TH Day of November 2007, placed a true
copy of the foregoing upon the following through the prison mail system properly
addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections
LEGAL DIVISION
P.O. Box 301501
Montgomery, Alabama 36101

Rushton, Stakely, Johnston, Garrett, P.A
P.O. Box 270
Montgomery, Alabama 36101

®

Marcellus Breach

# *MARCELLUS BREACH, 160710*

LIMESTONE C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

*December 26, 2007*

Alabama Department of Corrections
Kim T. Thomas & Albert S. Butler
Legal Division
P.O. Box 301501
Montgomery, Alabama 36130

RE:    **2:06-cv-1133-MEF  Letter of Intent/Discovery Disputes Discovery Request upon Defendant Dr. George Lyrene & "Second Set of Interrogatories upon Defendant Ruth Naglich**

Dear Counsel:

I have attached the excerpts that are now in dispute regarding Discovery request and I am asking that within fifteen (15) days you correspond with me, or answer the discovery request.

The Discovery rules require that the defendants respond to Discovery request. Morethanless, the Court has issued its Discovery Scheduling Order. The Court ordered that all parties file their responses to Discovery request within thirty days.

My Records reflect that there are several unanswered discovery request.  However, identifying Discovery request No. 6 on Defendant Dr. George Lyrene on November 16, 2007 was served and the thirty (30) day time limit for answering has expired and I have not received his answer and production.

Also, Defendant Ruth Naglich was served with a "Second Set" of discovery request on November 21, 2007.  Her due date of thirty (3) days would have been December 22, 2007 subtracting the Thanksgiving Holiday.  I have not received her answer pertaining to this second request.

I am hoping that perhaps you will correspond regarding the requested discovery request and also I am free to listen to any objections that you may have to them.  I strongly depreciate, I believe that it is inappropriate to have to continue to request the Court to intervene; however, I will not hesitate to request such.

**There are too many missing documents in this case**.  Also, the discovery requests are material, relevant and discoverable.  The records are voluminous because I have filed them to each person separately.

The areas of deficiency on your part is:

    (i)     ADOC defendants have not answered, responded to these discovery requests;

    (ii)    ADOC defendants have not requested an extension of time.

The attached excerpts are from the Discovery request upon Defendants Ruth Naglich and Dr. George Lyrene.

On the day 15 from receipt of this letter I will immediately file my motion to compel; the rules require that I make a good faith attempt to resolve the dispute without court action. Rules 37(a)(2)(A), 37(a)(2)(B), 37(d) Fed. R.Civ. P.

You have not provided any relevant Information from defendant George Lyrene except an affidavit. He has written an affidavit opposing surgery and discovery request upon him and his personal involvement, and information is relevant, material, and not burdensome. The information requested is a part of the prison record keeping, and is considered "business records".

I request that you have them answer the Interrogatories and production of documents accordingly. Any global objections are improper and I will ask the Court to ignore them.

For your convenience, I have attached two (2) excerpts to the discovery request pertaining to each defendant separately, individually, and jointly that has been submitted to you.

I thank you for your time and attention with this matter.


Sincerely,

Marcellus Breach

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this 27th Day of DECEMBER 2007, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections
P.O. Box 301501
Montgomery, Alabama 36101

Rushton, Stakely, Johnston, Garrett, P.A
P.O. Box 270
Montgomery, Alabama 36101

®  _____
            Marcellus Breach

any employee of each person of the fiduciary and administration of the Q.A. program.

¶ 16.   "*Specifically identify by document*" the mission of the Q.A. program and the duty and responsibility of the quality assurance supervisor regarding treatment for hernias suffered by Alabama inmates.

¶ 17.   "Specifically *identify by document*" the delegated responsibility of providing medical services: any surgeries, outside patient care, to Alabama inmates at South Louisiana Correctional Services, Inc., to Prison Health Services, Inc., from February 2005 through October 31, 2007.

¶ 18.   "*Specifically identify by document*" names of any and all person(s) and/or "Agent" of or for the Q.A. program who's responsibility includes updating protocols, policies, procedures regarding hernia repair.

¶ 19   "*Identify by document*" how hernia repair for Alabama inmates was covered and to be paid while plaintiff was incarcerated at South Louisiana Correctional Services, Inc.

¶ 20.   "Specifically *identify by document*" how either the Q.A. programs operate regarding any approval or denial of any request for surgical repair for a hernia that is not incarcerated, strangulated or into the scrotum?

¶ 21.   "*Identify by document*" names of persons within the ADOC who have any responsibility for monitoring the components and the quality of the provision of healthcare to those individual who are in the care, custody and control of the State of Alabama Department of Corrections (ADOC) included but not limited to these responsibilities in monitoring contracted health services at SLCS, and the administration of ADOC's Q. A. program for all health service treatment including but not limited while plaintiff was incarcerated at South Louisiana Correctional Services, Inc., regarding surgery request during *March 16, 2006* through *October 6, 2006.*

¶ 22.   "Specifically *identify by document*" the Medical Director for Prison Health Services, Inc., from *February 2005* through *October 31, 2007*, and list his/her responsibilities.

¶ 23.   "*Specifically identify by document*" any and all orders regarding plaintiff that were administered as ordered, as stated in your Affidavit: "[A]nd that all orders prescribed by these providers were administered as ordered."

¶ 24.   Disclose the substance of any oral, written communication "*identify by document,* " between you and any person regarding: "that all orders prescribed by these providers were administered as ordered".

¶ 25.   "Specifically identify by document," both Prison Health Services, Inc., ("PHS"), agreement that PHS agreed to comply with ADOC's Q.A. program, its standards, practices and procedures policy, or protocols regarding the treatment to Alabama inmates suffering from hernias from February 2005 through October 31, 2007.

**EXCERPT DISCOVERY REQUEST: RUTH NAGLICH FILED NOVEMBER 21, 2007 "NO. 7"**                                          **COPY**

## IV.    REQUEST FOR ADMISSIONS:

¶. 1    *Admit or deny*, the *ADOC's Q.A. program* applied to plaintiff's medical treatment while incarcerated at SLCS?

¶ 2.    *Admit or deny*, the *ADOC's Q.A. program* applies to plaintiff while he is incarcerated at the ADOC.

¶ 3,    *Admit or deny*, the *ADOC's  Q. A. programs* has a Protocol that state that a hernia must be incarcerated or in danger of being incarcerated before surgically necessary?

¶ 4.    *Admit or deny*, *ADOC Q. A. program* is responsible for coverage of any fees, costs for medical treatment by a licensed provider?

¶ 5.    *Admit or deny*, the *ADOC's Q A. program* will not cover plaintiff's hernia repair unless plaintiff's hernia is incarcerated or in danger of being incarcerated or into the scrotum?

¶ 6.    *Admit or deny*, Prison Health Services, Inc., agreed to comply with ADOC's Q.A. program regarding hernia treatment?

¶ 7.    *Admit or deny*, Correctional Medical Services, has agreed to comply with ADOC's Q.A. program regarding hernia treatment?

¶ 8.    *Admit or deny*, Correctional Medial Services, is following, complying with a protocol that Prison Health Services, Inc., followed regarding the medical treatment of hernias suffered by Alabama inmates from February 2005 through date of your response?

## V.    REQUEST FOR PRODUCTION OF DOCUMENTS

That defendant produces and permit plaintiff to inspect and to copy each of the following documents:

### * RULE 33, Fed. R. Civ. P., "Business Records"

a.    To permit plaintiff to inspect, analyze, and copy or photograph, *"specific document,"* implemented ADOC's **Quality Assurance Program** for all health service treatment from **February 2005** through current date, **specifically the provision protocols and policies/procedures of the Q.A. program regarding hernia.**

b.    The names and *"identify by document,"* those individual(s) responsible for the implementation and maintenance of the **ADOC'S Quality Assurance Program pertaining to hernias** within the relevant time of this cause of action.

c.    To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or

**EXCERPT DISCOVERY REQUEST: RUTH NAGLICH FILED NOVEMBER 21, 2007 "NO. 7"**                                              **COPY**

fashion specifically **any and all orders prescribed by any provider that were administered as ordered** and _ADOC's Quality Assurance Program._

g.      To disclose any and all relevant tangible _"documents"_ regarding the _ADOC's Quality Assurance Program_ surrounding the medical treatment given to plaintiff since his time incarcerated being **February 2005** till current date.

h.      Any and all orders prescribed by any medical providers regarding any medical treatment of the plaintiff, that were administered as ordered, please _"identify by document_ from **February 2005** through current date of your answer.

f.      To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

g.      To inspect and copy any and all "documents" regarding the ADOC's Quality Assurance Program regarding hernia treatment.

# EXHIBIT "B"

COPY

**IN THE DISTRICT COURT OF THE UNITED STATES * 7ᵀᴴ**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

---

|                                        |     |                           |
|----------------------------------------|-----|---------------------------|
|                                        |  *  |                           |
| MARCELLUS BREACH, #160710              |     |                           |
|                                        |  *  |                           |
|     Plaintiff,                         |     |                           |
|                                        |  *  | CASE NO: 2:06-cv-1133-MEF |
| Vs.                                    |     |                           |
|                                        |  *  |                           |
| PRISON HEALTH SERVICES, INC., et. al., |     |                           |
|                                        |  *  |                           |
|     Defendants.                        |     |                           |

## *PLAINTIFF'S NUMBER SEVEN, -- SECOND SET OF INTERROGATORIES AND REQUEST FOR ADMISSIONS, FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS UNDER FED. R. CIV. P.,*

*TO:    DEFENDANT RUTH NAGLICH, ASSOCIATE COMMISSIONER OF HEALTH SERVICES, ADOC*

**COMES NOW**, the Plaintiff *Marcellus Breach* (hereinafter "Breach"), in proper

person "Pro Se," submits this Second set of discovery request to Defendant pursuant to

*Federal Rules of Civil Procedures, Rule 33, 34 & 36*, hereby requesting that named party is

requested to answer separately, fully and in writing, the following interrogatories under

oath, affirmation in accordance within the definitions and instructions set forth below,

within thirty (30) days after service of these *Interrogatories, Request for Admissions,* and

***Production of Documents;*** furthermore, for the defendant to provide full disclosure along

with their answers herein, copies thereof supporting evidentiary materials, as follows:

## I.    INTRODUCTION:

Defendant Ruth Naglich as submitted an Affidavit in this proceeding on _August 3,_ 2007, attached to the ADOC Defendant's "Special Report" filed on _August 6, 2006._ Defendant Naglich has stated under oath in part as follows:

> "  .  .  . My current administrative responsibilities for the Alabama Department of Corrections (ADOC) include the monitoring of the components and the quality of the provision of healthcare to those individuals who are in the care, custody and control of the State of Alabama Department of Corrections (ADOC).    Included in these responsibilities is the monitoring of contracted health services, and the administration of the **ADOC's Quality Assurance Program** for all health service treatment. [ ] … "All medical treatment decisions relating to the individual care of an inmate are made by these licensed individuals.  The ADOC does not interfere with treatment decisions or recommendations related to an individuals care by a licensed provider . . . . [ ] . . . "and that all orders prescribed by these providers were administered as ordered."
>
> [See, _Affidavit Ruth a. Naglich, RN, BSN, Defendants Special Report, ¶ 2, 3, 5]_

## II.    DEFINITIONS AND INSTRUCTIONS:

Definitions and Instructions are continuing throughout this Discovery request.  As applied to the first set of request for discovery submitted on or about _October 29, 2007_ pursuant to _Rule 33, 34, & 35,_ Federal Rules of Civil Procedures.  However, due to Ruth Naglich's Affidavit she speaks concerning **ADOC's Quality Assurance Program** for all health service treatment.  No other information, documents have been provided by any defendant as a part of their "Initial Disclosure" _Rule 26,_ Federal Rules of Civil Procedures,

their duty:    Plaintiff questions the ADOC's Q.A. program as asserted (hereinafter

"**ADOC's Quality Assurance Program**") as follows: *INTERROGATORES:[1]*

¶ 1.    Please explain the ADOC's Quality Assurance Program, "*identify by document.*"

¶ 2.    "*Specifically identify by document*" any and all standards, practices and procedures, rules, regulations, policies, protocols, established, promulgated by the Q.A. program regarding medical treatment, coverage, for hernias for State prisoners at ADOC established in accordance with regulations of the State Health Officer regarding treatment for hernias.

¶ 3.    "*Specifically identify by document*" the name(s) of any State Health Officer over the Q.A. program who acts as supervisor, or other State duty, specifically regarding the treatment of hernias for Alabama inmates.

¶ 4.    "*Specifically identify by document*" any and all Q.A. scores by the State Health Officer from *February 2005* through date of your response.

¶ 5.    "*Specifically identify by document,*" any and all inspections, reports, reprimands, recommendations, of the Q.A. program regarding the treatment protocols for hernias.

¶ 6.    "*Specifically identify by document,* " the name of any and all persons, contractors, committee members, or employees of ADOC who maintain the Q.A. program.

---

[1]  **"Q.A. program" stands for, means as "Quality Assurance Program."**

¶ 7.    *"Specifically identify by document, "* any and all names of any person, or personnel who has sufficient authority and freedom to identify quality problems and initiate, re-solvement or provide solutions to the Q.A. program since *February 2005* through date of your response.  If any changes, explain, and identify by document.

¶ 8.    *"Specifically identify by document, "* any and all Q.A. program committee members.

¶ 9.    *"Identify by document"* and please explain in detail how the Q.A. program applies to plaintiff since his incarceration, and being transferred by ADOC to SLCS regarding his medical care.

¶ 10.   *"Specifically identify by document"* the names of any and all persons within the ADOC's administration who duties and authority is assigned to the ADOC's Q.A. program.

¶ 11.   *"Identify by document"* any and all arrangements, established in accordance with the regulations promulgated by the State Health Officer for ADOC's on going quality assurance program concerning health care processes and outcomes.  Specifically identify the area regarding treatment for hernias since *February 2005* through date of your response.

¶ 12.   *"Specifically identify by document"*, the ADOC's health maintenance organization that is obligated to effectively provide, or arrange for, the provision of health care services, as established in accordance with rules promulgated by the State Health Officer

for an on-going quality assurance/utilization review program concerning health care processes and outcomes.

¶ *13."Identify by document"* the ADOC's health maintenance organization effectively provided, or arrange for, the provision of health care services in accordance with rules promulgated by the State Health Officer for an on-going quality assurance/utilization review program concerning health care processes and outcomes to Alabama inmates and the plaintiff while incarcerated at South Louisiana Correctional Services, from March 16, 2006 through October 6, 2006.

¶ 14. *"Specifically identify by document"* the names of any commissioner over the Q.A. program.

¶ 15. *"Specifically identify by document"* the names, qualifications, duties, authorities and responsibilities and directors, or any member of any committee or any employee of each person of the fiduciary and administration of the Q.A. program.

¶ 16. *"Specifically identify by document"* the mission of the Q.A. program and the duty and responsibility of the quality assurance supervisor regarding treatment for hernias suffered by Alabama inmates.

¶ 17. "Specifically i*dentify by document*" the delegated responsibility of providing medical services: any surgeries, outside patient care, to Alabama inmates at South

Louisiana Correctional Services, Inc., to Prison Health Services, Inc., from February 2005 through October 31, 2007.

¶ 18.   "*Specifically identify by document*" names of any and all person(s) and/or "Agent" of or for the Q.A. program who's responsibility includes updating protocols, policies, procedures regarding hernia repair.

¶ 19   "*Identify by document*" how hernia repair for Alabama inmates was covered and to be paid while plaintiff was incarcerated at South Louisiana Correctional Services, Inc.

¶ 20.   "Specifically *identify by document*" how either the Q.A. programs operate regarding any approval or denial of any request for surgical repair for a hernia that is not incarcerated, strangulated or into the scrotum?

¶ 21. "*Identify by document*" names of persons within the ADOC who have any responsibility for monitoring the components and the quality of the provision of healthcare to those individual who are in the care, custody and control of the State of Alabama Department of Corrections (ADOC) included but not limited to these responsibilities in monitoring contracted health services at SLCS, and the administration of ADOC's Q. A. program for all health service treatment including but not limited while plaintiff was incarcerated at South Louisiana Correctional Services, Inc., regarding surgery request during *March 16, 2006* through *October 6, 2006*.

¶ 22.  "Specifically i*dentify by document*" the Medical Director for Prison Health Services, Inc., from *February 2005* through *October 31, 2007*, and list his/her responsibilities.

¶ 23.  "*Specifically* i*dentify by document*" any and all orders regarding plaintiff that were administered as ordered, as stated in your Affidavit: "[A]nd that all orders prescribed by these providers were administered as ordered."

¶ 24.  Disclose the substance of any oral, written communication "*identify by document*, " between you and any person regarding:  "that all orders prescribed by these providers were administered as ordered".

¶ 25.  "Specifically identify by document," both Prison Health Services, Inc., ("PHS"), agreement that PHS agreed to comply with ADOC's Q.A. program, its standards, practices and procedures policy, or protocols regarding the treatment to Alabama inmates suffering from hernias from February 2005 through October 31, 2007.

### IV.    REQUEST FOR ADMISSIONS:

¶. 1    *Admit or deny*, the *ADOC's Q.A. program* applied to plaintiff's medical treatment while incarcerated at SLCS?

¶ 2.    *Admit or deny*, the *ADOC's Q.A. program* applies to plaintiff while he is incarcerated at the ADOC.

¶ 3,    *Admit or deny*, the *ADOC's   Q. A. programs* has a Protocol that state that a hernia must be incarcerated or in danger of being incarcerated before surgically necessary?

¶ 4.    *Admit or deny, ADOC Q. A. program* is responsible for coverage of any fees, costs for medical treatment by a licensed provider?

¶ 5.    *Admit or deny,* the *ADOC's Q A. program* will not cover plaintiff's hernia repair unless plaintiff's hernia is incarcerated or in danger of being incarcerated or into the scrotum?

¶ 6.    *Admit or deny,* Prison Health Services, Inc., agreed to comply with ADOC's Q.A. program regarding hernia treatment?

¶ 7.    *Admit or deny,* Correctional Medical Services, has agreed to comply with ADOC's Q.A. program regarding hernia treatment?

¶ 8.    *Admit or deny,* Correctional Medial Services, is following, complying with a protocol that Prison Health Services, Inc., followed regarding the medical treatment of hernias suffered by Alabama inmates from February 2005 through date of your response?

### V.    REQUEST FOR PRODUCTION OF DOCUMENTS

That defendant produces and permit plaintiff to inspect and to copy each of the following documents:

   *\* RULE 33, Fed. R. Civ. P., "Business Records"*

a.  To permit plaintiff to inspect, analyze, and copy or photograph, *"specific document,"* implemented ADOC's **Quality Assurance Program** for all health service treatment from **February 2005** through current date, **specifically the provision protocols and policies/procedures of the Q.A. program regarding hernia.**

b.  The names and *"identify by document,"* those individual(s) responsible for the implementation and maintenance of the **ADOC'S Quality Assurance Program pertaining to hernias** within the relevant time of this cause of action.

c.  To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion specifically **any and all orders prescribed by any provider that were administered as ordered** and *ADOC's Quality Assurance Program.*

g.  To disclose any and all relevant tangible *"documents"* regarding the *ADOC's Quality Assurance Program* surrounding the medical treatment given to plaintiff since his time incarcerated being **February 2005** till current date.

h.  Any and all orders prescribed by any medical providers regarding any medical treatment of the plaintiff, that were administered as ordered, please *"identify by document* from **February 2005** through current date of your answer.

f.  To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

g.  To inspect and copy any and all "documents" regarding the ADOC's Quality Assurance Program regarding hernia treatment.

Done this 20 th Day November 2007.

® _____

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY,** that I have this **21st** Day of November 2007, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections
P.O. Box 301501
Montgomery, Al 36130

Rushton, Stakely, Johnston, Garrett, P.A.
P.O. Box 270
Montgomery, Alabama 36101

® _____

Marcellus Breach



MARCELLUS BREACH 160710
LIMESTONE C.F.
28779 NICK DAVIS RE.
HARVEST, ALABAMA   35749

an Alabama State Prison. The se
have not been evaluated, and the Alabama
Department of Corrections is not
responsible for the substance or content
of the enclosed communication.

Legal Mail

OFFICE OF THE CLERK
United States District Court
P.O. Box 711
Montgomery, Alabama   36101