## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MARCELLUS BREACH, #160710

     Plaintiff,

Vs.

    CASE NO: 2:06-cv-1133-MEF

PRISON HEALTH SERVICES, INC., et. al.,

    Defendants.

## MOTION TO COMPEL & SANCTIONS / RESPONSIVE ANSWERS TO DISCOVERY REQUEST FOR PRODUCTION OF DOCUMENTS, INTERROGATORIES, ADMISSIONS PURSUANT TO RULE 37(a)(2)), 37(b)(2))

[1]*COMES NOW*, the plaintiff *Marcellus Breach* (hereinafter "Breach") in proper person "Pro Se," moves this Court to compel defendant <u>Prison Health Services, Inc.</u>, to answer and produce requested discovery request filed on or about *November 26, 2007* entitled: *"Plaintiff's Ninth Set of Interrogatories and Request for Admissions, For Production of Documents to Defendant Under Fed.R.Civ.P.,"* [**Court Doc. No. N/A, attached Exhibit "B".**]. Plaintiff states in further support of his motion to compel and request for sanctions the following grounds and facts in support of his motion:

*1.*     Under *Rule 37(a)(2):*

---

[1]  Attached Exhibit "A "January 1, 2008 letter and Notice of Filing discovery dispute with counsel for PHS regarding discovery requests. Exhibit "B", copy of Plaintiff Discovery request propounded on PHS for answering filed and served November 26, 2007.

2.    Under *Rule 37(b)(2):*

   (a)    To preclude defendant from asserting any objections to plaintiff's interrogatories;

   (b)    To treat as contempt of court of defendant Prison Health Services, failure to answer plaintiff's interrogatories by set date by the Court.

   (c)    To decide all contested issues of fact embraced by plaintiff's interrogatories in favor of plaintiff;

   (d)    To strike all of defendant's defenses and to preclude defendant from introducing any evidence in support thereof;

   (e)    To enter a judgment by default on the issues of liability in favor of plaintiff and against defendant under Court I, II, III, IV, V, and VI of plaintiff's complaint; and

   (f)    To require defendant to pay to plaintiff the reasonable expenses, including fees, incurred in obtaining the relief requested herein.

3.    Under *Rule 37(d):*

   (a)    In regards to withheld **Louisiana medical records** of the plaintiff: order that the matters contained in the withheld documents be taken to be established; refuse to allow the nonresponsive party to support or oppose claims or defenses related to the withheld documents;

4.    Under *Rule 36(a):*

   (a)    That plaintiff request for Admissions propounded on defendant and properly served conjunctively with Discovery request [**Exhibit "B"** ] be deemed admitted.

### STATEMENT OF THE FACTS

Prison Health Services, Inc., the defendant has not responded to plaintiff's Interrogatories; therefore, he has waived his opportunity to object. See, *Rule 33(b)(1) & Rule 33(b)(4), Federal Rules of Civil Procedures.*

The discovery process is designed to fully inform the parties of the relevant facts involved in their case. ***Hickman v. Taylor***, 329 U.S. 495, 501, 91 L. Ed. 451, 67 S. Ct. 385 (1947). Under *Rule 37(a)(2),* Fed. R. Civ. P., the court may compel production of requested documents, if the documents are discoverable under *Rule 34(a),* Fed. R. Civ. P. Under *Rule 37(a)(2),* Fed. R. Civ. P., the court may compel a responsive answer to an interrogatory propounded pursuant to *Rule 33*. Further, *Rule 37(a)(3),* Fed. R. Civ. P., states that any "evasive or incomplete answer is to be treated as a failure to answer." Therefore, the main question as to the interrogatories and request for production of documents is why hasn't the defendant responded? Compel is requested defendants are, nonetheless, required to disclose what information they do possess at the time they respond. ***Chubb Integrated Systems, Ltd. v. National Bank of Washington***, 103 F.R.D. 52, 60, 224 U.S.P.Q. (BNA) 1002 (D.D.C. 1984). ***Shearson Lehman Hutton, Inc., v. Lambros,*** 135 F.R.D. @ 199 Lexis 19034 (M.D. Fla. 1990)

Plaintiff request that his Interrogatories and request for Production of Documents propounded on him on or about *November 26, 2007* specifically, **Interrogatories and Request for Production of Documents #'s 1 through 25, pg's 7 through 12 be answered.**

3

The Record is silent regarding information leading to Prison Health Services, Inc., responsibility regarding their supervision over their physician and whether they agreed with any Agreement regarding medical conditions that are labeled as "elective procedures" <u>elective hernia treatment</u>" which is, and has created a de facto policy, procedures, custom and practices of PHS and ADOC statewide of not repairing hernias until, as stated by Dr. William Hobbs **that the hernia "must" be incarcerated or strangulated or into the scrotum before surgically necessary;**" and it is medically known an incarcerated hernia is an emergency situation which will and can create a life or death situation.

Prison Health Services, Inc., acts as a supervisor, and he is in the position to make changes. Plaintiff has the right to serve questions upon him that can lead to other matters and question him concerning his knowledge regarding this case. Any and all documents, information, knowledge and facts that Prison Health Services, may have or, in **possession or control over, is discoverable and relevant to the subject matter. Plaintiff inquires into PHS's information and knowledge regarding to any de facto policy, procedures, protocols that are followed that has the force of law leading to plaintiff's injury is discoverable**. Morethanless, discovery into as what the defendants allege that hernias are on a case-by-case basis, depending on the size or the hernia, is incongruous with the standard of care and plaintiff seeks what PHS knows about any

Agreements entered with ADOC's procedures regarding treatment for hernias, labeled as "elective treatment". .

On *November 26, 2007* the plaintiff filed a document entitled: "**Plaintiff's Ninth Set of Interrogatories and Request for Admissions, for Production of Documents to Defendants**". [*Attached*, & **Court Doc. N/A**]  The Discovery request is directed to defendant PHS.

[1]On *January 1, 2008* plaintiff wrote counsel for the defendant pointing out that PHS's responses are late and that plaintiff was requesting that he respond immediately.

[2]On *January 1, 2008* plaintiff attached the letter with a pleading entitled: "**Notice of Filing**" to the court. [*Court Doc. N/A*] explaining to counsel that PHS has not answered the interrogatories, production of documents or the admissions request. Plaintiff explained to counsel that there are too many missing documents, specifically the Louisiana medical records, "**Nurses notes**" **Grievance No. 06-215** "**Front and Back**" and "**Fax Reports**".  PHS has not provided nor produced plaintiff's medical records from Louisiana and discovery as to any information, facts he has knowledge thereof is discoverable.  Defendant's counsel has not responded to the plaintiff's efforts to resolve the dispute. [**See, plaintiff's affidavit at ¶¶ 2-6., Exhibit "A""B".**]

---

[1] **Plaintiff's letter to counsel for PHS that 10-days he requested that counsel correspond with him or, have PHS answer the discovery request.   Counsel did not request for additional of time, or corresponded with plaintiff.  Plaintiff states this is not counsel's first rodeo, Judicial Notice will reflect the pattern of counsel not complying with court orders, sanctions still pending, etc.**
[2] **Defendants have yet produced plaintiff's Louisiana medical records.**

## INTERROGATORIES AND PRODUCTION OF DOCUMENTS
### FED. R. CIV. P.

Plaintiff's requests are governed under *Federal Rules of Civil Procedures*. The Request contains a preface, instructions, and definitions. The second part is prefaced with detailed instructions and definitions that has been accepted and adopted by the practice-governing attorneys. Defendants have a good number of documents in their hands that would provide plaintiff with evidence in support of his legal claim. Plaintiff's Interrogatories are designed for the defendant to go through their own records and get specific facts. It is also designed to discover further into their position and defenses. Plaintiff's request is asking for information regarding facts, documents, statements by any known witnesses and other evidence the defendants have and are using as the basis of their opposition to plaintiff's claim. Plaintiff is entitled to find out what kind of records and other documents they have that are related to his claim(s). Plaintiff seeks to identify parties, agents or employees, identify witnesses, identify documents and tangible things, and identify experts, facts and opinions: he seeks to obtain details and sequences of events and transactions. <u>Relevance is given a very broad meaning</u>. The information requested appears to be reasonably calculated to lead to discovery of admissible evidence. See, **U.S. v. Wright Motor Co., Inc.,** 536 F. 2d 1090, 1095 (5th Cir. 1976); **Southwest Hide Co., v. Goldston**, 127 F.R.D. 481, 483 (N. D. Tex. 1989).

## HISTORY OF THE CASE REGARDING PHS
## STATEMENT OF THE FACTS

Discovery is requested for good cause because PHS has answered and they are alleging that they do not have any protocols regarding hernia treatment. Specifically, defendants have stated in their response to "*Plaintiff's Second Request For Admission*: " [Court Doc. No. N/A]

1. **"PHS admits it has no written protocol, policy or procedure regarding the treatment of hernias."**

2. **"PHS admits that hernias are reviewed on an individual basis and the scope and extent of the hernia itself determines whether surgical repair is warranted, needed or necessary. [Id.] " ["Response To Plaintiff's Second Request For Admissions" filed on December 6, 2007]**

Interesting, Dr. William Hobbs who contracts with PHS has said plaintiff "must" meet a certain protocol and if plaintiff met this protocol, he would have his hernia repaired. PHS has stated that "hernias are reviewed on an individual basis and the scope and extent of the hernia itself determines whether surgical repair is warranted, needed or necessary. Discovery as to the defendant's supervisory position as stated that PHS claims that hernia are reviewed on an individual basis, then who reviews them as a supervisor? And, why is Dr. Hobbs stated plaintiff must meet a certain protocol required by the Alabama Department of Corrections? Dr. William Hobbs has stated:

> [3]    **". . . In order for a hernia to be repaired, the hernia must meet a certain Protocol <u>required by the Alabama Department</u> of**

---

[3] **Hobbs emphasizes that "the protocol states" and "Mr. Breach does not meet the protocol" if and, "if Mr. Breach met the protocol he would have surgery".**

Corrections.    The <u>protocol states</u> that the <u>hernia must</u> be incarcerated or in danger of becoming incarcerated or into the scrotum.    **Mr. Breach <u>does not meet this protocol</u> . . . ."**

In Dr. Hobb's "Supplemental Affidavit he states again:

". . . <u>In order for a hernia to be repaired</u>, the <u>hernia must meet</u> a certain Protocol <u>required</u> by the Alabama Department of Corrections.    The <u>protocol states</u> that the <u>hernia must</u> be incarcerated or in danger of becoming incarcerated or into the scrotum.    <u>Mr. Breach does not meet this protocol</u> . . .[ ] . . . <u>If</u> Mr. Breach <u>did in fact meet</u> the protocol by the Alabama Department of Corrections, his hernia <u>would be</u> repaired. . . . " [id. @ 3 ¶ 3.] [Court Doc. 144-3, Filed on 9/21/2007

## POINT "A"

## DISCOVERY INTO HOW DEFENDANTS AGREED TO MANAGE, TREAT HERNIAS THAT ARE ERRONEOUSLY LABELED AS "ELECTIVE" TREATMENT

Discovery is requested because defendant have a history of erroneously labeling hernias as "elective" as a way out to avoid their constitutional duty to provide necessary medical care.    The words "elective" does not mean that plaintiff's health is not deteriorating nor does it authorize defendants to definitely wait until the life or death situation being the protocol *i.e,* strangulated, or incarcerated hernias.    Furthermore, it does not authorize to subject plaintiff to endure pain and suffering without remedy; also, it does not relieve the defendants to provide the only treatment for a hernia and that treatment is surgery.

Discovery is sought as to information PHS has regarding Dr. Hobb's statement as supervisory.

Before this Court already is a load of public information provided by the Plaintiff as exhibits demonstrating that a hernia must and only can be treated surgically. Also, surgeons have warned the Court that the <u>waiting until the hernia is incarcerated, strangulated or into the scrotum **will** cause severe medical complications</u> and can lead to death. There is evidence already demonstrating through circumstantial evidence of defendants adopting a de facto policy through the ADOC just as <u>Dr. William Hobbs</u> has explained to the Court that: (i) plaintiff **did not meet** the Alabama Department of Correction's Protocol; and, (ii) the **Protocol states** that the hernia **must be incarcerated** before surgically necessary, (iii) **"if" plaintiff met** the protocol he would have surgery. Id. Defendants de facto Protocol is challenged as unconstitutional.

History with both PHS and PHS contracting with Alabama Department of Corrections to provide medical care to prisoners reflects that the Protocol is hidden being the words "elective procedures" regarding medical treatment. In plaintiff's case, plaintiff's hernia has been labeled as "elective" and upon information and belief the defendant's Protocol is within their  "contractual" agreement entered between the Alabama Department of Corrections and Prison Health Services, Inc.,

In further support of plaintiff's motion to compel, Judicial notice regarding "elective" treatment was/is prohibited between the medical providers "PHS" and the ADOC. In ***Edwards v. Bradford***<u>, 1997 U.S. Dist. LEXIS 15089 (S.D.Ala. 1997) Dr. George Lyrene submitted an Affidavit and Correctional Medical Services are now the current</u>

medical providers:  However, according to the **contract entered** between PHS and

ADOC, elective procedures are/were prohibited, just as plaintiff's elective hernia. The

Court stated:

> [4]Dr. George Lyrene, who is not a party in this action, has worked in
> various capacities as a physician for Questcare and PHS, both of which
> provided health care to the inmates incarcerated with the Alabama
> Department of Corrections; **he is currently Medical Director for PHS**
> (Doc. 14, Lyrene Certificate). Lyrene stated that the **policies for Questcare**
> **and PHS were "that cataract surgery would be elective IF the cataract**
> **was on one eye only AND IF the vision was unimpaired in the other**
> **eye" though this policy was not in writing (**emphasis in original). [ . . . ]
> **Under the terms of the contract that existed between Questcare and the**
> **Department of Corrections, the health care provider <u>did not have to</u>**
> **<u>provide elective</u> health care, defined as "medical care which, if not**
> **provided, will not cause the Inmate's health to deteriorate or cause**
> **definite harm to the Inmate's well being" (***see* **Doc. 14, Health Services**
> **Agreement (attached to Lyrene Certificate), PP 1.3, 2.4). <u>Id.</u>**

Next, the words "**must**" as used by Dr. Hobbs is fair to state that there is no

standards other than what the protocols states if, there are other standards that must be

met, discovery is appropriate.    Dr. Hobbs has stated that plaintiff **must "meet"** the

Protocol before he can receive surgery, plaintiff's hernia "**must be incarcerated**,

**strangulated or into the scrotum".** [Hobbs @ Id.]

Defendant Dr. George Lyrene, M.D., as Medical Director, in *Taylor v. Questcare*,

**Civil Action: 93-0700-CB-M,** 1995 U.S. Dist. 14975 ( S. D. Ala. 1995) Dr. George Lyrene

explains his opinion regarding the strangulated hernia which is what Dr. Hobbs states is

the Alabama Department of Correction's Protocol:  Dr. Lyrene the Medical Director's

---

[4]  This Hernia Protocol will not be in writing just as the PHS and Questcare contractual agreement
regarding "elective" was stated in the contract.

opinion speaks about <u>how the strangulated hernia will cause severe medical problems</u>, and also he acknowledged prisoners suffer pain from their untreated hernias:

> <u>"Dr. Lyrene explains in his affidavit (Doc. 34) that he is responsible for the nonemergency free-world medical referrals, and regarding Plaintiff's condition, provides:</u>
> 4. Plaintiff's entire abdomen is herniated. This would not impact on his organs as the herniation goes out of the abdomen away from his organs. Plaintiff's hernias are not a threat to his health because there is no incarceration or strangulation of the hernias. **An incarcerated hernia would be likely to cause plaintiff health problems, and a strangulated hernia would be an emergency.** Plaintiff has neither of these conditions, but is being examined on a regular basis in case there is a change in his condition. " Id.

*Talyor* further elaborated on Dr. Lyrene's Affidavit stating: "Dr. Lyrene relates that Plaintiff's hernias involve his entire abdomen but they do "not impact on his organs as the herniation goes out of his abdomen away from his organs." Dr. Lyrene claims that Plaintiff's hernias are not a threat to **Plaintiff's health as the hernias are not strangulated or incarcerated and are examined on a regular basis for the purpose of detecting a change in Plaintiff's condition. It is Dr. Lyrene's position that a patient with Plaintiff's symptoms should not be experiencing pain, but pain is subjective, and Plaintiff should know whether he is in pain, and that Plaintiff's pain should be able to be controlled with pain medication. . . . " Id.**

POINT "B"

### THE CRITERIA/PROTOCOL REGARDING HERNIAS
### POLICY MAKER

[5]This Court is going to have to decide who is policymaker because an admission by a third party opponent has stated that there is a protocol. However, the Court will determine who that policymaker is. This policy, protocol is challenged. See, *Mandel v. Doe*, 888 F.2d 783, 791-92 (11th Cir. 1989). In fact, Prison Health Services, liability under 1983 may be established in one of four ways: (1) the constitutional deprivation was caused by a policy or custom of the local governmental entity, *or* (2), the final policymakers of the local governmental entity acted with deliberate indifference to a constitutional deprivation, *or* (3) the final policymakers of the local governmental entity delegated their authority to a subordinate who, in turn, caused a constitutional deprivation, *or* (4) the final policymakers of the local governmental entity ratified a constitutionally impermissible decision or recommendation of a subordinate employee. *Sherrod v. Palm Beach County School District,* 424 F. Supp. 2d 1341, 1344 (S.D.Fla. 2006) (emphasis added).

Also, plaintiff can establish the requisite "official policy" in one of two ways: (1) identifying an officially promulgated policy, or (2) identifying an unofficial custom or practice shown through the repeated acts of the final policymaker of the entity. *Grech v. Clayton County*, 335 F.3d 1326, 1329-30 (11th Cir. 2003). Plaintiff must identify the policy

---

[5] Discovery is sought to PHS because information and belief is that the protocol is unwritten regarding hernia treatment. Plaintiff must establish this policy as a part of his claims against defendants.

12

or custom, which caused his injury so that liability will not be based upon an isolated incident, *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (citations omitted), and the policy or custom must be the moving force of the constitutional violation. *Grech*, 335 F.3d at 1330. *See also* **Board of County Comm'rs v. Brown**, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ; **Gold v. City of Miami**, 151 F. 3d 1346, 1350 (11th Cir. 1998) "[M]unicipal liability under 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." **Pembaur v. City of Cincinnati**, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) ; *see also* **Church v. City of Huntsville**, 30 F.3d 1332, 1342 (11th Cir. 1994) ("Only those municipal officers who have final policymaking authority may by their actions subject the government to 1983 liability.") "State and local positive law determine whether a particular official has final policymaker authority for 1983 purposes." **Cooper**, 403 F.3d at 1221. The discussion of these principles in <u>Church v. City of Huntsville</u> is helpful. In <u>Church,</u> the Eleventh Circuit explained: "[M]unicipal liability may be based upon (1) an action taken or policy made by an official responsible for making final policy in that area of the city's business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." **Church,** 30 F.3d at 1343.

[6] As far back as 1997 there has been a certain **criteria** regarding Hernia treatment must be met involving medical providers and ADOC.  In *Henry v. Wallace,* 1997 U.S. Dist. LEXIS 6448 (S.D. Ala. 1997); the prisoner prior to his incarceration in the Alabama Department of Corrections developed a hernia. After arriving at the [7]*Fountain Correctional Facility,* the prisoner complained of the hernia and associated pain to a staff nurse and Dr. Wilson.  The prisoner asserted that he was not administered any medication for pain and never given prompt access to medical treatment for this condition. However, in that case of a hernia Defendant Nurse Carla Wasdin responded, stating: **"Dr. Wilson examined you on 10/29/93. His assessment is that your hernia at this time does not meet the criteria for surgical repair."** Id.   Nurse Wasdin's statement into the Court's record in *Wallace* is similar to the evidence stated by Dr. William Hobbs in his Affidavit to the Court, that plaintiff does not meet the Protocol and if, he met the Protocol he would have surgery.  The sole challenge is the custom, practice, policy that has the force of law that has left plaintiff and others suffering in pain when the treatment is available but is refused until the life or death situation being the strangulated hernia where the defendants hide behind the mere words "elective procedure".

---

[6]    Plaintiff, Willie J. Henry, an Alabama state inmate, initiated this action *pro se* pursuant to 42 U.S.C. 1983. Plaintiff names as Defendants the following individuals: Dr. Harold Wilson, M.D.; Nurse Carla Wasdin, R.N.; Tommy Herring, Commissioner of the Alabama Department of Corrections; Arnold Holt, Warden at Fountain Correctional Facility; Deputy Warden J. W. Ross; Lt. David Thomas; Correctional Officer James Shipp; Sgt. Wayne Gray; and Melissa Wallace, Grievance Officer for the Department of Corrections.

[7]  Fountain Correctional Facility, is a male prison operated by the Alabama Department of Corrections in Alabama.

Regardless as to how much defendants attempt to deny that they do not have a Protocol, it is not believable because Dr. William Hobbs has stated differently, and the questions is does PHS know, and have they agreed to this protocol stated by Dr. William Hobbs? Discovery is requested.

## ARGUMENT AS TO "PHS" SUPERVISORY LIABILITY

If plaintiff can demonstrate at summary judgment that the medical treatment proscribed to him demonstrates deliberate indifference for a jury to decide; because PHS are supervisors, they too can be liable for not having a policy to prevent the suffering, the waiting until the life of death situation, strangulated hernia that is being practiced by their physicians when surgery is available.    The law is that "liability may be imposed . . . from the absence of a policy," **Rivas v. Freeman**, 940 F.2d 1491, 1495 (11th Cir. 1991), when a constitutional injury occurs and when the failure to adopt a policy rises to the level of deliberate indifference to the need for such policy. *See* **City of Canton v. Harris**, 489 U.S. 378, 388-89, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (municipal liability) n10; **Armstrong v. Squadrito**, 152 F.3d 564, 581 (7th Cir. 1998) (observing that, "if the supervisor personally devised a deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act").

In this case, PHS is not entitled to raise qualified immunity from suit. Therefore, discovery is necessary to establish just how does PHS supervises it physicians? Why doesn't ADOC or PHS have any policies, protocols regarding hernias before it is

15

strangulated or incarcerated? Why hasn't plaintiff been seen by a qualified doctor, surgeon for a proper medical determination as to when surgery needs to be performed before as Dr. Hobbs stated incarcerated or into the scrotum?

Additionally, the court ought to agree that PHS should be treated as a municipality for the purposes of the plaintiffs' 1983 claims. Eleventh Circuit precedent clearly states that when a private corporation contracts with a state to perform a function traditionally within the province of the state government, including the provision of medical services to state inmates, then that corporation should be treated as a government entity and as a person acting under color of state law within the meaning of 1983. *See* **Buckner v. Toro,** 116 F.3d 450, 452 (11th Cir. 1997); **Howell,** 922 F.2d at 724. As such, the private entity is not entitled to qualified immunity, but certain special requirements for liability do apply. *See* **Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,** 507 U.S. 163, 166, 113 S. Ct. 1160, 1162, 122 L. Ed. 2d 517 (1993) (holding that municipalities do not enjoy qualified immunity, but that they "cannot be held liable unless a municipal policy or custom caused the constitutional injury"); **McDuffie v. Hopper**, 982 F. Supp. 817, 825 (M.D. Ala. 1997) (Albritton, J.) ("Those who contract to engage in government services without supervision, and for profit in a competitive marketplace, subject themselves to liability under 1983 without the protections of immunity.") In order to prove that PHS should be liable, the plaintiffs would have to demonstrate that PHS itself directly caused the violation of their

16

constitutional rights through their adoption of some official policy or practice. *See*

**Monell v. Department of Social Services,** 436 U.S. 658, 695, 98 S. Ct. 2018, 2037-38, 56 L.

Ed. 2d 611 (1978); *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1502-03 (11th Cir. 1985).

### STANDARD OF REVIEW

Under Fed. R. Civ. P. 37*(a)(2),* the court may compel production of requested

documents, if the documents are discoverable under Fed. R. Civ. P. 34(a). The party

seeking production must demonstrate that the request is relevant, calculated to lead to

admissible evidence, although the requested material need not itself be admissible at

trial.

### POINT 1.
### DEFENDANT PRISON HEALTH SERVICES, INC., HAS WAIVED HIS OBJECTIONS BY HIS FAILURE TO RESPOND TIMELY TO THE REQUEST

Plaintiff argues that there is no favoritism regarding the rules of Discovery.

Plaintiff also contends that the rules provide that responses and objections to requests for

production of documents, interrogatories and admissions are to be served within 30 days

of the request unless the court grants a shorter or longer time. Rules 33, 34, 36, *Federal*

*Rules of Civil Procedures.* Morethanless, the Court issued its **Discovery Scheduling Order**

[**October 18, 2007 Court Doc. 178-1, Order**]. In its Order the court directed that each

party to file its response to request for discovery within thirty (30) days of receipt of the

discovery request. Defendant PHS has waived his right to object by failing to provide a

17

written response, including objections to the Request for Production of Documents, Interrogatories, and Request for Admissions.

Generally, in the absence of an extension of time or good cause, the failure to file a written response in the time fixed by the rule constitutes a waiver of any objection. *Davis v. Fendler,* 650 F. 2d 1154, 1160 (9th Cir. 1981); *Krewson v. City of Quincy,* 120 F. R. D. 6 (D. Mass. 1988). *See also In Re United States,* 864 F. 2d 1153, 1156 (5th Cir. 1989) (as a general rule, when a party fails to object timely to interrogatories, production requests or other discovery efforts, objections are waived). *See, e.g.,* **Marx v. Kelly, Hart & Hallman,** *P.C.,* 929 F. 2d 8, 12 (1st Cir. 1991); see also, **Coker v. Duke & Co.,** 177 F. R .D. 682; 1998 U.S. Dist. LEXIS 3780, 41 Fed. R. Serv. 3d. (Callaghan) 353, (M. D. Ala. 1998); *Godsey v. United States,* 133 F. R .D. 111, 113 (S. D. Miss. 1990); accord, *Demary v. Yamaha Motor Corp.,* 125 F. R. D. 20, 22 (D. Mass. 1989) and cases cited; *Krewson v. City of Quincy,* 120 F. R. D. 6, 7 (D. Mass. 1988); *Cephas v. Busch,* 47 F. R. D. 425 (W. D. 1963). This waiver is enforced even if the objections are based on a claim of privileged. *Marx v. Kelly, Hart & Halman, P.C.,* 929 F.2d. 8, 12 (1st Cir. 1991); *Fretz v. Keltner,* 109 F. R. D. 303, 309 (D. Kan. 1986) and cases cited; *Cardox Corp. v. Olin Matthiesen Chemical Corp.,* 23 F. R. D. 27, 31 (S.D. ILL. 1958).

## *POINT II*
## *THE RELEVANCY STANDARD*

Under Rule 401, Federal Rules of Evidence, the definition of "*Relevant Evidence*" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

This Rule defines the term. The definition provides that evidence is relevant if it has *any* tendency to make the existence of a material fact more probable or less probable than it would be without the evidence. Although it is true that some Federal Courts have purported to use a slightly different test, an analysis of most of the opinions leads to the conclusion that in practice the test advocated in *Rule 401* is consistent with that developed in most Federal Courts prior to the enactment of the Rules.

The important thing for this Court to remember is that the evidence does not by itself have to prove the ultimate proposition for which it is offered; nor does it have to make that ultimate proposition more probable than not. To be relevant it is sufficient that the evidence has a *tendency* to make a consequential fact even the least bit more probable or less probable than it would be without the evidence.

Fed. R. Civ. P. *26(b)(2)(iii)* the discovery of defendant's responsibility, knowledge and information regarding any <u>agreement</u> not to repair a hernia until the life or death situation regardless of pain and suffering is relevant when she is in the position to alleviate the danger of further health deterioration. This case is above that of mere

negligence or malpractice. Thus, any relevant information known to the defendant about plaintiff's claim regarding surgery is relevant.

Under the *Federal Rules of Civil Procedure,* parties may discover information, which is relevant and non-privileged. *Rule 26(b)(1), Federal Rules of Civil Procedure.* Under the federal rules, relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." ***Oppenheimer Fund, Inc., v. Sanders***, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978). Courts are required to accord discovery a broad and liberal scope in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement. *Id.;* ***Hickman* v. *Taylor***, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947). Where there is a doubt over relevancy, the court should still permit discovery. ***Deitchman v. E. R. Squibb & Sons, Inc.***, 740 F.2d 556 (7th Cir. 1984). Discovery request should be allowed, "unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." ***La Chemise Lacoste v. Alligator CO., Inc.***, 60 F. R. D. 164, 171 (D. Del. 1973); see ***Nash v. Thielke***, 743 F. Supp. 130 (E. D. Wis. 1990)(the plaintiff was entitled to an officer's urine test results, since the officer's sobriety during the incident was an issue in the case).

The law is established and that the Eighth Amendment duty applies to medical conditions that may result in pain and suffering which serve no legitimate penological purpose. ***Estelle***, 429 U.S. @ 103, 97 S.Ct. @ 290. See also, ***McGuckin***, 974 F. 2d @ 1059.

([D]elay in performing surgery resulted in needless infliction of pain); *Wood v.*
*Housewright,* 900 F. 2d 1332 (9ᵗʰ Cir. 1990)(with two judges holding prisoner had stated
an Eighth Amendment claim for pain inflicted by delay in treating injury, but dismissing
the claim on other grounds); *Hunt,* 865 F. 2d 198 (delay in providing prisoner with
replacement dentures; *Jones,* 781 F. 2d @ 771-72 (hernia which results in pain, suffering,
and the inability to perform a prison job is a serious medical need which prison doctors
may not ignore); *Fields v. Gander,* 734 F. 2d 1313 (8ᵗʰ Cir. 1984)(inmate suffering severe
pain from infected tooth).

The material sought regarding PHS is both: (1) material sought is clearly relevant;
and, (2) the need for discovery is compelling because the information sought is not
otherwise readily obtainable; (iii) has not been disclosed by the medical defendants.
Because the defendant <u>has not</u> responded, the **burden is on him to demonstrate why**
**discovery is not practicable.** *Grubbs v. Bradley,* 552 F. Supp. 1052, 1129 (M. D. Tenn.
1982)(court finds that provision of medical care by persons beyond the level of their
training and experience constitutes deliberate indifference); *Mandel v. Doe,* 888 F. 2d 783,
789-90 (11ᵗʰ Cir. 1989); *Hoptowit v Ray,* 682 F. 2d 1237, 1252-53 (9ᵗʰ Cir. 1982)(certain staff
performing functions that they are neither trained or licensed to perform).  Hernias are
painful; plaintiff has been left without treatment, <u>because the only treatment is surgery</u> .
The party resisting production bears the responsibility of establishing undue burden.

The Record is silent concerning defendant Prison Health Services, in his individual capacity.

**POINT III**

***CUMULATIVE OR DUPLICATIVE IN NATURE TO THE DISCOVERY MATERIALS PREVIOUSLY PROVIDED TO THE PLAINTIFF***

Several medical documents are concealed from plaintiff and this court. With that, there are absolutely very limited reasons as to how plaintiff's discovery request could possibly lead to being cumulative or duplicative.

The particular request for production of documents is relevant and takes the case "beyond the pleadings" and the documents are not cumulative, duplicative in nature because they are not in the record nor have been produced. Plaintiff submits an example from an *excerpt* of his **Interrogatories and request for Production of Documents** upon Prison Health Services, and proffers that the Interrogatories are relevant: [**See, Attached Discovery Request Page # 3 through 12: Interrogatories on PHS, Court Doc. N/A**]

¶ 4.    *"Identify by document"* the names, titles, and responsibility, of staff members of PHS and ADOC who have the responsibility for approval of plaintiff's request for surgery.

¶ 5.    *"Identify by document"* the names, titles, and duties of staff members at ADOC who have the responsibility for approval of hernia repair(s) from February 2005 through October 31, 2007.

¶ 7.    *"Specifically identify by document"*, the name(s), responsibility, of any person responsible for reporting to any regional director of PHS and/or any other personnel *"identify by document"* at ADOC, whether an superintendent or commissioner who serves as a health authority for the institutions and was the overall supervisor for clinical services regarding improvements in services and treatment of hernias.

¶ 8.    Specifically disclose any substance of any oral or written statements, agreements, communications between PHS and ADOC regarding hernia treatment and repair during February 2005 through October 31, 2007.

### POINT IV
### NOT REASONABLE CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE

Information requested ought to aid this Court and a jury for a determination that prison officials <u>may not</u> avoid their duty to provide medical treatment by the simple expediency of labeling such treatment as "<u>elective</u>". The classification of surgery as elective does not abrogate the prison's duty, or power, to promptly provide necessary medical treatment for prisoners. See, *Jones*, 781 F. 2d @ 770-71 (classification of hernia as "elective surgery" did not insulate county from Eighth Amendment duty to provide proper medical care); *Johnson v. Bowers*, 884 F. 2d 1053, 1056(prisoner waiting six years for elective arm surgery was entitled to relief)(citing *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F. 2d 326, 348 n. 32 (3d Cir. 1987) cert. Denied, 486 U.S. 1006, 1-8 S.Ct. 1731, 100 L.Ed. 2d 195 (1988)); *West v. Keve*, 541 F. Supp. 534 (D. Del. 1982)(prison officials violated Eighth Amendment by not furnishing elective surgery for dysfunctional veins that were causing varying degrees of pain); *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D. N. H. 1977)(elective treatment recommended by a physician but not "necessary" in a life or health saving sense, may still be constitutionally mandated if the prisoner elects to proceed with the treatment).

In this case, <u>it is noted that plaintiff's surgery is elective</u>. But it is still leaving him in pain and discomfort while his health deteriorates. Where surgery is elective, prison

officials may properly consider the costs and benefits of treatment in determining whether to authorize the surgery, but the words "elective surgery" is not a talisman insulating prison officials from the reach of the Eighth Amendment. Each case must be evaluated on its own merits. See, ***Delker v. Maass***, 843 F. Supp. @ 1400 (D. Or. 1994)(although state inmate may not have suffered long-term physical harm from nearly two-year delay in providing operation for <u>non-incarcerated inguinal hernia</u>, inmate was "injured" by delay for purposes of his § 1983 civil rights action, since he suffered some pain, anxiety, and restricted activity during delay.)

Judicial notice regarding "elective" treatment was/is prohibited between the medical providers "CMS" and the ADOC. In <u>***Edwards v. Bradford***, 1997 U.S. Dist. LEXIS 15089 (S.D.Ala. 1997) Dr. George Lyrene submitted an Affidavit and Correctional Medical Services are now the current medical providers:  However, according to the **contract entered** between CMS and ADOC, elective procedures are/were prohibited, just as plaintiff's elective hernia. The Court stated:</u>

> [8]<u>Dr. George Lyrene</u>, who is not a party in this action, has worked in various capacities as a physician for Questcare and CMS, both of which provided health care to the inmates incarcerated with the Alabama Department of Corrections; **he is currently Medical Director for CMS** (Doc. 14, Lyrene Certificate). Lyrene stated that the **policies for Questcare and CMS were** "**that cataract surgery would be elective IF the cataract was on one eye only AND IF the vision was unimpaired in the other eye**" <u>**though this policy was not in writing**</u> (emphasis in original). [ . . . ]

---

[8]  **This Hernia Protocol will not be in writing just as the CMS and Questcare contractual agreement regarding "elective" was stated in the contract.**

> **Under the terms of the contract that existed between Questcare and the Department of Corrections, the health care provider <u>did not have to provide elective</u> health care, defined as "medical care which, if not provided, will not cause the Inmate's health to deteriorate or cause definite harm to the Inmate's well being" (*see* Doc. 14, Health Services Agreement (attached to Lyrene Certificate), PP 1.3, 2.4). <u>Id.</u>**

First, plaintiff does not seek "personnel records" in any general way. He seeks documents pertaining to the treatment, method, practice, procedures rendered by the medical providers being supervised by PHS. Plaintiff does not seek other matters that may be in his personnel records, such as medical data or information about his records of lateness, leaves and vacations, etc.

*Secondly,* the kind of information sought is highly relevant. The plaintiff has information that repeated complaints about mistreatment regarding hernias have been made about the medical defendants and that nothing has been done about them and their practice. Evidence to that effect would be highly relevant to the claim of supervisory liability against defendants set out in **Counts II, III, IV, VI,** of plaintiff's ***Supplemental Complaint pages 25-26. [Court Doc No. 93]*** Whether quasi-policymakers have been deliberate indifferent in their supervision of subordinates the court must explore the supervisors' conduct in this case: -- as in ***Karr,*** 875 F.2d @ 1556 (jury could find that failure to take corrective action after plainly unconstitutional use of police dogs constituted deliberate indifference). In this case, several supervisors claim that they consulted with each other, and other physicians who are defendants in this case. Discovery in this area is relevant because it is regarding the treatment proscribed by the

defendants See also, ***Ancata v. Prison Health Services, Inc.,*** 769 F. 2d 700, 795 (11th Cir. 1985). The same standard of deliberate indifference applies to both inadequate training and inadequate supervisions. ***CF. Davis v. City of Ellensburg***, 869 F. 2d 1230, 1235 (9th Cir. 1989)(applying City of Canton to question municipal liability). Liability applies if it is established that PHS either has a continued practice that of allowing this nurse practitioner to make surgically recommendations while knowing that he is not qualified, and whether PHS actually agreed with any de facto policy regarding "elective treatment" of a hernia that is not required to be repaired until the hernia is incarcerated, strangulated or into the scrotum. PHS can be held liable if established that the conduct rises to deliberate indifference; no treatment at all; if, PHS agreed to any agreement and, if they knew about the agreement and this agreement is the proximate cause to injury and did not take any steps necessary to prevent the abuse.

***Excerpt Discovery Request:***

### IV. REQUEST FOR PRODUCTION OF DOCUMENTS OF YOUR AGENTS

That defendant produces and permit plaintiff to inspect and to copy each of the following documents:

* *RULE 33, Fed. R. Civ. P., "Business Records"*

a.   To permit plaintiff to inspect, analyze, and copy or photograph, "*specific document*," implemented policies/procedures of PHS's treatment objective plain regarding hernia from February 2005 through October 31, 2007.

b.   To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports,

identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

a.    All letters, complaints, or other *documents* in defendants possession or under his control received, sent, made, or read by defendants, or by any agent thereof, relating to the treatment being prescribed by ADOC and PHS regarding hernias since February 2005 through October 31, 2007.

b.    Any and all "reports" made, in the defendants possession or under his control concerning Hernia belts, or a Truss.

c.    Any and all "reports" made, in the defendants possession or under his control concerning inmates complaining about having pain from their hernias before incarceration, strangulation or into the scrotum.

### *PHS FAILED TO ESTABLISH PROCEDURES OF PROTECTION BY HAVING QUALIFIED PHYSICIANS*

In this Case, PHS failed to have a doctor qualified to make surgically determinations regarding hernias. Dr. Hobbs, Robbins "are not" Board Certified with the American Board of Surgery or another similar Board that would qualify them to make surgically recommendations and qualify them to give an opinion regarding surgery. PHS should have known this, because only a surgeon can tell the Court when plaintiff's hernia needs repair: PHS as supervisors can be responsible for knowingly failing to provide adequate staff who are qualified to make surgically determination in this case.

Morethanless, PHS need not have had personal participation or involvement in the acts of the employees to be held liable. As a supervisor, his failure (a) to train subordinates and to establish procedures for protection of constitutional rights and (b) to take action against violations of which he had notice can be a basis for liability. *See,*

27

*McCann v. Coughlin*, 698 F.2d 112 (2nd Cir. 1983); *Orpiano v. Johnson*, 632 F.2d 1096 (4th Cir. 1980); *McClelland v. Facteau*, 610 F.2d 693 (10th Cir. 1980); *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir. 1979); *Dewell v. Lawson*, 489 F.2d 877 (10th Cir. 1974); *Beverly v. Morris*, 470 F.2d 1356 (5th Cir. 1972); *Roberts v. Williams*, 456 F.2d 819 (5th Cir. 1971); *Wright v. McMann*, 387 F.2d 519 (2nd Cir. 1967).

Supervisors are liable in their individual capacities under 1983 "either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. " *Cottone*, 326 F.3d at 1360 . Plaintiff can establish "a causal connection" in one of three ways: first, "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); second, when the supervisor's improper "custom or policy . . . resulted in deliberate indifference to constitutional rights," *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991); or, third, when the facts "support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003). Court's have repeatedly found that "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County, Ala.*, 116 F. 3d 1419, 1425 (11th

Cir. 1997); *Mandel v. Doe,* 888 F. 2d 783, 788 (11th Cir. 1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference").

## POINT V
## BURDENSOME

Under well-settled law, the party resisting production bears the responsibility of establishing undue burden. *G-69 v. Degnan,* 130 F. . . 326, 331 (D.N.J. 1990). Generally, a party seeking to avoid discovery on a burdensomeness argument must substantiate that position with detailed affidavits or other evidence establishing an undue burden.

## POINT VI
## SANCTIONS ARE NECESSARY TO STOP FURTHER ABUSE THE LAW

*Federal Rule of Civil Procedure 37*(b) states that "[i] f a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just," including: (1) an order designating certain facts as established; (2) an order refusing to allow the disobedient party from supporting or opposing claims or defenses; (3) an order striking pleadings or portions of pleadings, staying proceedings until the order is obeyed, or rendering a default against the disobedient party; (4) an order finding the disobedient party in contempt of court; and/or (5) an order awarding expenses unless the failure to obey was substantially justified. FED. R. CIV. P. 37(b)(2).

### *REASONABLE MONETARY SANCTIONS*

A *pro se* party may be awarded expenses under *Rule 37*. *See* **Lightsey v. Potter,**

2006 U.S. Dist. LEXIS 92904 (N.D. Ga. December 22, 2006); citing, **Walker v. Tri-Tech**

**Planning Consultants, Inc.,** 149 F.R.D. 22, 22 (E.D.N.Y. 1993) ("This Court is not aware of

any authority or principle of law which prevents *pro se* litigants from recovering their

expenses in a *Rule 37* motion.").

### **RELIEF REQUESTED**

a.    That the Court grant this motion to compel **Prison Health Services, Inc.,** to answer plaintiff's interrogatories, request for production of documents, and admission; and, issue sanctions upon counsel for his failure to comply with this Court's Discovery Scheduling Order, and Discovery rules; and,

b.    That this Court grant reasonable fees in the amount to $650.00, at $65.00 per hour x 10 hours for work and research in preparing, researching and fling this action; and, that the 20% as ordered be deducted from plaintiff's prison account and forwarded to the Clerk of this Court towards the court costs and clerk fees;

c.    That the costs of Inspection and Copying bear of the defendants upon the granting of this Compel of their policies/procedures, and Protocols.

d.    That this Court grants plaintiff relief and the Court order additional fees be paid to the Court for the inconvenience, and troublesome conduct demonstrated by counsel.

d.    That this Court administers and enforces justice as to what this Court deems fair and appropriate.

e.    Under Rule 37(d):  In regards to withheld Louisiana medical records of the plaintiff: order that the matters contained in the withheld documents be taken to be established; refuse to allow the nonresponsive party to support or oppose claims or defenses related to the withheld documents;

f.    Under <u>Rule 36(a):</u>  That  plaintiff  request  for  Admissions propounded on defendant and properly served conjunctively with Discovery request [**Exhibit "B"**] be deemed admitted.

Done this 21 Day January 2008.

Marcellus Breach 160710®
Limestone C.F
28779 Nick Davis Rd.
Harvest, Alabama 35749

COUNTY OF LIMESTONE        )

STATE OF ALABAMA           )

### *DECLARATION OF THE PLAINTIFF IN SUPPORT OF COMPEL AND SANCTIONS*

Affiant in the above instrument, who after being duly sworn, deposed and says on oath that the averments in the foregoing are true to the best of his ability, information, knowledge and belief:

I am **_Marcellus Breach, AIS #160710_**, I am over the age of twenty-one.  I am the plaintiff in this action.  I make this declaration in support of my Motion to Compel and Request for Sanctions against the correctional defendants for their failure to obey this Court's order entered on **_October 18, 2007 Court Doc. 178-1, Order Court's Discovery Scheduling Order._**

On _November 16, 2007,_ I served on the defendant's counsel a document: **"Plaintiff's Sixth Set of Interrogatories and Request**

**for Admissions, for Production of Documents to Defendants" which is attached to this affidavit as Exhibit "A,B,".**

Defendant Prison Health Services did not respond to this discovery request after 30 days by order of the court and rules of discovery, nor did they request an adjournment from the court or seek my agreement to an adjournment.

On *January 1, 2008* I wrote to the defendant's counsel pointing out that their responses were late and requesting that they respond immediately. A copy of my letters is attached as Exhibit "A","B". I mailed this letter First Class U.S. Mail, postage prepaid and placing into the prison mailbox for proper mailing.

On *January 1, 2008* plaintiff attached his letter with a pleading entitled: **"Notice of Filing"** to the court. [*Court Doc. N/A*] explaining to counsel that Prison Health Services has not answered the interrogatories, production of documents or the admissions request. Plaintiff explained to counsel that there are too many missing documents and that Prison Health Services, has not provided any information or documents regarding his involvement and what information, facts he has knowledge thereof. Defendant's counsel has not responded to the plaintiff's efforts to resolve the dispute.

Defendants' counsel did not respond to my letters. I have written counsel numerous of times, and I have filed my notice of

32

intent with the Court. Copies of my letters are attached. Defendant's objections are waived as a result of their failure to make them in a timely manner, as set forth in the brief accompanying this motion.

**WHEREFORE,** the plaintiff request that the court grant this motion in all respects under the penalty of perjury the foregoing is true and correct. 28 U.S.C. 1746

This January 21, 2008.

Marcellus Breach

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that I have this 21-Day of January 2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

**Alabama Dept. of Corrections**
**LEGAL DIVISION**
**P.O. Box 301501**
**Montgomery, Alabama 36130**

**Rushton, Stakely, Johnston, Garrett, P.A**
**P.O. Box 270**
**Montgomery, Alabama 36101**

**Starnes & Atchison, LLP**
**100 Brookwood Place, 7thg Floor**
**P.O. Box 598512**
**Birmingham, Alabama 35259-8512**

® Marcellus Breach




MARCELLUS BREACH 160710
LIMESTONE C.F.
28779 NICK DAVIS RE.
HARVEST, ALABAMA   35749




This correspondence is forwarded from

**Office of the Clerk**
**United States District Court**
**P.O. Box 711**
**Montgomery, Alabama 36101**

# Exhibit "A"

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MARCELLUS BREACH, #160710

      Plaintiff,

Vs.

PRISON HEALTH SERVICES, INC., et al.,

      Defendants.

          *
          *
          *    CASE NO: 2:06-cv-1133-MEF
          *
          *

### *NOTICE OF FILING/ DISCOVERY DISPUTE ON DEFENDANT PRISON HEALTH SERVICES, INC.*

**COMES NOW**, the Plaintiff <u>*Marcellus Breach*</u> (hereinafter "Breach") in proper person "Pro Se," hereby gives written notice pursuant *to Rules 37(a)(2)(A), 37(a)(2)(B), Fed. R. Civ. P.,* and compliance with this Court's order. Plaintiff states as follows:

1.[1]    This Court issued its Discovery Order on <u>*October 18, 2007.*</u> [**Court Doc. No. 178 – 1**] Counsel is late in responding to discovery request. Parties who fail to understand that simple function of the rules invite judicial ire and risk the imposition of sanctions.

2.    Plaintiff has attached his letter to Counsel for PHS regarding discovery disputes.

---

[1] **Attached letter to Counsel for PHS defendants regarding Discovery disputes on defendants Prison Health Services, Inc., has not been answered. Plaintiff has requested counsel to produce plaintiff "complete" Louisiana Medical Records including all faxes, grievances, nurse's notes.**

*WHEREFORE,* plaintiff requests to place into the Record his attempts to resolve the discovery problems informally with counsel, without court intervention.

Done this 1st Day January 2008.

Marcellus Breach 160710 ®
Limestone C.F.
28779 Nick Davis. Rd.
Harvest, Alabama 35749

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this 1st Day of January 2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections
LEGAL DIVISION
P.O. Box 301501
Montgomery, Alabama 36101


Rushton, Stakely, Johnston, Garrett, P.A
P.O. Box 270
Montgomery, Alabama 36101

®

Marcellus Breach

# *MARCELLUS BREACH, 160710*

Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

*January 1, 2007*

RUSHTON, STAKELY, JOHNSTONE & GARRETT, P.A.
Attention:    Paul M. James, Jr.
P.O. Box 270
Montgomery, Alabama 36101

RE:    **2:06-cv-1133-MEF/ Letter of Intent**

*Greetings & Salutations*:

The Discovery rules require that the Defendants respond to Discovery request. I have not received defendant Prison Health Services, Inc., answer to discovery request. My records reflect that you have requested additional time; I hope that ten (10) days from receipt of this letter is enough time to either answer, or correspond with me. If I do not hear from you before **January 14, 2007** I will request the Court take appropriate action. Discovery request No. # 9, served upon you Office on November 26, 2007 is overdue.

I am requesting that you please either supplement your initial discovery or, produce all of my **Louisiana Medical Records** including not limited to the "any and all" **fax report(s),** "any and all" grievances especially **No. 06-215 the "front and back"** of this particular grievance also, the "**nurses notes**". Each grievance contained in the medical records I am requesting that you insure that they are **photocopied front and back**. Please be aware that I know my medical records.

I have done what is required I hope that you will cooperate with discovery request and the rules. Out of courtesy, I have attached an excerpt to Discovery request No. 9 for your convenience.

I thank you for your time and attention; I look forward to hearing from you.

Sincerely,

Marcellus Breach

# EXHIBIT "B"

*Copy*

# IN THE DISTRICT COURT OF THE UNITED STATES * 9TH
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

|  |  |  |
|---|---|---|
| ———————————— | * |  |
| MARCELLUS BREACH, #160710 | * |  |
| Plaintiff, | * |  |
| Vs. | * | CASE NO: 2:06-cv-1133-MEF |
| PRISON HEALTH SERVICES, INC., et. al., | * |  |
| Defendants. | * |  |

### *PLAINTIFF'S NINTH SET OF INTERROGATORIES AND REQUEST FOR ADMISSIONS, FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS UNDER FED. R. CIV. P.,*

*TO:*    *DEFENDANT PRISON HEALTH SERVICES, INC.*

**COMES NOW**, the Plaintiff *Marcellus Breach* (hereinafter "Breach"), in proper person "Pro Se," pursuant to *Federal Rules of Civil Procedures, Rule 33, 34 & 36*, hereby requesting that named party and/or their "Agents" as being person(s) under their control: "Alabama Department of Corrections, ("ADOC") are requested to answer separately, fully and in writing, the following interrogatories under oath, affirmation in accordance within the definitions and instructions set. forth below, within thirty (30) days after service of these **Interrogatories, Request for Admissions**, and **Production of Documents**, furthermore, for the defendant to provide full disclosure along with their answers herein, copies thereof supporting evidentiary materials, as follows:

1

## I. DEFINITIONS AND INSTRUCTIONS;[1]

¶ 1.    Each Interrogatory shall be answered separately and as completely as possible. The fact that investigation is continuing or that discovery is not complete is not an excuse for failure to answer each interrogatory as fully as possible.  If you are unable to answer an interrogatory after you have attempted to obtain the information, answer to the extent possible.

¶ 2.    A question that seeks information contained in or information about or identification of any documents may be answered by providing a copy of such document for inspection and copying or by furnishing a copy of such document without a request for production.

¶ 3.    _Rule 33, Fed R. Civ. P._, permits that the interrogatories to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or government agency, by any officer or agent, who shall furnish such information as is available to the party.  _Rule    33(d),_    also    permits    production    of documents upon your Agents and the request for production of documents under said rule is requested from person(s) under your control.

¶ 4.    In responding to these request for Admissions, Production of Documents and Interrogators, defendants shall furnish not only such information and documents as are

---

[1]  **Definitions and Instructions are continuing throughout this Discovery request.  Rule 33, 34, & 35, Fed. R. Civ. P.**

available to them, but also such information and documents as are known to, available to, or in their constructive, actual possession, custody or control of any agent, employee, employer, representative, co-defendant, witnesses, the *Alabama Department of Corrections*, and specifically, including but not limited to defendants attorney(s) and investigators, unless such documents, information, data, records, inter alia, is claimed to be privileged from production or discovery.

¶ 5.     If defendants consider any document, information, data, records, inter alia, falling within plaintiff's request for Production of Documents, attached heretofore separately and/or conjunctively, as being privileged from discovery, plaintiff request that, at this time or responding to the Request for Production, the defendants serve upon plaintiff, a written list of the documents so withheld from said discovery and identify each document by date, author or parties, names, business address of each person, party or witness having copies of said documents, information , data, records inclusive to medical records from *February 2005,* through current date of your answers, and the basis on which the document is considered to be privileged from production, and re-production, photo-copying, et. seq., by discovery.

¶ 6.     These Interrogatories and Discovery request are continuing and are to be supplemented in accordance with Federal Rules of Civil Procedures, *Rule 26(e).* However, in the event that any, and all information or documents come to the attention of or into the possession, custody or control of the defendants, the attorneys of records,

or such other interested persons, parties, agency, employees, employers, et. al., subsequent to the filing of defendants response / answers hereto, which documents, records, or information are responsive to any and all Interrogatories or Request for Admissions, but which were not included in defendants initial answers / responses thereto, said additional information, documents, data, records, inter alia, shall be furnished to plaintiff, or in the interim, thereinafter appointment of stand-in-counsel, as soon as possible, unless otherwise specified by the Court, or upon subsequent motion.

¶ 7.    In responding to these DISCOVERY request, defendants are to furnish such documents, records, data, information, memorandum, inter alia, as are available to them, their agents, employees, employers, co-defendants, witnesses or representatives, such as attorney of record, but not limited to therein, as to defendants access to which is currently constructive, actual possession or otherwise.

¶ 8.    With regards to plaintiff's Request for Admissions and pursuant to *Federal Rules of Civil Procedures*, <u>*Rule 36*</u>, et. seq., the defendants shall specifically deny the matter or set forth in details the reasons why the answering / responding party, person, defendant or representatives cannot truthfully admit or deny the matter.  A denial shall fairly meet the substance or the requested admission, and when good faith requires defendants shall qualify an answer or deny only a part of the matter of which an admission is requested; the defendants shall specify so much of it is true and qualify or deny the remainder. Defendants may not give lack of information or knowledge as a reason for failure to

4

admit or deny unless defendants state that they have made a lawful, and reasonable inquiry and that the information known or readily obtainable by the defendants is insufficient to enable them to admit or deny.     If the defendants consider that a matter of which an admission has been requested presents a genuine issue of material fact, for trial, they may not, on that ground alone, object or the request; defendants may, subject to the provisions of *Federal Rules of Civil Procedures*, <u>*Rule 37(c)*</u>, deny the matter or set forth reasons why defendants cannot admit or deny it.

¶ 9.    As a courtesy, in answering / responding to any and all DISCOVERY request herein, defendants are asked to, please preface said answers / responses with the "Interrogatory or Request for Admission, Production, being Answered."

## II.    DEFINITIONS:

¶ 10.  When used in these discovery request and subsequent set of Interrogatories, Production request, and/or discovery request henceforth, the following definitions shall apply:

    a.    As used herein, the term "**document**" means, without limitation, the following items, whether printed, recorded, reproduced, or written by hand: all writings of any kind, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, including, without limitation, correspondence, memoranda, notes, diaries, statistics, letters, telegrams, minutes, reports, studies, statements, receipts, returns, summaries, pamphlets, books, interoffice and intra-office communications, notations of any sort of conversation, telephone calls, meetings, or other communications,

bulletins, printed matter, computer printouts, teletypes, telefax, worksheets, invoices, all drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or oral records, or representations of any kind (including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotapes, recordings, motion pictures), and any electronic, mechanical, or electric records or representations of any kind (including, without limitation, tapes, cassettes, discs, recordings, and computer memories). Any written, or graphic matter however produced or reproduced, including but not limited to correspondence, e-mails, other written communications, agreements, notes, memoranda, any and all recorded information but not limited to any faxes, reports, letter, grievance, message, records, work sheets, instructions, work assignments, internal communication, order and any other written recorded, electronic, or graphic material however produced, reproduced and, in the absence of the original, copy thereof and any copy bearing markings not present on the original or other copy thereof.

b.  As used herein in reference to a natural person, the word "**identify**" shall mean to state the persons full name, present or last known business address(es) and their association to defendant(s).

c.  As used in reference to a business or other entity, the word "**identify**" shall mean to state the business or other entities full name and present or last known address(es) and their said association to defendant(s).

d.  As used "**identify**" or "**identity**" when used in reference to a document means to state the date and author, type of document [e.g., letter, memorandum, record, policy, title, reference numbers, etc.,] or some other means of identifying it, and its present location or custodian.

e.  The word "**incident**" includes the circumstances and events leading up to, and surrounding the alleged violation of denial of surgery for plaintiff's inguinal hernia from **February 2005**, to current date of your answering / responses.

f.  The word "**specifically identify**" as used with respect to any and all documents, inter alia, is understood to mean the following: 1) title; 2) date; 3) names and position of originator; 4) name and

6

position of any and all defendants, co-defendants, witness(es) and supervisors; 5) name(s) and position(s) of any and all persons, parties, agents, employees, employers, representatives, who received copies or any portions of the documents in questions; 6) description of the document, records, data, faxes, any and all information, *inter alia*, in question; 8) name(s) and position(s) of the custodian(s) of the above requested documents in their entirety, but not limited to.

g.      The word *"**Medical Examination**"* as used herein, shall include any interview, observation, physical or mental examination, and any other scientific or medical technique or practice designed to obtain information respecting the medical history, condition, diagnosis, and/or progress of the plaintiff examined.

h.      **"Reports"** shall include every written communication from a physician, medical practitioner, or any other person engaged in diagnosing and treating illness or injury, or from the agent of any such person, containing information respecting the medical history, condition, diagnosis and/or prognosis of the person examined.

### III.    *INTERROGATORIES*:

¶ 1.    Please state the following for the plaintiff.

a.      your name.
b.      your duties, and responsibilities to Alabama inmates suffering with Hernias.
c.      your length of service with the Alabama Department of Corrections.
d.      your reasons why you are no longer employed with the ADOC
e.      whether you agreed with an established protocol with ADOC regarding hernia treatment before rendering services at ADOC to inmates.
f.      whether PHS established its own protocol regarding how hernia treatment would be proscribed to Alabama inmates,
g.      whether ADOC agreed to PHS rendering medical services, PHS's hernia protocols would be followed by PHS employees and contracted medical staff.

¶ 2.   "*Identify by document*" whether there was an existing protocol regarding hernia treatment at ADOC before PHS entered contract with ADOC to provide medical care to Alabama inmates?

¶ 3.   Disclose any "*documents and reports*" relating to any PHS recommendation(s) to ADOC regarding any treatment, protocols, policies, procedures offered that would be implemented regarding the hernia treatment proffered by PHS to ADCO inmates.  If any,

      a.     identify the person who rejected such reports, recommendation regarding PHS's  hernia protocol.

      b.     Identify by document the proposed protocol recommendation.

      c.     Identify by document the names of all persons involved.

¶ 4.   "*Identify by document*" the names, titles, and responsibility, of staff members of PHS and ADOC who have the responsibility for approval of plaintiff's request for surgery.

¶ 5.   "*Identify by document*" the names, titles, and duties of staff members at ADOC who have the responsibility for approval of hernia repair(s) from February 2005 through October 31, 2007.

¶ 6.   "*Specifically identify by document*" the person(s) employed by PHS and any person(s) at ADOC, who was/is responsible for reviewing and updating hernia protocols, "*reports*" policies and procedures regarding medical treatment for hernias, and for requesting improvements in services since February 2005 through October 31, 2007. If any changes, please "*identify by document.*"

¶ 7.    "*Specifically identify by document*", the name(s), responsibility, of any person responsible for reporting to any regional director of PHS and/or any other personnel "*identify by document*" at ADOC, whether an superintendent or commissioner who serves as a health authority for the institutions and was the overall supervisor for clinical services regarding improvements in services and treatment of hernias.

¶ 8.    Specifically disclose any substance of any oral or written statements, agreements, communications between PHS and ADOC regarding hernia treatment and repair during February 2005 through October 31, 2007.

¶ 9.    "*Identify by document*" *any and all,* recommendations, request for improvements, changes, implementations of the treatment protocols, policy, procedures regarding hernia treatment from February 2005 through October 31, 2007.    If any changes, "*specifically identify by document*".

¶ 11.    "*Identify*" any and all person(s) at ADOC who agreed with PHS to implement the protocol regarding hernia treatment for Alabama inmates from date of your service through October 31, 2007.

¶ 12.    "*Specifically identify by document*" the procedures implemented as to how an hernia repairs are approved through PHS and ADOC.

¶ 13.    "*Identify by document*" PHS   and ADOC's protocol regarding Hernia Belts and Truss.

9

¶ 14.   From _February 2005_ through date of your response, disclose any knowledge, information, _"documents"_ from anyone requesting improvement, changes updating the Protocols for hernias. If yes, state:

a.   _identify_ the incident,
b,   _identify_ person(s) requesting changes
c.   _identify_ by document of request
d.   _specifically identify_ the requested change, if submitted and disposition.

¶. 15   _"Identify by document,"_ any and all persons who had any involvement in final decision making regarding plaintiff's request for surgery.

¶ 16.   _"Identify by document"_ any and all written reports submitted to the State Board of Examiners of any final judgment rendered against PHS, Dr. William Hobbs, M.D., Dr. Michael Robbins, M.D., and _"identify by document"_ any settlement in or out of court, resulting from a claim or action for damages for personal injuries cased by an error, omission or negligence, Malpractice, deliberate indifferent, in the performance of medical professional services, or in the performance of medical professional services without consent from you date of services with ADOC through October 31, 2007, in any Court in the State of Alabama, or another.

¶ 17.   _"Identify by document"_ any and all orders, recommendations by any medical providers regarding plaintiff's medical treatment to any person at ADOC & PHS from February 2005, through October 31, 2007, including all orders from South Louisiana Correctional Services, Inc., March 16, 2006 through October 31, 2006.

¶ 18.   Explain Dr. George Lyrene, M.D., job responsibility to PHS *"identify by document"* regarding any hernia treatment to an Alabama inmate.

¶ 19.   *"Identify by document"* and explain Ruth Naglich's job responsibilities to PHS regarding hernia treatment to Alabama inmates from February 2005 through October 31, 2007.

¶ 20.   *"Identify by document"* and disclose Brandon Kindard's job responsibilities to PHS regarding hernia treatment to Alabama inmates from February 2005 though October 31, 2007.

¶ 21.   From February 2005 through October 31, 2007, disclose PHS's common practice, policy, procedure followed, and *"identify by document"* for hernia repairs.

¶ 22.   From February 2005 through October 31, 2007, disclose ADOC's common practice, policy, procedures followed, and *"identify by document"* for hernia repairs.

¶ 23.   Was it ADOC's treatment protocols regarding hernia repairs and treatment that PHS entered into a contractual agreement:  PHS agreed to follow ADOC's treatment protocols regarding hernia treatment as a part of PHS standard of operation regarding hernia treatment? *"Identify by document"* with your answer.

¶ 24.   Please estimate how many Alabama inmates are diagnosed with hernia, ADOC's treatment protocol would prohibit surgery intervention until the hernia was incarcerated

11

or in danger of being incarcerated or into the scrotum since February 2005 through

October 31, 2007.  Identify by document and reports your figures.

## IV. REQUEST FOR PRODUCTION OF DOCUMENTS OF YOUR AGENTS

That defendant produces and permit plaintiff to inspect and to copy each of the

following documents:

### * RULE 33, Fed. R. Civ. P., "Business Records"

a.    To permit plaintiff to inspect, analyze, and copy or photograph, "*specific document*," implemented policies/procedures of PHS's treatment objective plain regarding hernia from February 2005 through October 31, 2007.

b.    To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

d.    All letters, complaints, or other *documents* in defendants possession or under his control received, sent, made, or read by defendants, or by any agent thereof, relating to the treatment being prescribed by ADOC and PHS regarding hernias since February 2005 through October 31, 2007.

e.    Any and all "**reports**" made, in the defendants possession or under his control concerning Hernia belts, or a Truss.

f.    Any and all "**reports**" made, in the defendants possession or under his control concerning inmates complaining about having pain from their hernias before incarceration, strangulation or into the scrotum.

## V.    REQUEST FOR ADMISSIONS:

¶ 1.    *Admit or deny*, you agree with the Protocol that a hernia must be incarcerated or in danger of becoming incarcerated in order to be surgically necessary?

¶ 2.    *Admit or deny*, that the only way to stop a hernia from getting worse is to repair the defect through surgery?

¶ 3.    *Admit or deny*, that the Anatomy of Hernia, -- the most common location for hernia is the abdomen.  A hernia (rupture) is usually noticed as a lump, commonly located in the groin or the umbilical region, it appears when a portion of the tissue which lines the abdominal cavity (peritoneum) breaks through a weakened area of the abdominal wall, this can give rise to discomfort as the hernia enlarges and can sometimes be dangerous is a piece of plaintiff's intestine become trapped ('strangulated')?

¶ 4.    *Admit or deny*, it is your common practice not to repair a hernia unless the hernia is incarcerated or in danger of being incarcerated or into the scrotum before surgically necessary?

¶ 5.    *Admit or deny*, it is ADOC's protocol, practice not to repair a hernia unless the hernia is incarcerate or in danger of being incarcerated or into the scrotum before surgically necessary?

¶ 6.    *Admit or deny*, there is almost no limit to how big a hernia could without surgery?

¶ 7.    *Admit or deny* that medically there is no cure for a hernia without surgery?

¶ 8.    *Admit or deny*, a strangulated hernia can become an emergency that usually requires immediate surgery?

¶ 9.    *Admit or deny*, PHS has a custom, practice, not to repair hernias before the hernia is incarcerated, or in danger of being incarcerated, or into the scrotum?

¶ 10.    *Admit or deny*, a truss is the cure for a hernia?

¶ 11.    *Admit or deny*, plaintiff has complained about having pain when coughing, sneezing, and having bowel movements due to this hernia?

¶ 12.    *Admit or deny*, the issuing of pain medication will not cure a hernia?

¶ 13.    *Admit or deny*, the issuing a truss and proscribing pain medication is a cheaper method of managing a hernia?

¶ 14.    *Admit or deny*, plaintiff's inguinal hernia can get larger and lead to serious medical complications?

¶ 15.    *Admit or deny*, discomfort usually is experienced especially when coughing, sneezing, lifting heavy objects, or standing for long period of time?

¶ 16.    *Admit or deny*, bowel movements can cause the muscles to weaken resulting into an enlargement of plaintiff's hernia?

¶ 17.    *Admit or deny*, the long-term course is for a hernia to become steadily worse as times goes on, sometimes slowly and sometimes quickly when left without surgery.

¶ 18.    *Admit or deny*, that the opening of a hernia cannot heal itself?

¶ 19.   *Admit or deny*, medically a doctor nor a nurse practitioner cannot treat a hernia; they must be repaired through surgery?

¶ 20.   *Admit or deny* that plaintiff's hernia goes into his scrotum is trapped at times and plaintiff has to work it back up into place?

¶ 21.   *Admit or deny*, a truss is for temporary use?

¶ 22.   *Admit or deny*, the waiting until the hernia is incarcerated or in danger of becoming incarcerated, in order to be surgically necessary can become a life or death situation?

¶ 23.   *Admit or deny*, waiting until the hernia is incarcerated, in danger of becoming incarcerated in order to be surgically necessary can, or will subject a patient into sever pain?

¶ 24.   *Admit or deny*, under the standard of care, a hernia ought to be repaired before it is incarcerated or in danger of becoming incarcerated and before entering the scrotum?

¶ 25.   *Admit or deny*, that overexertion can cause weakness, such as simple coughing or sneezing to the hernia?

¶ 26.   *Admit or deny*, the effects felt by plaintiff can range from perfectly painless, through discomfort, to being very painful indeed?

¶ 27.   *Admit or deny*, a hernia ought to be inspected to ensure that it, is not becoming infected or developing into a more serious non-reducible hernia?

¶ 28.   *Admit or deny*, PHS does not require its employees to conduct routine inspections on inmates' hernias?

¶ 29.  *Admit or deny*, a hernia will limit a person daily activity depending on the stage of the hernia?

¶ 30.  *Admit or deny*, when the hernia distends and pushes out the peritoneum forming the bottom of either the middle of the internal fossa, it is a direct or internal hernia.

¶ 31.  *Admit or deny*, the very instruction Manuel given to plaintiff by Prison Health Services, Inc., the **"Fitting Instructions" for Model 67-350** states pertaining to a hernia: ". . . Limiting activity, eliminating excess weight a hernia belt or truss may provide temporary relief.  However, **CURE IS SURGERY**?"

¶ 32.  *Admit or deny*, feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum is usually a warning sign that the hernia is progressing and becoming worse?

¶ 33.  *Admit or deny*, you were the supervisor of the medical treatment proscribed to plaintiff while at ADOC?

¶ 34.  *Admit or deny*, ADOC has final authority regarding approval or disapproval of surgery for plaintiff's inguinal hernia?

¶ 35.  *Admit or deny*, there are over 300 Alabama inmates diagnosed with hernias from *February 2005* through date of your response?

¶ 36.  *Admit or deny*, a hernia is a case by case basis and are painful?

¶ 37.  *Admit or deny*, you refuse to provide plaintiff with surgery until his hernia is incarcerated or in danger of being incarcerated?

¶ 38.  *Admit or deny*, PHS has authorizes a Bradford Kindard, nurse administrator to make surgically recommendations?

¶ 39.  *Admit or deny,* under the standard of care, the Protocols pertaining to hernia treatment for Alabama inmates' subjects a patient to endure pain and suffering.

¶ 40.  *Admit or deny,* Alabama Board of Medical Examiners are not aware of the practice involved with ADOC and their medical providers, being a Protocol that a hernia must be incarcerated or in danger of being incarcerated in order to be surgically necessary.

¶ 41.  *Admit or deny,* this Protocol ought to be changed pertaining to hernias.

¶ 42.  *Admit or deny*, even if Dr. Hobbs recommended plaintiff surgery for his hernia, and because the hernia does not meet the protocol, ADOC Health Services, would have denied the recommendation regardless?

¶ 43.  *Admit or deny*, PHS has a common practice, that the hernia must be incarcerated, or in danger of being incarcerated, or into the scrotum before surgically necessary?

¶ 44.  *Admit or deny*, ADOC has a common practice, that the hernia must be incarcerated, or in danger of being incarcerated, or into the scrotum before surgically necessary?

¶ 45.  *Admit or deny,* each person may feel different degrees of pain regarding their hernia?

¶ 46.  *Admit or deny,* PHS has one standard policy, the hernia must be incarcerated or in danger of being incarcerated before surgically necessary?

¶ 47.  *Admit or deny*, PHS failed to change the protocols regarding hernias or change the treatment protocols since February 2005 through October 31, 2007?

¶ 48.  *Admit or deny*, it is the custom, practice, policy of PHS not to approve surgery for plaintiff's hernia unless his hernia is incarcerated, in danger of being incarcerated, or into the scrotum?

Done this __26__ Day November 2007.

® _____

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this __2d__ Day of November 2007, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections         Rushton, Stakely, Johnston, Garrett, P.A.
P.O. Box 301501                              P.O. Box 270
Montgomery, Al 36130                    Montgomery, Alabama 36101

® _____

Marcellus Breach

18