# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

MARCELLUS BREACH, #160710

  Plaintiff,

Vs.

            CASE NO: 2:06-cv-1133-MEF

PRISON HEALTH SERVICES, INC., et. al.,

  Defendants.

## *MOTION TO COMPEL / RESPONSIVE ANSWERS TO DISCOVERY REQUEST FOR PRODUCTION OF DOCUMENTS, INTERROGATORIES, ADMISSIONS PURSUANT TO RULE 37(a)(2)), 37(b)(2))*

  *[1]COMES NOW*, the plaintiff <u>*Marcellus Breach*</u> (hereinafter "Breach") in proper person "Pro Se," moves this Court to compel defendant <u>*Richard Allen, Commissioner*</u> to answer and produce requested discovery request filed on or about <u>*November 27, 2007*</u> entitled: *"Plaintiff's Eighth Set of Interrogatories and Request for Admissions, For Production of Documents to Defendant Under Fed.R.Civ.P.,"* [**Court Doc. No. N/A, attached Exhibit "B".**]. Plaintiff states in further support of his motion to compel and request for sanctions the following grounds and facts in support of his motion:

1.  Under <u>*Rule 37(a)(2):*</u>

---

[1] Attached Exhibit "A "December 31, 2007 letter and Notice of Filing discovery dispute with counsel for ADOC regarding discovery requests. Exhibit "B", copy of Plaintiff Discovery request propounded on defendant Richard Allen for answering filed and served November 27, 2007.

   (a)    To compel defendants to answer plaintiff's interrogatories in their entirety within a proscribed time ordered by the Court;

   (b)    To require defendant to pay to plaintiff the reasonable expenses, including fees, incurred in obtaining the relief requested herein.

2.    Under *Rule 37(b)(2):*

   (a)    To preclude defendant from asserting any objections to plaintiff's interrogatories;

   (b)    To treat as contempt of court of defendant Prison Health Services, failure to answer plaintiff's interrogatories by set date by the Court.

   (c)    To decide all contested issues of fact embraced by plaintiff's interrogatories in favor of plaintiff;

   (d)    To strike all of defendant's defenses and to preclude defendant from introducing any evidence in support thereof;

   (e)    To enter a judgment by default on the issues of liability in favor of plaintiff and against defendant under Court I, II, III, IV, V, and VI of plaintiff's complaint; and

   (f)    To require defendant to pay to plaintiff the reasonable expenses, including fees, incurred in obtaining the relief requested herein.

3.    Under *Rule 37(d):*

   (a)    In regards to withheld **Louisiana medical records** of the plaintiff: order that the matters contained in the withheld documents be taken to be established; refuse to allow the nonresponsive party to support or oppose claims or defenses related to the withheld documents;

4.    Under *Rule 36(a):*

   (a)    That plaintiff request for Admissions propounded on defendant and properly served conjunctively with Discovery request [**Exhibit "B"** ] be deemed admitted.

## STATEMENT OF THE FACTS

Commissioner Richard Allen, the defendant has not responded to plaintiff's Interrogatories; therefore, he has waived his opportunity to object. See, *Rule 33(b)(1) & Rule 33(b)(4), Federal Rules of Civil Procedures.*

The discovery process is designed to fully inform the parties of the relevant facts involved in their case. ***Hickman v. Taylor***, 329 U.S. 495, 501, 91 L. Ed. 451, 67 S. Ct. 385 (1947). Under *Rule 37(a)(2),* Fed. R. Civ. P., the court may compel production of requested documents, if the documents are discoverable under *Rule 34(a)*, Fed. R. Civ. P. Under *Rule 37(a)(2),* Fed. R. Civ. P., the court may compel a responsive answer to an interrogatory propounded pursuant to *Rule 33*. Further, *Rule 37(a)(3),* Fed. R. Civ. P., states that any "evasive or incomplete answer is to be treated as a failure to answer." Therefore, the main question as to the interrogatories and request for production of documents is why hasn't the defendant responded? Compel is requested defendants are, nonetheless, required to disclose what information they do possess at the time they respond. ***Chubb Integrated Systems, Ltd. v. National Bank of Washington***, 103 F.R.D. 52, 60, 224 U.S.P.Q. (BNA) 1002 (D.D.C. 1984). ***Shearson Lehman Hutton, Inc., v. Lambros***, 135 F.R.D. @ 199 Lexis 19034 (M.D. Fla. 1990)

Plaintiff request that his Interrogatories and request for Production of Documents propounded on him on or about *November 27, 2007* specifically, **Interrogatories and Request for Production of Documents #'s 1 through 25, pg's 7 through 12 be answered.**

The Record is silent regarding information leading to Commissioner Richard Allen, regarding his authority to delegate supervision over his state duty to provide adequate medical treatment to prisoners in pain suffering with an untreated hernia, and what Agreement entered between *Allen* and his medical providers regarding medical conditions that are labeled as "elective procedures" or, <u>elective hernia treatment</u>" which is, and has created a de facto policy, procedures, custom and practices between CMS, PHS and ADOC statewide of not repairing hernias until, as stated by Dr. William Hobbs **"that the hernia "must" be incarcerated or strangulated or into the scrotum before surgically necessary;"** and it is medically known an incarcerated hernia is an emergency situation which will and can create a life or death situation.

Richard Allen is supreme supervisor, he can lawfully make any changes necessary regarding elective treatment for hernias. Plaintiff has the right to serve questions upon him that can lead to other matters and question him concerning his knowledge regarding this case. Any and all documents, information, knowledge and facts that Richard Allen may have, or, in **possession or control over, is discoverable and relevant to the subject matter. Plaintiff inquires into Richard Allen information and knowledge regarding to any de facto policy, procedures, protocols that are followed that has the force of law leading to plaintiff's injury is discoverable.**

On <u>*November 26, 2007*</u> the plaintiff filed a document entitled: **"Plaintiff's Eight Set of Interrogatories and Request for Admissions, for Production of Documents to**

4

**Defendants".** [*Attached,* & **Court Doc. N/A**]   The Discovery request is directed to defendant Richard Allen.

[2]On *January 1, 2008* plaintiff wrote ADOC counsel for the defendant pointing out that Richard Allen's responses are late and that plaintiff was requesting that he respond immediately.

On *January 1, 2008* plaintiff attached the letter with a pleading entitled: "**Notice of Filing**" to the court. [*Court Doc. N/A*] explaining to counsel that Richard Allen has not answered the interrogatories, production of documents or the admissions request. Defendant's counsel has not responded to the plaintiff's efforts to resolve the dispute. **[See, plaintiff's affidavit at ¶¶ 2-6., Exhibit "A""B".]**

## *INTERROGATORIES AND PRODUCTION OF DOCUMENTS*
## *FED. R. CIV. P.*

Plaintiff's requests are governed under *Federal Rules of Civil Procedures.*   The Request contains a preface, instructions, and definitions.   The second part is prefaced with detailed instructions and definitions that has been accepted and adopted by the practice-governing attorneys. Defendants have a good number of documents in their hands that would provide plaintiff with evidence in support of his legal claim.  Plaintiff's Interrogatories are designed for the defendant to go through their own records and get specific facts.   It is also designed to discover further into their position and defenses.

---

[2] Plaintiff's letter to counsel for ADOC that 21-days he requested that counsel correspond with him or, have Richard Allen answer the discovery request.   Counsel did not request for additional of time, or corresponded with plaintiff.

Plaintiff's request is asking for information regarding facts, documents, statements by any known witnesses and other evidence the defendants have and are using as the basis of their opposition to plaintiff's claim. Plaintiff is entitled to find out what kind of records and other documents they have that are related to his claim(s). Plaintiff seeks to identify parties, agents or employees, identify witnesses, identify documents and tangible things, and identify experts, facts and opinions: he seeks to obtain details and sequences of events and transactions. Relevance is given a very broad meaning. The information requested appears to be reasonably calculated to lead to discovery of admissible evidence. See, *U.S. v. Wright Motor Co., Inc.,* 536 F. 2d 1090, 1095 (5th Cir. 1976); *Southwest Hide Co., v. Goldston,* 127 F.R.D. 481, 483 (N. D. Tex. 1989).

## HISTORY OF THE CASE REGARDING RICHARD ALLEN
### STATEMENT OF THE FACTS

Discovery is requested for good cause because evidence under Rule 803(6), Fed.R.Evid., submitted now, by PHS and plaintiff demonstrates through "Records of regularly conducted activity" a direct order was past down from the Commissioner's Office through defendant Brandon Kindard on or about 7/12/06 that plaintiff cannot have surgery unless his hernia is incarcerated or into the scrotum.

[3]*Secondly,* discovery into Commissioner Richard Allen's authority to "transfer" plaintiff to an out-of-state private prison when *Allen* is not authorized to lease convicts to

---

[3] Defendant Richard Allen as Commissioner over ADOC his duties, responsibilities, authority, power, asserts, liabiliiteis, are enacted under Sections 14-1-16 thorough 14-1-17 Code of Alabama, 1975, which were vested in a Board of Corections and which, by virtue of such statutes, vested in the Governor of the State of

private person, firms or corporations; without, affirmative, legislative authorization to do

so, it is unlawful under Section _14-5-2,_ Code of Alabama, 1975 to lease **any** prisoner to

private persons, firms or corporations for any purpose.  However, unless there is some

legal authority that grants in opposite to plaintiff's contentions, such transfer fashioned a

"State Created Danger" and Richard Allen knew it, agreed to it, and such conduct

amounts to _Allen_ from March 16, 2006 through October 6, 2006 relinquishing is

supervisory power and authority over plaintiff leaving plaintiff in a "no mans land"

regarding his incarceration and medical condition.   Evidence reflects that ADOC's

Protocol was the force of law when defendant Brandon Kindard called nurse Maxie with

instructions regarding plaintiff's medical treatment.

Moreover, and also worth noting, Richard Allen illegally, allowed, agreed to

transfer plaintiff across Alabama state line to a private corporation in violation of the

competitive bid laws under _§§41-16-50, 41-16-51(12)(d),_ Code of Alabama, 1975 absent

---

Alabama.  Allen is sued Officials and Individually.  Furthermore, Section 14-5-10 of the Code, only authorizes the ADOC to lease state prisoners "to any department, agency, board, bureau or commission of the state on such terms, conditions and at such prices as may be mutually agred upon." Section 14-5-7, authorizes the use of state prisoners in constructing or maintaining drains.   Thses are the only authorizations regarding the leasing of state prisoners.  In actuality what did occur, and what is occurring is that emergency transfers are taking place, due to unconstitutional overcrowding; therefore, ADOC is transferring custody of plaintiff from legal state custody, to custody of private corporations.  In 1999 Legislation passed an anti-prison privatization bill forbidding the ADOC from delegating control, custody of Alabama prisoners to private corporations without legislative authorization, by majority vote of the membership of each house.  The legislature has not authorized the ADOC to transfer custody, control of Alabama prisoners to private corporations.  Exporting plaintiff for profit violates Alabama law, Federal Law, and wholly depriving the Alabama taxpayers of revenue to another state through under the table agreements with private corporations.   The dehumanization of plaintiff's rehabilitation is intolerably highly inflammatory, raising potential danger for exploiting slavery, due to the unconstitutional overcrowding in Alabama prisons.  The defendant engaged in illegal activity, inapposite to the state's bid laws, through conversion of illegal private contracts.

Legislative intent and/or in violation of the anti-trust laws, whereby the ADOC leased plaintiff to, but not limited to South Louisiana Corrections Services, Inc., illegally and unlawfully relinquishing his authority over plaintiff, but interfering with Dr. John A. Tassin, M.D., questioning surgery and further recommending plaintiff to be examined by a qualified physician in hernia repairs.

More interesting, pursuant to Alabama's Legislative enactment in 1985 known as the *Interstate Corrections Compact, § 14-13-1 et seq*., hereinafter ("ICC")(Act 85-752) and conjunctively with Legislative enactment of the anti-privatization bill of 1999, nevertheless, *Allen* knew of the prohibited Regulation adopted by ADOC's Regulations, specifically *ADOC, AR-22,* (May 5, 2004). Discovery is sought because there remains no provision, either prescribed by the *ICC or AR-22* which confers authority to the ADOC to transfer plaintiff as a male inmate across state line to Louisiana at SLCS, or any other private prison, specifically, in accord with the following statutory provisions: **(i)** *§ 14-3-9* (*Board of Corrections; superintendence and control*), **(ii)** *§ 14-3-9,* (*Violation of corrections laws*), **(iii)** *§ 14-3-13* (Oath of officers and guards), but not limited to **(vi)** *§ 14-3-31, 32* (*Board of corrections; receipt of convicts into penitentiary, and employment of convicts; accounting)* **(v)** § *14-3-47,* (*Employment of programs; generally,* (vi) *§ 14-3-48* (*Exemptions from hard labor)*, all of which are summarily argued through plaintiff's State Created Danger theory outlined within his Supplemental Complaint. In addition, Richard Allen, unless otherwise proven that his actions were lawful to transfer plaintiff out-of-state, willingly, maliciously,

agreed into Kidnapping plaintiff and sending him out-of-state in violation of the *Federal Kidnapping Act,* 18 USCS § 1201, and/or violated the *Mann Act* *18 USCS §§ 242*1 et seq., because Allen does not have Legislative authority to send Alabama prisoners out-of-state.

Next, evidence is already established by the medical records submitted by the plaintiff that several defendants interfered with medical treatment. Although ADOC has not specifically stated that they do not have a Protocol regarding hernias. CMS and PHS have stated that they don't have one, and CMS attempts to speak for ADOC stated that to their knowledge there is no protocol. However, Dr. Hobbs has stated differently and Brandon Kindard based on the medial records stated the protocol to nurse Maxie on 7/12/06.

Evidence by Dr. William Hobbs who contracts with PHS has said plaintiff "must" meet a certain protocol and if plaintiff met this protocol, he would have his hernia repaired. ADOC maintains that they rely on the medical providers. PHS and CMS have stated that "hernias are reviewed on an individual basis and the scope and extent of the hernia itself determines whether surgical repair is warranted, needed or necessary. Discovery as to the defendant's supervisory position as stated they rely on the medical providers can be proven as untrue. If so, why did Dr. Hobbs state plaintiff must meet a certain protocol required by the Alabama Department of Corrections? Dr. William Hobbs has stated:

⁴      ". . . In order for a hernia to be repaired, the hernia must meet a certain Protocol <u>required by the Alabama Department</u> of Corrections.    The <u>protocol states</u> that the <u>hernia must</u> be incarcerated or in danger of becoming incarcerated or into the scrotum. Mr. Breach <u>does not meet this protocol</u> . . . ."

In Dr. Hobb's "Supplemental Affidavit he states again:

". . . <u>In order for a hernia to be repaired</u>, the <u>hernia must meet</u> a certain Protocol <u>required</u> by the Alabama Department of Corrections.    The <u>protocol states</u> that the <u>hernia must</u> be incarcerated or in danger of becoming incarcerated or into the scrotum. <u>Mr. Breach does not meet this protocol</u> . . .[ ] . . . <u>If</u> Mr. Breach <u>did in fact meet</u> the protocol by the Alabama Department of Corrections, his hernia <u>would be</u> repaired. . . . " [id. @ 3 ¶ 3.] [Court Doc. 144-3, Filed on 9/21/2007

## POINT "A"

### DISCOVERY INTO HOW DEFENDANTS AGREED TO MANAGE, TREAT HERNIAS THAT ARE ERRONEOUSLY LABELED AS "ELECTIVE" TREATMENT

Discovery is requested because defendant have a history of erroneously labeling hernias as "elective" as a way out to avoid their constitutional duty to provide necessary medical care.    The words "elective" does not mean that plaintiff's health is not deteriorating nor does it authorize defendants to definitely wait until the life or death situation being the protocol *i.e*, strangulated, or incarcerated hernias.    Furthermore, it does not authorize to subject plaintiff to endure pain and suffering without remedy; also,

---

⁴ Hobbs emphasizes that "the protocol states" and "Mr. Breach does not meet the protocol" if and, "if Mr. Breach met the protocol he would have surgery".

it does not relieve the defendants to provide the only treatment for a hernia and that treatment is surgery.

Before this Court already is a load of public information provided by the Plaintiff as exhibits demonstrating that a hernia must and only can be treated surgically. Also, surgeons have warned the Court that the <u>waiting until the hernia is incarcerated, strangulated or into the scrotum **will** cause severe medical complications</u> and can lead to death. There is evidence already demonstrating through circumstantial evidence of defendants adopting a de facto policy through the ADOC just as <u>Dr. William Hobbs</u> has explained to the Court that: (i) plaintiff **did not meet** the Alabama Department of Correction's Protocol; and, (ii) the **Protocol states** that the hernia **must be incarcerated** before surgically necessary, (iii) **"if" plaintiff met** the protocol he would have surgery. Id. Defendants de facto Protocol is challenged as unconstitutional.

History with both CMS and CMS contracting with Alabama Department of Corrections to provide medical care to prisoners reflects that the Protocol is hidden being the words "elective procedures" regarding medical treatment. In plaintiff's case, plaintiff's hernia has been labeled as "elective" and upon information and belief the defendant's Protocol is within their "contractual" agreement entered between the Alabama Department of Corrections and Prison Health Services, Inc., and Correctional Medical Services.

In further support of plaintiff's motion to compel, Judicial notice regarding "elective" treatment was/is prohibited between the medical providers "CMS" and the ADOC.  In *Edwards v. Bradford*, 1997 U.S. Dist. LEXIS 15089 (S.D.Ala. 1997) Dr. George Lyrene submitted an Affidavit and Correctional Medical Services are now the current medical providers:  However, according to the **contract entered** between PHS and ADOC, elective procedures are/were prohibited, just as plaintiff's elective hernia. The Court stated:

> [5]Dr. George Lyrene, who is not a party in this action, has worked in various capacities as a physician for Questcare and PHS, both of which provided health care to the inmates incarcerated with the Alabama Department of Corrections; **he is currently Medical Director for PHS** (Doc. 14, Lyrene Certificate). Lyrene stated that the **policies for Questcare and PHS were "that cataract surgery would be elective IF the cataract was on one eye only AND IF the vision was unimpaired in the other eye" though this policy was not in writing** (emphasis in original). [ . . . ] **Under the terms of the contract that existed between Questcare and the Department of Corrections, the health care provider <u>did not have to provide elective</u> health care, defined as "medical care which, if not provided, will not cause the Inmate's health to deteriorate or cause definite harm to the Inmate's well being"** (*see* **Doc. 14, Health Services Agreement (attached to Lyrene Certificate), PP 1.3, 2.4).** Id.

Next, the words "**must**" as used by Dr. Hobbs is fair to state that there is no standards other than what the protocols states if, there are other standards that must be met, discovery is appropriate.    Dr. Hobbs has stated that plaintiff **must "meet"** the Protocol before he can receive surgery, plaintiff's hernia "**must be incarcerated, strangulated or into the scrotum".** [Hobbs @ Id.]

Richard Allen is supervisory of defendant Dr. George Lyrene, M.D., as Medical Director.  Interesting, Dr. George Lyrene has already explained to the Court that a strangulated hernia is a dangerous situation; but, it is the very situation that Dr. Hobbs stated that plaintiff must meet before he can retain surgery is unconstitutional and Allen should have known.

In further support, *Taylor v. Questcare*, **Civil Action: 93-0700-CB-M,** 1995 U.S. Dist. 14975 ( S. D. Ala. 1995) Dr. George Lyrene explains his opinion regarding the strangulated hernia which is what Dr. Hobbs states is the Alabama Department of Correction's Protocol:  Dr. Lyrene the Medical Director's opinion speaks about <u>how the strangulated hernia will cause severe medical problems</u>, and also he acknowledged prisoners suffer pain from their untreated hernias:

> <u>"Dr. Lyrene explains in his affidavit (Doc. 34) that he is responsible for the nonemergency free-world medical referrals, and regarding Plaintiff's condition, provides:</u>
>
> 4. Plaintiff's entire abdomen is herniated. This would not impact on his organs as the herniation goes out of the abdomen away from his organs. Plaintiff's hernias are not a threat to his health because there is no incarceration or strangulation of the hernias. **An incarcerated hernia would be likely to cause plaintiff health problems, and a strangulated hernia would be an emergency.** Plaintiff has neither of these conditions, but is being examined on a regular basis in case there is a change in his condition. " Id.

*Talyor* further elaborated on Dr. Lyrene's Affidavit stating: "Dr. Lyrene relates that Plaintiff's hernias involve his entire abdomen but they do "not impact on his organs as

---

[5]  This Hernia Protocol will not be in writing just as the PHS and Questcare contractual agreement

the herniation goes out of his abdomen away from his organs." Dr. Lyrene claims that Plaintiff's hernias are not a threat to **Plaintiff's health as the hernias are not strangulated or incarcerated and are examined on a regular basis for the purpose of detecting a change in Plaintiff's condition. It is Dr. Lyrene's position that a patient with Plaintiff's symptoms should not be experiencing pain, but pain is subjective, and Plaintiff should know whether he is in pain, and that Plaintiff's pain should be able to be controlled with pain medication. . . . " Id.**

### POINT "B"

### THE CRITERIA/PROTOCOL REGARDING HERNIAS
### POLICY MAKER

[6] This Court is going to have to decide who is policymaker because an admission by a third party opponent has stated that there is a protocol. However, the Court will determine who that policymaker is, and moreover, it will be Richard Allen. This policy, protocol is challenged. See, *Mandel v. Doe*, 888 F.2d 783, 791-92 (11th Cir. 1989). In fact, Richard Allen's liability under 1983 may be established in one of four ways: (1) the constitutional deprivation was caused by a policy or custom of the local governmental entity, *or* (2), the final policymakers of the local governmental entity acted with deliberate indifference to a constitutional deprivation, *or* (3) the final policymakers of the local

---

regarding "elective" was stated in the contract.

[6] Discovery is sought to Richard Allen as to policy maker because information and belief is that the protocol is unwritten regarding hernia treatment. Plaintiff must establish this policy as a part of his claims against defendants.

governmental entity delegated their authority to a subordinate who, in turn, caused a constitutional deprivation, *or* (4) the final policymakers of the local governmental entity ratified a constitutionally impermissible decision or recommendation of a subordinate employee. *Sherrod v. Palm Beach County School District,* 424 F. Supp. 2d 1341, 1344 (S.D.Fla. 2006) (emphasis added).

Also, plaintiff can establish the requisite "official policy" in one of two ways: (1) identifying an officially promulgated policy, or (2) identifying an unofficial custom or practice shown through the repeated acts of the final policymaker of the entity. *Grech v. Clayton County*, 335 F.3d 1326, 1329-30 (11th Cir. 2003). Plaintiff must identify the policy or custom, which caused his injury so that liability will not be based upon an isolated incident, *McDowell v. Brown,* 392 F.3d 1283, 1290 (11th Cir. 2004) (citations omitted), and the policy or custom must be the moving force of the constitutional violation. *Grech,* 335 F.3d at 1330. *See also* **Board of County Comm'rs v. Brown,** 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ; *Gold v. City of Miami*, 151 F. 3d 1346, 1350 (11th Cir. 1998) "[M]unicipal liability under 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) ; *see also* *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994) ("Only those municipal officers who have final policymaking authority may by

15

their actions subject the government to 1983 liability.") "State and local positive law determine whether a particular official has final policymaker authority for 1983 purposes." **Cooper**, 403 F.3d at 1221.  The discussion of these principles in <u>Church v. City of Huntsville</u> is helpful.  In <u>Church,</u> the Eleventh Circuit explained: "[M]unicipal liability may be based upon (1) an action taken or policy made by an official responsible for making final policy in that area of the city's business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." **Church,** 30 F.3d at 1343.

[7] As far back as 1997 there has been a certain **criteria** regarding Hernia treatment must be met involving medical providers and ADOC.  In **Henry v. Wallace,** 1997 U.S. Dist. LEXIS 6448 (S.D. Ala. 1997); the prisoner prior to his incarceration in the Alabama Department of Corrections developed a hernia. After arriving at the [8]*Fountain Correctional Facility,* the prisoner complained of the hernia and associated pain to a staff nurse and Dr. Wilson.  The prisoner asserted that he was not administered any medication for pain and never given prompt access to medical treatment for this condition. However, in that case of a hernia <u>Defendant Nurse Carla Wasdin responded, stating: "**Dr. Wilson examined**</u>

---

[7]    Plaintiff, Willie J. Henry, an Alabama state inmate, initiated this action *pro se* pursuant to <u>42 U.S.C. 1983</u>. Plaintiff names as Defendants the following individuals: Dr. Harold Wilson, M.D.; Nurse Carla Wasdin, R.N.; Tommy Herring, Commissioner of the Alabama Department of Corrections; Arnold Holt, Warden at Fountain Correctional Facility; Deputy Warden J. W. Ross; Lt. David Thomas; Correctional Officer James Shipp; Sgt. Wayne Gray; and Melissa Wallace, Grievance Officer for the Department of Corrections.

you on 10/29/93. His assessment is that your hernia at this time does not meet the

criteria for surgical repair." Id.    Nurse Wasdin's statement into the Court's record in

*Wallace* is similar to the evidence stated by Dr. William Hobbs in his Affidavit to the

Court, that plaintiff does not meet the Protocol and if, he met the Protocol he would have

surgery.  The sole challenge is the custom, practice, policy that has the force of law that

has left plaintiff and others suffering in pain when the treatment is available but is

refused until the life or death situation being the strangulated hernia where the

defendants hide behind the mere words "elective procedure".

Regardless as to how much defendants attempt to deny that they do not have a

Protocol, it is not believable because Dr. William Hobbs has stated differently, and the

medical records reflect Brandon Kindard calling nurse maxie with instructions quoting

almost identical what Dr. Hobbs has stated concerning this Protocol.  Allen has agreed to

the de faco protocol and it has cuased an injury and he is in the position to make changes.

Discovery is requested.

### ARGUMENT AS TO RICHARD ALLEN  SUPERVISORY LIABILITY

42 U.S.C. § 1983 that is designed "to deter state actors from using the badge of

their authority to deprive individuals of their federally guaranteed rights and to provide

relief to victims if such deterrence fails." ***Wyatt v. Cole***, 504 U.S. 158, 161, 112 S.Ct. 1827,

1830, 118 L.Ed. 2d 504 (1992); ***Greffey v. Alabama Department of Corrections***, 996 F.

---

[8] Fountain Correctional Facility, is a male prison operated by the Alabama Department of Corrections
in Alabama.

Supp. 1368 (N.D. Ala. 1998). The law is that "liability may be imposed . . . from the absence of a policy," *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991), when a constitutional injury occurs and when the failure to adopt a policy rises to the level of deliberate indifference to the need for such policy. *See City of Canton v. Harris*, 489 U.S. 378, 388-89, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (municipal liability) n10; *Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998) (observing that, "if the supervisor personally devised a deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act"). Therefore, ADOC and Richard Allen do not have a specifically Protocol regarding hernias, they will at the end of this case.

In this case, why doesn't ADOC supervise their physicians? Why doesn't ADOC CMS, or PHS have any policies, protocols regarding hernias before it is strangulated or incarcerated? Why hasn't plaintiff been seen by a qualified doctor, surgeon for a proper medical determination as to when surgery needs to be performed before as Dr. Hobbs stated incarcerated or into the scrotum?

When both PHS and CMS are found guilty, ADOC will automatically be found quilty to deliberate indifference because there are the Supervisors and have the power to make changes, and they have the Protocol that is challenged as unconsituitonal.

In order to prove that Richard Allen should be liable, the plaintiff [will] have to demonstrate that Richard Allen in his official capacity, himself <u>directly caused the violation</u> of their constitutional rights through their adoption of some official policy or

18

practice. *See* **Monell v. Department of Social Services,** 436 U.S. 658, 695, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978); *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1502-03 (11th Cir. 1985).

## *STANDARD OF REVIEW*

*Under Fed. R. Civ. P. 37(a)(2),* the court may compel production of requested documents, if the documents are discoverable under Fed. R. Civ. P. 34(a). The party seeking production must demonstrate that the request is relevant, calculated to lead to admissible evidence, although the requested material need not itself be admissible at trial.

## *POINT 1.*
## *DEFENDANT RICHARD ALLEN  HAS WAIVED HIS OBJECTIONS BY HIS FAILURE TO RESPOND TIMELY TO THE REQUEST*

Plaintiff argues that there is no favoritism regarding the rules of Discovery. Plaintiff also contends that the rules provide that responses and objections to requests for production of documents, interrogatories and admissions are to be served within 30 days of the request unless the court grants a shorter or longer time. *Rules 33, 34, 36, Federal Rules of Civil Procedures.* Morethanless, the Court issued its **Discovery Scheduling Order** [*October 18, 2007 Court Doc. 178-1, Order*].  In its Order the court directed that each party to file its response to request for discovery within thirty (30) days of receipt of the discovery request. Defendant Richard Allen has waived his right to object by failing to

provide a written response, including objections to the Request for Production of Documents, Interrogatories, and Request for Admissions.

Generally, in the absence of an extension of time or good cause, the failure to file a written response in the time fixed by the rule constitutes a waiver of any objection. *Davis v. Fendler,* 650 F. 2d 1154, 1160 (9th Cir. 1981); *Krewson v. City of Quincy,* 120 F. R. D. 6 (D. Mass. 1988). *See also In Re United States,* 864 F. 2d 1153, 1156 (5th Cir. 1989) (as a general rule, when a party fails to object timely to interrogatories, production requests or other discovery efforts, objections are waived). *See, e.g., Marx v. Kelly, Hart & Hallman, P.C.,* 929 F. 2d 8, 12 (1st Cir. 1991); see also, **Coker v. Duke & Co.**, 177 F. R .D. 682; 1998 U.S. Dist. LEXIS 3780, 41 Fed. R. Serv. 3d. (Callaghan) 353, (M. D. Ala. 1998); *Godsey v. United States,* 133 F. R .D. 111, 113 (S. D. Miss. 1990); accord, *Demary v. Yamaha Motor Corp.,* 125 F. R. D. 20, 22 (D. Mass. 1989) and cases cited; *Krewson v. City of Quincy,* 120 F. R. D. 6, 7 (D. Mass. 1988); *Cephas v. Busch,* 47 F. R. D. 425 (W. D. 1963). This waiver is enforced even if the objections are based on a claim of privileged. *Marx v. Kelly, Hart & Halman, P.C.,* 929 F.2d. 8, 12 (1st Cir. 1991*); Fretz v. Keltner,* 109 F. R. D. 303, 309 (D. Kan. 1986) and cases cited; *Cardox Corp. v. Olin Matthiesen Chemical Corp.,* 23 F. R. D. 27, 31 (S.D. ILL. 1958).

## POINT II
### THE RELEVANCY STANDARD

Under *Rule 401,* <u>Federal Rules of Evidence</u>, the definition of *"Relevant Evidence"* means evidence having any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable than it would be without the evidence.

This Rule defines the term. The definition provides that evidence is relevant if it has *any* tendency to make the existence of a material fact more probable or less probable than it would be without the evidence. Although it is true that some Federal Courts have purported to use a slightly different test, an analysis of most of the opinions leads to the conclusion that in practice the test advocated in *Rule 401* is consistent with that developed in most Federal Courts prior to the enactment of the Rules.

The important thing for this Court to remember is that the evidence does not by itself have to prove the ultimate proposition for which it is offered; nor does it have to make that ultimate proposition more probable than not. To be relevant it is sufficient that the evidence has a *tendency* to make a consequential fact even the least bit more probable or less probable than it would be without the evidence.

Fed. R. Civ. P. *26(b)(2)(iii)* the discovery of defendant's responsibility, knowledge and information regarding any <u>agreement</u> not to repair a hernia until the life or death situation regardless of pain and suffering is relevant when he is in the position to alleviate the danger of further health deterioration. This case is above that of mere negligence or malpractice. Thus, any relevant information known to the defendant about plaintiff's claim regarding surgery is relevant.

Under the *Federal Rules of Civil Procedure*, parties may discover information, which is relevant and non-privileged. *Rule 26(b)(1)*, *Federal Rules of Civil Procedure*. Under the federal rules, relevancy is "<u>construed broadly to encompass any matter that bears on, or</u> <u>that reasonably could lead to other matters that could bear on, any issue that is or may be</u> <u>in the case."</u> *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978). Courts are required to accord discovery a broad and liberal scope in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement. *Id.; **Hickman v. Taylor***, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947). Where there is a doubt over relevancy, the court <u>should still permit discovery</u>. *Deitchman v. E. R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984). Discovery request should be allowed, "unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." *La Chemise Lacoste v. Alligator CO., Inc.*, 60 F. R. D. 164, 171 (D. Del. 1973); see *Nash v. Thielke*, 743 F. Supp. 130 (E. D. Wis. 1990)(the plaintiff was entitled to an officer's urine test results, since the officer's sobriety during the incident was an issue in the case).

The law is established in three area of relevant law. *First,* the fact that a state can delegate the operation of prisons to private prison corporations does not mean it can wash its hands of all responsibility. In this case, Alabama law prohibits Alabama ADOC delegating its operation of prisons to private prison corporations. *Secondly,* as the Supreme Court emphatically stated in a case involving medical care, "[c]ontracting out

22

medical care does not relieve the state of its consitiutional durty to provide adequate medical treatment to those in its cusody . . . " *West v. Atkins*, 487 U.S. 42, 56, 108 S.Ct. 2250, 101 L.Ed. 2d 40 (1988). See also, *Ancata v. Prison Health Services*, 769 F.2d 700 (11th Cir. 1985)(holding that although the priate prison company had contracted to perform an obligation owed by the county, the county itself remained liable for any consitutional deprivations cuased by the policies or customs of the private entity; in that sense, the county's duty was non-delegable); *Brown v. Corrections Corp. of America*, 188 F. Supp. 2d 870 (M.D. Tenn. 2000)(state (and here the county) retained responsibility despite having contracted out the medical care of the prisoners). Thus, this Court will hold the government responsible for actions taken by a private provider that violate an inmate's rights. See, *American Correctional Association, National Correctional Policy on Private Sector Involvement in Corrections (Jan. 1985). Third,* the Eighth Amendment duty applies to medical conditions that may result in pain and suffering which serve no legitimate penological purpose. *Estelle*, 429 U.S. @ 103, 97 S.Ct. @ 290. See also, *McGuckin*, 974 F. 2d @ 1059. ([D]elay in performing surgery resulted in needless infliction of pain); *Wood v. Housewright*, 900 F. 2d 1332 (9th Cir. 1990)(with two judges holding prisoner had stated an Eighth Amendment claim for pain inflicted by delay in treating injury, but dismissing the claim on other grounds); *Hunt*, 865 F. 2d 198 (delay in providing prisoner with replacement dentures; *Jones*, 781 F. 2d @ 771-72 (hernia which results in pain, suffering, and the inability to perform a prison job is a serious medical need which prison doctors

may not ignore); *Fields v. Gander*, 734 F. 2d 1313 (8th Cir. 1984)(inmate suffering severe pain from infected tooth).

The material sought regarding *Allen* is both: (1) material sought is clearly relevant; and, (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable; (iii) has not been disclosed by the defendants. Because the defendant <u>has not</u> responded, the **burden is on him to demonstrate why discovery is not practicable**. *Grubbs v. Bradley*, 552 F. Supp. 1052, 1129 (M. D. Tenn. 1982)(court finds that provision of medical care by persons beyond the level of their training and experience constitutes deliberate indifference); *Mandel v. Doe*, 888 F. 2d 783, 789-90 (11th Cir. 1989); *Hoptowit v Ray*, 682 F. 2d 1237, 1252-53 (9th Cir. 1982)(certain staff performing functions that they are neither trained or licensed to perform). Hernias are painful; plaintiff has been left without treatment, <u>because the only treatment is surgery</u> . The party resisting production bears the responsibility of establishing undue burden. **The Record is silent concerning defendant Prison Health Services, in his individual capacity.**

### POINT III
### CUMULATIVE OR DUPLICATIVE IN NATURE TO THE DISCOVERY MATERIALS PREVIOUSLY PROVIDED TO THE PLAINTIFF

Several medical documents are concealed from plaintiff and this court. With that, there are absolutely very limited reasons as to how plaintiff's discovery request could possibly lead to being cumulative or duplicative.

The particular request for production of documents is relevant and takes the case "beyond the pleadings" and the documents are not cumulative, duplicative in nature because they are not in the record nor have been produced. Plaintiff submits an example from an _excerpt_ of his **Interrogatories and request for Production of Documents** upon Richard Allen, and proffers that the Interrogatories are relevant: **[See, Attached Discovery Request Page # 3 through 12: Interrogatories on PHS, Court Doc. N/A]**

### III.   INTERROGATORIES:

¶ 1.   Please state the following:

a.   ADOC's duty regarding plaintiff's medical care,

b.   PHS's duty regarding plaintiff's medical care,

c.   ADOC's duty regarding plaintiff's medical care while he was at the private prison in Louisiana from March 16, 2006 through October 6, 2006.

d.   CMS's duty regarding plaintiff's current medical injury.

e.   Disclose your duty, responsibility regarding the treatment procotol regarding prisoners suffering with hernias.

¶ 2.   Since February 2005 to current date of your answer, "_identify by document_" any and all Court order(s) from any Court in this State in which a judgment was rendered against ADOC and PHS separately or together to: (i) **provide independent physical examination regarding a prisoner with a hernia,** (ii) **provide medical treatment to a prisoner with a hernia?** Indicate   the city; state where the charges were, the nature of the charge, the date of judgment and order, the court case number, and the disposition of the case?

¶ 3.   "_Identify by document_" ADOC's responsibility to assure quality assurance of medical care to Alabama inmates and plaintiff while he was incarcerated at the private prison in Louisiana from March 16, 2006 through October 6, 2006.

¶ 4.   Disclose any and all "_documents and reports_" relating to any recommendation(s) regarding the quality assurance of medical care to prisoners suffering from hernias. If any, "_Identify_" the person(s) involved with such recommendation(s), the decision(s) regarding the existing hernia protocol.

a.     *"Identify by document"* the proposed protocol recommendation(s).

b.     *"Identify by document"* the names of all persons involved.

¶ 5.    "*Identify by document*" the names, titles, and responsibility of staff members at SLCS, PHS and ADOC who had/have the responsibility for approval of medical treatment regarding hernias, specifically plaintiff's request for surgery during February 2005 until October 31, 2007.

¶ 6.    "*Identify by document"* any and all person responsible for providing medical care to prisoner Johnny Carroll who have the responsibility for scheduling his medical appointments outside the prison regarding his hernia, evaluating requests for specialized treatment. If said person is other than who is responsible for the same duties regarding plaintiff's claim, "*identify by document*".

¶ 7.    "*Specifically identify by document*" the person(s) employed, contracted by ADOC, PHS who was/is responsible for reviewing and updating hernia protocols, "*reports"* policies and procedures regarding medical treatment for hernias, and for requesting improvements in services since your contractual employment with ADOC and from February 2005 through October 31, 2007. If any changes, please "*identify by document."*

¶ 8.    "*Specifically identify by document*", the name(s), responsibility, of any person responsible for reporting to any Director, Supervisor of PHS, ADOC, and/or any other personnel "*identify by document*" at ADOC, whether superintendent or commissioner who serves as a health authority for the institutions and was the overall supervisor for clinical services regarding improvements in services and treatment of hernias.

¶ 9.    Specifically disclose any substance of any oral or written statements, agreements, communications between SLCS, and ADOC regarding hernia treatment and repair during February 2005 through October 31, 2007, and March 16, 2006 through October 6, 2006.

¶ 10.  **"*Identify by document*" how ADOC legally and lawfully transferred plaintiff to the private prisons out of State.**

¶ 11.  "*Identify"* any and all person(s) at ADOC who agreed with PHS to implement a protocol regarding hernia treatment for Alabama inmates from date of their service through October 31, 2007.

¶ 12. "*Specifically identify by document*" the procedures implemented as to how hernia repairs are approved through PHS and ADOC.

¶ 13. "*Specifically identify by document*" the procedures implemented as to how hernia repairs were approved while plaintiff was incarcerated at SLCS through ADOC.

¶ 14. From *February 2005* through date of your response, disclose any and all knowledge, information, "*documents*" from any person requesting improvement, changes updating the Protocols for hernias. If yes, state:

    a.   *Identify* the incident,

    b.   *identify* person(s) requesting changes

    c.   *Identify* by document of request

    d.   *Specifically identify* the requested change, if submitted and disposition.

¶. 15 "*Identify by document*," any and all persons who has authority as a final decision maker regarding plaintiff's request for surgery.

¶ 16. Is it common practice for ADOC's quality assurance program to allow a "no need for surgical referral at present" be based solely upon a nurse practitioner?

¶ 17. It is common practice for ADOC's quality assurance program to allow a prisoner to suffer pain due to a hernia without the cure?

¶ 18. "*Identify by document*" whether it is ADOC's quality assurance program authorization to allow a prisoners with a hernia to wait until his hernia is incarcerated or in danger of being incarcerated before surgically necessary.

¶ 20. "*Identify by document*" whether it is ADOC's quality assurance program to wait until a life or death situation regarding hernias -- that the hernia is incarcerated, strangulated, trapped, or into the scrotum before PHS will authorize surgically intervention?

¶ 21. From February 2005 through October 31, 2007, disclose ADOC's common practice, policy, procedures followed, and "*identify by document*" for hernia repairs.

¶ 22. "*Identify by document*" whether ADOC's quality assurance authorization nurse practitioner Bradford Adams, and staff at Kilby Correctional Facility to simply state to a prisoner at sick call "you can sign a waiver" without inquiring into the prisoners medical complaint.

¶ 23. "*Identify by document*" each and every person involved with hernia treatment protocols with ADOC, PHS, SLCS, during February 2005 through October 31, 2007.

¶ 24. "*Identify by document*" the name of any person at ADOC who had/has authority to approve plaintiff's request for surgery.

¶ 25. "*Identify by document*" whether it is common practice of PHS to follow ADOC's quality assurance program, policy, procedures, and protocol regarding hernias?

## POINT IV
### NOT REASONABLE CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE

Information requested ought to aid this Court and a jury for a determination that: Richard Allen cannot lawfully send plaintiff out-of-state to any private prison; and (ii) prison officials <u>may not</u> avoid their duty to provide medical treatment by the simple expediency of labeling such treatment as "<u>elective</u>". The classification of surgery as elective does not abrogate the prison's duty, or power, to promptly provide necessary medical treatment for prisoners. See, *Jones,* 781 F. 2d @ 770-71 (classification of hernia as "elective surgery" did not insulate county from Eighth Amendment duty to provide proper medical care); *Johnson v. Bowers*, 884 F. 2d 1053, 1056(prisoner waiting six years for elective arm surgery was entitled to relief)(citing *Monmouth County Corr. Inst. Inmates v. Lanzaro,* 834 F. 2d 326, 348 n. 32 (3d Cir. 1987) cert. Denied, 486 U.S. 1006, 1-8 S.Ct. 1731, 100 L.Ed. 2d 195 (1988)); *West v. Keve*, 541 F. Supp. 534 (D. Del. 1982)(prison officials violated Eighth Amendment by not furnishing elective surgery for dysfunctional veins that were causing varying degrees of pain); *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D. N. H. 1977)(elective treatment recommended by a physician but not "necessary"

28

in a life or health saving sense, may still be constitutionally mandated if the prisoner elects to proceed with the treatment).

In this case, Dr. Tassin, M.D., questioned surgery and was going to refer plaintiff to a surgeon; but, Brandon Kindard with the ADOC's Commission's Office called on 7/12/06 with instructions that plaintiff cannot receive surgery unless his hernia is incarcerated or into the scrotum is a policy, custom, protocol, and interference with medical treatment: Dr. Tassin then noted <u>that plaintiff's surgery is elective</u> and it is still leaving him in pain and discomfort while his health deteriorates. Where surgery is elective, prison officials may properly consider the costs and benefits of treatment in determining whether to authorize the surgery, but the words "elective surgery" is not a talisman insulating prison officials from the reach of the Eighth Amendment. Each case must be evaluated on its own merits. See, ***Delker v. Maass***, 843 F. Supp. @ 1400 (D. Or. 1994)(although state inmate may not have suffered long-term physical harm from nearly two-year delay in providing operation for <u>non-incarcerated inguinal hernia</u>, inmate was "injured" by delay for purposes of his § 1983 civil rights action, since he suffered some pain, anxiety, and restricted activity during delay.)

Judicial notice regarding "elective" treatment was/is prohibited between the medical providers "CMS" and the ADOC. In ***Edwards v. Bradford***, 1997 U.S. Dist. LEXIS 15089 (S.D.Ala. 1997) <u>Dr. George Lyrene</u> submitted an Affidavit and Correctional Medical Services are now the current medical providers: However, according to the

contract entered between CMS and ADOC, elective procedures are/were prohibited, just

as plaintiff's elective hernia. The Court stated:

> "Dr. George Lyrene, who is not a party in this action, has worked in
> various capacities as a physician for Questcare and CMS, both of which
> provided health care to the inmates incarcerated with the Alabama
> Department of Corrections; **he is currently Medical Director for CMS**
> (Doc. 14, Lyrene Certificate). Lyrene stated that the **policies for Questcare
> and CMS were "that cataract surgery would be elective IF the cataract
> was on one eye only AND IF the vision was unimpaired in the other
> eye"** though this policy was not in writing (emphasis in original). [ . . . ]
>
> **Under the terms of the contract that existed between Questcare and the
> Department of Corrections, the health care provider did not have to
> provide elective health care, defined as "medical care which, if not
> provided, will not cause the Inmate's health to deteriorate or cause
> definite harm to the Inmate's well being"** (*see* **Doc. 14, Health Services
> Agreement (attached to Lyrene Certificate), PP 1.3, 2.4).** Id.

First, plaintiff does not seek "personnel records" in any general way. He seeks

documents pertaining to the treatment, method, practice, procedures rendered by the

medical providers being supervised by ADOC. Plaintiff does not seek other matters that

may be in his personnel records, such as medical data or information about his records of

lateness, leaves and vacations, etc.

*Secondly,* the kind of information sought is highly relevant. The plaintiff has

information that repeated complaints about mistreatment regarding hernias have been

made about the medical defendants and that nothing has been done about them and their

practice. Evidence to that effect would be highly relevant to the claim of supervisory

---

[9]  This Hernia Protocol will not be in writing just as the CMS and Questcare contractual agreement
regarding "elective" was stated in the contract.

liability against defendants set out in **Counts II, III, IV, VI**, of plaintiff's *Supplemental Complaint pages 25-26. [Court Doc No. 93]* Whether quasi-policymakers have been deliberate indifferent in their supervision of subordinates the court must explore the supervisors' conduct in this case: -- as in *Karr*, 875 F.2d @ 1556 (jury could find that failure to take corrective action after plainly unconstitutional use of police dogs constituted deliberate indifference). In this case, several supervisors claim that they consulted with each other, and other physicians who are defendants in this case. Discovery in this area is relevant because it is regarding the treatment proscribed by the defendants See also, *Ancata v. Prison Health Services, Inc.*, 769 F. 2d 700, 795 (11th Cir. 1985). The same standard of deliberate indifference applies to both inadequate training and inadequate supervisions. *CF. Davis v. City of Ellensburg*, 869 F. 2d 1230, 1235 (9th Cir. 1989)(applying City of Canton to question municipal liability). Liability applies if it is established that ADOC through Richard Allen, either has a continued practice that of allowing a nurse practitioner to make surgically recommendations while knowing that he is not qualified, and whether all defendants circumstantially agreed with any de facto policy regarding "elective treatment" of a hernia that is not required to be repaired until the hernia is incarcerated, strangulated or into the scrotum. Richard Allen can be held liable if established that the conduct rises to deliberate indifference; no treatment at all; if, *Allen* agreed to any agreement and, if they knew about the agreement and this agreement

is the proximate cause to injury and did not take any steps necessary to prevent the

abuse.

## *Excerpt Discovery Request:*

### *IV. REQUEST FOR PRODUCTION OF DOCUMENTS OF YOUR AGENTS*

That defendant produces and permit plaintiff to inspect and to copy each
of the following documents:

#### * RULE 33, Fed. R. Civ. P., "Business Records"

a.    To permit plaintiff to inspect, analyze, and copy or photograph,
      "*specific document*," implemented policies/procedures of ADOC's
      objective plain regarding hernia from February 2005 through
      October 31, 2007.

b.    To disclose any and all inculpatory materials, items, reports,
      evidence, statements, including statements of witnesses, reports,
      identities of witnesses, addresses of such, any other physical
      evidence, and any other evidence, whether described herein or not,
      which is inculpatory evidence of any type, form or fashion.

c.    All letters, complaints, or other *documents* in defendants
      possession or under his control received, sent, made, or read by
      defendants, or by any agent thereof, relating to the treatment being
      prescribed by ADOC and PHS regarding hernias since February
      2005 through October 31, 2007.

D     Any and all "**reports**" made, in the defendants possession or under
      his control concerning inmates complaining about having pain
      from their hernias before incarceration, strangulation or into the
      scrotum.

E.    "The policy, procedures followed regarding medical treatment to
      Alabama inmates suffering with hernias while at the "SLCS" the
      private prison in Louisiana.

32

### RICHARD ALLEN AND MEDICAL DEFENDANTS FAILED TO ESTABLISH PROCEDURES OF PROTECTION BY HAVING QUALIFIED PHYSICIANS

In this Case, ADOC through CMS and PHS failed to have a doctor qualified to make surgically determinations regarding hernias. Dr. Hobbs, Robbins "are not" Board Certified with the **American Board of Surgery** or another similar Board that would qualify them to **make** surgically recommendations and qualify them to give an opinion regarding surgery. Richard Allen should have known this, because only a surgeon can tell the Court when plaintiff's hernia needs repair: ADOC, CMS and PHS as supervisors can be responsible for knowingly failing to provide adequate staff who are qualified to make surgically determination in this case.

Morethanless, Richard Allen need not have had personal participation or involvement in the acts of the employees to be held liable. As a supervisor, his failure (a) to train subordinates and to establish procedures for protection of constitutional rights and (b) to take action against violations of which he had notice can be a basis for liability. *See, **McCann v. Coughlin**,* 698 F.2d 112 (2nd Cir. 1983); ***Orpiano v. Johnson**,* 632 F.2d 1096 (4th Cir. 1980); ***McClelland v. Facteau**,* 610 F.2d 693 (10th Cir. 1980); ***Davis v. Zahradnick**,* 600 F.2d 458 (4th Cir. 1979); ***Dewell v. Lawson**,* 489 F.2d 877 (10th Cir. 1974); ***Beverly v. Morris**,* 470 F.2d 1356 (5th Cir. 1972); ***Roberts v. Williams**,* 456 F.2d 819 (5th Cir. 1971); ***Wright v. McMann**,* 387 F.2d 519 (2nd Cir. 1967).

Supervisors are liable in their individual capacities under 1983 "either when the supervisor personally participates in the alleged unconstitutional conduct or when there

is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. " *Cottone*, 326 F.3d at 1360 .   Plaintiff can establish "a causal connection" in one of three ways: first, "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990); <u>second</u>, when the supervisor's improper "custom or policy . . . resulted in deliberate indifference to constitutional rights," *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991); or, <u>third,</u> when the facts "support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez v. Reno*,  325 F.3d 1228, 1235 (11th Cir. 2003).   Court's have repeatedly found that "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County, Ala.*, 116 F. 3d 1419, 1425 (11th Cir. 1997); *Mandel v. Doe*, 888 F. 2d 783, 788 (11th Cir. 1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference").

## POINT V
### BURDENSOME

<u>Under well-settled law, the party resisting production bears the responsibility of establishing undue burden.</u> *G-69 v. Degnan*, 130 F. . . 326, 331 (D.N.J. 1990). Generally, a

party seeking to avoid discovery on a burdensomeness argument must substantiate that

position with detailed affidavits or other evidence establishing an undue burden.

## RELIEF REQUESTED

a.     That the Court grant this motion to compel **Richard Allen**, Commissioner for ADOC to answer plaintiff's interrogatories, request for production of documents, and admission; and, issue sanctions upon counsel for his failure to comply with this Court's Discovery Scheduling Order, and Discovery rules; and,

b.     That the costs of Inspection and Copying bear of the defendants upon the granting of this Compel of their policies/procedures, and Protocols.

c.     That this Court administers and enforces justice as to what this Court deems fair and appropriate.

d.     Under Rule 37(d): In regards to withheld Louisiana medical records of the plaintiff: order that the matters contained in the withheld documents be taken to be established; refuse to allow the nonresponsive party to support or oppose claims or defenses related to the withheld documents;

f.     Under Rule 36(a): That plaintiff request for Admissions propounded on defendant and properly served conjunctively with Discovery request [**Exhibit "B"**] be deemed admitted.

Done this 27th Day January 2008.

*Marcellus Breach*

Marcellus Breach 160710®
Limestone C.F
28779 Nick Davis Rd.
Harvest, Alabama 35749

COUNTY OF LIMESTONE        )

STATE OF ALABAMA           )

### *DECLARATION OF THE PLAINTIFF IN SUPPORT OF COMPEL AND SANCTIONS*

Affiant in the above instrument, who after being duly sworn, deposed and says on oath that the averments in the foregoing are true to the best of his ability, information, knowledge and belief:

I am ***Marcellus Breach, AIS #160710***, I am over the age of twenty-one.  I am the plaintiff in this action.  I make this declaration in support of my Motion to Compel against the correctional defendant for his failure to obey this Court's order entered on ***October 18, 2007 Court Doc. 178-1, Order Court's Discovery Scheduling Order***.

On *November 26, 2007,* I served on the defendant's counsel a document: **"Plaintiff's Eighth Set of Interrogatories and Request for Admissions, for Production of Documents to Defendants"** which **is attached to this affidavit as Exhibit "A,B,".**

Defendant Richard Allen did not respond to this discovery request after 30 days by order of the court and rules of discovery, nor did they request an adjournment from the court or seek my agreement to an adjournment.

On *January 1, 2008* I wrote to the defendant's counsel pointing out that their responses were late and requesting that they respond immediately.  A copy of my letters is attached as

Exhibit "A","B". I mailed this letter First Class U.S. Mail, postage prepaid and placing into the prison mailbox for proper mailing.

On *January 1, 2008* plaintiff attached his letter with a pleading entitled: "**Notice of Filing**" to the court. [*Court Doc. N/A*] explaining to counsel that Richard Allen has not answered the interrogatories, production of documents or the admissions request. Plaintiff explained to counsel that there are too many missing documents and that Richard Allen, has not provided any information or documents regarding his involvement and what information, facts he has knowledge thereof. Defendant's counsel has not responded to the plaintiff's efforts to resolve the dispute.

Defendants' counsel did not respond to my letter. I have written counsel and I have filed my notice of intent with the Court. Copies of my letters are attached. Defendant's objections are waived as a result of their failure to make them in a timely manner, as set forth in the brief accompanying this motion.

**WHEREFORE,** the plaintiff request that the court grant this motion in all respects under the penalty of perjury the foregoing is true and correct. 28 U.S.C. 1746

This January 27, 2008.

Marcellus Breach

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this 27th January 2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

**Alabama Dept. of Corrections**
**LEGAL DIVISION**
**P.O. Box 301501**
**Montgomery, Alabama 36130**

**Rushton, Stakely, Johnston, Garrett, P.A**
**P.O. Box 270**
**Montgomery, Alabama 36101**

**Starnes & Atchison, LLP**
**100 Brookwood Place, 7thg Floor**
**P.O. Box 598512**
**Birmingham, Alabama 35259-8512**

Marcellus Breach

# EXHIBIT "A"

*Holiday*
*No Mail*

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

---------------------------

|  |  |  |
|---|---|---|

MARCELLUS BREACH, #160710

     Plaintiff,

Vs.

PRISON HEALTH SERVICES, INC., et al.,

     Defendants.

\*
\*
\*     CASE NO: 2:06-cv-1133-MEF
\*
\*

### *NOTICE OF FILING/ DISCOVERY NO. 8, DISPUTE PERTAINING TO DEFENDANT RICHARD ALLEN*

**COMES NOW**, the Plaintiff <u>*Marcellus Breach*</u> (hereinafter "Breach") in proper person "Pro Se," hereby gives written notice pursuant *to Rules 37(a)(2)(A), 37(a)(2)(B), Fed. R. Civ. P.,* and compliance with this Court's order. Plaintiff states as follows:

1.     Plaintiff has attached his letter to Counsel for ADOC regarding discovery dispute regarding defendant Richard Allen pursuant to the Court Discovery Order entered on October 18, 2007 [Court Doc. No. 178-1] Defendant has not answered nor requested an extension of time.

1

**WHEREFORE,** plaintiff requests to place into the Record his attempts to resolve the discovery problems informally with counsel, without court intervention.

Done this 31ST Day December 2007.

Marcellus Breach 160710 ®
Limestone C.F.
28779 Nick Davis. Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY,** that I have this 31ST Day of December 2007, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections
P.O. Box 301501
Montgomery, Alabama 36101


Rushton, Stakely, Johnston, Garrett, P.A
P.O. Box 270
Montgomery, Alabama 36101

®

Marcellus Breach

# *MARCELLUS BREACH, 160710*

Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

*January 1, 2008*

Alabama Department of Corrections
Kim T. Thomas & Albert S. Butler
Legal Division
P.O. Box 301501
Montgomery, Alabama 36130

RE:  *2:06-cv-1133-MEF*     *Letter of Intent/ Discovery Request No. 8*

Dear Counsel:

My records reflect that I have not received defendant Richard Allen's response to discovery request served on November 26, 2007. Also, my records reflect that you have requested additional time. Due to your schedule and the voluminous discovery request, I hope that twenty-one days from receipt of this letter is enough time to either answer, or correspond with me. If I do not hear from you before within the twenty – one days I will request the Court take appropriate action.  Discovery request No.  # 8, served upon your Office on November 26, 2007 is overdue.

ADOC has full control to retrieve my Louisiana Medical Records and they have not been produced.  I am requesting that you please either supplement your initial discovery or, produce all of my **Louisiana Medical Records** including not limited to the "any and all" **fax report(s),** "any and all" grievances especially **No. 06-215 the "front and back"** of this particular grievance also, the "**nurses notes**". Each grievance contained in the medical records I am requesting that you insure that they are **photocopied front and back**.

I have done what is required I hope that we can work this dispute out. Out of courtesy, I have attached an excerpt to Discovery request No. 8 for your convenience.

I thank you for your time and attention; I look forward to hearing from you.

Sincerely,

Marcellus Breach

**Excerpt Discovery Request Richard Allen, No. 8 filed November 26, 2007.**                                              **copy/file**

### III.  *INTERROGATORIES*:

¶ 1. Please state the following:

    a.    ADOC's duty regarding plaintiff's medical care,
    b.    PHS's duty regarding plaintiff's medical care,
    c.    ADOC's duty regarding plaintiff's medical care while he was at the private prison in Louisiana from March 16, 2006 through October 6, 2006.
    d.    CMS's duty regarding plaintiff's current medical injury.
    e.    Disclose your duty, responsibility regarding the treatment procotol regarding prisoners suffering with hernias.

¶ 2. Since February 2005 to current date of your answer, "*identify by document*" any and all Court order(s) from any Court in this State in which a judgment was rendered against ADOC and PHS separately or together to: (i) **provide independent physical examination regarding a prisoner with a hernia**, (ii) **provide medical treatment to a prisoner with a hernia?** Indicate the city; state where the charges were, the nature of the charge, the date of judgment and order, the court case number, and the disposition of the case?

¶ 3. "*Identify by document*" ADOC's responsibility to assure quality assurance of medical care to Alabama inmates and plaintiff while he was incarcerated at the private prison in Louisiana from <u>March 16, 2006</u> through <u>October 6, 2006.</u>

¶ 4. Disclose any and all "*documents and reports*" relating to any recommendation(s) regarding the quality assurance of medical care to prisoners suffering from hernias. If any," *Identify*" the person(s) involved with such recommendation(s), the decision(s) regarding the existing hernia protocol.

    a.    "*Identify by document*" the proposed protocol recommendation(s).
    b.    "*Identify by document*" the names of all persons involved.

¶ 5. "*Identify by document*" the names, titles, and responsibility of staff members at SLCS, PHS and ADOC who had/have the responsibility for approval of medical treatment regarding hernias, specifically plaintiff's request for surgery during February 2005 until October 31, 2007.

¶ 6. "*Identify by document*" any and all person responsible for providing medical care to prisoner Johnny Carroll who have the responsibility for scheduling his medical appointments outside the prison regarding his hernia, evaluating requests for specialized treatment. If said person is other than who is responsible for the same duties regarding plaintiff's claim, "*identify by document*".

¶ 7. "*Specifically identify by document*" the person(s) employed, contracted by ADOC, PHS who was/is responsible for reviewing and updating hernia protocols, "*reports*" policies and procedures regarding

1

**Excerpt Discovery Request Richard Allen, No. 8 filed November 26, 2007.**                                          **copy/file**

medical treatment for hernias, and for requesting improvements in services since your contractual employment with ADOC and from February 2005 through October 31, 2007.   If any changes, please "*identify by document.*"

¶ 8. "*Specifically identify by document*", the name(s), responsibility, of any person responsible for reporting to any Director, Supervisor of PHS, ADOC, and/or any other personnel "*identify by document*" at ADOC, whether superintendent or commissioner who serves as a health authority for the institutions and was the overall supervisor for clinical services regarding improvements in services and treatment of hernias.

¶ 9.     Specifically disclose any substance of any oral or written statements, agreements, communications between SLCS, and ADOC regarding hernia treatment and repair during February 2005 through October 31, 2007, and March 16, 2006 through October 6, 2006.

¶ 10. "*Identify by document*" how ADOC legally and lawfully transferred plaintiff to the private prisons out of State.

¶ 11. "*Identify*" any and all person(s) at ADOC who agreed with PHS to implement a  protocol regarding hernia treatment for Alabama inmates from date of their service through October 31, 2007.

¶ 12. "*Specifically identify by document*" the procedures implemented as to how hernia repairs are approved through PHS and ADOC.

¶ 13. "*Specifically identify by document*" the procedures implemented as to how hernia repairs were approved while plaintiff was incarcerated at SLCS through ADOC.

¶ *14.* From *February 2005* through date of your response, disclose any and all knowledge, information, "*documents*" from any person requesting improvement, changes updating the Protocols for hernias. If yes, state:

    a.     *Identify* the incident,
    b,     *identify* person(s) requesting changes
    c.     *Identify* by document of request
    d.     *Specifically identify* the requested change, if submitted and disposition.

¶. 15     "*Identify by document,*" any and all persons who has authority as a final decision maker regarding plaintiff's request for surgery.

¶ 16. Is it common practice for ADOC's quality assurance program to allow a "no need for surgical referral at present" be based solely upon a nurse practitioner?

¶ 17.     It is common practice for ADOC's quality assurance program to allow a prisoner to suffer pain due to a hernia without the cure?

¶ 18. "*Identify by document*" whether it is ADOC's quality assurance program authorization to allow a prisoners with a hernia to wait until

2

**Excerpt Discovery Request Richard Allen, No. 8 filed November 26, 2007.**                                                    **copy/file**

his hernia is incarcerated or in danger of being incarcerated before surgically necessary.

¶ 20. "*Identify by document*" whether it is ADOC's quality assurance program to wait until a life or death situation regarding hernias -- that the hernia is incarcerated, strangulated, trapped, or into the scrotum before PHS will authorize surgically intervention?

¶ 21. From February 2005 through October 31, 2007, disclose ADOC's common practice, policy, procedures followed, and "*identify by document*" for hernia repairs.

¶ 22. "*Identify by document*" whether ADOC's quality assurance authorization nurse practitioner Bradford Adams, and staff at Kilby Correctional Facility to simply state to a prisoner at sick call "you can sign a waiver" without inquiring into the prisoners medical complaint.

¶ 23. "*Identify by document*" each and every person involved with hernia treatment protocols with ADOC, PHS, SLCS, during February 2005 through October 31, 2007.

¶ 24. "*Identify by document*" the name of any person at ADOC who had/has authority to approve plaintiff's request for surgery.

¶ 25. "*Identify by document*" whether it is common practice of PHS to follow ADOC's quality assurance program, policy, procedures, and protocol regarding hernias?

### IV. REQUEST FOR PRODUCTION OF DOCUMENTS OF YOUR AGENTS

That defendant produces and permit plaintiff to inspect and to copy each of the following documents:

#### * RULE 33, Fed. R. Civ. P., "Business Records"

a.    To permit plaintiff to inspect, analyze, and copy or photograph, "*specific    document*," implemented policies/procedures of ADOC's objective plain regarding hernia from February 2005 through October 31, 2007.

b.    To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

c.    All letters, complaints, or other *documents* in defendants possession or under his control received, sent, made, or read by defendants, or by any agent thereof, relating to the treatment being prescribed by

3

**Excerpt Discovery Request Richard Allen, No. 8 filed November 26, 2007.**                                                                 copy/file

ADOC and PHS regarding hernias since February 2005 through October 31, 2007.

D    Any and all **"reports"** made, in the defendants possession or under his control concerning inmates complaining about having pain from their hernias before incarceration, strangulation or into the scrotum.

d.    "The policy, procedures followed regarding medical treatment to Alabama inmates suffering with hernias while at the "SLCS" the private prison in Louisiana.

### V.    REQUEST FOR ADMISSIONS:

¶ 1. *Admit or deny*, PHS agrees with a Protocol that a hernia must be incarcerated or in danger of becoming incarcerated in order to be surgically necessary?

¶ 2. *Admit or deny*, that the only way to stop a hernia from getting worse is to repair the defect through surgery?

¶ 3. *Admit or deny,* that the Anatomy of Hernia, -- the most common location for hernia is the abdomen. A hernia (rupture) is usually noticed as a lump, commonly located in the groin or the umbilical region, it appears when a portion of the tissue which lines the abdominal cavity (peritoneum) breaks through a weakened area of the abdominal wall, this can give rise to discomfort as the hernia enlarges and can sometimes be dangerous is a piece of plaintiff's intestine become trapped ('strangulated')?

¶ 4. *Admit or deny*, it is your common practice not to repair a hernia unless the hernia is incarcerated or in danger of being incarcerated or into the scrotum before surgically necessary?

¶ 5. *Admit or deny*, it is ADOC's protocol, practice not to repair a hernia unless the hernia is incarcerate or in danger of being incarcerated or into the scrotum before surgically necessary?

¶ 6. *Admit or deny*, there is almost no limit to how big a hernia could without surgery?

¶ 7. *Admit or deny* that medically there is no cure for a hernia without surgery?

¶ 8. *Admit or deny*, a strangulated hernia can become an emergency that usually requires immediate surgery?

¶ 9. *Admit or deny*, PHS has a custom, practice, not to repair hernias before the hernia is incarcerated, or in danger of being incarcerated, or into the scrotum?

¶ 10. *Admit or deny*, a truss is the cure for a hernia?

¶ 11. *Admit or deny,* plaintiff has complained about having pain when coughing, sneezing, and having bowel movements due to this hernia?

¶ 12. *Admit or deny*, the issuing of pain medication will not cure a hernia?

¶ 13. *Admit or deny*, the issuing a truss and proscribing pain medication is a cheaper method of managing a hernia?

**Excerpt Discovery Request Richard Allen, No. 8 filed November 26, 2007.** copy/file

¶ 14. *Admit or deny*, plaintiff's inguinal hernia can get larger and lead to serious medical complications?

¶ 15. *Admit or deny*, discomfort usually is experienced especially when coughing, sneezing, lifting heavy objects, or standing for long period of time?

¶ 16. *Admit or deny*, bowel movements can cause the muscles to weaken resulting into an enlargement of plaintiff's hernia?

¶ 17. *Admit or deny*, the long-term course is for a hernia to become steadily worse as times goes on, sometimes slowly and sometimes quickly when left without surgery.

¶ 18. *Admit or deny*, that the opening of a hernia cannot heal itself?

¶ 19. *Admit or deny*, medically a doctor nor a nurse practitioner cannot treat a hernia; they must be repaired through surgery?

¶ 20. *Admit or deny* that plaintiff's hernia goes into his scrotum is trapped at times and plaintiff has to work it back up into place?

¶ 21. *Admit or deny*, a truss is for temporary use?

¶ 22. *Admit or deny*, the waiting until the hernia is incarcerated or in danger of becoming incarcerated, in order to be surgically necessary can become a life or death situation?

¶ 23. *Admit or deny*, waiting until the hernia is incarcerated, in danger of becoming incarcerated in order to be surgically necessary can, or will subject a patient into sever pain?

¶ 24. *Admit or deny*, under the standard of care, a hernia ought to be repaired before it is incarcerated or in danger of becoming incarcerated and before entering the scrotum?

¶ 25. *Admit or deny*, that overexertion can cause weakness, such as simple coughing or sneezing to the hernia?

¶ 26. *Admit or deny*, the effects felt by plaintiff can range from perfectly painless, through discomfort, to being very painful indeed?

¶ 27. *Admit or deny*, a hernia ought to be inspected to ensure that it is not becoming infected or developing into a more serious non-reducible hernia?

¶ 28. *Admit or deny*, PHS does not require its employees to conduct routine inspections on inmates' hernias?

¶ 29. *Admit or deny*, a hernia will limit a person daily activity depending on the stage of the hernia?

¶ 30. *Admit or deny*, when the hernia distends and pushes out the peritoneum forming the bottom of either the middle of the internal fossa, it is a direct or internal hernia.

¶ 31.    *Admit or deny*, the very instruction Manuel given to plaintiff by Prison Health Services, Inc., the **"Fitting Instructions" for Model 67-350** states pertaining to a hernia: ". . . Limiting activity, eliminating excess weight a hernia belt or truss may provide temporary relief. However, **CURE IS SURGERY**?"

¶ 32. *Admit or deny*, feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum is usually a warning sign that the hernia is progressing and becoming worse?

¶ 33. *Admit or deny*, you were the supervisor of the medical treatment proscribed to plaintiff while at ADOC?

¶ 34. *Admit or deny*, ADOC has final authority regarding approval or disapproval of surgery for plaintiff's inguinal hernia?

**Excerpt Discovery Request Richard Allen, No. 8 filed November 26, 2007.**                                                    copy/file

¶ 35. *Admit or deny*, there are over 300 Alabama inmates diagnosed with hernias from *February 2005* through date of your response?

¶ 36. *Admit or deny*, hernias is a case-by-case basis and are painful?

¶ 37. *Admit or deny*, you refuse to provide plaintiff with surgery until his hernia is incarcerated or in danger of being incarcerated?

¶ 38. *Admit or deny*, PHS has authorizes a Bradford Kindard, nurse administrator to make surgically recommendations?

¶ 39. *Admit or deny,* under the standard of care, the Protocols pertaining to hernia treatment for Alabama inmates' subjects a patient to endure pain and suffering.

¶ 40. *Admit or deny*, Alabama Board of Medical Examiners are not aware of the practice involved with ADOC and their medical providers, being a Protocol that a hernia must be incarcerated or in danger of being incarcerated in order to be surgically necessary.

¶ 41. *Admit or deny,* this Protocol ought to be changed pertaining to hernias.

¶ 42. *Admit or deny*, even if Dr. Hobbs recommended plaintiff surgery for his hernia, and because the hernia does not meet the protocol, ADOC Health Services, would have denied the recommendation regardless?

¶ 43. *Admit or deny,* PHS has a common practice, that the hernia must be incarcerated, or in danger of being incarcerated, or into the scrotum before surgically necessary?

¶ 44. *Admit or deny*, ADOC has a common practice, that the hernia must be incarcerated, or in danger of being incarcerated, or into the scrotum before surgically necessary?

¶ 45. *Admit or deny*, each person may feel different degrees of pain regarding their hernia?

¶ 46. *Admit or deny*, PHS has one standard policy, the hernia must be incarcerated or in danger of being incarcerated before surgically necessary?

¶ 47. *Admit or deny*, PHS failed to change the protocols regarding hernias or change the treatment protocols since February 2005 through October 31, 2007?

¶ 48. *Admit or deny*, it is the custom, practice, policy of PHS and ADOC not to approve surgery for plaintiff's hernia unless his hernia is incarcerated, in danger of being incarcerated, or into the scrotum?

¶ 49. *Admit or deny*, PHS's quality assurance provides that the hernia must be incarcerated or in danger of becoming incarcerated before surgically necessary?

¶ 50. *Admit or deny*, it is routine and established at ADOC that prisoners with hernias usually cannot receive surgery until their hernia is incarcerated or in danger of becoming incarcerated?

6

# EXHIBIT "B"

# IN THE DISTRICT COURT OF THE UNITED STATES * 8th
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

|  |  |  |
|---|---|---|
| _____ | * |  |
| MARCELLUS BREACH, #160710 | * |  |
| Plaintiff, | * |  |
|  | * | CASE NO: 2:06-cv-1133-MEF |
| Vs. | * |  |
| PRISON HEALTH SERVICES, INC., et. al., | * |  |
| Defendants. | * |  |

## *PLAINTIFF'S EIGHTH SET OF INTERROGATORIES AND REQUEST FOR ADMISSIONS, FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS UNDER FED. R. CIV. P.,*

*TO:*     **DEFENDANT COMMISSIOENR RICHARD ALLEN, ADOC.**

**COMES NOW**, the Plaintiff <u>Marcellus Breach</u> (hereinafter "Breach"), in proper person

"Pro Se," pursuant to *Federal Rules of Civil Procedures, Rule 33, 34 & 36,* hereby requesting

that named party and/or their present or prior "Agents" as being person(s) under their

control: "<u>*Alabama Department of Corrections,*</u> ("ADOC") "<u>*Prison Health Services,*</u>" ("PHS"),

"<u>*South Louisiana Correctional Services,*</u>" ("SLCSL") are requested to answer separately,

fully and in writing, the following interrogatories under oath, affirmation in accordance

within the definitions and instructions set. forth below, within thirty (30) days after

service of these **Interrogatories, Request for Admissions**, and **Production of Documents**,

1

furthermore, for the defendant to provide full disclosure along with their answers herein, copies thereof supporting evidentiary materials, as follows:

## I. DEFINITIONS AND INSTRUCTIONS;[1]

¶ 1.    Each Interrogatory shall be answered separately and as completely as possible. The fact that investigation is continuing or that discovery is not complete is not an excuse for failure to answer each interrogatory as fully as possible.  If you are unable to answer an interrogatory after you have attempted to obtain the information, answer to the extent possible.

¶ 2.    A question that seeks information contained in or information about or identification of any documents may be answered by providing a copy of such document for inspection and copying or by furnishing a copy of such document without a request for production.

¶ 3.    _Rule 33, Fed R. Civ. P._, permits that the interrogatories to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or government agency, by any officer or agent, who shall furnish such information as is available to the party. _Rule 33(d),_ also permits production of documents upon your Agents and the request for production of documents under said rule is requested from person(s) under your control.

---

[1] **Definitions and Instructions are continuing throughout this Discovery request. Rule 33, 34, & 35, Fed. R. Civ. P.**

¶ 4.    In responding to these request for Admissions, Production of Documents and Interrogators, defendants shall furnish not only such information and documents as are available to them, but also such information and documents as are known to, available to, or in their constructive, actual possession, custody or control of any agent, employee, employer, representative, co-defendant, witnesses, the *Alabama Department of Corrections,* and specifically, including but not limited to defendants attorney(s) and investigators, unless such documents, information, data, records, inter alia, is claimed to be privileged from production or discovery.

¶ 5.    If defendants consider any document, information, data, records, inter alia, falling within plaintiff's request for Production of Documents, attached heretofore separately and/or conjunctively, as being privileged from discovery, plaintiff request that, at this time or responding to the Request for Production, the defendants serve upon plaintiff, a written list of the documents so withheld from said discovery and identify each document by date, author or parties, names, business address of each person, party or witness having copies of said documents, information , data, records inclusive to medical records from *February 2005,* through current date of your answers, and the basis on which the document is considered to be privileged from production, and re-production, photo-copying, et. seq., by discovery.

¶ 6.    These Interrogatories and Discovery request are continuing and are to be supplemented in accordance with Federal Rules of Civil Procedures, *Rule 26(e).*

However, in the event that any, and all information or documents come to the attention of or into the possession, custody or control of the defendants, the attorneys of records, or such other interested persons, parties, agency, employees, and employers, et. al., subsequent to the filing of defendants response / answers hereto, which documents, records, or information are responsive to any and all Interrogatories or Request for Admissions, but which were not included in defendants initial answers / responses thereto, said additional information, documents, data, records, inter alia, shall be furnished to plaintiff, or in the interim, thereinafter appointment of stand-in-counsel, as soon as possible, unless otherwise specified by the Court, or upon subsequent motion.

¶ 7.    In responding to these DISCOVERY request, defendants are to furnish such documents, records, data, information, memorandum, inter alia, as are available to them, their agents, employees, employers, co-defendants, witnesses or representatives, such as attorney of record, but not limited to therein, as to defendants access to which is currently constructive, actual possession or otherwise.

¶ 8.    With regards to plaintiff's Request for Admissions and pursuant to *Federal Rules of Civil Procedures, Rule 36*, et. seq., the defendants shall specifically deny the matter or set forth in details the reasons why the answering / responding party, person, defendant or representatives cannot truthfully admit or deny the matter. A denial shall fairly meet the substance or the requested admission, and when good faith requires defendants shall qualify an answer or deny only a part of the matter of which an admission is requested;

the defendants shall specify so much of it is true and qualify or deny the remainder.

Defendants may not give lack of information or knowledge as a reason for failure to

admit or deny unless defendants state that they have made a lawful, and reasonable

inquiry and that the information known or readily obtainable by the defendants is

insufficient to enable them to admit or deny.    If the defendants consider that a matter of

which an admission has been requested presents a genuine issue of material fact, for trial,

they may not, on that ground alone, object or the request; defendants may, subject to the

provisions of *Federal Rules of Civil Procedures, Rule 37(c)*, deny the matter or set forth

reasons why defendants cannot admit or deny it.

¶ 9.    As a courtesy, in answering / responding to any and all DISCOVERY request

herein, defendants are asked to, please preface said answers / responses with the

"Interrogatory or Request for Admission, Production, being Answered."

### II.    DEFINITIONS:

¶ 10. When used in these discovery request and subsequent set of Interrogatories,

Production request, and/or discovery request henceforth, the following definitions shall

apply:

    a.    As used herein, the term "**document**" means, without limitation, the following items, whether printed, recorded, reproduced, or written by hand: all writings of any kind, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise, including, without limitation, correspondence, memoranda, notes,

diaries, statistics, letters, telegrams, minutes, reports, studies, statements, receipts, returns, summaries, pamphlets, books, interoffice and intra-office communications, notations of any sort of conversation, telephone calls, meetings, or other communications, bulletins, printed matter, computer printouts, teletypes, telefax, worksheets, invoices, all drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or oral records, or representations of any kind (including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotapes, recordings, motion pictures), and any electronic, mechanical, or electric records or representations of any kind (including, without limitation, tapes, cassettes, discs, recordings, and computer memories). Any written, or graphic matter however produced or reproduced, including but not limited to correspondence, e-mails, other written communications, agreements, notes, memoranda, any and all recorded information but not limited to any faxes, reports, letter, grievance, message, records, work sheets, instructions, work assignments, internal communication, order and any other written recorded, electronic, or graphic material however produced, reproduced and, in the absence of the original, copy thereof and any copy bearing markings not present on the original or other copy thereof.

b.  As used herein in reference to a natural person, the word **"identify"** shall mean to state the person's full name, present or last known business address(es) and their association to defendant(s).

c.  As used in reference to a business or other entity, the word **"identify"** shall mean to state the business or other entities full name and present or last known address(es) and their said association to defendant(s).

d.  As used **"identify"** or **"identity"** when used in reference to a document means to state the date and author, type of document [e.g., letter, memorandum, record, policy, title, reference numbers, etc.,] or some other means of identifying it, and its present location or custodian.

e.  The word **"incident"** includes the circumstances and events leading up to, and surrounding the alleged violation of denial of surgery for plaintiff's inguinal hernia from **February 2005**, to current date of your answering / responses.

f.    The word **"specifically identify"** as used with respect to any and all documents, inter alia, is understood to mean the following: 1) title; 2) date; 3) names and position of originator; 4) name and position of any and all defendants, co-defendants, witness(es) and supervisors; 5) name(s) and position(s) of any and all persons, parties, agents, employees, employers, representatives, who received copies or any portions of the documents in questions; 6) description of the document, records, data, faxes, any and all information, *inter alia*, in question; 8) name(s) and position(s) of the custodian(s) of the above requested documents in their entirety, but not limited to.

g.    The word *"**Medical Examination**"* as used herein, shall include any interview, observation, physical or mental examination, and any other scientific or medical technique or practice designed to obtain information respecting the medical history, condition, diagnosis, and/or progress of the plaintiff examined.

h.    **"Reports"** shall include every written communication from a physician, medical practitioner, or any other person engaged in diagnosing and treating illness or injury, or from the agent of any such person, containing information respecting the medical history, condition, diagnosis and/or prognosis of the person examined.

### III.    *INTERROGATORIES*:

¶ 1.    Please state the following:

a.    ADOC's duty regarding plaintiff's medical care,

b.    PHS's duty regarding plaintiff's medical care,

c.    ADOC's duty regarding plaintiff's medical care while he was at the private prison in Louisiana from March 16, 2006 through October 6, 2006.

d.    CMS's duty regarding plaintiff's current medical injury.

e.    Disclose your duty, responsibility regarding the treatment procotol regarding prisoners suffering with hernias.

¶ 2.    Since February 2005 to current date of your answer, *"identify by document"* any and

all Court order(s) from any Court in this State in which a judgment was rendered against

ADOC and PHS separately or together to: (i) **provide independent physical**

7

**examination regarding a prisoner with a hernia,** (ii) **provide medical treatment to a prisoner with a hernia?** Indicate the city; state where the charges were, the nature of the charge, the date of judgment and order, the court case number, and the disposition of the case?

¶ 3. *"Identify by document"* ADOC's responsibility to assure quality assurance of medical care to Alabama inmates and plaintiff while he was incarcerated at the private prison in Louisiana from <u>March 16, 2006</u> through <u>October 6, 2006.</u>

¶ 4. Disclose any and all *"documents and reports"* relating to any recommendation(s) regarding the quality assurance of medical care to prisoners suffering from hernias. If any," *Identify"* the person(s) involved with such recommendation(s), the decision(s) regarding the existing hernia protocol.

    a.     *"Identify by document"* the proposed protocol recommendation(s).
    b.     *"Identify by document"* the names of all persons involved.

¶ 5. *"Identify by document"* the names, titles, and responsibility of staff members at SLCS, PHS and ADOC who had/have the responsibility for approval of medical treatment regarding hernias, specifically plaintiff's request for surgery during February 2005 until October 31, 2007.

¶ 6. *"Identify by document"* any and all person responsible for providing medical care to prisoner Johnny Carroll who have the responsibility for scheduling his medical appointments outside the prison regarding his hernia, evaluating requests for specialized

8

treatment. If said person is other than who is responsible for the same duties regarding plaintiff's claim, "*identify by document*".

¶ 7.   "*Specifically identify by document*" the person(s) employed, contracted by ADOC, PHS who was/is responsible for reviewing and updating hernia protocols, "*reports*" policies and procedures regarding medical treatment for hernias, and for requesting improvements in services since your contractual employment with ADOC and from February 2005 through October 31, 2007. If any changes, please "*identify by document.*"

¶ 8.   "*Specifically identify by document*", the name(s), responsibility, of any person responsible for reporting to any Director, Supervisor of PHS, ADOC, and/or any other personnel "*identify by document*" at ADOC, whether superintendent or commissioner who serves as a health authority for the institutions and was the overall supervisor for clinical services regarding improvements in services and treatment of hernias.

¶ 9.   Specifically disclose any substance of any oral or written statements, agreements, communications between SLCS, and ADOC regarding hernia treatment and repair during February 2005 through October 31, 2007, and March 16, 2006 through October 6, 2006.

¶ 10.   "*Identify by document*" how ADOC legally and lawfully transferred plaintiff to the private prisons out of State.

¶ 11.  *"Identify"* any and all person(s) at ADOC who agreed with PHS to implement a protocol regarding hernia treatment for Alabama inmates from date of their service through October 31, 2007.

¶ 12.  *"Specifically identify by document"* the procedures implemented as to how hernia repairs are approved through PHS and ADOC.

¶ 13.  *"Specifically identify by document"* the procedures implemented as to how hernia repairs were approved while plaintiff was incarcerated at SLCS through ADOC.

¶ 14.  From *February 2005* through date of your response, disclose any and all knowledge, information, *"documents"* from any person requesting improvement, changes updating the Protocols for hernias. If yes, state:

   a.    *Identify* the incident,
   b,    *identify* person(s) requesting changes
   c.    *Identify* by document of request
   d.    *Specifically identify* the requested change, if submitted and disposition.

¶. 15  *"Identify by document,"* any and all persons who has authority as a final decision maker regarding plaintiff's request for surgery.

¶ 16.  Is it common practice for ADOC's quality assurance program to allow a "no need for surgical referral at present" be based solely upon a nurse practitioner?

¶ 17.  It is common practice for ADOC's quality assurance program to allow a prisoner to suffer pain due to a hernia without the cure?

¶ 18.  "*Identify by document*" whether it is ADOC's quality assurance program authorization to allow a prisoners with a hernia to wait until his hernia is incarcerated or in danger of being incarcerated before surgically necessary.

¶ 20.  "*Identify by document*" whether it is ADOC's quality assurance program to wait until a life or death situation regarding hernias -- that the hernia is incarcerated, strangulated, trapped, or into the scrotum before PHS will authorize surgically intervention?

¶ 21.  From February 2005 through October 31, 2007, disclose ADOC's common practice, policy, procedures followed, and "*identify by document*" for hernia repairs.

¶ 22.  "*Identify by document*" whether ADOC's quality assurance authorization nurse practitioner Bradford Adams, and staff at Kilby Correctional Facility to simply state to a prisoner at sick call "you can sign a waiver" without inquiring into the prisoners medical complaint.

¶ 23.  "*Identify by document*" each and every person involved with hernia treatment protocols with ADOC, PHS, SLCS, during February 2005 through October 31, 2007.

¶ 24.  "*Identify by document*" the name of any person at ADOC who had/has authority to approve plaintiff's request for surgery.

¶ 25.  *"Identify by document"* whether it is common practice of PHS to follow ADOC's

quality assurance program, policy, procedures, and protocol regarding hernias?

### IV. REQUEST FOR PRODUCTION OF DOCUMENTS OF YOUR AGENTS

That defendant produces and permit plaintiff to inspect and to copy each of the

following documents:

### * RULE 33, Fed. R. Civ. P., "Business Records"

a.  To permit plaintiff to inspect, analyze, and copy or photograph, *"specific document,"* implemented policies/procedures of ADOC's objective plain regarding hernia from February 2005 through October 31, 2007.

b.  To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

c.  All letters, complaints, or other **documents** in defendants possession or under his control received, sent, made, or read by defendants, or by any agent thereof, relating to the treatment being prescribed by ADOC and PHS regarding hernias since February 2005 through October 31, 2007.

D  Any and all **"reports"** made, in the defendants possession or under his control concerning inmates complaining about having pain from their hernias before incarceration, strangulation or into the scrotum.

d.  "The policy, procedures followed regarding medical treatment to Alabama inmates suffering with hernias while at the "SLCS" the private prison in Louisiana.

## V.    *REQUEST FOR ADMISSIONS:*

¶ 1.    *Admit or deny*, PHS agrees with a Protocol that a hernia must be incarcerated or in danger of becoming incarcerated in order to be surgically necessary?

¶ 2.    *Admit or deny*, that the only way to stop a hernia from getting worse is to repair the defect through surgery?

¶ 3.    *Admit or deny*, that the Anatomy of Hernia, -- the most common location for hernia is the abdomen.  A hernia (rupture) is usually noticed as a lump, commonly located in the groin or the umbilical region, it appears when a portion of the tissue which lines the abdominal cavity (peritoneum) breaks through a weakened area of the abdominal wall, this can give rise to discomfort as the hernia enlarges and can sometimes be dangerous is a piece of plaintiff's intestine become trapped ('strangulated')?

¶ 4.    *Admit or deny*, it is your common practice not to repair a hernia unless the hernia is incarcerated or in danger of being incarcerated or into the scrotum before surgically necessary?

¶ 5.    *Admit or deny*, it is ADOC's protocol, practice not to repair a hernia unless the hernia is incarcerate or in danger of being incarcerated or into the scrotum before surgically necessary?

¶ 6.    *Admit or deny*, there is almost no limit to how big a hernia could without surgery?

¶ 7.    *Admit or deny* that medically there is no cure for a hernia without surgery?

13

¶ 8.   *Admit or deny*, a strangulated hernia can become an emergency that usually requires immediate surgery?

¶ 9.   *Admit or deny*, PHS has a custom, practice, not to repair hernias before the hernia is incarcerated, or in danger of being incarcerated, or into the scrotum?

¶ 10.   *Admit or deny*, a truss is the cure for a hernia?

¶ 11.   *Admit or deny*, plaintiff has complained about having pain when coughing, sneezing, and having bowel movements due to this hernia?

¶ 12.   *Admit or deny*, the issuing of pain medication will not cure a hernia?

¶ 13.   *Admit or deny*, the issuing a truss and proscribing pain medication is a cheaper method of managing a hernia?

¶ 14.   *Admit or deny*, plaintiff's inguinal hernia can get larger and lead to serious medical complications?

¶ 15.   *Admit or deny*, discomfort usually is experienced especially when coughing, sneezing, lifting heavy objects, or standing for long period of time?

¶ 16.   *Admit or deny*, bowel movements can cause the muscles to weaken resulting into an enlargement of plaintiff's hernia?

¶ 17.   *Admit or deny*, the long-term course is for a hernia to become steadily worse as times goes on, sometimes slowly and sometimes quickly when left without surgery.

¶ 18.   *Admit or deny*, that the opening of a hernia cannot heal itself?

¶ 19.   *Admit or deny*, medically a doctor nor a nurse practitioner cannot treat a hernia; they must be repaired through surgery?

¶ 20.   *Admit or deny* that plaintiff's hernia goes into his scrotum is trapped at times and plaintiff has to work it back up into place?

¶ 21.   *Admit or deny*, a truss is for temporary use?

¶ 22.   *Admit or deny*, the waiting until the hernia is incarcerated or in danger of becoming incarcerated, in order to be surgically necessary can become a life or death situation?

¶ 23.   *Admit or deny*, waiting until the hernia is incarcerated, in danger of becoming incarcerated in order to be surgically necessary can, or will subject a patient into sever pain?

¶ 24.   *Admit or deny*, under the standard of care, a hernia ought to be repaired before it is incarcerated or in danger of becoming incarcerated and before entering the scrotum?

¶ 25.   *Admit or deny*, that overexertion can cause weakness, such as simple coughing or sneezing to the hernia?

¶ 26.   *Admit or deny*, the effects felt by plaintiff can range from perfectly painless, through discomfort, to being very painful indeed?

¶ 27.   *Admit or deny*, a hernia ought to be inspected to ensure that it is not becoming infected or developing into a more serious non-reducible hernia?

¶ 28.   *Admit or deny*, PHS does not require its employees to conduct routine inspections on inmates' hernias?

¶ 29.   *Admit or deny,* a hernia will limit a person daily activity depending on the stage of the hernia?

¶ 30.   *Admit or deny,* when the hernia distends and pushes out the peritoneum forming the bottom of either the middle of the internal fossa, it is a direct or internal hernia.

¶ 31.   *Admit or deny,* the very instruction Manuel given to plaintiff by Prison Health Services, Inc., the **"Fitting Instructions" for Model 67-350** states pertaining to a hernia: ". . . Limiting activity, eliminating excess weight a hernia belt or truss may provide temporary relief.  However, **CURE IS SURGERY**?"

¶ 32.   *Admit or deny,* feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum is usually a warning sign that the hernia is progressing and becoming worse?

¶ 33.   *Admit or deny,* you were the supervisor of the medical treatment proscribed to plaintiff while at ADOC?

¶ 34.   *Admit or deny,* ADOC has final authority regarding approval or disapproval of surgery for plaintiff's inguinal hernia?

¶ 35.   *Admit or deny,* there are over 300 Alabama inmates diagnosed with hernias from *February 2005* through date of your response?

¶ 36.   *Admit or deny,* hernias is a case-by-case basis and are painful?

¶ 37.   *Admit or deny,* you refuse to provide plaintiff with surgery until his hernia is incarcerated or in danger of being incarcerated?

¶ 38.  *Admit or deny*, PHS has authorizes a Bradford Kindard, nurse administrator to make surgically recommendations?

¶ 39.  *Admit or deny*, under the standard of care, the Protocols pertaining to hernia treatment for Alabama inmates' subjects a patient to endure pain and suffering.

¶ 40.  *Admit or deny*, Alabama Board of Medical Examiners are not aware of the practice involved with ADOC and their medical providers, being a Protocol that a hernia must be incarcerated or in danger of being incarcerated in order to be surgically necessary.

¶ 41.  *Admit or deny*, this Protocol ought to be changed pertaining to hernias.

¶ 42.  *Admit or deny*, even if Dr. Hobbs recommended plaintiff surgery for his hernia, and because the hernia does not meet the protocol, ADOC Health Services, would have denied the recommendation regardless?

¶ 43.  *Admit or deny*, PHS has a common practice, that the hernia must be incarcerated, or in danger of being incarcerated, or into the scrotum before surgically necessary?

¶ 44.  *Admit or deny*, ADOC has a common practice, that the hernia must be incarcerated, or in danger of being incarcerated, or into the scrotum before surgically necessary?

¶ 45.  *Admit or deny*, each person may feel different degrees of pain regarding their hernia?

¶ 46.  *Admit or deny*, PHS has one standard policy, the hernia must be incarcerated or in danger of being incarcerated before surgically necessary?

17

¶ 47.  *Admit or deny*, PHS failed to change the protocols regarding hernias or change the treatment protocols since February 2005 through October 31, 2007?

¶ 48.  *Admit or deny*, it is the custom, practice, policy of PHS and ADOC not to approve surgery for plaintiff's hernia unless his hernia is incarcerated, in danger of being incarcerated, or into the scrotum?

¶ 49.  *Admit or deny*, PHS's quality assurance provides that the hernia must be incarcerated or in danger of becoming incarcerated before surgically necessary?

¶ 50.  *Admit or deny*, it is routine and established at ADOC that prisoners with hernias usually cannot receive surgery until their hernia is incarcerated or in danger of becoming incarcerated?

Done this 26th Day November 2007.

® _____

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this 27th Day of November 2007, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections
Legal Division
P.O. Box 301501
Montgomery, Alabama 36101

Rushton, Stakely, Johnston, Garrett, P.A.
P.O. Box 270
Montgomery, Al 36130

® _____

Marcellus Breach

18