**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION**

MARCELLUS BREACH, #160710,

    Plaintiff,

Vs.

PRISON HEALTH SERVICES, INC.,

    Defendants.

                    *

                    *

                    *    CASE NO: 2:06-CV-1133-MEF

                    *

                    *

## PLAINTIFF'S WRITTEN OBJECTIONS TO MAGISTRATE JUDGE'S ORDER / MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES, PRODUCTION OF DOCUMENTS PROPOUNDED UPON DEFENDANT RUTH NAGLICH [COURT DOC. NO. 458]

**COMES NOW**, the Plaintiff _Marcellus Breach_ (hereinafter "Breach") in proper person "Pro Se," files his written objections / exceptions to the Magistrate Judge's Order entered on _February 12, 2008_ [Court Doc. No. 460-1] in regards to incomplete, evasive and nonresponsive answers to plaintiff's discovery request propounded on defendant Ruth Naglich in her supervisor position. Plaintiff further states that the dispute regarding the responses and request, the request are "relevant" to deliberate indifference" in this case. Also, relevant definitely applies to the requested documents pertaining to medical records. The magistrate judge erred in not compelling especially the requested documents under relevancy terms. **Oppenheimer Fund, Inc., v. Sanders**, 437 U.S. 340, 351, 57 L.Ed.2d 253, 98 S.Ct. Ct. 2380 (1978).

Plaintiff states in support into the Record as follows:[1]

## *STANDARD OF REVIEW*

The law is established that as in this case of a discovery motion or other nondispositive pretrial order the decision of the magistrate judge is a final decision.[2]  28 U.S.C. § 636(b)(1)(a)(2004).  Plaintiff files his written objections specifically as to the magistrate judge's denial of the motion to compel defendants to produce documents that reflect both ADOC's and Ruth Naglich's personal involvement in this case.  More specifically, such requests are relevant to supervisory liability.

## *HISTORY OF THE FACTS / REVELANT DISCOVERY REQUEST*

"Courts are required to accord discovery a broad and liberal scope in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement." *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340; *Hickman v. Taylor*, 329 U.S. 495, 91 L.Ed. 451, 67 S.Ct. 385 (1947).  Where there is doubt over relevancy, the court should still permit discovery." *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F. 2d 556 (7th Cir. 1984).

---

[1] **Exhibit No. 1** is plaintiff's Motion To Compel Further Responses To Interrogatories, and Production of Documents –Various Grounds [**Court Doc. No. 458**] pertaining to specific Interrogatories and production of documents request that are in dispute, and plaintiff maintains are relevant to deliberate indifference, supervisor liability.

[2] *Objection.* Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. See 28 U.S.C. 636 (b)(1)(C); *Lewis v. Smith,* 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B, 1982) *(en banc).*

In this case, evidence thus far, demonstrates facts from portions of "some" of his s Louisiana medical records regarding the inadequate medical treatment to plaintiff's inguinal hernia.    An Affidavit before the Court from physician Dr. Tassin, M.D., questioned surgery because Dr. Tassin isn't qualified to make surgically decision; on 3-21-06 Dr. John A. Tassin, M.D., made a doctor order and recommendation that plaintiff's inguinal hernia "Needs Repair?" Dr. Tassin has given an Affidavit that the ADOC did not require surgery, corresponding with the medical records that reflect defendant Brandon Kinard called Diana Lott with detailed instructions that plaintiff cannot have surgery unless his hernia is incarcerated or into the scrotum.   Dr. Tassin confirmed this medically noted documentation.   However, several exhibits and public information from specialist in hernias, clearly warn the public and the Court that a hernia "must" be repaired before it is strangulated, incarcerated or, into the [3]scrotum due to serious medical complications such as gangrene, tissue death and nerve entrapment. Morethanless, hernia is serious because they are unpredictable, and can rupture at any time; they are very painful.  On 3-21-06 while plaintiff was being examined by Dr. Tassin

---

[3] Judicial Notice will show in **Taylor v. Questcare**, Civil Action 93-0700 CB-M, 1995 U.S. Dist. 14975 (S. D. Ala 1995) Defendant Dr. George Lyrene, who is Medical Director for ADOC, gave an Affidavit and opinion to the United States Southern District Court of Alabama that "[. . . ] "[A'n **incarcerated hernia would be likely to cause plaintiff health problems, and a strangulated hernia would be an emergency. . . . "**  Dr. Lyrene works with Ruth Naglich at ADOC. He knows of the danger of an incarcerated hernia and Naglich knew, or should have known of the danger of an incarcerated hernia, but she failed to take action can demonstrate deliberate indifference. The incarcerated hernia is the Protocol in this case, which is challenged as being unconstitutional and proximate cause of injury. Dr. Hobbs stated that hernia must be incarcerated or, in danger of being incarcerated before surgery is performed is unconstitutional and deliberate indifference.

in Louisiana, Dr. Tassin stated that plaintiff needed surgery because surgery is the only treatment and only cure.    Dr. Tassin specifically told plaintiff on 3-21-06 along with nurse Maxie: **"We will put in a request for surgery to Alabama, you belong to them, they have to approve it, if you belonged to us, we would fit it."**

After plaintiff's hernia continue to cause him pain, evidence reflects that on 7-10-2006 nurse Maxie noted in the Louisiana medical records:" **[W]e faxed a report to Ruth Naglich in reference to inguinal hernia inmate requesting repair and is filing a lawsuit to have surgery done."**

Evidence shows that <u>two (2) days later,</u> defendant Brandon Kinard at ADOC who is supervised by Ruth Naglcih, did so, called nurse administrator Diana Lott with detailed instructions on 7-12-2006 **"[W]e received a call from Brandon from Alabama re Inguinal Hernia – Stated Hernia repair not done there – unless incarcerated or into scrotum. . . ."** [1] This phone call with detailed instructions after, Ruth Naglich received the fax report demonstrates direct involvement regarding approval for plaintiff to have his hernia repaired is a proximate cause to injury.    This phone call by Brandon Kinard who is only a nurse, gave instructions, prevented surgery; also, is preventing, hindering medical care. Ruth Naglich supervises Brandon Kinard.    Since evidence reflects that Brandon Kinard made this call without supervisor instructions, then Kinard is

---

[1]   This Protocol upon information and belief is stated in the contractual agreement entered between PHS, CMS and ADOC under "elective treatment".    Because plaintiff has information that a pattern, being contractual agreements that CMS does not have to provide medical care to any medical injury that is labeled as "elective procedures". The magistrate has put limits on plaintiff's discovery, i.e., relevant, to include the medical portions of CMS and PHS and ADOC's contractual agreements pertaining to "elective treatment" is also prejudicial to municipal liability.

unsupervised and has clearly stepped beyond his practice as a nurse. He is not qualified to make surgically decisions.

Furthermore, the evidence thus far reflect on 7/17/06 as Dr. Tassin and nurse Maxie were seeking approval for plaintiff to receive surgery from ADOC, Diana Lott noted in the Louisiana medical records that ADOC Lynn Brown at 9:40 a.m., called [Lynn Brown is under Ruth Naglich's supervision at ADOC] Diana Lott noted: **"9:40 a.m., phone call received from Lynn Brown and she will return call on previous fax on 7/10/2006; awaiting return call for follow up."** [7/10/06 fax report was sent to Ruth Naglich]

Ruth Naglich has information, knowledge and relevant documentary evidence, i.e., *fax reports, grievance response*s from Louisiana that are a part of plaitniff's Louisiana medical records. Moreover, in several of Naglich's responses to plaintiff interrogatories, she has described Diana Lott, Nurse Maxie at the private prison [South Louisiana Corrections Services, Inc.,] She explains Nurse Administrator Diana Lott's job description at SLCS, also nurse Maxie, and ADOC Lynn Brown and Brandon Kinard's positions. Clearly, plaintiff's discovery request for Naglich to disclose such communications regarding this case is relevant. Naglich has knowledge; she knows all of these people whose names are clearly written on the medical records but she claims to have no knowledge of this case is untrue. Nevertheless, a jury can decide whether she is truthful. Naglich's answers to discovery request are vague, nonresponseive and she

refuses to produce documents upon demand; plaintiff complains that compel is necessary. Naglich has not, produced not one, requested document is *"stonewalling"* discovery.

In addition, on or about *December 23, 2007*, defendant Brandon Kinard and Lynn Brown came to Kilby Correctional Facility to meet with plaintiff regarding his hernia complaints and request for surgery. Evidence will demonstrate that Kinard admists: (i) that he personally had plaintiff transferred back to Alabama Department of Corrections on 10-6-06 for an evaluation of his hernia; (ii) admits, that he personally met with plaintiff at the captain's office with Lynn Brown and denies that he verbally and personally told plaintiff:" I am going to give you your surgery" shook plaintiff's hand, looked him directly in the eye, said "Merry Christmas, and Happy New Year". Basically, flat out lied to the plaintiff regarding surgery. (iii) Kinard admits that he signed plaintiff up for sick call at Kilby without plaintiff knowing about it, to be seen by defendant Bradford Adams, a nurse practitioner who did so, illegally, made a medical diagnosis and recommendation:" no need for surgical referral at present" under Alabama statutory law a nurse practitioner cannot, make any surgical decisions. In this case, Brandon Kinard who is supervised under Ruth Naglich wanted plaintiff to be downgraded to a nurse practitioner: from Dr. Tassin, M.D., to a nurse practitioner. Furthermore, Kinard via-Affidavit reported to the magistrate judge the nurse practitioner's recommendation,

6

when it is clear Alabama law prohibits any nurse, or nurse practitioner from making surgically recommendations: in this case it happened!

All ADOC defendants relied on a nurse practitioner regarding surgery is unauthorized by law and the Board of Nursing and Medical Board of Examiners.

Ruth Naglich as a supervisor knew, or should have known that Brandon Kinard cannot make surgically decision, also that a nurse practitioner cannot make surgically decisions; but, she failed to take any action to stop such unethical practices, unlawful practices that resulted into injury: she also failed to stop Brandon Kinard from calling with detailed instructions regarding surgery request when Brandon Kinard is not a doctor, but only a nurse. Ruth Naglich is a nurse and plaintiff believes based on the evidence it appears that no doctors have any say so, but that ADOC's nurses run the show regarding supervision over medical care because Ruth Naglich appears not to be supervised by a physician when, she must have a physician working protocol relationship regarding medical decisions under the Alabama law. Reiterated, she claims to have no knowledge whatsoever, and a jury can decide whether she is telling the truth.

### History of the case:

Plaintiff request that the Court take Judicial Notice to the Record. Plaintiff filed his discovery request specifically propounded on defendant Ruth Naglich on or about _October 29, 2007_ entitled: **"Plaintiff's Third Set of Interrogatories and Request for**

7

Admissions, For Production of Documents to Defendant Under Fed.R.Civ.P., [ Court Doc. No. N/A][See, Excerpt attached to Exhibit No. 1, attached.]

On or about *December 17, 2007* defendant Ruth Naglich filed her response to plaintiff discovery request **[Court Doc. No. N/A]**

On *December 31, 2007* plaintiff wrote counsel for the defendant pointing out that Ruth Naglich's responses are deficient, nonresponsive and that she failed to produce the requested documents. [**Exhibits "A","B" Court Doc. No. 458**]

Also, on *December 31, 2007,* plaintiff attached the letter with a pleading entitled: "**Notice of Filing**" to the court. **[Court Doc. No. N/A/]** explaining to counsel that Ruth Naglich answers are deficient and requested that counsel correspond with him in regards to the dispute in the responses. Counsel made no attempt to correspond with plaintiff regarding the documents requested. [**See, Plaintiff's Affidavit incorporated @ Court Doc. No. 458 @ ¶¶2-6, & Exhibit "A""B".**]

On or about *February 11, 2008* plaintiff filed a document entitled: "**Motion To Compel Further Responses To Interrogatories and Production of Documents –Various Grounds" [Court Doc. No. 458]** requesting that the magistrate judge review plaintiff's interrogatories in dispute and the responses given by Ruth Naglich. Also, requesting that the magistrate judge compel the requested medical documents. The magistrate judge believes such is irrelevant is error of law.

On *February 12, 2008* the magistrate judge issued his ruling stating: **"[A]s the information sought by the plaintiff is irrelevant to a determination of the issue pending before this court, i.e., whether the defendants' refusal to provide surgery for the plaintiff's hernia constituted deliberate indifference. . . . "** and denied plaintiff's motion to compel further responses, especially portions of medical documents.

Plaintiff hereby, files his written timely objections into the Record on the grounds of his request are "relevant".

## OBJECTIONS / LEGAL AUTHORITY

- <u>Rule 401</u> *Federal Rules of Evidence* "Relevant Evidence".

- *"Relevant Evidence"* means evidence having "any" tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence.

- <u>Rule 26(b)(1),</u> *Federal Rules of Civil Procedures.*

- **Oppenheimer Fund, Inc., v. Sanders**, 437 U.S. 340, 351 57 L.Ed.2d 253, 98 S. Ct. 2380 (1879).

### POINT "A"

*DISCOVERY REQUEST UPON RUTH NAGLICH'S DUITES, AND RESPONSIBILITIES IS VERY RELEVANT, IF NOT, THEN WHY WAS A FAX REPORT FOR SURGERY APPROVAL FAXED TO HER?*

Ruth Naglich as a supervisor, her "training and experience" **Interrogatory No. 1(e), Exhibit No. 1,** is very relevant because she instructed Brandon Kinard to call Dian Lott with instructions that plaintiff cannot receive surgery unless his hernia is incarcerated. What training and experience does Naglich hold regarding hernias? What

training and experience does Kinard hold to make such an erroneous medical decisions denying the only treatment, and that treatment is surgery. What knowledge does Naglich posses pertaining to an "incarcerated" hernia? She is not a surgeon.

**[Exhibit "A", Court Doc. No. 458]**

*Interrogatory No. 7*, states: "Please "identify" your administrative responsibilities for the Alabama Department of Corrections including but not limited to the components and the quality of the provision of healthcare to plaintiff while in the care, custody, and control of ADOC, at South Louisiana Correctional Services, In., from March 16, 2006 through October 6, 2006. [*See, Exhibit No. 1 page. 4 & 7.* ]

**Exhibit No. 1, Interrogatories No's. 1(e), 2), 6), 7), 15), 16)**, are relevant to deliberate indifference. In addition, Naglich's administrative responsibilities are very relevant to supervisory liability if no, why was a fax report sent to her for approval of surgery?

A causal connection may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation. *See **Ancata v. Prison Health Services, Inc.**,* 769 F.2d 700, 706 (11th Cir.1985). Here, "the inquiry into causation must be a directed one, focusing on the duties and responsibilities of each of the individual defendants whose acts or omissions are alleged to have resulted in a constitutional deprivation." *Williams,* 689 F.2d at 1381. See also, *Zatler v. Wainwright,* 802 F.2d 397 1986 U.S. App. LEXIS 32354 (11th Cir. 1986)

## *ARGUMENT AS TO RELEVANCY STANDARD*

Plaintiff argues that relevant evidence is very broad and the magistrate judge is limiting plaintiff's discovery regarding relevant evidence pertaining to deliberate indifference. **Exhibit No. 1,** is plaintiff **Court Doc. No. 458,** entitled **"Motion To Compel Further Responses To Interrogatories, And Production Of Documents – Various Grounds".** The magistrate judge relies on "relevant" regarding plaintiff's specific discovery request. Plaintiff points out that there is enough case law to support the discovery request and supervisor liability and plaintiff's request for production of documents and interrogatories ought to be answered.

As this case proceeds; already, evidence by defendant Dr. William Hobbs who contracts with PHS has stated via-Affidavit that plaintiff <u>"must"</u> meet a certain ADOC protocol <u>and if</u> plaintiff <u>met</u> this protocol, he would have his hernia repaired. Dr. Hobbs has sworn under oath "the hernia must be incarcerated or in danger of being incarcerated or into the scrotum before surgical necessary". An incarcerated hernia is a life or death situation that defendant have intentionally placed on the plaintiff to wait until he is near death is cruel and unusual punishment prohibited by the Eighth Amendment, and deliberate indifference. ADOC attempts to maintain that they rely on the medical providers. PHS and CMS contract they very own doctors stating they have no protocol, but Hobbs says they do. Naglich knows and plaintiff is entitled to conduct discovery as to the defendant's supervisory position as stated they rely on the medical providers can

be proven as untrue based on Dr. William Hobbs's sworn Affidavit. If so, why did Dr. Hobbs state plaintiff must meet a certain protocol required by the Alabama Department of Corrections? Dr. William Hobbs has stated:

> [5] "... In order for a hernia to be repaired, the hernia must meet a certain Protocol <u>required by the Alabama Department</u> of Corrections. The <u>protocol states</u> that the <u>hernia must</u> be incarcerated or in danger of becoming incarcerated or into the scrotum. Mr. Breach <u>does not meet this protocol</u> ...."

In Dr. Hobb's "Supplemental Affidavit he states again:

> "... <u>In order for a hernia to be repaired</u>, the <u>hernia must meet</u> a certain Protocol <u>required</u> by the Alabama Department of Corrections. The <u>protocol states</u> that the <u>hernia must</u> be incarcerated or in danger of becoming incarcerated or into the scrotum. <u>Mr. Breach does not meet this protocol</u> ...[ ] ... <u>If</u> Mr. Breach <u>did in fact meet</u> the protocol by the Alabama Department of Corrections, his hernia <u>would be</u> repaired. ... " [id. @ 3 ¶ 3.] [Court Doc. 144-3, Filed on 9/21/2007

## THE RELEVANCY STANDARD

Under *Rule 401, Federal Rules of Evidence*, the definition of *"Relevant Evidence"* means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

This Rule defines the term. The definition provides that evidence is relevant if it has *any* tendency to make the existence of a material fact more probable or less probable

---

[5] **Hobbs emphasizes that "the protocol states" and "Mr. Breach does not meet the protocol" if and, "if Mr. Breach met the protocol he would have surgery".**

than it would be without the evidence. Although it is true that some Federal Courts have purported to use a slightly different test, an analysis of most of the opinions leads to the conclusion that in practice the test advocated in *Rule 401* is consistent with that developed in most Federal Courts prior to the enactment of the Rules.

The important thing for this Court to remember is that the evidence does not by itself have to prove the ultimate proposition for which it is offered; nor does it have to make that ultimate proposition more probable than not. To be relevant it is sufficient that the evidence has a *tendency* to make a consequential fact even the least bit more probable or less probable than it would be without the evidence.

Fed. R. Civ. P. *26(b)(2)(iii)* the discovery of defendant's responsibility, knowledge and information regarding any agreement not to repair a hernia until the life or death situation regardless of pain and suffering is relevant when she is in the position to alleviate the danger of further health deterioration. This case is above that of mere negligence or malpractice. Thus, any relevant information known to the defendant about plaintiff's claim regarding surgery is relevant.

Under the *Federal Rules of Civil Procedure*, parties may discover information, which is relevant and non-privileged. *Rule 26(b)(1), Federal Rules of Civil Procedure*. Under the federal rules, relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." **Oppenheimer Fund, Inc., v. Sanders**, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S.

Ct. 2380 (1978). Courts are required to accord discovery a broad and liberal scope in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement. *Id.*; *Hickman v. Taylor*, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947). Where there is a doubt over relevancy, the court should still permit discovery. *Deitchman v. E. R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984). Discovery request should be allowed, "Unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." *La Chemise Lacoste v. Alligator CO., Inc.*, 60 F. R. D. 164, 171 (D. Del. 1973); see *Nash v. Thielke*, 743 F. Supp. 130 (E. D. Wis. 1990)(the plaintiff was entitled to an officer's urine test results, since the officer's sobriety during the incident was an issue in the case).

The law is established in three area of relevant law. *First*, the fact that a state can delegate the operation of prisons to private prison corporations does not mean it can wash its hands of all responsibility. In this case, Alabama law prohibits Alabama ADOC delegating its operation of prisons to private prison corporations. *Secondly*, as the Supreme Court emphatically stated in a case involving medical care, "[c]ontracting out medical care does not relieve the state of its constitutional duty to provide adequate medical treatment to those in its custody . . . " *West v. Atkins*, 487 U.S. 42, 56, 108 S.Ct. 2250, 101 L.Ed. 2d 40 (1988). See also, *Ancata v. Prison Health Services*, 769 F.2d 700 (11th Cir. 1985)(holding that although the private prison company had contracted to perform an obligation owed by the county, the county itself remained liable for any constitutional

14

deprivations caused by the policies or customs of the private entity; in that sense, the county's duty was non-delegable); *Brown v. Corrections Corp. of America*, 188 F. Supp. 2d 870 (M.D. Tenn. 2000)(state (and here the county) retained responsibility despite having contracted out the medical care of the prisoners). Thus, this Court will hold the government responsible for actions taken by a private provider that violate an inmate's rights. See, *American Correctional Association, National Correctional Policy on Private Sector Involvement in Corrections (Jan. 1985). Third,* the Eighth Amendment duty applies to medical conditions that may result in pain and suffering which serve no legitimate penological purpose. *Estelle*, 429 U.S. @ 103, 97 S.Ct. @ 290. See also, *McGuckin*, 974 F. 2d @ 1059. ([D]elay in performing surgery resulted in needless infliction of pain); *Wood v. Housewright,* 900 F. 2d 1332 (9th Cir. 1990)(with two judges holding prisoner had stated an Eighth Amendment claim for pain inflicted by delay in treating injury, but dismissing the claim on other grounds); *Hunt*, 865 F. 2d 198 (delay in providing prisoner with replacement dentures; *Jones,* 781 F. 2d @ 771-72 (hernia which results in pain, suffering, and the inability to perform a prison job is a serious medical need which prison doctors may not ignore); *Fields v. Gander*, 734 F. 2d 1313 (8th Cir. 1984)(inmate suffering severe pain from infected tooth).

Naglich is only a nurse who supervises defendant Brandon Kinard who called the medical providers at the private prison with detailed instructions regarding surgery request and plaintiff could not receive surgery. The material sought regarding Naglich is

both: (1) material sought is clearly relevant; and, (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable; (iii) has not been disclosed by the defendants. Because the defendant <u>has not</u> responded, the **burden is on him to demonstrate why discovery is not practicable**. *Grubbs v. Bradley*, 552 F. Supp. 1052, 1129 (M. D. Tenn. 1982)(court finds that provision of medical care by persons beyond the level of their training and experience constitutes deliberate indifference); *Mandel v. Doe*, 888 F. 2d 783, 789-90 (11th Cir. 1989); *Hoptowit v Ray*, 682 F. 2d 1237, 1252-53 (9th Cir. 1982)(certain staff performing functions that they are neither trained or licensed to perform).   Hernias are painful; plaintiff has been left without treatment, <u>because the only treatment is surgery</u> .   The party resisting production bears the responsibility of establishing undue burden.

### POINT "B"

### *PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMETNS IS RELEVANT TO SUPERVISOR LIABILITY AND DELIBERATE INDIFFERENCE*

Plaintiff's objects strongly to defendants' continuing with "withhold" documents without sanctions being propounded on them.   Throughout this entire litigation the magistrate judge as been well informed about the consistent pattern of the defendants withholding and stonewalling discovery.

Plaintiff's requested production of documents are in Ruth Naglich's control and she must produce them.

_Requested  Production Of Documents:_

Exhibit No. 1, attached Excerpt Discovery Request to Ruth Naglich pages 7, 8 &

13,

1.        **Requests "C"** "All letters, complaints mailed to this Office from the plaintiff,

specifically, the certified mail <u>specifically</u>, **December 23, 2006, Article No. 7006-0100-**

**0002-0735-5561"**

2.        **Request ""D"**,  "Specifically, produce the "document," fax report on 7-10-06

to Ruth Naglich from Louisiana regarding surgery.  State the name of person(s) who

received said document."

3.        **Request "E"**,  " Specifically, produce the Offender Grievance # 06-215, June 26,

2006 being South Louisiana Correctional Center, specifically the front and back of this

specific grievance.

4.        **Request "H"**, "To disclose the substance or oral statements made by any

defendant, co-defendant or accomplice, agency, or agent regarding the Louisiana

"**Offender Grievance # 06-215** June 26, 2006, the front and back of this grievance

thereof."

### ARGUMENT

Under relevant terms, plaintiff's Louisiana medical records **Offender Grievance #**

**06-215, June 26, 2006 the "FRONT and BACK"** must be produced because it will clearly

demonstrate ADOC's response to surgery.  In regards to oral statements, it is unlikely

that Brandon Kinards called on his own, without notifying Ruth Ngalich who received

the fax report that plaintiff cannot receive surgery unless his hernia was incarcerated or

into the scrotum.        **[See, LCS Corrections Services, Inc., Nurse's Notes" plaintiff's**

**Louisiana medical records, Defendant's Notice of Filing, response to Court Order, Doc.**

**391, January 24, 2008, Court Doc. No. N/A]**

Therefore, the request for production of documents that the magistrate found not

to be relevant, is relevant because it is portions of the missing Louisiana medical records

that has been concealed since day on of this litigation.

## *CONCLUSION*

In ***Williams v. Taser Int'l, Inc.***, 2006 U.S. Dist. LEXIS 47255, 2006 WL 1835437

(N.D. Ga. 2006) the Court explained:    <u>Rule 34</u> specifically requires that the party

producing documents "produce them as they are kept in the usual course of business or .

. . organize and label them to correspond with the categories in the request." . . . While

the party producing "cannot attempt to <u>hide a needle in a haystack</u> by mingling

responsive documents with large numbers of nonresponsive documents," the plain

language of <u>Rule 34</u> makes clear that "a responding party has no duty to organize and

label the documents if it has produced them as they are kept in the usual course of

business." ***Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.***, 222 F.R.D. 594, 598 (E.D.

Wis. 2004); *see also* ***Rowlin v. Ala. Dep't of Pub. Safety***, 200 F.R.D. 459, 462 (M.D. Ala.

2001) ("[U]nder Rule 34, it is up to the producing party to decide how it will produce its

records, provided that the records have not been maintained in bad faith."); *cf.* Fed. R. Civ. P. 34 advisory committee note to 1980 amendment (explaining that this provision of <u>Rule 34</u> was intended to facilitate the discovery of relevant information, and to prevent parties from "deliberately ... mix[ing] critical documents with others in the hope of obscuring significance.").

The Defendant did not object, did not respond to the dispute over discovery request. It is the <u>defendant's obligation</u>, responsibility to object, and specifically show why such discovery request are irrelevant.

*WHEREFORE*, plaintiff files his objections to the Interrogatories and Production of medical records that are concealed from the Court.

Respectfully Submitted,

This 16th Day of February 2008.

MARCELLUS BREACH 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this 18th Day of February 2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

**Alabama Dept. of Corrections**
**LEGAL DIVISION**
**P.O. Box 301501**
**Montgomery, Alabama 36101**

**Rushton, Stakely, Johnston, Garrett, P.A**
**P.O. Box 270**
**Montgomery, Alabama 36101**

**Starnes & Atchison, LLP**
**100 Brookwood Place, 7th Floor**
**P.O. Box 598512**
**Birmingham, Alabama 35259-8512**

Marcellus Breach





Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.,
Harvest, Alabaam 35749

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
P.O. BOX 711
MONTGOMERY, ALABAMA      36101

# EXHIBIT
# NO. 1

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| MARCELLUS BREACH, #160710 | * | |
| | * | |
| Plaintiff, | * | |
| | * | CASE NO: 2:06-cv-1133-MEF |
| Vs. | * | |
| | * | |
| PRISON HEALTH SERVICES, INC., et. al., | * | |
| Defendants. | * | |

### MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES, AND PRODUCTION OF DOCUMENTS --- VARIOUS GROUNDS

**COMES NOW**, Pursuant to _Rule 37(a)(2), Federal Rules of Civil Procedures,_ plaintiff Marcellus Breach (hereinafter "Breach") in proper person "Pro Se," moves the court for an order requiring defendant Ruth Naglich, to fully and completely answer the following of Plaintiff's interrogatories and request for production of documents served on October 29, 2008, none of which interrogatories or production of documents have been objected to.

_Request For Judicial Notice_

[1]The attached Excerpt are the Interrogatories and request for Production of Documents incorporated by reference to [**Court Doc. No. N/A/] "Plaintiff's Third Set of Interrogatories and Request for Admissions, For Production of Documents to**

---

[1] Plaintiff highlights the disputed Interrogatories in support of his motion to compel.

1

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

Defendants Under Fed. R. Civ. P.,"[Specifically Defendant Ruth Naglich] filed on or about October 29, 2007.

The responses are **[Court Doc. No. N/A]** "ADOC Defendant Ruth Naglich's Response To Requested Discovery' filed on *December 17, 2007.*

On *December 31, 2007* plaintiff wrote counsel for the defendant pointing out that Ruth Naglich response was deficient, nonresponsive and the she failed to produce requested documents. **[Exhibit "A""B"]**

Also, on *December 3, 2007,* plaintiff attached the letter with a pleading entitled: "**Notice of Filing"** to the court. **[*Court Doc. N/A*]** explaining to counsel that Ruth Naglich answers are deficient and requested the counsel correspond with him in regards to the dispute in the responses.  Counsel made no attempt to correspond with plaintiff. **[See, plaintiff's affidavit at ¶¶ 2-6., & Exhibit "A"B"]**

2

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

iN THE DISTRICT COURT OF THE UNITED STATES * 3rd
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

|  |  |
|---|---|
| MARCELLUS BREACH, #160710 | * |
|  | * |
| Plaintiff, | * |
|  | *CASE NO: 2:06-cv-1133- |
| Vs. | * |
| PRISON HEALTH SERVICES, INC., et. al., | * |
|  | * |
| Defendants. |  |

*PLAINTIFF'S THIRD -- SET OF INTERROGATORIES AND REQUEST FOR
ADMISSIONS, FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS
UNDER FED. R. CIV. P.,*

*TO:    DEFENDANT RUTH NAGLICH, ASSOCIATE COMMISSIONER OF
HEALTH SERVICES, ADOC*


### III.    INTERROGATORIES:

**¶ 1.    Please state the following for the plaintiff.**

      a.    your age
      b.    your education
      c.    your length of service in your present employment position
      d.    your previous occupational experience(s)
      **e.    your training and experience in hernias**

**¶ 2.    Have you or has anyone acting in your behalf obtained from any person or persons any report(s), statement(s), memorandum, or testimony concerning the "incident" in question, in this cause of action?**

¶ 3.    *"Specifically identify"* the treatment protocols for inmates with hernia at "South Louisiana Correctional Center" from *March 16, 2006* through *October 6, 2006*.

3

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

¶ 4.    *February 2005.* Dr Bosserman diagnosed plaintiff with a hernia, having pain. *"Identify by document"* the person(s) who medically cleared plaintiff to be transferred to Louisiana with a serious medical need.

¶ 5.    *"Specifically identify" by "document,"* the faxed report to Ruth Naglich on 7-10-06 in reference to inguinal hernia.

¶ 6.    **Specifically disclose the substance of any oral statements made between you and "*identify*" any person(s), "*incident*," regarding the request for surgery and the faxed report on 7-10-06.**

¶ 7.    **Please "*identify*" your administrative responsibilities for the Alabama Department of Corrections including but not limited to the components and the quality of the provision of healthcare to plaintiff while in the care, custody, and control of ADOC, at *South Louisiana Correctional Services, Inc.*, from *March 16, 2006* through *October 6, 2006*.**

¶ 8.    *"Identify"* Lynn Brown and her responsibility and involvement in this *"incident." "specifically, dates: 7-17-06 and/or 7-12-06.*

¶ 9.    Please *"identify"* person(s). and the *"identity"* in reference to any documents. sent. received. while disclosing the substance of any and all communication pertaining to the *incident*, on or before 7-12-06 or 7-17-06 at 9:40 a.m., in reference to the 7-10-06 fax report and the follow up call to South Louisiana Correctional Services. Inc., regarding request for approval for surgery.

¶ 10.    *"Identify."* Nurse Maxie at South Louisiana Correctional Services.

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

¶ 11.   *"Identify"* Diana Lott and Dr. John A. Tassin, M.D., at South Louisiana Correctional Services.

¶ 12.   *"Specifically identify"* by *"document,"* the Protocol pertaining to hernias treatment to the plaintiff while at South Louisiana Correctional Services under the control of ADOC.

¶ 13.   *"Identify"* person(s) investigations, decision maker, regarding approval or denial of request for surgery from South Louisiana Correctional Center between *March 16, 2006* through *October 6, 2006*.

¶ 14.   *"Identify"* all person(s) involved on bellow stated dates regarding *"incident"* in question:

      a.    7-10-06
      b.    7-12-06
      c.    7-17-06 at 9:40 a.m.

**¶ 15.   *"Identify"* by *"document"* the responsibilities of Brandon Kindard regarding medical treatment, *"incident"* regarding the both 3-21-06 order and recommendation and 7-12-06 response / *"incident."***

**¶ 16.   Disclose the substance of any medical agreement / *"identify"* by *"document,"* regarding treatment, care, and quality of medical treatment between the Alabama Department of Corrections and South Louisiana Correctional Services between *March 16, 2006* through *October 6, 2006.***

¶ 17.   *"Specifically identify"* by *"document,"* the treatment Protocols that will be implemented between ADOC and the new medical providers, *"Correctional*

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

*Medical Services.*" ("CMS") pertaining to treatment to inmates who suffer from a hernia at the department of corrections.

¶ 18.    From *February 2005* through date of your response, disclose any knowledge, information, *"documents"* from anyone requesting improvement, changes updating the Protocols for hernias. If yes, state:

a.      *identify* the incident.
b,      *identify* person(s) requesting changes
c.      *identify* by document of request
d.      *specifically identify* the requested change, if submitted and disposition.

¶ 19.    After Dr. John A. Tassin, M.D., made his report and recommendation that plaintiff's inguinal hernia needs repair, why was plaintiff subsequently transferred back to the Alabama Department of Corrections on *October 6, 2006,* without surgery? *"Identify by document."*

¶ 20.   *"Identify by document,"* the responsibility of the Alabama Department of Corrections regarding the medical decisions of plaintiff while in Louisiana.

¶ 21.    Is it common practice at the Alabama Department of Corrections to disregard any doctor, *specifically* Dr. John A. Tassin's order and recommendation for medical treatment.

¶ 22.    *"Specifically identify,"* and disclosed the substance to any oral communication of the dental request on 6-13-06 regarding dental remarks from Dr. Mike Woodruff.

¶ 23.    *"Identify by document,"* and *"specifically identify"* the new medical providers as of *November 1, 2007* contracted ADOC to deliver medical services to Alabama inmates.

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

¶ 24.    Have you ever had your medical licensed revoked, suspended, or any action, investigation conducted by any Medical Board.  If so, for each complaint, indicate the city, state where the complaint(s) were, the nature of the complaint(s), the date of the above complaint(s), the name of the investigator, and the disposition of the complaint.  Also, if yes, please identify the agency and/or individual, who accused or investigated you for such allegation(s); specifically identify, the department, agency, employer, employee, or such other whom accused you of said charges, the nature of the allegation(s); your answers, response, in detail, to the allegation(s); the disposition of the accusation(s) or investigation(s) against you, either involving your official, or involving your individual capacity.

¶ 25.    "*Specifically identify,*" by "*document,*" the procedures, practice, policy, statement, memorandum, directive, governing how South Louisiana Correctional Center medical personnel are/were to obtain approval or disapproval for outside medical treatment for plaintiff regarding surgery for his hernia through ADOC.

*IV. REQUEST FOR PRODUCTION OF DOCUMENTS OF YOUR AGENTS*

That defendants produce and permit plaintiff to inspect and to copy each of the following documents:

**\* RULE 33, Fed. R. Civ. P., "Business Records"**

a.    To permit plaintiff to inspect, analyze, and copy or photograph, "*specific document,*" implemented protocols and policies/procedures of the new medical providers entering the Alabama Department of Corrections as of, or, their admitted date November 1, 2007, who are and, will be responsible for the treatment of plaintiff's injury, i.e., hernia;  specifically, the Protocols governing the treatment of hernias suffered by state inmates.

7

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

b.      The names and *"identify by document,"* those individual(s) responsible for the implementation and maintenance of the treatment Protocols pertaining to hernias with the new medical providers as of *November 1, 2007*, entering the Alabama Department of Corrections who will be responsible for the treatment to plaintiff.

**c.      All letters, complaints mailed to this Office from the plaintiff, specifically, the certified mail specifically, <u>December 23, 2006</u>, Article No. <u>7006-0100-0002-0735-5561.</u>**

**d.      Specifically, produce the "*document*," <u>fax report</u> on <u>7-10-06</u> to Ruth Naglich from Louisiana regarding surgery. State the name of person(s) who received said document.**

**e.      Specifically, produce the *Offender Grievance # 06-215, June 26, 2006* being South Louisiana Correctional Center, specifically the front and back of this <u>specific grievance</u>.**

f.      To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

g.      To disclose the material evidence by *"document,"* and substance of any oral statements made by defendants to person(s) at South Louisiana Correctional Center, on 7-10-06 and <u>7-12-06</u>, to any supervisor, agency or agents thereof.

**h.      To disclose the substance or oral statements made by any defendant, co-defendant or accomplice, agency, or agent regarding the Louisiana "Offender Grievance # 06-215"** <u>June 26, 2006</u>, the **front and back** of this grievance thereof.

i.      *"Specifically identify by document,"* and, disclose the ADOC policy, procedures, practice, directives, memoranda, statement, documents, governing, regarding, approval or disapproval of hernia surgery, requested by <u>South Louisiana Correctional Center</u> medical personnel, from *March 2006* through *October 6, 2006* to the Alabama Department of Health Services.

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

### DEFICIENT ANSWERS

Portions of Defendant's answers are not incompliance with _Rule 33(b),_ Federal _Rules of Civil Procedures. Defendant_ has provided to plaintiff's discovery responses that represents evasive, incomplete, nonresponsive.    Furthermore, not one document has been produced pertaining to plaintiff request for production of documents.

Ruth Naglich has an affirmative obligation to participate in discovery in an honest, non-evasive and complete manner. **Dollar v. Long Mfg**., 561 F.2d 613 (5th Cir. 1977).    As the United States Supreme Court noted in **United States v. Procter & Gamble**, 356 U.S. 677, 683, 2 L. Ed. 2d 1077, 78 S. Ct. 983 (1958), it is axiomatic that the purpose of discovery is to make a trial "less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest extent possible."

### A.    _Plaintiff's Definitions and Instructions to Discovery Request:_

Plaintiff's Interrogatory comply with _Rule 33(b),_ Federal _Rules of Civil Procedures,_ giving detailed definitions and instructions to prevent a witness giving intentionally or inadvertently omit information that is contained in documents.  All relevant information in documentary form as requested is relevant to establish municipal liability.    All internal memoranda, notes, or other documents indicate company policy.  Plaintiff's request for documents are not limited to drafts of agreements, internal memoranda discussing the negotiations regarding medical care; also, any and all correspondence to third party discussing any alleged agreements regarding medical care pertaining to

9

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

"elective" treatment, hernias. Any agreement entered into between ADOC and the private prison regarding medical care is relevant, also, Naglich relies on what agreement was entered into through the contract. Any portion of the agreement will explain how ADOC was involved in decision making because the agreement is the policy.

Plaintiff's definitions and request for production are limited to documents, things which are in the possession, custody or control of the party upon whom the request is served. However, defendant has not once produced any requested specific documents in her answers. The scope of relevance is very broad in discovery.

### INTERROGATORIES TO RUTH NAGLICH:

1.    **Interrogatory No. 1(e),** defendant Ruth Naglich's answer to this interrogatory is incomplete and unresponsive, since Ruth Naglich does not state her experience and training and relies on her education. Plaintiff <u>specifically</u> requested her to answer regarding "training and experience in hernias".

    **Naglich's Response: " Reger tp responses of (b) and (d).**

2.    **Interrogatory No. 2,** this response is incomplete, nonresponsive. Ruth Naglich did not answer at all. <u>*Rule 33(b),*</u> Fed.R.Ci.P., specifically states that:" Each interrogatory must be answered separately and fully in writing, unless an objection is interposed in lieu of an answer. The answer must include all information within the party's control or known by the party's agents. This includes *facts* in an attorney's possession and information supplied to the party by others. . . . " Therefore, since Ruth Naglich's

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

response is: "**Yes, Albert Butler, ADOC counsel**," then, she must produce as requested all information regarding the question: "Has you or has anyone acting in your behalf obtained from any person or persons any report(s), statement(s), memorandum, or testimony concerning the "incident" in question, in this cause of action?" . [**Plaintiff's Interrogatory No. 2"**]

Ruth Naglich's Response: "**Yes: Albert Butler, ADOC counsel.**"

3.      **Interrogatory No. 6**, Ruth Naglich's answer to this interrogatory is unresponsive. Defendant Brandon Kindard is an employee under her direct supervision; he has given an affidavit that he met with plaintiff and also he has knowledge pertaining to surgery request at Kilby in December 2006.  Brandon Kindard's names is on the medical records calling Louisiana two days after a fax report was sent to Ruth Naglich regarding approval for surgery.  Naglich has failed to identify any other reason or, alternatively, the lack of any such reasons why she has not disclosed any statements, memorandum, or testimony concerning this incident even from Albert Butler.

Ruth Naglich's Response: "**I do not recall specific statements made in reference to this request.**"

4.      **Interrogatory No. 7**, Ruth Naglich's answer is nonresponsive as to in-part of this request for her to identify her <u>administrative responsibilities</u> for the Alabama Department of Corrections the question was in part, she provided that she had no administrative responsibilities over the private prison, but the question is directed to her ADOC responsibilities.

11

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

> **Ruth Naglich's Response: "Plaintiff was not in the "care, custody or control' of the ADOC while housed at Sotuh Louisiana Correctional Services, Inc.; he was in the 'care, custody or control' of LCS Correctional Services, a private business or entity.  I have no administrative responsibilities for inmates within their 'care, custody and control."**

5.    **Interrogatory No. 15**, Ruth Naglich's answer is nonresponsive, vague, and ambiguous because plaintiff requested that she <u>specifically identify by document</u> the <u>responsibilities of Brandon Kindard whom she supervises</u>.   Naglich states that Brandon Kinard's responsibilities are to report the findings of the treating physician or practitioner.  The evidence reflects that Kindard called nurse Maxie with instructions the plaintiff cannot have surgery unless his hernia is incarcerated or into the scrotum.  It is clear that Kinard was fulfilling his responsibilities, but to whom did he report the finding of John A. Tassin and nurse practitioner Bradford Adams to? His responsibilities require him to report the findings, the question is to produce by document, his responsibilities.

> **Ruth Naglich's Response: "Brandon Kindard has no responsibility in the direct treatment of an ADOC inmate or the recommendations for treatment.  His responsibilities are to report the findings of the treating phyusician or practitioner."**

6.    **Interrogatory No. 16**, Ruth Naglich's answer is nonresponsive in particularity, plaintiff request is directed to documents pertaining to any medical agreement regarding hernia treatment and the quality of medical care entered between the ADOC and South Louisiana Correctional Center.  Such documents are in the defendant's control, and plaintiff can review any portion pertaining to medical care. Plaintiff has information that

12

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

Dr. Tassin and nurse Maxie stated: "any medical care over $300.00 has to be approved by

ADOC."

7.    **Ruth Naglich's Reposne: "The contract between the Alabama Department of Corections and South Louisian Correctional Services."**


*Request For Production Of Documents:*

8.    **Requests "C"** "All letters, complaints mailed to this Office from the plaintiff, specifically, the certified mail specifically, **December 23, 2006, Article No. 7006-0100-0002-0735-5561"**

9.    **Request ""D",** "Specifically, produce the "document," fax report on 7-10-06 to Ruth Naglich from Louisiana regarding surgery.  State the name of person(s) who received said document."

10.    **Request "E",** " Specifically, produce the Offender Grievance # 06-215, June 26, 2006 being South Louisiana Correctional Center, specifically the front and back of this specific grievance.

11.    **Request "H",** "To disclose the substance or oral statements made by any defendant, co-defendant or accomplice, agency, or agent regarding the Louisiana "Offender Grievance # 06-215 June 26, 2006, the front and back of this grievance thereof."

13

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

*ARUMENT AS TO RELEVANCY AND REQUEST FOR FURTHER RESPONSES*

*Rule 33(b), Federal Rules of Civil Procedures* states: " . . . The answer must include all information within the party's control or known by the party's agents. It is amazing that ADOC claims not to have any knowledge, information regarding their "agent" South Louisiana Corrections Center. Furthermore, *Rule 34*, Fed.R.Civ.P., includes any facts, in an attorney's possession and information supplied to the party by others.. . . " Id.

Under *Rule 803(6)*, Fed.R.Civ.P., the Louisiana medical records reflect that nurse Maxie recorded that a fax report was sent to Ruth Naglich regarding hernia repair. Two days later, Brandon Kindard called the nurse administrator, Diana Lott, with instructions that plaintiff cannot have surgery unless his hernia is incarcerated or, into the scrotum. Such records constitute one businessperson communicating information in the course of a regularly conducted business activity to another businessperson, and the second businessperson recorded the information in the course of a regularly conducted business activity. Fed. R. Evid. *803(6).*

While plaintiff was at the private prison, any medical treatment over $300.00 had to have ADOC's approval. If not, why did the private prison medical personnel seek pre-approval for surgery from ADOC? Why does the evidence reflect a fax report sent to Naglich for approval for surgery? Why did Kinard call Diana Lott?

ADOC entered into a business agreement with LCS. ADOC did not abandon their lawful duties over prisoners sentenced to the ADOC. Ruth Naglich may deny a fax

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

report, but a jury can determine whether she is being truthful.  Brandon Kindard can also

deny any communication and a jury also can judge his truthfulness.

The requested productions of documents are in the possession, custody or control

of Ruth Nagllcih.  Specifically, the Offender Grievances #06-215 will have the answer

from ADOC being recorded by a contracted businessperson in the course of a regularly

conducted business activity regarding surgery request.  Brandon Kinard communicated

with LCS medial personnel, and plaintiff is entitled to discover any information

regarding such communications, agreements made.

*WHEREFORE*, in regards to the Interrogatory numbers: 1(e), 2, 6, 7, 15, 16 and

request for production of documents requests: C, D, E, H, propounded on Ruth Naglich

be ordered as this court deems fair and appropriate.

Done this 7th Day February 2008.

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

COUNTY OF LIMESTONE }

15

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

STATE OF ALABAM          )

### *DECLARATION OF THE PLAINTIFF IN SUPPORT OF COMPEL AND SANCTIONS*

Affiant in the above instrument, who after being duly sworn, deposed and says on oath that the averments in the foregoing are true to the best of his ability, information, knowledge and belief:

I am ***Marcellus Breach, AIS #160710***, I am over the age of twenty-one. I am the plaintiff in this action. I make this declaration in support of my Motion to Compel.

On December 31, 2007 I served on the defendant's counsel a document: "Notice of Filing" and a latter to counsel regarding areas of deficiency pertaining to Ruth Naglich's responses, which is attached to this affidavit as Exhibit 1.

Counsel did not respond to this request regarding disputed answers; nor did he request an adjournment from the court or seek my agreement to an adjournment. A copy of my letters is attached as **Exhibit "A","B"**.

Defendants' counsel did not respond to my letter. I have written counsel and I have filed my notice of intent with the Court. Copies of my letters are attached. Defendant's response to several Interrogatories and request for production of document

**ATTACHED EXCERPT DISCOVERY REQUEST UPON RUTH NAGLICH**

is insufficient and challenged, as set forth accompanying this motion.

    ***WHEREFORE,*** the plaintiff request that the court grant this motion in all respects Under the penalty of perjury the foregoing is true and correct. 28 U.S.C. 1746    This 7th Day February 2008.

Marcellus Breach

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY**, that I have this 8th Day of February 2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

**Alabama Dept. of Corrections**
**LEGAL DIVISION**
**P.O. Box 301501**
**Montgomery, Alabama 36101**

**Rushton, Stakely, Johnston, Garrett, P.A**
**P.O. Box 270**
**Montgomery, Alabama 36101**

**Starnes & Atchison, LLP**
**100 Brookwood Place, 7th Floor**
**P.O. Box 598512**
**Birmingham, Alabama 35259-8512**

Marcellus Breach

17

# EXHIBITS
# "A""""B"

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MARCELLUS BREACH, #160710

      Plaintiff,

Vs.

PRISON HEALTH SERVICES, INC., et al.,

      Defendants.

              \*

              \*

              \*     CASE NO: 2:06-cv-1133-MEF

              \*

              \*

### *NOTICE OF FILING/ DISCOVERY DISPUTE PERTAINING TO DEFENDANTS RUTH NAGLICH AND BRANDON KINDARD*

**COMES NOW**, the Plaintiff <u>*Marcellus Breach*</u> (hereinafter "Breach") in proper person "Pro Se," hereby gives written notice pursuant *to Rules 37(a)(2)(A), 37(a)(2)(B), Fed. R. Civ. P.,* and compliance with this Court's order entered on <u>*December 4, 2007*</u> **[Court Doc No. 292—1, Order]** hereby files the attached for the Record: Plaintiff states as follows:

1.    Plaintiff has attached his letter to Counsel for ADOC regarding discovery disputes to responses of defendant Ruth Naglich.

1

**WHEREFORE**, plaintiff requests to place into the Record his attempts to resolve the discovery problems informally with counsel, without court intervention.

Done this 30th Day December 2007.

_____

Marcellus Breach 160710 ®
Limestone C.F.
28779 Nick Davis. Rd.
Harvest, Alabama 35749

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this 30th Day of December 2007, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections
Legal Division
P.O. Box 301501
Montgomery, Alabama 36101

Rushton, Stakely, Johnston, Garrett, P.A
P.O. Box 270
Montgomery, Alabama 36101

Starnes & Atchison, LLP
100 Brookwood Place, 7th Floor
P.O. Box 598512
Montgomery, Alabama 35259

® _____

Marcellus Breach

2

MARCELLUS BREACH, 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

**December 30, 2007**

Alabama Department of Corrections
Kim T. Thomas & Albert S. Butler
Legal Division
P.O. Box 301501
Montgomery, Alabama 36130

RE:    2:**06-cv-1133 Letter of Intent/ Discovery Disputes**
       **Discovery Responses from Defendant Ruth Naglich, and Brandon**
**Kindard.**

Dear Counsel:

I have attached the disputed responses to both Ruth Naglich and Brandon Kindard in responding to requested discovery.  It concerns me that not one document has been produced.  There really isn't a lot that I am looking for and the documents due exist.  However, too many are being concealed and not being produced.  I hope we can work this out without court action.

First and foremost, I truly believe that documents are being suppressed which are relevant. ADOC's has control for the production and haven't.  The answers to discovery request are seem confusing, vague and nonresponsive.  I am requesting that you have them answered more responsively, and also produce the requested documents.

I request that you correspond with me regarding to the specific documents requested.  If you do not have them, I want to know why, and where are they?  I am more than willing to cooperate with you; I am open to any objections.   I have enclosed the areas contained in the responses that I feel are in dispute.  I hope fifteen (15) days from date of this letter to respond will be enough?  If not, please fill free to request for more time.

I hope we can work this out without court action.

I thank you kindly,

Marcellus Breach

**Attachments:  Disputed responses Ruth Naglich and Bradon Kindard**

## DEFENDANT RUTH NAGLICH
## DISPUTED DISCOVERY REQUEST/ANSWER TO INTERROGATORIES

Not one document has been produced as requested. The requested production are under her control, possession and custody. There are several disputes in regards to Interrogatories propounded on defendant Ruth Naglich and her answers dated on December 17, 2007. I have listed and identified questions that I find are not responsive, and ambiguous. I am requesting that she answer more specifically and also provide the documents requested. Rule 34, Fed.R.Civ.P., is invoked, all request are under defendants control, possession or control and within the legal right to obtain all information requested from any Agent of ADOC.

1.    Interrogatory No. 1(e)    She did not answer specifically to the question..

2.    Interrogatory No. 3,    "Specifically Identify" refers to document(s). However, ADOC sent me to Louisiana and I requested information regarding to the medical treatment plan that was established regarding Hernias entered between ADOC and LCS.

3.    Interrogatory No. 5. Ambiguous. Please produce the document.

4.    Interrogatory No. 6, Ambigious.

5.    Interrogatory No. 7, she did not clearly identify her administrative responsibilities including any responsibility over inmates while at the private prison in Louisiana.

6.    Interrogatory No. 8, ambiguous, vague response.

7.    Interrogatory No. 9. not responsive, evasive and ambiguous.

8.    Interrogatory No. 12. Request for documents,

9.    Interrogatory No. 13,    She did not identify.

10.    Interrogatory No. 14.    Ambiguous.

11.    Interrogatory No. 15. Produce "document" reflecting Brandon Kindard's responsibilities.

12.    Interrogatory No. 16.        Evasive answer, produce the documents.

13.    Interrogatory No. 17. Her answer is evasive, please identify.

14.    Interrogatory No. 19, evasive, please answer the question, identify by document.

15.    Interrogatory No. 20.  Produce the document(s).

16.    Interrogatory No. 21.        vague answer.

16.    Interrogatory No. 22.    Produce the document regarding dental request for approval to ADOC.

17.    Interrogatory No. 23.  Identify by document please answer the question.

18.    Interrogatory No. 25, Identify by document as requested.


## REQUEST FOR PRODUCTION OF DOCUMENTS: Louisiana Medical Records

**a.    Produce request**
**b.    Produce request**
**c.    Produce request**
**d.    Produce request**
**e.    Produce request**
**f.    Produce request**
**g.    Produce request**
**h.    Produce request.**
**i.    Produce request.**

## ADMISSIONS:

Defendant Naglich's answers to Admissions are inappropriate and vague.   Ruth Naglich is a Nurse.  The dispute regarding Admissions are questions numbers: **1,2,3,6,7,8,9,10, 11,12,13,14,15, 16,17,18,19,20 through 30, 31 though 42.**

_____

### *DEFENDANT BRANDON KINDARD*

**Interrogatories:**

1.    Interrogatory No. 1(g)    evasive, ambiguous.

2.    Interrogatory No. 5     ambiguous.  Medical Records have his name on them.

3.    Interrogatory No. 7    ambiguous answer, cannot point to the records, as an answer must specifically identify his answer.

4.    Interrogatory No.  12    identify by document and ambiguous, Ms. Lynn Brown was present at meeting at Kilby December 20, 2006.

5.    Interrogatory No. 13    ambiguous answer.

6.    Interrogatory. No. 15    contradictory statement.

7.    Interrogatory No. 16    Ambiguous answer.

8.    Interrogatory No. 17    Ambiguous answer.

9.    Interrogatory No. 18    Produce the requested documents responsive with answer.

10.    Interrogatory No. 20  Please produce the document to support his answer.

11.    Interrogatory No. 21  Identify by document explaining such.

13.    Interrogatory NO. 22 & 23  Identify by document applied through any Agent.

14.    Interrogatory No. 25.  Please produce the document supportive to answer.

### *REQUEST FOR PRODUCTION OF DOCUMENTS*

Medical Records of Plaintiff from South Louisiana Corrections Services, all of them and each grievance be in the form of "**front and back**" copies this is tangible evidence requested not produced.  You cannot refer me to the Record for a document that is not there. Produce **Specifically Grievance No: 06-215 June 26, 2006** LCS Corrections

Services, Inc., Offender Grievance the "**Front and back**" please is requested. Also, produce  the fax report  and all faxes regarding plaintiff.