IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION

RECEIVED
2008 FEB 29  A 10: 25

...A P. HACKETT...
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

MARCELLUS BREACH, #160710,  *

    Plaintiff,  *

Vs.  *  CASE NO: 2:06-CV-1133-MEF

PRISON HEALTH SERVICES, INC.,  *

    Defendants.

## *MOTION TO STRIKE IMPROPER NOTORIZATION OF DR. MICHAEL E. ROBBINS, M.D., AFFIDAVIT*

*COMES NOW*, the plaintiff <u>Marcellus Breach</u> (hereinafter "Breach") in proper person "Pro Se," pursuant to <u>Rule 56(e)</u> of the *Federal Rules of Civil Procedures* moves to Strike Michael Robbins's affidavit, because this affidavit is improperly notarized and is contained in the Record to the defendant's "<u>Special Report</u>" filed on or about <u>February 14, 2007</u>. In further support plaintiff states, it's simple; "<u>Notarization requires a complete affidavit and a signer and notary in one place at one time</u>". **Thigpen vs. Matrix Fin. Servs. Corp.**, U.S. (Southern District of Alabama 2004) 2004 Bankr. LEXIS 1136 Case No. 02-14280-MAM-13, Adv. No. 04-01035, <u>August 2, 2004</u>.

1.    On <u>February 14, 2007</u> defendant Michael Robbins submitted an affidavit consisting of four (4) pages attached to their "Special Report". The Court adopted Robbins affidavit in its order and recommendations on <u>October 31, 2007</u>. **[Court Order Doc. No. 193]**.

1

a. Strike, Affidavit Michael Robbins, Defendant's <u>Exhibit "A"</u>, *Special Report, <u>February 14, 2007</u>*. **[Court Doc. No. N/A]**

b. Strike, Affidavit Michael Robbins, Defendants <u>Exhibit "A'</u>, **Court Doc. No. 144-2**, *"Defendant's Response To Prisoner's Motion For Independent Evaluation."* **[Court Doc. #124]**, filed on <u>October 26, 2007]</u>

2. [1]The reason the affidavit is improper and false is that "**the signature page was executed separate and apart from the other pages of the affidavit.**" The signature page, @ 3, ends Robbins's statement, but, the executed page, @ 4, is completely separate and is improper and, as filed, constitute a fraud on the court and/or an abuse of process.

## *ARGUMENT*

## *MEMORANDUM AT LAW / POINTS ON AUTHROITY*

Court's have ruled against improper notarization regarding affidavits. Specifically, as the affidavit submitted by Robbins that demonstrates that he was not in the presence of a Notary Public upon signing his name is inadmissible evidence.

In this case, plaintiff argues that Robbins's affidavit, his signature page of the affidavit was executed separately from the contents of the affidavit itself is improper and deficient to be considered as evidence. It is safe to say that *Thigpen* is the latest statement of law regarding the issue before this court. Unlike <u>*Thigpen*</u> case that involved an

---

[1] **Exhibit "A"** the signature page is not signed in conjunction with the contents of the affidavit, then the signor cannot have "acknowledged he executed the instrument. Robbins's signature is not on the same page with the Notary is insufficient, nor admissible as evidence. Defendant Robbins has submitted two (2) separate affidavits in this case. The challenged affidavit is filed on <u>February 14, 2007</u> defendant's Special Report, which has also been resubmitted by defendants in other responses. Robbins also has a "Supplemental Affidavit" which is not challenged on this ground at this time.

2

Arizona notary, the Court in *Brannan v. Wells Fargo Home Mortgage, Inc.*, United States Bankruptcy Court for the Southern District of Alabama, 2004 Bankr. LEXIS 1132, Case No. 02-16647-MAM-13, Adv.No.04-01037 *May 25, 2004*, and the Court dealt with a motion to strike, an affidavit not properly notarized. *Id. accompany Note # 1.,*

The *Brannan* decision involved a South Carolina notary. The court found no South Carolina case holding a person civilly liable for improper notarization. In *In re McGuinn*, 272 S.C. 366, 252 S.E.2d 122 (S.C. 1979), the South Carolina Supreme Court disciplined an attorney who violated the state statutes as to notarization. It stated: "This Court is shocked by respondent's abuse of the office of notary public. A notary is a public officer, who, by his hand and seal, authenticates certain classes of documents. See Code ss 26-1-10 et seq. (1976) ... The credibility of notarized documents is essential to the viability of our legal system." *Id.* Section 26-3-60 of the South Carolina statutes states: "The words *'acknowledged before me'* mean: (1) That the person acknowledging appeared before the person taking the acknowledgment; (2) That he acknowledged he executed the instrument." (Italics in original) The statute makes it clear that an instrument and signature must be one document at the time of signing and acknowledgment. This court concludes that South Carolina courts would find improper notarization to be an abuse of the judicial process or sanctionable conduct based upon the case law and statute. *Id.*

In addition, unlike the *Thigpen v. Matrix Fin. Servs. Corp.*, 2004 Bankr. LEXIS 1135 (Bankr. S.D. Ala., *May 25, 2004*), Case No. 02-14280-MAM-13, Adv. No. 04-01035,

cases case cited herein similar to this case regarding an improper notarization; unlike *Thigpen*, which involved an Arizona notary, the notarization of the affidavit was done by a Minnesota notary. Minnesota case law also recognizes that a notary public can be held liable for negligence due to notarization practices. ***Barnard v. Schuler***, 100 Minn. 289, 110 N.W. 966(Minn. 1907). It states that "a notary cannot legally or honestly certify to the acknowledgment of a party unless he personally knows him or has satisfactory evidence of the fact that he is the identical person described in and who executed the instrument ... If a notary public certifies to an acknowledgment of an instrument without such personal knowledge and investigation, he is guilty of negligence." Id. at 100 Minn. at 291-92, 110 N.W. at 967-68. Similarly to a bankruptcy creditor's claims, execution of signature pages and/or notarization of them separate and apart from the body of affidavits should be an <u>obviously inappropriate action</u>. **Notarization requires a complete affidavit and a signer and notary in one place at one time.** See, *Bowman v. Bank One, Nat'l Ass'n (In re Bowman)* 2004 Bankr. LEXIS 1131 (S.D. Ala. May 25, 2004). [2]  See also, *In Re Mark Brannan v. Wells Fargo Home Mortgage, Inc.,* U. S. Bankruptcy Court ( S. D. Ala., 2004) Bankr. LEXIS 1132, Case No. 02-16647-MAM-13, Adv. No. 04-01037, <u>May 25, 2004.</u>

---

[2] @ * 3, <u>Bowman</u> Court held: <u>The court in the attached</u> *Thigpen* opinion sets forth case law that the court concludes allows the Bowman's to raise the issue of the improper or fraudulent execution of the affidavit filed in the Bowman's case. The allegation that the signature page was executed "separate and apart" from the affidavit is sufficient to describe the fraud or impropriety alleged. Id.

There is, at least in Alabama, a civil cause of action against a notary under these circumstances. In the case of *First Bank of Childersburg v. Florey*, 676 So.2d 324 (Civ. App. Ala. 1996) a bank and its employee were held liable to parties harmed by an improper notarization. The liability of a notary public is founded on the common law and predates any statutory duty. *Independence Leasing Corp. v. Aquino*, 111 Misc.2d 1039, 445 N.Y.S.2d 893, 894 (Buffalo City Ct. 1981). A notary has the duty to use ordinary reasonable care in the performance of his functions. *Immerman v. Ostertag*, 83 N.J. Super. 364, 370, 199 A.2d 869, 873 (1964). As the Alabama Supreme Court observed in *Butler v. Olshan*, 280 Ala. 181, 190-91, 191 So.2d 7, 16 (1966), 'a notary public is not an insurer, but he is under a duty to his clients to act honestly, skillfully, and with reasonable diligence.' 'In the absence of statute, a notary is held to the care and diligence of a reasonably prudent man to ascertain the acknowledger's identity, but is not an insurer of the truth of the recitals.' *Manufacturers Acceptance Corp. v. Vaughn*, 43 Tenn.App. 9, 29-30, 305 S.W.2d 513, 305 W.E.2d 513, 522 (1957) (quoting *Figuers v. Fly*, 137 Tenn. 358, 369, 193 S.W. 117, 193 W.E. 117, 120 (1917)). *Florey*, 676 So.2d 324, 331.

> The Court in *Florey* gave this instruction to the jury:
>
> "A notary public owes to his clients a duty to act honestly, skillfully, and with reasonable diligence. This duty imposed on a notary public requires the notary to ascertain the identity of the person whose signature they attest. Therefore, this duty cannot be fulfilled unless the transaction is done by or before the notary. For these reasons the duty of the notary public requires that he not willfully and intentionally certify that a

person has acknowledged the execution of a conveyance when the person did not acknowledge the execution before the notary. When a notary does such, this would constitute constructive fraud."

*Florey*, 676 So.2d at 332

The Court of Civil Appeals held that this instruction was proper. The Court based this ruling on the holding of **Central Bank of the South v. Dinsmore**, 475 So.2d 842, 845 (Ala. 1985). In that case, the Supreme Court stated:

> "In order for an acknowledgement to be effective, it must clearly identify the person or persons who executed the conveyance, and **the person signing the instrument must have appeared before the notary and acknowledged that he signed the instrument."**
> (Emphasis added by that court)

The acknowledgement itself states that the affidavit is "subscribed and sworn to before me." The language on its face requires an appearance and a complete affidavit.

In the *Florey* case, the Bank and its employee were sued for fraud due to a fraudulent notarization. This was a civil suit against both the notary and the party who employed the notary. The court affirmed a judgment against the bank on this theory. If the signature page of an affidavit is executed separate and apart, and the notary has not had the signor acknowledge the contents of the affidavit, then the notary's duty of care is violated. The signor of the separate signature page has also been negligent. *Id. Supra.*

Also, there was in Arizona a civil cause of action against a notary. In **City Consumer Services, Inc. v. Metcalf**, 161 Ariz. 1, 775 P.2d 1065 (Ariz. 1989), a notary was held liable for damages due to negligent conduct as a notary. Arizona has a state statute, A.R.S. 33-503 *et seq.* that requires, among other things, that "the person whose signature is

6

being acknowledged have 'appeared' before the notary and 'acknowledged he executed the instrument.' A.R.S. 33-503(1)." *Metcalf,* 161 Ariz. 1, 775 P.2d 1065, 1068. <u>If the signature page of the affidavit is executed separate and apart from the contents of the affidavit as alleged in this case, then that statute has been violated</u>. If the **signature page is not signed in conjunction with the contents of the affidavit, then the signor cannot have "acknowledged he executed the instrument."** In that case, the statute was violated. *Id.*

There are cases in other jurisdictions that also make clear the duty of a notary and that actions may be taken against persons who improperly notarized documents. E.g., *Colorado v. Peters, et al.,* 82 P.3d 389 (Colo. 2003) (disciplining attorney who obtained notarization of process server's signature when server was not present); *Kentucky Bar Ass'n v. Reisenfeld,* 4 S.W.3d 141, 46 15 Ky. L. Summary 17 (Kent. 1999) (disciplining attorney who had client sign blank sheets of paper which he attached to later typed affidavits); *Cincinnati Bar Ass'n v. Reisenfeld,* 84 Ohio St.3d 30, 1998 Ohio 307, 701 N.E.2d 973 (Ohio 1998) (same); *Sambor v. Kelley,* 271 Ga. 133, 518 S.E.2d 120 (Ga. 1999) (disallowing affidavit where notary administered oath over the telephone); *Kirkeby v. Covenant House (In re Estate of Kirkeby),* 157 Ore. App. 309, 970 P.2d 241 (Ore. 1998) (finding will improperly executed when acknowledgement of signature was done telephonically); *Schmidt v. Feldman,* 230 Ga. App. 500, 497 S.E.2d 23 (Ct. App. Ga. 1998) (holding affidavit improperly notarized when paralegal administered the oath over the

7

telephone); *Florida Bar v. Farinas*, 608 So.2d 22 (Fla. 1992) (disciplining attorney for notarizing signatures of an out of state client on interrogatories when the client was not present before him); *In the Matter of the Application for the Discipline of John T. Finley*, 261 N.W.2d 841 (Minn. 1978) (disciplining attorney for notarizing affidavits not signed in his presence, relying instead on assurances of friend and business associate that signatures were valid).

Arguing the issue as persuasive to the law applied regarding this case. There are several cases that the court found have sought to hold employers liable for the actions of their employees in improper notarization cases. *E.g., First Bank of Childersbury v. Florey*, 676 So.2d 324 (Ala. 1996); *Grossman v. Liss & Associates*, P.C., 2003 Mich. App. LEXIS 305, 2003 WL 328039 (Mich. App. 2003). Based upon all of the cases cited above, which are not intended to be an exhaustive listing, improper notarization can subject notaries or their employees or associates to damage or disciplinary claims.

## POINT II

When a notary is called on to perform an act which he is authorized by law to perform, and he does so carelessly or fraudulently, he and his surety are liable for any loss proximately resulting therefrom." *Butler v. Olshan*, 280 Ala. 181, 190, 191 So. 2d 7, 16 (1966). See also *Central Bank of the South v. Dinsmore*, 475 So. 2d 842, 845 (Ala. 1985); *First Bank of Childersburg v. Florey*, 676 So. 2d 324, 331-32 (Ala. Civ. App. 1995).

Plaintiff argues that although there is no longer a statutory offense of willfully fraudulent notarization in Alabama. **Section 36-10-4,** Ala. Code 1975, which provided for two to ten years' imprisonment for a notary "who, with intent to injure or defraud, or to enable any other person to do so, willfully certifies that any conveyance was duly proved or acknowledged when such acknowledgment was not in fact made," was repealed by 1977 Ala. Acts 607, 9901 (effective January 1, 1980).

### POINT III

The execution of the notary being separate from Robbins document can constitute constructive fraud. It is true that fraudulent intent does not have to be proven to establish a constructive fraud. See ***Ex parte Cheriogotis***, 553 So. 2d 558 (Ala. 1989); ***Hornaday v. First Nat'l Bank of Birmingham***, 259 Ala. 26, 65 So. 2d 678 (1952). The Alabama Supreme Court has explained the distinction between actual fraud and constructive fraud as follows:

> "Actual fraud denotes the actual mental operation of intending to defeat or delay the rights of the creditor. On the other hand, constructive fraud is based on facts and circumstances which courts have said constitute legal fraud, regardless of actual intent." ***Hope Developers, Inc. v. Vandiver***, [Ms. 1940113, May 19, 1995] So. 2d, (Ala. 1995).

A notary public owes to his clients a duty to act honestly, skillfully, and with reasonable diligence. This duty imposed on a notary public requires the notary to <u>ascertain the identity of the person whose signature they attest</u>. Therefore, this duty cannot be fulfilled unless the transaction **is done by or before the notary**. For these

reasons the duty of the notary public requires that he not willfully and intentionally certify that a person has acknowledged the execution of a conveyance when the person did not acknowledge the execution before the notary. When a notary does such, this would constitute constructive fraud. Robbins' mere presence <u>is not sufficient</u> to constitute a <u>valid notarization</u>. In order to be effective there <u>must be an actual signing or acknowledgment of a signature in the presence of the notary.</u>

The foregoing is charge is derived from language in <u>Butler v. Olshan,</u> supra, a decision that applied the concept of constructive fraud to the conduct of a notary. The <u>Bank</u> attempted to distinguish <u>Butler</u> on the basis that the purported grantor in <u>Butler</u> was not in the presence of the notary when his signature was notarized, whereas here, Mr. Robbins <u>may</u> have been present when the when the Notary notarized the document; is too questionable. That distinction is immaterial because, "**the grantor's mere presence is not sufficient**" to constitute a valid acknowledgment. <u>Id</u>.

The law is established that "In order for an acknowledgment to be effective, it must clearly identify the person or persons who executed the conveyance, and the person signing the instrument must have appeared before the notary *and acknowledged that he signed the instrument.*" ***Central Bank of the South v. Dinsmore***, 475 So. 2d 842, 845 (Ala. 1985) (emphasis added).

10

## CONCLUSION

There is no evidence that Robbins was <u>present in front</u> of a notary when executing this document. One who notarizes a conveyance without the signer's acknowledgment, therefore, commits constructive fraud within the meaning of <u>Butler v. Olshan</u>. The facts adduced here, the fact the execution of the notary, <u>is on a separate page of the document</u> is questionable, improper and inadmissible. There is no evidence that Robbins appeared in front of the Notary in his/her presence -- before the notary and acknowledged that he signed the instrument." Compare **Farmer v. Hypo Holdings, Inc.,** [Ms. 1940610, February 9, 1996] 675 So. 2d 387 (Ala. 1996) (on rehearing)(although mortgagors denied that they signed mortgage in notary's presence, notary executed an affidavit that mortgagors did sign in his presence).

**WHEREFORE,** plaintiff does not request sanctions, but moves to strike this improper affidavit that is not properly notarized under the decision in **Thigpen v. Matrix Fin Servs. Corp.**, 2004 Bankr. LEXIS 1135 (S.D. Ala. May 25, 2004) *(If the signature page of an affidavit is executed separate and apart, and the notary has not had the signor acknowledge the contents of the affidavit, then the notary's duty of care is violated. <u>The signor of the separate signature page has also been negligent.</u>)*

Done this 26th Day February 2008.

*[signature]*

Marcellus Breach 160710

11

Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama   35749

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have this 27th Day of February 2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

**Alabama Dept. of Corrections**
**LEGAL DIVISION**
P.O. Box 301501
Montgomery, Alabama 36101

**Rushton, Stakely, Johnston, Garrett, P.A**
P.O. Box 270
Montgomery, Alabama 36101

**Starnes & Atchison, LLP**
100 Brookwood Place, 7th Floor
P.O. Box 598512
Birmingham, Alabama 35259-8512

® _____
Marcellus Breach

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.,
Harvest, Alabaam 35749

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
P.O. BOX 711
MONTGOMERY, ALABAMA   36101

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARCELLUS BREACH, (AIS # 160710) | * | |
| Plaintiff, | * | |
| V. | * | 2:06-CV-1133-MEF |
| PRISON HEALTH SERVICES, et al., | * | |
| Defendants. | * | |

### AFFIDAVIT OF MICHAEL E. ROBBINS, M.D.

BEFORE ME, **Willie G. Rowell**, a notary public in and for said County and State, personally appeared **MICHAEL E. ROBBINS, M.D.**, and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is Michael E. Robbins. I am a medical doctor and am over twenty-one years of age. I have been a licensed physician in Alabama since 1986 and have been board certified in internal medicine since 1986. Since June of 2002, I have served as the Medical Director for Kilby Correctional Facility in Mt. Meigs, Alabama. Since November 3, 2003, my employment has been with Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates. I am personally familiar with all of the facts set forth in this Affidavit.

The Plaintiff, Marcellus Breach (AIS #160710), is currently incarcerated as an inmate at Kilby Correctional Facility. I am familiar with Mr. Breach and have been involved with the medical services provided to him at Kilby. In addition, I have reviewed Mr. Breach's Complaint

in this action as well as his medical records (certified copies of which are being produced to the Court along with this Affidavit).

Mr. Breach was first diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole." He has been incarcerated at Kilby Correctional Facility since September 6, 2006. I have reviewed his medical records and have been actively involved in his medical treatment. It is noted in a Progress Note from Dr. Bosserman on May 5, 2005 that Mr. Breach does have an inguinal hernia on the left, but it is not into the scrotum. The inmate has had the hernia for at least the past year. Dr. Bosserman placed the inmate on limited restrictions of no lifting greater than 25 lbs. and no standing or walking for greater than one hour due to (1) a deformity of his left foot, (2) an ankle brace, and (3) a hernia for which he prescribed a truss. In a yearly Health Evaluation dated February 2, 2006, he made no oral complaints about any pain associated with the inguinal hernia.

Mr. Breach was to be seen on December 21, 2006 for evaluation of his left inguinal hernia but left before his exam could be performed. It should also be noted that Mr. Breach signed up for Sick Call on October 9, 2006 and October 12, 2006, but signed a Release of Responsibility Waiver and left before his exam on both dates. Mr. Breach was examined on December 27, 2006 for evaluation of his left inguinal hernia. He voiced no other complaints at that time. It was noted on that date that he was not wearing his truss. The hernia was noted as being easily reducible, non-strangulated, and is not incarcerated. Inmate was prescribed a left inguinal truss for 180 days and Percogesic for pain. He was placed on restrictions of no straining, no lifting more than 20 lbs. and placed in bottom bunk for 180 days. It was noted at that time that there was no need for surgical referral at present. In my opinion, the inmate's

2

hernia does not require surgical intervention and I believe surgery is not medically necessary. The type hernia which Mr. Breach has should not cause the patient any pain nor is it a condition that a reasonable person cannot live with under the conditions and restrictions governing Mr. Breach.

Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complaints were evaluated and treated in a timely and appropriate fashion at Kilby Correctional Facility, and that his diagnosed conditions have been treated in a timely and appropriate fashion.

At no time did I or any of the medical or nursing staff at Kilby Correctional Facility deny Mr. Breach any needed medical treatment, nor did we ever act with deliberate indifference to any serious medical need of Mr. Breach. In other words, it is my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. Mr. Breach was seen and evaluated by the medical or nursing staff, and was referred to an appropriate care provider or given appropriate care, each time he registered any health complaints at Kilby Correctional Facility. At all times, Mr. Breach's known medical complaints and conditions were addressed as promptly as possible under the circumstances.

Further affiant sayeth not.

_____
MICHAEL E. ROBBINS, M.D.

3

STATE OF ALABAMA    )
                    )
COUNTY OF _____)

Sworn to and subscribed before me on this the 14th day of February, 2007.

_____
Notary Public
My Commission Expires:

6/15/08

4