**Excerpt Discovery Request [Court Doc. 297]**

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

HACKETT, CL.
TRICT COURT
DISTRICT ALA

MARCELLUS BREACH, #160710     *

     Plaintiff,     *

                               *     CASE NO: 2:06-cv-1133-MEF

Vs.     *

PRISON HEALTH SERVICES, INC., et. al.,     *

     Defendants.

### *MOTION TO COMPEL [COURT DOC. NO. 297] / RESPONSIVE ANSWERS TO DISCOVERY REQUEST FOR PRODUCTION OF DOCUMENTS, INTERROGATORIES, PURSUANT TO RULE 37(a)(2)), 37(b)(2))*

[1]***COMES NOW***, the plaintiff *Marcellus Breach* (hereinafter "Breach") in proper person "Pro Se," moves this Court to compel defendant Prison Health Services, Inc., to answer and produce requested discovery request filed on or about *December 5, 2007* entitled: *"Plaintiff's Eleventh & The Supplemental -- Set of Interrogatories and Request for Admissions, For Production of Documents to Defendant Under Fed.R.Civ.P.,"* [**Court Doc. No. 297, attached Excerpt** ]. Plaintiff states in further support of his motion to compel and request for sanctions the following grounds and facts in support of his motion:

1.     Under *Rule 37(a)(2):*

---

[1] Attached Exhibit "A "January 29th 2008 letter and Notice of Filing discovery dispute with counsel for PHS regarding discovery requests. Exhibit "B", Second letter to counsel regarding discovery disputes.

## Excerpt Discovery Request [Court Doc. 297]

(a)   To compel defendants to answer plaintiff's interrogatories in their entirety within a proscribed time ordered by the Court;

2.   Under *Rule 37(b)(2):*

(a)   To preclude defendant from asserting any objections to plaintiff's interrogatories;

(b)   To treat as contempt of court of defendant Prison Health Services, failure to answer plaintiff's interrogatories by set date by the Court.

(c)   To decide all contested issues of fact embraced by plaintiff's interrogatories in favor of plaintiff;

(d)   To strike all of defendant's defenses and to preclude defendant from introducing any evidence in support thereof;

(e)   To enter a judgment by default on the issues of liability in favor of plaintiff and against defendant under Court I, II, III, IV, V, and VI of plaintiff's complaint; and

3.   Under *Rule 37(d):*

(a)   In regards to withheld **Louisiana medical records** of the plaintiff: order that the matters contained in the withheld documents be taken to be established; refuse to allow the nonresponsive party to support or oppose claims or defenses related to the withheld documents;

4.   Under *Rule 36(a):*

(a)   That plaintiff request for Admissions propounded on defendant and properly served conjunctively with Discovery request [**Excerpt**] be deemed admitted.

**Excerpt Discovery Request [Court Doc. 297]**

### STATEMENT OF THE FACTS

Prison Health Services, Inc., the defendant has not responded to plaintiff's Interrogatories; therefore, they have waived his opportunity to object. See, *Rule 33(b)(1) & Rule 33(b)(4), Federal Rules of Civil Procedures*.

Plaintiff request that his Interrogatories and request for Production of Documents propounded on him on or about *December 5, 2007* specifically, **Interrogatories and Request for Production of Documents #'s 1 through 25, pg's 2 through 6 be answered.**

The Record is silent regarding information leading to Prison Health Services, Inc., responsibility regarding their supervision over their physician and whether they agreed with ADOC's Protocol regarding medical conditions that are labeled as "elective procedures" elective hernia treatment" which is, and has created a de facto policy, procedures, custom and practices of PHS and ADOC statewide of not repairing hernias until, as stated by Dr. William Hobbs **"that the hernia "must" be incarcerated or strangulated or into the scrotum before surgically necessary;"** and it is medically known an incarcerated hernia is an emergency situation which will and can create a life or death situation.

Prison Health Services, Inc., acts as a supervisor, and he is in the position to make changes. Plaintiff ought to be allowed to serve questions upon him that can lead to other matters and question him concerning his knowledge regarding this case. Any and all documents, information, knowledge and facts that Prison Health Services, may have or,

3

**Excerpt Discovery Request [Court Doc. 297]**

in **possession or control over, is discoverable and relevant to the subject matter.**
**Plaintiff inquires into PHS's information and knowledge regarding to any de facto**
**policy, procedures, protocols that are followed that has the force of law leading to**
**plaintiff's injury is discoverable**. Morethanless, discovery into as what the defendants
allege that hernias are on a case-by-case basis, depending on the size or the hernia, is
incongruous with the standard of care and plaintiff seeks what PHS knows about any
Agreements entered with ADOC's procedures regarding treatment for hernias, labeled as
"elective treatment". .

On _December 3, 2007_ the plaintiff filed a document entitled: "**Plaintiff's Eleventh &**
**The Supplemental -- Set of Interrogatories and Request for Admissions, for**
**Production of Documents to Defendants**". [**Court Doc. No. 297** ] The Discovery request
is directed to defendant PHS.

[2]On _January 29th  2008_ plaintiff wrote counsel for the defendant pointing out that
PHS's  responses are late and that plaintiff was requesting that he respond immediately.

[3]On _January 29th  2008_ plaintiff attached the letter with a pleading entitled: "**Notice**
**of Filing**" to the court. [**Court Doc. N/A**] explaining to counsel that PHS has not
answered the interrogatories, production of documents or the admissions request.
Plaintiff explained to counsel that there are too many missing documents, specifically the

---

[2] **Plaintiff's letter to counsel for PHS that 15-days he requested that counsel correspond with him or,**
**have PHS answer the discovery request.    Counsel did not request for additional of time, or**
**corresponded with plaintiff.  Plaintiff states this is not counsel's first rodeo, Judicial Notice will reflect**
**the pattern of counsel not complying with court orders, sanctions still pending, etc.**
[3] **Defendants have yet produced plaintiff's Louisiana medical records.**

4

**Excerpt Discovery Request [Court Doc. 297]**

Louisiana medical records, "**Nurses notes**" Grievance No. 06-215 "**Front and Back**" and

"**Fax Reports**". PHS has not provided nor produced plaintiff's medical records from

Louisiana and discovery as to any information, facts he has knowledge thereof is

discoverable. Defendant's counsel has not responded to the plaintiff's efforts to resolve

the dispute. [**See, plaintiff's affidavit at ¶¶ 2-6., Exhibit "A""B".**]

### THE CRITERIA/PROTOCOL REGARDING HERNIAS POLICY MAKER

[4]This Court is going to have to decide who is policymaker because an admission

by a third party opponent has stated that there is a protocol. However, the Court will

determine who that policymaker is. This policy, protocol is challenged. See, *Mandel v.*

*Doe*, 888 F.2d 783, 791-92 (11th Cir. 1989). In fact, Prison Health Services, liability under

1983 may be established in one of four ways: (1) the constitutional deprivation was

caused by a policy or custom of the local governmental entity, *or* (2), the final

policymakers of the local governmental entity acted with deliberate indifference to a

constitutional deprivation, *or* (3) the final policymakers of the local governmental entity

delegated their authority to a subordinate who, in turn, caused a constitutional

deprivation, *or* (4) the final policymakers of the local governmental entity ratified a

constitutionally impermissible decision or recommendation of a subordinate employee.

---

[4] Discovery is sought to PHS because information and belief is that the protocol is unwritten regarding hernia treatment. Plaintiff must establish this policy as a part of his claims against defendants.

## Excerpt Discovery Request [Court Doc. 297]

*Sherrod v. Palm Beach County School District,* 424 F. Supp. 2d 1341, 1344 (S.D.Fla. 2006) (emphasis added).

Also, plaintiff can establish the requisite "official policy" in one of two ways: (1) identifying an officially promulgated policy, or (2) identifying an unofficial custom or practice shown through the repeated acts of the final policymaker of the entity. *Grech v. Clayton County,* 335 F.3d 1326, 1329-30 (11th Cir. 2003). Plaintiff must identify the policy or custom, which caused his injury so that liability will not be based upon an isolated incident, *McDowell v. Brown,* 392 F.3d 1283, 1290 (11th Cir. 2004) (citations omitted), and the policy or custom must be the moving force of the constitutional violation. *Grech,* 335 F.3d at 1330. *See also* **Board of County Comm'rs v. Brown,** 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ; *Gold v. City of Miami,* 151 F. 3d 1346, 1350 (11th Cir. 1998) "[M]unicipal liability under 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) ; *see also* **Church v. City of Huntsville**, 30 F.3d 1332, 1342 (11th Cir. 1994) ("Only those municipal officers who have final policymaking authority may by their actions subject the government to 1983 liability.") "State and local positive law determine whether a particular official has final policymaker authority for 1983 purposes." *Cooper,* 403 F.3d at 1221.  The discussion of these principles in *Church v. City*

*of Huntsville* is helpful. In <u>*Church,*</u> the Eleventh Circuit explained: "[M]unicipal liability may be based upon (1) an action taken or policy made by an official responsible for making final policy in that area of the city's business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." ***Church,*** 30 F.3d at 1343.

⁵ <u>As far back as 1997 there has been a certain **criteria** regarding Hernia treatment must be met involving medical providers and ADOC. In</u> ***Henry v. Wallace,*** <u>1997 U.S. Dist. LEXIS 6448 (S.D. Ala. 1997);</u> the prisoner prior <u>to his incarceration in the Alabama Department of Corrections developed a</u> hernia. After arriving at the ⁶*Fountain Correctional Facility,* the prisoner complained of the hernia and associated pain to a staff nurse and Dr. Wilson. The prisoner asserted that he was not administered any medication for pain and never given prompt access to medical treatment for this condition. However, in that case of a hernia <u>Defendant Nurse Carla Wasdin responded, stating:</u> **"Dr. Wilson examined you on 10/29/93. His assessment is that your hernia** at this time **does not meet the criteria for surgical repair**." Id.   Nurse Wasdin's statement into the Court's record in *Wallace* is similar to the evidence stated by Dr. William Hobbs in his Affidavit to the

---

⁵  Plaintiff, Willie J. Henry, an Alabama state inmate, initiated this action *pro se* pursuant to <u>42 U.S.C. 1983</u>. Plaintiff names as Defendants the following individuals: Dr. Harold Wilson, M.D.; Nurse Carla Wasdin, R.N.; Tommy Herring, Commissioner of the Alabama Department of Corrections; Arnold Holt, Warden at Fountain Correctional Facility; Deputy Warden J. W. Ross; Lt. David Thomas; Correctional Officer James Shipp; Sgt. Wayne Gray; and Melissa Wallace, Grievance Officer for the Department of Corrections.

⁶  Fountain Correctional Facility, is a male prison operated by the Alabama Department of Corrections in Alabama.

## Excerpt Discovery Request [Court Doc. 297]

Court, that plaintiff <u>does not meet</u> the Protocol and if, he met the Protocol he would have surgery. The sole challenge is the custom, practice, policy that has the force of law that has left plaintiff and others suffering in pain when the treatment is available but is refused until the life or death situation being the strangulated hernia where the defendants hide behind the mere words "elective procedure".

Regardless as to how much defendants attempt to deny that they do not have a Protocol, it is not believable because Dr. William Hobbs has stated differently, and the questions is does PHS know, and have they agreed to this protocol stated by Dr. William Hobbs? Discovery is requested.

### ARGUMENT AS TO "PHS" SUPERVISORY LIABILITY

If plaintiff can demonstrate at summary judgment that the medical treatment proscribed to him demonstrates deliberate indifference for a jury to decide; because PHS are supervisors, they too can be liable for not having a policy to prevent the suffering, the waiting until the life of death situation, strangulated hernia that is being practiced by their physicians when surgery is available.  The law is that "liability may be imposed . . . from the absence of a policy," *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991), when a constitutional injury occurs and when the failure to adopt a policy rises to the level of deliberate indifference to the need for such policy. *See* *City of Canton v. Harris*, 489 U.S. 378, 388-89, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) (municipal liability) n10; *Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998) (observing that, "if the

**Excerpt Discovery Request [Court Doc. 297]**

supervisor personally devised a deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act").

In this case, PHS is not entitled to raise qualified immunity from suit. Therefore, discovery is necessary to establish just how does PHS supervises it physicians? Why doesn't ADOC or PHS have any policies, protocols regarding hernias before it is strangulated or incarcerated? Why hasn't plaintiff been seen by a qualified doctor, surgeon for a proper medical determination as to when surgery needs to be performed before as Dr. Hobbs stated incarcerated or into the scrotum?

Additionally, the court ought to agree that PHS should be treated as a municipality for the purposes of the plaintiffs' 1983 claims. Eleventh Circuit precedent clearly states that when a private corporation contracts with a state to perform a function traditionally within the province of the state government, including the provision of medical services to state inmates, then that corporation should be treated as a government entity and as a person acting under color of state law within the meaning of 1983. *See **Buckner v. Toro**,* 116 F.3d 450, 452 (11th Cir. 1997); ***Howell,*** 922 F.2d at 724. As such, the private entity <u>is not entitled to qualified immunity,</u> but certain special requirements for liability do apply. *See* **Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit**, 507 U.S. 163, 166, 113 S. Ct. 1160, 1162, 122 L. Ed. 2d 517 (1993) (holding that municipalities do not enjoy qualified immunity, but that they "cannot be held liable unless a municipal policy or custom caused the constitutional

**Excerpt Discovery Request [Court Doc. 297]**

injury"); *McDuffie v. Hopper*, 982 F. Supp. 817, 825 (M.D. Ala. 1997) (Albritton, J.) ("Those

who contract to engage in government services without supervision, and for profit in a

competitive marketplace, subject themselves to liability under 1983 without the

protections of immunity.") In order to prove that PHS should be liable, the plaintiffs

would have to demonstrate that PHS itself <u>directly caused the violation</u> of their

constitutional rights through their adoption of some official policy or practice. *See*

**Monell v. Department of Social Services**, 436 U.S. 658, 695, 98 S. Ct. 2018, 2037-38, 56 L.

Ed. 2d 611 (1978); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1502-03 (11th Cir. 1985).

### POINT 1.

### DEFENDANT PRISON HEALTH SERVICES, INC., HAS WAIVED HIS OBJECTIONS BY HIS FAILURE TO RESPOND TIMELY TO THE REQUEST

Plaintiff argues that there is no favoritism regarding the rules of Discovery.

Plaintiff also contends that the rules provide that responses and objections to requests for

production of documents, interrogatories and admissions are to be served within 30 days

of the request unless the court grants a shorter or longer time. <u>*Rules 33, 34, 36*</u>, *Federal*

*Rules of Civil Procedures.* Morethanless, the Court issued its **Discovery Scheduling Order**

[**October 18, 2007 Court Doc. 178-1, Order**]. In its Order the court directed that each

party to file its response to request for discovery within thirty (30) days of receipt of the

discovery request. Defendant PHS <u>has waived his right to object</u> by failing to provide a

written response, including objections to the Request for Production of Documents,

Interrogatories, and Request for Admissions.

## Excerpt Discovery Request [Court Doc. 297]

Generally, in the absence of an extension of time or good cause, the failure to file a written response in the time fixed by the rule constitutes a waiver of any objection. *Davis v. Fendler*, 650 F. 2d 1154, 1160 (9th Cir. 1981); *Krewson v. City of Quincy*, 120 F. R. D. 6 (D. Mass. 1988). *See also In Re United States*, 864 F. 2d 1153, 1156 (5th Cir. 1989) (as a general rule, when a party fails to object timely to interrogatories, production requests or other discovery efforts, objections are waived). *See, e.g., Marx v. Kelly, Hart & Hallman, P.C.,* 929 F. 2d 8, 12 (1st Cir. 1991); see also, **Coker v. Duke & Co.**, 177 F. R .D. 682; 1998 U.S. Dist. LEXIS 3780, 41 Fed. R. Serv. 3d. (Callaghan) 353, (M. D. Ala. 1998); *Godsey v. United States,* 133 F. R .D. 111, 113 (S. D. Miss. 1990); accord, *Demary v. Yamaha Motor Corp.,* 125 F. R. D. 20, 22 (D. Mass. 1989) and cases cited; *Krewson v. City of Quincy*, 120 F. R. D. 6, 7 (D. Mass. 1988); *Cephas v. Busch*, 47 F. R. D. 425 (W. D. 1963). This waiver is enforced even if the objections are based on a claim of privileged. *Marx v. Kelly, Hart & Halman, P.C.,* 929 F.2d. 8, 12 (1st Cir. 1991*); Fretz v. Keltner*, 109 F. R. D. 303, 309 (D. Kan. 1986) and cases cited; *Cardox Corp. v. Olin Matthiesen Chemical Corp.*, 23 F. R. D. 27, 31 (S.D. ILL. 1958).

### POINT II

### THE RELEVANCY STANDARD

Fed. R. Civ. P. *26(b)(2)(iii)* the discovery of defendant's responsibility, knowledge and information regarding any <u>agreement</u> not to repair a hernia until the life or death situation regardless of pain and suffering is relevant when she is in the position to

## Excerpt Discovery Request [Court Doc. 297]

alleviate the danger of further health deterioration.  Under the *Federal Rules of Civil Procedure*, parties may discover information, which is relevant and non-privileged. *Rule 26(b)(1), Federal Rules of Civil Procedure*. Under the federal rules, relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978). Courts are required to accord discovery a broad and liberal scope in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement. *Id.; Hickman* v. *Taylor*, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947). Where there is a doubt over relevancy, the court should still permit discovery. *Deitchman v. E. R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984).  Discovery request should be allowed, "unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." *La Chemise Lacoste v. Alligator CO., Inc.*, 60 F. R. D. 164, 171 (D. Del. 1973); see *Nash v. Thielke*, 743 F. Supp. 130 (E. D. Wis. 1990)(the plaintiff was entitled to an officer's urine test results, since the officer's sobriety during the incident was an issue in the case).

The law is established and that the Eighth Amendment duty applies to medical conditions that may result in pain and suffering which serve no legitimate penological purpose. *Estelle*, 429 U.S. @ 103, 97 S.Ct. @ 290. See also, *McGuckin*, 974 F. 2d @ 1059. ([D]elay in performing surgery resulted in needless infliction of pain); *Wood v.*

## Excerpt Discovery Request [Court Doc. 297]

*Housewright,* 900 F. 2d 1332 (9th Cir. 1990)(with two judges holding prisoner had stated an Eighth Amendment claim for pain inflicted by delay in treating injury, but dismissing the claim on other grounds); *Hunt,* 865 F. 2d 198 (delay in providing prisoner with replacement dentures; *Jones,* 781 F. 2d @ 771-72 (hernia which results in pain, suffering, and the inability to perform a prison job is a serious medical need which prison doctors may not ignore); *Fields v. Gander*, 734 F. 2d 1313 (8th Cir. 1984)(inmate suffering severe pain from infected tooth).

The material sought regarding PHS is both: (1) material sought is clearly relevant; and, (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable; (iii) has not been disclosed by the medical defendants. Because the defendant <u>has not</u> responded, the **burden is on him to demonstrate why discovery is not practicable.** *Grubbs v. Bradley*, 552 F. Supp. 1052, 1129 (M. D. Tenn. 1982)(court finds that provision of medical care by persons beyond the level of their training and experience constitutes deliberate indifference); *Mandel v. Doe*, 888 F. 2d 783, 789-90 (11th Cir. 1989); *Hoptowit v Ray*, 682 F. 2d 1237, 1252-53 (9th Cir. 1982)(certain staff performing functions that they are neither trained or licensed to perform). Hernias are painful; plaintiff has been left without treatment, <u>because the only treatment is surgery</u> . The party resisting production bears the responsibility of establishing undue burden. **The Record is silent concerning defendant Prison Health Services, in his individual capacity.**

**Excerpt Discovery Request [Court Doc. 297]**

### POINT III

### CUMULATIVE OR DUPLICATIVE IN NATURE TO THE DISCOVERY MATERIALS PREVIOUSLY PROVIDED TO THE PLAINTIFF

Several medical documents are concealed from plaintiff and this court. With that, there are absolutely very limited reasons as to how plaintiff's discovery request could possibly lead to being cumulative or duplicative.

The particular request for production of documents is relevant and takes the case "beyond the pleadings" and the documents are not cumulative, duplicative in nature because they are not in the record nor have been produced. Plaintiff submits an example from an _excerpt_ of his **Interrogatories and request for Production of Documents** upon Prison Health Services, and proffers that the Interrogatories are relevant: [**See, Attached Discovery Request Page # 2 through 7: Interrogatories on PHS, Court Doc. 297**]

### *I.    INTERROGATORIES:*

¶ 1. "*Specifically identify by document*" any standard of care regarding the treatment for hernias that PHS and Dr. William Hobbs, Dr. Michael Robbins, and Bradford Adams follows regarding hernias.

¶ 2. "*Specifically identify by document*" any and all standards, practices and procedures, rules, regulations, policies, protocols, established, promulgated by any Q.A. program regarding medical treatment, coverage, for hernias for State prisoners at ADOC established in accordance with regulations of the State Health Officer regarding treatment for hernias that PHS follows.

¶ 3. "*Identify by document*" how PHS monitors the treatment proscribed by Dr. William Hobbs and Dr. Michael Robbins, M.D., regarding hernias.

¶ 4. "*Identify by document*" what PHS physicians follows regarding hernias treatment for Alabama inmates.

14

## Excerpt Discovery Request [Court Doc. 297]

¶ 5.  "*Identify by document*" how PHS's organization and administration of the medical care system establishes or fails to establish treatment protocols regarding hernias for Alabama inmates including identify by document and identify the names of all person and the regional location, job assignments to review, monitor the qualifications and practices of nurse practitioners and physicians.

¶ 6.  "*Specifically identify by document*, " how Prison Health Services, Inc., doing business in the State of Alabama "has no written protocols, polices or procedures regarding the treatment of hernias."

¶ 7.  Disclose any verbal substance agreement between ADOC, PHS and any employee regarding the treatment of hernias. *Identify* any and all persons, the incident as to how and when PHS adopted any procedure regarding the treatment that was implemented and practiced through your contracted doctors.

¶ 8.  "*Identify by document*" and disclose any verbal established methods of practice that Dr. Hobbs follows regarding hernia treatment.

¶ 9.  "*Identify by document* any and all names of any person, or personnel who has sufficient authority and freedom to identify quality problems and initiate, re-solvement or provide solutions to the PHS regarding medical treatment to hernias and/or any Q.A. program since *February 2005* through date of your response.  If any changes, explain, and *identify* by document.

¶ 10.  "*Specifically identify by document*, " any and all Q.A. program documents regarding hernias and the treatment at PHS or its Agents applied to ADOC inmates from February 2005 through October 31, 2007.

¶ 11.  "*Identify by document*" and please explain how ADOC's Quality Assurance Program applies to PHS and its employees rendering health services to Alabama inmates specifically hernia treatment.

¶ 12.  "*Specifically identify by document*" PHS's Quality Assurance Program.

¶ 13.  "*Identify by document*" the position and involvement that Prison Health Services, and/or any Quality Assurance Programs involvement with hernia treatment to plaintiff.

¶ 14.  "*Specifically identify by document*", PHS's health maintenance organization that is obligated to effectively provide, or arrange for, the provision of health care services, as established in accordance with rules promulgated by the State Health Officer for an on-going

## Excerpt Discovery Request [Court Doc. 297]

quality assurance/utilization review program concerning health care processes and outcomes relevant to your business in the State of Alabama.

¶ 15. *"Identify by document"* the PHS's health maintenance organization effectively provided, or arrange for, the provision of health care services in accordance with rules promulgated by the State Health Officer for an on-going quality assurance/utilization review program concerning health care processes and outcomes to Alabama inmates and the plaintiff while incarcerated at South Louisiana Correctional Services, from March 16, 2006 through October 6, 2006.

¶ 16. "*Specifically identify by document*" and disclose in details the responsibility of Prison Health Services, regarding the obligation to render medical services to Alabama inmates suffering from hernias.

¶ 17. "*Specifically identify by document*" the mission of PHS and/or any Q.A. program and the duty and responsibility of the quality assurance supervisor regarding treatment for hernias suffered by Alabama inmates.

¶ 18. "*Specifically identify by document*" PHS delegated responsibility of providing medical services: any surgeries, outside patient care, to Alabama inmates.

¶ 19. "*Specifically identify by document*" names of any and all person(s) and/or "Agent" of or for the Q.A. program who's responsibility includes establishing how hernia treatment will be conducted, or established between PHS and ADOC upon contractual agreement.

¶ 20. "*Identify by document*" how hernia repair for Alabama inmates was covered and paid during your service at ADOC.

¶ 21. "*Specifically identify by document*" how either PHS or any Q.A. programs operate regarding any approval or denial of any request for surgical repair for a hernia that is not incarcerated, strangulated or into the scrotum?

¶ 22. "*Identify by document"* names of persons within PHS who have any responsibility for monitoring the components and the quality of the provision of healthcare to those individual who are in the care, custody and control of the State of Alabama Department of Corrections (ADOC) included but not limited to these responsibilities in monitoring contracted health services and the administration of ADOC's Q. A. program for all health service treatment including but not limited while plaintiff was incarcerated at South Louisiana

## Excerpt Discovery Request [Court Doc. 297]

Correctional Services, Inc., regarding surgery request during *March 16, 2006* through *October 6, 2006.*

¶ 23. "*Specifically identify by document*" the Chief Medical Directors for Prison Health Services, Inc., from *February 2005* through *October 31, 2007*, and list his/her responsibilities and regions in Alabama, or over Alabama prisons.

¶ 24. "*Specifically identify by document*" any and all orders regarding plaintiff that were administered as ordered, as stated in your Affidavit: "[A]nd that all orders prescribed by these providers were administered as ordered."

¶ 25. "*Specifically identify by document*," both Prison Health Services, Inc., ("PHS"), agreement that PHS agreed to comply with ADOC's and/or Q.A. program, its standards, practices and procedures policy, or protocols regarding the treatment to Alabama inmates suffering from hernias from February 2005 through October 31, 2007.

### POINT IV
### NOT REASONABLE CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE

Information requested ought to aid this Court and a jury for a determination that prison officials <u>may not</u> avoid their duty to provide medical treatment by the simple expediency of labeling such treatment as "<u>elective</u>". The classification of surgery as elective does not abrogate the prison's duty, or power, to promptly provide necessary medical treatment for prisoners. See, *Jones,* 781 F. 2d @ 770-71 (classification of hernia as "elective surgery" did not insulate county from Eighth Amendment duty to provide proper medical care); *Johnson v. Bowers,* 884 F. 2d 1053, 1056(prisoner waiting six years for elective arm surgery was entitled to relief)(citing *Monmouth County Corr. Inst. Inmates v. Lanzaro,* 834 F. 2d 326, 348 n. 32 (3d Cir. 1987) cert. Denied, 486 U.S. 1006, 1-8 S.Ct. 1731, 100 L.Ed. 2d 195 (1988)); *West v. Keve,* 541 F. Supp. 534 (D. Del. 1982)(prison

**Excerpt Discovery Request [Court Doc. 297]**

officials violated Eighth Amendment by not furnishing elective surgery for dysfunctional veins that were causing varying degrees of pain); *Laaman v. Helgemoe*, 437 F. Supp. 269, 311 (D. N. H. 1977)(elective treatment recommended by a physician but not "necessary" in a life or health saving sense, may still be constitutionally mandated if the prisoner elects to proceed with the treatment).

In this case, <u>it is noted that plaintiff's surgery is elective</u>. But it is still leaving him in pain and discomfort while his health deteriorates. Where surgery is elective, prison officials may properly consider the costs and benefits of treatment in determining whether to authorize the surgery, but the words "elective surgery" is not a talisman insulating prison officials from the reach of the Eighth Amendment. Each case must be evaluated on its own merits. See, *Delker v. Maass*, 843 F. Supp. @ 1400 (D. Or. 1994)(although state inmate may not have suffered long-term physical harm from nearly two-year delay in providing operation for <u>non-incarcerated inguinal hernia</u>, inmate was "injured" by delay for purposes of his § 1983 civil rights action, since he suffered some pain, anxiety, and restricted activity during delay.)

Judicial notice regarding "elective" treatment was/is prohibited between the medical providers "CMS" and the ADOC. In *<u>Edwards v. Bradford</u>, <u>1997 U.S. Dist. LEXIS 15089 (S.D.Ala. 1997) Dr. George Lyrene submitted an Affidavit and Correctional Medical Services are now the current medical providers:  However, according to the</u>*

## Excerpt Discovery Request [Court Doc. 297]

**contract entered** between CMS and ADOC, elective procedures are/were prohibited, just

as plaintiff's elective hernia. The Court stated:

> [7]Dr. George Lyrene, who is not a party in this action, has worked in various capacities as a physician for Questcare and CMS, both of which provided health care to the inmates incarcerated with the Alabama Department of Corrections; **he is currently Medical Director for CMS** (Doc. 14, Lyrene Certificate). Lyrene stated that the **policies for Questcare and CMS were "that cataract surgery would be elective IF the cataract was on one eye only AND IF the vision was unimpaired in the other eye" though this policy was not in writing** (emphasis in original). [ . . . ]
>
> **Under the terms of the contract that existed between Questcare and the Department of Corrections, the health care provider did not have to provide elective health care, defined as "medical care which, if not provided, will not cause the Inmate's health to deteriorate or cause definite harm to the Inmate's well being"** (*see* **Doc. 14, Health Services Agreement (attached to Lyrene Certificate), PP 1.3, 2.4). Id.**

First, plaintiff does not seek "personnel records" in any general way.  He seeks

documents pertaining to the treatment, method, practice, procedures rendered by the

medical providers being supervised by PHS. Plaintiff does not seek other matters that

may be in his personnel records, such as medical data or information about his records of

lateness, leaves and vacations, etc.

*Secondly,* the kind of information sought is highly relevant.  The plaintiff has

information that repeated complaints about mistreatment regarding hernias have been

made about the medical defendants and that nothing has been done about them and their

practice.  Evidence to that effect would be highly relevant to the claim of supervisory

---

[7]  **This Hernia Protocol will not be in writing just as the CMS and Questcare contractual agreement regarding "elective" was stated in the contract.**

## Excerpt Discovery Request [Court Doc. 297]

liability against defendants set out in **Counts II, III, IV, VI**, of plaintiff's *Supplemental*

*Complaint pages 25-26. [Court Doc No. 93]*    Whether quasi-policymakers have been

deliberate indifferent in their supervision of subordinates the court must explore the

supervisors' conduct in this case: -- as in *Karr*, 875 F.2d @ 1556 (jury could find that

failure to take corrective action after plainly unconstitutional use of police dogs

constituted deliberate indifference).    In this case, several supervisors claim that they

consulted with each other, and other physicians who are defendants in this case.

Discovery in this area is relevant because it is regarding the treatment proscribed by the

defendants See also, *Ancata v. Prison Health Services, Inc.,* 769 F. 2d 700, 795 (11th Cir.

1985).    The same standard of deliberate indifference applies to both inadequate training

and inadequate supervisions. *CF. Davis v. City of Ellensburg*, 869 F. 2d 1230, 1235 (9th

Cir. 1989)(applying City of Canton to question municipal liability).    Liability applies if it

is established that PHS either has a continued practice that of allowing this nurse

practitioner to make surgically recommendations while knowing that he is not qualified,

and whether PHS actually agreed with any de facto policy regarding "elective treatment"

of a hernia that is not required to be repaired until the hernia is incarcerated,

strangulated or into the scrotum.    PHS can be held liable if established that the conduct

rises to deliberate indifference; no treatment at all; if, PHS agreed to any agreement and,

if they knew about the agreement and this agreement is the proximate cause to injury

and did not take any steps necessary to prevent the abuse.

**Excerpt Discovery Request [Court Doc. 297]**

<u>*Excerpt Discovery Request:*</u>

## I.     *REQUEST FOR PRODUCTION OF DOCUMENTS*

That defendant produces and permit plaintiff to inspect and to copy each of the

following documents:

*\* RULE 33, Fed. R. Civ. P., "Business Records"*

a.     To permit plaintiff to inspect, analyze, and copy or photograph, *"specific document,"* implemented any PHS's **Quality Assurance Program** for all health service treatment from **February 2005** through current date, **specifically the provision protocols and policies/procedures of the Q.A. program regarding hernia.**

b.     The names and *"identify by document,"* those individual(s) responsible for the implementation and maintenance of any PHS's **Quality Assurance Program pertaining to hernias** within the relevant time of this cause of action.

c.     To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion specifically **any and all orders prescribed by any provider that were administered as ordered** and <u>*ADOC's Quality Assurance Program.*</u>

g.     To disclose any and all relevant tangible *"documents"* regarding the PHS's *Quality Assurance Program* surrounding the medical treatment of hernias to Alabama inmates since **February 2005** till current date.

h.     Any and all orders prescribed by any medical providers regarding any medical treatment of the plaintiff, that were administered as ordered, please *"identify by document* from **February 2005** through current date of your answer.

f.     To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports,

identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

g.    To inspect and copy any and all *"documents"* regarding PHS's ADOC's Quality Assurance Program regarding hernia treatment.

h.    To disclose by *document* PHS's policies, procedures, of medical record keeping, and grievance record keeping.

I.    To produce any and all *documents* of PHS's procedures to supervise physicians regarding hernia treatment for Alabama inmates and any complaints, investigations conducted by PHS or their Agents regarding hernias complaints since February 2005 through October 31, 2007 to Alabama inmates.

J.    To produce any and all *documents* of any complaints, investigations conducted any and all reprimands by any person involved with PHS's investigation(s) on the medical practices of **Dr. William Hobbs, M.D., Dr. Michael Robbins, M.D., Bradford Adams**, regarding any person's complaints, family members, Agents, Agency, in this State of another, regarding said physicians treatment, evincing deliberate indifference, malpractice or negligence by any supervisor, agent of PHS since February 2005.

### POINT V
### BURDENSOME

Under well-settled law, the party resisting production bears the responsibility of establishing undue burden. *G-69 v. Degnan*, 130 F. . . 326, 331 (D.N.J. 1990). Generally, a party seeking to avoid discovery on a burdensomeness argument must substantiate that position with detailed affidavits or other evidence establishing an undue burden.

**Excerpt Discovery Request [Court Doc. 297]**

## RELIEF REQUESTED

a.   That the Court grant this motion to compel **Prison Health Services, Inc.,** to answer plaintiff's interrogatories, production of documents; and,

b.   That this Court administers and enforces justice as to what this Court deems fair and appropriate.

c.   Under Rule 37(d): In regards to withheld Louisiana medical records of the plaintiff: order that the matters contained in the withheld documents be taken to be established; refuse to allow the nonresponsive party to support or oppose claims or defenses related to the withheld documents;

Done this 1st Day March 2008.

Marcellus Breach 160710®
Limestone C.F
28779 Nick Davis Rd.
Harvest, Alabama 35749

COUNTY OF LIMESTONE          )

STATE OF ALABAMA             )

### *DECLARATION OF THE PLAINTIFF IN SUPPORT OF COMPEL AND SANCTIONS*

Affiant in the above instrument, who after being duly sworn, deposed and says on oath that the averments in the foregoing are true to the best of his ability, information, knowledge and belief:

I am **Marcellus Breach, AIS #160710**, I am over the age of twenty-one. I am the plaintiff in this action. I make this declaration in support of my Motion to Compel. On December 3, 2007, I served on the defendant's counsel a document:

23

## Excerpt Discovery Request [Court Doc. 297]

"**Plaintiff's Eleventh & The Supplemental -- Set of Interrogatories and Request for Admissions, for Production of Documents to Defendants" which is an Excerpt is attached to this motion.**

Defendant Prison Health Services did not respond to this discovery request after 30 days by order of the court and rules of discovery, nor did they request an adjournment from the court or seek my agreement to an adjournment.

On *January 29, 2008* I wrote to the defendant's counsel pointing out that their responses were late and requesting that they respond immediately. A copy of my letters is attached as Exhibit "A","B". I mailed this letter First Class U.S. Mail, postage prepaid and placing into the prison mailbox for proper mailing.

On *January 29, 2008* plaintiff attached his letter with a pleading entitled: "**Notice of Filing**" to the court. [*Court Doc. N/A*] explaining to counsel that Prison Health Services has not answered the interrogatories, production of documents or the admissions request. Plaintiff explained to counsel that there are too many missing documents and that Prison Health Services, has not provided any information or documents regarding his involvement and what information, facts he has knowledge thereof. Defendant's counsel has not responded to the plaintiff's efforts to resolve the dispute.

24

**Excerpt Discovery Request [Court Doc. 297]**

Defendants' counsel did not respond to my letters. I have written counsel numerous of times, and I have filed my notice of intent with the Court. Copies of my letters are attached. Defendant's objections are waived as a result of their failure to make them in a timely manner, as set forth in the brief accompanying this motion.

**WHEREFORE,** the plaintiff request that the court grant this motion in all respects under the penalty of perjury the foregoing is true and correct. 28 U.S.C. 1746

This 1st Day March 2008.

Marcellus Breach

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this 3rd Day of March 2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

**Alabama Dept. of Corrections**
**LEGAL DIVISION**
P.O. Box 301501
Montgomery, Alabama 36130

**Rushton, Stakely, Johnston, Garrett, P.A**
P.O. Box 270
Montgomery, Alabama 36101

**Starnes & Atchison, LLP**
**100 Brookwood Place, 7thg Floor**
P.O. Box 598512
Birmingham, Alabama 35259-8512

® Marcellus Breach

25



MARCELLUS BREACH 160710
LIMESTONE C.F.
28779 NICK DAVIS RE.
HARVEST, ALABAMA   35749

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
P.O. BOX 711
MONTGOMERY, ALABAMA   36101

Personal &

# EXHIBIT "A"

## IN THE DISTRICT COURT OF THE UNITED STATES
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| MARCELLUS BREACH, #160710 | * |
| | * |
| Plaintiff, | * |
| | *     CASE NO: 2:06-cv-1133-MEF |
| Vs. | * |
| | * |
| PRISON HEALTH SERVICES, INC., et al., | * |
| Defendants. | |

### *NOTICE OF FILING*

**COMES NOW**, the Plaintiff _Marcellus Breach_ (hereinafter "Breach") in proper person "Pro Se," hereby gives written notice pursuant *to Rules 37(a)(2)(A), 37(a)(2)(B), 37(d) Fed. R. Civ. P.,* hereby files the attached for the Record: Plaintiff states as follows:

1.    Plaintiff has attached his letter to Attorney Paul M. James, regarding discovery requests that have not been answered Defendant Prison Health Services, Inc.

**WHEREFORE**, plaintiff requests to place into the Record his attempts to resolve the discovery problems informally with counsel, without court intervention.

Done this 29th Day January 2008.

Marcellus Breach 160710 ®
Limestone C.F.
28779 Nick Davis. Rd.
Harvest, Alabama 35749

1

## *CERTIFICATE OF SERVICE*

**I HEREBY CERTIFY**, that I have this 29th Day of January  2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

**Alabama Dept. of Corrections**
**LEGAL DIVISION**
**P.O. Box 301501**
**Montgomery, Alabama 36101**


**Rushton, Stakely, Johnston, Garrett, P.A**
**P.O. Box 270**
**Montgomery, Alabama 36101**


**Starnes & Atchison, LLP**
**100 Brookwood Place, 7th Floor**
**P.O. Box 598512**
**Birmingham, Alabama 35259-8512**

Marcellus Breach

2

# *MARCELLUS BREACH, 160710*

LIMESTONE C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

*January 29th, 2008*

RUSHTON, STAKELY, JONSTONE & GARRETT, P.A.
ATTENTION: Attorney Paul M. James, Jr.
P.O. Box 270
Montgomery, Alabama 36101

> RE:   **2:06-cv-1133-MEF  Letter of Intent /**
> Discovery [Court Doc. No. 297] PHS

Mr. James:

I am requesting that you correspond with me regarding to discovery request propounded on defendant Prison Health Services, Inc. I have not received their response to this specific discovery request.

The areas of deficiency are: (i) PHS has not requested an extension of time, (ii) PHS has not responded to the discovery request; and (iii) you have not corresponded with me regarding his matter.

Within fifteen (15) days from receipt of this letter if I do not hear from you I will file a motion to compel.

I hope to hear from you soon regarding this issue.

Sincerely,

Marcellus Breach

**CC:**

CLERK OF COURT
United States District Court
P.O. Box 711
Montgomery, Alabama 36101

# *MARCELLUS BREACH, 160710*

LIMESTONE C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

*February 3, 2008*

RUSHTON, STAKELY, JONSTONE & GARRETT, P.A.
ATTENTION: Attorney Paul M. James, Jr.
P.O. Box 270
Montgomery, Alabama 36101

      RE:   **2:06-cv-1133-MEF  Letter of Intent /**
              Discovery [Court Doc. No. 297] PHS

Mr. James:

      I am requesting that you correspond with me regarding to discovery request propounded on defendant Prison Health Services, Inc. I have not received their response to this specific discovery request.

      The areas of deficiency are: (i) PHS has not requested an extension of time, (ii) PHS has not responded to the discovery request; and (iii) you have not corresponded with me regarding his matter.

      Within fifteen (15) days from receipt of this letter if I do not hear from you I will file a motion to compel.

      I hope to hear from you soon regarding this issue.

Sincerely,

Marcellus Breach

**CC:**

CLERK OF COURT
United States District Court
P.O. Box 711
Montgomery, Alabama 36101

Alabama Department of Corrections
Legal Division
P.O. Box 301501
Montgomery, Alabama 36130

Starnes & Atchison, LLP
100 Brookwood Place, 7th Floor
P.O. Box 598512
Birmingham, Alabama 35259-8512

# EXHIBIT "B"

SUPPLEMENTAL

**IN THE DISTRICT COURT OF THE UNITED STATES * 11TH**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

---

MARCELLUS BREACH, #160710

    Plaintiff,

Vs.

PRISON HEALTH SERVICES, INC., et. al.,

    Defendants.

\*
\*
\*    CASE NO: 2:06-cv-1133-MEF
\*
\*

**_PLAINTIFF'S ELEVENTH & THE SUPPLEMENTAL -- SET OF_**
**_INTERROGATORIES AND REQUEST FOR ADMISSIONS, FOR PRODUCTION_**
**_OF DOCUMENTS TO DEFENDANTS UNDER FED. R. CIV. P.,_**

_TO:_      **_DEFENDANT PRISON HEALTH SERVICES, INC._**

**_COMES NOW_**, the Plaintiff <u>Marcellus Breach</u> (hereinafter "Breach"), in proper person

"Pro Se," pursuant to _Federal Rules of Civil Procedures, Rule 33, 34 & 36_, hereby requesting

that named party and/or their "Agents" as being person(s) under their control: "Alabama

Department of Corrections, ("ADOC") are requested to answer separately, fully and in

writing, the following interrogatories under oath, affirmation in accordance within the

definitions and instructions set forth below, within thirty (30) days after service of these

**_Interrogatories, Request for Admissions_**, and **_Production of Documents_**, furthermore, for

the defendant to provide full disclosure along with their answers herein, copies thereof

supporting evidentiary materials, as follows:

1

## I. INSTRUCTIONS:

Interrogatories set forth surround counsel for PHS statement on November 21, 2007 in his "Notice Of Filing":

> **"In addition, Prison Health Services has no written protocol, policies or procedures regarding the treatment of hernias, however, each hernia is reviewed on an individual basis and hernias which are not incarcerated or in danger of becoming incarcerated or into the scrotum are not necessary for surgical repair and can be conservatively treated."**

## II.    DEFINITIONS AND INSTRUCTIONS:

Definitions and Instructions are continuing throughout this Discovery request. As applied to the first set of request for discovery submitted on or about _November 26, 2007_ pursuant to _Rule 33, 34, & 35,_ Federal Rules of Civil Procedures. However, due to counsel's assertions and no evidence has been provided to support his assertion concerning PHS the following request are submitting:

## I.    INTERROGATORIES:

¶ 1.    _"Specifically identify by document"_ any standard of care regarding the treatment for hernias that PHS and Dr. William Hobbs, Dr. Michael Robbins, and Bradford Adams follows regarding hernias.

¶ 2.    _"Specifically identify by document"_ any and all standards, practices and procedures, rules, regulations, policies, protocols, established, promulgated by any Q.A. program regarding medical treatment, coverage, for hernias for State prisoners at ADOC

2

established in accordance with regulations of the State Health Officer regarding treatment for hernias that PHS follows.

¶ 3.    *"Identify by document"* how PHS monitors the treatment proscribed by Dr. William Hobbs and Dr. Michael Robbins, M.D., regarding hernias.

¶ 4.    *"Identify by document"* what PHS physicians follows regarding hernias treatment for Alabama inmates.

¶ 5.    *"Identify by document"* how PHS's organization and administration of the medical care system establishes or fails to establish treatment protocols regarding hernias for Alabama inmates including identify by document and identify the names of all person and the regional location, job assignments to review, monitor the qualifications and practices of nurse practitioners and physicians.

¶ 6.    *"Specifically identify by document,"* how Prison Health Services, Inc., doing business in the State of Alabama "has no written protocols, polices or procedures regarding the treatment of hernias."

¶ 7.    Disclose any verbal substance agreement between ADOC, PHS and any employee regarding the treatment of hernias.  *Identify* any and all persons, the incident as to how and when PHS adopted any procedure regarding the treatment that was implemented and practiced through your contracted doctors.

¶ 8.    *"Identify by document"* and disclose any verbal established methods of practice that Dr. Hobbs follows regarding hernia treatment.

¶ 9.    *"Identify by document* any and all names of any person, or personnel who has sufficient authority and freedom to identify quality problems and initiate, re-solvement or provide solutions to the PHS regarding medical treatment to hernias and/or any Q.A. program since *February 2005* through date of your response.  If any changes, explain, and *identify* by document.

¶ 10.    *"Specifically identify by document, "* any and all Q.A. program documents regarding hernias and the treatment at PHS or its Agents applied to ADOC inmates from February 2005 through October 31, 2007.

¶ 11.    *"Identify by document"* and please explain how ADOC's Quality Assurance Program applies to PHS and its employees rendering health services to Alabama inmates specifically hernia treatment.

¶ 12.    *"Specifically identify by document"* PHS's Quality Assurance Program.

¶ 13.    *"Identify by document"* the position and involvement that Prison Health Services, and/or any Quality Assurance Programs involvement with hernia treatment to plaintiff.

¶ 14.    *"Specifically identify by document"*, PHS's health maintenance organization that is obligated to effectively provide, or arrange for, the provision of health care services, as established in accordance with rules promulgated by the State Health Officer for an on-

4

going quality assurance/utilization review program concerning health care processes and outcomes relevant to your business in the State of Alabama.

¶ 15. *"Identify by document"* the PHS's health maintenance organization effectively provided, or arrange for, the provision of health care services in accordance with rules promulgated by the State Health Officer for an on-going quality assurance/utilization review program concerning health care processes and outcomes to Alabama inmates and the plaintiff while incarcerated at South Louisiana Correctional Services, from March 16, 2006 through October 6, 2006.

¶ 16. *"Specifically identify by document"* and disclose in details the responsibility of Prison Health Services, regarding the obligation to render medical services to Alabama inmates suffering from hernias.

¶ 17. *"Specifically identify by document"* the mission of PHS and/or any Q.A. program and the duty and responsibility of the quality assurance supervisor regarding treatment for hernias suffered by Alabama inmates.

¶ 18. *"Specifically identify by document"* PHS delegated responsibility of providing medical services: any surgeries, outside patient care, to Alabama inmates.

¶ 19. *"Specifically identify by document"* names of any and all person(s) and/or "Agent" of or for the Q.A. program who's responsibility includes establishing how hernia treatment will be conducted, or established between PHS and ADOC upon contractual agreement.

5

¶ 20. *"Identify by document"* how hernia repair for Alabama inmates was covered and paid during your service at ADOC.

¶ 21. *"Specifically identify by document"* how either PHS or any Q.A. programs operate regarding any approval or denial of any request for surgical repair for a hernia that is not incarcerated, strangulated or into the scrotum?

¶ 22. *"Identify by document"* names of persons within PHS who have any responsibility for monitoring the components and the quality of the provision of healthcare to those individual who are in the care, custody and control of the State of Alabama Department of Corrections (ADOC) included but not limited to these responsibilities in monitoring contracted health services and the administration of ADOC's Q. A. program for all health service treatment including but not limited while plaintiff was incarcerated at South Louisiana Correctional Services, Inc., regarding surgery request during *March 16, 2006* through *October 6, 2006.*

¶ 23. *"Specifically identify by document"* the Chief Medical Directors for Prison Health Services, Inc., from *February 2005* through *October 31, 2007*, and list his/her responsibilities and regions in Alabama, or over Alabama prisons.

¶ 24. *"Specifically identify by document"* any and all orders regarding plaintiff that were administered as ordered, as stated in your Affidavit: "[A]nd that all orders prescribed by these providers were administered as ordered."

¶ 25. *"Specifically identify by document,"* both Prison Health Services, Inc., ("PHS"),

agreement that PHS agreed to comply with ADOC's and/or Q.A. program, its standards,

practices and procedures policy, or protocols regarding the treatment to Alabama

inmates suffering from hernias from February 2005 through October 31, 2007.

## I.    REQUEST FOR PRODUCTION OF DOCUMENTS

That defendant produces and permit plaintiff to inspect and to copy each of the

following documents:

### * RULE 33, Fed. R. Civ. P., "Business Records"

a.    To permit plaintiff to inspect, analyze, and copy or photograph,
      *"specific document,"* implemented any PHS's **Quality Assurance
      Program** for all health service treatment from **February 2005**
      through current date, **specifically the provision protocols and
      policies/procedures of the Q.A. program regarding hernia.**

b.    The names and *"identify by document,"* those individual(s)
      responsible for the implementation and maintenance of any PHS's
      **Quality Assurance Program pertaining to hernias** within the
      relevant time of this cause of action.

c.    To disclose any and all inculpatory materials, items, reports,
      evidence, statements, including statements of witnesses, reports,
      identities of witnesses, addresses of such, any other physical
      evidence, and any other evidence, whether described herein or not,
      which is inculpatory evidence of any type, form or fashion
      specifically **any and all orders prescribed by any provider that
      were administered as ordered** and *ADOC's Quality Assurance
      Program.*

g.    To disclose any and all relevant tangible *"documents"* regarding the
      PHS's *Quality Assurance Program* surrounding the medical

7

treatment of hernias to Alabama inmates since **February 2005** till current date.

h.    Any and all orders prescribed by any medical providers regarding any medical treatment of the plaintiff, that were administered as ordered, please *"identify by document* from **February 2005** through current date of your answer.

f.    To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

g.    To inspect and copy any and all *"documents"* regarding PHS's ADOC's Quality Assurance Program regarding hernia treatment.

h.    To disclose by *document* PHS's policies, procedures, of medical record keeping, and grievance record keeping.

i.    To produce any and all *documents* of PHS's procedures to supervise physicians regarding hernia treatment for Alabama inmates and any complaints, investigations conducted by PHS or their Agents regarding hernias complaints since February 2005 through October 31, 2007 to Alabama inmates.

j.    To produce any and all *documents* of any complaints, investigations conducted any and all reprimands by any person involved with PHS's investigation(s) on the medical practices of **Dr. William Hobbs, M.D., Dr. Michael Robbins, M.D., Bradford Adams**, regarding any person's complaints, family members, Agents, Agency, in this State of another, regarding said physicians treatment, evincing deliberate indifference, malpractice or negligence by any supervisor, agent of PHS since February 2005.

Done this 3rd Day December 2007.

®  _____

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

8

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this 3rd Day of December 2007 placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections
P.O. Box 301501
Montgomery, Al 36130

Rushton, Stakely, Johnston, Garrett, P.A.
P.O. Box 270
Montgomery, Alabama 36101

®_____

Marcellus Breach