## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## MIDDLE DIVISION

MARCELLUS BREACH, #160710,

     Plaintiff,

Vs.

                                   *     CASE NO: 2:06-CV-1133-MEF

PRISON HEALTH SERVICES, INC.,

     Defendants.

## PLAINTIFF'S WRITTEN OBJECTIONS TO DISCOVERY REQUEST PROPOUNDED UPON DR. GEORGE LYRENE, M.D., MEDICAL DIRECTOR FOR ADOC., [Exhibit "A" Court Doc. No. 238]

*COMES NOW*, the Plaintiff *Marcellus Breach* (hereinafter "Breach") in proper person "Pro Se," files his written objections/exceptions to the Magistrate Judge's Order entered on *March 5, 2008* [Court **Doc. No. 513**] regarding plaintiff's discovery request, i.e., *Interrogatories, Production of Documents, and Admissions* pursuant to Rule 33, 34 & 36, *Federal Rules of Civil Procedures*, [**Attached Exhibit "A", Court Doc. No. 238**] filed *November 19, 2007* timely arguing that Dr. George Lyrene, M.D., is not immune from discovery especially when he provided the magistrate judge with an opinion regarding surgery, when Dr. George Lyrene will be challenged as to whether or not he is qualified, Board Certified to proffer an opinion as to "when and when not to have plaintiff's

---

[1] Plaintiff filed his Discovery request propounded on Dr. George Lyrene, Court Doc. 238 on November 19, 2007, timely. Defendants argue plaintiff is too late. Magistrate Judge adopted ADOC's response is error.

Lyrene is not a Board Certified Surgeon.    Plaintiff files his written objections into the Record that Lyrene failed to show good cause as to why discovery request should not be answered.

A.    ***Statement into Lyrene's involvement in this Case***:

In this case, defendant Dr. William Hobbs has stated into the Record; the Alabama Department of Corrections has a Protocol that states that plaintiff must be in the life or death situation before he can have surgery, i.e., a incarcerated hernia.  Hobbs stated by two Affidavits:

> ". . . **In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections.  The protocol states that the hernia must be incarcerated or endanger of becoming incarcerated or into the scrotum . . .. [ ] . . . 'If Mr. Breach did in fact meet the protocol by the Alabama Department of Corrections, his hernia would be repaired." Id. [at 3 ¶3. Court Doc. 144-3, Filed on 9/21/07"[See, Court Order 504]**

*First*, Defendant Dr. Lyrene knows that this Protocol is an emergency situation and is a life and death situation.  This is the grave issue of this case; the policy, protocol is unconstitutional and leaving Breach in severe pain.  Lyrene has given an opinion in this case opposing the only treatment available that will alleviate Breach's pain, that is surgery.  Dr. Lyrene explained to the Court, never once examining plaintiff's hernia: [*Exhibit A to the February 6, 2007 Response of Correctional Personnel –Affidavit of Dr. George Lyrene @ 1-2, Court Doc. No. 20 & 36 Recommendation*]

> ...This hernia that was present by intake documentation and would be amendable to surgery, which was clearly elective at the time of his

admission and would clearly not be necessary now... This is a minor problem. . . for which surgery is not necessary at this time and which is being appropriately managed. Id.

*Secondly,* when Lyrene was added as a defendant in this case, he changes his story and states "I am generally aware of Marcellus Breach and can only say that not everyone who has a hernia requires surgery . . . ." [**ADOC Defendant's Special Report, Exhibit #, Doc. No. 114**]

*Thirdly,* Dr. Lyrene gave an opinion without ever examining Breach.  Lyrene stated: This is a hernia ... would be amendable to surgery, which was clearly elective at the time ... and would clearly not be necessary now . . . . " Id.

Lyrene gave such strong language using past tense "would be" and "which was" "clearly not be necessary now" having absolutely no knowledge as to the extent of plaintiff's pain, and his injury.  Lyrene cannot remain silent. He is obligated to answer discovery request. Lyrene had his opportunity to tell the magistrate judge at the outset, that he is not the treating physician: Lyrene got involved when he wrote his opinion and this case was dismissed based on Lyrene's and Robbins who never once examined plaintiff both gave opinions, and they are not qualified to give an opinion regarding "surgery".

***Most importantly, Lyrene is Medical Director.  He should know better:*** In  *Taylor v. Questcare,* 1995 U.S. Dist. 14975 ( S.D. Ala. 1995) Dr. George Lyrene explained his opinion regarding a hernia being incarcerated,  what ADOC requires before surgery; and,

3

he has submitted an opinion to that Court and, he explains the danger of a strangulated

hernia and that it is dangerous which is the defendants de facto protocol.

> "Dr. Lyrene explains in his affidavit (Doc. 34) that he is responsible for the
> nonemergency free-world medical referrals, and regarding Plaintiff's
> condition, provides:
>
> 4. Plaintiff's entire abdomen is herniated. This would not impact on his
> organs as the herniation goes out of the abdomen away from his organs.
> Plaintiff's hernias are not a threat to his health because there is no
> incarceration or strangulation of the hernias. **An incarcerated
> hernia would be likely to cause plaintiff health problems, and a
> strangulated hernia would be an emergency.** Plaintiff has neither of these
> conditions, but is being examined on a regular basis in case there is a
> change in his condition. " Id.

If, Dr. Lyrene has information, knowledge, documents in his possession, plaintiff

is entitled to discover them. Lyrene knows that ADOC has a cruel unconstitutional

protocol because Dr. Hobbs another Medical Director told us and disclosed it, but,

evidence will show that this incarcerated hernia is an emergency situation and Breach is

facing that situation now. Why hasn't and didn't Lyrene as Medical Director request

ADOC change this cruel Protocol when, he is in the very position to make changes?

Discovery is requested. Waiting until this life or death situation is leaving Breach in

pain! Breach is entitled to discovery what Lyrene knows about this case.

The magistrate judge relied on ADOC's response [**Court Doc. No. 506, 508, 509**] in

which Lyrene stated as a defense that (i) they are relying on a prior court order [**Court

Doc. 413**] when magistrate judge stated regarding discovery request on Correctional

Medical Services, and not Dr. George Lyrene. "all relevant records, documents and other

evidentiary materials relevant to the issue pending before this court have been filed by the parties." Id.

First of all, this is incorrect. Lyrene opposed surgery. He is a medical doctor. _Secondly,_ plaintiff is entitled to discover into Lyrene medical practices. Whether or not, he makes all of his patients suffer pain who have henrias; whether Lyrene as a doctor ignores the cure which is surgery?

Next, the court ordered Lyrene to file an Affidavit as a response, [**Court Doc. No. 452**] in which plaintiff objected stating that an Affidavit does not satisfy Discovery request. _Rules 33,34,36_ Fed.R.Civ.P., In addition, plaintiff objected that an Affidavit to Interrogatories, production of documents and Admissions does not answer plaintiff's discovery request. [**Discovery Request Court Doc. 238, Plaintiff's Sixth Set of Interrogatories Propounded to Dr. George Lyrene" 11/19/2007**] [timely before November 20, 2007]

_Lastly,_ Lyrene has not disclosed his position as to why he denied surgery or, what he knows about this case? If what the ADOC defendants say that there is enough evidence in this case to stop discovery, they are wrong. Lyrene has not answered! If this Record was full of <u>relevant materials</u> by the defendants, the magistrate judge <u>would not</u> have **Vacated** Order # 460, denying a motion to compel discovery request on defendant Ruth Naglich who has been withholding material, relevant evidence and information because she first denied any involvment in this case, then, she turns right around and

submits an Affidavit basically admitting that she instructed defendant Brandon Kiandard to perform certain duties. She admitted that the private prison personnel contacted her by phone when evidence reflects it was a fax report regarding approval for plaintiff to have surgery and she denied it. Dr. George Lyrene should have known that the only way to stop a hernia is to have surgery. [See, **Court Doc. 458**] *February 22, 2008* [**Court Doc. No. 483 , See also,** *Plaintiff's Objections* **[Court Doc. No. 479]**.

It is **important** that as ADOC defendant Lyrene relied on and prior court order that was not pertaining to them, but to ADOC is not grounds to deny discovery. [**Court Doc. No. 413**] The magistrate judge's order, that Order pertains to a discovery request propounded outside the **December 10, 2007** deadline upon Correctional Medical Services, who were a late party upon a "Joinder" adding them into this action. [**Court Doc. No. 275**].

In further support, ADOC mislead the magistrate judge into thinking that plaintiff filed his discovery request too late being a November 20, 2007 deadline, that was in fact extended to **December 10, 2007**. [**Court Doc. No. 197**]

Thus, the court defendant states that due to the voluminous record, basically discovery is not necessary. Lyrene must answer. No matter how many documents this case has, defendants are the main reasons because they ignore court orders and plaintiff has to compel each time. Plaintiff must present evidence at summary judgment against

Lyrene as supervisor, without, denies plaintiff an opportunity to prove his claims against Lyrene as Medical Director.

## STANDARD OF REVIEW

The law is established that as in this case of a discovery motion or other nondispositive pretrial order the decision of the magistrate judge is a final decision. [2]  28 U.S.C. § 636(b)(1)(a)(2004).

## MEMORANDUM AT LAW / POINTS ON AUTHORITY

Under Federal Rule of Civil Procedure 37(d), is intended "to make clear that a party may not properly remain completely silent even when he regards a . . . a set of interrogatories . . . as improper and objectionable. If he desires not to appear or not to respond, he must apply for a protective order." See, *Interested Underwriteres at Lloyd's v. M/T San Sebastian,* 2007 U.S. Dist. 24817 April 3, 2007 (N.D. Ga. 2007)

Most importantly, this Court ordered defendants in its discovery order to file their responses within 30-days of receipt of the discovery request. [**Court Doc. No. 197 by December 10, 2007**] It *is March 10, 2008* Lyrene **had well over 90 days to answer**.  This is why this case is voluminous.  Voluminous record is not an excuse, Breach requested several times for a discovery conference to avoid this.

---

[2] *Objection.* Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. See 28 U.S.C. 636 (b)(1)(C); *Lewis v. Smith,* 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B, 1982) *(en banc).*

There no evidence in this voluminous record regarding Lyrene as "the" Medical Director *responsibilities* regarding improvements in treatment and his supervisory capacity. Lyrene did not respond to plaintiff's Interrogatories; therefore, Lyrene did not object, Lyrene **has waived his opportunity to object**. See, *Rule 33(b)(1) & Rule 33(b)(4), Federal Rules of Civil Procedures.*

The attached Excerpt is plaintiff's discovery requests propounded upon Dr. George Lyrene, M.D., **[Court Doc. No. 238, Plaintiff's Fifth Set Interrogatories, Request For Production of Documents, Admission] November 19, 2008 timely.]**

## POINT 1.

### DEFENDANT DR. GEORGE LYRENE, M.,, HAS WAIVED HIS OBJECTIONS BY HIS FAILURE TO RESPOND TIMELY TO THE REQUEST

Plaintiff argues that there is no favoritism regarding the rules of Discovery. Plaintiff also contends that the rules provide that responses and objections to requests for production of documents, interrogatories and admissions are to be served within 30 days of the request unless the court grants a shorter or longer time. [90 days Lyrene did not answer] *Rules 33, 34, 36, Federal Rules of Civil Procedures.* Morethanless, the Court issued its **Discovery Scheduling Order [*Court Doc. 197-1, Order*]. December 10, 2007** deadline date. In its Order the court directed that each party to file its response to request for discovery within thirty (30) days of receipt of the discovery request. Defendant Lyrene

waived his right to object by failing to provide a written response, including objections to the Request for Production of Documents, Interrogatories, and Request for Admissions.

Generally, in the absence of an extension of time or good cause, the failure to file a written response in the time fixed by the rule constitutes a waiver of any objection. *Davis v. Fendler*, 650 F. 2d 1154, 1160 (9th Cir. 1981); *Krewson v. City of Quincy*, 120 F. R. D. 6 (D. Mass. 1988). *See also In Re United States*, 864 F. 2d 1153, 1156 (5th Cir. 1989) (as a general rule, when a party fails to object timely to interrogatories, production requests or other discovery efforts, objections are waived). *See, e.g.*, *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F. 2d 8, 12 (1st Cir. 1991); see also, **Coker v. Duke & Co.**, 177 F. R .D. 682; 1998 U.S. Dist. LEXIS 3780, 41 Fed. R. Serv. 3d. (Callaghan) 353, (M. D. Ala. 1998); *Godsey v. United States*, 133 F. R .D. 111, 113 (S. D. Miss. 1990); accord, *Demary v. Yamaha Motor Corp.*, 125 F. R. D. 20, 22 (D. Mass. 1989) and cases cited; *Krewson v. City of Quincy*, 120 F. R. D. 6, 7 (D. Mass. 1988); *Cephas v. Busch*, 47 F. R. D. 425 (W. D. 1963). This waiver is enforced even if the objections are based on a claim of privileged. *Marx v. Kelly, Hart & Halman, P.C.*, 929 F.2d. 8, 12 (1st Cir. 1991); *Fretz v. Keltner*, 109 F. R. D. 303, 309 (D. Kan. 1986) and cases cited; *Cardox Corp. v. Olin Matthiesen Chemical Corp.*, 23 F. R. D. 27, 31 (S.D. ILL. 1958).

As shown in the next several points, the discovery sought is not only proper but is highly appropriate and relevant:  (i) it is not cumulative or duplicative in nature to the discovery materials previously provided to the plaintiff, (ii) irrelevant to a determination

of the issue before this court, (iii) not reasonably calculated to lead to admissible evidence, and/or (iv) overly burdensome

Any belated objections by Defendant Lyrene without "specificity" as to plaintiff's request for production of documents, interrogatories and admission as immaterial, irrelevant, not calculated to lead to the discovery of admissible evidence regarding any deliberate indifference to a serious medical need or any violation of the Alabama Medical Liability Act is without standing. Any argument as grounds as such, is frivolous.

The plaintiff must submit evidence that the medical defendant actually was aware of the significant risk of serious harm but deliberately preceded with grossly inadequate treatment anyway.

## POINT II
## THE RELEVANCY STANDARD

### Defendants Have Not Met Their Burden:

Under well-settled law, the party resisting production bears the responsibility of establishing undue burden. *G-69 v. Degnan,* 130 F. . . 326, 331 (D.N.J. 1990). Generally, a party seeking to avoid discovery on a burdensomeness argument must substantiate that position with **detailed affidavits** or **other evidence establishing an undue burden**. "An objection must show **specifically** how a [discovery request] is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden." *Chubb Integrated Systems Limited, v. National Bank of Washington,* 103

F.R.D. 52, 59-60 (D.D.C. 1984); *see also* **EEOC v. Quad/Graphics, Inc.**, 63 F. d 642 (7th Cir. 1995). Lyrene did not meet his burden.

The resisting party must make a particular and specific demonstration of fact and cannot rely on simple <u>conclusory assertions about the difficulty of complying</u> with a discovery request. *See* Twin **City Fire Ins. Co. v. Employers Ins. of Wausau**, 124 F.R.D. 652 (D. Nev. 1989). A mere showing of burden and expense is not enough. **Ericson v. Ford Motor Co.**, 107 F.R.D. 92 (E.D.Ark. 1985). In this case, Defendants have waived any objections and has failed to make a sufficient showing to sustain an objection that the requests for production concerning complaints would create an undue burden. Lyrene did not meet his burden.

**B.**     **Defendant Dr. George Lyrene, M.D.**

On <u>*November 19, 2007*</u> plaintiff submitted his Discovery Request [Court Docket No. 238] and on <u>*January 17, 2008*</u> Breach sought to compel Lyrene to answer. [Court Doc. # 395, is plaintiff discovery request propounded on Dr. George Lyrene, M.D., who is the Medical Director for ADOC. He is solely responsible for oversight of treatment. What is so interesting, in **Taylor v. Questcare**, 1995 U.S. Dist. 14975 ( S.D. Ala. 1995) Dr. George Lyrene explains his opinion regarding a hernia and he has submitted an opinion to that Court but, he explains the danger of a strangulated hernia and that it is dangerous which is the defendants de facto protocol.

"Dr. Lyrene explains in his affidavit (Doc. 34) that he is responsible for the nonemergency free-world medical referrals, and regarding Plaintiff's condition, provides:

4. Plaintiff's entire abdomen is herniated. This would not impact on his organs as the herniation goes out of the abdomen away from his organs. Plaintiff's hernias are not a threat to his health because there is no incarceration or strangulation of the hernias. **An incarcerated hernia would be likely to cause plaintiff health problems, and a strangulated hernia would be an emergency.** Plaintiff has neither of these conditions, but is being examined on a regular basis in case there is a change in his condition. " Id.

However, more interesting, Dr. Hobbs has stated clearly that the ADOC has a protocol, and that the protocol states that the hernia must be incarcerated or in danger of being incarcerated before surgically necessary. Dr. John A. Tassin, M.D., has told the Court that the ADOC basically has a protocol, and that ADOC would not allow surgery for plaintiff's hernia unless his hernia was incarcerated, or into the scrotum.

Lyrene has stated that a strangulated hernia is an emergency situation. The sole questions is, Lyrene as Medical Director, has failed to make changes when he knows the danger of an incarcerated hernia; he knows death will arise, and he actually knows of the danger plaintiff faces. Lyrene also, filed an Affidavit in this case opposing surgery, claiming to have personal knowledge when he never once examined plaintiff and Lyrene is not qualified to given an opinion regarding surgery; only a referral to a surgeon.

Evidence already demonstrates that "surgery" is the only cure, the only way to relieve plaintiff's pain, the only way to stop plaintiff's hernia from getting worse. In addition, Lyrene for years, decades, has taken absolutely no action. Lyrene is liable,

based on his responsibilities; his position; knowledge and prior statements to Courts will demonstrate deliberate indifference.

An inmate must rely on prison authorities to treat his medical needs. The government therefore has an obligation to provide medical care for those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976).    Under    Rule 401, Federal Rules of Evidence, the definition of "*Relevant Evidence*" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

This Rule defines the term. The definition provides that evidence is relevant if it has *any* tendency to make the existence of a material fact more probable or less probable than it would be without the evidence. Although it is true that some Federal Courts have purported to use a slightly different test, an analysis of most of the opinions leads to the conclusion that in practice the test advocated in *Rule 401* is consistent with that developed in most Federal Courts prior to the enactment of the Rules.

The important thing for the Judge and for counsel to remember is that the evidence does not by itself have to prove the ultimate proposition for which it is offered; nor does it have to make that ultimate proposition more probable than not. To be relevant it is sufficient that the evidence has a *tendency* to make a consequential fact even the least bit more probable or less probable than it would be without the evidence.

Dr. George Lyrene practice regarding his "treatment" and opinion in this case is challenged; the information sought is requested directly from the very source, directly from the defendant physician and is discoverable.    Fed. R. Civ. P. *26(b)(2)(iii)* the discovery of defendant's responsibility, his past experiences, is relevant. This case is above that of mere negligence or malpractice. Also, discovery into what substance of communications made between the defendant and Dr. Michael Robbins, M.D., and Bradford Adams, or any other person regarding this case is also relevant. Dr. Robbins and Dr. George Lyrene have <u>never once</u> examined the plaintiff and claims to have been "<u>personally involved</u>" or personal information in this case is relevant.    Thus, any information known to the defendant about plaintiff's claim regarding surgery is relevant.

Under the *Federal Rules of Civil Procedure*, parties may discover information, which is relevant and non-privileged. <u>*Rule 26(b)(1)*</u>, *Federal Rules of Civil Procedure*. Under the federal rules, relevancy is "<u>construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.</u>" ***Oppenheimer Fund, Inc., v. Sanders***, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978). Courts are required to accord discovery a broad and liberal scope in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement. *Id.*; Hickman ***v. Taylor***, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947). Where there is a doubt over relevancy, the court should still permit discovery. ***Deitchman v. E. R. Squibb & Sons, Inc.***, 740 F.2d 556 (7th

14

Cir. 1984). Discovery request should be allowed, "Unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." *La Chemise Lacoste v. Alligator CO., Inc.*, 60 F. R. D. 164, 171 (D. Del. 1973); see *Nash v. Thielke*, 743 F. Supp. 130 (E. D. Wis. 1990)(the plaintiff was entitled to an officer's urine test results, since the officer's sobriety during the incident was an issue in the case).

The law is established and that the Eighth Amendment duty applies to medical conditions that may result in pain and suffering which serve no legitimate penological purpose. *Estelle*, 429 U.S. @ 103, 97 S.Ct. @ 290. See also, *McGuckin*, 974 F. 2d @ 1059. ([D] elay in performing surgery resulted in needless infliction of pain); *Wood v. Housewright*, 900 F. 2d 1332 (9th Cir. 1990)(with two judges holding prisoner had stated an Eighth Amendment claim for pain inflicted by delay in treating injury, but dismissing the claim on other grounds); *Hunt*, 865 F. 2d 198 (delay in providing prisoner with replacement dentures; *Jones*, 781 F. 2d @ 771-72 (hernia which results in pain, suffering, and the inability to perform a prison job is a serious medical need which prison doctors may not ignore); *Fields v. Gander*, 734 F. 2d 1313 (8th Cir. 1984)(inmate suffering severe pain from infected tooth).

Dr. George Lyrene based on his opinion and Affidavit, his involvement in this case has left plaintiff in pain. Discovery regarding Dr. Lyrene and his responsibilities as medical director is most relevant because ADOC defendant Brandon Kindard, and Dr. George Lyrene have stated to the Court that <u>he relied</u> on the nurse practitioner's

recommendation. Besides, ADOC defendants have stated that they rely on the medical defendants. The material sought regarding Dr. George Lyrene is both: (1) material sought is clearly relevant; and, (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable; (iii) has not been disclosed by the medical defendants. Because the defendant <u>has not</u> responded, the **burden is on him to demonstrate why discovery is not practicable.** *Grubbs v. Bradley*, 552 F. Supp. 1052, 1129 (M. D. Tenn. 1982)(court finds that provision of medical care by persons beyond the level of their training and experience constitutes deliberate indifference); *Mandel v. Doe*, 888 F. 2d 783, 789-90 (11th Cir. 1989); *Hoptowit v Ray*, 682 F. 2d 1237, 1252-53 (9th Cir. 1982)(certain staff performing functions that they are neither trained or licensed to perform). Hernias are painful; plaintiff has been left without treatment, <u>because the only treatment is surgery</u> Dr. George Lyrene should have known as a doctor that there is no treatment for a hernia, the treatment is surgery: is discoverable, relevant and admissible. The party resisting production bears the responsibility of establishing undue burden. An objection must show **specifically** how a discovery request is overly broad, burdensome or oppressive, by submitting evidence or offering evidence, which reveals the nature of the burden. The resisting party must make a <u>particular and specific</u> demonstration of fact and cannot rely on simple conclusory assertions about the difficulty of complying with a discovery request. A mere showing of burden and expense

is not enough.  **The Record is silent concerning defendant Dr. George Lyrene in his individual capacity.**

## POINT III

### CUMULATIVE OR DUPLICATIVE IN NATURE TO THE DISCOVERY MATERIALS PREVIOUSLY PROVIDED TO THE PLAINTIFF

Several medical documents are concealed from plaintiff and this court.  With that, there are absolutely very limited reasons as to how plaintiff's discovery request could possibly lead to being cumulative or duplicative.

The particular request for production of documents is relevant and takes the case "beyond the pleadings" and the documents are not cumulative, duplicative in nature because they are not in the record nor have been produced. Plaintiff submits an example from an *excerpt* of his **Interrogatories and request for Production of Documents** upon Dr. George Lyrene and proffers that the Interrogatories are relevant:  [**See, Attached Discovery Request Page # 9 - 12.: Interrogatories on Dr. George Lyrene, Court Doc. N/A**]

¶ 12.  *"Specifically identify by document"* your specific job responsibilities as Medical Director for the Alabama Department of Corrections.

¶ 13.  *"Specifically identify by document"* the implementations procedures, and/or the events, chain of command of preparing, submitting and approval of the Protocol(s) regarding treatment of hernias suffered by state inmates between Alabama Department of Corrections and Prison Health Services, Inc.

¶ 14.  It is your common practice as a doctor not to make a surgical referral regarding a patient diagnosed with a hernia until the patient's hernia is incarcerated, or in danger of incarceration or, into the scrotum?

¶ 15.  It is your common practice not to make surgical referral for a patient who is diagnosed with a Hernia with signs and symptoms of feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum, increasing abdominal or groin swelling?

¶ 16.  It is your common practice as a doctor not to make surgical referral for a patient who is diagnosed with a Hernia with signs and symptoms of a bulge or lump in the abdomen, groin or scrotum that is easier to see when the patient stands and disappears when the patient lies down, but the patient has a dull dragging sensation in the groin area with an inability to urinate?

¶ 17.  It is your common practice as a doctor not to make a surgical referral for a patient who is diagnosed with a Hernia with signs and symptoms of pain when straining, lifting, or coughing, persistent cough and/or shortness of breath?

¶ 18.  Between the Alabama Department of Corrections and Prison Health Services, Inc., who's common practice is it not to surgically repair a hernia once a physician has ordered or recommended that the hernia "needs repair" unless the hernia is incarcerated or, in danger of becoming incarcerated in order to be surgically necessary?

¶ 19  Please estimate how many Alabama inmates diagnosed with a hernia you deny a referral to a specialist or surgeon since your date of employment rendering medical services at the prison(s) of the Alabama Department of Corrections.

¶ 20.  Have you ever requested to any supervisor, or other person(s) improvements, changes, update, regarding the hernia Protocol.  If yes, *"specifically identify"* any written request, *"documents,"* e-mails, faxes and *"identify the incident by document"*: *"identify"* any and all witnesses, persons who have knowledge of your recommendations for improvements to this or any other Hernia Protocol?

¶ 21.  *"Identify by document,"* your personal examination conducted on the plaintiff.  If unavailable, please disclose the reason(s).

¶ 22.  Please disclose and *"identify by document"* ADOC's and your common practice being the objective treatment plan regarding hernias when the patient is suffering extreme pain, due to his hernia.

¶ 23.  It is your common practice to deny the cure for a hernia until the hernia is incarcerated or, in danger of incarceration, into the scrotum?

*¶ 24.  It is your common practice to allow a patient to endure pain by issuing some pain medication and a Truss, when there are continued symptoms of the patient suffering pain; without the cure before the hernia is incarcerated, or in danger of being incarcerated or before into the scrotum?*

¶ 25.  Please disclose your medical findings *"identify by document"* how you recommended that plaintiff not receive surgery, when you never once examined the patient's hernia and have no idea how much pain he suffers?  Id.

### POINT IV.

### *NOT REASONABLE CALCULATED TO LEAD TO ADMISSIBLE EVIDENCE*

Information requested ought to aid this Court and a jury for a determination that prison officials <u>may not</u> avoid their duty to provide medical treatment by the simple expediency of labeling such treatment as "<u>elective</u>".  The classification of surgery as elective does not abrogate the prison's duty, or power, to promptly provide necessary medical treatment for prisoners.  See, **Jones,** 781 F. 2d @ 770-71 (classification of hernia as "elective surgery" did not insulate county from Eighth Amendment duty to provide proper medical care); *Johnson v. Bowers*, 884 F. 2d 1053, 1056(prisoner waiting six years for elective arm surgery was entitled to relief)(citing **Monmouth County Corr. Inst. Inmates v. Lanzaro,** 834 F. 2d 326, 348 n. 32 (3d Cir. 1987) cert. Denied, 486 U.S. 1006, 1-8 S.Ct. 1731, 100 L.Ed. 2d 195 (1988)); **West v. Keve**, 541 F. Supp. 534 (D. Del. 1982)(prison officials violated Eighth Amendment by not furnishing elective surgery for dysfunctional veins that were causing varying degrees of pain); **Laaman v. Helgemoe**, 437 F. Supp. 269,

311 (D. N. H. 1977)(elective treatment recommended by a physician but not "necessary" in a life or health saving sense, may still be constitutionally mandated if the prisoner elects to proceed with the treatment).

In this case, it is noted that plaintiff's surgery is elective. But, it is still leaving him in pain and discomfort. Where surgery is elective, prison officials may properly consider the costs and benefits of treatment in determining whether to authorize the surgery, but the words "elective surgery" are not a talisman insulating prison officials from the reach of the Eighth Amendment. Each case must be evaluated on its own merits. See, *Delker v. Maass*, 843 F. Supp. @ 1400 (D. Or. 1994)(although state inmate may not have suffered long-term physical harm from nearly two-year delay in providing operation for non-incarcerated inguinal hernia, inmate was "injured" by delay for purposes of his § 1983 civil rights action, since he suffered some pain, anxiety, and restricted activity during delay.)

The below questions are propounded upon defendant Dr. Lyrene and are relevant as to his qualifications which can lead to deliberate indifference because he should have known that he cannot make surgically recommendations. Dr. Lyrene is not a surgeon, and he is challenged as to surgically recommendations because he has stepped outside his qualifications. He is not Board Certified with the American Board of Surgery. It is medically known that surgery is the only cure for a hernia. Plaintiff does not waive any

20

interrogatories, nor production request or, any admission by not excerpting them for demonstration purposes.

¶ 11.   It is your common practice not to make surgical referral for a hernia unless the hernia is incarcerated or in danger of becoming incarcerated in order to be surgically necessary?

¶ 12.   Is it your common practice to examine a patient and then make a medical decision pertaining to surgery without your supervisor being present, or examining the patient?

¶ 13.   Is it *Prison Health Services, Inc.*, common practice not to surgically repair a hernia unless the hernia is incarcerated or in danger of becoming incarcerated in order to be surgically necessary?

¶ 14.   Please estimate how many Alabama inmates diagnosed with a hernia you examined since February 2005.

Plaintiff's request seeks information concerning Dr. George Lyrene' common practice regarding hernia treatment.  First, plaintiff does not seek "personnel records" in any general way.  He seeks documents pertaining to the treatment, method, practice, procedures rendered by Dr. Lyrene regarding hernia treatment.  Plaintiff does not seek other matters that may be in his personnel records, such as medical data or information about his records of lateness, leaves and vacations, etc.

*Secondly,* the kind of information sought is highly relevant.  The plaintiff has information that repeated complaints about mistreatment regarding hernias have been made about the medical defendants and that nothing has been done about them and their practice.  Evidence to that effect would be highly relevant to the claim of supervisory liability against defendant Dr. Robbins, Ruth Naglich, Brandon Kindard, set out in **Counts II, III, IV, VI**, of plaintiff's ***Supplemental Complaint pages 25-26***. [***Court Doc No.***

93] Whether quasi-policymakers have been deliberate indifferent in their supervision of subordinates the court must explore the supervisors' conduct in this case: -- as in *Karr*, 875 F.2d @ 1556 (jury could find that failure to take corrective action after plainly unconstitutional use of police dogs constituted deliberate indifference). In this case, Dr. Lyrene claims that he consulted with Dr. Robbins. Discovery in this area is relevant because it is regarding the treatment proscribed by the defendants See also, *Ancata v. Prison Health Services, Inc.*, 769 F. 2d 700, 795 (11th Cir. 1985). The same standard of deliberate indifference applies to both inadequate training and inadequate supervisions. *CF. Davis v. City of Ellensburg*, 869 F. 2d 1230, 1235 (9th Cir. 1989)(applying City of Canton to question municipal liability). Liability applies if it is established that Dr. Robbins either has a continued practice that of allowing this nurse practitioner to make surgically recommendations while knowing that he is not qualified, Dr. Robbins can be held liable as well if established that the conduct rises to deliberate indifference; no treatment at all.

## EXCERPT DISCOVERY REQUEST Dr. George Lyrene:

### IV. REQUEST FOR PRODUCTION OF DOCUMENTS OF YOUR AGENTS

That defendant produce and permit plaintiff to inspect and to copy each of the following documents:

*** RULE 33, Fed. R. Civ. P., "Business Records"**

a.    To permit plaintiff to inspect, analyze, and copy or photograph, "*specific document*," implemented protocols and policies/procedures of the Alabama Department of Corrections as of February 2005 through current date of responding and names of "*identify by document*" all individuals responsible for the treatment protocols, i.e., hernia; specifically, the Protocols governing the treatment of hernias suffered by state inmates.

b.    The names and "*specifically identify by document*," those individual(s) responsible for the implementation and maintenance of the treatment Protocols pertaining to hernias at the Alabama Department of Corrections from February 2005 through present.

c.    To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

d.    To disclose the material evidence by "*document*," and substance of any oral statements made by defendants to person(s) at South Louisiana Correctional Center, on 7-10-06 and <u>7-12-06</u>, to any supervisor, agency or agents thereof regarding treatment of plaintiff's inguinal hernia.

e.    "*Specifically identify by document*," and, disclose the ADOC policy, procedures, practice, directives, memoranda, statement, documents, governing, regarding, approval or disapproval of hernia surgery, requested by <u>South Louisiana Correctional Center</u> medical personnel, from <u>*March 2006*</u> through <u>*October 6, 2006*</u> to the Alabama Department of Health Services.

f.    Produce any and all relevant information on the policy, protocol, procedures regarding issuing patient a Truss or Hernia belt.

g.    Produce any and all relevant information regarding Hernia Truss or Hernia Belts as treatment for a hernia.

***    **[If any requests for production of documents have already been disclosed through another party, then please state and identify the party, date of disclosure.]**

Plaintiff states that only a surgeon is qualified to give medical opinions regarding

when surgery needs to be recommended regarding hernias. While it is true that courts

hesitate to find an eighth amendment violation when a prison inmate has received medical café. ***Hamm v. DeKalb County,*** 774 F. 2d 1567, 1575 (11ᵗʰ Cir. 1985), cert. Denied. 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed. 2d 894 (1986), that "[h]esitation does not mean . . . that the course of a physician's treatment of a prison inmate's medical or psychiatric problems can never manifest the physician's deliberate indifference to the inmate's medical needs." ***Waldrop,*** 871 F.2d @ 1035; see also, ***Murrell v. Bennett***, 615 F.2d 306, 310 n.4 (5ᵗʰ Cir. 1980)(treatment may violate eighth amendment if it involves "something more than a medical judgment call, an accident, or an inadvertent failure"). The holding decision regarding _Rule 706_, Fed. R. Evid., and a prisoner needing the appointment of an expert witness in a deliberate indifferent case is ***Smith v. Jenkins***, 919 F.2d 90 (8ᵗʰ Cir. 1990) the Court ruled that "Thus, the district court erred as a matter of law in ruling that mere proof of medical care by a doctor consisting of diagnosis only sufficed to disprove deliberate indifference.    _Smith_ is entitled to prove his case by establishing that Dr. Oglesby's <u>course of treatment</u>, or <u>lack thereof</u>, <u>so deviated form professional standards</u> that it <u>amounted to deliberate indifference</u> in violation of his eighth amendment right to be free from cruel and unusual punishment." Id. @ 93.  The Court further stated: "We are particularly troubled by the <u>absence of _Smith's_ medical records</u> from the court record. We believe a review of the medical records is required before a determination against Smith is made in this case." Id. @ 93 n.3

Case law has given substance to *Estelle 's* distinction between "deliberate indifference" and not mere negligence, explicating categories of action or inaction that may constitute deliberate indifference. Court's have repeatedly found that "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County, Ala.,* 116 F. 3d 1419, 1425 (11th Cir. 1997); *Mandel v. Doe,* 888 F. 2d 783, 788 (11th Cir. 1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference"). Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. *See Harris v. Coweta County,* 21 F. 3d 388, 393-94 (11th Cir. 1994); *Brown v. Hughes,* 894 F. 2d 1533, 1537-39 (11th Cir. 1990). The Eleventh Circuit has held also held that deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment. *See* Steele *v. Shah,* 87 F. 3d 1266, 1269-70 (11th Cir. 1996); *Waldrop v. Evans,* 871 F. 2d 1030, 1035 (11th Cir. 1989). "[W]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Mandel,* 888 F. 2d at 789; *Ancata v. Prison Health Servs., Inc.,* 769 F. 2d 700, 704 (11th Cir. 1985).

A doctor hasn't examined plaintiff since *April 30, 2007 and his health has deteriorated.* Evidence shows that since Bradford Adams, nurse practitioner first examined plaintiff and made an illegal medical decision beyond his scope of practice, plaintiff's hernia has enlarged. Dr. Hobbs noted "Large Direct Inguinal Hernia". Bradford Adams noted "small easily reducible inguinal hernia". It is clear that discovery into Dr. Lyrene opinion, knowledge of the facts of this case and his intentions even circumstantial place him with personally involvement as a supervisor and his failure to act lead to a more severe injury, more pain, taking a easier less efficious course of treatment as a way out is relevant.

In *Estelle,* the Supreme Court recognized that the Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration" precisely because the failure to do so "may actually produce physical 'torture or a lingering death' " or, "in less serious cases, ... **may result in pain and suffering which no one suggests would serve any penological purpose.**" *Estelle*, 429 U.S. at 103, 97 S. Ct. 285 (quoting *In re Kemmler*, 136 U.S. 436, 447, 10 S. Ct. 930, 34 L. Ed. 519 (1890)). The Eleventh Circuit's cases, too, have recognized that prison officials may violate the Eighth Amendment's commands by **failing to treat an inmate's pain**. *Brown v. Hughes*, 894 F. 2d 1533 (11th Cir. 1990), In this case, the only treatment available for plaintiff's pain is "surgery". For these reasons the material sought is relevant and should be produced.

*POINT V.*

*BURDENSOME*

Under well-settled law, the party resisting production bears the responsibility of establishing undue burden. *G-69 v. Degnan*, 130 F. . . 326, 331 (D.N.J. 1990). Generally, a party seeking to avoid discovery on a burdensomeness argument must substantiate that position with detailed affidavits or other evidence establishing an undue burden. "An objection must show specifically how a [discovery request] is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden." *Chubb Integrated Systems Limited, v. National Bank of Washington,* 103 F.R.D. 52, 59-60 (D.D.C. 1984); *see also* **EEOC v. Quad/Graphics, Inc.**, 63 F. d 642 (7th Cir. 1995). The resisting party must make a particular and specific demonstration of fact and cannot rely on simple conclusory assertions about the difficulty of complying with a discovery request. *See* Twin **City Fire Ins. Co. v. Employers Ins. of Wausau**, 124 F.R.D. 652 (D. Nev. 1989). A mere showing of burden and expense is not enough. ***Ericson v. Ford Motor Co.***, 107 F.R.D. 92 (E.D.Ark. 1985). In this case, Defendants have waived any objections and has failed to make a sufficient showing to sustain an objection that the requests for production concerning complaints would create an undue burden.

In conclusion, under the *Federal Rules of Civil Procedure*, **parties may discover information**, which is relevant and non-privileged. *Rule 26(b)(1)*, *Federal Rules of Civil Procedure*. Under the federal rules, relevancy is "<u>construed broadly to encompass any</u>

matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc., v. Sanders*, 437 U.S. 340, 351, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978). Courts are required to accord discovery a broad and liberal scope in order to provide parties with information essential to the proper litigation of all relevant facts, to eliminate surprise and to promote settlement. *Id.;* *Hickman v. Taylor*, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947). Where there is a doubt over relevancy, the court should still permit discovery. *Deitchman v. E. R. Squibb &* *Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984).

  *WHEREFORE*, plaintiff prays that this Court issue a Show Cause, and order Lyrene to answer plaintiff's discovery request.

      Done this 10th Day March 2008

      Marcellus Breach 160710®
      Limestone C.F
      28779 Nick Davis Rd.
      Harvest, Alabama 35749

28

*CERTIFICATE OF SERVICE*

   **I HEREBY CERTIFY**, that I have this ~~6~~ *1th* Day of ~~January~~ *March*, 2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

**Alabama Dept. of Corrections**
**LEGAL DIVISION**
**P.O. Box 301501**
**Montgomery, Alabama 36101**


**Rushton, Stakely, Johnston, Garrett, P.A**
**P.O. Box 270**
**Montgomery, Alabama 36101**


**Starnes & Atchison, LLP**
**100 Brookwood Place, 7th Floor**
**P.O. Box 598512**
**Birmingham, Alabama 35259-8512**

Marcellus Breach

# EXHIBIT "A"

IN THE DISTRICT COURT OF THE UNITED STATES * 6TH
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, #160710                    *

    Plaintiff,                             *

                                   *     CASE NO: 2:06-cv-1133-MEF

Vs.                                          *

PRISON HEALTH SERVICES, INC., et. al.,       *

    Defendants.

*PLAINTIFF'S <u>SIXTH</u> -- SET OF INTERROGATORIES AND REQUEST FOR
ADMISSIONS, FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS UNDER
FED. R. CIV. P.,*

    *TO:   DEFENDANT DR. GEORGE LYRENE, M.D.
           MEDICAL DIRECTOR, ADOC*

    **COMES NOW**, the Plaintiff <u>*Marcellus Breach*</u> (hereinafter "Breach"), in proper person

"Pro Se," request that Defendant **Dr. George Lyrene, M.D.,** answer the following

requests for discovery pursuant to *Federal Rules of Civil Procedures, Rule 33, 34 & 36,*

and/or his "Agent(s)" being person(s) under his control: *"Prison Health Services, Inc.,"*

and, *"South Louisiana Correctional Services,"* ("SLCS") requested to answer separately,

fully and in writing, the following interrogatories under oath, affirmation in accordance

within the definitions and instructions set. forth below, within thirty (30) days after

service of these **Interrogatories, Request for Admissions**, and **Production of Documents**,

1

furthermore, for the defendant to provide full disclosure along with his answers herein, copies thereof supporting evidentiary materials, as follows:

## I. DEFINITIONS AND INSTRUCTIONS;[1]

¶ 1.    Each Interrogatory shall be answered separately and as completely as possible. The fact that investigation is continuing or that discovery is not complete is not an excuse for failure to answer each interrogatory as fully as possible.  If you are unable to answer an interrogatory after you have attempted to obtain the information, answer to the extent possible.

¶ 2.    A question that seeks information contained in or information about or identification of any documents may be answered by providing a copy of such document for inspection and copying or by furnishing a copy of such document without a request for production.

¶ 3.    _Rule 33, Fed R. Civ. P._, permits that the interrogatories to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or government agency, by any officer or agent, who shall furnish such information as is available to the party.  _Rule 33(d),_ also permits interrogatories upon your Agents and the request for production of documents under said rule is requested from person(s) under your control.

---

[1] Definitions and Instructions are continuing throughout this Discovery request.  Rule  33, 34, & 35, Fed. R. Civ. P.

¶ 4.   In responding to these request for Admissions, Production of Documents and Interrogators, defendants shall furnish not only such information and documents as are available to them, but also such information and documents as are known to, available to, or in their constructive, actual possession, custody or control of any agent, employee, employer, representative, co-defendant, witnesses, the *Alabama Department of Corrections, Prison Health Services, Inc., ("PHS"); Correctional Medical Services, Corp.,* ("CMS") and specifically, including but not limited to defendants attorney(s) and investigators, unless such documents, information, data, records, inter alia, is claimed to be privileged from production or discovery.

¶ 5.   If defendants consider any document, information, data, records, inter alia, falling within plaintiff's request for Production of Documents, attached heretofore separately and/or conjunctively, as being privileged from discovery, plaintiff request that, at this time or responding to the Request for Production, the defendants serve upon plaintiff, a written list of the documents so withheld from said discovery and identify each document by date, author or parties, names, business address of each person, party or witness having copies of said documents, information , data, records inclusive to medical records from *February 2005,* through current date of your answers, and the basis on which the document is considered to be privileged from production, and re-production, photo-copying, et. seq., by discovery.

¶ 6.    These Interrogatories and Discovery request are continuing and are to be supplemented in accordance with Federal Rules of Civil Procedures, *Rule 26(e)*. However, in the event that any, and all information or documents come to the attention of or into the possession, custody or control of the defendants, the attorneys of records, or such other interested persons, parties, agency, employees, employers, et. al., subsequent to the filing of defendants response / answers hereto, which documents, records, or information are responsive to any and all Interrogatories or Request for Admissions, but which were not included in defendants initial answers / responses thereto, said additional information, documents, data, records, inter alia, shall be furnished to plaintiff, or in the interim, thereinafter appointment of stand-in-counsel, as soon as possible, unless otherwise specified by the Court, or upon subsequent motion.

¶ 7.    In responding to these DISCOVERY request, defendants are to furnish such documents, records, data, information, memorandum, inter alia, as are available to them, their agents, employees, employers, co-defendants, witnesses or representatives, such as attorney of record, but not limited to therein, as to defendants access to which is currently constructive, actual possession or otherwise.

¶ 8.    With regards to plaintiff's Request for Admissions and pursuant to *Federal Rules of Civil Procedures, Rule 36,* et. seq., the defendants shall specifically deny the matter or set forth in details the reasons why the answering / responding party, person, defendant or representatives cannot truthfully admit or deny the matter.  A denial shall fairly meet the

4

substance or the requested admission, and when good faith requires defendants shall qualify an answer or deny only a part of the matter of which an admission is requested; the defendants shall specify so much of it is true and qualify or deny the remainder. Defendants may not give lack of information or knowledge as a reason for failure to admit or deny unless defendants state that they have made a lawful, and reasonable inquiry and that the information known or readily obtainable by the defendants is insufficient to enable them to admit or deny.    If the defendants consider that a matter of which an admission has been requested presents a genuine issue of material fact, for trial, they may not, on that ground alone, object or the request; defendants may, subject to the provisions of *Federal Rules of Civil Procedures*, *Rule 37(c)*, deny the matter or set forth reasons why defendants cannot admit or deny it.

¶ 9.    As a courtesy, in answering / responding to any and all DISCOVERY request herein, defendants are asked to, please preface said answers / responses with the "Interrogatory or Request for Admission, Production, being Answered."

## II.    DEFINITIONS:

¶ 10.  When used in these discovery request and subsequent set of Interrogatories or discovery request henceforth, the following definitions shall apply:

   a.    As used herein, the term "**document**" means, any written, or graphic matter however produced or reproduced, including but not limited to correspondence, e-mails, other written communications, agreements, notes, memoranda, any and all recorded information

5

but not limited to any faxes, reports, letter, grievance, message, records, work sheets, instructions, work assignments, internal communication, order and any other written recorded, electronic, or graphic material however produced, reproduced and, in the absence of the original, copy thereof and any copy bearing markings not present on the original or other copy thereof.

b.    As used herein in reference to a natural person, the word "**identify**" shall mean to state the persons full name, present or last known business address(es) and their association to defendant(s).

c.    As used in reference to a business or other entity, the word "**identify**" shall mean to state the business or other entities full name and present or last known address(es) and their said association to defendant(s).

d.    As used "**identify**" or "**identity**" when used in reference to a document means to state the date and author, type of document [e.g., letter, memorandum, record, policy, title, reference numbers, etc.,] or some other means of identifying it, and its present location or custodian.

e.    The word "**incident**" includes the circumstances and events leading up to, and surrounding the alleged violation of denial of surgery for plaintiff's inguinal hernia from **February 2005**, to current date of your answering / responses.

f.    The word "**specifically identify**" as used with respect to any and all documents, inter alia, is understood to mean the following: 1) title; 2) date; 3) names and position of originator; 4) name and position of any and all defendants, co-defendants, witness(es) and supervisors; 5) name(s) and position(s) of any and all persons, parties, agents, employees, employers, representatives, who received copies or any portions of the documents in questions; 6) description of the document, records, data, faxes, any and all information, *inter alia*, in question; 8) name(s) and position(s) of the

6

custodian(s) of the above requested documents in their entirety, but not limited to.

### III.    INTERROGATORIES:

¶ 1.    Please state the following for the plaintiff.

    a.    your age
    b.    your education
    c.    your length of service in your present employment position
    d.    your previous occupational experience(s)
    e.    your training and experience in hernias

¶ 2.    Have you ever been charged with, arrested or convicted of, either a felony, or misdemeanor in the State of Alabama, or another?  If so, for each charge, arrest or conviction or nolle prosse, indicate the city, state where the charges were, the nature of the offense, charge, arrest, the date of the above arrest or conviction, the court case number, and the disposition of the charge(s), arrest or conviction.

¶ 3.    Have you ever been accused of any felony, misdemeanor in this State, or another? If yes, please identify the agency and/or individual who accused or investigated you for such allegation(s); specifically identify the department, agency, employer, employee or such other whom accused you of said charges, the arrest(s), employer, employer or such other whom accused you of said charges, the arrest(s), the conviction(s); the nature of the allegation(s); your answer, response, in detail, to the allegation(s); the disposition of the accusation(s) or investigation(s) against you, either involving your official capacity, or involving your individual capacity.

¶ 4.    Please *"identify"* employers you have had, other than your current position, in the last ten (10) years.   With regards to each, state the inclusive date of employment; the type of work performed; your discretionary functions, duties, and responsibilities.

¶ 5.    What is the name, last name address and present whereabouts, if known, of each person whom you or anyone acting in your behalf or believes to have any relevant information of the "incident" in regards to plaintiff's treatment and request for surgery, more specifically in regards to Dr. John A. Tassin, M.D., order and recommendation that Plaintiff's inguinal hernia "Needs Repair?"

¶ 6.    Please *"specifically identify"* your supervisor from date of *"incident"* through date of answering/responding.  If any changes, please *"specifically identify."*

¶ 7.    Disclose any and all verbal, written communications to any person(s) regarding this incident if any, *"identify by document,"* any and all response(es) with any and all persons not limited to your supervisor regarding the incident in question.

¶ 8.    Have you ever had your medical licensed revoked, suspended, or any action, investigation conducted by any Medical Board.  If so, for each complaint, indicate the city, state where the complain(s) were, the nature of the complaint(s), the date of the above complain(s), the name of the investigator, and the disposition of the complaint. Also, if yes, please identify the agency and/or individual who accused or investigated you for such allegation(s); specifically identify the department, agency, employer,

employee or such other whom accused you of said charges, the nature of the allegation(s) or investigation(s) against you, either involving your official capacity, or involving your individual capacity."

¶ 9.    "*Specifically identify by document*" any and all pending lawsuits against you in the State of Alabama, or another.

¶ 10.    "*Specifically identify by document*" whether you ever been sued for either: (i) Deliberate Indifference; (ii) Medical Malpractice or; (i) Negligence, in the State of Alabama, or another?  If so, for each charge, judgment, indicate the city, state where the charges were, or are actively pending, the nature of the charge(s), the date of the summons, Answers, the court case number, and the disposition of the charge, answer, summary judgment, trial or appeal.

¶ 11.    "*Specifically identify by document*" whether you or has anyone acting in your behalf obtained from any person or persons any "*documents*", report(s), statement(s), memorandum, or testimony concerning the "incident" in question, in this cause of action?

¶ 12.    "*Specifically identify by document*" your specific job responsibilities as Medical Director for the Alabama Department of Corrections.

¶ 13.    "*Specifically identify by document*" the implementations procedures, and/or the events, chain of command of preparing, submitting and approval of the Protocol(s)

regarding treatment of hernias suffered by state inmates between Alabama Department of Corrections and Prison Health Services, Inc.

¶ 14.  It is your common practice as a doctor not to make a surgical referral regarding a patient diagnosed with a hernia until the patient's hernia is incarcerated, or in danger of incarceration or, into the scrotum?

¶ 15.  It is your common practice not to make surgical referral for a patient who is diagnosed with a Hernia with signs and symptoms of feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum, increasing abdominal or groin swelling?

¶ 16.  It is your common practice as a doctor not to make surgical referral for a patient who is diagnosed with a Hernia with signs and symptoms of a bulge or lump in the abdomen, groin or scrotum that is easier to see when the patient stands and disappears when the patient lies down, but the patient has a dull dragging sensation in the groin area with an inability to urinate?

¶ 17.  It is your common practice as a doctor not to make a surgical referral for a patient who is diagnosed with a Hernia with signs and symptoms of pain when straining, lifting, or coughing, persistent cough and/or shortness of breath?

¶ 18.  Between the Alabama Department of Corrections and Prison Health Services, Inc., who's common practice is it not to surgically repair a hernia once a physician has

ordered or recommended that the hernia "needs repair" unless the hernia is incarcerated or, in danger of becoming incarcerated in order to be surgically necessary?

¶ 19    Please estimate how many Alabama inmates diagnosed with a hernia you deny a referral to a specialist or surgeon since your date of employment rendering medical services at the prison(s) of the Alabama Department of Corrections.

¶ 20.  Have you ever requested to any supervisor, or other person(s) improvements, changes, update, regarding the hernia Protocol.  If yes, "*specifically identify*" any written request, "*documents,*" e-mails, faxes and "*identify the incident by document*": "*identify*" any and all witnesses, persons who have knowledge of your recommendations for improvements to this or any other Hernia Protocol?

¶ 21.  "*Identify by document,*" your personal examination conducted on the plaintiff.  If unavailable, please disclose the reason(s).

¶ 22.  Please disclose and "*identify by document*" ADOC's and your common practice being the objective treatment plan regarding hernias when the patient is suffering extreme pain, due to his hernia.

¶ 23.  It is your common practice to deny the cure for a hernia until the hernia is incarcerated or, in danger of incarceration, into the scrotum?

¶ 24.  It is your common practice to allow a patient to endure pain by issuing some pain medication and a Truss, when there are continued symptoms of the patient suffering

11

pain; without the cure before the hernia is incarcerated, or in danger of being incarcerated or before into the scrotum?

¶ 25. Please disclose your medical findings *"identify by document"* how you recommended that plaintiff not receive surgery, when you never once examined the patient's hernia and have no idea how much pain he suffers?

### IV. REQUEST FOR PRODUCTION OF DOCUMENTS OF YOUR AGENTS

That defendant produce and permit plaintiff to inspect and to copy each of the following documents:

#### * RULE 33, Fed. R. Civ. P., "Business Records"

a.  To permit plaintiff to inspect, analyze, and copy or photograph, *"specific document,"* implemented protocols and policies/procedures of the Alabama Department of Corrections as of February 2005 through current date of responding and names of *"identify by document"* all individuals responsible for the treatment protocols, i.e., hernia; specifically, the Protocols governing the treatment of hernias suffered by state inmates.

b.  The names and *"specifically identify by document,"* those individual(s) responsible for the implementation and maintenance of the treatment Protocols pertaining to hernias at the Alabama Department of Corrections from February 2005 through present.

c.  To disclose any and all inculpatory materials, items, reports, evidence, statements, including statements of witnesses, reports, identities of witnesses, addresses of such, any other physical evidence, and any other evidence, whether described herein or not, which is inculpatory evidence of any type, form or fashion.

d.    To disclose the material evidence by "*document*," and substance of any oral statements made by defendants to person(s) at South Louisiana Correctional Center, on 7-10-06 and 7-12-06, to any supervisor, agency or agents thereof regarding treatment of plaintiff's inguinal hernia.

e.    "*Specifically identify by document*," and, disclose the ADOC policy, procedures, practice, directives, memoranda, statement, documents, governing, regarding,  approval or disapproval of hernia surgery, requested by South Louisiana Correctional Center medical personnel, from *March 2006* through *October 6, 2006* to the Alabama Department of Health Services.

f.    Produce any and all relevant information on the policy, protocol, procedures regarding issuing patient a Truss or Hernia belt.

g.    Produce any and all relevant information regarding Hernia Truss or Hernia Belts as treatment for a hernia.

***    [If any requests for production of documents have already been disclosed through another party, then please state and identify the party, date of disclosure.]

V.    *REQUEST FOR ADMISSIONS:*

¶ 1.    *Admit or deny,* you agree with the Protocol that a hernia must be incarcerated or in danger of becoming incarcerated in order to be surgically necessary.

¶ 2.    *Admit or deny,* the only way to stop a hernia from getting worse is to repair the defect through surgery.

¶ 3.    *Admit or deny,* that the Anatomy of Hernia, -- the most common location for hernia is the abdomen.  A hernia (rupture) is usually noticed as a lump, commonly located in the groin or the umbilical region, it appears when a portion of the tissue which lines the abdominal cavity (peritoneum) breaks through a weakened area of the abdominal wall,

13

this can give rise to discomfort as the hernia enlarges and can sometimes be dangerous is a piece of plaintiff's intestine become trapped ('strangulated').

¶ 4.    *Admit or deny,* you are an expert in Hernia repair?

¶ 5.    *Admit or deny,* you have performed surgery on hernias?

¶ 6.    *Admit or deny,* there is almost no limit to how big a hernia could get without surgery?

¶ 7.    *Admit or deny* that medically there is no cure for a hernia without surgery?

¶ 8.    *Admit or deny,* that a strangulated hernia can become an emergency that usually requires immediate surgery?

¶ 9.    *Admit or deny,* Medical Records from Louisiana do not reflect that plaintiff was issued either a truss, or hernia belt or pain medication for this hernia during his incarceration at that private prison?

¶ 10.    *Admit or deny,* a truss is the cure for a hernia?

¶ 11.    *Admit or deny,* plaintiff has complained about having pain when coughing, sneezing, and having bowel movements due to this hernia?

¶ 12.    *Admit or deny,* that that issuing of pain medication will not cure a hernia?

¶ 13.    *Admit or deny,* that the issuing a truss and proscribing pain medication is a cheaper method of treating a hernia?

¶ 14.    *Admit or deny,* that plaintiff's inguinal hernia can get larger and lead to serious medical complications?

14

¶ 15.   *Admit or deny*, that discomfort usually is experienced especially when coughing, sneezing, lifting heavy objects, or standing for long period of time?

¶ 16.   *Admit or deny*, bowel movements can cause the muscles to weaken resulting into an enlargement of plaintiff's hernia?

¶ 17.   *Admit or deny* the long-term course is for a hernia to become steadily worse as times goes on, sometimes slowly and sometimes quickly when left without surgery?

¶ 18.   *Admit or deny*, that the opening of a hernia cannot heal itself?

¶ 19.   *Admit or deny*, medically a doctor cannot treat a hernia; they must be repaired through surgery?

¶ 20.   *Admit or deny* plaintiff's hernia goes into his scrotum, is trapped at times and plaintiff has to work it back up into place?

¶ 21.   *Admit or deny*, a truss is for temporary use?

¶ 22.   *Admit or deny*, the waiting until the hernia is incarcerated or in danger of becoming incarcerated, in order to be surgically necessary can become a life or death situation?

¶ 23.   *Admit or deny*, waiting until the hernia is incarcerated, in danger of becoming incarcerated in order to be surgically necessary can, or will subject a patient into sever pain?

¶ 24.   *Admit or deny*, under the standard of care, a hernia ought to be repaired before it is incarcerated or in danger of becoming incarcerated and before entering the scrotum?

¶ 25.   *Admit or deny*, overexertion can cause weakness, such as simple coughing or sneezing to the hernia?

¶ 26.   *Admit or deny*, the effects felt by plaintiff can range from perfectly painless, through discomfort, to being very painful indeed?

¶ 27.   *Admit or deny*, a hernia ought to be inspected to ensure that it is not becoming infected or developing into a more serious non-reducible hernia?

¶ 28.   *Admit or deny*, you did not conduct any routine inspections, follow up or test on plaintiff's hernia.

¶ 29.   *Admit or deny*, a hernia can limit a person's daily activity?

¶ 30.   *Admit or deny*, when the hernia distends and pushes out the peritoneum forming the bottom of either the middle of the internal fossa, it is a direct or internal hernia?

¶ 31.   *Admit or deny*, the instruction Hernia Manuel given by you on April 30, 2007, through Prison Health Services, Inc., the **"Fitting Instructions" for Model 67-350** states pertaining to a hernia: ". . . Limiting activity, eliminating excess weight a hernia belt or truss may provide temporary relief.  However, **CURE IS SURGERY?**"

¶ 32.   *Admit or deny*, feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum is usually a warning sign that the hernia is progressing and becoming worse?

¶ 33.   *Admit or deny*, you are involved in the treatment proscribed to plaintiff while he has been in the department of corrections.

¶ 34.   *Admit or deny*, Prison Health Services, Inc., has final authority regarding approval or disapproval of surgery for plaintiff's inguinal hernia?

¶ 35.   *Admit or deny*, there are over 100 Alabama inmates diagnosed with hernias from *February 2005* through date of your response?

¶ 36.   *Admit or deny*, hernias are painful?

¶ 37.   *Admit or deny*, you are responsible for the monitoring of the health care given to plaintiff while in the department of corrections?

¶ 38.   *Admit or deny*, you agree that plaintiff cannot have surgery until his hernia is incarcerated, or in danger of incarceration or into the scrotum?

¶ 39.   *Admit or deny*, the Protocol(s) pertaining to hernia treatment for Alabama inmates can subject a patient to endure pain and suffering?

¶ 40.   *Admit or deny*, Alabama Board of Medical Examiners are not aware of the practice involved with Prison Health Services, Inc., being a Protocol that a hernia must be incarcerated or in danger of being incarcerated in order to be surgically necessary?

¶ 41.   *Admit or deny*, this Protocol ought to be changed pertaining to hernias?

¶ 42.   *Admit or deny*, you never once examined the plaintiff.

¶ 43.   *Admit or deny*, you are responsible for updating, changing medical policies, procedures, at ADOC?

¶ 44.   *Admit or deny each hernia case is different?*

¶ 45.   *Admit or deny*, Ruth Naglich denied plaintiff's request for surgery from Louisiana.

17

¶ 46.  *Admit or deny*, it is your common practice to go against another doctors recommendation when you are not the treating physician.

¶ 47.  *Admit or deny*, Ruth Naglich is the person responsible for approval or disapproval of surgery request?

¶ 48.  *Admit or deny*, you implemented the Protocol that states that a hernia must be incarcerated, or in danger of being incarcerated before it can be surgically repaired?

¶ 49.  *Admit or deny*, the sac containing plaintiff's intestine may become trapped by muscle (incarceration).  This happens, plaintiff will not be able to flatten the bulge and plaintiff will have pain?

¶ 50.  *Admit or deny*, when the intestines become trapped, issuing Motrin 600 mg., will treat the condition?

¶ 51.  *Admit or deny*, when the intestine is tightly trapped, it becomes strangulated?

¶ 52.  *Admit or deny*, the strangulated area loses blood supply and may die when the intestine is tightly trapped?

¶ 53.  *Admit or deny*, when the intestines are trapped, this can cause severe pain and block the intestine.  Emergency surgery is needed to relieve the blockage?

¶ 54.  Hernias grow larger as pressure inside the body presses the intestines or other tissues out through a weak area.  With time, these tissues can bulge out beneath the skin of the abdomen, or they can bulge into the groin, thigh, scrotum, or labia?

¶ 55.  *Admit or deny*, indirect inguinal hernias are the most common hernias in men?

18

¶ 56.   Direct hernias are similar to indirect hernias, but less common?

¶ 57.   Direct hernias often get worse with age or physical stress.

¶ 58.   Admit or deny, allowing a patient to suffer pain due to an hernia for almost three years may seem inappropriate to the medical profession?

¶ 59.   *Admit or deny,* the Alabama Department of Corrections intentionally denied plaintiff's request for surgery?

¶ 60.   *Admit or deny,* you denied plaintiff's request for surgery because plaintiff's hernia is not incarcerated or into the scrotum?

Done this 7th Day November 2007.

® _____

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749


### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this 16th Day of November 2007, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections
P.O. Box 301501
Montgomery, Alabama 36101

Rushton, Stakely, Johnstone, Garrett, P.A.
P.O. Box 270
Montgomery, Alabama 36101

® _____

Marcellus Breach