IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION

MARCELLUS BREACH, #160710,

    Plaintiff,

Vs.

PRISON HEALTH SERVICES, INC.,

    Defendants.

CASE NO: 2:06-CV-1133-MEF

***PLAINTIFF'S RESPONSE TO PRISON HEALTH SERVICES, INC., RESPOSNE TO COURT ORDER [DOC. NO. 461]***

***COMES NOW***, the Plaintiff <u>Marcellus Breach</u> (hereinafter "Breach"), in proper person "Pro Se," hereby files his response to Prison Health Services, Inc., brief and argument filed on or about 10th Day of <u>March</u> 2008, and in further support of his written objections plaintiff states the following:[1]

### FACTUAL BACKGROUND

1. This matter before this Court is regarding two issues: 1) missing medical records, 2) Discovery request propounded upon Prison Health Services.

2. Defendants PHS, CMS, and ADOC are passing the "buck" as to who is responsible for retrieving all of plaintiff's Louisiana medical records. CMS as stated that they are

---

[1] In regards to Plaintiff's discovery request plaintiff had 30-days to file his entire discovery request. Plaintiff did not learn until after his discovery request were filed that defendants were going to allege that they did not have a Protocol, policy or a procedures. But Dr. Hobbs has stated two different times, that ADOC has a protocol, Dr. Tassin has stated ADOC has a protocol and nurse Maxie noted defendant Brandon Kinard calling with detailed instructions denying surgery based on a protocol.

1

relying on PHS. ADOC is the entity that actually contracted with South Louisiana Correctional Services, so plaintiff would point the finger to them as being responsible for retrieving the medical records. Nevertheless, PHS was the medical contractor having the responsibility to provide medical care. In addition, plaintiff submitted an exhibit reflecting that of a medical release wherein, PHS supposable and allegedly on or about December 27, 2007, requested the medical records from Louisiana. This important issues that this Court ought to weight is, if, PHS as alleged has submitted what medical records they have in their possession, then, whey did it take approximately 15-months of pleadings to force PHS to come forward with documents? The Record will reflect that at the outset of filing this case in December 2006, PHS upon submitting their "Special Report" never once, submitted one copy of plaintiff Louisiana medical records. Why? Under disclosure rules, PHS and it is obvious withheld the medical records and why?

3. The fact that a state can delegate the operation of prisons to private prison corporations does not mean it can wash its hands of all responsibility. As the Supreme Court emphatically stated in a case involving medical care, "[c]ontracting out medical care does not relieve the state of its constitutional duty to provide adequate medical treatment to those in its custody . . . " **West v. Atkins**, 487 U.S. 42, 56, 108 S.Ct. 2250, 101 L.Ed. 2d 40 (1988). CMS is the current medical providers at ADOC. They have not one time even attempted to retrieve plaintiff's Louisiana medical records. CMS has the ability to retrieve the Louisiana medical records; ADOC has the ability to retrieve the

medical records. PHS, has not explained why, nor have they presented any documents reflecting that they have retrieved and/or attempted retrieve the Louisiana medical records from the custodian of records from Louisiana.

### *ARGUMENT*

This case will have several expert opinions regarding the obsolete treatment offered by the defendants. Plaintiff's medical condition of confinement resolving his claims of cruel and unusual punishment are demonstrated that defendant's course of treatment is outdated, obsolete and amounts to no treatment at all, but, continues to subject plaintiff to pain and suffering falling short from that of a evolving standards of decency that mark the progress of a maturing society.

Defendant's course of treatment will be demonstrated as deliberate indifference because it is out dated, and no longer practiced in a maturing society, plaintiff will demonstrate this fact. This case cannot be determined as a difference of medical opinions. However, that is not the issue before the Court. In addition, the law in this Circuit is established: -- "Often, whether an instance of medical misdiagnosis resulted from deliberate indifference or negligence is a factual question requiring exploration by expert witnesses." ***Rogers***, 792 F.2d @ 1058; see also ***Greason***, 891 F.2d @ 835 (conflicting expert testimony concerning extent to which psychiatrist may have departed from professional standards in abruptly discontinuing inmate's psychiatric medication must be resolved by trier of fact); ***Waldrop v. Evans***, 871 F.2d 1030, 1035 (11th Cir. 1989) (same).

The matter before this Court is regarding discovery and plaintiff's Louisiana medical records. Counsel attempts to encumber the main issues before the Court with a frivolous theory regarding surgery while attempting to derail discovery raising an issue that is not warranted at this time, nor appropriate before this Court – such issue will be decided with the Magistrate Judge at summary judgment.

### RULE 34(a), Federal Rules of Civil Procedures

The fact that documents are available from another source, being plaintiff's Louisiana medical records from the very prison that entered contract with ADOC to hold Alabama inmates, ADOC and CMS have not raised a valid basis for objecting or refusing to produce such documents if they are within the possession, custody, or control of the responding party. ***Novartis Pharmaceuticals Corp. v Eon Labs Mfg., Inc.***, 206 F.R.D. 392, 395 (D. Del. 2002)(documents held by a subsidiary in the control of the parent); ***Uniden America Corp. v. Ericsson Inc.***, 181 F.R.D. 302, 306 (M.D.N.C. 1988)(party required to produce documents form sister corporation) Documents held by ADOC's Agent being South Louisiana Correctional Center are document under their control and ought to be produced, especially front and back of the specific grievance requested, and the fax report.

Next, defendants rely on *Rule 403*, Fed. R. Evd., as cited for PHS's proposition as a defense is out right improper because medical records is the very source of evidence to

4

both parties. The prejudice is, defendants have withheld them, and also, have made no good faith attempt to retrieve all of them, and cannot produce evidence else wise.

Counsel remarks pertaining to Dr. Tassin, stating, "Dr. John Tassin, significantly questioned and doubted the need for surgical intervention of the Plaintiff's hernia. [id. at 4. PHS's Response]

Counsel seems to attempt to speak for Dr. Tassin, when counsel at the outset stated that Dr. Tassin did not exist. However, counsel can say what he wants, at the right time, plaintiff will clearly demonstrate that counsel once again, does not think first, before he writes. He will be debunked at summary judgment with clear evidence that surgery was requested, but, certain defendants did so, actually denied the request from Louisiana medical personnel.

II.

### DISCOVERY REQUEST PROPOUNDED ON PRISON HEALTH SERVICES [COURT DOC. 457] PLAINTIFF'S RESPONSE.

The only defense counsel raises is a frivolous claim that this case is a difference of opinions. Counsel will be debunked at summary judgment; however, plaintiff is entitled to have is discovery request answered. In regards to the issues before this Court pertaining to Discovery request plaintiff points out which set of Interrogatories, Request for Production of Documents, and Admissions are unanswered without proper objections.

Motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court. *See* **Commercial Union Ins. Co. v. Westrope,** 730 F.2d 729, 731 (11th Cir. 1984). The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party. *Id.*

The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result. *See* **United States v. Procter & Gamble Co.,** 356 U.S. 677, 682, 78 S. Ct. 983, 2 L. Ed. 2d 1077 (1958). Discovery is intended to operate with minimal judicial supervision unless a dispute arises and one of the parties files a motion requiring judicial intervention. Furthermore, discovery in this district should be practiced with a spirit of cooperation and civility.

Plaintiff's Interrogatories propounded upon Prison Health Services are relevant, and admissible although PHS claims they have no protocol for hernias they can still be liable for not having a protocol which resulted into unsupervised medical care over their doctors who abuse their positions regarding pain and suffering and intentionally inflict pain and suffering upon prisoners without any supervision whatsoever. See, **Rivas v. Freeman,** 940 F.2d 1491, 1495 (11th Cir. 1991) (holding that liability may be imposed due to the existence of an improper policy or from the absence of a policy). In such a case,

however, where a plaintiff seeks to establish municipal liability on the municipality's failure to act, the plaintiff must show that the "'policy of inaction' is the functional equivalent of a decision by the city itself to violate the constitution." *City of Canton v. Harris*, 489 U.S. 378, 394-95, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) . For instance, a plaintiff must establish that the municipality's failure to maintain a policy amounted to deliberate indifference to its known or obvious consequences. *Bd. of Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) ; *McDowell v. Brown*, 392 F.3d 1283, 1291 (11th Cir. 2004) . The Court has warned that "(t)o prevent municipal liability for a . . . decision from collapsing into respondeat superior liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged." *Bd. of Comm'rs of Bryan County, supra,* at 410.

In this case, defendants do in fact have a Protocol, policy, or standard that plaintiff cannot have surgery for his hernia unless the hernia is incarcerated, in danger of becoming incarcerated or into the scrotum.

The question is, how can defendant ascertain when plaintiff's hernia is "in danger of becoming incarcerated". On an expert can ascertain that medical decision and in this case, evidence will show that defendants blocked plaintiff from being seen by a surgeon while in Louisiana. Evidence will also demonstrate that what this Protocol is and it is the force behind the plaintiff's injury.

7

This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); ***Wayne v. Jarvis***, 197 F.3d 1098, 1105 (11th Cir. 1999) . See, also, ***Rivas v. Freeman***, 940 F.2d 1491, 1495 (11th Cir. 1991) (citations omitted). That custom or policy need not receive formal approval through the body's official decision making channels before liability can accrue. ***Bannum, Inc. v. City of Fort Lauderdale***, 901 F.2d 989, 997 (11th Cir. 1990) *citing* ***Monell v. Department of Social Services of the City of New York***, 436 U.S. 658, 690-91, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978).

Interrogatories below are relevant.

> ¶ 4. "*Identify by document*" the names, titles, and responsibility, of staff members of PHS and ADOC who have the responsibility for approval of plaintiff's request for surgery.
>
> ¶ 5. "*Identify by document*" the names, titles, and duties of staff members at ADOC who have the responsibility for approval of hernia repair(s) from February 2005 through October 31, 2007.
>
> ¶ 6. "*Specifically identify by document*" the person(s) employed by PHS and any person(s) at ADOC, who was/is responsible for reviewing and updating hernia protocols, "*reports*" policies and procedures regarding medical treatment for hernias, and for requesting improvements in services since February 2005 through October 31, 2007. If any changes, please "*identify by document.*"

8

¶ 8. Specifically disclose any substance of any oral or written statements, agreements, communications between PHS and ADOC regarding hernia treatment and repair during February 2005 through October 31, 2007.

¶ 9. *"Identify by document"* any and all, recommendations, request for improvements, changes, implementations of the treatment protocols, policy, procedures regarding hernia treatment from February 2005 through October 31, 2007. If any changes, *"specifically identify by document"*.

¶ 11. *"Identify"* any and all person(s) at ADOC who agreed with PHS to implement the protocol regarding hernia treatment for Alabama inmates from date of your service through October 31, 2007.

¶ 12. *"Specifically identify by document"* the procedures implemented as to how an hernia repairs are approved through PHS and ADOC.

¶ 13. *"Identify by document"* PHS and ADOC's protocol regarding Hernia Belts and Truss.

¶ 14. From *February 2005* through date of your response, disclose any knowledge, information, *"documents"* from anyone requesting improvement, changes updating the Protocols for hernias. If yes, state:

  a. *identify* the incident,
  b, *identify* person(s) requesting changes
  c. *identify* by document of request
  d. *specifically identify* the requested change, if submitted and disposition.

¶. 15 *"Identify by document,"* any and all persons who had any involvement in final decision making regarding plaintiff's request for surgery.

¶ 16. *"Identify by document"* any and all written reports submitted to the State Board of Examiners of any final judgment rendered against PHS, Dr. William Hobbs, M.D., Dr. Michael Robbins, M.D., and *"identify by document"* any settlement in or out of court, resulting from a claim or action for damages for personal injuries cased by an error, omission or negligence, Malpractice, deliberate indifferent, in the performance of medical professional services, or in the performance of medical professional services without consent from you date of services with

ADOC through October 31, 2007, in any Court in the State of Alabama, or another.

¶ 17. *"Identify by document"* any and all orders, recommendations by any medical providers regarding plaintiff's medical treatment to any person at ADOC & PHS from February 2005, through October 31, 2007, including all orders from South Louisiana Correctional Services, Inc., March 16, 2006 through October 31, 2006.

*¶ 18.* Explain Dr. George Lyrene, M.D., job responsibility to PHS "identify by document" regarding any hernia treatment to an Alabama inmate

¶ 19. *"Identify by document"* and explain Ruth Naglich's job responsibilities to PHS regarding hernia treatment to Alabama inmates from February 2005 through October 31, 2007.

¶ 20. *"Identify by document"* and disclose Brandon Kindard's job responsibilities to PHS regarding hernia treatment to Alabama inmates from February 2005 though October 31, 2007.

¶ 21. From February 2005 through October 31, 2007, disclose PHS's common practice, policy, procedure followed, and *"identify by document"* for hernia repairs.

¶ 22. From February 2005 through October 31, 2007, disclose ADOC's common practice, policy, procedures followed, and *"identify by document"* for hernia repairs.

¶ 23. Was it ADOC's treatment protocols regarding hernia repairs and treatment that PHS entered into a contractual agreement: PHS agreed to follow ADOC's treatment protocols regarding hernia treatment as a part of PHS standard of operation regarding hernia treatment? *"Identify by document"* with your answer.

¶ 24. Please estimate how many Alabama inmates are diagnosed with hernia, ADOC's treatment protocol would prohibit surgery intervention until the hernia was incarcerated or in danger of being incarcerated or into the scrotum since February 2005 through October 31, 2007. Identify by document and reports your figures.

## V.   REQUEST FOR ADMISSIONS:

¶ 1.   *Admit or deny*, you agree with the Protocol that a hernia must be incarcerated or in danger of becoming incarcerated in order to be surgically necessary?

¶ 2.   *Admit or deny*, that the only way to stop a hernia from getting worse is to repair the defect through surgery?

¶ 3.   *Admit or deny*, that the Anatomy of Hernia, -- the most common location for hernia is the abdomen.  A hernia (rupture) is usually noticed as a lump, commonly located in the groin or the umbilical region, it appears when a portion of the tissue which lines the abdominal cavity (peritoneum) breaks through a weakened area of the abdominal wall, this can give rise to discomfort as the hernia enlarges and can sometimes be dangerous is a piece of plaintiff's intestine become trapped ('strangulated')?

¶ 4.   *Admit or deny*, it is your common practice not to repair a hernia unless the hernia is incarcerated or in danger of being incarcerated or into the scrotum before surgically necessary?

¶ 5.   *Admit or deny*, it is ADOC's protocol, practice not to repair a hernia unless the hernia is incarcerate or in danger of being incarcerated or into the scrotum before surgically necessary?

¶ 6.   *Admit or deny*, there is almost no limit to how big a hernia could without surgery?

¶ 7.   *Admit or deny* that medically there is no cure for a hernia without surgery?

¶ 8.   *Admit or deny*, a strangulated hernia can become an emergency that usually requires immediate surgery?

¶ 9.   *Admit or deny*, PHS has a custom, practice, not to repair hernias before the hernia is incarcerated, or in danger of being incarcerated, or into the scrotum?

¶ 10.  *Admit or deny*, a truss is the cure for a hernia?

¶ 11.  *Admit or deny*, plaintiff has complained about having pain when coughing, sneezing, and having bowel movements due to this hernia?

¶ 12.  *Admit or deny*, the issuing of pain medication will not cure a hernia?

¶ 13.  *Admit or deny*, the issuing a truss and proscribing pain medication is a cheaper method of managing a hernia?

¶ 14.  *Admit or deny*, plaintiff's inguinal hernia can get larger and lead to serious medical complications?

¶ 15. *Admit or deny*, discomfort usually is experienced especially when coughing, sneezing, lifting heavy objects, or standing for long period of time?

¶ 16. *Admit or deny*, bowel movements can cause the muscles to weaken resulting into an enlargement of plaintiff's hernia?

¶ 17. *Admit or deny*, the long-term course is for a hernia to become steadily worse as times goes on, sometimes slowly and sometimes quickly when left without surgery.

¶ 18. *Admit or deny*, that the opening of a hernia cannot heal itself?

¶ 19. *Admit or deny*, medically a doctor nor a nurse practitioner cannot treat a hernia; they must be repaired through surgery?

¶ 20. *Admit or deny* that plaintiff's hernia goes into his scrotum is trapped at times and plaintiff has to work it back up into place?

¶ 21. *Admit or deny*, a truss is for temporary use?

¶ 22. *Admit or deny*, the waiting until the hernia is incarcerated or in danger of becoming incarcerated, in order to be surgically necessary can become a life or death situation?

¶ 23. *Admit or deny*, waiting until the hernia is incarcerated, in danger of becoming incarcerated in order to be surgically necessary can, or will subject a patient into sever pain?

¶ 24. *Admit or deny*, under the standard of care, a hernia ought to be repaired before it is incarcerated or in danger of becoming incarcerated and before entering the scrotum?

¶ 25. *Admit or deny*, that overexertion can cause weakness, such as simple coughing or sneezing to the hernia?

¶ 26. *Admit or deny*, the effects felt by plaintiff can range from perfectly painless, through discomfort, to being very painful indeed?

¶ 27. *Admit or deny*, a hernia ought to be inspected to ensure that it, is not becoming infected or developing into a more serious non-reducible hernia?

¶ 28. *Admit or deny*, PHS does not require its employees to conduct routine inspections on inmates' hernias?

¶ 29. *Admit or deny*, a hernia will limit a person daily activity depending on the stage of the hernia?

¶ 30. *Admit or deny*, when the hernia distends and pushes out the peritoneum forming the bottom of either the middle of the internal fossa, it is a direct or internal hernia.

¶ 31. *Admit or deny*, the very instruction Manuel given to plaintiff by Prison Health Services, Inc., the **"Fitting Instructions"** for Model **67-350** states pertaining to a hernia: ". . . Limiting activity,

12

eliminating excess weight a hernia belt or truss may provide temporary relief. However, **CURE IS SURGERY?**"

¶ 32. *Admit or deny*, feelings of weakness, pressure, burning or pain in the abdomen, groin or scrotum is usually a warning sign that the hernia is progressing and becoming worse?

¶ 33. *Admit or deny*, you were the supervisor of the medical treatment proscribed to plaintiff while at ADOC?

¶ 34. *Admit or deny*, ADOC has final authority regarding approval or disapproval of surgery for plaintiff's inguinal hernia?

¶ 35. *Admit or deny*, there are over 300 Alabama inmates diagnosed with hernias from *February 2005* through date of your response?

¶ 36. *Admit or deny*, a hernia is a case by case basis and are painful?

¶ 37. *Admit or deny*, you refuse to provide plaintiff with surgery until his hernia is incarcerated or in danger of being incarcerated?

¶ 38. *Admit or deny*, PHS has authorizes a Bradford Kindard, nurse administrator to make surgically recommendations?

¶ 39. *Admit or deny*, under the standard of care, the Protocols pertaining to hernia treatment for Alabama inmates' subjects a patient to endure pain and suffering.

¶ 40. *Admit or deny*, Alabama Board of Medical Examiners are not aware of the practice involved with ADOC and their medical providers, being a Protocol that a hernia must be incarcerated or in danger of being incarcerated in order to be surgically necessary.

¶ 41. *Admit or deny*, this Protocol ought to be changed pertaining to hernias.

¶ 42. *Admit or deny*, even if Dr. Hobbs recommended plaintiff surgery for his hernia, and because the hernia does not meet the protocol, ADOC Health Services, would have denied the recommendation regardless?

¶ 43. *Admit or deny*, PHS has a common practice, that the hernia must be incarcerated, or in danger of being incarcerated, or into the scrotum before surgically necessary?

¶ 44. *Admit or deny*, ADOC has a common practice, that the hernia must be incarcerated, or in danger of being incarcerated, or into the scrotum before surgically necessary?

¶ 45. *Admit or deny*, each person may feel different degrees of pain regarding their hernia?

¶ 46. *Admit or deny*, PHS has one standard policy, the hernia must be incarcerated or in danger of being incarcerated before surgically necessary?

¶ 47. *Admit or deny*, PHS failed to change the protocols regarding hernias or change the treatment protocols since February 2005 through October 31, 2007?

¶ 48. *Admit or deny*, it is the custom, practice, policy of PHS not to approve surgery for plaintiff's hernia unless his hernia is incarcerated, in danger of being incarcerated, or into the scrotum?

**WHEREFORE,** in regards to portions of plaintiff's discovery request, he does not oppose the fact that several questions pertaining to defendant's protocol would be repetitious and because plaintiff filed them first, before learning of defendant's position, other questions and request are deemed still relevant and ought to be answered.

Done this 15th Day 2008.

Marcellus Breach 160710
L.C.F. 28779 Nick Davis Rd.
Harvest, Alabama 35749

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that I have this 17th Day of March 2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to: **[placing into the Legal Mail Box at Limestone C.F. for mailing]**
**Alabama Dept. of Corrections**
**LEGAL DIVISION**
P.O. Box 301501
Montgomery, Alabama 36101

**Rushton, Stakely, Johnston, Garrett, P.A**
P.O. Box 270
Montgomery, Alabama 36101

**Starnes & Atchison, LLP**
**100 Brookwood Place, 7th Floor**

14

P.O. Box 598512
Birmingham, Alabama 35259-8512

®  /s/ Marcellus Breach
Marcellus Breach

15