**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**MIDDLE DIVISION**

MARCELLUS BREACH, #160710,

      Plaintiff,

                              \*      CASE NO: 2:06-CV-1133-MEF

Vs.

PRISON HEALTH SERVICES, INC.,

      Defendants.

*PLAINTIFF'S WRITTEN OBJECTIONS TO DISCOVERY REQUEST PROPOUNDED*
*UPON DEFENDANT BRANDON KINARD, ADOC*

**COMES NOW**, the Plaintiff <u>Marcellus Breach</u> (hereinafter "Plaintiff") in proper person "Pro Se," files his written objections/exceptions to the Magistrate Judge's Order entered on <u>March 14, 2007,</u> **[Court Doc. No. 511, 535,]** in regards to *"Plaintiff's Tenth –Set of Interrogatories and Request For Admissions, For Production of Documents To Defendant Under Fed.R.Civ.P., [Brandon Kinard]* **[Court Doc. No. 266]** filed on <u>November 26, 2007.</u> Plaintiff files his objection into the Record regarding the Magistrate's orders entered **[Court Doc. 536]** holding plaintiff <u>Rule 59(e),</u> Fed.R.Civ.P., tolls the 10-day time period for plaintiff to file his written objections that the Magistrate Judge relied on defendants assertion that plaintiff's discovery request were filed untimely. **[DOC's Response, Court Doc. No. 507]** is incorrect, and designed to derail discovery request when this specific discovery request is justified.

## STANDARD OF REVIEW

The law is established that as in this case of a discovery motion or other nondispositive pretrial order the decision of the magistrate judge is a final decision. [1] 28 U.S.C. § 636(b)(1)(a)(2004). Plaintiff files his written objections specifically as to the magistrate judge's denial of the motion to compel defendants to produce plaintiff Louisiana medical records which has been specifically requested, and ordered but, defendants will not produce the documents that are relevant to deliberate indifference.

## OBJECTIONS LEGAL AUTHORITY

In his motion for reconsideration, [**Court Doc. No. 530**] although plaintiff does not state which rule he is proceeding under. However, it is clear that plaintiff sought to alter or amend the judgment pursuant to Fed. R. Civ. P. 59. Rule 4(a)(4)(A) of the Appellate Rules of Procedure provides that if a party timely files in the district court a motion to alter or amend the judgment under *Rule 59*, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion. *Jackson v. Crosby*, 375 F.3d 1291, 1295 (11th Cir. 2004) (a timely motion to alter or amend the judgment automatically tolls the thirty-day period to appeal, so that it begins to run from the date of the order denying the motion); *Advanced Estimating Sys., Inc. v. Riney*, 77 F.3d 1322, 1323 (11th Cir. 1996); *Livernois v. Med. Disposables, Inc.*, 837 F.2d 1018, 1020

---

[1] *Objection.* Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. See 28 U.S.C. 636 (b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) *(en banc)*

(11th Cir. 1988). Therefore, plaintiff's time to file an appeal is tolled until the Court issues an order on plaintiff's motion for reconsideration, and thus, plaintiff's written objections are therefore, timely.

*ISSUE NO. 1*

**THE MAGISTRATE JUDGE RELIED ON THE CORRECTIONAL DEFENDANT'S RESPONSE [Court Doc. No. 507] TO PLAINITFF'S MOTION TO COMPEL [COURT DOC. NO. 493] IS ERROR AND DOES NOT SATISY THE DEFENDANT'S BURDEN TO SHOW CASUE WHY DISCOVERY IS NOT JUSTIFIED.**

Plaintiff filed a document on *March 13, 2007*, entitled: *"Motion To Reconsider, Alter, Vacate, Judgment"* **[Court Doc. No. 530]** arguing to the Magistrate Judge that his reliance on the correctional defendant response that plaintiff's discovery request was untimely is error.

*Rule 59(e)* of the *Federal Rules of Civil Procedure* authorizes district courts upon motion to alter or amend judgments. "The decision to alter or amend judgment is committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion." *American Home Assurance Co. v. Glenn Estess & Assocs.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985) (citing *Commodity Futures Trading Comm'n v. American Commodity Group Corp.*, 753 F.2d 862, 866 (11th Cir. 1984)). The Federal Rules of Civil Procedure do not specifically authorize motions for reconsideration. But they are common enough in practice.

Motions for reconsideration should not be used to raise arguments, which could, and should, have been made before entry of judgment, or to assert new theories of liability. *See* Mays *v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997); *O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992); *Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990). "'A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.'" *Lussier*, 904 F.2d at 667 (quoting *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469, *reh'g denied*, 384 F.2d 365 (5th Cir. 1967)).

Plaintiff notes at the outset that the proper form of this motion is a motion to alter or amend.; Fed. R. Civ. P. 59(e). However, any motion, served within ten days of the entry of a judgment or order, which challenges the substantive correctness of and seeks a substantive change in the judgment or order, will be considered a motion to alter or amend. *Wright v. Preferred Research, Inc.*, 891 F.2d 886 (11th Cir. 1990). The Magistrate Judge should have treated plaintiff's motion in part as a timely Rule 59(e) motion to alter or amend. *Osterneck v. E.T. Barwick Industries, Inc.*, 825 F.2d 1521 (11th Cir. 1987) (treating a motion for reconsideration as a Rule 59(e) motion); *Kladis v. Brezek*, 823 F.2d 1014 (7th Cir. 1987) (any motion challenging the correctness of a judgment and filed within 10 days is construed as a 59(e) motion); *Vreeken v. Davis*, 718 F.2d 343 (10th Cir. 1983) (same).

4

A.    *History of the Facts:*

The Magistrate Judge ordered that all of plaintiff's discovery requests are to be filed by <u>December 10, 2007</u>. [**Court Doc. No. 197, Order**]    Plaintiff filed his discovery request on defendant Kinard on <u>November 26, 2007</u> [**Court Doc. No. 266**].

On <u>February 27, 2008</u>, plaintiff filed a Motion to Compel discovery answers [**Court Doc. No. 493**], and the Magistrate Judge entered an order to show cause. [**Court Doc. No. 495**].

Defendant Kinard filed his motion to the show cause order [*ADOC Defendants' Response To Court's Order to Show Cause (Docket Numbers 495),* [**Court Doc. No. 507**] specifically arguing without objection:

> ¶ 2.    "That a review of the Plaintiff's motion to compel, at the top of Docket #493, clearly indicates that the 'EXCERPT DISCOVERY REQUEST PROPOUNDED ON BRANDON KINRAD. [COURT DOC. NO. N/A FILED ON NOVEMBER 26, 2007]" The Plaintiff goes on further in Docket # 493 to state that the requested discovery was entitled "Plaintiff's Tenth – Second Set of Interrogatories and Request for Admissions, for Production of Documents to Defendant Under Fed. R. Civ. P., [Brandon Kinar]". A review of the docket in this case reflects that the discovery Plaintiff is talking about is Docket # 266, filed on November 28, 2007."

> ¶ 3.    "That, although the file and docket in this case is voluminous, a review of the docket and file does not readily show to counsel for the ADOC Defendants that the Plaintiff sought approval/permission for the Court to file this discovery request, nor that this Court approved and/or authorized those discovery request, and further that this Court has already ordered that any discovery request filed after 11/20/07 would be untimely and that a response need not be filed.) Docket # 178."

The Magistrate Judge's Order entered [Court Doc. 179] state in pertinent part:

"[…] On November 1, 2007 the Court order entered on November 1, 20007 directed all parties that all request for discovery is to be extended from November 20, 2007 to and including December 10, 2007."

## *ARGUMENT THAT DISCOVERY REQUEST IS JUSTIFIED*

B.    *Defendant Did Not Meet His Burden:*

Arguing a matter that is totally frivolous that plaintiff's discovery was untimely when the Record reflects that it was does not satisfy defendants' obligation, or their burden. The Magistrate Judge overlooked his order granted discovery deadline extended to <u>*December 10, 2007.*</u>

<u>Under well-settled law, the party resisting production bears the responsibility of</u> <u>establishing undue burden.</u> *G-69 v. Degnan*, 130 F. . . 326, 331 (D.N.J. 1990). Generally, a party seeking to avoid discovery on a burdensomeness argument must substantiate that position <u>with **detailed affidavits** or **other evidence establishing an undue burden**</u>. "<u>An</u> <u>objection must show **specifically**</u> how a [discovery request] is overly broad, burdensome or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden." *Chubb Integrated Systems Limited, v. National Bank of Washington*, 103 F.R.D. 52, 59-60 (D.D.C. 1984); *see also* **EEOC v. Quad/Graphics, Inc.**, 63 F. d 642 (7th Cir. 1995). The resisting party must make a particular and specific demonstration of fact and cannot rely on simple <u>conclusory assertions about the difficulty of complying</u> with a discovery request. *See* Twin **City Fire Ins. Co. v. Employers Ins. of Wausau**, 124 F.R.D.

652 (D. Nev. 1989). A mere showing of burden and expense is not enough. *Ericson v. Ford Motor Co.*, 107 F.R.D. 92 (E.D.Ark. 1985).

*Judicial notice* to the Record will demonstrate just how evasive defendants have been attempting to continuously complain to the magistrate judge about the voluminous discovery request and they pound into the Magistrate Judge's mind that this case will be a only a difference of opinions excreta.

There is no need for the plaintiff to address "difference of opinions" at this time, there is absolutely no way, legally nor medically that a prison doctor and upon information and belief no longer practicing in his specific field obstetrics and gynecology, and has been moving around all across the Country from Michigan, Montana, Tennessee, Alabama and no longer practices medicine in obstetrics and gynecology, and has not disclosed information regarding his specialty -- but only practices in a prison surrounding must explain to this Court that he is qualified to proffer an opinion as to when, and when not to have plaintiff's hernia repaired. Without proof, he is not qualified, nor Board Certified in the specific area in question, i.e., surgery.

In this case, there is a specific defendant prison doctor who use to practice medicine relating to the profession of <u>obstetrics</u> or the care of women during and after pregnancy -- the branch of medicine dealing with the administration of health care to women, especially the diagnosis and treatment of disorders affecting the female reproductive organs. The sole question is, why doesn't he practice in the areas he

claimed he practiced. Has he lost his license or the ability to be insured? What kind of license does he possess today? Is discoverable.

POINT "A"

Judicial notice will reflect that this objection is regarding to discovery request propounded on defendant Brandon Kinard. The Record will reflect that *"Plaintiff's Fifth – Set of Interrogatories and Request for Admissions, for Production of Documents to Defendant Under Fed.R.Civ.P., [Brandon Kinard]* filed on or about *December 13, 2007*, [Court Doc. No. ___] was answered by Kinard on *December 17, 2007*. *[Court Doc. No. ___]*

Plaintiff would specifically point out for demonstration purposes just how evasive defendants have been in responding to discovery request. Plaintiff's **Interrogatory Number 11, [Court Doc. No. ___]** plaintiff asked Kinard:

> ¶ 11. "Specifically identify by document" whether you or has anyone acting in your behalf from any person or persons any "documents", report(s), statement(s), memorandum, or testimony concerning the "incident" in question, in this cause of action more specifically the medical records delivered directly to you on or about December 20, 2007 at Kilby Correctional Facility, by plaintiff."

**Kindard's Response No. 11:**       "No".

**Kinard doesn't answer the question!**

Judicial notice to this Record will also reflect that the Magistrate Judge upon review of an objection filed by plaintiff concerning Ruth Naglich wherein, the plaintiff clearly demonstrated that Ruth Naglich was being evasive, disingenuous in his answers, **[Court Doc. No. 479]** the Magistrate Judge "Vacated" his prior order denying a motion to

compel finding good cause. [**Court Doc. No. 483**]. The Magistrate Judge ordered Naglich to show cause.

Kinard basically has acted as *if* he has no knowledge, information regarding this case – and that is untrue. The evidence at summary judgment will demonstrate else wise. Kinard has, and can deny everything, if he desires. However, Judicial Notice his supervisor defendant Ruth Naglich's recent Affidavit submitted, after, she also, denied having any knowledge, information regarding this case: she has admitted that she was responsible for monitoring the health services provided to plaintiff while he was in Louisiana. She was over medical in Louisiana.

For information purposes, it is necessary that the Court learn that Naglich disclosed *additional* information pinpointing that Kinard has been disingenuous in his responses attempting to derail discovery.

Naglich has stated: "I <u>instructed</u> Brandon Kinard to <u>contact</u> Southeast Louisiana Correctional facility to have inmate Marcellus Breach <u>returned</u> to an ADOC in-state facility to be examined for an alleged hernia. Naglich further has stated: "I <u>did instruct</u> Brandon Kinard <u>and Lynn Brown to go to Kilby and speak with the inmate</u> . . . ." [Id. Naglich, <u>February 14, 2007</u>, ADOC Defendants' Response To Court's Order (Document #452)][Court Doc. No. ___N/A]

What is so interesting, Kinard previously denied that he had *any* knowledge of basically anything that as if, he had no part in this case, is just not matching up to plaintiff solid undefeated evidence.

Plaintiff has solid evidence that will place Kinard and Naglich at the scene on "7-12-06 denying, and personally participating in denying surgery request. Ruth Naglich did so, denied surgery request as "deemed unnecessary."

Plaintiff submits his excerpt of discovery request in dispute as Exhibit "A".

**PLAINTIFF'S EXCERPT DISCOVERY REQUEST PROPOUNDED ON BRANDON KINDARD, [Court Doc. No. ____]**

### II.    DEFINITIONS AND INSTRUCTIONS:

Definitions and Instructions are continuing throughout this Discovery request. As applied to the first set of request for discovery submitted on or about *November 13, 2007,* pursuant to *Rule 33, 34, & 35,* Federal Rules of Civil Procedures.

¶ 1.    Please explain and "*identify by document*" who possesses the authority to authorize medical treatment regarding this "incident."

¶ 2.    "*Identify by document*" the scope of your practice regarding this "incident."

¶ 3.    "*Identify by document*" why you had plaintiff seen by one of the clinicians at Kilby for evaluation of the hernia, and that any subsequent repair: "it had to be recommended by one of the providers . . . ." after Dr. John A. Tassin, M.D., questioned surgery, why was plaintiff seen by a nurse practitioner?

¶ 4.    Disclose and produce, any and all "documents" in your possession, regarding any involvement with you or your Office regarding this "incident."

¶ 5.  *"Identify by document"* your common practice involving, relying on nurse practitioner Bradford Adams.

¶ 6.  *"Identify by document"* why plaintiff had to undergo so many different evaluations, starting from Dr. Tassin, M.D. regarding this *incident?*

¶ 7.  Why did you call Louisiana on 7/12/06 regarding this *"incident"* *"identify by document?*

¶ 8.  Disclose any and *"documents"* communications whether written, or oral, *identify* any and all person regarding the 7/10/06 fax report to Ruth Naglich.

¶ 9.  "Identify by document" your common practice to rely on a nurse practitioner regarding surgical referrals of hernias.

¶ 10.  Disclose the substance of Dr. Robbins, M.D., and his consultation with nurse practitioner B. Adams, *"identify by document"* all findings.

¶ 11.  *"Identify by document"* any and all orders, policy, regulation, practice, protocols, duties, why you recommended that plaintiff be seen by one of the clinicians at Kilby for evaluation of the hernia on or about 12/20/06.

¶ 12.  Why did you recommend that plaintiff be evaluated by one of the clinicians at Kilby after Dr. John A. Tassin, M.D., already conducted his evaluation and noted his order and recommendations? *"Identify by document"* all policies, procedures in support with your answers.

¶ 13.  *"Identify by document"* whether Dr. John A. Tassin, M.D., is considered a medical provider by ADOC.

¶ 14.  Explain what Dr. Tassin's investigation regarding questioning hernia repair of plaintiff's hernia was not followed up by this nurse practitioner that you rely on as a medical provider?

¶ 15.  *"Identify by document"* and explain whether it is common practice that a nurse practitioner can override any doctor orders, investigations, or recommendations?

¶ 16.  Please explain based on the medical records that reflect since you had plaintiff seen and evaluated by a nurse practitioner and his evaluation reflected that of plaintiff having a "small (3 cm X 5 cm) inguinal hernia on 12/27/06; and, on 4/30/06 Dr. Hobbs, M.D., stated "Large" Direct Inguinal Hernia, has plaintiff's hernia progressed?

¶ 15.  *"Identify by document"* any and all orders and recommendations regarding plaintiff from South Louisiana Correctional Services.

### ADMISSIONS

¶ 1.  *Admit or deny,* you wanted a second opinion regarding plaintiff's hernia?

¶ 2.  *Admit or deny,* a nurse practitioner at Kilby, B. Adams was that second opinion?

¶ 3.  *Admit or deny,* a nurse practitioner's recommendation basically overrode Dr. John A. Tassin, M.D., order and recommendation as needs repair?

¶ 4.  *Admit or deny,* a nurse practitioner is authorize under you supervision to make surgical referrals?

¶ 5.  *Admit or deny,* a nurse practitioner is not licensed to make any surgical recommendations?

¶ 6.  *Admit or deny,* a nurse practitioner is not qualified as a doctor regarding hernias?

### RELEVANCY ARGUMENT

Plaintiff's *Interrogatory No. 1,* has been answered. Defendants claim no one has to approve any surgery request is so ill founded. Who watches the budget?  The conflict and dispute regarding discovery are as follows:

**Interrogatory No. 2,**  [Id.] Plaintiff argues he has evidence that Kinard did so participated in the medical decision to deny plaintiff surgery on 7-12-06.  Kinard is only a

two year nurse, but he made a medical decision beyond the scope of his practice in nursing resulted into an injury is relevant, admissible.

**Interrogatory No. 3.** [Id.] Plaintiff has evidence that Kinard was instructed per Ruth Naglich to transfer plaintiff back to Alabama to be seen by "*their*" physicians. Plaintiff has further evidence that Kinard wanted plaintiff to be examined again, by "their" physicians and not Dr. Tassin because he knew "*their*" physicians would comply, follow the established standard being their *de facto* protocol that plaintiff's hernia must be incarcerated, or in danger of becoming incarcerated before surgery would be necessary. Plaintiff has overwhelming evidence that this stage is medically incorrect, outdated, obsolete, and dangerous to plaintiff's health and safety – it is unconstitutional.

**Interrogatory No. 4, 5,6.** [Id.] Plaintiff requested documents because Naglich admitted that the medical personnel in Louisiana contacted her Officer via-phone. Evidence reflects that it was a fax report. Secondly, Kinard's common practice is relevant because he has stated numerous of times to response to discovery request that certain acts are beyond the scope of his practice. Interestingly, it wasn't beyond the scope of his practice to personally participate, call Diana Lott with detailed instructions that plaintiff couldn't have surgery. This question is relevant. Next, **Interrogatory No. 6**, [Id.] Kinard met with plaintiff personally. Kinard personally stated: "I am going to give you your surgery." Kindard also stated: "We need our physicians to examine you, they have to say you need surgery." This question is relevant.

13

**Interrogatory No. 7**. [Id.] Why did Brandon Kinard call Louisiana? Is relevant.

**Interrogatory No. 8,9,10**. [Id.] Are relevant because all defendants relied on a medical decision made by a nurse practitioner. Dr. Robbins did not, never once examined plaintiff, he has no ideal of the injury. Dr. Lyrene, never once examined the plaintiff and has no idea of the injury. But, these doctor give opinions outside the scope of their practice are also, relevant. It is generally known that *Rule 26* focuses not on the status of the witness, but rather the substance of the testimony." *Brown v. Best Foods,* 169 F.R.D. 385, 388 (N.D. Ala. 1996) (internal quotations and citations omitted). *See also Green v. Office of the Sheriff's Office,* 2002 U.S. Dist. LEXIS 26485, at *16-17 (M.D. Fla. 2002) ("The key to the treating physician's being excused from the report requirement is that she testify **only as to observations made during the care and treatment of the party**."); *Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC,* 227 F.R.D. 421, 423-24 (M.D.N.C. 2005) ("A treating physician is a participant or fact witness when it comes to describing the diagnosis and treatment of a party's condition. However, because of the physician's specialized training and knowledge, when the physician testifies, he or she testifies as an expert witness. Therefore, the physician must be disclosed as an expert because he or she is relying on scientific, technical, or other specialized knowledge. **When the treating physician goes beyond the observations and opinions obtained by treating the individual and 'expresses opinions acquired or developed in anticipation of trial, then the treating physician steps into the shoes of an expert who may need to provide a**

**Rule 26(a)(2)(B) report.");** *Wreath v. United States,* 161 F.R.D. 448, 449 (D. Kan. 1995) ("To the extent that the treating physician testifies only as to the care and treatment of his/her patient, the physician is not to be considered a specially retained expert notwithstanding that the witness may offer opinion testimony under Fed. R. Evid. 702, 703 and 705.").

In this case, there is too much evidence from prison doctors who are not experts but have proffered themselves as an expert. The general rule is a treating physician may testify <u>from personal observation</u> of his patient that she is suffering pain.

**Interrogatory No. 12:** [Id.] Why did Kinard sign plaintiff up for sick call to be seen by a nurse when Dr. Tassin already questioned surgery? Tassin was not qualified to make that determination, only a surgeon. But, Kinard wanted plaintiff to be seen by "their" nurses, and not doctors. Is also, relevant.

**Interrogatory No. 13,** [id.] Is self explanatory, because defendants claim they rely on medical providers. Dr. Tassin was a medical provider and plaintiff has evidence that on 7-12-06 Naglich specifically denied surgery request.

**Interrogatory No. 14,15,16,17.** Are also relevant. Plaintiff can discover into nurse practitioner Bradford Adam's common practice-to-practice medicine in the capacity of a doctor making surgical decisions beyond the scope of his practice. Second, **No. 17,** Naglich claimed that all order and recommendations were carried out. Tassin made a

recommendation in this case he questioned surgery. Where are the follow up orders, is discoverable.        Plaintiff's Admissions are self-explanatory.

## CONCLUSION

A physician who has examined an injured party may describe what he has seen and give his expert inference therefrom. Additionally, a treating physician may testify from personal observation of his patient that he is suffering pain. Several doctors in this case are providing surgical opinions beyond the qualifications. Dr. Hobbs stopped examining plaintiff's hernia in April 2007, because defendants know that if any additional evidence is placed into the Record demonstrating that his hernia has worsen, liability will attach.    That is prima facie, that a physician or doctor has not seen plaintiff since April 30, 2007, regardless of repeated sick calls. Plaintiff moves this Court to grant what is fair.

Respectfully,

This 19th Day March 2008,

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama  35749

16

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this 20th Day of March 2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to: **[placing into the Legal Mail Box at Limestone C.F. for mailing]**
**Alabama Dept. of Corrections**
**LEGAL DIVISION**
**P.O. Box 301501**
**Montgomery, Alabama 36101**

**Rushton, Stakely, Johnston, Garrett, P.A**
**P.O. Box 270**
**Montgomery, Alabama 36101**

**Starnes & Atchison, LLP**
**100 Brookwood Place, 7th Floor**
**P.O. Box 598512**
**Birmingham, Alabama 35259-8512**

_____
Marcellus Breach

17

# EXHIBIT "A"

**IN THE DISTRICT COURT OF THE UNITED STATES * 10TH**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

<table>
<tr><td>MARCELLUS BREACH, #160710</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td>CASE NO: 2:06-cv-1133-MEF</td></tr>
<tr><td>Vs.</td><td>*</td><td></td></tr>
<tr><td>PRISON HEALTH SERVICES, INC., et. al.,</td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
</table>

*PLAINTIFF'S TENTH  -- SECOND SET OF INTERROGATORIES AND REQUEST*
*FOR ADMISSIONS, FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS*
*UNDER FED. R. CIV. P.,*

TO:      <u>DEFENDANT BRANDON KINDARD,</u>  *ADOC*

**COMES NOW**, the Plaintiff <u>*Marcellus Breach*</u> (hereinafter "Breach"), in proper

person "Pro Se," submits this Second set of discovery request to Defendant pursuant to

*Federal Rules of Civil Procedures, Rule 33, 34 & 36*, hereby requesting that named party is

requested to answer separately, fully and in writing, the following interrogatories under

oath, affirmation in accordance within the definitions and instructions set forth below,

within thirty (30) days after service of these **Interrogatories, Request for Admissions**, and

**Production of Documents;** furthermore, for the defendant to provide full disclosure along

with their answers herein, copies thereof supporting evidentiary materials, as follows:

## II.    DEFINITIONS AND INSTRUCTIONS:

Definitions and Instructions are continuing throughout this Discovery request. As applied to the first set of request for discovery submitted on or about November 13, 2007, pursuant to *Rule 33, 34, & 35*, Federal Rules of Civil Procedures.

¶ 1.    Please explain and *"identify by document"* who possesses the authority to authorize medical treatment regarding this "incident."

¶ 2.    *"Identify by document"* the scope of your practice regarding this "incident."

¶ 3.    *"Identify by document"* why you had plaintiff seen by one of the clinicians at Kilby for evaluation of the hernia, and that any subsequent repair: "it had to be recommended by one of the providers. . . ." after Dr. John A. Tassin, M.D., questioned surgery, why was plaintiff seen by a nurse practitioner?

¶ 4.    Disclose and produce, any and all "documents" in your possession, regarding any involvement with you or your Office regarding this "incident."

¶ 5.    *"Identify by document"* your common practice involving, relying on nurse practitioner Bradford Adams.

¶ 6.    *"Identify by document"* why plaintiff had to undergo so many different evaluations, starting from Dr. Tassin, M.D. regarding this *incident?*

¶ 7.   Why did you call Louisiana on 7/12/06 regarding this *"incident"* *"identify by* *document?*

¶ 8.   Disclose any and *"documents"* communications whether written, or oral, *identify* any and all person regarding the 7/10/06 fax report to Ruth Naglich.

¶ 9.   "Identify by document" your common practice to rely on a nurse practitioner regarding surgical referrals of hernias.

¶ 10.   Disclose the substance of Dr. Robbins, M.D., and his consultation with nurse practitioner B. Adams, *"identify by document"* all findings.

¶ 11.   *"Identify by document"* any and all orders, policy, regulation, practice, protocols, duties, why you recommended that plaintiff be seen by one of the clinicians at Kilby for evaluation of the hernia on or about 12/20/06.

¶ 12.   Why did you recommend that plaintiff be evaluated by one of the clinicians at Kilby after Dr. John A. Tassin, M.D., already conducted his evaluation and noted his order and recommendations? *"Identify by document"* all policies, procedures in support with your answers.

¶ 13.   *"Identify by document"* whether Dr. John A. Tassin, M.D., is considered a medical provider by ADOC.

3

¶ 14.  Explain what Dr. Tassin's investigation regarding questioning hernia repair of plaintiff's hernia was not followed up by this nurse practitioner that you rely on as a medical provider?

¶ 15.  *"Identify by document"* and explain whether it is common practice that a nurse practitioner can override any doctor orders, investigations, or recommendations?

¶ 16.  Please explain based on the medical records that reflect since you had plaintiff seen and evaluated by a nurse practitioner and his evaluation reflected that of plaintiff having a "small (3 cm X 5 cm) inguinal hernia on 12/27/06; and, on 4/30/06 Dr. Hobbs, M.D., stated "Large" Direct Inguinal Hernia, has plaintiff's hernia progressed?

¶ 15.  *"Identify by document"* any and all orders and recommendations regarding plaintiff from South Louisiana Correctional Services.

Done this 20 th Day November 2007.

®  _____

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

4

## *CERTIFICATE OF SERVICE*

**I HEREBY CERTIFY**, that I have this **21ˢᵗ** Day of November 2007, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

Alabama Dept. of Corrections               Rushton, Stakely, Johnston, Garrett, P.A.
P.O. Box 301501                            P.O. Box 270
Montgomery, Al 36130                       Montgomery, Alabama 36101

®  *Marcellus Breach*

Marcellus Breach

5





PM

PM

HUNTSVILLE AL 358

HUNTSVILLE AL 358

200

2008

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabam 35749



MAR

20

MAR

LEGAL MAIL

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
P.O. BOX 711
MONTGOMERY, ALABAMA    36101