IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MIDDLE DIVISION

MARCELLUS BREACH, #160710,

    Plaintiff,

Vs.                                    CASE NO: 2:06-CV-1133-MEF

PRISON HEALTH SERVICES, INC.,

    Defendants.

*MOTION TO STRIKE and/or COMPEL EITHER A RULE 26(A)(2), FED.R.CIV.P., REPORT FROM DR. MICHAEL ROBBINS and / or MORE DEFINITE STATEMENT / PRODUCTION OF DOCUMENTS/ REQUEST TO RE-OPEN DISCOVERY TO FILE DEPOSITIONS*

**COMES NOW**, the Plaintiff *Marcellus Breach* (hereinafter "Plaintiff") in proper person "Pro Se," pursuant to *Rule 26(a)(2)* Dr. Michael Robbins, is not the treating physician, never once examined, diagnosed or treated Plaintiff continues to attempt "BACK DOOR" and purport himself out as an expert in hernia treatment without a showing of proper qualifications. He is not board certified with the **American Board of Surgeons or Royal College of Surgeons.** He is now practicing prison medicine. Plaintiff objects and request leave to conduct depositions.

Plaintiff objects to the "opinion" submitted when this Court did not request nor direct Robbins to <u>submit an additional opinion is prejudice</u> without a Rule 26 Report, and a first showing a sufficient foundation that he is qualified to offer an opinion pertaining

1

to the treatment of hernias. In addition, since Robbins wants to be an experts, plaintiff request that this Court order a Report under Rule 26 and that Dr. Michael Robbins to submit a supplement affidavit to this Court disclosing his "current" medical license on file with the Clerk of Court for Montgomery County, Alabama and with the Alabama State Medical Licensure Commission in compliance with the directives of this Court's Order entered on <u>March 28, 2006</u> [**Court Doc. No. 556**] for good cause and, Plaintiff states as follows:

1.  Robbins is too inconsistent: <u>First</u>, he claims to have been board certified <u>before he graduated from medical school</u> just doesn't happen; it won't happen until a student completes his/her training and residency. In this case, Robbins became board certified in 1979, **while he was still in medical school is too questionable**. <u>Secondly</u>, Robbins also became "licensed" in Alabama while he was <u>still completing his residency training</u> in 1986, just doesn't happen.

He entered private practice in 1989. The number one question is, what kind of license did he receive in Alabama before completing his residency and training? It could have been any kind of license.

If Robbins is going to "back door" this case offering experts opinions, Plaintiff request production pursuant to section Title 20-2-116, Code of Alabama, 1975 and Robbins verify that he is recertified with any/all State Board of Medical Examiners and any and all American Boards of Internal Medicine. Is his certification current, and his

2

license current and not in "correctional medicine" or, "institutional medicine". Is he current is the question in the practice of medicine? Robbins stated he became licensed to practice in Alabama in 1986. [1]**What are of "practice" was he licensed? Simply stating he was licensed in Alabama is too vague because nurses can be licensed in Alabama.** He entered private practice in "Internal Medicine" in 1989 thru 2002. He has been out of internal medicine and now practices in corrections based practice. [Id]

2. Since 2002 Robbins has been practicing institutional medicine or correctional medicine. It's been well over six (6) years since he has ever repaired a hernia, if, he has repaired a hernia is questioned he lists no hospitals, clinics or even stated he actually repaired hernia while in private practice. His opinion and experience is completely vague, he lists no dates, years, to back his experience. He is currently not, repairing hernias. Discovery is requested. Additionally, his practice in institutional and correctional medicine does not qualify Robbins to proffer an opinion pertaining when and when not to have plaintiff's hernia repaired because the repair constitutes surgery.

3. Under Alabama law, Robbins must apply for recertification every three years in Internal Medicine. Robbins is solely practicing Corrections' based practices and the question is his he currently still board certified in Internal Medicine?

---

[1] Medical defendants use vagueness to-wit: "**licensed in Alabama**" without more. The Court ought not leap in faith believing they are license in medical practices without a showing of move, specific area of medicine they are licensed to practice. The question is, what area of license are they licensed to practice. This is too vague too past tense.

4.     Plaintiff Objects to Robbins offering an opinion without first being qualified in hernia repair. A physician must be licensed to actually operate and repair hernias, and Robbins is not licensed. If Robbins is going to offer an opinion outside the scope of a treating physician, then Robbins must first, be qualified as an expert under Rule 702, Fed.R.Evid. Plaintiff object to the testimony offered in Robbins's affidavit because he has stepped into the shoes of an expert and his opinion is based on "specialized knowledge" Rule 701(c), Fed.R.Evid.

5.     Dr. Robbins has stated that he became certified with the American Board of Internal Medicine but he does not say whether he is currently board certified. Dr. Robbins for some reason left a private practice to enter practice in a prison surrounding. Dr. Robbins probably was considered a general internist before entering and practicing "Corrections-base practices". He earned his medical degree from the University of Virginia (1977-1981), he received board certification before he received "a license" is interesting, and unbelievable; he claims he completed his residency in Internal Medicine at various hospitals and facilities in Pennsylvania and Alabama before he received his license in Alabama in 1986, is also too unbelievable. [2]

Dr. Robbins in 1986, became licensed to practice in Alabama and entered private practice from 1989 thru 2002 in "Internal Medicine). He has been out of private practice since 2002, well over six (6) years, he has been out of private practice and solely involved

---

[2] When does a medical student receive both a license and board certification before he completes medical school and residency and training? See, Robbins affidavit, he was in 1979 board certified, while still in medical school 1977 thru 1981, and in 1986 he was licensed in Alabama. Does not aid up.

4

in institutional medicine. Under Alabama law, and since Robbins has been out of private practice for well over six years in "Internal Medicine" has he been recertified with the State Board of Medical Examiners or, with the American Board of Internal Medicine? See, § 20-2-116, Code of Alabama, 1975.

6. Dr. Robbins is not a member of the American College of Physicians, nor a member of the Internal Medicine Associates. Although he has practiced as a general internist in from 1989 thru 2002 <u>he is now practicing institutional medicine or correctional- base practices</u>, he is not certified by the National Board of Medical Examiners and he is not a member of the American College of Physicians. He is not certified with the American Board of Surgeons or Royal College of Surgeons.

Dr. Robbins is not licensed to perform surgery on hernias. He can evaluate all day long, and he only did evaluation and observation while in medical school, and in residency training and attempts to testify as a expert regarding hernia complications a and he would be barred in any Court attempting to testify as a similar situated medical provider when only surgeons can repairs hernias, legally, ethically. See, 6-5-548(b)(2), Code of Alabama, 1975. Robbins in not licensed to perform surgery on hernias and he is incompetent to testify against another surgeon as he attempts to do in this case, and also attempts to do in his last affidavit regarding hernia complications. He is not qualified.

7. Plaintiff is skeptical about Dr. Robbins's qualifications to opine on an issue such as "when and when not to provide surgery". Dr. Robbins is strictly this date, practices in

**Corrections-based practices**, [ Id.] He is not a Surgeon. He has not written or published articles or case studies nor has he produced one document to back up his methodology in hernia treatment. Dr. Robbins does have hands-on, substantial experience with treating patients with hernias, after, he was out of his residency and training; he admits he makes referral to surgeons who are the only licensed physicians who can actually perform surgery which is the only cure. However, he has very little experience with the actual "treatment" being the surgery. He cannot ascertain when and when not a hernia is in "danger of being incarcerated, strangulated or into the scrotum". He cannot opine when and when not to have a hernia repaired, he his not a Surgeon. He has never once, repaired a hernias. He is not the treating physician, never once examined Plaintiff and his opinion is one of an expert, <u>without a Report is prejudice</u> and denies Plaintiff with an opportunity to review any articles, and his methodology must be challenged as will defendants agree to peer review?

8. Plaintiff is requesting Robbins to explain whether he has had his board certification renewed with the American Board of Internal Medicine and to produce such documents demonstrating that he does in fact have a current certification. Also, for Dr. Robbins to disclose his current license on file with the Clerk of Montgomery County, Alabama under § 34-24-342, Code of Alabama, 1975.

## *MEMORANDUM AT LAW / POINTS ON AUTHORITY*

Plaintiff is specifically objecting to Dr. Robbins attempting to opine as an expert without a written Report. Robbins is offer an opinion in the shoes of an expert without disclosing a Report is highly prejudice, he is not the treating physician and relies on another physician diagnosis. Plaintiff argues that Robbins has stated in his affidavit:

> "The pathogenesis (causes), evaluation of and treatment options for abdominal hernias are a routine part of medical training. Surgical rotations in particular provide experience in outpatient and inpatient evaluation of hernias as well as experience in assisting in the surgical repair where appropriate. As far as I am aware, every medical student who completes their program has such experience.
>
> My residency training included rotations in outpatient clinics, emergency rooms, hospital wards, intensive care units, and operating room (all area where hernias are routinely seen, evaluated, and/or treated). In the course of my training, I was involved in some capacity with the treatment of many hundreds of abdominal hernias. They are a very common condition. I have been involved with the treatment of and complications of abdominal hernias. Less often, but rarely, I have evaluated and treated the complications of surgery done to repair hernias. Complications, which by definition, would not have occurred had surgery not been done. I have evaluated and recommended treatment for patients in whom surgical repair has failed for various reasons." [Id]
>
> ". . . Treatment is straightforward and involves finding a method to reinforce or strengthen the weak area. Applying reinforcement with wraps, corets, trusses, or even hand held pressure all work. Surgery reinforces the area of weakness with tissue, which does no more or less than the other methods in terms of reinforcement. . . . " Id. P. 2, ¶ 4. Notice of Filing, April 11, 2008, PHS Defendants, Court Doc. No. N/A]

<u>Residency Training and</u> Medical school experience / training does not count in this case. Robbins never once stated he has repaired a hernia; admits he has made referrals

7

for repairs and he has been basically a observing student. His experience stops after his residency and training. He has not received any surgical training at any surgical unit / division at any hospital. When did all this experience occurs is the question? In medical school or his residency training? However, he did not become licensed to practice medicine in Alabama until 1986 and did not complete his residency until 1989. He has not stated that he had a medical license in Virginia, but he became board certified by the American Board of Internal Medicine in 1976 <u>before</u> he completed medical school just doesn't happen. A student must complete medical school first, then do his residency and training before being board certified, also, before obtaining a medical license. Robbins is trying the best he can, but he is unsuccessful in his manipulation.

Robbins is the <u>first</u> physician who became board certified "BEFORE" <u>ever completing medical school</u>. Interesting, Robbins alleges he became board certified in 1979. **He didn't complete medical school until 1981. He didn't complete his residency training until 1989.** But how, can he become board certified in medicine <u>before</u> he finishes medical school, and before he completes his "training and residency training" <u>does not make any sense</u>. He is not being truthful. This is not reliable at all! Plaintiff objects. Discovery is requested.

Assuming *arguendo*, the fact is, he has not listed one hospital he actually practiced hernia treatment, surgery, since 1989 when he completed his residency. Very interesting

8

he never stated in his private practice he repaired a hernia, or examined a hernia. His vague outline is not adding up.

Plaintiff will move to block from trial the testimony of any expert not timely disclosed under Rule 26. The commentary to Rule 26 distinguishes between retained experts and witnesses providing expert testimony because of their involvement in the facts of a case: Dr. Robbins is not, a treating physician. A "treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report." Rule 26, cmt. 1993 Amendments, subdivision (a) P (2). A treating physician is exempt from Rule 26(a)(2)(B)'s reporting requirements to the extent his opinions are "related to information disclosed during the care and treatment of plaintiff. *Brown v. Best Foods*, 169 F.R.D. 385, 389 (N.D.Ala. 1996).[3]

Contrast that with a treating physician who reviewed another doctor's medical records in order to opine on the appropriateness of the treatment provided; in that case he would be "retained" within the meaning of Rule 26(a)(2)(B) notwithstanding the fact that he also happens to be the treating physician. *Wreath v. U.S.*, 161 F.R.D. 448, 449-50 (D.Kan. 1995).

Robbins would be called "retained" within the meaning of Rule 26(a)(2)(B), although he is a defendant because he is not a treating physician and offers opinions beyond any treatment in this case. He attempts to explain to the Court when and when

---

[3] Dr. Robbins can not rely on being a treating physician and attempt to enter testimony as an expert in the filed of hernia treatment without a Report. Rule 701(c) Fed.R.Evid.

not have a hernia repaired, and he has never actually repaired a hernia, he has no experience in hernia repair.

Finally, if a treating physician must determine the cause of his patient's injury in order to treat him, then the physician's testimony on that issue is permissible as lay testimony. *U.S. v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (only when considering hypothetical questions is the physician treated as an expert witness), *but see* 29 Wright & Miller, FED. PRAC. & PROC. EVID. 6253 (*Scope*) (Supp. 2007) (deeming *Henderson* incorrect because F.R.Evid. "703 explicitly states that expert opinion may be based on facts perceived by the witness").

Of course, "a [defendant] may not avoid the requirements of providing an expert report by simply indicating that his/her expert is a treating physician. Instead, Rule 26 focuses on the substance of the testimony rather than the status of the witness." *Schneider v. Hertz Corp.*, 2007 U.S. Dist. LEXIS 33294, 2007 WL 1362743 at * 1 (M.D.Fla. 5/7/07) (unpublished). Although the advisory committee note seems to say that treating physicians never have to submit expert reports, most courts have taken the position that "the plaintiff can not avoid the requirements of Rule 26 by simply indicating that [his] expert [is] plaintiff['s] treating physician . . . . Rule 26 focuses not on the status of the witness, but rather the substance of the testimony." *Brown v. Best Foods, A Division of CPC Intern., Inc.*, 169 F.R.D. 385, 388 (N.D. Ala. 1996) (quoting *Bucher v. Gainey Transp. Service of Indiana*, 167 F.R.D. 387, 390 (M.D.Pa.1996)). A treating physician's opinions that are

related to the care and treatment of a patient do not give rise to the expert report requirement. *Id.* at 388 (quoting *Salas v. United States*, 165 F.R.D. 31, 33 (W.D.N.Y.1995)). For example, a treating physician does not need to submit a report when the opinion is about the existence or the cause of a patient's injury. *Id.* at 387-88 (citing *McGuire v. Davis*, 437 F.2d 570, 573 (5th Cir. 1971); *Salas*, 165 F.R.D. at 33; *Baker v. Taco Bell Corp.*, 163 F.R.D. 348 (D. Colo. 1995); *Harlow v. Eli Lilly & Co.*, 1995 U.S. Dist. LEXIS 7162, 1995 WL 319728 (N.D. Ill. May 25, 1995)). However, a treating physician's testimony that another physician breached the standard of care gives rise to the expert report requirement because such testimony "extends beyond the facts disclosed during care and treatment of the patient." *Id.* at 389 (quoting *Salas*, 165 F.R.D. at 33).

In this case, Plaintiff argues that the affidavit of Dr. Robbins "clearly go well beyond testimony of a mere treating physician" because he reviewed the files of other doctors " and they he has no experience outside residency completion, in actual treatment of a hernia which is the surgery.

Dr. Robbins cannot rely on his questionable experiences that he did while in med-school. He names no hospitals, medical clinics where he actually repaired a hernia. He is not a Surgeon.  The rule of law is, when a witness relies "solely on primarily on experience, then the witness "must" explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that

experience is reliably applied to the facts." Frazier, 387 F. 3d at 1261. Hobbs qualifications and experience are not sufficient to render his opinions reliable. *Id.*

## CONCLUSION

This case is regarding medical issues and Daubert analysis would not fully apply. The guiding hand for the Court would be **Kumho Tire Co., Ltd. v. Carmichael**, 526 U.S. 137, 153-54, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (focusing on an expert's methodology, as opposed to his conclusions, in determining whether his opinion was admissible under Rule 702) In *Kumho* In *Kumho Tire*, the Court said, "[T]he objective of . . . [the court's gatekeeping requirement] is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." 526 U.S. at 152. The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). And the court's gatekeeping function requires more than simply "taking the expert's word for it." FED. R. EVID.702 advisory committee's note. Upon these premises, the court turns to consider the issues.

Although *Daubert* originally involved only scientific expert testimony, the Supreme Court, in **Kumho Tire Co. v Carmichael**, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999), explained that the same type of analysis was also required when

12

evaluating non-scientific expert testimony. To assist courts in conducting the required assessment, the Supreme Court provided a non-exhaustive list of four factors to consider: "(1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community." *Allison*, 184 F.3d at 1312 (citing *Daubert*, 509 U.S. at 593-94). "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." *United States v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004) (citations omitted). Thus, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152.

Regardless of the specific factors considered in evaluating the reliability of expert testimony, "[p]roposed testimony must be supported by appropriate validation- i.e., 'good grounds,' based on what is known." *Daubert*, 509 U.S. at 590. In most cases, "[t]he expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." Fed. R. Evid. 702, advisory committee's notes. Yet, "**[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.**" *Id.* In any case, "[p]resenting a

13

summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough." *Cook ex rel. Tessier v. Sheriff of Monroe County*, 402 F.3d 1092, 1113 (11th Cir. 2005).

**WHEREFORE**, in the interest of justice, plaintiff would request that this order Dr. Robbins to produce a current copy of his medical license that are on file with any agency in the State of Alabama that would qualify him to offer an opinion pertaining to surgery also, Plaintiff request that a Report be filed by Robbins pertaining to his opinion or, allow deposition to be conducted and grant whatever relief this court deems appropriate.

Done this 20th Day March 2008.

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama  35749

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY**, that I have this 21st Day of April 2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

**Alabama Dept. of Corrections**
**LEGAL DIVISION**
P.O. Box 301501

Montgomery, Alabama 36101
Rushton, Stakely, Johnston, Garrett, P.A
P.O. Box 270
Montgomery, Alabama 36101

**Starnes & Atchison, LLP**
100 Brookwood Place, 7th Floor
P.O. Box 598512
Birmingham, Alabama 35259-8512

® _____
Marcellus Breach



MARCELLUS BREACH, AIS# 160710
Limestone CF / Dorm D
28779 Nick Davis Road
Harvest, AL 35749-7009

PM

OFFICE OF THE CLERK
UNITED STATES DISTRICT COURT
P.O. BOX 711
MONTGOMERY, ALABAMA    36101

This correspondence is forwarded from an Alabama State Prison. The contents have not been evaluated, and the Alabama Department of Corrections is not responsible for the substance or content of the enclosed communication.

