IN THE DISTRICT COURT OF THE UNITED STATES . . .
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, #160710          *

    Plaintiff,          *

Vs.          *          Civil Action: 2:06-CV-1133-MEF

PRISON HEALTH SERVICES, INC., et al.,

    Defendants.          *

## NOTICE OF OBJECTION TO ADMISSIBILITY OF EVIDENCE OF AN AFFIDAVIT BY WILIAM HOBBS [Court Doc. No. 518 at 3-4]

Comes now, the Plaintiff _Marcellus Breach_ (hereinafter "Plaintiff") in proper person "Pro Se', hereby files his notice of objections to inadmissible, contradictive testimony contained in an affidavit by defendant William Hobbs [**_Court Doc. No 518 at 3-4_**] as inherited contradictive testimony, for sole purpose to negate the existence of any genuine issue of material fact for summary judgment purposes: In further support plaintiff states as follows:

1.    The rule of law is that a party may challenged the admissibility of evidence of an Affidavit by filing a notice of objection. **_Jordan v. Cobb County, Ga.,_** 227 F. Supp. 2d 1322, 1346 (N.D. Ga. 2001); **_Morgan v. Sears, Roebuck and Co.,_** 700 F. Supp. 1574, 1576 (N.D. Ga. 1988); See also, **_Lane v. Celotex,_** 782 F.2d 1526, 1533 (11th Cir. 1986) (noting that courts may

1

disregard "affidavits that 'contradict, without explanation, previously given clear testimony'").

## I. HISTORIC FACTS / TESTIMONY

In this case, plaintiff has alleged and challenged that the defendants have established, created and are enforcing a de facto policy of refusing to pay for non-incarcerated hernias that cause pain and discomfort unless the hernia is incarcerated or into the scrotum as a de facto policy, which violates the Constitution. [*Doc. 68 at 3*]

On *July 20, 2007,* defendant William Hobbs was added as a party to this litigation (*Doc. #98*) wherein, plaintiff alleged that defendant Hobbs supports a custom or usage of a policy that is so permanent and well settled as to have the force of law of not repairing hernias unless they are incarcerated or strangulated or into the scrotum. [*Doc. # 93 at 12*]

PHS defendants answered and filed their Special Report on *July 13, 2007.* PHS submitted an Affidavit from William Hobbs, and also adopted in their defense in their Special Report (*Doc. # 86*) counsel for the defendants argued extensively:

". . . If a prisoner in the Department of Corrections has a hernia which must be repaired, it has to meet certain protocols by the Department. [Exhibit "A" –Affidavit of Dr. William Hobbs]. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated in order to be surgically necessary. [Id.] The medical evidence indicates that Breach does not meet the surgical protocol because his hernia is easily reduced. . . . [Id.] [*Court Doc. No. 86 at 7-8*]

Counsel further pounded the plaintiff's physician and general surgeon Dr.
Yerubandi, M.D., didn't know nor have knowledge of the Alabama Department of
Correction's Protocol stating:

> "Furthermore, Dr. Yerubandi is clearly not familiar with the Alabama
> Department of Corrections' policies and procedures concerning elective
> surgery, with specific emphasis on elective hernia repairs." Id. at 8

Clearly counsel is referring directly from the Protocol as stated, explained in great
details by defendant Hobbs.

## II.

### *WILLIAM HOBBS INCONSISTENT TESTIMONY IS DUE TO BE STRICKEN*

William Hobbs Special Report *[Court Doc. No. 144]* he relies on his defense stating
that the ADOC has this procotol. It is too late to change his story.

Since defendants have relied as a part of their defense in this case arguing
throughout their Special Report [*Court Doc. No. 86 at 7-8* ] that the Alabama Department
of Corrections does in fact have a Protocol that states:

> **"The protocol states that the hernia must be incarcerated or in danger of
> becoming incarcerated in order to be surgically necessary. [Id.]**

Counsel's assertions pertaining to the ADOC protocol was corroborated two (2)
months later by testimony evidence submitted by defendant <u>William Douglas Hobbs's</u>
sworn affidavit under oath on *<u>September 17, 2007,</u>* based on <u>personal knowledge</u>: [*Court
Doc. No. 144 & 249, Aff'd Hobbs Exhibit "B"*]:

*Exhibit "B"* " . . . In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum. Mr. Breach does not meet this protocol and his hernia is easily reduced . . . If Mr. Breach did in fact meet the protocol required by the Alabama Department of Corrections, his hernia would be repaired." [Id. at 3, ¶ 3]

Attached *"Exhibit "A",* on *July 13, 2007,* [*Court Doc. No. 86, Exhibit "A" Hobbs,*

*Doc. 144, Hobbs's Special Report*] Defendant William D. Hobbs, stated under oath and on

personal knowledge in his Answer and Supplemental Special Report as follows:

*Exhibit "A"* "In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum.    Mr. Breach does not meet this protocol and his hernia is easily reduced . . . . " [*Id. at 4, ¶ 1, see also, Court Doc. No. 86-2, Exhibit A to the July 13, 2007 PHS Defendants' Supplemental Special Report (July 13, 2007 Affidavit of William Hobbs at 2-3, Report and Recommendation Doc. No. 193*]

Plaintiff moves the court for an order that the below inconsistent testimony submitted by William Hobbs be excluded in part because perhaps the only candid testimony Hobbs makes, reveals and demonstrates this argument and defense was orchestrated and argued throughout counsel's initial pleadings raising defendants defenses: William Hobbs cannot now, come back and interfere egregiously nor recant he and counsel have already argued as their defense into the Record for summary judgment purposes.    *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1240 n.7 (11th Cir. 2003)("Under the law of this Circuit, we may disregard an affidavit submitted solely for

the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony.");

*Court Doc. No. 518 at 3-4,* defendant William Hobbs submitted another affidavit on *March 10, 2008,* which is completely contradictive to arguments by counsel (*Doc. 86 at 7-8*) and Hobbs prior two (2) affidavits (*Doc. No's. 86, 144*) stating as following:

> **". . . I have reviewed material that suggest the prospects of reviewing hernias under a standard of incarceration or one which is in danger of being incarcerated or into the scrotum, however, such material was not an official, required protocol from the ADOC place upon PHS physicians, such as myself." [Id.]**

Plaintiff argues such contradictive testimony ought to be stricken as unreliable, inconsistence testimony. It is apparent that Hobbs attempts to recant his *July 13* and *September 12, 2007,* testimony and perhaps the only candid one he makes, reveals the ADOC's Protocol; the very issue before the Court and proximate cause to injury. However, Hobbs through counsel has attempted to change Hobbs's testimony: such would also require that he change his Special Report and request for Summary Judgment. Such attempt would evidence counsel's continued attempt to reap a tactical advantage over his opponent by changing Hobbs story and counsel has not and cannot at this stage of the proceeding come back and change what already has been placed into the Record in his Special Report.

## A.    *William Hobbs Is Not Board Certified:*

It took 636 pleading in this case for William Hobbs to come forward with the truth. He is not board certified in any area of medicine, nor is he a specialist. Hobbs has no specialty, nor did he have a specialty in medicine when he submitted extraordinary opinions pertaining to hernias; also, disagreeing with a license surgeon, opposing surgery.

This case will and does have a long laundry list of objections. For almost the past two years, the parties have engaged in protracted discovery disputes. Both sides initially adopted extreme and unreasonable positions; the plaintiffs asked for almost every tangible piece of information or property possessed by the defendants, and the defendants offered next to nothing and took several steps to delay discovery. In this case, however, the Magistrate Judge never attempted to resolve the parties' disputes and force the parties to meet somewhere in the middle of their respective extreme positions. As a result, what began as a relatively common discovery dispute quickly deteriorated into unbridled legal warfare.

William Hobbs <u>admitted</u> that <u>he is not board certified</u> in the laundry lists of medical fields that he swore under oath he practices on *April 10, 2008*. *[Court Doc. No. 565, 603, 626 ]*

*Court Doc. No. 603*, William Hobbs admitted: "I have not held any Board certifications". [Id. ¶ 5 at 4]

6

Interesting, without Hobbs not holding any Board certifications, William Hobbs is not proficient, qualified nor board certified in either, Obstetrician and Gynecologist, (OB/GNY) General Surgery, General Practitioner, Family Medicine, General Medicine, or Emergency Medicine, or qualified in hernia treatment or, any other specific area of medicine that he blatantly professed, basically lying to the court or, straight out disingenuous and the truth has finally come out: William Hobbs is not board certified in any specific area of medicine.   Hobbs being the defendant's treating physician, argued against plaintiff's treating physician Dr. John A. Tassin, M.D., and a Surgeon in this case without board certification.

**Court Doc. No. 626**, after reaching **Doc. #626**, pleadings, and discovery battles, William Hobbs has finally decided to tell the truth:

"(iii)   **I am not board certified**. [Id.]

Court Doc. No. 603,

"5.     **"I have not held any Board certifications"**. [Id.]

William Hobbs has stepped beyond his qualifications in this case attempting to treat, and proscribe, especially proffer medical opinions in the shoes of an expert pertaining to surgery. *Rule 701(c) & 702,* Fed.R.Evid.

William Hobbs does not have the qualifications to render his opinions as reliable and connected to specialized knowledge and scientific date. In order for the Court to find that Hobbs's opinion testimony is reliable and connected to specialized knowledge or

medical data, this court will have to take a leap of faith and rely on William Hobbs's *ipse dixit* and assurance that his testimony is based on nationally accepted standard. Reliance on naked assurances of the purported testimony is exactly with the Eleventh Circuit in <u>Cook</u> and <u>McClain</u> warned against. ***Cook ex rel. Estate of Tessier v. Sheriff of Monroe County,*** 402 F.3d 1092, 1113 (11th Cir. 2005); ***McClain v. Metabolife International, Inc.,*** 401 F.3d 1233, 1244 (11th Cir. 2005); ***Kumho Tire Co. Ltd. v. Carmichael,*** 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed. 2d 238 (1999) ***Daubert v. Merrell Dow Pharmaceuticals, Inc.,*** 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993).

William Hobbs <u>is not, board certified</u>.    He is definitely not certified with the American Board of Surgery as a specialist in general surgery.  Defendant William Hobbs is not, a specialist in any area of medicine.

Hobbs is not trained and experienced in the specific area of medicine in question, *i.e.*, hernia repair.  (ii) Hobbs is not certified by any appropriate American board; (iii) Hobbs is not trained and experienced in the same discipline or school of practice; (iv) Hobbs was not practicing in the specialty during the year preceding the date that the alleged breach of the standard of care occurred.  § 6-5-548 ex seq., Code of Alabama, 1975.

## III.

## WILLIAM HOBBS IS INCONSISTENT IN SETTING FORTH HIS OWN SYNOPSIS OF HIS EDUCATIONAL BACKGROUND AND TRAINING

Inherent inconsistent testimony has been recognized in this Court as a" sham" affidavit. See, ***Porterfield v. Flowers Baking Co. of Opelika, L.L.C.,*** 2007 U.S. Dist. LEXIS

92257 Civil Action No. 2:05-cv-937-MEF-(WO), December 12, 2007, (Fuller, J); ***Thomas v.***

***Ala.Counsel on Human Rels., Inc.***, 248 F. Supp. 2d 1105 (M.D. Ala. 2005)(Fuller, J.)

Before going into further arguments, this court also ought to review Hobbs

inconsistently in his own education, training and experience submitted to this court,

supplied as ***Exhibits "A, B"*** attached.

On *April 10, 2008,* William Hobbs submitted his *Notice of Filing* in response to Court

Order Doc. No. 556 and on *April 25, 2008,* Hobbs submitted another affidavit in response to

Court Orders No. 585, 593, [***Court Doc. No. 626***]

***Court Doc. No. 626,*** does not fully correspond with Hobbs *April 10, 2008,* affidavit.

William Hobbs forgot to maintain consistent testimony and is challenged as unreliable

testimony.

First and foremost, this court directed Hobbs to: (i) identify the institution of higher

education where he obtained his medical degree, (ii) those states/countries in which he

obtained a medical license, and (iii) any board certifications he has received. [***Court Order***

***No. 585]***

***Court Doc. No. 626,*** William Hobbs, Hobbs did not, either produce or identify his

medical license in the following countries as he stated on *April 10, 2008*.

    a.    **Haiti, Belize, Jamaica and Cuba or Chicago Illinois.**

Four (4) additional countries and one (1) City, Chicago Illinois, Hobbs did not even

mention as he stated in his two (2) week prior testimony and Hobbs failed to produce

those medical license for <u>Haiti, Belize, Jamaica</u> and <u>Cuba</u>. Matter of fact, Hobbs did not even further allege that he practiced medicine in these countries.

      a.      "In 1981, I did Emergency Training at Cook County in Chicago, Illinois.

      b.      From 1985 thru 1995, I practiced general medicine in Haiti, Belize, Jamaica, and Cuba. [Id.]

Interesting, plaintiff has evidence that recently William Hobbs submitted an affidavit in a civil action alleging without board certification training in emergency medicine, trauma surgery and critical care medicine. He has a habit of submitting affidavits, opinions and <u>testimony without board certification</u>.

### IV.

### HOBBS'S MARCH 10, 2008 INCONSISTENT TESTIMONY OUGHT TO BE STRICKEN. [Court Doc. No. 518]

Plaintiff objects to Hobbs *March 10, 2008*, inconsistent testimony. Plaintiff argues that counsel in his pleading entered Hobbs's testimony into his pleadings and defense in this case. Plaintiff argues that this court ought not to consider inconsistent testimony at summary judgment, which completely contradictive to arguments by counsel (*Doc. 86* at 7-8) and Hobbs prior two (2) affidavits (*Doc. No's. 86, 144*) stating as following:

> ". . . I have reviewed material that suggest the prospects of reviewing hernias under a standard of incarceration or one which is in danger of being incarcerated or into the scrotum, however, such material was not an official, required protocol from the ADOC place upon PHS physicians, such as myself." [**Doc. 518 at 3-4**]

### ARGUMENT / MEMORANDUM AT LAW / POINTS ON AUTHORITY

U.S. Chief District Judge, <u>Mark E. Fuller, J.</u>, stating in ***Porterfield v. Flower Baking Co. Of Opelika, L.L.C.,*** 2007 U.S. Dist. LEXIS 92257 Civil Action No. 2:05-cv-937-MEF (WO), <u>*December 12, 2007*</u>, is on points to a finding of "inherent contradiction" The Court stated: a "sham affidavit" concept arises when there is a clear inconsistency between factual assertions in an affidavit submitted in conjunction with a motion for summary judgment and prior deposition testimony. [Id.] The Eleventh Circuit has developed a standard by which to determine when certain testimony's contradictory nature renders it inappropriate for consideration as creating a genuine issue of material fact. In this circuit, "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." ***Van T. Junkins & Assocs., Inc. v, U.S. Indus., Inc.,*** 736 F.2d 656, 657 (11th Cir. 1984). Before disregarding an affidavit, therefore, a court must find some inherent inconsistency between the affidavit and deposition. ***Rollins v. TechSouth, Inc.,*** 833 F.2d 1525, 1530 (11th Cir. 1987). It is the inherent inconsistency, which renders the subsequent affidavit a "sham." See ***Van T. Junkins,*** 736 F.2d at 657.

[1]The "sham" issue here is a subtle one. Reconciling William Hobbs's testimony in the most favorable light for purposes of summary judgment, Hobbs testified on *July 13, 2007,* and *September 12, 2007,* [*Court Doc. No. 86 & 144*] and in counsel's pleading that the ADOC has a protocol, what the protocol states, and that plaintiff did not meet the protocol – Hobbs even stated that if plaintiff met the protocol he would have surgery. [Id].

Federal Rule of Civil Procedure 56(e) makes it plain that affidavits submitted in . . . a motion for summary judgment, such as the affidavit at issue here, shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall affirmatively show that the affiant is competent to testify to the matters stated therein. Fed. R. Civ. P. 56(e). The requirements of Rule 56 make it plain that affidavits which set forth conclusory arguments rather than statements of fact based on personal knowledge are improper. See, e.g., Story *v. Sunshine Foliage World, Inc.,* 120 F. Supp. 2d 1027, 1030 (M.D. Fla. 2000). Accord, Leigh *v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000). Affidavits which fail to meet the standards set forth in Rule 56(e) may be subject to a motion to strike. *Givhan v. Electronic Eng'rs, Inc.,* 4 F. Supp. 2d 1331, 1334 (M.D. Ala. 1998). However, if an affidavit contains some improper material, the court need not strike the entire affidavit; rather it may strike or disregard the improper portions and consider the remainder of the affidavit. Id. at p. 1334 n.2.

---

[1] *Court Doc. No. 303,* plaintiff attempted to conduct deposition for purposes of contradictive testimony on Hobbs. The court denied plaintiff an opportunity to conduct depositions.

One issue raised commonly in motions to strike all or part of an affidavit is the "sham affidavit" concept, which arises when there is a clear inconsistency between factual assertions in an affidavit submitted in conjunction with a motion for summary judgment and prior deposition testimony. A district court addressing conflicting affidavits and depositions when ruling on a motion for summary judgment must be mindful of two competing policies. On the one hand, there is the purpose of summary judgment which is to "separate real, genuine issues from those which are formal or pretended." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986), reh'g denied, 815 F.2d 66 (11th Cir. 1987). The rule is needed to "spare the party requesting summary judgment the needless pain and costs of a law suit when a party's prior statements show no factual dispute exists." *Tippens*, 805 F.2d at 955 (Hill, J., specially concurring). On the other hand, there is the recognition that the credibility of witnesses and weight of the evidence are issues for the trier of fact. *Id.* at 954.

Given these competing policies, the Eleventh Circuit has developed a standard by which to determine when the contradictory nature of testimony renders that testimony inappropriate for consideration as creating a genuine issue of material fact. In this circuit, "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir.

1984). Therefore, before disregarding an affidavit, a court must find some inherent inconsistency between the affidavit and deposition. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987). *Id.* 248 F. Supp. 2d at 1113.

It is the inherent inconsistency, which renders the subsequent affidavit a "sham." See *Van T. Junkins & Assocs., Inc.*, 736 F.2d at 657.

Once a court has found that the <u>party is attempting to create an issue of fact by offering a "sham" affidavit</u>, the interest in <u>preventing parties from having to proceed</u> when there is no real issue of fact outweighs the interest in allowing the fact-finder to weigh issues of credibility at trial. Holding to the contrary would mean that plaintiff's could "thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996). <u>Thus, portions of affidavits which are clearly inconsistent with prior deposition testimony are due to be stricken.</u> See, e.g., Rice **v. Barnes,** 149 F. Supp.2d 1297, 1300 (M.D. Ala. 2001). *Porterfield*, supra.

As the court reviews Hobbs's affidavit it ought to lead to the conclusion that it contains legal conclusions and other conclusory statements, the proper factual predicate for which is wholly absent from the affidavit. Defendant's affidavit also contains what appears to be hearsay and/or double hearsay which would not be admissible at trial. The Court ought to be convinced that portions of the affidavit directly conflict with Defendant's and counsel's prior, unambiguous, sworn, testimony. **(Doc. 86 & 144)** Furthermore, Defendant

and counsel makes no attempt to provide specifics such as dates or even approximate time periods which might have assisted the Court in its analysis as to whether Hobbs made a "mistake". It ought to be clear that counsel did not make a "mistake" in this July 2007 Special Report (**Doc. 86 and 144**) pounding on Hobbs's statements into the Record as a part of his pleadings and defenses. Once ADOC and CMS deny that they have a protocol, then counsel and Hobbs decide to change their story, ought to be improper.

The admissions by William Hobbs be taken as established facts Hobbs's statements constitutes an admission by party opponent, pursuant to *Federal Rule of Evidence* 801(2) and therefore is admissible. [**Court Doc. No. 86 & 144**]

Pursuant to *Rule 801* of the Federal Rules of Evidence permits the admission of statements offered against a party that is the party's own statement in either an individual or representative capacity. See *Fed.R.Evid.* 801(d) (2) (A). *Fed.R.Evid.* 801(d) (2) (D) (admission by party opponent does not constitute hearsay); *Fed.R.Evid.* 806 (hearsay exception for purposes of impeachment).

In further support Plaintiff argues the evidence at issue would likely be admissible at trial. See e.g., 31 *Charles Alan Wright & Victor James Gold, Federal Practice & Procedure* 7105 (2000) ("Authentication can also be accomplished through judicial admissions such as . . . production of items in response to . . . [a] discovery request."); F.R.E. 803(6) (hearsay exception for business record); *Fed.R.Evid.* 801(d) (2) (D) (admission by party opponent

does not constitute hearsay); *Fed.R.Evid*. 806 (hearsay exception for purposes of impeachment).

Fed. R. Evid. *801(d) (2) (D)* provides, in pertinent part, as follows: Statements, which are not hearsay. A statement is not hearsay if (2) Admission by party-opponent. The statement is offered against a party and is (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.

**WHEREFORE, *premises considered*,** plaintiff moves this court not to consider William Hobbs's statement Court Doc. No. 518 at 3-4 affidavit as contradictive and unreliable.

Done this 17th Day May 2008.

Marcellus Breach 160710
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama  35749

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have this 19th Day of May 2008, placed a true copy of the foregoing upon the following through the prison mail system properly addressed postage prepaid and mailing First Class U.S. Mail to:

**Alabama Dept. of Corrections**
**LEGAL DIVISION**
**P.O. Box 301501**
**Montgomery, Alabama 36101**

**Rushton, Stakely, Johnston, Garrett, P.A**
**P.O. Box 270**
**Montgomery, Alabama 36101**

**Starnes & Atchison, LLP**
**100 Brookwood Place, 7th Floor**
**P.O. Box 598512**
**Birmingham, Alabama 35259-8512**

® _____

Marcellus Breach

17

# EXHIBIT

# "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, (AIS # 160710)        \*

      Plaintiff,           .              \*

V.                             \*     2:06-CV-1133-MEF

PRISON HEALTH SERVICES, et al.,       \*

      Defendants.                    \*

## AFFIDAVIT OF WILLIAM D. HOBBS, M.D.

BEFORE ME, ___James Bailey___, a notary public in and for said County and State, personally appeared **WILLIAM D. HOBBS, M.D.,** and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is William D. Hobbs. I am a medical doctor and I have been a licensed physician in the State of Alabama since 2006. I have served as the Site Medical Director for Limestone Correctional Facility in Athens, Alabama since October of 2006. I have been employed with Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates since my employment began at Limestone. I am personally familiar with all of the facts set forth in this Affidavit.

The Plaintiff, Marcellus Breach (AIS #160710), is currently incarcerated as an inmate at Limestone Correctional Facility. Mr. Breach was transferred to Limestone Correctional Facility on March 23, 2007. I am familiar with Mr. Breach and have been involved with the

medical services provided to him at Limestone. In addition, I have reviewed Mr. Breach's Complaint in this action as well as his medical records (certified copies of which are being produced to the Court along with this Affidavit).

Mr. Breach was first diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole." I have reviewed his medical records and have been actively involved in his medical treatment.

The following information is based upon my personal knowledge and my review of Mr. Breach's medical records. Mr. Breach prepared a Sick Call Request on April 26, 2007 complaining of burning pain due to his hernia. He stated it was causing him problems coughing, sneezing and with bowel movements. This request was received on April 27th. Mr. Breach claims that Dr. Tassin at South Louisiana Correctional Services stated to him on March 21, 2006 that he needed surgery to repair his hernia. I examined Mr. Breach on April 30th and I noted that he did not have a right Direct, Indirect or Femoral Hernia. Mr. Breach did not have a left Indirect or Femoral Hernia. He did have a large, easy to reduce direct inguinal hernia on the left. I ordered another small Ventura Truss as Mr. Breach stated he had lost his truss. My Physicians' Orders on April 30th indicate that I prescribed Motrin 600 mg as needed for 90 days for his discomfort and CTM SR (a sustained release antihistamine) for coughing and sneezing.

In addition, I have reviewed two pages of Doctor's Orders from Louisiana Corrections Services. Dr. Tassin indicates on March 21, 2006 that Mr. Breach does have a left Inguinal Hernia, but repair is questionable. On July 18, 2006, Dr. Tassin again indicates that Breach has a left Inguinal Hernia, but he states that it is not incarcerated and hernia repair is an elective procedure. (A copy of which is attached as an exhibit to the Supplemental Special Report.)

2

I have reviewed a Special Needs Communication Form which was prepared on December 27, 2006 and the following restrictions were placed on Mr. Breach at that time: 1) Bottom Bunk for 180 days; 2) Truss for 180 days; and 3) No straining or lifting greater than 20 pounds for 180 days. I prepared a Special Needs Communication Form on April 10, 2007 and placed the following restrictions on Mr. Breach: 1) No lifting greater than 25 pounds; 2) No standing/walking greater than one hour; 3) Hernia Truss, left ankle brace. The diagnosis on this date was Inguinal Hernia and deformity of left foot.

I have also reviewed the Affidavit of Dr. Satyavardhana Rao Yerubandi in this matter (see attached) and I do not agree with several of his opinions as stated. As a general rule, a hernia does not progress quickly and there are instances where a person has a hernia for many years and may never require surgery for repair. Hernia repair is an elective surgery. The danger of waiting for a hernia to become incarcerated or strangulated is not high and emergencies involving hernias do not develop often.

Mr. Breach's inguinal hernia is being treated in an attempt to keep it from becoming larger and surgery is not his only option. A hernia can be treated with restrictions related to lifting, walking, standing and wearing a truss all of which have been prescribed for Mr. Breach. His medical records indicate that he has arrived at his medical appointments on several occasions without wearing his truss and he informed PHS employees that he lost it. Mr. Breach is not following the appropriate treatment necessary to treat his hernia. A truss is used to decrease discomfort and to decrease the possibility of the hernia becoming larger. If Mr. Breach would follow the instructions provided to him and the restrictions placed on him by PHS physicians and if he would wear the truss prescribed for him, these things would in fact keep his hernia from progressing. Mr. Breach's hernia is not life threatening and does not require surgical

3

intervention and I believe surgery is not medically necessary. His hernia is easily reducible, non-strangulated, and is not incarcerated.

Hernia repair is an elective procedure and every hernia does not need to be repaired. In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum. Mr. Breach does not meet this protocol and his hernia is easily reduced. If another physician is suggesting that Mr. Breach's hernia should be repaired, this physician is mistaken and he is only trying to perform an elective surgery which is unnecessary and is not medically needed. Again, Mr. Breach is not in imminent danger and his hernia is not life threatening.

Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complaints were evaluated and treated in a timely and appropriate fashion and that his diagnosed conditions have been treated in a timely and appropriate fashion. It is also my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. Mr. Breach was seen and evaluated by the medical or nursing staff, and was referred to an appropriate care provider or given appropriate care, each time he registered any health complaints. At all times, Mr. Breach's known medical complaints and conditions were addressed as promptly as possible under the circumstances. Mr. Breach continues to receive medical treatment for his complaints related to his left inguinal hernia."

Further affiant sayeth not.

William D. Hobbs, MD
WILLIAM D. HOBBS, M.D.

4

STATE OF ALABAMA        )
                        )
COUNTY OF Wallace       )

    Sworn to and subscribed before me on this the ___13th___ day of
__July__, 2007.

_____
Notary Public
My Commission Expires:

___9-8-2010___

5

# EXHIBIT "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARCELLUS BREACH, (AIS # 160710)          *

      Plaintiff,          *

V.          *          2:06-CV-1133-MEF

PRISON HEALTH SERVICES, et al.,          *

      Defendants.          *

## SUPPLEMENTAL AFFIDAVIT OF WILLIAM D. HOBBS, M.D.

BEFORE ME, James Daily Jr, a notary public in and for said County and State, personally appeared **WILLIAM D. HOBBS, M.D.**, and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, as follows:

"My name is William D. Hobbs. I am a medical doctor and I have been a licensed physician in the State of Alabama since 2006. I have served as the Site Medical Director for Limestone Correctional Facility in Athens, Alabama since October of 2006. I have been employed with Prison Health Services, Inc., the company which currently contracts with the Alabama Department of Corrections to provide medical services to inmates since my employment began at Limestone. I am personally familiar with all of the facts set forth in this Affidavit.

The Plaintiff, Marcellus Breach (AIS #160710), is currently incarcerated as an inmate at Limestone Correctional Facility. Mr. Breach was transferred to Limestone Correctional

Facility on March 23, 2007. I am familiar with Mr. Breac 1 and have been actively involved with the medical services provided to him at Limestone.

It is my understanding that Mr. Breach has requested to be seen by a medical examiner for an independent physical exam for complaints related to his hernia. As I previously stated in my initial affidavit, Mr. Breach was first diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole."

It is my opinion that Mr. Breach does not need to be seen by a medial examiner for an independent physical examination to determine whether or not surgery is necessary. Mr. Breach does not have a right Direct, Indirect or Femoral Hernia  Mr. Breach does not have a left Indirect or Femoral Hernia. He does have a large, easy to reduce direct inguinal hernia on the left.

As previously stated in my initial Affidavit, as a general rule, a hernia does not progress quickly and there are instances where a person has a hernia for many years and may never require surgery for repair. Hernia repair is an elective surgery. The danger of waiting for a hernia to become incarcerated or strangulated is not high and emergencies involving hernias do not develop often.

We are treating Mr. Breach with restrictions related to lifting, walking, standing and wearing a truss in an attempt to keep his hernia from becoming larger. A truss is used to decrease discomfort and to decrease the possibility of the hernia becoming larger. If Mr. Breach would follow the instructions provided to him and the restrictions placed on him by PHS physicians and if he would wear the truss prescribed for him, these things would in fact keep his hernia from progressing.

2

I have not seen Mr. Breach since April 30, 2007. He has not been seen in the emergency room at our Healthcare Unit nor has he filed a sick call request requesting an appointment to be seen by me. On April 30th, Mr. Breach was given a prescription for a 90-day supply of pain medicine which has since expired. If Mr. Breach's condition is as he describes (unusual and burning pain/progressively worsening), it would seem he would have made an attempt to be seen in the emergency room or show-up for sick call requesting an appointment with me.

I would like to reiterate that Mr. Breach's hernia is not life threatening and does not require surgical intervention and I believe surgery is not medically necessary. His hernia is easily reducible, non-strangulated, and is not incarcerated. Surgery is not his only option and it is not medically necessary.

I would like to further reiterate that hernia repair is an elective procedure and every hernia does not need to be repaired. In order for a hernia to be repaired, the hernia must meet a certain Protocol required by the Alabama Department of Corrections. The protocol states that the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum. Mr. Breach does not meet this protocol and his hernia is easily reduced. Mr. Breach is not in imminent danger and his hernia is not life threatening. If Mr. Breach did in fact meet the protocol required by the Alabama Department of Corrections, his hernia would be repaired.

It is also my understanding that Mr. Breach has made an allegation that I am currently under investigation by the Medical Board of Examiners. This allegation is completely untrue, as I have never been made aware of any Complaint filed against me.

With respect to an incident involving inmate, Jackie Morrow, Mr. Morrow did have an infected incision due to a surgery performed by a surgeon prior to Mr. Morrow being transferred to Limestone Correctional Facility. Mr. Morrow's incision was infected and I did treat his

3

incision, but my treatment did not cause gangrene or a staff infection. Mr. Morrow was also sent back to this surgeon for follow-up care and treatment of this infected incision."

Further affiant sayeth not.

*William D. Hobbs, M.D.*

**WILLIAM D. HOBBS, M.D.**

STATE OF ALABAMA          )
                          )
COUNTY OF _____    )

Sworn to and subscribed before me on this the _____ day of _____, 2007.

Notary Public
My Commission Expires: _____
9-3-2010

4