## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MARCELLUS BREACH, #160710

    Plaintiff,

                                   CASE NO: 2:06-cv-1133-MEF

Vs.

PRISON HEALTH SERVICES, INC., et. al.,

    Defendants.

### EMERGENCY -- APPLICATION FOR PRELIMINARY INJUNCTIO REQUEST FOR ADOC RETURN ALL OF BREACH'S LEGAL DOCUMENTS / PAPERS

**COMES NOW**, the undersigned _Marcellus Breach_, (hereinafter "Breach") in proper

person "Pro Se," hereby request an immediate hearing be set pursuant to _Rule 65(b)_,

Fed.R.Civ.P., that the Court immediately interpose and restrain ADOC defendants, and

each of them, their servants, agents, and employees, be temporarily enjoined during the

pendency of this action, and permanently thereafter, from egregiously interfering with

plaintiff's access to the Courts, emasculating plaintiff's prosecution, depriving Breach's of

his legal materials compiled solely in preparation of this case:  narrowly drawn, extend

no further than necessary to address reading, taking, confiscating, duplicating, storing,

downloading, copying without permission or any legitimate penological interest other

than, to frustrate, impede, derail Breach's litigation; resulting into an _actual injury_ placing

defendants once again, at an advantage over their opponent, recognized as a seizure or

1

deprivation of a prisoner's legal papers, violation of the Constitution. *Wright v. Newsom,* 795 F.2d 964, 968 (11ᵗʰ Cir. 1986).

**INTRODUCTION:**

Commencing on or about *July 12, 2008* at approximately 8:00 a.m., Lt. Pelzer carelessly and negligently, confiscated protected legal materials, and at all times herein, seized and deprived Breach of his protected legal materials, *i.e.,* legal papers, exhibits, expert witness affidavits, witness affidavit, medical records, *excreta,* critical and relating to the issues before this Court, dispositive motion, 28 U.S.C. § 636(b)(1)(a)(2004) and Rule 56, Fed.R.Civ.P.

Breach has demanded indemnization of the expropriated legal papers; and requested officials performance of their duties imposed by law upon them to return the legal materials stored and secured belonging to Breach, but defendants have failed and refuse to return either the *USB Flash Driver* or photocopies of the legal documents contained therein, which said driver was and had been for over one (1) years used for sole purposes no other than saving, storing necessary law library materials, legal forms, *excreta,* and there are over 30 other individual prisoners' legal work, other cases Breach assisted in drafting of, and challenge to the individuals' criminal conviction, appeal brief, Rule 32 petitions, Federal Habeas Corpus 2254 petitions; and momentous, over 700 legal pleadings, papers/documents prepared by Breach submitted and to be submitted to this Court, germane to this Case, returned, *unaltered.*

Unless restrained by the Court, defendants, and each of them, their servants, agents, and employees' acts continue unchecked, will result in direct and irreparable damage to Breach's litigation and the exhibits attached therein, are destroyed, concealed; Breach will lose the benefit of presenting his case to the Court; notwithstanding, Breach's notification to officials that the seizure of said property infringes upon this Constitutional rights.

Defendants acting as aforesaid, Breach has no adequate legal remedy for the harm and damage threatened by defendant's employees refusal to return Breach's legal work, unaltered, and request for a preliminary injunction during the pendency of this action and, after a final hearing on the merits, a permanent injunction thereafter, enjoining defendants, his agents and employees, from confiscating, reading by any means used, copying by any means used, downloading by any means used, duplicating by any means used, Breach's legal work, in any way, in connection with the issues before this Court. Unless restrained by the Court, officials will continue to patronize Breach and officials will never return, *unaltered* Breach's legal papers/documents – will greatly diminish his pursuit of surgery.

Breach prays that the Court intervene requiring the defendants to perform their obligation notwithstanding his right to access the Courts without fear of retaliation, confiscation of legal papers, reading, copying or duplicating, or destroying his legal papers; because such unlawful acts interferes and is incongruous with the Constitution.

### PROCEDURAL POSTURE:

[1]Notwithstanding the above-described actions, Lt. Pelzer has unlawfully kept possession of over <u>700 legal pleadings</u>, <u>exhibits</u>, <u>documents</u>, <u>affidavits</u>, <u>letter from an attorney</u>, <u>medical records</u>, <u>medical board documents</u>, hereinafter, including, <u>statements by several expert witnesses</u>, <u>witnesses</u>, that are useful to the imminent dispositive motions. Breach complains that such order is necessary, or this Court mind as well grant victory to the defendants and appraise their <u>guerilla war fare tactics</u> as corporately or globally orchestrated as a success because ADOC employees jointly have demonstrated vicious acts designed to forestall, impede or, derail plaintiff case in chief; and such conduct is on-going by way of reading recent drafts, prepared legal documents solely prepared in this case, or any other legal dispute Breach between Breach and other parties -- out right interferes with access to the Courts without any reasonable penological objective. *See Wright v. Newsome*, <u>795 F.2d 964</u> (11th Cir. 1986) (complaint improperly dismissed when it alleged the seizure of legal pleadings and destruction of other legal papers relevant to plaintiff's challenge to his conviction).

### PRELIMINARY FACTS:

1.    Commencing on or about *July 12, 2008* supervisor ADOC, Lt. Pelzer, seized and deprived, copied, read, confiscated, duplicated, withheld or, destroyed over 700 legal papers/pleadings, expert witness affidavits, exhibits, evidence compiled and prepared by

---

[1]  Said legal papers were generated and scanned using a scanner, into Breach's file folder designed to organize this case. The scanned documents added Breach to submit his evidence in a manner designed for the Court review in an attempt to cut down on a voluminous presentation.

Breach. At all times herein, Defendants actors, employees are the creators and sponsors of USB Flash Drivers throughout the prison.

2.    Breach has been informed and believes and alleges on such information and belief that the warden over the institution approved the use of USB Flash Drivers at various institutional jobs, *e.g.*, *Chapel workers, Sports dept., General library, Trade school, Welding, Drafting*; and, upon information and belief, at lest two (2) of Captain Tully's Inmate Runners' and Honor dorm workers, *excreta*.

3.    At all times material herein, the confiscating, downloading, duplicating, and reading of Breach's legal work actually prepared by him, saved, stored on the law library USB Flash Driver(s) cannot satisfy any security or other legitimate grounds. Such USB Flash Drivers, before confiscation where used solely for litigation purposes, storing legal documents, law library materials *excreta*. Breach avers because the law library computers are 20-years old, outdated, and basically obsolete; the computers crash almost daily, causing Breach and other inmates working on their legal cases lose their legal work.

4.    The Constitutional question before the Court and because today's society has advanced from Neal Armstrong landing on the Moon in 1969 to the discovery of the Internet. The Constitutional protections must advance with society standards also, must be applied to prisoners as well under the Fourteenth Amendment to the United States Constitution: the due process clause places restrictions on the methods utilized by a state

in managing a penal system. Citizens' engaoled by the strong hand of the state do not lose all constitutional rights at the prison gate.

5.      The constitutional derelictions present in this case governing around the First, Fifth and Fourteenth Amendments to the United States Constitution protect prisoners access to the Courts and the protected activity, or the protection of the prisoner's legal papers by the First, Fifth, and Fourteenth Amendment to the United States Constitution. Because USB Flash Drivers are now used throughout society for multiple reasons, once legal work in stored in one, it becomes protected by the Constitution.  In this case, upon information and belief the warden approved the USB Flash Driers and Breach stored his legal papers, documents onto the USB Flash Driver.  There ought not be much difference between officials prohibited from reading Breach's legal papers either stored in his prison cell, or on the USB Flash Driver, both represent protected legal activity.  Officials can, in the inmate's presence scan, check for contraband, or illegal activity contained or stored on the USB Flash Driver, but the USB Flash Driver <u>stores legal papers in files, folders and such is protected;</u> officials <u>must return the contents therein</u>. *See Marsh v. Moore,* <u>325 F. Supp. at 394-35</u>; Note, *Attorney-Prisoner Communications: The Right to Uncensored Mail,* 1 Am.J.Crim.L. 28, 39 (1972); 86 Harv.L.Rev. 1607, 1616 (1973). For a discussion of the types of physical contraband commonly found in prisons, see Guenther, *Compensations in a Total Institution: The Forms and Functions of Contraband,* 21 Crime & Delin. 243 (1975).    When a prison regulation or practice offends a fundamental

6

constitutional guarantee, federal courts will discharge their duty to protect constitutional rights." *Procunier v. Martinez*, 416 U.S. 396, 405, 94 S. Ct. 1800, 1807-1808, 40 L. Ed. 2d 224 (1974). Court have consistently fulfilled its obligation to safeguard the constitutional rights of prisoners in state institutions, affirming numerous decisions of the district courts that granted inmates extensive relief and ordered fundamental change in prison facilities and procedures. See, e. g., *Newman v. Alabama*, 5 Cir., 1977, 559 F.2d 283; *Williams v. Edwards,* 5 Cir., 1977, 547 F.2d 1206; *Gates v. Collier*, 5 Cir., 1974, 501 F.2d 1291.

6.    At all times material herein, Breach and the general population inmates utilizing access to the law library had access, permission to store their legal work on either 3 ½ floppy disk, law clerks on a flash drivers until ready to print or for secured reasons. Breach institutional job assignment since 2005 before and after he was transferred to and from Louisiana; at the private prison Breach was a law clerk and possessed a electronic USB Flash Driver used for law library purposes, *i.e.,* storing legal papers.    Since his return to Alabama and returning to Limestone prison, Breach regained his position as a law clerk; wherein, the law clerk's use of flash drivers, approximately two to three over the year available and stored at the law library.    Law clerks use of these flash drivers included various reasons, either to assist inmates in the general population in the course of saving their legal work as problems with the computers crashing and/or, purposes of saving legal papers, drafted legal documents transferred to the mainframe computer through a network setup where all law library printing was performed.    Due to multiple

computer problems inmate constantly lose their legal work or it would get lost or destroyed due to the computer-generated malfunctions, substantial outdated computers, crashing almost daily. [2]

7.    At all times material herein, Captain Tully, Officer Reeves, Lt. Smith, Sergeant Crabtree had knowledge that Breach and other law clerks used flash drivers in the course of the function of the law library, evidence demonstrates that knowledge.    There has never been a problem not one disciplinary nor a security threat, but all of a sudden, and during the course, stage of this law suit, the defendants decide to frustrate and derail Breach from prosecuting this action.

8.    [3]Commencing on or about _July 12, 2008_ more than 700 plus encrypted legal papers secured data, documents, exhibits, testimony by experts witnesses, witnesses, attorney letter(s), medical records, scanned into Breach's files, folders, this entire case, summary judgment materials has been confiscated, read, downloaded, duplicated, copied without Breach's permission, outside Breach's presence and withheld, or destroyed without _any_ reasonable penological interest.    In addition, Breach was drafting his response to summary judgment, preparing the appropriate motions compiled in preparation for this case, related to pending discovery objections has been derailed, impeded upon, read, copied.

---

[2]    Other functions were used with the USB Flash Driver such as storing voluminous documents containing the necessary legal forms that ADOC is obligated by law to provide.  E.g., § 1983, Federal Habeas Corpus, 2254 & 2255, State Rule 32, Speedy trial, Alabama State Bar Complaints, Request for legal documents, _excreta._

[3]    Inmates are not allowed to have voluminous legal papers at their bed area, that is one purpose inmates were allowed to use either 3 ½ floppy disk, and clerks use flash drivers.

9.    At all times material herein, persons acting in concert with ADOC defendants have literally destroyed Breach's case, resulting to interference with or infringement of his constitutional right of access to the courts. *Sigafus v. Brown*, <u>416 F.2d 105</u> (7th Cir. 1969).

In *Yyler v. "Rob" Deputy Sheriff*, <u>574 F.2d 427, 429</u> (8th Cir. 1978) the Court stated:

"The taking of a prisoner's legal papers states a claim under 42 U.S.C. §§ 1983 or 1985 if the taking results in interference with or infringement of the prisoner's constitutional right of access to the courts. *Sigafus v. Brown*, <u>416 F.2d 105</u> (7th Cir. 1969)

## STATEMENT OF THE FACTS:

1.    Commencing on or about *March 2008*, correctional officers conducted a major institutional shake down in which the law clerks were ordered to immediately return to their assigned dormitory. Upon arriving to his assigned dormitory Breach subsequently discovered he inadvertently had the 'flash driver' in his pocket. Breach immediately reported to Lt. Smith and turned the 'flash driver' over to Lt. Smith. The flash driver was searched and <u>returned to Breach the next day with instructions to keep it in the law library.</u>

2.    At all times herein, specifically, commencing on and between June 30, 2008 or, the first week of July 2008, the law library was searched again, Breach and other law clerks were instructed to turn over their flash drivers. Breach complied, opened his file cabinet and gave the officer the flash driver. The flash driver was searched and returned latter that day. *Exhibit "A", Aff'd Breach.*

3.    Commencing on or about *July 12, 2008* Breach was summons to the Shift Commander's Office and instructed to report to Lt. Pelzer. Upon appearing in front of Lt. Pelzer, Lt. Pelzer stated: "If you don't have the right answer, what I want to hear, you are going to house arrest". Breach stated: "What answer are you talking about, and what are you talking about?" Officer Bright, COI, was present, shouted: "Shut up". Sergeant Mitchell, also present asked Breach: "Where is the flash driver?" Breach stated: "In the law library where it is suppose to be". Sergeant Mitchell then stated, "Go get it and get yourself out of this trouble." Breach stated: "What trouble?". Lt. Pelzer stated: "You have time to think about the right answer, if I don't get the right answer, you'll be in lock up". Breach was ordered to go retrieve the flash driver. Breach and two (2) other law clerks, Willie White and Christopher Byram went to the law library and were told to wait by Officer Tucker at the crossover gate. Sergeant Crabtree and Officer Bright soon arrived and opened the law library and conducted another search. Breach stated to the officers "It is clear that someone has already been in here searching, look at this place, it's been ransacked." (Breach learned that Lt. Pelzer has been in the law library searching for one of the flash drivers that Breach stores his legal work.) [Id.] Breach was then escorted to the shift office.[Id.]

4.    Upon arrival at the shift office, Lt. Pelzer inserted the flash driver and begun reading Breach's legal work. Lt. Pelzer then, inserted another flash driver, *i.e.,* red and gray, into his computer and begun downloading the contents secured on the USB Flash

Driver.    Finding <u>absolutely nothing but Breach's pending legal work</u>, Lt. Pelzer while

"down loading " instructed Breach remain before him.       Breach asked Lt. Pelzer not to

read his legal work and whatever he decided to do, that Breach requested to have a

complete copy of all of his legal work contained on the flash driver. Breach explained to

Lt. Pelzer that he <u>does not have a copy of the legal documents</u> stored on the flash driver

and that all of his evidence pertaining to his pursuit to have surgery is on the flash

driver. Lt. Pelzer stated:

> **"I don't need your permission, you don't tell me what to do, you can
> write, sue whoever you want, you can write the Judge, I don't care, you
> can write the Commissioner, Governor or your Congressmen while you
> are in house arrest, you will have plenty of time; I don't care, this is my
> sift, I run this!"** *[Id.]*

5.       Thereafter, Breach asked Lt. Pelzer not to read his legal work and explained that

the evidence contained therein, is in preparation in his pursuit of surgery.    Breach

requested that he secure means to have all of Breach's legal work copied and returned to

him if he was confiscating the flash driver.    Lt. Pelzer stated,

> **"I don't want to hear from you right now, It's Saturday and you have
> caused me all kind of problems.   I am going to copying this or whatever
> you have on this, you don't tell me, or ask me what to do? "** [Id.]

6.       As a result of said malicious and wrongful acts, Lt. Pelzer seized and has deprived

unlawfully read Breach's legal papers consisting of secured evidence, expert witness

affidavits, letters to and from an attorney related this case, medical records, *excreta* generated and stored on the flash driver. [4]

7.     In committing the acts set forth hereinabove, Breach requested Lt. Pelzer return the flash driver or secure his legal work and secure means of return the protected documents to him. Lt. Pelzer stated: "I am going to review this, and speak with your supervisor, I don't know what to do with you, you are subject to go to house arrest. " [Id.]

8.     Endeavoring to carry out his threats, and for the sole purpose of maliciously injuring Breach's litigation, on or about *July 14, 2008* Breach complained to Captain Tully concerning the events and requested Captain Tully provide means for Breach to have his legal work returned to him, *unaltered.* Breach explained to Captain Tully, Lt. Pelzer duplicated, copied, downloaded the secured legal documents to a red and gray flash driver and did not return Breach's documents or the flash driver to him. Breach explained that it was the very same flash driver that has been confiscated, and returned to Breach on two (2) other occasion. Captain Tully stated he did not know what was going on and he would check into the matter. Breach never heard from Captain Tully again. [Id.]

---

[4] It is noted that the officers in the shift office, Officer Bright, Lt. Pelzer seemed to have a parade or a party over this matter making all kinds of jokes, and threats to lock Breach up.

9.      [5] Commencing on or about <u>July 18, 2008</u> *Exhibit "B"* Breach wrote a letter of complaint to Warden Mitchim, Assistant Warden Patrick, Assistant Warden Goode complaining that his legal papers, had been confiscated read, downloaded, duplicated and withheld by Lt. Pelzer and no one has yet, made any arraignments to return to Breach his legal work, unaltered.   Breach questioned why Lt. Pelzer needed to make a copy of his legal work when he did find any contraband or unauthorized activity being committed?    Breach requested the warden check into the situation and order that his legal work be returned *unaltered*.  Breach also requested that the duplicated copy of his legal work by Lt. Pelzer on the red and gray flash driver be photo copied and returned to Breach    with    instructions    that    Lt.    Pelzer    destroy    what    he    copied..

13.     Commencing on or about *July 12, 2008* Breach submitted a document entitled: *"Notice of Filing"* and attached as *Exhibit "C"* a letter to counsel for the correctional defendants complaining that ADOC officials are reading his legal work and requested that counsel check into the matter. Breach never heard from counsel. *Exhibit "B"*. *[Court Doc. No. N/A]*

14.     *Exhibit "D"*, commencing on <u>July 24, 2008</u> Classification Officer, Ms. Kristin Bias, responded to a written request to her from Breach inquiring about a progress review, requesting she provide a progress review just like every inmate in the prison system.

---

[5] Inmates at Limestone Correctional Facility who have job placement have 'flash-drivers', *i.e.,* Sports department, Chapel workers, General library, Honor Dorm inmates, Trade school, even Captain Tully's inmate runners have a flash driver and he carries it around his neck.  Lt. Pelzer stated that Warden Mitchim has authorized inmates who are assigned a flash driver to keep it at their work area.  Breach has fully complied. Not one persons flash driver was confiscated, but Breach's has been and it contained his legal work pertaining to this action.

Breach voiced to Ms. Bias that not one time has she considered Breach for an Annual Progress Review, or Semi-Annual Review in accordance with the Alabama Department of Corrections Classification Manuel, policy and procedures. Ms. Bias responded Breach will not basically ever be considered, reviewed for any reclassification, lower-custody and Ms. Bias directly quoted allegations contained in this case, that were generated in Breach's legal papers, which were confiscated, copied, duplicated, withheld.

15.    Classification specialist, Ms. Bias responded: "**<u>You do claim in your lawsuit</u> that you are unable to perform basis human functions, (i.e., use restroom) because it causes you severe pain.**" *Exhibit "D"*.

Officials' above-described acts and representations with respect to Breach's legal papers; some <u>700 pleadings</u>, <u>expert witness affidavits</u>, <u>letter from an attorney</u>, <u>medical records</u>, <u>evidence</u> generated in preparation for summary judgment being scanned encrypted, secured to a file, file folder in the flash driver has been confiscated, read, copied, duplicated; and, not returned to Breach without justification and with willful intent to injury Breach, because now, Breach does not have a copy of what was confiscated. Additionally, Breach cannot properly draft, submit, reflect to evidence, medical records, expert testimony, witness testimony, nor file an answer to any future court orders, pending discovery objections, summary judgment because his legal work and all evidence in now in the possession of Lt. Pelzer or ADOC officials and has been read, copied, downloaded, concealed, confiscated, taken and withheld and has not been

returned:   Officials were not given permission to read, copy, duplicate, download

Breach's legal work and such unlawful acts has derailed Breach's case when Breach has

been assiduous, simply trying to obtain surgery, which might save his life.

Breach is requesting an immediate order upon the ADOC officials, defendants,

and each of them, their servants, agents, and employees to immediately return to Breach

his legal work and all documents contained on the USB Flash Driver, **unaltered**, and any

additional copies anywhere in their possession be turned over to him, immediately, and

the additional copy destroyed from their possession.   Breach moves the Court to

temporarily enjoin said parties during the pendency of this action, and permanently

thereafter, from reading, copying, duplicating, confiscating without just cause, Breach's

legal work in any form or fashion however stored.

**In furtherance in request for this preliminary injunction Breach states as**

**follows:**

A.   *The plaintiff is threatened with irreparable harm:*

Breach's expert witness affidavits, witness affidavits, medical records, exhibits and

evidence have been seized, confiscated for no justifiable reason and Breach wants it back,

unaltered.

As a further result of said injury, Breach has the absolutely right not to be invaded

by prison officials pertaining to his personal legal papers.   Breach had a secured folder,

encrypted in the USB Flash Driver and could not be downloaded without losing the

contents, destroying the document. This is what is likely to have happened because no means have been made to return Breach's legal work to him.

As a result of said malicious and wrongful acts and representations, defendants, employees have frustrated, infringed upon plaintiff secured protected right to access the Courts. In addition, as a direct result of defendant's wrongful acts, and notwithstanding the very proximate cause of injury; actions set forth hereinabove, Lt. Pelzer confiscating Breach's legal work, <u>reading</u>, <u>duplicating</u> his legal work, intentionally injured Breach by depriving Breach of his legal papers and Lt. Pelzer did so, confiscated Breach's <u>evidence,</u> <u>exhibits,</u> <u>documents,</u> <u>pleadings,</u> <u>expert witness testimony/affidavits,</u> <u>portions of medical</u> <u>records,</u> <u>letter from an attorney,</u> all compiled to and, generated throughout the course of this litigation, Breach's independent investigation and discovery. Breach cannot reasonably continue to prepare, draft his defense to a summary judgment motion that could be ripe by the Court at any time.

Furthermore, as a result of said malicious and wrongful acts continued unchecked, Breach's recent, and current drafts, preparations are now scrutinized by ADOC officials, reading them, storing them, down loading them to another computer owned and operated by ADOC officials.

Lt. Pelzer's above-described acts and representation have and are impeding Breach's right to access the court. Breach admits and offers his credit to the ingenious guerilla warfare tactics displayed because, it simply worked". **Breach cannot respond to**

16

any future Court order appropriately, and has he intended; he does not have his necessary evidence generated through assiduous efforts to obtain evidence outside the pleadings to survive summary judgment. Rule 56, Fed.R.Civ.P.

Breach has been assiduous in his attempts to have surgery performed, approved which costs $10,000 or least. Breach has written counsel attempting to settle this case if they would agree to <u>let Breach pay for his own surgery</u>. *Exhibit "E"*.

Defendants refuse and it is clear Breach will not receive appropriate medical treatment unless this Court orders the defendants to do so. Unless the Court restrains defendant's employees to return to him his legal papers, Breach will never receive surgery; his case has been derailed, destroyed, by guerilla tactics.

In acting as aforesaid, defendant's employees have <u>destroyed Breach's legal work, evidence compiled in preparation in this case</u> – they have been very successful, encumbered this case, forestall in anticipation of receiving a favorable decision by the Court at summary judgment, because they gained an advantage over Breach by reading, copying, duplicating, downloading, confiscating, and probably destroyed over 700 pleadings, evidence that belonged to Breach, leaving Breach in the same or worse medical condition that he has worked so very hard, patiently waiting on the Court to award surgery.

### POINT "A"

17

In furtherance of the willful, malicious conduct; Breach has been informed and believes and alleges on such information and belief that it is articulated defendants simply will not stop.   Commencing on or about *July 30, 2008* Breach drafted and requested a pleading entitled: *"Writ of Certiorari"* to be filed in the Circuit Court of Montgomery County, Alabama challenging Classification Officer Ms. Bias decision regarding to an unrelated action pertaining to erroneous information contained in Breach's institutional file. Ms. Bais having obtained first hand knowledge of the allegations contained in Breach's Complaint before this Court. [Id.]. Breach is challenging her decision, and asking the state court to ascertain how Ms. Bias obtained the information, *i.e., (quoting the allegation of this case)*, without reading Breach's legal work and then, turning around using it against him?   Thereafter, Breach has learned Ms. Bias already has a copy of the writ of certiorari <u>before</u> Breach placed it into the U.S. Mail for proper mailing to the Clerk of Montgomery County, Alabama. [Id.]

### POINT II.

### *DEFENDANTS UNLAWFUL SPYING/READING PREPARED LEGAL PAPERS*

In furtherance of said unlawful, willful conduct, prison officials are spying, reading, and duplicating Breach's legal work through means of a spy program installed onto the law library computers.  Breach has first-hand knowledge that his legal work is being read, scanned by officials abusing an installed Real <u>VNC Viewer.</u> The installer program contains two VNC components.  VNC Viewer & VNC Server allows a window

desktop to be accessed remotely using a VNC Viewer, installed on the law library computer network system sponsored and duly organized by ADOC officials which, enables officials at any time, direct access to Breach or any other inmates legal files, prepared legal documents or, simply lay back and read Breach's legal papers, document in the course of being prepared for filing, infringes on Breach's Constitutional protected activity; as Breach types, almost unnoticed.  Defendants VNC served no legitimate penological purpose, other than, to spy, read legal papers, legal documents unnoticed which then, places the defendants at an advantage over Breach because they will have read, downloaded the legal document before it is printed, and mailed to the Court. Breach catches officials very often, just this past Friday, approximately 10:30 a.m., reading, scanning his document in preparation to be forward, mailed to this Courts. [6]

Notwithstanding, the chronological event set forth above, it is obvious that the deliberate actions of Lt. Pelzer and evidence set forth demonstrate Classification Officer Ms. Bias has read or gained direct knowledge of the allegation contained in Breach's legal work, it is likely now, ADOC officials have in their possession Breach's evidence; they have successfully gained an advantage over plaintiff.  Without a Court order it will continue unchecked.

As a result of defendants' wrongful acts set forth hereinabove, Breach suffered the destruction of the following legal documents scanned onto the flash driver that has been

---

[6] At one time, someone viewed Breach's summary judgment drafted document, and then, it was "tagged" in very important areas of the brief as if someone was reading it and marking important areas.  Then, the document was corrupted intentionally, causing Breach to lose the document and start over.

confiscated thereof, belonging to Breach, compiled, generated for presentation in this case.

1. Five (5) Affidavits from expert witness Surgeon(s).
2. Four (4) Affidavits from expert witnesses Nursing Instructors.
3. Affidavit from the treating physician Dr. John Tassin, M.D.
4. Several medical grievance reports from South Louisiana Correctional reflecting defendant Ruth Naglich personal involvement denying surgery as "deemed unnecessary". (ADOC defendant nor the Court has had an opportunity to review this evidence.).
5. Letter from Edwards Law Firm, certifying medical documents.
6. Additional Medical Records. (not disclosed by defendants)
7. Over 700 pleadings, motions, memoranda, reports, case law, excreta.
8. Alabama Board of Medical Examiners, certified documents.
9. Michigan State Board of Medical Examiners, certified documents.
10. Montana State Board of Medial Examiners, certified documents.
11. Canada Board of Examiners, certified documents.
12. Eight (8) Affidavits from witnesses.
13. Medical Complaints to the Alabama State Board of Medical Examiners.
14. Summary Judgment pleadings, memoranda at law.
15. Pending Objections.
16. Breach's entire legal work was scanned, saved onto the flash driver.

Before summary judgment can be entertained, plaintiff is waiting for the District Court to rule on pending discovery objections. [*Court Doc. No's.: 532, 551, 552, 620, 634, 635, 636, 637,*] The immediate infringement is, Breach cannot respond to any Court orders, cannot respond to summary judgment, defendants have derailed Breach's case.

As to irreparable harm, plaintiff argues not only are constitutional interests are being impaired or threatened, and that in this case there is a great presumption of

irreparable harm to plaintiff. *Elrod v. Burn,* 427 U.S. 347, 96 S.Ct. 2673, 2647 49 L.Ed. 2d 547 (1976).

## POINT "B"

As to motive and opportunity, this Court ordered ADOC to retrieve all of Breach's Louisiana medical records that defendants claimed they couldn't. They did recover some. [*Court Doc. No. 564*]

Breach complained about missing medical records and on his own obtained portions of the additional missing medical records and the evidence reflects personal involvement pertaining to defendant Ruth Naglich and Brandon Kinard still was not produced by defendants. Breach obtained these documents himself and other documents through an attorney, had it scanned into the flash driver, secured in a folder. He does not have this evidence, which will reflect Naglich denying surgery. **This is part of the confiscated legal documents Breach request an Order to be returned to him, _unaltered._**

Breach demonstrates that his evidence is so important, such evidence is to be decided by the Court whether qualified immunity applies when faced with direct evidence that defendant Ruth Naglich did so, involved herself in the decision making process to deny Breach surgery as "deemed unnecessary", [Id.] has been confiscated, destroyed, read, copied by Lt. Pelzer.

The question is, how is this evidence and the other evidence complained of herein, be replaced?

B.    ***The balance of hardship favors the plaintiff:***

In deciding whether to grant TRO's and preliminary injunctions, courts ask whether the suffering of the moving party if the motion is denied will outweigh the suffering of the non-moving party if the motion is granted.

The United States Supreme Court has established that prison officials may not deny or obstruct an inmate's access to the courts. *Johnson v. Avery*, <u>393 U.S. 483</u>, 89 S. Ct. 747, 21 L. Ed. 2d 718 (1969).

Plaintiff is informed and believes and alleges on such information and belief and state based on personal knowledge almost every prisoners assigned to certain institutional jobs at Limestone prison has use of a Electronic USB Flash Driver: (i) Chapel workers, (ii) Sports Department, (iii) General Library, (iv) Trade School, Drafting, Welding, (v) Captain Tully's runner(s) all have either access to, or in their possession a USB Flash Driver which is used to perform their job assignment. There was no difference in this case, because the USB Flash Driver used at the law library was used in Breach's job assignment and used to store his legal work. There were absolutely no problems. Breach has knowledge and believes he was singled out.

Because the flash drivers were used to store legal work materials, and Breach's legal work was stored therein, Breach had access to it – it then, became constitutionally protected because it's use was preparation of legal documents becomes protected activity.    Defendants can scan it, but not read the contents and it must be returned, unaltered.    Today's technology is advancing in all aspects and the Constitutional protection must advance with it.    Prison staff may not read prisoner's legal papers. *Bayron v. Trudeau*, 702 F.2d 43, 45 (2d Cir. 1983); *Wright v. Newsome*, 795 F.2d 964 (11th Cir. 1986) (per curiam) (concluding that the prisoner stated a retaliation claim and a claim of denial of access to the courts based on the confiscation of legal materials); *Hall v. Sutton*, 755 F.2d 786 (11th Cir. 1985) (holding that the prisoner stated a retaliation claim based on the confiscation of various personal possessions)). The due process clause of the Fourteenth Amendment assures inmates a right of access to the courts, *Bounds v. Smith*, 430 U.S. 817 (1977), and the taking of a prisoner's legal papers states a claim under 1983 if the taking results in interference with or infringement of the prisoner's right of access to the courts. *Tyler v. "Ron" Deputy Sheriff*, 574 F.2d 427, 429 (8th Cir. 1978). Taking plaintiff's allegations as true, he makes a colorable claim of infringement of his right of access to the courts. *Brooks v. Heggs*, 1986 U.S. Dist. LEXIS 20323 (S.D. Ga. 1986); the prohibition on abridging or impairing access to the courts is not limited to direct interference. *Johnson v. Avery*, 393 U.S. 483, 89 S. Ct. 747, 21 L. Ed. 2d 718 (1969).

Breach asserts that defendants have orchestrated guerilla warfare against Breach and have gained an advantage in defending themselves against Breach's claims of constitutional denial of adequate medical treatment by confiscating his legal papers.

C.     *The Plaintiff is likely to succeed on the merits:*

Defendants cannot show any legitimate reason as to why Lt. Pelzer, confiscated, read, copied, duplicated, downloaded Breach's legal work and has made no provision to return his legal work to him, unaltered. Defendants cannot reasonably demonstrate a legitimate reason why Classification Specialist, Ms. Bias read, quoted what the allegations state before the Court, then turn right around and basically tell Breach he will not be considered for a regular progress review just like every inmate in the Alabama prison system.

D.     *The relief sought will serve the public interest:*

Veraciously speaking, defendants willfully and deliberately committed an offense, which offends the Constitution. The grant of relief will serve the public interest because is it always in the public interest for prison officials to obey the law. *Duncan v. Anaya,* 642 F. Supp. 510, 527 (D.N.M. 1986)(respect for law, particularly by officials responsible for the administration of the State's correctional system, is in itself a matter of the highest public interest.") Prison staff may not read prisoner's legal papers. *Bayron v. Trudeau,*

702 F.2d 43, 45 (2d Cir. 1983); *Wright v. Newsome,* 795 F.2d 964 (11th Cir. 1986) (per curiam)

## POSTING BOND

Usually, a litigant who obtains interim injunctive relief is asked to post security. *Rule 65(c),* Fed.R.Civ.P. However, the plaintiff is an indigent prisoner and is unable to post security. The court has the discretion to excuse an impoverished litigant from posting security. *Orantes – Hernandez,* 541 F. Supp. 351 n. 30 (C.D. 1982). In view of the without requiring the posting of security.

## CONCLUSION

Unless restrained, defendants, and each of them, their servants, agents, and employees will continue to possess, read, copy, duplicate Breach's legal papers depriving Breach of his right to access the Courts. The acts of defendants individually and in concert constitute an illegal deprivation of plaintiff's legal papers guaranteed to him under the Constitution and under color of law.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff prays:

1.    Unless defendant's above-described wrongful acts are restrained and enjoined, Breach will be seriously and irreparably damaged. Breach request for a preliminary injunction and final injunction enjoining defendants, and each of them, their officers, agents, employees, privies, successors, assigns, and all persons acting by and under it be

temporarily enjoined during the pendency of this action, and permanently thereafter, from:

    a.    Interfering, frustrating protected activity and protected legal papers/documents, e.g., reading, copying, duplicating, downloading, confiscating, seizing or depriving Breach of his legal papers, documents, exhibits, witness affidavits, medical records, excreta,

2.    That the defendants, and each of them, account to plaintiff legal papers confiscated by them during the periods of said unlawful use, duplication, reading, and return immediately, unaltered each document that is, has been stored, saved in the USB Flash Driver, or that other available means be made that Breach is restored of the documents alleged to have been confiscated:

    (2) a.    That the Court Order ADOC and all persons acting in concert with ADOC, enjoined and restrained from reading, copying, duplicating, confiscating, destroying, or interfering with Breach's legal papers; and,

    b.    That the Court order ADOC to immediately return the USB Flash Driver or all legal papers secured therein, confiscated on or about July 12, 2008 to the Plaintiff Marcellus Breach unaltered.

    c.    Any duplicated copy or copies of Breach legal papers in the possession of any ADOC official, employee, servant thereof, be immediately turned over to Breach, and additional copies of same be destroyed.

    d.    That in the event the ADOC defendants cannot retrieve all of the legal papers belonging to Breach, that the Court directs the Clerk of Court at the costs of copying the entire file on Record be taxed and charged to the ADOC at costs provided by the Clerk of Court.

    e.    Grant what this Court deems appropriate.

    I declare, attest under the penalty of perjury that the foregoing is true and correct under the penalty of perjury. 28 U.S.C. 1746, this 5 Day of August 2008.

Marcellus Breach

Marcellus Breach

26

Marcellus Breach 160710 ®
Limestone C.F.
28779 Nick Davis Rd.
Harvest, Alabama 35749

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this _5_ Day of August 2008, placed a true copy

of the foregoing upon the following through the prison mail system properly addressed

postage prepaid and mailing First Class U.S. Mail to:

| Alabama Dept. of Corrections | Rushton, Stakely, Johnston, Garrett, P.A | Starnes & Atchison, LLP |
|---|---|---|
| Legal Division | P.O. Box 270 | 100 Brookwood Pl., 7th Floor |
| P.O. Box 301501 | Montgomery, Alabama 36101 | P.O. Box 598512 |
| Montgomery, Alabama, 36101 | | Birmingham, Alabama 35259-8512 |

Marcellus Breach

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MARCELLUS BREACH, #160710

    Plaintiff,

Vs.                       CASE NO: 2:06-cv-1133-MEF

PRISON HEALTH SERVICES, INC., et al.,

    Defendants.

### DECLARATION BY MARCELLUS BREACH AIS# 160710

**MARCELLUS BREACH, AIS# 160710** and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, and declares under the penalty of perjury 28 U.S.C., 1746 that the foregoing is true and correct.

My name **MARCELLUS BREACH.** I am over the age of twenty-one. I am the Plaintiff to this action. I make this declaration in further support of my motion for a temporary restraining order and/or preliminary injunction.

I have written the wardens, (see attached) complained to Captain Tully concerning the issue before the Court. Lt. Pelzer confiscated the flash driver, read my legal work, copied it, downloaded it, duplicated and will not return my legal work to me.

I cannot respond to a summary judgment motion without my legal documents. I state on or about July 12, 2007 I was summons to the shift commanders officer after the institutional count was clear. Upon arrival, two other law clerks Chris Bryam and Willie White were with me. Sergeant Crabtree met me outside the office and asked me where is the flash driver. I told him in the law library. He said go inside speak with Lt. Pelzer. Upon appearing in front of Lt. Pelzer, Lt. Pelzer stated: "If you don't have the right answer, what I want to hear, you are going to house arrest". I asked: "What answer are you talking about, and what are you talking about?" Officer Bright, COL, was present, shouted: "Shut up!" Sergeant Mitchell, also present asked me: "Where is the flash

driver?" I stated: "In the law library where it is suppose to be". Sergeant Mitchell then stated, "Go get it and get yourself out of this trouble." I asked: "What trouble". Lt. Pelzer stated: "You have time to think about the right answer, if I don't get the right answer, you'll be in lock up". I was instructed to go retrieve the flash driver. Myself, and two (2) other law clerks, Willie White and Christopher Byram went to the law library and were told to wait by Officer Tucker at the crossover gate. Sergeant Crabtree and Officer Bright soon arrived and opened the law library and conducted another search. I stated to the officers "It is clear that someone has already been in here searching, look at this place, it's been ransacked." I later learned Lt. Pelzer and Crabtree had been in the law library searching for the flash drivers.

I further state, that I have knowledge that several inmates here at Limestone have access or possess USB flash drivers for their assigned institutional jobs. I know that the chapel workers, sports department, general library, honor dorm, trade school, drafting, welding and Captain Tully's runners' possess flash drivers, but none of theirs were confiscated like the one I used which contained my legal documents.

I used the flash driver to secure my legal papers at all times. I have never stored anything other than legal work. I have written the warden, spoken to the captain, requested to my supervisor to return the flash driver to me, or secure a means that I can retrieve a copy of my legal work secured unaltered. My evidence in this case, several expert witness affidavits, medical records, witness affidavits, exhibits, were scanned on the flash driver and stored, encrypted to my safety into a special file folder. I had over 700 pleadings pertaining to this case, and other inmate's legal work stored on the flash driver.

Officials have a Real VNC Viewer program on the computers that allows them to read my legal work as I prepare it at any time. I have caught officials watching, reading my legal work as I was prepared it for filing. Also, I have obtained knowledge that Ms. Bias has a copy of the document that I filed with the Circuit Court in Montgomery, before I even placed it in the U.S. Mail. The way ADOC officials can obtain a copy of every pleading is, they save, download a copy of every legal document that is printed and it is up to them whether it is deleted or read, printed for their use. I do not agree with this method because ADOC has an advantage of the protected legal papers and can read them any time that want.

As of today, I do not have, and have not been given either the flash driver, or a copy of my legal work. I cannot respond to summary judgment without my evidence secured on the flash driver. I cannot respond to the pending discovery objections before the Court. I cannot retrieve the evidence that I generated over the period of prosecuting

this action through means of independent investigations, discovery. Without an Order from the Court, my legal papers will be destroyed, lost or kept by ADOC officials.

I declare that the foregoing is true and correct under the penalty of perjury 28 U.S.C., 1746.

This __5__ Day August 2008

Marcellus Breach

30

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

MARCELLUS BREACH, #160710

     Plaintiff,

Vs.

PRISON HEALTH SERVICES, INC., et al.,

     Defendants.

\*
\*
\*    CASE NO: 2:06-cv-1133-MEF
\*
\*

### DECLARATION BY CHRISTOPHER BYRAM, AIS 214903

**CHRISTOPHER BYRAM, AIS# 214903** and being duly sworn, deposed and says on oath that the averments contained in the foregoing are true to the best of his ability, information, knowledge and belief, and declares under the penalty of perjury 28 U.S.C., 1746 that the foregoing is true and correct.

"My name Christopher Byram.  I am over the age of twenty-one.  I am the witness to the allegations contained by the Plaintiff, Marcellus Breach. I state as follows:

On a Saturday, July 12, 2008 Marcellus Breach, Willie White and I, were going to work at our job assignment at the Limestone Correctional Facility, law library. Mr. Breach was summons to report to the shift commander's office.  Upon arrival, Sergeant Crabtree asked Mr. Breach where is the flash driver.  Mr. Breach responded at the law library.  Mr. Breach was instructed to go inside and report to Lt. Pelzer.  At that time, Sergeant Crabtree pulled me aside and asked where is the flash driver and asked me whether Mr. Breach has it own him or somewhere else, Crabtree asked me do I know what's on it?  I stated, it's in the law library and nothing is on it except legal work. I explained to him, that we use it to save inmates legal work because the computers crash too much.

Mr. Breach came out, and stated that they want the flash driver.  Mr. Breach complained that this was the third time officials have asked for the flash driver and that Captain Tully just got it, looked at it, and returned it.  When we arrived at the crossover

gate, Officer Tucker instructed us to wait. Sergeant Crabtree and Officer Bright arrived, opened the law library, and Mr. Breach stated looks like you all have already been in here, look at this place it's a mess.

The law library was ransacked. Everything was opened, papers everywhere. It was clear someone was searching. Sergeant Crabtree instructed Breach to turn over the flash driver. Mr. Breach opened the cabinet and turned it over to him. During this search Officer Bright begun to search again. Officer Crabtree insisted that Mr. Breach open another singled out particular drawer and give what inside there. Mr. Breach stated he was not going to open anything else, that he gave him the flash driver as demanded, and if they wanted anything else open, they have a key. Mr. Breach stepped back out of the way. Mr. Breach said he was not going near that drawer and for the officers to open it; they have a key. Mr. Breach stated it was too suspicious, and too easy for someone to have planted some contraband in the law library, it was clear someone had been in the law library.

I also attest, that I have knowledge that other inmates have flash drivers at the chapel, trade school, sports department, welding, drafting, even Captain Tully's runners. There has never been a problem and flash drivers were used to store legal work. No other inmate flash drivers were confiscated except Mr. Breach.

I further state that ADOC has a VNC program on the computers that allows officials to read legal work at any time legal work is being prepared, and they can store, saved the legal work on another computer outside the law library. We can tell when we are being VNC and someone is reading our legal work.

I have knowledge that several inmates have possession or access to flash drivers at there job assignment. I know chapel workers, sports department, general library, trade school, welding, drafting, and even Captain Tully's runners have them.

I declare that the foregoing is true and correct under the penalty of perjury 28 U.S.C., 1746.

This ___5th___ Day August 2008

_Chris Bylaur_

Christopher Bryam

# EXHIBIT "B"

July 18, 2008.

To: Warden Mitchem.
Assistant Warden Patrick.
Assistant Warden Boode.

On July 12, 2008 My legal work that is stored on one of the flash drive at the law library by Lt. Petzer.

He read and made a copy of all of my legal work. I have evidence stored on it I need for my case trying to get surgery.

I need my legal work back ASAP I cannot Respond to any Court orders. Would you phase check into this And have all my legal work returned. It's over 700 pleading, exhibits, Affidavits etc.

Thank you

Marcellus Barrack 160710
D-?

# EXHIBIT "C"

Marcellus Breach, 160710
L.C.F. 28779 Nick Davis
Harvest, Alabama 35749

July 17, 2008

Alabama Department of Corrections
C/O Albert Butler Assistant General Counsel
Legal Division
P.O. Box 301501
Montgomery, Alabama 36130

Re:    Marcellus Breach v. Prison Health Services, Inc.,
       Case No.: 2:06-cv-1133-MEF

Dear Albert Butler:

I am bring this matter to your attention hoping that you will check into it and rectify the matter without immediate court action. The problem is, there is an Inmate being allowed, granted by ADOC officials at the law library, who is not assigned to work or have assigned to make decisions pertaining to the law library reading my pending litigation. I have personally observed Ken Vincent reading my legal work on two (2) separate occasions when my legal work was waiting to be printed by ADOC. As a matter of fact, my legal work did not get printed even though he read it, I had to go request the supervisor to print my work out, and still my legal work was open in plain view to all eyes. My legal work was printed, but the point is, Ken Vincent read my work and he is not assigned to the law library, and he was assisting in printing that day. I cannot tolerate ADOC officials allowing another inmate to read my work.

This matter must come to an end immediately. Neither ADOC nor any Inmate has the right to **read** any protected pending legal materials. This is an invasion and I will not tolerate it. The legal documents I have caught him reading pertain to the present litigation imminent to be filed pertaining to defendant William Hobbs, and Summary Judgment matters.

I hope that we can resolve this matter without Court intervention. If the matter continues and ADOC continues to allow this inmate to read my legal work I will immediately request a **Restraining Order / Preliminary Injunction** for Retaliation, and Interferences with access to the Courts. I have written Warden Mitchim several times, I have complained to Captain Tully, I have complained to my supervisor about this matter and

apparently no one takes this seriously.    If so, then the appropriate actions would have been taken to insure that ADOC is not involved in any constitutional protected rights as to reading my legal work.

I have exhausted all available remedies and I am bring this to your attention.

Sincerely,

Marcellus Breach

# EXHIBIT "D"

7-23-08

Ms. Bias:

Every profile is expired in my medical file. It is clear I will not receive appropriate medical treatment while in prison.

My question is. My parole date is 7/09. Why, not one time have I've been considered any programs, lower-custody or even a review like other inmates? Is it because of my litigation?

Would you please advise.

Thank-you.

Marcellus Breach 160710
MARCELLUS BREACH 160710
Dorm - D.

Breach,

There is no conspiracy going on. Annual and semi-annual reviews have been suspended for quite some time now. While litigation itself has absolutely no bearing on eligibility, you do claim in your lawsuit that you are unable to perform basic human functions (i.e, use restroom) because it causes you severe pain. Ofc. Moore has had to remove you from several job assignments because you are unable to physically do the work. Medical profiles or not - if you can't work, you can't go to work release. In addition to your health problems, you have an assault II conviction wherein the victim is a police officer, and you also

# EXHIBIT "E"

## MARCELLUS BREACH, 160710
L.C.F. 28779 Nick Davis Rd.
Harvest, Alabama    35749

*March 28, 2008*

Alabama Department of Corrections
C.O Albert S. Butler, Assn't General Counsel
Legal Division
301 South Ripley Street
P.O. Box 301501
Montgomery, Alabama    36130

> RE:    ***Marcellus Breach v. Prison Health Services, Inc., et al.,***
> ***Middle District Court Case No. 2:06-cv-1133-MEF***
> ***Mediation/ Settlement Negotiations***

Dear Counsel:

This letter is written in the bona fide hope of reaching a settlement in the above-styled action, as Plaintiff attempts to enter into negotiation with the Defendants releasing them of all liability herein.

First of all, it is the plaintiff's belief that this settlement could be beneficial for all parties at this time.   As is the case, in any adversarial proceeding, the plaintiff approaches this offer of settlement with the complicit understanding that if adjudication were to continue forward in this suit, plaintiff would be able to succeed.   Plaintiff's opinion expressed herein, is bolstered by the fact that he has knowledge of, and the ability to present in any future presentation to the court, irrefutable evidence of the complicity of defendants Ruth Naglich and Brandon Kinard of the ADOC that would defeat an immunity as would be qualified under color of state law.

I have copies and certified documents as evidence that will clearly demonstrate defendant Ruth Naglich did so, actually, interfere with medical treatment once proscribed by a physician -- by expressing an opinion that plaintiff was not to be approved for said as "deemed unnecessary".   Additionally, I have evidence that Ms. Naglich was aware of the surgical requests from Louisiana.

It goes without saying Mr. Butler, that any additional litigation in this case can only cause me further delay in getting the surgery that I so desperately need; and could only cause

you and your office to be open to additional workload and future prospected liability. It will continue to costs Alabama taxpayers, and CMS and PHS money in litigation. As such, for the benefit of both myself, and the parties that you ably represent, I would like to propose the following for consideration at this time:

I do not want Dr. Hobbs cutting on me. My offer is entitled: "Free To Go Card" for the defendants, meaning voluntary settlement.

A.     I have my own Surgeon and also the financial resources to cover the medical costs. Therefore, my proposal will included the following:

(i)     I am non-violent, within 18-months for consideration of parole. I have served almost four (4) years on this sentence behind the wall at a level four. I am basically tired. I am eligible for lower custody and work release status.

(ii)     I will accept responsibility pertaining to my hernia if and when I could be placed at a ADOC Work Release Center wherein, I can work at a **light duty, suitable job** and as time permits, at any point thereafter, I feel or my surgeon feels I cannot continue further without surgery, upon arraignments made by the appropriate persons, any examinations, or scheduled surgery at my expense, be approved, carried out, and I am returned to the work center.

(iii)     Upon financial arraignments made by plaintiff and his Surgeon the Defendants shall immediately approve and arrange for plaintiff to have his surgery without interference, or delay, at plaintiff's expense. The defendants whereby would agree to comply with any future plaintiff's physicians' orders, i.e., follow up appointments without interference.

(iv)     That the Defendants would agree to that any "retaliatory acts" such as any influence whatsoever at work release through any correctional officials and any and all decision-making process with the Alabama State Board of Pardons and Paroles would be prohibited.

Protracted litigation is not my goal. I have expressed through my continued actions in this suit that the goal is my physical well-being. I have made many mistakes in my life. I accept full responsibility for my actions. However, I feel that if we could come to an agreement whereby, I am placed at a work release facility close to my family

and approximate to outside medical appointments.    That I could continue further in rehabilitating my life.

There is one exception to the agreement. While at work release, and while I am making arraignments pertaining to my hernia, if my hernia becomes, before medical outside arraignments are made, my hernia becomes:  "**incarcerated, or in danger of becoming incarcerated or into the scrotum**".  I cannot waive the right at that time to medical care that is life or death and an emergency situation.    Thus, while my hernia is at the state it is I can make arraignments while at work release and the defendants can be released. However, I should be able to undergo surgery not long thereafter.

I hope that we can reach an agreement that will benefit all parties.  We can end this dispute and I am hoping you will communicate with me **before** I file my opposition to summary judgment.

Very Truly Yours,

Marcellus Breach

CC:

Alabama Dept. of Corrections
LEGAL DIVISION
P.O. Box 301501
Montgomery, Alabama 36101

Rushton, Stakely, Johnston, Garrett, P.A
P.O. Box 270
Montgomery, Alabama 36101

Starnes & Atchison, LLP
100 Brokwood Place, 7thg Floor
P.O. Box 598512
**Birmingham, Alabama 35259-8512**