IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARCELLUS BREACH, | ) | |
| AIS #160710 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:06-CV-1133-MEF |
| | ) | [WO] |
| | ) | |
| PRISON HEALTH SERVICES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

In this 42 U.S.C. § 1983 action, Marcellus Breach ["Breach"], a former state inmate,

challenges the medical treatment provided to him for a left inguinal hernia initially

diagnosed in February of 2005.[1]  Breach asserts that "the hernia is causing ... pain and

discomfort and restricts his normal daily activities....  Plaintiff hernia can rupture at any

time, and lead to death if not timely treated."  *Plaintiff's Complaint - Court Doc. No. 1* at

10.  Breach further maintains that the hernia "at times ... is not 'easily reducible' and is

---

[1]According to the evidentiary materials filed by Breach, an inguinal hernia occurs when weakness in the abdominal muscles allows a portion of the intestine to push through the abdominal wall.  The bulging portion of intestine is called a hernia.  *Plaintiff's Exhibit I to the Motion for Temporary Restraining Order/Motion for Preliminary Injunction - Court Doc. No. 3-2* at 14.  "A hernia is reducible when the contents of the hernial sac can be replaced into the abdominal cavity by gentle pressure.  An irreducible (incarcerated) hernia cannot be reduced or placed back into the abdominal cavity.  A hernia is strangulated when the blood supply to the herniated segment of the bowel is cut off by pressure from the hernial ring (the band of muscle around the hernia).  If a hernia is strangulated, there is ischemia and obstruction of the bowel loop...." *Id*.

painful....  My hernia can rupture, possible strangulation at 'any' time.  I cannot exercise, lift weight ... participate in 'any' rehabilitative programs ... because of this hernia." *Plaintiff's February 13, 2007 Response - Court Doc. No. 23* at 5-6.  Breach maintains the Alabama Department of Corrections implemented a policy or treatment protocol which required that an inmate's hernia be incarcerated, in danger of being incarcerated or descended into the scrotum before the inmate would be referred for surgery on the hernia and argues the defendants' failure to order surgery in accordance with the directives of such policy constituted deliberate indifference to his medical needs.[2]  Breach seeks a declaratory judgment, injunctive relief and monetary damages.

The defendants filed special reports, answers and supporting evidentiary materials addressing Breach's claims for relief.  Pursuant to the orders entered herein, the court deems it appropriate to treat the reports filed by the defendants as motions for summary judgment.  *Order of May 12, 2009 - Court Doc. No. 797.*  Thus, this case is now pending on the defendants' motions for summary judgment.  Upon consideration of such motions, the evidentiary materials filed in support thereof and the plaintiff's response in opposition to the motions, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to

---

[2]For purposes of this Recommendation, the court assumes *arguendo* that the alleged policy existed.

interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine issue of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine issue material to his case exists.

---

[3]Effective December 1, 2007, "[t]he language of Rule 56 [was] amended ... to make the rule[] more easily understood and to make style and terminology consistent throughout the rules.  These changes ... are stylistic only." Fed.R.Civ.P. 56 Advisory Committee Notes.  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior rule remain equally applicable to the current rule.

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial.").

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motions for summary judgment, Breach is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e)(1), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory

4

allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami,*

*Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell*, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

6

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Breach fails to demonstrate a requisite genuine issue of material fact in order to preclude summary judgment. *Matsushita*, *supra*.[4]

## III. DISCUSSION

Breach complains the defendants acted with deliberate indifference to a serious medical need by failing to provide him surgery for his left inguinal hernia when officials at a private prison facility in Louisiana first questioned the need for surgery in March of 2006. The defendants deny they acted with deliberate indifference to Breach's medical condition and, instead, maintain they provided Breach with appropriate treatment for his hernia.

Correctional officials and medical personnel may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health when the officials/personnel know that the inmate faces "a substantial risk of serious harm" and with

---

[4]The parties are advised that the court has thoroughly reviewed the evidentiary materials submitted in this case and taken into consideration all challenges to the probative value of these materials.

such knowledge disregard that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994). A plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

In *Farmer*, the Court identified both objective and subjective elements necessary to establish an Eighth Amendment violation. With respect to the requisite objective elements, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d 1028-1029. As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.... The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ... ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have

8

perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety....   It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (emphasis added).

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the named defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000);  *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).  Specifically, correctional and medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989).  When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*,

182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 838.

In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'  *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.  Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.  *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033

(citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation.").

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  "The known risk of injury must be a strong likelihood, rather than a mere possibility before a [defendant's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted).  Thus, in order to survive summary judgment on his deliberate indifference claim, Breach is "required to produce sufficient

11

evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995); *Farmer*, 511 U.S. at 837-838 (To evade entry of summary judgment on a properly supported motion, plaintiff must produce sufficient evidence demonstrating (1) an objectively substantial risk of serious harm; (2) subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused his injuries); *Marsh*, 268 F.3d at 1028-1029.

The medical records filed herein demonstrate that on February 20, 2005 medical personnel at the Limestone Correctional Facility diagnosed Breach with a left inguinal hernia. *Plaintiff's Exhibit A in Support of the December 22, 2006 Motion for Temporary Restraining Order/Motion for Preliminary Injunction - Court Doc. No. 3-2 at 2; Plaintiff's Exhibit A to the July 22, 2009 Brief in Response and Opposition to the Defendants' Special Reports - Court Doc. No. 802-11 at 2.* On May 5, 2005, Dr. Bosserman, a physician employed at Limestone, evaluated the plaintiff and noted a small "inguinal hernia on (L), not into scrotum." *Plaintiff's Exhibit B in Support of the December 22, 2006 Motion for Temporary Restraining Order/Motion for Preliminary Injunction - Court Doc. No. 3-2 at 3; Plaintiff's Exhibit A to the July 22, 2009 Brief in Response and Opposition to the Defendants' Special Reports - Court Doc. No. 802-11 at 10.* Dr. Bosserman prescribed a truss and various profiles for management of Breach's hernia. *Id*.

12

On March 16, 2006, Breach was transferred to the South Louisiana Correctional Center.  On March 21, 2006, Dr. John Tassin examined Breach and questioned the need for repair of the left inguinal hernia.  *Plaintiff's Exhibit C in Support of the December 22, 2006 Motion for Temporary Restraining Order/Motion for Preliminary Injunction - Court Doc. No. 3-2* at 4; *Plaintiff's Exhibit B to the July 22, 2009 Brief in Response and Opposition to the Defendants' Special Reports - Court Doc. No. 802-12* at 5 ("(L) inguinal hernia needs repair?").  On July 18, 2006, Dr. Tassin again examined Breach and noted the "(L) Inguinal Hernia - Not Incarcerated, [Surgery is] Elective Procedure."  *Id*.  In the instant case, Breach filed an affidavit submitted by Dr. Tassin in a Louisiana civil action initiated by Breach.  In this affidavit, Dr. Tassin explained his treatment of Breach as follows:

> My first visit with Marcellus Breach was March 21, 2006 at which time he presented with a hernia on his left side which was an inguinal hernia. My notes reflect that I wrote "needs repair?" which indicated that I was questioning whether or not his hernia was going to need a repair.  This notation did <u>not</u> reflect that I felt that his hernia actually needed a repair or required repair, but only that I needed to look into the question of whether or not it did need repair.
> Marcellus Breach was seen a second time on April 12, 2006 regarding dental problems which did not relate to his hernia.
> Marcellus Breach was seen again on July 18, 2006 and was still complaining of a left inguinal hernia.  Examination of his hernia indicated it was not incarcerated nor into his scrotum, and that repair of the hernia would be an elective procedure.  This note means that surgery was not required for the health or safety of Marcellus Breach, but that surgery was simply elective, but not necessary.  My additional review of the nurse's notes ... for July 18, 2006 indicated that there was no change in the hernia and no new orders were given by me regarding it meaning that the hernia had not

gotten better or worse.   Additionally, ... the Alabama Department of Corrections did not require that hernia repair be done unless the hernia was incarcerated or was into the scrotum.  Marcellus Breach's hernia, on July 18, 2006, was not incarcerated nor into his scrotum.

Marcellus Breach's left inguinal hernia did not [materially] change between March 21, 2006 through July 18, 2006, and he was not complaining of it on October 3, 2006.  Surgery for the hernia [at this time] is only an elective procedure which is not required for Mr. Breach to do normal light everyday activities.  Mr. Breach's hernia was neither getting better or worse during his time at the South Louisiana Correctional Center.

It is my professional medical opinion that Marcellus Breach's hernia, during the time he was at the South Louisiana Correctional Center, was stable, got neither better nor worse, and that any surgery he may have in the future to correct it would be an elective procedure which is not required for his health or safety, but only for the relief of minor discomfort that the hernia may cause upon heavy exertion.

I know all of the information contained in this Affidavit of my own personal knowledge.

*Plaintiff's Exhibit H to the July 22, 2009 Brief in Response and Opposition to the Defendants' Special Reports (Affidavit of Dr. John Tassin) - Court Doc. No. 802-18* at 1-2.

Breach submits affidavits from free-world medical personnel as support for his complaint.  Dr. Satyavardhana Rao Yerubandi, a licensed physician and general surgeon specializing in hernia repair, asserts that based on his review of Breach's prison medical records, it is his "professional opinion that Mr. Breach's inguinal hernia, the opening of his hernia '<u>cannot</u>' heal itself, neither can <u>any</u> medicine be used to <u>cure the condition</u>, **hernias <u>cannot</u> be medically 'treated' neither can any medicine be used to cure the condition:  surgery for Mr. Breach is the <u>only</u> way to cure the defect**.  ***  In Mr. Breach's case, the long-term [projected] course, therefore, is for Mr. Breach's hernia to

become steadily <u>worse</u> as time goes on, sometimes slowly and sometimes quickly.  The <u>only</u> remedy for his condition to repair the hernia is surgically. *** The imminent danger that Mr. Breach faces is, and if, when Mr. Breach's hernia becomes non-reducible, it will and can become <u>life threatening</u> if part of Mr. Breach's intestine get trapped or 'strangulated' in the opening: this can lead to dangerous complications such as obstruction of the flow of intestinal contents or blood, leading to <u>tissue death and gangrene</u>.  I express this opinion because when and if, Mr. Breach's hernia becomes strangulated, it **will** become <u>an emergency situation</u> that will and does usually require immediate surgery because of [potential] complications....  It is advised that surgery is done before this dangerous incarceration and strangulation situation arises." *Plaintiff's Exhibit A to June 19, 2007 Renewed Motion for Temporary Restraining Order/Motion for Preliminary Injunction - Court Doc. No. 81-2* at 3, 6-7; *Plaintiff's Exhibit G to the July 22, 2009 Brief in Response and Opposition to the Defendants' Special Reports - Court Doc. No.802-17* at 3, 6-7 (all emphasis in original).[5]

In a subsequent affidavit, Dr. Yerubandi states that based on his review of the prison medical records it is his opinion "that Mr. Breach's hernia is progressing which will lead into a dangerous medical situation when it becomes incarcerated, or strangulated, or even into the scrotum." *Plaintiff's Exhibit 2 to the August 28, 2007 Renewed Motion for*

---

[5]Dr. Yerubandi concedes he did not personally examine Breach and acknowledges he based his observations and opinions related to Breach's left inguinal hernia solely on his review of Breach's medical records.

*Independent Evaluation - Court Doc. No. 124-3* at 2; *Plaintiff's Exhibit G to the July 22, 2009 Brief in Response and Opposition to the Defendants' Special Reports - Court Doc. No. 802-17* at 15.  Dr. Yerubandi asserts his opinion that prison medical personnel have breached "accepted standards of care ... [in their] fail[ure] to refer Mr. Breach to a specialist in hernia repair who regularly see all these kinds of cases because of the <u>danger of incarceration and strangulation of Mr. Breach hernia</u> which will lead to serious medical complication such as <u>tissue death, gangrene</u> -- if Mr. Breach is not timely treated knowing that medically you cannot treat a hernia, surgery is the only cure to alleviate Mr. Breach's symptoms of pain and discomfort...."  *Id*. at 15 (emphasis in original affidavit).  Dr. Yerubandi further opined:  "Medically, there is no treatment for Mr. Breach's hernia, and the prescription given by Dr. Hobbs [the prison physician] can be called <u>hernia management</u> because, the <u>only treatment is surgery</u>.  <u>No mechanism of preventive care is known, and surgical repair is almost always necessary</u>."  *Id*. at 16 (emphasis in original).

In their responses to the complaint, the defendants filed medical records and affidavits of prison health care personnel responsible for Breach's medical treatment.  Dr. Michael E. Robbins, a board certified internist and the medical director at Kilby Correctional Facility, provided an affidavit which addresses Breach's claims as follows:

> ....  I am familiar with Mr. Breach and have been involved with the medical services provided to him at Kilby.  In addition, I have reviewed Mr. Breach's Complaint in this action as well as his medical records....
> Mr. Breach was first diagnosed with an inguinal hernia in 2005.  An inguinal hernia occurs "when there is a small opening in the lining of the

abdominal wall, and part of the intestine protrudes through this hole." He has been incarcerated at Kilby Correctional Facility since September 6, 2006. I have reviewed his medical records and have been actively involved in his medical treatment. It is noted in a Progress Note from Dr. Bosserman on May 5, 2005 that Mr. Breach does have an inguinal hernia on the left, but it is not into the scrotum.... Dr. Bosserman placed the inmate on limited restrictions of no lifting greater than 25 lbs. and no standing or walking for greater than one hour due to (1) a deformity of his left foot, (2) an ankle brace, and (3) a hernia for which [Dr. Bosserman] prescribed a truss. In a yearly Health Evaluation dated February 2, 2006, [Breach] made no oral complaints about any pain associated with the inguinal hernia.

Mr. Breach was to be seen on December 21, 2006 for evaluation of his left inguinal hernia but left before his exam could be performed. It should also be noted that Mr. Breach signed up for Sick Call on October 9, 2006 and October 12, 2006, but signed a Release of Responsibility Waiver and left before his exam on both dates. Mr. Breach was examined on December 27, 2006 for evaluation of his left inguinal hernia. He voiced no other complaints at that time. It was noted on that date that he was not wearing his truss. The hernia was noted as being easily reducible, non-strangulated, and is not incarcerated. Inmate was prescribed a left inguinal truss for 180 days and Percogesic for pain. He was placed on restrictions of no straining, no lifting more than 20 lbs. and placed in bottom bunk for 180 days. It was noted at that time that there was no need for surgical referral at present. In my opinion, the inmate's hernia does not require surgical intervention and I believe surgery is not medically necessary. The type hernia which Mr. Breach has should not cause the patient any pain nor is it a condition that a reasonable person cannot live with under the conditions and restrictions governing Mr. Breach.

Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complaints were evaluated and treated in a timely and appropriate fashion at Kilby Correctional Facility, and that his diagnosed conditions have been treated in a timely and appropriate fashion.

At no time did I ... deny Mr. Breach any needed medical treatment, nor did [I] ever act with deliberate indifference to any serious medical need of Mr. Breach.... [I]t is my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. Mr. Breach was seen and evaluated by the medical or nursing staff, and was referred to an appropriate care provider or given

appropriate care, each time he registered any health complaints at Kilby Correctional Facility.  At all times, Mr. Breach's known medical complaints and conditions were addressed as promptly as possible under the circumstances.

*Exhibit B to the July 13, 2007 Supplemental Special Report of Prison Health Services, Inc.*

*(February 14, 2007 Affidavit of Dr. Michael E. Robbins) - Court Doc. No. 86-3* at 5-8.  In

a supplement to this affidavit, Dr. Robbins responds to the allegations of Dr. Yerubandi as

follows:

> ....   Dr. Yerubandi addresses ... what could happen and/or the possibilities that could arise in a person with a hernia and this information is correct.  However, there are many instances where these possibilities never occur.  There are known instances where a person has had a hernia for many years and has never required surgical repair.  At the time Mr. Breach was examined by PHS employees at Kilby Correctional Facility, none of these possibilities existed.  His hernia is easily reducible, non-strangulated, and is not incarcerated.  Therefore, his hernia did not require surgical repair.  An inguinal hernia can be treated and surgery is not the only option.
>
> I do agree with Dr. Yerubandi that a hernia does not heal itself.  However, a hernia can be treated with restrictions related to lifting, walking, standing and wearing a truss all of which was prescribed for Mr. Breach.  Medical records indicate that Mr. Breach arrived at his medical appointments on numerous occasions without wearing his truss and stated he lost it.  A truss is used to decrease discomfort and to decrease the possibility of the hernia becoming larger....  Mr. Breach's hernia is not life threatening and does not require surgical intervention and I believe surgery is not medically necessary.

*Exhibit B to the July 13, 2007 Supplemental Special Report of Prison Health Services, Inc.*

*(July 12, 2007 Supplemental Affidavit of Dr. Michael E. Robbins) - Court Doc. No. 86-3*

at 3.[6]

On February 6, 2007, correctional officials filed a response supported by the affidavit of defendant George Lyrene, a physician board certified in internal medicine and the medical director for the Alabama Department of Corrections.  In this affidavit, Dr. Lyrene, upon his review of Breach's medical records, expressed his assessment of Breach's hernia as follows:

> I have reviewed the record of Mr. Marcellus Breach.  The medical issue he presents is really quite a simple one.  He has a small, easily reducible inguinal hernia, for which conservative management with applied support and limitations on heavy lifting are very appropriate.  This is a hernia that was present by intake documentation and would be amenable to surgery which was clearly elective at the time of his admission and would clearly not be necessary now....  This is a minor problem ... for which surgery is not necessary at this time and which is being appropriately managed.

*Exhibit A to the February 6, 2007 Response of Correctional Personnel (Febraury 2, 2007 Affidavit of Dr. George Lyrene) - Court Doc. No. 20-2* at 1-2.[7]

Dr. William Hobbs, a licensed physician and the medical director for Limestone Correctional Facility, in addressing the claims raised by Breach stated that:

> Mr. Breach was transferred to Limestone Correctional Facility on

---

[6]Breach argues the court should disregard the opinions expressed by Dr. Robbins due to his having received treatment for a chemical dependence in 1998 and the resulting suspension of his medical license based on such dependence.  However, Dr. Robbins successfully completed treatment for his chemical dependence and the Alabama Board of Medical Examiners reinstated his medical license on February 16, 2000. *Notice of Dr. Michael E. Robbins - Court Doc. No. 672-2* at 2.  The court therefore concludes that there is no valid basis to disregard the opinions set forth by Dr. Robbins.

[7]The opinion expressed by Dr. Lyrene, like that of Dr. Yerubandi, is based solely on his review of Breach's medical records.  It likewise merely represents Dr. Lyrene's personal medical opinion regarding Breach's left inguinal hernia.

March 23, 2007. I am familiar with Mr. Breach and have been involved with the medical services provided to him at Limestone. In addition, I have reviewed Mr. Breach's Complaint in this action as well as his medical records (certified copies of which are bing produced...).

Mr. Breach was first diagnosed with an inguinal hernia in 2005. An inguinal hernia occurs "when there is a small opening in the lining of the abdominal wall, and part of the intestine protrudes through this hole." I have reviewed his medical records and have been actively involved in his medical treatment.

The following information is based upon my personal knowledge and my review of Mr. Breach's medical records. Mr. Breach prepared a Sick Call Request on April 26, 2007 complaining of burning pain due to his hernia. He stated it was causing him problems coughing, sneezing and with bowel movements. This request was received on April 27th. Mr. Breach claims that Dr. Tassin at South Louisiana Correctional Services stated to him on March 21, 2006 that he needed surgery to repair his hernia. I examined Mr. Breach on April 30th and I noted that ... [h]e did have a large, easy to reduce direct inguinal hernia on the left. I ordered another small Ventura Truss as Mr. Breach stated he had lost his truss. My Physicians' Orders on April 30th indicate that I prescribed Motrin 600 mg as needed for 90 days for his discomfort and CTM SR (a sustained release antihistamine) for coughing and sneezing.

*** 

I have ... reviewed the Affidavit of Dr. Satyavardhana Rao Yerubandi in this matter ... and I do not agree with several of his opinions as stated. As a general rule, a hernia does not progress quickly and there are instances where a person has a hernia for many years and may never require surgery for repair. Hernia repair is an elective surgery [where the hernia is neither incarcerated nor strangulated]. The danger of waiting for a hernia to become incarcerated or strangulated is not high and emergencies involving hernias do not develop often.

Mr. Breach's inguinal hernia is being treated in an attempt to keep it from becoming larger and surgery is not his only option. A hernia can be treated with restrictions related to lifting, walking, standing and wearing a truss all of which have been prescribed for Mr. Breach. His medical records indicate that he has arrived at his medical appointments on several occasions without wearing his truss and he informed PHS employees that he lost it. Mr. Breach is not following the appropriate treatment [regimen] necessary to treat his hernia. A truss is used to decrease discomfort and to decrease the

20

possibility of the hernia becoming larger.  If Mr. Breach would follow the instructions provided to him and the restrictions placed on him by PHS physicians and if he would wear the truss prescribed for him, these things would in fact keep his hernia from progressing....

*Exhibit A to the July 13, 2007 Supplemental Special Report of Prison Health Services, Inc.*

*(July 13, 2007 Affidavit of Dr. William D. Hobbs) - Court Doc. No. 86-2* at 2-4.  Dr. Hobbs,

like Dr. Robbins, noted Breach's repeated failure to act in compliance with the instructions

and restrictions ordered by various medical personnel.  Dr. Hobbs also agreed with Dr.

Robbins' diagnosis that "Breach's hernia is not life threatening and does not require

surgical intervention and ... surgery is not medically necessary.  His hernia is easily

reducible, non-strangulated, and is not incarcerated."  *Id*. at 4-5.

Dr. Hobbs further opined that:

Hernia repair is an elective procedure and every hernia does not need to be repaired.  In order for a hernia to be repaired, the hernia must meet a certain Protocol ... [which requires] that the hernia must be incarcerated or in danger of becoming incarcerated or into the scrotum.  Mr. Breach does not meet this protocol and his hernia is easily reduced.  If another physician is suggesting that Mr. Breach's hernia should be repaired, this physician is mistaken and he is only trying to perform an elective surgery which is unnecessary and is not medically needed....

Based on my review of Mr. Breach's medical records, and on my personal knowledge of the treatment provided to him, it is my opinion that all of his medical conditions and complaints were evaluated and treated in a timely and appropriate fashion and that his diagnosed conditions have been treated in a timely and appropriate fashion.  It is also my opinion that the appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate....  At all times, Mr. Breach's medical complaints were addressed as promptly as possible under the circumstances.  Mr. Breach continues to receive medical treatment for his complaints related to his left inguinal hernia.

*Id.* at 5.[8]

The medical records before the court demonstrate that throughout Breach's confinement health care personnel routinely examined Breach, thoroughly evaluated his complaints and provided treatment in accordance with their professional judgment. On September 4, 2008, Dr. Bobby A. Crocker, a board certified physician in family medicine and Regional Medical Director for Correctional Medical Services, Inc., "personally traveled to the Limestone Correctional Facility to see and evaluate Mr. Breach. An appointment was made for Mr. Breach to be seen at the health care unit. However, Mr. Breach never showed up for his appointment to be seen and evaluated." *Exhibit A to the October 27, 2008 Supplemental Special Report of Correctional Medial Services, Inc. (October 24, 2008 Affidavit of Dr. Bobby A. Crocker) - Court Doc. No. 735-2* at 2. Dr. Crocker "again traveled to the Limestone Correctional Facility on September 12, 2008" to examine Breach. *Id.* On this date, Dr. Crocker "personally saw Mr. Breach ..., however, Mr. Breach refused to be ... evaluated...." *Id.* Dr. Crocker subsequently examined and evaluated Breach on October 17, 2008. His synopsis of such examination follows and is supported by the certified medical records filed in this case.

---

[8]Breach argues this court should discredit the medical opinions expressed by Dr. Hobbs because: (i) Hobbs presented inconsistent statements regarding the existence of a treatment protocol; and (ii) Hobbs is not board certified in any particular area of medicine. In support of this latter assertion, Breach argues the lack of board certification renders Dr. Hobbs unqualified to render a medical opinion regarding his hernia. Initially, the court notes that the inconsistent statements made by Dr. Hobbs with respect to existence of a treatment protocol in no way undermine the medical opinions expressed by Dr. Hobbs. In addition, the lack of board certification argument is patently without merit. Dr. Hobbs is a licensed medical physician and may therefore render an opinion regarding the condition and treatment of the left inguinal hernia suffered by Breach.

I ... saw Mr. Breach at the Kilby Correctional Facility on October 17, 2008. Mr. Breach was noted to be a thirty-nine (39) year old male, with a left sided groin hernia. According to Mr. Breach, the hernia has been present since 2005. Mr. Breach informed me that the hernia had increased in size over the last year. Mr. Breach was complaining of pain associated with the hernia which according to Mr. Breach was worse with standing. Mr. Breach indicated that he frequently reduced the hernia himself. He stated that he did not have a truss with him on that day, although he frequently utilized the truss. It was my diagnosis at the time that Mr. Breach had a moderate size left hernia, which was mildly tender and easily reducible. My recommendation is that Mr. Breach is to continue to use the truss and continue on Motrin.

I next [evaluated] Mr. Breach at the Kilby Correctional Facility on October 24, 2008. After seeing and evaluating Mr. Breach, it is my professional opinion that Mr. Breach does not require surgical intervention at this time. It is my personal opinion that Mr. Breach continue to be followed with conservative measures. Mr. Breach will continue to be seen regularly to make sure the hernia does not become worse, and a clinic visit is scheduled for Mr. Breach in thirty (30) days.

It is my opinion that Mr. Breach, at this juncture does not require an outside consult, and that physicians at the correctional facilities are qualified and capable of following Mr. Breach for his current condition. It is my professional opinion that Mr. Breach's current condition is stable, but that he will continue to be monitored.

Mr. Breach's hernia is not life-threatening, and does not require surgical intervention at this time.

It is my professional opinion based upon my review of the medical records, and my personal evaluation of Mr. Breach, that Mr. Breach's care and treatment is within the [prescribed] standard of care....

*Exhibit A to the October 27, 2008 Supplemental Special Report of Correctional Medial Services, Inc. (October 24, 2008 Affidavit of Dr. Bobby A. Crocker) - Court Doc. No. 735-2 at 3-4.*

On November 10, 2008, Dr. Hugh M. Hood, a board certified physician in internal medicine and Associate Regional Medical Director for Correctional Medical Services, Inc.,

"personally saw and evaluated Mr. Breach at the Limestone Correctional Facility.  Mr.

Breach was complaining of a left inguinal hernia.  I examined Mr. Breach and found him

to have a large left inguinal hernia, which had dissected into the scrotum.  The hernia could

not be reduced without pain."  *Exhibit A to the November 21, 2008 Response of*

*Correctional Medial Services, Inc. (November 21, 2008 Affidavit of Dr. Hugh M. Hood) -*

*Court Doc. No. 756-2 at 2.*  Dr. Hood further noted that:

> When Mr. Breach was last evaluated by Dr. Crocker on October 24,
> 2008, the inguinal hernia had not dissected into the scrotum.
> After examining Mr. Breach on November 10, 2008, I made the
> determination that Mr. Breach should be referred to surgery.  The surgery for
> Mr. Breach's left hernia has been approved, and an appointment is currently
> being made for Mr. Breach to be seen by an outside surgeon.

*Id*.

On December 1, 2008, correctional officials transported Breach to Cooper Green

Hospital in Birmingham, Alabama for a consultation with Dr. Ahmed Farah.  Dr. Farah

examined Breach and explained to him "[t]he procedures, risks, benefits and possible

outcomes [of surgery] including bleeding, wound infection, cord injury, hernia recurrence,

use of mesh and mesh infection ... [Breach] understands and wishes to proceed."  *Exhibit*

*A to the January 26, 2009 Response of Correctional Medical Services, Inc. - Court Doc.*

*No. 790-2 at 4.*  Dr. Farah performed a "Modified Bassini primary repair" of Breach's left

inguinal hernia on December 19, 2008.  *Id*. at 5.

The medical records establish that from the time of the initial diagnosis of the left

inguinal hernia until the determination of the need for surgery on this hernia in November of 2008 the hernia remained of small to moderate size, easily reducible and non-strangulated.  Additionally, the hernia did not become incarcerated nor did it undergo any significant changes during the time prior to Breach's referral for surgery.  The evidentiary materials before the court likewise establish that correctional medical personnel constantly examined Breach based on complaints regarding his hernia, continually prescribed pain medication to alleviate his discomfort and engaged in a conservative treatment plan to manage the hernia.  Thus, Breach received treatment for his hernia in the form of pain medication, a supportive truss and the issuance of various special needs profiles, including limitations on straining, lifting, standing and walking, assignments to a bottom bunk and provision of a hernia truss.  Medical personnel likewise consistently renewed Breach's special needs profiles and his prescriptions for pain medication.  At the time Breach's left inguinal hernia became large in size, was not easily reducible and had dissected into the scrotum, correctional medical personnel referred him to an outside physician for surgery.  Under the circumstances of this case, it is clear that the course of treatment undertaken by the defendants was not so grossly incompetent or inadequate that it shocks the conscience or violates fundamental fairness.

Although Breach and his medical experts assert he should have received surgery on his hernia as early as  March of 2006, this assertion, without more, fails to establish deliberate indifference.  It is undisputed that Breach received medical treatment for his

hernia.  His mere desire for a different, less conservative mode of medical treatment does not amount to deliberate indifference.  *Harris*, 941 F.2d at 1505; *Waldrop*, 871 F.2d at 1033.   In addition, whether correctional medical personnel "should have employed additional ... forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment."  *Adams*, 61 F.3d at 1545.  Finally, the mere fact prison medical personnel and a private physician consulted by Breach differed in their opinions as to the appropriate course of treatment for Breach's left inguinal hernia does not constitute deliberate indifference.  *Garvin*, 236 F.3d at 898; *Hamm*, 774 F.2d at 1575    Breach has failed to present any evidence which indicates the defendants knew that the manner in which they treated his hernia created a substantial risk to his health and that with this knowledge consciously disregarded such risk.  The record is devoid of evidence  showing that the defendants acted with deliberate indifference to Breach's left inguinal hernia.  Summary judgment is therefore due to be granted in favor of the defendants.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The motions for summary judgment filed by the defendants be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before November 12, 2009 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 28th day of October, 2009.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE